

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10

11    JOHN ARMSTRONG, et al.,                    **No. C 94-02307 CW**

12                          **Plaintiffs,**      **DECLARATION OF JAMES P.**
                                                 **SCHRATZ**
13          v.

14    GRAY DAVIS, et al.,

15                          **Defendants.**

16

17

18          I, JAMES P. SCHRATZ, hereby declare:

19          1.      I am an attorney at law licensed to practice in the state of California, and have

20    been so licensed since 1976.  I received my law degree from the University of San Francisco

21    Law School in June, 1976, where I was the Editor-in-Chief of *The Law Review* and graduated in

22    the top 5% of my class. I joined the law firm of Heller, Ehrman, White & McAuliffe in

23    September, 1976, as an associate, where I worked in its litigation department.

24          2.      In March, 1978, I left Heller, Ehrman, White & McAuliffe and joined a smaller

25    firm until August, 1980, when I joined Fireman's Fund Insurance Company located in San

26    Francisco, California, in its General Counsel's Office.  My responsibilities included representing

27    Fireman's Fund as attorney of record in various litigation matters throughout the country. In

28    addition, I supervised outside counsel throughout the country on various types of cases.

3.    In 1984, I left the General Counsel's Office and transferred to the Claims Department where I established the Major Litigation Unit, which was responsible for managing complex litigation throughout the country, including the $65 million bankruptcy of The Woodson Company. In that role I was responsible for approximately 1,000 cases and a staff of ten people.

4.    In July, 1990, I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world which had potential exposure of $3 million or more.

5.    On January 1, 1994, I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz & Associates, a firm that conducts legal audits of various law firms throughout the country. Over the past ten years, while at Fireman's Fund and as an independent legal auditor, I have personally supervised or conducted approximately 700 legal fee audits throughout the country on behalf of both clients and law firms, including governmental agencies, insurance companies, corporations, and private individuals.

Many of these audits have involved audits of plaintiffs' fee requests in fee-shifting cases, such as this one. Within this role, I have performed legal fee audits of various law firms on behalf of the California Department of Justice, the City and County of San Francisco, the City of Huntington Beach, the State of Wisconsin, United Airlines, and Avis Rent-A-Car. The amount of the fee requests audited ranges from a low of a few hundred thousand dollars to $42 million.

Most recently, I was appointed by the District Court for the Northern Mariana Islands to audit approximately $22 million in legal fees *in re the Estate of Larry Lee Hillblom*, one of the founders of DHL Express. I have also served as an arbitrator for the Sonoma County Bar Association, and was recently appointed by the State Bar of California to serve as an arbitrator in their mandatory fee arbitration program.

6.    I have qualified as an expert witness in numerous state courts, and in Federal District Court in Philadelphia and Vermont. Numerous courts have adopted the audit findings of my firm. Many of these cases were the focus of a great deal of publicity.

2.

1    For example, in the case of *Madrid v. Gomez*, No. C-90-3094, I was retained by the

2    California Department of Justice to audit a fee request of $8.3 million in connection with a

3    prisoners' civil rights case at Pelican Bay State Prison. The audit disclosed a number of billing

4    concerns and resulted in a negotiated settlement of $4.25 million, or a reduction of approximately

5    50%. Plaintiffs' counsel in this case, Donald Specter of the Prison Law Office, and Michael

6    Bien of Rosen, Bien & Asaro, acknowledge in their respective declarations in support of the fee

7    petition that they represented plaintiffs' class in the Pelican Bay matter as well. Mr. Specter

8    notes he was lead or co-counsel in that case, (Declaration of Donald Specter in Support of

9    Motion for Attorneys' Fees and Expenses, at page 3). Mr. Bien notes: "Judge Henderson

10   approved a settlement awarding $4.25 million in fees and costs in 1996 for work through trial."

11   (Declaration of Michael Bien in Support of Motion for Attorneys' Fees and Expenses, at page 6).

12   In *Rios v. Rowland*, No. 330211, Superior Court of California, County of Sacramento –

13   another case in which Mr. Bien's law firm was seeking attorneys' fees – I was retained to audit a

14   fee request of $1.5 million. The audit disallowed a significant amount of the fees requested. The

15   court upheld the audit results, and reduced the fee request to approximately $227,000.

16   In *CVB Corporation v. John Cavallucci*, No. 156505, Superior Court of California,

17   County of Marin, I was retained to audit a fee request of approximately $2 million, pursuant to a

18   contractual provision. The audit uncovered a number of billing abuses and the court disallowed

19   approximately 50% of the fee request.

20   In *Aquilar v. Avis Rent-A-Car System*, No. 948597, Superior Court of California, County

21   of San Francisco, I was retained to audit a fee request of approximately $1.3 million. The audit

22   disclosed a number of problem areas and disallowed a significant amount. The court followed

23   the audit findings and reduced the request by approximately 50%, to $650,000.

24   In *McCauley v. BFC Direct Mailing*, No. 5711562, Superior Court of California, County

25   of Orange, the plaintiff alleged violations of the campaign election laws and sought attorneys'

26   fees of $1.1 million. The defendant, Howard Jarvis Tax Reform Movement, hired this office to

27   conduct a legal fee audit, and we disallowed approximately 50% of the fees. The court followed

28   the audit findings and awarded approximately $525,000 of the $1 million requested.

3.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1       Most recently, in *Burns-Vidlak v. Chandler*, No. 95-00892 BMK, the United States

2   District Court in Hawaii, based on my audit report, disallowed approximately 90% of the

3   plaintiffs' $1,000,000 fee request. In *Florida Asset Financing Corp. v. Borton, Petrini &*

4   *Conron*, we were retained by a private client to audit a fee request of $600,000. Based on the

5   audit report, the court awarded $80,000.

6       Attached hereto as Exhibit A is a true and correct copy of a representative listing of some

7   of the publicly reported cases in which the court, based at least in part on the audit findings,

8   disallowed a substantial portion of the fees requested, or the parties have agreed between

9   themselves to accept the audit findings.

10       I believe the fact that numerous courts have accepted my audit findings serves to confirm

11   that I function as an independent auditor, and not as any form of "hired gun" retained by clients

12   simply to disallow fees.

13       7.     The audit does not always uncover overbilling. On numerous occasions, I have

14   been retained by a client to audit a legal bill and have informed the client that there is little, if

15   any, overbilling and that the client should pay most, if not all, of the invoice.

16       For example, over the past two years, I have been retained by the California Department

17   of Insurance to audit a number of law firms in connection with numerous matters, including the

18   insolvency of Golden Eagle Insurance Company, which was located in San Diego, California

19   (and was declared insolvent by the California Insurance Commissioner). On a number of these

20   audits, I found that most, if not all, of the fees involved were reasonable and necessary, and

21   recommended to the client that it pay most, if not all, of them.

22       8.     As a standard practice, I make an offer to all clients to review the bills free of

23   charge and arrive at a preliminary opinion as to whether an audit would uncover any overbilling,

24   so as to make an audit cost-efficient. For example, if the amount of the bills are $200,000 but

25   my initial review indicates that the amount of overbilling is so slight as to be less than the cost of

26   the audit, I recommend to the client that it not retain this office to conduct a full-scale audit. I

27   estimate that in approximately 10% to 15% of the possible requests I receive, I suggest to the

28   client that an audit is not cost-justified.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1    9.    On numerous occasions, I have been retained by a law firm engaged in litigation

2    with a client to conduct an audit, and if the audit discloses no overbilling, to testify as an expert

3    witness on behalf of the law firm.

4    10.    I have been retained a number of times as an expert witness on the issue of

5    reasonable attorneys' fees, including, most recently, testifying as an expert witness in Los

6    Angeles Superior Court in a $13 million fee dispute.

7    11.    I have published approximately twenty-five (25) articles, many of which involve

8    the control of legal fees and the abuses in the billing practices of attorneys. The California Court

9    of Appeals, in *Assurance Company of America v. Haven*, 32 Cal.App.4th 78, 89-90 (1995), cited

10    an article that I co-authored with Jon Mower. Over the past six years, I have given numerous

11    presentations on legal auditing and controlling legal costs throughout the United States, Canada,

12    and England. I have made a number of presentations to various Bar Associations, insurance

13    industry groups, and other organizations, including the American Bar Association, on how to

14    assist the court in analyzing fee requests, and recently wrote an article on employing legal fee

15    auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.*

16    12.    Attached hereto as Exhibit B is a true and correct copy of my Curriculum Vitae,

17    which lists my work history, my publications, and my general experience.

18    13.    **Scope of Review**: I was retained on or about May 19, 2000 by Mr. James Humes,

19    on behalf of the State of California, Office of the Attorney General, to review certain invoices

20    and other documents in connection with the petition for attorneys' fees and expenses submitted

21    by the plaintiffs' six law firms in this matter, that is: the Prison Law Office ("PLO"), Rosen,

22    Bien & Asaro, LLP ("RBA"), McCutchen, Doyle, Brown & Enersen ("MDBE"), Pillsbury,

23    Madison & Sutro, LLP ("PMS"), Disability Rights Education & Defense Fund, Inc. ("DREDF"),

24    and the Law Office of Elaine B. Feingold ("LOEBF"). On May 19, 2000, I met for

25    approximately 1.5 hours with Mr. Humes, who provided me with background information

26    concerning this matter. Mr. Humes also provided me with access to dozens of boxes containing

27    pleadings, correspondence, deposition transcripts and other documents pertaining to the case,

28    which I began to review that day. I traveled to Mr. Humes' office on at least three subsequent

5.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1  occasions to review these documents, including the plaintiffs' motion for attorneys' fees, dated

2  May 30, 2000.

3      As part of the audit process, all of the billing invoices were input into a computer, and

4  each entry was manually coded according to the nature of the task described. The coded tasks

5  and projects were then allocated among different categories, such as "meetings," "research," or

6  "motion to compel." Custom word searches helped to identify various billing patterns.

7      14.    **Scope of Audit:**  I reviewed the billing records of 56 timekeepers from the six

8  law firms who represent the plaintiffs' class in this case. Altogether, they billed a total of

9  10,662.70 hours, $2,143,604.00 in fees, and $240,747.19 in costs. The total amount of fees and

10  costs requested is $2,384,351.19.

11      Plaintiffs' petition sets out the demand for fees and costs in three distinct parts: (1) all

12  fees and costs incurred prior to January 1, 2000; (2) fees and costs incurred between January 1,

13  2000, and March 31, 2000, for work other than monitoring; and, (3) fees and costs incurred

14  between January 1, 2000, and March 31, 2000, for work in connection with monitoring. For the

15  sake of convenience and ease of reference, in conducting this audit I tried to use as much as

16  possible the same general order and grouping of the data as in plaintiffs' petition.

17      a.    During the period January 1, 1996, to December 31, 1999, 52 timekeepers

18  from the six law firms worked on this case, billing a total of 10,065.60 hours, $2,019,401.00 in

19  fees, and $237,668.11 in costs.[1]  A summary of the data is set out below.

| Firm | Period | Timekeepers | Hours | Fees | Costs |
|---|---|---|---|---|---|
| PLO | 4/98-12/99 | 5 Attorneys<br>1 Paralegal | 1,581.25<br>111.80<br>1,693.05 | $447,609.75<br>13,416.00<br>461,025.75 | $46,547.63 |
| RBA | 1/96-12/99 | 4 Attorneys<br>2 Clerks<br>2 Paralegals | 1,371.60<br>151.00<br>945.20<br>2,467.80 | 370,899.00<br>13,600.00<br>113,424.00<br>497,913.00 | 46,578.42 |

27  1.   I found several small discrepancies between stated and computed fees and costs,
which nevertheless affect total figures. Specifically, RBA timekeeper Fernholz billed 741.30
28  hours according to the billing records, but only 740.80 hours are shown in the petition;
therefore, total fees are adjusted upward $125.00. Further, PLO's expenses appear to be
understated by $2.00.

6.

Declaration of James P. Schratz
Case No. C 94-02307 CW

| | | | | | |
|---|---|---|---|---|---|
| MDBE | 10/96-1/00 | 21 Attorneys<br>5 Paralegals | 2,833.90<br><u>1,008.60</u><br>3,842.50 | 610,831.00<br><u>118,265.50</u><br>729,096.50 | 102,060.38 |
| PMS | 1/98-12/99 | 2 Attorneys<br>1 Info Tech<br>5 Paralegals | 448.75<br>19.50<br><u>1,533.30</u><br>2,001.55 | 138,116.25<br>2,437.50<br><u>175,392.50</u><br>315,946.25 | 42,233.94 |
| DREDF | 6/98-3/99 | 1 Attorney<br>1 Clerk<br>1 Unknown | 4.60<br>7.10<br><u>39.70</u><br>51.40 | 1,311.00<br>426.00<br><u>10,520.50</u><br>12,257.50 | 199.99 |
| LOEBF | 1/98-6/99 | 1 Attorney | 9.30 | 3,162.00 | 47.75 |
| **TOTAL:** | | **52 Timekeepers** | **10,065.60** | **$2,019,401.00** | **237,668.11** |

b.    For the billing period from January 1 to March 31, 2000, 12 timekeepers from three law firms billed a total of 297.05 hours, for $59,538.00 in fees and $379.78 in expenses. This work was not related to monitoring. The data appear below:

| Firm | Period | Timekeepers | Hours | Fees | Costs |
|---|---|---|---|---|---|
| PLO | 1/00 - 3/00 | 2 Attorneys<br>2 Paralegals | 3.20<br><u>20.95</u><br>24.15 | $1,169.50<br><u>2,514.00</u><br>3,683.50 | $0.00 |
| RBA | 1/00 - 3/00 | 2 Attorneys<br>1 Paralegal | 106.00<br><u>33.60</u><br>139.60 | 27,845.50<br><u>4,032.00</u><br>31,877.50 | 213.45 |
| MDBE | 1/00 - 3/00 | 3 Attorneys<br>2 Paralegals | 87.10<br><u>46.20</u><br>133.30 | 18,804.00<br><u>5,173.00</u><br>23,977.00 | 166.33 |
| **TOTAL:** | | **12 Timekeepers** | **297.05** | **$59,538.00** | **$379.78** |

For the billing period January 1 to March 31, 2000, 16 timekeepers from four law firms billed a total of 300.05 hours, $64,554.00 in fees, and $2,699.30 in expenses, in connection with work on monitoring.[2] The details are below:

| Firm | Period | Timekeepers | Hours | Fees | Costs |
|---|---|---|---|---|---|
| PLO | 1/00 - 3/00 | 3 Attorneys<br>2 Legal Ass'ts | 150.90<br><u>6.85</u><br>157.75 | $36,526.50<br><u>682.50</u><br>37,209.00 | $534.78 |

---

2.    The audit revealed a discrepancy between stated and computed fees in this set of records as well, i.e., RBA timekeeper Bien billed 24.10 hours rather than 23.80 hours, as stated in the petition; total fees are thus increased by $109.50.

7.

| | | | | | |
|---|---|---|---|---|---|
| RBA | 1/00 - 3/00 | 4 Attorneys<br>2 Paralegals | 44.00<br>39.20<br>83.20 | 13,693.50<br>4,094.00<br>17,787.50 | 606.65 |
| MDBE | 1/00 - 3/00 | 2 Attorneys | 2.10 | 668.50 | 384.64 |
| PMS | 1/00 - 3/00 | 1 Attorney<br>2 Paralegals | 10.75<br>46.25<br>57.00 | 3,386.25<br>5,613.75<br>9,000.00 | 1,173.23 |
| **TOTAL:** | | **16 Timekeepers** | **300.05** | **$64,665.00** | **$2,699.30** |

15. **Standard of Review:** Legal auditors primarily use one of two standards. The first standard is contained in any guidelines that were exchanged between the law firm and client in the form of a retainer letter or billing guidelines. The second standard is encompassed in case law.

It has been my experience that in cases such as the present one, where the adversary, instead of the client, is being asked to pay the attorneys' fees, this second standard is more appropriate for a number of reasons. First, a client may agree to pay certain items which he or she is not obligated to pay under existing case law. Secondly, a law firm may engage in billing practices in these fee-shifting cases which the law firm would not engage in if the client were being asked to pay the legal fees.

I approach all legal fee audits with the assumption that most attorneys do not intentionally or unintentionally inflate their bills, and there must be a "preponderance of the evidence" to support an audit finding that a certain amount of fees should be disallowed. In this regard, I also believe that attorneys should be given the benefit of the doubt where possible overbilling may have occurred.

On the other hand, in those cases where it is difficult to determine the nature and extent of the possible overbilling due to the firm's questionable billing practices such as blocked billing, vague entries, or billing to numerous files, I believe it is incumbent upon the law firm to justify its fees.

16. **Difficulties Encountered:** I encountered the following difficulties in conducting this audit:

A.    *Blocked Billing*: "Blocked billing" is the lumping together of daily time

8.

1 entries consisting of two or more task descriptions, or the grouping of different tasks within one

2 block of time on a time record. Blocked billing prevents the auditor from accurately assessing

3 the amount of time that was actually spent on each task, which could result in an understatement

4 or overstatement of the amount of time the law firm spent on specific tasks. There were

5 numerous instances of blocked billing. There were numerous instances of blocked billing by

6 PMS timekeepers throughout the case, and a few instances of blocked billing by RBA

7 timekeepers in early entries, primarily in 1996. Listed below are several examples, which total

8 40.50 hours and $7,182.50 in fees:

| Date | Hours | Description |
|------|-------|-------------|
| 2/23/99 | 3.50 | PMS (CNM): Review deposition results with D. Specter and S. Norman. Plan for opposition to motion to dismiss; calendar Derning deposition; begin drafting opposition to motion to dismiss. ($1,102.50) |
| 2/24/99 | 4.25 | PMS (CNM): Research re: motion to dismiss, discuss same with PLO; coordinate deposition scheduling; oversee preparation of trial exhibits and deposition designations; prepare P. Quintiliani for depositions. ($1,338.75) |
| 3/15/99 | 5.75 | PMS (CNM): Prepare for deposition of N. Cowardin on MR issues; plan response to G. Prince letter; T/CS with S. Norman re: recent discovery, questions to ask defendants' expert; T/C with court reporter; T/C with Holden's lifer hearing attorney. ($1,811.25) |
| 4/19/99 | 9.00 | PMS (CAN): Review depo cittes [sic] in trial binder; copy transcripts;    organize trial binder; attend meeting with Dr. Derning and discuss witness strategy reference materials; draft Errata List to Derning Declaration; copy trial binder and fedex to Dr. Derning. ($765.00) |
| 2/24/99 | 7.50 | PMS (RSW): Prepare Objections to Duces Tecum Notices; make arrangements for Quintiliani to attend depositions; letter to Prince re Haney; work on trial exhibits; conference T. Hilton. ($975.00) |
| 7/25/96 | 7.00 | RBA (JIVED): Research re: BIT witnesses; prepare lists of same for PLO and MDBE; phone call with PLO re: same; prepare second packet to PLO re: same; phone call with Garret re: same. ($840.00) |
| 9/16/96 | 3.50 | RBA (J): Review inmate files re: BIT documents; review and merge research, prepare memo and fax same to co-counsel re: same; leave message for JIB re: same. ($350.00) |

///

///

9.

B.    *Vague Entries*:  Vague entries generally provide little or no information about the nature or significance of the work performed, thereby severely hampering a realistic assessment of its utility or the reasonableness of the associated fees.    Vague entries were found throughout all of the billing records, for all the firms reviewed in this audit.  Examples are provided below.[3]

The following PLO billing entries total 20.40 hours, and $7,548.00 in fees: Timekeeper DS billed 2.40 hours on 2/20/99 to "read demos" ($888.00); on 2/24/99, 1.0 hour to "read inmate demo" ($370.00); on 3/16/99, DS billed 2.4 hours for "misc. trial prep" ($888.00); on 4/26/99, 4.70 hours for "trial prep" ($1,739.00); on 5/6/99, 3.50 hours for "pre-trial prep" ($1,295.00); and on 5/7/99, 6.40 hours for "trial prep" ($2,368.00).

The following MDBE entries total 29.90 hours, and $6,279.00 in fees: Timekeeper JJ billed 17.10 hours, 9.20 hours, and 6.80 hours on 7/16/99 ($1,491,00), 7/21/99 ($1,932.00), and 7/22/99 ($1,428.00), respectively, for "work on post-trial briefing," and 6.80 hours on 7/24/99 ($1,428.00) for "post-trial briefing research on ADA issues."

The following RBA entries total 25.30 hours, and $2,373.00 in fees: Timekeeper UP billed 5.20 hours on 7/30/96 ($390.00) to "research re: BIT witness," 5.10 hours on 7/31/96 ($382.50) to "continue research re BIT experience per JIVED," and 1.70 hours on 8/1/96 ($127.50) and 2.70 hours on 8/2/96 ($202.50) to "continue research re BIT experience." Timekeeper JIVED billed 7.80 hours on 4/13/99 ($936.00) to "research re: Courtney [sic] Dec," and 2.80 hours on 4/15/99 ($336.00) to "research re: Cowardin Dec." ($336.00).

The following PMS entries total 12.25 hours, and $1,631.25 in fees:   Timekeeper C.M. billed 0.5 hour on 12/4/98 ($157.50) to "coordinate filing," and 0.75 hour on 12/7/98 ($236.25) to "review demo outline."  Timekeeper RPC billed 2.0 hours on 6/28/99 ($150.00) and 1.50 hours ($112.50) on 7/8/99 to "update Armstrong files."   Timekeeper R.W. billed 7.50 hours on 2/16/99 ($975.00) for "pretrial preparation, expert preparation."

And the following entries, from LOEBF and DREDF, total 6.0 hours and $472.00

---

3.    The examples of vague entries are totaled for hours and fees to illustrate the considerable effect that even a few such entries can have on overall litigation costs. They are for illustration, rather than comparison, among the firms.

10.

1  in fees:  LOEBF timekeeper LAI billed 0.40 hour on 1/29/98 ($136.00) for simply, "phone call."

2  DREDF timekeeper CC billed 3.50 hours on 8/4/98 ($2,10.00) for "file maintenance for J.

3  Garret," and 2.10 hours on 9/16/98 ($126.00) for "phone conversation with officials at BIT

4  hearing room sites (J. Drunker)."

5      17.   **Findings and Opinions**:

6          A.    *Excessive Hourly Rates*: I am familiar with the prevailing market rates and

7  billing practices for San Francisco attorneys for all relevant years involved in this matter.  In

8  addition to my experience already discussed, I regularly review published opinions and articles in

9  The Los Angeles Daily Journal, The Recorder, The National Law Journal, Corporate Legal

10 Times, The Wall Street Journal, and The New York Times.  I also review surveys of law firm

11 rates from numerous companies, including the nation-wide consulting firm of Altman Weil Pena

12 and the National Survey Center.  This is the same National Survey Center whose partial report is

13 attached to the declaration of Richard Pearl submitted in support of plaintiffs' motion for fees.

14          According to these survey results, only 8.7% of the lawyers in firms which have

15 five to nine lawyers have hourly billing rates between $350 to $374, and only 13% of the lawyers

16 in this size firm bill between $300 to $324 per hour.

17          On the other hand, according to the same survey results attached to the declaration

18 of plaintiffs' expert, Mr. Pearl, 54.3% of the lawyers surveyed bill at rates ranging from $150 to

19 $274 per hour.  Even in the next larger category of law firms – having ten to 29 lawyers – 57.8%

20 of the lawyers surveyed in these firms bill at rates ranging from $150 to $274 per hour. A copy of

21 the relevant page from the June 1999 National Survey Center is attached as Exhibit C.

22          Based on my experience as an attorney, client, and now legal fee auditor, it is my

23 opinion that the prevailing market rate for plaintiffs' attorneys in law firms with five to nine

24 attorneys, or ten to 29 attorneys, is what plaintiffs' own expert identifies as being the norm for

25 most attorneys in law firms of that size, or between $150 to $274 per hour.

26          It is my understanding that four of the six plaintiffs' law firms who are seeking

27 fees and expenses in this case in fact have fewer than 29 attorneys.  According to the survey data

28 presented by Mr. Pearl, they would fall in the category of law firms whose partners for the most

11.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1  part bill at hourly rates between $150 to $274 per hour.  In attempting to refine this analysis for

2  the PLO, RBA, DREDF and LOEBF law firms in this case, it is necessary to analyze the

3  economics of the large firm versus a smaller, or small firm law practice.

4          Over the past fifteen years, I have closely followed the emerging area of law firm

5  economics in numerous trade publications, and have appeared on a number of panels where this

6  topic has been discussed.  It is a generally accepted principal of law firm practice that small firms

7  and sole practitioners, with fewer non-billing staff such as secretaries, administrative staff, and so

8  forth, have a lower overhead than large firms who have a correspondingly greater number of non-

9  revenue producing personnel.

10          In addition, many small firms have lower rental costs than a large law firm with

11 numerous floors in a major high-rise building in the Financial District.  While I am not aware of

12 the rental costs per square foot at the facilities housing plaintiffs' law firms, it is my experience

13 that those costs would be significantly less than rental costs in the Embarcadero Center, for

14 example.

15          Most, if not all, of the firms referred to in Mr. Pearl's declaration are medium-to-

16 large-size firms whose rates are historically higher than small firms or sole practitioners, whose

17 overhead is significantly less and therefore their rates are significantly less.  Additionally, it has

18 been my experience that large law firms who have significant advertising dollars and are able to

19 establish a "brand name" can charge clients more on an hourly basis than a small firm or sole

20 practitioner.

21          Based on my knowledge and experience as an attorney, client, and legal fee

22 auditor, and based on my knowledge of various published information (including the National

23 Survey Center billing results, which is provided with Mr. Pearl's declaration), I believe the rates

24 requested by most of the partners at the PLO, RBA, DREDF and LOEBF law firms are

25 extraordinarily excessive and do not reflect the economic realities of the market place for a small

26 firm or sole practitioner in San Francisco, and I believe that they exceed the prevailing market

27 rate.

28          In his declaration, Mr. Pearl refers to a number of law firms, including the firms

12.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1  listed below, in an attempt to justify the plaintiffs' position that the reasonable market rate for the

2  four smaller firms representing plaintiffs is more than $274 per hour:

3          Heller, Ehrman, White & McAuliffe
           Howard, Rice, Nemerovski, Canady, Robertson & Falk
4          McCutchen, Doyle, Brown & Enersen
           Morrison & Foerster
5          Pillsbury, Madison & Sutro

6          Over the past several years I have audited a number of these firms, have been

7  retained by some of these firms as an expert witness, or have retained some of these firms while

8  at Fireman's Fund, and am very familiar with their billing practices and how these firms staff

9  cases.  Based on my experience, it is my opinion that while a senior partner at one of these firms

10  may charge in excess of $300 per hour, much of the work is performed by personnel with much

11  lower billing rates, thereby reducing the "blended" or average rate to $225 per hour or less.  It is

12  also my opinion that comparing high rates at these large firms, that are charged in instances in

13  which much of the work is performed by lower level junior partners, associates, or even

14  paralegals, is seriously flawed.

15          Finally, Mr. Pearl also refers to a number of cases, including *Sprewell v. Golden*

16  *State Warriors*, N.D.Cal.  No. C-98-2053 VRW, for the proposition that the court awarded rates

17  up to $560 per hour. I was retained as an expert in that matter and while I do not have my work

18  papers available at this time, it is my recollection that the $560 rate applied to Mr. Frank

19  Rothman, who actually devoted very little time to the case, and that most of the work was

20  performed by lower level associates and paralegals.

21          In order to give every benefit of the doubt to the PLO, RBA, DREDF and LOEBF

22  lawyers who represented the plaintiffs in this case, and in light of the above discussion, I believe

23  a reasonable rate for senior attorneys from these firms is $225 per hour.    Giving plaintiffs'

24  counsel every benefit of the doubt, this is well above the mid-point between $150 to $274, which

25  is the billing range for most partners at law firms with up to 29 lawyers, according to the survey

26  data presented by Mr. Pearl.  While I am aware that a mid-point of a billing range may not

27  wholly recognize the exceptional work, talent or services of an attorney in a given case, it also

28  does not penalize other attorneys who may be short on experience or skills in a particular case.

13.

On the whole, and under the circumstances presented here, I believe a billing rate of $225 per hour for the partners of the four smaller firms representing plaintiffs is both reasonable and fair, and reflects the prevailing market rates.

Based on my experience, I acknowledge that plaintiffs' attorneys may attempt to attack the results published by the National Survey Center, even though one of their own experts apparently relied on it, by claiming that these rates do not consider the alleged complex nature of this matter. Based on my review of the pleadings, deposition transcripts and billing entries, I acknowledge there were interesting factual and legal issues concerning sovereign immunity and other issues which made this case more complex than a simple breach of contract or tort case.

The case involved a number of prison sites and required factual investigation; but the simple fact a case requires substantial factual investigation does not somehow transform it into a complex case.

As mentioned above, I recently served as a court-appointed expert in *Re Estate of Hillblom*. In that case, there were complex legal issues involving numerous jurisdictions, including the State of California, Saipan, France, Vietnam, and other foreign countries. In *Wisconsin Retired Teachers v. State of Wisconsin*, there were extremely complex legal issues involving ERISA and other pension fund issues. While factual investigation requires some logistical planning and coordination, it is my opinion it does not require the legal training of an attorney seeking hourly compensation at the levels sought by the plaintiffs' attorneys in this matter.

The other two law firms representing plaintiffs, MDBE and PMS, are generally regarded as large law firms. In this instance, however, I believe large firm rates are not appropriate, for the reasons set out below.

As to MDBE, I found their staffing in this case failed to conform to prevailing market practices, based on my review of the billing records, and on my experience with large firms' staffing and billing practices. In particular, the usual pattern of one senior lawyer, a few mid-level associates, one or two new lawyers, and a battalion of paralegal and other support staff was not the norm at MDBE or PMS in this case.

14.

1        At MDBE, 21 of the 26 timekeepers were attorneys; they accounted for $610,831

2   of the $729,096.50 in fees billed by MDBE through December 31, 1999. Only five MDBE

3   timekeepers were not attorneys, and they billed only $118,265.50 of the total fees. Thus, the

4   ratio of attorneys to paralegals at MDBE was essentially the opposite of how large firms

5   generally staff their cases.

6        Additionally, according to admission data for the 21 attorneys (appearing in the

7   itemized demand accompanying plaintiffs' motion for fees), 17 of the 21 attorneys were admitted

8   to the California Bar in 1997 or later, including three attorneys admitted in 1998. Therefore,

9   during trial preparation and trial itself, and numerous post-trial motions and conferences, the

10  overwhelming majority of MDBE attorneys were essentially just a year or two out of law school.

11  Whatever may be the potential benefits to MDBE in providing its new associates with real-life

12  litigation experience, this staffing scheme was clearly not designed for efficiency or cost

13  effectiveness. In light of the unusually modest level of experience most MDBE personnel

14  brought to this case, I believe a fair billing rate for MDBE partners would also be $225 per hour,

15  particularly in light of the discussion set out above. For the new attorneys admitted to the Bar in

16  1997 or 1998, I believe $150 per hour is reasonable.

17       PMS' staffing of the case followed much more traditional lines. Two attorneys

18  and six paralegal timekeepers billed to the case. Ms. Caroline Mitchell was clearly lead attorney

19  from PMS, billing $133,796.25 of the total $138,116.25 in fees billed by PMS attorney

20  timekeepers. As Ms. Mitchell states in her declaration in support of the fee petition, she was one

21  of the lead counsel in *Clark v. California*, Case No. C-96-1486 FMS (N.D. Cal) as well, and her

22  work in *Clark* carried over to this case to a significant extent:

23       [m]y team at Pillsbury Madison & Sutro was invited to participate in the
         *Armstrong* case in view of our extensive experience on *Clark* working with issues
24       related to developmental disabilities. Our participation in *Armstrong* allowed us
         to draw efficiently on the extensive discovery record and work product created as
25       a result of *Clark*. We also were able to use legal research that had been developed
         on *Clark* when related constitutional issues were raised in *Armstrong*.
26

27       Declaration of Caroline M. Mitchell in Support of Motion for Attorneys' Fees and

28       Expenses, 2:13-18.

15.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1    Based on my review of Ms. Mitchell's billing records, and in line with Ms.

2  Mitchell's Declaration, I found that her time entries included a considerable amount of

3  ministerial and administrative activities.  For example, there is an entry for 3.25 hours on 6/l/99

4  to "coordinate testimony summaries... research re: legal issues," and 0.50 hour the next day,

5  6/2/99, to "coordinate transcript corrections, review issues re: deposition designation with J.

6  Jonak." On 6/3/99, she billed 1.0 hour to "coordinate conf. call," among other things listed in

7  that blocked entry.  By no means is this sampling intended as an exhaustive list, but serves only

8  as an illustration.  In light of what appears to be a relatively low level of participation by PMS'

9  senior partner in this matter, particularly in comparison to *Clark*, I believe that $225 per hour is a

10  reasonable and adequate billing rate for PMS partners under the circumstances of this case.

11    The recommended adjustments to the billing rates appear in the summary below.

12  These data are also presented in greater detail in Exhibit D.

### Recommended Disallowances by Billing Period and Law Firm

| Law Firm | 1/1/96-12/31/99 | 1/1/00 - 3/31/00 (No monitoring) | 1/1/00-3/31/00 (Monitoring) | TOTAL |
|---|---|---|---|---|
| PLO | -$92,848.00 | $-450.00 | $ 6,206.00 | $ 99,504.00 |
| RBA | -62,266.50 | -3,995.50 | -3,706.50 | -69,968.50 |
| PMS | -38,227.50 | | -967.50 | -39,195.00 |
| LOEBF | -1,069.50 | | | -1,069.50 |
| DREDF | -1,864.00 | | | -1,864.00 |
| MDBE | -150,871.00 | -5,701.50 | -248.50 | -156,821.00 |
| **TOTALS:** | **-347,146.50** | **-10,147.00** | **-11,128.50** | **-156,821.00** |

**Recommended Disallowance:**    **$368,422.00**

24    In addition to excessive attorneys fees, I found excessive paralegal and legal

25  assistant rates and fees in my review of the billing records in this case.  Some paralegals are

26  already topping $100 per hour, and at least one paralegal timekeeper billed substantial time in

27  this case at $145 per hour (Marian Lewis).

28    The National Survey Center – which reports average attorney rate and fee

16.

1  information – also reports average paralegal and legal assistant billing rate information.

2  According to its June 1, 1999 report for San Francisco – referenced above in conjunction with

3  the discussion about attorneys' fees – the average billing rate for legal assistants in the San

4  Francisco area, in firms with five to nine attorneys, is $75 per hour.  I believe this is a reasonable

5  rate for paralegals and legal assistants working on this case.  I recommend recalculating

6  paralegals' and legal assistants' fees to date, on the basis of the more reasonable $75 per hour

7  billing rate.

8      Paralegals and legal assistants billed a total of 3,969.55 hours on this case through

9  March 31, 2000.  If charged at their "usual" billing rates, total fees amount to $459,070.75.

10  However, if their time is charged at $75 per hour, fees  for their work would total $297,716.25.  I

11  recommend disallowing the difference of $161,354.50.

12      **Recommended Disallowance:      $161,354.50**

13      B.    *Fee Recovery Limits under the Prison Litigation Reform Act.*   An

14  alternative approach to evaluating the plaintiffs' fee request is suggested by the Prison Litigation

15  Reform Act ("PLRA").  Under the PLRA, "[I]n any action brought by a prisoner who is confined

16  to any jail, prison, or correctional facility in which attorneys' fees are authorized under section

17  1988 of this title...recovery of attorneys' fees is limited to 150% of the hourly rate

18  established . . . .  for payment of court-appointed counsel." 42 U.S.C. Section 1997e(d)(3).  It is

19  my understanding that court-appointed counsel are paid at $75 per hour, and paralegals at $35

20  per hour; therefore, the maximum fee recoverable under the PLRA is 150% of these rates, or

21  $112.50 per hour for attorneys, and $52.50 per hour for paralegals.

22      Without addressing whether the PLRA should apply in this case, the limits that it

23  proposes are nevertheless instructive with regard to current prevailing market conditions for legal

24  fees, particularly in the area of prison litigation.  While some variation among estimates of

25  prevailing market rates in legal fees can be expected, the disparity between the fees the PLRA

26  would allow in a case such as this, however, and the fees actually requested, is staggering.

27      Specifically, a total of 10,662.70 hours were billed in this case through March 31,

28  2000:  6,693.15 hours by attorneys, and 3,969.55 hours by various support staff, primarily

17.

1  paralegals.  Applying the PLRA limits to these figures, however, yields a significantly smaller

2  recovery than what plaintiffs' counsel are seeking:

3         6,693.15 attorney hours paid @ $112.50 per hour =        752,979.37

4         3,969.55 paralegal hours paid @ $52.50 per hour =        208,401.37

5                              TOTAL:                    $961,380.74

6         Under the PLRA limits, the maximum fees recoverable are $961,380.74.  This

7  represents just 45% of the total $2,143,604.00 fees actually billed in this case.  In short, what the

8  PLRA would approve in fees in this case falls well short of even one-half of what plaintiff's

9  counsel demands.  I believe this striking disparity effectively puts into question the fundamental

10  reasonableness of the fees now being sought by plaintiffs' counsel.

11         C.    *Excessive Staffing*:  As noted above, a total of 56 timekeepers billed to

12  this matter from January 1, 1996 through March 31, 2000.  There were 52 timekeepers during the

13  period January 1, 1996 through December 31, 1999;  12 timekeepers during January 1, 2000 to

14  March 31, 2000 (without monitoring);  and 16 timekeepers during January 1, 2000 through

15  March 31, 2000 (with monitoring).  A list of the timekeepers, their rates, hours, and fees – for

16  each of the three billing periods – is provided in Exhibits E, F and G, respectively.  In my

17  opinion, the level of staffing was excessive, and resulted in mismanagement and a duplication of

18  effort.

19         It is my impression that defendants' counsel has about one-third the staff to work

20  on this case than does plaintiffs' counsel.  In terms of trying to control or manage litigation

21  costs or expenses, the State Attorney General's office is at a distinct disadvantage.  In light of

22  that fact, I believe there is a very strong likelihood that plaintiffs' overstaffing their case, whether

23  as a matter of strategy or happenstance,  has led to excessive expenditures, which defendants are

24  now being asked to absorb in this fee-shifting process.  Thus, I recommend disallowing15% of

25  the total fees, or $300,000.

26         **Recommended disallowance:        $300,000.00**

27         D.    *Excessive Conferencing*.  There was an excessive, very high level of inter-

28  and intra-office conferencing, meetings, and telephoning in this case.  While a certain amount of

18.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1  coordination may be necessary and even beneficial for most litigation, too much of it can

2  overshadow substantive work.  It can also lead to further problems, such as loss of efficiency and

3  loss of focused, productive effort.

4          Excessive conferencing may be related to poor case management.  In my

5  experience, fee-shifting cases are particularly susceptible to excessive conferencing and other

6  inappropriate or abusive billing practices, because there is no fee paying client to regularly

7  review the bills and manage the litigation.  At the same time, any difficulties experienced by

8  plaintiffs' counsel in this regard should not be charged to the defendants, who had no part in

9  selecting or overseeing the plaintiffs' legal team.

10          The following is a summary of all billing entries in this case for within-firm

11  conferencing, telephone conferencing, and meetings:

| | | | Hours | Fees |
|---|---|---|---|---|
| Attorney Telephone Calls | | 1/1/96-12/31/99 | 432.70 | 102,557.75 |
| | (No mon.) | 1/1/00-3/31/00 | 16.20 | 4,655.00 |
| | (Mon.) | 1/1/00-3/31/00 | 45.10 | 14,735.00 |
| Total: | | | 494.00 | $121,947.75 |
| | | | | |
| Interoffice Conferencing | | 1/1/96-12/31/99 | 338.30 | 84,383.25 |
| | (No mon.) | 1/1/00-3/31/00 | 18.20 | 4,681.00 |
| | (Mon.) | 1/1/00-3/31/00 | 26.90 | 7,520.50 |
| Total: | | | 383.40 | $96,584.75 |
| | | | | |
| Meetings | | 1/1/96-12/31/99 | 210.20 | 57,562.50 |
| | (No mon.) | 1/1/00-3/31/00 | 0.00 | 0.00 |
| | (Mon.) | 1/1/00-3/31/00 | 4.30 | 1,025.50 |
| Total: | | | 214.50 | $58,588.00 |
| **GRAND TOTAL:** | | | **1,091.90** | **$277,120.50** |

27          Altogether, therefore, plaintiffs' counsel and staff billed $277,120.50, or more

28  than a quarter-million dollars, for office and telephone conferences and meetings.  This figure

19.

1 | represents nearly 13% of all the billing in this case, or one of every eight dollars in fees.  Even

2 | giving plaintiffs' counsel every benefit of the doubt, and acknowledging that some of the billing

3 | entries for conferencing and meeting were appropriate and necessary, I believe that the great

4 | majority of these entries were not.  Specifically, I recommend disallowing two-thirds of the fees

5 | billed for office conferences, telephone conferences, and meetings as excessive, unjustified, and

6 | contrary to prevailing market practices.

7 | **Recommended Disallowance:        $185,000.00**

8 | E.    *Excessive Billing.*

9 | 1.    Expert Witnesses.  In my opinion, there was excessive billing

10 | throughout the case due to what appears to be a general tendency to overstaff and over-prepare

11 | pending matters.  This was particularly evident in connection with plaintiffs' counsels' work

12 | with expert witnesses.  While I am aware that expert witness preparation can be very labor and

13 | time intensive, the fees associated with plaintiffs' efforts in this regard seem excessive.

14 | For example, billing entries in connection with work with Dr. Nancy Cowardin,

15 | plaintiffs' expert for learning and developmental disabilities, totaled $191,341.50, or nearly 10%

16 | of the total fees billed in the case.  This was particularly surprising since PMS' Caroline Mitchell

17 | claimed in her declaration in support of fees that she was very familiar with Dr. Cowardin,

18 | having just worked with her in the *Clark* case.  If there were any efficiencies gained from Ms.

19 | Mitchell's prior knowledge of Dr. Cowardin, I was unable to identify them.

20 | I also found instances of very expensive witness preparation work in connection

21 | with other expert witnesses as well, such as Robertson ($91,619), and Martinez ($85,766).  Fees

22 | for just these three experts total nearly $400,000.  Giving plaintiffs' counsel every benefit of the

23 | doubt, however, I do not recommend any disallowance in connection with work with expert

24 | witnesses.

25 | 2.    Deposition Preparation and Attendance.  Fees for attorney attendance at

26 | depositions in this case total $55,641.50.  I noted that many of the billing entries in this category

27 | also included travel time, thus inflating the associated time and fees for attendance.

28 | However, fees for attorney preparation for depositions total $125,370.75, or

20.

1   nearly two and one-half times the amount billed for deposition attendance.  In my opinion, the

2   time billed for deposition preparation is disproportionately high in relation to the time spent on

3   deposition attendance, especially since many depositions were non-complex or repetitive.  This

4   observation is consistent with my overall impression, mentioned above, that the case is

5   overstaffed and overworked.  Based on my review of the billing entries and general impressions

6   about this case, I recommend disallowing 20% of the fees for deposition preparation, to bring

7   this category closer in line with the time spent in deposition attendance.

8                            **Recommended Disallowance:          $25,000.00**

9                    3.      <u>Excessive Attorney Staffing at Trial</u>.  Fees for attorney attendance

10  at the ten-day bench trial in this case total $90,618.25.  Based on review of the billing entries and

11  the trial transcripts, I noted that at least four, and often five attorneys attended the trial.  In my

12  experience, even two or three attorneys attending a trial may be appropriate for any number of

13  reasons.  However, four or five attorneys in trial attendance is excessive and contrary to

14  prevailing market practices.  I understand that more attorneys than usual may have wanted to

15  attend the trial in this case, since six law firms represent the plaintiffs' class.  But, plaintiffs'

16  large legal team is purely plaintiffs' choice and preference, and should not be charged to the

17  defendants.  Had plaintiffs not willingly overstaffed their case with six law firms, there would

18  not have been a need for so many attorneys to attend the trial.  Accordingly, I recommend

19  disallowing 25%, or $20,000 in fees, in this category.

20                           **Recommended Disallowance:          $20,000.00**

21          F.      *Billing Irregularities.*

22                  1.      <u>Travel</u>.  Fees for "travel" in this case total $63,713.00.  Based on a

23  review of the billing entries, this category consists largely of trips to and from hearings,

24  depositions, and the like.

25          While I am aware of the argument that attorneys should be compensated for "lost

26  opportunity time" during travel, I am also cognizant of the opposite view, i.e., that those paying

27  attorneys' fees should not be asked to pay for so-called lost opportunities as well, for only for the

28  actual work done on their behalf.  The court, in *Guckenberger v. Boston University*, 8 F.Supp 2d

21.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1   91, *infra*, is in accord.  "[t]ime spent traveling during which no specific legal work was recorded

2   was eliminated."

3            Giving plaintiffs' counsel every benefit of the doubt, I recommend disallowing

4   80% of the fees billed in this category, and allow the remaining 20% on the presumption that this

5   portion of time was spent performing some specific legal work on behalf of their clients.

6            **Recommended Disallowance:         $51,000.00**

7            2.    Clerical and Administrative Tasks.  Based on my review of the

8   billing records, there appear to be numerous instances in which clerical and administrative tasks

9   are billed at paralegal, and even attorney, rates.  Total fees billed in this category are $64,975.75.

10  A few examples are:

11           On 1/8/99, RPC billed 4.0 hours ($300.00) to "number docs.  Re medical

12  records of documents for David Badillo."

13           On 1/11/99, ML billed 0.80 hour ($116.00) for "organization of C-files and

14  medical files 8."

15           On 1/13/99, JIVED billed 0.30 hour ($36.00) for "phone call with copy service re

16  bates-stamping inmate records."

17           There are many more entries like these, which involve administrative or clerical

18  tasks which should not require the specialized skills of a paralegal or attorney.

19           Again, giving plaintiffs the benefit of the doubt, I recommend disallowing 80% of

20  the fees billed in this category, and suggest payment of the remaining 20% based on the

21  presumption that some of these activities required more than simply clerical skills.

22           **Recommended Disallowance:         $52,000.00**

23           G.    *"Core" and "Non-Core" Billable Activities Are Compensated at Different*

24  *Rates.*  I reviewed *Guckenberger v. Boston University*, 8 F. Supp. 2d 91 (D. Mass. 1998) for

25  guidance in identifying core versus non-core billing activities by plaintiffs' counsel.  I found

26  *Guckenberger* particularly helpful, as it provided definitions and examples of various key

27  concepts.   In the interest of full disclosure, I am personally familiar with the *Guckenberger* case,

28  as I was retained as an expert by the defendant university in connection with a fee petition

                                             22.

1  following disabled students' successful class action lawsuit under the ADA and the

2  Rehabilitation Act.

3  Core activities include legal research, writing legal documents, court appearances,

4  negotiation and other conversations with opposing counsel, monitoring, implementation of court

5  orders, and writing and reading internal memoranda which involve independent legal thought.

6  *Ibid.*, at p. 101.

7  Non-core activities, on the other hand, generally involve less demanding tasks,

8  such as letter writing, telephone conversations, inter-office conferencing, and attendance at court

9  hearings in a non-participatory capacity. "Normally, time spent preparing fee petitions is

10  considered non-core," unless there are "significant legal disputes on this issue" *Ibid.*, at p. 102.

11  Blocked entries are treated as one-half core, and one-half non-core. Entries (for costs) that are

12  too vague or left blank do not warrant reimbursement. *Ibid.*, p. 111. The court approved rates

13  for non-core activities at two-thirds of the approved billing rates for core activities *Ibid.*, at

14  p. 102.

15  1.  Preparation of Petition for Fees.  I reviewed and sorted the billing records

16  for references to "fees" and "billing" in order to identify and tally the billing entries which

17  pertain to plaintiffs' efforts to obtain reimbursement for fees and costs. Total fees expended by

18  plaintiffs in this endeavor in the first part of the case (Jan. 1, 1996 through Dec. 31, 1999) are

19  $8,513.25; total fees expended since that time (Jan. 1, 2000 to March 31, 2000) are $40,720.50.

20  The grand total is $49,233.75.

21  Preparing fee petitions is generally not a core activity. As such, it is paid at two-

22  thirds of a core activity. Therefore, I recommend disallowing one-third of the fees billed for this

23  category, or $16,000.

24  **Recommended Disallowance:        $16,000.00**

25  2.  Letter Writing and Reviewing Correspondence. The *Guckenberger* court

26  specifically identified letter writing as a non-core activity (at p. 101). It also indicated that

27  merely reading and reviewing correspondence was not a core activity, and without something

28  more, may not be compensable at all (*Ibid.* at pp. 106-107).

23.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1    In this case, billing for letter drafting by attorneys totals $48,868,00.  Reviewing

2  correspondence adds another $19,747.00.  The grand total is $68,615.00.  Since these activities

3  are compensated at two-thirds of core, one-third of these fees, or $23,000, should be disallowed.

4    **Recommended Disallowance:       $23,000.00**

5    3.    <u>Blocked Billing</u>.  PMS is the only one of plaintiffs' law firms currently

6  engaged in blocked billing.  I estimate that 50% of PMS' entries are block-billed.  According to

7  *Guckenberger*, blocked billing is considered one-half core, and one-half non-core.  PMS' total

8  billing in this case is $315,946.25.  Approximately one-half of that amount is $158,000.  This is

9  non-core, compensable at two-thirds of core.  Therefore, one-third, or $52,000, should be

10  disallowed.

11    **Recommended Disallowance:       $52,000.00**

12    4.    <u>Vague Entries</u>.  According to *Guckenberger*, a blank or vague cost entry

13  may not even warrant payment.  As discussed above, vague entries appear throughout the billing

14  records, fairly equally distributed among all the law firms.  I estimate that approximately 5% to

15  10% of all entries are sufficiently vague as to create substantial uncertainty about what was done

16  or billed for.

17    5% to 10% of the total fees billed equals approximately $107,000 to $214,000.

18  Taking the mid-point of that range, or $157,000, I recommend disallowing one-third of that

19  amount as non-core.

20    **Recommended Disallowance:       $52,000.00**

21    H.    *Costs*.  Exhibit H sets out all the costs by category and by firm, for each of

22  the three billing periods for which fees are demanded.  I observed two main problems with the

23  cost entries: insufficient or no documentation, and charging for items or services which should be

24  included in overhead.  These deficiencies appear throughout almost all of the billing records.  To

25  the extent any particular item lacks an adequate explanation or documentation, the auditor

26  recommends the item be disallowed.

27    1.    <u>January 1, 1996 through December 31, 1999 - $237,884.89</u>

28    a.    LOEBF:  The cost bill presented for this period by LOEBF

24.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1  totals only $47.75, but contains scant supporting information. Four documents received by fax

2  are charged at $6.00, $4,00, $8.00, and $2,00, without explanation for the variance. If the faxes

3  were received at a fax center – such as Kinko's, for example – who imposed a charge which

4  LOEBF now seeks to recoup, then LOEBF should have stated so on the cost bill. On the other

5  hand, if LOEBF received the faxes at their office, then an explanation is needed to explain why it

6  is not included in overhead.

7         There is also a $20 charge for "travel/park" on 8/7/98, and a $7.75

8  charge for "travel/meal" on the same date, without further explanation. From this limited

9  information, I have no means of knowing what connection these items have to the case, if any. I

10  recommend disallowing 50% of the LOEBF cost bill for this period.

11             **Recommended disallowance:**    **$24.00**

12         b.    DREDF:  The cost bill presented for this period by

13  DREDF totals $199.99.   Of that total, $46.75 for "inside/unknown copying" does not

14  show the per-page copy charge, nor is the basis for fax charges of $27.00 stated. I recommend

15  disallowing 25% of the DREDF cost bill for this period, due to insufficient documentation.

16             **Recommended disallowance:**    **$50.00**

17         c.    PMS:   The cost bill presented for this period by PMS totals

18  $42,233.94. There is a $15,067.39 charge for "inside/unknown copying," consisting of 25 fairly

19  detailed entries for relatively small jobs, and a $7,625.25 charge for "copying & printing:

20  summary" on 11/18/99. If the latter is a special copy job, the cost bill should so state. If this

21  charge is something else, perhaps even an error, it needs to be addressed. In either case, I

22  recommend disallowing the entry.

23         There is a similar situation as to the charges for LEXIS/ Westlaw:

24  total costs for these services are $4,573.97. There are two well-documented items (each for less

25  than $100), and a third for $4,470.77, described as "computer research: summary." I recommend

26  disallowing the latter entry, barring receipt of additional information connecting it to this case.

27         I also question $200.64 for office supplies and "document binding"

28  services, unless the items in question are so unique that they would not generally be stocked by a

25.

1  law firm. This category also needs further explanation.

2  **Recommended disallowance:        $12,096.02**

3      d.    RBA:   The cost bill presented for this period by RBA

4  totals $46,578.42. The largest single cost item is $23,455.10 for "inside/unknown copying."

5  While a few small copy jobs are relatively well documented – although lacking per-page cost

6  information – this category is rounded out by a single cost item for $22,563.49, simply for

7  "copying. The date of service is given as 7/31/98. I recommend disallowing this item barring

8  receipt of an explanation and appropriate documentation.

9      A $1,764.00 charge on 7/21/98 for "fax machine" also requires

10  additional explanation. It is not clear to me if this charge is for purchase of a fax machine, and if

11  so, why it was necessary. I therefore recommend disallowing this charge.

12      I also noted that timekeeper MWB charged the law firm for a taxi

13  ride home after an all-day trip to Los Angeles on 2/29/00, in the amount of $18.98. Although

14  commuting costs are generally not appropriate for reimbursement, I give plaintiffs the benefit of

15  the doubt and make no deduction for this charge.

16  **Recommended disallowance:        $24,327.48**

17      MDBE:  The cost bill presented for this period by MDBE

18  totals $102.060.38. The biggest single category is for expert fees, totaling $35,610.25. There is

19  absolutely no backup for this entry, and I recommend disallowing it in its entirety.

20  *Guckenberger* construes a similar fact situation in denying certain expert costs, *supra*, at pp. 111-

21  112.

22  Here, plaintiffs offer the Court absolutely no grounds for assessing
the "reasonableness" of the fees charged. There is no indication of

23  each expert's rate, hours spent, nature of work, tasks performed,
dates, etc. – in essence, nothing other than the total charged. The

24  submissions are entirely insufficient as a matter of law... Though
exclusion is lamentable because several of the experts...were

25  extremely helpful to the Court, plaintiffs' failure to submit even the
slightest documentation forces the Court's hand here.

26      There are other large cost items similarly lacking adequate

27  explanation, often accompanied by a single-word generic description. These items fall well short

28  of being adequately supported. For example, an entry for $10,057.84 is simply labeled "copying

26.

Declaration of James P. Schratz
Case No. C 94-02307 CW

1  charges," one for $531.59 for "hotel," another for $6,595.53 for "transportation," and $43,348.72

2  for "local travel." All of these entries, totaling $20,623.68, need further clarification before they

3  can be approved for payment.

4          Finally, there are some entries which are a bit clearer, but generally

5  still not sufficiently supported or explained to be appropriate for payment as stated. For

6  example, $20.77 for "trial exhibits" is probably appropriate, $1,760.64 for "Federal Express"

7  may be justified, and $183.82 for "postage" does not seem unusual. Similarly, $10,030.75 for

8  "deposition/trial transcripts" and $4,330.36 for "court reporting" do not sound patently

9  unreasonable. Nevertheless, all of these entries need further documentation to be adequately

10  supported for payment. I recommend disallowance of 90% of MDBE's cost bill, until further

11  satisfactory information is received for all individual entries.

12          **Recommended disallowance:  $90,000.00**

13          f.    PLO: The cost bill presented for this period by PLO totals

14  $46,547.63. Cost items are generally adequately described, other than in connection with

15  experts' fees for Robertson and Strong , which require more detail about the services rendered.

16  See *Guckenberger, supra*. I note that inside copy costs are charged at 20 cents per page, which is

17  relatively expensive. Giving the benefit of the doubt to plaintiffs' counsel, I do not recommend

18  any disallowance.

19          2.    January 1 through March 31, 2000 (no monitoring) - $2,319.04

20          a.    PMS: Costs submitted for this period total $1,173.23. The

21  largest entry is $1,000 for "expert witness fees," which does not provide sufficient information

22  regarding this charge. See Guckenberger, supra. I recommend disallowing this charge.

23          **Recommended Disallowance:**    **$1,000.00**

24          b.    RBA: Costs submitted for this period total $606.65. One

25  entry in the amount of $223.25 for "copying" should be clarified as to the per-copy cost. I do not

26  recommend any disallowance.

27          c.    MDBE: Costs submitted for this period total $384.64, with

28  all but $0.60 for "Infortext-photocopying charges." As no other information or documentation

1  was provided supporting these charges, I recommend disallowing the entire amount.

2                      **Recommended Disallowance:**     **$384.64**

3               d.     PLO: Costs for this period total $534.78.  A charge in the

4  amount of $249.60 for "copying costs from meter 1/1/00 thru 3/31/00" requires further

5  explanation.  No disallowance is recommended.

6           3.     <u>January 1 through March 31, 2000 (with monitoring) - $379.78</u>

7               a.     RBA: Costs for this period total $213.45.  A charge for

8  "copying" in the amount of $152.45 should provide per-page cost information.  I do not

9  recommend any disallowance.

10               b.     MDBE : Costs for this period total $166.33. $111.15 of the

11  total charges are for "Infortext-photocopying charges."   As no other information or

12  documentation was provided supporting these charges, I disallow $111.15.

13                      **Recommended Disallowance:**     **$111.15**

14      I declare under penalty of perjury under the laws of the State of California that the

15  foregoing is true and correct.  Dated this 14th day of July, 2000, in San Francisco, California.

16

17                                JAMES P. SCHRATZ

18

19

20

21

22

23

24

25

26

27

28

Declaration of James P. Schratz
Case No. C 94-02307 CW

SUMMARY OF FEES AUDITED
ARMSTRONG v. DAVIS, et al.

| | | | |
|---|---|---|---|
| | Total Fees Billed: | | **$2,143,604.00** |
| | *Recommended Disallowances:* | | |
| A. | Excessive Hourly Rates | | |
| | Attorneys: | | 368,422.00 |
| | Paralegals and Legal Assistants: | | 161,354.50 |
| C. | Excessive Staffing | | 300,000.00 |
| D. | Excessive Conferencing | | 185,000.00 |
| E. | Excessive Billing: | | |
| | 2. Deposition Preparation and Attendance | | 25,000.00 |
| | 3. Excessive Staffing at Trial | | 20,000.00 |
| F. | Billing Irregularities: | | |
| | 1. Travel | | 51,000.00 |
| | 2. Clerical and Administrative Tasks | | 52,000.00 |
| G. | "Core" and Non-Core" Billable Activities | | |
| | 1. Preparation of Petition for Fees | | 16,000.00 |
| | 2. Letter Writing and Reviewing Correspondence | | 23,000.00 |
| | 3. Blocked Billing | | 52,000.00 |
| | 4. Vague Entries | | 52,000.00 |
| | Total Disallowed Fees: | | $1,305,776.50 |
| | **TOTAL FEES RECOMMENDED:** | | **$837,827.50** |
| | % of Fees Allowed: | | 39% |

29.

SUMMARY OF COSTS AUDITED
ARMSTRONG v. DAVIS, et al.

| | |
|---|---:|
| Total Costs Billed: | **$240,747.19** |

*Recommended Disallowances:*

For the period 1/1/96 to 12/31/99:

| | |
|---|---:|
| LOEBF | 24.00 |
| DREDF | 50.00 |
| PMS | 12,096.02 |
| RBA | 24,327.48 |
| MDBE | 90,000.00 |
| Subtotal: | 126,497.50 |

For the period 1/1/00 - 3/31/00 (no. monitoring)

| | |
|---|---:|
| PMS | 1,000.00 |
| MDBE | 384.64 |
| Subtotal: | 1,384.64 |

For the period 1/1/00 - 3/31/00 (monitoring)

| | |
|---|---:|
| MDBE | 111.15 |
| Subtotal | 111.15 |

| | |
|---|---:|
| TOTAL DISALLOWED COSTS: | 127,993.29 |
| **TOTAL COSTS RECOMMENDED:** | **$112,753.90** |
| % of Costs Allowed: | 46.8% |

30.

EXHIBIT    A

*Jim Schratz and Associates*

LITIGATION MANAGERS

**The following is a representative list of cases in which Jim Schratz & Associates was retained to conduct legal fee audits and provide expert testimony. As shown, the combined savings to the clients on this list totaled over $44 million.**

Total Client Savings:
$44 million

Percentage of Fees Disallowed:
67.3%

| Case Name | Client/Description | Savings to Client | % of Fees Disallowed |
|---|---|---|---|
| *Madrid v. Gomez* | Retained by the California Dept. of Justice to audit a fee request of $8.3 million. The audit disclosed a number of billing concerns, and resulted in a negotiated settlement of $4.25 million. | $4 million | 48% |
| *Rios v. Rowland* | Retained by the California Dept. of Justice to audit a fee request of $1.5 million. The audit disclosed a number of billing problems. Based on the audit report, the court awarded $227,000. | $1,273,000 | 85% |
| *CVB Corporation v. John Cavalucci* | Retained by a private client to audit a fee request of approximately $2 million. Based on the audit findings, the court awarded approximately $1 million. | $1 million | 50% |
| *Aquilar v. Avis Rent-A-Car* | Retained by Avis Rent-A-Car to audit a fee request of $1.3 million. Based on the audit report, the court awarded $680,000. | $ 620,000 | 48% |
| *McCauley v. BFC Direct Mailing* | Retained by Howard Jarvis Tax Reform Movement to audit a fee request of $1.1 million. Based on the audit report, the court allowed $525,000. | $ 575,000 | 52% |
| *Panther Hollow Corporation v. City of Pittsburgh* | Retained by the City of Pittsburgh, PA to audit a fee request of approximately $1 million. Based on the audit report, the court allowed approximately $175,000 | $ 825,000 | 82.5% |

*Jim Schratz and Associates*

LITIGATION MANAGERS

| | | | |
|---|---|---|---|
| *Guckenberger v. Boston University* | Retained by Boston University to audit a fee request of approximately $2 million. Based on the audit report, the court awarded approximately $1 million. | $1 million | 50% |
| *Burns-Vidlak v. Chandler* | Retained by the Hawaii Attorney General's Office to audit a fee request of $1 million. Based on the audit report, the court awarded $100,000. | $ 900,000 | 90% |
| *Florida Asset Financing Corp. v. Borton, Petrini & Conron* | Retained by a private client to audit a fee request of $600,000. Based on the audit report, the court awarded $80,000. | $ 520,000 | 87% |
| *Wisconsin Retired Teachers v. State of Wisconsin* | Retained by the State of Wisconsin to audit a fee request of $42 million. Based in part on the audit report, the parties reached a negotiated settlement of approximately $8 million. | $34 million | 81% |

**Total Savings to Clients:**     $44,713,000
**Average Percent Disallowed:**                  67.3%

As an independent legal fee auditor, Jim Schratz & Associates cannot guarantee savings will result from its audit.

EXHIBIT    B

# *Jim Schratz and Associates*

LITIGATION MANAGERS

## Jim Schratz
PRESIDENT

- Appointed by District Court in Northern Mariana Islands to audit $22 million in legal fees in *The Estate of Larry Lee Hillblom*, one of the founders of DHL Express, whose estate was estimated to be worth $1 billion.

- Retained by the State of Wisconsin to audit a fee request of $42 million.

- Retained by the State of Hawaii, Department of the Attorney General; State of Georgia, Department of Transportation; State of California, Department of Insurance and Department of Justice, to conduct legal fee audits of tens of millions of dollars.

- Retained by the U.S. Department of Forestry, FDIC and RTC to conduct legal fee audits on behalf of the Federal Government.

- Retained by the City and County of San Francisco, California; City of Huntington Beach, California; City of Pittsburgh, Pennsylvania; City of Sunrise, Florida; and numerous other governmental agencies.

- Retained by major national retailer to audit $9 million in legal fees.

- Qualified as expert witness on issues involving reasonableness of attorneys' fees and proper claims handling procedures in state and federal court.

- Appointed as arbitrator to the State Bar of California's Mandatory Fee Arbitration Program.

- Appointed as arbitrator for cases filed in Sonoma County Courts.

- Conducted over 650 legal audits of various law firms throughout the country.

- Described by the American Bar Association Journal as a "major player in the field of legal fee audits."

- Quoted frequently in The Wall Street Journal, The American Lawyer, The National Law Journal, and numerous other publications.

*Jim Schratz and Associates*

LITIGATION MANAGERS

- Delivered paper to the 1995 National Convention of Risk Managers on the bad faith liability of the insurance industry for mismanagement of legal fees.

- Retained as consultant and independent expert witness by both insureds and insurance companies to evaluate the claims handling procedures and policies of numerous insurance companies.

- Consultant to California Department of Insurance.

### July, 1990 to December 31, 1993
### Vice President, Major Claims, Fireman's Fund Insurance Company

- Featured in a front page article in The Wall Street Journal and appeared on NBC's "Today Show," ABC's "Business World," and the nationally syndicated shows, "Inside Edition" and "Hard Copy," for his success in fighting insurance fraud.

- Established and directed Fireman's Fund's highly publicized nationwide investigation of attorney abusive billing practices as featured in The Wall Street Journal, Forbes Magazine, NBC's "Today Show" and ABC's "Business World."

- Personally directed the successful defense of *McColm v. Nelson* as featured on NBC's "Today Show," "Inside Edition," and in The Wall Street Journal.

- Responsible for case management of all cases with a potential exposure of $3 million or more and all cases with high publicity value, including *Art Buchwald v. Paramount Pictures* and *Brian Wilson v. A&M Records*.

- Member of 7-member Claims Management Group, responsible for management of Fireman's Fund Claims Department.

- Member of Future Environment Committee, responsible for long term strategic planning for Fireman's Fund Claims Department.

- Personally adjusted numerous claims with high bad faith exposure including the Alliance Case, a conspiracy of 20 attorneys in Southern California which was featured on CBS "Sixty Minutes" and in The Wall Street Journal.

- Responsible for nationwide automobile and general liability anti-fraud program with special emphasis on assuring proper claims handling in light of high potential for extra-contractual exposure.

*Jim Schratz and Associates*

LITIGATION MANAGERS

### 1985 to 1990
**Assistant Vice President, Major Litigation Unit, Fireman's Fund Insurance Company**

- Personally supervised over 100 legal audits of outside defense counsel with special attention to proper claims handling and Fireman's Fund's obligations to its insureds.

- Personally supervised and testified in *Fireman's Fund v. Irvings Savings Bank* which resulted in a $7 million recovery.

- Responsible for successful settlement of the $65 million bankruptcy of The Woodson Company and the multi-million dollar extra contractual claims from approximately 200 insureds.

### 1983 to 1985
**Director, Corporate Litigation, Fireman's Fund Insurance Company**

- Established and supervised 16-member Major Litigation Unit with nationwide responsibility for construction defect, land subsidence, sexual molestation and other labor intensive, high profile cases with special emphasis on assuring proper claims handling techniques.

- Shared responsibility for supervising all extra-contractual suits against Fireman's Fund Insurance Company.

**1980 to 1983 - Assistant General Counsel, Fireman's Fund Insurance Company**

**1978 to 1980 - Associate, Rosenblum, Fenolio, Parish, Jack & Bacigalupi, San Francisco**

**1976 to 1978 - Associate, Heller, Ehrman, White, & McAuliffe, San Francisco**

EDUCATION:

University of San Francisco Law School, J.D. 1976
     Editor-in-Chief, Law Review, Graduated Top 5%

University of Illinois, M.A. Political Science, 1972

State University of New York at Buffalo, B.A. 1969

- Over the past 10 years, taught at various law schools and universities in the Bay area and lectured throughout the United States and in Europe.

- References furnished upon request.

EXHIBIT     C

# PARTNER, ASSOCIATE & LEGAL ASSISTANT BILLING RATE SURVEY

## *for* Law Firms

### ~ National Edition ~

*June 1, 1999*

Cost: $425.00

© Copyright 1999
National Survey Center
Washington, DC

Fax: (202) 966-5696
Telephone: (202) 244-3937

# SAN FRANCISCO LAW FIRMS

## San Francisco ~ Partner Summary
### by Law Firm Size

#### Percentage of Partners Per Billing Rate Level

| Firm Size (No. of Attorneys) | Number of Firms | Average Billable Hours | HOURLY BILLING RATES | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | <$150 | $150 – 174 | $175 – 199 | $200 – 224 | $225 – 249 | $250 –274 | $275 – 299 | $300 – 324 | $325 – 349 | $350 – 374 | $375 – 399 | $400+ | |
| 175+ | 2 | 1,788 | | | | 0.9% | 2.8% | 7.3% | 21.1% | 11.9% | 19.3% | 8.3% | 17.4% | 11.0% | 100.0% |
| 125 - 174 | | | | | | | | | | | | | | | |
| 60 - 124 | 2 | 1,850 | 2.1% | 8.3% | 41.7% | | | 4.2% | | 10.4% | 4.2% | 12.5% | 4.2% | 12.5% | 100.0% |
| 30 - 59 | 1 | 1,650 | | | | | | 27.3% | | | 13.6% | 31.8% | 18.2% | 9.1% | 100.0% |
| 10 - 29 | 8 | 1,728 | 5.3% | 1.3% | 3.9% | 9.2% | 17.1% | 26.3% | 17.1% | 10.5% | 5.3% | 2.6% | 1.3% | | 100.0% |
| 5 - 9 | 9 | 1,569 | | 4.3% | 8.7% | 17.4% | 4.3% | 19.6% | 6.5% | 26.1% | 4.3% | 8.7% | | | 100.0% |
| Total/Average | 22 | 1,668 | 1.7% | 2.3% | 9.0% | 5.3% | 6.0% | 15.0% | 13.0% | 12.6% | 10.6% | 9.3% | 8.6% | 6.6% | 100.0% |

#### Number of Partners Per Billing Rate Level

| Firm Size (No. of Attorneys) | Number of Firms | Average Billable Hours | HOURLY BILLING RATES | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | <$150 | $150 – 174 | $175 – 199 | $200 – 224 | $225 – 249 | $250 –274 | $275 – 299 | $300 – 324 | $325 – 349 | $350 – 374 | $375 – 399 | $400+ | |
| 175+ | 2 | 1,788 | | | | 1 | 3 | 8 | 23 | 13 | 21 | 9 | 19 | 12 | 109 |
| 125 - 174 | | | | | | | | | | | | | | | |
| 60 - 124 | 2 | 1,850 | 1 | 4 | 20 | | | 2 | | 5 | 2 | 6 | 2 | 6 | 48 |
| 30 - 59 | 1 | 1,650 | | | | | | 6 | | | 3 | 7 | 4 | 2 | 22 |
| 10 - 29 | 8 | 1,728 | 4 | 1 | 3 | 7 | 13 | 20 | 13 | 8 | 4 | 2 | 1 | | 76 |
| 5 - 9 | 9 | 1,569 | | 2 | 4 | 8 | 2 | 9 | 3 | 12 | 2 | 4 | | | 46 |
| Total/Average | 22 | 1,668 | 5 | 7 | 27 | 16 | 18 | 45 | 39 | 38 | 32 | 28 | 26 | 20 | 301 |

© Copyright 1999 National Survey Center, Washington, DC

EXHIBIT    D

Fee Adjustment for Billing Period 1/1/96 - 12/31/99

| | Hours | Rate | Fees | Adj. Rate | Fees | Difference |
|---|---|---|---|---|---|---|
| **PLO** | | | | | | |
| Donald Specter (78) | 626.8 | $370 | $231,916.00 | $225 | $141,030.00 | -$90,886.00 |
| Dan Siegal (92) | 87.1 | $240 | $20,904.00 | $225 | $19,597.50 | -$1,306.50 |
| Heather MacKay (92) | 43.7 | $240 | $10,488.00 | $225 | $9,832.50 | -$655.50 |
| Total: | | | | | | -$92,848.00 |
| | | | | | | |
| **RBA** | | | | | | |
| Michael Bien (80) | 300.1 | $365 | $109,536.50 | $225 | $67,522.50 | -$42,014.00 |
| Jane Kahn (83) | 31.5 | $280 | $8,820.00 | $225 | $7,087.50 | -$1,732.50 |
| Wm., Fernholz (93) | 740.8 | $250 | $185,200.00 | $225 | $186,680.00 | -$18,520.00 |
| Total: | | | | | | -$62,266.50 |
| | | | | | | |
| **PMS** | | | | | | |
| Caroline Mitchell (89) | 424.75 | $315 | $133,796.25 | $225 | $95,568.75 | -$38,227.50 |
| Total: | | | | | | -$38,227.50 |
| | | | | | | |
| **LOEBF** | | | | | | |
| Elaine Feingold (81) | 9.3 | $340 | $3,162.00 | $225 | $2,092.50 | -$1,069.50 |
| Total: | | | | | | -$1,069.50 |
| | | | | | | |
| **DREDF** | | | | | | |
| Linda Kilb (88) | 4.6 | $285 | $1,311.00 | $225 | $1,035.00 | -$276.00 |
| Jan Garrett (90) | 39.7 | $265 | $10,520.50 | $225 | $8,932.50 | -$1,588.00 |
| Total: | | | | | | -$1,864.00 |
| | | | | | | |
| **MDBE** | | | | | | |
| Warren George (71) | 52.8 | $370 | $19,536.00 | $225 | $11,880.00 | -$7,656.00 |
| Frank Kennamer (90) | 101.9 | $275 | $28,022.50 | $225 | $22,927.50 | -$5,095.00 |
| Anthony Davis (95) | 73.6 | $240 | $17,664.00 | $225 | $16,560.00 | -$1,104.00 |
| John Wadsworth (93) | 185.2 | $240 | $44,448.00 | $225 | $41,670.00 | -$2,778.00 |
| John Hoar (97) | 43.2 | $210 | $9,072.00 | $150 | $6,480.00 | -$2,592.00 |
| Jennifer Jonak (97) | 1332.8 | $210 | $279,888.00 | $150 | $199,920.00 | -$79,968.00 |
| Colleen Severance (97) | 17.2 | $210 | $3,612.00 | $150 | $2,580.00 | -$1,032.00 |
| Zahavah Levine (96) | 92.5 | $210 | $19,425.00 | $150 | $13,875.00 | -$5,550.00 |
| James R. Slaughter (97) | 36.9 | $210 | $7,749.00 | $150 | $5,535.00 | -$2,214.00 |
| Eric Pierson (97) | 135.3 | $210 | $28,413.00 | $150 | $20,295.00 | -$8,118.00 |
| Joy Fuyuno (97) | 74.2 | $210 | $15,582.00 | $150 | $11,130.00 | -$4,452.00 |
| Kevin Vosen (97) | 92.2 | $210 | $19,362.00 | $150 | $13,830.00 | -$5,532.00 |
| Jamie Weyland (97) | 31.4 | $210 | $6,594.00 | $150 | $4,710.00 | -$1,884.00 |
| Anthony Falzone (97) | 14.7 | $210 | $3,087.00 | $150 | $2,205.00 | -$882.00 |
| Neha Nissen (97) | 103.7 | $210 | $21,777.00 | $150 | $15,555.00 | -$6,222.00 |
| Itzel Berrio (97) | 109.8 | $190 | $20,862.00 | $150 | $16,470.00 | -$4,392.00 |
| Arlene Chow (98) | 79.6 | $190 | $15,124.00 | $150 | $11,940.00 | -$3,184.00 |
| Anjani Ragade (98) | 54.5 | $190 | $10,355.00 | $150 | $8,175.00 | -$2,180.00 |
| Noam Mendelson (97) | 52.9 | $190 | $10,051.00 | $150 | $7,935.00 | -$2,116.00 |
| Robert Lee (97) | 98.0 | $190 | $18,620.00 | $150 | $14,700.00 | -$3,920.00 |
| Total: | | | | | | -$150,871.00 |

## Fee Adjustment for Billing Period 1/1/00 - 3/31/00  (no monitoring)

| | Hours | Rate | Fees | Adj. Rate | Fees | Difference |
|---|---|---|---|---|---|---|
| **PLO** | | | | | | |
| Donald Specter (78) | 3.1 | $370 | $1,147.00 | $225 | $697.50 | -$450.00 |
| Total: | | | | | | -$450.00 |
| | | | | | | |
| **RBA** | | | | | | |
| Michael Bien (80) | 11.7 | $365 | $4,270.50 | $225 | $2,632.50 | -$1,638.00 |
| Wm., Fernholz (93) | 94.3 | $250 | $23,575.00 | $225 | $21,217.50 | -$2,357.50 |
| Total: | | | | | | -$3,995.50 |
| | | | | | | |
| **MDBE** | | | | | | |
| Warren George (71) | 0.5 | $370 | $185.00 | $225 | $112.50 | -$72.50 |
| Jennifer Jonak (97) | 86.4 | $215 | $18,576.00 | $150 | $12,960.00 | -$5,616.00 |
| Joy Fuyuno (97) | 0.2 | $215 | $43.00 | $150 | $30.00 | -$13.00 |
| Total: | | | | | | -$5,701.50 |

Fee Adjustment for Billing Period 1/1/00 - 3/31/00  (for monitoring)

| | Hours | Rate | Fees | Adj. Rate | Fees | Difference |
|---|---|---|---|---|---|---|
| **PLO** | | | | | | |
| Donald Specter (78) | 42.8 | $370 | $15,836.00 | $225 | $9,630.00 | -$6,206.00 |
| Total: | | | | | | -$6,206.00 |
| | | | | | | |
| **RBA** | | | | | | |
| Michael Bien (80) | 23.8 | $365 | $8,687.00 | $225 | $5,355.00 | -$3,332.00 |
| Jane Kahn (83) | 0.4 | $280 | $112.00 | $225 | $90.00 | -$22.00 |
| Wm., Fernholz (93) | 16.1 | $250 | $3,975.00 | $225 | $3,622.50 | -$352.50 |
| Total: | | | | | | -$3,706.50 |
| | | | | | | |
| **PMS** | | | | | | |
| Caroline Mitchell (89) | 10.75 | $315 | $3,386.25 | $225 | $2,418.75 | -$967.50 |
| Total: | | | | | | -$967.50 |
| | | | | | | |
| **MDBE** | | | | | | |
| Warren George (71) | 1.4 | $370 | $518.00 | $225 | $315.00 | -$203.00 |
| Jennifer Jonak (97) | 0.7 | $215 | $150.50 | $150 | $105.00 | -$45.50 |
| Total: | | | | | | -$248.50 |

EXHIBIT    E

07/07/00

EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
ARMSTRONG - MERGER I
#'S 2212, 14, 19, 21, 22, 23

Page #:0001

```
AT  ATTORNEY                      Admitted Date        Rate      Adj.
AED DAVIS, ANTHONY E.          12/07/95 12/17/98     240.00    112.50
Entries: 34    Days:34    Hours:73.60    Fees:17664.00     Adj. :8280.00

ALC CHOW, ARLENE               12/07/88 01/05/99     190.00    112.50
Entries: 15    Days:15    Hours:79.60    Fees:15124.00     Adj. :8955.00

ARR RAGADE, ANJANI (? YR)         /  /  12/17/98     190.00    112.50
Entries: 27    Days:25    Hours:54.50    Fees:10355.00     Adj. :6131.25

ATF FALZONE, ANTHONY           12/04/97 02/04/99     210.00    112.50
Entries: 4     Days:4     Hours:14.70    Fees:3087.00      Adj. :1653.75

CNM MITCHELL, CAROLINE N.      12/11/89 01/05/98     315.00    112.50
Entries: 150   Days:147   Hours:424.75   Fees:133796.25    Adj. :47784.38

CS  SEVERANCE, COLLEEN         12/09/97 09/14/98     210.00    112.50
Entries: 12    Days:12    Hours:17.20    Fees:3612.00      Adj. :1935.00

DBS SIEGEL, DAN B.             12/14/92 12/01/98     240.00    112.50
Entries: 33    Days:17    Hours:87.10    Fees:20904.00     Adj. :9798.75

DS  SPECTER, DONALD            11/29/78 07/10/98     370.00    112.50
Entries: 544   Days:178   Hours:626.80   Fees:231916.00    Adj. :70515.00

EP  PIERSON, ERIC              12/17/97 12/16/98     210.00    112.50
Entries: 37    Days:37    Hours:135.30   Fees:28413.00     Adj. :15221.25

FBK KENNAMER, FRANK            04/22/92 12/17/98     275.00    112.50
Entries: 44    Days:44    Hours:101.90   Fees:28022.50     Adj. :11463.75

HM  MACKAY, HEATHER            12/14/92 09/30/98     240.00    112.50
Entries: 29    Days:16    Hours:43.70    Fees:10488.00     Adj. :4916.25

IB  BERRIO, ITZEO              12/08/97 04/06/99     190.00    112.50
Entries: 29    Days:29    Hours:109.80   Fees:20862.00     Adj. :12352.50

JEK JANE E. KAHN               12/03/84 01/16/99     280.00    112.50
Entries: 21    Days:21    Hours:31.50    Fees:8820.00      Adj. :3543.75

JG  GARRETT, JAN               01/01/90 06/17/98     265.00    112.50
                                        09/28/98       0.00      0.00
                                        09/28/98     265.00    112.50
Entries: 44    Days:31    Hours:39.70    Fees:10520.50     Adj. :4466.25

JKF FUYUNO, JOY                12/30/97 08/24/98     210.00    112.50
Entries: 30    Days:30    Hours:74.20    Fees:15582.00     Adj. :8347.50

JLJ JONAK, JENNIFER            12/09/97 08/10/98     210.00    112.50
Entries: 235   Days:234   Hours:1332.80  Fees:279888.00    Adj. :149940.00
```

07/07/00            EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES            Page #:0002
                              ARMSTRONG - MERGER I
                           #'S 2212, 14, 19, 21, 22, 23


AT  ATTORNEY                        Admitted Date         Rate       Adj.
JMW WEYLAND, JAMIE (? YR)            /  /  12/18/98      210.00     112.50
Entries: 15     Days:13    Hours:31.40   Fees:6594.00           Adj. :3532.50

JSH HOAR, JOHN S.                       12/09/97 01/14/99   210.00     112.50
Entries: 14     Days:14    Hours:43.20   Fees:9072.00           Adj. :4860.00

JVW WADSWORTH, JOHN                     12/10/93 10/08/96   240.00     112.50
Entries: 71     Days:70    Hours:185.20   Fees:44448.00          Adj. :20835.00

KBV VOSEN, KEVIN                        12/09/97 08/27/98   210.00     112.50
Entries: 27     Days:27    Hours:92.20   Fees:19362.00          Adj. :10372.50

KS  SIMPSON, KIMBERLY                   12/07/95 12/09/98   185.00     112.50
Entries: 10     Days:6     Hours:23.80   Fees:4403.00           Adj. :2677.50

LAI ELAINE B. FEINGOLD                  01/01/81 01/29/98   340.00     112.50
                                                 10/09/98     0.00       0.00
                                                 11/09/98   340.00     112.50
                                                 03/17/99     0.00       0.00
                                                 05/28/99   340.00     112.50
Entries: 23     Days:22    Hours:9.30   Fees:3162.00            Adj. :1046.25

LK  KILB, LINDA                         12/07/88 03/18/99   285.00     112.50
Entries: 6      Days:2     Hours:4.60   Fees:1311.00            Adj. :517.50

MLL LASSER, MARK (96)                   12/26/98 01/08/99   225.00     112.50
Entries: 23     Days:23    Hours:51.50   Fees:11587.50          Adj. :5793.75

MWB BIEN, MICHAEL W.                    01/15/81 01/17/96   365.00     112.50
Entries: 197    Days:196   Hours:300.10   Fees:109536.50        Adj. :33761.25

NM  MENDELSON, NOAM                     12/23/97 08/27/98   190.00     112.50
Entries: 16     Days:16    Hours:52.90   Fees:10051.00          Adj. :5951.25

NSN NISSEN, NEHA                        12/09/97 01/15/99   210.00     112.50
Entries: 33     Days:33    Hours:103.70   Fees:21777.00         Adj. :11666.25

PQ  QUINTILIANI, PAULA                  12/06/98 02/24/99   180.00     112.50
Entries: 3      Days:3     Hours:24.00   Fees:4320.00           Adj. :2700.00

RHL LEE, ROBERT H.                      12/09/97 08/27/98   190.00     112.50
Entries: 28     Days:28    Hours:98.00   Fees:18620.00          Adj. :11025.00

RJS SLAUGHTER, JAMERS R. (? YR)      /  /   01/21/99   210.00     112.50
Entries: 13     Days:13    Hours:36.90   Fees:7749.00           Adj. :4151.25

SJM MARGOLIS, SHANA J.                  10/30/97 09/24/98   225.00     112.50
Entries: 94     Days:92    Hours:298.70   Fees:67207.50         Adj. :33603.75

07/07/00

EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
ARMSTRONG - MERGER I
#'S 2212, 14, 19, 21, 22, 23

| | Admitted Date | | Rate | Adj. |
|---|---|---|---|---|
| AT  ATTORNEY | | | | |
| SN  NORMAN, SARA | 01/01/95 | 04/01/98 | 225.00 | 112.50 |
| | | 03/12/99 | 0.00 | 0.00 |
| | | 03/12/99 | 225.00 | 112.50 |
| Entries: 842  Days:217  Hours:799.85  Fees:179898.75 | | | Adj. | :89949.38 |
| | | | | |
| WEG GEORGE, WARREN | | 12/13/72 02/18/97 | 370.00 | 112.50 |
| Entries: 41  Days:41  Hours:52.80  Fees:19536.00 | | | Adj. | :5940.00 |
| | | | | |
| WHD FERNHOLZ, WILLIAM H.D. | | 12/14/93 07/31/98 | 250.00 | 112.50 |
| Entries: 163  Days:159  Hours:741.30  Fees:185325.00 | | | Adj. | :83396.25 |
| | | | | |
| ZL  LEVINE, ZAHAVAH | | 07/09/97 11/17/98 | 210.00 | 112.50 |
| Entries: 30  Days:29  Hours:92.50  Fees:19425.00 | | | Adj. | :10406.25 |

Billers:   35  Hours:6289.10   Fees:1582439.50    Adj. :707490.00

```
                    EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
                              ARMSTRONG - MERGER I
                           #'S 2212, 14, 19, 21, 22, 23


  CL   CLERK                                    Date          Rate        Adj.
  CC   UNKNOWN                         /  /    08/04/98       60.00       35.00
       Entries: 4      Days:4      Hours:7.10   Fees:426.00        Adj. :248.50

  JH   HOLLAR, JACQUELINE              /  /    07/30/96      100.00       35.00
                                                04/17/99       75.00       35.00
                                                04/17/99      100.00       35.00
                                                04/19/99       75.00       35.00
       Entries: 26     Days:26    Hours:154.60  Fees:13870.00     Adj. :5411.00

  MUP  PONOMARCHUK, MARINA             /  /    07/30/96       75.00       35.00
       Entries: 32     Days:32    Hours:60.00   Fees:4500.00      Adj. :2100.00


       Billers:   3  Hours:221.70   Fees:18796.00   Adj. :7759.50
```

07/07/00                 EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
                                ARMSTRONG - MERGER I
                            #'S 2212, 14, 19, 21, 22, 23


IT   INFORMATION TECHNOLOGY                     Date          Rate        Adj.
FEL LEONG, F.E.                        /  /   01/08/99        125.00      35.00
Entries: 20      Days:20     Hours:19.50      Fees:2437.50         Adj. :682.50


   Billers:      1   Hours:19.50      Fees:2437.50       Adj. :682.50

07/07/00

EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
ARMSTRONG - MERGER I
#'S 2212, 14, 19, 21, 22, 23

Page #:0006

```
                                          Date          Rate       Adj.
PAR PARALEGAL
CAN NELSON, C.A.                     /  /  04/02/99     85.00      35.00
Entries: 48    Days:46    Hours:275.75   Fees:23438.75      Adj. :9651.25

CRP PLUNKETT, CLIONA R.              /  /  07/29/96    120.00      35.00
Entries: 29    Days:29    Hours:70.20    Fees:8424.00       Adj. :2457.00

DGD DELEON, DON G.                   /  /  12/14/98    110.00      35.00
Entries: 126   Days:126   Hours:566.70   Fees:62337.00      Adj. :19834.50

ED  DEGRAFF, EDIE                    /  /  08/24/98    120.00      35.00
Entries: 69    Days:45    Hours:111.80   Fees:13416.00      Adj. :3913.00

GF  FOLKERTH, GEOFFREY               /  /  04/12/99     75.00      35.00
Entries: 4     Days:4     Hours:27.50    Fees:2062.50       Adj. :962.50

JID DYE, JAMES I.                    /  /  07/08/96    120.00      35.00
Entries: 219   Days:218   Hours:875.00   Fees:105000.00     Adj. :30625.00

ML  LEWIS, MARIAN                    /  /  09/10/98    145.00      35.00
Entries: 106   Days:106   Hours:315.40   Fees:45733.00      Adj. :11039.00

NB  BREEN, N.                        /  /  01/11/99    135.00      35.00
Entries: 18    Days:18    Hours:71.00    Fees:9585.00       Adj. :2485.00

RDI IRISH, ROBERT D.                 /  /  04/19/99     95.00      35.00
Entries: 7     Days:6     Hours:35.40    Fees:3363.00       Adj. :1239.00

RPC CRUZ, R.P.                       /  /  11/16/98     75.00      35.00
Entries: 73    Days:73    Hours:216.05   Fees:16203.75      Adj. :7561.75

RSW WILSON, R.S.                     /  /  08/31/98    130.00      35.00
Entries: 117   Days:117   Hours:776.25   Fees:100912.50     Adj. :27168.75

TVH HILTON, T.V.                     /  /  01/07/99    130.00      35.00
Entries: 54    Days:54    Hours:194.25   Fees:25252.50      Adj. :6798.75
```

Billers:   12  Hours:3535.30   Fees:415728.00    Adj. :123735.50

EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
                                      ARMSTRONG - MERGER I
                              #'S 2212, 14, 19, 21, 22, 23

                                  T O T A L S

    Billers:    51  Hours:10065.60    Fees:2019401.00    Adj. :839667.50

    Total Days: 1447          Billed Days: 459    31.72%

    Week Days: 1033    Billed Week Days: 394    38.14

| Mon | Tue | Wed | Thu | Fri | Sat | Sun | |
|-----|-----|-----|-----|-----|-----|-----|--|
| 730 | 742 | 755 | 765 | 684 | 91 | 122 | = 3889 Entries Billed |
| 79 | 84 | 81 | 76 | 74 | 33 | 32 | = 459 Days Billed |

EXHIBIT    F

```
07/07/00              EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES          Page #:0001
                             ARMSTRONG - MERGER II
                                #'S 2211, 15, 16


AT  ATTORNEY                      Admitted Date          Rate        Adj.
DS  SPECTER, DONALD                 11/29/78 01/24/00   370.00      112.50
Entries: 12      Days:6    Hours:3.10    Fees:1147.00       Adj. :348.75


JKF FUYUNO, JOY K.                  12/30/97 01/20/00   215.00      112.50
Entries: 1       Days:1    Hours:0.20    Fees:43.00        Adj. :22.50


JLJ JONAK, JENNIFER L.              12/09/97 01/06/00   215.00      112.50
Entries: 31      Days:31   Hours:86.40   Fees:18576.00      Adj. :9720.00


MWB BIEN, MICHAEL W.                01/15/81 01/31/00   365.00      112.50
Entries: 16      Days:16   Hours:11.70   Fees:4270.50       Adj. :1316.25


SN  NORMAN, SARA                    01/01/95 03/11/00   225.00      112.50
Entries: 2       Days:2    Hours:0.10    Fees:22.50        Adj. :11.25


WEG GEROGE, WARREN                  01/01/71 01/21/00   370.00      112.50
Entries: 2       Days:2    Hours:0.50    Fees:185.00       Adj. :56.25


WHD FERNHOLZ, WILLIAM H.D.     12/14/93 01/04/00   250.00      112.50
Entries: 36      Days:34    Hours:94.30   Fees:23575.00     Adj. :10608.75


   Billers:    7  Hours:196.30   Fees:47819.00     Adj. :22083.75
```

```
07/07/00                EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES              Page #:0002
                             ARMSTRONG - MERGER II
                                #'S 2211, 15, 16


PAR PARALEGAL                               Date          Rate       Adj.
BC  CASH, BONNIE                      /  /  03/10/00      120.00      35.00
Entries: 1      Days:1     Hours:0.75    Fees:90.00        Adj. :26.25

DGD DELEON, DON G.                    /  /  01/18/00      110.00      35.00
Entries: 14     Days:14    Hours:43.60   Fees:4796.00      Adj. :1526.00

ED  DEGRAFF, EDIE                     /  /  01/04/00      120.00      35.00
Entries: 6      Days:6     Hours:20.20   Fees:2424.00      Adj. :707.00

ML  LEWIS, MARIAN                     /  /  01/12/00      145.00      35.00
Entries: 3      Days:3     Hours:2.60    Fees:377.00       Adj. :91.00

PD  DERRICO, PAM                      /  /  01/05/00      120.00      35.00
Entries: 17     Days:17    Hours:33.60   Fees:4032.00      Adj. :1176.00


  Billers:    5  Hours:100.75    Fees:11719.00    Adj. :3526.25
```

T O T A L S

Billers:    12  Hours:297.05        Fees:59538.00        Adj. :25610.00

Total Days:    88        Billed Days: 58    65.91%

Week Days: 64   Billed Week Days: 53    82.81

| Mon | Tue | Wed | Thu | Fri | Sat | Sun | |
|-----|-----|-----|-----|-----|-----|-----|--|
| 26  | 31  | 30  | 22  | 26  | 2   | 4   | = 141 Entries Billed |
| 9   | 11  | 12  | 11  | 10  | 2   | 3   | = 58 Days Billed |

EXHIBIT    G

EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES
ARMSTRONG - MERGER 11I
#'S 2210, 13, 17, 18

```
AT  ATTORNEY                        Admitted Date        Rate      Adj.
BG  GINSBERG, BETSY               12/06/99 02/10/00    145.00    112.50
Entries: 21    Days:14    Hours:45.40    Fees:6583.00      Adj. :5107.50

CNM MITCHELL, CAROLINE N.          01/01/89 01/06/00    315.00    112.50
Entries: 20    Days:20    Hours:10.75    Fees:3386.25      Adj. :1209.38

DS  SPECTER, DONALD                11/29/78 01/03/00    370.00    112.50
Entries: 99    Days:40    Hours:42.80    Fees:15836.00     Adj. :4815.00

JEK JANE E. KANE                   12/03/84 02/21/00    280.00    112.50
Entries: 2     Days:2     Hours:0.40    Fees:112.00        Adj. :45.00

JLJ JONAK, JENNIFER L.             12/09/97 01/03/00    215.00    112.50
Entries: 2     Days:2     Hours:0.70    Fees:150.50        Adj. :78.75

MWB BIEN, MICHAEL W.               01/15/81 01/06/00    365.00    112.50
Entries: 42    Days:39    Hours:24.10    Fees:8796.50      Adj. :2711.25

SJM MARGOLIS, SHANA J.             10/30/97 02/14/00    225.00    112.50
Entries: 8     Days:8     Hours:3.60    Fees:810.00        Adj. :405.00

SN  NORMAN, SARA                   07/07/97 01/25/00    225.00    112.50
Entries: 108   Days:32    Hours:62.70    Fees:14107.50     Adj. :7053.75

WEG GEROGE, WARREN                 01/01/71 01/03/00    370.00    112.50
Entries: 2     Days:2     Hours:1.40    Fees:518.00        Adj. :157.50

WHD FERNHOLZ, WILLIAM H.D.         12/14/93 01/24/00    250.00    112.50
Entries: 20    Days:19    Hours:15.90    Fees:3975.00      Adj. :1788.75
```

---

```
Billers:   10   Hours:207.75    Fees:54274.75    Adj. :23371.88
```

07/10/00                EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES                Page #·0002
                              ARMSTRONG · MERGER III
                               #'S 2210, 13, 17, 18


LAS LEGAL ASSISTANT                              Date          Rate         Adj.
CL   LAMANNA, CAROL                    /  /   02/14/00        75.00        75.00
Entries: 3      Days:3      Hours:3.10        Fees:232.50           Adj. :232.50

ED   DEGRAPP, EDIE                     /  /   02/22/00       120.00       100.00
Entries: 2      Days:2      Hours:3.75        Fees:450.00           Adj. :375.00

──────────────────────────────────────────────────────────────────────────────
  Billers:    2   Hours:6.85       Fees:682.50        Adj. :607.50

```
07/10/00              EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES              Page #:0003
                              ARMSTRONG - MERGER III
                              #'S 2210, 13, 17, 18


     PAR PARALEGAL                              Date        Rate        Adj.
     JH  HOLLAR, JACQUELINE          /  /   03/10/00       100.00      100.00
     Entries: 9      Days:9      Hours:30.50    Fees:3050.00          Adj. :3050.00

     JID DYE, JAMES I.               /  /   01/05/00       120.00      100.00
     Entries: 14     Days:14     Hours:8.70     Fees:1044.00          Adj. :870.00

     RPC CRUZ, R.P.                  /  /   02/09/00        75.00       75.00
     Entries: 8      Days:8      Hours:7.25     Fees:543.75           Adj. :543.75

     RSW WILSON, R.S.                /  /   01/05/00       130.00      100.00
     Entries: 17     Days:17     Hours:39.00    Fees:5070.00          Adj. :3900.00
     _____

     Billers:    4   Hours:85.45    Fees:9707.75      Adj. :8363.75
     ========================================================================
```

07/10/00          EMPLOYEE CATEGORY SUMMARY BY BILLER NAMES          Page #:0004
                         ARMSTRONG - MERGER III
                         #'S 2210, 13, 17, 18


                              T O T A L S

   Billers:   16   Hours:300.05       Fees:64665.00      Adj. :32343.13

   Total Days:   89        Billed Days: 69    77.53%

     Week Days: 65   Billed Week Days: 64    98.46

Mon     Tue     Wed     Thu     Fri     Sat     Sun
 53      75      94      60      87      1       7   = 377 Entries Billed
 12      13      13      13      13      1       4   = 69 Days Billed

EXHIBIT   H

COSTS

COSTS

| 1/1/96 - 12/31/99 | LOEBF | DREDF | PMS | RBA | MDBE | PLO |
|---|---|---|---|---|---|---|
| Attorney Service | | | | | | $167.80 |
| LEXIS, Westlaw | | | $4,573.97 | $1,308.65 | $8,052.37 | $1,724.35 |
| Copying - Inside/Unknown | | $46.75 | $15,067.39 | $23,455.10 | $18,984.29 | $6,279.31 |
| Outside Copying | | | | $4,717.30 | | $5,651.48 |
| Court Hearing Transcripts | | | | | $10,030.75 | $8.50 |
| Deposition Transcripts | | | $1,286.21 | $1,349.65 | $4,330.36 | $8,569.69 |
| Expert Fees | | | $5,787.50 | $2,935.56 | $35,610.25 | $8,418.03 |
| Trial Exhibits | | | | | $20.77 | |
| Facsimile Transmission Chgs | $20.00 | $27.00 | $591.00 | $1,764.00 | $1,427.00 | $885.00 |
| FedEx/Overnight Mail | | $10.00 | $157.00 | | $1,760.64 | $7.57 |
| Filing Fees | | | $112.00 | | | |
| Investigation | | | | $1,063.75 | | |
| Miscellaneous | | $100.00 | | $6,943.44 | $8,711.45 | $5,187.82 |
| Messenger | | | $829.76 | | $1,569.20 | |
| Meals - Local | | | | $34.69 | | |
| Staff Overtime | | | $23.05 | | | $723.85 |
| Process Service | | | $84.00 | | | |
| Postage, Shipping | | $2.62 | $29.12 | $958.99 | $183.82 | $1,312.72 |
| Supplies | | | $220.64 | | $2.00 | |
| Telephone | | $13.62 | $59.72 | $164.65 | $349.44 | $1,480.31 |
| Travel, Airfare | | | | $75.00 | | $567.00 |
| Hotels | | | | $141.78 | $531.59 | $131.47 |
| Travel, Meals | | | $66.14 | $15.00 | | |
| Travel | | | $1,116.85 | $1,770.86 | $10,496.45 | $1,668.57 |
| Hotels | | | | $141.78 | | |
| Local Parking, Mileage | | | | | | $1,136.00 |
| Travel, Airfare | $27.75 | | | $75.00 | | |
| Unknown | | | $1,500.00 | -120.00 | | $2,622.59 |
| Velo Binding | | | $42.00 | | | |
| Video of Deposition | | | | | | $7.57 |
| Witness Fees | | | $8,583.39 | | | |
| Word Processing | | | $2,104.20 | | | |
| | | | | | | |
| TOTALS | $47.75 | $199.99 | $42,233.94 | $46,795.20 | $102,060.38 | $46,547.63 |

COSTS

| 1/1/00-3/31/00 - w/monitoring | PLO | PMS | RBA | MDBE |
|---|---|---|---|---|
| Administrative Charges | $1.88 | | | |
| LEXIS, Westlaw | | $44.41 | $298.57 | |
| Copying - Inside/Unknown | $249.60 | $115.35 | $223.25 | $384.60 |
| Facsimile Transmission Chg | $102.00 | | $8.00 | |
| FedEx/Overnight Mail | $26.78 | $5.97 | | |
| Messenger, Courier | | $7.50 | | |
| Meals - Local | $5.00 | | | |
| Postage, Shipping | $16.08 | | $74.15 | |
| Telephone | $55.49 | | $2.68 | 0.04 |
| Local Parking, Mileage | $57.00 | | | |
| Travel | $20.95 | | | |
| Witness Fees | | $1,000.00 | | |
| TOTALS: | $534.78 | $1,173.23 | $606.65 | $384.64 |

| 1/1/00-3/31/00 w/o monitrng | RBA | MDBE |
|---|---|---|
| Copying - Inside/Unknown | $152.45 | $111.15 |
| Facsimile Transmission Chg | | $44.00 |
| Messenger, Courier | | $5.50 |
| Postage, Shipping | $61.00 | $5.50 |
| Telephone | | $0.18 |
| TOTALS: | $213.45 | $166.33 |