PRISON LAW OFFICE
DONALD SPECTER – 83925
SARA NORMAN – 189536
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

BINGHAM McCUTCHEN, LLP
WARREN E. GEORGE – 53588
FRANK B. KENNAMER – 157844
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
LINDA KILB -- 136101
2212 6th Street
Berkeley, California 94710
Telephone: (510) 644-2555

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
HOLLY BALDWIN – 191317
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

JONES DAY
CAROLINE N. MITCHELL - 143124
555 California Street, 25th Floor
San Francisco, CA 94104
Telephone: (415) 875-5712

LAW OFFICES OF ELAINE B. FEINGOLD
ELAINE B. FEINGOLD – 99226
1524 Scenic Avenue
Berkeley, California 94708
Telephone: (510) 848-8125

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JOHN ARMSTRONG, et al.,

    Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. C 94-2307 CW

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR ORDER TO ENFORCE ¶¶
15-17 OF THE PERMANENT
INJUNCTION**

HEARING

Date:    May 26, 2006
Time:    10:00 a.m.
Dept:    Courtroom 2, Fourth Floor
Judge:    Hon. Claudia Wilken

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.      DEFENDANTS HAVE CONCEDED SYSTEMIC VIOLATIONS OF THE PERMANENT INJUNCTION, THE AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT, AND THE DUE PROCESS CLAUSE. ........................................................................ 3

      A.    Defendants' Suggestion That Notice Of Rights And Charges Is Not Part Of The Parole Revocation Process Is Absurd And Must Be Rejected. ............................................................................... 6

             1.    This Case Is About Equal Access To Due Process In Parole Proceedings, And Notice Is The First Element Of Due Process. ................................................................. 7

             2.    Defendants Mis-State The Record Of This Case Regarding The Parole Division's Functions, Which Have Always Included Giving Notice Of The Charges....................... 7

             3.    Defendants' Proposed Plan Does Not Address Their Failure To Provide Accommodations At Notices — Checking The Tracking System After Notice Is Completed Is Closing The Barn Door After The Horse Has Left............................................................................................ 8

II.     DEFENDANTS' PROPOSAL TO PUT DISABILITY TRACKING ON A LOW-TECHNOLOGY SEGREGATED SYSTEM DEMONSTRATES THEIR CONTINUED DISREGARD OF THEIR OBLIGATIONS UNDER THE AMERICANS WITH DISABILITIES ACT. ............................................................................... 9

      A.    The CD-ROM By Mail Plan Is Not Practical. ................................. 9

      B.    The CD-ROM Plan Segregates Disability And Accommodation Information Into A Separate, Slower, And Less Accessible System, While All Other Information Critical To The Revocation Process Is Accessible Immediately In RSTS. ...................................................................................... 10

III.   DEFENDANTS' PAPER PROCESS IS NO SUBSTITUTE FOR A COMPUTERIZED TRACKING SYSTEM. ............................................ 11

      A.    Defendants Refuse To Acknowledge That Time Matters In Identifying Disabilities In Order To Arrange Accommodations. .................................................................. 13

1

B.    Defendants Have Demonstrated That They Have Not Brought
Sufficient Resources To Bear To Ensure Timely

2         Accommodations ........................................................................................ 14

3  CONCLUSION........................................................................................................................ 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
ENFORCE PERMANENT INJUNCTION; POINTS &
AUTHORITIES, Case No. C-94-2307 CW

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

Armstrong v. Davis,
    275 F.3d 849 (9th Cir. 2001) ................................................................................1, 5, 8, 14

4

Morrissey v. Brewer,
    408 U.S. 471 (1972).............................................................................................................7

5

6

Tennessee v. Lane,
    541 U.S. 509 (2004).............................................................................................................7

7

### FEDERAL STATUTES & REGULATIONS

8

U.S. CONST. amend. XIV ...........................................................................................................passim

9

American with Disabilities Act, 42 U.S.C. §§ 12101-12213......................................................passim

10

Rehabilitation Act of 1973,
Section 504, 29 U.S.C. § 701 et seq. ...........................................................................................passim

11

12

28 C.F.R. § 35.106.....................................................................................................................7

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
ENFORCE PERMANENT INJUNCTION; POINTS &
AUTHORITIES, Case No. C-94-2307 CW

**INTRODUCTION**

Defendants do not dispute that some of the worst abuses found in the trial of this matter seven years ago remain common today. Parolees who rely on sign language to communicate are again being put through revocation proceedings without interpreters. Persons with severe mobility impairments are again being denied access to their proceedings. In at least one case, a wheelchair user has again been forced to drag himself up stairs to participate in a parole proceeding, despite Defendants' advance notice of his disability. These abuses, amply documented in Plaintiffs' moving papers, have not been disputed or even mentioned in Defendants' Opposition. [1]

Defendants do not contest that the persistence of these abuses of the rights of *Armstrong* class members is caused by failure to implement the disability information tracking system ordered by this Court and affirmed by the Ninth Circuit. [2] On the contrary, Defendants concede that they are not in compliance with the Injunction. Defendants concede that an order should be entered finding them in violation, and directing compliance with the tracking system requirement.

Despite the clear record that their remedial efforts have failed, Defendants have, in their Opposition and Proposed Order, asked this Court to scale back the remedy ordered in Permanent Injunction. It is frankly incredible that Defendants could make such a request in light of the flagrant and uncontested violations of Plaintiffs' rights seven years after trial, and more than six years after Defendants were ordered to institute a remedy. This is not the time for the Court to scale back relief. The persistence of these violations, and their resurgence in recent months, demands a more specific and detailed remedy, not a pat on the back.

Defendants ask that the Court scale back the remedy in two critical ways. First, Defendants seek to carve out the notice step from the requirement that Defendants check their disability

---

[1] Defendants' Opposition was not timely filed or served. Rice Decl. ¶ 4; Baldwin Reply Decl. ¶ 3.

[2] Defendants mischaracterize the Injunction's tracking system requirements by stating "Defendants agreed to this in the Injunction." Opp. at 4, fn.4. The Permanent Injunction terms, including the tracking system requirement, were fully litigated after trial, ordered by the Court with specific findings that Defendants violated the law and that the relief ordered was necessary and narrowly tailored. Bien Decl. ¶¶ 2-6; *Armstrong v. Davis*, 275 F.3d 849, 876 (9th Cir. 2001).

1  tracking system before meeting with a prisoner or parolee about a parole proceeding. Defendants'

2  request has no support in law or fact. The contention that notice of charges and rights in a parole

3  proceeding somehow falls outside the scope of the Injunction's requirements for tracking and

4  effective communication is absurd. The tracking system requirements clearly apply to such notices.

5          Second, Defendants ask this Court to condone a mere token effort to use their disability

6  tracking system by keeping the existing system completely walled off from the real-time networked

7  system used to track all other data on the parole revocation process (and the system soon to be

8  implemented for the life prisoner hearing process). The BPH operates a real-time networked

9  system known as the Revocation Scheduling and Tracking System (RSTS) to keep track of charges,

10 deadlines, hearing schedules and hearing results in parole revocations. Schedulers, notice agents,

11 and hearing officers are trained and required to use RSTS during the revocation process and to

12 record critical information there. Defendants are in the midst of making major changes to RSTS,

13 but have refused to include data they are tracking regarding disabilities and accommodations in the

14 system. The result is that while their staff schedule every other aspect of the parole proceeding

15 real-time at their desks in RSTS, staff are cut off from the disability tracking system which is

16 maintained separately in Sacramento. Defendants' only offer is to keep the disability tracking

17 system completely separate and essentially useless. While RSTS data is continually updated and

18 available to all key staff, the disability data will be mailed on a CD-ROM twice a month to be

19 uploaded to one workstation in a few offices around the State. An employee scheduling parole

20 proceedings would have to stop what they are doing, find the segregated ADA computer in the back

21 of the office, and initiate a new search for each parolee to check on disability information.

22         Plaintiffs do not seek to dictate the exact contours of the system by which Defendants

23 comply with the tracking system requirements of Paragraphs 15 and 16. Plaintiffs seek equal

24 access to parole proceedings for class members. The ill-conceived remedial plan proposed by

25 Defendants is unacceptable to achieve this goal. It is infeasible, fails to adequately address the

26 requirements of the Injunction, fails to address the shortcomings of the current system, and will not

27 ensure timely provision of needed accommodations. Moreover, it continues to segregate disability-

28 related information into an information-systems backwater, while all the other information related

-2-   PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
      ENFORCE PERMANENT INJUNCTION; POINTS &
      AUTHORITIES, Case No. C-94-2307 CW

1    to parole proceedings is being translated into high-tech solutions.

2         Defendants are requesting that the Court scale back the scope of the remedy for their

3    acknowledged violations in a manner that will inevitably result in violations of class members'

4    rights.  This request must be rejected, and an appropriate remedial process for these serious and

5    ongoing admitted violations should be ordered.  The Court has already found that the tracking

6    system requirement in the Revised Permanent Injunction is necessary to remedy the statutory and

7    constitutional violations found at trial, and which continue now.

8         The undisputed evidence shows not only the results of Defendants' failure to comply with

9    the tracking system requirements, but also Defendants' failure to take measures to ensure that

10   needed accommodations, such as sign language interpreters, can be obtained when needed to ensure

11   effective communication in the parole revocation process.  In the Proposed Order lodged with this

12   Reply, Plaintiffs request that the Court direct Defendants to develop and implement a plan to

13   provide timely accommodations at each parole proceeding.

14                                   **ARGUMENT**

15   **I.    DEFENDANTS HAVE CONCEDED SYSTEMIC VIOLATIONS OF THE
           PERMANENT INJUNCTION, THE AMERICANS WITH DISABILITIES ACT,**
16   **     THE REHABILITATION ACT, AND THE DUE PROCESS CLAUSE.**

17        Defendants admit that they are systemically violating Paragraphs 15 and 16 of the Injunction

18   by failing to maintain and check the required disability tracking system prior to parole proceedings.

19   *See, e.g.,* Opposition at 2, 5, 7.

20        Defendants fail to dispute Plaintiffs' evidence that the BPT 1073 paper-based disability

21   tracking system fails in many ways with great frequency.  *See* Declaration of Holly Baldwin, signed

22   Apr. 21, 2006 ("Baldwin Decl.") ¶ 17 (listing 11 different types of failures observed) and ¶¶ 43-59

23   (failures to provide accessible hearing locations and transportation to wheelchair users, and failures

24   to provide sign language interpreters in parole proceedings for deaf signers); Declaration of Anne

25   Mania, ¶¶ 4-7.

26        Defendants do not present any facts regarding actual parole proceedings for actual parolees.

27   Instead, Defendants present declarations of three state officials, Robert Ambroselli, Alberto Caton

28

-3-   PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
      ENFORCE PERMANENT INJUNCTION; POINTS &
      AUTHORITIES, Case No. C-94-2307 CW

1  and Pat Cassady, describing how their paper-based disability tracking system should work in

2  theory. The system they describe tracks the features and flaws of the wholly inadequate system

3  already rejected by the Court after the 1999 trial. *See* Reply Declaration of Michael W. Bien ("Bien

4  Decl.") ¶¶ 16-21. Like the 1999 system, the paper-based system described in the Ambroselli, Caton

5  and Cassady declarations does not track disability identifications made in prior parole proceedings,

6  and delays any real identification of accommodation needs to the very same proceeding in which

7  the accommodation is needed, making it impossible to secure accommodations, such as sign

8  language interpreters, that must be arranged in advance. *Id.* ¶ 21.

9          The only information about actual parole proceedings submitted with Defendants'

10  Opposition is in the declaration of Mary Swanson, Project Director of the California Parole

11  Advocacy Program ("CalPAP"). Significantly, the Swanson Declaration does not assert that the

12  BPH actually provides accommodations needed by parolees. The Swanson Declaration makes a

13  large-sounding estimate of accuracy of 1073s: "I believe that in over 90% of the cases that the

14  1073 accurately reflects the parolee's ADA/effective communication needs as documented in

15  his/her field file." Swanson Decl. ¶ 3. Defendants' Opposition mischaracterizes this estimate by

16  incorrectly asserting that they "successfully identify the disability of the parolees in over 90% of the

17  cases." Opp. at 2. This misleadingly suggests that 9 out of 10 disabled parolees are identified.

18  That is not what Ms. Swanson said. Ms. Swanson has now submitted a clarifying declaration

19  ("Swanson Reply Decl."), filed concurrently with this reply, regarding the significance of this 90%

20  "rough estimate." Swanson Reply Decl. ¶ 2(a). The 90% rough estimate is <u>not</u> 90% of the files of

21  persons with disabilities or needs for accommodations. The figure is based on <u>all</u> cases received by

22  CalPAP, whether the parolee had a disability or not. Swanson Reply Decl. ¶ 2(b).[3] Most cases do

_____

23

24  [3] The figure does not include cases where CalPAP receives no BPT 1073 form at all, which account

25  for another 6% of all cases. Swanson Reply Decl. ¶ 2(c). Moreover, attorneys usually do not
    review the field file and thus do not compare the 1073 to the documents in the field file. *Id.* ¶ 2(d).

26  Ms. Swanson has clarified that her reference to the field file was to the few source documents the
    BPH should attach to the 1073. *Id.* In 27% of cases received by CalPAP in March 2006, *for*

27  *persons with disabilities identified on the 1073*, the source documents were completely missing,

28  making any evaluation of the 1073's accuracy against field file documents impossible. *Id.* ¶ 3.

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
                                                        ENFORCE PERMANENT INJUNCTION; POINTS &
                                                        AUTHORITIES, Case No. C-94-2307 CW

1   not involve disabilities at all.

2        Thus clarified, the large-sounding estimate of over 90% for the accuracy of the BPT 1073

3   process further demonstrates the depth of the violation.  Even accepting this estimate, up to 10% of

4   the approximately 78,000 parole revocation cases handled by the BPH annually fail to accurately

5   identify disability needs through the parole revocation process.  Thus, up to 7,800 cases per year

6   contain misidentifications by this estimate.  This error rate is large enough to swallow the entire

7   developmentally disabled or learning disabled segment of the *Armstrong* parolee class, or the

8   severely hearing-impaired segment of the class almost 10 times over.  Bien Decl. ¶¶ 13-15, Exh. B

9   at 10, 13, 15 (prevalence rates); Baldwin Reply Decl. ¶ 4, Exh. 1 (parolee population)

10        Most tellingly, Defendants do not contest the numerous specific examples of prisoners and

11   parolees denied effective communication and reasonable accommodations in parole proceedings, in

12   violation of Paragraph 17 of the Injunction, due to Defendants' failure to track disability

13   information and pre-arrange needed accommodations.  Seven years after the trial in this matter,

14   there are still flagrant violations of the ADA and class members' constitutional due process rights as

15   outrageous as those described in the Court's 1999 Findings of Fact and Conclusions of Law.

16   *Compare* Bien Decl. ¶¶ 23-29 *and* Exh. B at 33-35, 58-62, 64-65 (Findings of Fact) *with* Baldwin

17   Decl. ¶¶ 45-59 and Exh. 19-28 (current violations).  This Court found that partially paralyzed and

18   wheelchair using prisoners dragged themselves up stairs to attend hearings (Bien Decl. ¶¶ 23-24,

19   Exh. B at 33-34); in 2005 a paraplegic wheelchair user dragged himself upstairs to meet with his

20   revocation defense attorney (Baldwin Decl. ¶ 45).  This Court found that deaf parolees were denied

21   sign language interpreters for screening offers (Bien Decl. ¶¶ 26-27, Exh. B at 58-61); in 2005 and

22   2006 deaf parolees were denied interpreters for notices, attorney interviews, and probable cause

23   hearings (Baldwin Decl. ¶¶ 46-52, 58, Exh. 11,19-25).  Since filing this motion, Plaintiffs' counsel

24   have continued to observe and report failures of the 1073 process and denials of accommodations.

25   Baldwin Reply Decl. ¶¶ 21-24.  Defendants also fail to dispute Plaintiffs' examples of class

26   members forced to choose between timely parole proceedings and needed accommodations, blatant

27   discrimination on the basis of disability.  *See, e.g.,* Baldwin Decl. ¶¶ 46, 48, 52-56, 58, Exh. 11, 19,

28   21, 25-26.  Plaintiffs' counsel has not encountered any sign language using parolee during

1   monitoring for whom interpreters were timely provided at every stage of the process.  Baldwin

2   Reply Decl. ¶ 20.  For this part of the class, BPH's failure rate is likely to be close to 100%.

3         The tracking system requirements of the Injunction are not a formality; they are necessary to

4   the remedy in this case.  This Court noted that while an equitable remedy for constitutional and

5   statutory violations must "accord appropriate deference to Defendants' policy preferences and

6   interest in running their own programs," "the Court will not approve of any remedial plan that fails

7   to provide an effective remedy that fully vindicates Plaintiffs' rights under the ADA and the

8   Constitution."  Bien Decl. ¶ 7, Exh. B at 104 (Findings and Conclusions).  The Court made specific

9   findings that the disabilities at issue may be difficult to identify in face-to-face encounters, as are

10  the appropriate accommodations.  *Id.* ¶¶ 9-14, Exh. B.  Even where the disability may be self-

11  evident, advance notice may be needed to arrange necessary accommodations.  *Id.* ¶ 8.  In the

12  absence of a tracking system, notice agents and hearing officers "rely on their own abilities to

13  assess whether prisoners or parolees understand the proceedings, determine whether a prisoner or

14  parolee can communicate effectively, and decide whether a hearing must be postponed in order to

15  obtain assistance for a prisoner or parolee."  *Id.* ¶ 8, Exh. B at 47.  Without any system for tracking

16  prior accommodations, a disabled parolee's access to proceedings is governed by hurried individual

17  staff judgments that are not informed by the system's prior determinations.  The Court concluded

18  that relief in this case should include a system for tracking disability-related information.  *Id.*, Exh.

19  B at 102.  The Court also concluded that such relief is narrowly tailored, extends no further than

20  necessary to correct the violation of the federal right, and is the least intrusive means necessary to

21  correct the violation of the federal right.  *Id.*, Exh. B at 105.

22      **A.   DEFENDANTS' SUGGESTION THAT NOTICE OF RIGHTS AND
            CHARGES IS NOT PART OF THE PAROLE REVOCATION PROCESS**

23            **IS ABSURD AND MUST BE REJECTED.**

24        Defendants argue that providing notice of revocation charges and the parolee's rights to the

25  parolee is not part of the parole revocation process, and that they are not required to check the

26  disability tracking system pursuant to Paragraph 16 of the Injunction prior to serving such notices

27  (or before serving notices of any other types of parole proceedings).  Opp. at 5-7.  This suggestion

28  is absurd, and must be rejected.

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
                ENFORCE PERMANENT INJUNCTION; POINTS &
                AUTHORITIES, Case No. C-94-2307 CW

1    **1.    This Case Is About Equal Access to Due Process in Parole**
     **Proceedings, and Notice Is the First Element of Due Process.**

2

3         Plaintiffs proved at trial that they were being denied equal access to due process in their

4    parole proceedings, in violation of the ADA, the Rehabilitation Act, and the Fourteenth

5    Amendment.  Bien Decl., Exh. B at 81-99.  As the Supreme Court recently held in Tennessee v.

6    Lane, 541 U.S. 509 (2004), the Due Process Clause requires that the States remove obstacles to full

7    participation in due process proceedings.  Id. at 523.

8         Notice of charges is the first element of the minimum due process protections required in

9    parole revocation proceedings by Morrissey v. Brewer, 408 U.S. 471, 489 (1972).  See also Bien

10   Decl., Exh. B at 94 (revocations), 95 (revocation extensions, parole date rescissions), and 98

11   (MDOs, SVPs).  The ADA's implementing regulations also require that Defendants provide notice

12   to prisoners and parolees of their rights under the ADA.  Id. at 88, citing 28 C.F.R. § 35.106.  This

13   Court specifically found that, "Under the law, the BPT has an obligation to ensure that disabled

14   inmates are provided reasonable accommodations to allow them to participate in BPT programs.

15   This includes an obligation to ensure that disabled inmates are accommodated so that they have

16   notice of their rights and understand BPT proceedings." Id. at 90-91  (emphasis added).

17   **2.    Defendants Mis-State the Record of This Case Regarding the**
     **Parole Division's Functions, Which Have Always Included Giving**

18   **Notice of the Charges.**

19        Defendants assert that "before the new [parole revocation] process, none of the functions of

20   the parole division were enumerated" in Paragraph 16 of the Injunction, which requires Defendants

21   to check a disability tracking system prior to meeting with a prisoner or parolee.  Opp. at 6.  This

22   mis-states the record.  At the time of the Permanent Injunction, the notice of rights and charges was

23   made by a parole division employee known as a District Hearing Agent during a process known as

24   the "screening offer."  Bien Decl. ¶¶ 30-33.  Notice agents employed by the parole division have

25   always been part of the remedy.  The notice continues to be conducted by parole agents.  Id. ¶ 36.

26   The requirements of Paragraph 16 apply to service of notices for all parole proceedings.

27        The Court has already found that the Board cannot avoid its responsibilities by delegating

28   jobs to the parole and institutions divisions of CDC, that the Board has sufficient control over notice

1   agents to be liable for their actions, and that defendants, the Governor and the Secretary of YACA,

2   supervised the CDC. The BPT's obligations include "an obligation to ensure that disabled inmates

3   are accommodated so that they have notice of their rights and understand BPT proceedings. The

4   BPT remains liable for actions of CDC employees to whom the BPT delegates responsibility for

5   BPT programs and services." Bien Decl. ¶ 34, Exh. B at 90-91. *See also Armstrong v. Davis*, 275

6   F.3d 849, 877 (9th Cir. 2001) (Governor and Secretary are proper parties to the action).

7        In 2005, the Youth and Adult Corrections Authority (YACA) was reorganized, placing the

8   successor organizations to the Board of Prison Terms and the California Department of Corrections

9   — the Board of Parole Hearings (BPH) and the Division of Adult Operations and Adult Programs

10  (AOAP) — as divisions within a single department, the California Department of Corrections and

11  Rehabilitation (CDCR). Bien Decl. ¶¶ 48-49, Exh. G. The Division of Adult Parole Operations

12  (DAPO) is a division within AOAP. *Id.*

13       Defendants' contention that the service of notice is exempted from the requirements of

14  Paragraph 16 is nothing more than the same inter-agency finger-pointing that this Court has already

15  condemned. *See* Bien Decl. ¶ 38, Exh. B at 5-6.

16          **3.**    **Defendants' Proposed Plan Does Not Address Their Failure to**

            **Provide Accommodations at Notices — Checking the Tracking**

17              **System After Notice Is Completed Is Closing the Barn Door After**

            **the Horse Has Left.**

18

19       Defendants agree that Paragraph 17's requirement to provide accommodations at all parole

20  proceedings includes all stages of the process, including notice. Opp. at 5:17-6:6. But, they are not

21  providing needed accommodations at notices of charges and rights, and they cannot do so without

22  first checking a functional disability tracking system. Defendants have not disputed that they fail to

23  provide timely accommodations at notices for class members. See Baldwin Decl. ¶¶ 43-59, Exh.

24  11, 19-28. But, Defendants' proposed remedy fails to solve the problem — it calls for the

25  distribution of disability information on CD-ROMs, but makes no provision for anybody to check

26  that information until after the notice has already been completed. Cassady Decl. ¶¶ 21-22.

27  Instead, notice agents will continue to rely on the current paper system, which does not work

28  reliably, to set up accommodations for notices. Opp. at 3. This makes no sense, as completion of

   PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
ENFORCE PERMANENT INJUNCTION; POINTS &
AUTHORITIES, Case No. C-94-2307 CW

1    the 1073 is the first step that sets up the provision of accommodations at all other stages of parole

2    proceedings, which in the case of parole revocations, is very time-compressed.  Defendants have

3    not even bothered to explain how they will ensure provision of accommodations at notices for

4    revocation extensions, lifers, or MDO and SVP proceedings.  Opp. at 3; Caton Decl. ¶¶ 3-4, 7, 9-10.

5    **II.    DEFENDANTS' PROPOSAL TO PUT DISABILITY TRACKING ON A LOW-**
     **TECHNOLOGY SEGREGATED SYSTEM DEMONSTRATES THEIR**
6    **CONTINUED DISREGARD OF THEIR OBLIGATIONS UNDER THE**
     **AMERICANS WITH DISABILITIES ACT.**
7

8            The Injunction's tracking system requirements are designed to ensure that class members

9    receive accommodations they need for equal access to their parole proceedings.  Plaintiffs do not

10   seek to dictate the exact contours of the disability tracking system maintained by Defendants in

11   order to comply with Paragraphs 15 and 16 of the Injunction.  However, Defendants' proposal does

12   not address the current system's ongoing failures and will not ensure provision of timely

13   accommodations as required by Paragraph 17.  Defendants' proposal to make disability information

14   available only on a low-technology, segregated system while other tracking information speeds

15   along in integrated real-time systems illustrates their continued disregard for ADA compliance.

16           **A.    THE CD-ROM BY MAIL PLAN IS NOT PRACTICAL.**

17           Defendants' Opposition and the Cassady Declaration describe a plan to distribute disability

18   and accommodation identifications on a CD-ROM mailed twice a month to 13 Decentralized

19   Revocation Units (DRUs).  Bien Decl. ¶ 39.  The CD-ROM would be made from a database called

20   ADEN (Americans with Disabilities Enforcement and Notification).  Defendants did not notify

21   Plaintiffs' counsel of any CD-ROM distribution plan prior to the filing of this motion.  *Id.* ¶ 41.

22           The CD-ROM plan is not practical.  Plaintiffs' counsel have been receiving CD-ROM

23   copies of the Board's ADA Database information on a monthly basis from BPH Headquarters, and

24   they do not constitute a tracking system that can be checked in real time.  Bien Decl. ¶¶ 42-43.  The

25   information consists of raw text files in database tables, without any means of interface or user

26   access.  *Id.*  Searching the individual text files is a painstaking and time-consuming process.  *Id.*

27   Even if Defendants did provide the DRUs with an interface (which has not been stated), uploading

28   and transferring data from the CD-ROMs and maintaining such a system would require many hours

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
ENFORCE PERMANENT INJUNCTION; POINTS &
AUTHORITIES, Case No. C-94-2307 CW

1   of technician time. *Id.* ¶ 44. CDs would be mailed from BPH to the DRUs twice a month, but

2   additional lag time would ensue while awaiting delivery, installation, and updating at each location.

3       The CD-ROM plan completely fails to address Defendants' obligation to check the tracking

4   system prior to serving notices, as discussed above in Section II. Defendants do not plan for

5   anybody to check the ADEN database prior to notices of any kind of parole proceeding. This

6   undermines the ability to identify and pre-arrange needed accommodations for notices, and delays

7   the process of identifying and arranging accommodations for later steps in the process.

8       Defendants' CD-ROM plan also contains huge gaps. The Opposition claims that the ADEN

9   CD-ROMs will be "made available at every facility where a Board Proceeding is held." Opp. at 4.

10  However, the Cassady Declaration states only that the CD-ROMs will be mailed to the 13 DRU

11  locations. Cassady Decl. ¶ 21 (p. 5). Defendants do not explain how information will be

12  distributed to all the other places where Board Proceedings are held, or who will check the

13  database. There are approximately 117 locations statewide where parole revocation hearings take

14  place. Bien Decl. ¶ 45, Exh. E. In addition, revocation extension proceedings and lifer hearings

15  happen at all of the non-DRU prisons throughout the state. *Id.* ¶¶ 45-46, Exh. F. Finally, meetings

16  with parolees prior to MDO and SVP hearings take place in state prisons other than the DRU

17  locations, as well as at Atascadero State Hospital and Patton State Hospital. *Id.* ¶ 47. Defendants

18  also claim they will make the ADEN information available to CalPAP, but their plan fails to

19  mention how this will happen. There are 11 CalPAP offices, plus a Headquarters office. *Id.* ¶ 40.

20      **B.    THE CD-ROM PLAN SEGREGATES DISABILITY AND**
        **ACCOMMODATION INFORMATION INTO A SEPARATE, SLOWER,**
21      **AND LESS ACCESSIBLE SYSTEM, WHILE ALL OTHER**
        **INFORMATION CRITICAL TO THE REVOCATION PROCESS IS**
22      **ACCESSIBLE IMMEDIATELY IN RSTS.**

23      Defendants' ill-conceived CD-ROM plan is a symptom of their overall attitude toward ADA

24  compliance. While Defendants are now rapidly upgrading their information systems for all other

25  parts of these proceedings, prisoners and parolees with disabilities are getting left behind.

26      Defendants do not dispute that they could track disability and accommodations information

27  for revocations in RSTS. Defendants have offered no justification for their plan to carve out

28  disability information and set up a cumbersome manual uploading system, on a time-delayed basis,

on only one computer at each DRU.[4]  In contrast, all other information critical to the revocation

process is contained in RSTS, a real-time database available to Board and Parole employees

statewide.  Baldwin Reply Decl. ¶¶ 15-17.  Parole staff, including notice agents, have access to

RSTS, and are required to use it in to ensure that timelines are met in the new, accelerated parole

revocation process. Id. ¶¶ 14-15, 17, Exh. 5; Bien Decl. ¶¶ 36-37.  The Board's DRU office staff

who coordinate hearings and arrange accommodations have access to RSTS.  Baldwin Reply Decl.

¶ 17.  The Deputy Commissioners who conduct probable cause hearings and revocation hearings

have access to RSTS.  Id.  To comply with the Injunction and the ADA, all these staff must have

access to information about disabilities and accommodation needs, but instead Defendants' plan

relies on a staff person walking (or field agents driving) over to a completely separate, unwieldy,

and out-of-date system, while under pressure to meet short deadlines.

Plaintiffs' counsel have been informed that Defendants are currently moving ahead with

designing and implementing a statewide tracking system for life prisoner hearings, to be modeled

after RSTS.  Baldwin Reply Decl. ¶ 18.  The lifer tracking system is required to be implemented by

May 2007, pursuant to an Order in the case *In re Jerry Rutherford*, Marin County Superior Court,

Case No. SC135399A. Id.  Similarly, Plaintiffs' counsel has been informed that Defendants are

implementing a new revocation extension tracking system, and are deliberately excluding the

disability tracking features required by the Permanent Injunction.  Baldwin Reply Decl. ¶ 19, Exh.

6. Plaintiffs believe that unless the Court intervenes, Defendants will design and implement another

brand-new system that is high-tech in tracking all information about life prisoner proceedings and

revocation extensions except inmates' disabilities and needed accommodations.

## III.   DEFENDANTS' PAPER PROCESS IS NO SUBSTITUTE FOR A COMPUTERIZED TRACKING SYSTEM.

Defendants do not dispute the evidence that the paper BPT 1073 process fails in many

different ways with great frequency, resulting in failure to provide accommodations to prisoners

---

[4] Defendants admit that they are "looking into" a system with a "faster time-frame." Opp. at 5, n.5.

1   and parolees with disabilities.  Yet, Defendants want the Court to authorize a remedial plan that

2   does not address these acknowledged failures.

3       Defendants concede in their Opposition and the Ambroselli, Cassady, and Caton

4   Declarations that they rely on the paper-based BPT 1073 form system.[5]  But, this system fails to

5   identify needed accommodations before critical communications with parolees.  The pre-notice file

6   review does not require staff to identify what accommodations are needed or what accommodations

7   have been provided in past proceedings.  Bien Decl. ¶ 18; Baldwin Decl. ¶ 16.  The attached

8   "source documents" infrequently include information alerting staff to the particular

9   accommodations needed by the inmate or parolee.  Bien Decl. ¶ 19.  Staff often fail to attach the

10  source documents to the 1073 at all.  The Swanson Declaration submitted by Defendants admits

11  that in March 2006, "source documents" were missing in 27% of the revocation packets for which

12  the 1073 indicated a disability or effective communication need.  *Id.* ¶ 20; Swanson Decl. ¶ 4;

13  Swanson Reply Decl. ¶ 3.  In about 6% of cases, staff fail to even include the 1073 in the revocation

14  packet.  Swanson Reply Decl. ¶ 2(c); Baldwin Reply Decl. ¶ 7, Exh. 3.  This means hundreds of

15  cases every month falling through the cracks of Defendants' current tracking system.

16      Rather than recording and presenting information about accommodation needs previously

17  known to the BPH and or CDC, the 1073 system relies on the parolee and notice staff to identify

18  needed accommodations at the time of the notice, just as the pre-trial BPT 1073 process did.  Bien

19  Decl. ¶ 21.  By the time a notice is occurring, it is too late to secure an accommodation that requires

20  advance planning, such as a sign language interpreter.  *Id.*  When this happens, inmates and

21  parolees are left without adequate accommodations.  For example, when faced with a deaf parolee

22  and no sign language interpreter, staff often resort to inadequate half-measures such as lip reading,

23  which the Court has found to be inexact and conveys no more than 60% of the information being

24  communicated, or written communication, which the Court has found is generally inadequate and

25  _____

26  [5]  The paper 1073 process does not capture medical file data.  Caton Decl. ¶¶ 3, 7, 9; Ambroselli
    Decl. ¶ 10.  Mr. Ambroselli's statement that the field file contains all disability information from
27  the central file (¶¶ 4-5) is unsupported.  Plaintiffs' counsel have observed that the field file
    information is often incomplete or incorrect.  Baldwin Reply Decl. ¶¶ 12-13.
28

1   should be used only as a last resort. *Id.* ¶ 12, Exh. B at 11-12; Baldwin Decl. ¶¶ 46-52, Exh. 19-25

2   (parolees who requested sign language interpreters but were provided none at notice); Baldwin

3   Reply Decl. ¶ 22, Exh. 7 (same). In addition, the failure of the notice staff to adequately record the

4   need for an accommodation, or the DRU staff's failure to note and arrange for a requested

5   accommodation, also deprives inmates and parolees of needed accommodations at attorney

6   interviews and hearings. Baldwin Decl. ¶¶ 46, 48, 52, Exh. 19, 21, 25 (parolees denied sign

7   language interpreters at attorney interviews and/or hearings); Baldwin Reply Decl. ¶ 22 (same).

8        The 1073s provided to CalPAP attorneys frequently omit important information about

9   disabilities and accommodation needs, resulting in denials of accommodations. For example, a

10   paraplegic wheelchair user was held at a county jail with inaccessible facilities, and the packet

11   provided to CalPAP did not include a 1073 or source documents indicating this need. Baldwin

12   Decl. ¶ 45. The parolee had to drag himself upstairs to meet with his revocation defense attorney,

13   and in at least one instance declined to participate in a proceeding due to lack of access. *Id.* The

14   Board had known about his wheelchair-user status since at least 2001. Baldwin Reply Decl. ¶ 25.

15   **A.   DEFENDANTS REFUSE TO ACKNOWLEDGE THAT TIME MATTERS
          IN IDENTIFYING DISABILITIES IN ORDER TO ARRANGE**
16   **    ACCOMMODATIONS.**

17        Defendants' proposal and their Opposition fail to adequately consider the importance of

18   timely disability information in parole proceedings, focusing instead simply on the handoff of

19   responsibilities from parole or institutions staff to Board staff. As the Court found in 1999, the

20   failure to identify disabilities and needs for accommodation can result in denials of equal access

21   and/or postponements of proceedings. The tracking system requirement was designed to allow

22   Defendants to identify the need for accommodations as early as possible, and to pre-arrange those

23   accommodations. Because Defendants' current paper tracking system fails in this regard, class

24   members are forced to choose between postponing their parole proceedings and receiving the help

25   they need to participate. *See, e.g.*, Baldwin Decl. ¶¶ 53-56, 58 and Exh. 11, 26 (proceedings

26   delayed), ¶¶ 46, 48, 52 and Exh. 19, 21, 25 (parolees denied interpreters for PCH).

27        Defendants need an accurate real-time tracking system because steps are taken early in each

28   parole proceeding that require advance identification of disabilities and accommodation needs, long

-13-   PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
       ENFORCE PERMANENT INJUNCTION; POINTS &
       AUTHORITIES, Case No. C-94-2307 CW

1  before the BPH starts looking at the paper packets.  Life prisoners are receiving psychiatric

2  evaluations and parole reports, making parole plans, gathering letters of support, reviewing their

3  central and medical files, and meeting with attorneys to prepare for hearings.  Detained parolees are

4  getting their first notice of revocation charges, and attorneys are preparing to meet with their clients.

5  MDOs are being served with parole conditions and being offered a waiver of the entire hearing

6  process.  Hearing line-ups are being set with location decisions that will determine whether the

7  room is accessible.  The lead time needed to arrange sign language interpreters is passing.

8          Given the difficulty of correctly identifying disabilities and appropriate accommodations, it

9  makes no sense to do it over and over again.  This information must be captured in a database that is

10  accessible prior to first contact with the inmate or parolee, and that shows what accommodations

11  were needed at prior proceedings.  *See Armstrong v. Davis*, 275 F.3d at 876 ("Because the

12  regulations implementing the ADA require a public entity to accommodate individuals it has

13  identified as disabled, 28 C.F.R. § 35.104, some form of tracking system is necessary in order to

14  enable the Board to comply with the Act.").  In a vivid example of the importance of keeping

15  current information, one of the parolees whose case was cited in support of this motion when it was

16  filed on April 21, 2006, has now had his rights to a sign language interpreter violated again in a

17  subsequent parole proceeding that took place *while this motion was pending*.  Baldwin Decl. ¶ 52,

18  Exh. 25; Baldwin Reply Decl. ¶ 22, Exh. 7.  A wheelchair user was returned to custody twice in 13

19  months for parole revocations and was denied timely accessible transport to prison both times.

20  Baldwin Decl. ¶ 59, Exh. 28.  A parolee who needs a sign interpreter was subject to three

21  revocation actions in one year without accommodations.  *Id.* ¶ 50, Exh. 23.

22          **B.     DEFENDANTS HAVE DEMONSTRATED THAT THEY HAVE NOT
                  BROUGHT SUFFICIENT RESOURCES TO BEAR TO ENSURE
23                  TIMELY ACCOMMODATIONS**

24          This motion was brought to enforce not just the tracking system requirements of the

25  Injunction (Paragraphs 15 and 16), but also its reasonable accommodation requirements, which are

26  summarized in Paragraph 17:

27                  The BPT shall provide accommodations to prisoners and parolees
                  with disabilities at all parole proceedings.  The prisoner or parolee's
28                  request for a particular type of accommodation shall be given primary

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
                                              ENFORCE PERMANENT INJUNCTION; POINTS &
                                              AUTHORITIES, Case No. C-94-2307 CW

1             consideration and shall be granted unless the request is unreasonable
                for specific, articulated reasons allowable under the ADA, or unless
2              other effective accommodations are available.

3 The uncontested evidence demonstrates that Defendants have failed to establish the necessary

4 infrastructure in addition to the tracking system to ensure that accommodations are provided at all

5 parole proceedings. While Defendants have distributed simple assistive devices such as magnifiers

6 in easily available kits, they have failed to establish the resources — staff, training, technology,

7 contracts — needed to secure accommodations that require advance planning, such as sign language

8 interpreters. Such accommodations are regularly denied in lieu of unacceptable substitutes such as

9 lip reading or written notes, and proceedings are regularly delayed for no reason other than the

10 parolee's need for an accommodation. The remedy for these continued violations must include not

11 only a tracking system to identify needed accommodations, but the deployment of resources such as

12 contracted sign language interpreters, and the means to use them. See Plaintiffs' revised Proposed

13 Order.

## CONCLUSION

15         Defendants must design and implement a plan to comply with the ADA, the Rehabilitation

16 Act, the Due Process Clause of the Fourteenth Amendment, and the Injunction. This includes a

17 system focused on guaranteeing timely and appropriate accommodations to class members.

18 Defendants concede they fail to comply with the Injunction by checking a tracking system of

19 disability information to ensure that persons with disabilities can participate in their parole

20 proceedings. In Opposition to the motion, Defendants seek arbitrary limits on the tracking system

21 requirements that will perpetuate the egregious violations of Plaintiffs' rights that have been

22 conclusively demonstrated in this motion. Plaintiffs respectfully request that the Court decline to

23 enter Defendants' proposed order and instead issue the revised Proposed Order submitted with this

24 Reply.

25 Dated: May 18, 2006                ROSEN, BIEN & ASARO, LLP

26                                  By: _____

27                                    Michael W. Bien
                                 Ernest Galvan

28                                    Holly M. Baldwin
                                   Attorneys for Plaintiffs

PLAINTIFFS' REPLY ISO MOTION FOR ORDER TO
ENFORCE PERMANENT INJUNCTION; POINTS &
AUTHORITIES, Case No. C-94-2307 CW

PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the City and County of San Francisco, California, and not a party to the within action.  My business address is 155 Montgomery Street, 8th Floor, San Francisco, California.  On the date and in the manner indicated below, I served the following documents:

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDER TO ENFORCE  ¶¶ 15-17 OF THE PERMANENT INJUNCTION**

**REPLY DECLARATION OF MICHAEL W. BIEN IN SUPPORT OF MOTION FOR ORDER TO ENFORCE ¶¶ 15-17 OF THE PERMANENT INJUNCTION**

**REPLY DECLARATION OF HOLLY BALDWIN IN SUPPORT OF MOTION FOR ORDER TO ENFORCE ¶¶ 15-17 OF THE PERMANENT INJUNCTION**

**REPLY DECLARATION OF ANNE MANIA RE PLAINTIFFS' MOTION FOR ORDER TO ENFORCE ¶¶ 15-17 OF THE PERMANENT INJUNCTION**

**REPLY DECLARATION OF MARY SWANSON RE PLAINTIFFS' MOTION FOR ORDER TO ENFORCE ¶¶ 15-17 OF THE PERMANENT INJUNCTION**

**[PROPOSED] ORDER TO ENFORCE ¶¶ 15-17 OF THE PERMANENT INJUNCTION**

**ADMINISTRATIVE MOTION TO FILE UNDER SEAL; DECLARATION OF HOLLY BALDWIN**

**STIPULATION AND [PROPOSED] ORDER TO FILE DOCUMENTS UNDER SEAL**

on the parties in said action by placing a true copy thereof in an envelope, sealing it,  and causing same to be delivered to the following address:

**VIA FEDERAL EXPRESS AND E-MAIL**

Benjamin T. Rice
Deputy Attorney General
1300 "I" Street
P.O. Box 944255
Sacramento, CA 94244-2550
Fax: (916) 324-5205

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of May, 2006, at San Francisco, California.

_____
Kim Le