PRISON LAW OFFICE
DONALD SPECTER – 83925
SARA NORMAN – 189536
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
LINDA KILB -- 136101
2212 6th Street
Berkeley, California 94710
Telephone: (510) 644-2555

JONES DAY
CAROLINE N. MITCHELL - 143124
555 California Street, 25th Floor
San Francisco, CA 94104
Telephone: (415) 875-5712

BINGHAM McCUTCHEN, LLP
WARREN E. GEORGE – 53588
FRANK B. KENNAMER – 157844
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN – 096891
ERNEST GALVAN – 196065
HOLLY BALDWIN – 191317
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

LAW OFFICES OF ELAINE B. FEINGOLD
ELAINE B. FEINGOLD – 99226
1524 Scenic Avenue
Berkeley, California 94708
Telephone: (510) 848-8125

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JOHN ARMSTRONG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | Case No. C 94-2307 CW <br><br> **STIPULATION AND [PROPOSED] ORDER AMENDING ARMSTRONG REMEDIAL PLAN** |

1
2
3
4
5
6
7
8         IN THE UNITED STATES DISTRICT COURT
9           NORTHERN DISTRICT OF CALIFORNIA
10                  OAKLAND DIVISION
11
12  JOHN ARMSTRONG, et al.,          ) Case No. C 94-2307 CW
                                     )
13       Plaintiffs,                 ) **STIPULATION AND ORDER**
                                     ) **AMENDING ARMSTRONG**
14  v.                               ) **REMEDIAL PLAN**
                                     )
15  ARNOLD SCHWARZENEGGER, et al.,   )
                                     )
16       Defendants.                 )
    _____ )

THE PARTIES, BY AND THROUGH THEIR COUNSEL, HEREBY STIPULATE AS FOLLOWS:

The *Armstrong v. Davis* Court Ordered Remedial Plan, as amended January 3, 2001 (the "Armstrong Remedial Plan"), was filed with the Court on February 27, 2001.

Following a lengthy meet-and-confer process, the parties have agreed to a revision of Section IV.S of the Armstrong Remedial Plan, which is the section entitled Parole Field Operations. Attached hereto as Exhibit A is the revised text of the Armstrong Remedial Plan section regarding Parole Field Operations, as agreed to by the parties in March 2006.

The revised text attached hereto as Exhibit A shall hereby replace and supersede Section IV.S of the Armstrong Remedial Plan.

IT IS SO STIPULATED.

```
 1  Dated: September 7, 2006         BILL LOCKYER,
                                     Attorney General of the State of California,
 2                                   JAMES M. HUMES,
                                     Chief Assistant Attorney General,
 3                                   FRANCES T. GRUNDER,
                                     Senior Assistant Attorney General,
 4                                   ROCHELLE C. EAST,
                                     Supervising Deputy Attorney General
 5
 6
 7                                   By: /s/ Benjamin Rice
                                         Benjamin Rice
 8                                       Deputy Attorney General
                                         Attorneys for Defendants
 9
10  Dated: September 8, 2006         ROSEN, BIEN & ASARO, LLP
11
12
13                                   By: /s/ Holly Baldwin
                                         Holly Baldwin
14                                       Attorneys for Plaintiffs
15
16                            ORDER
17  Good cause appearing, and as stipulated above,
18  IT IS SO ORDERED.
19
20  DATED: SEP 1 1 2006             By: /s/ Claudia Wilken
                                        The Honorable Claudia Wilken
21                                      United States District Judge
```

-2-    STIPULATION AND ORDER AMENDING ARMSTRONG REMEDIAL PLAN

**Exhibit A**

## Parole Field Operations

It is the policy of the Department of Corrections and Rehabilitation (CDCR) to provide reasonable accommodations to parolees with disabilities to access programs and services provided by the Division of Adult Parole Operations (DAPO) and programs parolees are required to attend as a condition of their parole. Parole planning and supervision is conducted on a case-by- case basis to meet the unique needs of the parolee while protecting legitimate penological interests and consistent with the Department of Corrections and Rehabilitations policy.

### Release Program Study

Prior to an inmates release to parole the Regional Re-Entry Coordinator receives CDC form 611, Release Program Study (RPS) from institutional staff. The Regional Re-Entry Coordinator or designee shall review the "Medical/Psychiatric" and "GPL" sections of the RPS to determine if the parolee has a disability or possible learning disability. If a disability is noted, the Regional Re-Entry coordinator shall ensure the necessary source documents related to the noted disability are included with the RPS. If the source documents are missing, the Regional Re-Entry Coordinator or designee shall contact the sending institution's records office to request a copy be immediately faxed.

### Accommodation of Disabilities During Parole Supervision

Parolees with disabilities must be accommodated during their supervision. The information concerning a parolee's disabilities and needed accommodations accompanying the CDC 611 shall be placed in the ADA envelope attached to the back cover on the right side of the parole field file. Documents that are to be placed in this envelope include: CDC 128 C, CDC 128 C-1, CDC 128-1A, CDC 128 C-2, CDC 128-B (TABE), CDC 128-B (Transition to Parole Document), 128-B (Learning Disability), CDC 1845, and other CDCR approved documents identifying disabilities or needed accommodations. The agent of record (AOR) shall be familiar with the contents of this envelope, the CDC 611, and BPT 1073s if present in the field file that may identify a disability in order to provide appropriate accommodations prior to pre-arranged contacts with the parolee. During contacts not arranged in advance, the AOR or Officer of the Day (OD) shall ensure instructions given to parolee with disabilities affecting communication (i.e. vision, hearing, learning, developmental) are effectively communicated. In these cases, the means of effective communication used shall be documented on the Record of Supervision (CDC 1650-D).

### Learning Disabilities/TABE Reading Level of 4.0 or Below

Parolees with learning disabilities are members of the class in the case of *Armstrong v. Schwarzenegger*. Learning disabilities are specific neurological disorders that may substantially limit one or more of the major life activities of reading, writing, spelling, performing mathematical calculations, or information processing. Certain impairments in

the ability to communicate verbally, both expressively and receptively, may be attributed to a learning disability. Learning disabilities are characterized by a significant difference in achievement in some areas, as compared to the individual's overall intelligence. Individuals with learning disabilities generally have average intelligence quotients. It is not necessary to verify a learning disability in order to accommodate the limitations associated with it.

The fact that a field file does not contain source documents verifying a learning disability does not mean the parolee has no learning disability or does not require an accommodation to access CDCR or community programs or services.

When the parolee's field file has no documentation of a learning disability, and the parolee provides verifiable evidence of a learning disability, the AOR shall notify the Unit Supervisor (US) who shall review the submitted document(s).

DAPO shall recognize and accept as legitimate learning disability verification diagnoses from any of the following:

- A licensed psychologist
- A credentialed school psychologist
- A licensed educational psychologist

DAPO will accept, as legitimate learning disability verification, a school transcript from a California public school or a non-California school, with special education requirements equivalent to California Education Code, Sections 56333-56347, that reflect the following:

- Individualized Education Plan (IEP) denoting a specific learning disability.
- Enrollment in Special Education and/or section 504 classes/services denoting specific learning disabilities.

For parolees who have received special education services unrelated to a learning disability will be accommodated on a case-by-case basis.

If accepted, a copy of the document(s) shall be placed in the ADA section or envelope of the parolee's field file and the original forwarded to case records for placement in the parolee's central file. The original shall be accompanied with a CDCR form 1502, Activity Report, which will note the nature of the document and a request for it to be placed in the parolee's central file.

**Processing of 1824's**

A parolee with a disability may request an accommodation to access CDCR authorized programs, services, and activities, or grieve alleged discrimination, through the use of the CDC Form 1824. DAPO staff shall ensure the 1824 is readily available to all parolees. Additionally, DAPO staff shall assist parolees

in completing an 1824 when the parolee is unable to complete the form on his/her own due to a disability.

When a parolee submits an 1824, DAPO staff shall retain one copy in the field file, provide the parolee with a copy of the 1824, and forward the original to the Regional ADA Coordinator. The Regional ADA Coordinator shall maintain a tracking log of all 1824s. If the parolee submits any relevant documentation with the 1824, the documentation shall be copied in the same manner and attached to the 1824.

If DAPO field staff grant or partially grant the requested accommodation or grievance, they shall document their actions on the 1824 before making copies and forwarding it to the Regional ADA Coordinator. After a response is completed DAPO staff shall retain a copy of the completed 1824 in the field file.

When a parolee files an accommodation or modification request/appeal on an inappropriate form, i.e., CDC Form 602, the Unit Supervisor shall attach an 1824 and forward the request/grievance per the normal 1824 process.

All 1824's shall be processed according to the established time limit guidelines of the California Code of Regulations, Title 15, section 3084.6.

**Effective Communication**

Reasonable accommodation shall be afforded parolees with disabilities (e.g. vision, speech, hearing or learning disabilities) to ensure effective communication is achieved with staff during supervision contacts. Auxiliary aids that are reasonable, effective, and appropriate to the needs of the parolee shall be provided when standard written or oral communication is not effective. Such aids may include qualified interpreters, readers, sound amplification devices, audio taped texts, Braille materials, large print materials, and signage.

Because of the critical importance of communications involving due process, the standard for equally effective communication is higher when a due process interest is involved. Communications involving such issues as conditions of parole and requirements to report or register come under this category as well as any subsequent instruction(s) from a parole agent for which the parolee's non-compliance may result in a parole hold. The means of effective communication used shall be documented on the Record of Supervision (CDC 1650-D)

**Communication With Parolees Who Use Sign Language**

For parolees who use sign language as their primary method of communication, a sign language interpreter must be provided for communication of the conditions of parole, initial interview, any notice of changes to the parole conditions, PACT orientation, and POC or medical appointments with CDCR medical staff. If written communication is used during parole supervision contacts, those writings must be retained in the field file. Any arrest based on a failure to follow instructions charge must have as a condition

precedent that the instruction was effectively communicated and understood by the parolee. An inability to prove the effective communication by a preponderance of the evidence will result in a dismissal of the charge.

**Field Supervision/Office Visits**

Parole Agents shall continue to follow existing procedures as they pertain to the supervision of parolees. The services provided by parole agents for parolees at the field offices are supervision and basic counseling.

Parolees with disabilities shall be provided reasonable accommodations for equal access to DAPO services and required participation in community programs. For parolees with disabilities that limit their ability to access the parole office, due to poor or inaccessible public transportation, for instance, accommodations may include arranging for regular home visits instead of office visits.

It is the mutual responsibility of the parolee and the DAPO to verify disabilities that might affect the parolees' placement in community programs, access to parole related services and the verification of credible claims of a disability in response to a request for reasonable accommodations. Parolees must cooperate with staff in the staff's efforts to obtain documents or other information necessary to verify a disability.

If accepted, a copy of the document(s) shall be placed in the ADA section or envelope of the parolee's field file and the original forwarded to case records for placement in the parolee's central file. The original shall be accompanied with a CDCR form 1502, Activity Report, which will note the nature of the document and a request for it to be placed in the parolee's central file.

**Health Care Appliances**

The CDCR is not obligated to and does not provide health care appliances to parolees except those appliances that are ordered in prison but received after release to parole. Any healthcare appliance received by the institution after the inmates release to parole shall be forwarded to the parole unit supervising the parolee. The parolee shall be responsible for maintenance and repair of health care appliances.

If a parolee is indigent, he/she may qualify for Medi-Cal, Medicare, or other benefits to pay for such appliances and repairs to appliances. However, on a case-by-case basis a parolee may require financial assistance for obtaining a health care appliance to effectively participate in a required community based or parole program. Parole Agents shall verify the need for the financial assistance. The CDCR may provide financial assistance to obtain health care appliances or repair such appliances on a case by case basis.

**Parole Outpatient Clinics**

The Parole Outpatient Clinic (POC) provides mental health diagnosis, evaluations, counseling, testing (As determined necessary by the clinician) and prescribing of medication. Additionally POC provides transitional mental health care and on occasion sustained therapeutic intervention on an outpatient basis to parolees with disabilities who have an Axis I diagnosis. Due to the nature of POC sessions, all communications must be conducted at a heightened level of effective communication

POC clinicians shall review the disability status of a parolee prior to providing services and shall have access to equipment and services (e.g. qualified interpreters, sound amplification devices, large print materials, and signage) to ensure parolees participating in POC services are afforded effective means of communication.

POC clinicians shall document the accommodations provided, including the means of effective communication used. If written communication is used, those writings must be retained in the POC clinicians file.

If a parolee's primary method of communication is sign language, a sign language interpreter shall be provided for POC appointments. If a parolee chooses or requests that no Sign Language Interpreter be used during POC meetings, none will be used. This request shall be documented by the clinician. Family members shall not be used as sign language interpreters for regularly scheduled POC services. This does not preclude POC staff from utilizing family members as sign language interpreters in emergency situations.

**Evacuation Procedures**

In the event of an emergency requiring building evacuation, each parole office shall ensure the safe and effective evacuation of parolees with disabilities. Local evacuation procedures shall be adopted at each parole office.

**Searches**

Parolees who have disabilities that preclude the use of standard search methods shall be afforded reasonable accommodations during searches. Such searches shall be thorough and professional with safety and security being of paramount concern. Parole agents shall advise a visually impaired parolee where and how he/she will be searched before any contact takes place. It is not necessary to advise a parolee with visual impairment regarding physical contact when necessary force is applied.

All assistive and prosthetic devices should be searched for safety of parole staff and the parolee. If the search requires the removal of a prosthetic device, a compliant parolee will be allowed to remove the device and give it to staff. The parole agent shall advise the outside agency, when booking, if the parolee has not been thoroughly searched due to a disability, so that appropriate medical or security personnel are made available to conduct a thorough search.

**Restraints**

Parolees who have disabilities precluding the application of restraint equipment in the ordinarily prescribed manner shall be afforded reasonable accommodations. Mechanical restraints shall be applied to ensure staff safety while reasonably accommodating the parolee's disability. The following guidelines shall apply when applying restraints to disabled parolees:

- Mechanical restraints shall be applied to ensure security, while reasonably accommodating the parolee's disability.
- Mechanical restraints shall never be applied in a manner that restricts breathing, blood circulation, or causes undue physical discomfort.
- Disabled parolees with one arm or hand, in a wheelchair, or use a walker or cane shall be placed in waist chains, whenever possible.
- Mechanical restraints shall never be applied to a prosthetic limb.
- Mechanical restraints shall never be used to secure a person to a fixed object, except as a temporary emergency measure. A person who is being transported shall not be secured in any manner to any part of the vehicle.
- Escorting a physically disabled parolee who is in mechanical restraints shall be conducted in a careful and safe manner. Special attention will be given to the walking speed and path taken during escorts. Visually impaired parolees shall be assisted by means of guidance by the upper arm.

**Transportation**

The special needs of parolees with disabilities shall be considered in transporting them. A parolee's special health care aids and appliances shall accompany the parolee upon transport. A parolee shall not be secured in any manner to any part of the vehicle with the exception of the seatbelt.

The following guidelines shall apply when transporting disabled wheelchair dependent parolees:

- A parolee being transported for non-custody reasons, who is compliant and can self-transfer from a wheelchair, can be transported in a standard vehicle by the parole agent.
- The parole agent may utilize other forms of transportation when a parolee being transported for non-custody reasons is compliant but unable to self-transfer from a wheelchair. A bus, van, para-transit van or any public vans equipped to handle the particular disability are considered as other forms of transportation. DAPO will utilize cash assistance to obtain these services when necessary.
- If the parolee is being transported for custody reasons and is compliant and can self-transfer from a wheelchair, a parole agent can transport.

If the parole agent preparing the CDC Form 1018, Transportation Request, knows that a parolee in local custody has a disability and requires assistance to enter or exit a vehicle, the agent will note that information on the 1018.

# PROOF OF SERVICE

I, Emily Harpster, declare:

I am a resident of the State of California; over the age of eighteen years; and not a party to the within action. My business address is 155 Montgomery Street, Suite 800, San Francisco, CA, 94104. On September 8, 2006, I caused to be served the within document(s):

**STIPULATION AND [PROPOSED] ORDER AMENDING ARMSTRONG REMEDIAL PLAN**

☐ by transmitting via facsimile the above listed document(s) to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ by causing personal delivery of the document(s) listed above to the addressed person(s) set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope with postage thereon fully prepaid addressed as set forth below.

**By U.S. Mail:**
Benjamin T. Rice
Deputy Attorney General
P. O. Box 944255
Sacramento, CA 94244-2550

I am readily familiar with the firm's practice of collecting and processing documents for mailing. Under that practice, documents are deposited within the United States Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Proof of Service was executed on September 8, 2006, at San Francisco, California.

*Emily Harpster*
Emily Harpster

ROSEN, BIEN
& ASARO,
LLP