ORIGINAL

| | |
|---|---|
| 1 | PRISON LAW OFFICE |
| | DONALD SPECTER – 83925 |
| 2 | SARA NORMAN – 189536 |
| | General Delivery |
| 3 | San Quentin, California 94964 |
| | Telephone: (415) 457-9144 |
| 4 | |
| | DISABILITY RIGHTS EDUCATION & |
| 5 | DEFENSE FUND, INC. |
| | LINDA KILB – 136101 |
| 6 | 2212 6th Street |
| | Berkeley, California 94710 |
| 7 | Telephone: (510) 644-2555 |

1  PRISON LAW OFFICE
   DONALD SPECTER – 83925
2  SARA NORMAN – 189536
   General Delivery
3  San Quentin, California 94964
   Telephone: (415) 457-9144

4

5  DISABILITY RIGHTS EDUCATION &
   DEFENSE FUND, INC.
   LINDA KILB – 136101
6  2212 6th Street
   Berkeley, California 94710
7  Telephone: (510) 644-2555

8  JONES DAY
   CAROLINE N. MITCHELL – 143124
9  555 California Street, 25th Floor
   San Francisco, CA 94104
10 Telephone: (415) 875-5712

11 Attorneys for Plaintiffs

BINGHAM McCUTCHEN, LLP
WARREN E. GEORGE – 53588
Three Embarcadero Center
San Francisco, California 94111-4066
Telephone: (415) 393-2000

ROSEN, BIEN & ASARO, LLP
MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
155 Montgomery Street, 8th Floor
San Francisco, California 94104
Telephone (415) 433-6830

RECEIVED

JAN 17 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

FILED

JAN 18 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1045

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

JOHN ARMSTRONG, et al.,

  Plaintiffs,

v.

ARNOLD SCHWARZENEGGER, et al.,

  Defendants.

Case No. C 94-2307 CW

**INJUNCTION**

On January 12, 2007, this matter came on regularly for hearing in Courtroom 2, Fourth Floor, of this Court, the Honorable Claudia Wilken presiding. Donald Specter, Sara Norman, Michael Bien, and Gay Grunfeld appeared on behalf of Plaintiffs John Armstrong et al. Katherine Nelson appeared on behalf of Defendants Arnold Schwarzenegger, Governor; James Tilton, Secretary of California Department of Corrections and Rehabilitation ("CDCR"); Kingston W. Prunty, Jr., Undersecretary, CDCR; Scott Kernan, Acting Director, Division of Adult Institutions; Marisela Montes, Chief Deputy Secretary,

1  Adult Programs; George A. Sifuentes, Deputy Director, Office of Facilities Management;

2  and Dr. Peter Farber-Szekrenyi, Director, Division of Correctional Health Care Services

3  ("Defendants").

4    Having considered the parties' pleadings and the arguments of counsel, and good

5  cause existing therefor,

6    **THE COURT HEREBY FINDS AND ORDERS:**

7    In a series of orders commencing in 1996 and culminating in 2002, this Court found

8  defendants' treatment of prisoners with disabilities violates the Americans with Disabilities

9  Act and Section 504 of the Rehabilitation Act.  On January 3, 2001, defendants issued the

10  amended Armstrong Remedial Plan, which sets forth their own policies and procedures to

11  bring them into compliance with the ADA and Section 504.  On March 21, 2001, this Court

12  issued a Permanent Injunction ordering defendants to comply with the ADA and Section

13  504 in eight specific areas previously litigated by the parties.

14    Commencing in 1999 and continuing to the present, plaintiffs' counsel have engaged

15  in extensive monitoring of CDCR institutions for compliance with the ADA, Section 504,

16  the Permanent Injunction, and the Armstrong Remedial Plan.

17    This monitoring effort has not yet brought defendants into compliance.  While some

18  individual prisons have improved their compliance, it has become increasingly clear that

19  defendants are unable to meet their obligations.  This inability to comply with the Court's

20  Orders and with federal law causes significant harm to the plaintiff class.

21    Through their Motion for Enforcement and Further Remedial Orders, Plaintiffs have

22  demonstrated that defendants continue to violate the rights of prisoners with disabilities

23  under the ADA and Rehabilitation Act in four significant areas.

24    **Inaccessible Housing**

25    Contrary to law, the Permanent Injunction, and the Armstrong Remedial Plan,

26  defendants are systemically failing to provide safe, accessible housing to prisoners with

27  mobility impairments, resulting in significant harm to the plaintiff class, including through

28  increased risk of injury.  Defendants lack an adequate number of wheelchair accessible

1  placements, toilets and showers to accommodate the needs of prisoners with mobility

2  impairments who need to use a wheelchair either full-time or part-time.  This shortage is

3  particularly acute for prisoners with special housing needs such as protective custody,

4  enhanced mental health care, administrative segregation, or high security levels.

5       Defendants also repeatedly fail to place prisoners with serious mobility and vision

6  impairments in safe housing.  Defendants often force prisoners into upper bunks or upper

7  tiers of the prison despite restrictions from medical staff on such placements.

8       Defendants fail to transfer prisoners with severe disabilities to prisons designed to

9  accommodate them in a timely fashion.  As a result, such prisoners are denied needed

10 accommodations too often and for too long.

11      Defendants have failed to repair and maintain accessible showers and toilets in many

12 prisons, especially California Institution for Men, San Quentin, and Kern Valley.

13      **Denial of sign language interpreters to prisoners who need them**

14      Contrary to law and the Armstrong Remedial Plan, defendants consistently and

15 systemically deny sign language interpreters to deaf prisoners.  Within designated prisons,

16 the violations occur most frequently at deaf prisoner's medical and mental health

17 appointments.  Plaintiffs have also presented pervasive evidence of violations with regard to

18 suicidal prisoners; in education, work, and other programming; and during classification

19 hearings, harming deaf signers by forcing them to rely on ineffective and inadequate forms

20 of communication such as lip reading and written notes. As such, deaf signers are unable to

21 understand or comprehend significant due process proceedings and medical care provided to

22 them.

23      **Confiscation of Medically Prescribed Assistive Devices**

24      Contrary to law and the Armstrong Remedial Plan, defendants routinely and

25 systemically remove assistive devices such as walking canes, hearing aids, tapping canes,

26 crutches, and wheelchairs from prisoners without any security justification and without

27 consulting medical staff.  The problem is severe and longstanding.  Removal of assistive

28 devices has been adopted as a policy at some institutions, while at others it is tolerated and

1    continues sporadically, making it difficult or impossible for prisoners to ambulate or hear in

2    prison and putting them at significant risk of injury.

3              **Late and Inadequate Disability Grievance Responses**

4              Contrary to law and the Armstrong Remedial Plan, defendants repeatedly and

5    systemically fail to respond promptly to class members' grievances requesting

6    accommodations.  Some institutions respond chronically late – as often as 70 to 90 percent

7    of the time – to disability grievances, thereby subjecting class members to extraordinarily

8    long waits for hearing aids and other accommodations.   Some institutions simply stop

9    processing grievances or lack any staff person (medical appeals analyst) to process

10   disability grievances or fail to retrieve the grievances from the box where prisoners are

11   instructed to leave them.  Through whichever failed mechanism, CDCR's inadequate

12   disability grievance system harms the plaintiff class by denying them their only means of

13   seeking accommodation for their disabilities.

14             **Inadequate Disability Tracking**

15             Underlying all of these violations is defendants' failure to adequately track prisoners'

16   disabilities and the accommodations they need.  As this Court held on May 30, 2006, "[t]he

17   current system for tracking prisoner … disabilities is unreliable, noncomprehensive, and

18   insufficient."  This Court further stated that "[u]se of a tracking system to prevent such

19   violations is required … by the underlying law."  Defendants' Armstrong and Clark

20   Automated Tracking System has failed to identify and track CDCR prisoners' disabilities

21   and the accommodations needed for those disabilities.  The lack of an adequate tracking

22   system has resulted in significant harm to the plaintiff class, including but not limited to

23   denial of safe, accessible housing, prompt transfers to designated institutions, and sign

24   language interpretation.

25             **IT IS HEREBY ORDERED** that defendants, their agents, employees and

26   successors in interest shall take the actions listed below, and use all means at their disposal

27   to comply with the provisions set forth below, including obtaining staffing and funding on

28   an emergency basis, if necessary.  If defendants believe that any provision in state law

1    makes compliance with any provision impossible, they shall immediately thereafter notify

2    the Court and set forth their position about whether such law should be waived pursuant to

3    18 U.S.C. Section 3626(a)(1)(B).

4        The parties shall meet and confer as often as necessary to fulfill the provisions of this

5    order and obtain as much agreement as possible on the means to achieve compliance

6    therewith.  The parties shall notify the Court in writing of any disputes about the

7    implementation of these provisions and suggest appropriate methods of resolution.

8        The Court shall schedule periodic status conferences at 60 day intervals to monitor

9    the progress of compliance with this and other prior orders.  Prior to such conferences, the

10   parties shall file statements in a form to be determined through agreement of the parties

11   describing defendants' progress on each issue, any perceived barriers to future compliance

12   and suggested methods of overcoming those barriers.

13   **A. ENHANCED STAFFING**

14       Within 45 days of the date of this Order, defendants shall increase the staff of the

15   CDCR Court Compliance Team so that it has at least one staff member at Correctional

16   Counselor II level or higher for each prison designated to house prisoners with disabilities

17   impacting placement (including designated reception centers and designated Security

18   Housing Unit and condemned housing) and at least one position at Correctional Counselor

19   II or higher position for every two non-designated prisons.

20       The Court Compliance Team shall have sufficient command authority within the

21   CDCR to direct compliance with the Armstrong Remedial Plan and the orders of this Court

22   at all CDCR institutions.

23       Within 45 days of the date of this Order, defendants shall appoint one full-time staff

24   member at the Associate Warden level or higher as the ADA Coordinator at each institution

25   designated to house prisoners with disabilities impacting placement (including designated

26   reception centers and designated Security Housing Unit and condemned housing), to work

27   only on ADA compliance matters, with a supervising correctional counselor as an assistant.

28   \\\

## B. TRACKING SYSTEM

Defendants shall develop, implement, and begin to use a state-wide, computerized, networked real-time tracking system to track prisoners with disabilities by May 30, 2007. This system shall be integrated with the BPH tracking system previously ordered by the Court. The tracking system shall include prisoners' disability designations and the disability accommodations they require, including but not limited to lower bunks, ground floor housing, assistive devices, and effective communication needs such as sign language interpreters, large print, and scribes.

For prisoners whose disabilities impact placement (DPW, DPO, DPM, DPV, and DPH), as well as for prisoners who are DNM with housing restrictions, the tracking system shall include placement and classification factors, including but not limited to mental health placement needs, protective custody, administrative segregation, Security Housing Unit, security level, and developmental disability designation.

The tracking system shall be updated continuously as new information is received about prisoners with disabilities.

## C. HOUSING

Within 90 days of the date of this Order, defendants shall generate an inventory of housing placements available to DPV, DPW, DPM, and DPO prisoners and DNM prisoners with housing restrictions. The inventory must include classification factors for each placement, including but not limited to mental health placement needs, protective custody, administrative segregation, Security Housing Unit, security level, and developmental disability designation. The inventory must also include information regarding the current state of repair of accessible features for each placement.

The placement inventory shall be updated continuously as new information is received regarding placement factors and maintenance.

Upon completion of the inventory, CDCR may no longer house DPW, DPO, and DPM prisoners at any placements without adequate accessible housing, including working accessible toilets and showers.

1    Starting immediately, defendants shall not house DPW, DPO, and DPM prisoners in

2  the CIM dayrooms or Kern Valley State Prison until those locations have adequate

3  accessible housing, including working accessible toilets and showers.

4    **D. ACCOUNTABILITY**

5    Within 120 days of the date of this Order, defendants, in cooperation with the Office

6  of the Inspector General and the Receiver in *Plata v. Schwarzenegger*, shall develop a

7  system for holding wardens and prison medical administrators accountable for compliance

8  with the Armstrong Remedial Plan and the orders of this Court.  This system shall track the

9  record of each institution and the conduct of individual staff members who are not

10  complying with these requirements.  Defendants shall refer individuals with repeated

11  instances of non-compliance to the Office of Internal Affairs for investigation and

12  discipline, if appropriate.

13    Within 60 days of the date of this Order, defendants, in consultation with plaintiffs'

14  counsel, shall develop and implement a system of positive incentives to encourage

15  individual employees and managers at the institutions to comply with the Armstrong

16  Remedial Plan and the Orders of this Court.

17    Within 60 days of the date of this Order, defendants shall amend post orders and duty

18  statements of correctional staff as appropriate to include the *Armstrong* requirements for

19  which they are responsible.

20    **E. TRAINING**

21    Within 60 days of the date of this Order, defendants, subject to the approval of

22  plaintiffs' counsel, shall select and retain outside experts to provide training of health care

23  staff and correctional counselors in effective communication issues.

24    Within 60 days of the date of this Order, the parties shall jointly agree on outside

25  experts and defendants shall retain them to provide training to all custody staff who work in

26  administrative segregation units, the Security Housing Unit, or Receiving and Release on

27  their obligations not to confiscate assistive devices and the reasons therefor.

28

1  Defendants' employees may jointly provide training with the outside experts. The

2  training of all appropriate staff shall be completed by September 1, 2007, and a regular

3  schedule of ongoing and refresher training shall be established.

4  **F. GRIEVANCES**

5  Within 30 days of the date of this Order, defendants shall ensure that the Appeals

6  Coordinator and Medical Appeals Analyst positions are filled at each institution.

7  Defendants shall take all actions necessary to ensure that these positions do not remain

8  vacant for more than one month.

9  Within 60 days of the date of this Order, defendants shall provide sufficient

10  additional staff time to timely process grievances whenever a prison's disability grievance

11  responses are late more than 30% of the time within the last six months. The additional

12  staffing shall remain in place until the grievance process is in substantial compliance. The

13  parties shall meet and confer as soon as possible to establish an appropriate methodology to

14  determine how to measure the timeliness of grievance responses and the definition of

15  substantial compliance in this area, with any disputes to be resolved by the Court.

16  **G. SIGN LANGUAGE INTERPRETERS**

17  Within 120 days of the date of this Order, defendants shall establish as permanent

18  civil service positions qualified sign language interpreters for each prison designated to

19  house prisoners whose hearing disabilities impact their placement (DPH). Defendants shall

20  employ, through whatever salary is necessary, sufficient qualified interpreters to serve the

21  needs of the DPH prisoners housed at each institution. Defendants may seek relief from this

22  provision at a particular institution when their video conferencing facilities are sufficient to

23  provide all necessary sign language services at that institution.

24  Within 30 days of the date of this Order, defendants shall conduct interviews of all

25  DPH inmates in reception centers by a correctional counselor in the presence of a qualified

26  sign language interpreter to determine the prisoner's preferred method of communication

27  and record that information in the state-wide tracking system as well as the prisoner's

28

1   central and medical files.  Defendants shall conduct such interviews with prisoners who are

2   newly designated DPH within 30 days of the designation.

3       **H.  MISCELLANEOUS**

4           Defendants shall comply with the policies and procedures contained in their

5   *Armstrong* Remedial Plan relevant to the issues outlined above, specifically Sections I (p.1),

6   II.A-D (pp. 1-4), II.E (pp. 4-7),  II.F (p. 7), IV.C-G (pp. 16-21),  IV.I.22 (pp. 34-35), and

7   IV.I.23 (pp. 36-41) of the Remedial Plan.

8           The Court finds that the relief ordered herein is narrowly drawn, extends no further

9   than necessary to correct the violation of federal rights, and is the least intrusive means

10  necessary to correct the violation of the federal rights.

11  **IT IS SO ORDERED.**

12

13  Dated: _____ JAN 1 8 2007 _____     By: _____

14                                              THE HONORABLE CLAUDIA WILKEN
                                                UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


ARMSTRONG, ET AL,

        Plaintiff,

  v.

DAVIS, ET AL et al,

        Defendant.

_____/

Case Number: CV94-02307 CW

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 18, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Arlene Brynne Mayerson
Disability Rights Education and Defense Fund, Inc.
2212 Sixth Street
Berkeley, CA 94710

Benjamin C. Sybesma
California Correctional Peace Officers' Association
Legal Department
755 Riverpoint Drive, Suite 200
West Sacramento, CA 95605-1634

Caroline N. Mitchell
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104

Donald Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

Elaine Feingold
Elaine B. Feingold Law Offices
1524 Scenic Avenue
Berkeley, CA 94708

Katherine Kylin Nelson
Office of the Attorney General
Correctional Law Section
1300 I Street, Suite125
P.O. Box 944255
Sacramento, CA 94244-2550

Michael William Bien
Rosen Bien & Galvan, LLP
155 Montgomery St.
8th Floor
San Francisco, CA 94104

Paul B. Mello
Hanson Bridgett Marcus Vlahos & Rudy LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

Ronald Yank
Carroll, Burdick & McDonough, LLP
Attorneys At Law
44 Montgomery St., Suite 400
San Francisco, CA, CA 94104

Warren E. George
Bingham McCutchen LLP
Three Embarcadero Ctr
San Francisco, CA 94111

Dated: January 18, 2007

                              Richard W. Wieking, Clerk
                              By: Sheilah Cahill, Deputy Clerk

2