**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN ARMSTRONG, et al.,                              No. C 94-2307 CW

      Plaintiffs,

  v.                                             ORDER GRANTING IN
                                                   PART PLAINTIFFS'
ARNOLD SCHWARZENEGGER, et al.,                     MOTION TO ENFORCE
                                                   THE MAY 30, 2006
      Defendants.                       ORDER

_____/

On August 16, 2007 at 3:00 p.m., this matter came on regularly
for hearing.  Having considered the parties' pleadings, the
arguments of counsel, and the record in this case, and good cause
appearing therefor, the Court hereby finds and orders as follows:

The Court entered a Permanent Injunction in this action on
December 22, 1999 as to Defendants, government officials and
entities responsible for conducting parole proceedings by the Board
of Parole Hearings (BPH, formerly Board of Prison Terms)[1],

---

[1]The current government officials and entities serving as
Defendants are Governor Arnold Schwarzenegger, the California
Department of Corrections and Rehabilitation (CDCR), Secretary of
the CDCR James Tilton and Executive Director of the Board of Parole

following trial and findings that Defendants were in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment.  The Permanent Injunction was supported by Findings of Fact and Conclusions of Law, filed on December 22, 1999, stating that the order for relief was narrowly drawn, extended no further than necessary to correct the violation of federal rights, and was the least intrusive means necessary to correct the violation of federal rights.  The Court entered a Revised Permanent Injunction on February 11, 2002.

    The Revised Permanent Injunction requires, among other things, that Defendants create and maintain a system for tracking prisoners and parolees with disabilities; that Defendants take reasonable steps to identify prisoners and parolees with disabilities prior to parole proceedings, including checking the tracking system and reviewing all relevant and reasonably available information in the central or medical file; and that Defendants provide reasonable accommodations to prisoners and parolees with disabilities at all parole proceedings, including parole revocations and revocation extensions, life prisoner hearings, Mentally Disordered Offender (MDO) proceedings, and Sexually Violent Predator (SVP) proceedings. See Revised Permanent Injunction ¶¶ 15-17.

    Based on Defendants' ongoing failure to comply with the above provisions of the Revised Permanent Injunction and the resulting

_____

Hearings (BPH) John Monday.

2

United States District Court
For the Northern District of California

harm to members of the plaintiff class, Plaintiffs filed an

enforcement motion, which was heard by this Court on May 26, 2006.

On May 30, 2006, this Court entered an Order Granting Motion

to Enforce Revised Permanent Injunction (May, 2006 Order).  The

Court found that Defendants were violating paragraphs fifteen,

sixteen and seventeen of the Revised Permanent Injunction, the ADA,

the Rehabilitation Act, and the Due Process Clause, and were

violating the rights of plaintiff class members by failing to

provide necessary accommodations during parole proceedings.  May,

2006 Order at 3-8.  Plaintiffs' evidence of these violations and

the harm caused to class members was uncontested.  Id. at 4:15-18,

5:1-6:14, 6:23-25, 8:11-14.  Plaintiffs' counsel demonstrated

numerous and ongoing failures of Defendants' existing systems for

tracking prisoner and parolee disabilities and necessary

accommodations, and failures to provide reasonable accommodations

during parole proceedings.

To remedy Defendants' violations, the Court ordered that:

> Defendants must implement a State-wide, computerized,
> networked, real-time database system, preferably the
> Revocation Scheduling and Tracking System (RSTS), to
> ensure compliance with paragraphs fifteen, sixteen and
> seventeen of the Revised Permanent Injunction in this
> action.  For parole revocations and extensions, this
> system must be implemented on or before January 1, 2007.
> For life prisoner hearings, MDO proceedings, and SVP
> proceedings, this system must be implemented on or
> before May 1, 2007.  It may be included in the RSTS, the
> LSTS or an equivalent system.  In addition, Defendants
> must develop and implement a plan to assure that
> accommodations, including but not limited to sign
> language interpreters, are actually provided at each
> parole proceeding without delay.

May, 2006 Order, ¶ 1 at 8:15-9:3.  The order outlined further

requirements for the capabilities and use of the tracking system,

3

and required that Defendants take a series of specific steps in connection with the tracking system and the accommodations plan. Id. ¶¶ 1-6 at 8:15-11:2.

Defendants have failed to comply with the remedial provisions of the May, 2006 Order.  On November 27, 2006, Defendants filed a Request for Extension of Time, seeking to extend the January 1, 2007 deadline to March 30, 2007 for implementation of the tracking system in parole revocations and for implementation of the accommodations plan, to extend the January 1, 2007 deadline to November 30, 2007 for implementation of the tracking system in revocation extensions, and to extend the May 1, 2007 deadline to November 30, 2007 for implementation of the tracking system in life prisoner, MDO, and SVP proceedings.  The Court denied Defendants' request for an extension of time by order entered on December 14, 2006, finding, "The declarations in support of the request demonstrate that Defendants have made some progress toward complying with the Court's order, but offer no evidence that Defendants have made any special effort to meet a deadline they anticipated would be difficult to achieve.  Rather, it appears that Defendants have resigned themselves to being unable to meet the Court's deadlines." December 14, 2007 Order Denying Defendants' Motion for Extension of Time at 3.  Despite the Court's order, Defendants have failed to meet the Court's deadlines, as detailed below.

I.   Disability and Tracking Database

The May, 2006 Order required that the disability tracking database be a "State-wide, computerized, networked, real-time

United States District Court
For the Northern District of California

database system, preferably the Revocation Scheduling and Tracking System (RSTS)."  May, 2006 Order ¶ 1 at 8:16-19.  Defendants have developed a computerized, networked database system called the Disability and Effective Communication System (DECS), accessible through either the CDCR intranet or the internet via the world wide web.

The disability tracking database "must include access to information previously gathered by the BPH regarding an inmate or parolee's disabilities and needs for accommodation."  May, 2006 Order ¶ 2 at 9:5-7.  DECS allows access to information previously gathered by the BPH in the BPH form 1073 file review and inmate/parolee interview process, for current and prior parole proceedings.  Defendants failed, however, to maintain such information from parole revocations in any electronic form whatsoever for a seven-week period from March 13, 2007 to April 27, 2007.  This information gap has not been rectified.  In addition, at least some disability and accommodation information gathered for parolees subject to the MDO certification process has not been entered into DECS.

The tracking system "must be updated with new information about disabilities identified during the parole proceedings, and accommodations requested and provided."  May, 2006 Order ¶ 2 at 9:12-14.  Defendants' procedures provide no clear deadlines for when disability information is entered into DECS during the life prisoner, MDO or SVP processes, such that information on a prisoner's need for accommodation due to a disability may not be available when needed for the next step in the applicable parole

proceeding.

The tracking system "must be able to transmit information back to CDCR Institutions and [BPH] for future use."  May, 2006 Order ¶ 2 at 9:14-15.  Defendants admit that they failed to comply with this requirement.

II.  Tracking System for Parole Revocations and Revocation Extensions

Defendants also failed to meet the January 1, 2007 deadline for implementation of the disability tracking system in parole revocations and revocation extensions.  See May, 2006 Order ¶¶ 1, 6 at 8:15-22, 10:19-24.  After the Court denied their Request for an Extension of Time, Defendants filed an untimely "Certification of Implementation Of Interim Plan and Tracking System" on January 3, 2007, containing their interim plan for tracking disability information in revocation and revocation extension proceedings (Interim Database), and for providing accommodations in all parole proceedings (Interim Plan).  The Interim Database tracking system was an inadequate stop-gap measure in that it failed to comply with critical requirements of the May, 2006 Order.

The new DECS tracking system was finally available for use for parole revocations and revocation extension hearings as of March 26, 2007.

III. Tracking System for Life Prisoner, MDO and SVP Proceedings

Defendants failed to meet the May 1, 2007 deadline for implementation of the disability tracking system in life prisoner, MDO and SVP proceedings.  See May, 2006 Order ¶¶ 1, 6 at 8:22-24, 10:24-11:2.  Defendants have yet to implement fully the use of the

Tracking System in life prisoner, MDO and SVP proceedings.

IV.  Identification of Parole Proceedings

Defendants agreed that the DEC System would be checked at many specific steps in parole proceedings, and the parties enumerated these steps in their Joint Certification of Meet and Confer Results filed on August 25, 2006.  See Joint Certification ¶ 7(a)-7(dd). Defendants have failed to comply with several of these agreements. Their policies and procedures implemented to date make no adequate provision for checking DECS prior to some parole proceeding steps (Joint Certification ¶ 7(e), (g), (h), (j), (k), (l), (u), (v), (w), (y) and (z)), and Defendants have been unwilling  to check DECS at other steps (Id. ¶ 7(o)-(t)).

The parties' Joint Certification noted four remaining points of disagreement as to whether certain proceedings are "parole proceedings" subject to the requirements of the Revised Permanent Injunction and the May, 2006 Order:

(a) Notice of conditions of parole by Correctional Counselor I in CDCR Institutions and Parole Agent in parole field offices;

(b) Inclusion in the Life Prisoner Board Report by the Correctional Counselor I in CDCR Institutions of information regarding the life prisoner's ability to access programs previously recommended by the BPH under Paragraphs 36 and 37 of the Revised Permanent Injunction;

(c) Communication of special conditions of parole for parolees released to Not In Custody (NIC) status while parole revocation proceedings are pending; and

(d) Consideration of diversion to remedial sanctions

United States District Court
For the Northern District of California

1    programs.

2    See Joint Certification ¶ 8.

3    V.   Certification of Funding

4         Defendants were required to certify to the Court, by November

5    27, 2006, "that they have taken all necessary steps to secure

6    funding for utilization of the RSTS, or other State-wide

7    computerized tracking system, and of the plan to provide

8    accommodations in a timely manner, including sign language

9    interpreters."  May, 2006 Order ¶ 5 at 10:12-17.  On November 27,

10   2006, Defendants filed a Certification of Funding, but only as to

11   the tracking system, not as to the accommodations plan.  Defendants

12   requested clarification as to whether the May, 2006 Order required

13   certification as to only the status of the accommodations plan, or

14   also as to the funding of the accommodations plan.  In an order

15   entered on December 14, 2006 denying Defendants' request for an

16   extension of time, the Court clarified that "it ordered Defendants

17   to certify that they had taken all necessary steps to obtain

18   funding for the plan to provide timely accommodations."  December

19   14, 2006 Order at 4:6-8.  Defendants have failed to make any

20   subsequent certification to the Court that they have obtained

21   funding for their accommodations plan.

22   VI.  Accommodations Plan

23        By January 1, 2007, Defendants were required to certify to the

24   Court "that they have fully implemented . . . the plan to provide

25   accommodations in a timely manner, including sign language

26   interpreters."  May, 2006 Order ¶ 6 at 10:19-24.  Defendants were

27   required to meet and confer with Plaintiffs' counsel regarding the

28                                    8

United States District Court
For the Northern District of California

1   plan.  <u>Id.</u> ¶ 4 at 10:6-11.

2       Defendants failed meaningfully to meet and confer with

3   Plaintiffs' counsel before the January 1, 2007 deadline, and filed

4   a "Certification of Implementation of Interim Plan and Tracking

5   System" on January 3, 2007, containing their interim plan for

6   providing accommodations in all parole proceedings between January

7   1, 2007 and March 30, 2007.  On February 20, 2007, Defendants filed

8   their "Plan to Provide Accommodations in Parole Proceedings."

9   Defendants' meet-and-confer efforts following the issuance of their

10  Accommodations Plan have been sporadic and insufficient.  During

11  that process, Defendants have provided Plaintiffs' counsel with

12  draft policies and procedures that address some of the deficiencies

13  in the Accommodations Plan, but have yet to implement those

14  procedures, and have not filed an amended plan with the Court.

15      Defendants' Accommodations Plan is deficient in many respects.

16  As described above, Defendants have failed to certify that they

17  have secured funding for the Accommodations Plan.  The

18  Accommodations Plan has not been distributed to all necessary CDCR

19  staff, nor has training been provided on its requirements, aside

20  from training on the use of DECS for certain staff.  The Plan also

21  fails to provide adequate means to ensure that there are not delays

22  in parole proceedings in order to arrange needed accommodations.

23  Defendants have failed to provide an adequate plan to ensure the

24  timely provision of needed accommodations for parole proceedings

25  that take place in county jails (including parole revocation and

26  revocation extension hearings).  There is no proof to support

27  Defendants' assertions that all county jails where parole

28

9

**United States District Court**
For the Northern District of California

proceedings take place have structurally accessible locations for those parole proceedings, or that the county jails provide adequate access to necessary assistive devices for class members. This is particularly disturbing, given the uncontested evidence presented by Plaintiffs in April, 2006 that a paraplegic parolee had to drag himself up stairs to consult with his revocation defense attorney at Kern County Jail.

Defendants have also failed to ensure that there are structurally accessible locations for BPH hearings at Folsom State Prison. And Defendants have failed to demonstrate that there are structurally accessible locations at each CDCR institution for parole proceedings other than hearings, such as attorney consultations and file reviews.

There is no procedure for panel attorneys retained by the BPH to access current information from DECS prior to their consultations in life prisoner, MDO, or SVP proceedings. Instead, Defendants provide panel attorneys only with a hard copy printout from DECS that may contain no information, or information that is outdated by the time of the consultations and subsequent proceedings.

Defendants have identified serious problems with their contracts to provide sign language interpretation at parole proceedings, including unacceptably long lead times for securing interpretation, but have not developed any plan to address these problems. Defendants' problems with providing timely sign language interpretation continue. Defendants also plan to rely on videoconferencing as a backup method for providing sign language

interpretation at parole proceedings, but have failed to demonstrate that videoconferenced sign language interpretation is effective, or that they have the capability to provide it.

Defendants' Accommodations Plan acknowledges that training, such as annual training on the <u>Armstrong</u> Remedial Plan for DAPO staff, is an essential component, but the Plan fails to acknowledge the need for improved ADA and <u>Armstrong</u> training for BPH panel attorneys who represent prisoners in life prisoner, MDO, and SVP proceedings, despite long-standing evidence that the current training is inadequate.

Defendants have failed to ensure that there is adequate DECS access at Department of Mental Health (DMH) institutions where MDO hearings are held.  They have also failed to inform staff there adequately about resources available for providing accommodations.

Defendants have failed to maintain their policies and procedures for ensuring compliance with the ADA, the Revised Permanent Injunction, and this Court's remedial orders in a coherent or comprehensive manner.

In order to remedy Defendants' violations and deficiencies and ensure compliance with the terms of the May, 2006 Order, the Court issues further remedial orders, as follows.

A.   Use of DECS in Parole Proceedings

1.   Within fourteen days of this order, Defendants shall provide DECS access to all hearing officers and parole agents involved in MDO hearings conducted at DMH institutions.  Within fourteen days of this order, Defendants shall certify to Plaintiffs' counsel that hearing officers and parole agents at DMH

11

United States District Court
For the Northern District of California

institutions have DECS access; the certification shall be based on personal knowledge and accompanied by documents demonstrating that such access is established.

2.    By January 1, 2008, Defendants shall provide full DECS computer connectivity, by providing DECS access for the following individuals, as set forth in the Joint Certification of Meet and Confer Results Pursuant to the May, 2006 Order Granting Plaintiffs' Motion To Enforce Permanent Injunction, Paragraph 7: all Classification and Parole Representatives, Reception Center Correctional Counselor III's, BPH hearing schedulers, Correctional Counselor I's, mental health clinicians (permanent, contract and employed by DMH), staff assigned as assistants in life prisoner proceedings, MDO and SVP Coordinators, "lifer desk" and "revocation extension desk" staff, and BPH Commissioners and Deputy Commissioners.  The DECS access for BPH Commissioners and Deputy Commissioners shall be in hearing rooms and real time.  By January 1, 2008, Defendant Tilton, or his designee, shall certify to Plaintiffs' counsel that all of the above-listed staff have DECS access; the certification shall be based on personal knowledge and accompanied by documents demonstrating that such access is established.

3.    "Access," as used in paragraphs one and two above, and throughout this order, shall mean that the user can utilize DECS at his or her workstation personally, individually, and routinely in the ordinary course of business.  Utilizing another user's workstation, login, or computer to enter DECS shall not constitute "access."

12

**United States District Court**
For the Northern District of California

4.    Correctional Counselors shall check DECS prior to all parole proceedings including but not limited to: notice of charges and rights for parole revocation extension hearings, reviewing life prisoner packets with life prisoners, service of life prisoner packets, interviews with life prisoners for Board reports, providing assistance with life prisoner parole plans, review of Board Reports, including psychological evaluations, with the prisoner, providing assistance with life prisoner appeals, interviews with alleged MDOs, interviews with alleged SVPs, and service of notice of conditions of parole.  Within thirty days of this order, Defendant Tilton, or his designee, shall certify to Plaintiffs' counsel that all Correctional Counselors have been instructed to check DECS for the above-listed proceedings and have been trained on the use of the system.

5.    Defendants shall require mental health clinicians employed on either a permanent or contract basis by the CDCR to check DECS prior to all parole proceedings including, but not limited to: interviews with life prisoners for the purpose of providing an evaluation of the prisoner to the BPH, review of a life prisoner psychiatric report with the prisoner, interviews with alleged MDOs and alleged SVPs in CDCR institutions and interviews regarding a "knowing and intelligent" acceptance or refusal of the MDO condition in a CDCR institution.  Within thirty days of this order, Defendant Tilton, or his designee, shall certify to Plaintiffs' counsel that all such mental health staff have been instructed to check DECS for the above-listed proceedings and have been trained on use of the system.

United States District Court

For the Northern District of California

6.    Parole agents shall check DECS prior to all parole proceedings, including but not limited to: the initial meeting with parolees following each release to parole when the agent gives notice of conditions of parolee, any meeting when the parole agent gives notice of amended conditions of parole, notification to a parolee of any alleged violation of parole, notice of the date and time of a Not-In-Custody parole hearing, and service of notice and rights for MDO certification, placement and annual review hearings in state hospitals.  Within thirty days of this order, Defendant Tilton, or his designee, shall certify to Plaintiffs' counsel that he has issued a policy directive requiring parole agents to check DECS prior to the above-listed events and that training on use of the system has been provided to all parole agents.

7.    If Defendants contend that inadequate connectivity is a bar to implementing the requirements of paragraphs one through six at particular institutions or parole offices, within thirty days of this order, they shall report to Plaintiffs' counsel that connectivity is not established and explain the barriers to connectivity.  In addition, they shall develop local procedures based on the existing connectivity to ensure that Correctional Counselors, mental health staff and Parole Agents are all provided with the information in DECS prior to all parole proceedings.  The local procedures shall be provided to Plaintiffs' counsel within thirty days of any relevant report of non-connectivity.

8.    In no case shall a local procedure set forth in paragraph eight be operative beyond January 1, 2008.

9.    If Defendants are unable to comply with any requirement

14

included in paragraphs one through eight, they shall present evidence regarding any and all attempts to secure funding for, establish connectivity to, and provide training on DECS.

10.   The Court finds that each of the following events is essential to "parole proceedings" as defined by the Revised Permanent Injunction, because they are "events related to the hearings that occur prior to . . . the [life prisoner or revocation] hearings."   Revised Permanent Injunction ¶ 3.   In addition, these events have due process implications requiring a heightened standard for effective communication under Defendants' own policies and procedures.   Therefore, DECS must be checked by CDCR staff prior to each of the following four steps in order to determine disability information and accommodation needs. This list is not exhaustive and does not supersede the Revised Permanent Injunction's definition; it only clarifies that these events are parole proceedings, or are essential to parole proceedings, and therefore treated as parole proceedings for purposes of this case:

a.   Notice of conditions of parole by Correctional Counselor I in CDCR Institutions and Parole Agent in parole field offices;

b.   Inclusion in the Life Prisoner Board Report by the Correctional Counselor I in CDCR Institutions of information regarding the life prisoner's ability to access programs previously recommended by the BPH under paragraphs thirty-six and thirty-seven of the Revised Permanent Injunction;

c.   Communication of special conditions of parole for

15

1  parolees released to Not In Custody (NIC) status while parole
2  revocation proceedings are pending; and

3          d.      Consideration of remedial sanctions in lieu of
4  returns to custody for parolees with pending parole violation
5  charges.

6      Within thirty days of this order, Defendant Tilton, or his
7  designee, shall certify that DAPO and BPH and CDCR staff have been
8  ordered to check DECS prior to each of these proceedings, have been
9  trained on DECS and have appropriate access to DECS.  The
10 certifications shall be based on personal knowledge and shall be
11 accompanied by supporting documentation.

12     11.  Defendants shall enter into DECS, within twenty-four
13 hours of completion of the prisoner/parolee interview, all
14 information gathered on the hard copy of the BPH form 1073.
15 Defendants shall enter the information at the institution level and
16 immediately cease the practice of sending 1073 forms to BPH
17 headquarters for data entry purposes.  Within thirty days of this
18 order, Defendant Tilton, or his designee, shall certify to
19 Plaintiffs' counsel that Defendants have ceased sending 1073 forms
20 to the ADA Compliance Unit for entry into DECS and that information
21 on the 1073 forms is being entered in DECS at the institutions
22 within twenty-four hours of completion of the interview.  Defendant
23 Tilton, or his designee, shall specify how Defendants effected the
24 practice and how they have verified that it was followed.

25     12.  Defendants shall certify within fourteen days of this
26 order that they have remedied the gap in entering disability
27 information in DECS between March 10, 2007 and April 16, 2007.

28

United States District Court
For the Northern District of California

B.    Defendants' Plan to Provide Accommodations in Parole Proceedings

13.   Within ten days of this order, Defendants shall develop and implement procedures for ensuring the effective communication of the situation when detaining prisoners past their release dates for SVP evaluations and of any way in which prisoners can challenge their continued detention.  The procedures must include a DECS review prior to the communication of the information to the parolee.  Within fourteen days of this order, Defendant Tilton, or his designee, shall certify, based on personal knowledge and with supporting documentation, how Defendants are communicating to prisoners the reason they are being retained past their release dates and the procedures by which prisoners can challenge the retention, and the manner in which the rights of class members with developmental, learning, hearing and vision impairments are being preserved in the new process.

14.   Within thirty days of the date of this order, Defendants shall report to Plaintiffs' counsel how they have addressed the problems with Defendants' sign language interpretation contracts and services identified in the February 15, 2007 Review of Sign-Language Interpretation Contracts Utilized for Parole Proceedings, including, but not limited to, the long lead times required by most of the agencies.  Defendants also shall produce to Plaintiffs' counsel, within ten days of this order, the BPH forms 1103 and 1104 or any other documentation explaining the reason for the untimely hearings for the nine parolees that required sign language interpretation between January and June of 2007.

17

United States District Court

For the Northern District of California

15.   Defendants shall not use video teleconferencing as a substitute for live sign language interpretation in parole proceedings and hearings unless and until they have demonstrated and certified that the equipment, resolution, connectivity, reliability and procedures are adequate to ensure effective communication.

16.   Defendants' failure to provide a necessary accommodation for a disability does not constitute good cause for delaying any parole proceeding, including, but not limited to, parole hearings, life prisoner hearings, MDO hearings and SVP hearings.   Defendants shall permit Plaintiffs' counsel to monitor life prisoner parole proceedings as follows:

a.   On a monthly basis, Defendants shall produce to Plaintiffs' counsel documents and information, concerning life prisoner parole consideration hearings scheduled during the next sixty days for class members, sufficient to demonstrate that Defendants have identified and arranged for all necessary disability accommodations.

b.   The documents shall include all disability information, including BPH forms 1073 and 1074, and relevant source documents, and shall include evidence that Defendants have recognized the need for accommodations, such as scheduling sign language interpreters in advance of hearings, and whether they have provided accommodations in prior parole proceedings.

c.   Plaintiffs' counsel shall be permitted, in addition to any regular monitoring, to observe and monitor any life prisoner hearings of class members as well as parole proceedings prior to

18

the hearings, and to make informal inquiries directly to Defendants on specific cases.

17.   Defendant Tilton, or his designee, must certify within fourteen days of this order that he has obtained funding for all components of Defendants' plan to provide disability accommodations and access to DECS in all parole proceedings, including details showing the specific allocations for staffing, training, computer software and hardware, outside contracts and capital items.

18.   Within thirty days of this order, Defendants shall produce to Plaintiffs' counsel any and all draft or final requests for funding or Budget Change Proposals or work load studies, prepared by or for the BPH, DAPO, CDCR, DMH or the Department of Finance, regarding funding, staffing, training, construction or other resources necessary to comply with the terms of this Court's May, 2006 Order, including, but not limited to, the development of DECS, and any other provisions of the Accommodations Plan since the issuance of the May, 2006 Order.   Plaintiffs shall report to the Court, within fourteen days after the production of these documents, as to the adequacy of the funding for implementation of the May, 2006 Order and the need for any additional orders.

19.   Within thirty days of this order, Defendants shall report to Plaintiffs' counsel which housing units in Alameda, Sacramento and Los Angeles County Jail facilities are wheelchair accessible and how Defendants ensure that class members at those institutions who are designated DPW and DPO are housed in the accessible facilities and receive necessary accommodations and assistive devices in both their housing units and at their hearings.   Within

19

**United States District Court**

For the Northern District of California

ninety days of this order, Defendants shall do the same with the remaining county jails.   A necessary component of both reports is how Defendants track class members who are housed in county facilities due to parole holds.

20.   Within thirty days of the date of this order, the Warden of Folsom State Prison shall provide, in the form of a sworn declaration, evidence that he or she has established written policies and procedures for ensuring that mobility-impaired inmates are able to access the locations where parole proceedings are held at Folsom State Prison.

21.   Within thirty days of the date of this order, the Warden of each CDCR prison shall certify to Plaintiffs' counsel that the prison has sufficient structurally accessible locations for parole proceedings other than hearings, such as attorney consultations and file reviews, and that local policies, procedures and training are in place to assure appropriate and timely access and accommodations.

C.   Training of BPH Panel Attorneys

22.   Within 120 days of this order, Defendants shall certify that all attorneys contracted by the BPH to represent prisoners in life prisoner, MDO, and SVP proceedings have participated in the ADA and effective communication training provided to CalPAP revocation defense attorneys, or an equivalent training approved by Plaintiffs' counsel.   In the interim, Defendants shall assign class members to those attorneys who have already completed the CalPAP training.

20

**United States District Court**
For the Northern District of California

D.    Accountability

    23.   The accountability procedures and provisions of the January 18, 2007 Injunction at 7:5-19 in this case shall also apply to CDCR staff, including BPH and DAPO staff, responsible for carrying out parole proceedings in institutions.  Within 120 days of this order, Defendants shall develop a system for holding Parole District Administrators, Associate Chief Deputy Commissioners and all subordinate staff accountable for compliance with the orders of this Court.  The accountability system shall track the record of each parole district and track the conduct of individual staff members who are not complying with the Court's orders.  Defendants shall refer any individual with a record of repeated violations to the Office of Internal Affairs for investigation if appropriate. Prior to the next status conference, Defendants shall report to Plaintiffs' counsel on their progress toward complying with this paragraph.

E.    Revision of Accommodation Plan and Meet and Confer
      Requirements

    24.   Within sixty days of this order, Defendants shall revise the Plan for Providing Accommodations in Parole Proceedings.  The revised plan shall integrate all policies and procedures for providing accommodations in parole proceedings.  Within 180 days of this order, Defendants shall certify to Plaintiffs' counsel that they have trained all staff involved in parole proceedings on the provisions of the plan.

    25.   Any policies and procedures developed pursuant to this order must be presented to Plaintiffs' counsel at least fourteen

days in advance of the deadlines therefore.  Both parties must make all possible efforts to resolve any disagreements as to their adequacy.  Defendants shall ensure that staff with sufficient authority to amend and approve procedures attend all meet and confer sessions.  In the event that disagreements cannot be resolved, Defendants shall implement, on the date ordered, the procedures as written and Plaintiffs' counsel may file objections with the Court.  The Court will rule on the objections and issue orders amending procedures as necessary.

25.  The Court finds that the relief ordered is narrowly drawn, extends no further than necessary to correct the violation of federal rights, and is the least intrusive means necessary to correct the violation of the federal rights.[2]

IT IS SO ORDERED.

Dated: 9/11/07

CLAUDIA WILKEN
United States District Judge

---

[2] Plaintiffs' objections to evidence submitted by Defendants are overruled as moot.  The Court did not consider any improper or inadmissible evidence in deciding these motions.  Plaintiffs' motion for leave to file a supplemental declaration in support of their motion to enforce is granted.  (Docket No. 1181).

22