1

FILED

NOV 3 0 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

1           IN THE NORTHERN DISTRICT OF CALIFORNIA

2       OAKLAND, CALIFORNIA; DEPT 2; CLAUDIA WILKEN, JUDGE

3   ARMSTRONG,                    ) C-94-2307

4           PLAINTIFF,            ) THURSDAY, 11/15/07

5   V.                            ) DEFENDANT/PLAINTIFF MOTIONS

6   SCHWARZENEGGER,               ) FURTHER CASE MANAGEMENT

7           DEFENDANT.            )

8   _____ )

9           REPORTER'S TRANSCRIPT OF PROCEEDINGS

10  APPEARANCES:

11  FOR THE PLAINTIFF:

12  PRISON LAW OFFICE
    BY:  SARA LINDA NORMAN, ATTORNEY AT LAW
13  GENERAL DELIVERY
    SAN QUENTIN, CALIFORNIA  94964
14  TEL (415) 457-9144 FAX (415) 457-9151

15  ROSEN, BIEN AND GALVAN
    BY:  ANNE HANSON MANIA, ATTORNEY AT LAW
16  315 MONTGOMERY STREET
    SAN FRANCISCO, CALIFORNIA  94104
17  TEL (415) 433-6830

18  FOR THE DEFENDANT:

19  CA STATE ATTORNEY GENERAL'S OFFICE
    BY:  JAY RUSSELL,
20       JENNIFER J. NYGAARD,
         JOSE ZELIDON ZEPEDA, DEPUTY ATTORNEY GENERALS
21  CRIMINAL LAW SECTION
    455 GOLDEN GATE AVENUE, SUITE 11000
22  SAN FRANCISCO, CALIFORNIA  94102-7004
    TEL (415) 703-5577 FAX (415) 703-5843

23

24

25  REPORTED BY:  STARR A. WILSON, CSR 2462

```
1   OAKLAND, CALIFORNIA; THURSDAY, NOVEMBER 15, 2007; 3:00 P.M.,

2   DEPARTMENT TWO; CLAUDIA WILKEN, JUDGE

3                          -OOO-

4        THE CLERK:  CALLING CIVIL CASE C-94-2307,

5   ARMSTRONG VERSUS SCHWARZENEGGER.

6        MS. NORMAN:  GOOD AFTERNOON, YOUR HONOR.  SARA

7   NORMAN FROM THE PRISON LAW OFFICE FOR PLAINTIFFS.

8        UM, I HAVE WITH ME ALSO A NUMBER OF ATTORNEYS FROM

9   ROSEN, BIEN AND GALVAN ALSO FOR PLAINTIFFS.  HOLLY BALDWIN.

10  GAY GRUNFELD AND ANNE MANIA AND MICHAEL BIEN.

11       MR. RUSSELL:  GOOD AFTERNOON, YOUR HONOR.  JAY

12  RUSSELL FROM THE ATTORNEY GENERAL'S OFFICE REPRESENTING

13  DEFENDANTS.

14       I ALSO HAVE WITH ME JENNIFER NYGAARD AND JOSE

15  CELADON ZEPEDA AS WELL AS THE DIRECTOR OF THE OFFICE OF

16  COURT COMPLIANCE, TRAY LUCY, AS REQUESTED BY THE COURT AT

17  THE LAST HEARING.

18       THE COURT:  OKAY.  THANK YOU.

19       MR. ADAM:  AND, YOUR HONOR, ONE MORE.  GREG ADAM,

20  CARROLL BURDICK & MCDONOUGH, ON BEHALF OF THE AMICUS CCPOA.

21       THE COURT:  OKAY.

22       UM, SO JUST TO ADD THE SUSPENSE ON THIS, I'M GOING

23  TO GO AHEAD AND DENY WITHOUT PREJUDICE THE MOTION TO REFER

24  THE CASE TO A THREE-JUDGE PANEL.  I'VE BEEN KEEPING IT UNDER

25  SUBMISSION.  BUT RATHER THAN HAVE IT ON THE DOCKET, I'M JUST
```

1    GOING TO DENY IT WITHOUT PREJUDICE PENDING THE RULING ON THE

2    CASES THAT HAVE ALREADY HAVE GONE TO THE THREE-JUDGE PANEL.

3            WITH RESPECT TO THE MOTION TO RECONSIDER THE

4    SEPTEMBER 11 ORDER, I'M DISINCLINED TO RECONSIDER IT, BOTH

5    BECAUSE I DON'T THINK THERE'S A MISTAKE OR SURPRISE TYPES OF

6    GROUNDS TO DO SO, AND ALSO BECAUSE I STILL THINK THE WRITTEN

7    ORDER IS WELL TAKEN.  AND TO THE EXTENT THAT IT PERHAPS

8    DOESN'T COMPORT WITH WHAT I TENTATIVELY THOUGHT AT THE TIME

9    OF THE HEARING, IT DOES COMPORT WITH WHAT I BELIEVE TO BE

10   NECESSARY IN THE NARROWEST POSSIBLE RELIEF, ETC.

11           UM, YOU CAN ARGUE THAT BRIEFLY IF YOU LIKE BUT

12   THAT'S MY INCLINATION.

13           AND THEN WE HAVE A NUMBER OF ISSUES ON THE STATUS

14   CONFERENCE AGENDA WHICH WE CAN TAKE UP ONE BY ONE.  SO IF

15   YOU WANT TO --

16           **MS. NORMAN:**  JUST ONE MORE THING, YOUR HONOR.  THE

17   MOTION REGARDING OUT-OF-STATE MONITORING IS BEFORE YOU.

18           **THE COURT:**  UM, I'M GOING TO DENY THAT AGAIN

19   WITHOUT PREJUDICE.  AT THE MOMENT, THERE IS NOT THAT MANY

20   PEOPLE.  WE DON'T NEED TO TAKE OUT-OF-STATE TRIPS TO CHECK

21   UP ON SIX PEOPLE.

22           IF IT BECOMES AN ISSUE LATER, WE'LL DEAL WITH IT.

23   BUT I DON'T THINK THE MOST EFFICIENT WAY TO MONITOR THEM

24   RIGHT NOW WOULD BE GOING OUT OF STATE TO MONITOR THEM.  SO I

25   PLAN TO DENY THAT WITHOUT PREJUDICE.

1          SO DID YOU WANT TO ADDRESS THE MOTION TO

2     RECONSIDER AT ALL?

3          **MR. RUSSELL:**  YES, YOUR HONOR.

4          UM, PRIMARILY WHAT I BELIEVE NEEDS TO BE ADDRESSED

5     IS -- IS THE DIFFERENCE BETWEEN WHAT WAS BEING DISCUSSED AT

6     THE AUGUST 16 HEARING AND WHAT DID ACTUALLY COME OUT IN THE

7     SEPTEMBER 11 ORDER.  AND, IN PARTICULAR, ONE OF THE THINGS

8     THAT WE END UP REVIEWING ARE THE DECLARATIONS REGARDING

9     FUNDING AS WELL AS BUDGET CHANGE PROPOSALS.

10          UM, THE DECLARATIONS WERE PROVIDED TO PLAINTIFF'S

11     COUNSEL PRIOR TO THE ISSUANCE OF THIS COURT'S ORDER, BASED

12     UPON THE RULINGS THAT WERE MADE BY THE COURT DURING THE

13     AUGUST 16 HEARING.

14          THOSE DECLARATIONS DID STATE THAT AS OF THAT DATE,

15     WHICH WAS SEPTEMBER 5, 2007, THERE WAS ADEQUATE FUNDING FOR

16     THE -- FOR THE PLAN THAT WAS REQUIRED BY THE COURT'S

17     PREVIOUS ORDERS.  AND THAT THERE WERE NO BUDGET CHANGE

18     PROPOSALS IN EFFECT AT THAT TIME GIVEN THE COURT'S ORDERS

19     THAT WERE PENDING AS OF SEPTEMBER 5, 2007.

20          THAT HAS NOW CHANGED DRAMATICALLY.  THOSE

21     DECLARATIONS ARE NO LONGER TRUE.  THERE ARE NOW BUDGET

22     CHANGE PROPOSALS BEING SUBMITTED TO THE DEPARTMENT OF

23     FINANCE.  THERE IS A LOT OF WORK THAT'S BEING DONE.  THERE

24     ARE A LOT OF CHANGES THAT ARE BEING MADE.  BUT THE

25     DECLARATIONS THAT WERE PROVIDED PRIOR TO THE COURT'S ORDER

1    DON'T COMPORT WITH WHAT THE COURT SAID ON SEPTEMBER 11.

2            THAT'S THE KIND OF THING THAT I BELIEVE NEEDS TO

3    BE RECONSIDERED BY THIS COURT.

4        **THE COURT:**  WELL, ONLY BECAUSE THE ORDER SAID

5    DECLARATIONS WITH SUPPORTING DOCUMENTS AND YOU HAD SUBMITTED

6    ONLY DECLARATIONS AND NO SUPPORTING DOCUMENTS.  THAT'S THE

7    ONLY DIFFERENCE THAT COMES TO ME.

8        **MR. RUSSELL:**  WELL, THERE IS NOW -- WELL, THERE IS

9    NOW BEING SUBMITTED A BUDGET CHANGE PROPOSAL TO THE

10   DEPARTMENT OF FINANCE FOR THE ACCESS THAT WAS DEFINED BY THE

11   COURT WITHIN THE SEPTEMBER 11 ORDER, WHICH VASTLY INCREASES

12   THE -- THE BURDEN THAT CDCR IS UNDER IN ORDER TO BE ABLE TO

13   COMPLY WITH THE COURT'S ORDERS.

14       **THE COURT:**  COMPLY WITH THE ORDER THAT SAYS

15   WHETHER YOU SHOULD DECLARE WHETHER YOU HAVE FUNDING OR NOT?

16       **MR. RUSSELL:**  NO.  TO COMPLY WITH THE COURT'S

17   ORDER THAT EVERYBODY IN BPH AND THE CCDR NEEDS A COMPUTER TO

18   BE ABLE TO ACCESS THE DECK SYSTEM.

19       **THE COURT:**  OKAY.  WELL, I'M NOT SURE ANYONE IS

20   COMPLAINING ABOUT THE DATE ON WHICH YOUR DECLARATION WAS

21   FILED.  I THINK THEY'RE JUST COMPLAINING THAT YOU DIDN'T

22   FILE SUPPORTING DOCUMENT ALONG WITH YOUR DECLARATIONS.  AM I

23   RIGHT?

24       **MS. BALDWIN:**  YOU'RE CORRECT, YOUR HONOR.

25       **THE COURT REPORTER:**  WHO ARE YOU?

1          MS. BALDWIN:  I'M HOLLY BALDWIN FROM ROSEN, BIEN

2     AND GALVIN FOR THE PLAINTIFFS.

3          UM, THE DECLARATIONS THAT THEY HAVE SUBMITTED

4     SIMPLY SAY, WITHOUT PROVIDING ANY FURTHER LEVEL OF DETAIL,

5     WE HAVE FUNDING TO DO WHAT WE NEED TO DO TO IMPLEMENT DECKS

6     AND THE ACCOMMODATIONS PLAN.

7          THE SEPTEMBER 11 ORDER PROVIDES THAT THEY SHOULD

8     BE GIVING MORE SPECIFICS, MORE DETAILS ABOUT THE FUNDING

9     THAT THEY HAVE.  AND THEN ALSO PROVIDES THAT THEY SHOULD BE

10    SUBMITTING ANY DCPS OR EVIDENCE OF THE FUNDING THAT THEY

11    NEED.

12         UM, THEY -- THEY JUST NEED TO SUPPLY MORE DETAIL.

13    AND --

14         THE COURT:  AS OF SEPTEMBER 5?  YOU WANT DETAILS

15    ABOUT WHAT THEY HAD ON SEPTEMBER 5?

16         MS. BALDWIN:  NO.  WE WANT DETAILS ABOUT WHAT THEY

17    HAVE NOW.  WHAT IS -- DO THEY HAVE FUNDING TO DO WHAT THE

18    COURT HAS ORDERED THEM TO DO OR NOT?

19         THE COURT:  OKAY.  WELL, UM, I DON'T KNOW

20    WHETHER -- DID I SAY A DATE?  THAT THE DECLARATIONS WERE TO

21    AS OF A CERTAIN DATE?

22         MS. BALDWIN:  YES, YOUR HONOR.

23         THE COURT:  I SUPPOSE THAT IS ALWAYS A FLUID

24    QUESTION.

25         MR. RUSSELL:  WELL, THE ORDER DOES STATE THAT

1    WITHIN THIRTY DAYS, BUDGET CHANGE PROPOSALS ARE TO BE

2    PROVIDED TO THE PLAINTIFF'S COUNSEL.  THAT'S 30 DAYS OF AS

3    OF THE SEPTEMBER 11 ORDER.  BUT THE SEPTEMBER 11 ORDER

4    CHANGED THE ENTIRE LANDSCAPE OF WHAT CDCR AND BPH ARE

5    OBLIGATED TO DO.

6          AS OF SEPTEMBER 5 THERE WERE NO BUDGET CHANGE

7    PROPOSALS AND THERE WAS ADEQUATE FUNDING.

8          AS OF SEPTEMBER 11 THERE WAS NOT ADEQUATE FUNDING.

9          AND NOW AS OF NOVEMBER 15, THERE IS A BUDGET

10   CHANGE PROPOSAL IN EFFECT PENDING BEFORE THE DEPARTMENT OF

11   FINANCE, WHICH PROVIDES FOR THE DISBURSEMENT OF TENS OF

12   MILLIONS OF DOLLARS TO COMPLY WITH THE COURT'S ORDER ISSUED

13   SEPTEMBER 11.  SO EVERYTHING CHANGED.

14          **THE COURT:**  OKAY.  WELL, THAT'S FINE.  SO NO ONE

15   IS GOING TO COMPLAIN THAT YOU -- ANY MORE THAT YOU DIDN'T

16   DOCUMENT THE FACTS ON SEPTEMBER FIFTH.  BUT I THINK

17   PLAINTIFFS WANT TO KEEP UP AS CHANGES HAPPEN SO I'M GUESSING

18   AT THIS POINT THEY'D PROBABLY LIKE TO HAVE UPDATED

19   DECLARATIONS SAYING WHAT YOUR FUNDING SITUATION IS NOW OR

20   MAYBE 30 DAYS FROM NOW OR WHENEVER WOULD BE A GOOD TIME.

21          **MR. RUSSELL:**  WELL, I THINK WE CAN DO THAT, YOUR

22   HONOR.  I -- YES, I -- WE CAN DEFINITELY DO THAT.

23          **THE COURT:**  OKAY.

24          **MR. RUSSELL:**  BUT AS LONG AS THE COURT RECOGNIZES

25   THAT THINGS ON NOVEMBER 15TH ARE DIFFERENT THAN THINGS WERE

1    ON SEPTEMBER THE FIFTH.

2            **THE COURT:**  I THINK THAT'S A GOOD THING.

3            **MR. RUSSELL:**  OKAY.

4            **MS. BALDWIN:**  WE HOPE THAT THAT IS TRUE, YOUR

5    HONOR.

6            **THE COURT:**  CHANGE FOR A BETTER, WE HOPE.  NOT FOR

7    THE WORSE.

8            **MR. RUSSELL:**  I BELIEVE SO, YOUR HONOR.

9            **THE COURT:**  OKAY.  SO IS 30 DAYS FROM NOW GOOD

10   ENOUGH?

11           **MS. BALDWIN:**  I BELIEVE SO.  SOONER WOULD BE

12   BETTER BUT I THINK THAT THIRTY DAYS WOULD BE SUFFICIENT.

13           **THE COURT:**  OKAY.  SO WHETHER OR NOT WE CHANGE

14   WHATEVER I DID DIFFERENTLY ON SEPTEMBER 11 THAN I DID ON

15   AUGUST 16, WE'LL SET ALL THAT ASIDE AND INSTEAD WE WILL HAVE

16   THE DECLARATIONS AND THE DOCUMENTATION ON THE CURRENT

17   SITUATION GIVEN TO US 30 DAYS FROM TODAY, WHICH IS TO SAY,

18   DECEMBER 15.

19           NOW, WILL THAT BE THE SITUATION AS OF DECEMBER 15

20   OR WILL IT BE THE SITUATION AS OF NOVEMBER 15?

21           **MR. RUSSELL:**  IT WILL BE THE SITUATION AS OF THE

22   DATE OF THOSE DECLARATIONS WERE SIGNED, YOUR HONOR.  AND I

23   PRESUME IT'S GOING TO BE MORE TOWARD DECEMBER 15 AS OPPOSED

24   TO TODAY.

25           **THE COURT:**  OKAY.  ALL RIGHT.  SO WHAT ELSE?

1  WE'RE STILL ON THE RECONSIDERATION.

2       DID YOU HAVE ANYTHING ELSE THAT WAS ACTUALLY

3  IMPORTANT FOR YOU?

4       **MR. RUSSELL:**  WELL, YOUR HONOR, THE OTHER, THERE'S

5  TWO OTHER ISSUES, I BELIEVE, REALLY TIE INTO THAT.  I MEAN

6  PRIMARILY IT CONCERNS THE ACCESS THAT'S TO BE PROVIDED TO

7  THE DECK SYSTEM.

8       UM, THE ACCESS THAT WAS -- THAT WAS CONTEMPLATED,

9  I BELIEVE, BY THE EARLIER ORDERS OF THIS COURT, PARTICULARLY

10 THE MAY 30, 2006 INJUNCTION, WAS THAT THERE WAS TO BE A

11 COMPUTERIZED REAL TIME STATE WIDE SYSTEM FOR CHECKING

12 DISABILITY INFORMATION.  AND THAT THAT COULD BE CHECKED

13 BY -- BY PERSONS WHO COME IN CONTACT WITH PAROLEES OR

14 INMATES.  AND -- AND WHAT THE COURT'S ORDER NOW PROVIDES FOR

15 WITH ACCESS IS THAT EVERY PERSON WHO MIGHT DO THAT IS

16 REQUIRED TO HAVE A WORK STATION.  AND IT MIGHT BE A PERSON

17 WHO WOULD HAVE NEED FOR SUCH A WORK STATION ONCE A WEEK.

18 MAYBE EVEN ONCE A MONTH.

19       AND WHAT WE'RE TRYING TO DO NOW IS WE'RE TRYING TO

20 PROVIDE THAT KIND OF ACCESS TO 34 PENAL INSTITUTIONS AND

21 OVER 170 FIELD PAROLE OFFICES.  IT'S A MASSIVE UNDERTAKING

22 THAT CAN'T BE DONE.  I MEAN IT'S LIKE -- IT WOULD BE LIKE

23 ASKING SOMEONE TO CLEAN UP THE SPILL THAT RECENTLY OCCURRED

24 IN THE SAN FRANCISCO BAY BY DECEMBER 31.  THAT CAN'T BE DONE

25 BY DECEMBER 31, YOUR HONOR.

1      **THE COURT:**  SO IS IT JUST A TIMING PROBLEM OR IS

2    IT A -- SOME OTHER KIND OF PROBLEM?

3      **MR. RUSSELL:**  WELL, IT'S PRIMARILY -- WELL, IT'S

4    PRIMARILY A TIMING PROBLEM.  I ALSO BELIEVE THAT IT IS A

5    DEFINITION PROBLEM, YOUR HONOR.  THIS IS THE ISSUE THAT WE

6    RAISED ON AUGUST 16.

7          I THINK THAT THERE ARE SEVERAL INSTANCES IN WHICH,

8    FOR EXAMPLE, IF, YOU KNOW, CORRECTIONAL COUNSELORS HAVE A

9    WORK ROOM THAT THEY GO TO IN ORDER TO REVIEW INFORMATION

10   PRIOR TO MEETING WITH PAROLEES THAT IT WOULD BE SUFFICIENT

11   IF THERE WERE COMPUTERS AVAILABLE ON WHICH THEY COULD ACCESS

12   DECKS.  IF THEY HAD A PASSWORD.  IF THEY HAD A LICENSE TO BE

13   ABLE TO LOOK AT THE SYSTEM.

14         I DON'T THINK THAT IT WOULD BE NECESSARY FOR EACH

15   AND EVERY CORRECTIONAL COUNSEL ONE TO HAVE THEIR OWN WORK

16   STATION WHEREBY THEY COULD CHECK THAT INFORMATION.

17         IN INSTANCES IN WHICH CONNECTIVITY IS DIFFICULT, I

18   THINK THERE'S ALSO OTHER POTENTIAL WORK AROUNDS.  FOR

19   EXAMPLE, I MENTIONED ON AUGUST 16 THAT IT STARTED OUT ALMOST

20   AS A FACETIOUS STATEMENT BUT WE STARTED TO THINK MAYBE IT'S

21   A GOOD IDEA, WE COULD HAVE SOMETHING THAT WOULD BE THE

22   EQUIVALENT OF THE DECKS HOT LINE WHEREBY IF THERE WERE A

23   CORRECTIONAL COUNSELOR ONE WHO DID NOT HAVE IMMEDIATE ACCESS

24   TO THE DECK SYSTEM THEY COULD PHONE TO A HOT LINE AND HAVE

25   SOMEBODY WHO COULD CHECK IT FOR THEM.

1          THE WHOLE POINT HERE, YOUR HONOR, IS OUR -- FOR

2     THE PERSONNEL TO BE ABLE TO HAVE ACCESS TO INFORMATION

3     BEFORE THEY COME IN CONTACT WITH A PAROLEE SUCH THAT ANY

4     DISABILITIES CAN BE ACCOMMODATED PRIOR TO THAT CONTACT.  AND

5     I DON'T -- I THINK WHAT WE'RE -- WHAT WE'RE LOSING FOCUS OF

6     IS THE -- IS -- IS OUR ACCOMMODATIONS REQUIRED UNDER THE ADA

7     AND THE REHABILITATION ACT AND THIS IS MORPHING INTO

8     PROVIDING EVERYBODY WITH A WORK STATION WITHIN THE CDCR AND

9     THE BPH.

10         **MS. NORMAN:**  YOUR HONOR, I HAVE A --

11         **THE COURT:**  OKAY.

12         **MS. NORMAN:**  A COUPLE OF POINTS TO MAKE ON THIS

13    TOPIC UNLESS YOU GOT FURTHER QUESTIONS.

14         **THE COURT:**  LET ME SAY ONE THING.  WHAT I DID SAY

15    ON AUGUST 16 WAS THAT WHAT PLAINTIFF WERE ASKING --

16    PLAINTIFFS WERE ASKING FOR WAS THE MODEL OF WHAT WOULD BE

17    BEST THAT IF THAT CAN'T BE DONE AND THERE'S A GOOD REASON

18    WHY IT CAN'T, AND THERE'S A GOOD WORK AROUND, THEN THAT WILL

19    BE ACCEPTABLE.  SO I THINK WHAT YOU NEED TO DO IF THAT'S THE

20    CASE, IS NOT MOVE TO RECONSIDER THE ORDER, BUT TO COME

21    FORWARD SAYING HERE'S WHAT WE'VE DONE.  HERE'S WHY WE CAN'T

22    DO MORE.  HERE'S OUR WORK AROUND.  AND THEN WE'LL SEE IF

23    THAT IS GOOD ENOUGH.

24         **MR. RUSSELL:**  OKAY.  WE CAN DEFINITELY DO THAT,

25    YOUR HONOR.

1              **MS. NORMAN:**  YOUR HONOR, YOU HAVE MADE MY PRIMARY

2    POINT FOR ME.

3              **THE COURT:**  OKAY.

4              **MS. NORMAN:**  UM, AND PLAINTIFFS ARE WILLING TO BE

5    REASONABLE.  WE WANT TO WORK WITH THE DEFENDANTS TO MOVE

6    TOWARD COMPLIANCE.  WE DON'T WANT TO BE HERE LITIGATING

7    ABOUT THIS.  BUT DEFENDANTS HAVE NOT YET PROVIDED SUFFICIENT

8    INFORMATION FOR US TO EVEN HAVE THAT CONVERSATION.  THEY

9    HAVEN'T GIVEN US ENOUGH INFORMATION TO KNOW WHAT ARE THE

10   CONNECTIVITY BARRIERS?  WHAT IS THE EXTENT OF THE BARRIERS

11   AT EACH INSTITUTION?  HOW MANY COMPUTERS DO THEY NEED TO

12   BUY?  HOW MANY DO THEY THINK HE CAN BUY?  WHAT IS THEIR

13   PROPOSED ALTERNATIVE?  WE HAVEN'T GOTTEN THAT.

14             **THE COURT:**  YES.

15             **MS. NORMAN:**  SO WE CAN'T EVEN HAVE THAT

16   CONVERSATION YET, YOUR HONOR.

17             **THE COURT:**  SO LET'S DO THAT TO THE EXTENT YOU

18   CAN'T COMPLY OR KNOW ALREADY THAT YOU WON'T BE ABLE TO

19   COMPLY, TELL THEM ABOUT IT.  TELL THEM WHAT YOUR PROBLEMS

20   ARE AND HOW YOU PROPOSE TO SOLVE THEM AND TRY TO WORK IT OUT

21   WITH THEM.

22             **MR. RUSSELL:**  OKAY.  WE CAN DO THAT, YOUR HONOR.

23             **THE COURT:**  WHAT ELSE?

24             **MR. RUSSELL:**  UM, YOUR HONOR, THE OTHER, AND THIS

25   MIGHT GO HAND IN HAND WITH THAT ISSUE.

1    **THE COURT:**  YOU'RE TALKING ABOUT THE 120-DAY

2    DEADLINE ON THE ATTORNEY TRAININGS?

3    **MR. RUSSELL:**  WELL, CERTAINLY -- CERTAINLY THAT.

4    UM, EVEN BEFORE THAT, THOUGH, IS -- IS, AND I WILL WROTE IT

5    DOWN, BUT -- BUT ONE OF THE PROBLEMS WE ALSO HAVE ARE -- ARE

6    THE PERSONS WHO ARE ACTUALLY GOING TO ACCESS DECKS AND --

7    AND WHO WILL BE REQUIRED TO ACCESS DECKS.  AND THIS GOES

8    INTO THE WHOLE ISSUE OF THE CHANGES IN POLICY OF PROCEDURES

9    FOR THE CORRECTIONAL COUNSELORS' ONES.  UM, WE HAVE BEEN --

10   WE HAVE BEEN ATTACKED FOR OSTENSIBLY DELAYING THE PROCESS.

11   **THE COURT:**  OKAY.  WE'RE GOING TO GET INTO ALL THE

12   STATUS CONFERENCE ISSUES.  I WAS TRYING TO SET ASIDE THE

13   RECONSIDERATION ISSUES SO --

14   **MR. RUSSELL:**  OKAY.

15   **THE COURT:**  -- IF IT'S SOMETHING THAT ALSO COMES

16   UP IN THE STATUS CONFERENCE, LET'S MOVE ON TO THAT.

17   **MR. RUSSELL:**  WELL, BUT THAT IS PART OF THE

18   COURT'S ORDER THAT ALL CC-1S WILL BE CHECKING DECKS.  AND

19   THAT THEY -- AND THAT WE NEED TO CERTIFY THAT THEY'RE DOING

20   SO WITHIN 30 DAYS.

21   **THE COURT:**  OKAY.

22   **MS. NORMAN:**  AND, YOUR HONOR, WE DON'T BELIEVE

23   THAT THERE'S ANY CIRCUMSTANCE TO WARRANT RECONSIDERATION OF

24   THE ORDER.  WE CAN TALK ABOUT THE EXTENT OF DEFENDANT'S

25   COMPLIANCE WITH THE ORDER.  WE'RE READY TO DO THAT.  BUT WE

1    DON'T THINK THAT THE ORDER NEEDS RECONSIDERATION.  THERE IS

2    NO MISTAKE OR SURPRISE OR ANY OTHER GROUND.

3         **THE COURT:**  WELL, IS THIS AN ISSUE OF WHETHER THEY

4    HAVE THEIR OWN WORK STATION OR NOT?

5         **MS. NORMAN:**  NO, YOUR HONOR.  IT IS AN ISSUE OF

6    WHETHER THEY SHOULD BE INSTRUCTED TO USE DECKS.

7         **THE COURT:**  THIS IS THE BARGAINING PROCESS?

8         **MS. NORMAN:**  YES.

9         **MR. RUSSELL:**  YES, YOUR HONOR.

10        **THE COURT:**  OKAY.  WELL, WE'LL TALK ABOUT THE

11   BARGAINING PROCESS, BUT, UM, IS THERE SOME OTHER PROBLEM?

12        **MR. RUSSELL:**  WELL, YOUR HONOR, AS THE MATTERS NOW

13   STAND, I'M SUPPOSED TO HAVE A DECLARATION FOR MY OTHER JAMES

14   TILTON, THE SECRETARY OF THE CCR OR HIS DESIGNEE, SAYING

15   THAT ALL CC-1S ARE NOW REQUIRED TO CHECK THE DECK SYSTEM.

16   AND AT THE AUGUST 16 HEARING I EXPLAINED TO THE COURT THIS

17   IS A LABOR ISSUE.  WE WILL PRESENT THAT TO LABOR.

18        **THE COURT:**  YES.

19        **MR. RUSSELL:**  AND I WILL REPORT TO THE COURT AS TO

20   WHERE WE STAND.

21        **THE COURT:**  SO I THINK YOUR DECLARATION WOULD SAY

22   WE CALLED THE UNION ON THUS AND SUCH DATE.  WE ASKED FOR THE

23   FIRST AVAILABLE MEETING.  THE FIRST ONE WE GOT WAS THIS.  WE

24   HAD THAT MEETING.  HERE WAS OUR POSITION.  HERE WAS THEIR

25   POSITION, ETC., AND EXPLAINING WHY YOU, HOW HARD YOU TRIED,

1    AND WHY YOU HAVE NOT YET BEEN ABLE TO REACH AN AGREEMENT.

2          NOW, THE INFORMATION I'M GETTING FROM THE UNION

3    IS THAT IT SHOULD BE A PRETTY SIMPLE PROCESS AND THEY'RE

4    AMENABLE TO BARGAINING.  I DON'T KNOW WHETHER, HOW HARD

5    YOU'VE TRIED.  I DON'T KNOW HOW MANY MEETINGS THERE HAVE

6    BEEN, WHAT POSITIONS HAVE BEEN TAKEN, BUT THAT OUGHT TO BE

7    IN YOUR DECLARATION.

8          **MR. RUSSELL:**  OKAY.  WELL, WE CAN PROVIDE THAT,

9    YOUR HONOR.

10         **THE COURT:**  OKAY.

11         **MR. RUSSELL:**  BUT THAT DOESN'T COMPLY WITH THE

12   SEPTEMBER 11 ORDER.

13         **THE COURT:**  WELL, NOTHING REQUIRES SOMETHING

14   THAT'S IMPOSSIBLE.  IT REQUIRES ONLY THAT YOU DO THE BEST

15   YOU TRULY CAN.  AND IF YOU TRULY DO THE BEST YOU CAN, THEN

16   NO ONE CAN ASK FOR MORE.  BUT THAT MEANS, YOU KNOW, YOU

17   DON'T WAIT TWO WEEKS AND THEN CALL THEM.  YOU CALL THEM THE

18   NEXT DAY AND YOU DON'T SAY, OH, I CAN'T MEET WITH YOU FOR

19   ANOTHER THREE WEEKS.  YOU MEET WITH THEM AS SOON AS THEY'RE

20   AVAILABLE.  IF THEY TAKE A REASONABLE POSITION, YOU

21   ACCOMMODATE IT, ETC.

22         **MR. RUSSELL:**  OKAY.

23         **MS. NORMAN:**  AND, YOUR HONOR, IF YOU HAVE ANY, I

24   DON'T KNOW WHETHER YOU WANT TO DISCUSS THE STATUS OF THE

25   NEGOTIATIONS WITH THE UNION AT THIS POINT.  UM, MR. ADAM IS

1    AVAILABLE TO TALK ABOUT THAT.  AND WE COULD TELL YOU WHAT WE

2    KNOW.

3         **THE COURT:**  OKAY.  WELL, THAT IS SOMETHING THAT'S

4    ON THE AGENDA FOR THE STATUS CONFERENCE.  I ONLY HAVE ABOUT

5    15 MORE MINUTES BECAUSE I'VE GOT A TRIAL GOING AND I HAVE

6    MORE PEOPLE COMING BACK.  SO --

7         **MR. ADAM:**  I'LL TAKE ABOUT 30 SECONDS BUT IF YOU

8    WANT TO DO THE STATUS CONFERENCE.

9         **THE COURT:**  WELL, WHY DON'T YOU -- LET'S DO IT

10   RIGHT NOW WHILE WE'RE ON IT.

11        **MR. ADAM:**  OKAY, YOUR HONOR --

12        **THE COURT REPORTER:**  IDENTIFY YOURSELF.

13        **MR. ADAM:**  YES.  SORRY.

14        GREG ADAM, CARROLL BURDICK & MCDONOUGH ON BEHALF

15   OF CCPOA, AN AMICUS IN THIS CASE.

16        YOUR HONOR, WE'RE NOW THREE MONTHS, I THINK IT'S

17   AUGUST 16 HEARING.  WE'RE NOW IN APPROXIMATELY NOVEMBER 15

18   TODAY, APPROXIMATELY THREE MONTHS LATER.

19        THERE HAVE BEEN NO NEGOTIATIONS WHATSOEVER ON THIS

20   DECKS ISSUE.  AND THAT'S DESPITE -- THAT'S BASED ON A CALL

21   TO MY CLIENT ABOUT TEN MINUTES BEFORE I CAME IN THIS

22   COURTROOM.

23        THERE WAS DISCUSSIONS, TELEPHONIC DISCUSSIONS

24   TODAY, I'M TOLD, WITH CDCR ON CHOOSING DATES.  SO I NOTE

25   THAT IN DEFENDANT'S PAPERS, PAGE 17, LINE 25, AND AT LINE

1  28, THESE STATE THE NEGOTIATIONS ARE ONGOING.  THERE IS NO

2  NEGOTIATIONS IN TERMS OF A BACK AND FORTH ONGOING.  THERE'S

3  BEEN DISCUSSIONS ABOUT SETTING UP A TIME TO MEET AND CONFER.

4  BUT THE COURT IS POINTING EXACTLY TO HOW URGENTLY OR THE

5  DEFENDANTS TREATING THIS MATTER AND I'M HERE TO TELL YOU NOT

6  VERY.

7          **THE COURT:**  OKAY.

8          **MR. RUSSELL:**  THAT CERTAINLY IS DIFFERENT THAN

9  WHAT I HAVE HEARD FROM MY CLIENT, YOUR HONOR.

10          **THE COURT:**  AND WHO CALLED WHO AT THE UNION WHEN?

11          **MR. RUSSELL:**  MY UNDERSTANDING FROM THE CHIEF

12  COUNSEL OF THE DEPARTMENT OF PERSONNEL IS THAT PROPOSED

13  POLICIES AND PROCEDURES WERE PROVIDED TO THE CCPOA ON

14  NOVEMBER 2.

15          THE REQUEST FOR A WAIVER WAS MADE ON AUGUST 31.

16  AND WAS REJECTED BY THE CCPOA ON SEPTEMBER 6.

17          ON SEPTEMBER 6, BY MAKING THAT REJECTION, THE

18  CCPOA KNEW, UNDER THE MEMORANDUM OF UNDERSTANDING, THAT

19  PROPOSED POLICIES AND PROCEDURES WOULD HAVE TO BE DRAFTED.

20  THAT'S NOT SOMETHING THAT CAN BE DONE IN 24 OR 48 HOURS.  IT

21  DID TAKE LONGER THAN WE HAD HOPED.  IT TOOK UNTIL NOVEMBER 2

22  BUT THOSE HAD BEEN PROVIDED TO CCPOA AND WE'VE HEARD NOTHING

23  FROM THE LAST 14 DAYS FROM THEM.

24          **MS. NORMAN:**  YOUR HONOR, CAN I JUST MAKE ONE

25  POINT?

1    BEFORE WE FILED THIS MOTION IN JUNE --

2        **THE COURT:** WHICH MOTION?

3        **MS. NORMAN:** THE MOTION THAT RESULTED IN THE

4    SEPTEMBER 11 ORDER.

5        **THE COURT:** OH.

6        **MS. NORMAN:** BEFORE WE FILED THE MOTION,

7    DEFENDANTS HAD ALREADY DRAFTED DRAFT POLICIES AND PROCEDURES

8    FOR NEGOTIATION WITH THE UNION.

9        NOW, I'M SURE THAT THEY NEED TO BE REVISED IN SOME

10   RESPECTS. BUT I DON'T UNDERSTAND WHY IT HAS TAKEN THEM

11   ALLEGEDLY UNTIL NOVEMBER 2 TO ACTUALLY DRAFT SOMETHING THAT

12   THEY COULD GIVE TO THE UNION.

13       **THE COURT:** UM, WHAT ABOUT THESE CLAIMS THAT ARE

14   --

15       **MR. ADAM:** I BELIEVE THAT IT'S ALREADY BEEN

16   DISCUSSED IN THIS CASE IN PRIOR HEARINGS. MR. YANK WAS AT

17   PRIOR HEARINGS ON BEHALF OF THE UNION.

18       BUT WE DON'T NEED FINAL POLICIES TO DISCUSS. WE

19   CAN USE DRAFT POLICIES. IT'S BASICALLY AN EXCHANGE, MEET

20   AND CONFER PROCESS IS AN EXCHANGE WHERE OUR PEOPLE GIVE

21   FEEDBACK AN ACTUAL IMPLEMENTATION SO THAT DOES NOT REQUIRE

22   FINAL POLICIES.

23       AND THE BOTTOM LINE IS THEIR PAPERS SAY THAT IS

24   NEGOTIATION HAVE TAKEN PLACE. THERE IS NO NEGOTIATIONS HAVE

25   TAKEN PLACE. WE WENT THREE MONTHS. ALL WE MANAGED TO DO IS

1   TO GET CDCR TO CALL ABOUT DATES.

2          **THE COURT:**  I GUESS THEY'RE REFERRING TO WRITTEN

3   NEGOTIATIONS IN THE SENSE OF SENDING YOU PAPERS.  DID YOU

4   GET THOSE PAPERS THAT THEY SAY THEY SENT?

5          **MR. ADAM:**  I'M SURE WE GOT SOME PAPER.  I DON'T

6   KNOW THE ANSWER TO THAT BUT RECEIVING PAPERS IS NOT

7   NEGOTIATING.  THERE'S WHEN YOU SIT DOWN FACE TO FACE,

8   DISCUSS WHAT'S THE CHANGES, WHAT'S YOUR VIEWS, DO YOU HAVE

9   ANY SUGGESTIONS YOU WANT TO MAKE?  THERE'S A REQUIREMENT OF

10  MANAGEMENT SITE TO CONSIDER THOSE IN GOOD FAITH.  MANAGEMENT

11  DOES WANT TO, IT CAN WALK OFF.  THAT'S THE PROCESS.  IT NEED

12  NOT TAKE THESE MONTHS.  AND MR. WISE'S DECLARATION SPEAKS

13  EXACTLY TO THAT.

14         **THE COURT:**  YEAH.  SO IT SOUNDS LIKE YOU NEED TO

15  GET TO WHOEVER IT IS THAT INITIATES THIS MEETING AND HAVE

16  THEM CALL THE UNION THIS AFTERNOON FOR FIRST THING TOMORROW

17  MORNING AND SET UP THE FIRST AVAILABLE DATE WHICH SHOULD BE,

18  I SHOULD THINK, IN A COUPLE OF DAYS.  NOT A COUPLE OF WEEKS.

19         **MR. RUSSELL:**  WE'LL DO THAT, YOUR HONOR.  WE WERE

20  WAITING TO HEAR RESPONSES, NOT A DRAFT POLICIES AND

21  PROCEDURES, BUT THE APPLIED POLICIES AND PROCEDURES.

22         **THE COURT:**  RIGHT.  BUT WE DISCUSSED THIS BEFORE.

23  COUNSEL'S RIGHT.  WE DID DISCUSS THIS AT THE LAST HEARING,

24  AND MR. YANK DID SAY, AND I NOW REMEMBER, THAT YOU DON'T

25  HAVE TO HAVE THE FINAL POLICY TO START DISCUSSING SO THEY'LL

1   BE HAPPY TO TALK TO YOU EVEN THOUGH YOU DON'T HAVE A FINAL

2   POLICY.  SO LET'S HOPE THAT THAT GETS DONE THAT THE

3   APPOINTMENT IS MADE THIS AFTERNOON OR TOMORROW MORNING AND

4   THAT THE DATE IS SET FOR, WELL, WE GOT THANKSGIVING COMING

5   UP.  BUT VERY SHORTLY AFTER THANKSGIVING FOR A FACE-TO-FACE

6   SIT DOWN WITH DECISION MAKERS AND WHATEVER DOCUMENTS ARE

7   AVAILABLE AT THAT TIME.

8          **MR. RUSSELL:**  CDCR WILL MAKE IT'S BEST EFFORTS TO

9   DO ALL OF THAT, YOUR HONOR.

10         **THE COURT:**  OKAY.

11         **MR. ADAM:**  I'LL TELL MY FOLKS TO EXPECT A CALL.

12  THANK YOU.

13         **THE COURT:**  AND THAT'S ON TWO ISSUES, I THINK,

14  AREN'T THERE TWO THINGS THAT HAVE TO BE NEGOTIATED WITH THE

15  PLA OR IS IT JUST THE ONE?

16         **MS. NORMAN:**  THE CCPOA COVERS BOTH THE

17  CORRECTIONAL COUNSELORS AND THE PAROLE AGENTS.  SO TO THE

18  EXTENT THAT DEFENDANTS ARE SAYING THAT THEY CANNOT IMPLEMENT

19  PAROLE AGENTS CHECKING DECKS BECAUSE THEY NEED TO

20  NEGOTIATION WITH THE UNION, THEY NEED TO BE TALKING TO THE

21  CCPOA ABOUT THAT AS WELL.

22         **THE COURT:**  OKAY.

23         SO WAS THERE ANYTHING ELSE ON THE RECONSIDERATION

24  OR CAN WE TURN TO THE STATUS CONFERENCE?

25         **MR. RUSSELL:**  UM --

1        **THE COURT:**  OH, YOU HAD THE PROBLEM WITH THE 120

2  DAYS WITH THE LAWYERS?

3        **MR. RUSSELL:**  YES.  THE TRAINING OF THE BHA PANEL

4  ATTORNEYS.

5        UM, MY UNDERSTANDING INITIALLY IS THAT -- IS THAT

6  BPH PANEL ATTORNEYS DO RECEIVE ONLINE TRAINING IN DISABILITY

7  AND EFFECTIVE COMMUNICATION.

8        **THE COURT:**  RIGHT.  BUT THERE IS A SPECIFIC

9  PROGRAM THAT THEY WERE GOING TO DO.

10       **MR. RUSSELL:**  THERE IS A -- WELL, THERE IS A

11  SPECIFIC PROGRAM THAT IS UNDERTAKEN BY CALPAC ATTORNEYS BUT

12  NOT BY BPH.  IF THIS -- THIS AGAIN IS SOMETHING THAT --

13       **THE COURT:**  RIGHT.  BUT THAT WAS -- THAT'S NOT

14  RECONSIDERATION.  AND THAT'S SOMETHING I SAID IN AUGUST AND

15  I SAID AGAIN IN SEPTEMBER.  THAT YOU DO THE CALPAC PROGRAM,

16  NOT THE OTHER PROGRAM THAT YOU WERE PROPOSING.

17       TO THE EXTENT YOU HAVE A PROBLEM WITH THE DEADLINE

18  I THINK THE SAME WOULD APPLY.  IF YOU SHOW THE EFFORTS

19  YOU'VE MADE TO COMPLY WITH THE DEADLINE, AND YOU SHOW WHY IT

20  WAS YOU WERE UNABLE TO DO SO, THEN WE WOULD CERTAINLY

21  CONSIDER THAT.

22       **MR. RUSSELL:**  I GUESS, I -- I GUESS MY ISSUE, YOUR

23  HONOR, IS WHAT MECHANISM -- I MEAN THE ORDERS, AS IT STANDS,

24  IS THE ORDER OF THIS COURT.  AND -- AND WE CAN COME IN AND

25  PROVIDE TO THE COURT OUR, YOU KNOW, EVIDENCE OF THE EFFORTS

1  THAT HAVE BEEN UNDERTAKEN BY CDCR, TO, FOR EXAMPLE, PROVIDE

2  WORK IN ROUNDS WITH THIS IDEA OF EVERYONE HAVING A WORK

3  STATION OR TRYING TO PROVIDE ALTERNATIVES.

4        **THE COURT:**  WELL, YOU DON'T NEED TO DO.  THE THING

5  TO DO IN THE FIRST INSTANCE IS TO GO TO PLAINTIFFS BECAUSE

6  THEY SEEM TO BE, GENERALLY SPEAKING, WILLING TO WORK WITH

7  YOU AND WILLING TO NEGOTIATE THINGS AND WILLING TO ACCEPT

8  REASONABLE, UM, SOLUTIONS AND REASONABLE EFFORTS TO COMPLY

9  AND SO ON.  SO BEFORE YOU SEND IT TO ME, SEND IT TO THEM AND

10  SEE IF YOU CAN'T WORK SOMETHING OUT.

11        **MR. RUSSELL:**  OKAY.

12        **MS. NORMAN:**  WE'LL BE HAPPY TO DISCUSS THAT WITH

13  THEM, YOUR HONOR.

14        **THE COURT:**  PARDON?

15        **MS. NORMAN:**  WE WOULD BE HAPPY TO DISCUSS THAT

16  WITH THEM, YOUR HONOR.

17        **THE COURT:**  YEAH.  I MEAN DON'T WORRY SO MUCH

18  ABOUT NOT BEING IN TECHNICAL COMPLIANCE.  YOU HAVEN'T BEEN

19  IN COMPLIANCE WITH TEN YEARS AND NOTHING HAS HAPPENED.  SO

20  WE'RE JUST WORKING ON YOU DOING YOUR BEST.

21        **MR. RUSSELL:**  OKAY.  WE WILL -- WE WILL CONTINUE

22  THAT PROCESS, YOUR HONOR.

23        **THE COURT:**  OKAY.

24        SO CAN WE MOVE ON TO THE STATUS CONFERENCE?

25        **MS. NORMAN:**  YES.

1          **THE COURT:**  OKAY.

2          SURVEY OF ACCESSIBLE HOUSING.

3          UM, NOW, HERE IS ANOTHER ONE.  YOU SAY YOU DIDN'T

4    WANT TO THROUGH AN EMPTY EXERCISE OF TELLING THEM THINGS

5    THAT YOU WERE TOLD TO TELL THEM.  IT DOESN'T MATTER IF IT'S

6    AN EMPTY EXERCISE.  YOU NEED TO TELL THEM THINGS THAT YOU

7    WERE TOLD TO TELL THEM.

8          **MR. RUSSELL:**  WELL, WE DID, YOUR HONOR.  IT

9    TOOK -- IT TOOK THREE WEEKS LONGER THAN WE HAD HOPED BUT WE

10   DID DO THAT.

11         **THE COURT:**  WELL, I KNOW BUT WHEN THE DEADLINE

12   COMES, WELL, THEN, YOU WRITE TO THEM OR CALL THEM AND E-MAIL

13   AND SAID WE KNOW WE WERE SUPPOSED TO DO THIS TODAY AND WE

14   CAN'T AND HERE'S WHY WE CAN'T.  NOT JUST WAIT FOR THREE

15   WEEKS AND THEN RETROACTIVELY EXPLAIN WHY YOU DIDN'T.  JUST

16   DO IT ON THE DAY IT'S DUE AND THEN EXPLAIN WHY.

17         **MR. RUSSELL:**  OKAY.  WE WILL DO THAT IN THE

18   FUTURE.

19         **MS. NORMAN:**  OR EVEN BEFORE THE DAY THAT IT'S DUE

20   WE'LL BE HAPPY TO TALK BEFOREHAND.

21         **THE COURT:**  IF YOU'RE GOING TO BE ABLE TO.  YOU

22   MIGHT AS WELL LET THEM KNOW YOU'RE NOT GOING TO BE DONE.

23         **MR. RUSSELL:**  OKAY.

24         **THE COURT:**  WE'RE TALKING ABOUT COMMUNICATION

25   HERE.  AND IF PEOPLE COMMUNICATE WITH EACH OTHER IT IS A LOT

1  EASIER TO GET THINGS DONE THAN IF THEY DON'T.

2        NOW, UM, DO WE NEED TO KNOW, I SHOULDN'T EVEN --

3        **MS. NORMAN:**  IF I COULD FOCUS YOUR ATTENTION ON

4  THE MAIN ITEM FOR THE HOUSING INVENTORY, WHAT WE NEED YOUR

5  INTERVENTION ON IS THAT DEFENDANTS FAILED TO INCLUDE ANY

6  INFORMATION ABOUT THE STATE OF REPAIR OF THEIR ACCESSIBLE

7  FEATURES IN THEIR HOUSING UNITS.

8        SO AT YOUR HONOR'S ORDER, WE WENT OUT AND GOT THAT

9  INFORMATION OURSELVES.  AND AS WE TOLD YOU, IT WAS

10 INCREDIBLY BURDENSOME AND EXPENSIVE AND WOULD NOT BE VERY

11 DIFFICULT FOR THEM TO DO IT THEMSELVES.

12       YOU ORDERED THEM TO COME UP WITH A PLAN FOR DOING

13 IT.  I GAVE THEM MY CHECKLISTS, WHICH A LOT OF PEOPLE AT

14 INSTITUTIONS TOLD ME WERE VERY USEFUL.  AND WE'VE HEARD

15 ABSOLUTELY NOTHING FROM THEM SINCE THAT DATE.

16       THEY WERE ORDERED TO PROVIDE US THAT PLAN BY

17 AUGUST 30, AND WE'VE HAD NOTHING.

18       **THE COURT:**  OKAY.  NOW, THIS IS -- THIS IS THE

19 SURVEY OR THIS IS A DIFFERENT ISSUE?

20       **MS. NORMAN:**  THIS IS THE STATE OF REPAIR WHICH IS,

21 UM, AN ESSENTIAL FEATURE OF THE HOUSING SURVEY.  SO NOT ONLY

22 TO HAVE THE HOUSING SURVEY INDICATE WHICH -- WHICH

23 PLACEMENTS ARE ACCESSIBLE FOR DISABLED PRISONERS, IT SHOULD

24 INDICATE WHETHER THE TOILETS WORK, WHETHER THE SHOWERS WORK,

25 BECAUSE IF THE ACCESSIBLE SHOWER DOESN'T WORK, IT IS NOT AN

1    ACCESSIBLE LOCATION.

2    **THE COURT:**  OKAY.  SO WE WERE TALKING ABOUT

3    CERTAIN DISPUTED BEDS WHERE YOU SAID THEY WERE INACCESSIBLE

4    AND THEY SAID THEY WERE ACCESSIBLE BUT NOW THEY AGREE THEY

5    AREN'T ACCESSIBLE.

6    **MS. NORMAN:**  THAT IS A SEPARATE ISSUE.

7    **THE COURT:**  THAT'S A DIFFERENT ISSUE.

8    **MS. NORMAN:**  THAT DOES NOT NEED YOUR ATTENTION AT

9    THIS STATUS CONFERENCE, I BELIEVE.  THIS ISSUE IS --

10   **THE COURT:**  SO IF YOU WENT AND FOUND OUT THE STATE

11   OF REPAIR, THEN WHAT DO YOU WANT THEM TO DO?

12   **MS. NORMAN:**  THEY NEED TO HAVE UP-TO-DATE

13   INFORMATION AS TO WHETHER THESE PLACEMENTS ARE ACCESSIBLE

14   WHICH MEANS WHETHER THE ACCESSIBLE TOILET WORKS.

15   **THE COURT:**  BUT HAVEN'T YOU ALREADY DONE THAT FOR

16   THEM AND GIVEN THAT TO THEM?

17   **MS. NORMAN:**  WE DID THAT ONCE.  WE'VE HAD NO

18   UPDATED HOUSING SURVEY SINCE THEN.  BUT ALSO THEY NEED --

19   **THE COURT:**  SO WHAT DO WE WANT TO KNOW THAT THEY

20   WERE FIXED OR TO HAVE ANOTHER, WELL, I GUESS, ANOTHER SURVEY

21   WOULD TELL US THEY WERE FIXED.

22   **MS. NORMAN:**  THEY NEED TO DO THIS REGULARLY.  THEY

23   NEED TO HAVE A PLAN THAT LETS THE PEOPLE WHO ARE MAKING

24   DECISIONS ABOUT WHERE -- WHERE THIS WHEELCHAIR USER WILL GO.

25   WILL HE GO DO AVENOL BUILDING 550?  WELL, ARE

1  THERE ENOUGH ACCESSIBLE TOILETS FOR THEM THERE?  THERE MIGHT

2  BE ON PAPER A PLACE FOR WHEELCHAIR USER BUT IF THERE'S ONE

3  WHEELCHAIR ACCESSIBLE SHOWER AND THIS SHOWER IS BROKEN, THAT

4  THAT IS OFFLINE.  FOR WHEELCHAIR USERS, THEIR SURVEY DOES

5  NOT INCLUDE THAT INFORMATION.  AND TO GET THERE, THEY HAVE

6  TO KNOW WHETHER THE SHOWERS ARE BROKEN AND THEY DON'T HAVE A

7  SYSTEM FOR DOING THAT.

8          **THE COURT:**  OKAY.  SO YOU DID IT AS OF WHEN?

9          **MS. NORMAN:**  WE DID IT AS OF, UM, IT WAS THE

10  SUMMER.  IT WAS JULY/AUGUST.  JULY.

11          **THE COURT:**  HAVE I ORDERED THEM TO DO ANOTHER ONE?

12          **MS. NORMAN:**  YOU --

13          **THE COURT:**  I REMEMBER SAYING WHY DON'T YOU JUST

14  DO IT IF THEY'RE NOT GOING TO?

15          **MS. NORMAN:**  RIGHT.

16          **THE COURT:**  THEN WHAT ELSE HAPPENED?

17          **MS. NORMAN:**  YOU ORDERED THEM TO, I'M QUOTING FROM

18  YOUR ORDER OF SEPTEMBER 12, "TO DEVELOP A PLAN TO REGULARLY

19  MONITOR THE STATE OF REPAIR OF ACCESSIBLE HOUSING FEATURES

20  AND TO PROVIDE IT IN WRITING TO PLAINTIFFS BY THURSDAY,

21  AUGUST 30."

22          **THE COURT:**  OH.  OH.  A PLAN TO DO IT.

23          **MS. NORMAN:**  A PLAN TO DO IT.  EXACTLY.

24          **THE COURT:**  OKAY.

25          SO WHERE IS YOUR PLAN TO DO IT?

1          **MR. RUSSELL:**  IT IS NOT IN THE PLANS, YOUR HONOR.

2    BUT WHAT I DO UNDERSTAND IS IN THIS BUDGET CHANGE PROPOSAL,

3    THERE IS A PROVISION THAT WILL GO WITH INDEX THAT DOES TRACK

4    THE INFORMATION FOR THE ACCESSIBILITY FEATURES IN THESE

5    LOCATIONS.  IT WAS MY OVERSIGHT ON THIS PART OF THE ORDER.

6          I WAS FOCUSING ON THE STATS THAT WERE PREPARED OF

7    THE FEATURES THAT WERE ADDRESSED IN THE CASE MANAGEMENT

8    CONFERENCE STATEMENT.

9          I WILL -- I WILL CHECK WITH MY CLIENTS TO FIND OUT

10   WHERE WE ARE AT ON THAT.  BUT I DO UNDERSTAND THAT AS PART

11   OF A BUDGET CHANGE PROPOSAL THERE IS A COMPONENT TO BE ADDED

12   TO THE DECK SYSTEM WHEREBY INFORMATION REGARDING THE SHOWER

13   HEADS, THE TOILETS, WHETHER THE TOILET IS BACKED UP, THE

14   STATUS OF THE SHOWER BENCHES, THE -- THE FRICTION STRIPS ON

15   RAMPS, WHETHER OR NOT THOSE THINGS ARE IN PLACE.

16         ONE OF THE PROBLEMS, YOU CAN SEE, YOUR HONOR, BUT

17   I DO BELIEVE IT IS BEING -- IT'S AT LEAST BEING CONSIDERED

18   IS, HOW DO YOU TRACK A CLOGGED TOILET?  I MEAN IF A TOILET

19   IS CLOGGED FOR AN HOUR, IT MAY -- I MEAN THAT IS A PROBLEM

20   FOR THAT HOUR.  IF THE TOILET IS CLOGGED FOR 72 HOURS, I

21   GRANT YOU THAT THAT IS A BIG PROBLEM WHERE INMATES WILL

22   START NEEDING TO BE MOVED AROUND.  AND MY UNDERSTANDING THAT

23   IS THE KIND OF INFORMATION THAT IS GOING TO BE A COMPONENT

24   OF THE -- OF THE REVISED DECK SYSTEM THAT CAN BE TRACKED.

25         **THE COURT:**  OKAY.  BUT WHAT WE NEED IS THE PLAN.

1          **MR. RUSSELL:**  OKAY.

2          **THE COURT:**  THE DECK SYSTEM IS -- IS PERHAPS THE

3    SOLUTION.  BUT WE NEED TO HAVE YOU SAY, HERE'S HOW WE'RE

4    GOING TO SOLVE THE PROBLEM.  AND MAYBE YOU CAN'T ACTUALLY DO

5    IT UNTIL YOU GET MORE MONEY IF IT'S AN EXPENSIVE THING, BUT

6    MAYBE YOU NEED AN INTERIM PLAN THAT ISN'T SO EXPENSIVE THAT

7    YOU CAN DO NOW WHILE YOU'RE WAITING FOR THE MONEY TO DO A

8    BETTER PLAN.

9          BUT AT LEAST PRESENTING THE PLAN WON'T BE

10   EXPENSIVE AT ALL PRACTICALLY.  SO THAT YOU NEED TO DO.

11         **MR. RUSSELL:**  OKAY.

12         **THE COURT:**  AND IT BETTER HAVE AN INTERIM, IF THE

13   PLAN IS SOMETHING THAT YOU KNOW YOU CAN'T DO FOR A WHILE,

14   THEN YOU'RE GOING TO NEED AN INTERIM PLAN AS WELL THAT IS

15   GOING TO EXPLAIN HOW PEOPLE ARE GOING TO GET TO USE THE

16   RESTROOMS IN THE MEANTIME.

17         **MR. RUSSELL:**  RIGHT.  AND I HAVE BEEN DISCUSSING

18   THAT WITH MY CLIENTS AS WELL, YOUR HONOR.

19         **THE COURT:**  WHEN WILL YOU HAVE THAT PLAN?  A WEEK?

20   WELL, WE GOT THANKSGIVING NEXT WEEK.

21         **MS. NORMAN:**  YOUR HONOR, GIVEN THAT THEY WERE

22   ORDERED TO PROVIDE THEIR INFORMATION IN YOUR JANUARY

23   INJUNCTION, GIVEN THAT WE INCLUDED A VERY CLEAR STATEMENT OF

24   OUR CONCERNS ON THIS ISSUE IN THE OCTOBER 23 CASE MANAGEMENT

25   CONFERENCE STATEMENT WHICH ACTUALLY WAS PROVIDED TO

1  DEFENDANTS TWO WEEKS PRIOR TO THAT DATE SO THAT WE COULD,

2  YOU KNOW, GO BACK AND FORTH ON IT, I THINK -- I THINK A WEEK

3  PLUS, YOU KNOW, THE EXTRA TWO DAYS FOR THE THANKSGIVING

4  HOLIDAY, A WEEK FROM MONDAY IS ENTIRELY ADEQUATE.

5            **THE COURT:**  OKAY.

6            **MR. RUSSELL:**  EXCUSE ME FOR A SECOND, YOUR HONOR.

7            UM, WHAT DAY ARE WE TALKING ABOUT, YOUR HONOR?

8            **THE COURT:**  THE TWENTY-SIXTH OF NOVEMBER.  A WEEK

9  FROM MONDAY.  THE MONDAY AFTER THANKSGIVING.

10           **MR. RUSSELL:**  COULD WE MAKE IT THE THIRTIETH, THAT

11  FRIDAY?

12           **THE COURT:**  OKAY.

13           **MR. RUSSELL:**  OKAY.  THANK YOU, YOUR HONOR.

14           **THE COURT:**  BUT DON'T JUST THINK ABOUT THE PLAN.

15  THINK ABOUT DOING IT, TOO.

16           **MR. RUSSELL:**  RIGHT.  RIGHT.

17           **THE COURT:**  UM, OKAY.

18           SIGN LANGUAGE INTERPRETERS, YOU SAY YOU'RE

19  EXPLORING THE OPTION OF USING VIDEO CONFERENCING.

20           WE NEED A PROPOSAL ON THAT.

21           **MR. RUSSELL:**  YOUR HONOR, WHAT I DO KNOW IS THAT

22  THE REMAINING OPEN POSITIONS, THE FOUR SIGN LANGUAGE

23  INTERPRETER POSITIONS HAVE NOW BEEN FILLED.  THERE ARE NO

24  OPEN SIGN LANGUAGE POSITIONS FOR PERMANENT STAFF ON CDCR.

25           WHAT I THINK WE'RE TALKING ABOUT IS A PROPOSAL FOR

1    THE USE OF VIDEO CONFERENCING IN THOSE INSTANCES IN WHICH A

2    SHINE LANGUAGE INTERPRETER IS NOT IMMEDIATELY AVAILABLE.  IF

3    THAT'S NOT THE CASE, UM, I'D LIKE -- I DON'T -- I GUESS I

4    DON'T KNOW WHAT THE PROPOSAL IS AT THIS POINT.

5            **MS. NORMAN:**  YOUR HONOR, IF I COULD ZERO YOU IN ON

6    THE ISSUE.

7            **THE COURT:**  IT'S ONE THAT, UM, WHERE THERE'S A

8    VERY SMALL POPULATION OF HEARING IMPAIRED PEOPLE.  AND,

9    THEREFORE, PERHAPS YOU DON'T HAVE A SIGN LANGUAGE

10   INTERPRETER ON STAFF BECAUSE THERE'S NOT THAT MANY OF THEM.

11   BUT YET EVEN THOSE FEW MIGHT SOMETIME NEED AN INTERPRETER

12   AND YOU WERE GOING TO DO THAT BY WAY OF VIDEO CONFERENCE.

13           **MR. RUSSELL:**  MY UNDERSTANDING THAT IS DONE BY

14   CONTRACT STAFF, YOUR HONOR.

15           **THE COURT:**  THAT'S ALWAYS BEEN A PROBLEM.  THAT'S

16   WHY WE WENT TO THE POSITIONS BECAUSE WE COULDN'T ALWAYS GET

17   CONTRACT STAFF.  AND THEN YOU SAID WELL, WE'LL HAVE THE

18   POSITIONS AND THAT'S FINE FOR THE ONES THAT WE HAVE.  BUT

19   FOR THE ONES THAT WE DON'T HAVE, I THINK YOU SAID YOU WERE

20   GOING TO USE VIDEO CONFERENCING.  BECAUSE THE CONTRACT STAFF

21   DIDN'T WORK.  THEY JUST -- THEY WEREN'T THERE OR WASN'T

22   WORKING.  THEY DIDN'T GET THERE ON TIME.  THERE WEREN'T

23   ENOUGH OF THEM BUT I DON'T KNOW WHAT THE PROBLEM WAS.  BUT

24   CLEARLY IT WASN'T WORKING.

25           SO IF YOU SAID YOU WERE GOING TO DO VIDEO

1    CONFERENCING, THEN IT SEEMS LIKE YOU WOULD NEED TO MAKE A

2    PROPOSAL ABOUT THAT.

3            **MR. RUSSELL:**  OKAY.

4            **THE COURT:**  AM I GETTING IT RIGHT?

5            **MS. NORMAN:**  YES.  I MEAN OUR POSITION IS THAT THE

6    INJUNCTION IN JANUARY CLEARLY REQUIRES THEM TO HAVE

7    INTERPRETERS ON STAFF EVEN FOR THOSE SMALL POPULATIONS.  BUT

8    WE'RE WILLING TO, AS THE INJUNCTION SAYS, WE'RE WILLING TO

9    ENTERTAIN A PLAN.  SO THEY'RE OUT OF COMPLIANCE WITH THAT

10   JANUARY INJUNCTION UNLESS AND UNTIL THEY PROVIDE A

11   REASONABLE PLAN WITH US -- TO US.  AND I THINK AT THIS POINT

12   YOUR HONOR SHOULD SET A DATE FOR THEM TO PROVIDE THAT PLAN.

13           **THE COURT:**  HOW MANY INSTITUTIONS ARE THERE THAT

14   DON'T HAVE ON STAFF SIGN LANGUAGE INTERPRETERS NOW?

15           **MS. NORMAN:**  WELL, MOST OF THE INSTITUTIONS DON'T

16   HAVE THEM.  BUT I THINK ONLY A FEW SHOULD -- SHOULD HAVE

17   THEM GIVEN THE POPULATION OF, FOR EXAMPLE, SEVERELY MENTALLY

18   ILL PRISONERS WHO ALSO MAY BE DEAF.  UM, SO I BELIEVE IT'S

19   SOMETHING IN THE RANGE OF FOUR TO EIGHT ADDITIONAL

20   INSTITUTIONS.  I'M NOT POSITIVE ABOUT THE NUMBERS.

21           **MR. RUSSELL:**  YOUR HONOR, JENNIFER NYGAARD CAN

22   ADDRESS SOME OF THIS ISSUE.

23           **MS. NYGUARD:**  YEAH.  THE JANUARY 18 INJUNCTION

24   REQUIRES THE SIGN LANGUAGE INTERPRETERS AT INSTITUTIONS

25   DESIGNATED TO HOUSE THE DPH, THE HEARING-IMPAIRED INMATES.

1    SIGN LANGUAGE INTERPRETERS WERE HIRED AT EIGHT OF THOSE.  I

2    BELIEVE THERE'S ONLY ABOUT THREE AT SAN QUENTIN CONDEMNED.

3    UM, CNC.

4              **MS. NORMAN:**  IT'S SOMETHING IN THAT RANGE.

5              **MS. NYGUARD:**  THERE'S ONLY, WHERE'S THERE'S ONLY A

6    HANDFUL.  AND ORIGINALLY THE PLAN WAS LET'S GET THE EIGHT

7    HIRED ON STAFF AT THE INSTITUTIONS WITH THE LARGER

8    POPULATIONS AND THEN UTILIZE THEM, THOSE INTERPRETERS, BY

9    VIDEO CONFERENCE TO ACCOMMODATE THE NEEDS AT THE SMALLER

10   INSTITUTIONS OR THE SMALLER POPULATIONS.

11             SO THAT WAS THE ORIGINAL PLAN.  AND, UM, I BELIEVE

12   SINCE WE HAVE HIRED THE EIGHT NOW, AND WE HAD TALKED ABOUT

13   USING SIGN LANGUAGE INTERPRETATION BY VIDEO CONFERENCE IN

14   OTHER AREAS, TOO, BUT WE HAVEN'T HATCHED OUT ANY OF THE

15   GRITTY DETAILS ABOUT IT.

16             **THE COURT:**  SO THAT'S WHAT WE NEED THEN.  WE NEED

17   A PLAN THAT SAYS HOW ARE WE ARE GOING TO PROVIDE SIGN

18   LANGUAGE SERVICES AT THESE THREE OR FOUR PRISONS THAT AREN'T

19   COVERED YET.  AND THAT WILL HAVE TO BE EITHER HIRING AN

20   INTERPRETER FOR THOSE THREE OR FOUR, OR VIDEO CONFERENCING.

21   BUT IF VIDEO CONFERENCING, IT HAS TO SAY WE HAVE A CAMERA

22   HERE AND WE HAVE A CAMERA THERE AND WE HAVE SOMEONE WHO

23   WORKS THERE WHO CAN USE THE CAMERA; IN OTHER WORDS, VIDEO

24   CONFERENCING DOESN'T JUST HAPPEN.  IT HAS TO HAVE, YOU KNOW,

25   A PLAN.

1         SO HOW ABOUT BY THE THIRTIETH OF NOVEMBER ALSO WE

2    HAVE A PLAN FOR THOSE THREE OR FOUR INSTITUTIONS, BE IT

3    OKAY, WE'LL HIRE SOMEBODY THERE, OR WE CAN DO VIDEO

4    CONFERENCING BECAUSE WE HAVE THE EQUIPMENT ALREADY.  OR,

5    WELL, OKAY, WE DON'T HAVE THE EQUIPMENT, BUT WE HAVE THE

6    MONEY TO BUY IT AND WE ARE GOING TO BUY IT BY X DATE.  AND

7    THE PERSON WHO IS GOING TO BE ON THE VIDEO CONFERENCING IS

8    GOING TO BE MS. X WHO WORKS THUS AND SUCH PLACE.  LIKE THAT.

9         OKAY?  OKAY.

10        **MR. RUSSELL:**  YOUR HONOR, TO THAT -- TO THAT

11   ISSUE, ONE OF THE THINGS THAT I THINK IS HAPPENING IS, FROM

12   WHAT I UNDERSTAND IN MY DISCUSSIONS WITH MR. SWANSON, IS

13   THAT SOME OF THIS MAY OCCUR THROUGH VIDEO CONFERENCING THAT

14   HAS -- THAT IS BEING DEVELOPED THROUGH THE RECEIVER'S

15   OFFICE.  UM THAT THERE ARE VIDEO CONFERENCING CAPABILITIES

16   WITHIN THE MEDICAL, WITH THE MEDICAL STAFF, AND THAT WE

17   MIGHT BE ABLE TO PIGGYBACK ON THAT WITH THE SIGN LANGUAGE

18   INTERPRETATION NEEDS OF THESE FEW PRISONERS IN THOSE

19   INSTITUTIONS.

20        **THE COURT:**  WELL, THEN YOU WOULD PUT THAT IN YOUR

21   PLAN --

22        **MR. RUSSELL:**  OKAY.

23        **THE COURT:**  -- AND THEN EXPLAIN HOW YOU'RE GOING

24   TO USE THAT CAMERA AND THEIR CAMERA EXISTS AND IT'S THERE OR

25   IT DOESN'T EXIST BUT IT'S GOING TO EXIST ON X DATE BEING

1   PAID FOR BY, ETC.  I MEAN IT CAN'T BE PIE IN THE SKY.  IF

2   THERE REALLY IS A CONCRETE PLAN FOR THAT, THEN GREAT, THAT

3   CAN BE YOUR PLAN.  BUT IT CAN'T BE WE'RE GOING TO HOPE THAT

4   THIS HAPPENS SOMETIME IN THE FUTURE BECAUSE SOMEBODY SAID IT

5   MIGHT.  OKAY.

6           ADDITIONAL GRIEVANCE STAFF.

7           **MS. NORMAN:**  I DON'T BELIEVE THERE IS ANYTHING

8   ELSE IN THE STATUS CONFERENCE THAT REQUIRES, UM, YOUR

9   ATTENTION.

10          **THE COURT:**  OH, REALLY.

11          **MS. NORMAN:**  UM, BUT YOU MIGHT DISAGREE.  ALTHOUGH

12  I WOULD ASK FOR YOUR INDULGENCE FOR TWO MINUTES TO TALK

13  ABOUT THE OUT-OF-STATE MONITORING ISSUE, UM, TO DRAW YOUR

14  ATTENTION TO JUST ONE POINT THERE.

15          **THE COURT:**  I GUESS YOU CAN DO THAT.

16          **MS. NYGUARD:**  ACTUALLY, THERE IS MORE ON THE

17  STATUS CONFERENCE.

18          **MS. NORMAN:**  I'M SO SORRY, YES.

19          **THE COURT:**  I HAVE SOME MORE PAGES.  I HAVE TO

20  KEEP MY MOUTH SHUT BUT I THOUGHT THERE IS MORE.

21          **MS. NORMAN:**  THERE IS MORE.

22          COULD WE QUICKLY ADDRESS THE OUT-OF-STATE

23  CONFERENCING BEFORE --

24          **THE COURT:**  NO, BECAUSE I'M TEN MINUTES LATE TO MY

25  NEXT APPEARANCE ALREADY BUT THAT IS GOING TO BE IT ON THE

1    OUT-OF-STATE MONITORING.  I WANT TO FINISH UP THE STATUS

2    ISSUES.

3              **MS. NORMAN:**  THANK YOU.

4              **THE COURT:**  SO THERE MAY BE SOME THINGS THAT I

5    THOUGHT WERE A PROBLEM AREN'T SO YOU TELL ME WHAT'S THE

6    PROBLEM.

7              **THE COURT REPORTER:**  IDENTIFY YOURSELF.

8              **MS. MANIA:**  I'M ANNE MANIA, PLAINTIFF'S COUNSEL.

9              WE HAVE FOUR, UM, ISSUES THAT WE ASK YOU TO FOCUS

10   ON.

11             **THE COURT:**  AND THESE ARE BPH ISSUES?

12             **MS. MANIA:**  THESE ARE BPH ISSUES.

13             **THE COURT:**  OKAY.  WHAT ARE THEY?

14             **MS. MANIA:**  THE FIRST ONE IS THE REQUIREMENT THAT

15   MENTAL HEALTH CLINICIANS CHECK DECKS.  UM, IT'S SORT OF BEEN

16   LUMPED IN WITH THE CC-LS.

17             **THE COURT:**  THAT IS CCPOA?

18             **MS. MANIA:**  BUT THEY'RE NOT REPRESENTED BY CCPOA.

19   TO OUR KNOWLEDGE, THERE IS NO -- NO NEGOTIATION OR

20   REQUIREMENT.  THERE IS NO IMPEDIMENT THAT WE'RE AWARE OF.

21             **THE COURT:**  IS THAT TRUE.  DID HE LEAVE ALREADY?

22             WHAT HAPPENED TO YOUR POA GUY?

23             WELL, I DON'T KNOW IF THEY ARE OR THEY AREN'T.

24             **MR. RUSSELL:**  YOUR HONOR, THEY ARE REPRESENTED.

25   THEY ARE REPRESENTED EMPLOYEES.  IT MAY VERY WELL BE THE

1  SAME SITUATION.

2          **THE COURT:**  BUT NOT BY POA?

3          **MR. RUSSELL:**  BUT NOT BY CCPOA.

4          **THE COURT:**  SO YOU'LL HAVE TO NEGOTIATE WITH

5  SOMEONE ELSE THEN.

6          **MR. RUSSELL:**  I THINK THAT'S WHAT I'M JUST BEING

7  TOLD.  I DIDN'T KNOW THE SITUATION WAS GOING TO COME UP

8  BECAUSE THAT'S WHAT I'M BEING TOLD BY THE MY CLIENTS.

9          **THE COURT:**  I THOUGHT THEY WERE PEACE OFFICERS.

10 THEY'RE NOT.

11          **MS. NYGARD:**  NO.

12          **MR. ADAM:**  THEY'RE NOT BY THE CCPOA.

13          **THE COURT:**  I THOUGHT THEY WERE.  WELL, ANY WAY.

14          **MR. BEAN:**  YEAH.

15          **THE COURT:**  WHATEVER IT IS, YOU HAVE TO FIND OUT

16 WHO THEY ARE REPRESENTED BY AND YOU'RE GOING TO HAVE TO CALL

17 THEM TOMORROW AND SET UP YOUR APPOINTMENT TO MEET WITH THEM

18 AND SEND THEM COPIES OF YOUR PROPOSALS.  THE MENTAL HEALTH

19 PEOPLE.

20          **MR. RUSSELL:**  RIGHT.

21          **MS. NORMAN:**  THE DEFENDANTS REPORTED THAT THERE

22 WAS SOME TRAINING OF THE FORENSIC MENTAL HEALTH UNIT, UM, IN

23 THE MOTION FOR RECONSIDERATION ON THE USE OF DECKS.  I DON'T

24 KNOW IF DEFENDANTS CAN SPEAK TO THAT.  BECAUSE THOSE WERE

25 THE SORT OF PEOPLE WHO PERFORMED THE MENTAL HEALTH

1   EVALUATIONS FOR PAROLEE HEALTH PROCEEDING.

2           **THE COURT:**  I KNOW NOTHING ABOUT THIS.  WAS THIS

3   BRIEFED?

4           **MS. NORMAN:**  IT WAS IN THE MOTION FOR

5   RECONSIDERATION.

6           **THE COURT:**  I'M SORRY?

7           **MS. NORMAN:**  IT WAS IN THE MOTION FOR

8   RECONSIDERATION WAS REFERENCED, I BELIEVE.  BUT WE CAN -- WE

9   CAN LEAVE IT AT IF DEFENDANTS WILL GET BACK.

10          **THE COURT:**  WAS IT IN THE STATUS CONFERENCE

11  AGENDA?

12          **MS. NORMAN:**  NO.

13          **THE COURT:**  OH.  OKAY.  WHY DON'T YOU ALL TALK

14  ABOUT THAT THEN BECAUSE I DON'T KNOW WHAT -- I DON'T KNOW

15  ANYTHING ABOUT IT.

16          **MS. NORMAN:**  OKAY.  UM, THE NEXT ISSUE IS THE

17  REPORT ON BARRIERS TO CONNECTIVITY FOR DESKS WITHIN THE

18  INSTITUTIONS.  IT'S PARAGRAPH SEVEN OF THE ORDER.  UM, AND

19  WE DID RECEIVE A REPORT FROM DEFENDANTS, UM, WHICH DIDN'T

20  REALLY GIVE US VERY MUCH INFORMATION AT ALL.

21          BASICALLY, IT WAS A LIST OF EACH PRISON WITH A

22  LISTING OF THE TYPE OF BARRIER THERE WAS TO CONNECTIVITY BUT

23  NO QUANTIFYING, NO NUMBERS, NO SPECIFICS ABOUT HOW MANY

24  COMPUTERS THEY NEEDED, HOW MANY PATCH CABLES, THAT SORT OF

25  THING.  SO WE DON'T --

1          **THE COURT:**  DO YOU HAVE MORE ON THE CONNECTIVITY

2    ISSUE MORE THAN WHAT YOU TOLD THEM ALREADY?

3          **MR. RUSSELL:**  NOT AT THIS JUNCTURE, YOUR HONOR.  I

4    MEAN THAT'S -- THAT IS PART OF THE BUDGET CHANGE PROPOSAL

5    THERE'S NOW BEFORE THE DEPARTMENT OF FINANCE.  UM, I MEAN,

6    THERE, WE DID ADVISE THE PLAINTIFF'S COUNSEL OF THE

7    SUBSTANTIAL BARRIERS THAT EXIST IN THESE INSTITUTIONS.  AND

8    IT'S A NUMBER OF DIFFERENT CATEGORIES.

9          **MS. NORMAN:**  ACTUALLY, DEFENDANTS HAVE CONTENDED

10   THAT THEY HAVE A DETAILED SURVEY THAT THEY'RE WITHHOLDING

11   FROM US ON THE GROUNDS OF PRIVILEGE.  THEY FAILED TO PROVIDE

12   ANY KIND OF PRIVILEGE LOG.  BUT THEY ACTUALLY HAVE INFORMED

13   US THAT THEY DO HAVE QUITE A BIT MORE INFORMATION.

14         **THE COURT:**  WELL, ARE YOU TALKING ABOUT PARAGRAPH

15   11 NOW?

16         **MS. NORMAN:**  I'M SORRY.  PARAGRAPH SEVEN OF THE

17   ORDER WHICH SAYS IF THEY CONTEND THAT, UM, CONNECTIVITY

18   BARRIERS WILL PREVENT THEM FROM REQUIRING CC-1S TO CHECK

19   DECKS OR MENTAL HEALTH CLINICIANS TO CHECK DECKS THAT THEY

20   NEED TO PROVIDE PLAINTIFFS WITH A REPORT ON THE NATURE OF

21   THOSE BARRIERS AS WELL AS WORK AROUNDS BASICALLY HOW THEY'RE

22   GOING TO PROVIDE THE INFORMATION IN DECKS PENDING ADEQUATE

23   CONNECTIVITY.

24         **THE COURT:**  AND SO HAVE YOU TOLD THEM IN WHAT WAY

25   YOU ARE UNSATISFIED WITH THE REPORT THEY'VE GIVEN YOU SO

1    FAR?

2              **MS. NORMAN:**  YES.

3              **THE COURT:**  AND IN WHAT FORMAT DID YOU TELL THEM

4    THAT?

5              **MS. NORMAN:**  WE SENT THEM AN E-MAIL.  WELL, WE

6    REQUESTED, THE INITIAL LETTER WE GOT REFERENCED ATTACHMENTS.

7    UM, WE REQUESTED THE ATTACHMENTS.  THEY SAID WE MISTAKENLY

8    REFERENCED THE ATTACHMENTS.  THE ATTACHMENTS ARE WORK

9    PRODUCT AND PRIVILEGED.  WE'RE NOT GOING TO GIVE THEM TO

10   YOU.  THE ATTACHMENTS WERE THE SURVEYS, AS WE UNDERSTAND IT.

11   WE HAVEN'T SEEN THEM.  SO, UM, WE SAID, WELL, CAN YOU SEND

12   US A REDACTED VERSION VIA E-MAIL AND WE NEVER RECEIVED A

13   RESPONSE.

14             **THE COURT:**  OKAY.  WELL, THAT'S A LITTLE BIT

15   DIFFERENT.  IT SEEMS LIKE WHAT YOU NEED TO TELL THEM IS WHAT

16   IT IS, WHAT FACTS YOU WOULD LIKE TO HAVE THAT ARE NOT

17   INCLUDED IN THE REPORT THEY GAVE YOU.  IN OTHER WORDS, WHAT

18   IS DEFICIENT ABOUT THE REPORT THEY GAVE YOU.  I DON'T KNOW

19   WHAT THE ATTACHMENTS WERE AND WHETHER THEY SHOULD GIVE THEM

20   TO YOU OR NOT, BUT THEY SHOULD GIVE YOU THE INFORMATION THAT

21   YOU NEED.  AND IF THEY DIDN'T, THEN YOU NEED TO TELL THEM

22   WHAT IT IS YOU WANTED TO KNOW THAT THEY DIDN'T TELL YOU.  SO

23   MAYBE YOU COULD DO THAT FIRST.

24             **MS. NORMAN:**  WE WOULD CONTEND THAT WE HAVE BUT WE

25   WILL CERTAINLY DO IT AGAIN.

1        **THE COURT:**  WELL, THAT IS WHAT I ASKED.  IF YOU

2    HAVE, THEN YOU COULD SAY OH, WHAT WAS IN THE LETTER OF THUS

3    AND SUCH AND THEN HE CAN LOOK AT IT AND THEN YOU WOULDN'T

4    HAVE TO DO IT AGAIN.

5        **MS. NORMAN:**  IT WAS OUR SEPTEMBER 26 LETTER AS

6    WELL AS AN E-MAIL AND IT'S IN THE STATUS CONFERENCE

7    STATEMENT.

8        **THE COURT:**  AND DO THOSE SAY SPECIFICALLY, AND

9    MAYBE I SHOULD REMEMBER THIS, BUT DO THOSE SAY SPECIFICALLY

10    WHAT THE DEFICIENCIES WERE?

11        **MS. NORMAN:**  YEAH.  IT SAYS THEY GAVE US A PARTIAL

12    REPORT WHICH WAS THE GENERAL TYPES OF BARRIERS BUT DID NOT

13    PROVIDE THE UNDERLYING INFORMATION REGARDING, FOR EXAMPLE,

14    HOW MANY WORK STATIONS WERE NEEDED -- THIS IS ON PAGE 11 --

15    FOR ACCESS BY WHICH STAFF MEMBERS AT EACH INSTITUTIONS.

16        DEFENDANTS REPORT THEY HAVE A DETAILED SPREAD

17    SHEET BUT WITHHELD IT ON THE GROUNDS OF PRIVILEGE.

18        **THE COURT:**  OKAY.  SO YOU WANT TO KNOW HOW MANY

19    STATIONS THERE ARE?

20        **MS. NORMAN:**  RIGHT.  HOW MANY STATIONS.

21        **THE COURT:**  HOW MANY PEOPLE AT WHICH INSTITUTION?

22        **MS. NORMAN:**  RIGHT.

23        **THE COURT:**  OKAY.

24        ANY REASON WHY YOU CAN'T TELL THEM THAT?

25        **MR. RUSSELL:**  WELL, YOUR HONOR, FIRST OF ALL, THE

1   SURVEYS THAT WERE DONE WERE DONE AT MY REQUEST.  I BELIEVE

2   THAT THEY'RE ATTACHED TO THE ATTORNEY WORK PRODUCT.

3         **THE COURT:**  YOU DON'T HAVE TO GIVE THEM THE SURVEY

4   DATES.  CAN YOU JUST TELL THEM THE INFORMATION?

5         **MR. RUSSELL:**  WELL, I GUESS I COULD.  I COULD

6   ALWAYS SAY HOW MANY -- WHY DO THEY NEED TO KNOW HOW MANY

7   COMPUTERS ARE NEEDED AT, YOU KNOW?

8         **THE COURT:**  BECAUSE IT'S HARD TO TRACK YOUR

9   COMPLIANCE AND YOUR ABILITY TO COMPLY.  AND IF THEY KNOW

10   THESE THINGS THEN IT'S EASIER TO TRACK AND IT DOESN'T SEEM,

11   THERE DOESN'T SEEM TO BE ANY CONSIDERATION ON THE OTHER

12   SIDE.

13       IN OTHER WORDS, WHEN YOU COME FORWARD AND SAY WE

14   CAN'T DO THIS, IT'S HARD TO EVALUATE THE -- I DON'T WANT TO

15   SAY TRUTH -- BUT THE REASONABLENESS OF THAT STATEMENT IF ONE

16   DOESN'T HAVE THE FACTS AT ONE'S FINGERTIPS TO KNOW THAT.

17   AND IF YOU HAVE ONLY THREE COMPUTERS WHEN YOU NEED A

18   HUNDRED, THAT'S ONE THING.  IF YOU HAVE 99 COMPUTERS WHEN

19   YOU NEED A HUNDRED, THAT'S SOMETHING ELSE.  SO THAT'S THE

20   SORT OF THING THAT THEY NEED TO KNOW IN ORDER TO EVALUATE

21   HOW WELL YOU'RE DOING.  AND I DON'T SEE ANY REAL DOWNSIDE

22   FOR YOU SINCE YOU KNOW THAT INFORMATION, AND IT'S NOT GOING

23   TO HURT YOU TO TELL THEM, UNLESS IT SHOWS THAT YOU'RE OUT OF

24   COMPLIANCE.

25       UM, THEN I THINK THE EASIEST THING WOULD BE JUST

1    TO TELL THEM.

2         **MR. RUSSELL:**  THE -- THE OTHER ELEMENT THAT THAT

3    GOES TO IS BECAUSE IT IS A PART OF THE BUDGET CHANGE

4    PROPOSAL, IT IS PART OF THE DELIBERATIVE PROCESS PRIVILEGE.

5         **THE COURT:**  I'M NOT ASKING YOU TO TELL THEM WHAT

6    YOU SAID IN YOUR PROPOSAL.  I'M JUST ASKING YOU TO TELL THEM

7    HOW MANY COMPUTERS YOU HAVE AND HOW MANY WORK STATIONS YOU

8    HAVE AND HOW MANY EMPLOYEES YOU HAVE.

9         **MR. RUSSELL:**  BUT THAT'S WHAT'S IN THE PROPOSAL.

10        **THE COURT:**  THE FACT THAT IT'S IN THE PROPOSAL

11   DOESN'T MAKE IT OFF LIMITS.  THE PROPOSAL IS OFF LIMITS.

12   THE FACTS THAT MIGHT BE IN THE PROPOSAL AREN'T RENDERED OFF

13   LIMITS BECAUSE THEY'VE BEEN PLACED IN A PROPOSAL.

14        **MR. RUSSELL:**  ALL RIGHT, YOUR HONOR.  I BELIEVE

15   THAT WE CAN -- I MEAN THERE ARE SOME SUBSTANTIAL BARRIERS TO

16   PROVIDING CONNECTIVITY.  AND IF IT -- IF IT SUPPORTS OUR

17   POSITION THAT THIS IS GOING TO TAKE A LITTLE BIT MORE TIME

18   WE WILL PROVIDE THAT TO THE PLAINTIFF'S COUNSEL.

19        **THE COURT:**  OR IF IT DOESN'T.  YOU'LL PROVIDE IT

20   TO COUNSEL EITHER WAY, RIGHT?

21        **MR. RUSSELL:**  WE'LL PROVIDE IT EITHER WAY.

22        **THE COURT:**  OKAY.

23        **MR. RUSSELL:**  WE'RE TALKING ABOUT THE NUMBERS.

24   YOU KNOW, THESE ARE, YOU KNOW, WE HAVE DETERMINED THAT WE

25   NEED THESE COMPUTERS.  WE NEED THESE MANY, WE NEED TO DRILL

1    THROUGH THESE MANY WALLS, WHATEVER IT MIGHT BE.

2            **THE COURT:**  OKAY.  WHAT ELSE?

3            **MS. NORMAN:**  AN ACCOMPANYING ISSUE IN PARAGRAPH

4    SEVEN IS, UM, THEY WERE ORDERED TO DEVELOP LOCAL PROCEDURES

5    TO INSURE THAT THE INFORMATION FROM DECKS GETS TO CC-1S,

6    CNBRS, ETC., PENDING ADEQUATE DECKS ACCESS.

7            WE HAVEN'T RECEIVED THOSE LOCAL PROCEDURES YET.

8    NOR HAVE WE RECEIVED DRAFTS IN ADVANCE OF THE DEADLINE AS

9    REQUIRED BY PARAGRAPH 25.  WE WOULD LIKE TO RECEIVE THOSE

10   PROCEDURES.  LOCAL PROCEDURES.

11           **THE COURT:**  WHAT PARAGRAPH NUMBER IS THIS NOW?

12           **MS. NORMAN:**  THAT'S PARAGRAPH SEVEN AS WELL.

13           **THE COURT:**  OH.

14           **MR. RUSSELL:**  AND, YOUR HONOR, THIS DOES GO

15   DIRECTLY TO THE MOTION FOR RECONSIDERATION.  IN THE AUGUST

16   16 HEARING THE COURT SAID WHY DON'T YOU GET THAT DONE WITHIN

17   120 DAYS.  WE ADVISED THAT THE COURT THAT THAT WILL BE A

18   DIFFICULT THING TO DO TO DEVELOP THOSE KINDS OF LOCAL

19   PROCEDURES.  THE COURT RECOGNIZED THAT.  IT'S NOWHERE WITHIN

20   PARAGRAPH SEVEN.

21           **MS. NORMAN:**  I DON'T BELIEVE THAT WAS ARGUED AT

22   THE AUGUST 16 HEARING.

23           **THE COURT:**  LET'S SAY THAT IS RIGHT.  120 DAYS

24   FROM AUGUST 16 IS JUST ABOUT HERE SO SEPTEMBER, OCTOBER,

25   NOVEMBER, DECEMBER.  IF YOU LOOK AT DECEMBER 16 THEN.  SO

1    THAT'S -- I DON'T REMEMBER THAT.  BUT IF THAT'S WHAT YOU

2    THINK I SAID THEN WE CAN GO WITH THAT.

3            **MS. NORMAN:**  UM, THEN THE NEXT ISSUE SOMEWHAT

4    SIMILAR IS THE REVISION OF THE ACCOMMODATIONS PLAN.

5            **THE COURT:**  AREN'T YOU UP TO FOUR ALREADY?

6            YOU SAID YOU HAD FOUR.

7            **MS. NORMAN:**  I DON'T THINK SO ACTUALLY BUT --

8            **THE COURT:**  OKAY.  WHAT ELSE?

9            **MS. NORMAN:**  UM, SORRY.  THE REVISION OF THE

10   ACCOMMODATIONS PLAN, THE SAME ISSUE.  WE, THAT WAS DUE, IT'S

11   NOW DUE.  WE'VE NOT RECEIVED DRAFTS.  IT IS THEIR POLICIES

12   AND PROCEDURES FOR PROVIDING ACCOMMODATION.

13           **THE COURT:**  WHAT PARAGRAPH?

14           **MS. NORMAN:**  THAT IS PARAGRAPH 24 OF THE ORDER.

15           **THE COURT:**  OH.

16           **MS. NORMAN:**  AND IT IS PAGE 18.

17           **THE COURT:**  OKAY.  WELL, YOU SAID YOU WERE SOAKING

18   RECONSIDERATION.  IS THAT -- WHAT IS IT THAT YOU WANT TO DO?

19           **MR. RUSSELL:**  WELL, MY UNDERSTANDING, YOUR HONOR,

20   IS THAT THE -- I BELIEVE THAT THE REVISED PLAN IS, IT IS

21   EITHER BEEN COMPLETED OR IS -- IT'S ALMOST COMPLETED.

22           EXCUSE ME FOR JUST A SECOND, YOUR HONOR.

23           THANKS, YOUR HONOR.

24           MY UNDERSTANDING IS THE REVISED REMEDIAL PLAN FOR

25   BPH WAS PART OF THE PACKAGE THAT WAS PROVIDED TO CCPOA ON

1   NOVEMBER 2.  IT HAS BEEN COMPLETED.  WE CAN PROVIDE A COPY

2   OF THAT TO PLAINTIFF'S COUNSEL.

3           **THE COURT:**  OH, GOOD.  SO YOU CAN DO THAT

4   TOMORROW.

5           **MR. RUSSELL:**  DO THAT TOMORROW.

6           **THE COURT:**  OKAY.

7           THERE WAS SOMETHING I JUST DID THAT I DIDN'T SET A

8   DATE FOR.  WHAT WAS IT THAT?  COMPUTERS WORK STATIONS?

9           **MS. NORMAN:**  THE LOCAL PROCEDURES THAT -- THAT WAS

10  DECEMBER?

11          **THE COURT:**  NO, IT WAS THE BARRIERS TO CONNECT.

12  NO, THE LOCAL PROCEDURES, THAT IS COMING TOMORROW BECAUSE

13  THAT IS ALREADY DONE.  IT WAS THE, UM, DETAIL ON THE

14  CONNECTIVITY.

15          **MS. NORMAN:**  RIGHT.

16          **THE COURT:**  THE WORK STATIONS.  THE, ALL OF THAT.

17  I ASKED YOU TO DO THAT BUT I DIDN'T GIVE YOU A DATE.  WHEN

18  WOULD BE A GOOD DATE FOR YOU TO DO THAT?

19          **MR. RUSSELL:**  YOUR HONOR, I BELIEVE THAT THAT

20  WOULD BE INCLUDED WITHIN THE INFORMATION THAT'S IN THE DRAFT

21  BUDGET CHANGE PROPOSAL.  I THINK WE'RE SUPPOSED TO PROVIDE

22  THAT WITHIN, WELL, WE WERE SUPPOSED TO PROVIDE DECLARATIONS

23  REGARDING THE EFFORTS TO UNDERTAKE THE PROVISIONS OF THE

24  COURT'S ORDER WITHIN 30 DAYS.  I WOULD PROPOSE THAT WE DO

25  THAT WITHIN 30 DAYS AS WELL.

1          **THE COURT:**  OKAY.  INCLUDED IN THAT REPORT THEN.

2          **MR. RUSSELL:**  YES.

3          **THE COURT:**  YOU'RE CLEAR ON WHAT IT IS THAT THEY

4    WANT?

5          **MR. RUSSELL:**  NO, NOT ENTIRELY.

6          **THE COURT:**  OKAY.  WHY DON'T YOU GIVE THEM ANOTHER

7    COPY OF THE THINGS THAT YOU THINK TELL THEM WHAT IT IS YOU

8    WANT?

9          **MS. NORMAN:**  OKAY.

10          **THE COURT:**  AND IF -- IF YOU LOOK AT THOSE AND YOU

11   DON'T UNDERSTAND THEM OR IF IT'S NOT CLEAR TO YOU WHAT THEY

12   WANT, THEN TALK TO THEM.

13          **MR. RUSSELL:**  SURE.

14          **THE COURT:**  OKAY.

15          **MS. NORMAN:**  THANK YOU.

16          **THE COURT:**  WE NEED A NEW DATE I GUESS.  WHAT ARE

17   WE DOING?  TWO MONTHS.

18          **MS. FUNZELL:**  TWO MONTHS, YOUR HONOR.  SIXTY DAYS.

19          **THE COURT:**  SO THAT WOULD BE DECEMBER, JANUARY 15.

20   JANUARY 15 IS A TUESDAY SO THAT WILL WORK.  OH, I GUESS

21   THAT'S A THURSDAY.  AM I DOING THEM ON THURSDAYS?  I GUESS

22   IT DOESN'T MATTER.  LET'S DO IT ON TUESDAY, JANUARY 15 AT

23   TWO O'CLOCK IF THAT'S OKAY.

24          **MS. NORMAN:**  THANK YOU.

25          **MR. RUSSELL:**  THANK YOU, YOUR HONOR.

1          (WHEREUPON, AT 3:55 P.M. THE PROCEEDINGS CONCLUDED.)

2                    COURT REPORTER'S CERTIFICATE

3          I, STARR A. WILSON, CSR NO. 2462, UNITED STATES

4     DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, DO HEREBY

5     CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

6     RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7          I CERTIFY THAT THE TRANSCRIPT FEES AND FORMAT

8     COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL

9     CONFERENCE OF THE UNITED STATES.

10

11                    _____

12                    STARR A. WILSON, CSR NO. 2462

13

14

15

16

17

18

19

20

21

22

23

24

25