IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. C 94-2307 CW |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION TO REQUIRE DEFENDANTS TO TRACK AND ACCOMMODATE NEEDS OF ARMSTRONG CLASS MEMBERS HOUSED IN COUNTY JAILS AND ENSURE ACCESS TO A WORKABLE GRIEVANCE PROCEDURE |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | |
| Defendants. | |
_____/

Plaintiffs move for an order requiring Defendants to track and accommodate the needs of Armstrong class members housed in county jails and to provide access to a workable grievance procedure. Defendants oppose the motion. The matter was heard on July 9, 2009. Having considered oral argument and all of the materials submitted by the parties, the Court GRANTS Plaintiffs' motion.

BACKGROUND

On September 20, 1996, this Court ordered Defendants to develop plans to ensure that their facilities and programs were compliant with the Americans With Disabilities Act (ADA), 42 U.S.C.

§§ 12131 et seq., and readily accessible to and usable by prisoners and parolees with disabilities.  The order also required Defendants to develop policies to provide a prompt and equitable disability grievance procedure, to allow approved assistive aids for prisoners with disabilities in segregation units and reception centers, and to ensure accessibility in new construction and alterations. Remedial Order and Injunction and Certification for Interlocutory Appeal, September 20, 1996.  The Court retained jurisdiction to enforce its terms.  Id. at 5.

In response to the Order, Defendants issued their Court Ordered Remedial Plan on January 3, 2001.  The Remedial Plan requires Defendants to ensure that prisoners and parolees with disabilities are accessibly housed, that they are able to obtain and keep necessary assistive devices, and that they receive effective communication regarding accommodations.  Id. at 1-7, 27-28, 32, 34, 46-47.  The Remedial Plan also requires Defendants to include language in all contracts that requires subcontractors to comply with the ADA.  Id. at 46.

In addition, on December 22, 1999, the Court entered a permanent injunction in this action as to those Defendants who are responsible for conducting parole proceedings of the Board of Parole Hearings (BPH, formerly known as the Board of Prison Terms), following trial and findings that Defendants were in violation of the ADA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment.

2

The Findings of Fact and Conclusions of Law made in support of the injunction held that:

> Defendants cannot avoid ADA and Section 504 liability by delegating responsibility for their delivery of programs, services and activities, or for the facilities in which they provide these programs, to the CDC or any other entity. The implementing regulations of both the ADA and Section 504 prohibit covered entities from discriminating against individuals with disabilities "directly or through contractual, licensing, or other arrangements." The BPT is thus legally obliged to ensure non-discrimination wherever programs, services or activities are provided to Plaintiff class members. Additionally, the BPT cannot avoid liability for violations of the physical accessibility standards by holding its programs in locations under the control of other entities.

Findings of Fact and Conclusions of Law, December 22, 1999, at 90 (internal citations omitted).

The Court entered a Revised Permanent Injunction on February 11, 2002. The Revised Permanent Injunction requires Defendants to provide accommodations at all parole proceedings to prisoners and parolees with disabilities. Revised Permanent Injunction, February 11, 2002, ¶ 17. The subsequent Order Granting Motion to Enforce Revised Permanent Injunction issued on May 30, 2006, requires that Defendants develop and implement a plan to ensure that necessary accommodations are provided to class members without delay. Order Granting Motion to Enforce Revised Permanent Injunction, May 30, 2006, at 8-9.

Most recently, on September 11, 2007, in response to

3

Plaintiffs' motion to enforce the May, 2006 Order Granting Motion to Enforce Revised Permanent Injunction, this Court Ordered:

> Within thirty days of this order, Defendants shall report to Plaintiffs' counsel which housing units in Alameda, Sacramento and Los Angeles County Jail facilities are wheelchair accessible and how Defendants ensure that class members at those institutions who are designated DPW and DPO are housed in the accessible facilities and receive necessary accommodations and assistive devices in both their housing units and at their hearings. Within ninety days of this order, Defendants shall do the same with the remaining county jails. A necessary component of both reports is how Defendants track class members who are housed in county facilities due to parole holds.

Order Granting in Part Plaintiffs' Motion to Enforce the May 30, 2006 Order, ¶ 19.

As these orders make clear, Defendants have an obligation under the ADA, the Rehabilitation Act, and prior Orders of this Court to ensure that facilities and programs are accessible to class members while in prison, on parole and during the parole revocation and parole consideration process. That obligation cannot be avoided by contracting with county facilities to house CDCR prisoners and parolees. See 42 U.S.C. § 12182(b)(1)(A)(i-iii); 28 C.F.R. § 35.130(b)(1).

Defendants frequently house parolees, some of whom are Armstrong class members, in county jails throughout the state. Plaintiffs have submitted evidence showing that an average of 480 CDCR parolees are housed in the San Mateo County Jail on any given

4

day, and that over 1,000 parolees are housed in Alameda and Sacramento County Jails each day. Additionally, Defendants have 770 In Custody Drug Treatment Program (ICDTP) placements in county jails.

Defendants have statutory and contractual relationships with all fifty-eight California counties which allow them to exercise some degree of control over the policies and procedures of county jails housing class members. Defendants contract with Alameda and Sacramento Counties for the housing of parolees in their jails during and after the parolee's revocation hearings and for their full parole terms. The Alameda and Sacramento County contracts include language requiring those jails to comply with the ADA. Defendants also contract with nine counties to provide ICDTP placements for parolees.

Defendants have statutory authority to house parolees at county jails. California Penal Code § 4016.5 mandates that counties receive compensation for housing parolees and providing support for revocation proceedings. The CDCR's Daily Jail Rate Manual sets out a detailed formula for compensating local jails for housing parolees and for accommodating parole revocation proceedings. The Manual also permits Defendants to withhold compensation to the jails based on failure to meet the minimum standards for local detention facilities. The minimum standards for operation of local detention facilities require that county

jail facilities ensure that prisoners and parolees with disabilities receive all necessary accommodations, including wheelchair accessible housing. See Cal. Code Regs. tit. 15, §§ 1000 et seq.; Cal. Code Regs. tit. 24 Part 1, § 13-102(c).

## DISCUSSION

Defendants do not dispute that significant numbers of parolees are being held in county jails. They contend, however, that the CDCR is not responsible for providing reasonable accommodations to those parolees or, in the alternative, that Plaintiffs have not presented sufficient evidence of ADA violations in the facilities.

I.  Responsibility for Providing Reasonable Accommodations in County Jails

Defendants argue that the county jails, not the CDCR, are responsible for providing reasonable accommodations to parolees held in county jail facilities. In reliance on this contention, Defendants have not taken sufficient steps to address the problems class members encounter in county jails. For example, Defendants have failed to develop adequate policies and procedures to ensure that wheelchair-using class members designated as DPW and DPO housed in the county facilities are accessibly housed and receive needed accommodations as required by the Court's September 11, 2007 Order.

In addition, the tracking system Defendants developed to identify class members with mobility and other impairments in county jails is too limited and allows for delays. Finally,

6

Defendants have advanced an inadequate grievance policy with a very limited scope of application. The policy, which Defendants maintain will only apply to Alameda and Sacramento Counties, does not operate to provide timely disability accommodations to class members.

Federal regulations implementing Title II of the ADA provide that "a public entity, in providing any aid, benefit or service, may not, directly or through contractual, licensing or other arrangements" discriminate against individuals with disabilities. 28 C.F.R. § 35.130(b)(1). Regulations implementing § 504 of the Rehabilitation Act contain a similar prohibition. Nonetheless, Defendants argue that because the prohibition on contracting away compliance obligations is not in the text of Title II or § 504, the Department of Justice exceeded its authority in promulgating the regulations and they are invalid.

Defendants' argument is unpersuasive. The ADA and the Rehabilitation Act expressly authorize agencies to promulgate implementing regulations. See 42 U.S.C. § 12134(a), 29 U.S.C. § 794(a). The Ninth Circuit has held that these regulations are entitled to deference "unless they are arbitrary, capricious or manifestly contrary to the statute".[1] McGary v. City of Portland,

---

[1] Pursuant to Local Rule 7-3(d), Defendants have cited Lonberg v. City of Riverside. ___ F.3d ___, No. 06-55781, 2009 WL 1813526 (9th Cir. June 26, 2009). In that case, the Ninth Circuit held that a regulation promulgated under the ADA was not privately enforceable. The regulation, 28 C.F.R. § 35.150(d), requires public entities to create a transition plan to meet the ADA's

7

386 F.3d 1259, 1269 n. 6 (9th Cir. 2004)(internal quotations omitted).

Moreover, in the findings supporting the permanent injunction entered on December 22, 1999, this Court determined that the Title II and § 504 regulations are applicable in this case and prevent Defendants from contracting away or delegating responsibility for ADA compliance to other entities. Findings of Fact and Conclusions of Law, December 22, 1999, at 90 (internal citations omitted). Defendants appealed the ruling to the Ninth Circuit, which upheld the relevant portions of the injunction. <u>Armstrong v. Davis</u>, 275 F.3d 849, 873-74 (9th Cir. 2001). Therefore, under the law of the case doctrine, the Title II and § 504 regulations are applicable and Defendants cannot shift their responsibility to provide ADA compliant facilities to county jail administrators. <u>See</u> <u>United States v. Thrasher</u>, 483 F.3d 977, 981 (9th Cir. 2007)(law of the case doctrine precludes a court from reconsidering an issue previously decided by the same court or a higher court in the same case).

---

accessibility requirements. The statutory text of the ADA prohibits discrimination on the basis of disability, but does not place any affirmative obligations on public entities to develop compliance plans. <u>Id.</u> at *4. The court reasoned that § 35.150(d) swept more broadly than the statutorily provided private right of action and was therefore not privately enforceable. The regulation in question in this case, 28 C.F.R. § 35.130(b)(1), is distinguishable. Consistent with Title II of the ADA, § 35.130(b)(1) enumerates specific ways that public entities are prohibited from discriminating on the basis of disability. It does not place additional burdens or obligations on public entities. Therefore, the Ninth Circuit's ruling that § 35.150 is not privately enforceable is not applicable in this case.

8

Finally, Defendants argue that, even if the regulations are valid, they apply only to contracts for programs and services, and do not cover contracts for incarceration. It is well settled, however, that the ADA and § 504 apply to incarceration itself. See Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 212-13 (1998)(holding that the ADA is applicable to state prisons); Armstrong v. Davis, 124 F.3d 1019, 1025 (1997)(holding that the ADA and § 504 of the Rehabilitation Act apply to state prisons).

II.  Evidence of ADA and § 504 Violations

Defendants argue that even if regulations prevent them from shifting responsibility for ADA compliance to county jails, Plaintiffs have not adduced sufficient evidence demonstrating that Armstrong class members have been denied reasonable accommodations while housed in county jails. Contrary to Defendants' assertion, Plaintiffs have produced sufficient evidence of ongoing violations.

Defendants note that much of the evidence Plaintiffs proffer is hearsay. Nonetheless, there is sufficient non-hearsay evidence to establish violations of the ADA and § 504. One of Plaintiffs' attorneys submitted an affidavit describing her observations of showers and bathrooms in county jails, which are not accessible to disabled individuals. Mania Dec. ¶ 28, Ex. DD. Another attorney noted that he interviewed several parolees with mobility impairments and observed that none was provided with a cane or wheelchair, despite their obvious difficulty walking.

9

Galvan Dec., ¶ 8. Defendants do not dispute these facts.

In addition, documents produced by Defendants in discovery show that class members are denied reasonable accommodations. For example, a document outlining the eligibility criteria for the Orange County ICDTP provides that individuals in wheelchairs and insulin-dependent diabetics are excluded from the program. Mania Dec. ¶ 28, Ex. BB. Another document, a memo sent by the CDCR in response to an inquiry from Plaintiffs' counsel, admits that there was a delay of several days in transporting a paraplegic parolee from a county jail to his hearing because the CDCR could not initially locate an accessible vehicle to transport him. Maznavi Dec. ¶ 20, Ex. K.

Defendants also challenge the adequacy of the evidence presented by Plaintiffs because many of the ADA violations cited relate to individuals who are not necessarily Armstrong class members. However, even if the specific examples cited do not involve class members, they support the inference that county jails do not provide reasonable accommodations for prisoners with disabilities who are class members. See Fed. R. Evid. 401. Therefore, Plaintiffs have presented sufficient evidence to demonstrate ongoing violations of the ADA at county jails.

In order to remedy the ongoing harm to Armstrong class members and ensure that Defendants meet their obligations under the ADA and Rehabilitation Act and prior Court Orders, the Court orders the

10

following relief, which it finds is narrowly drawn, extends no further than necessary to correct the violation of federal rights, and is the least intrusive means necessary to correct the violation of the federal rights:

Within thirty days of this Order, Defendants shall provide written notification and instruction to all county jail facilities of their duty to comply with the ADA in housing <u>Armstrong</u> class members and that Defendants will enforce these obligations.  A copy shall be provided to Plaintiffs' counsel.

Within forty-five days of this Order, Defendants shall develop a plan for ensuring timely and appropriate accommodations for <u>Armstrong</u> class members in county jails that includes, at a minimum, the following elements:

1. Within one business day of the arrival of a prisoner at a county jail facility pursuant to a parole hold, Defendants' agent (whether Parole Agent or Board Revocation Representative or other agent) shall check the Disability and Effective Communication System (DECS), interview the parolee, and review any available 1073 forms and source documents to determine whether the prisoner has a need for accommodations in housing, programming, or parole proceedings.  If so, within two business days of the parolee's arrival, Defendants' agent must notify a designated staff member at the county jail

11

|  |  |
|---|---|
|  | facility of the class member's need for accommodations in housing and programming. |
| 2. | Class members housed in county jails must have ready access to disability grievance forms, either the CDCR's Reasonable Modification or Accommodation Request form (CDC 1824) or a separate county jail grievance form. Defendants shall collect grievance forms from class members no less than twice a week, and shall provide copies to a designated person at the county jail. Defendants shall respond to all grievances within a week of receipt and ensure that necessary and reasonable accommodations are provided.  On a monthly basis, Defendants shall provide Plaintiffs' counsel with copies of all grievances received from class members in county jails and the responses thereto. |
| 3. | If Defendants contend that the process outlined in Paragraph 2 is unnecessary because a jail has an adequate disability grievance process, Defendants must establish that the jail's disability grievance policy contains the following elements: |
| a. | Is readily available to all class members housed in county jail facilities; |
| b. | Has a response deadline of no later than one week from receipt by the designated jail staff member; |

12

     c.    Contains a provision for expediting a response if the appeal alleges a condition which is a threat to the parolee's health or safety, or is necessary for participation or effective communication in a CDCR parole revocation proceeding;

     d.    Includes a provision for review of the parolee's request by medical staff, if necessary;

     e.    Provides a right to appeal denials; and

     f.    Requires that a copy of each and every grievance and response be provided to Defendants at the same time it is provided to the <u>Armstrong</u> class member.

4. If, either through a grievance or otherwise, Defendants become aware of a class member who is housed in a county jail and not receiving needed accommodations, Defendants shall immediately take steps with county jail staff to ensure that needed accommodations are promptly provided or transfer the class member to a facility that is able to provide accommodations.

5. If Defendants become aware, either through a grievance or otherwise, of a pattern of denials of disability accommodations, such as improper housing and/or denial of assistive devices to parolees at a particular county jail facility, or grievance process delays or obstacles, they shall take the following steps:

13

     a.    Within five days of becoming aware of the pattern, Defendants shall notify the county jail facility administrator in writing of the issue, providing specific dates and incidents, and demanding that the conduct cease and desist;

     b.    At the same time, provide a copy of this notification to Plaintiffs' counsel; and

     c.    Assign a staff person to investigate the county jail facility and report back to Defendants within thirty days, with a copy to Plaintiffs' counsel, regarding the pattern and steps to be taken to remedy it, including monetary fines and penalties for continued violations.

Within sixty days of this Order, Defendants shall issue the plan in final form and disseminate it to all fifty-eight county jail facilities.

Defendants shall also immediately revise their January 10, 2008 Memorandum, "Tracking Procedure for Parolees Pending Revocation and Housed In County Jails," to shorten the time in which the Board Revocation Representative identifies an <u>Armstrong</u> class member and provides needed accommodations to be generally consistent with this Order.

Defendants must present drafts of all plans, policies, and procedures developed pursuant to this Order to Plaintiffs' counsel at least fifteen days in advance of the deadlines.  Both parties

14

must make all possible efforts to resolve any disagreements as to their adequacy.  Defendants shall ensure that staff with sufficient authority to amend and approve procedures attend all meet and confer sessions.  In the event that disagreements cannot be resolved, Defendants shall implement the procedures as written on the date ordered and Plaintiffs' counsel shall file objections with the Court.  The Court will rule on the objections and issue orders amending procedures as necessary.

IT IS SO ORDERED.

Dated: 9/16/2009

CLAUDIA WILKEN
United States District Judge

15