1   KAMALA D. HARRIS
    Attorney General of California
2   JONATHAN L. WOLFF
    Senior Assistant Attorney General
3   JAY C. RUSSELL
    Supervising Deputy Attorney General
4   DANIELLE F. O'BANNON
    Deputy Attorney General
5   SCOTT J. FEUDALE
    Deputy Attorney General
6   State Bar No. 242671
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA  94102-7004
     Telephone:  (415) 703-5871
8    Fax:  (415) 703-5843
     E-mail:  Scott.Feudale@doj.ca.gov
9   *Attorneys for Defendants*

10                    IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                         OAKLAND DIVISION

13

14

15  **JOHN ARMSTRONG, et al.,**          | Case No. C 94 2307 CW

16                         Plaintiffs,   | **DEFENDANTS' OPPOSITION TO
                                          | PLAINTIFFS' MOTION TO COMPEL
17          v.                            | COMPENSATION**

18  **EDMUND G. BROWN JR. et. al.,**

19                         Defendants.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Statement of the Case ............................................................................................................ 2

Argument ............................................................................................................................... 3

I.     Plaintiffs' annual rate increases are substantially higher than annual rate
increases charged by other Bay Area firms practicing similar litigation. ............... 3

        A.     Plaintiffs are only entitled to a reasonable hourly rate increase.................. 3

        B.     Plaintiffs' counsel seek unreasonable hourly rate increases for 2010......... 7

Conclusion ........................................................................................................................... 12

i

Defs.' Opp'n Pls.' Mot. Compel Compensation (C 94 2307 CW)

# TABLE OF AUTHORITIES

<u>Page</u>

## CASES

*Blum v. Stenson*
465 U.S. 886 (1984) ............................................................................................ 4, 10, 12

*Camacho v. Bridgeport Fin., Inc.*
523 F.3d 973 (9th Cir. 2008) ......................................................................................... 4

*Citizens For Better Forestry v. USDA*
No. 08-1927 CW, 2010 WL 3222183 (N.D. Cal. Aug. 13, 2010) ............................ 5

*Craigslist, Inc. v. Mesiab*
No. 08-5064 CW (MEJ), 2010 WL 5300883 (N.D. Cal. Nov. 15, 2010) ............................ 5, 6

*Craigslist v. Mesiab*
No. 08-5064 CW, 2010 WL 5300881 (N.D. Cal. Dec. 20, 2010) ............................ 6

*Doran v. Corte Madera Inn Best Western*
360 F. Supp. 2d 1057 (N.D. Cal. 2005) ............................................................. 4

*Fox v. Cohen Ventures, LLC*
No. 08-81052-CIV, 2009 WL 1393348 (S.D. Fla. May 15, 2009) ............................ 7

*Goray v. Unifund CCR Partners, Inc.*
No. 06-00214 HG-LEK, 2008 WL 240551 (D. Hawai'i Jun. 13, 2008) ............................ 6, 7

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ........................................................................................... 3, 4

*Horne v. Flores*
129 S. Ct. 2579 (2009) ...................................................................................... 5

*Jackson v. Los Lunas Ctr.*
489 F. Supp. 2d 1267 (D.N.M. 2007) ......................................................................... 3

*Laffey v. Northwest Airlines, Inc.*
572 F. Supp. 354 (D.D.C. 1983)

*Laffey v. Northwest Airlines, Inc.*
746 F.2d 4 (D.C. Cir. 1984) ................................................................................. 6

*Moreno v. City of Sacramento*
534 F.3d 1106 (9th Cir. 2008) .......................................................................... 4, 5

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pennsylvania v. Delaware Valley Citizens' Counsel For Clean Air*
    478 U.S. 546 (1986) ................................................................................................................ 4

*Perdue v. Kenny A.*
    130 S. Ct. 1662 (2010) ......................................................................................................... 4, 5

*Prison Legal News v. Schwarzenegger*
    608 F.3d 446 (9th Cir. 2010) .......................................................................................... 4, 10

*United Steel Workers Of Am. v. Phelps Dodge Corp.*
    896 F.2d 403 (9th Cir. 1990) ................................................................................................. 4

**STATUTES**

United States Code, Title 42
    § 12205 ....................................................................................................................................... 3

**OTHER AUTHORITIES**

Americans with Disabilities Act (ADA) ............................................................................... 2, 3, 7

Fair Debt Collection Practices Act ................................................................................................ 6

Rehabilitation Act
    § 504 ........................................................................................................................................... 2

Defs.' Opp'n Pls.' Mot. Compel Compensation (C 94 2307 CW)

**INTRODUCTION**

These are tough economic times.  Both the nation and the State of California have struggled through this recession.  California's unemployment rate hovers above twelve percent, the State's educational system has labored under heavy budget cuts, Medicaid coverage has decreased, and state employees have been forced to accept substantial pay cuts.  (*See* Decl. Feudale, Exs. A & B.) In January, the Governor unveiled his budget plan designed to balance California's projected twenty-five billion dollar shortfall for the 2011-2012 fiscal year.  (*Id.*, Ex. B.)  The budget plan includes significant cuts in State spending, including further pay cuts for state employees, and decreases in funding for the State's Medicaid, welfare, education, and disability-assistive services (*Id.*)

But Plaintiffs' counsel has prospered.  Indeed, in November 2010, the California Inspector General issued a report auditing the legal costs associated with the twelve class actions pending against the California Department of Corrections and Rehabilitation (CDCR).  The report indicated that between July 1, 1997 and June 30, 2009, the State paid over $66 million in attorneys' fees to Plaintiffs' counsel for their involvement in twelve class-actions filed against CDCR.[1]  (*Id.*, Ex. C. pp. 10 n.10, 16.)  In *Armstrong* alone, Plaintiffs' received over $22 million in attorneys' fees between 1997 and 2009.  (*Id.*, Ex. C. p. 16.)

Notwithstanding these substantial sums, Plaintiffs' counsel now demand firm-wide hourly rate increases ranging from eight percent to twenty-nine percent over rates negotiated in 2008.  The rate increases for individual attorneys range from six percent to thirty-nine percent.  But because these hourly rate increases are inconsistent with the marginal rate increases sought by both the national and local legal communities within the same two-year period, Plaintiffs' motion to compel must be denied.  Alternatively, should the Court find that some rate increase is warranted, Defendants request that the Court set Plaintiffs' counsel's firm-wide rate increases at

---

[1] The Prison Law Office and Rosen, Bien, and Galvan, two of the firms seeking attorneys' fees here, serve as lead counsel on all of the twelve prison class actions referenced in the Inspector General's report.

1

1    no greater than a total of 5.2 percent over 2008 rates, which is consistent with national and local

2    averages.

3                                    **STATEMENT OF THE CASE**

4         In June 1994, Plaintiffs—a class comprised of all present and future CDCR inmates and

5    parolees with disabilities—filed a complaint against Defendants, alleging that CDCR

6    discriminated against the Plaintiff-class in violation of the Americans with Disabilities Act (ADA)

7    and § 504 of the Rehabilitation Act by failing to accommodate disabled inmates in providing

8    programs, services, and activities. (Docket No. 61.) On September 20, 1996, the Court denied

9    Defendants' motion for summary judgment, concluding that Defendants had violated Plaintiffs'

10   rights.[2] (Docket No. 157.) Under the terms of a stipulated agreement governing procedures for

11   determining liability, the Court then issued a remedial order and injunction requiring Defendants

12   to develop a plan for accommodating inmates and parolees with disabilities. (Docket No. 158.)

13   The injunction further authorized Plaintiffs to monitor Defendants' compliance with their

14   remedial plan by accessing documents, receiving reports, touring institutions, and interviewing or

15   deposing inmates and staff. (*Id.*)

16        In March 1997, the Court signed a stipulated order governing the procedure for the periodic

17   collection of attorneys' fees and costs associated with Plaintiffs' monitoring. (Docket No. 189.)

18   Under the terms of the order, Plaintiffs must submit quarterly statements to Defendants' counsel

19   itemizing the time spent on particular tasks. (Stipulation & Order Periodic Collection Attys' Fees

20   & Costs 1-2.) The first quarterly statement is to identify the billing rates Plaintiffs' counsel seeks

21   for that year. (*Id.* 2.) Defendants then have thirty days to respond with objections and the bases

22   therefore. (*Id.*) If there are any disputed billing items, the parties are required to meet and confer

23   within thirty days to resolve any disputes. (*Id.*) If any fees disputes remain, Plaintiffs may file a

24   yearly motion to compel payment no later than sixty days after the parties have met and conferred

25   regarding the fourth quarter billing statement. (*Id.*) If, however, Defendants oppose Plaintiffs'

26   billing rates, Plaintiffs must file a motion to compel on the issue following their first quarterly

27   ────────────
         [2] The claims against the Board of Parole Hearings' (BPH) Executive Director were
28   bifurcated via a stipulation and order dated July 19, 1996. (Docket No. 148.)

                                              2

1    statement. (*Id.*)

2          Following the first quarter of 2009, as part of the meet and confer process, Plaintiffs'

3    counsel agreed to accept their 2008 rates for work performed in 2009. (Decl. Blevins Supp.

4    Defs.' Opp'n Pls.' Mot. Compel Compensation (Decl. Blevins) ¶ 5.) Following the end of the

5    first quarter of 2010, the parties again met and conferred over Plaintiffs' fees and rates. (*Id.* ¶ 6.)

6    After negotiations, Defendants agreed to pay Plaintiffs' fees and costs for that quarter, but refused

7    to pay Plaintiffs' unreasonable rate increases. (*Id.*) Since that meeting, Defendants have

8    consistently objected to Plaintiffs' proposed rate increases following the submission of Plaintiffs'

9    quarterly billing statements. (*Id.* at ¶ 7.) On August 20, 2010, Plaintiffs filed a motion to compel

10   compensation at their increased hourly rates. (Docket No. 1755.) On October 4, 2010, the Court

11   granted the parties' stipulation to attempt to mediate the rate increase issue and continued the

12   hearing on Plaintiffs' motion. (Docket No. 1783.) The mediation session was held on December

13   14, 2010, but the matter was not resolved. (Decl. O'Bannon Supp. Defs.' Mot. Change Time ¶

14   3.) Soon thereafter, Defendants sought and were granted a sixty-day extension of time to file

15   their opposition. (*See* Docket No. 1817.) Defendants now file their opposition to Plaintiffs'

16   motion to compel.

17                                          **ARGUMENT**

18   **I.    PLAINTIFFS' ANNUAL RATE INCREASES ARE SUBSTANTIALLY HIGHER THAN ANNUAL**
          **RATE INCREASES CHARGED BY OTHER BAY AREA FIRMS PRACTICING SIMILAR**
19        **LITIGATION.**

20        **A.    Plaintiffs Are Only Entitled to a Reasonable Hourly Rate Increase.**

21          Under the "American Rule," the prevailing party is ordinarily not entitled to collect

22   attorneys' fees from the losing party unless there is express statutory authorization to the contrary.

23   *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The present action falls within the exception to

24   the general rule. The ADA contains a fee-shifting provision permitting the prevailing party to

25   collect "reasonable attorney's fee[s] . . . and costs . . . ." 42 U.S.C. § 12205. Post-judgment

26   monitoring of a court's orders is among the types of services recognized as compensable under

27   the ADA's fee-shifting statute. *See Jackson v. Los Lunas Ctr.*, 489 F. Supp. 2d 1267, 1270-72

28   (D.N.M. 2007).

                                              3

1    The "reasonableness" of an attorneys' fee award is determined by using the "loadstar"

2    method—multiplying the number of hours reasonably expended on the litigation by a reasonable

3    hourly rate. *Hensley*, 461 U.S. at 433; *see also Doran v. Corte Madera Inn Best Western*, 360 F.

4    Supp. 2d 1057, 1060 (N.D. Cal. 2005) (applying the loadstar method to determine the

5    reasonableness of fees sought under the ADA). The fee applicant bears the burden of establishing

6    that his or her requested rates are in line with the "prevailing [market rates] in the [relevant]

7    community for similar services by lawyers of reasonably comparable skill, experience, and

8    reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). This may be established in a

9    variety of ways, including, "affidavits by the plaintiffs' attorney and other attorneys regarding the

10   prevailing fees in the community, and rate determinations in other cases, particularly those setting

11   a rate for the plaintiffs' attorney . . . ." *United Steel Workers Of Am. v. Phelps Dodge Corp.*, 896

12   F.2d 403, 407 (9th Cir. 1990).

13   The Ninth Circuit has defined that relevant community as "the forum in which the district

14   court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Here, the

15   Northern District of California is the appropriate forum. *See, e.g., Prison Legal News v.*

16   *Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding the Northern District of California to

17   be the appropriate forum for determining reasonable attorneys' fees in a case arising out of

18   Oakland, California). Thus, when making a reasonableness determination, a court must award a

19   fee that "reflect[s] the economic conditions in the district . . . ." *Moreno v. City of Sacramento*,

20   534 F.3d 1106, 1115 (9th Cir. 2008).

21   A key component to a reasonableness determination is the amount requested. Both the

22   Supreme Court and the Ninth Circuit have repeatedly admonished district courts to remember that

23   the purpose of fee-shifting statutes is not to enrich members of the plaintiff's bar, but to enable

24   private parties to secure legal representation to redress federal rights violations. *Perdue v. Kenny*

25   *A.*, 130 S. Ct. 1662, 1676 (2010) ("Section 1988 serves an important public purpose by making it

26   possible for persons without means to bring suit to vindicate their rights. But unjust

27   enhancements that serve only to enrich attorneys are not consistent with the statute's aim.");

28   *Pennsylvania v. Delaware Valley Citizens' Counsel For Clean Air*, 478 U.S. 546, 565 (1986)

4

1    ("[Fee shifting] statues were not designed as a forum for economic relief to improve the financial

2    lot of attorneys . . . ."); *Moreno*, 534 F.3d at 1111 ("In making the [fee] award, the district court

3    must strike a balance between granting sufficient fees to attract qualified counsel to civil rights

4    cases . . . and avoiding a windfall to counsel . . . ."). Indeed, in cases like this one, where

5    attorneys' fees are borne, not by individual defendants, but by state taxpayers, federal courts must

6    keep a watchful eye on unreasonable fee requests. *See Purdue*, 130 S. Ct. at 1676-77 ("In many

7    cases, attorney's fees . . . . [A]re paid in effect by state and local taxpayers, and because state and

8    local governments have limited budgets, money that is used to pay attorney's fees is money that

9    cannot be used for programs that provide vital public services."); *cf. Horne v. Flores*, 129 S. Ct.

10   2579, 2594 (2009) ("State and local governments have limited funds. When a federal court

11   orders that money be appropriated for one program, the effect is often to take funds away from

12   other important programs.").

13         Adhering to these admonitions, federal courts, including this Court, have scrutinized with

14   particularity attorneys' proposed rate increases, disallowing those that are excessive. For

15   example, in *Citizens For Better Forestry v. USDA*, No. 08-1927 CW, 2010 WL 3222183, at *1

16   (N.D. Cal. Aug. 13, 2010), the plaintiffs sought attorneys' fees under the Equal Access to Justice

17   and Endangered Species Acts after successfully challenging the statutory validity of a rule

18   promulgated by the United States Department of Agriculture (USDA). In their fees application,

19   the plaintiffs sought a $25 hourly increase from their attorneys' 2008 hourly rates for work

20   performed in 2009. *Id.* at *5. The USDA opposed the application, arguing that a flat rate should

21   apply for work performed in 2008 and 2009. *Id.* This Court agreed and refused to award the $25

22   increase, noting that between 2008 and 2009 "the consumer price index . . . which courts employ

23   to calculate the cost of living increases for hourly rates declined 0.4 percent."[3]  *Id.*

24         Similarly, in *Craigslist, Inc. v. Mesiab*, No. 08-5064 CW (MEJ), 2010 WL 5300883, at *1

25   (N.D. Cal. Nov. 15, 2010), Craigslist sought damages and attorneys' fees after securing a default

26   judgment in a copyright dispute. In its fee application, Craigslist sought to recover for work

27   ───────────────
      [3] The consumer price index did not significantly change between 2009 and 2010,
28   increasing by 1.6 percent. *See* www.bls.gov/cpi/cpid10av.pdf.

                                            5

1    performed between 2008 and 2010 at different rates which increased incrementally each year. *Id.*

2    at \*16.  Craigslist's proposed rate increases ranged from a $5 per hour rate increase for a

3    paralegal to a $120 per hour rate increase for a fifth year associate. *Id.*  Magistrate Judge James,

4    relying on the 2009-2010 *Laffey* Matrix, refused to award yearly rate increases, noting that there

5    was no change in *Laffey* rates between 2008-2009 and 2009-2010.[4] *Id.* at 17 n.9.  Instead, Judge

6    James awarded rates based on the 2009-2010 *Laffey* Matrix rates for attorneys with the same

7    amount of experience, adjusting for the cost of living differences between the District of

8    Columbia and San Francisco. *Id.* at 17.  This Court subsequently adopted Judge James's Report

9    and Recommendation in full, finding it to be "correct, well-reasoned, and thorough." *Craigslist v.*

10   *Mesiab*, No. 08-5064 CW, 2010 WL 5300881, at \*1 (N.D. Cal. Dec. 20, 2010).

11          Other courts similarly denied proposed rate increases incongruent with economic realities.

12   For example, in *Goray v. Unifund CCR Partners, Inc.*, No. 06-00214 HG-LEK, 2008 WL 240551,

13   at \*5 (D. Hawai'i Jun. 13, 2008), *adopted in full by Goray v. Unifund CCR Partners, Inc.*, No.

14   06-00214 HG-LEK, 2008 WL 2714369, at \*1 (D. Hawai'i Jul. 11, 2008), the plaintiff sought

15   nearly $83,000 in attorneys' fees and costs after securing partial summary judgment in an action

16   brought under the Fair Debt Collection Practices Act. *Goray,* 2008 WL 240551, at \*1.  In her

17   fee's motion, the plaintiff argued that her counsel's requested rate of $300 per hour was

18   consistent with the current market rate for attorneys with similar experience and noted that the

19   court had found her attorney's hourly rate of $250 per hour reasonable four and a half years

20   earlier. *Id.* at \*5.  The court denied the plaintiff's proposed rate increase, noting that while some

21   increase was warranted because of inflation and the attorney's additional years of experience, a

22

23

_____

24   [4] The *Laffey* Matrix is a spreadsheet based on hourly billing rates allowed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*,746 F.2d 4 (D.C. Cir. 1984).  The Matrix is regularly updated and adjusted for inflation by the Civil Division of the United States Attorney's Office for the District of Columbia and is intended to be used in fee shifting cases. *See* www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html. *Laffey* Matrix rates for June 1, 2010 through May 31, 2011 increased only marginally ranging from $5 per hour increases for paralegals and lower level associates to $10 per hour increases for attorneys with eleven to twenty plus years of experience. *See id.*

25

26

27

28

6

1    twenty percent fee hike was excessive. *Id.* The judge ultimately reduced the attorney's hourly

2    rate to $280 per hour, a twelve percent increase over four years. *Id.*

3            Similarly, in *Fox v. Cohen Ventures, LLC*, No. 08-81052-CIV, 2009 WL 1393348, at *1

4    (S.D. Fla. May 15, 2009), the plaintiff sought $9,500 in attorneys' fees and costs after

5    successfully negotiating a consent judgment for ADA violations. As part of his fees application,

6    the plaintiff sought compensation for two attorneys who worked on his case at rates of $375 and

7    $325 per hour respectively. *Id.* at *3. But because these proposed rates were respectively fifteen

8    percent and ten percent higher than the hourly rate the court awarded in a different case only five

9    months earlier, the court denied the proposed rate increases finding them to be "excessive." *Id.*

10           Collectively, these cases show that while an attorney may be entitled to a moderate rate

11   increase during the course of litigation because of inflation and the attorney's additional years of

12   experience, the increase must be reasonable and comparable with rate increases charged for

13   similar work in the relevant legal community. Here, Plaintiffs' counsel's rate increases are not

14   moderate. (*See* Decl. O'Bannon Supp. Defs.' Opp'n Pls.' Mot. Compel Compensation (Decl.

15   O'Bannon), Exs. A-D.) For example, Frank Busch and Tracey Berger of Bingham McCutchen

16   seek to increase their rates by thirty-nine and thirty-five percent respectively in two years, Ernest

17   Galvan of Rosen, Bien, & Galvan seeks an increased rate of twenty-three percent in two years,

18   and Sara Norman of the Prison Law Office—a non-profit organization—seeks to increase her rate

19   by twenty-two percent in two years. (*See* Decl. O'Bannon Supp. Defs.' Opp'n Pls.' Mot. Compel

20   Compensation (Decl. O'Bannon), Exs. A-D.) These rate increases were not limited to attorneys.

21   Indeed, nearly all paralegals at Rosen, Bien & Galvan have sought increases of twenty percent or

22   greater in two years, including Karen Stilber, who has sought to increase her rates by fifty-six

23   percent. (*See id.*, Ex C.) As demonstrated more fully below, these rate increases are excessive

24   and not in line with the rate increases charged by other Bay Area firms for similar work in the

25   past two years.

26   **B.    Plaintiffs' Counsel Seek Unreasonable Hourly Rate Increases For 2010.**

27           In their fees motion, Plaintiffs' counsel argue that their hourly rate increases are reasonable

28   because hourly rates for Bay Area law firms have continue to rise, notwithstanding the difficult

                                                7

1    economic climate. (Pls.' Mot. Compel Compensation 17.)  Plaintiffs' counsel further contends

2    that their proposed "modest" hourly rate increases accurately reflect their attorneys' increasing

3    capabilities and are "within the norms of the market." (*Id.* at 18.)  But, as demonstrated below,

4    counsel's proposed rate increases are anything but "modest" or "normal."  Indeed, neither

5    national rate surveys nor Plaintiffs' counsel's own evidence support their requested fee hikes.

6          In preparation for this opposition, Defendants' counsel reviewed Plaintiffs' counsels'

7    billing records for 2008, 2009, and 2010.  (Decl. O'Bannon Supp. Defs.' Opp'n Pls.' Mot.

8    Compel Compensation (Decl. O'Bannon) ¶ 2.)  Defendants' counsel then prepared a spreadsheet

9    listing the 2008, 2009, and 2010 billing rates for each timekeeper (e.g., partners, associates,

10   litigation assistants, etc.) who worked on *Armstrong.* (*Id.* ¶ 3.)  Defendants' counsel then

11   calculated the rate increase for each 2009 timekeeper by subtracting each timekeepers' 2008 rate

12   from their 2009 rate and dividing the difference by the timekeepers' 2008 rate. (*Id.* ¶ 4.)

13   Defendants' counsel repeated this procedure using 2009 and 2010 rates to obtain each

14   timekeepers' 2010 rate increase. (*Id.*)  Defendants' counsel then calculated the 2009 average

15   firm-wide hourly rate increase by adding the hourly rate increase for each *Armstrong* timekeeper

16   for 2009 and dividing that sum by the total number of *Armstrong* timekeepers in the firm. (*Id.*)

17   The 2010 firm-wide average billing increases were calculated in the same manner except that

18   2010 rate increases were used. (*Id.*)  Defendants' counsel then added the average firm-wide

19   hourly rate increase for 2009 and 2010 for each firm to calculate the total average firm-wide rate

20   increases sought by each firm. (*Id.* ¶ 5.)

21          The results are telling.  Bingham McCutchen seeks a twenty-nine percent firm-wide rate

22   increase. (*Id.* ¶ 6, Ex. B.)  Rosen, Bien, & Galvan seek to raise their firm-wide hourly rates by

23   nearly twenty percent. (*Id.*, Ex. A.)  And the Prison Law Office and the Disability Rights,

24   Education & Defense Fund—both non-profit organizations—seek nearly twelve and eight percent

25   firm-wide hourly rate increases respectively. (*Id.*, Exs. C & D.)

26          These proposed rate increases are incongruent with rate increases in both the national and

27   local legal communities over the past two years.  Indeed, in December 2009, the National Law

28   Journal published an article entitled "Reality Dawns On Hourly Rates."  This article, which

8

1   summarizes the results of a 2009 nationwide billing rate survey of the nation's largest law firms,

2   shows that law firms increased their average firm-wide billing rate by 2.5 percent in 2009. (Decl.

3   Greenfield Supp. Defs. Opp'n Pls.' Mot. Compel Compensation (Decl. Greenfield) ¶16, Ex. 3.)

4       In December 2009, The Daily Journal published an article entitled "Firms to Hike Billing

5   Rates in 2010." (See Decl. Feudale, Ex. D.) A month later, Law.com published a similar article,

6   "Despite Down Economy, Law Firms Say They'll Raise Billing Rates." (Decl. Feudale, Ex. E.)

7   The articles, which relied upon a 2009 billing rate survey published by Altman Weil, Inc.,

8   reported that law firms planned to raise their rates on average 3.2 percent in 2010. (*Id.*, Exs. D &

9   E.) A review of a 2009 Altman Weil survey confirms this. According to the survey—which was

10  based on responses by 288 U.S. law firms concerning their projected billing rates in 2010—a 3.2

11  percent hourly billing rate increase was projected for 2010. (Decl. Feudale, Ex. F.) Indeed, of the

12  firms interviewed, only 13.1 percent intended to institute across-the-board rate increases, and of

13  those firms, the average rate increase change was 4.1 percent. (*Id.*) But a recent National Law

14  Journal article titled "For Firms 2010 Was Full of Billing Blues" shows that these firms were

15  overly optimistic. According to the article, which was based on a recent National Law Journal

16  survey on billing rates, the average firm-wide billing rate in 2010 increased only 2.7 percent.

17  (Decl. Greenfield ¶16, Ex. 2.) The article further quotes an Altman Weil consultant and two

18  managing partners who estimate these modest rate increases will continue for the foreseeable

19  future, limiting firms' abilities to seek firm-wide rate increases greater than five percent. (*See*

20  Decl. Greenfield, Ex. 2.)

21      Bay Area law firms are following this trend, as Plaintiffs' own evidence demonstrates. The

22  declarations of attorneys Thomas Loran and Michael Bien describe their overall firm-wide hourly

23  rate increases for 2009 and 2010 as "slight" and "modest." (*See* Decl. Loran Supp. Pls.' Mot.

24  Compel Compensation ¶ 10; Decl. Bien Supp. Pl.'s Mot. Compel Compensation ¶ 96). Attorney

25  Edward Sangster relies on the same news articles referenced above to support his contention that

26  Bay Area law firms' billing rates have continued to rise since 2008. (*See* Decl. Sangster Supp.

27  Pls.' Mot. Compel Compensation ¶ 8; *see also* Decl. Feudale, Ex. G (articles referenced in

28  Sangster's declaration).) And notably absent from any of the remaining declarations—in which

9

1    partners testified that their Bay Area law firm's rates have increased in each of the last two

2    years—are the actual firm-wide rate increase percentages that these declarant's firms have

3    charged their clients.[5]  (*See* Decl. Streeter Supp. Pls.' Mot. Compel Compensation ¶ 7; Decl.

4    Hotlz Supp. Pls.' Mot. Compel Compensation ¶ 20; Decl. Pearl Supp. Pls.' Mot. Compel

5    Compensation ¶ 10; Decl. Steuer Supp. Pls.' Mot. Compel Compensation ¶ 6; Decl. Morando

6    Supp. Pls.' Mot. Compel Compensation ¶ 6.)  Plaintiffs' counsel's attempt to analogize their

7    requested rate increases with the rate increases allegedly occurring at other California firms over

8    the past two years similarly fails because Plaintiffs' declarants do not state whether the attorneys

9    in those firms are of comparable skill, reputation, or experience or whether they engage in equally

10   complex federal litigation.  *See Blum*, 465 U.S. at 896 n.11; *Prison Legal News*, 608 F.3d at 455;

11   *see also* Supp. Decl. Pearl Supp. Pls.' Mot. Compel Compensation pp. 11-24; Decl. Rosen Supp.

12   Pls.' Mot. Compel Compensation ¶ 18, Ex. 2.

13        Moreover, a review of the evidence supporting Plaintiffs' counsel's declarations confirms

14   that, to the extent Bay Area firms are increasing rates at all, the hourly billing rate increases for

15   Bay Area partners and associates have been modest.  For example, Exhibit D, attached to the

16   declaration of San Francisco partner Geoffrey Holtz indicates that rate increases in 2008 to 2009

17   for Bingham McCutchen's "peer group" of firms (presumably firms providing similar services)

18   have ranged from 2.9 percent to 3.2 percent for partners and 4.2 percent for all lawyers.[6]  (Decl.

19   Greenfield ¶ 17(a).)  Likewise, Exhibit 9 attached to Maria Morris's declaration shows that

20   partners Alan Annex, David Bradley, and Leslie Corwin of Greeenberg Traurig raised their rates

21   between 3 and 6.6 percent from 2008 to 2009.  (*Id.* ¶17 (d).)  And Peter Benvenutti— a partner at

---

[5] In his supplemental declaration, Mr. Holtz only provides the "standard billing" rates for the three Bingham attorneys working on *Armstrong*, not the *firm's* hourly billing rates for each of its time keepers in other matters. (*See* Supp. Decl. Holtz ¶¶ 3-5.)  Moreover, Mr. Holtz's supplemental declaration is inaccurate. In it, Mr. Holtz asserts that Ms. Berger and Mr. Busch's hourly rates rose 5.2 percent in 2009, and 9 and 11 percent respectively in 2010. (*Id.* ¶¶ 4-5.) In truth, the rate increases were as follows: 15.9 percent for Ms. Berger in 2009, twenty percent for Ms. Berger in 2010, 5.3 percent for Mr. Busch in 2009, and 33 percent for Mr. Busch in 2010. (*See id.* ¶¶ 3-5.)

[6] Ironically, the firm-wide rate increases Bingham seeks in this action for 2008-2009 are more than double the rate increases of Bingham's peers for the same time period. (*Compare* Decl. Holtz, Ex D *with* Decl. O'Bannon, Ex. B.)

10

1    the San Francisco office of Jones Day—raised his rates by only 4 percent during the same time

2    period. (*Id.* ¶ 17(e); *see* Decl. Morris Supp. Pls.' Mot. Compel Compensation, Ex. 2.)  Mr.

3    Benvenutti's colleague, Peter Crosby, did not raise his rates at all.  (*Id.*)  Associates' billing rates

4    have been similarly limited to 3.2 percent between 2008 to 2009, as shown by Geoffrey Holtz's

5    declaration. (Decl. Greenfield ¶ 18; *see* Decl. Hotlz Supp. Pls.' Mot. Compel Compensation, Ex.

6    D.)

7       Defendants' expert, Gary Greenfield, is a former partner at Shartis, Friese & Ginsburg, and

8    the founder of Litigation Cost Management, a legal-fee consulting business. (Decl. Greenfield ¶¶

9    2, 8.)  Mr. Greenfield regularly conducts analyses for both plaintiffs and defendants concerning

10    the reasonableness of legal fees and expenses sought in various types of cases, including class

11    actions. (*Id.* ¶¶ 4-5.)  He has prepared over one hundred reports on attorneys' fees issues, and in

12    almost all cases has undertaken some evaluation of the rates being sought. (*Id.* ¶ 5.)  He has also

13    testified numerous times as a fees expert and served as a Special Master to analyze firms' fees

14    and expenses in a conservation proceeding before the San Francisco Superior Court. (*Id.* ¶ 7.)

15    Accordingly, Mr. Greenfield is well-familiar with the range of rates being charged by Bay Area

16    law firms practicing complex litigation. (*Id.* ¶ 11.)

17       According to Mr. Greenfield, law firm billing rates, including the rates of large law firms,

18    have not increased in the last several years at the same pace as in prior years (*e.g.*, 5 to 10 percent

19    annually in prior years). (*Id.* ¶¶ 15, 19.)  In fact, the norm was for firms not to raise rates at all in

20    2009. (*Id.* 19.)  For example, instead of raising its rates in 2009, Manatt, Phelps & Phelps froze

21    its billing rates and even reduced the rates for its lower level associates. (*Id.*; *accord* Decl. Pearl

22    Supp. Pls.' Mot. Compel Compensation p. 13.)  In Mr. Greenfield's opinion, the average firm-

23    wide rate increases for large Bay Area law firms handling complex litigation between 2008 and

24    2010 are consistent with the average rate increases referenced in the National Law Journal

25    surveys referenced above, namely 2.5 percent in 2009 and 2.7 percent in 2010. (Decl. Greenfield

26    ¶ 21.)

27       Thus, as the undisputed evidence shows, and as even Plaintiffs' counsel concedes, law

28    firms throughout the nation and in the Bay Area have only raised their rates "slightly" and

11

22222222222222222222222222222222222222222222222222222222222

"modestly" in the past two years. Based on a review of the aforementioned surveys, and Defendants' expert's opinion, Bay Area law firms have increased their firm-wide billing rates on average between 2.5 and 2.7 percent a year in both 2009 and 2010. This amounts to a total firm-wide rate increase of no more than 5.2 percent over a two-year period. This is in sharp contrast to Plaintiffs' counsel's proposed across-the-board rate increases ranging from nearly eight percent to twenty-nine percent over the same time period.

Because Plaintiffs' counsel fail to show that their firms' proposed hourly rate increases are commensurate with the hourly rate increases of other Bay Area law firms since 2008, their motion must be denied. *Blum*, 465 U.S. at 895 (the fee applicant bears the burden of proving that the requested rates are in line with those prevailing in the relevant community).

## CONCLUSION

In this economic climate, where the people of California continue to endure substantial cuts to vital social services, every dollar counts. Here, Plaintiffs' counsel's proposed hourly rate increases go far beyond the amount needed to ensure that inmates receive legal representation to vindicate their federal rights. Instead, Plaintiffs' counsel seeks firm-wide rate increases significantly higher than the annual rate increases sought by numerous firms in both the Bay Area and throughout the nation. Like private fee paying clients, the California taxpayers simply cannot afford to pay such rate increases in this recession. Accordingly, Plaintiffs' counsel's motion must be denied. Alternatively, should the Court decide that a rate increase is warranted, Plaintiffs' counsel should be awarded no greater than a total of a 5.2 percent firm-wide hourly rate increase

///
///
///
///
///
///
///
///

Defs.' Opp'n Pls.' Mot. Compel Compensation (C 94 2307 CW)

1    from their 2008 billing rates, consistent with national and local averages.

2

3    Dated: March 22, 2011                          Respectfully Submitted,

4                                                   KAMALA D. HARRIS
                                                    Attorney General of California
5                                                   JONATHAN L. WOLFF
                                                    Senior Assistant Attorney General
6                                                   JAY C. RUSSELL
                                                    Supervising Deputy Attorney General
7                                                   DANIELLE F. O'BANNON
                                                    Deputy Attorney General

8

9

10                                                  SCOTT J. FEUDALE
                                                    Deputy Attorney General
11                                                  *Attorneys for Defendants*

12   CF1997CS0005
     40473529.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           13

# CERTIFICATE OF SERVICE

Case Name:   **J. Armstrong v.**                          No.   **C 94 2307 CW**
             **Schwarzenegger, et al.**

I hereby certify that on **March 22, 2011**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPENSATION**

**DECLARATION JAMES BLEVINS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPENSATION**

**DECLARATION OF SCOTT J. FEUDALE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPENSATION (w/Exhibits A thru G)**

**DECLARATION OF GARY GREENFIELD IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPENSATION (w/Exhibits 1 to 3)**

**DECLARATION OF DANIELLE O'BANNON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPENSATION w/Exhibits A thru E)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **March 22, 2011,** at San Francisco, California.

          M. Luna                                       M. Luna
          Declarant                                            Signature

40491530.doc