IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN ARMSTRONG, et al.,

    Plaintiffs,

  v.

EDMUND G. BROWN, JR., et al.,

    Defendants.
_____/

No. C 94-2307 CW

ORDER GRANTING IN PART, AND DENYING IN PART, MOTION TO CORRECT OR MODIFY, DENYING MOTION TO STAY AND GRANTING MOTION TO STRIKE (Docket Nos. 1978, 1985 and 2019)

Defendants seek to modify or correct the Court's January 13, 2012 Order, in which the Court granted Plaintiffs' motion to require Defendants to track and accommodate the needs of Armstrong class members housed in county jails and to provide access to a workable grievance procedure. Defendants also seek to stay that order pending the Court's decision on their motion to modify or correct or pending a subsequent appeal to the Ninth Circuit Court of Appeals. Plaintiffs oppose Defendants' motions. Having considered the papers filed by the parties and their arguments at the hearing, the Court DENIES Defendants' motion to stay and GRANTS IN PART and DENIES IN PART their motion to modify or correct.[1]

---

[1] Defendants also seek to strike portions of Plaintiffs' Objections to Defendants' Reply Evidence. Defendants argue that Plaintiffs include with their objections further argument on Defendants' motions, in violation of Local Rule 7-3(d). The Court GRANTS Defendants' motion to strike (Docket No. 2019) and hereby strikes lines 1:10-11, 2:25-3:15, 3:26-4:24 and 5:19-23 of Plaintiffs' Objections to Defendants' Reply Evidence.

I.  Defendants' Motion to Modify or Correct

The Court finds many of Defendants' arguments that the January 13, 2012 Order was in error to be unavailing.  The Court declines to read the words "sole" or "exclusive" into the text of California Penal Code section 3056 before the words "legal custody and jurisdiction of local county facilities."  Contrary to Defendants' characterization, the word "supervision" does not have the same meaning as "jurisdiction."  The clear meaning of the statutory text stating that "parolees shall be returned to the parole supervision" of the state is simply that parolees are not terminated from parole when they violate the terms of their supervision and serve a revocation term in county jail, but instead must continue on parole supervision afterwards.  The Court finds that the legislative intent in amending section 3056 was not to abdicate the state's responsibility toward Armstrong class members for compliance with the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12131 et seq., and transfer it to the counties, but rather to limit the physical location where state parolees, whose parole is revoked, may be housed to county jails, to facilitate reentry and reintegration into the community.  To find otherwise would require this Court to consider whether section 3056 is void, which it declines to do given that the more reasonable construction of section 3056 is consistent with legislative intent.

Further, although state law prevents Defendants from housing certain parolees in state prisons upon revocation of parole, Defendants point to no part of state law that restricts their discretion in determining in which county jail they may house that

2

parolee. State law does not appear to require Defendants to choose to house parolees with disabilities in county jails that do not provide adequate accommodations to them.

The Court does find cause to modify its prior order to clarify or correct certain items. On page 17 of the order, the Court mistakenly referred to sections 30025 and 30029(c) as California Penal Code sections. They are California Government Code sections. However, the Court does not modify its conclusion that, while the funding amounts allocated to each county are fixed for the current year, because the allocations were determined by a formula that takes into account the number of prisoners that a county was expected to supervise and house, future funding to a county could be reduced if Defendants are expected to house fewer parolees in that county.

Defendants believe that, on page 16 of the order, the Court cited abrogated authority in Samson v. California, 547 U.S. 843 (2006), for the proposition that, after realignment, parolees remain in Defendants' continuing custody and control. Instead, the Court cited Samson for its reference to the former section 3056. To clarify this, the Court modifies the parenthetical following the citation to read as follows:

> (noting, prior to realignment, that "an inmate-turned-parolee remains in the legal custody of the California Department of Corrections through the remainder of his term").

Defendants also argue that the Court mis-stated the contents of their memorandum setting forth their policies implementing realignment. Specifically, the Court stated that, if county jail staff denied a medically cleared parole violator booking into a

3

county jail, Defendants' policies required Defendants to maintain custody of the person. To clarify that Defendants' policies require Defendants to maintain custody while the Agent of Record contacts his or her supervisor for further instruction, the Court replaces its reference to Defendants' policies on page 16 of the order with the following:

> Under Defendants' implementing policies, county jails are not typically permitted to turn away parolees who have been medically cleared and whom Defendants bring to the county jails, but if they do so, Defendants must "maintain custody" of the parolee while Defendants determine how to resolve the situation. Grunfeld Reply Decl., Ex. K at 4. State law does not appear to prevent Defendants from then placing the parolee in a different county jail. Further, under Defendants' policies, when county authorities release a parolee before revocation processing is complete, Defendants retain the discretion to return the parolee to custody or to allow the parolee to remain in the community. Grunfeld Reply Decl., Ex. L at 4.

II. Defendants' Motion to Stay

"'A stay is not a matter of right, even if irreparable injury might otherwise result.'" Nken v. Holder, 129 S. Ct. 1749, 1760 (2009) (quoting Virginian R. Co. v. United States, 272 U.S. 658, 672 (1926)). Instead, it is "an exercise of judicial discretion," and "the propriety of its issue is dependent upon the circumstances of the particular case." Id. (citation and internal quotation and alteration marks omitted). The party seeking a stay bears the burden of justifying the exercise of that discretion. Id. "A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip[s] in his favor, and that a stay is in the public interest." Humane Soc. of U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009); see

also Perry v. Schwarzenegger, 702 F. Supp. 2d 1132, 1135 (N.D. Cal. 2010).

Defendants have not demonstrated a likelihood of success in overturning this Court's order finding that system-wide relief is necessary. They do not challenge the portion of the Court's order that addressed state parolees and prisoners that are held in county jails for reasons other than section 3056, such as contracts or to participate in In-Custody Drug Treatment Programs (ICDTPs), and they still do not dispute that there will continue to be at least some class members in county jails. As noted in the Court's order of January 13, 2012, the Ninth Circuit has repeatedly held in prior decisions related to this case that "'if the injury is the result of violations of a statute . . . that are attributable to policies or practices pervading the whole system (even though injuring a relatively small number of plaintiffs),' then '[s]ystem-wide relief is required.'" Armstrong v. Schwarzenegger, 622 F.3d 1058, 1072-73 (9th Cir. 2010) (quoting Armstrong v. Davis, 275 F.3d 849, 870 (9th Cir. 2001)). Defendants do not dispute that there are currently class members still housed in county jails or that Defendants' system-wide policies and practices have caused, and continue to cause, substantial injury to class members. Thus, even if Defendants successfully challenge the portion of the Court's prior order related to state parolees housed in county jails pursuant to section 3056, they will nevertheless be required to formulate a plan to carry out the prescribed injunctive relief for the remaining individuals for whom they are indisputably responsible.

While the Court is skeptical of the accuracy of the unsupported estimate provided by Defendants' declarant that the economic burden of complying with the prior order will be "in the millions of dollars," even assuming that this estimate is correct, Plaintiffs' strong showing of ongoing and substantial harm to class members--including class members for whom Defendants do not dispute they have responsibility--outweighs these financial concerns.  Based on the declarations that it was presented with in support of Plaintiffs' motion, the Court already found "overwhelming and disturbing evidence" of ongoing and extreme rights deprivations suffered by class members in county jails, which was chronicled in detail in the January 13, 2012 Order.  The class members will continue to suffer substantial harm for each day that their disabilities are not accommodated.  Balanced against the speculative administrative and monetary arguments and evidence presented by Defendants, the balance of harms clearly favors Plaintiffs.

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to correct or amend (Docket No. 1978), DENIES Defendants' motion to stay (Docket No. 1985) and GRANTS Defendants' motion to strike (Docket No. 2019).

IT IS SO ORDERED.

Dated: 4/11/2012

CLAUDIA WILKEN
United States District Judge

6