IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN ARMSTRONG, et al.,

     Plaintiffs,

  v.

EDMUND G. BROWN, JR., et al.,

     Defendants.

_____/

No. C 94-2307 CW

ORDER DENYING
MOTION FOR
CONTEMPT, DENYING
AS MOOT MOTION TO
STRIKE AND
MODIFYING
PERMANENT
INJUNCTION
(Docket Nos. 2024
and 2135)

Plaintiffs move for an order to show cause why Defendants should not be held in civil contempt for violating the January 18, 2007 Injunction and to hold Defendants in contempt. Defendants oppose the motion. Having considered the papers filed by the parties and their arguments at the hearing, the Court DENIES Plaintiffs' motion. The Court also MODIFIES the 2007 Injunction.

BACKGROUND

In a series of orders between 1996 and 2002, the Court found that Defendants' treatment of prisoners with disabilities violated the American with Disabilities Act (ADA) and section 504 of the Rehabilitation Act. On January 3, 2001, Defendants issued the amended Armstrong Remedial Plan (ARP) setting forth their own plans and policies to come into compliance with their obligations under these federal laws. Docket No. 681. On March 21, 2001, the Court issued a Permanent Injunction ordering Defendants to comply with the ADA and section 504 in eight specific areas previously litigated by the parties. Docket No. 694.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

On January 18, 2007, this Court held that Defendants were not yet in compliance with the ADA, section 504, the Permanent Injunction or the ARP.  Docket No. 1045.  The Court found that "Plaintiffs have demonstrated that defendants continue to violate the rights of prisoners with disabilities under the ADA and Rehabilitation Act" and described in detail its factual findings of Defendants' ongoing and systemic violations of class members' rights, including failure to provide safe accessible housing to prisoners with mobility impairments, denial of sign language interpreters to prisoners who need them, confiscation of medically prescribed assistive devices, and late and inadequate disability grievance responses and systems.  Id. at 2-4.  The Court specifically found that some institutions responded chronically late to class members' grievances regarding accommodations and that other institutions simply did not process and address such grievances at all.  Id. at 4.  These failures persisted despite the Court's prior orders requiring Defendants to provide reasonable accommodations and violated the ARP developed by Defendants.

The Court entered an injunction, requiring Defendants to take certain steps to address the ongoing rights violations. Injunction, Docket No. 1045.  To ensure that repeated violations would be identified and addressed, the Court ordered, among other things,

> Within 120 days of the date of this Order, defendants, in cooperation with the Office of the Inspector General and the Receiver in Plata v. Schwarzenegger, shall develop a system for holding wardens and prison medical administrators accountable for compliance with the Armstrong Remedial Plan and the orders of this Court. This system shall track the record of each institution

and the conduct of individual staff members who are not complying with these requirements.  Defendants shall refer individuals with repeated instances of non-compliance to the Office of Internal Affairs for investigation and discipline, if appropriate.

Id. at 7.

On November 21, 2008, Defendants issued a memorandum entitled "Expectations for Staff Accountability and Non-compliance of the Disability Placement Program" (DPP).  Godbold Decl. ¶ 3, Ex. 1. Plaintiffs allege that this memorandum sets forth "Defendants' sole means of implementing" the accountability tracking requirements of the 2007 Injunction.  Mot. at 4.  The memorandum states, "In order to provide the documentation to meet the Court's Injunction related to staff conduct, the following recording and reporting protocols shall be implemented."  Id. at 2.  If a supervisor or manager observes violations of the DPP or if staff misconduct is alleged or reported by others, including "staff, inmate interviews, submitted via CDC Form 602 - Inmate/Parolee Appeal or CDCR Form 1824 - Request for Reasonable Modification or Accommodation," or is found through "other fact-finding efforts," the supervisor or manager is required to "prepare and forward a memorandum to the Employee Disciplinary Officer/Employee Relations Officer (EDO/ERO) in the Employee Relations Office," setting forth the details of the misconduct.  Id.  The EDO/ERO is then to forward this information to the appropriate Hiring Authority, which is either the warden of the institution or the Health Care Manager, who is to determine "what action should be taken" and whether the involvement of the Office of Internal Affairs (OIA) is warranted.  Id. at 2-3.  The Hiring Authority's decision is to be "entered on the DPP Employee Non-Compliance Log."  Id. at 3.  Each

month, the logs compiled at each institution are produced to

Plaintiffs' counsel.  Id.; Godbold Decl. ¶ 4.

On July 13, 2010, the parties filed a joint status conference

statement, stating in relevant part,

> Plaintiffs are concerned that the staff accountability
> program, required by this Court's January 18, 2007
> Injunction, is not working as intended.
>
> Under Defendants' November 21, 2008 memorandum governing
> accountability procedures, supervisors are required to
> forward a memo to the Employee Relations Officer when
> they "discover" -- via direct observation, prisoner
> complaint, or reports by others -- that staff has
> "fail[ed] to fulfill their responsibilities in regards
> to the DPP."  The Employee Relations Officer submits the
> information to the Hiring Authority, and the Hiring
> Authority is then to determine whether/what action to
> take.  Once the Hiring Authority has made its
> determination, the Employee Relations Officer "shall
> enter the decision in the DPP Employee Non-Compliance
> Log."
>
> Despite this direction, the non-compliance logs for
> several institutions are completely blank for the entire
> period of February 2009 through April 2010.  The logs
> for many other institutions are empty for months at a
> time, and the logs for still others have very few
> entries.
>
> The lack of entries exist even where Plaintiffs have
> produced reports alleging numerous and serious
> violations of the Remedial Plan.
>
> Without waiving any legal rights, Defendants have agreed
> to put together a training module to ensure that staff
> are properly investigating potential violations and
> noting the investigations in the accountability logs.
>
> The parties have agreed to meet on July 27 at 10:00 to
> discuss the contents and status of such training.

Docket No. 1729, at 2-3.

In February 2011, Defendants required all institutional

staff, except staff working under the authority of the Receiver

appointed by the court in Plata v. Brown, to complete a training

module on the accountability procedures.  Martinez Decl. ¶ 4.  The

4

training consisted of written materials summarizing the procedures and a quiz regarding the materials. Id., Ex. C.

Between April 2011 and December 2011, Plaintiffs submitted allegations of more than 150 violations of the Armstrong Remedial Plan to Defendants, which were not reported on the corresponding DPP Employee Non-Compliance Logs provided by Defendants to Plaintiffs. Godbold Decl. ¶¶ 7-57, Exs. 3-53; Evenson Decl. ¶¶ 3-5.[1]

On January 18, 2012, Plaintiffs sent Defendants a letter, stating

> Based on a review of the non-compliance logs produced since completion of the training (April 2011 - November 2011), plaintiffs' counsel remains seriously concerned about the incompleteness and inconsistency of the non-compliance logs. Despite additional staff training, logs at nine institutions remaining entirely blank even though clear Armstrong violations have been identified through monitoring at those prisons. Though logs at the remaining institutions are not blank, at least 17 other prisons fail to document violations which plaintiffs' counsel identified in monitoring reports.

Godbold Decl. ¶ 6, Ex. 2. Plaintiffs attempted to discuss solutions to these issues during a February 3, 2012 meeting. Defendants refused to comment on plans to address these issues and stated that they would respond in writing by March 1, 2012.

---

[1] In their opposition, Defendants argue that Plaintiffs' counsel's monitoring letters are inadmissible hearsay offered to prove the truth of the allegations of violations contained in the letters, and that they do not qualify for any exception to the hearsay rule. Opp. at 12-13. Plaintiffs do not offer these letters to establish that Defendants had in fact violated the Armstrong Remedial Plan, but rather to establish that the fact that Plaintiffs had submitted allegations of such violations to Defendants between these dates, which did not appear on the DPP Employee Non-Compliance Logs. Accordingly, the Court OVERRULES Defendants' objections to these documents.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Godbold Decl. ¶ 6.  Defendants had not responded as of March 22, 2012.  Id.

On March 22, 2012, Plaintiffs filed the instant motion, alleging that Defendants have failed to comply with the quoted portion of the 2007 Injunction.  The parties subsequently stipulated to extend the briefing and hearing schedule on the motion.

In March 2012, Defendants required all managerial and supervisory staff at the prisons, except staff working under the authority of the Receiver appointed by the court in Plata v. Brown, to complete again the training module on the accountability procedures.  Calderon Decl. ¶ 2.

On May 10, 2012, Defendants filed their opposition to Plaintiffs' motion.[2]

---

[2] With their opposition, Defendants filed under seal a separate 120-page document, entitled "Appendix of Defendants' Objections to Plaintiffs' Evidence on Plaintiffs' Motion for an Order to Show Cause and a Contempt Order," and setting forth 270 evidentiary objections to Plaintiffs' evidence.  Docket No. 2117. In their reply, Plaintiffs object to this appendix of objections and move to strike it.

Civil Local Rule 7-3(a) requires that, for an opposition to a motion, "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum."  Civil Local Rule 7-4(b) provides that, unless "the Court expressly provides otherwise pursuant to a party's request made prior to the due date, briefs or memoranda filed with opposition papers may not exceed 25 pages of text."

Between their opposition brief and their separate appendix of evidentiary objections, Defendants have filed a total of 143 pages in opposition to Plaintiffs' motion, without at any point seeking leave of the Court to exceed twenty-five pages.  Accordingly, the Court GRANTS Plaintiffs' request to strike Defendants' appendix of evidentiary objections.  The Court will only consider the evidentiary objections that Defendants raised within the opposition brief itself.

On May 24, 2012, Plaintiffs filed their reply in support of their motion.

On May 31, 2012, Defendants filed objections to Plaintiffs' reply evidence.[3]

On June 1, 2012, Plaintiffs filed a revised proposed order for the instant motion.[4]

LEGAL STANDARD

A district court has the inherent authority to enforce compliance with its orders through a civil contempt proceeding. International Union, UMWA v. Bagwell, 512 U.S. 821, 827-28 (1994). A contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant." Id. A contempt fine is considered civil and remedial if it either "coerce[s] the

---

[3] Defendants request that the Court strike portions of the reply declaration of Penny Godbold, arguing that these sections of her declaration improperly contain conclusions and argument or misstate the evidence in the record. Because the Court has not relied on the Godbold reply declaration in resolving this motion, Defendants' request is OVERRULED AS MOOT.

[4] On June 4, 2012, Defendants filed an administrative motion to strike Plaintiffs' revised proposed order, arguing that the proposed order is actually a sur-reply brief offering additional argument in support of their motion. Docket No. 2135.

The Court notes that Plaintiffs appear to have revised their proposed order to incorporate the arguments they raised in their reply brief. Defendants allege that the revised proposed order "improperly argues, after all briefing has been completed, that this Court should change the nature of the proceedings, by abandoning their motion for an order to show cause," by arguing that "an order to show cause" is "not necessary because Plaintiffs do not contest Defendants' evidence." Mot. to Strike 2 & n.1 (emphasis in original). However, Plaintiffs make this argument on pages thirteen through fifteen of their reply brief.

Because the Court finds that the revised proposed order is not material to the outcome of this motion and does not rely upon it in ruling, the Court DENIES Defendants' motion as MOOT.

United States District Court
For the Northern District of California

defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained." United States v. United Mine Workers, 330 U.S. 258, 303–304 (1947).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & Cnty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir.1992)). The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." Id. (internal formatting and quotation marks omitted). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." Id. (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th Cir. 1982)).

Thus, the Court may grant a motion for an order of contempt if it finds that Defendants (1) violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. Id. Once the moving party has met its burden, the burden "shifts to the contemnors to demonstrate why they were unable to comply" with the court order. Stone, 968 F.2d

at 856 n.9 (citing <u>Donovan v. Mazzola</u>, 716 F.2d 1226, 1240 (9th

Cir. 1983)).  "They must show they took every reasonable step to

comply."  <u>Id.</u> (citing <u>Sekaquaptewa v. MacDonald</u>, 544 F.2d 396, 406

(9th Cir. 1976)).

DISCUSSION

Plaintiffs request that Defendants be held in civil contempt

because they have reported "hundreds of violations of the Remedial

Plan and instances of staff member misconduct" to Defendants and

"Defendants have failed to track these reported instances of staff

member non-compliance, or to refer repeated instances of non-

compliance to the OIA."  Mot. at 3.  Plaintiffs acknowledge that

Defendants have developed a tracking mechanism, but argue that it

has not been effective, that many institutions are not complying

with it and that Defendants' training on this mechanism has been

insufficient.  <u>Id.</u> at 5.

Defendants do not dispute that they did not track allegations

of rights violations.  Instead, they argue that the 2007

Injunction does not require them to log allegations of

non-compliance or to investigate such allegations and instead only

requires them to log instances in which they found that an

employee had in fact violated a class member's rights.  Thus, they

contend that, although their November 2008 accountability program

mandates tracking of allegations of non-compliance that were

ultimately not substantiated, which they admit they have failed to

do, they cannot be held in contempt for this failure because the

information was not required by the 2007 Injunction.  Defendants

further argue that, if the 2007 Injunction does require them to

conduct an investigation into allegations of non-compliance and to

9

report the outcome of each such investigation, including those that were not substantiated, then the order is ambiguous and unenforceable through civil contempt sanctions.  Finally, Defendants aver that they have been acting pursuant to a good faith interpretation of the Injunction as not requiring this.

The Court finds that Defendants' interpretation of the 2007 Injunction fatally undermines any effectiveness that the relevant requirements would have had in addressing the ongoing violations identified in that order.  The Court required Defendants to "develop a system for holding wardens and prison medical administrators accountable for compliance with the Armstrong Remedial Plan and the orders of this Court," and to track both "the record of each institution and the conduct of individual staff members who are not complying with these requirements." These requirements were intended to serve multiple purposes, including remedying the widespread failures to respond to grievances and requests for accommodations, verifying compliance with the other parts of the Court's orders and the ARP and ensuring that patterns of violations were identified and addressed.  Most importantly, these provisions required Defendants to develop effective internal oversight and accountability procedures to ensure that Defendants learned what was taking place in their facilities, in order to find violations, rectify them and prevent them from recurring in the future, without involvement by Plaintiffs' counsel or the Court.  Defendants are unable to identify whether institutions and staff members have complied with requirements, find patterns or hold wardens and medical administrators accountable, if they do not determine whether

reports of rights violations are substantiated and record the results.  Simply put, investigations, including the documentation of the results, are necessary to ensure that grievances are addressed and to identify staff error or misconduct and institutional deficiencies that violate class members' rights. Defendants may not fail to investigate reports of rights violations and then declare that, because they did not substantiate a violation, they were not required to document it. Without documentation, there is no way for the Court to know whether a complaint was investigated and found unsubstantiated, or was simply ignored.

Some of Defendants' declarations reveal that investigations were not conducted into complaints of rights violations until after the instant motion was filed.  For example, on October 13, 2011, Plaintiffs' counsel submitted a monitoring report to Defendants stating that, among other things, a class member had reported "that his back brace was taken away following a cell extraction on May 2, 2011."  Godbold Decl. ¶ 9, Ex. 5, 3. Defendants submit evidence that they conducted an investigation into this allegation upon receipt of the instant motion and offer no evidence that they investigated the report at any earlier time. See Zanchi Decl. ¶¶ 2-3, 10-13 (asserting that the report was not substantiated, because the class member "was not medically authorized to have a back brace").

The Court also notes that Defendants concede that at least some of the incidents at issue constituted violations of the ARP, which they were required to report.  See Opp. at 5 (admitting twenty-six ARP violations were not logged).  Defendants state that

United States District Court
For the Northern District of California

they have or will amend their accountability reports to track these incidents.

The Court finds that Defendants' own evidence submitted in response to this motion reveals numerous additional incidents, which do violate the ARP or other Court orders, and which Defendants failed to track.  In multiple incidents, Defendants state that they did not log that a violation of the ARP occurred because staff members did not intend to commit a rights violation or because the violation was subsequently remedied.  However, the 2007 Injunction requires that every violation be tracked, regardless of whether or not it was done intentionally or based on an honest mistake or unavoidable.  Further, violations must be tracked, even if steps are later taken to remedy the initial problem.

For example, Defendants acknowledge that a deaf inmate submitted a grievance dated September 4, 2011, stating that his hearing aid was taken during a cell search that took place on August 24, 2011 and asking that the hearing aid be returned or that he be provided with a new one.  Cavazos Decl. ¶¶ 17-18, Ex. E.  Defendants also admit that a later investigation revealed that the hearing aid was taken during the search.  Id. at ¶ 19.  Sometime after September 28, 2011, the inmate was seen by an audiologist and given a new hearing aid.  Id. at ¶ 19-21.  Defendants contend that they "determined that there was no violation that needed to be logged" in the accountability logs, because the inmate's hearing aid was removed from his cell "by mistake, and there was no intention to deprive him of his hearing aid," and because he was "provided a new hearing aid soon after he

United States District Court
For the Northern District of California

12

United States District Court
For the Northern District of California

1   requested one." Id. at ¶ 22.

2       In another incident, Defendants acknowledge that one

3   prisoner's Disability and Effective Communication System (DECS)

4   record shows that "his primary method of communication is American

5   sign language and that his secondary method of communication is

6   the use of written notes." Aref Decl. ¶ 6. See also Aref Decl.

7   ¶ 7, Ex. A. The ARP requires that, "for all due process

8   functions," when "sign language is the inmate's primary or only

9   means of effective communication," a qualified sign language

10  interpreter must be provided, "unless the inmate waives the

11  assistance of an interpreter, reasonable attempts to obtain one

12  are not successful, and/or delay would pose a safety or security

13  risk." ARP § II.E.2.d. Defendants attest that, on April 18,

14  2011, staff held a meeting with this prisoner to provide notice of

15  his conditions of parole, but did not have a sign language

16  interpreter present and instead used written notes to communicate

17  with him. Aref Decl. ¶ 8. Defendants do not provide evidence

18  that the inmate waived the assistance of an interpreter, they made

19  reasonable attempts to obtain an interpreter or that delay would

20  pose a safety or security risk. After Plaintiffs' counsel raised

21  this issue with Defendants, a second meeting was held on June 3,

22  2011 with the prisoner, at which a sign language interpreter was

23  present. Aref Decl. ¶ 10-11, Ex. 11. Defendants assert that they

24  concluded that no violation of the ARP occurred in the April 18,

25  2011 meeting, apparently because "the correctional counselor

26  responsible" for the meeting "believed that the use of written

27  notes was an appropriate effective form of communication," and

28  thus that the incident need not be entered into the accountability

logs.  Id. at ¶ 15.

Defendants' declarations also show that they failed to document violations where an inmate's grievance did not specifically accuse a staff member of misconduct, even though the inmate was deprived of an accommodation required under the ARP. Defendants must report incidents where an inmate complains that he or she was not provided with something required by the ARP, not only where the class member has explicitly accused a specific staff member of intentional malfeasance or another talismanic phrase.  Defendants also repeatedly state that they are not required to track violations where they could not identify the specific staff members responsible for the problem.  See, e.g., Zanchi Decl. ¶¶ 8-9 ("My investigation was unable to identify the specific staff members responsible for the violations.  Because no specific staff member could be identified as the responsible party, this incident was not logged in the CCI DPP Accountability Logs.").  However, the fact that Defendants could not identify the responsible individual does not negate the fact that an incident occurred in which a class member was deprived of his rights. Further, the 2007 Injunction clearly requires Defendants to track institutional compliance, not just the compliance of individual staff members.

For example, one prisoner submitted a grievance on a CDCR 602 form stating that he was "vision impaired [and] not receiving assistance from custody in reading and writing."  Cullen Decl. ¶ 7, Ex. C, 3.  In the response to his grievance, staff noted that, during an interview about the grievance, the inmate stated specifically that "staff is unwilling to assist [him] in

United States District Court
For the Northern District of California

preparation of an Inmate/Parolee Appeal CDCR 602 form." Id. at 5. His complaint was substantiated and the associate warden concluded that "staff was not providing the proper assistance with your disability needs," noting that the ARP mandated that "institution staff shall provide the assistance and equipment necessary to all inmates with disabilities on a case by case basis to ensure that inmates, who have difficult reading and/or communicating in writing . . . are provided reasonable access to forms, CCRs and procedures." Id. See ARP § II.F. Defendants contend that they were not required to log this because the grievance did not provide "information that there was a violation of the Armstrong remedial plan." Cullen Decl. ¶ 7. Even if the original grievance was vague, the ensuing investigation clearly revealed that the class member was alleging a violation of the ARP, and Defendants' staff substantiated that there was such a violation. This argument is especially disingenuous because the class member was complaining that he was not provided with accommodations required to help him complete this form properly, among other things. As above, Defendants further aver that the inmate did not identify "a specific person or persons who failed to provide" him with assistance. Id.

The Court notes that the instant motion does not involve Defendants' failure to provide appropriate accommodations; rather, the Court considers whether Defendants have violated the 2007 Injunction's requirement that it develop an accountability system to ensure compliance with the ARP and the Court's other orders. On the record before it, the Court concludes that Defendants' accountability system, with which they do not dispute they have

failed to comply, has not been effective.  Although the Court finds that the 2007 Injunction implicitly required Defendants to include in the accountability system requirements to investigate promptly and appropriately all allegations of violations, regardless of the source, and to record the outcomes of the investigations, including whether or not the allegations were substantiated, in an abundance of caution the Court concludes that the 2007 Injunction may not state this plainly enough. Accordingly, the Court DENIES Plaintiffs' motion to hold Defendants in contempt.

The Court finds the 2007 Injunction should be clarified and made more detailed, to make clear what is expected of Defendants and to allow Defendants to conform their future behavior to its terms.  The Court therefore MODIFIES the 2007 Injunction, as set forth below.  The modifications largely reflect the procedures that were set forth in Defendants' November 21, 2008 memorandum, with minimal changes.  The Court makes changes in five substantive areas--tracking, investigation, corrective action and discipline, dispute resolution, and requirement for a protective order.  The Court finds that these changes are narrowly drawn, extend no further than necessary to correct the violations of federal rights identified in the 2007 Injunction, and are the least intrusive means necessary to correct the violations of the federal rights.

The modifications require Defendants to track all allegations of non-compliance with the ARP and the orders of this Court.  The modifications are similar to Defendants' own procedures.  See Godbold Decl. ¶ 3, Ex. 1, 2-3.  This must be done regardless of the source of the allegations.  The only difference is that this

order also requires Defendants to list when the investigation was initiated, the name and title of the investigator, the date the investigation was completed, the result of the investigation, and the number of prior allegations of non-compliance against the involved employees or employees.  The Court finds that tracking of this additional information is necessary because Defendants have not tracked or conducted violations into all reported violations, and those facts will show whether Defendants are fully and effectively complying with the 2007 Injunction and holding staff members accountable for non-compliance.  Furthermore, this Court finds tracking the number of prior allegations of non-compliance is necessary in order to meet the requirement in the 2007 Injunction that "Defendants shall refer individuals with repeated instances of non-compliance to the Office of Internal Affairs for investigation and discipline, if appropriate."  2007 Injunction at 7.

Like Defendants' own procedures, the modifications to the Injunction set forth below also require Defendants to conduct an investigation when they receive allegations of staff member non-compliance.  See Godbold Decl. ¶ 3, Ex. 1, 2-3.  The only difference is that this order requires the investigation to be initiated within ten business days of receiving notice of such allegation, and Defendants' internal policy does not specify the timeframe for the investigation.  Specifying a timeframe is necessary because some of Defendants' investigations were untimely, and such investigations may be less effective because of the passage of time.  Further, such delays extend the time in which class members are deprived of accommodations set forth in

United States District Court
For the Northern District of California

the ARP.  Initiation of a timely investigation, within ten business days, is necessary to ensure that allegations are investigated while memories are fresh, the facts surrounding the allegations are still in existence and the violation can be remedied.  Further, in order to reconcile disagreements between the parties resulting from investigations, this Court finds that Plaintiffs' counsel must have access to the results of the investigation, including all sources of information relied on to substantiate or refute the allegations.   Such access is consistent with the monitoring powers already granted to Plaintiffs.  <u>See</u> Remedial Order, Injunction, and Certification of Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), Docket No. 158, at 5 ("Plaintiffs shall be entitled to reasonable access to information sufficient to monitor defendants' compliance with the guidelines, plans, policies and procedures that have been approved by the Court.  Such monitoring shall include access to relevant documents, . . . interviews or depositions of institution and departmental staff. . .").

     The 2007 Injunction requires that Defendants refer individuals with repeated instances of non-compliance to the OIA for investigation and discipline if appropriate.  However, it does not specify when and under what circumstance corrective and/or disciplinary action is warranted.  To be effective, an accountability system must specify what discipline will result from staff member violations.  Accordingly, this order requires that Defendants comply with the Employee Disciplinary Matrix set forth in the CDCR Departmental Operations Manual, Chapter 3, Article 22.  <u>See</u> <u>CDCR Operations Manual</u> (2012) Personnel,

United States District Court
For the Northern District of California

Training, and Employee Relations, §§ 33030.16–33030.19, pp. 238-245.

The Court also finds it necessary to create a process for resolving disputes between the parties regarding whether an incident constitutes a violation of the ARP and this Court's orders, in order to facilitate Defendants' compliance with the 2007 Injunction.  Given the evidence that Defendants frequently reached conclusions that no violation that needed to be documented occurred, even though this was inconsistent with the ADA, the ARP and the evidence, the Court will establish a process for resolving disputes between the parties.  This process will promote more accurate decision making while not unduly burdening the resources of the Court or of the State.

Further, the Court determines that it is necessary for the parties to protect the rights of Defendants' employees.  Certain facts surrounding the employees who are at the center of non-compliance investigations will necessarily become known by the parties.  Such personnel information will be disclosed through complaints and reports from prisoners and again as part of the tracking, investigation, disciplinary and dispute resolution processes cited above.  The Court finds that this will be an essential part of the dispute resolution process and that a protective order is necessary to protect Defendants' employees from disclosure of personnel information that is not necessary to the conduct of this litigation.

CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiffs' motion for an order holding Defendants in contempt (Docket No.

2024).  The Court also DENIES AS MOOT Defendants' motion to strike (Docket No. 2135).

IT IS HEREBY ORDERED THAT the following shall be substituted in place of page seven, lines five through twelve of the 2007 Injunction:

Defendants, their agents and employees shall promptly take all reasonable steps to comply with each provision set forth below:

A.  Tracking of All Allegations of Staff Member Non-Compliance

1.  Defendants, their agents and employees (Defendants) shall track any allegation that any employee of the Department of Corrections and Rehabilitation was responsible for any member of the Plaintiff class not receiving access to services, programs, activities, accommodations or assistive devices required by any of the following: the Armstrong Remedial Plan, the Americans with Disabilities Act or this Court's prior orders.  Allegations to be tracked include, but are not limited to, those received from CDCR staff, prisoners, Plaintiffs' counsel, administrative appeals and third parties.  All such allegations shall be tracked, even if the non-compliance was unintentional, unavoidable, done without malice, done by an unidentified actor or subsequently remedied.

2.  The allegations shall be tracked in an electronic spreadsheet that can be searched and sorted.  The spreadsheet shall contain at least the following information: the prison at which the incident occurred, the name and CDCR number of the prisoner, the date of the allegation, the name of the employee(s), the date the investigation was initiated, the name and title of the investigator, the date the investigation was completed, the

United States District Court
For the Northern District of California

result of the investigation, the number of prior allegations of non-compliance against the employee(s), and the action taken, if any, as a result of the investigation, including whether the incident was referred to the Office of Internal Affairs.

3.   The spreadsheet shall be produced to Plaintiffs' counsel in electronic format monthly.  When the spreadsheet is produced to Plaintiffs' counsel, the employees' names shall be removed and shall be replaced with a unique identifier.  When redacting employees' names in records produced to Plaintiffs in accordance with this Order, Defendants shall consistently identify an individual employee by the same unique identifier.

B.   Investigations

1.   Defendants shall investigate all allegations of employee non-compliance, regardless of whether the allegation includes the name of the employee(s).  Investigations shall be initiated within ten business days of receiving notice of such allegations and shall be completed as promptly as possible.  Investigations must include a review of all information necessary to determine whether or not the allegation is true and shall include an interview with the affected prisoner(s).  The investigation must result in a written report that shall list all sources of information relied upon in deciding whether employee non-compliance occurred and whether any other finding(s) of non-compliance against the employee(s) has been sustained.

2.   If Plaintiffs' counsel has a good faith disagreement with the result of a particular investigation, they may request a copy of the written report and it shall be produced.  In such instances, Plaintiffs' counsel shall have the right to review all

written documents utilized in making the determination set forth
in the report.  Upon a showing of need, Plaintiffs' counsel shall
also have the right to interview individuals who provided
information utilized in making this determination.

    3. When producing documents to Plaintiffs' counsel pursuant
to this section, Defendants shall replace employees' names with
unique identifiers as described in paragraph A.3.

C.   Corrective Action and Discipline

    1.   Whenever an investigation reveals employee non-
compliance, Defendants must comply with procedures set forth in
Defendants' November 21, 2008 memorandum, "Expectations for Staff
Accountability and Non-Compliance of the Disability Placement
Program."

    2.   Defendants shall determine whether to initiate
disciplinary proceedings or corrective action against an employee
found in non-compliance, depending upon the number of prior
violations, the seriousness of the harm to the prisoner, and the
culpability of the employee.  Defendants shall discipline
employees in compliance with the Employee Disciplinary Matrix set
forth in the CDCR Departmental Operations Manual, Chapter 3,
Article 22, Personnel, Training, and Employee Relations.

    3.   All determinations of whether to initiate disciplinary
proceedings or corrective action shall be produced to Plaintiffs'
counsel upon request.  When producing these documents to
Plaintiffs' counsel, Defendants shall replace employees' names
with unique identifiers as described in paragraph A.3.

D.   Dispute Resolution

    1.   In the event of a dispute about the production of

United States District Court
For the Northern District of California

information, the results of Defendants' investigation of alleged non-compliance or their decision about whether to initiate corrective action, Plaintiffs' counsel shall provide notice to Defendants and attempt to resolve the matter through negotiation. Defendants must respond to this notice within ten business days.

    2. If the parties are unable to resolve the dispute informally, Plaintiffs' counsel may request that the Court's expert review and resolve the matter.  Depending on the nature of the dispute, the Court's expert shall resolve disputes about the production of information, determine whether non-compliance occurred or, if it did, whether corrective action should be initiated.  When requesting review by the Court's expert, Plaintiffs' counsel shall substantiate their contentions with sworn declarations from the class member or members involved, signed under penalty of perjury.  Defendants shall produce all documents requested by the Court's expert and shall make all employees available for interview, on a confidential or non-confidential basis as determined by the Court's expert. Administrative decisions made by the Court's expert pursuant to this section shall be final as between Plaintiffs and Defendants.

    3.  The parties dispute whether certain incidents set forth in the pleadings constitute non-compliance with the Remedial Order.  Plaintiffs' counsel shall inform Defendants which incidents remain in dispute and shall attempt to resolve these disputes through negotiation with Defendants.  If negotiations fail, the disputes may be referred to the Court's expert pursuant to paragraph D.2., above.

E.   Protective Order

The parties shall negotiate an order to protect the state law rights of Defendants' employees from unnecessary disclosure of personnel information.  All documents that contain personnel information produced to Plaintiffs' counsel and the Court's expert pursuant to this Order shall be covered by this protective order. If the parties are unable to agree on the terms of a protective order, the Court's expert will recommend one.

F.   Notice

Defendants shall provide a copy of this Order to the present and future individual employees who occupy the following positions within the California Department of Corrections and Rehabilitations:

a.   the Undersecretaries of the CDCR,

b.   the Director of the Division of Adult Institutions,

c.   the Deputy Directors of the Division of Adult Institutions,

d.   the Associate Directors of the Division of Adult Institutions,

e.   all Wardens of adult institutions, and

f.    all adult institution ADA coordinators.

G. Miscellaneous

The procedures set forth in this order or in the 2007 Injunction shall not apply to staff working under the authority of the Receiver appointed by the court in Plata v. Brown.

IT IS SO ORDERED.

Dated: 8/22/2012

CLAUDIA WILKEN
United States District Judge