1

2

3

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

JOHN ARMSTRONG, et al., on behalf
of themselves and as
representatives of the class,

         Plaintiffs,

   v.

EDMUND G. BROWN, JR., Governor of
the State of California;
CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION;
MICHAEL MINOR, Acting Director of
the Division of Juvenile Justice;
MATTHEW CATE, Secretary of the
California Department of
Corrections and Rehabilitation;
JENNIFER SHAFFER, the Executive
Officer of the Board of Parole
Hearings; DIANA TOCHE, Acting
Director of the Division of
Correctional Health Care
Services; CHRIS MEYER, Director
of the Division of Facility
Planning, Construction and
Management; KATHLEEN DICKINSON,
Acting Director of Adult
Institutions; and ROBERT
AMBROSELLI, Acting Director of
Division of Adult Parole
Operations,

         Defendants.

No. C 94-2307 CW

OPINION IN SUPPORT
OF ORDER
DISTRIBUTING AND
ENFORCING THE
AMENDED COUNTY
JAIL ORDER AND
PLAN (Docket No.
2161)

22

23

24

25

26

27

28

    Plaintiffs move to enforce the Court's April 11, 2012 Amended

Order Granting Plaintiffs' Renewed Motion to Require Defendants to

Track and Accommodate the Needs of <u>Armstrong</u> Class Members Housed

in County Jails, Ensure Access to a Grievance Procedure and to

Enforce 2001 Permanent Injunction (the Amended Order).  Defendants

oppose the motion.  In their opposition, Defendants ask that the

Court find the Amended Order unenforceable based on a recent

amendment to California Penal Code section 3056 or stay the Amended Order pending resolution of their appeal of it.  For the reasons set forth below, the Court GRANTS Plaintiffs' motion and declines to stay the Amended Order or find it unenforceable.

BACKGROUND

As explained in detail in the Court's prior orders, this lawsuit was originally filed seventeen years ago by disabled prisoners and parolees against the California officials with responsibility over the corrections and parole systems.  The Court sets forth here only the background necessary to this motion.

On May 28, 2009, Plaintiffs filed a Motion to Require Defendants to Track and Accommodate Needs of Armstrong Class Members Housed in County Jails and Ensure Access to a Workable Grievance Procedure.

On September 16, 2009, this Court held that Defendants are responsible for ensuring that Armstrong class members receive reasonable accommodations when Defendants elect to house them in county jails.  Order Granting Plaintiffs' Motion to Require Defendants to Track and Accommodate Needs of Armstrong Class Members Housed in County Jails and Ensure Access to a Workable Grievance Procedure, September 16, 2009, Docket No. 1587, at 7-9. The Court stated that Plaintiffs had submitted evidence demonstrating that, pursuant to their authority, Defendants were housing a significant number of persons in county jails, including an average of 480 parolees a day in the San Mateo County Jail, an average of 1,000 parolees a day in the Sacramento County Jail, and 770 individuals in In-Custody Drug Treatment Program (ICDTP) placements in county jails.  Id. at 4-5.  Although the Court did

2

not rely on the substantial amount of hearsay evidence submitted by Plaintiffs, the Court held that Plaintiffs nonetheless had submitted sufficient evidence that class members being housed in county jails were not receiving accommodations to which they were entitled. Id. at 9-10. Accordingly, the Court entered an order requiring that Defendants, within thirty days, submit a plan "for ensuring timely and appropriate accommodations for Armstrong class members in county jails[.]" Id. at 11. The September 16 Order provided Defendants with flexibility to devise the specifics of the plan, but required that the plan contain certain elements. Id. at 11-14. The Court also found, pursuant to requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), that the relief it ordered was "narrowly drawn, extend[ed] no further than necessary to correct the violation of federal rights, and [was] the least intrusive means necessary to correct the violation of the federal rights[.]" Id. at 11.

Defendants appealed this Court's September 16 Order. Nonetheless, on October 15, 2009, as required by the September 16 Order, Defendants provided "written notification to all county jail facilities of the counties' duty to comply with the Americans with Disabilities Act (ADA) in housing inmates with disabilities" and "that CDCR will enforce this duty." Grunfeld Decl. ¶ 5, Docket No. 1915, Ex. B.

On April 1, 2010, after negotiations between the parties, Defendants issued their first county jail plan, entitled the "County Jail Accommodation Process," in a further effort to comply with the September 16 Order.

United States District Court
For the Northern District of California

3

United States District Court
For the Northern District of California

On September 7, 2010, the Ninth Circuit affirmed in part and vacated in part the September 16 Order, and remanded the case to this Court for further proceedings.  The Ninth Circuit affirmed this Court's holdings that "defendants are responsible for providing reasonable accommodations to the disabled prisoners and parolees that they house in county jails." Armstrong v. Schwarzenegger, 622 F.3d 1058, 1063 (9th Cir. 2010).  The Ninth Circuit held that: (1) the validly enacted ADA Title II regulations provide that "a public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, discriminate against individuals with disabilities," id. at 1065 (quoting 28 C.F.R. § 35.130(b)(1)); (2) the ADA requires that when Defendants house state prisoners and parolees in county jails, the state is responsible to ensure that the state prisoners and parolees with disabilities can access the county jails' benefits and services "to the same extent that they are provided to all other detainees and prisoners," id. at 1068; and (3) neither principles of federalism nor deference to correctional authorities nor the Prison Litigation Reform Act prohibited this Court's order requiring that when Defendants "become aware of a class member housed in a county jail who is not being accommodated, they either see to it that that jail accommodates the class member, or they move the class member to a facility . . . which can accommodate his needs," id. at 1069, or that when Defendants "become aware of a 'pattern' of ADA noncompliance, they are to notify county jail officials and take steps to remedy the pattern of noncompliance[.]" Id. at 1069-1070.

4

United States District Court
For the Northern District of California

Although the Ninth Circuit affirmed this Court's rulings on the requirements of the ADA, it determined that, although it was a "close question," Plaintiffs had not presented sufficient evidence to justify the system-wide scope of relief ordered. Id. at 1073-1074. The court remanded to allow the development of "additional evidence as may be necessary concerning the nature and extent of the violations of class members' rights taking place in the county jails," and noted that "not much more evidence than that already provided may be required to approve the current order." Id. at 1073-1074.

On August 8, 2011, Plaintiffs filed a renewed Motion to Require Defendants to Track and Accommodate Needs of Armstrong Class Members Housed in County Jails and Ensure Access to a Workable Grievance Procedure. Docket No. 1912. With that motion, Plaintiffs submitted additional evidence of violations in county jails and asked the Court to issue an injunction nearly identical to that in the September 16, 2009 Order.

On October 1, 2011, state legislation commonly known as the prison "realignment" law went into effect. In some cases, realignment has transferred responsibility for post-release supervision of former state inmates from Defendants to the counties. Under realignment, parolees who were already placed on state parole prior to October 1, 2011 remain under the parole supervision of Defendants. Cal. Penal Code § 3000.09(b). Further, persons paroled from state prison on or after October 1, 2011, who fall into certain categories, including having been convicted of certain serious or violent felonies, continue to be placed on state parole under the jurisdiction and supervision of

Defendants.  Cal. Penal Code § 3000.08(a), (c).  However, lower-level offenders who are released from state prison on or after October 1, 2011 and do not fall into the above-mentioned categories are instead supervised on release by counties under the newly created Post-Release Community Supervision (PRCS) program. Cal. Penal Code §§ 3000.08(a), 3451.

In addition to changing in some cases whether counties or Defendants were responsible for supervision of individuals after release from state prison, realignment also mandated that state parolees with pending revocation charges or serving revocation terms could not be returned to state prison, with certain exceptions.  Specifically, Penal Code section 3056 was amended to read as follows,

> Prisoners on parole shall remain under the supervision of the department but shall not be returned to prison except as provided in subdivision (b) [which allows the return to prison of certain individuals serving life parole terms] or as provided by subdivision (c) of Section 3000.09 [which allows the return to prison of parolees who were pending final adjudication of a parole revocation charge prior to October 1, 2011].  Except as provided by subdivision (c) of Section 3000.09, upon revocation of parole, a parolee may be housed in a county jail for a maximum of 180 days.  When housed in county facilities, parolees shall be under the legal custody and jurisdiction of local county facilities. When released from custody, parolees shall be returned to the parole supervision of the department for the duration of parole.

Cal. Penal Code § 3056(a).  Thus, although individuals who were serving life parole terms or those already facing a revocation charge before October 1, 2011 could be returned to state prison for parole violations, other state parolees no longer could be and instead were required by state law to serve such terms in county jails.  Realignment did not alter Defendants' ability to house

state prison inmates temporarily in county jails during the
pendency of state court proceedings, which they refer to as
sending inmates "out-to-court."

In opposition to Plaintiffs' renewed motion, Defendants
argued primarily that, under the realignment statute, state
parolees were no longer members of the Armstrong class when they
were housed in county jails.  Defendants also made arguments
related to federalism and abstention.  Defendants did not pursue
their prior claims that Plaintiffs could not prove that disabled
parolees were not being accommodated in county jails.

On January 13, 2012, the Court granted Plaintiffs' renewed
motion, Docket No. 1974, and issued an Amended Order granting the
motion on April 11, 2012, Docket No. 2034.  On April 11, 2012, the
Court also denied Defendants' motion to stay.  Docket No. 2035.
In so ruling, the Court rejected Defendants' argument that section
3056, as then phrased, relieved them of responsibility toward
parolees housed in county jails, and held that state parolees are
jointly in the custody and control of Defendants and the relevant
county during that time.  The Court explained that it "declines to
read the words 'sole' or 'exclusive' into the text of California
Penal Code section 3056 before the words 'legal custody and
jurisdiction of local county facilities.'"  Id. at 2.  In
rejecting Defendants' argument that the language of section 3056
stating that parolees would be "returned to the parole supervision
of the department" after being released from a county jail meant
that parolees had left Defendants' "custody and jurisdiction" when
they entered the county jail, the Court stated in part,

United States District Court
For the Northern District of California

> Contrary to Defendants' characterization, the word "supervision" does not have the same meaning as "jurisdiction."  The clear meaning of the statutory text stating that "parolees shall be returned to the parole supervision" of the state is simply that parolees are not terminated from parole when they violate the terms of their supervision and serve a revocation term in county jail, but instead must continue on parole supervision afterwards.

Id. at 2.  Further, the Court noted,

> Defendants point to no part of state law that restricts their discretion in determining in which county jail they may house that parolee.  State law does not appear to require Defendants to choose to house parolees with disabilities in county jails that do not provide adequate accommodations to them.

Id. at 3.  The Court also pointed out that Defendants "do not challenge the portion of the Court's order that addressed state parolees and prisoners that are held in county jails for reasons other than section 3056," that they "do not dispute that there are currently class members still housed in county jails or that Defendants' system-wide policies and practices have caused, and continue to cause, substantial injury to class members," and that, even if Defendants were to prevail on appeal, "they will nevertheless be required to formulate a plan to carry out the prescribed injunctive relief for the remaining individuals for whom they are indisputably responsible."  Id. at 5.

The Amended Order required, among other things, that Defendants "develop a revised plan for ensuring timely and appropriate accommodations for Armstrong class members in county jails" within thirty days and disseminate it in final form to the counties and Defendants' personnel within forty-five days.  Docket No. 2034, 37, 41.  The Amended Order further provided, "The Court shall retain jurisdiction to enforce the terms of this Injunction."  Id. at 43.

On April 30, 2012, Defendants filed a notice of appeal from the Court's April 11, 2012 Orders.  Docket No. 2039.

On May 2, 2012, Defendants filed in the Ninth Circuit an urgent motion to stay the April 11 Amended Order pending appeal. Docket No. 3-1, CA9 Case No. 12-16018.  In the motion to stay before that court, Defendants stated that they "do not request a stay of the injunction for state prison inmates temporarily housed in county jails (i.e. 'out-to-court' inmates) or parolees sentenced to life terms, because CDCR has the legal authority to return these individuals to a state prison."  Id. at 2.

On May 23, 2012, the Ninth Circuit denied Defendants' motion to stay and sua sponte expedited the appeal, although it did not change the briefing schedule previously set.  Docket No. 6, CA9 Case No. 12-16018.  No hearing date had been set at that time.

The parties engaged in a number of meet and confer sessions, many of which were mediated by the Court's expert, to develop a revised county jail plan to comply with the Court's orders. Grunfeld Decl. ¶¶ 2-34.  By June 26, 2012, the parties had agreed in substance on a revised plan that was ready to be distributed to Defendants' employees and the counties.  Id. at ¶¶ 11-13, Exs. H, I.

Under the agreed revised plan, among other things, CDCR would send daily electronic notifications to the counties regarding any newly booked parolees who are Armstrong class members, providing information about their disability status and the accommodations previously provided.  Id. at ¶¶ 11-12, Ex. H, 2.  Parole/Notice Agents employed by Defendants, who already meet with parolees as part of a notice of rights process, would ask class members to

United States District Court
For the Northern District of California

self-identify any disability needs related to housing and programming, would provide class members with a Reasonable Modification or Accommodation Request CDCR form 1824 and a self-addressed, postage-paid envelope, and inform class members that they could use the form to file a grievance if they are not receiving a housing or programming accommodation in the county jail. _Id._ at 3.  They would assist class members in completing the form 1824 if those inmates were unable to do so on their own due to a disability. _Id._  Parole/Notice Agents would also inform class members of and encourage them to use the county jail's grievance process as well if they needed disability accommodations. _Id._  They would tell county jail staff, within four business days after a disabled inmate's arrival at the county jail, of his or her need for an accommodation or a medical or mental health examination and document this communication. _Id._ at 4.  A similar process would be implemented for "out-to-court" inmates. _Id._ at 4-5.  When Defendants received a CDCR form 1824, they would enter it into a tracking system and respond to it within a certain timeframe, depending on whether or not the issue was deemed to be an emergency. _Id._ at 4.  Defendants would notify the involved county of the grievance as soon as possible and no later than three business days after receipt. _Id._  Defendants would also review all grievances to identify patterns of denials of disability accommodations, would notify the involved county's legal counsel within five days of discovery of such a pattern, would investigate the situation to the extent possible, and would determine what steps, if any, could be taken to remedy the situation. _Id._ at 7.

By late June 2012, Defendants had also developed a schedule to begin implementing the plan by September 1, 2012.  Grunfeld Decl. ¶¶ 19-20, Ex. O.  The parties discussed how to disseminate the final plan to the counties.  On June 28, 2012, Plaintiffs emailed a draft of a proposed joint letter, to be signed by both sides, that would accompany the revised plan when it was disseminated to the counties.  Id. at ¶ 26, Ex. O.  Plaintiffs asked for a conference call with the Court's expert and Defendants to discuss the letter.  Id.  Plaintiffs wrote follow up emails to Defendants on July 2 and 4, 2012 but received no response.  Id. at ¶ 27, Ex. R.

Meanwhile, on June 27, 2012, the Defendant Governor approved Senate Bill 1023, which further amended Penal Code section 3056 to read as follows,

> Prisoners on parole shall remain under the supervision of the department but shall not be returned to prison except as provided in subdivision (b) or as provided by subdivision (c) of Section 3000.09.  A parolee awaiting a parole revocation hearing may be housed in a county jail while awaiting revocation proceedings. If a parolee is housed in a county jail, he or she shall be housed in the county in which he or she was arrested or the county in which a petition to revoke parole has been filed or, if there is no county jail in that county, in the housing facility with which that county has contracted to house jail inmates.  Additionally, except as provided by subdivision (c) of Section 3000.09, upon revocation of parole, a parolee may be housed in a county jail for a maximum of 180 days per revocation.  When housed in county facilities, parolees shall be under the sole legal custody and jurisdiction of local county facilities.  A parolee shall remain under the sole legal custody and jurisdiction of the local county or local correctional administrator, even if placed in an alternative custody program in lieu of incarceration, including, but not limited to, work furlough and electronic home detention.  When a parolee is under the legal custody and jurisdiction of a county facility awaiting parole revocation proceedings or upon revocation, he or she shall not be under the parole supervision or jurisdiction of the department.  When

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

released from the <u>county facility or county alternative custody program following a period of custody for revocation of parole or because no violation of parole is found, the parolee</u> shall be returned to the parole supervision of the department for the duration of parole.

Cal. Penal Code § 3056(a) (substantive additions to prior version underlined).

On July 6, 2012, Defendants filed a motion before the Ninth Circuit seeking reconsideration of its denial of their motion to stay and arguing that the June 27, 2012 amendment to Penal Code section 3056 had "unequivocally" established that parolees in county jails are no longer _Armstrong_ class members.   Docket No. 7, CA9 Case No. 12-16018.

On July 9, 2012, Defendants sent Plaintiffs and the Court's expert a letter stating that they "have no discretion to ignore" amended section 3056 or to "monitor county jail inmates over whom they have no custody, control, or jurisdiction," and that they "believe that the courts would not want the parties to undertake a plan regarding county jail inmates before the Ninth Circuit has the opportunity to review the new law."   Grunfeld Decl. ¶ 30, Ex. V.   Defendants also stated that they would "shortly complete a new plan concerning out-to-court state prison inmates and the life-term parolees who can be returned to state prison."   _Id._

On July 10, 2012, the parties conducted their regularly scheduled meet and confer session.   Grunfeld Decl. ¶ 31.   At that meeting, Defendants stated that they would not be issuing the revised county jail plan to the counties or to CDCR staff in light of revised Penal Code section 3056.   _Id._

On July 12, 2012, Defendants sent an email to all fifty-eight California counties, attaching the revised plan, labeled on each

page with the word "draft," and summarizing the status of the appeal.  Grunfeld Decl. ¶ 32, Ex. X.  In the email, Defendants stated in part,

> While I send you the draft plan, it will not be implemented at this time until we hear whether the renewed request for a stay is granted.  If it is granted, we will send out a revised plan which addresses only the population over whom CDCR has continuing authority.  CDCR is currently working to develop such a plan.

Id.  Defendants did not explain what they would do if the stay were denied, as soon happened.

On July 16, 2012, Plaintiffs filed the instant motion, asking this Court to issue an order enforcing the April 11, 2012 Amended Order by requiring Defendants to disseminate to the counties and Defendants' employees the agreed revised plan without a "draft" label, to train their employees in accordance therewith, to implement the plan by September 15, 2012 according to the parties' agreed schedule with minor modifications, and to hire and train sufficient staff to do so.  Docket No. 2161.

On July 19, 2012, the Ninth Circuit denied Defendants' motion for reconsideration of the denial of their motion to stay, without prejudice to Defendants raising in their merits briefs any issue raised in the motion for reconsideration.  Docket No. 8, CA9 Case No. 12-16018.  The Ninth Circuit also shortened the briefing schedule and set a hearing for September 5, 2012.

On July 30, 2012, Defendants responded in this Court to Plaintiffs' motion to enforce.  Docket No. 2170.  In their opposition, Defendants did not argue that they were in compliance with the Amended Order or indicate that they intended to comply with it.  Instead, as noted above, they asked the Court to find

United States District Court
For the Northern District of California

that the change in section 3056 had rendered the Amended Order
unenforceable.  They alternatively asked that the Court stay the
Amended Order.

On August 22, 2012, the parties filed a joint case status
statement.  In the joint statement, Defendants indicated in part,

> Defendants plan to conduct employee training in August
> 2012, and Plaintiffs' counsel have agreed to attend an
> August 30, 2012 training session.  Defendants also plan
> to implement an e-mail notification system to the
> counties by September 1, 2012 of disability related
> information pertaining to purported class members as of
> the date they were released from prison.

Docket No. 2181, 21.  This indicated that Defendants were prepared
to comply in part with the Court's Amended Order.

On August 23, 2012, the Court held a hearing on the instant
motion.  At the hearing, Defendants affirmed that they intended to
comply in part with the Amended Order and to carry out the agreed
revised plan in part.  Defendants stated that, as of September 1,
2012, they would begin providing email notices to county jails
setting forth the disability status and previously provided
accommodations for all of the individuals covered in the Amended
Order, including parolees subject to section 3056, with copies to
Plaintiffs' counsel.  They further represented that, as of that
date, they would implement the remaining provisions of the plan,
but as to the "out-to-court" prisoners and life parolees only.
Thus, they would give only the "out-to-court" prisoners and life
parolees a grievance form and means to return it and they would
act upon such forms that they received.  Defendants also stated
that they would go forward with training their Notice Agents
regarding all of the provisions of the revised plan, using
training material agreed upon with Plaintiffs on June 13, 2012.

United States District Court
For the Northern District of California

Defendants clarified that this training would cover all provisions that pertained to the parolees subject to section 3056 and would not be limited to "out-to-court" prisoners and life parolees.

DISCUSSION

Defendants must obey the Amended Order unless and until this or another court has relieved them of that responsibility, through a stay, reversal or modification of the order. The "established doctrine" is that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." Gte Sylvania v. Consumers Union of United States, 445 U.S. 375, 386 (1980); see also Wedbush, Noble, Cooke, Inc. v. SEC, 714 F.2d 923, 924 (9th Cir. 1983) ("the mere pendency of the appeal does not, in itself, disturb the finality of the judgment").

This Court does not have jurisdiction to decide whether the amendment to section 3056 has rendered the Amended Order unenforceable. "Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." Natural Res. Def. Council v. Southwest Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam); McClatchy Newspapers v. Central Valley Typographical Union No. 46, 686 F.2d 731, 734 (9th Cir. 1982)). The purpose of this rule "is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." Id. (citing Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 956 (9th Cir. 1983); Moore's Federal Practice,

United States District Court
For the Northern District of California

§ 303.32[1] (3d ed. 2000)).  This rule "is a creature of judicial

prudence, however, and is not absolute."  <u>Masalosalo</u>, 718 F.2d at

956.

This Court does retain "jurisdiction during the pendency of

an appeal to act to preserve the status quo."  <u>Natural Res. Def.</u>

<u>Council</u>, 242 F.3d at 1166.  <u>See also</u> <u>Newton v. Consolidated Gas</u>

<u>Co.</u>, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the

trial court may, if the purposes of justice require, preserve the

status quo until decision by the appellate court").  This

exception "has been codified in Rule 62(c) of the Federal Rules of

Civil Procedure, which allows a district court to 'suspend,

modify, restore, or grant an injunction during the pendency of the

appeal upon such terms as to bond or otherwise as it considers

proper for the security of the rights of the adverse party.'"

<u>Natural Res. Def. Council</u>, 242 F.3d at 1166 (quoting Federal Rule

of Civil Procedure 62(c)).  The Ninth Circuit has cautioned that

the Rule "does not restore jurisdiction to the district court to

adjudicate anew the merits of the case" and that any action taken

pursuant to it "may not materially alter the status of the case on

appeal."  <u>Id.</u> (citations and quotation marks omitted).  <u>See also</u>

<u>McClatchy</u>, 686 F.2d at 735 (after appeal is filed, the district

court "may not finally adjudicate substantial rights directly

involved in the appeal") (quotations omitted).

Further, although the Court does not have jurisdiction to

decide the merits of the issue that is currently on appeal, "a

district court has continuing jurisdiction in support of its

judgment, and 'until the judgment has been properly stayed or

superseded, the district court may enforce it . . .'"  <u>Resolution</u>

**United States District Court**
For the Northern District of California

<u>Trust Corp. v. Smith</u>, 53 F.3d 72, 76 (5th Cir. 1995) (quoting <u>Farmhand, Inc. v. Anel Engineering Industries, Inc.</u>, 693 F.2d 1140, 1146 (5th Cir. 1982)). <u>See also</u> <u>Lara v. Secretary of Interior</u>, 820 F.2d 1535, 1543 (9th Cir. 1987) ("The district court may issue orders pending appeal to enforce its judgment."); <u>Hoffman v. Beer Drivers & Salesmen's Local No. 888</u>, 536 F.2d 1268 (9th Cir. 1976) ("Where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken.").

As Plaintiffs point out, the cases that Defendants cite to urge the Court to reexamine the validity of the Amended Order do not compel a contrary conclusion. Two of the cases address the "general rule" that "an appellate court must apply the law in effect at the time it renders its decision," including in situations when the relevant law changed after the trial court rendered its judgment. <u>Thorpe v. Housing Auth. of Durham</u>, 393 U.S. 268, 281-282 (1969). <u>See also</u> <u>Lambert v. Blodgett</u>, 393 F.3d 943, 973 (9th Cir. 2004) ("it is well established . . . that if the law changes while the case is on appeal the appellate court applies the new rule"). In the other two cases, the district court held that, when a higher court issued new controlling authority while a motion was pending but after briefing was completed, when rendering a decision, the court was required to apply the law as it existed at the time of decision, including the

17

new appellate authority.  <u>Kwiatkowski v. Dickinson</u>, 2012 U.S. Dist. LEXIS 34531, at *12-13 (E.D. Cal.); <u>DeVries v. Cate</u>, 2011 U.S. Dist. LEXIS 76409, at *8-9 (E.D. Cal.).  None of these cases stands for the proposition that a trial court may revisit the legal reasoning underlying an order that is currently on appeal in order to apply new law to it.

Although the Court lacks the jurisdiction to reconsider the Amended Order, the Federal Rules of Appellate Procedure provide a procedure under which a district court could do so.  Specifically, Rule 12.1 provides, "If a timely motion is made in the district court for relief that it lacks authority to grant because of an appeal that has been docketed and is pending," the district court may state "either that it would grant the motion or that the motion raises a substantial issue," in which case "the court of appeals may remand for further proceedings."  Federal Rule of Appellate Procedure 12.1(a),(b).  Defendants did not make a motion for an indicative ruling from this Court or seek such relief.

Finally, however, in considering a request for a stay, the Court can consider the effect of a change in the law when evaluating the likelihood of success on the merits of an appeal. The Court does not find that revised section 3056 renders it likely that Defendants will succeed on appeal.  The changes in section 3056 did not affect several of the bases for the Amended Order.  Class members are still placed into county jails by virtue of their status as state parolees and they do not cease to be state parolees when they are in county jails.  Among other things, Defendants continue to exercise control and authority over the parole revocation process, including investigation and charging

parolees with violations, placing parole holds on them, arresting and detaining them, determining how long their revocation term will last and deciding whether they should be sent to a county jail or subjected to an alternative sanction, such as placement in a community-based program.  The Court notes that it has not had occasion to consider whether the amendments to section 3056 were passed in order to evade the state's responsibility for compliance with the ADA and, if so, whether such amendments would be void due to the Supremacy Clause of the Constitution.  U.S. Const. art. VI., § 2.  This issue has been briefed in the Ninth Circuit, which may make this decision in the course of the pending appeal.

Accordingly, the Court will not find its order unenforceable or stay it but will exercise its retained jurisdiction to enforce its injunction, as Plaintiffs request.

The Court notes that, in this motion, Plaintiffs do not seek to enforce the Amended Order in full but rather only those provisions contained in the agreed revised plan.  Thus, Plaintiffs do not seek enforcement of many of the provisions of which Defendants complain.  For example, Plaintiffs do not seek to enforce the provision that, if Defendants become aware that a class member is not receiving accommodations that he or she requires, they "immediately take steps with county jail staff to ensure that such accommodations are promptly provided or transfer the class member to a facility that is able to provide accommodations."  Amended Order, 40.  In this motion, Plaintiffs also do not seek to enforce the provisions that would require Defendants to permit them to conduct monitoring tours of county jail facilities and interview county jail staff members.

Accordingly, Defendants' arguments regarding these provisions are irrelevant to the present motion.

Instead, Plaintiffs seek to require Defendants to carry out the revised plan to which Defendants had previously agreed.  The Court has found that such measures were narrowly drawn and were the least intrusive means necessary to correct the ongoing violations of federal rights, substantial evidence of which Plaintiffs previously proffered in support of their earlier motion.  The Court further notes that, in conjunction with the instant motion to enforce, Plaintiffs have submitted additional evidence of ongoing harm to class members in county jails.[1]

---

[1] Defendants object to Exhibits F through M, Q, R, T and V to the Freedman declaration on the basis that these declarations and letters were written by state parolees and "parolees are not <u>Armstrong</u> class members when they are in county jail." Opp. at 16.  The Court has already held that state parolees continue to be class members during the time they are held in county jail for parole revocation proceedings or terms.  Accordingly, the Court OVERRULES this objection.

Defendants also object to Exhibits E and L through P to the Freedman declaration on the basis that these declarants are county jail inmates who have not established that they are parolees or class members or were not diagnosed with a disability by CDCR and the declarations are therefore not relevant.  Opp. at 16. However, even if these specific examples "do not involve class members, they support the inference that county jails do not provide reasonable accommodations for prisoners with disabilities who are class members." Order Granting Plaintiffs' Motion to Require Defendants to Track and Accommodate Needs of <u>Armstrong</u> Class Members Housed in County Jails and Ensure Access to a Workable Grievance Procedure, Docket No. 1587, at 10 (citing Federal Rule of Evidence 401).  Accordingly, the Court OVERRULES these objections.

Although Defendants may not have had a full opportunity to investigate and respond to these declarations, they are nonetheless prima facie evidence that class members continue to suffer harm as Defendants delay their compliance with the Court's order.

To the extent that, in their opposition, Defendants ask that the Court stay the Amended Order pending the Ninth Circuit's resolution of their appeal, the Court continues in its view that a stay is not warranted considering the merits of the appeal and the balance of hardship. As the Court previously determined, "class members will continue to suffer substantial harm for each day that their disabilities are not accommodated," and this outweighs "the speculative administrative and monetary arguments and evidence" that was previously presented by Defendants. Docket No. 2035, 6. In the instant briefing, Defendants have not raised claims of irreparable harm that they would suffer in the absence of relief.

Defendants do not dispute that they have not disseminated a plan as required by the Amended Order and that they do not intend to implement a plan with all of the elements contained therein. Instead, although they will provide counties with initial notifications of the disability accommodation needs of all of the class members, including those whose status they dispute, they

Defendants further object to specific statements within Exhibits F, G, I, J, K, L, N, O and Q, as well as the letters submitted as Exhibits R, T and V, as inadmissible hearsay or without foundation. Because the Court would reach the same determination, that the evidence submitted constitutes prima facie evidence of ongoing harm to class members in county jails, regardless of these particular statements, the Court SUSTAINS Defendants' objections.

United States District Court
For the Northern District of California

intend to carry out the remainder of their agreed revised plan with respect only to the life parole and "out-to-court" subsets of the class members covered in the Amended Order.  The Court also notes that the deadlines contained in the Amended Order for dissemination and implementation of a revised plan have long since passed.  Accordingly, the Court concludes that a further enforcement order is necessary to ensure compliance with the terms of the Amended Order and GRANTS Plaintiffs' motion to enforce it. The Court further finds that the relief ordered herein is narrowly drawn, extends no further than necessary to correct the violations of federal rights, and is the least intrusive means necessary to correct the violations of the federal rights found in the Amended Order.

CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motion to enforce the Amended Order (Docket No. 2161).  The Court ORDERS as follows:

1.   Within three (3) business days of the issuance of this Order, Defendants shall disseminate the plan to which the parties agreed on June 26, 2012 (the "County Jail Plan"), a draft copy of which is attached as Appendix A, to all of Defendants' personnel who have responsibility for implementing any provisions of the County Jail Plan.  The County Jail Plan disseminated by Defendants shall not indicate that the County Jail Plan is a draft or non-final.  Defendants must also inform their personnel with responsibility for tasks described in the County Jail Plan that they will receive training on the elements of the County Jail Plan for which they will be responsible.

United States District Court
For the Northern District of California

2.    Within three (3) business days of the issuance of this Order, Defendants shall disseminate the County Jail Plan, without any indication that it is a draft or non-final, to the Sheriffs, County Jail Administrators and County Counsel of each of the fifty-eight counties.  A copy of this Court's Order Distributing and Enforcing the Amended County Jail Order and Plan, filed today, shall be disseminated along with the County Jail Plan.

3.    Training of all Parole/Notice Agents and interim ADA coordinator(s) or designee(s), using the June 13, 2012 PowerPoint presentation, shall be completed no later than September 15, 2012. Plaintiffs' counsel may attend the training session.

4.    On or before September 1, 2012, Defendants shall send an email notification to each county's legal counsel or designee identifying each parolee with a disability, including those subject to California Penal Code section 3056, being held in that county's jail facilities on that date.  Beginning on September 1, 2012, Defendants shall send email notifications once per day to each county's legal counsel or designee identifying each parolee with a disability booked in that county's jail facilities over the past 24 hours.  The notifications must include each parolee's name, CDCR identification number, and last release date from prison.  The notification must also include a plain-language description of each parolee's last-known disabilities and the accommodations in housing or programming the parolee received as of the date he or she was released from prison.

5.    On or before September 15, 2012, Defendants shall send an email notification to each county's legal counsel or designee identifying each CDCR out-to-court prisoner with a disability

being held in that county's facilities on that date.  Beginning on

September 15, 2012, Defendants shall send email notifications once

per day to each county's legal counsel or designee identifying

each CDCR out-to-court prisoner with a disability sent to that

county's facilities in the past 24 hours.  The notification will

include each CDCR out-to-court prisoner's name and CDCR

identification number.  The notification will also include a

plain-language description of the out-to-court prisoner's

last-known disabilities and the accommodations in housing or

programming the prisoner received as of the date he or she was

transferred from a prison.

6.   Beginning on September 15, 2012, Defendants shall

provide CDCR grievance forms and stamped envelopes addressed to

CDCR to all parolees and out-to-court prisoners with disabilities

housed in county jails.  CDCR personnel shall encourage parolees

and out-to-court prisoners also to use the county jail's grievance

process to request disability accommodations.  Whenever Defendants

receive a completed grievance form from a parolee or out-to-court

prisoner in county jail, they shall forward the grievance form to

the county's legal counsel or designee as soon as possible and no

later than three business days after receipt.  Defendants shall

respond to the grievances within the timeframes set forth in the

County Jail Plan.

7.   Beginning no later than September 15, 2012, if CDCR

personnel become aware that an out-to-court prisoner or parolee

with a disability faces an urgent or emergency situation (for

example, if there is an allegation of a condition that is a threat

to the individual's health or safety or that would prevent his or

her participation or effective communication in a parole revocation proceeding), Defendants shall notify the county's designee or legal counsel immediately.

8. Defendants must implement all remaining provisions of the County Jail Plan by September 15, 2012. This includes, but is not limited to, the requirements that they must review and respond to grievances they receive from disabled parolees, promptly share grievances with county officials, review grievances to identify patterns of denials of disability accommodations, and investigate any such patterns identified.

9. Defendants shall train sufficient staff and implement all necessary procedures such that all provisions of the County Jail Plan are operational by September 15, 2012.

IT IS SO ORDERED.

Dated:   8/28/2012

CLAUDIA WILKEN
United States District Judge