IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | No. C 94-2307 CW |
|     Plaintiffs, | ORDER GRANTING MOTION FOR FURTHER ENFORCEMENT |
|   v. | (Docket No. 2436) |
| EDMUND G. BROWN, JR., et al., | |
|     Defendants. | |

Plaintiffs Armstrong, et al., move for an order for further enforcement of the 2007 injunction, applicable to all California Department of Corrections and Rehabilitation (CDCR) prisons. They allege that Defendants Brown, et al., continue to place Class Members in administrative segregation due to a lack of accessible housing. Having considered the parties' briefs and their arguments at the January 29, 2015 hearing, the Court finds that Defendants are regularly housing <u>Armstrong</u> class members in administrative segregation due to lack of accessible housing, in violation of this Court's previous orders and the Americans with Disabilities Act (ADA). Accordingly, the Court GRANTS Plaintiffs' motion.

BACKGROUND

In a series of orders between 1996 and 2002, the Court found that Defendants' treatment of prisoners with disabilities violated the American with Disabilities Act (ADA) and § 504 of the Rehabilitation Act. On January 3, 2001, Defendants issued the

amended Armstrong Remedial Plan (ARP) setting forth their own policies and plans to come into compliance with their obligations under these federal laws. Among other things, the ARP addressed the housing of class members in administrative segregation.

In 2012, the parties developed jointly a system by which Armstrong class members are moved out of administrative segregation as CDCR looks for an accessible bed. See Docket No. 2209 at 6-7. In relevant part, the parties' agreement stated:

> (b) Defendants agreed to provide internal documents showing all Armstrong class members housed in administrative segregation and housed two levels above their designated security level due to lack of bed space, (c) Defendants agreed to make their best effort to classify and transfer prisoners housed two levels out of their security level within 30 days, (d) Defendants agreed to draft model Local Operating Procedures (LOPs) that state that it is departmental policy not to house prisoners in administrative segregation due to lack of bed space and requiring institutions to take immediate action to transfer such prisoners, including contacting CDCR headquarters to expedite the transfer if not resolved within 72 hours.

Id. Despite this agreement, according to CDCR's logs from July 2013 through July 2014, 211 Class Members were held in administrative segregation for some period of time, thirty-five of them in July 2014 alone. These time periods ranged from less than twenty-four hours to a month or more. See Docket No. 2436 at 11.

DISCUSSION

The Court finds that housing disabled class members in administrative segregation solely because of their disabilities violates this Court's prior orders, including the 2001 Injunction, which declares that the "CDCR has a duty to maintain in operable working condition structural features and equipment necessary to make the prison system's services, programs, and activities accessible to disabled inmates." Mar. 21, 2001 Permanent

2

Injunction, Docket No. 694, at ¶ 4.  The practice also violates the 2007 Injunction, which prohibits CDCR from "hous[ing] [class members] at any placements without adequate accessible housing . . ." and orders adherence to the Armstrong Remedial Plan requirement that no prisoner with a disability "shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the Department or be subjected to discrimination."  2007 Injunction at 6, 9, Armstrong Remedial Plan, Sec. I, p. 1.

Defendants' practice also violates the ADA and its implementing regulations, which prohibit prison officials from placing prisoners "with disabilities in inappropriate security classifications because no accessible cells or beds are available" and from placing prisoners with disabilities "in facilities that do not offer the same programs as the facilities where they would otherwise be housed."  28 CFR § 35.152(b)(2).

Accordingly, the Court finds that in order to ensure compliance with this Court's orders and with the ADA and its implementing regulations, it is necessary to prohibit Defendants from housing Armstrong class members in administrative segregation due to a lack of accessible bed space.  The Court finds that the Order set forth below complies with the PLRA; it is narrowly drawn, extends no further than necessary to correct the violation of the federal rights of Armstrong class members, and is the least intrusive means necessary to correct that violation.  While it is true that the majority of instances of this practice took place at one institution, the practice occurred at other institutions as well.  Further, transfers into non-complying institutions come

3

from other institutions, with the involvement of CDCR officials with state-wide jurisdiction. Thus, it would not be efficacious to limit the within order only to the least compliant receiving institution. The Court's prior orders have applied state-wide.

Accordingly, Defendants are prohibited from housing <u>Armstrong</u> class members in administrative segregation because no accessible cells or beds are available. The Court orders that if Defendants place an <u>Armstrong</u> class member in administrative segregation due to the lack of an accessible bed, they must fully document their reasons for doing so. The documentation shall explain why the prisoner was sent to a prison that could not accommodate his or her disability, the status of all the accessible beds in the facility, such that compaction is not an option, and all of the steps taken to find an accessible bed before placing the class member in administrative segregation. The reports shall continue to document how many class members were placed in administrative segregation due to their disabilities and for how long, expressed in actual hours, not "business" hours. This report must be provided to Plaintiffs' counsel.

While the Court does not, at this time, impose any particular method by which Defendants must comply with this Order, it notes that Defendants already have at their disposal several means by which to comply. For example, Defendants may make use of their current bed management system to ensure that a class member is not transferred to a facility without first confirming that an accessible bed is available. They may also continue to use their RJD corrective action plan, with enhanced monitoring procedures and specialized training, and expand it to other facilities.

4

Defendants may use beds designated for other purposes, such as medical beds, to house an Armstrong class member while an accessible bed is found.  Defendants may also use another form of overflow housing that does not house Armstrong class members in a manner prohibited by this Order.  Finally, Defendants could implement some of Plaintiffs' suggestions, including having the ADA coordinators at both the receiving and sending institutions communicate to ensure that, prior to a class member's transfer, an accessible bed is available and that the receiving institution can hold that bed until the class member arrives.

Within thirty days of the date of this Order, Defendants shall submit a report to this Court and Plaintiffs' counsel describing the steps they have taken to comply with the Order, and attesting to their compliance with the Order.

IT IS SO ORDERED.

Dated:  February 3, 2015

CLAUDIA WILKEN
United States District Judge