IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>EDMUND G. BROWN, JR. et al.,<br><br>　　　　Defendants.<br>_____/ | No. C 94-2307 CW<br><br>ORDER ON MOTION OF NON-PARTIES FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER<br><br>(Docket No. 2625) |

　　　The California Correctional Peace Officers Association (CCPOA) moves for leave to intervene and to modify the June 6, 2016 Stipulated Protective Order Regarding Disclosure of Defendants' Employees' Personnel Information and Corrective Action Plans (Docket No. 2625).[1]  Plaintiffs John Armstrong et al. and Defendants Edmund G. Brown, Jr. et al. filed responses, and the CCPOA filed a reply.  Having considered the filings, the Court GRANTS the motion for leave to intervene and GRANTS the motion to modify IN PART and DENIES it IN PART.

　　　I.　Intervention

　　　Plaintiffs do not appear to object to the CCPOA intervening under Federal Rule of Civil Procedure 24(b)(1)(B) for the limited

---

[1] Initially, Correctional Officers 1-13 also moved for leave to intervene.  Because the officers, the CCPOA and Plaintiffs agree that the CCPOA adequately represents the officers' interests regarding the protective order, the Court DENIES as moot the motion of Correctional Officers 1-13.  See CCPOA Reply at 1 n.1; Spangler v. Pasadena City Bd. of Ed., 552 F.2d 1326, 1329 (9th Cir. 1977) (listing as Rule 24(b) consideration "whether the intervenors' interests are adequately represented by other parties").

purpose of seeking to modify the June 6 protective order.  See Plaintiffs' Opposition at 3.  Defendants assert that intervention is unnecessary because of the June 6, 2016 protective order's scope and Defendants' willingness to make some modifications.  See Defendants' Response at 4.

"On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  "Rule 24(b) permits limited intervention for the purpose of challenging a protective order."  Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992); see also id. at 473-74.

The CCPOA may intervene for this limited purpose, and its intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b); see Beckman Indus., 966 F.2d at 473-75; Blum v. Merrill Lynch Pierce Fenner & Smith Inc., 712 F.3d 1349, 1353-54 (9th Cir. 2013).  Because the CCPOA may intervene under Rule 24(b), the Court need not address its alternative argument for intervention as of right to modify the protective order.

II.  Modification of Protective Order

"As a general rule, the public is permitted 'access to litigation documents and information produced during discovery.'" In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Phillips v. Gen. Motors Corp.,

2

307 F.3d 1206, 1210 (9th Cir. 2002)).  "Under Rule 26, however, '[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  Id. (quoting Fed. R. Civ. P. 26(c)(1)).  "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003).[2]  In re Roman Catholic Archbishop explained that deciding whether to continue a protective order involves three steps or considerations: (1) "whether the party seeking protection has shown particularized harm" from public disclosure, (2) "whether the balance of public and private interests weighs in favor" of a protective order, and (3) "whether redacting portions of the discovery material will nevertheless allow disclosure."  In re Roman Catholic Archbishop, 661 F.3d at 425.  The Ninth Circuit listed seven factors for balancing the public and private interests at step two.  See id. at 424 & n.5.

a. Modifications to which No Party Objects

Neither Plaintiffs nor Defendants object to the following modifications to the June 6, 2016 protective order:

(1) a provision making clear that the receiving party

---

[2] "While courts generally make a finding of good cause before issuing a protective order, a court need not do so where (as here) the parties stipulate to such an order."  In re Roman Catholic Archbishop, 661 F.3d at 424.  In circumstances involving such a stipulated protective order, "'the burden of proof . . . remain[s] with the party seeking protection.'"  Id. (quoting Phillips, 307 F.3d at 1211 n.1).

3

> must store documents with confidential information in a secure manner, (2) a provision requiring the producing party to affix a legend or Bates stamp indicating that the documents are confidential, (3) a provision accounting for disclosure to outside experts, (4) a deadline by which documents must be destroyed, and (5) notice procedures in the event of subpoena.

Plaintiffs' Opposition at 2 n.2; see Defendants' Response at 4-5. Accordingly, to the extent the CCPOA seeks an order incorporating these modifications, such request is GRANTED.

b. Replacement of Employee Names with Unique Identifiers

The CCPOA argues that Defendants will produce material that is protected under federal law, state law and prior orders of this Court, including material from internal investigations that did not result in a finding of misconduct, risking embarrassment and reputational harm to correctional officers. It adds that including identifying information about employees is unnecessary for Plaintiffs to identify potential Armstrong violations.

The Court agrees with Plaintiffs and Defendants that a protective order with the modifications to which the parties agree suffices to address the CCPOA's privacy-related concerns. See Soto v. City of Concord, 162 F.R.D. 603, 617 (N.D. Cal. 1995).[3]

---

[3] To the extent the CCPOA seeks application of the federal official information privilege, the CCPOA has not followed the Kelly protocol or explained how the CCPOA or individual correctional officers could assert the official information privilege on behalf of the Department of Corrections and Rehabilitation. See Kelly v. City of San Jose, 114 F.R.D. 653, 669-70 (N.D. Cal. 1987). Even assuming the CCPOA could and did do so, it has not described "how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, . . . ." Haddix v. Burris, 2014 WL 6983287, at *3 (N.D. Cal.) (citing Kelly, 114 F.R.D. at 670).

4

Plaintiffs have no interest in correctional officers' names; rather, they need some consistent way of identifying them for Armstrong accountability purposes.  Still, because the modified protective order would limit production to the Court (and its expert and staff) and the attorneys (and their experts and staffs) for use in this litigation, the protective order protects against improper use of the information or its improper dissemination in the prison system.

Defendants argue that replacing correctional officer names with unique identifiers in addition to other protective order provisions would be unnecessary and bring significant costs. Defendants explain that they would need the assistance of a third party vendor to complete this process.  They add that they are producing material that includes handwriting and audio files, increasing the time needed for redaction.  Declaration of Sean Cotulla ¶¶ 5-6.[4]  Defendants initially estimated that this process would require an additional 200 hours and between $10,137 and $12,340.[5]

---

[4] For audio files, Defendants would need to redact names in audio recordings and replace them with unique identifiers or transcribe audio and complete the redaction and replacement in the transcripts.  See Declaration of Sean Cotulla ¶¶ 5-7.

[5] The CCPOA asserts that these costs are minimal in comparison with CDCR's overall budget, but that assertion does not address the cost of redaction when considered against the minimal benefit to correctional officers, as discussed above.  Also, to the extent the CCPOA compares delays in completing this task with the duration of this litigation, it does not address the goal of providing information to Plaintiffs in a timely and efficient manner.

In sum, the CCPOA has not shown good cause to require Defendants to replace correctional officer names with unique identifiers in addition to the provisions of the protective order to which Plaintiffs and Defendants agree.

This conclusion is not affected by the Court's prior orders regarding different protective orders. Previously, the Court ordered Defendants to replace employee names with unique identifiers when producing to Plaintiffs a spreadsheet tracking certain types of allegations against staff, written reports of investigations of employee non-compliance or determinations of whether to initiate disciplinary proceedings against employees. See Docket No. 2180, August 2012 Order at 21-22. The Court also ordered the parties to negotiate a protective order to protect Defendants' employees' rights. See id. at 24. Recently, the Court permitted the California Office of the Inspector General to redact employee names and replace them with unique identifiers. See Docket No. 2624, June 22, 2016 Order. In those instances, the agencies did not explain that they were producing audio and handwritten materials and the costs of replacing names with unique identifiers. The Office of the Inspector General did not oppose the use of unique identifiers in place of employee names. Defendants' new arguments about the costs of such a process for the material it seeks to produce under the June 6, 2016 protective order persuade the Court.

        c. Providing Notice to Non-parties of Production and Copies of Documents Produced

The CCPOA seeks to include a paragraph from this Court's model protective order for litigation involving highly sensitive

6

confidential information that would require notice to a non-party and an opportunity to object or seek a protective order in the event that non-party's confidential information is to be produced in this litigation.  Plaintiffs argue that "as a practical matter, reviewing every record to identify which officers are involved would be highly time consuming for CDCR and would cause undue delays in the document production."  Plaintiffs' Opposition at 9.  Plaintiffs also explain that there already is a protective order in place and, through this motion, the CCPOA has objected to the terms of production to Plaintiffs; no further objections by individual correctional officers will be necessary.  Defendants, however, do not object to incorporating a notice procedure if a non-party's confidential information is to be produced.

The Court will not order that the parties incorporate this notice provision with the other modifications addressed above.  It appears that Defendants already have provided some form of notice to correctional officers when producing their information.  See Declaration of Brent S. Colasurdo, Ex. A, "NOTICE OF PRODUCTION OF EMPLOYEE INFORMATION" ("CDCR is providing notice that you were identified as a subject in case number [redacted].  Therefore, the above-referenced documents will be produced pursuant to Judge Wilken's order.").  Further, the Court agrees with Plaintiffs that individualized notice and opportunity to object would delay discovery and duplicate the CCPOA's motion.  Accordingly, the Court declines to order that the parties incorporate this notice provision in their protective order.

Second, the CCPOA seeks a provision that would allow correctional officers to receive copies of any confidential

7

records CDCR produces in this action.[6]  Defendants and Plaintiffs, however, object.  Defendants seek to keep the records confidential in this action and argue that the CCPOA seeks to use this case to gain access to documents that might not otherwise be available to correctional officers in ongoing investigations.  The CCPOA and Defendants disagree as to whether correctional officers may access certain materials upon request to Defendants.  Compare CCPOA Reply at 9-10 (citing California Peace Officers' Bill of Rights and CDCR Operations Manual) with Defendants' Response at 7-8 (citing CDCR Operations Manual).  The Court need not resolve that issue for purposes of this motion, however.  The CCPOA does not explain how producing the documents to it could prevent unauthorized disclosure or protect officers' rights in a way the protective order's other provisions do not.  Accordingly, the Court declines to require that Defendants produce documents subject to this protective order to the CCPOA when producing them to Plaintiffs.

### d. Scope of Defendants' Production

The CCPOA argues that Plaintiffs and Defendants' protective order would result in Defendants producing material not relevant to Armstrong and requests that the Court narrow the scope of Defendants' production.  See Fed. R. Civ. P. 26(b)(2)(C)(iii).  The CCPOA also argues that Defendants' production of irrelevant

---

[6] In its reply, the CCPOA alternatively indicates that it "is amenable to a provision requiring [that] the documents be produced to [it], under the agreed upon requirement that documents be stamped 'HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY' and be made available only to CCPOA attorneys who are signatories to the protective order."  CCPOA Reply at 10.

8

information will put private employee information at risk of accidental release.

The Court sees no basis to prevent Defendants from providing information they agreed to provide to ensure that they are in compliance with Armstrong and this Court's prior orders.

III. Conclusion

For the reasons above, the CCPOA's motion is GRANTED to the extent the CCPOA seeks leave to intervene to modify the June 6, 2016 protective order, and it is GRANTED IN PART and DENIED IN PART to the extent it seeks a Court order modifying that protective order.

The protective order will be modified as follows: Paragraph number 13 on page 5 will be renumbered <18.> and the following provisions will be added after Line 21 on page 4:

13. Confidential Information must be stored and maintained at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order. Any electronic confidential information must be stored in password-protected form.

14.1 Except as otherwise provided in this Order, or as otherwise stipulated or ordered, disclosure or discovery material that qualifies for protection under this order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this order requires:

(a) for information in documentary form (e.g., paper or electronic documents), that the producing party affix the legend "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "Armstrong v. Brown (94-cv-02307-CW)" to each page that contains Confidential

9

Information.

A party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  After the inspecting party has identified the documents it wants copied and produced, the producing party must determine which documents, or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the Producing Party must affix the appropriate legend to each page that contains Confidential Information.

(b) for information produced in some form other than documentary and for any other tangible items, that the producing party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "Armstrong v. Brown (94-cv-02307-CW)."

14.2  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the designating party's right to secure protection under this order for such material.  Upon timely correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this order.

15.  If a party is served with a subpoena or a court order issued in other litigation that compels disclosure of any

10

Confidential Information that party must:

(a) promptly notify in writing the designating party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this protective order.  Such notification shall include a copy of this stipulated protective order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose confidential information may be affected.

If the designating party timely seeks a protective order, the party served with the subpoena or court order shall not produce any Confidential Information before a determination by the court from which the subpoena or order issued, unless the party has obtained the designating party's permission.  The designating party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

16.  Within 60 days after the final disposition of this action, as defined in the subsequent paragraph, each receiving party must return all Confidential Information to the producing party or destroy such material.  As used in this subdivision, "all Confidential Information" includes all copies, abstracts, compilations, summaries, and any other format reproducing or

11

capturing any of the Confidential Information.  Whether the Confidential Information is returned or destroyed, the receiving party must submit a written certification to the producing party (and, if not the same person or entity, to the designating party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Confidential Information that was returned or destroyed and (2) affirms that the receiving party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Confidential Information.  Notwithstanding this provision, counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain protected material.  Any such archival copies that contain or constitute protected material remain subject to this protective order as set forth below.

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a designating party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be determined by order of the Court.

12

17. Unless otherwise ordered by the Court, a party that seeks to disclose to an expert any Confidential Information under this protective order first must provide written notice to the designating party that identifies the expert to whom that disclosure would be made.

IT IS SO ORDERED.

Dated: August 16, 2016

CLAUDIA WILKEN
United States District Judge

13