1  DONALD SPECTER – 083925
   RITA K. LOMIO – 254501
2  MARGOT MENDELSON – 268583
   PRISON LAW OFFICE
3  1917 Fifth Street
   Berkeley, California  94710-1916
4  Telephone:   (510) 280-2621
   Facsimile:   (510) 280-2704
5
6  MICHAEL W. BIEN – 096891
   GAY C. GRUNFELD – 121944
7  PENNY GODBOLD – 226925
   MICHAEL FREEDMAN – 262850
   ROSEN BIEN
8  GALVAN & GRUNFELD LLP
   101 Mission Street, Sixth Floor
9  San Francisco, California  94105-1738
   Telephone:   (415) 433-6830
10 Facsimile:   (415) 433-7104
11 LINDA D. KILB – 136101
   DISABILITY RIGHTS EDUCATION &
12 DEFENSE FUND, INC.
   3075 Adeline Street, Suite 201
13 Berkeley, California  94703
   Telephone:   (510) 644-2555
14 Facsimile:   (510) 841-8645
15 Attorneys for Plaintiffs

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                    OAKLAND DIVISION

19 JOHN ARMSTRONG, et al.,            Case No. C94 2307 CW

20         Plaintiffs,               **[REDACTED] DECLARATION OF
                                     MICHAEL FREEDMAN IN SUPPORT
21      v.                           OF MOTION TO STOP DEFENDANTS
                                     FROM ASSAULTING, ABUSING AND
22 GAVIN NEWSOM, et al.,             RETALIATING AGAINST PEOPLE
                                     WITH DISABILITIES AT R.J.
23         Defendants.               DONOVAN CORRECTIONAL
                                     FACILITY AND EXHIBITS 1-90**
24
25                                   Judge:  Hon. Claudia Wilken
                                     Date:   May 19, 2020
26                                   Time:   2:00 p.m.
                                     Crtrm.: TBD, Oakland

27              **REDACTED**

28

1    I, Michael Freedman, declare:

2    1.    I am an attorney duly admitted to practice before this Court. I am senior

3    counsel to the law firm of Rosen Bien Galvan & Grunfeld LLP, counsel of record for

4    Plaintiffs. I have personal knowledge of the facts set forth herein, and if called as a

5    witness, I could competently so testify. I make this declaration in support of Plaintiffs'

6    Motion to Stop Defendants from Assaulting, Abusing and Retaliating Against People with

7    Disabilities at R.J. Donovan Correctional Facility.

8    2.    I have worked as Plaintiffs' counsel in *Armstrong v. Newsom* for most of the

9    past ten years. I have been one of the attorneys assigned to monitor Defendants'

10   compliance with the Americans with Disabilities Act, Rehabilitation Act, this Court's

11   orders, and the *Armstrong* Remedial Plan. In particular, I have been one of the attorneys

12   assigned to monitor conditions at Richard J. Donovan Correctional Facility ("RJD") in San

13   Diego. I conducted my first monitoring tour at RJD in November 2010. Since then, I have

14   been to RJD approximately twenty times, including five times in the past year. During my

15   various visits and tours of RJD, I estimate that I have interviewed more than 400

16   *Armstrong* class members housed at the prison.

17   3.    Attached hereto as **Exhibit 1** is a true and correct copy of a letter without

18   attachments with the subject "Staff Misconduct at Richard J. Donovan Correctional

19   Facility" from Gay Crosthwait Grunfeld to Russa Boyd and Nicholas Weber dated

20   November 13, 2019.

21   4.    Attached hereto as **Exhibit 2** is a true and correct copy of a memorandum

22   authored by Associate Warden Bishop dated December 10, 2018 and entitled "Findings of

23   Inmate Interviews at Richard J. Donovan Correctional Facility, December 4-5, 2018."

24   5.    Attached hereto as **Exhibit 3** is a true and correct copy of a memorandum

25   dated January 26, 2018 [sic] (2019) authored by Sgt. ▮▮▮▮ to Patrick Covello, Warden

26   of RJD entitled "Richard J. Donovan Correctional Facility, Facility C, further

27   investigation/referral."

28

[3496005.3]

6. Attached hereto as **Exhibit 4** is a true and correct copy of a memorandum dated January 26, 2018 [sic] (2019) authored by Sgt ██████ to Patrick Covello, Warden of RJD entitled "Richard J. Donovan Correctional Facility, Facility C, non-referrals."

## I. FIFTY-FOUR INCARCERATED PEOPLE HAVE SUBMITTED DECLARATIONS DESCRIBING MORE THAN ONE HUNDRED INSTANCES OF ASSAULTS, HARASSMENT, RETALIATION, AND OTHER MISCONDUCT THEY EXPERIENCED AND WITNESSED AT RJD

7. Attached to this declaration are declarations from fifty-four *Armstrong* and *Coleman* class members. The declarations describe instances where officers have assaulted, harassed, retaliated against, and otherwise engaged in staff misconduct against people with disabilities at RJD. Thirty-five of the declarants are both *Armstrong* and *Coleman* class members, nine are only *Armstrong* class members, and ten are only *Coleman* class members.

8. Where relevant, I have also attached documents corroborating the declarations, including, but not limited to, documents from peoples medical and custody files, advocacy letters that Plaintiffs' counsel have sent to Defendants, Defendants' responses to the advocacy letters, and other documents from Defendants' investigations into allegations of staff misconduct. With the exception of a report of a staff assault that may have contributed to the death of an incarcerated person, the declarations are organized in alphabetical order.

9. Plaintiffs' counsel provided copies of these declarations to Defendants through a secure file sharing website. We shared forty-two of the class member declarations on January 14, 2020 and the remainder on February 4, 2020, February 5, 2020, February 11, 2020, and February 18, 2020.

**A.** ████████████████, **EOP, died on November 10, 2018 at RJD**

10. Two declarations from *Armstrong* class members implicate custody staff in the November 2018 death of *Coleman* class member ████████████, on

[3496005.3]

Facility C.  *See* Ex. 50, ¶¶ 26-27; Ex. 51, ¶ 24.  Attached hereto as **Exhibit 5**[1] are true and correct copies of documents related to Mr. ███████ death, including excerpted copies of documents from his medical file and excerpted copies of documents produced by Defendants in the *Coleman* litigation.

11.  According to the documents, in the early morning of November 10, 2018, Ms. ████ and Mr. ██████ witnessed Officer ██████ and Officer ██████ use force the declarants believe caused the death of Mr. ██████ in Building 15.  Ex. 50, ¶ 26; Ex. 51, ¶ 24.  Prior to his death, Mr. ██████ was housed in a Mental Health Crisis Bed ("MHCB") at California State Prison – Lancaster, where he told his clinician on October 8, 2018 that he was "in fear of his life from both inmates and custody" due to a PREA allegation he had made at RJD in July of 2016 and that he "cannot return back to RJD."  Ex. 5, at 1, 44-45.  On October 9, 2018, CDCR transferred Mr. ██████ back to RJD.  *Id.* at 44.  On the day of his death, Mr. ██████ engaged in self-injurious behavior in his cell.  Ex. 50, ¶ 26; Ex. 51, ¶ 24.  Mr. ██████ cried for help and banged on his door.  Ex. 50, ¶ 26; Ex. 51, ¶ 24.  The officers in Building 15 at the time, Officer ██████ and Officer ██████ ignored Mr. ██████ Ex. 50, ¶ 26; Ex. 51, ¶ 24.  About thirty to forty-five minutes after he had started yelling for help, Officers ██████ and ██████ handcuffed Mr. ██████ in his cell and dragged him out as he bled profusely from his wrists.  Ex. 50, ¶ 26; Ex. 51, ¶ 24; Ex. 5, at 19-20, 47-49.  Staff then slammed Mr. ██████ to the ground.  Ex. 51, ¶ 24.  As Mr. ██████ lay on his stomach – restrained in handcuffs despite the deep lacerations on both of his wrists – one of the officers stood on Mr. ██████ back with all of his weight, using his hands to balance himself against the wall.  Ex. 50, ¶ 26; Ex. 51, ¶ 24.  The other officer pinned Mr. ██████ down with his knee.  Ex. 50, ¶ 26; Ex. 51, ¶ 24.  The officers yelled, "You woke us up motherfucker!  Stop resisting!"  Ex. 50, ¶ 26; Ex. 51, ¶ 24.  Mr. ██████ cried

---

[1] Where necessary, we have Bates-stamped documents corroborating the declarations to assist the Court.

out, "I can't breathe! I can't breathe!" Ex. 50, ¶ 26; Ex. 51, ¶ 24. Then he stopped saying anything and went still. Ex. 50, ¶ 26; Ex. 51, ¶ 24.

12. A third class member declarant, Mr. ▮▮▮ was told by other incarcerated people that Mr. ▮▮▮ had died after trying to get help from staff. Ex. 19, ¶ 7.

13. Although CDCR ultimately determined that Mr. ▮▮▮ cause of death was suicide, the suicide report identified two issues that suggest that custody staff contributed, at least in part, to Mr. ▮▮▮ death. Ex. 5, 40-41. First, a first responder, Nurse Gunay, documented in the medical record that, upon arriving at the scene, Mr. ▮▮▮ was "non-compliant" and "resisting correctional officers [by] pulling [his] arms away." *Id.* at 3-7, 40. The incident reports submitted by eight correctional and medical staff members all omitted the fact that Mr. ▮▮▮ was resisting and that officers had to use force. *Id.* at 9-35. The discrepancy between the incident reports and medical note was referred to the Office of Internal Affairs ("OIA") for investigation. *Id.* at 40-42.

14. Second, the inquiry found that custody staff delayed in activating the Emergency Medical System for at least 17 minutes. *Id.* at 40. This delay in the provision of assistance to Mr. ▮▮▮ during this emergent situation is consistent with the statements of declarants, who noted that Officers ▮▮▮ and ▮▮▮ ignored Mr. ▮▮▮ cries for help for approximately 30 to 45 minutes. Ex. 50, ¶ 26; Ex. 51, ¶ 24. The 17 minute delay in calling for emergency assistance was also referred to OIA for investigation. Ex. 5, at 40-42.

**B.** ▮▮▮ ▮▮▮ **DPO, CCCMS, 53 years old**

15. Attached hereto as **Exhibit 6** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ▮▮▮ signed on January 8, 2020. Attached hereto as **Exhibit 6a** is a true and correct copy of Mr. ▮▮▮ disability accommodation chrono dated October 5, 2017.

16. According to the exhibits, in the first part of 2018, Mr. ▮▮▮ objected to Officer ▮▮▮ cuffing him behind his back, in violation of Mr. ▮▮▮ valid, disability-related chrono to be cuffed in front of his body. Ex. 6, ¶ 8; Ex. 6a, at 1. In response,

[3496005.3]

1  Officer ████ threw Mr. ████ off of his walker and to the ground and then fell on top

2  of Mr. ████ Ex. 6, ¶ 8. After assaulting Mr. ████ Officer ████ cuffed

3  Mr. ████ behind his back and escorted him to the Facility B Gym, where he was forced

4  to stand without his walker or any other assistive device for 30 minutes. *Id.*, ¶ 9.

5      17.    In the first half of 2018, Mr. ████ also witnessed staff assault his friend,

6  Mr. ████ near the basketball court on Facility B. *Id.*, ¶¶ 15-17. An officer punched

7  Mr. ████ in the face, knocking him to the ground. *Id.*, ¶ 15. After an alarm had been

8  activated, more than 10 officers beat Mr. ████ for about three minutes while he lay on

9  the ground not resisting. *Id.* Mr. ████ suffered serious facial bruising and facial

10 lacerations. *Id.*, ¶ 16. Mr. ████ believes that the assault caused permanent injuries to

11 Mr. ████ cognitive functioning. *Id.*, ¶ 17.

12     **C.      ████      ████  DPH-SLI, EOP, 47 years old**

13     18.    Attached hereto as **Exhibit 7** is a true and correct copy of a declaration from

14 *Armstrong* and *Coleman* class member ████ signed on January 31, 2020.

15     19.    According to the declaration, Mr. ████ is Deaf and uses sign language as

16 his primary method of communication. Ex. 7, ¶ 5. In the early morning of December 21,

17 2019, Mr. ████ was escorted to Building 1 on Facility A after being transferred to RJD

18 from a crisis bed. *Id.*, ¶¶ 8-9. Once in the unit, Officers D. ████ and Officer ████

19 approached Mr. ████ and started yelling at him. *Id.*, ¶ 9. Because Mr. ████ is Deaf, he

20 could not understand what they were saying. *Id.*, ¶¶ 9-10. Mr. ████ attempted to explain

21 that he is Deaf and has a speech impairment by gesturing to his ears and pointing to his

22 hearing-impaired vest. *Id.*, ¶ 10. The officers did not recognize or accommodate his

23 disability and continued to yell at him. *Id.* Mr. ████ walked away in an attempt to

24 defuse the situation. *Id.*, ¶ 11. The officers caught up to Mr. ████ and then Officer

25 ████ punched him in the face. *Id.* ¶¶ 12-13. Both officers then tackled Mr. ████ to the

26 ground and forcefully handcuffed him before escorting him to the Treatment and Triage

27 Area ("TTA") *Id.*, ¶¶ 14-15. After being charged with an RVR for resisting a peace

28 officer, Mr. ████ was found guilty and lost 90 days of credit. *Id*, ¶ 24.

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING
AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

**D.** ████████ ████ **DPM, Acute[2], 46 years old**

20.    Attached hereto as **Exhibit 8** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ████████ signed on February 18, 2020. Attached hereto as **Exhibit 8a** are true and correct copies of excerpts of documents corroborating Mr. ████ declaration.

21.    According to the exhibits, on January 13, 2020, in Building 14, Officer ████ ordered Mr. ████ to submit to handcuffs after Mr. ████ stated that he was suicidal and had safety concerns. Ex. 8, ¶ 8. Mr. ████ objected to being cuffed behind his back in violation of his valid, disability-related chrono. *Id.*, ¶ 8; Ex. 8a, at 1. In response, Officer ████ grabbed Mr. ████ wrist, tripped him, and slammed him in to the ground, knocking him unconscious upon impact. Ex. 8, ¶ 9; Ex. 8a, at 5. When he regained consciousness, multiple officers, including Officers ████ ████ and ████ were punching and kicking Mr. ████ in the head, ribs, and legs as they yelled "Stop resisting!" even though he was not resisting. Ex. 8, ¶ 10. The event was witnessed by at least one class member. Ex. 32, ¶¶ 15-16. The officers then cuffed him in violation of his front-cuffing chrono, and took him to the gym without the use of his assistive devices. Ex. 8, ¶ 11. Mr. ████ became suicidal as a result of the incident and swallowed a razor blade while being held in the gym. *Id.*, ¶¶ 11-12; Ex. 8a, at 5.

22.    At an outside hospital, Mr. ████ was diagnosed with a cephalo-hematoma of his scalp and periorbital swelling. Ex. 8a, at 9. When Mr. ████ was returned to RJD, he again attempted suicide.. Ex. 8, ¶ 15; Ex. 8a, at 11-13. He told a clinician at RJD that his suicidality was triggered by his being "assaulted by custody staff." Ex. 8a, at 11. Mr. ████ remains at an inpatient mental health care unit at the Psychiatric Inpatient Program ("PIP") at California Health Care Facility. Ex. 8, ¶ 2.

---

[2] At the time of the incident described in Mr. ████ declaration, he was a participant in the Enhanced Outpatient Program. He is currently in an inpatient, mental health, acute care facility.

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

1    **E.** ████████ ████ **DNH[3], EOP 47 years old**

2    23.    Attached hereto as **Exhibit 9** is a true and correct copy of a declaration from

3    *Coleman* class member and former *Armstrong* class member ████████ signed on

4    January 29, 2020.

5    24.    According to the declaration, on November 27, 2019, Mr. ████ was

6    housed in administrative segregation.  Ex. 9, ¶ 6.  At around 9:00 a.m., Officer ████

7    cuffed Mr. ████ hands behind his back.  *Id.*  Officer ████ then closed the door,

8    leaving Mr. ████ handcuffed in his wheelchair and telling him that he would be "right

9    back."  *Id.*  Mr. ████ was left cuffed in his cell for two days until midday on November

10   29, 2019.  *Id.*  He repeatedly called out to staff to remove the cuffs including during the

11   mandated welfare checks that should occur every thirty minutes in segregation.  *Id.*, ¶ 7.  In

12   response to his pleas for help, both Officer ████ and Officer ████ said to him, on

13   different occasions, "Don't file P[rison] R[ape] E[limination] A[ct] reports."  *Id.*, ¶ 8.

14   While stuck in handcuffs, Mr. ████ experienced panic attacks and had to defecate in his

15   clothing because he was unable to change himself.  *Id.*, ¶ 10.

16   **F.** ████████ ████ **DPM, CCCMS, 56 years old**

17   25.    Attached hereto as **Exhibit 10** is a true and correct copy of a declaration

18   from *Armstrong* and *Coleman* class member ████████ signed on January 29, 2020.

19   Attached hereto as **Exhibit 10a** are true and correct copies of excerpts of documents

20   corroborating Mr. ████ declaration.

21   26.    According to the exhibits, on July 14, 2019, Officer ████ grabbed

22   Mr. ████ arm and forced his hand behind his back for cuffing.  Ex. 10, ¶ 10.  Mr. ████

23   told the officer he was not supposed to be cuffed in the back as a result of his disability.

24   *Id.*; Ex. 10a, at 1.  Next, Officer ████ slammed Mr. ████ to the ground into the ground,

25   knocking him unconscious.  Ex. 10, ¶ 11.  When he came to, Mr. ████ was unable to

26

27   ───────────────
     [3] At the time of the incident described in Mr. ████ declaration, he was designated as
     DPW.

28

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING
AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

1  breathe because Officer ███████ knee was on his throat. *Id.*, ¶ 12. Officer ██████ began

2  kneeing Mr. ████ repeatedly in the face and then cuffed Mr. ████ so tightly that he lost

3  circulation in both of his arms. *Id.*, ¶¶ 12-13. Another officer flipped Mr. ████ body

4  over on the concrete, causing his face to smash into the concrete floor again. *Id.*, ¶ 13.

5      27.    While waiting to receive medical attention in the TTA, custody and medical

6  staff subjected Mr. ████ to harassment and disability-related slurs. For example, Nurse

7  Bradley asked him mockingly, "What are you, crippled now?" *Id.*, ¶ 14. When he was

8  finally loaded into an ambulance to be transported to the hospital, one officer grabbed his

9  neck and twisted it, telling Mr. ████ "You ain't crippled, you're faking it." *Id.*, ¶ 15.

10     28.    At the outside hospital, Mr. ████ was diagnosed with multiple contusions of

11  his head, neck, and back. Exhibit 10a, at 3-4.

12     29.    When Mr. ████ returned to RJD, Nurse Bradley denied him access to a

13  requested wheelchair, saying to a nearby officer, "Fuck him, make him walk." Ex. 10,

14  ¶ 15. Mr. ████ chronic and disability-related nerve pain was significantly worsened as

15  a result of this incident. *Id.*, ¶ 20.

16     30.    Mr. ████ was charged with a Rules Violation Report ("RVR") for battery

17  on a peace officer and was punished by CDCR with a loss of 150 days of credit.

18  *Id.*, ¶¶, 16-17. Mr. ████ has not received a response to the 602 staff complaint against

19  Officer ████ he filed in August of 2019. *Id.*, ¶ 17; Ex. 10a, at 6-7.

20     **G.      ████████  ████    DPM, EOP, 60 years old**

21     31.    Attached hereto as hereto as **Exhibit 11** is a true and correct copy of a

22  declaration from *Armstrong* and *Coleman* class member ██████████ signed on January

23  25, 2020. Attached hereto as **Exhibit 11a** are true and correct copies of excerpts of

24  documents corroborating Mr. ████ declaration.

25     32.    According to the exhibits, on September 27, 2018, Mr. ████ who uses a

26  walker to ambulate, was thrown up against a wall by an officer in the Facility A dining hall

27  over a dispute regarding a hard-boiled egg. Ex. 11, ¶¶ 8-10. Mr. ████ injured his ankle

28  during this incident. *Id.*, ¶ 10. The officer next attempted to handcuff Mr. ████ behind

8

[3496005.3]

his back, in violation of Mr. ███ valid disability-related chrono for front cuffing, and only stopped when other officers intervened, pointing out that Mr. ███ had a walker. *Id.*, ¶ 11; Ex. 11a, at 1-2. Mr. ███ was required to walk about 100 yards to the mental health building on his badly injured ankle. Ex. 11, ¶ 12. This incident caused Mr. ███ preexisting mobility impairment to worsen, such that he now uses a wheelchair and his DPP code was upgraded from DPM to DPO for a period of time. *Id.*, ¶ 19; Ex. 11a, at 4.

33. On June 4, 2019, Officer ███ in the control tower in Building 2 on Facility A, closed the cell door on Mr. ███ Ex. 11, ¶ 20-21. While Mr. ███ was trapped in the door, he saw Officer ███ looking at him and laughing. *Id.*, ¶ 21. Mr. ███ has also observed other incidents of misconduct involving Officer ███ *Id.*, ¶ 35.

34. On or around April 24, 2019, Mr. ███ witnessed events relevant to the staff assault on ███ in Building 2 on Facility A. *Id.*, ¶¶ 30-34. The incident involving Mr. ███ is discussed at Paragraphs 238-242, *infra*.

35. On or around November 18, 2018, Mr. ███ witnessed staff assault ███ Ex. 11, ¶¶ 24-29. The incident involving Mr. ███ is discussed at Paragraphs 78-79, *infra*.

36. On July 12, 2019, Plaintiffs' counsel sent an advocacy letter, a true and correct copy of which is attached hereto as **Exhibit 11b**, to Defendants requesting an investigation into the incidents on September 27, 2018 and June 4, 2019 involving Mr. ███ On January 24, 2020, more than six months later, Defendants sent a letter, a true and correct copy of which is attached hereto as **Exhibit 11c**, responding to Plaintiffs' counsel's letter. Defendants found there were "no findings to support Mr. ███ claim of staff misconduct" related to the September 27, 2018 incident. Ex. 11c, at 2. Defendants indicated that the allegation regarding the June 4, 2019 incident was under investigation because it was connected to Mr. ███ allegations of staff misconduct against Officer ███ *Id.*

[3496005.3]

**D.** ████████ ████ **DPO, 60 years old**

37.     Attached hereto as **Exhibit 12** is a true and correct copy of a declaration from *Armstrong* class member ██████ signed on January 7, 2020.

38.     According to the declaration, on or around June 21, 2019, Mr. ████ saw an incarcerated person named Mr. ████ lying unconscious on the dayroom floor of Building 9 on Facility B.  Ex. 12, ¶ 8.  Officer ████ and another officer yelled at him to get up, and accused him of "faking it" then lifted his limp body to an upright position, before dropping him and causing Mr. ████ head to hit the concrete floor with extreme force. *Id.*

39.     On or around July 27, 2019, Mr. ████ complained to staff in his housing unit that they were denying him a shower in violation of policy.  *Id.*, ¶ 11.  In response, the officer yelled, "You don't fucking know who you are dealing with!  You are on my list now!  I am going to fuck you up!"  *Id.*

**H.** ████████ ████ **DNM, DNH, 74 years old**

40.     Attached hereto as **Exhibit 13** is a true and correct copy of a declaration from *Armstrong* class member ██████ signed on January 8, 2020.  Attached hereto as **Exhibit 13a** are true and correct copies of excerpts of documents corroborating Mr. ████ declaration.

41.     According to the exhibits, in August 2018, Mr. ████ filed a 602 staff complaint against Officer ████ alleging that Officer ████ paid other incarcerated people to steal his property.  Ex. 13, ¶¶ 7, 9.  Mr. ████ then observed Officer ████ hand a note to Mr. "████ ████ which Mr. ████ placed on Mr. ████ door.  *Id.*, ¶ 9.  The note said "You have 48 hours to leave the unit or else…"  *Id.*

42.     On March 13, 2019[4], while showering, Mr. ████ punched Mr. ████ in the face stating, "This is from ████  *Id.*, ¶ 10.  Mr. ████ was diagnosed with a corneal abrasion and periorbital bruising.  *Id.*; Ex. 13a, at 1-4.

---

[4] Though Mr. ████ declaration states that he was assaulted a few weeks after filing his (footnote continued)

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

43.     On or around April 23, 2019, Mr. ██ witnessed a staff assault on an incarcerated person known as "██ in Building 13 on Facility C.   Ex. 13, ¶¶ 13-17.  Following an verbal altercation between ██ and an officer, seven officers attacked ██ throwing him to the floor and handcuffing him.  *Id.*, ¶ 13.  The officers continued to beat ██ after he was handcuffed, punching and kicking him for about three to four minutes.  *Id.*  Officer ██ kicked ██ in the face three times and stomped on his head.  *Id.*, ¶ 14.  By the end of the attack, Mr. ██ counted 17 officers around ██ and observed a blood-soaked towel around ██ neck.  *Id.*, ¶¶ 14-15.  The incident involving ██ is also discussed by ██ at Paragraph 87, *infra.*

44.     In December 2018, Mr. ██ saw Officer ██ approach a *Coleman* class member ██ in the dining hall, grab Mr. ██ food tray, and throw it against the wall.  Ex. 13, ¶ 20.  Officer ██ then beat Mr. ██ with his baton, hitting him in the head and kicking him, when Mr. ██ got another food tray.  *Id.*  Another officer later joined in on the beating.  *Id.*

**I.     ██     ██     DPW, DPV, CCCMS, 85 years old**

45.     Attached hereto as **Exhibit 14** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ██ signed on January 6, 2020.  Attached hereto as **Exhibit 14a** are true and correct copies of excerpts of documents corroborating Mr. ██ declaration, including documents from the medical records of 70 year-old *Armstrong* class member ██  ██ DPW.

46.     According to the exhibits, on May 13, 2019[5], Mr. ██ witnessed four officers stand by and watch an incarcerated person attack *Armstrong* class member ██ who was thrown from his wheelchair in the middle of the yard.  Ex. 14, ¶ 15.  Mr. ██ was beaten so badly that people in hazmat suits had to clean up the pool of

_____

appeal, his medical records indicate that the assault occurred on March 13, 2019.

[5] Though Mr. ██ ration states that the assault occurred in approximately June or July of 2019, Mr. ██ medical records confirm that it occurred in May 2019.

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

blood.  *Id*.  Staff failed to activate the alarm until about ten minutes after the start of the attack.  *Id.*, ¶ 16.  Mr. ████ was diagnosed with multiple facial fractures requiring surgery and an ear laceration at an outside hospital.  Ex. 14a, at 6, 14.

47.  Mr. ████ was tortured as prisoner of war in Bosnia and had previously told Officer ████ that he had PTSD.  Ex. 14, ¶¶ 5,11.  After Officer ████ became aware of Mr. ████ condition, Officer ████ harassed him on multiple occasions by coming up behind him to startle him.  *Id*.  Sometime between June and August 2019, Officer ████ started closing the sally-port door on Mr. ████ which triggered Mr. ████ PTSD.  *Id.*, ¶¶ 7-9.  Mr. ████ saw Officer ████ laughing at him as the door closed.  *Id.* ¶ 9.

**J.**  ████████  ████  **ICF[6], 36 years old**

48.  Attached here to as **Exhibit 15** is a true and correct copy of a declaration from *Coleman* class member ████ signed on January 24, 2020.  Attached hereto as **Exhibit 15a** are true and correct copies of excerpts of documents corroborating Mr. ████ declaration.

49.  According to the exhibits, on September 6, 2019, Officer ████ choked Mr. ████ while he was handcuffed to his hospital bed.  Ex. 15, ¶¶ 8-10.  Mr. ████ received a Rules Violation Report for "obstructing an officer" following this incident.  *Id.*, ¶ 10.  A few days after Mr. ████ was returned to RJD, Sergeant ████ Officer ████ and Officer ████ brutally assaulted Mr. ████ in his cell in administrative segregation while Mr. ████ was handcuffed in waist chains.  *Id.*, ¶¶ 11-12.  Officer ████ blocked the doorway using a big shield while Sergeant ████ and Officer ████ entered the cell and started kicking Mr. ████ in the head.  *Id.*, ¶ 12.  Mr. ████ lost consciousness after about 10 seconds of being kicked.  *Id.*  Mr. ████ remained in his cell in waist chains, drifting in and out of consciousness for the next five hours without receiving any medical attention.  *Id.*, ¶¶ 13-14.  Mr. ████ was taken to an outside hospital, where he reported the

---

[6] At the time of the events described in his declaration, Mr. ████ was in the Enhanced Outpatient Program ("EOP").  He is now housed in an inpatient, Intermediate Care Facility ("ICF").

[3496005.3]

1  staff assault and was diagnosed with a forehead hematoma, abrasions, and a probable

2  concussion. Ex. 15, ¶ 15; Ex. 15a, at 2-3, 5.

3      50.    Mr. ████ also witnessed staff engage in other forms of misconduct,

4  including threatening incarcerated people with mental illness with violence to coerce them

5  into taking their medication, threatening to stomp people on the yard, and ignoring injured

6  incarcerated people.  Ex. 15, ¶¶ 23-25.

7      51.    On October 10, 2019, Plaintiffs' counsel sent an advocacy letter to

8  Defendants, a true and correct copy of which is attached hereto as **Exhibit 15b** (Exhibits to

9  letter omitted), requesting an investigation into the incidents on September 6 and 10, 2019.

10  On October 30, 2019, Defendants sent a responsive letter, a true and correct copy of which

11  is attached hereto as **Exhibit 15c**. Defendants found that "there is insufficient information

12  to support a finding of excessive or unnecessary use of force" with respect to the

13  September 6, 2019 incident.  Ex. 15c, at 2.  Defendants reported that the September 10,

14  2019 allegations had been referred to OIA for an administrative investigation.  *Id.*

15  **K.    ████████  ████  EOP, 48 years old**

16      52.    Attached hereto as **Exhibit 16** is a true and correct copy of a declaration

17  from *Coleman* class member ████████ signed on December 18, 2019.  Attached

18  hereto as **Exhibit 16a** are true and correct copies of excerpts of documents corroborating

19  Mr. ████ declaration.

20      53.    According to the exhibits, on or around April 24, 2019, Mr. ████ witnessed

21  events relevant to the staff assault on ████████ in Building 2 on Facility A.  Ex.

22  16, ¶¶ 6-13.  The incident involving Mr. ████ is discussed at Paragraphs 238-242,

23  *infra*.

24      54.    On or around November 18, 2018, Mr. ████ witnessed events relevant to

25  the staff assault on ████████ in Building 2 on Facility A.   Ex. 16, ¶ 15.  The incident

26  involving Mr. ████ is discussed at Paragraphs 78-79, *infra*.

27      55.    On multiple occasions, Mr. ████ witnessed Officer ████ taunt and

28  threaten incarcerated people over the PA system, saying, "Get out of here with that bullshit

[3496005.3]

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING
AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

1  or someone is going to get shot today.  I feel like shooting someone today" and "[I]'ve

2  been fired three times and they still can't get rid of me."  Ex. 16, ¶¶ 16-17.  Mr. ███ told

3  his clinician about Officer ███ conduct.  Ex. 16a, at 1-2.

4       **L.**    ███████ ██████ **DPM, DNH, 78 years old**

5       56.    Attached hereto as **Exhibit 17** is a true and correct copy of a declaration

6  from *Armstrong* class member ██████████ signed on January 7, 2020.

7  Attached hereto as **Exhibit 17a** is a true and correct copy of an excerpt of a document

8  corroborating Mr. ███ declaration.

9       57.    According to the exhibits, on December 9, 2019, staff closed the cell door on

10  Mr. ███ knocking him off balance and into the wall, injuring his shoulder.  Ex. 17, ¶ 6.

11  Mr. ███ estimates that staff close the cell door on him a few times per week.  *Id.*, ¶ 7.

12  Mr. ██████ witnessed this incident.  *See* Ex. 36, ¶ 13.  Prior to the incident, Mr. ███

13  had asked staff for extra time because he moves slowly without his walker, which is left

14  outside of his cell.  Ex. 17, ¶¶ 6-8; Ex. 17a, at 1.

15       58.    Mr. ███ also witnessed staff close cell doors on other people with

16  disabilities in Building 20 on Facility D.  Ex. 17, ¶ 9.

17       **M.**    ███████ ██████ **DLT, CCCMS[7], 48 years old**

18       59.    Attached hereto as **Exhibit 18** is a true and correct copy of a declaration

19  from *Armstrong* and *Coleman* class member ███████ signed on January 5, 2020.

20  Attached hereto as **Exhibit 18a** are true and correct copies of excerpts of documents

21  corroborating Mr. ███ declaration.

22       60.    According to the exhibits, on June 7, 2018, Mr. ███ was stabbed by

23  another incarcerated person, Mr. ███ as Officers ███ and ███ watched but did not

24  intervene for several minutes.  Ex. 18 ¶¶ 6-7; Ex. 18a, at 1-2.  Additionally, during the

25  incident, Officer ███ yelled from the tower, "You're either going to fight, go to

26

27  ───────────────

[7] At the time of the incidents described in his declaration, Mr. ███ was in the Enhanced Outpatient Program ("EOP").

28

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

1    chow, or go to your cell" without taking action to stop the fight. Ex. 18, ¶ 7. Later,

2    Mr. ███ told Mr. ███ that staff had paid Mr. ███ in tobacco to stab Mr. ███ *Id.*,

3    ¶ 8.

4        61.    On August 3, 2018, despite reported safety concerns, Officers ███ ███

5    and ███ wheeled Mr. ███ to Building 15 where they assaulted him, punching him in

6    the head as Mr. ███ curled into a ball in his wheelchair. *Id.*, ¶¶ 20-23. Mr. ███

7    subsequently decompensated and swallowed a razor, leading to an MHCB placement. *Id.*,

8    ¶¶ 25-27; Ex. 18a, at 4.

9    **N.**    ███ ███ ███ **CCCMS[8], 52 years old**

10       62.    Attached hereto as **Exhibit 19** is a true and correct copy of a declaration

11    from *Coleman* class member ███ ███ signed on January 8, 2020.

12       63.    According to his declaration, on October 11, 2019, staff placed an

13    incarcerated person named Mr. ███ into Mr. ███ cell and Officer J. ███

14    told both of them, "You all either fuck or fight." Ex. 19, ¶ 11. On January 7, 2020, after

15    Mr. ███ received a response to his staff misconduct complaint against Officer

16    ███ Officer ███ threatened him with retaliatory RVRs and cell searches,

17    telling him, "I'm coming after you." *Id.*

18       64.    Following the death of an incarcerated person, Mr. ███ in Building 13 on

19    Facility C, Mr. ███ heard Officer ███ state that she was working in the unit

20    where his body was found and she joked "I see dead people," while walking around like a

21    zombie with her arms out in front of her. *Id.*, ¶ 9.

22    **O.**    ███ ███ **CCCMS, 62 years old**

23       65.    Attached hereto as **Exhibit 20** is a true and correct copy of a declaration

24    from *Coleman* class member ███ signed on January 8, 2020. Attached hereto as

25

26

27    ――――――――――――――
   [8] At the time of the incidents described in his declaration, Mr. ███ was in the EOP program.

28

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING
AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

**Exhibit 20a** are true and correct copies of excerpts of documents corroborating

Mr. ████ declaration.

66.    According to the exhibits, on May 30, 2019, in response to Mr. ████

request to receive hot links on his food tray, two officers grabbed Mr. ████ and dragged

him to the entrance of the Facility D dining hall, where they slammed his head against the

door frame twice. Ex. 20, ¶¶ 7-10.  One officer yanked and twisted his arm forcefully until

it snapped, then the officers threw him on the ground where he hit the concrete with the

wrist of his already-fractured arm. *Id.*, ¶¶ 10-11. Officer ████ then jumped onto

Mr. ████ back. *Id.*, 12.

67.    Mr. ████ was diagnosed with two fractures in his forearm at an outside

hospital. *Id.*, ¶ 15; Ex. 20a, at 1-2.  Six weeks after the incident, Mr. ████ underwent

orthopedic surgery to insert a plate and nine screws into his wrist. Ex. 20a, at 4-5.  To this

day, Mr. ████ arm and hand function is significantly impaired. Ex. 20, ¶ 23.

Mr. ████ also continues to experience chronic mental health symptoms, including

recurring nightmares about officers beating him up, shooting, and hurting him. *Id.*, ¶ 27.

**P.    ████    ████    DPM, CCCMS, 58 years old**

68.    Attached hereto as **Exhibit 21** is a true and correct copy of a declaration

from *Armstrong* and *Coleman* class member ████ dated February 7, 2020.

Attached hereto as **Exhibit 21a** are true and correct copies of excerpts of documents

corroborating Mr. ████ declaration.

69.    According to the exhibits, on August 21, 2018, while picking up a heavy

package of legal mail, Mr. ████ asked Officer ████ why the package had not been

delivered to his housing unit, per his understanding of protocol. Ex. 21, ¶ 8. Mr. ████

who has a disability-related restriction that prevents him from lifting heavy objects, told

Officer ████ he could not lift the package on his own. *Id.*, ¶¶ 4, 7-8; Ex. 21a, at 1.  A

verbal altercation ensued and Mr. ████ indicated that he planned to file a staff

complaint against Officer ████ for failing to help him carry the box or arrange for

assistance. Ex. 21, ¶ 9.  Officer ████ then yelled, "Get down on the ground you crippled

1  motherfucker," pepper sprayed Mr. ███ in the face, and struck Mr. ███ in the face

2  with the pepper spray canister, causing Mr. ███ to fall to the ground. *Id.* Officer

3  ███ then kicked Mr. ███ in the ribs and stomach and stomped on Mr. ███ back

4  and neck. *Id.* Mr. ███ was found guilty of a rules violation for allegedly spitting on

5  Officer ███ and given a term in a Security Housing Unit (SHU). *Id.*, ¶ 10. Mr. ███

6  did not spit on Officer ███ *Id.* Mr. ███ reported the assault by Officer ███ and

7  the false rules violation to his mental health clinician. Ex. 21a, at 3-5.

8      70.    On November 9, 2018, Plaintiffs' counsel sent a letter to Defendants, a true

9  and correct copy of which is attached hereto as **Exhibit 21b**, requesting an investigation

10  into the incident on August 21, 2018. In anticipation of this litigation, Defendants

11  produced a December 5, 2018 memorandum, a true and correct copy of which is attached

12  hereto as **Exhibit 21c,** indicating that RJD was investigating the allegations. *See* Ex. 21c,

13  at 2. In RJD's response to Plaintiffs' March 2019 *Armstrong* Monitoring Tour Report,

14  Defendants indicated that the investigation had not identified any violations of CDCR

15  policy. Ex. 74, at 3-4.

16     71.    More than nine months after this allegation was reported, CDCR included

17  this allegation as an entry in the *Armstrong* accountability logs. However, on January 6 or

18  7, 2020, Tamiya Davis, an attorney for CDCR, told me that the confirmation of the

19  violation was in error. CDCR has yet to issue a revised log to correct this error.

20     **Q.    ███████ ████ DLT, EOP, 68 years old**

21     72.    Attached hereto as **Exhibit 22** is a true and correct copy of a declaration

22  from Mr. ███ signed on January 8, 2020, approximately one month prior to his

23  death.

24     73.    On February 19, 2020, CDCR produced a "Homicide Death Notification" for

25  Mr. ███ Attached hereto as **Exhibit 22a** is a true and correct copy of the *Coleman*

26  death notification for Mr. ███ Medical records, true and correct excerpted copies

27  of which are attached hereto as **Exhibit 22b**, indicate that Mr. ███ was admitted to

28  an outside hospital after being assaulted by multiple other incarcerated people in Building

[3496005.3]

1 on Facility A on February 4, 2020.  Ex. 22b, at 1-23; *id.* at 7 multiple incarcerated people involved in attack.  Mr. ██████ died at a different hospital 15 days later.  Ex. 22a, at 1. Plaintiffs' counsel is currently investigating the circumstances of Mr. ██████ death.

74.     In his declaration, Mr. ██████ stated that he "lived in fear that any day [his] cell door would be popped open by staff and incarcerated people would be let in to attack him" after he filed a lawsuit against Officer ██████ for telling people he was "homosexual" and placing him great danger in prison.  Ex. 22, ¶¶ 15-16.  He was fearful because a friend, Shariff, told him that Officer ██████ was offering $1000 to anyone who would attack Mr. ██████  *Id.*, ¶ 15.  As stated above, Mr. ██████ is now dead and his death is being investigated as a homicide.  Ex. 22a, at 1.

75.     In early August 2019, Mr. ██████ witnessed staff forcefully throw *Coleman* class member ██████ to the ground and kick her in the face outside of the Facility A mental health building.  Ex. 22, ¶ 8.  After Mr. ██████ reported the incident, Sergeant ██████ asked him, "Why are you being a trouble maker?"  *Id.*, ¶ 9.  When he returned to his housing unit, Officer "█" threatened him, telling him that "[he] should be careful or things could happen to [him]."  *Id.*, ¶ 10.  Due to these threats, Mr. ██████ did not report the incident.  *Id.*

76.     Mr. ██████ observed Officer ██████ incite violence between incarcerated people saying, in response to people who report problems to him, "I don't care, go kick his ass."  *Id.*, ¶¶ 11-12.  Mr. ██████ saw Officer ██████ destroy property, including throwing a T.V. off the tier, and heard him insult and threaten incarcerated people multiple times.  *Id.*, ¶ 11.

**R.**     ██████ ██████     **DLT, EOP, 63 years old**

77.     Attached hereto as **Exhibit 23** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ██████ signed on January 8, 2020.

---

[9] Ms. ██████ CDCR number is BI9589, and she is in the Enhanced Outpatient Program.

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

Attached hereto as **Exhibit 23a** are true and correct copies of excerpts of documents corroborating Mr. █████ declaration.

78. According to the exhibits and declarations from multiple other incarcerated people, on November 18, 2018, Mr. █████ approached Officer █████ in the dayroom of Building 2 to ask him to stop shining his flashlight in Mr. █████ eyes, as it exacerbates his vision disability and is painful. Ex. 23, ¶ 8. An argument ensued, because Officer █████ was not taking Mr. █████ disability needs seriously, and Mr. █████ requested to speak to a sergeant. *Id.*, ¶¶ 8-9. In response, Officer █████ activated his alarm. *Id.*, ¶ 9. Next, Officer █████ rushed in to the unit and punched Mr. █████ in the jaw with his closed fist. *Id.*, ¶ 10. Mr. █████ remembers falling and hitting the concrete with the bridge of his nose before everything went black. *Id.*, ¶ 11. When he regained consciousness, he was in leg restraints and handcuffs as four or five officers carried him into the sally-port. *Id.* His eyes were burning and tearing up, leading him to believe that he had been pepper-sprayed while unconscious. *Id.* In the sally-port, Officer █████ kicked him twice in his ribs with extreme force. *Id.* After being escorted to the mental health services building on Facility A, Officer █████ threatened to charge him with a fabricated staff assault if he filed a grievance about the incident. *Id.*, ¶ 12.

79. After the incident, Mr. █████ was taken to the TTA and his injuries were documented and treated. *Id.*, ¶ 14; Ex. 23a, at 1. In the immediate aftermath of the incident, Mr. █████ experienced mental health decompensation and engaged in self-injurious behavior, including banging his head against the wall of his holding cell and telling staff, "Come on, just kill me. You started it, now finish it." Ex. 23, ¶ 15; Ex. 23a, at 3-5. Ultimately, Mr. █████ was placed in a mental health crisis bed. Ex. 23, ¶ 16. Other incarcerated people later told Mr. █████ that staff had assaulted him so badly that they believed that he had died. *Id.*, ¶ 20; Ex. 11, ¶¶ 24-29; Ex. 54, ¶¶ 20-22.

80. On or around April 24, 2019, Mr. █████ witnessed events relevant to the staff assault on █████ in Building 2 on Facility A. Ex. 23, ¶¶ 23-24. The incident involving Mr. █████ is discussed at Paragraphs 238-242, *infra*.

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

81.     Mr. ███ observed Officer ███ incite an incarcerated person over the loudspeaker saying, "Man, I'll be at work at 2 p.m. tomorrow. Be on the yard then." Ex. 23, ¶ 25.  Mr. ███ also heard Officer ███ threaten supervisory staff who told him that he could be disciplined for his conduct, stating, "Get the fuck out of here, I'll beat your ass." *Id.*, ¶ 30.

**S.      ███████ █████ DPM, EOP, 69 years old**

82.     Attached hereto as **Exhibit 24** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ██████ signed on January 7, 2020.

83.     According to the declaration, on or around April 24, 2019, Mr. ████ witnessed events relevant to the staff assault on ██████ in Building 2 on Facility A.  Ex. 24, ¶¶ 7-17.  The incident involving Mr. ████ is discussed at Paragraphs 238-242, *infra*.

84.     Sometime in September or October 2019, Mr. ████ witnessed Officer ████ close a cell door on an incarcerated person named Mr. ████ trapping Mr. ████ arm.  Ex. 24, ¶ 18.  When Mr. ████ called out to Officer ████ to open the door, Officer ████ told him to, "Shut up and go to chow." *Id.*

**T.      ████████ █████ DPO, DNH, CCCMS[10]**

85.     Attached hereto as **Exhibit 25** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ██████ signed on January 8, 2020. Attached hereto as **Exhibit 25a** are true and correct copies of excerpts of documents corroborating Mr. ████ declaration.

86.     According to the exhibits, Mr. ███ has been closed in the cell door multiple times by different officers.  Ex. 25, ¶¶ 9, 11.  On April 6, 2019, Officer ████ closed Mr. ████ cell door on him.  *Id.*, ¶ 11.  Mr. ████ hand was pinned for about one to two minutes until Officer ████ finally opened the cell door.  *Id.*, ¶ 11.  Medical staff noted that Mr. ████ did not have any "apparent injuries, pain, or deformities…" Ex. 25a, at 1.

---

[10] Mr. ███ has a learning disability that is not yet verified by CDCR.

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

The next day, however, moderate swelling and tenderness was observed and documented on Mr. ██████ right hand by medical staff at an outside hospital. *Id.* at 3-4.

87. On or around April 23, 2019, Mr. ████ witnessed events relevant to the staff assault of an incarcerated person known as "████ in Building 13 on Facility C. Ex. 25, ¶¶ 21-23. Mr. ████ observed ████ on the ground, in fetal position, handcuffed behind his back, while staff were kicking him in the head, beating him with batons and punching him. *Id.*, ¶ 21. Mr. ████ recalls seeing Officer ████ kick ████ in the head and also observed Officer ████ and Officer ████ participate in the assault. *Id.* During part of the attack ████ was limp, as if unconscious. *Id.* ████ was covered in blood. *Id.*, ¶ 22. After the incident, Mr. ████ heard a staff member bragging that ████ was "as good as dead too." *Id.*, ¶ 23. Mr. ████ took this to mean that staff had killed ████ *Id.* The incident involving ████ was also witnessed by ████████ and is discussed at Paragraph 43, *supra.*

**U. ████████ ████ DPM, CCCMS, 52 years old**

88. Attached hereto as **Exhibit 26** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ████████ signed on January 7, 2020.

89. According to the declaration, on July 1, 2019, Officer ████ escalated a disagreement with Mr. ████ sounded a "Code 1" alarm, and ordered him to be handcuffed behind his back, despite his disability and cane. Ex. 26, ¶¶ 6-7. Officer ████ then grabbed Mr. ████ arm and forced it behind his back as Officer ████ took away his cane and grabbed his right arm. *Id.*, ¶ 8. Officer ████ pushed Mr. ████ towards the ground and yelled, "stop resisting" even though he was not resisting. *Id.*, ¶¶ 8-9. After the incident, Mr. ████ was found guilty of battery on a peace officer for which he received a credit loss of 150 days. *Id.*, ¶¶ 12-14. Mr. ████ was told his witnesses were not relevant and was not permitted to call any witnesses. *Id.*, ¶ 12. Mr. ████ RVR has also been referred to the District Attorney for criminal prosecution. *Id.*, ¶ 13.

[3496005.3]

**V.** ████████ ████ **DLT, DNH, EOP, 58 years old**

90. Attached hereto as **Exhibit 27** is a declaration from *Armstrong* and *Coleman* class member ████████ signed on December 17, 2019. Attached hereto as **Exhibit 27a** is a true and correct copy of an excerpt of a document corroborating Mr. ████ declaration.

91. According to the exhibits, on May 1, 2018, after complying with orders to drop contraband he admits he was holding, Mr. ████ was handcuffed and was not resisting, when Officer ████ then grabbed the back of his head and slammed his face into the edge of a wooden table causing a black eye and possible concussion. Ex. 27, ¶¶ 8-9. Officer ████ threatened that if Mr. ████ reported the cause of his injuries to medical staff he would receive a rules violation report for assaulting staff but, if he did not report the incident, he would not be written up for the contraband. *Id.*, ¶ 11. Officer ████ then stood within a few feet of Mr. ████ during his medical evaluation. *Id.*, ¶ 12. Mr. ████ did not report what Officer ██ had done to him out of fear of retaliation. *Id.* A medical note from the day of the incident indicates that Mr. ████ refused to be examined for an "old head injury." Exhibit 27a, at 1.

92. Mr. ████ saw frequent assaults by officers on people with disabilities. *Id.*, ¶ 16. A few months prior to the May 1, 2018 incident, Mr. ████ saw Officer ████ dump a prisoner out of his wheelchair and slam him to the ground. *Id.*, ¶ 16.

93. On April 18, 2019, Plaintiffs' counsel sent a letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 27b**, requesting an investigation into the incident on May 1, 2018. On July 25, 2019, Defendants sent a letter, a true and correct copy of which is attached hereto as **Exhibit 27c**, indicating that Defendants had conducted a "thorough investigation" prior to receipt of Plaintiffs' counsel's letter and had found no evidence to support Mr. ████ allegations. Ex. 27c, at 1-2.

94. Documents produced by Defendants, true and correct copies of which are attached hereto as **Exhibit 27d**, indicate that Mr. ████ was interviewed on January 29, 2019 in response to a third-party report that Mr. ████ had been the victim of excessive

force. Ex. 27d, at DOJ00001061. The interviewing staff informed Mr. ███ that he "had been identified … as being involved in an incident in which staff utilized excessive and or unnecessary force on him." *Id.* The interviewing staff did not identify the date or nature of the incident or identify Officer ███ by name. *Id.* Defendants have not produced any documents indicating that Defendants conducted any investigation into Mr. ███ allegations after receipt of Plaintiffs' counsel's letter, when Mr. ███ was no longer at RJD.

**W.** ███ ███ **DPM, DNH, 58 years old**

95. Attached hereto as **Exhibit 28** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ███ signed on January 7, 2020.

96. According to his declaration, on May 30, 2019, Mr. ███ witnessed events relevant to the staff assault on ███ in the Facility D dining hall. Ex. 28, ¶¶ 7-9. The incident involving Mr. ███ is further discussed at Paragraphs 66-67, *supra.*

97. In September 2019, Mr. ███ saw Officer ███ approach an incarcerated person in the dining hall and punch him without any provocation. Ex. 28, ¶ 10.

**X.** ███ ███ **DNH, ICF[11], 53 years old**

98. Attached hereto as **Exhibit 29** is a declaration from *Armstrong* and *Coleman* class member ███ signed on February 10, 2020. Attached hereto as **Exhibit 29a** are true and correct copies of excerpts of documents corroborating Mr. ███ declaration.

99. According to the exhibits, on December 2018, Mr. ███ participated in interviews conducted by a team of outside investigators regarding his experiences with staff misconduct at RJD. Ex. 29, ¶¶ 26-27; Ex. 2, at 17. After Mr. ███ participated in a follow-up interview with investigators on February 11, 2019, staff on Facility C – who

---

[11] At the time of the events described in Mr. ███ declaration, Mr. ███ was in the Enhanced Outpatient Program ("EOP"). He is now at an inpatient, Intermediate Care Facility.

[3496005.3]

had become aware of the fact that Mr. ▮▮▮ was speaking with outside investigators –

began threatening him. Ex. 29, ¶¶ 32-34.  The next day, February 12, 2019, Officer ▮▮▮

demanded to know what the investigation was about and what Mr. ▮▮▮ had said to

investigators.  *Id.*, ¶ 35.  Mr. ▮▮▮ admitted that the interview was about staff

misconduct on Facility C, but said he had not told investigators anything.  *Id.*  Officer

▮▮▮ next asked Mr. ▮▮▮ whether he was coming out for dayroom later that day,

and Mr. ▮▮▮ said he was.  *Id.*

100.    At evening dayroom, Mr. ▮▮▮ was assaulted, struck from behind, and

knocked to the ground by another incarcerated person, who then repeatedly kicked and

stomped Mr. ▮▮▮ in the head until Mr. ▮▮▮ lost consciousness.  *Id.*¶ 36.  At the

hospital, a surgery was performed to mend a fracture in his orbital wall.  *Id.* ¶ 37; Ex. 29a,

at 3-4.

101.    Mr. ▮▮▮ was told later by an incarcerated person that Mr. ▮▮▮ had

assaulted him, that he was seen talking to Officers ▮▮▮ and ▮▮▮ immediately

before the attack, and that the officers gave Mr. ▮▮▮ a pair of gloves immediately

before the attack.  Ex. 29, ¶ 40.

102.    Mr. ▮▮▮ decompensated as a result of the incident.  *Id.*, ¶ 41.  He was

ultimately transferred to an inpatient program and, to this day, Mr. ▮▮▮ experiences

suicidal ideation as a direct result of his experiences with staff misconduct at RJD.  *Id.*,

¶¶ 42, 45.

103.    From December 2017 through January 2019, Mr. ▮▮▮ maintained a log,

a true and correct copy of which is attached to his declaration as Exhibit A, of events he

witnessed in order to document the frequency and severity with which staff assaulted

people with disabilities and mental illness.  *Id.*, ¶ 6.  The events were generally recorded

within an hour of witnessing the officers' misconduct, or as soon as he got back to his cell.

*Id.*  The log contains at least 43 discrete entries.  *See* Ex. A to Ex. 29.

[3496005.3]

104.    On December 29, 2017, Mr. ██████ witnessed Officer ████ Officer ██████ and other staff assault an EOP *Coleman* class member without any apparent justification in the dayroom of Building 15. Ex 29, ¶ 7 & Ex. A, at 1.

105.    On January 2, 2018, Mr. ██████ witnessed Officer ████████ as well as search and escort officers, assault a handcuffed incarcerated person as he lay down on the dayroom of Building 15. Ex. 29, ¶ 8 & Ex. A, at 2.

106.    On April 5, 2018, Mr. ██████ witnessed events relevant to the assault of Mr. ████ by staff. Ex. 29, ¶ 9 & Ex. A, at 3. Specifically, Mr. ██████ saw Officers ██████ and ██████ rough Mr. ████ up outside of the dining hall on Facility C. Ex. 29, ¶ 9 & Ex. A, at 3. The incident involving Mr. ████ is discussed at Paragraph 207, *infra*.

107.    Just minutes after witnessing staff assault Mr. ██████ Mr. ██████ witnessed five officers restraining and assaulting an *Armstrong* class member named ██████████[12] Ex. 29, ¶¶ 10-12 & Ex. A, at 3. Officer ████ grabbed Mr. ████ face and slammed it into the gravel, holding it there for several minutes as the other officers punched and kicked him. Ex. 29, ¶¶ 10-12. Officer ██████ later kicked him in the face five to six times, as Officer ████ punched him in his head. Ex. 29, ¶ 11 & Ex. A, at 3. Officer ████ also stomped on his ankle, and then bounced up and down on it. Ex. 29, ¶ 11 & Ex. A, at 3.

108.    As the officers escorted Mr. ████ to the gym, two officers went up to an unrelated person who was lying down on the yard in response to the alarm. Ex. 29, ¶ 13 & Ex. A, at 3. They cuffed him, and then, on their way to the gym, either Officer ████ or Officer ████ walked up to him and punched him in the face for no apparent reason. Ex. 29, ¶ 13.

---

[12] Mr. ████ CDCR number is ████, and he is designated DNH.

[3496005.3]

109. On or around May 7, 2018, Mr. ███████ witnessed events relevant to the staff assault on ███████ in the dining hall on Facility C. Ex. 29, ¶ 17 & Ex. A, at 6-7. The incident involving Mr. ███████ is discussed at Paragraph 201, *infra.*

110. On August 25, 2018, Mr. ███████ observed Officers ███████ and ███████ allow two ADA workers to assault an incarcerated person named Mr. ███████ Ex. 29, ¶ 18 & Ex. A, at 8.

111. On September 7, 2018, Mr. ███████ left his cell in Building 15 to go to dinner. Ex. 29, ¶ 20 & Ex. A, at 9-10. While on the way, he heard medical staff tell Officer ███████ and Officer ███████ "You got a body laying outside the building… He's all fucked up and not moving." Ex. 29, ¶ 20. As Mr. ███████ walked toward the dining hall, he observed Mr. ███████ lying against the chain link fence next to the building security gate. *Id.* Mr. ███████ looked clearly unconscious, had multiple wounds on his face, and blood was running from his eyes and nose. *Id.* Upon discovering Mr. ███████ Officer ███████ activated his alarm. *Id.* Officers ███████ and ███████ then walked over to Mr. ███████ and started kicking and taunting him. *Id.*, ¶ 21. Officer ███████ first grabbed Mr. ███████ by the arm and pushed him against the fence, calling him a "fucking piece of shit." *Id.* He then began slapping Mr. ███████ and smashing his face against the chain link fence. *Id.* Officer ███████ held him pinned against the fence until the ambulance arrived. *Id.*

112. On September 30, 2018, Mr. ███████ saw Officer ███████ shove an elderly person named Mr. ███████ to the ground after Mr. ███████ protested the fact that Officer ███████ denied him breakfast. Ex. 29, ¶ 22 & Ex. A, at 11-12.

113. On October 24, 2018, Mr. ███████ saw Officer ███████ push an incarcerated person named Mr. ███████ to the ground and kick him twice in the head in the middle of the dining hall. Ex 29, ¶ 23 & Ex. A, at 14-15. After dinner, Officer ███████ and another officer chased Mr. ███████ toward Building 14. Ex. 29, ¶ 24 & Ex. A, at 14-15. The officers tackled him, beat him up, and then dragged him to the gym. Ex. 29, ¶ 24. When

[3496005.3]

1  Mr. ▉▉▉ tried to report what he had witnessed to a nearby sergeant and Lieutenant

2  ▉▉▉ staff ignored him. Ex 29, ¶ 25 & Ex. A, at 14-15.

3      114. On January 21, 2019, Mr. ▉▉▉ witnessed Officer ▉▉▉ and Officer

4  ▉▉▉ assault *Armstrong* and *Coleman* class member ▉▉▉ Ex. 29, ¶ 29 & Ex.

5  A, at 21. The incident is further described at Paragraph 259, *infra*.

6      **Y.** ▉▉▉ ▉▉▉ **DPM**[13]**, EOP, 55 years old**

7      115. Attached hereto as **Exhibit 30** is a declaration from *Armstrong* and *Coleman*

8  class member ▉▉▉ signed on January 6, 2020. Attached hereto as

9  **Exhibit 30a** are true and correct copies of excerpts of documents corroborating

10  Mr. ▉▉▉ declaration.

11      116. According to the exhibits, on April 14, 2018, Mr. ▉▉▉ approached

12  Sergeant ▉▉▉ in the Facility E dining hall to ask why he had been released late for

13  breakfast, impacting his ability to obtain his special diet. Ex. 30, ¶¶ 9-10. In response,

14  Sergeant ▉▉▉ ordered Officers ▉▉▉ and ▉▉▉ to handcuff Mr. ▉▉▉ and

15  escort him to the program office. *Id.*, ¶ 10. Once in the program office, the officers

16  slammed Mr. ▉▉▉ against the wall, dragged him into the doorway of a holding cell,

17  and Officer ▉▉▉ punched him in the back of his head, causing him to fall face-first into

18  the concrete floor of the holding cell. *Id.*, ¶¶ 12-14. After being interviewed by Lieutenant

19  ▉▉▉ Mr. ▉▉▉ received medical attention at the TTA, where a 4.2 centimeter

20  laceration was documented on his chin and repaired with 5 sutures. *Id.*, ¶ 18; Ex. 30a, at 1-

21  5. That night, Officer ▉▉▉ refused Mr. ▉▉▉ repeated requests for medical

22  attention despite the fact that Mr. ▉▉▉ reported he was in serious pain. Ex. 30, ¶ 19.

23  After the incident, Officer ▉▉▉ bragged to another incarcerated person about the fact

24  that he had worsened Mr. ▉▉▉ disability. *Id.*, ¶ 25.

25

26

---

27  [13] At the time of the events described in his declaration, Mr. ▉▉▉ was designated
DLT.

28

[3496005.3]

117.   Sometime in 2018, Mr. ████ witnessed Officers ████ and ████ assault a person who refused to take off his hat in the dining hall. The officers slammed the person against the wall of the dining hall and then dragged him toward the direction of the program office. *Id.*, ¶ 27.

118.   Documents produced by Defendants, true and correct excerpted copies of which are attached hereto as **Exhibit 30b**, indicate that Defendants concluded that there was "no substantiating evidence of any…allegations made against Officers ████ ████ ████ and Sergeant ████ and "it is conceivable that he possibly caused his own injury." Exhibit 30b, at DOJ00001268-69. The Warden, through the Institutional Executive Review Committee ("IERC"), signed off on this finding. *Id.* at DOJ00001260.

**Z.**   ████████ **DD2, DPM, EOP, 71 years old**

119.   Attached hereto as **Exhibit 31** is a declaration from *Armstrong*, *Clark*, and *Coleman* class member ████ signed on January 8, 2020.

120.   According to the declaration, sometime in the latter half of 2019, Mr. ████ witnessed Officers ████ and ████ pepper spray an incarcerated person in response to his request to go to a crisis bed. Ex. 31, ¶ 9. After spraying him, the officers left him in his cell without decontaminating him or otherwise providing him with assistance. *Id.*

121.   Mr. ████ witnessed many people in Building 15 commit suicide after being ignored by staff while they loudly call out for help. *Id.*, ¶ 11.

122.   In April 2017, Mr. ████ witnessed the aftermath of the murder of an incarcerated person, ████ ████ in Building 15. *Id.*, ¶ 13. Officers left Mr. ████ body in his cell for three or four days, and Mr. ████ recalls that the entire unit smelled of rot. *Id.*

**AA.**   ████████ **EOP, 32 years old**

123.   Attached hereto as **Exhibit 32** is a declaration from *Coleman* class member Tony ████ signed on January 30, 2020.

124.   According to the declaration, in August 2019, Mr. ████ asked Officer ████ to speak with his clinician because he was feeling suicidal. Ex. 32, ¶ 7. In

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

response, Officer ███ told Mr. ███ "You are crying too much. You need to shut up and do what everyone is doing in the dayroom." *Id.* Officer ███ then started searching Mr. ███ cell. *Id.*, ¶ 8. After Mr. ███ stated that he intended to report Officer ███ Officer ███ forcefully took Mr. ███ to the ground, pinned his head to the floor, and kneed him in the back. *Id.*

125. In October 2019, Mr. ███ told Officer ███ that he was feeling suicidal and needed to speak with his clinician. *Id.*, ¶ 9. Instead, Officer ███ returned him to his cell and told him, "Go ahead and cut yourself." *Id.* Another officer present stated, "We will give you a razor." *Id.*

126. Mr. ███ also witnessed events relevant to the staff assault of *Armstrong* and *Coleman* class member ███ in January 2020. *Id.*, ¶¶ 15-16. The incident involving Mr. ███ is discussed at Paragraph 21, *supra.*

127. In the summer of 2019, Mr. ███ witnessed Officer ███ throw a person named Mr. ███ to the ground and knee him in the back. *Id.*, ¶ 13. As Mr. ███ lay on the ground in handcuffs, seven or eight officers piled on him, roughed him up, and smashed his face into the ground. *Id.*

**BB. ███ ███ DPO, EOP, 59 years old**

128. Attached hereto as **Exhibit 33** is a declaration from *Armstrong* and *Coleman* class member ███ signed on January 8, 2020. Attached hereto as **Exhibit 33a** are true and correct copies of excerpts of documents corroborating Mr. ███ declaration.

129. According to the exhibits, on November 8, 2017, staff attempted to house Mr. ███ with an incarcerated person with whom he felt unsafe. Ex. 33, ¶ 9. When Mr. ███ expressed his concerns, Officer ███ cuffed him and placed him in a cage in the Facility C gym. *Id.* A few minutes later, Officers ███ ███ ███ ███ and ███ forced Mr. ███ out of the cage, pepper sprayed, kicked, punched, and stomped on him while he lay on the floor. *Id.*, ¶ 10. Mr. ███ suffered fractures to his right foot and a finger on his left hand as a result of the attack. *Id.*; Ex. 33a, at 1-6.

[3496005.3]

130.    After Mr. ███ filed a lawsuit about the incident, Officers ███ and ███ harassed him in a number of ways, including threatening to place an assaultive person in his cell in February 2019 and manufacturing PREA charges against him in May 2019.  Ex. 33, ¶¶ 17, 18.

131.    In 2018, Mr. ███ witnessed Officer ███ grab an elderly *Coleman* class member bystander and slam him to the ground after he asked staff to let him move out of the way of a stream of pepper-spray.  *Id.*, ¶ 20.  Officer ███ grabbed the man's face and forced it into the pool of pepper spray on the ground.  *Id.*  Once a group of officers had finished assaulting the elderly man, the officers picked up his bloody head, showing it off to the rest of the dining hall.  *Id.*

132.    In December 2018, Mr. ███ saw staff escort a transgender person named "███ into the gym.  *Id.*, ¶ 22.  Mr. ███ heard her yell from inside the gym, "That's enough, that's enough.  Alright.  Please stop!"  *Id.*  When Mr. ███ returned to his housing unit, there was a big pool of blood on the dayroom floor, and everyone in the unit said that it was ███ blood.  *Id.*

**CC.    ███████████████ ███████ CCCMS, 26 years old**

133.    Attached hereto as **Exhibit 34** is a declaration from transgender *Coleman* class member ███████ signed on January 7, 2020.  Attached hereto as **Exhibit 34a** are true and correct copies of excerpts of documents corroborating Ms. ███ declaration.

134.    According to the exhibits, on June 19, 2019, Officer ███ ordered Ms. ███ to strip for an unclothed search in Building 10 on Facility B.  Ex. 34, ¶ 7.  When Ms. ███ asked to be searched by a female officer instead, Officer ███ called her a "gay boy," and a "tranny," and then handcuffed her and locked her in the shower.  *Id.*  Once everyone had left the housing unit, Officer ███ returned with five to ten other officers and ordered Ms. ███ to remove her underwear.  *Id.*, ¶ 8.  She complied out of fear.  *Id.* Officer ███ then pushed her onto the ground, and started knocking Ms. ███ head against the ground with one hand and choking her with the other as the other officers watched.  *Id.*  The beating continued for two minutes.  *Id.*  After Officer ███ restrained

[3496005.3]

1  and handcuffed her, Ms. █████ attempted to pull her underwear back up. *Id.*, ¶ 9. In

2  response, Officer █████ pulled her underwear down and forcefully penetrated her anus

3  with his finger. *Id.* After officers escorted Ms. ████ to the TTA, one officer told medical

4  staff that Ms. ████ had fallen in the shower. *Id.* ¶ 10. Ms. ████ told medical staff that she

5  had in fact been assaulted by staff, and medical staff documented bruises, abrasions,

6  bleeding, and redness on Ms. █████ upper face. *Id.*; Ex. 34a, at 1-5. In the days

7  following the incident, Ms. ████ experienced sensitivity to light and headaches, leading

8  her to believe that she suffered a concussion related to the incident. Ex. 34, ¶ 13.

9      135.   On November 19, 2019, Ms. ████ witnessed staff assault a transgender

10  *Coleman* class member, ████████████ in the dining hall on Facility A. *Id.*, ¶ 15.

11  After Ms. █████ refused an officer's order to tuck her shirt in, one officer forcibly

12  grabbed her pants and yanked them up, then three officers took her to the ground,

13  restrained her, and escorted her out of the dining hall. *Id. Armstrong* and *Coleman* class

14  member declarant ████████ also witnessed the assault on Ms. ███████ *See* Ex. 52,

15  ¶ 8.

16      **DD.     ████████████████     DPO, DNH, CCCMS, 59 years old**

17      136.   Attached hereto as **Exhibit 35** is a declaration from *Armstrong* and *Coleman*

18  class member ████████████ signed on January 7, 2020. Attached hereto as

19  **Exhibit 35a** are true and correct copies of excerpts of documents corroborating

20  Mr. ████████ declaration.

21      137.   According to the exhibits, on February 19, 2019, Officer █████ refused to

22  provide Mr. █████████ with a wheelchair pusher because he claimed that Mr. █████████

23  could walk. Ex. 35, ¶ 8. Later that day, Officer █████ denied Mr. █████████ access to

24  the shower after he had an accident, making him wear a dirty diaper all day. *Id.*, ¶ 9. Two

25  days later, Officer █████ screamed at Mr. █████████ telling him, "Put your fucking

26  [disability] vest on you piece of shit. Get the fuck out of here, you don't need a

27  _____

[14] Ms. █████ CDCR number is █████ and she is at the CCCMS level of care.

28

[3496005.3]

wheelchair." *Id.*, ¶ 10. After he filed 1824 disability grievance about Officer ██████ misconduct, a lieutenant pressured Mr. ██████ into withdrawing his 1824. *Id.*, ¶ 11; Ex. 35a, at 1-4. Mr. ██████ withdrew the 1824 because he feared further retaliation. Ex. 35, ¶ 11.

**EE.** ███████████ ██████ **DPM, 65 years old**

138. Attached hereto as **Exhibit 36** is a declaration from *Armstrong* class member ███████████ signed on January 7, 2019. Attached hereto as **Exhibit 36a** are true and correct copies of documents corroborating Mr. ██████ declaration.

139. According to the exhibits, in approximately April 2017, Officer ██████ stuck her hands inside Mr. ██████ pants and kept them there for approximately thirty seconds during a search outside of the chapel. Ex. 36, ¶ 7. Mr. ██████ reported the incident to his pastor as well as Officer ██████ *Id.* In response to his complaint, Officer ██████ went and got Officers ██████ and ██████ who proceeded to threaten him saying, "We know where you live, we are going to get you." *Id.* Officer ██████ also joined in, telling him that the lieutenant wanted his allegations "dropped." *Id.* Mr. ██████ agreed to not file an appeal out of fear of retaliation. *Id.*

140. On April 19, 2018 Officer ██████ closed a cell door on Mr. ██████ who ambulates slowly and with a walker. *Id.*, ¶ 8. Five days later, on April 24, 2018, Officer ██████ closed the door on him twice in one day, knocking him down against the wall with his walker. *Id.* Each time, Mr. ██████ observed Officer ██████ smiling at him as she moved his door back and forth. *Id.*

141. On September 29, 2019, Officer ██████ crushed Mr. ██████ hand in his cell door. *Id.*, ¶ 9. Mr. ██████ filed an 1824 about this issue. *Id.*; Ex. 36a, at 1-2. The next day, Officer ██████ Officer ██████ cousin, threatened Mr. ██████ "Heard you're going to sue my cousin?," which led Mr. ██████ to withdraw his 1824 out of fear. Ex. 36, ¶10. On December 3, 2019, Office ██████ closed the cell door on Mr. ██████ injuring one of his ribs. *Id.*, ¶ 11.

142.     Mr. ███████ also witnessed Officer ████ close the cell door on Mr. ████ in the spring of 2019, discussed in Paragraph 57, *supra. Id.*, ¶ 13.

**FF.     ████████████████ DNM, CCCMS, 45 years old**

143.     Attached hereto as **Exhibit 37** is a declaration from *Armstrong* and *Coleman* class member ████ ████████ signed on January 8, 2020.  Attached hereto as **Exhibit 37a** are true and correct copies of excerpts of documents corroborating Mr. ████████ declaration.

144.     According to the exhibits, on November 2, 2019, Officer ████████ asked if Mr. ████████ was "retarded or stupid" after Mr. ████████ had gotten up to throw away his food. Ex. 37, ¶ 8.  In response to Mr. ████████ asking for Officer ████████ name so he could report his comment, Officer ████████ told him to step outside and then proceeded to conduct a forceful search whereby he squeezed Mr. ████████ nipples and whispered in his ear, "Next time, do the fuck what you are told." *Id.*  Two days later, Mr. ████████ told a clinician about Officer ████████ misconduct. Ex. 37a, at 1-3.

145.     After Mr. ████████ filed a grievance against Officer ████████, Officer ████████ harassed Mr. ████████ on a number of occasions. Ex. 37, ¶¶ 11-14.  On November 10, 2019, Officer ████████ shined his flashlight into Mr. ████████ cell while staring and smiling at him in a threatening manner. *Id.*, ¶ 11.  The next day, Officer ████████ smiled at Mr. ████████ again and blew him a kiss. *Id.*, ¶ 12. Mr. ████████ reported the harassment to his clinician. Ex. 37a, at 5-7.  Finally, on December 1, 2019, staff attempted to transfer Mr. ████████ to Building 13, the unit where Officer ████████ regularly works. Ex. 37, ¶ 15.

146.     Mr. ████████ witnessed Officers ████ ████ and ████████ allow incarcerated people to attack other incarcerated people in multiple instances. *Id.*, ¶ 18.  He has seen staff members laugh when incarcerated people get attacked. *Id.*

[3496005.3]

147. Mr. ███████ witnessed Officer ████ encourage a suicidal person to harm themselves, saying, "Go ahead! I don't believe you, you're all talk until I see you do it. Prove it…." *Id.*, ¶ 19.

**GG.** ██████████ ██████ **DNH, DNM, EOP, 51 years old**

148. Attached hereto as **Exhibit 38** is a declaration from *Armstrong* and *Coleman* class member ██████████ signed on December 16, 2019. Attached hereto as **Exhibit 38a** are true and correct copies of excerpts of documents corroborating Mr. ███████ declaration.

149. According to the exhibits, in August 2018, Mr. ██████ participated in Joint Audit interviews conducted by Plaintiffs' counsel and members of CDCR's Office of Audits and Court Compliance ("OACC") where he reported witnessing Officer ████ ████ engage in misconduct. Ex. 38, ¶ 6. A month later, on September 18, 2018, Mr. ██████ was interviewed by ISU Lieutenant ██████ about whether he had any complaints against Officer ████████ *Id.*, ¶ 7. Approximately one month later, on October 14, 2018, Mr. ██████ was critically injured when he was stabbed by incarcerated people on the yard of Facility C. *Id.*, ¶¶ 8-9. After being hospitalized for twelve days, Mr. ██████ was returned to RJD on October 27, 2018. *Id.*, ¶ 10; Ex. 38a, at 1. On his return, one of Mr. ███████ attackers indicated that he had been paid by Officer ████ with a cell phone to stab Mr. ██████ Ex. 38, ¶ 10.

150. On January 8, 2019, Plaintiffs' counsel sent an advocacy letter, a true and correct copy of which is attached hereto as **Exhibit 38b**, to Defendants requesting an investigation into Mr. ██████ allegations. On July 17, 2019, Defendants sent a responsive letter, a true and correct copy of which is attached hereto as **Exhibit 38c**, indicating that Defendants had found that Mr. ██████ allegations had been "discredited by overwhelming evidence." Ex. 38c, at 3. Despite Mr. ██████ allegation that he had been stabbed in retaliation for participating in the joint monitoring audit conducted by Plaintiffs' counsel and OACC, Defendants did not log Mr. ██████ allegations on the *Armstrong* non-compliance logs.

[3496005.3]

151.    In June 2018, Mr. ███ witnessed Officer ██████ jump on ███ and throw him to the ground because he did not respond to Officer ██████ calling his name as he was walking back to his cell. Ex. 38, ¶ 15.

152.    In  June or July 2018, Mr. ███ witnessed Officer ██████ grab an elderly *Armstrong* class member in a wheelchair by the neck and slam him to the ground in Building 12 because he did not immediately return to his cell after Officer ██████ ordered him to do so.  Officer ██████ and other officers then punched the person repeatedly in the face and kneed him in the neck.  *Id.*, ¶ 16.

153.    In another instance, Mr. ███ saw Officer ██████ place a person in a chokehold and then slam him to the ground.  *Id.*, ¶ 17.  After the person was cuffed, Officer ██████ and Officer ███ continued to assault him.  *Id.*

154.    In April or May 2017, Mr. ███ saw Officer ██████ and other officers flip an *Armstrong* class member out of his wheelchair and beat him while he lay defenseless.  *Id.*, ¶ 18.  After the assault, the person's face was covered in blood.  *Id.*

**HH.    ██████ ██████ DPM, CCCMS, 65 years old**

155.    Attached hereto as **Exhibit 39** is a declaration from *Armstrong* and *Coleman* class member ██████ signed on January 7, 2020.

156.    According to the declaration, on August 27, 2018, only a few days after Mr. ███ had been transferred to RJD, Officer ███ told Sergeant ███ that Mr. ███ was "a problem."  Ex. 39, ¶ 6.  The sergeant then ordered Mr. ███ to go with Officer ███ to a medical trailer.  *Id.*, ¶ 7.  Once they got there, Officer ███ pushed Mr. ███ twice without any provocation, and slammed his body into a nearby desk, before leaning his full body weight on Mr. ███  *Id.*  Officer ███ then ripped out some of Mr. ███ beard and attempted to incite him into fighting back.  *Id.*

157.    After Mr. ███ filed a staff misconduct complaint against Officer ███ on September 27, 2018, Officer ███ confronted him and ordered him, "Drop the 602!" *Id.*, ¶ 9.  On October 3, 2018, Officer ███ gestured for Mr. ███ to enter the sally-port of Building 3 with him.  *Id.*, ¶ 10.  Fearing an assault, Mr. ███ refused.  *Id.*  On

[3496005.3]

October 3, 2018, as Mr. ████ was waiting for a medical appointment, Officer ████
threatened to knock out Mr. ████ remaining eye (he is missing one eye) and blind
him. *Id.*, ¶ 11.

**II.**  ████████ ████ **DPW, CCCMS, 58 years old**

158.    Attached hereto as **Exhibit 40** is a declaration from *Armstrong* and *Coleman*
class member ████████ signed on January 19, 2020.

159.    According to the declaration, on June 9, 2017, Mr. ████ filed a 602 staff
misconduct grievance against the tower officer in Building 5 on Facility A for denying him
access to religious services. Ex. 40, ¶ 6. In the year that followed, Mr. ████ faced a
number of instances of harassment by officers. On August 14, 2017, staff closed the cell
door on Mr. ████ leaving him pinned in his wheelchair for about 15 minutes. *Id.*, ¶ 7.
On many occasions, Officers ████ and ████ denied him access to dayroom and
Officer ████ violated the confidentiality of his legal mail by reading it before handing it
to him. *Id.*, ¶ 8. Staff also refused him access to ADA workers, the shower, the yard, and
the dayroom phones. *Id.*, ¶ 10.

160.    Plaintiffs' counsel reported Mr. ████ allegations in their October 2017
*Armstrong* Monitoring Tour Report. Ex. 73, at 3. Defendants' response to Plaintiffs'
Report indicated that Mr. ████ allegations could not be confirmed. Ex. 73, at 4-5.
Documents produced by Defendants in the current litigation, true and correct excerpted
copies of which are attached hereto as **Exhibit 40a,** indicate that Mr. ████ allegations
were not confirmed and contend that he was retaliating against staff for raising the issue
with Plaintiffs' counsel in addition to filing an 1824. Ex. 40a, DOJ00000173, 175. The
1824 response he received failed to address his issue stating, "this request raises no
Americans with Disabilities Act … issue." Ex. 40a, DOJ00000181, 184, 189-191.

161.    In approximately June 2017, Mr. ████ witnessed staff assault an unresisting
EOP prisoner on the yard of Facility A while Sergeant ████ watched. Ex. 40, ¶ 13.

**JJ.** ████████ ████ **DPM, 43 years old**

162.    Attached hereto as **Exhibit 41** is a declaration from *Armstrong* class member ████████ signed on January 30, 2020.  Attached hereto as **Exhibit 41a** are true and correct copies of excerpts of documents corroborating Mr. ██ declaration.

163.    According to the exhibits, on December 16, 2018, Mr. ██ who uses a cane and walker to ambulate, asked Officer ████████ for access to an ADA shower.  Ex. 41, ¶ 8.  In response, Officer ████████ told Mr. ██ to "Shut the fuck up," and "[i]f you write me up, I'm going to have other inmates fuck you up."  *Id.*  In the months that followed, Officer ████████ harassed and threatened Mr. ██ on numerous occasions. *Id.*, ¶ 9.  In one instance, on January 26, 2019 Officer ████████ approached Mr. ██ while he was showering and shined his flashlight on Mr. ██ genitals while staring him down.  *Id.*  After filing a staff misconduct grievance about this incident, an Investigative Services Unit ("ISU") sergeant told Mr. ██ on January 29, 2019 that he did not believe him and that nothing was going to come of Mr. ██ complaint.  *Id.*, ¶ 10.

164.    Mr. ██ also faced threats of retaliation after filing his 602 staff misconduct complaint against Officer ████████ *Id.*, ¶ 11.  Sometime around the end of February, Officer ████ approached him and told him, "You like writing us up?  We're going to fuck your ass up.  We're part of the Green Wall."  *Id.*  A few days later, two incarcerated people approached Mr. ██ and told him, "If you don't drop the 602 [against Officer ████ we'll fuck you up."  *Id.*, ¶ 12.

165.    Mr. ██ also received multiple threats of violence from incarcerated people after he filed a 602 staff misconduct complaint against Officer ████ for refusing to provide Mr. ██ access to his diabetic medications in March 2019.  *Id.*, ¶ 14.

166.    On April 18, 2019, three incarcerated people stabbed Mr. ██ on the track of the Facility C yard.  *Id.*, ¶ 15; Ex. 41a, at 1-2.  Mr. ██ believes that Officer ████████ orchestrated the attack on him because Officer ████████ had threatened to have Mr. ██ assaulted multiple times and, before the stabbing, Mr. ██ also witnessed Officer ████ afford special privileges to his attackers.  *Id.*, ¶ 17.

[3496005.3]

167.     On February 26, 2019, Plaintiffs' counsel sent a letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 41b** (enclosures to letter omitted), requesting an investigation into Mr. ███ allegations.  On October 23, 2019, Plaintiffs' counsel sent a supplemental letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 41c**, requesting an investigation into the allegation that Officer ███ orchestrated the attack on Mr. ███  On October 23, 2019, Defendants sent a letter, a true and correct copy of which is attached hereto as **Exhibit 41d,** indicating that Defendants had "investigated the allegation a month before receiving" Plaintiffs' February 26, 2019 letter and found that "none of the allegations could be substantiated by evidence."  Ex. 41d, at 1, 3.  Notably, Defendants did not address Mr. ███ allegations that Officer ███ threatened Mr. ███ on multiple occasions with physical violence in retaliation for utilizing the appeals system.  Ex. 41d.  Defendants have also not responded to any of the allegations contained in Plaintiffs' October 23, 2019 letter.

168.     In their response, Defendants explained that Mr. ███ allegations had been referred to OIA, who rejected the allegation and returned it to RJD for further inquiry.  Ex. 41d, at 2.  As part of the further inquiry, Mr. ███ was interviewed again on July 30, 2019, and he raised three other allegations involving Officer ███ *Id.*  In making the determination that these allegations were unsupported, Defendants stated that "additional staff and inmates were interviewed, including a former cellmate who reported that Mr. ███ routinely files false complaints against staff."  *Id.*

169.     Documents produced by Defendants, true and correct copies of which are attached hereto as **Exhibit 41e,** indicate that the initial inquiry found that "Inmate ███ was being misleading in his allegation with an ulterior motive of discrediting Officer ███ and determined that his allegations could not be substantiated.  Ex. 41e, at DOJ00002946-2949.

**KK.     ███████████     DPW, CCCMS, 55 years old**

170.     Attached hereto as **Exhibit 42** is a declaration from *Armstrong* and *Coleman* class member ███████ signed on January 7, 2020.  Attached hereto as **Exhibit 42a**

1 are true and correct copies of excerpts of documents corroborating Mr. █████

2 declaration.

3     171.   According to the exhibits, on August 6, 2019, two transportation officers

4 wheeled Mr. █████ through the Facility B gate for an outside medical appointment.

5 Exhibit 42, ¶ 6.  The officer pushing Mr. █████ wheelchair – Officer 1 – proceeded to

6 push Mr. █████ directly into a large and visible hole in the pavement.  *Id.*  Although the

7 wheel became stuck in the hole, Officer 1 kept pushing, launching Mr. █████ from his

8 wheelchair and onto the pavement.  *Id.*  Mr. █████ injuries were then documented by

9 medical staff at the TTA.  *Id.*, ¶ 10; Exhibit 42a, at 1-3.  Mr. █████ still experiences

10 chronic pain in his knee and wrist related to this incident.  Exhibit 42, ¶ 17;  Exhibit 42a, at

11 5-6.

12     172.   After filing a 602 staff misconduct appeal against Officer 1, Mr. █████ was

13 interviewed by a sergeant, a lieutenant, and Officer 1.  Exhibit 42, ¶¶ 12-13.  During the

14 interview, after Mr. █████ described the events, the sergeant pointed to an officer

15 standing in the room and asked if he was the officer responsible.  *Id.*, ¶ 13.  Mr. █████

16 had not realized that Officer 1 was present during the interview because he was wearing a

17 hat very low on his head.  *Id.*  After the interview, Officer 1 threatened Mr. █████

18 saying, "I remember everything."  *Id.*, ¶¶ 13-14.

19     **LL.**          **██████████ DPM, 48 years old**

20     173.   Attached hereto as **Exhibit 43** is a declaration from *Armstrong* class member

21 █████ signed on January 7, 2020.  Attached hereto as **Exhibit 43a** are true and

22 correct copies of excerpts of documents corroborating Mr. █████ declaration.

23     174.   According to the exhibits, on May 17, 2019, after an argument with a group

24 of incarcerated people about his cellmate's debts, Mr. █████ observed that group talking

25 to Officers █████ and █████ while looking at him.  Ex. 43, ¶¶ 7-8.  After Mr. █████

26 entered his cell and staff closed the door, three people from the group approached his cell

27 and asked Mr. █████ to turn over his cellmate's T.V.  *Id.*, ¶ 9.  Mr. █████ told them to

28 take up the problem with his cellmate.  *Id.*  Officer █████ the control tower officer then

opened the cell door. *Id*. Two people from the group entered Mr. ██████ cell and

assaulted him while the third person stood watch. *Id.*, ¶¶ 9-10. The attack lasted minutes

and Mr. ██████ thought the people were going to kill him. *Id* ¶ 10. While being

attacked, Mr. ██████ saw Officers ██████ and ██████ look over at him as he lay on the

floor of his cell and then saw them walk to a section of the housing unit where they could

no longer see the attack. *Id.*, ¶ 11. None of the officers present sounded their alarms. *Id.*

175. After the incident, Mr. ██████ attempted to get medical attention but was

not let out of his cell to access medical care for three hours. *Id.*, ¶ 14; Ex. 43a, at 1-2. He

witnessed other incarcerated people attempt to obtain medical attention on Mr. ██████

behalf, but saw Officers ██████ and ██████ wave them away. Ex. 43, ¶ 13. Eventually,

Mr. ██████ was transported to an outside hospital, where he was diagnosed with three

facial fractures. *Id.*, ¶ 15; Ex. 43a, at 4. Mr. ██████ required two surgeries to repair the

damage. Ex. 43a, at 6-9.

176. On July 17, 2019, Plaintiffs' counsel sent a letter to Defendants, a true and

correct copy of which is attached hereto as **Exhibit 43b**, requesting an investigation into

the March 17, 2019 incident. On November 19, 2019, 125 days later, Defendants sent a

letter to Plaintiffs' counsel, a true and correct copy of which is attached hereto as

**Exhibit 43c**, indicating that Defendants had conducted a "thorough investigation" prior to

receipt of Plaintiffs' counsel's letter and had found that Mr. ██████ allegations were not

supported by the evidence. Ex. 43c, at 1-3. Despite medical evidence of serious injuries,

CDCR reaches that conclusion because: (1) staff implicated in the allegations denied that

there was an incident on March 17, 2019 and (2) three incarcerated people interviewed

denied observing an incident consistent with Mr. ██████ allegations. Ex. 43c. The

letter did not mention or provide an explanation for how Mr. ██████ sustained his

injuries. *Id*. Documents produced by Defendants, true and correct copies of which are

attached hereto **Exhibit 43d**, indicate that Mr. ██████ medical records were not

consulted during RJD's inquiry. Ex. 43d, at DOJ00012972-77. In finding that there was

"no merit" to Mr. ██████ complaint, the inquiry relied on interviews with staff

members – all of whom denied witnessing any incident involving Mr. ██████ on March 17, 2019. *Id.* at DOJ00012973-75.

177. In 2016, Mr. ██████ witnessed staff assault a *Coleman* class member after he tried to get more Kool-Aid during dinner. Ex. 43, ¶ 21. After the incarcerated person walked out of the dining hall, Officer ██████ and other officers tackled him to the ground during a search and beat him, stomping on his arm and punched and kicking him while he lay on the ground. *Id.*

**MM.** ██████████████ ████████ **Acute[15], 38 years old**

178. Attached hereto as **Exhibit 44** is a true and correct copy of a declaration from *Coleman* class member ██████████ signed on February 6, 2020. Attached hereto as **Exhibit 44a** are true and correct copies of documents corroborating Mr. ██████ declaration.

179. According to the exhibits, on December 4, 2019, Officer ██████ escorted Mr. ██████ and left him in handcuffs in his cell from 9:00 p.m. until 7:00 a.m. the next morning. Ex. 44, ¶¶ 10-14. In the middle of the night, Mr. ██████ experienced a diabetic emergency. *Id.*, ¶ 13. When an officer responded, Mr. ██████ held up his glucometer to the cell window such that the officer could see the cuffs on his wrist. *Id.* The officer, however, did not remove Mr. ██████ cuffs. *Id.* The next morning, after a lieutenant conducted an interview with Mr. ██████ Sergeant ██████ removed the cuffs at around 7:00 a.m. *Id.*, ¶ 14. Logs maintained by housing unit staff in Building 6 indicate that staff did not log any activity in the nearly ten hour period between Mr. ██████ return from the hospital and the discovery of the situation by Sergeant ██████ at 6:40 a.m. Exhibit 44a, at 1-2. Sergeant ██████ entry reads: "removed from cell due to flex cuff. CDCR 7219 completed, video interview conducted." *Id.* at 2.

---

[15] At the time of the events described in his declaration, Mr. ██████ was in the Enhanced Outpatient Program. He is now housed in an inpatient acute mental health care facility.

[3496005.3]

**NN.** ███████████████ **DPM, DNH, 57 years old**

180. Attached hereto as **Exhibit 45** is a true and correct copy of a declaration from *Armstrong* class member Andre ███ signed on January 7, 2020. Attached hereto as **Exhibit 45a** are true and correct copies of excerpts of documents corroborating Mr. ███ declaration.

181. According to the exhibits, on September 1, 2019, Officer ███ cuffed Mr. ███ in order to administer a urinalysis test. Ex. 45, ¶¶ 5-6. When Mr. ███ asked for an accommodation – to be cuffed using waist-chains so that he could use his walker or cane for support – Officer ███ refused and replied, "You're an asshole…You're the cause of a lot of stuff around here." *Id.*, ¶ 6. After Mr. ███ asked for a sergeant, Officer ███ again called him an "asshole" and then threw him to the concrete ground. *Id.*, ¶ 8. After an officer from the yard arrived ("Officer B"), Officer ███ and Officer B escorted Mr. ███ to the toilet. *Id.*, ¶ 9. Without warning, Officer B pulled down Mr. ███ pants and underwear, and held a urine collection cup to his penis. *Id.*, ¶ 10. Mr. ███ was not uncuffed and ended up urinating all over himself. *Id.* Mr. ███ was later denied medical attention by Officer ███ *Id.*, ¶ 11. When Mr. ███ was seen by medical staff two days later Mr. ███ reported that staff had thrown him to the ground after a verbal altercation. Exhibit 45a, at 1. Mr. ███ initially received an RVR for delaying an officer, however that was dismissed on October 4, 2019 "based on the lack of adherence to the UA collection process." Ex. 45c, at DOJ00000503.

182. On October 29, 2019, Plaintiffs' counsel sent a letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 45b** (Exhibits to letter omitted), requesting an investigation into the September 1, 2019 incident.

183. Documents produced by Defendants in the current litigation, true and correct excerpted copies of which are attached hereto as **Exhibit 45c**, include a signed memorandum from ADA Coordinator ("ADAC") Juarez to myself responding to the allegations contained in Plaintiffs' October 29, 2019 letter. Ex. 45c, at DOJ00000502-04. The memo finds that Mr. ███ allegations of non-compliance could not be confirmed,

but notes that the Chief Disciplinary Officer "elected to dismiss the RVR based on the UA collection not being followed by Officer ███████ without any further explanation as to how the violation was disconfirmed. *Id.* at DOJ00000503-04

184. Mr. ████ also witnessed officers assault a person named ████████ (███████ sometime in September 2019. Ex. 45, ¶ 20. Following a verbal altercation, three officers rushed into Mr. ████ cell, knocked him to the floor, and assaulted him despite his being compliant and non-resistive through the incident. *Id.*, ¶ 21.

**OO.** ████████ ████████ **DPM, CCMS, 79 years old**

185. Attached hereto as **Exhibit 46** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ████████ signed on January 7, 2020.

186. According to the declaration, on September 2019, Mr. ████ overheard an elderly *Armstrong* class member ask an officer for toilet paper, soap, and a mop in Building 20 on Facility D. Ex. 46, ¶ 7. After the officers denied him, the class member walked away and said, "Damn you lazy bastards." *Id.* In response, the officers rushed into his cell and slammed him against his locker and bed as they punched him repeatedly for about two minutes. *Id.*, ¶ 8. After the assault, the officers left the cell laughing. *Id.*

**PP.** ████████████ **DPO[16], DNH, CCCMS**

187. Attached hereto as **Exhibit 47** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member Lee ██████ signed on January 29, 2020. Attached hereto as **Exhibit 47a** are true and correct copies of excerpts of documents corroborating Mr. ██████ declaration.

188. According to the exhibits, on April 23, 2019, in response to a refusal by Mr. ████ to accept a cell move due to safety concerns, as many as eight officers, including Officers ████ and ████ and Sergeant A. ████████ assaulted Mr. ████ while sitting in his wheelchair in Building 13 on Facility C at RJD. Ex. 47, ¶ 8-9. Officers

---

[16] Mr. ████ was designated as DPO at the time of the incident. Exhibit 1a, ¶ 5. He is currently designated as DNM.

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

1  first-pepper sprayed Mr. ███ in the face, causing him to fall out of his wheelchair. *Id.*

2  ¶ 9. Officers then proceeded to punch him in the face, stomp on his chest, and kick him all

3  over his body. *Id.* Officer ███ kicked Mr. ███ multiple times after he was restrained

4  in handcuffs and lying on the ground. *Id.* Officers then dragged Mr. ███ approximately

5  200 yards to a holding cage in the Facility C Gym, without his wheelchair or any assistive

6  devices. *Id.* ¶ 10. After Mr. ███ lost consciousness, CDCR took him to an outside

7  hospital, where he was diagnosed with three broken ribs, a laceration to his lip that

8  required stitches, loss of consciousness, an acute closed head injury, facial contusions,

9  abrasions, hematoma, and blunt abdominal trauma. *Id.* ¶ 12; Ex. 47a, at 1-4. Mr. ███

10  was returned to RJD after four days in the hospital and placed in administrative

11  segregation. Ex. 47, ¶ 13. RJD failed to provide him with a wheelchair for the first three

12  or four days following his return to the prison. *Id.*

13     189.    On May 24, 2019, Plaintiffs' counsel sent an advocacy letter, a true and

14  correct copy of which is attached hereto as **Exhibit 47b**, to Defendants requesting an

15  investigation into Mr. ███ allegations. Nearly seven months later, on January 23,

16  2020, Defendants confirmed in a letter, a true and correct copy of which is attached hereto

17  as **Exhibit 47c**, that RJD failed to provide Mr. ███ with a wheelchair upon his return to

18  RJD from the outside hospital. Ex. 47c, at 2. Defendants' letter indicates that the ADA

19  non-compliance inquiry into the allegation regarding the wheelchair was not initiated for

20  49 days until July 12, 2019. *Id.* at 2.

21     190.    On February 3, 2020, Defendants provided a response, a true and correct

22  copy of which is attached hereto as **Exhibit 47d**, to Mr. ███ other allegations of staff

23  misconduct. Defendants concluded after an administrative review that Mr. ███

24  allegations "were not supported by the evidence" and that Mr. ███ actions justified the

25  use of force used by the officers. Ex. 47d, at 3. Defendants did, however, confirm that

26  during the incident staff punched Mr. ███ in the face. *Id.* at 2. Defendants' response

27  also minimizes Mr. ███ injuries, stating that "minimally displaced factures…[are] not

28  considered to be serious bodily injury (SBI)." *Id.* This position is at odds with CDCR

Case No. C94 2307 CW

[3496005.3]

policy, which explicitly defines serious bodily injury to include bone fractures regardless of the degree of displacement.  *See* Department Operations Manual § 51020.4.

191.    Documents produced by Defendants, true and correct copies of which are attached hereto as **Exhibit 47e,** show that Mr. ▮▮▮ cellmate provided an eye witness account of the incident that was consistent with Mr. ▮▮▮ statement of events.  *See* Ex. 47e, at DOJ000001370.  Mr. ▮▮▮ and his cellmate would not have had any opportunity to confer regarding the incident, as Mr. ▮▮▮ was in the hospital and then in administrative segregation, and Mr. ▮▮▮ remained in his same cell for the period of time between the date of the incident and the date Mr. ▮▮▮ cellmate provided a statement. *Id.* at DOJ000001369.  RJD's warden identified that "the injuries that Inmate ▮▮▮ claims he sustained due to the Use of Force utilized in the incident are not consistent with the officers' [sic] [incident reports], the force reported and the CDCR 7219 submitted with the Incident Package."  *Id.* at DOJ000001364.

**QQ.    ▮▮▮▮▮▮  ▮▮▮▮▮  DPW, EOP, 58 years old**

192.    Attached hereto as **Exhibit 48** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ▮▮▮▮▮▮ signed on January 6, 2020.

193.    According to the declaration, on or around November 5, 2018, Mr. ▮▮▮ observed staff assault a *Coleman* class member in mental health crisis outside of Building 1 on Facility A.  Ex. 48, ¶¶ 9-13.  One officer – Officer 1 – charged at and tackled the man before two other officers piled on.  *Id.*, ¶ 12.  Officer 1 then began kicking the man in his face and ribs about six or seven times while screaming at the man, "You're a bitch, yeah, you motherfucker."  *Id.*, ¶ 13.  Other officers had to physically restrain Officer 1.  *Id.* When the victim returned to Facility A, he had bruises all over his face.  *Id.*, ¶ 14

194.    Mr. ▮▮▮ also observed Officer ▮▮▮ instruct incarcerated people who worked for him to assault other incarcerated people.  *Id.*, ¶¶ 16-17.  Prior to these incidents, Mr. ▮▮▮ observed Officer ▮▮▮ give extra privileges to the people working for him, including additional food and allowing them to violate prison rules without facing punishment.  *Id.*, ¶ 20.

[3496005.3]

**RR.** ████████ ████████ **DPM, EOP, 55 years old**

195. Attached hereto as **Exhibit 49** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ████████ signed on January 26, 2020. Attached hereto as **Exhibit 49a** are true and correct copies of excerpts of documents corroborating Mr. ████████ declaration.

196. According to the exhibits, after a ten hour transfer to RJD where he was not allowed to urinate, in the early morning of February 15, 2019, Mr. ████████ told medical staff that he wanted to see a mental health clinician because he was feeling depressed and anxious. Ex. 49, ¶ 9. In response, Sergeants ████████ ████████ and ████████ took him from his holding cell and escorted him to a blind-spot in the central plaza, where they threw him out of his walker onto the ground and told him, "There's your fucking clinician, now kill yourself." *Id.*, ¶¶ 9-11. The sergeants then picked Mr. ████████ up, slammed him into a golf-cart, and transported him to Building 2 on Facility A. *Id.*, ¶¶ 11-12. A number of officers and sergeants, about eight total, then dragged Mr. ████████ into the sally-port of Building 2. *Id.*, ¶ 12. There, Sergeant ████████ Sergeant ████████ and Officer ████████ kicked, punched, and stomped on Mr. ████████ as the tower officer yelled, "Get that motherfucker!" over the PA system. *Id.*

197. After being escorted to the TTA, medical staff documented some of his injuries but told him that some of his bruises were "just because [he is] old." *Id.*, ¶ 14; Ex. 49a, at 1. Mr. ████████ became suicidal as a result of the assault, and was then transferred to administrative segregation because no MHCBs were available. Ex. 49, ¶ 15. There, Mr. ████████ spoke with a clinician about the assault. *Id.*, ¶ 15; Ex. 49a, at 3. Two days later, Mr. ████████ stated on a second 7219 that he had been assaulted by sergeants in the central plaza and in Building 2. Ex. 49, ¶ 19; Ex. 49a, at 5.

198. In March or April 2019, Mr. ████████ witnessed staff members in the ASU rush into the cell of a *Coleman* class member. Ex. 49, ¶ 23. Mr. ████████ then heard the person screaming, as well as things slamming against the walls, which led him to believe

that the officers were assaulting the class member.  *Id.*  When the class member returned to Building 6 a few days later, he was wearing a cast on his arm.  *Id.*

199.  Mr. ███████ also observed Officer ██████ abuse a person in Building 6 over a two week period in 2019.  *Id.*, ¶ 24.  Nearly every day, Officer ██████ would leave a particular incarcerated person cuffed in a holding cage for the entirety of his shift.  *Id.*  The incarcerated person often urinated on himself, leaving a puddle of urine in the cage at the end of the shift.  *Id.*

**SS.  ██████████ ██████ DPW, ICF[17], 55 years old**

200.  Attached hereto as **Exhibit 50** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ██████████ signed on January 1, 2020. Attached hereto as **Exhibit 50a** are true and correct copies of excerpts of documents corroborating Mr. ██████ declaration.  Attached hereto as Exhibit 50c is a true and correct copy of a note from Mr. ██████ medical file.

201.  According to the exhibits, on May 7, 2018, during a dispute regarding bagged lunch, Officer ████ grabbed Mr. ████████ wheelchair and tipped it over, throwing Mr. █████ to the ground.  Ex. 50, ¶ 9.  Officer ████ cuffed Mr. █████ and then sat on Mr. █████ who was motionless on the ground because he is paralyzed.  *Id.*, ¶ 10.  Officer █████ then yanked Mr. █████ by his hair and, pulling him up by his jacket collar, and placed him in his wheelchair.  *Id.*, ¶ 11.  Officer █████ took Mr. █████ to the gym where he pulled Mr. █████ t-shirt over his head and then started to punch him in the torso, face, and stomach as he called Mr. █████ a "faggot" and a "piece of shit."  *Id.*, ¶ 13.  Officers ████ and ██████ joined in at some point and used so much force against Mr. █████ that he thought they were going to kill him.  *Id.*, ¶ 15.  The assault was witnessed in part by class member declarant ██████████ *See* Ex. 29, ¶ 17 & Ex. A, at 6-7.

---

[17] At the time of the incidents described in his declaration, Mr. █████ was in the EOP program.  He is now housed in an inpatient, intermediate care facility for mental health reasons.

Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

202.    After the incident, Mr. ███ was thrown into a holding cage without his wheelchair and stripped naked.  Ex. 50, ¶ 17.  For the next three and a half hours, he was left without any medical attention.  *Id.*, ¶ 18.  Because Officers ███ and ███ were standing right there when medical staff did arrive, Mr. ███ stated that nothing happened.  *Id.*  Mr. ███ was ultimately charged with battery on a peace officer for allegedly throwing a bag lunch at Officer ███ and 365 days were added to his sentence.  *Id.*, ¶ 23.  In the days following the incident, Mr. ███ told medical staff that he had been assaulted, and his injuries were documented.  Exhibit 50a, at 1-5.

203.    Mr. ███ mental health deteriorated after the assault and its consequences, leading to a May 14, 2019 suicide attempt and placement in an inpatient psychiatric program for subsequent weeks.  *Id.*, ¶ 24; Ex. 50c.  While waiting to be transported to the hospital after cutting his wrists, Mr. ███ told a clinician, "I just want to go to sleep, I just want to die…. I got beat up by officers on the yard, look at my bruises…. I can't do it anymore." *Id.*

204.    Plaintiffs reported on Mr. ███ allegations in their *Armstrong* March 2019 Monitoring Tour Report.  Ex. 73, at 3.  Defendants' response indicated that Mr. ███ allegations were not confirmed but did not provide any explanation for this determination.  Ex. 73, at 4.

205.    Documents produced by Defendants, true and correct copies of which are attached hereto as **Exhibit 50b,** include an 1824 dated May 22, 2018 reporting that Officer ███ had thrown Mr. ███ from his wheelchair on May 7, 2018 and then took his wheelchair gloves and seat cushion.  Ex. 50b, at 5.  Defendants opened a non-compliance inquiry regarding the DME-related allegation and concluded it could not be confirmed.  *Id.*, Ex. 50b, at 1-3.  No inquiry was conducted into Mr. ███ allegation that Officer ███ flipped him out of his wheelchair.  *Id.*  Months later, a review of how RJD staff handled his 1824 completed by the Non-Compliance Review Committee found no areas of concern even though the central allegation – that he was thrown from his wheelchair by Officer ███ – was never addressed.  Ex. 50b, at 7.

206. Mr. █████ also witnessed events relevant to the staff assault that contributed to the death of *Coleman* class member █████ in November 2018. Ex. 50, ¶¶ 26-27. The circumstances surrounding Mr. █████ death is discussed at Paragraphs 10-11, *supra*.

207. In April 2018, Mr. █████ witnessed staff push a person, Mr. █████ up against the wall so hard that it appeared that they broke his jaw. Ex. 50, ¶ 28. The next day, Mr. █████ was attacked by a group of prisoners. *Id.*

208. In July 2018, Mr. █████ witnessed Officer █████ shoot a person known as "█████ in the face following an attack on █████ by two incarcerated people. *Id.*, ¶ 29. The day before, Mr. █████ saw one of █████ assailants talking to Officer █████ *Id.* He heard Officer █████ say something to the effect of, "Just stay out of the way so I don't hit you." *Id.*

**TT.    █████    █████ DPW[18], EOP, 41 years old**

209. Attached hereto as **Exhibit 51** is a true and correct copy of a declaration from transgender *Armstrong* and *Coleman* class member █████ signed on January 7, 2020. Attached hereto as **Exhibit 51a** are true and correct excerpts of copies of documents corroborating Ms. █████ declaration.

210. According to the exhibits, on February 4, 2019, Ms. █████ approached Officer █████ to ask to speak with a mental health clinician because she was having safety concerns. Ex. 51, ¶ 9. Officer █████ responded, "I don't give a damn. Go handle your business." *Id.* Ms. █████ continued to decompensate due to her safety concerns, resulting in her slicing her arm deeply from her hand to her inner elbow. *Id.*, ¶ 11. Ms. █████ laceration required 31 stitches. *Id.*, ¶ 12; Ex. 51a, at 1-2.

211. After Ms. █████ filed a 602 against Officer █████ he told her, "Am I supposed to give a fuck if you kill yourself? If you didn't already have a razor, I would

---

[18] At the time of the incidents described in her declaration, Ms. █████ was designated DPO.

[3496005.3]

have given you one to kill yourself." Ex. 51, ¶ 15. On February 20, 2019, Officer ██ denied Ms. ██ toilet paper in spite of her incontinence. *Id.*, ¶ 16. On February 23, 2019, a friend told Ms. ██ that Officer ██ was attempting to contract with incarcerated people to have Ms. ██ assaulted. *Id.*, ¶ 19. Ms. ██ also spoke about her fear of Officer ██ ongoing misconduct with class member declarant ██ ██ *See* Ex. 49, ¶ 25.

212. Ms. ██ also witnessed events relevant to the staff assault that contributed to the death of *Coleman* class member ██ in November 2018. *Id.*, ¶¶ 24-26. The circumstances surrounding Mr. ██ death is discussed at Paragraphs 10-11, *supra*.

213. On June 28, 2019, Plaintiffs' counsel sent a letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 51b**, requesting an investigation into the February 4, 2019 incident and any subsequent retaliation faced by Ms. ██ On January 9, 2020, Defendants sent a letter, a true and correct copy of which is attached hereto as **Exhibit 51c** (extraneous Attachments to letter omitted), indicating that Defendants "cannot confirm that any of these allegations occurred." **Exhibit 51c**, at 2.

214. Documents produced by Defendants, true and correct copies of which are attached hereto as **Exhibit 51d**, indicate that two incarcerated people were interviewed as witnesses during the inquiry into Ms. ██ February 4, 2019 allegation. Ex. 51d, at DOJ00003685. These documents do not address allegations from Plaintiffs' letter that Officer ██ used disrespectful and demeaning language after learning that she filed a 602; that Officer ██ denied her toilet paper; and that Officer ██ was attempting to pay other people to have Ms. ██ assaulted. *Id.*, DOJ00003685-3689.

**UU.** ██ ██ **DPO, 57 years old**

215. Attached hereto as **Exhibit 52** is a true and correct copy of a declaration from *Armstrong* class member ██ signed on January 7, 2020.

216. According to the declaration, on November 2019, Mr. ██ witnessed officers in Facility A dining hall assault a transgender prisoner, Ms. ██ (nicknamed

"Addicted"). Ex. 52, ¶ 8. The officers threw her to the ground, jumped on her, kneed her and roughed her up for about five minutes because she refused to tuck her shirt in. *Id.* *Coleman* class member declarant Donovan ██ also witnessed the assault on Ms. ██████ *See* Ex. 34, ¶ 15.

217.   Sometime in mid-2019, Mr. ████ witnessed an officer grab Mr. ████ an elderly incarcerated person housed in Building 9, and throw him violently to the ground after Mr. ████ had cursed at him. *Id.*, ¶ 9.

218.   Mr. ████ witnessed other types of staff misconduct on Facility B, including: apparent extortion of incarcerated people by officers; officers claiming publicly that certain incarcerated people are child molesters, placing them at great risk of assault; and staff allowing fights to occur between incarcerated persons. *Id.*, ¶¶ 10-12.

**VV.   ████████ ████████ DPW, 76 years old**

219.   Attached hereto as **Exhibit 53** is a true and correct copy of a declaration from *Armstrong* class member ████████ signed on January 7, 2020.

220.   According to the declaration, on December 19, 2016, Officer ████ conducted a search of Mr. ████ cell whereby he destroyed property and then left the property, including a mattress, strewn across the cell floor. Ex. 53, ¶¶ 6, 8. Mr. ████ a full-time wheelchair user, was trapped in his cell and unable to move his wheelchair because property was covering the floor. *Id.* For the next three days, Mr. ████ was forced to sleep on the floor because he could not move his mattress onto his bed due to his disability. *Id.*, ¶¶ 9-14. During that time, staff refused to provide him with any assistance in restoring his cell to a wheelchair-accessible condition. *Id.* After Mr. ████ filed a 602 staff misconduct appeal against Officer ████ Officer ████ again trashed Mr. ████ cell. *Id.*, ¶ 16.

221.   In February or March 2019, Mr. ████ witnessed five to seven officers brutally beat an incarcerated person on the Facility B yard. *Id.*, ¶ 19.   The officers used pepper spray and batons to assault the person as he lay on the ground and not resisting. *Id.*

[3496005.3]

When the person returned to RJD a few days later, his face was bruised, his eye socket was broken, and he had multiple stitches in his right eyebrow and lips. *Id.*, ¶ 20.

222. In early 2018, Mr. ▬ witnessed an officer in the Facility B dining hall assault and pepper spray a person for no apparent reason. *Id.*, ¶ 23.

**WW.** ▬ ▬ **CCCMS, 30 years old**

223. Attached hereto as **Exhibit 54** is a true and correct copy of a declaration from *Coleman* class member ▬ signed on January 7, 2020.

224. According to the declaration, on or around April 24, 2019, Mr. ▬ witnessed events relevant to the staff assault on ▬ in Building 2 on Facility A. Ex. 54, ¶¶ 5-19. The incident involving Mr. ▬ is discussed at Paragraphs 238-242, *infra*.

225. On or around November 18, 2018, Mr. ▬ witnessed staff assault ▬ in Building 2 on Facility A. Ex. 54, ¶¶ 20-22. The incident involving Mr. ▬ is discussed at Paragraph 78, *supra*.

226. In June 2019, Mr. ▬ witnessed Officers ▬ and ▬ respond to an ongoing fight involving ▬ and another incarcerated person. Ex. 54, ¶ 23. Officers ▬ and ▬ were striking Mr. ▬ with their batons even after Mr. ▬ had gotten down on the ground in compliance with their orders. *Id.* Officer ▬ hit Mr. ▬ in the head with so much force that his baton broke on impact. *Id.*

227. On May 21, 2016, Mr. ▬ observed an ongoing fight on the yard of Facility A. *Id.*, ¶ 24. After the alarm was sounded – and while Mr. ▬ was on the ground and fully compliant – Officer ▬ began striking him forcefully with a baton. *Id.*, ¶ 26. Officer ▬ only stopped when another officer intervened. *Id.* Mr. ▬ believes that Officer ▬ took that opportunity to strike him during an incident on the yard, even though Mr. ▬ was not involved in the incident, because he had filed a 602 staff misconduct grievance against Officer ▬. *Id.*, ¶¶ 29-30.

[3496005.3]

**XX.** ███████████████████ **DPM, CCCMS, 70 years old**

228. Attached hereto as **Exhibit 55** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ████████ signed on January 7, 2020.

229. According to the declaration, on December 8, 2019, Mr. ██████ waved at the tower officer to open his cell door in Building 20. Ex. 55, ¶ 7. Before Mr. █████ who uses a walker, had time to enter his cell, the door started to close on him. *Id.* He yelled at the tower that he needed more time but got no response. *Id.* The door closed on Mr. █████ causing him to fall against the wall, injuring his arm and shoulder. *Id.*

230. Mr. ██████ had his cell door closed on him in Building 20 on other occasions, including one in 2018 in which he suffered cuts and bleeding when the door closed on his hand. *Id.*, ¶ 9.

231. On December 9, 2019, Mr. ██████ also witnessed staff misconduct against *Armstrong* class member ██████ discussed in Paragraph 57 *supra*. Ex. 55, ¶ 10.

**YY.** ████████████████████ **CCCMS, 31 years old**

232. Attached hereto as **Exhibit 56** is a true and correct copy of a declaration from transgender *Coleman* class member ████████ signed on January 8, 2020. Attached hereto as **Exhibit 56a** are true and correct copies of excerpts of documents corroborating Ms. █████ declaration.

233. According to the exhibits, on October 2, 2018, Officer ████ ordered Ms. ████ to submit to a "random pat-down" in Building 9 on Facility B. Ex. 56, ¶ 7. When Ms. █████ protested the forcefulness of the pat down, Officer ████ told her that he was going to conduct a strip search in the sally-port. *Id.* In the sally-port, Officer ████ started aggressively shaking and twisting Ms. █████ body before he lifted her up and threw her against the ground. *Id.*, ¶ 8. Ms. ████ heard her leg snap on impact. *Id.* Officer ████ then told his partner, Officer █████ to "Call in for a staff assault!" *Id.* ¶ 9. Once other staff arrived, a sergeant ordered Officer █████ to cuff Ms. ████ by the legs despite her injury. *Id.* Officer █████ proceeded to apply leg cuffs to Ms. █████ visibly fractured leg as Ms. ████ screamed in pain. *Id.*

234. Staff then forced her to walk to the ambulance and at the ambulance, refused to help her climb in. *Id.*, ¶ 10. After being transferred to an outside hospital, Ms. ███ was diagnosed with fractures in both the tibia and fibula of her left leg, necessitating the surgical installation of a plate and several screws. *Id.*, ¶¶ 11-12; Ex. 56a, at 1-4. For nearly three months after the incident, Ms. ███ was housed in the Correctional Treatment Center ("CTC"). Ex. 56a, at 6-7. Ms. ███ was found guilty of an RVR for battery on a peace officer following this incident. Ex. 56, ¶ 10. The assault exacerbated Ms. ███ existing mental illness. *Id.*, ¶ 17; Ex. 56a, at 9. Ms. ███ received physical therapy for her leg through November 2019. Ex. 56a, at 11.

235. In November 2019, Ms. ███ was told that Officer ███ granted two people permission to assault her, telling them, "Do it. I don't like ███ anyway." Ex. 56, ¶ 18. Two days later, two incarcerated people assaulted Ms. ███ on the dayroom floor of Building 12 while Officer ███ and Officer ███ watched. *Id.*

236. In June or July 2019, Ms. ███ saw officers assault an older incarcerated *Coleman* class member who refused to enter his cell. *Id.*, ¶ 19. Officer ███ and another officer slammed the class member into the ground and beat him with closed fists and batons for about three to four minutes. *Id.*

**ZZ. ███████ ██████ DLT, DNH, EOP, 64 years old**

237. Attached hereto as **Exhibit 57** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ███████ signed on January 7, 2020. Attached hereto as **Exhibit 57a** are true and correct copies of excerpts of documents corroborating Mr. ███ declaration.

238. According to the exhibits and declarations from multiple other incarcerated people, on April 24, 2019, at around 5:00 p.m., Mr. ███ was assaulted in the sally-port of Building 2 by Officers ███ A. ███ and ███ who broke his arm and jaw. Ex. 57, ¶¶ 8, 10. Prior to the assault, Officer ███ the control tower officer, kept Mr. ███ locked in his cell in Building 2 while he released all other incarcerated people for dinner and ensured that no incarcerated people remained in the dayroom. *Id.*,

[3496005.3]

¶ 7; Ex. 11, ¶ 30; Ex. 16, ¶ 6; Ex. 23, ¶ 23; Ex. 24, ¶¶ 7-11; Ex. 54, ¶¶ 5-6. Officer

████ then released Mr. ████ *Id.* When Mr. ████ passed through one of the

sallyport gates, Officer ████ closed the gate behind Mr. ████ *Id.*, ¶ 8. Officers

████ A. ████ and ████ then rushed into the sally-port, trapping Mr. ████

between them and the gate. *Id.*, ¶ 8; Ex. 24, ¶¶ 12-13; Ex. 54, ¶¶ 7-8. Officer ████

threatened Mr. ████ telling him, "I'm gonna kick your ass," as the officers closed in

on him. *Id.* When Officer ████ attempted to assume a fighting position but inadvertently

slipped, the two other officers started kicking Mr. ████ in the chest, throwing him to

the ground. *Id.* Once Officer ████ stood up, he began punching Mr. ████ in the face

as Officer ████ stomped on him. *Id.* During the assault, Officer ████ watched

but failed to intervene, and Officer ████ was seen by Mr. ████ filming the incident

on a cell phone from the control tower. *Id.*, ¶ 9.

239. At no point did Mr. ████ receive an RVR or any other form of discipline

in connection with the incident. *Id.*, ¶ 12; Ex. 57a, at 1. At no time during the assault did

staff use their radios to call for assistance nor their personal alarm devices. Ex. 57, ¶ 12.

240. Mr. ████ who was bleeding and had a broken arm, requested medical

help from Nurse ████ who refused stating that Officer ████ and another officer had

instructed her to deny Mr. ████ a medical pass. *Id.* ¶ 15.

241. At around 7:00 p.m., when the building opened up for evening dayroom,

Nurse ████ again refused Mr. ████ medical attention. *Id.*, ¶ 17. When

Mr. ████ asked Officer ████ Officer ████ stated to him, "You shouldn't have

been talking shit" and "nothing happened, so you don't need medical care." *Id.*, ¶ 18. In

response to other incarcerated people such as declarants ████ ████

and ████ attempting to help Mr. ████ obtain medical treatment, Officer

████ ordered Mr. ████ into his cell claiming that he was inciting a riot. *Id.*; Ex.

11, ¶¶ 31-34; Ex. 16, ¶¶ 10-14; Ex. 54, ¶¶ 9-16; Ex. 57, ¶ 12. At around 8:30 p.m., Officer

████ told Mr. ████ he was supposed to take him to the TTA but Mr. ████ denied

[3496005.3]

out of fear that Officer ███ would assault him as a result of prior negative experiences with this officer. *Id.*, ¶ 20; Ex. 57a, at 3.

242.   Finally, at around 1:00 a.m. on April 25, 2019, about eight hours after the incident itself, a nurse escorted him to the TTA, where medical staff treated and documented his injuries. Ex. 57, ¶ 21; Ex. 57a, at 6-9. Later, he reported the incident to his mental health clinician. Ex. 57, ¶ 22; Ex. 57a, at 10. In the ensuing weeks, Mr. ███ was diagnosed with a broken arm and a broken jaw. Ex. 57, ¶ 21; Ex. 57a, at 12-16. As of his most recent orthopedic consultation in October 2019, nearly six months after the incident, Mr. ███ arm is "slowly" healing with a visible fracture line still faintly visible. Ex. 57, ¶ 24; Ex. 57a, at 18-19. In addition, Mr. ███ mental illness has worsened as a result of this incident. Ex. 57, ¶ 24; Ex. 57a, at 21.

243.   On May 31, 2019, Plaintiffs' counsel sent an advocacy letter, a true and correct copy of which is attached hereto as **Exhibit 57b**, to Defendants requesting an investigation into Mr. ███ allegations. On July 12, 2019, Plaintiffs' counsel sent a supplemental letter, a true and correct copy of which is attached hereto as **Exhibit 57c,** providing additional information and witnesses relevant to the allegation. Nearly seven months later, on December 30, 2019, Defendants provided a status update letter, a true and correct copy of which is attached hereto as **Exhibit 57d,** indicating that an inquiry into the allegations was completed after the receipt of Plaintiffs' May 31, 2019 letter but before receipt of Plaintiffs' July 12, 2019 letter. The inquiry resulted in a July 17, 2019 referral to the OIA, which opened an official investigation on August 14, 2019. Ex. 57d, at 1.

**AAA.   ███ DPM, EOP, 63 years old**

244.   Attached hereto as **Exhibit 58** is a true and correct copy of a declaration from *Armstrong* and *Coleman* class member ███ signed on December 16, 2019. Attached hereto as **Exhibit 58a** are true and correct excerpts of copies of documents corroborating Mr. ███ declaration.

245.   According to the exhibits, on July 6, 2018, Mr. ███ was forcefully searched by an officer outside of the Facility C dining hall after Mr. ███ asked the

officer if he could refill the Kool-Aid.  Ex. 58, ¶ 12.  During the search, the officer grabbed Mr. ██████ walker and threw it several feet away, and then grabbed and broke his glasses.  *Id.*; Ex. 58a, at 1-2.  The officer then removed Mr. ██████ shoes, shirt, and pants, forcing him to walk back to his housing unit in only a shirt and underwear.  Ex. 58, ¶ 13.  Mr. ██████ experienced mental health decompensation after this incident, including suicidal ideation.  *Id.*, ¶ 14.  After speaking with his clinician about the incident, Mr. ██████ was placed in a mental health crisis bed.  *Id.*; Ex. 58a, at 4.

246.    Mr. ██████ witnessed Officer ██████ and another officer in Building 14 drag a transgender person back to her cell after she reported feeling suicidal.  Ex. 58, ¶ 16.  Later that day, the person was yelling that she had cut herself, but staff ignored her.  *Id.*  The next morning, officers escorted the person, whose wrists were bandaged, out of the unit.  *Id.*

247.    In the first half of 2018, Mr. ██████ frequently saw Officers ██████ and ██████ allow incarcerated people to fight while they stood by and watched.  *Id.*, ¶ 17.

## II.    ANALYSIS OF DECLARATIONS

248.    I reviewed all fifty-four declarations to determine the number of staff misconduct incidents the declarants described.  For purposes of counting the incidents of staff misconduct, I considered a continuing course of misconduct to count as one incident of misconduct.  For example, if a class member was assaulted by staff and then subjected to retaliation for filing a staff complaint about the assault, I counted those events as only one staff misconduct incident.  This methodology is conservative.  CDCR policy would treat the above example as involving at least two separate instances of misconduct for which an employee could face discipline.  Using this conservative methodology, I determined that the class member declarations describe well over one hundred discrete incidents of staff misconduct.

249.    I reviewed each declarations and created a tally of every incident described in the declarations as well as the names of officers involved in each incident.  I determined that the declarations describe by name eighty-nine unique officers involved in misconduct.

[3496005.3]

250. In my review, I determined that the declarations also included information about dozens of officers who perpetrated staff misconduct against class members but for whom the declarants did not know the names of the officers. For that reason, the number of officers involved in misconduct against class members at RJD likely exceeds eightynine by a great deal.

251. I also made a list of the officers who the declarants identified by name as being involved in misconduct, as well as the number of staff misconduct incidents in which each named officer was involved. In compiling this information, I only included officers who engaged in acts or omissions that resulted in harm to an incarcerated person. I did not include officers who were bystanders to incidents of excessive and/or unnecessary uses of force. I also made sure that each incident associated with an officer was unique to avoid double-counting in cases where multiple declarations described the same incident.

252. For purposes of counting the incidents in which officers were involved, I considered the following names to refer to the same staff member: I treated "█████" "█████ and "█████ as █████ "█████ and "█████ as █████ "█████ and "█████ as █████ and "█████ and "█████ as █ I considered those differently-spelled names to refer to the same people based on my experience monitoring RJD, my knowledge of the officers involved in misconduct at RJD, and information about state employee salaries available on transparentcalifornia.com.

253. Through this analysis, I determined that thirty-nine officers were identified as having participated in more than one incident of staff misconduct. The following officers were involved in the number of incidents indicated in parentheses:

- ███ (9)
- █████ (8)
- ███ (8)
- █████ (8)
- █████ (6)



Case No. C94 2307 CW

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING
AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]

- ████ (2)
- ████ (2)
- █████ (2)
- ███ (2)
- ████ (2)
- █████ (2).

254. In my review, I also determined that the declarations included information about dozens of officers who witnessed staff misconduct against class members but to our knowledge failed to intervene during the event or report on the misconduct after the fact. Many of these staff members were unnamed. Due to the public nature of most of the events described in the declarations, it is likely that hundreds of staff members at RJD witnessed staff misconduct but failed to intervene or report the misconduct.

## III. OTHER ADVOCACY LETTERS SENT TO DEFENDANTS

255. Plaintiffs' counsel sent a number of advocacy letters to Defendants in *Armstrong* and *Coleman* regarding staff misconduct at the RJD that are not discussed above.

### A. Unknown EOP Person

256. On November 14, 2017, Plaintiffs' counsel sent an advocacy letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 59,** requesting an investigation into allegations of staff misconduct in Building 15, a housing unit for incarcerated people with serious mental illness. Class member declarant ████████ reported to Plaintiffs' counsel that, sometime in the early part of 2017, after a verbal altercation, Sergeant ██████ dragged a person (name unknown) by his feet down a flight of stairs, banging the person's head on the steps along the way. Ex. 59, at 1. Multiple class members reported witnessing this incident, but only Mr. ██████ was comfortable reporting the allegation. *Id.* Defendants have not responded to the allegations contained in Plaintiffs' November 14, 2017 letter.

**B.** ▮▮▮▮▮▮▮▮▮▮ **DPM old;** ▮▮▮▮▮▮▮▮▮▮▮▮

257. On March 2, 2018, Plaintiffs' counsel sent an advocacy letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 60** (exhibits to letter omitted), requesting an investigation into allegations of staff misconduct made by *Armstrong* and *Coleman* class members ▮▮▮▮▮ and ▮▮▮▮▮ and *Coleman* class member ▮▮▮▮▮ during a July 14, 2017 incident in Building 14 on Facility C. In the letter, Plaintiffs' counsel alleged that Officer ▮▮▮▮ Officer ▮▮▮▮ and Officer ▮▮▮ used excessive and unnecessary force against Mr. ▮▮, Mr. ▮▮ and Mr. ▮▮▮ to prevent them from reporting the excessive use of force against another incarcerated person. Ex. 60, at 2-4. Defendants have not yet responded to Plaintiffs' July 14, 2017 letter.

**C.** ▮▮▮▮▮▮▮▮▮▮ **DPO, 65 years old**

258. On March 14, 2018, Plaintiffs' counsel sent an advocacy letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 61** (exhibits to letter omitted), requesting an investigation into a December 6, 2017 incident involving *Armstrong* class member ▮▮▮▮▮ who used a wheelchair intermittently at the time. In the letter, Plaintiffs' counsel alleged that Officer ▮▮▮▮ forced Mr. ▮▮▮ to stand without any assistive devices during a body search conducted in an occupied dayroom. Ex. 61, at 1. Plaintiffs' also alleged that Officer ▮▮▮▮ pulled Mr. ▮▮▮ pants down during the search. *Id.* Following the search, Mr. ▮▮▮ was reportedly made to walk without assistance to collect his wheelchair and cane. *Id.* On June 12, 2018, Defendants sent a responsive letter, a true and correct copy of which is attached hereto as **Exhibit 61a** (Attachments to letter omitted), indicating that Mr. ▮▮▮ allegations had been reviewed according to the *Armstrong* accountability protocol, which found that no violation of CDCR policy had occurred. Ex. 61a, at 1. Documents produced by Defendants in the course of this litigation, true and correct copies of which are attached hereto as **Exhibit 61b,** show that at least one of the witnesses interviewed during inquiry,

1    Mr. ████████ fully corroborated Mr. ████████ version of the events.  Ex. 61b, at

2    DOJ00000158-59.  CDCR refused to produce the confidential inquiry into Mr. ████

3    staff complaint against Officer ████  Ex. 61a, at 1.

4        **D.        ████████ ("Elderly ADA Inmate"), ████ DPM, 56 years old**

5        259.    On February 6, 2019, Plaintiffs' counsel sent an advocacy letter to

6    Defendants, a true and correct copy of which is attached hereto as **Exhibit 62** (exhibits to

7    letter omitted), requesting an investigation into an alleged incident involving an "elderly

8    ADA inmate," later identified as *Armstrong* class member ████████  On January 20,

9    2019, after a verbal altercation, Officer ████████ denied Mr. ████ who was on a

10   hunger strike at the time, access to the medical clinic.  Ex. 62, at 1.  The next morning, at

11   around 7:00 a.m., witnesses observed Officer ████████ push Mr. ████ up against the

12   fence before knocking him in the torso and sending him to the ground.  *Id.*  Officer

13   ████████ then proceeded to jump on Mr. ████ back.  *Id.*  Multiple staff members then

14   converged on the scene, and began assaulting Mr. ████ before securing him in handcuffs

15   and escorting him to the medical clinic.  *Id.*  In response to Mr. ████ collapsing while

16   being escorted, Officer ████ kicked him in the ribs, causing him to scream and collapse

17   once more.  Sergeant ████ reportedly encouraged the attacks on Mr. ████  *Id.* at 3.

18   After the incident, Officers ████████ and ████ and Sergeant ████ were observed

19   laughing and fist-bumping one another, as well as saying, "Yeah, anyone else feel like

20   going on hunger strike?"  *Id.*

21       260.    The allegations contained in Plaintiffs' February 6, 2019 letter are consistent

22   with statements in Mr. ████████ declaration about the assault of Mr. ████  Ex. 29,

23   ¶ 29 & Ex. A, at 21.

24       261.    On November 1, 2019, Defendants sent a responsive letter, a true and correct

25   copy of which is attached hereto as **Exhibit 62a**, indicating that a "thorough inquiry had

26   already been completed" and the matter had been referred to OIA for an administrative

27   investigation.  Kimberly Seibel, CDCR's person most knowledgeable, testified that Officer

28   ████████ Officer ████ and Officer ████ were terminated due to their involvement in

62

[3496005.3]

the incident involving Mr. ██████ Ex. 83, at 67:16-18. She further testified that video surveillance was used to determine that the officers' reports of force were inconsistent with the force actually used and the injuries sustained by Mr. ██████ *Id.* at 67:1-6. Exhibit 11 to the Deposition of Patricia Ramos, a true and correct copy of which is attached hereto as **Exhibit 62b**, is the investigation reports from OIA regarding their investigation into the incident involving Mr. ██████ The reports indicate that Officer ██████ claimed in his incident report "that ██████ threw himself on the ground in a forward motion without ██████ ever making any physical contact with them." Ex. 62b, at 11. Investigators who reviewed the video surveillance found that Officer ██████ "grabbed ██████ by his back and shoulder area, throwing him to the ground [out of his walker]." *Id.* at 2. In interviews with investigators, Officer ██████ stated that he used force because "he was in fear for his life….and deemed [██████ an imminent threat." *Id.* at 10. All three officers involved in the incident were found by the OIA investigation to have submitted false reports. Ex. 83, at 69:9-11.

      **E.** ██████████ **DNH, 36 years old**

      262.    On February 26, 2019, Plaintiffs' counsel sent an advocacy letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 63**, requesting an investigation into allegations of staff misconduct raised by *Armstrong* class member ██████████ who claimed that Officer ██████ retaliated against him for filing a staff misconduct lawsuit. Attached hereto as **Exhibit 63a** are true and correct excerpts of copies of documents related to Mr. ██████ allegations. The letter alleged that, on December 14, 2018, Officers ██████ and ██████ intentionally slammed the food port on Mr. ██████ hands in Building 7 after Mr. ██████ had asked them for copies of his legal mail, resulting in a fracture in his hand. Ex. 63, at 1; Ex. 63a, at 1-3. Before staff slammed the food port on Mr. ██████ they cited his pending lawsuit against Officer ██████ Ex. 63, at 1. In a second incident, on December 17, 2018, three officers and Sergeant ██████ uffed and shackled Mr. ██████ in the building sallyport before returning him to his cell. *Id.* at 1-2. After cuffing and removing his cell mate, Sergeant

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

Case No. C94 2307 CW

[3496005.3]

1 ████████ gestured to the tower officer to close the cell door on Mr. ████████ neck and

2 chin, causing him to lose feeling and buckle to the ground. *Id.* at 2. When examined, a

3 custody officer told medical staff that Mr. ████████ "got down on his hands and knees ant

4 [sic] put his head in the way and acted like it was struck by door, but never actually made

5 contact with the object." Ex. 63a, at 5. This explanation is inconsistent with medical

6 documentation, which indicates that Mr. ████████ suffered a neck contusion in relation to

7 this incident. *Id.* at 8.

8     263. On March 15, 2019, Defendants sent a responsive letter, a true and correct

9 copy of which is attached hereto as **Exhibit 63b**, indicating that the allegations contained

10 in Plaintiffs' February 26, 2019 letter had been forwarded to the Director of the Division of

11 Adult Institutions. Defendants have not provided any further response to Plaintiffs'

12 February 26, 2019 letter.

13     **F.**     ████████████████ **DPM, EOP, 62 years old**

14     264. On February 28, 2019, Plaintiffs' counsel sent an advocacy letter to

15 Defendants, a true and correct copy of which is attached hereto as **Exhibit 64**, requesting

16 an investigation into allegations of staff misconduct raised by *Armstrong* class member

17 ████████ ████ Attached hereto as **Exhibit 64a** are true and correct excerpts of copies of

18 documents related to Mr. ████████ allegations. The letter alleged that, on June 25, 2018,

19 Officers F. ████████ ████████ and H. ████████ assaulted him after he expressed that he was

20 feeling suicidal and wanted to go to a crisis bed. Ex. 64, at 1. These officers reportedly

21 threw him to the ground, and then began kicking, kneeing, and stomping on him. *Id.* After

22 sounding an alarm, the officers told a psychiatric technician, who had begun administering

23 first aid on Mr. ████████ to "just leave him." *Id.* at 2. Mr. ████████ was then dragged to the gym

24 and placed in a holding cage, where Officer F. ████████ hit him in the back of his head and

25 kicked him in his groin. *Id.* Medical records indicate that Mr. ████████ suffered abrasions,

26 scratches, and bleeding from his forehead. Ex. 64a, at 1-2. After the incident, Mr. ████████

27 was admitted to a crisis bed. *Id.* at 4-6.

28

[3496005.3]

265. On December 17, 2019, Defendants sent a responsive letter, a true and correct copy of which is attached hereto as **Exhibit 64b,** indicating that, after a "thorough inquiry" had been completed prior to the receipt of Plaintiffs' letter, Defendants found that the allegations raised by Mr. ██████ were "not supported by the evidence." Ex. 64b, at 1-2. In making that determination, CDCR relied on staff interviews, a contemporaneous 7219, Mr. ██████ 602, and a review conducted by the IERC. *Id.* Defendants have not produced any documents underlying their determination that Mr. ██████ allegations were "not supported by the evidence."

**G.** ████████ ████████████ **EOP, 66 years old**

266. On March 21, 2019, Plaintiffs' counsel sent an advocacy letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 65**, requesting an investigation into allegations of staff misconduct raised by *Armstrong* class member ████████ ██████ The letter alleged that, on March 21, 2019, Officer ████ pushed and prodded Mr. ██████ on his way back to his cell. Ex. 65, at 1. In the doorway, Officer ████ pushed Mr. ██████ with such force that he fell to the ground, and was unable to get up.

267. On July 31, 2019, Defendants sent a responsive letter, a true and correct copy of which is attached hereto as **Exhibit 65a**, indicating that Mr. ██████ allegations were not confirmed. Ex. 65a, at 3.

**H.** ████████████████████ **EOP, 37 years old**

268. On October 4, 2019, Plaintiffs' counsel sent an advocacy letter to Defendants, a true and correct copy of which is attached hereto as **Exhibit 66** (exhibits to letter omitted), requesting an investigation into allegations of staff misconduct raised by *Coleman* class member ██████ ██████ True and correct copies of excerpts from Mr. ██████ medical and custody records are attached hereto as **Exhibit 66a**. Contemporaneous medical records indicate that Mr. ██████ suffered injuries on his face consistent with forceful strikes to his head. Ex. 66a, at 1.

269. The letter alleged that, on May 11, 2018, Officer ██████ kicked Mr. ██████ twice in the head with extreme force despite the fact that Mr. ██████ was already on the

ground and compliant with officers' orders. Ex. 66, at 2. A CDCR staff psychologist, ██████████, witnessed the incident and wrote that Mr. ██████ was not a threat but that Officer ██████ nevertheless used "extreme force" in kicking him twice in the head. Ex. 66, at 3; Ex. 66a, at 6. Mr. ██████ was found guilty of an RVR for assaulting staff. Ex. 66, at 3; Ex. 66a, at 15-30. According to reports attached to the RVR, the supervising Lieutenant claimed that Mr. ██████ injuries resulted from Officer ██████ slipping on discharged pepper spray and "str[iking]" Mr. ██████ in the torso. Ex. 66, at 3; Ex. 66a, at 15-30.

270. On December 26, 2019, Defendants sent a responsive letter, a true and correct copy of which is attached hereto as **Exhibit 66b**, indicating that Mr. ██████ allegations were sustained after an investigation completed by OIA on April 5, 2019. Later representations from CDCR officials testified that Officer ██████ was terminated in relation this allegation, and CDCR relied on the statement of a "clinician witness" to support its decision to terminate Officer ██████ Ex. 83, at 66:12-17, 68:1-4. Officer ██████ had been implicated in multiple allegations of staff misconduct, more than one of which resulted in such allegations being referred by the Hiring Authority to the OIA for an administrative investigation. *Id.* at 68:9-15 Notably, despite the multiple allegations involving Officer ██████ Officer ██████ was not placed on administrative time off at any point during any inquiry or investigation into such allegations. *Id.* at 69:22-70:1.

## IV.   PLAINTIFFS' COUNSEL'S MONITORING REPORTS AND DEFENDANTS' RESPONSES

271. Attached hereto as **Exhibit 67** is a true and correct excerpted copy of Plaintiffs' Report regarding the September 2016 *Armstrong* monitoring tour of RJD, issued on November 15, 2016.

272. Attached hereto as **Exhibit 68** is a true and correct excerpted copy of Defendants' Response to Plaintiffs' Report regarding the September 2016 *Armstrong* monitoring tour of RJD, issued by Defendants on February 17, 2017.

[3496005.3]

273. Attached hereto as **Exhibit 69** is a true and correct excerpted copy of Plaintiffs' Report regarding the April 2017 *Armstrong* monitoring tour of RJD, issued on May 26, 2017.

274. Attached hereto as **Exhibit 70** is a true and correct excerpted copy of Defendants' Response to Plaintiffs' Report regarding the April 2017 *Armstrong* monitoring tour of RJD, issued by Defendants on April 17, 2018.

275. Attached hereto as **Exhibit 71** is a true and correct excerpted copy of Plaintiffs' Report regarding the October 2017 *Armstrong* monitoring tour of RJD, issued on November 14, 2017.

276. Attached hereto as **Exhibit 72** is a true and correct excerpted copy of Defendants' Response to Plaintiffs' Report regarding the October 2017 *Armstrong* monitoring tour of RJD, issued by Defendants on August 21, 2018.

277. Attached hereto as **Exhibit 73** is a true and correct excerpted copy of Plaintiffs' Report regarding the March 2019 *Armstrong* monitoring tour of RJD, issued on May 3, 2019.

278. Attached hereto as **Exhibit 74** is a true and correct excerpted copy of Defendants' Response to Plaintiffs' Report regarding the March 2019 *Armstrong* monitoring tour of RJD, issued by Defendants on January 24, 2020.

## V. ANALYSIS OF PRIOR ADVOCACY AND DAI EMPLOYEE NON-COMPLIANCE LOGS

279. I also reviewed Plaintiffs' *Armstrong* monitoring tour reports and advocacy letters to count the number of discrete misconduct incidents of which Plaintiffs' counsel have notified Defendants. I used the same conservative counting method as described above. I considered a continuing course of misconduct to count as one incident of misconduct. For example, if a class member was assaulted by staff and then subjected to retaliation for filing a staff complaint about the assault, I counted those events as only one staff misconduct incident. Using this methodology, Plaintiffs' counsel shared with

[3496005.3]

Defendants fifty-four discrete allegations of staff misconduct involving *Armstrong* class members in tour reports and letters from September 2016 through December 2019.

280. I have reviewed all DAI Employee Non-Compliance Logs ("Accountability Logs") for the months of September 2016 through December 2019, which is the most recent log produced to Plaintiffs' counsel by Defendants. True and correct copies of these logs are attached hereto as **Exhibit 75**. In that period, CDCR did not log the following twelve *Armstrong*-related allegations of staff misconduct raised in Plaintiffs' counsel's advocacy letters and tour reports:

- Plaintiffs' October 23, 2019 advocacy letter alleged that Officer ███████ orchestrated a physical assault on *Armstrong* class member ███████ in retaliation for filing disability-related 602s. Ex. 41b.

- Plaintiffs' July 12, 2019 advocacy letter alleged that an unknown ISU officer assaulted *Armstrong* class member ███████ and attempted to cuff him in violation of his valid, disability-related front-cuffing chrono. Ex. 11b.

- Plaintiffs' June 28, 2019 advocacy letter alleged that Officer ███████ denied accommodations to *Armstrong* class member ███████ after Ms. ███ filed a staff complaint against him. Ex. 51b.

- Plaintiffs' May 24, 2019 letter alleged that Officer ███████ Officer ███████ and Sergeant A. ███████ assaulted *Armstrong* class member Lee ███████ before denying Mr. ███ his wheelchair, telling him to, "shut the fuck up, rat," and forcing him to walk 200 yards without any assistive devices. Ex. 47b.

- Plaintiffs' April 18, 2019 letter alleged that Officer ███████ grabbed *Armstrong* class member ███████ hand and cane and caused him to become unsteady before slamming his head into a table. Ex. 27b.

- Plaintiffs' February 26, 2019 letter alleged that officers threw a person out of his walker before jumping on his back. Ex. 62.

- Plaintiffs' January 8, 2019 letter alleged that Officer ███████

[3496005.3]

orchestrated the assault of *Armstrong* class member ███████ in

retaliation for ██████ participation in the *Armstrong* joint audit in 2018.

Ex. 38b.

- Plaintiffs' March 2019 Report alleged that staff trapped *Armstrong* class member ███████ a wheelchair user, in his cell door for 15 minutes. Ex. 73.

- Plaintiffs' March 2019 Report alleged that officers flipped *Armstrong* class member ███████ over while he was in his wheelchair on May 7, 2018. Ex. 73.

- Plaintiffs' October 2017 Report alleged that officers in Building 10 commonly close cell doors on people with disabilities. Ex. 71.

- Plaintiffs' April 2017 Report alleged that staff make discriminatory remarks to people with disabilities, like "go sit your crippled ass down." Ex. 69.

- Plaintiffs' September 2016 Report alleged that officers in Building 8 commonly close cell doors on people with disabilities. Ex. 69.

281. CDCR did log some of the allegations included in Plaintiffs' counsel's advocacy letters and tour reports. CDCR did not, however, confirm any of those allegations. In addition, in seventeen instances, Defendants failed to initiate inquiries within ten business days of receipt of notice of allegations from Plaintiffs' counsel. In twelve of these instances, more than 120 business days elapsed between Plaintiffs' notice and the initiation of an inquiry by Defendants. In the case of Mr. ██████ – who alleged that he was assaulted by staff in response to requesting an accommodation for his disability – a staggering 206 business days elapsed between Plaintiffs' notice and the initiation of an inquiry.

282. I also reviewed the Accountability Logs to determine whether any of the allegations of staff misconduct made by people on Facility C who were interviewed by CDCR on December 4-5, 2018 were included on the Logs. Following those interviews, the lead investigator issued a report, which is attached as Exhibit 2, on December 10, 2018.

[3496005.3]

On pages 14-17 of the report, the lead investigator included a list of specific allegations of misconduct raised by forty-eight specific incarcerated people.  The list included the incarcerated persons' names and CDCR numbers.  To determine whether CDCR included any of these allegations on its Accountability Logs, I used the search function in Adobe Acrobat to search for the CDCR numbers of each of the forty-eight incarcerated people listed on pages 14-17 of Exhibit 2.  My review showed that none of the allegations from were included on the logs.

283.  I also reviewed the Accountability Logs to determine the results of investigations into allegations of staff misconduct that Defendants did include on the Logs.  For purposes of this review, I only considered log entries that involved the types of staff misconduct at issue in Plaintiffs' motion, including allegations of assaults by officers, assaults by incarcerated people working for officers, officers closing cell doors on people, officers harassing people, officers retaliating against people, and officers using inappropriate language toward people with disabilities.  I did not include any other allegations, including allegations solely involving denials of disability accommodations, such as denials of wheelchair pushers, incontinence supplies, or effective communication.  From September 2016 to December 2019, Defendants logged thirty-two allegations of staff misconduct of the type at issue in this motion.  CDCR confirmed only one such allegation, which involved officers closing a cell door on a person.  CDCR referred two allegations to OIA.

## VI.  OTHER RELEVANT DOCUMENTS

284.  Attached hereto as **Exhibit 76** is a true and correct excerpted copy of Plaintiffs' Report regarding the May 2019 *Armstrong* monitoring tour of California State Prison – Los Angeles County ("LAC"), issued on July 16, 2019.

285.  Attached hereto as **Exhibit 77** is a true and correct copy of a letter dated July 23, 2019 from Erin D. Anderson, CDCR Office of Legal Affairs, to Thomas Nolan, Plaintiffs' counsel, responsive to allegations of staff misconduct raised in Plaintiffs' May 2019 Report of LAC.

[3496005.3]

286.     Attached hereto as **Exhibit 78** is a true and correct copy of a letter with exhibits omitted dated April 10, 2019 from Thomas Nolan, Plaintiffs' counsel, to Nicholas Weber, Melissa Bentz, Dillon Hockerson, and Jerome Hessick, CDCR Office of Legal Affairs, regarding allegations of staff misconduct against *Coleman* class members at LAC.

287.     Attached hereto as **Exhibit 79** is a true and correct copy of four letters dated February 13, 2020 from Alan L. Sobel, CDCR Officer of Legal Affairs, to Thomas Nolan, Plaintiffs' counsel, responsive to Plaintiffs' April 10, 2019 letter.

288.     Attached hereto as **Exhibit 80** is a true and correct copy of a letter dated January 24, 2020 from Margot Mendelson and Amber Norris, Plaintiffs' counsel, to Russa Boyd and Nicholas Weber, CDCR Office of Legal Affairs, regarding allegations of staff misconduct against *Armstrong* class members at California Institution for Women.

289.     Attached hereto as **Exhibit 81** is a true and correct copy of a letter dated February 12, 2020 from Patrick Booth, Plaintiffs' counsel, to Russa Boyd, CDCR Office of Legal Affairs, regarding allegations of staff misconduct against an *Armstrong* class member at California State Prison – Corcoran ("COR"), without the exhibits attached to the letter.

290.     Attached hereto as **Exhibit 82** is a true and correct copy of a letter dated February 14, 2020 from Patrick Booth and Margot Mendelson, Plaintiffs' counsel, to Nicholas Weber, CDCR Office of Legal Affairs, regarding allegations of staff misconduct against a *Coleman* class member at California State Prison – Sacramento ("SAC"), without the exhibits attached to the letter.

291.     Attached hereto as **Exhibit 83** is a true and correct copy of excerpts from the confidential portion of the transcript for the January 29, 2020 deposition of Kimberly A. Seibel, Deputy Director of Facility Operations.

292.     Attached hereto as **Exhibit 84** is a true and correct copy of the transcript for the February 13, 2020 deposition of ███████, a clinical psychologist at RJD.

293.     Attached hereto as **Exhibit 85** is a true and correct copy of a letter dated March 27, 2019 from Rita Lomio and Amber Norris, Plaintiffs' counsel, to Russa Boyd,

[3496005.3]

1 CDCR Office of Legal Affairs, regarding allegations of staff misconduct against
2 *Armstrong* class members at SAC.

3     294.    Attached hereto as **Exhibit 86** is a true and correct excerpted copy of
4 Plaintiffs' Report regarding the April and June 2019 monitoring tour of the Substance
5 Abuse Treatment Facility and State Prison, Corcoran, issued on August 14, 2019.

6     295.    Attached hereto as **Exhibit 87** is a true and correct excerpted copy of
7 Plaintiffs' Report regarding the August 2019 monitoring tour of SAC issued on
8 January 10, 2020.

9     296.    Attached hereto as **Exhibit 88** is a true and correct copy of a declaration
10 from *Coleman* class member ███████████████ signed on January 8, 2020.

11     297.    According to his declaration, Officer ██████ threatened to "beat [Mr.
12 ██████ ass" on August 3, 2019 in response to Mr. ██████ attempts to obtain medical
13 attention for an elderly *Armstrong* class member who was experiencing a medical
14 emergency. Ex 88, ¶¶ 6-7. On November 21, 2019, Officer ██████ refused Mr. ██████
15 access to the mental health services building for an appointment, and then yelled threats
16 and insults at Mr. ██████ which made him believe the officer was provoking him to fight.
17 *Id.*, ¶ 8.

18     298.    On July 1, 2019, I participated in a telephone conference with Ursula Stuter
19 and Russa Boyd (both from the CDCR Office of Legal Affairs), Kimberly Seibel (the then-
20 Associate Director over the Reception Center Mission for CDCR headquarters), and
21 Patrick Covello (the then-Acting Warden at RJD). The CDCR participants provided me
22 with an update regarding Defendants' efforts to remedy staff misconduct problems at RJD.
23 They stated that these efforts included the hiring of a new captain for Facility C, the hiring
24 of additional sergeants to conduct additional training on second and third watch on
25 Facility C, the redirection of five employees off of Facility C, the replacement of staff in
26 the Investigative Services Unit, changes to the process for collecting appeals on Facility C,
27 the upgrading of existing cameras on Facility C, and the dismissal of three employees for
28 staff misconduct. The CDCR participants also indicated that they were investigating forty-

three specific allegations of misconduct discovered during interviews with incarcerated people on Facility conducted in December 2018. Lastly, Warden Covello indicated that the remaining yards at RJD would be getting camera coverage in FY 2019-20. None of the CDCR participants provided any information about the specific findings from the December 2018 interviews, including the findings regarding staff abuses of people with disabilities. Nor was I informed of the existence of the Bishop or ██████ Reports.

299. Some of Plaintiffs' counsel's advocacy letters and Defendants' responses to those letters were designated by the parties as attorneys' eyes only. In advance of the filing of this motion, the parties met and conferred regarding those designations and agreed, on February 24, 2020, that the letters and responses are not attorneys' eyes only and may be filed in court so long as the parties redact information in accordance with the existing protective orders in this case.

300. Attached hereto as **Exhibit 89** is a true and correct copy of a video, produced by Defendants to Plaintiffs on February 26, 2020. Defendants have informed Plaintiffs that this video depicts the January 21, 2019 incident discussed in Paragraph 259, *supra*, involving ███████████████ At approximately 1:50 in the video, the video shows an officer throwing Mr. ██████ to the ground from the seat of his walker. At approximately 2:15, the video appears to show officers throwing Mr. ██████ to the ground again. Attached hereto as **Exhibit 90** is a true and correct copy of the same video, zoomed in on the area where the officer threw Mr. ██████ to the ground. At approximately 0:30 into the zoomed-in video, officers can be seen throwing Mr. ██████ to the ground from the seat of his walker. At approximately 0:55 into the zoomed-in video, the video appears to show officers throwing Mr. ██████ to the ground again.

/ / /

/ / /

/ / /

/ / /

/ / /

[3496005.3]

1    I declare under penalty of perjury under the laws of the United States of America

2  that the foregoing is true and correct, and that this declaration is executed at San Francisco,

3  California this 27th day of February, 2020.

4

5                                              /s/ Michael Freedman
                                               Michael Freedman
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF M. FREEDMAN ISO MOTION TO STOP DEFS. FROM ASSAULTING, ABUSING & RETALIATING
AGAINST PEOPLE W/ DISABILITIES AT R.J. DONOVAN CORR. FACILITY

[3496005.3]