1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>GAVIN NEWSOM, et al.,<br><br>          Defendants. | Case No. C94 2307 CW<br><br>**[~~PROPOSED~~] TEMPORARY RESTRAINING ORDER**<br>Judge:   Hon. Claudia Wilken |

Upon review of Plaintiffs' Notice of Ex Parte Motion and Ex Parte Motion for Temporary Restraining Order, the supporting exhibits, and the entire record in this matter, and good cause appearing, Plaintiffs' Motion for Temporary Restraining Order is GRANTED IN PART AND DEFERRED IN PART.  Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Civil Local Rule 65-1, the Court orders as follows:

The Court concludes that Plaintiffs have met their burden of demonstrating: (1) that Plaintiffs have shown a likelihood of success on the merits of their claim that Defendants and their employees have violated the March 17, 2020, order of this Court, Dkt. 2931, and the Americans with Disabilities Act ("ADA") by retaliating against two class members who are currently at the R.J. Donovan Correctional Facility ("RJD") (collectively, the "Witnesses") for their participation in Plaintiffs' motions regarding staff misconduct; (2) that Plaintiffs have shown a likelihood of success on the merits of their claim that continued detention of the Witnesses at RJD is causing and will cause irreparable harm to the Witnesses absent an injunction; (3) that the balance of equities weighs in Plaintiffs' favor; and (4) that the public interest favors issuing an injunction.  <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").  Accordingly, a temporary restraining order ("TRO") pursuant to Federal Rule of Civil Procedure 65 and the inherent equitable powers of this Court is warranted.

1.     The Court finds that Plaintiffs have demonstrated that they are likely to show that Defendants and their employees have retaliated against the Witnesses for participating in this lawsuit and for supporting the Motion to Stop Defendants from Assaulting, Abusing and Retaliating Against Incarcerated People with Disabilities at R.J. Donovan Correctional Facility ("RJD Motion"), Dkt. 2922 to 2922-8, and the Motion to Stop Defendants from Assaulting, Abusing and Retaliating Against Incarcerated people with Disabilities ("Statewide Motion" and, collectively with the RJD Motion, the "Motions"), Dkt. 2948 to 2948-6, in violation of this Court's March 17, 2020, order and the ADA.  Specifically,

[3569333.1]

1  Plaintiffs have demonstrated that they are likely to show that Defendants and their

2  employees have violated the provision of the March 17, 2020, order that prohibits

3  "Defendants and their employees . . . from retaliating against the Declarants, <u>Armstrong</u>

4  class members, or incarcerated people at RJD for participating in the [RJD Motion]."  Dkt.

5  2931 at 3.  Plaintiffs also have demonstrated that they are likely to show that Defendants

6  and their employees have also violated 42 U.S.C. §§ 12203(a) and (b).

7         2.      The Court further finds that Plaintiffs have demonstrated that they are likely

8  to show that Defendants and their employees have been unable or unwilling to address the

9  safety concerns of the Witnesses in their current housing placements at RJD.  In light of

10  the death of a previous witness who submitted a declaration in support of the RJD Motion

11  who was housed in the same unit as the Witnesses are currently, as well as the June 17,

12  2020, assault on one of the two Witnesses and the incidents of retaliation described in the

13  declarations of the Witnesses and another witness, Plaintiffs have demonstrated that they

14  are likely to show that the Witnesses' lives will remain in danger and their future

15  participation as witnesses in this dispute will be jeopardized; that the Witnesses have

16  already faced violent retaliation for participating in the Motions and reporting officer

17  misconduct; and that the Witnesses have a credible fear that RJD is an extremely

18  dangerous place for those who report misconduct.

19         3.      The Court finds that the balance of equities weighs heavily in the Witnesses'

20  favor and that there is little burden on Defendants to protect the Witnesses.  Defendants

21  have pre-existing federal and state duties to keep all incarcerated people safe from staff

22  misconduct.  <u>See</u> U.S. Const., Amend. 8; <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 847

23  (1994); Cal. Code Regs., Tit. 15 § 3270 ("The requirement of custodial security and of

24  staff, inmate and public safety must take precedence over all other consideration in the

25  operation of all the programs and activities of the institutions of the department."); Cal.

26  Code Regs., Tit. 15 § 3271 ("Every employee, regardless of his or her assignment, is

27  responsible for the safe custody of the inmates confined in the institutions of the

28  department."); CDCR Dep't Operations Manual § 130101.3 ("CDCR employees have a

1  responsibility to protect the offenders in their custody").  Any burdens on Defendants are

2  outweighed by the burdens faced by the Witnesses—death, serious injury, and ongoing

3  violations of their federal civil rights.  See Hernandez v. Sessions, 872 F.3d 976, 996 (9th

4  Cir. 2017) ("Faced with . . . preventable human suffering, [the Ninth Circuit] ha[s] little

5  difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor.")

6  (quotation omitted).

7       4.    The Court further finds that the need for a safe placement must also take into

8  account the COVID-19 pandemic sweeping through California's prisons.  Both Witnesses

9  have multiple COVID-19 risk factors, including their age and underlying health

10  conditions.

11       5.    Finally, the Court finds that the public has a strong interest "in enforcement

12  of the ADA and in elimination of discrimination on the basis of disability."  Enyart v. Nat'l

13  Conference of Bar Examiners, Inc., 630 F.3d 1153, 1167 (9th Cir. 2011); see Hernandez v.

14  Cty. of Monterey, 110 F. Supp. 3d 929, 958 (N.D. Cal. 2015).  Accordingly, an order

15  protecting the Witnesses for the exercise of their rights under the ADA and their

16  participation in this litigation would serve the public interest.

17       6.    The Court hereby ORDERS:

18       a.    No later than July 6, 2020, at 4:00 p.m., Defendants shall develop and

19  send by electronic mail to Plaintiffs' counsel a proposed plan for transferring the

20  Witnesses to a custodial or community placement that:

21       i.    Is not at RJD;

22       ii.    Is not administrative segregation or any other type of punitive

23  housing;

24       iii.    Is not at a higher security level than the Witnesses' current

25  classifications;

26       iv.    Provides at least equivalent access to programming

27  opportunities, including compliance with the Coleman Program Guide;

28       v.    Is as safe in light of COVID-19 risks as possible; and

3             Case No. C94 2307 CW

vi.     If the placement is custodial, complete surveillance camera coverage is preferable.

b.     If no such placement exists within the California Department of Corrections and Rehabilitation ("CDCR"), Defendants' proposed plan must include transferring the Witnesses to a placement in the community or another correctional system that meets the criteria in Paragraph 6.a., including the Federal Bureau of Prisons.

c.     No later than July 7, 2020, at noon, Defendants shall arrange for Plaintiffs' counsel to conduct separate confidential legal telephone calls with each of the two Witnesses.

d.     No later than July 8, 2020, at noon, the parties shall meet and confer to attempt to resolve any objections that Plaintiffs may have regarding Defendants' proposed plan.

e.     If, following the meet-and-confer session, the parties are in agreement regarding the plan, the parties shall file a joint status statement no later than July 9, 2020, at midnight, attaching the agreed-upon plan under seal, and the Court will enter an order adopting and mandating Defendants' compliance with the plan.

f.     If, following the meet-and-confer session, Plaintiffs have objections to Defendants' plan, then, no later than July 9, 2020, at midnight, the parties shall file a joint status statement setting forth each side's respective position and attaching under seal the plan Defendants propose to implement.  Each side's statement of its position shall not exceed five pages.  The Court will rule on Plaintiffs' motion for a temporary restraining order with respect to the transfer of the Witnesses shortly upon receipt of the joint statement.

g.     These remedies are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.  See 18 U.S.C. § 3626(a)(1)(A); Armstrong v. Brown, 768 F.3d 975, 985-86 (9th Cir. 2014).

[3569333.1]

h.      No security shall be required because the Witnesses are incarcerated and presumably indigent.

## ORDER TO SHOW CAUSE

No later than July 10, 2020, Defendants shall show cause why a preliminary injunction continuing in effect this Court's temporary restraining orders should not issue. Plaintiffs may file a response no later than July 13, 2020.  The hearing on the order to show cause will be held remotely on July 16, 2020, at 2:30 p.m.

IT IS SO ORDERED.

DATED:  July 2, 2020

_____
Honorable Claudia Wilken
United States District Judge

5                                                        Case No. C94 2307 CW
[PROPOSED] TEMPORARY RESTRAINING ORDER