Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. CV 94-2307 CW |
| Plaintiffs, | **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Pursuant to the Court's orders for remedial measures at RJD, LAC, COR, SATF, CIW, and KVSP (the "*Armstrong* six" prisons), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**Investigation timelines**

Under the remedial plans, investigations assigned to custody supervisors (sergeants and lieutenants) must be completed in 120 days, while cases assigned to special agents must be completed in 180 days. In his last report, the Court Expert expressed concerned that a significant number of investigations were missing those deadlines. There has been some improvement on this front. Only 39% of cases received by AIU in June 2022 closed on time; for November 2022, the percentage has risen to almost 65%. However, 22.5% of cases received that month either

closed after the deadline or remain open and past due (the remaining investigations are open and have not yet reached their deadlines).[1]

The parties' discussions on this issue have also revealed a new concern as it relates to timeliness. While the remedial plans set timelines for investigations, the investigation is only the first step in the process—imposition of discipline still remains. Subject to certain exceptions, by statute CDCR has one year from discovery of an allegation to both "complete its investigation" and to "notify the public safety officer of its proposed discipline." Gov. Code § 3304(d). The statute of limitations for non-peace officer staff is three years. Gov. Code § 19635. This means that even if an AIU sergeant completes her investigation in 120 days, it could still take an additional eight months before the notice of proposed discipline is sent, and of course longer after that for discipline finally to be imposed. That appears to be what is happening. Data from CDCR shows that AIU completed 1,561 investigations as of March 22, 2023, but wardens had yet to act on 81% of them—1,268 cases remain pending.[2]

Implementing a quick but thorough investigations and discipline process serves two goals: it protects the integrity of investigations by minimizing the risk of fading memories and lost evidence, and it ensures prompt resolution for both the accused officer and the affected complainant. A system in which investigations are timely but imposition of discipline lags achieves only the first of those goals. In addition, the remedial plans allow wardens to reopen investigations they deem incomplete. *See* Remedial Plan, 6 ("If the hiring authority finds the investigation biased or not comprehensive the hiring authority can request further investigation."). If the warden waits until the eve of the statutory deadline to review the file, the opportunity for follow-up investigation could be lost. The Court Expert is concerned that long delays after completion of investigations could undermine the goals of the reforms the parties have agreed upon and the Court has implemented, and he will continue to discuss this issue with

---

[1] Investigation deadlines may be extended for "extenuating circumstances," which must be documented in writing. *See* Dkt. 3393 (Remedial Plan) at 5. The Court Expert does not have information on how many of the investigations that appear past due fall under this provision.

[2] Of the cases that have been decided, allegations were sustained in 24 cases (1.5% of total cases investigated) and not sustained in 269 (17.2% of total cases).

the parties. This is a problem that must be remedied for the new investigation and discipline process to be effective.

**Investigator caseloads**

CDCR provides the Plaintiffs and the Court Expert quarterly data on the number of complaints generated at the six institutions subject to the Court's remedial orders. The most recent data shows that the number of complaints filed is roughly consistent month over month, with almost 3,200 complaints filed from the Armstrong six prisons in February 2023. Complaints alleging forms of staff misconduct listed on the ADI are routed by the Centralized Screening Team (CST) to the AIU for investigation; those that allege less serious forms of staff misconduct are sent to Locally Designated Investigators (LDIs) for investigation at the institution. The percentage of complaints sent to AIU has increased over time. In February, CST sent nearly 13% of complaints to the AIU, up from approximately 9% in June 2022.[3]

The Court Expert remains concerned about the number of cases being routed to AIU and the investigators' capacity to handle the workload. As noted in the Court Expert's earlier reports, CDCR's initial estimate was that AIU would be receiving 505 cases per month. In February, AIU received 404 cases from the six *Armstrong* prisons alone. The Court Expert does not have data on the number of additional cases coming into AIU from prisons not subject to the Court's remedial orders, but as of March 1, 2023, complaints made via Form 602-1 at all prisons are being routed to AIU, and complaints initiated through other processes will be sent to AIU in phases over the course of this year. Given that only 17% of the state's prisons are subject to the Court's orders, the fact that those institutions are already generating 80% of the projected case volume indicates that AIU may struggle to effectively manage its caseload.

---

[3] A complaint may raise multiple claims; accordingly, the number of complaints alleging staff misconduct is smaller than the number of claims of staff misconduct.

**Shortcomings in investigations and discipline**

The Court ordered CDCR to make quarterly productions of information related to closed investigations. Based on their review of that information, Plaintiffs have continued to raise concerns with individual investigations and disciplinary decisions. The Court Expert shares many, although not all, of Plaintiffs' concerns. The information produced by CDCR includes instances of clear staff misconduct, including unauthorized or excessive uses of force, that were either not disciplined or not disciplined adequately. In some cases there were shortcomings in the investigations; in some the Court Expert disagrees with the warden's disciplinary decisions; and in some the problems lay with both the investigation and the discipline.

CDCR has pointed out that, because of the pace of document production, the majority of these complaints were investigated under legacy processes, before implementation of the remedial plans. While investigations that took place prior to implementation of the new processes are not directly relevant to the Court's orders, the same individuals who conducted investigations and made disciplinary decisions before will continue to do so now. CDCR should take the opportunity to identify problems and seek to address them, regardless of when the investigation occurred.

More importantly, CDCR has also acknowledged errors in the disciplinary decisions in some of the cases flagged by Plaintiffs. It has also provided training in de-escalation and use of force to some of the officers identified by Plaintiffs as having been involved in staff misconduct. The Court Expert is encouraged that CDCR has indicated a willingness to acknowledge and seek to remedy shortcomings. The Court Expert will be working with the parties to develop a methodology for reviewing individual cases in a manner that will allow the parties to reach agreement on shortcomings and craft solutions.

The Court Expert noted in his prior report that investigators have at times at times failed to timely seek BWC and/or AVSS footage, making investigation of misconduct complaints far more difficult. CDCR has now implemented a requirement that AIU investigators triage incoming cases and submit requests for preservation of relevant footage within 10 days. It is in the process of implementing the same requirement for LDIs, the investigators at the institutions

who handle cases that allege less serious forms of staff misconduct. We will monitor this new policy closely to ensure that BWC footage is not being lost due to delays in requesting preservation.

Finally, Plaintiffs have noted instances where officers deactivated BWCs contrary to policy or, worse, at times were it appears there might have been an intentional effort to thwart recording. CDCR agreed that Plaintiffs identified compliance problems in some cases and has provided additional training on BWC activation for the officers at issue. We will also be focusing on BWC policies in the upcoming quarter.

Dated: March 31, 2023

Respectfully submitted,

_____/s/_____
Edward W. Swanson
SWANSON & McNAMARA LLP