Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. CV 94-2307 CW |
| Plaintiffs, | **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Pursuant to the Court's orders for remedial measures at RJD, LAC, COR, SATF, CIW, and KVSP, the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**Investigation and discipline timelines**

The remedial plans require investigations to be completed in 120 or 180 days, depending on whether they are assigned to custody supervisors (sergeants and lieutenants) or to special agents. CDCR continues to struggle with these timelines, although the trend is improving. While the numbers vary month to month, CDCR generally is closing more investigations within the 120- or 180-day period as time goes on. For cases received from June-August 2022, an average of 51% closed late; for cases received from December 2022 through February 2023, the average

was 31%. While the Court Expert is pleased to see improvement, it is unacceptable that nearly a third of investigations are still taking longer than permitted under the Court's orders. Defendants acknowledge the problem and have made efforts, including creating strike teams and temporarily reassigning staff, to address it, but clearly more must be done.

Conclusion of an investigation is not the end of the process, as the warden must still decide what (if any) discipline to impose. The Court Expert's recent reports have discussed a backlog of cases where the investigation is complete but wardens have not rendered their decisions. At the time of the last report, the data (which was current as of April 2023) appeared to show that wardens had not acted on 80% of closed investigations. The most recent data (current as of June 2023) shows improvement: 55% of closed investigations are awaiting a warden's decision. But significantly, CDCR has identified two shortcomings in the dataset that may be causing an overstatement of pending cases. First, there appears to be a data entry delay, such that cases are not timely being designated "closed" in the tracking system. Second, the system appears to log cases as pending a warden's decision if there are ongoing proceedings before the State Personnel Board *after* the warden has acted. The Court Expert is encouraged both by the improvement in the statistics and by the indications that the 55% figure may be inflated. Nonetheless, defendants acknowledge that a backlog of closed investigations persists. As the Court Expert has noted previously, any delay after completion of an investigation undermines the goals not only of prompt resolution but also of thorough investigation, because wardens may be barred by the statute of limitations from sending cases back for additional investigation. Defendants have implemented a system to shift cases from wardens with higher caseloads to wardens with lower caseloads and have engaged retired annuitants to assist with discipline determinations following conclusion of inquiries (the term for investigations of less serious allegations conducted by Locally Designated Investigators). The Court Expert hopes to be able to report on further reduction—and hopefully elimination—of the remaining backlog.

**Review of closed cases**

Defendants continue to make monthly productions of documents related to closed investigations, which Plaintiffs review to assess whether, in their view, CDCR is conducting unbiased and comprehensive investigations. In his last report, the Court Expert described a new process that the parties have developed to review a selection of closed investigations. The goal is to create a structure that allows the parties to discuss cases openly, in a privileged setting, in order to reach consensus on what changes need to be made to improve the investigations and discipline system or to identify more clearly areas of disagreement. The parties held the first such meeting on August 18, 2023, which the Court Expert found to be productive, and have scheduled a second meeting for the coming quarter.

Outside of the confidential process, Plaintiffs have raised certain concerns regarding investigations. Among them, Plaintiffs cite examples of officers not complying with BWC policies, which undermines the integrity of investigations. Second, CDCR in August 2022 implemented a "video quick close" process, under which investigators could complete investigations based on review of video evidence alone. The Court Expert agrees with Plaintiffs that, while review of video is invaluable and may be dispositive in many cases, the existence of video does not generally mean that other investigative steps, such as interviewing the claimant, should not be pursued. CDCR reports that investigators now attempt to interview all claimants, regardless of video evidence. Third, as the Court Expert has described in earlier reports, Plaintiffs have noted that the AIU does not always obtain available footage, and in other cases it does not obtain the correct footage. In an effort to ensure that video evidence is preserved and reviewed, CDCR has implemented a triage process at AIU that requires a request for preservation of footage within 10 days of receipt of a case. As part of that process, staff are to interview claimants in cases where the date or time of relevant footage may not be evident from

the complaint. It will take some time for documents related to cases handled under this process to be produced in this case, and the Court Expert will continue to monitor the issue.[1]

**Complaint classification**

The number of cases continues to grow. For the year starting June 2022, CST received an average of about 3,500 cases per month for screening; that number jumped to 4,500 in June 2023. Overall, CST has classified 82% of cases as routine (not alleging staff misconduct) and has routed 9% to the AIU (for allegations of serious staff misconduct) and 9% to LDIs (who conduct inquiries into less serious allegations).

Plaintiffs continue to raise concerns that CST is failing to properly categorize complaints and that more cases should be going to AIU. Based on their review of a sample of cases, they believe that around 30% of allegations classified as "routine" by CST in fact allege staff misconduct. Defendants have disputed Plaintiffs' assessment in many instances, and the Court Expert will continue to evaluate this issue with the parties.

Relatedly, plaintiffs have raised concerns that CST appears to be improperly reviewing the merits of allegations before making a routing decision. As initially conceived, CST was not supposed to evaluate claims but was to route them based on the face of the complaint.[2] In an effort to reduce caseload for AIU investigators, CDCR subsequently implemented a merits screen for complaints coming from prisons other than the six *Armstrong* institutions. Under this process, which CST calls a "causal nexus" review, CST assesses whether complaints concerning misconduct based on a protected status or activity (such as discrimination on the basis of race) sufficiently allege a connection between the misconduct and the protected status or activity. Plaintiffs believe CST may be employing a causal nexus review, or something like it, for at least some allegations from *Armstrong* prisons, and they continue to object to the causal nexus review

---

[1] Plaintiffs believe the current 90-day video preservation should be extended to reduce the risk of losing potentially relevant footage and note that the Office of the Inspector General has raised similar concerns.

[2] The remedial plans provide that "CST will route all allegations in the complaint that are on the ADI, as well any allegations directly related in time and scope that are not on the ADI, to OIA for investigation." Five Prison Remedial Plan (Dkt. 3393) 4.

being employed at institutions that are not the six *Armstrong* institutions. The Court Expert will continue to discuss these concerns with the parties.

Dated: October 1, 2023                    Respectfully submitted,

_____/s/_____
Edward W. Swanson
SWANSON & McNAMARA LLP

5