1  Rob Bonta
   Attorney General of California
2  Sharon A. Garske
   Supervising Deputy Attorney General
3  Sean Lodholz
   Olena Likhachova
4  D. Mark Jackson
   Trace O. Maiorino
5  Deputy Attorney General
   State Bar No. 179749
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 510-3594
     Fax:  (415) 703-5843
8    E-mail:  Trace.Maiorino@doj.ca.gov
   *Attorneys for Defendants Newsom and CDCR*

10                IN THE UNITED STATES DISTRICT COURT

11               FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                          OAKLAND DIVISION

| | |
|---|---|
| **JOHN ARMSTRONG, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | C 94-2307 CW<br><br>**SUPPLEMENTAL DECLARATION OF ASSISTANT DEPUTY DIRECTOR M. HOUSTON IN SUPPORT OF DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO COURT EXPERT'S SECOND REPORT REGARDING TREATMENT OF PEOPLE WITH DISABILITIES AT SUBSTANCE ABUSE TREATMENT FACILITY [ECF NOs. 3500, 3510]** |

I, Mona Houston, declare:

1. I have been employed by the California Department of Corrections and Rehabilitation (CDCR) since 1991. I currently serve as the Assistant Deputy Director of the Program Operations in the Division of Adult Institutions. I have reviewed the *Armstrong* Court Expert's Second Report Regarding Treatment of People with Disabilities at Substance Abuse Treatment

1

1  Facility (SATF) (ECF No. 3500), filed with the Court on August 24, 2023, as well as prior
2  submissions related to the Court Expert's first report on SATF (ECF No. 3446). I have also
3  reviewed Plaintiffs' Response and supporting declarations to the Court Expert's second report on
4  SATF (ECF Nos. 3510, 3510-1, 3510-2, and 3510-3). I submit this declaration in support of
5  Defendants' Reply to Plaintiffs' Response to the Court Expert's Second Report Regarding
6  Treatment of People with Disabilities at SATF. I am competent to testify to the matters set forth
7  in this declaration and, if called upon by this Court, would do so.

8      2.    During my over 30 years with CDCR, I have served in a variety of positions that
9  include Account Clerk II, Business Manager, Correctional Administrator, Chief Deputy Warden
10 at California Rehabilitation Center, and Warden at both California Institution for Men and
11 California Institution for Women. Since March 2022, I have been the Assistant Deputy Director,
12 Program Operations–Division of Adult Institutions.

13     3.    As the Assistant Deputy Director of Program Operations, I am responsible for
14 statewide compliance with the court orders in *Coleman v. Newsom*, *Armstrong v. Newsom*, and
15 *Clark v. State of California*, which includes formulating and providing interpretations of
16 operational policy and procedures concerning ongoing litigation, and ensuring that current
17 policies and procedures are being followed by both headquarters and field programs. I also
18 provide administrative oversight for the Department's court compliance efforts, and I am
19 responsible for the development and management of tracking and support systems to facilitate
20 ongoing compliance. Additionally, I am responsible for reviewing and recommending policies
21 and procedures related to specialized populations (Developmental Disability Program, Disability
22 Placement Program, and Mental Health Services Delivery System) within CDCR. My duties also
23 include planning, organizing, directing, and coordinating program activities such as developing
24 statewide training, specialized training, symposiums, and internal compliance reviews through
25 subordinate managers; program and policy formulation, implementation, and management; and
26 coordinating unit activities with other departmental institutional programs to ensure operational
27 effectiveness, and resolve operational problems. I am also a liaison to the CDCR's Office of
28

Legal Affairs and work with CDCR's Wardens, Associate Directors, Deputy Directors, Directors, and the heads of other agencies who may be stakeholders in the litigation process.

### Non-Medical Devices

4.      As of September 11, 2023, the Division of Adult Institutions, has submitted a change request to the Strategic Offenders Management System (SOMS) to create a system for tracking devices and supplies approved via the Reasonable Accommodation Panel (RAP), but not prescribed by medical providers.  This change will occur within approximately one year due to several priority change requests submitted to the SOMS team.  In the interim, medical providers will continue to input durable medical equipment (DME) receipts for these items to be captured within SOMS.  In addition, the RAP chairperson will continue to document these approvals via a CDCR 128-B form.

5.      In response to the Court Expert's recommendation that the SATF local operating procedure (SATF LOP 403 (VI)(C)(4)b(4)-(5)) explain who will purchase or pay for the non-medical devices that are deemed a reasonable accommodation under the ADA (ECF No. 3500 at 19) and to address Plaintiffs' complaints about forcing class members to purchase some accommodations (ECF No. 3510 at 19-23), CDCR has determined that, effective immediately statewide, when the RAP approves a reasonable accommodation to ensure class-member access to programs, services, and activities in compliance with the ADA and the remedial plan, CDCR will incur the cost associated with the reasonable accommodation when no reasonable alternative exists, unless such an accommodation creates an undue burden under the ADA.  CDCR will revise the applicable local operating procedures to comport with the foregoing policy.  Moreover, well-established and complete systems are in place to redress any inappropriate denial of any such accommodation, including the inmate grievance process, individual advocacy program, the accountability order, and monitoring tours.

### Accommodations for Blind Class Members

6.      In their response to the Court Expert's Second SATF Report, Plaintiffs requested the Court to enter an order directing Defendants, "in consultation with Plaintiffs and the Court Expert, to develop a concrete plan by a date certain to comply with their obligations under the

3

1  ADA, ARP, and this Court's prior orders to ensure blind and low-vision class members at SATF
2  have equal opportunity to read and write." (ECF No. 3510 at 10.)
3      7.    As Plaintiffs are aware, Defendants have been diligently working to improve
4  access to electronic assistive devices to accommodate class members' reading needs outside of
5  the prison libraries, including placement of such devices in the class-members' housing units. To
6  ensure that electronic assistive devices that will be made available to class members within their
7  housing units meet class members' various needs, including variable magnification, audio via
8  text-to-speech capability, spot-reading, and reading multi-page documents, Defendants are
9  working with vision consultants from the Western University of Health Sciences' Eye Care
10  Institute to identify appropriate devices and determine the optimal number and location of various
11  devices needed to accommodate class members' needs for independent and private reading and
12  writing.
13      8.    The Eye Care Institute vision consultant team includes Dr. Sukhija, Assistant
14  Professor at the Western University of Health Sciences, College of Optometry, who has over nine
15  years of experience in Optometry and over three years as the Chief of Vision Rehabilitation at the
16  Low Vision Rehabilitation clinic. A true and correct copy of Dr. Sukhija's Curriculum Vitae is
17  attached to this declaration as Exhibit A. The Eye Care Institute vision consultant team also
18  includes a team member, Tom Olzak, who is legally blind and serves as its resource specialist.
19  Mr. Olzak works with and trains blind and low vision patients by lending his knowledge and
20  experience of the various low vision devices and making recommendations based on the
21  individual's lifestyle, career, and baseline skillsets. A true and correct copy of Mr. Olzak's
22  professional biography is attached to this declaration as Exhibit B. Defendants have been
23  working with the Eye Care Institute consultants to identify the benefits and limitations of
24  numerous electronic assistive devices in consideration of the variety of disabilities that exist
25  amongst class members, the restrictions inherent in a correctional setting, the ease of use of
26  various devices or aids, the unavailability of internet access within class members' housing units,
27  and other factors.
28      9.    Despite Plaintiffs' claims to the contrary, Defendants already have a plan to ensure

1   that vision impaired class members' reading and writing needs are accommodated in compliance
2   with the ADA, remedial plan, and prior Court orders. In consultation with the Eye Care Institute
3   team, CAMU identified two electronic assistive devices that could reasonably accommodate
4   vision impaired class members' reading and writing needs outside of the prison libraries. On
5   September 27, 2023, CAMU initiated a request to receive these assistive devices. Upon receipt of
6   these devices, the Office of Correctional Safety will complete all required security-related testing
7   protocols within approximately one week of receipt. Upon approval of all security protocols,
8   CAMU will initiate procurement of the devices and create a policy for "check-in/check-out" use
9   of these devices as reading and writing accommodations for vision impaired class members
10  outside of the prison libraries. The procurement process for these devices is expected to take
11  approximately 90 days. Development of the policy regarding these devices is expected to take
12  approximately two weeks, plus additional time for negotiation with Plaintiffs' counsel. Once
13  these negotiations are completed, a 75-day labor notification period is required under the Union's
14  Memorandum of Understanding. Once this required period is completed and the policy regarding
15  these electronic assistive devices is issued, the selected devices will be deployed at all 11 DPV-
16  designated CDCR institutions for use by blind and low-vision class members as reading and
17  writing accommodations outside of the prison law libraries. In the meantime, CDCR staff will
18  continue to assist with reading and writing accommodations and devices remain accessible in the
19  libraries. In addition, LED magnifiers were already provided to all DPV class members and are
20  available to all DNV class members upon request and approval by CCHCS.
21          10.     Plaintiffs also unfairly criticize the Defendants' process for repair or replacement
22  of the assistive electronic devices placed in the library and contend that it fails to "explain which
23  devices would be checked," does not "include anywhere to document which device" is
24  nonoperational, and does not "appear to explain what should be done" to repair or replace devices
25  (ECF No. 3510 at 6-7). Defendants have been diligently working to ensure that the assistive
26  electronic devices located in prison law libraries are operational and available for use by the class
27  members. Office of Correctional Education has implemented a process that requires quarterly
28  statewide inspection of all library devices and is developing a plan to ensure regular repair or

1    replacement of malfunctioning or broken devices.  Office of Correctional Education expects to
2    have all inoperable library devices repaired or replaced by December 2023.  In the meantime,
3    Office of Correctional Education shall guide librarians on the necessary steps to follow if any of
4    the electronic assistive devices located in the libraries are found to be non-operational.

## Announcements to Deaf and Hard-of-Hearing Class Members

6    11.    Defendants continue to improve existing processes for notifications that includes
7    technology, face-to-face communication, and augmented training for staff that now includes, for
8    example, examples of personal-notification scenarios.  CDCR is moving forward with two new
9    technological processes.  One new process uses inmate tablets.  On September 29, 2023, CDCR
10   received approval to make individual announcements utilizing the messaging features on the
11   tablets.  CDCR is finalizing a draft policy and will implement it in the coming weeks, after
12   sharing it with Plaintiffs and the Court Expert.  Not only will the tablets provide another avenue
13   for communication, they will also document, and provide a means to audit, the notification
14   process.  This will allow Defendants to show they are successfully notifying inmates of important
15   information.  A draft of this policy will be provided to Plaintiffs in two weeks.  Once the policy is
16   negotiated and finalized, a 75-day labor notification period is required in accordance with the
17   Union's Memorandum of Understanding.

18   12.    Another new process involves vibrating watches.  Contrary to Plaintiffs'
19   characterization, Defendants continue to evaluate this option.  Although Plaintiffs identify other
20   state correctional departments use of vibrating watches, Plaintiffs fail to address whether
21   vibrating watches used by these other state correctional departments include alarms that cannot be
22   turned off or deactivated.  As detailed in Defendants' initial response, the alarm creates a security
23   risk that must be addressed to ensure the safety of staff and incarcerated population.  (ECF No.
24   3504-1 at 6.)  On September 26, 2023, Defendants purchased an exemplar watch that may satisfy
25   potential security concerns.  Defendants received the device on October 4, 2023, and will begin
26   two weeks of security testing at SATF, the Central California Women's Facility, and R. J.
27   Donovan Correctional Facility institutions.  If testing is successful, Defendants will provide the
28

6

Suppl. Decl. Houston Supp. Reply Ct. Expert's Second Report re Treatment People Disabilities SATF   (94-2307 CW)

1  vibrating watches as a reasonable accommodation to deaf and hard-of-hearing individuals at
2  SATF and elsewhere upon request and approval.

3    13.  Defendants remain open to collaborating with Plaintiffs to improve existing
4  notification processes and to implement the new processes for tablets and, potentially, vibrating
5  watches.  Court intervention is unnecessary and could potentially be counterproductive since
6  these developments are in progress and moving quickly.  To the extent the Court wishes to
7  monitor implementation, Defendants will provide Plaintiffs and the Court Expert with monthly
8  updates.

### TTY/TDD and Caption Phones

10    14.  Defendants have implemented a process for testing TTY/TDD phones on a quarterly
11  basis.  This is still a relatively new process and class members are starting to see results.  Indeed,
12  as of this writing, all TTY/TDD phones at SATF are confirmed to be working and properly
13  functioning.  Defendants will regularly test the TTY/TDD phones and promptly repair
14  nonfunctioning TTY/TDD phones to ensure continued accessibility for class members.

15    15.  Second, contrary to Plaintiffs' description, Defendants have provided training directly
16  to class members on how to operate the TTY/TDD phones.  This training addresses the Court
17  Expert's concern about relying on ADA workers (ECF No. 3500 at 4, 12), thus allowing class
18  members to have private calls without third-party involvement.

19    16.  Third, SATF has rolled out caption phones.  (ECF No. 3504-1 at 7.)  The roll-out was
20  communicated to class members via a tablet notification, which included instructions on how to
21  access the phones.  In addition to these notifications, on September 21, 2023, the SATF ADA
22  Coordinator held Inmate Advisory Council meetings on every yard to advertise the new phones.
23  In addition, CAMU has reviewed the locations of all TTY/TDD and caption phones, and
24  concluded that the locations were fully accessible to class members.  SATF leadership has also
25  confirmed that only one grievance (CDCR Form 602) and no Requests for Reasonable
26  Accommodation (CDCR Form 1824) have been submitted by the incarcerated population to
27  indicate any issues regarding access to such phones.  In advance of the October 5, 2023 deaf and
28  hard-of-hearing workgroup meeting, CDCR provided the Court Expert and Plaintiffs with the

results of the TTY/TDD and caption phone surveys that addressed accessibility, location, functionality, and class-member education.

17. While Defendants would like to reconfigure the tablets to allow greater access for deaf and hard-of-hearing class members, this is a longer-term project, which requires third-party vendor expertise because of the statewide deployment of tablets and goes beyond institutional reforms at SATF. Nevertheless, Defendants are committed to moving this forward at the headquarters level and as they renegotiate third-party vendor contracts. In the meantime, Defendants will accommodate class members with functioning TTY/TDD phones and the new caption phones, as described above. Again, to the extent the Court wishes to monitor these measures, Defendants will continue to provide timely updates to Plaintiffs and the Court Expert.

## CART (Communication Access Real-time Translation)

18. Defendants completed Phase One of implementation so that CART is currently available for all due process events at the 11 institutions. This phase included various forms of outreach and education, including flyers, tablet notifications, and multiple town halls. While Plaintiffs point out some of the challenges in a recent town hall, they fail to mention that the video shown to class members was itself a recording of CART.

19. Phase Two will expand CART to all programming areas at SATF and at the ten other institutions. Defendants completed the process of identifying these programming areas and testing them for internet and Wi-Fi access, which are required for CART service and which are, anticipated, to be available. Defendants are testing two new devices to deploy in these areas at SATF. Testing in the correctional setting was completed by October 4, 2023 by Enterprise Information Services (EIS) and EIS will conduct further security testing on the actual devices to be used, with CART service available in those areas two weeks later. CAMU directed ADACs to conduct town halls no later than September 15, 2023 and these town halls were completed by this deadline. This included direction to utilize the recently captured demonstration video specifically for the incarcerated population. In addition, staff were provided a separate video to ensure staff are also familiar with the service. CDCR will develop training for all staff who facilitate the

8

Suppl. Decl. Houston Supp. Reply Ct. Expert's Second Report re Treatment People Disabilities SATF   (94-2307 CW)

various programming (i.e., education, religious services, rehabilitative services, mental health groups) once EIS completes its required tasks.

### Hearing Aids

20. On September 29, 2023, CCHCS reported to CDCR that CCHCS representatives and experts, the Court Expert, and Plaintiffs, met to discuss hearing aid specifications. An agreement was reached as to the hearing aid specifications and the need for CCHCS to incorporate those into the scope-of-services that go out to bid. On October 4, 2023, Plaintiffs sent a letter to CCHCS summarizing the agreement on hearing aid specifications. Upon agreement by all parties of the specifications outlined in the summary, it is anticipated the hearing-aid bid will be released in early November 2023, awarded in January 2024, and the new services will begin in February 2024. CCHCS will continue to work with Plaintiffs and the Court Expert on this matter and provide updates when available.

### Continued Collaboration with CCHCS

21. CCHCS continues to work with the Court Expert, CDCR, and Plaintiffs to address items identified in the Court Expert's report. CCHCS will continue to monitor the processes implemented to ensure sustainability. CCHCS has confirmed that the rules violation report memorandum and training material for healthcare staff was sent to Labor for review. CCHCS will provide an update to the Court Expert when more information is available.

On October 5, 2023, in Sacramento, California, I declare under penalty of perjury that the foregoing is true and correct.

*DocuSigned by:*
Mona Houston
33A5039230EC492...

Mona Houston
Assistant Deputy Director of Program Operations for the Division of Adult Institutions
California Department of Corrections and Rehabilitation

CF1997CS0005 / 43898913

9

Suppl. Decl. Houston Supp. Reply Ct. Expert's Second Report re Treatment People Disabilities SATF   (94-2307 CW)