DONALD SPECTER – 083925
RITA K. LOMIO – 254501
MARGOT MENDELSON – 268583
JACOB J. HUTT – 804428 (MJP)
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621
Facsimile:    (510) 280-2704

MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
THOMAS NOLAN – 169692
PENNY GODBOLD – 226925
CAROLINE JACKSON – 329980
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104

LINDA D. KILB – 136101
DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
3075 Adeline Street, Suite 201
Berkeley, California  94703
Telephone:    (510) 644-2555
Facsimile:    (510) 841-8645

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. C94 2307 CW |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |
| | Judge:  Hon. Claudia Wilken |
| | Date:  January 4, 2024 |
| | Time:  2:30 p.m. |
| | Crtrm:  TBD |

[4385725.6]

Case No. C94 2307 CW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 3

I.    THE REVISED PERMANENT INJUNCTION REQUIRES DEFENDANTS TO PROVIDE REASONABLE ACCOMMODATIONS TO DEAF, BLIND AND LOW-VISION CLASS MEMBERS ................................................................ 3

II.   PAROLE PREPARATION IS A YEARS-LONG, TIME- AND DOCUMENT-INTENSIVE PROCESS THAT RESTS PRIMARILY ON THE PAROLE CANDIDATE .................................................................................. 5

III.  DEFENDANTS FAIL TO MAKE SUFFICIENT ACCOMMODATIONS FOR CANDIDATES WHO ARE DEAF SIGNERS, BLIND OR LOW-VISION .................................................................................................................. 7

    A.    Defendants Fail to Adequately Accommodate Deaf Sign Language Users in Preparing for and Following Up From BPH Proceedings ................ 7

        1.    Without Videotaped Translations of Documents, Deaf Signers Cannot Access the Crucial Parole Preparation Information That Defendants Communicate Solely Through Written English ................ 7

        2.    Defendants Deny Deaf Signers Access to Video of the Board Hearings, Which Prevents Them From Appealing Parole Decisions or Grieving the Proceedings ................................................. 9

    B.    Defendants Fail to Adequately Accommodate Blind and Low-Vision Parole Candidates in Preparing for and Following Up From BPH Proceedings ......................................................................................... 10

        1.    Defendants' Failure to Provide Accommodations to Candidates With Vision Disabilities Renders Them Unable to Adequately Prepare for Parole Hearings ................................................................. 11

        2.    Defendants Have Refused to Adopt Common Sense Measures That Would Remove These Barriers ...................................................... 13

    C.    The Attorneys Defendants Claim to Appoint as an Accommodation Do Not Meet This Need .............................................................................. 14

        1.    Deaf Signers Require More Attorney Assistance Than Candidates Without Disabilities, But Receive Less .......................... 15

        2.    Candidates With Vision Disabilities Require More Assistance Than Candidates Without Disabilities, But Receive Less ................ 16

    D.    Defendants' Failures Force Candidates to Choose Between Their Safety and Their Liberty ............................................................................ 17

ARGUMENT ........................................................................................................................ 18

I. DEFENDANTS ARE VIOLATING THE REVISED PERMANENT INJUNCTION BY FAILING TO PROVIDE ACCOMMODATIONS FOR DEAF, BLIND AND LOW-VISION CLASS MEMBERS SO THEY CAN PREPARE FOR AND FOLLOW-UP FROM PAROLE PROCEEDINGS. ........... 18

    A. Defendants Fail to Accommodate Deaf Signers ........................................... 19

    B. Defendants Fail to Accommodate Blind and Low-Vision Class Members ..................................................................................................... 21

    C. Defendants' Attorneys Do Not Suffice as an Accommodation ................... 22

    D. Defendants Fail to Provide Accommodations Through Other Qualified Personnel ..................................................................................... 23

II. DEFENDANTS SHOULD BE REQUIRED TO DEVELOP A PLAN TO COMPLY WITH THE REVISED PERMANENT INJUNCTION ......................... 23

    A. Accommodations for Deaf Signers ............................................................. 24

    B. Accommodations for Blind and Low-Vision Class Members ...................... 24

    C. Assistance with Writing Statements, Parole Plans, Apology Letters, Book Reports, Relapse Prevention Plans, and Other Documents ................. 24

    D. Attorney Assistance Compensation and Training ........................................ 25

CONCLUSION ................................................................................................................... 25

[4385725.6]                                    ii                         Case No. C94 2307 CW

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdullah v. Wexford Health Sources, Inc.*,
No. 3:16-CV-920-NJR-MAB, 2019 WL 1376859 (S.D. Ill., 2019) ........................ 22

*Am. Council of the Blind v. Astrue*,
No. C 05-04696 WHA, 2009 WL 3400686 (N.D. Cal. Oct. 20, 2009).................... 22

*Arizona Dream Act Coalition v. Brewer*,
855 F.3d 957 (9th Cir. 2017) ................................................................................ 24

*Armstrong v. Brown*,
768 F.3d 975 (9th Cir. 2014) ................................................................................ 25

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) .................................................................................. 3

*Armstrong v. Newsom*,
484 F. Supp. 3d 808 (N.D. Cal. 2020), *aff'd*, 58 F.4th 1283 (9th Cir. 2023)........... 21

*Armstrong v. Newsom*,
58 F.4th 1283 (9th Cir. 2023) ......................................................................... 18, 24

*Armstrong v. Newsom*,
No. 94-CV-02307 CW, 2021 WL 933106 (N.D. Cal. Mar. 11, 2021), *aff'd in part*, *vacated in part*, 58 F.4th 1283 (9th Cir. 2023) ................................................ 21

*Bonnette v. D.C. Ct. of Appeals*,
796 F. Supp. 2d 164 (D.D.C. 2011)...................................................................... 21

*Cal. Council of the Blind v. Cnty. of Alameda*,
985 F. Supp. 2d 1229 (N.D. Cal. 2013)................................................................ 21

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*,
630 F.3d 1153 (9th Cir. 2011) ........................................................................ 18, 21

*Lopez v. Giurbino*,
56 F. App'x 336 (9th Cir. 2003)........................................................................... 19

*Martinez v. Cnty. of Alameda*,
512 F. Supp. 3d 978 (N.D. Cal. 2021).................................................................. 23

*Martinez v. Cuomo*,
459 F. Supp. 3d 517 (S.D.N.Y. 2020) ............................................................. 18, 19

*Nat'l Ass'n of the Deaf v. Trump*,
486 F. Supp. 3d 45 (D.D.C. 2020)................................................................... 18, 19

*People v. Younghanz*,
156 Cal. App. 3d 811 (1984) ................................................................................ 20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

*Ramirez v. Vannoy*,
No. CV 19-13187, 2021 WL 3174372 (E.D. La. Mar. 11, 2021) ............................ 20

*Swarthout v. Cooke*,
562 U.S. 216 (2011) ................................................................................... 10

*United States v. Sun Myung Moon*,
718 F.2d 1210 (2d Cir. 1983) ...................................................................... 20

*Woodley v. Baldwin*,
No. 18-CV-50050, 2018 WL 3354915 (N.D. Ill., 2018).......................................... 22

## CONSTITUTIONS

U.S. Const. amend. XIV § 1 ........................................................................... 3

## STATUTES

18 U.S.C. § 3626........................................................................................ 25

29 U.S.C. § 794.................................................................................... 3, 22

42 U.S.C. §§ 12131, *et seq.* ....................................................................... 3

Cal. Penal Code § 3041.5 ............................................................................ 1

Cal. Penal Code § 3042 ............................................................................... 5

## RULES

Fed. R. Civ. P. 65...................................................................................... 24

## REGULATIONS

28 C.F.R. § 35.104..................................................................................... 23

28 C.F.R. § 35.130..................................................................................... 23

28 C.F.R. § 35.160................................................................................ 19, 21

28 C.F.R. Part 35, App'x B .......................................................................... 19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 4, 2024, at 2:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Claudia Wilken, located at 1301 Clay Street, Oakland, California, Plaintiffs John Armstrong *et al.*, will and hereby do move the Court for an order to enforce the Revised Permanent Injunction and other prior orders of this Court, and to require Defendants to provide accommodations to blind and low vision and deaf incarcerated people consistent with the *Armstrong* Remedial Plans, so that they can adequately prepare for their Board of Parole hearings.

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities, the Proposed Order, and the Declarations of Gay Crosthwait Grunfeld, Caroline Jackson, Michael Parker, Keith Wattley, and Roger Williams, all filed herewith, the entire record in this action, and such other materials and arguments as may be presented before or at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Incarcerated persons in California currently serving life sentences with the possibility of parole, and certain others serving decades-long sentences, have a single opportunity every few years to secure their release when they participate in a parole consideration hearing conducted by Defendant Board of Parole Hearings ("BPH" or the "Board"). *See* Declaration of Caroline E. Jackson in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Jackson Decl.") ¶ 8. The stakes could not be higher: for those serving life sentences, receiving a grant of parole is their only opportunity to walk free; if denied, they usually must wait between three and fifteen years before they have another chance. *See* Cal. Penal Code § 3041.5(b)(3). Yet members of the *Armstrong* class who are deaf sign language users ("deaf signers") or who have vision disabilities face steep disadvantages in preparing for this life-altering event.

Years after entry of injunctive relief, Defendants BPH and the California Department of Corrections and Rehabilitation ("CDCR") still routinely fail to comply with this

[4385725.6]

1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Court's Order to "make accommodations for prisoners and parolees with disabilities in order to assist them in preparing for parole proceedings" and to provide "effective assistance in preparing a [BPH] appeal." *See* Stip. & Order on Revised Inj. ("Revised Permanent Inj."), Dkt. No. 788, ¶¶ 32-33. Deaf signers, whom this Court has already found cannot communicate effectively through written English, *see* Findings of Fact and Concl. of Law ("Factual Findings"), Dkt. No. 523 at 12, do not receive access to documents translated into sign language. Blind and low-vision class members, whom this Court has already found are entitled to documents in accessible formats, *see id.* at 85, do not timely receive them. And despite this Court's prior finding that "it often takes longer to provide legal services to a disabled, as opposed to non-disabled, prisoner or parolee when the attorney is also responsible for accommodating the individual's disability," *see id.* at 54, Defendants do not provide the necessary additional attorney time. Indeed, one parole attorney likened her recent experience representing a blind class member to the earliest "*Armstrong* days when people were exiting their wheelchairs and crawling up the stairs to their parole revocation hearings." *See* Jackson Decl. Ex. 44 at 2.

Plaintiffs bring the instant motion seeking narrow and effective relief that will end this disability discrimination and ensure that candidates who are deaf signers or have vision disabilities have equal access to what they need to prepare for parole hearings and challenge their outcomes. While this motion focuses on a small subset of the *Armstrong* class,[1] and on only two aspects of parole proceedings,[2] the Proposed Order Plaintiffs seek will provide significant and meaningful relief: crucial documents in sign language or in

---

[1] Other incarcerated people with disabilities, including *Armstrong* class members with learning, speech, and developmental disabilities and *Coleman* class members at the EOP level of care, face a number of hurdles to parole preparation, including full and equal access to programming, and participation in the hearings. Plaintiffs continue to monitor the Revised Permanent Injunction and the other orders of this Court, and will bring additional issues to the Court's attention if they cannot be resolved.

[2] This motion addresses unequal opportunities to prepare for parole proceedings and to pursue grievances and decision review. Defendants have made some progress in response to Plaintiffs' advocacy with respect to improving the quality of interpretation provided to deaf signers during the hearings. *See* Jackson Decl. Ex. 71 at 2-6.

[4385725.6]

2

Case No. C94 2307 CW

accessible formats, assistive devices for in cell, daily and private use, and attorney and staff member assistance necessary to have the same opportunity to prepare for and follow up from hearings as class members without disabilities.  The remedies we seek will bring California's parole system into compliance with the Court's orders and Defendants into alignment with current accessibility technology and the practice in a growing number of other states.  *See* Jackson Decl. Exs. 25 & 26.

<strong>FACTUAL AND PROCEDURAL BACKGROUND</strong>

**I.      THE REVISED PERMANENT INJUNCTION REQUIRES DEFENDANTS TO PROVIDE REASONABLE ACCOMMODATIONS TO DEAF, BLIND AND LOW-VISION CLASS MEMBERS**

On December 22, 1999, this Court entered a Permanent Injunction against Defendants the Board of Prison Terms (now BPH) and others, following a bench trial.  *See* Permanent Injunction, Dkt. No. 526; Factual Findings at 1, 104.  The Court found that Defendants had violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1.  *Id.* at 78, 93,  Defendants appealed, and the Ninth Circuit affirmed almost the entirety of the Permanent Injunction.  *See Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).  This Court subsequently entered a Revised Permanent Injunction.  *See* Revised Permanent Inj.[3]

Two provisions of the Revised Permanent Injunction are primarily at issue in this Motion.  First, Defendants are not complying with the provisions of the Revised Permanent Injunction that require them to ensure that individuals with disabilities have an equal opportunity to prepare for parole proceedings.  The Board is mandated to:

> [M]ake accommodations for prisoners and parolees with disabilities in order to assist them in **preparing for parole proceedings**.[4]  For example, if a

---

[3] In 2006, the Governor consolidated various correctional agencies under the newly named California Department of Corrections and Rehabilitation ("CDCR").  CDCR and BPH are both controlled by Defendant Newsom.

[4] The Injunction defines parole proceedings broadly to include "any events related to the hearings that occur prior to or after the hearings, including, but not limited to, … psychological evaluations, central file reviews and administrative appeals."  Revised Permanent Inj. ¶ 3.

prisoner or parolee is entitled to review his or her central file prior to a parole proceeding, and if that prisoner or parolee is unable, due to a disability, adequately to review his or her central file without an accommodation, the BPT shall make such an accommodation. Where other preparation, including but not limited to participating in psychological interviews, obtaining letters of support and developing parole plans, is necessary prior to a parole proceeding, the BPT shall provide reasonable accommodations to prisoners or parolees with disabilities who require such accommodations adequately to complete such preparation.

*See id.* ¶ 32 (emphasis added). Second, Defendants are not complying with the mandate that the BPH provide "effective assistance in preparing a [BPH] appeal." *Id.* ¶ 33. Since the Revised Permanent Injunction issued, the Board has abandoned administrative appeals. However, all decisions by Board hearing panels are proposed decisions that do not become final for 120 days. During that time, the Board's legal division may review any parole hearing decision. Parole candidates may seek decision review through a letter that is tantamount to an administrative appeal. *See* https://www.cdcr.ca.gov/bph/parole-suitability-hearings-overview/what-to-expect-after-a-parole-suitability-hearing/.

The Revised Permanent Injunction provides that all BPH forms must be effectively communicated to class members and "be readily available in alternative formats, including, but not limited to, large print, Braille and audio tape." Revised Permanent Inj. ¶¶ 19-20. The BPH may appoint attorneys as an accommodation, but to "suffice as an accommodation, the attorneys must be **adequately trained** to provide accommodations to persons with disabilities and must receive **adequate additional time** for providing these services." *Id.* ¶¶ 30 (emphases added). In providing accommodations, "[t]he prisoner or parolee's request for a particular type of accommodation shall be given primary consideration and shall be granted unless the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available." *Id.* ¶ 17. Defendants must also have a system for candidates to grieve denials of accommodation, *see id.* ¶ 34, and to pursue decision review. The *Armstrong* Remedial Plan and the *Armstrong* Remedial Plan II provide guidance to CDCR and to BPH regarding how to accommodate people with disabilities as they prepare for parole hearings and for appeals. *See* Jackson Decl. Exs. 4 & 5.

[4385725.6]

4

Case No. C94 2307 CW

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

As discussed more fully below, Defendants are either failing to provide these accommodations or the accommodations they provide are not sufficient to afford deaf signers and class members with vision disabilities an equal opportunity to prepare for and follow up from parole hearings. Whereas parole candidates without disabilities can—and do—spend night and day reviewing and drafting written materials in preparation for their chance at freedom, *see* Declaration of Keith Wattley in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Wattley Decl."), ¶ 25, deaf signers and class members with vision disabilities must first jump through a frustrating series of hoops, and even then often end up with a small fraction of the preparation their non-disabled peers receive. Plaintiffs' counsel have spent years urging Defendants to provide these needed accommodations, *see* Jackson Decl. ¶¶ 122-43; Declaration of Gay Crosthwait Grunfeld in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Grunfeld Decl.") ¶¶ 3-24. While some progress has been made, Plaintiffs bring this motion to ensure timely, effective relief.

II. **PAROLE PREPARATION IS A YEARS-LONG, TIME- AND DOCUMENT-INTENSIVE PROCESS THAT RESTS PRIMARILY ON THE PAROLE CANDIDATE**

A candidate's personal preparation for their parole hearing is paramount. Candidates routinely spend years studying and practicing during evenings, on weekends, and every chance they get to maximize their likelihood of being granted freedom. *See* Wattley Decl. ¶ 25. The parole candidate's own testimony and writings feature prominently in parole hearings, which typically last between two and three hours and consist primarily of the parole candidate's own testimony. *See id.* ¶ 23. The BPH Commissioners who preside over the hearings evaluate the parole candidate's testimony, writings, and records according to a standard decision-making framework applied during every hearing, which includes consideration of the candidate's level of insight into their past crimes, the extent to which they have personally changed during their incarceration, and their plans for release. *See id.* ¶ 24; Jackson Decl. Ex. 1. BPH Commissioners state their findings and supporting reasons on the record at the conclusion of the proceeding, Cal. Penal Code § 3042(c), and

announce a proposed decision, *see* Grunfeld Decl. Ex. B at BPH00000062. All hearings are required to be recorded and transcribed, *see* Cal. Penal Code § 3042(b), with the recording or transcript provided to the candidate following the hearing, *see* Grunfeld Decl. Ex. B at BPH00000063.

All decisions announced during the hearing are subject to review by BPH's legal division. *See id.* Following the hearing, candidates may submit a letter requesting review by detailing specific factual and legal errors made during the hearing. *See id.*; Wattley Decl. ¶¶ 33-35. Candidates may also appeal ADA violations by filing a BPH form 1074. *See* Grunfeld Decl. Ex. B at BPH00000063.

To prepare their testimony, many candidates spend years studying documents designed to guide their efforts to address the factors that BPH Commissioners consider. Of these documents, the most important are (1) written guidance from a BPH Commissioner recommending what programs to take to prepare, which candidates receive years prior to their hearing; (2) a Comprehensive Risk Assessment ("Risk Assessment"), which is a detailed psychological evaluation assessing their risk of future violence and which lays the groundwork for the BPH Commissioners' questions during the hearing; (3) their entire prison record, including police and probation reports related to their commitment offense, which candidates have the opportunity to review prior to their hearing; and, (4) for candidates appearing for subsequent parole hearings, the transcript of their prior hearing, including BPH Commissioners' stated reasons for the denial and recommendations for future preparation. *See* Wattley Decl. ¶¶ 7-13; Grunfeld Decl. Ex. B at BPH00000060-63.

Parole candidates supplement their oral testimony by submitting documents that they develop or compile during their months or years of study: detailed release plans, including plans for stable housing, employment and management of their risk factors for relapse and re-offense; letters showing their level of remorse and understanding of the magnitude of their commitment offense, as well as the ways in which they have changed during their incarceration; book reports and other essays showing their engagement with prison programming, and a closing statement, summarizing why they are suitable for

[4385725.6]

6                                               Case No. C94 2307 CW

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

release.  *See* Jackson Decl. Exs. 1 & 2; Wattley Decl. ¶¶ 16-21.  All these documents contain highly sensitive information about candidates' backgrounds and commitment offenses, of the type that could lead to violence if it became known within the prison.  *See id.* ¶ 19; Jackson Decl. ¶ 9.

## III.    DEFENDANTS FAIL TO MAKE SUFFICIENT ACCOMMODATIONS FOR CANDIDATES WHO ARE DEAF SIGNERS, BLIND OR LOW-VISION

Despite the central role that synthesizing and producing written information plays in parole preparation, Defendants do little to "make accommodations for prisoners ... with disabilities in order to assist them" with such tasks.  *See* Revised Permanent Inj. ¶ 32. While individuals without disabilities have an unlimited opportunity to study these documents privately and independently, deaf signers and class members with vision disabilities must sacrifice their privacy and independence in exchange for much less.

### A.    Defendants Fail to Adequately Accommodate Deaf Sign Language Users in Preparing for and Following Up From BPH Proceedings

Defendants fail to accommodate deaf signers in a variety of ways that deny deaf signers the ability to effectively prepare for and appeal parole proceedings.

#### 1.    Without Videotaped Translations of Documents, Deaf Signers Cannot Access the Crucial Parole Preparation Information That Defendants Communicate Solely Through Written English

As this Court has already found, "written language generally is an inadequate means of communication with hearing impaired persons can should be used only as a last resort."  *See* Factual Findings at 12; *see also* Declaration of Roger C. Williams in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Williams Decl.") ¶¶ 11-16.  As a result, deaf signers can only access documents by having a sign language interpreter translate written words into American Sign Language ("ASL") or translate the deaf signer's ASL communications into written words.  *Id.* ¶ 30; Jackson Decl. Ex. 63 at ¶¶ 24, 27; *id.* Ex. 65 at ¶ 16; *id.* Ex. 66 at ¶ 22; *id.* Ex. 67 at ¶ 20.  Also as a result of their disability, deaf signers have a lower fund of knowledge and more difficulty than others understanding new or complex information, especially the abstract concepts

necessary to demonstrate the insight or personal change that BPH Commissioners expect to see. *See* Williams Decl. ¶ 9. They require more detailed explanations and more repetition of information to reach the same level of understanding as others. *See id.* ¶ 29.

Because of these disability-related communication challenges, many deaf signers have great difficulty understanding and producing the many written materials necessary for adequate parole preparation. *See* Williams Decl. ¶¶ 16-23; Jackson Decl. Ex. 63 at ¶¶ 59-60; *id.* Ex. 60 at ¶¶ 19-22; *id.* Ex. 66 at ¶ 26; *id.* Ex. 67 at ¶ 21. Deaf class members have little access to the crucial information communicated to them through the past hearing transcripts, Risk Assessments, and other important documents because Defendants provide this information in written English, which the class members cannot understand, *see* Williams Decl. ¶¶ 16-23; Jackson Decl. Ex. 63 at ¶¶ 16, 38; *id.* Ex. 60 at ¶¶ 17, 25; *id.* Ex. 65 at ¶¶ 8, 12, 15; *id.* Ex. 66 at ¶¶ 11, 16; *id.* Ex. 67 at ¶¶ 14, 19. They also may have no understanding of concepts essential to parole proceedings such as "causative factors" and "relapse." *See* Jackson Decl. Ex. 66 at ¶ 19; *id.* Ex. 67 at ¶ 22.

Plaintiffs' counsel has asked Defendants to provide a straightforward solution: for hearing transcripts, use the videoconferencing equipment already present in hearing rooms to record the sign language interpretation already provided for the proceeding to make a video transcript. That transcript can then be reviewed on a tablet or other electronic device allowing the candidate to review the material in ASL, and not in inaccessible written English. *See* Jackson Decl. Ex. 73; Grunfeld Decl. Ex. F. And, for other documents, hire a sign language interpreter, as Defendants already do for other parole proceedings, and record the interpreter translating the document into ASL. *See* Jackson Decl. Ex. 73; Grunfeld Decl. Ex. F. Defendants would then be required to provide the videos to deaf signers for review, and could do so using the tablet computers that Defendants already provide to nearly every incarcerated person in the state. *See* Jackson Decl. ¶ 42. These measures would make a tremendous difference to the deaf signers involved. *See* Jackson Decl. Ex. 63 at ¶ 36; *id.* Ex. 60 at ¶ 26; *id.* Ex. 66 at ¶¶ 20-21; *id.* Ex. 67 at ¶ 14. Defendants have declined to do so. *See* Grunfeld Decl. Ex. I.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Instead of providing the accommodations Plaintiffs have requested, Defendants claim to offer a one-time opportunity for a CDCR employee called a Correctional Counselor or an appointed attorney to read these documents aloud to the candidate, while a sign language interpreter translates the material on the fly. *See* Grunfeld Decl. Ex. B at BPH00000050. But when class members request this meager accommodation, Defendants either refuse or delay substantially in providing it. *See* Jackson Decl. Ex. 63 at ¶ 18; *id.* Ex. 65 at ¶¶ 10-11; *id.* Ex. 60 at ¶ 19; *id.* Ex. 66 at ¶¶ 17-18. Any time spent having an attorney read the document aloud through an interpreter, a ministerial task to which the attorney brings no professional expertise, takes time away from the already limited time the class members have with their the attorneys to assist with preparation. *See* Jackson Decl. Ex. 63 at ¶ 21; *id.* Ex. 60 at ¶ 19. Further, this one-time access does not afford deaf signers the opportunity to study these documents as others do, *see* Wattley Decl. ¶¶ 10, 25, despite the fact that deaf signers must study more to achieve the same result, *see* Williams Decl. ¶¶ 10, 29.

As a result, deaf signers—some of whom have labored past midnight for weeks simply trying to decipher these documents, *see* Jackson Decl. Ex. 65 at ¶¶ 12-15—lack access to these crucial resources to prepare for parole hearings. The impact is profound. One deaf signer, who could not understand his prior hearing transcript due to disability, never knew that BPH Commissioners had instructed him in 2016 to draft a relapse prevention plan. *See* Jackson Decl. Ex. 67 at ¶ 21. When he appeared for his next hearing five years later, he had not drafted the document, nor had he been able to benefit from any of the recommendations made during his hearing due to his inability to understand the hearing transcript. He was denied parole for another five years. *Id.* ¶¶ 7, 21, 22.

### 2. Defendants Deny Deaf Signers Access to Video of the Board Hearings, Which Prevents Them From Appealing Parole Decisions or Grieving the Proceedings

Videotaped transcripts of ASL interpretation of the CRA and hearing transcripts are essential not only to parole preparation but to appeal. Candidates have an opportunity to object to or appeal factual and legal errors both in their Risk Assessment and in their

parole hearing. *See* Wattley Decl. ¶¶ 8, 34. Doing so requires a detailed review of these documents, *see id.* ¶¶ 10, 33-34, which deaf signers cannot accomplish without an ASL version to review. *See* Jackson Decl. Ex. 63 at ¶¶ 16, 24, 35-37; *id.* Ex. 60 at ¶¶ 17, 25-26; *id.* Ex. 66 at ¶¶ 13, 15-16, 20-21; *id.* Ex. 67 at ¶¶ 13, 16, 19-20. For deaf signers, the video transcript serves an important additional function: it allows them to file an ADA grievance or seek decision review based on translation errors. *See* Williams Decl. ¶ 28.

Many deaf signers have noted serious concerns with the quality of the interpreters at their hearings, which denied them their right to effective communication during the proceeding. *See* Jackson Decl. ¶ 107 & Ex. 59; *id.* Ex. 63 at ¶¶ 31-33; *id.* Ex. 60 at ¶ 24; *id.* Ex. 66 at ¶ 14; *id.* Ex. 67 at ¶¶ 10-12, 14. Plaintiffs have likewise notified Defendants of extensive and egregious translation errors during ASL-interpreted parole consideration hearings. *See* Jackson Decl. ¶ 130 & Ex. 74 at 1 n.1. Translation errors interfere with these candidates' right to have "an opportunity to be heard" and receive "a statement of the reasons why parole was denied." *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Although the parties have made some progress toward improving the quality of the interpretation, *see, e.g.*, Jackson Decl. Ex. 71 at 2-6; *id.* Ex. 75 at 6, translation errors remain likely, *see* Jackson Decl. Exs. 74-75.

Defendants choose to record parole hearings solely by audio, a medium that cannot capture the portion of the parole hearing containing the deaf person's original ASL testimony or the way that questions and other statements were translated to them. *See* Williams Decl. ¶ 28. Without a record of the ASL testimony or translation, deaf signers cannot prove translation errors occurred in order to be able to file grievances or participate in decision review. *See* Jackson Decl. Exs. 59 & 62; *id.* Ex. 63 at ¶¶ 34, 36; *id.* Ex. 60 at ¶ 26; *id.* Ex. 66 at ¶¶ 20-21; *id.* Ex. 67 at ¶ 14.

### B. Defendants Fail to Adequately Accommodate Blind and Low-Vision Parole Candidates in Preparing for and Following Up From BPH Proceedings

Individuals who are blind or low-vision are also unable to effectively prepare for and participate in parole proceedings due to Defendants' failure to identify and provide

needed accommodations, maintain standard forms and notices—including ADA appeal forms—in accessible formats, and provide access to assistive devices that allow blind and low-vision individuals to read and write privately and independently.  As Plaintiffs' vision accessibility expert opines:  "It is best practice, and most preferred for individuals to be able to prepare for the Board independently, especially if aspects of their past are sensitive and might endanger them if shared with others."  Declaration of Michael Parker in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Parker Decl.") ¶ 2.

The blind and low-vision population is diverse, with accommodation needs ranging from modest font-size enlargement to conversion of written documents into audio format and use of computers and special software for reading and writing.  *See id.* ¶¶ 5-14.  As Mr. Parker explains, "the reading and writing needs of a given blind or low-vision individual can only be determined effectively by an individualized assessment of that person's needs."  *Id.* ¶ 3.  Accommodations can range from ballpoint pens and lined paper, costing approximately six dollars, to an array of commercially available devices such as video magnifiers and computer software.  *See id.* ¶¶ 5-13.  Some individuals will require human assistance, regardless of the technology provided to them.  *See id.* ¶ 14.

Other prisons already take steps to assess people with vision disabilities at the time they enter prison to determine the accessible format and assistive devices they require, then provide accessible documents, assistive devices for in-cell use, and even human writing assistants for the duration of their incarceration.  *See, e.g.*, Jackson Decl. Exs. 25 & 26.  However, despite years of advocacy by Plaintiffs' counsel, *see* Jackson Decl. ¶¶ 122-43; Grunfeld Decl. ¶¶ 3-24, and a court order requiring accessible formats, *see* Revised Permanent Inj. ¶ 20, Defendants still fail to provide class members with the accommodations they need to prepare for parole hearings and related grievances and decision review.

### 1. Defendants' Failure to Provide Accommodations to Candidates With Vision Disabilities Renders Them Unable to Adequately Prepare for Parole Hearings

Defendants routinely provide blind and low-vision parole candidates with

inaccessible versions of key documents. *See, e.g.*, Jackson Decl. ¶ 67; *id.* Ex. 52 at ¶¶ 18, 22; *id.* Ex. 46 at ¶¶ 13, 24-25; *id.* Ex. 50 at ¶¶ 16, 18; *id.* Ex. 37 at ¶ 20; *id.* Ex. 54 at ¶ 8; *id.* Ex. 55 at ¶ 10; *id.* Ex. 56 at ¶¶ 10-11; *id.* Ex. 32 at ¶¶ 11, 16. Class members who request to receive an accessible version of these documents often face delays of weeks or months before receiving them. *See, e.g.*, Jackson Decl. ¶¶ 67-68, 74-76, 79-85 & Exs. 28-36, 39 45, 48-49; Ex. 37 at ¶ 22; Ex. 46 at ¶¶ 12-18. Defendants provide woefully insufficient access to assistive devices that would enable these candidates to review the inaccessible document they were given, or to independently draft preparation materials. *See* Jackson Decl. ¶¶ 42-43; *id.* Ex. 52 at ¶¶ 18, 19; *id.* Ex. 46 at ¶ 14; *id.* Ex. 56 at ¶ 8. Nor do Defendants provide ready access to individuals qualified to assist with reading and writing tasks, such as Correctional Counselors. *See id.* Ex. 50 at ¶ 11; *id.* Ex. 37 at ¶ 9; *id.* Ex. 54 at ¶ 7; *id.* Ex. 55 at ¶ 7; *id.* Ex. 56 at ¶ 6.

The impact of these denials and delays is profound. One blind class member, who requires materials in audio format, never received an accessible version of his Risk Assessment and had to wait weeks to review it using an accessible device, and could not study it before his hearing. *See* Jackson Decl. Ex. 52 at ¶¶ 22, 24. Despite the fact that this 67-year-old blind wheelchair-user was in prison for a burglary committed in 1995, *see* Ex. 53 at 12:20-22, he was denied parole, *see* Ex. 52 at ¶ 10. Further, despite the fact that he told the BPH Commissioners during his hearing that he is "totally blind" and "can't read any type of information or whatever," *see* Ex. 53 at 16:15-16, he was provided a hearing transcript solely in inaccessible paper form, *see* Ex. 52 at ¶ 18, leaving him no way to prepare for his next hearing. Another class member, who requested audio materials through Plaintiffs' counsel, *see id.* Exs. 42 & 43, did not receive her custody file in audio format until the day before her hearing, and only after her attorney went to Herculean lengths to convert the documents herself, *see id.* Ex. 44 at 1-42. She, too, was denied parole. *See* Jackson Decl. ¶ 85.

## 2. Defendants Have Refused to Adopt Common Sense Measures That Would Remove These Barriers

To date, Defendants have refused to implement solutions that would enable blind and low-vision class members to prepare for and follow up from parole hearings on an equal playing field with their peers without disabilities.

Defendants consult with class members with vision disabilities in advance of their parole hearings to determine the accommodations they require at the hearing itself. *See* Jackson Decl. ¶ 33. But they do nothing to inquire what the class member needs to **prepare** for the hearing, short of checking a box on a form stating "I need help reading my documents," *see* Jackson Decl. ¶ 3 & Ex. 11, and otherwise hoping that the candidate's appointed attorney, or other BPH personnel, will think to write down somewhere that the candidate requires a certain accommodation, *see* Jackson Decl. ¶¶ 33, 35-36 & Ex. 14. This rarely happens, *see id.* ¶¶ 34, 36, likely due to the deficient training Defendants provide, *see id.* ¶¶ 33, 52. Yet despite Plaintiffs' requests, Defendants have refused to improve this process. *See* Grunfeld Decl. Exs. I & J.

Plaintiffs' counsel spent over a year negotiating with Defendants to develop memoranda requiring Correctional Counselors to assist with specific tasks essential to parole preparation. *See* Grunfeld Decl. ¶¶ 3-5 & Ex. B; Jackson Decl. Ex. 21. Yet soon after completing this process, Defendants decided not to enforce the key memorandum, *see* Grunfeld Decl. ¶¶ 6, 20, 22, 23 & Exs. K & L, leaving class members without a crucial source of help, *see* Jackson Decl. Ex. 52 at ¶¶ 11-13; Ex. 50 at ¶ 11; Ex. 37 at ¶¶ 9-10; Ex. 55 at ¶ 7; Ex. 56 at ¶ 9.

Plaintiffs' counsel have asked Defendants to develop a formal set of procedures to streamline production of accessible versions of documents, and to create accessible versions of BPH Forms and Notices, as the Revised Permanent Injunction already requires. *See* Jackson Decl. ¶ 126; Revised Permanent Inj. ¶ 20. Yet over two years since Plaintiffs began urging this approach, Defendants have not even been able to determine which of them (BPH or CDCR) is responsible for converting which documents. *See* Grunfeld Decl.

¶ 24.

Plaintiffs' counsel has asked Defendants to provide candidates with vision disabilities assistive devices they can use to study independently in their cells, as others do. Defendants have repeatedly delayed addressing this issue, relegating candidates with vision disabilities to the assistive devices available in libraries, which have limited hours and are frequently closed, *see* Jackson Decl. ¶¶ 42, 146; Court Expert's Second Report Regarding Treatment of People with Disabilities at Substance Abuse Treatment Facility, Dkt. No. 3500, at 15.  The devices themselves are frequently broken, *see id.* at 14-15; Court Expert's Report Regarding Treatment of People with Disabilities at Substance Abuse Treatment Facility, Dkt. No. 3446 at 45.  And libraries lack privacy: the assistive device may display the candidate's highly private reading material in large letters on a screen visible to the whole room, *see* Jackson Decl. ¶ 43; *id.* Ex. 19; *id.* Ex. 52 at ¶ 30; *id.* Ex. 46 at ¶¶ 14, 41.

C. **The Attorneys Defendants Claim to Appoint as an Accommodation Do Not Meet This Need**

Defendants claim to provide ADA trained attorneys as an accommodation to compensate for their failure to provide other accommodations for parole preparation.  *See* Grunfeld Decl. Ex. I at 2.  But they do so without providing the "additional time" and compensation the Revised Permanent Injunction requires,[5] *see* Jackson Decl. ¶¶ 57-58 & Ex. 24, and they have refused to share what form of "ADA training" these attorneys receive, *see* Jackson Decl. ¶¶ 51-55 & Exs. 22-23, or how frequently it is provided.

All parole candidates—not just those with disabilities—are entitled to counsel for their parole hearings, which Defendants provide: ninety percent of parole candidates rely on state-appointed attorneys for their hearings.  *See* Grunfeld Decl. Ex. E at 6.  The compensation and requirements for the position already fall below what experienced

---

[5] This Court previously found that: "it often takes longer to provide legal services to a disabled, as opposed to non-disabled, prisoner or parolee when the attorney is also responsible for accommodating the individual's disability ….  Without allotting more time to the attorneys, simply providing an attorney is therefore not a sufficient accommodation."  *See* Factual Findings at 54.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

parole attorneys believe is the bare minimum necessary to adequately represent clients with simple cases and no disability.  Defendants appoint attorneys just a few months before parole consideration hearings, *see* Jackson Decl. ¶ 7, when adequate preparation takes at least eight months, *see* Wattley Decl. ¶ 9.  Defendants require just three attorney-client meetings, *see* Jackson Decl. Ex. 24 at 3-5, when adequate representation requires more, *see* Wattley Decl. ¶ 28.  Defendants do not require attorneys to provide feedback on a client's written documents, *see* Jackson Decl. ¶ 57 & Ex. 24 at 3-5, even though this forms an essential part of the attorney's role, *see* Wattley Decl. ¶ 27.  Defendants compensate attorneys just $945 per case, *see* Jackson Decl. Ex. 24 at 7.  But adequate representation takes a minimum of 20 hours, *see* Wattley Decl. ¶ 28.  It is not surprising that the Legislative Analysts' Office found that individuals represented by state-appointed attorneys "have worse hearing outcomes and may be receiving less effective legal and other hearing preparation services relative to candidates who are able to access a private attorney."  *See* Grunfeld Decl. Ex. E at 1.

The inadequacy of this assistance carries much higher consequences for deaf signers and candidates with vision disabilities, who have greater needs for assistance.  This Court already ordered Defendants to provide more time when the client has a disability.  *See* Dkt. No. 523 at 54; Revised Permanent Inj. ¶ 30.  Defendants do nothing to ensure state-appointed attorneys spend additional time with clients who are deaf signers or have vision disabilities.  Defendants do not appoint attorneys any earlier, do not require attorneys to hold extra or longer client meetings, do not require attorneys to provide extra services such as assisting with reading or writing, and do not offer attorneys additional compensation to cover additional time spent on the case.  *See* Jackson Decl. ¶ 57-58; *id.* Ex. 23 at 2; *id.* Ex. 24 at 3-5.

### 1. Deaf Signers Require More Attorney Assistance Than Candidates Without Disabilities, But Receive Less

Due to their difficulties with comprehension, *see* Williams Decl. ¶¶ 9-10, many deaf signers lack basic information on how to prepare for their hearings.  One class member

spent nearly a decade asking where he could find programs specific to sex offenders. *See* Jackson Decl. Ex. 63 ¶¶ 42-43. Although he finally learned of a correspondence course he could take and a book he could read, due to his difficulties with comprehension of written English as a result of his disability, the class member benefitted little from his efforts. *See id.* ¶¶ 44-46. BPH Commissioners denied him parole for **seven years** due to his perceived lack of insight into his sex offense. *See id.* ¶ 113 & Jackson Decl. Ex. 64 at 161:3-10, 189:1-11.

Despite this need for extra assistance, deaf signers actually receive less attorney assistance than others, due to the time needed for sign language interpretation and to assist with written communication. Conversations mediated through a sign language interpreter typically take twice as long as conversations between parties that share a language. *See* Williams Decl. ¶ 29; Wattley Decl. ¶ 30. Further, Defendants expect attorneys to devote time to ministerial, non-attorney tasks such as reading documents aloud for translation. *See* Jackson Decl. Ex. 24 at 4. The result is that deaf signers receive less attorney assistance than others, and suffer more acutely than others from the consequences of receiving insufficient attorney assistance. *See* Wattley Decl. ¶ 32.

### 2. Candidates With Vision Disabilities Require More Assistance Than Candidates Without Disabilities, But Receive Less

Although candidates with vision disabilities may not face the same comprehension barriers as deaf signers, they still require additional attorney assistance due to the ongoing discrimination they face in prison. Part of the parole attorney's role is to help candidates craft written and oral testimony that demonstrates what they have learned. *See* Wattley Decl. ¶ 27. Parole candidates with vision disabilities often have difficulty gaining access to programs, as well as synthesizing and articulating the information they learned in their rehabilitative programming, because they did not have access to the written materials accompanying the program, nor could they take notes or complete written assignments. *See, e.g.*, Jackson Decl. Ex. 52 at ¶ 41; Ex. 50 at ¶¶ 26-27; Ex. 55 at ¶¶ 13-15; Ex. 32 at ¶ 30. Due to this historic discrimination, blind and low-vision candidates are already

behind in parole preparation and need extra attorney assistance to overcome it. *See* Wattley Decl. ¶¶ 27-32. Yet Defendants expect state-appointed attorneys to use their client meeting time on the ministerial tasks of reading documents aloud and scribing, leaving less time for attorney tasks. *See* Jackson Decl. ¶ 57 & Ex. 2; Grunfeld Decl. Ex. J at 4. The end result is that these blind and low-vision candidates, who need more attorney time than others to achieve the same result, ultimately receive less.

**D.    Defendants' Failures Force Candidates to Choose Between Their Safety and Their Liberty**

Without adequate access to attorneys, Counselors, or other professionals who can assist with parole preparation, candidates who are deaf signers, blind or low-vision have one remaining option: their fellow prisoners. *See* Jackson Decl. Ex. 63 at ¶ 22; *id.* Ex. 50 at ¶ 22; *id.* Ex. 60 at ¶ 16; *id.* Ex. 66 at ¶ 24; *id.* Ex. 67 at ¶ 22. This Court has already found that this predicament "violates parolees' rights to privacy and raises the potential for abuse and extortion." *See* Factual Findings at 49. This risk is amplified in the parole context, because the assistance the deaf, blind and low-vision candidates require involves revealing information about their commitment offense, which could lead to violence if it became known in the prison, *see* Wattley Decl. ¶ 19; Jackson Decl. ¶ 9; *id.* Ex. 60 at ¶ 16; *id.* Ex. 66 at ¶ 25. Class members' disabilities interfere with the assistance that deaf signing, blind and low-vision candidates can receive from their peers. For deaf signers, surrounded by people who do not sign, assistance is available only through communicating in written English, which they do not understand well. *See* Jackson Decl. Ex. 63 at ¶ 22; *id.* Ex. 60 at ¶ 21; *id.* Ex. 66 at ¶ 24. For blind and low-vision class members, who must communicate by talking, they can receive assistance only in private spaces—a rare commodity in prison—due to the risk their discussion of these sensitive documents will be overheard. *See id.* Ex. 50 at ¶ 24; *id.* Ex. 32 at ¶ 24. For many, these barriers are insurmountable. *See id.* Ex. 66 at ¶ 24; *id.* Ex. 60 at ¶ 21; *id.* Ex. 67 at ¶ 18; *id.* Ex. 63 at ¶¶ 50; 56; *id.* Ex. 52 at ¶¶ 32-35; *id*. Ex. 53 at 50:7-13.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

**ARGUMENT**

For years, Defendants have violated this Court's order to "make accommodations for [deaf, blind and low-vision prisoners] in order to assist them in preparing for parole proceedings" and to provide these individuals with "effective assistance in preparing a [BPH] appeal," giving "primary consideration" to individuals' "request for a particular type of accommodation." Revised Permanent Inj. ¶¶ 17, 32, 33. As discussed above, the limited "system" of accommodations Defendants have developed do not place deaf, blind and low-vision incarcerated people on the same footing as people without those disabilities. Where, as here, Defendants have repeatedly failed to comply with the Court's prior orders, more specific relief is necessary. *See Armstrong v. Newsom*, 58 F.4th 1283, 1299 & 1293 n.8 (9th Cir. 2023).

The narrow relief requested here—which expands upon and provides greater detail about the accommodations Defendants must provide in order to comply with the Revised Permanent Injunction and the ADA—is fully consistent with precedent and practice. The Ninth Circuit has recognized that "the types of accommodations and services provided to individuals with disabilities … should keep pace with the rapidly changing technology of the times." *See Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1164 (9th Cir. 2011). Plaintiffs seek relief based on technology that is becoming increasingly common and easy to use both in prison settings, *see* Jackson Decl. Exs. 25 & 26, and in the community, *see Martinez v. Cuomo*, 459 F. Supp. 3d 517, 524-25 (S.D.N.Y. 2020) (requiring ASL interpretation via video); *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 58 (D.D.C. 2020) (same). Providing these accommodations to blind, low-vision, and deaf-signing *Armstrong* class members, together with additional assistance from attorneys and other personnel, is required to satisfy the Revised Permanent Injunction.

**I.    DEFENDANTS ARE VIOLATING THE REVISED PERMANENT INJUNCTION BY FAILING TO PROVIDE ACCOMMODATIONS FOR DEAF, BLIND AND LOW-VISION CLASS MEMBERS SO THEY CAN PREPARE FOR AND FOLLOW-UP FROM PAROLE PROCEEDINGS.**

Defendants have failed at nearly every aspect of their Court-ordered obligations to

"make accommodations for [deaf, blind and low-vision prisoners] in order to assist them in preparing for parole proceedings" and to provide these individuals with "effective assistance in preparing a [BPH] appeal," giving "primary consideration" to individuals' "request for a particular type of accommodation," as required by the Revised Permanent Injunction, ¶¶ 17, 32, 33.  *See also* 28 C.F.R. § 35.160(b)(2); 28 C.F.R. Part 35, App'x B; *Armstrong* Remedial Plan at 8; *cf.* Revised Permanent Inj. ¶ 17.  And "to be effective," accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."  *See* 28 C.F.R. § 35.160(b)(2).

### A.    Defendants Fail to Accommodate Deaf Signers

Defendants have failed to make the accommodations necessary for deaf signers to prepare for parole and to pursue grievances and decision review, as required by the Revised Permanent Injunction ¶¶ 19, 32, 33, 34.  This Court has already held that written notes are an inadequate accommodation for deaf signers.  *See* Factual Findings at 12. Defendants fail to use modern technology to provide the most classic example of an accommodation for a deaf person: ASL interpretation.  *See Martinez*, 459 F. Supp. 3d at 524-25 (governor required to provide in-frame ASL interpreter for captioned emergency broadcasts because "closed captioning … [does] not accommodate Plaintiffs and other similar deaf New Yorkers who cannot read English"); *Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 58 (same).

Deaf signers have repeatedly requested the relief sought here: video transcripts of hearings and video translations of Risk Assessments and other BPH-related documents. *See* Jackson Decl. ¶¶ 123-35 & Exs. 69-76.  Video ASL translations are necessary for deaf signers to engage in the type of study necessary for parole preparation, *see* Part III.A.1 *supra*, and to have an effective means of pursuing grievances and decision review, *see* Part III.A.2 *supra*.  Having access to accurate translation is essential to Plaintiffs' due process rights.  *See Lopez v. Giurbino*, 56 F. App'x 336, 337 (9th Cir. 2003) (remanding for further factual finding where "the record on appeal is not sufficient to determine the accuracy of

the translation provided"); *People v. Younghanz*, 156 Cal. App. 3d 811, 818-19 (1984) (agreeing with defendant's contention that "failure to videotape the victim's sign language testimony deprived him of a complete record for adequate consideration on appeal."). Defendants have repeatedly denied the requests without identifying "specific, articulated reasons allowable under the ADA," *see* Revised Permanent Inj. ¶ 17, but instead resting on the fact that the Judicial Council of California—a body not charged with ADA enforcement—does not require California courts to do so. *See* Jackson Decl. Ex. 71.

Defendants' opposition to video transcripts of the CRA and hearings is confounding. Not only would it be easy to create and disseminate video recordings, but also courts are increasingly willing to allow video-recording of legal proceedings, especially when ASL interpreting is involved. For example, when a deaf man was tried for murder in 2021, large portions of the trial were video-recorded and streamed on YouTube.[6] The ASL court interpreting industry itself urges video recording deaf signers' testimony. *See* Jackson Decl., Ex. A to Ex. 70 at 21. And courts already audio-record testimony given through spoken language interpreters to preserve the original language and translations. *See Ramirez v. Vannoy*, No. CV 19-13187, 2021 WL 3174372, at *11 (E.D. La. Mar. 11, 2021) (noting the trial court permitted the defense attorney to make his own recording "to preserve a record of the translation"); *United States v. Sun Myung Moon*, 718 F.2d 1210, 1238 (2d Cir. 1983) (audio recording made of trial where defendant testified in Japanese). Indeed, once class members with vision disabilities jump through the proper hoops, Defendants will provide audio recordings of hearings as an accommodation for these candidates' inability to read the transcript due to disability. *See* Jackson Decl. ¶ 68 & Ex. 46 at ¶ 18. Making a video recording—especially with Microsoft Teams already in the hearing room, *see* Jackson Decl. ¶¶ 12-13—is no more costly or difficult. Given the importance of these recordings to deaf signers, and the ease of creating them, "keep[ing] pace

---

[6] *See, e.g.*, *People vs Mavrick Fisher*: Day 8, Part 2 of trial, *available at* https://www.youtube.com/watch?v=54_AuUofSHY (last accessed Nov. 13, 2023).

with the rapidly changing technology of the times," *see Enyart*, 630 F.3d at 1164, requires Defendants to use this technology to comply with the Revised Permanent Injunction.[7]

### B.    Defendants Fail to Accommodate Blind and Low-Vision Class Members

Defendants do not make accommodations and afford primary consideration to parole candidates with vision disabilities as required by the Revised Permanent Injunction ¶¶ 17, 20, 32, 33, in part by failing to establish the infrastructure necessary to succeed. Defendants fail to take even the basic steps of informing candidates with vision disabilities what accommodations are available to them and asking what they need to prepare, *see* Part III.B.2 *supra*, essential components of affording "primary consideration" to requests.  *See* Revised Permanent Inj. ¶ 17; 28 C.F.R. Part 35 App'x B.  Defendants have failed to develop formal procedures for satisfying requests for accommodations, leading to long delays in satisfying requests.  *See* Parts III.B.1 & 2, *supra*; 28 C.F.R. § 35.160(b)(2) (to be effective accommodations, must be provided in a timely manner).  Defendants have failed to provide suitable assistive devices for in-cell use, *see* Parker Decl. ¶ 4, leading to more delays for class members to access assistive devices, and compromising their privacy and independence in the process, *see* Part III.B.1 *supra*.  Indeed, Defendants have refused to convert parole-related forms into even the alternative formats explicitly listed in the Revised Permanent Injunction ¶ 20, and so far have failed even to figure out which documents constitute "BPH forms," *see* Part III.B.2 *supra*.

Numerous courts have upheld blind and low-vision plaintiffs' right to receive the particular type of assistive technology they have requested, as opposed to making do with the less effective accommodation the defendant has offered.  *See, e.g.*, *Enyart*, 630 F.3d at 1165; *Bonnette v. D.C. Ct. of Appeals*, 796 F. Supp. 2d 164, 185-86 (D.D.C. 2011); *Cal. Council of the Blind v. Cnty. of Alameda*, 985 F. Supp. 2d 1229, 1239 (N.D. Cal. 2013);

---

[7] As this Court is aware, video surveillance is a powerful tool currently in use at multiple CDCR institutions. *Armstrong v. Newsom*, 484 F. Supp. 3d 808 (N.D. Cal. 2020), *aff'd*, 58 F.4th 1283 (9th Cir. 2023); *Armstrong v. Newsom*, No. 94-CV-02307 CW, 2021 WL 933106, at *19-20 (N.D. Cal. Mar. 11, 2021), *aff'd in part*, *vacated in part*, 58 F.4th 1283 (9th Cir. 2023).

*Woodley v. Baldwin*, No. 18-CV-50050, 2018 WL 3354915, at *6 (N.D. Ill., 2018); *Abdullah v. Wexford Health Sources, Inc.*, No. 3:16-CV-920-NJR-MAB, 2019 WL 1376859, at *6 (S.D. Ill., 2019).  This includes requirements for public entities to provide documents in alternative formats, not just access to a qualified reader.  *See Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2009 WL 3400686, at *19-22 (N.D. Cal. Oct. 20, 2009) (holding that the Social Security Administration violated the Rehabilitation Act, 29 U.S.C. § 794, by denying blind and low-vision individuals' requests for documents in accessible formats in favor of reading the information to the individual over the telephone). Compliance with the Revised Permanent Injunction requires Defendants to verify accommodation needs, inform parole candidates what accommodations are available, and timely provide them.

### C.    Defendants' Attorneys Do Not Suffice as an Accommodation

The Revised Permanent Injunction sets clear criteria for when an appointed attorney "suffice[s] as an accommodation" for a parole candidate who is blind, low-vision or deaf: "the attorneys must be adequately trained to provide accommodations to persons with disabilities and must receive adequate additional time for providing these services."  *See* Revised Permanent Inj. ¶ 30.

Defendants have failed to do the bare minimum to meet these requirements: Defendants provide attorney assistance—for **all** parole candidates, not just those with disabilities—at a level below the minimum necessary to adequately represent a parole client without disabilities in a straightforward case.  *See* Part C, *supra*.  Then, Defendants impose no requirement for the appointed attorneys to spend any additional time conducting attorney-client meetings or providing extra assistance with hearing-preparation and follow up tasks when representing candidates who have disabilities.  Defendants fail to compensate attorneys for providing additional time to these candidates.  And Defendants fail to provide the training necessary to the attorneys so that they can advocate for accessible formats and other accommodations due to *Armstrong* class members.

When attorneys do not spend additional time with clients who require assistance

with reading, writing and understanding, any time spent on these ministerial tasks takes away from the time the attorney would otherwise devote to providing legal advice. *See* Parts III.C.1 & 2 *supra*. Especially for the deaf signers, who require assistance with understanding information, as well as reading and writing, *see* Parts III.A.1 & C.1, *supra*, the result is that parole candidates who are deaf signers or have vision disabilities receive less attorney assistance than others. Indeed, rather than "appoint[ing] attorneys as an accommodation" pursuant to Revised Permanent Inj. ¶ 30, Defendants provide these candidates with less opportunity than others to benefit from attorney assistance, violating the ADA. *See* 28 C.F.R. § 35.130(b)(1).

### D. Defendants Fail to Provide Accommodations Through Other Qualified Personnel

The ADA regards personnel-based assistance as a permissible form of accommodation. *See* 28 C.F.R. § 35.104. But Defendants do not provide even that. They have walked away from their original agreement to rely on Correctional Counselors to assist with reading and writing. *See* Grunfeld Decl. ¶¶ 3-6, 19-24. And library staff, the other viable option Defendants offer, *see id.* Ex. J at 4, are only available during the limited hours that libraries are open. By failing to provide this assistance, Defendants force deaf signing, blind and low-vision parole candidates to turn to other prisoners for assistance, a circumstance this Court has already found "violates parolees' rights to privacy and raises the potential for abuse and extortion." *See* Factual Findings, Dkt. No. 523 at 49. Defendants should provide human assistance when warranted to accomplish particular tasks. *See, e.g.*, *Martinez v. Cnty. of Alameda*, 512 F. Supp. 3d 978, 986 (N.D. Cal. 2021).

## II. DEFENDANTS SHOULD BE REQUIRED TO DEVELOP A PLAN TO COMPLY WITH THE REVISED PERMANENT INJUNCTION

To remedy Defendants' violations of the Revised Permanent Injunction, the ADA, and the Rehabilitation Act, Defendants should be required to develop a plan to ensure deaf and blind and low-vision *Armstrong* class members have access to accommodations to adequately complete parole preparations, BPH-related grievances and decision review.

This Court has the power to issue further remedial orders to effectuate its prior injunctions, *see, e.g.*, *Armstrong v. Newsom*, 58 F.4th at 1299 & 1293 n.8, and to issue additional injunctive relief under Federal Rule of Civil Procedure 65. *See Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957, 977 (9th Cir. 2017). As described in greater detail in Plaintiffs' Proposed Order at 16-24, Defendants' plan should include, at a minimum, the following elements:

**A.    Accommodations for Deaf Signers**

Defendants' plan for parole candidates who are deaf signers must include a streamlined process for Defendants to:

- Create video transcripts of parole hearings and provide videotaped sign language translations of Risk Assessments and other documents and forms necessary for parole preparation; and

- Timely provide these video recordings to deaf signers in a manner that allows the deaf signer the same level of access to these recordings as other parole candidates have to the written English version of these documents.

**B.    Accommodations for Blind and Low-Vision Class Members**

Defendants' plan for parole candidates with vision disabilities must include a streamlined process for Defendants to:

- Timely identify the accessible format and other accommodations that each blind or low-vision class member requires to perform reading and writing tasks independently;

- Timely provide documents in accessible formats;

- Timely ensure private access to assistive devices suitable for preparing for parole hearings and BPH grievances and decision review; and

- Make BPH Forms and Notices readily available in accessible formats.

**C.    Assistance with Writing Statements, Parole Plans, Apology Letters, Book Reports, Relapse Prevention Plans, and Other Documents**

Defendants' plan for accommodating writing tasks for deaf signers and blind and

low-vision class members shall include personnel who are required to provide the following:  (1) reading or re-reading documents aloud; (2) writing or revising documents; (3) developing release plans; (4) educating class members on available accommodations and their use; and (5) any other tasks necessary to prepare for parole proceedings, except tasks that constitute providing legal advice.  All assistance must be provided in a timely manner, using sign language interpreters as necessary, and in such a way as to protect the privacy and independence of the class member involved.

### D.    Attorney Assistance Compensation and Training

Defendants' plan should require that state-appointed attorneys are provided with (1) adequate training to provide accommodations to persons with disabilities; (2) adequate additional time and compensation for providing those services to deaf, blind and low-vision class members, significantly more than currently required.

These and the related remedies outlined in the Proposed Order are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.  *See* 18 U.S.C. § 3626(a)(1)(A).  Anything short of these remedies will not ensure that *Armstrong* class members who are deaf signers, blind, or low-vision receive reasonable accommodations as necessary to ensure an equal opportunity to prepare for and participate in parole proceedings.  Given Defendants' failure to adequately accommodate these class members over the past two decades, more specific and intrusive remedies are appropriate.  *See Armstrong v. Brown*, 768 F.3d 975, 985-96 (9th Cir. 2014).

### CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and issue the Proposed Order.

DATED: November 13, 2023          Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Gay Crosthwait Grunfeld*
    Gay Crosthwait Grunfeld

Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES