DONALD SPECTER – 083925
RITA K. LOMIO – 254501
MARGOT MENDELSON – 268583
JACOB J. HUTT – 804428 (MJP)
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621
Facsimile:    (510) 280-2704

MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
THOMAS NOLAN – 169692
PENNY GODBOLD – 226925
CAROLINE JACKSON – 329980
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104

LINDA D. KILB – 136101
DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
3075 Adeline Street, Suite 201
Berkeley, California  94703
Telephone:    (510) 644-2555
Facsimile:    (510) 841-8645

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. C94 2307 CW |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | Judge:  Hon. Claudia Wilken<br>Date:   January 4, 2024<br>Time:   2:30 p.m.<br>Crtrm.:  TBD |

[4284966.10]

Case No. C94 2307 CW

**[PROPOSED] ORDER**

Plaintiffs filed a Motion to Enforce ("Plaintiffs' Motion") the Revised Permanent Injunction and related Court orders. The Court, having considered the parties' pleadings, the arguments of counsel, and the entire record, GRANTS Plaintiffs' Motion and makes the following findings of fact:

Incarcerated persons in California currently serving life sentences with the possibility of parole, and certain others serving decades-long sentences, have a single opportunity every few years to secure their release when they participate in a parole consideration hearing conducted by Defendant Board of Parole Hearings ("BPH" or the "Board"). For those serving life sentences, receiving a grant of parole is their only opportunity to walk free; if denied, they usually must wait between three and fifteen years before they have another chance. Yet members of the *Armstrong* class who are deaf sign language users ("deaf signers") or who have vision disabilities face steep disadvantages in preparing for this life-altering event.

Years after entry of injunctive relief, Defendants BPH and the California Department of Corrections and Rehabilitation ("CDCR") still routinely fail to comply with this Court's Order to "make accommodations for prisoners and parolees with disabilities in order to assist them in preparing for parole proceedings" and to provide "effective assistance in preparing a [BPH] appeal." *See* Dkt. No. 788 ¶¶ 32-33. Deaf signers, whom this Court has already found cannot communicate effectively through written English, see Findings of Fact and Concl. Of Law ("Factual Findings"), Dkt. No. 523 at 12, do not receive access to documents translated into sign language. Blind and low-vision class members, whom this Court has already found are entitled to documents in accessible formats, *see id.* at 85, do not receive them. And despite this Court's prior finding that "it often takes longer to provide legal services to a disabled, as opposed to non-disabled, prisoner or parolee when the attorney is also responsible for accommodating the individual's disability," *see id.* at 54, Defendants do not provide additional attorney time.

**I.    THIS COURT'S REVISED PERMANENT INJUNCTION AND DEFENDANTS' REMEDIAL PLANS REQUIRE DEFENDANTS TO ACCOMMODATE CLASS MEMBERS PREPARING FOR PAROLE PROCEEDINGS**

**A.    Brief History Leading to Revised Permanent Injunction**

In 1994, Plaintiffs, "a class of all present and future California state prison inmates and parolees with certain disabilities, sued defendants, California state officials with responsibility for the operation of the Department of Corrections and Rehabilitation (the CDCR) and the Board of Parole Hearings (BPH), challenging the State's treatment of disabled prisoners and parolees." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010) (internal quotation marks omitted).  This Court certified Plaintiffs as representatives for a class including "all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities" and as to Defendants Board of Prison Terms (now "BPH"), incarcerated people and parolees with developmental disabilities.  Order Granting Pls.' Mots. to Am. Compl. and Modify the Class, Dkt. 345, Jan. 5, 1999, at 2.  On behalf of the class, Plaintiffs sought accommodations for their disabilities, as required under federal statutes and the United States Constitution.

Initially, Plaintiffs sued two divisions of the then-California Youth and Adult Corrections Authority (the "Agency").  The two divisions sued had separate areas of responsibility toward incarcerated people and parolees:  The Board of Prison Terms ("BPT") had authority over parole and parole revocation hearings, and the California Department of Corrections ("CDC") was responsible for all other aspects of incarcerated people's and parolees' lives, including supervisions of parolees.  By agreement of the parties, litigation against the two divisions was initially bifurcated and proceeded on two separate tracks.  Since this lawsuit was originally commenced, the Agency has been reorganized and superseded by the California Department of Corrections and Rehabilitation ("CDCR").  BPT is now the Board of Parole Hearings ("BPH").  *See* Order

Granting in Part Pls' Mot. to Enforce the May 30, 2006 Order, Dkt. No. 1199 at 1 n.1. Both BPH and CDCR are controlled by and under the supervision of Defendant Newsom.

On December 22, 1999, following a bench trial, this Court entered a Permanent Injunction against the Defendants responsible for conducting parole proceedings through the BPT, following trial and findings that Defendants were in violation of the ADA, the Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment. Defendants appealed this Order to the United States Court of Appeals for the Ninth Circuit, which affirmed the Permanent Injunction almost in its entirety. *See Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001). Incorporating the revisions the Ninth Circuit ordered, the Court entered a Revised Permanent Injunction on February 11, 2002 (the "Revised Permanent Injunction"). *See* Stip. & Order on Revised Inj., Dkt. No. 788.

In 2006, Plaintiffs' counsel brought a motion to enforce ¶¶ 15-17 of the Revised Permanent Injunction, which required Defendants to identify, track and accommodate people with disabilities during parole hearings, including parole revocation hearings. *See* Pls' Notice of Mot. & Mot. to Enforce ¶¶ 15-17 of the Perm. Inj., Dkt. No. 906. This Court granted the motion, finding that "some of the worse abuses proven at trial in April and May, 1999 are continuing, almost seven years after this Court issued the Permanent Injunction." *See* Order Granting Mot. to Enforce Revised Perm Inj., Dkt. No. 933 at 5. The Court held that Defendants had failed to accommodate people with disabilities, in violation of the ADA and RA, and ordered Defendants to implement a computerized system to identify people with disabilities and track their need for accommodation, including accommodations that BPH has previously identified. *Id.* at 8-10. In 2007, Plaintiffs filed a motion to enforce the 2006 Order. *See* Pls' Not. of Mot. & Mot. to Enforce Compliance with May 30, 2006 Order, Dkt. No. 1123. The Court granted Plaintiffs' motion in part, and ordered the parties to develop what would become the 2010 update to the *Armstrong* Remedial Plan II ("ARP II"). *See* Order Granting in Part Pls' Mot. to Enforce the May 30, 2006 Order, Dkt. No. 1199.

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION

**B.    Provisions of the Revised Permanent Injunction at Issue in Plaintiffs' Motion**

Plaintiffs' Motion primarily addressed two provisions of the Revised Permanent Injunction.  First, Defendants are not complying with the provisions of the Revised Permanent Injunction that require them to ensure that individuals with disabilities have an equal opportunity to prepare for parole proceedings.  The Revised Permanent Injunction mandates that the Board:

> [M]ake accommodations for prisoners and parolees with disabilities in order to assist them in **preparing for parole proceedings**.[1]  For example, if a prisoner or parolee is entitled to review his or her central file prior to a parole proceeding, and if that prisoner or parolee is unable, due to a disability, adequately to review his or her central file without an accommodation, the BPT shall make such an accommodation.  Where other preparation, including but not limited to participating in psychological interviews, obtaining letters of support and developing parole plans, is necessary prior to a parole proceeding, the BPT shall provide reasonable accommodations to prisoners or parolees with disabilities who require such accommodations adequately to complete such preparation.

*See* Revised Permanent Inj. ¶ 32 (emphasis added).

Second, Defendants are not complying with the mandate in the Injunction that the BPH provide "effective assistance in preparing a [BPH] appeal."  *Id.* ¶ 33.  Since the Revised Permanent Injunction issued, the Board has abandoned administrative appeals.  However, all decisions by Board hearing panels are proposed decisions.  They do not become final for 120 days.  During that time, the Board's legal division may review any parole hearing decision.  Parole candidates may seek review through a letter that is tantamount to the administrative appeal.  *See* https://www.cdcr.ca.gov/bph/parole-suitability-hearings-overview/what-to-expect-after-a-parole-suitability-hearing/.

The Revised Permanent Injunction requires that all BPH forms must be effectively communicated to class members and "be readily available in alternative formats,

---

[1] The Injunction defines parole proceedings broadly to include "any events related to the hearings that occur prior to or after the hearings, including but not limited to, … psychological evaluations, central file reviews and administrative appeals."  Revised Permanent Inj. ¶¶ 3, 17; *see also* Order Granting Mot. to Enforce Revised Perm Inj., Dkt. No. 933; Order Granting in Part Pls' Mot. to Enforce the May 30, 2006 Order, Dkt. No. 1199.

including, but not limited to, large print, Braille and audio tape." *Id.* ¶¶ 19-20. The BPH may appoint attorneys as an accommodation, but to "suffice as an accommodation, the attorneys must be adequately trained to provide accommodations to persons with disabilities and must receive **adequate additional time** for providing these services." *Id.* ¶¶ 30 (emphasis added). In providing accommodations, "[t]he prisoner or parolee's request for a particular type of accommodation shall be given primary consideration and shall be granted unless the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available." *Id.* ¶ 17. Defendants must also have a system for candidates to grieve denials of accommodation. *See id.* ¶ 34. The *Armstrong* Remedial Plan and the *Armstrong* Remedial Plan II provide additional guidance to CDCR and to BPH regarding how to accommodate people with disabilities as they prepare for parole hearings, grievances and decision review.

## II.   PAROLE PREPARATION IS A YEARS-LONG TIME-INTENSIVE, DOCUMENT-INTENSIVE PROCESS THAT RESTS PRIMARILY ON THE PAROLE CANDIDATE

A candidate's personal preparation for their parole hearing is paramount. Candidates routinely spend years studying and practicing during evenings, on weekends, and every chance they get to maximize their likelihood of being granted freedom. The parole candidate's own testimony and writings feature prominently in parole hearings, which typically last between two and three hours and consist primarily of the parole candidate's own testimony. The BPH Commissioners who preside over the hearings evaluate the parole candidate's testimony, writings, and records according to a standard decision-making framework applied during every hearing, which includes consideration of the candidate's level of insight into their past crimes, the extent to which they have personally changed during their incarceration, and their plans for release. BPH Commissioners state their findings and supporting reasons on the record at the conclusion of the proceeding, and announce a proposed decision. All hearings are required to be recorded and transcribed with the recording or transcript provided to the candidate

following the hearing.

All decisions announced during the hearing are subject to review by BPH's legal division.  Following the hearing, candidates may submit a letter requesting review by detailing specific factual and legal errors made during the hearing.  Candidates may also appeal ADA violations by filing a BPH form 1074.

To prepare their testimony, many candidates spend years studying documents designed to guide their efforts to address the factors that BPH Commissioners consider.  Of these documents, the most important are (1) written guidance from a BPH Commissioner recommending what programs to take to prepare, which candidates receive years prior to their hearing; (2) a Comprehensive Risk Assessment ("Risk Assessment"), which is a detailed psychological evaluation assessing their risk of future violence and which lays the groundwork for the BPH Commissioners' questions during the hearing; (3) their entire prison record, including police and probation reports related to their commitment offense, which candidates have the opportunity to review prior to their hearing; and, (4) for candidates appearing for subsequent parole hearings, the transcript of their prior hearing, including BPH Commissioners' stated reasons for the denial and recommendations for future preparation.  *See* Grunfeld Decl., Ex. B at BPH00000060-63.

Parole candidates supplement their oral testimony by submitting documents that they develop or compile during their months or years of study: detailed release plans, including plans for stable housing, employment and management of their risk factors for relapse and re-offense; letters showing their level of remorse and understanding of the magnitude of their commitment offense, as well as the ways in which they have changed during their incarceration; book reports and other essays showing their engagement with prison programming; and a closing statement, summarizing why they are suitable for release.  *See* Declaration of Keith Wattley in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Wattley Decl.") ¶¶ 16-21.  All these documents contain highly sensitive information about candidates' backgrounds and commitment offenses, of the type that could lead to violence if it became known within the

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED
PERMANENT INJUNCTION

prison.

**III.    DEFENDANTS FAIL TO MAKE SUFFICIENT ACCOMMODATIONS FOR CANDIDATES WHO ARE DEAF SIGNERS, BLIND OR LOW-VISION TO ENGAGE IN THE SAME LEVEL OF PREPARATION AS OTHERS DO**

Despite the central role that synthesizing and producing written information plays in parole preparation, Defendants do little to "make accommodations for prisoners ... with disabilities in order to assist them" with such tasks. *See* Revised Permanent Inj. Dkt. No. 788 ¶ 32. While individuals without disabilities have an unlimited opportunity to study these documents privately and independently, deaf signers and class members with vision disabilities must sacrifice their privacy and independence in exchange for much less.

**A.    Defendants Fail to Adequately Accommodate Deaf Sign Language Users in Preparing For BPH Proceeding**

Defendants fail to accommodate deaf signers in a variety of ways that deny deaf signers the ability to effectively prepare for and appeal parole proceedings.

**1.    Without Videotaped Translations of Documents, Deaf Signers Cannot Access the Crucial Parole Preparation Information that Defendants Communicate Solely Through Written English**

As this Court has already found, "written language generally is an inadequate means of communication with hearing impaired persons can should be used only as a last resort." *See* Factual Findings, Dkt. No. 523 at 12. As a result, deaf signers can only access documents by having a sign language interpreter translate written words into American Sign Language ("ASL") or translate the deaf signer's ASL communications into written words. Also as a result of their disability, deaf signers have a lower fund of knowledge and often have more difficulty than others understanding new or complex information, especially the abstract concepts necessary to demonstrate the insight or personal change that BPH Commissioners expect to see. *See* Declaration of Roger C. Williams in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Williams Decl.") ¶ 9. They require more detailed explanations and more repetition of information to reach the same level of understanding as others. *See Id.*, ¶ 29.

Because of these disability-related communication challenges, many deaf signers have great difficulty understanding and producing the many written materials necessary for adequate parole preparation.  Deaf signers have little access to the crucial information communicated to them through the past hearing transcripts, Risk Assessments, and other important documents because Defendants provide this information exclusively in written English, which the class members cannot understand.  Multiple deaf signers submitted declarations attesting that they have no understanding of concepts essential to parole proceedings such as "causative factors" and "relapse."  *See* Jackson Decl., Ex. 66 at ¶ 19; *id.* Ex. 67 at ¶ 22.

Defendants' offer of a one-time opportunity for a CDCR employee called a Correctional Counselor or an appointed attorney to read parole preparation documents aloud to the candidate, while a sign language interpreter translates the material on the fly, is insufficient.  Deaf signers attest that when they request this meager accommodation, Defendants either refuse or delay substantially in providing it.  Any time spent having an attorney read the document aloud through an interpreter, a ministerial task to which the attorney brings no professional expertise, takes time away from the already limited time the class members have with their the attorneys to assist with preparation.  Further, this one-time access does not afford deaf signers the opportunity to study these documents as others do, despite the fact that deaf signers must study more to achieve the same result.  As a result, deaf signers lack equal access to the resources crucial to prepare for parole hearings.

**2.    Defendants Deny Deaf Signers Access to Video of the Board Hearings, Which Prevents Them From Appealing Parole Decisions or Grieving the Proceedings**

Videotaped transcripts of ASL interpretation of the Risk Assessment and hearing transcripts are essential not only to parole preparation but to appeal.  Candidates have an opportunity to object to or appeal factual and legal errors both in their Risk Assessment and in their parole hearing.  Doing so requires a detailed review of these documents, which deaf signers cannot accomplish without an ASL version to review.  For deaf signers, the

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION

video transcript serves an important additional function: it allows them to file an ADA grievance or seek decision review based on translation errors.

Many deaf signers have noted serious concerns with the quality of the interpreters at their hearings, which denied them their right to effective communication during the proceeding.  Plaintiffs have likewise notified Defendants of extensive and egregious translation errors during ASL-interpreted parole consideration hearings, which interfered with these candidates' right to have "an opportunity to be heard" and receive "a statement of the reasons why parole was denied," *see Swarthout v. Cooke*, 562 U.S. 216, 220 (2011).  Although the parties have made some progress toward improving the quality of the interpretation, translation errors remain likely.

Defendants choose to record parole hearings solely by audio, a medium that cannot capture the portion of the parole hearing containing the deaf person's original ASL testimony or the way that questions and other statements were translated to them.  Without a record of the ASL testimony or translation, deaf signers cannot prove translation errors occurred in order to be able to file grievances or participate in decision review.

**B.    Defendants Fail to Adequately Accommodate Blind and Low-Vision Parole Candidates in Preparing for BPH Proceedings**

Individuals who are blind or low-vision are also unable to effectively prepare for and participate in parole proceedings due to Defendants' failure to identify and provide needed accommodations, maintain standard forms and notices—including ADA appeal forms—in accessible formats, and provide access to assistive devices that allow blind and low-vision individuals to read and write privately and independently.  As Plaintiffs' vision accessibility expert, Michael Parker, opines:  "it is best practice, and most preferred for individuals to be able to prepare for the Board independently, especially if aspects of their past are sensitive and might endanger them, if shared with others."  Declaration of Michael Parker in Support of Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction ("Parker Decl.") ¶ 2.

The blind and low-vision population is diverse, with accommodation needs ranging

from modest font-size enlargement to conversion of written documents into audio format and use of computers and special software for reading and writing. As Mr. Parker explains, "the reading and writing needs of a given blind or low vision individual can only be determined effectively by an individualized assessment of that person's needs." *Id.* ¶ 3. Accommodations can range from ballpoint pens and lined paper, costing approximately six dollars to an array of commercially available devices such as video magnifiers and computer software. Some individuals will require human assistance, regardless of the technology provided to them. *See id.* ¶¶ 5-14.

Other prisons already take steps to assess people with vision disabilities at the time they enter prison to determine the accessible format and assistive devices they require, then provide accessible document, assistive devices for in-cell use, and even human writing assistants for the duration of their incarceration. *See, e.g.*, Release and Settlement Agreement, Dkt. No. 77-1, *Mackes v. Colo. Dep't of Corr.*, Case No. 1:21-cv-01100-CNS-MEH (D. Colo. Aug. 3, 2022) ("*Mackes* Settlement"); Settlement Agreement, *Brown v. Dep't of Pub. Safety and Corr. Services*, Case No. 17-cv-945-RDB (D. Md. June 5, 2019) ("*Brown* Settlement"). However, despite years of advocacy by Plaintiffs' counsel and a court order requiring accessible formats, Defendants still fail to provide class members with the accommodations they need to prepare for and follow up from parole hearings.

### 1. Defendants' Failure to Provide Accommodations to Candidates With Vision Disabilities Renders Them Unable to Adequately Prepare for Parole Hearings

Plaintiffs' counsel submitted declarations from a number of blind and low-vision parole candidates attesting that Defendants routinely provide blind and low-vision parole candidates with inaccessible versions of key documents. Class members who request to receive an accessible version of these documents often face delays of weeks or months before receiving them. These class members explain that Defendants provide insufficient access to assistive devices that would enable these candidates to review the inaccessible document they were given, or to independently draft preparation materials. Nor do Defendants provide ready access to individuals qualified to assist with reading and writing

tasks, such as Correctional Counselors.

### 2. Defendants Have Refused to Adopt Common Sense Measures that Would Remove These Barriers to Preparation and Follow-Up

To date, Defendants have refused to implement solutions that would enable blind and low vision class members to prepare for parole hearings on an equal playing field with their peers without disabilities.

Defendants consult with class members with vision disabilities in advance of their parole hearings to determine the accommodations they require at the hearing itself. But they do nothing to inquire what the class member needs to **prepare** for the hearing, short of checking a box on a form stating "I need help reading my documents," and otherwise hoping that the candidate's appointed attorney, or other BPH personnel, will think to write down somewhere that the candidate requires a certain accommodation. This rarely happens, likely due to the deficient training Defendants provide.

Plaintiffs' counsel spent years negotiating with Defendants to develop memoranda requiring Correctional Counselors to assist with specific tasks essential to parole preparation. Yet soon after completing this process, Defendants decided not to enforce the key memorandum, leaving class members without a crucial source of help.

Plaintiffs' counsel have asked Defendants to develop a formal set of procedures to streamline production of accessible versions of documents, and to create accessible versions of BPH Forms and Notices, as the Revised Permanent Injunction already requires, *see* Dkt. No. 788 ¶ 20. Yet over two years since Plaintiffs began urging this approach, Defendants have not even been able to determine which of them (BPH or CDCR) is responsible for converting which documents.

Plaintiffs' counsel has asked Defendants to provide candidates with vision disabilities assistive devices they can use to study independently in their cells, as others do. Defendants have repeatedly delayed addressing this issue, relegating candidates with vision disabilities to the assistive devices available in libraries, which have limited hours and are frequently closed. The devices themselves are frequently broken. And libraries

lack privacy: the assistive device may display the candidate's highly private reading material in large letters on a screen visible to the whole room.

### C.  The Attorneys Defendants Claim to Appoint as an Accommodation Do Not Meet This Need

Defendants claim to provide ADA trained attorneys as an accommodation to compensate for their failure to provide other accommodations for parole preparation.  But they do so without providing the additional time and compensation the Revised Permanent Injunction requires,[2] and they have not shared what form of ADA training these attorneys receive, or how frequently it is provided.

All parole candidates—not just those with disabilities—are entitled to counsel for their parole hearings, which Defendants provide: ninety percent of parole candidates rely on state-appointed attorneys for their hearings.  The compensation and requirements for the position already fall below what experienced parole attorneys believe is the bare minimum necessary to adequately represent clients with simple cases and no disability.  Defendants appoint attorneys just a few months before parole consideration hearings, when adequate preparation takes at least eight months, *see* Wattley Decl. ¶ 9.  Defendants require just three attorney-client meetings, when adequate representation requires more, *see* Wattley Decl. ¶ 28.  Defendants do not require attorneys to provide feedback on a client's written documents, even though this forms an essential part of the attorney's role, *see* Wattley Decl. ¶ 27.  Defendants compensate attorneys just $ 945 per case.  But adequate representation takes a minimum of 20 hours.  *Id.* ¶ 28.

The inadequacy of this assistance carries much higher consequences for deaf signers and candidates with vision disabilities, who have greater needs for assistance.  This Court has already found that providing legal representation takes more time and resources

---

[2] This Court previously found that: "it often takes longer to provide legal services to a disabled, as opposed to non-disabled, prisoner or parolee when the attorney is also responsible for accommodating the individual's disability....  Without allotting more time to the attorneys/ simply providing an attorney is therefore not a sufficient accommodation."  *See* Dkt. No. 523 at 54.

when the client has a disability, *see* Dkt. No. 523 at 54, and ordered Defendants to provide this additional time, *see* Dkt. No. 788 ¶ 32.  Defendants do nothing to ensure these attorneys spend additional time with clients who are deaf signers or have vision disabilities.  Defendants do not appoint attorneys any earlier, do not require attorneys to hold extra or longer client meetings, do not require attorneys to provide extra services such as assisting with reading or writing, and do not offer attorneys additional compensation to cover additional time spent on the case.

### 1.    Deaf Signers Require More Attorney Assistance Than Candidates Without Disabilities, But Receive Less

Due to their difficulties with comprehension, many deaf signers lack basic information on how to prepare for their hearings.  One class member who has a sex offense conviction spent nearly a decade asking where he could find programs specific to sex offenders.  Although he finally learned of a correspondence course he could take and a book he could read, due to his difficulties with comprehension of written English as a result of his disability, the class member benefitted little from his efforts.  BPH Commissioners denied him parole for **seven years** due to his perceived lack of insight into his sex offense.

Despite this need for extra assistance, deaf signers actually receive less attorney assistance than others, due to the time needed for sign language interpretation and to assist with written communication.  Conversations mediated through a sign language interpreter typically take twice as long as conversations between parties that share a language.  Further, Defendants expect attorneys to devote time to ministerial, non-attorney tasks such as reading documents aloud for translation.  The result is that deaf signers receive less attorney assistance than others, and suffer more acutely than others from the consequences of receiving insufficient attorney assistance.

### 2.    Candidates With Vision Disabilities Require More Assistance Than Candidates Without Disabilities But Receive Less

Although candidates with vision disabilities may not face the same comprehension

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION

barriers as deaf signers, they still requires additional attorney assistance due to the ongoing discrimination they face in prison.  Part of the parole attorney's role is to help candidates craft written and oral testimony that demonstrates what they have learned.  Parole candidates with vision disabilities often have difficulty gaining access to programs, as well as synthesizing and articulating the information they learned in their rehabilitative programming, because they did not have access to the written materials accompanying the program, nor could they take notes or complete written assignments.  Due to this historic discrimination, blind and low-vision candidates are already behind in parole preparation and need extra attorney assistance to overcome it.  Yet Defendants expect state-appointed attorneys to use their client meeting time on the ministerial tasks of reading documents aloud and scribing, leaving less time for attorney tasks.  Indeed, one parole attorney went to Herculean lengths, devoted many hours creating and submitting her client's files in audio format, due to Defendants' failure to accommodate the blind candidate.  The end result is that these blind and low-vision candidates, who need more attorney time than others to achieve the same result, ultimately receive less.

**D.     Defendants' Failure to Provide Accommodations Forces Candidates Who Are Deaf Signers or Have Vision Disabilities to Choose Between Their Safety and Their Liberty**

Without adequate access to attorneys, Counselors, or other professionals who can assist with parole preparation, candidates who are deaf signers, blind or low-vision have one remaining option: their fellow prisoners.  This Court has already found that this predicament "violates parolees' rights to privacy and raises the potential for abuse and extortion."  *See* Factual Findings, Dkt. No. 523 at 49.  As the declarants testified, this risk is amplified in the parole context, because the assistance the deaf, blind and low-vision candidates require involves revealing information about their commitment offense, which could lead to violence if it became known in the prison.  *See, e.g.*, Wattley Decl. ¶ 19; Jackson Decl. ¶ 9.

Class members' disabilities interfere with the assistance that deaf signing, blind and low-vision candidates can receive from their peers.  For deaf signers, surrounded by people

who do not sign, assistance is available only through communicating in written English, which they do not understand well.  For blind and low-vision class members, who must communicate by talking, they can receive assistance only in private spaces—a rare commodity in prison—due to the risk their discussion of these sensitive documents will be overheard.  For many, these barriers are insurmountable.

**CONCLUSIONS OF LAW**

The requirements of this Court's prior orders are clear:  Defendants must "make accommodations for prisoners and parolees with disabilities in order to assist them in preparing for parole proceedings," Dkt. No. 788 ¶ 32, and to provide "effective assistance in preparing a [BPH] appeal, *id.* ¶ 33.  These accommodations include making forms and grievances accessible and providing the auxiliary aids and services to complete complex reading and writing tasks.  *See id.* ¶¶ 19-20, 34.  These accommodations also include providing additional attorney time.  *See id.* ¶ 32.  Defendants have not done so: *Armstrong* class members who are deaf signers, blind and low-vision remain without access to BPH documents and limited in their ability to prepare for and follow up from parole proceedings.

Plaintiffs urge solutions that fall squarely within the scope of the ADA.  This Court has already ordered Defendants to provide additional attorney time.  *See* Dkt. No. 788 ¶ 32.  Human assistance, such as qualified readers and scribes, is a classic form of ADA accommodation.  *See* 42 U.S.C. § 12103(1)(B) ("The term 'auxiliary aids and services' includes... qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments").  And this Court has already found that relying on human assistance alone is not enough.  *See* Dkt. No. 523 at 37.  As for the technology-based solutions that Plaintiffs request, the Ninth Circuit has recognized that "the types of accommodations and services provided to individuals with disabilities … should keep pace with the rapidly changing technology of the times."  *See Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1164 (9th Cir. 2011).  Plaintiffs have shown this technology is necessary to provide the "equal opportunity" the ADA

contemplates.  *See id.* at 1167 (quoting 42 U.S.C. § 12101(a)(8)).  Further, other entities, including prisons, already provide much of the relief Plaintiffs seek here, such the prison systems in Colorado, *see Mackes* Agreement, and in Maryland, *see Brown* Agreement.

Accordingly, this Court finds that Plaintiffs have established ongoing violations of this Court's prior orders: Dkt. No. 788 ¶¶ 19, 20, 30, 32-24.  This Court has the inherent power to issue further remedial orders to effectuate its prior injunctions.  *See, e.g.*, *Armstrong v. Newsom*, 58 F.4th at 1299 & 1293 n.8, and to issue additional injunctive relief under Federal Rule of Civil Procedure 65.  *See Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957, 977 (9th Cir. 2017).

### FURTHER REMEDIAL PLAN

In order to remedy the ongoing harm to *Armstrong* class members, to ensure that Defendants meet their obligations under the ADA, RA, prior Court orders, and the United States Constitution, and to enforce the 2002 Revised Permanent Injunction, Order Granting Motion to Enforce Revised Permanent Injunction, May 30, 2006 (Dkt. No. 933); and Order Granting in Part Plaintiffs' Motion to Enforce the May 30, 2006 Order, September 11, 2007 (Dkt. No. 1199), and based on the entire record in this action, the Court hereby ORDERS the following relief:

1.	Within sixty days of this Order, Defendants shall develop a plan to ensure deaf and blind and low vision *Armstrong* class members receive effective communication in parole proceedings and have access to reasonable accommodations to adequately complete parole preparations and to complete BPH-related grievances and decision review that includes, at a minimum, the following elements:

(a)	**Identification of Need for Accommodations for Blind and Low-Vision Class Members:**  Defendants shall identify the accommodations necessary for blind and low-vision class members to adequately prepare for their hearings and complete parole preparation tasks and grievances and decision review.

For all blind and low vision *Armstrong* class members, Defendants shall identify and document the accessible format (*e.g.*, large print, Braille, audio recording, or electronic

[4284966.10]

16

Case No. C94 2307 CW

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION

format compatible with a computer-based screen reader) that best ensures effective communication of the printed material to the class member and the auxiliary aids and services the class member requires to handwrite and/or type.  The accessible format identified in this manner shall be known as the individual's "Verified Accessible Format." Identification shall occur no later than one year prior to the class member's tentative hearing date, and at least one additional time prior to the service of the Risk Assessment. The one year in advance identification process shall be repeated each time the class member is scheduled to have a parole suitability hearing.

The identification process must include the following steps (1) informing the class member of the accessible formats and auxiliary aids and services available to the class member and the location of all documents already available in that format such as Braille BPH Forms and Notices, (2) gathering any additional information necessary to ensure that documents are accessible at the time the class member receives them (such as the font size and type for large-print documents), (3) determining which auxiliary aids or services the class member requires for effective communication of any documents that are not produced in their Verified Accessible Format, and (4) determining which auxiliary aids or services the class member requires to perform writing tasks.  Defendants shall give primary consideration to the class member's preferred form of accommodation unless another equally effective means of communication is available or the class member's choice presents an undue burden or fundamentally alters the program or activity in question.  Defendants shall ensure that auxiliary aids and services are provided "in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *See* 28 C.F.R. § 35.160(b)(2).  During the identification process, Defendants must also instruct class members of an accessible way in which they may request documents in alternative formats.

(b)    **Production of Accessible Formats:**  Defendants shall develop policies and procedures governing the production of documents in accessible formats. *See* Dkt. No. 788 ¶¶ 19, 20, 32, 33, 34.  These policies and procedures shall designate the staff

position responsible for creating the accessible format, the manner for creating each accessible format, and the timeline for doing so, such that the accessible format is provided to the class member in a timely manner and in such a way as to protect the privacy and independence of the class member.

(c)    **Service of Accessible Formats:**  Defendants shall timely provide all printed materials related to parole proceedings to blind and low vision class members in the Verified Accessible Format.  *See* Dkt. No. 788 ¶¶ 19, 20, 32, 33, 34.  This shall include all documents a class member or their attorney requests to be printed as part of their *Olson* review.  Whenever possible, Defendants shall serve the class member with the accessible format of the document at the same time the document otherwise would be served.  When a class member requests to receive a document in a format other than the format the document is in at the time of production, Defendants shall adhere to the following timelines:  (i) Audio recordings of parole hearings, large print documents, and electronic formats compatible with a screen reader shall be provided within one business day of the request; (ii) All other formats shall be provided within 5 business days of the request.

(d)    **BPH Forms and Notices:**  Defendants shall ensure that BPH Forms and notices are accessible to blind and low-vision class members.  *See* Dkt. No. 788 ¶¶ 19, 20.  Defendants shall create a version of all BPH Forms and Notices in each of the following formats: Braille, electronic format compatible with a screen reader on a computer, recorded audio, and large print.  For those Forms and Notices that contain information unique to the class member, such as the date and time of a hearing, Defendants shall ensure that accessible formats can be and are edited to include this information as necessary.  For those forms that parole candidates may complete privately and independently, Defendants shall provide the auxiliary aids and services necessary for blind and low vision class members to complete the forms privately and independently.

(e)    **Access to Equipment:**  Defendants shall ensure that blind and low vision class members have access to the auxiliary aids and services necessary to complete parole-related reading and writing tasks in a timely manner and in such a way that protects

their privacy and independence.  *See* Dkt. No. 788 ¶¶ 19, 22, 32, 33, 34.  For each blind and low vision class member who is eligible for parole, beginning no later than 1 year prior to the tentative hearing date and continuing for  one year after the hearing, Defendants shall make available the specific electronic auxiliary aid or aids that best enable the class member to independently and privately complete reading and writing tasks related to parole proceedings for long-term and overnight check-out and in-cell use.  The aids authorized and made available for in-cell use shall, in combination, include all of the following functions to accommodate the class member:

- Variable magnification, with magnification range at a level comparable to that of commercially available desktop magnifiers designed for use by low-vision users that are readily available to low-vision users in the community;
- Color change (including variation of text color and background color);
- Contrast change;
- Laptop computer equipped with screen magnification software;
- Text-to-speech (including ability to adjust speed of speech);
- Optical character recognition;
- Braille display compatibility;
- Audio output through headphone jack;
- Laptop computer equipped with JAWS or an equivalent screen-reading software;
- Ready access to a printer;
- Sufficient features to ensure privacy when using the device; and
- Sufficient features to ensure the device can be operated independently by all intended users.

For DPV class members whose primary visual accommodation is audio, CDCR shall develop a process for providing printed materials, which cannot be accurately read aloud via electronic auxiliary aid, to these class members in audio format.  DPV class members whose

[4284966.10]

19

Case No. C94 2307 CW

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION

primary accessible format is audio shall be provided necessary equipment, such as headphones, to independently access audio-formatted print materials in reasonable privacy.

(f)    **Training:**  Defendants shall ensure that BPH and CDCR staff and deaf signing class members receive training on the videotaping and viewing listed above. For class members, the training shall be sufficient to ensure that they can review the transcripts and other documents independently and privately.

(g)    **Education:**  Within sixty days of the finalization of Defendants' plan, Defendants shall educate all blind and low-vision class members who are eligible for a parole consideration hearing on the requirements of this Order and how to exercise the rights therein.  Going forward, all blind and low-vision class members who are eligible for a parole consideration hearing shall receive this education within sixty days of their arrival at any CDCR institution.  This education shall be repeated at least one year in advance of each scheduled parole suitability hearing.

2.    **Video Taped Materials for Deaf Signers.**  Within sixty days of this Order, for all deaf class members whose primary method of communication is ASL, Defendants shall develop a plan to ensure that deaf signers have access to reasonable accommodations to adequately complete parole preparations, as required by Dkt. No. 788 ¶¶ 19, 32, and to complete BPH-related grievances and decision review, as required by Dkt. No. 788 ¶¶ 33, 34, as follows:

(a)    **Video Transcripts and Translations:**  For all parole suitability hearings involving a class member whose primary method of communication is sign language, Defendants shall record the proceeding by video and audio.  This recording shall be provided to the class member at the time the printed hearing transcript ordinarily would be served.

At the time that any person whose primary method of communication is sign language is served with a copy of their Risk Assessment, Defendants shall arrange for a qualified sign language interpreter to translate the document into sign language.  Except as necessary to honor a deaf individual's request for a specific sign language interpreter, the

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION

qualified sign language interpreter shall not be a CDCR employee.  Defendants shall make all reasonable efforts to ensure the qualified sign language interpreter is experienced in document translation, as is common for Certified Deaf Interpreters (CDIs).  The translation shall take place in the presence of the deaf incarcerated person, who shall be allowed to ask clarifying questions during the translation.  This encounter shall be recorded by video. The video shall be provided to the class member within two business days.

Upon request, Defendants shall create an ASL video translation of other documents related to parole preparation such as the Probation Officer's Report, Rules Violation Reports or Laudatory Chronos.  The translation shall take place within ten business days of when the request is placed, and shall following the same procedures as set forth this paragraph.

(b)     **Viewing the Video Recordings:**  Defendants shall develop standards for video quality that ensure the intelligibility of all signed utterances.  Defendants shall ensure that deaf signers are able to access all video transcripts and video translations of BPH and BPH-related documents at any time that other participants are able to access such transcripts and documents, including inside their cell, and during evenings, weekends and holidays.  For the purposes of accessing the video recording, Defendants shall ensure that deaf individuals have access to a screen that is large enough to easily understand all visible sign language users.  Defendants shall ensure that the format of the recording allows users to fast-forward and rewind as necessary.  For class members who do not have a device that meets these standards, Defendants shall provide such devices on loan for a minimum of seven (7) days, with the option to renew as many times as necessary, to ensure full and equal access to the video transcript or other video translation.

(c)     **Training:**  Defendants shall ensure that BPH and CDCR staff and deaf signing class members receive training on the videotaping and viewing described above.  For class members, the training shall be sufficient to ensure that they can review the transcripts and other documents independently and privately.

(d)     **Education:**  Within sixty days of the finalization of Defendants' plan, Defendants shall educate all deaf signers who are eligible for a parole consideration

hearing on the requirements of this Order and how to exercise the rights therein.  Going forward, all deaf signers who are eligible for a parole consideration hearing shall receive this education within sixty days of their arrival at any CDCR institution.  This education shall be repeated at least one year in advance of each scheduled parole suitability hearing.

       3.    **Assistance with Writing Statements, Parole Plans, Apology Letters, Book Reports, and Relapse Prevention Plans:**  Defendants shall provide reasonable accommodations to deaf signers and blind and low-vision class members for all writing tasks necessary to adequately complete parole preparation to grieve ADA violations, and to pursue decision review.  *See* Revised Permanent Injunction ¶¶ 19-20, 32-34.  Assistance may not be limited to assistance from state-appointed attorneys and their designees, but must include assistance from individuals who are typically present in CDCR prisons during normal business hours, such as staff assistants or Correctional Counselors, as Defendants previously represented to this Court.  *See* Joint Case Statement filed July 15, 2021, Dkt. No. 3296 at 28; Joint Case Statements filed May 17, 2021, Dkt. No. 3266 at 36-37; Joint Case Statement filed March 15, 2021, Dkt. No. 3227 at 34-35; Joint Case Statement filed January 16, 2021, Dkt. No. 3191 at 36-37; Joint Case Statement filed August 17,2020, Dkt. No. 3044 at 34; Joint Case Statement filed June 19, 2020, Dkt. No. 2965 at 28-29; Joint Case Statement filed April 15, 2020, Dkt. No. 2936 at 23.  Defendants shall ensure that there are sufficient personnel at each prison in which DPV and DPH class members are housed to allow them to meet with each deaf signer, and each blind and low-vision class member, on a regular and consistent basis from the time the class member is provided notice of their scheduled hearing date until 120 days after the hearing takes place.

       The assistance offered shall include the following:  (1) reading or re-reading documents aloud, including the Notice of Rights, the Risk Assessment, hearing transcripts, post-conviction reports, documents from the class member's custody file, and any letters related to the upcoming parole proceeding; (2) writing or revising documents, including relapse prevention plans, letters of remorse, book reports, grievances and requests for

decision review related to their hearing, and any other documents or forms related to parole preparation and follow up, including BPH-related grievances and the BPH Form 1074; (3) developing release plans, including identifying sources of support in the community and contacting such entities to request support; and (4) any other tasks necessary to prepare for and follow up from parole proceedings, except tasks that constitute providing legal advice. All assistance must be provided in a timely manner and in such a way as to protect the privacy and independence of the class member involved.

Defendants shall also provide reasonable accommodations to deaf signers and blind and low vision class members, for all writing tasks necessary to request decision review, and to file grievances regarding effective communication at parole hearings or in preparation for parole hearings. *See* Revised Permanent Injunction, ¶¶ 33 and 34. Defendants shall ensure that either attorneys or Counselors assist deaf signers and blind and low-vision class members with filing grievances regarding effective communication at parole hearings or in preparation for parole hearings.

4. **Attorney Assistance and Training:** Defendants shall ensure that state-appointed attorneys are available as a reasonable accommodation by providing attorneys with adequate training to provide accommodations to persons with disabilities and adequate additional time for providing those services to deaf, blind and low-vision class members. *See* Revised Permanent Injunction ¶ 30.

For training to be adequate, it must include training regarding how to ensure that deaf signers, and blind and low-vision class members, have the accommodations necessary to adequately prepare for and follow up from parole proceedings. Training shall including the requirements of this Order. Training regarding blind and low-vision class members shall include a list of all accessible formats and assistive devices available to these class members, clear instructions for how attorneys can obtain assistive devices or documents in accessible formats for their clients, and clear instructions for how attorney can escalate requests in the event that a request is denied. Training regarding deaf signers shall include the need to allow additional time for meetings due to the use of a sign language interpreter,

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED
PERMANENT INJUNCTION

and the need to use sign language interpreters to ensure effective communication of written materials including hearing transcripts and Risk Assessments.  Training regarding deaf signers, and blind and low-vision class members, shall include emphasis on the importance of allowing additional time to explain and repeat explanation of documents, given the barriers these class members face in being able to mark up or take notes on documents.  Training shall also include the need to provide assistance with drafting all documents necessary to prepare for the hearing and to engage in release planning, including drafting relapse prevent plans and letters of remorse, gathering contact information for potential sources of support in the community, and reaching out to potential sources of support in the community.  Plaintiffs' counsel shall be allowed to monitor the training and object if it does not address the issues outlined in this Order.

State-appointed attorneys representing deaf signers/blind and low-vision class members shall receive more compensation than the standard per case amount paid under BPH's contract with Parole Justice Works and shall be expected to spend significantly more time than the amount required under that contract.  Whenever possible, Defendants shall appoint attorneys at least 10 months prior to the scheduled parole hearing for deaf signers and blind and low-vision class members.  Defendants shall require attorneys to hold additional meetings with parole candidates who are deaf signers or blind and low-vision.  Defendants shall direct attorneys to allow twice as much time for meetings with deaf signers, due to the time needed for the translation process.  Defendants shall ensure that attorneys receive sufficient training and supervision to ensure they meet the requirements of this provision.  Plaintiffs' counsel shall be allowed to monitor the training and supervision and object if it does not address the issues outlined in this Order.

5.    Within seventy-five days of this Order, after reviewing comments from Plaintiffs' counsel, Defendants shall issue the plan in final form and implement its provisions forthwith.  Defendants must present drafts of all plans, policies, and procedures developed pursuant to this Order to Plaintiffs' counsel at least fifteen days in advance of the deadlines.  The parties shall meet and confer to resolve any disagreements as to their

adequacy within seven days of the deadline.  Defendants shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions. In the event that disagreement cannot be resolved, Defendant shall implement the procedures as written on the date ordered and Plaintiffs' counsel shall file objections with Court.  The Court will rule on the objections and issue orders as necessary.

6.    These remedies are all consistent with the Prison Litigation Reform Act's requirement that the Court's orders be narrowly drawn, extend no further than necessary to correct the violation of a federal right, and be the least intrusive means necessary to correct the violation.  *See* 18 U.S.C. § 3626(a)(1)(A).  Anything short of these remedies will not ensure that *Armstrong* class members who are deaf signers, blind, or low-vision receive reasonable accommodations as necessary to ensure an equal opportunity to prepare for and participate in parole proceedings.  Given Defendants' failure to adequately accommodate these class members over the past two decades, the specificity of the remedies is appropriate.  *See Armstrong v. Brown*, 768 F.3d 975, 985-96 (9th Cir. 2014).

**IT IS SO ORDERED.**

DATED:  _____, 2023

_____
Honorable Claudia Wilken

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED
PERMANENT INJUNCTION