ROB BONTA
Attorney General of California
SHARON A. GARSKE
Supervising Deputy Attorney General
SEAN LODHOLZ
OLENA LIKHACHOVA
GURPREET SANDHU
TRACE O. MAIORINO
ANNE KAMMER
Deputy Attorney General
State Bar No. 243113
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  Telephone: (619) 321-5781
  Fax: (619) 645-2581
  E-mail: Anne.Kammer@doj.ca.gov
*Attorneys for Defendants*
*Gavin Newsom, Board of Parole Hearing,*
*and CDCR*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **JOHN ARMSTRONG, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | C 94-2307 CW<br><br>**DECLARATION OF DANIEL MOELLER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]** |

I, Daniel Moeller, declare:

1. I am employed by the California Department of Corrections and Rehabilitation (CDCR) and currently serve as the Associate Chief Deputy Commissioner for the Board of Parole Hearings (Board), a position I have held since 2009. Prior to that, I served as a Deputy Commissioner for the Board from 2005 to 2009. Prior to becoming a Deputy Commissioner, I served as Staff Counsel for the Board from 2000 to 2005. Prior to that, I was a Graduate Legal

1

Assistant at the Board from 1999-2000.  I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion for Order to Enforce the Revised Permanent Injunction (ECF No. 3525).  I am competent to testify to the matters set forth in this declaration and, if called upon by this Court, would do so.

2.    As the Associate Chief Deputy Commissioner, I oversee the Board's Americans with Disabilities Act (ADA) Compliance Unit.  In addition, I oversee certification, placement, and annual hearings for offenders with mental health disorders (OMHD).  I supervise deputy commissioners who conduct parole suitability hearings, parole discharge reviews, and nonviolent offender reviews.  I review pre-hearing requests to waive or postpone parole suitability hearings.

3.    In my role as Associate Chief Deputy Commissioner, I am familiar with the statutes, regulations, administrative directives, and court orders governing the Board, including the permanent injunctions issued by the Court in this case and the *Armstrong* Remedial Plan II (ARP II).  I am also familiar with California Code of Regulations, title 15, section 2256, pursuant to which the Board provides indigent incarcerated individuals with attorney representation at parole hearings at state expense.  The Board provides attorney representation as an accommodation under the ADA to incarcerated individuals with disabilities, as required by this Court's permanent injunctions and set forth in the ARP II.

**Accommodations for *Armstrong* Class Members**

4.    The Board has established systems and processes to identify ADA accommodations requested by *Armstrong* class members for parole suitability hearings.  The Board's Notice and Request for Assistance at a Parole Proceeding (BPH Form 1073) identifies accommodations requested by, and provided to, class members at parole suitability hearings, such as a Sign Language Interpreter (SLI), assistive hearing devices, simple language, additional time, and magnifying devices to help see and read documents.  Plaintiffs' characterizations of the BPH Form 1073 necessitates clarification.  (*See* Jackson Decl. ¶¶ 33-34.)  The Board uses the BPH Form 1073 to determine the accommodations needed for the class member to participate in, not prepare for, the parole suitability hearing.  The Board utilizes "Source Documents" to track and document accommodations provided to class members during parole proceedings other than

parole suitability hearings, such as attorney-client consultations and comprehensive risk assessment (CRA) interviews.  Source Documents are electronically completed in the Disability and Effective Communication System (DECS), and document the date and type of parole proceeding as well as the accommodations provided to the incarcerated individual to establish effective communication.

5.    Accommodations needed to conduct reading and writing tasks to prepare for parole suitability hearings are not tracked by the Board.  However, the Board tracks vision-impaired class members' needs for alternative formats, such as large print, Braille or audio, in a "special accommodation" log generated based on class members' written requests for visual accommodations, such as advocacy requests from Plaintiffs' counsel.  The Board continuously evaluates its process for necessary adjustments.  For example, currently under consideration is enhancing the BPH Form 1073 to include an attachment that lists all accommodations available to the class member during their parole suitability hearing.

6.    All standard blank template BPH forms and notices are available to class members at each CDCR institution.  For vision-impaired class members, the forms and notices are readily available in large print, Braille, and audio format.  The forms and notices include the Notice and Request for Assistance at Parole Proceedings (BPH Form 1073), Request for Reasonable Accommodations – Grievance Process (BPH Form 1074), Petition to Advance Hearing Date (BPH Form 1045-A), Hearing Rights Form (BPH Form 1003), Notice of Hearing Rights – Initial/ Subsequent/ Rescission Hearings (BPH Form 1002), and Notice of Hearing Rights – Consultation (BPH Form 1002).[1]  The Board's ADA compliance unit completes bi-annual audits to ensure that all of these forms are readily available in accessible formats at each institution.  Because, Defendants are already in compliance, no additional orders are required.  For deaf class members whose primary form of communication is American Sign Language (ASL) and who cannot read English, the SLIs who work at CDCR's institutions are available to interpret these documents from English into ASL upon request.

---

[1] *See* https://www.cdcr.ca.gov/bph/bph-forms/.

3

7.     Personalized documents, such as the CRA and hearing transcripts are made available in accessible formats upon request.  The Board has fulfilled every blind or low-vision class member's request for a CRA or hearing transcript in an alternative format, such as large print or audio format.  All other individualized documents related to class member's preparation for their parole suitability hearing are currently made accessible to vision-impaired class members in alternative formats through the use of auxiliary aids like non-electronic hand-held magnifiers available for in-cell use, and desktop magnifiers and text-to-speech devices available at the prison law libraries.

8.     Upon request, and based on an individualized assessment of a deaf signer's unique disabilities and needed accommodations, CDCR's SLIs are available to interpret documents other than the hearing transcript and CRA from English into ASL.  As for the hearing transcript and CRA, the Board will utilize its contracted SLIs to translate these documents from English into ASL and to videotape the translation.  This accommodation will be based on an individualized assessment of the deaf signer's unique disabilities and individualized needs.

9.     As prescribed by Penal Code section 3042, subdivision (b), a written transcript is the official record of the Board's parole suitability hearings.  All individuals who have a parole suitability hearing receive a copy of the written transcript of their hearing within 30 days of the hearing.  Post-hearing, transcripts are made immediately accessible to vision-impaired class members in alternative formats through the use of auxiliary aids like non-electronic hand-held magnifiers available for in-cell use, and desktop magnifiers and text-to-speech devices available at the prison law libraries.  Additionally, class members can obtain their hearing transcript in their preferred accessible format, such as Braille, large print, or audio format by submitting a request to the Board.

10.     For deaf signers, upon request, and based on an individualized assessment of a deaf signer's unique disabilities and needed accommodations, hearing transcripts can be translated from English into ASL, and the Board will video record the translation.  Importantly, not all deaf signers may need or want their documents, including their hearing transcript, translated into ASL. These class members have different communication needs and reading abilities, therefore, an

4

individualized assessment is essential to ensure each class member is reasonably accommodated and the content of written documents is effectively communicated to them.

### Accommodations for Blind and Low Vision Class Members

11.    The Board is informed that, as of December 6, 2023, DPV class members housed at the Substance Abuse Treatment Facility were provided in-cell private access to a Zoomax Snow 12 electronic assistive device that allows variable magnification up to 19 times and allows the user to convert printed text into audio via text-to-speech function.  As such, all printed materials generated by the Board in connection with those class members' parole suitability hearings are accessible by the vision-impaired class members housed at SATF in both audio and enlarged-font formats within housing units.  CDCR indicates that Zoomax Snow 12 assistive devices will be available to vision-impaired class members at all remaining institutions that house class members whose vision impairment impacts placement (DPV) for in-cell checkout use within the next 90 days.

12.    CDCR indicates that each DPV class member will be individually assessed by the Eye Care Institute vision consultants to identify alternative formats (e.g., large print, Braille or audio) and auxiliary aids needed by these class members to complete reading and writing tasks. The Board has identified 23 DPV class members scheduled for a parole suitability hearing before November 21, 2024, for priority assessment and evaluation.  Information related to the vision-impaired class members' need for alternative formats of printed materials identified during these individualized assessments will be available to the Board staff members through CDCR's Strategic Offender Management System (SOMS) upon completion of class members' assessments by the Eye Care Institute vision consultants.

13.    In the meantime, pending deployment of Zoomax Snow 12 assistive devices at DPV-designated institutions and completion of DPV class members' individualized assessments by the Eye Care Institute, the Board will ensure that all DPV class members scheduled for a parole suitability hearing timely receive all Board-generated documents related to their parole suitability hearing, such as hearing transcripts and CRAs, in either large print, Braille or audio formats, within ten days of class member's written request to the Board for the same.

**DPV Class Members Identified in the Jackson Declaration**

14.    According to Plaintiffs' counsel, seven DPV class members and one DNV class member "encountered barriers to parole preparation." (*See* Jackson Decl. ¶ 34 and Exs. 13 and 14.) As explained below, no class member was denied parole due to a lack of reasonable ADA accommodations.

15.    Plaintiffs' counsel appear to contend that DPV class member 1 (identified in paragraph 62 of the Jackson Declaration in support of Plaintiffs' enforcement motion was denied parole because Defendants failed to provide his prior hearing transcript and his current CRA in audio format before the hearing. (*See* Jackson Decl. ¶¶ 62-68.) It should be noted that the CRA was originally served on DPV class member 1 on September 1, 2021, and the transcript of his prior hearing was originally served on December 5, 2016. However, the request for the documents in audio format were not made until December 2021, more than five years after receiving his prior hearing transcript, and just two months prior to his scheduled parole suitability hearing. Of significance, the September 14, 2022, hearing transcript demonstrates that he was denied parole because the Board found that he posed an unreasonable risk to public safety due to his prior criminal history, ongoing criminality in prison, insufficient progress through program participation, and lack of progress addressing the key components of his offender change—not due to a disability-based barrier or lack of reasonable accommodations, as claimed by Plaintiffs. (*See* DPV class member 1's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit A** at 69-76.) A review of the September 14, 2022, hearing transcript confirms that DPV class member 1 did not raise any objections or concerns relating to his ability to prepare for, or participate in, his parole suitability hearing. (*Id.* at 5-10.) At the time of DPV class member 1's preparation for his parole suitability hearing, he was represented by a panel attorney and had access to an electronic assistive device that converts printed text into audio (text-to-speech) within his prison law library. During the hearing, he stated that he had been participating in numerous self-help programs and presented a release plan. (*Id.* at 30:6-12, 41:1-10.) His BPH Form 1073 indicates that he required help reading documents and he was provided attorney assistance and a magnifying device at his parole suitability hearing as reasonable

6

accommodations for his vision impairment.  (*See* Jackson Decl., Ex. 31.)

16.    Plaintiffs' counsel also appear to contend that DPV class member 2 (identified in paragraphs 69-77 of the Jackson Decl.) was denied parole on September 13, 2023, because Defendants provided his 2016 hearing transcript and his CRA in an audio format only two months before his parole suitability hearing.  (*See* Jackson Decl. ¶¶ 69-77.)  Plaintiffs allege that the Board only mailed DPV class member 2's CRA and prior hearing transcript "six weeks after Plaintiffs' counsel first placed the request on [his] behalf." (*Id*. at ¶ 76.)  Although Plaintiffs submitted the request to receive the hearing transcript and CRA in audio format on May 31, 2023, DPV class member 2's CRA was not finalized and served on him in written format until June 22, 2023.  Thus, the Board provided DPV class member 2 his CRA in audio format just three weeks after it was originally served on him in written format, and a full two months prior to his scheduled parole suitability hearing, in compliance with California Code of Regulations, title 15, section 2240, subdivision (d)(2).  It is also important to note that DPV class member 2 was served his prior hearing transcript in written format on October 11, 2016. Neither DPV class member 2 nor Plaintiffs' counsel requested the hearing transcript in audio format until May 31, 2023, more than six years after the hearing transcript was originally served on DPV class member 2.  DPV class member 2, had access to an electronic assistive device that converts printed text into audio (text-to-speech) within his prison law library at the time of his preparation for his parole suitability hearing.  DPV class member 2 was denied parole because the Board found that his release would pose an unreasonable risk to public safety due to his criminal and parole history, offender self-control related to commitment offenses, lack of insight and self-awareness, failure to accept responsibility, lack of understanding of the impact of commitment offenses, and lack of offender—not due to a disability-based barrier or lack of reasonable accommodations, as claimed by Plaintiffs.  (*See* DPV class member 2's parole suitability hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit B** at 104-111.)  The Commissioner expressly stated that his lack of programming and proposed release plans were assessed a "neutral" rating within the structured decision making framework due to his presumed inability to

7

participate in programs and develop release plans because of his disability, and therefore had no impact on the panel's decision to deny parole. (*Id.* at 106.)

17.    At the hearing he was represented by his appointed counsel, who noted his hurdles related to programing access and asserted, that based on her training, she was required to raise those issues up front, during the ADA section of the hearing. (*Id.* at 7-9.)  His panel attorney further argued that under the ADA, his disability limited his access to programs—which the Commissioner expressly noted in the decision. (*Id.* at 99.)  He discussed a proposed release plan, including various efforts to locate housing, and presented an apology letter. (*Id.* at 78-80.)  Notably, the Board sent him a copy of his September 13, 2023, hearing transcript in an audio format one day after his hearing.

18.    Plaintiffs' counsel appear to contend that DPV class member 3 (identified in paragraphs 78-85 of the Jackson Decl.) was denied parole on September 7, 2023, because Defendants failed to provide the CRA and certain portions of the central file in an audio format or provide writing assistance. (*See* Jackson Decl. ¶¶ 78-85.)  A copy of DPV class member 3's CRA in an audio format was issued just one day following Ms. Jackson's letter informing the Board she needed a copy in audio format, and was delivered to DPV class member 3 within three days of Ms. Jackson's request for the same. (*See* Jackson Decl., Exs. 38 and 39.)  Further, the hearing transcript demonstrates that she was denied parole because the Board found that she posed a current unreasonable risk to public safety due to lack of offender self-control related to commitment offense; statements contrary to the information found in DPV class member 3's record; tendency to deflect blame to others; lack of credibility; lack of remorse for and insight into offending conduct; multiple serious rules violations; and lack of change in mental state. (*See* DPV class member 3's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit C** at 143-150.)  Indeed, the presiding commissioner specifically provided, "[r]egarding release plans, we've rated that as no impact. And the reason we rated it as no impact is we understand that you have, um, some disabilities that will limit your ability to independently reach out and gather Parole Plans. And so the panel is not going to hold that against you." (*Id.* at 149.)

19.    At the time of her preparation for the September 7, 2023, parole suitability hearing, DPV class member 3 was represented by a panel attorney and had access to an electronic assistive device that converts printed text into audio (text-to-speech) within her prison law library.  The panel attorney volunteered to have her support staff read DPV class member 3 her central file documents while audio recording the conversation.  The Board attempted to burn CDs of this audio recording, but several technical difficulties stymied these efforts.  Although Plaintiffs' counsel selectively quotes the panel attorney in her declaration, she failed to include the panel attorney's statement at the hearing, "I want to thank CDCR, [] BPH[,] and the staff attorneys who have helped me get [him] the accommodations that [he] rightfully deserves."  (*Id.* at 139:23-25.)  The panel attorney did not request additional time, when asked by the Commissioner, to review the case materials.  (*Id.* at 32:21-25.)  The Board sent DPV class member 3 a copy of her September 7, 2023, hearing transcript in an audio format just one day after her hearing.

20.    Plaintiffs' counsel appear to contend that DPV class member 4 (identified in paragraphs 86-90 of the Jackson Decl.) was adversely affected by Defendants' failure to timely provide a copy of his December 14, 2021, hearing transcript in an audio format before his May 23, 2023, parole hearing.  (*See* Jackson Decl. ¶¶ 78-90.)  But notably, DPV class member 4 was granted parole on May 23, 2023.  (*See* DPV class member 4's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit D** at 125.)  At the hearing, he presented a "very strong" release plan that included transitional housing, potential employment, and, as the Board noted, "a tremendous amount of support."  (*Id.* at 121.)  The Board recognized that he obtained his GED in 2020 and took advantage of institutional programing, including anger management, Narcotics Anonymous, Alcoholics Anonymous, a Braille transcription course, and other programs to "address the facts that led you here," – as put by the Commissioner.  (*Id.* at 121.)  Plaintiffs' counsel allege that DPV class member 4 never received his December 14, 2021, hearing transcript in Braille.  Although DPV class member 4 originally requested to receive his transcript in Braille, he subsequently changed the request to an accommodation in an alternate format (large print and audio) before the Board initiated the process to convert the documents to Braille.  Indeed, Plaintiffs' counsel acknowledge that DPV class member 4 was provided a large-

9

print version of his December 14, 2021, hearing transcript on March 3, 2022, (more than a year before his next hearing), and acknowledge that the Board attempted to provide an audio version of his hearing transcript on April 6, 2022.  (Jackson Decl. ¶ 90.)  Following technical difficulties playing the audio CD, the Board reissued the hearing transcript in audio format to DPV class member 4 on May 12, 2022.  Between March 3, 2022, and May 12, 2022, DPV class member 4 had access to an electronic assistive device that converts printed text into audio (text-to-speech) within his prison law library and could convert the large-print version of the hearing transcript into an audio format using that device.

21.     Plaintiffs' counsel also appear to contend that DPV class member 5 (identified in paragraphs 91-93 of the Jackson Decl.) was denied parole on December 2, 2022, because Defendants failed to provide him staff assistance in writing his parole plans and reading and writing all the documents he had to submit to the Board.  (*See* Jackson Decl. ¶¶ 91-93.)  But the hearing transcript demonstrates that he was denied parole on December 12, 2022, because the Board found that he posed a current unreasonable danger to society due to a lack of offender change demonstrated by his deflection of responsibility, continued minimization of personal agency from the crime, the predatory nature of the offense, and other factors.  (*See* DPV class member 5's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit E** at 33-39.)  Of significance, the panel rated his parole plans as "neutral," meaning they had no effect on the panel's decision to deny parole.  (*Id.* at 35.)  At the time of his preparation for the December 2, 2022, parole suitability hearing, he was represented by a panel attorney and had access to an electronic assistive device that converts printed text into audio (text-to-speech) within his prison law library.  At his parole suitability hearing, he represented, through his appointed counsel, that he was adequately accommodated for this hearing.  (*See id.* at 8-11.)  At his parole suitability hearing, he stated he had participated in programming to gain personal insight and he presented a release plan, apology letters, and letters of support.  (*Id.* at 18, 21-23, 28-30.)

22.     Plaintiffs' counsel appear to contend that DPV class member 6 (identified in paragraphs 94-95 of the Jackson Decl.) was denied parole on March 30, 2023, because he

10

encountered barriers to parole preparation. (*See* Jackson Decl. ¶¶ 34, 94-95 and Ex. 13.) Specifically, DPV class member 6 alleges his parole denial resulted from a variety of reasons: he did "not feel comfortable" asking correctional staff for help (Jackson Decl., Ex. 52 ¶ 9), he was "limited to primarily participating in mental health groups" due to his inability to do paperwork (*Id.* ¶ 42), and he was unable to complete release planning for his parole hearing (*Id.* ¶¶ 17-38). However, the hearing transcript demonstrates that DPV class member 6 was denied parole based on his significant and extensive history of criminality, degree of self-control at time of crime, criminality associated with substance abuse, lack of programming targeting criminality and substance abuse, institutional discipline, pattern of non-compliance, degree of offender change and responsibility for personal actions, and other factors. (*See* DPV class member 6's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit F** at 47-50.) Despite not having a lot of family support, he was given credit for the support he has garnered. (*Id*. at 50.) During the parole suitability hearing, the panel attorney did not raise any objections concerning the reasonable accommodations provided. (*Id.* at 11:11-16.) His BPH 1073 form requesting assistance at the parole hearing includes eyeglasses, help reading documents, help understanding the procedures and forms, and personal Durable Medical Equipment (DME) – a vision vest. (Jackson Decl. Ex. 13 at 1.) DPV class member 6's planned accommodations included an attorney, a magnifying device, and DME. (*Id.* at 2.) DPV class member 6 received all requested and planned accommodations. (*Id.*.)

23.    Plaintiffs' counsel appear to contend that DNV class member 1 (identified in paragraph 96 of the Jackson Decl.) was not provided sufficient assistance preparing for his parole hearing and claimed that he did not write to his family because his disabilities made it difficult for him to write. (*See* Jackson Decl., Ex. 56 ¶ 7.) But the hearing transcript demonstrates that he was found suitable for parole by the Board and was commended for his self-help programming to address substance abuse issues and the completion of 94 hours of CBI programming. (*See* DNV class member 1's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit G** at 102, 104-105.) Although the hearing panel found his parole plans to

11

be somewhat underdeveloped, the panel rated his parole plans as a mitigating factor when reaching its decision.  (*Id*. at 108-109.)

24.    Plaintiffs identify DPV class member 7 (identified in paragraph 98 of the Jackson Decl.) as an incarcerated individual who has a vision disability code (DPV) because he states he is legally blind and has blurry vision on his right eye.  (*See* Jackson Decl. ¶ 98, Ex. 56, ¶ 4.)  According to his parole hearing transcript, DPV class member 8 was found suitable for parole.  (*See* DPV class member 7's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit H** at 78:10.)  DPV class member 7 did not raise any objections or concerns relating to the assistance received to prepare for his parole suitability hearing.  In fact, his attorney specifically provided, "I have no objection with respect to ADA."  (*Id.* at 19.)  DPV class member 7 completed programing, including anger management and substance-abuse treatment, and offered a letter to the Board from a re-entry program.  (*Id.* at 53-56, 63.)  He nonetheless contends that his Counselor did not offer him any accommodation or assistance with writing letters for support or a parole plan (Jackson Dec. ¶ 98, Ex. 56, ¶ 9), he "would have liked to be able to read [his Comprehensive Risk Assessment] on [his] own," and he did not know he could ask for his CRA in a large print format.  (*Id*. ¶ 11.)  However, DPV class member 7 never filed an ADA grievance with the Board.  In fact, it is undisputed that DPV class member 7 met with his assigned a Correctional Counsel monthly (*Id*. ¶ 4), his Counselor read him the CRA (*Id*. ¶ 10), and that he voluntarily declined the help of a staff assistant at his parole hearing (*Id*. ¶ 18).

25.    Plaintiffs identify DPV class member 8 as an individual with a "severe vision disability."  (*See* Jackson Decl. ¶ 97, Ex. 55 ¶ 3.)  DPV class member 8 does not currently have a parole suitability hearing scheduled.  His initial parole suitability hearing is to take place no later than August 27, 2027.  He had his consultation on September 8, 2022, and a BPH Form 1001 was completed.  DPV class member 8 states that he is unable to read his Form 1001, does not know how he will be able to prepare written documents for his parole hearing in 2027, and has trouble participating in programming.  (*See* DPV class member 8's BPH Form 1001, a true and correct copy of which is attached to this declaration as **Exhibit I**.)  Since DPV class member 8 resides at SATF (Jackson Decl. Ex. 55 at ¶ 2) and, as of December 6, 2023, DPV class members at SATF

12

were provided access to the Zoomax Snow 12 assistive devices, DPV class member 8 can review his BPH Form 1001, and any other printed documents related to his programming or his parole suitability hearing in enlarged font and audio formats by using that device. DPV class member 8 can also use Zoomax Snow 12 to complete handwriting tasks related to his programming and preparation for parole suitability hearing. If DPV class member 8 is unable to complete handwriting tasks with the assistance of Zoomax Snow 12, he can obtain writing assistance from a prison law librarian.

**Accommodations for Deaf Signers**

26.    The Board provides accurate and effective sign language interpretation services to facilitate equal access and effective communication for deaf signers in parole suitability hearings. The Board's current standards and qualification requirements for SLI contributes to this objective.

27.    The Board has furthered its objective by producing an information and acronym sheet, which is provided to all contracted SLIs upon initial assignment. (*See* Board of Parole Hearings Information and Acronym Sheet for Sign Language Interpreters, last rev. 08/23, a true and correct copy of which is attached to this declaration as **Exhibit J**.) This supplement provides retained SLIs with general information about different types of parole proceedings and explanations of commonly used specialized vocabulary and acronyms. SLIs are notified within the supplement that they may request to meet with the incarcerated individual or consult the institutional SLI prior to any parole proceeding and provides directions for how to do so.

28.    Additionally, the Board provides deaf intermediary interpreters for deaf class members who are not fluent in ASL. The Board utilizes an individualized process whereby the Board's ADA Compliance Unit contacts the class member's correctional counselor and the ADA coordinator at the class member's institution to determine whether a Certified Deaf Interpreter (CDI) is needed whenever a SLI is requested for any parole proceeding. If a CDI is requested or deemed necessary, the Board creates a special Source Document in DECS noting the need for a CDI. A true and correct copy of a sample Source Document is attached as **Exhibit K**. In addition, the Board documents the need for the special accommodation in its special accommodation log.

13

29.    The Board does not videotape parole suitability hearings.  The Judicial Council has not recommended videotaping of proceedings where interpreter services are used.  Moreover, the California Legislature has contemplated the use of interpreters at suitability hearings and declined to extend an obligation to video record the hearings.  There is no directive for state entities such as the Board to video record hearings.  Nor is there a recommendation in the Court Interpreters Act (28 U.S.C § 1827) to video record hearings despite the courts receiving discretionary permission to audio record proceedings.

30.    As noted above, upon request and based on an individualized assessment of a deaf signer's unique disabilities and needed accommodations, hearing transcripts and CRAs can be translated into ASL as an equally effective accommodation.  These translations are videotaped to provide the deaf signer the opportunity to repeatedly review these documents for parole preparation and appeal.  Any concerns about the quality of sign language interpretation at a parole suitability hearing can be raised through the Board's grievance process, by submitting a BPH Form 1074 or through a request for decision review, by the class member or their panel attorney.

**DPH Class Members Identified in the Jackson Declaration**

31.    According to Plaintiffs' counsel, six deaf signer class members encountered "disability-based barriers . . . as they attempted to prepare for or participate in parole suitability hearings." (*See* Jackson Decl. ¶ 61.)  However, as explained in detail below, no class member was denied parole due to a "disability-based barrier" or lack of reasonable ADA accommodations.

32.    Plaintiffs' counsel appear to contend that DPH class member 1, (identified in paragraph 99 of the Jackson Declaration), was denied parole because the class member did not receive effective communication during his September 15, 2022, parole suitability hearing.  (*See* Jackson Decl. ¶¶ 99-107.)  DPH class member 1's primary means of communication is ASL. (*Id.*)  DPH class member 1 scored a 4.0 on the Test of Adult Basic Education (TABE), equivalent to a fourth grade reading level.  (*Id.*)  At his hearing, he was represented by a panel attorney and provided with the assistance of two SLIs.  (*See* DPH class member 1's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit L** at 5.)  DPH class member

14

1's BPH Form 1073, a true and correct copy of which is attached to this declaration as **Exhibit M**, indicates that he did not request a CDI to assist at his suitability hearing as a reasonable accommodation for his hearing impairment. (*Id*.) While the interpreters appeared remotely at the in-person hearing, (*see* Jackson Decl. ¶ 102), remote appearances are expressly permitted pursuant to section 2057(a)(4) of title 15 of the California Code of Regulations. Moreover, the transcript demonstrates that any issues arising out of the interpreters' remote appearance was a result of technical difficulties—not the quality of the interpretation. Moreover, at his parole suitability hearing, DPH class member 1 represented, through his appointed counsel, that his ADA concerns had been adequately met such that the hearing could proceed. (*See* Ex. K at 15.) DPH class member 1 was denied parole because of his prior criminal history, self-control at the time of the crime, insufficient self-help efforts, lack of insight into the causative factors of his criminality, and minimization of his criminality—not due to a disability-based barrier or lack of reasonable accommodations, as claimed by Plaintiffs. (*Id.* at 105-09.) As acknowledged by Plaintiffs' counsel, the Board has made progress with respect to improving the quality of interpretation provided to deaf signers during the hearings. For example, the Board's 2023 SLI Contract includes provisions for providing Certified Deaf Interpreters (CDIs), for providing in-person services, and for providing two interpreters or two teams of interpreters for hearings. In addition, the aforementioned Information and Acronym supplement provides contracted SLIs explanations of specialized vocabulary and acronyms commonly used by the board during parole proceedings.

33. Plaintiffs' counsel appear to contend that DPH class member 2 (identified in paragraph 108 of the Jackson Declaration) was denied parole because the class member did not receive effective communication during his parole suitability hearing. (*See* Jackson Decl. ¶¶ 108-111.) DPH class member 2's primary means of communication is sign language. (*Id.* ¶ 108.) DPH class member 2 scored 5.0 on the TABE, equivalent to a fifth-grade reading level. (*Id*.) At his hearing, he was represented by a panel attorney and he was provided a SLI during the hearing. (*See* DPH class member 2's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit N** at 6.) DPH class member 2's BPH Form 1073, a true and correct copy

15

of which is attached to this declaration as **Exhibit O**, indicates that he did not request a CDI to assist at his suitability hearing as a reasonable accommodation for his hearing impairment. (*See id.*) Moreover, at his parole suitability hearing, DPH class member 2 represented that his was being adequately accommodated such that the hearing could proceed. (*See* Ex. M at 6-7.) DPH class member 2 was denied parole because of his insufficient self-help efforts, insufficient internalization of his programming, and lack of insight into the causative factors of his criminality—not due to a disability-based barrier or lack of reasonable accommodations. (*Id*. at 112-15.) Meanwhile, DPH class member 2 has since been paroled.

34. Plaintiffs' counsel appear to contend that DPH class member 3 (identified in paragraph 112 of the Jackson Declaration) was denied parole because the class member did not receive effective accommodations when preparing for his parole suitability hearing. (*See generally* Jackson Decl., Ex. 63.) DPH class member 3's primary means of communication is ASL. (*Id.* ¶ 4.) DPH class member 3 scored a 9.0 on the TABE, equivalent to a ninth-grade reading level. (*Id.* ¶ 5.) At his December 18, 2020, parole suitability hearing, he was represented by a panel attorney and he was provided a SLI and a CDI during the hearing. (*See* DPH class member 3's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit P** at 6.) DPH class member 3 represented, through his appointed counsel, at his parole hearing that his ADA concerns had been adequately met such that the hearing could proceed. (*Id***.** at 20.) DPH class member 3 was denied parole because of recent discipline, including a Rules Violation Report, blame-shifting, lack of candor, lack of insight the causative factors of his criminality, and minimization of his criminal actions—not due to a disability-based barrier or lack of reasonable accommodations, as he appears to contend. (*Id*. at 157-65.) In fact, DPH class member 3 has never submitted an ADA grievance nor raised any challenges to his most recent parole hearing prior to this litigation.

35. Plaintiffs' counsel appear to contend that DPH class member 4 (identified in paragraph 114 of the Jackson Declaration) did not receive effective accommodations when preparing for his parole suitability hearing. (*See generally* Jackson Decl., Ex. 65.) DPH class member 4's primary means of communication is sign language. (*Id*. ¶ 4.) DPH class member 4

16

scored a 2.0 on the CASAS (Comprehensive Adult Student Assessment Systems), equivalent to a second-grade reading level. (*Id.* ¶ 5.) At his February 9, 2023, parole suitability hearing, he was represented by a panel attorney and he was provided a SLI and a CDI. DPH class member 4 has never submitted an ADA grievance and did not raise any objections or concerns during his hearing regarding his ability to prepare for the hearing. (*Id*. ¶ 6.) In fact, DPH class member 4's counsel provided during the hearing, "I think his hearing issues have been well accommodated...." (*Id*. ¶ 11.) DPH class member 4 was granted parole. (*Id*.)

36.    Plaintiffs' counsel appear to contend that DPH class member 5 (identified in paragraph 115 of the Jackson Declaration) was denied parole because he did not receive effective accommodations when preparing for his parole suitability hearing. (*See* Jackson Decl., Ex. 66.) DPH class member 5's primary means of communication is ASL. (*Id*. ¶ 4.) DPH class member 5 scored a 4.0 on the TABE, equivalent to a fourth-grade reading level. (*Id.* at ¶ 4.) Nonetheless, he has earned a GED and was taking college level courses at the time of his hearing. (*Id.* ¶ 10.) At his June 28, 2022 parole suitability hearing, he was represented by a panel attorney and he was provided a SLI and a CDI during the hearing. (*See* DPH class member 5's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit Q** at 5.) At his parole suitability hearing, DPH class member 5 represented, through his appointed counsel, that his ADA concerns had been adequately met such that the hearing could proceed. (*Id***.** at 11.) DPH class member 5 reported that he could understand the CDI, and confirmed that he would ask his attorney if there was anything that he could not understand. (*Id***.** at 8.) DPH class member 5 was denied parole because of a risk of future criminal behavior, lack of self-awareness, insufficient programming, lack of insight into the causative factors of his criminality, and lack of self-help to prevent reoffending—not due to a disability-based barrier or lack of reasonable accommodations, as he appears to contend. (*Id*. at 60-65.) DPH class member 5 has never submitted an ADA grievance and did not raise any objections or concerns during his hearing regarding his ability to prepare for the hearing. (Jackson Decl., Ex. 66 ¶ 7-11.) Meanwhile, on July 25, 2023, the administrative review to advance DPH class member 5's next parole suitability hearing was approved, and his next hearing is currently scheduled for February 27, 2024.

17

37. Plaintiffs' counsel appear to contend that DPH class member 6 (identified in paragraph 116 of the Jackson Declaration) was denied parole because he did not receive effective accommodations when preparing for and participating in his parole suitability hearing. (*See generally* Jackson Decl., Ex. 67.) DPH class member 6's primary means of communication is ASL. (*See id*. ¶ 2.) DPH class member 6 scored a 2.0 on the TABE, equivalent to a second-grade reading level. (*Id*. at ¶ 4.) At his parole suitability hearing, he was represented by a panel attorney, and he was provided a SLI, CDI, and a staff assistant. (*See* DPH class member 6's hearing transcript, a true and correct copy of which is attached to this declaration as **Exhibit R** at 4.) At his parole suitability hearing, DPH class member 6 represented, through his appointed counsel, that his ADA concerns had been adequately met such that the hearing could proceed. (*Id*. at 17.) The presiding commissioner informed DPH class member 6: "If at any point you don't understand something, please stop us and you can ask your assistant or your Attorney to interrupt so we can clarify things for you." (*Id*. at 14.) DPH class member 6 was denied parole because of his high risk rating of future violence, lack of self-control, insufficient programming, poor institutional behavior, and lack of insight into the causative factors of his criminality—not due to a disability-based barrier or lack of reasonable accommodations, as he appears to contend. (*See Id*. at 82-90.) DPH class member 6 has never submitted an ADA grievance and did not raise any objections or concerns during his hearing regarding his ability to prepare for the hearing. (*Id*. ¶ 13-17.) DPH class member submitted a Petition to Advance Hearing Date on April 5, 2022. The Board approved his petition on April 27, 2022, and reduced his denial length from five to three years.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on _____December 9, 2023_____, 2023, at Sacramento, California.

DocuSigned by:

*Daniel Moeller*

B9D7AA230362413...

DANIEL MOELLER
Associate Chief Deputy Commissioner
Board of Parole Hearings

18

ROB BONTA
Attorney General of California
SHARON A. GARSKE
Supervising Deputy Attorney General
SEAN LODHOLZ
OLENA LIKHACHOVA
GURPREET SANDHU
TRACE O. MAIORINO
ANNE KAMMER
Deputy Attorney General
State Bar No. 243113
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  Telephone:  (619) 321-5781
  Fax:  (619) 645-2581
  E-mail:  Anne.Kammer@doj.ca.gov
*Attorneys for Defendants*
*Gavin Newsom, Board of Parole Hearing,*
*and CDCR*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **JOHN ARMSTRONG, et al.,** | 4:94-cv-02307-CW |
| Plaintiffs, | **EXHIBITS TO DECLARATION OF DANIEL MOELLER** |
| **v.** | |
| **GAVIN NEWSOM, et al.,** | |
| Defendants. | |

**EXHIBITS**

| Ex. No.: | Description: | Filed Under Seal/Redacted: |
|---|---|---|
| **A.** | DPV class member 1's hearing transcript. | Filed under seal. |
| **B.** | DPV class member 2's hearing transcript. | Filed under seal. |
| **C.** | DPV class member 3's hearing transcript. | Filed under seal. |

1

| D. | DPV class member 4's hearing transcript. | Filed under seal. |
|---|---|---|
| E. | DPV class member 5's hearing transcript. | Filed under seal. |
| F. | DPV class member 6's hearing transcript. | Filed under seal. |
| G. | DNV class member 1's hearing transcript. | Filed under seal. |
| H. | DPV class member 7's hearing transcript. | Filed under seal. |
| I. | DPV class member 8's BPH Form 1001. | Class member identifying information redacted. |
| J. | Board of Parole Hearings Information and Acronym Sheet for Sign Language Interpreters. | -- |
| K. | Sample Source Document | Class member identifying information redacted. |
| L. | DPH class member 1's hearing transcript. | Filed under seal. |
| M. | DPH class member 1's BPH Form 1073. | Class member identifying information redacted. |
| N. | DPH class member 2's hearing transcript. | Filed under seal. |
| O. | DPH class member 2's BPH Form 1073. | Class member identifying information redacted. |
| P. | DPH class member 3's hearing transcript. | Filed under seal. |
| Q. | DPH class member 5's hearing transcript. | Filed under seal. |
| R. | DPH class member 6's hearing transcript. | Filed under seal. |

CF1997CS0005
37725269.docx

2

Exhibits to Declaration of Daniel Moeller (4:94-cv-02307-CW)

# EXHIBIT A

# EXHIBIT FILED UNDER SEAL

# EXHIBIT B

# EXHIBIT FILED UNDER SEAL

# EXHIBIT C

# EXHIBIT FILED UNDER SEAL

# EXHIBIT D

# EXHIBIT FILED UNDER SEAL

# EXHIBIT E

**EXHIBIT FILED UNDER SEAL**

# EXHIBIT F

# EXHIBIT FILED UNDER SEAL

# EXHIBIT G

**EXHIBIT FILED UNDER SEAL**

# EXHIBIT H

# EXHIBIT FILED UNDER SEAL

# EXHIBIT I

| DECISION / ORDER |
|---|

[X] Consultation Conducted

   [X] Inmate Present

   [ ] Inmate Not Present

[ ] Consultation Postponed

Reason(s):

| FINDINGS / RECOMMENDATIONS |
|---|

**Vocational Training**

Findings:

None due to vision impairment. He worked in lithographics, but he won't be able to perform that job due to vision impairment.

Recommendations:

If able, try to complete one or more vocations. Where on-site vocation programs are not readily available, you should work with your correctional counselor to find one. In the meantime, you should obtain books from the library on vocations, read them, and prepare book reports to present to the panel. Book reports should show what you have read, what you learned, and how you can apply that knowledge in the community if given a parole date.

**Work Assignments**

Findings:

██████████████████████████████████

Recommendations:

If able, obtain jobs because they show productive use of time and will enhance your ability to obtain employment in the community and succeed on parole. Try to obtain work that will give you marketable skills, which you can use in the community, for example, janitorial or kitchen work. Also, working allows you to earn positive reports and can show that you get along with co-workers.

**Rehabilitation Programs**

Findings:

NA, AA, AVP, Denial Management, Anger Management, and SAP

Recommendations:

Participate in courses that address needs specific to you, for example, criminal thinking, anger management, domestic violence, and substance abuse treatment. You should be able to provide the panel with specifics as to what you learned in the groups and what tools they have provided you. Where programming is limited or non-existent, obtain books from the library or family relating to self-help and provide book reports or do correspondence courses.

**Education**

Findings:

Reports participating in some education.

Recommendations:

If able, try to further your personal education. It demonstrates positive use of time while in custody and can assist in increasing your chances of finding employment. You can further your education by attending class, by mail, or self-study (book reports).

---

**Institutional Behavior**

Findings:

████████████████████████████████████████████████████

Recommendations:

Do not get RVRs from now on. As to the prior RVRs, be prepared to discuss in detail the circumstances surrounding all of them. Obeying the rules while in the institution shows you are likely to follow the rules and laws in the community.

**Parole Plan**

Findings:

He is working on parole plans.

Recommendations:

Develop realistic plans for parole (housing, work, professional services). Support plans with documentation (recent letters) including letters from family members or transitional homes offering a place of residence upon release. You can provide letters of support from anyone who will provide general support, housing, and employment. Also, think about the challenges you might face while on parole, and make plans to meet those challenges.

**Other**

Findings:

Recommendations:

Participate in self-help/programming regarding victim awareness.

## INSTRUCTIONS (FOR CDCR USE ONLY)

**Case Records - Documents Still Required**

☐ Police Report ☐ Probation Report ☐ Abstract of Judgment/Minute Order ☐ Sentencing Transcript

☐ Appellate Decision ☒ Current Rap Sheet ☐ Other

**BPH Instructions**

☐ Investigations ☐ IPB ☐ Other

☐ Legal ☐ YOPH ☐ Other

## HEARING PANEL

████████████ - Deputy Commissioner          ████████████    Date: ████████

## HEARING PROCESS / LEGAL FACTORS

The Board of Parole Hearings conducts parole suitability hearings to determine whether inmates are suitable for parole -- meaning they do not pose a current, unreasonable risk of danger to the public.

Hearings are conducted by a Commissioner and a Deputy Commissioner. Inmates are entitled to legal counsel at their hearings. The District Attorney from the prosecuting county and victims of the crime may attend the hearing.

The panel considers all relevant and reliable information to determine if the inmate is suitable for release. California Code of Regulations, title 15, sections 2281 and 2402 provide factors the panel may consider in determining suitability. Factors tending to show suitability:

- No juvenile record;
- Stable social history;
- Signs of remorse;
- Crime committed as the result of significant stress in the inmate's life;
- At the time of the crime the inmate suffered from Intimate Partner Battery;
- No prior criminal history;
- The prisoner's present age reduces the probability of recidivism;
- The prisoner has made realistic plans for release or marketable skills that can be used upon release; and
- Institutional activities indicate an enhanced ability to function within the law.

Factors tending to show unsuitability:
- Circumstances of the commitment offense;
- Previous record of violence;
- Unstable social history;
- Sadistic sexual offenses;
- Psychological factors (lengthy history of severe mental problems related to the offense); and
- Institutional behavior (serious misconduct in prison or jail).

The panel does not determine the inmate's guilt or innocence of the crime. The panel accepts as established the guilty verdict imposed by the court.

At a life term inmate's initial parole suitability hearing, the panel shall calculate the base term and the adjusted base term. For any life term inmate who has already had his or her initial parole suitability hearing without a calculation of the base term and adjusted base term, the hearing panel shall calculate these terms at the inmate's next parole suitability hearing.

If an inmate is found unsuitable for parole, statutory law requires that the next hearing be set 3, 5, 7, 10, or 15 years in the future. An inmate who is denied parole may request that his or her hearing be moved to an earlier date, based on a change of circumstances or new reasonable likelihood that public safety does not require that the inmate serve the additional period of incarceration imposed. The Board may also advance information that establishes a hearing pursuant to its administrative review process. Penal Code section 3041.5.

Following the panel's decision, the Board conducts decision review for no more than 120 days. Following decision review, the Governor has statutory authority under Penal Code sections 3041.1 and 3041.2 to review all parole suitability decisions and affirm, modify, reverse, or refer to the full Board for reconsideration depending on the circumstances.

# EXHIBIT J

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                     GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**

P.O. Box 4036
Sacramento, CA 95812-4036



### Board of Parole Hearings Information and Acronym Sheet
### For Sign Language Interpreters

You have been retained to assist with an upcoming proceeding before the Board of Parole Hearings (Board). This sheet is intended as a resource to provide you with information about the parole process, including words, acronyms, or terms you may encounter, to assist you in interpreting the upcoming parole proceeding. "Parole proceedings" may include Consultations, Attorney – Client Meetings, Comprehensive Risk Assessment (CRA) Interviews, and Hearings.

### Consultations

Consultations are meetings between an incarcerated person and a Board hearing officer approximately five years before the person is eligible to begin receiving parole hearings. The hearing officer provides the person with information about the parole hearing process and recommendations relating to work assignments, behavior, and programs.

### Attorney-Client Meetings

Attorney-Client meetings are conversations between a person and their state-appointed attorney representing them for their upcoming parole hearing. In these meetings, the attorney will generally ask their client about information in their record, gather evidence to support their arguments for why their client should be found suitable for parole, and may advise their client about other available options.

### Comprehensive Risk Assessment Interviews

Comprehensive Risk Assessment or "CRA" interviews are meetings between a person and a Board psychologist, during which the psychologist gathers information to assess the person's risk of committing future violence. The psychologist will generally ask questions about the person's social and criminal history, the person's positive and negative institutional conduct, the person's programming, education, or work, and the person's plans or options for a successful transition back into the community. The CRA interview results in a written report that is normally reviewed by the hearing panel and may be discussed during the hearing.

### Hearings

Board hearings are primarily parole consideration hearings, but may include parole reconsideration hearings, rescission hearings, or offender with mental health disorder hearings.

### Parole Consideration Hearings

A parole consideration hearing, also known as a "suitability hearing," is a hearing the Board conducts to determine if a person should be released from prison. Hearings are generally conducted by videoconference; however, if effective communication requires it, hearings may be conducted in-person at the prison where the person is located. In-person hearings are conducted in a safe environment, typically located in an administrative room that is inaccessible to the general prison population.

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes. (REV. 08/23)

BPH Information and Acronym Sheet
Sign Language Interpreters

Persons Present: Hearings are generally conducted by a two-person hearing panel comprised of a commissioner and a deputy commissioner. A correctional officer will be present inside the hearing room for security purposes. The person's attorney, and a representative from the District Attorney's office, may be present either in-person or by video. The following parties may be present at some parole hearings in person or by video: the direct victim(s) or members of a victim's family; a staff assistant or interpreter to aid with effective communication; media or other observers (these persons do not participate).

Additionally, for all hearings where sign language is needed, the Board may schedule multiple interpreters of each kind to provide the opportunity to switch and take breaks. Thus, for a hearing that requires only an American Sign Language (ASL) interpreter, two or more ASL interpreters may be assigned for that hearing.

Requesting a Meeting with Incarcerated Person Prior to a Hearing: Interpreters may request a meeting with the incarcerated person via videoconference prior to the hearing to assist the interpreter with determining how best to communicate with the person. Interpreters may submit the request to the Board's ADA Compliance Unit via email at BPH.ADAUnit@cdcr.ca.gov.

Interpreters are required to be available thirty (30) minutes prior to the start time of the proceeding. During this time, the interpreter may consult with the incarcerated person and their attorney to determine the most effective way to communicate. Interpreters may also request a brief conversation with members of the hearing panel to discuss hearing logistics, such as which interpreter will interpret first (if more than one interpreter is assigned), how to signal the panel when a break is needed, or how to signal the panel if the interpreter has concerns about whether effective communication is being achieved.

Consulting Institutional Sign Language Interpreter Prior to a Hearing: Interpreters may consult the staff sign language interpreter at the institution prior to the hearing via phone or email to learn more about the incarcerated person's known interpretive needs or any sign language vocabulary unique to the incarcerated person or the institution. (*see attached* Sign Language Interpreter Contact List.)

Procedures of a Parole Consideration Hearing: A parole consideration hearing will generally begin with each party stating and spelling their name for the record, including any interpreters. Next, the panel will conduct an Americans with Disability Act review to identify specific disability-related needs or accommodations an incarcerated person may require for the hearing.

During the hearing, the panel may discuss with the person their social history, substance abuse history, and past criminal activity that led to their commitment offense. The panel may also discuss the person's positive and negative institutional behavior, programming, and release planning.

The state-appointed attorney and prosecutor may ask clarifying questions, and may each provide a closing statement. The person may provide closing remarks, followed by the victims, if any, who have the right to speak last before the panel renders their decision. The panel will then recess to deliberate on their decision.

Once the hearing reconvenes, the panel states the decision on the record, and concludes the hearing. During this time, no others may speak. Following the hearing, the incarcerated person may speak with their attorney to discuss the hearing result, which may also require interpretation.

**Please Note: if the interpreter needs clarification of any term at any time during the hearing, the interpreter is encouraged to interrupt the hearing and request clarification from the hearing panel.**

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

BPH Information and Acronym Sheet
Sign Language Interpreters

**Other Hearings:**

Parole Reconsideration Hearing: These hearings are similar to a parole suitability hearing, but are for a person who was previously granted parole, but was returned to prison, and is now required to demonstrate suitability for parole again to be released.

Rescission Hearing: These hearings are held in circumstances where a person was granted parole, but prior to release, the grant decision was referred back for review, which may result in the parole grant being rescinded.

Offender with a Mental Health Disorder Hearing: Also known as "OMHD" hearings, these hearings determine whether a paroling person meets the statutory criteria to be placed and treated in a psychiatric facility for a mental health disorder that contributed to the commission of their crime(s).

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

BPH Information and Acronym Sheet
Sign Language Interpreters

## **Common Terms Explained**

During proceedings, some common terms may be used to assess the person's understanding of their crimes and conduct in prison:

"**Master Packet**" and "**10-Day Packet**" are packets of information that are sent to the hearing panel, district attorney, and panel-attorney. These packets contain documents relevant to the hearing.

"**Institution**" refers to the prison facility.

"**Risk factors**" refers to circumstances present in the person's life that motivated them to commit their crimes in the community or violations in prison. External circumstances may include rejection, loss of a relationship, or infidelity of a partner; loss of funds or source of income; neglect or abuse during childhood; or growing up with criminal-minded peers or family members. Internal struggles may include feelings of rejection, jealousy, anger, feeling disrespected, or betrayed; susceptibility to peer pressure and negative influence of criminal peers; learned hatred of a group of persons; victimization in childhood; or inability to overcome an addiction.

"**Character defects**" is another term interpreters may hear in reference to negative aspects of the person's character at the time of their crime(s) that allowed them to violate social rules and commit criminal conduct to harm others. These are often the person's inability or lack of skills at that time to cope with one or multiple external circumstances or internal struggles listed above in "risk factors."

"**Causative Factors**" refers to the factors that were responsible for causing something. Generally, the panel will explore a person's causative factors of their commitment offense or criminal history.

"**Triggers**" refers to a stimulus that elicits a reaction. Panels may explore a person's triggers that have led to negative outcomes in the past or triggers that may lead to negative outcomes in the future.

"**Offender change**" refers to a person's demonstration of change since the commission of their crime.

"**Institutional behavior**" refers to the incarcerated person's disciplinary record while in prison.

"**Life crime**" or "**Commitment offense**" refers to the crime that led to the person's current incarceration term.

"**RVR**," "**115**," or "**Counseling Only RVR**" refers to a report of misconduct in prison. Serious prison misconduct generally results in a Rules Violation Report (RVR) or "115." Less serious misconduct may be noted on a "Counseling Only Rules Violation Report."

"**Programming**" refers to courses the person has completed or is currently completing, or groups the person currently or previously participated in, where the person learns skills and techniques to decrease or overcome risk factors. Some institutional programs are commonly listed as acronyms. Examples include GOGI: (Getting Out by Going In) and CGA: (Criminals and Gangmembers Anonymous). If it is unclear what a program acronym means, please interrupt the panel for clarification.

"**Youth offender**" refers to offenders that committed their controlling offense prior to the age of 26. In considering a youth offender's suitability for parole, the hearing panel will give great weight to youth factors, as defined by law.

"**Elderly parole**" refers to elderly offenders that have reached a certain age and have served a certain amount

---

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

BPH Information and Acronym Sheet
Sign Language Interpreters

of time in prison. In determining an elderly offender's suitability for parole, the hearing panel considers their age, time served, and diminished physical condition, if any.

"**Suitable for parole**" or "**suitability**" refers to when a person is deemed to no longer pose a current unreasonable risk of danger to the community if released, and who will be granted parole.

"**Unsuitable for parole**" or "**unsuitability**" refers to when a person is deemed to still pose a current, unreasonable risk of danger to the community if released, and who will be denied parole.

"**Stipulation of unsuitability**" refers to a person's request to agree to a denial of parole for a set period.

"**Postponement**" refers to a person's request to postpone their current scheduled hearing for a period of time less than one year, generally due to unexpected circumstances.

"**Waiver**" refers to a person's request to waive their rights to their current scheduled hearing for a specified number of years. When waiving a hearing, the person must understand they are waiving all hearing rights.

"**Continuation**" refers to situations where a hearing has been partially conducted, but due to unexpected circumstances (such as the sudden illness of a hearing participant) or new information that requires investigation, the hearing must be paused and concluded at a later date.

"**Keyhea**" order or "2602 order" refers to the process for getting an order to administer involuntary psychotropic medication in the prison system (previously known as "Keyhea" orders, pronounced keh-HEE-ya).

"**De-brief**" refers to the formal process through which a previously validated "security threat group" or "gang" member may officially renounce their membership from the gang and be re-validated as a non-member of that gang.

"**Step-down**" refers to the process through which a previously validated "security threat group" or "gang" associate may formally dissociate from the group or gang through demonstrating an absence of gang-related activity.

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

BPH Information and Acronym Sheet
Sign Language Interpreters

## Common Acronyms Explained

During the proceeding, interpreters may encounter some or many of the following acronyms. These are often best communicated through spelling out the acronym:

**CDCR**: The California Department of Corrections and Rehabilitation.

**BPH** or **Board**: The Board of Parole Hearings.

**ADA**: Americans with Disabilities Act

**DDP**: Developmental Disability Program. This program identifies incarcerated people with developmental disabilities and the adaptive supports they require. Levels within this program include the following:

- DD1: lowest level of intervention and adaptive supports required.
- DD2: mid-level of intervention and adaptive supports required.
- DD3: highest level of intervention and adaptive supports required.

**MHSDS**: Mental Health Services Delivery System. This system identifies people who are diagnosed with mental illnesses and provides therapeutic support they require. Levels within this program include the following:

- CCCMS: Correctional Clinical Case Management System (may also be pronounced "triple CMS," "triple C,"). This is the lowest level of outpatient mental health treatment.
- EOP: Enhanced Outpatient Program. This is the highest level of outpatient mental health treatment.
- MHCB: Mental Health Crisis Bed. This refers to intensive short-term inpatient mental health treatment to assess whether a person can be stabilized or requires longer-term inpatient admission.
- ICF: Intermediate Care Facility. This refers to intensive and often longer-term inpatient mental health treatment for people.
- ACUTE: This refers to intensive inpatient mental health treatment for people.

**TABE**: Test of Adult Basic Education. The TABE reading score corresponds with an individual's reading grade level. For instance, a 6.0 score means the person reads at a sixth-grade level.

**CASAS**: Comprehensive Adult Student Assessment Systems.

**TDD**: Telecommunications Device for the Deaf.

**DSL**: Determinate Sentence Law (may be pronounced "DEE-sel"). This refers to inmates whose sentences have a set length of incarceration that may be decreased through credits or eligibility for earlier parole consideration by the Board.

**ISL**: Indeterminate Sentence Law (may be pronounced "EYE-sel"). This refers to inmates whose sentences do not have a defined length and they may only obtain parole through parole consideration by the Board.

**FAD**: Forensic Assessment Division. This is the division of psychologists at the Board who conduct the comprehensive risk assessments.

**IPB** or **BWS**: Intimate Partner Battery (previously known as "Battered Woman Syndrome"). This refers to violence within a domestic relationship.

**MEPD**: Minimum Eligible Parole Date. This refers to the earliest date on which a person sentenced to a life sentence with the possibility of parole is eligible for parole consideration.

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

BPH Information and Acronym Sheet
Sign Language Interpreters

**YPED**: Youth Parole Eligible Date. This refers to the earliest date on which a person who qualifies as a youth offender is eligible for parole consideration.

**EPED**: Elderly Parole Eligible Date. This refers to the earliest date on which a person who qualifies as an elderly offender is eligible for parole consideration.

**NPED**: Nonviolent Parole Eligible Date. This refers to the earliest date on which a person who qualifies as a nonviolent offender is eligible for parole consideration.

**EPRD**: Earliest Possible Release Date. This refers to the earliest date on which a person sentenced to a determinate sentence is eligible for release.

**GP or "Gen Pop":** General Population. This refers to the general population of incarcerated persons who have not been segregated into special housing for disciplinary or protective measures.

**SNY**: Sensitive Needs Yard. This refers to a designation for incarcerated people who have safety concerns regarding living on a GP yard.

**NDPF**: Non-Designated Programming Facilities. This refers to a designation that houses incarcerated people together regardless of their GP or SNY status to afford incarcerated people greater access to rehabilitative programs.

**ASU** or **AD-SEG**: Administrative Segregation Unit (may be pronounced "ADD-seg"). This refers to a temporary separation within an institution from the general population.

**SHU**: Security Housing Unit (may be pronounced "shoe"). This refers to separation within an institution from the general population for a specified period of time.

**PHU**: Protective Housing Unit. This refers to separation within an institution from the general population for safety reasons.

**PSU**: Psychiatric Services Unit. This refers to an outpatient mental health housing unit for people who require a higher custody level.

**PIP**: Psychiatric Inpatient Program. This refers to inpatient mental health housing units.

**ISU**: Investigative Services Unit. This refers to the unit of CDCR officers who investigate for the prisons..

**LTOP**: Long Term Offender Program (may be pronounced as individual letters or more commonly as "EL-topp"). This refers to a program during parole containing multiple courses to address a person's identified risk factors.

**STG**: Security Threat Group. This refers to prison gangs or community street gangs.

**TCMP**: Transitional Case Management Program is an institutional program that assists people with the transition to parole in the community.

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

BPH Information and Acronym Sheet
Sign Language Interpreters

## Institution Acronyms

During the proceeding, interpreters may encounter one or some of the following acronyms for the different CDCR-managed institutions or DSH-managed hospitals where the person may be housed. These are often best communicated through spelling out the acronym, then providing the name of the institution if the person does not appear to understand the acronym:

| | |
|---|---|
| **ASH**: Atascadero State Hospital | **ISP**: Ironwood State Prison |
| **ASP**: Avenal State Prison | **KVSP**: Kern Valley State Prison |
| **CAL**: Calipatria State Prison | **LAC**: California State Prison – Los Angeles County |
| **CCI**: California Correctional Institution | **MCSP**: Mule Creek State Prison |
| **CCWF**: Central California Women's Facility | **NKSP**: North Kern State Prison |
| **CEN**: Centinela State Prison | **PBSP**: Pelican Bay State Prison |
| **CHCF**: California Health Care Facility | **PSH**: Patton State Hospital |
| **CIM**: California Institution for Men | **PVSP**: Pleasant Valley State Prison |
| **CIW**: California Institution for Women | **RJD**: Richard J. Donovan Correctional Facility |
| **CMC**: California Men's Colony | **SAC**: California State Prison - Sacramento |
| **CMF**: California Medical Facility | **SATF**: Substance Abuse Treatment Facility |
| **COR**: California State Prison - Corcoran | **SCC**: Sierra Conservation Center |
| **CRC**: California Rehabilitation Center | **SOL**: California State Prison - Solano |
| **CTF**: Correctional Training Facility | **SQ** or **SQSP**: San Quentin State Prison |
| **CVSP**: Chuckawalla Valley State Prison | **SVSP**: Salinas Valley State Prison |
| **FSP**: Folsom State Prison | **VSP**: Valley State Prison |
| **HDSP**: High Desert State Prison | **WSP**: Wasco State Prison |

## Additional Location Acronyms

**SACCO**: Sacramento Control Office. This refers to the office who tracks and monitors any person who is housed in institutions located outside of California.

**MCCF**: Modified Community Correctional Facilities. This refers to additional institutions, not listed above that are under the direct management of CDCR.

*The *Board of Parole Hearings Information and Acronym Sheet* provides only general information about certain parole proceedings that has been simplified and condensed to provide a brief overview. The explanation of common terms and acronyms provided are intended solely for informational purposes.

# EXHIBIT K

DEPARTMENT OF CORRECTIONS AND REHABILITATION                STATE OF CALIFORNIA
PAROLE PROCEEDING ACCOMMODATION(S) PROVIDED

| Inmate Name | CDC Number | Institution |
|---|---|---|
| ██████████ | ████ | ████████████ |

**Parole Proceeding**

| | |
|---|---|
| ☐ Attorney Consult | ☐ Initial Interview-Issue Conditions of Parole |
| ☐ Administrative Appeal | ☐ Notice of Amended Conditions of Parole |
| ☐ Central File Review | ☐ Psychologist Evaluation |
| ☐ Clinician Interview | ☐ Review of Letter of Support |
| ☐ Document Review | ☐ Review of Parole Plans |
| ☒ Other | |

Special accommodation due to hearing impairment

**Accommodation(s) Provided**

| | |
|---|---|
| ☒ No Accommodation | |
| ☐ Accessibility | ☐ Note Taker |
| ☐ Accessible Transportation | ☐ Open and Closed Captioning |
| ☐ Assistive Hearing Devices | ☐ Phone Handset Amplifiers |
| ☐ Attorney | ☐ Qualified Readers |
| ☐ Audio Taped Materials | ☐ Reading |
| ☐ Audiocassettes | ☐ Reading Machines |
| ☐ Braille | ☐ Regional Center Advocates |
| ☐ Cane | ☐ Sign Language Interpreter |
| ☐ Closed Caption | ☐ Speech Synthesizers |
| ☐ Communication Books or Boards | ☐ Staff Assistance |
| ☐ Computer Aided Transcription Services | ☐ TDD Machines |
| ☐ Computer Terminals | ☐ Tele Typewriters |
| ☐ Foreign Language Interpreter | ☐ Videotext Displays |
| ☐ Highlighter Pens and Markers | ☐ Wheelchair |
| ☐ Large Print Material | ☐ Written Materials |
| ☐ Magnifying Device | ☐ Other |
| ☐ Materials on Videotape | |

**Additional Comments**

A certified deaf interpreter will be needed along side the sign language
interpreter.

| Parole Proceeding Conducted By | Date of Parole Proceeding |
|---|---|
| ████████ | ██████ |

# EXHIBIT L

# EXHIBIT FILED UNDER SEAL

# EXHIBIT M

NOTICE AND REQUEST FOR ASSISTANCE AT A PAROLE PROCEEDING                                   **STATE OF CALIFORNIA**
BPH 1073

| I.   PRE-INTERVIEW FILE/DEC REVIEW (STAFF ONLY) |
|---|

I acknowledge that I have reviewed all relevant and reasonably available central file and/or field file and Disability and Effective Communication System (DECS) information prior to first contact with the inmate/parolee involved in this parole proceeding.


Print Name: ▆▆▆▆▆            Sign Name: _____            Date ▆▆▆▆▆

**Mental Health Concerns**                                                    **Source**       **Dated**


**Identified Disabilities**                              **Note:**            **Source**       **Dated**

| NDD | No substantial adaptive support needs from cognitive deficit | | CDC 128C2 | ███ |
| DPH | Deaf or Hearing Impaired | | CDC 1845 | ███ |
| DPS | Mute or Speech Impaired | | CDC 1845 | ███ |

**Other Potential Assistance Needs**

**Reading Level:**  2         **Total GPL:**  2

**Speaks English**   ☐ Yes   ☒ No

**Languages Spoken**
American Sign Language

| II.   INMATE/PAROLEE RIGHTS & SELF IDENTIFICATION |
|---|

You have a right to receive help for your hearing. If you need help talking, reading, hearing, seeing, understanding, or getting to your hearing, you have a right to that help. You have a right to receive help in meeting with your attorney. If you do not speak English, you have a right to an interpreter. If you are deaf and use sign language, you have a right to a sign language interpreter. If you cannot read, the BPH or CDCR must provide you with help to read the forms and papers. If you need special transportation, the BPH or CDCR must provide it for you. If you do not get help, or you do not think you got the kind of help you need, ask for a BPH 1074 Grievance Form.


Check all that apply:

☒ I need help reading my documents.                    ☐ I need the following help to hear
☒ I need help understanding the procedures and forms.   ☒ I need the following help to see   **EYEGLASS FRAMES**
☒ I need a sign language interpreter.                   ☐ I need to communicate in writing.
☐ I need a wheelchair and I  ☐ do have one.  ☐ do not have one.
☒ I need a Durable Medical Equipment to get around :   **Eye Glasses, Hearing Impaired Disability Vest**

   Have Durable Medical Equipment :   Eye Glasses, Hearing Impaired Disability Vest

   Do not have Durable Medical Equipment : _____

☒ I do not speak English and need an interpreter in   **American Sign Language**

☐ I need a housing accommodation :

☐ I have a health problem, I need   ☐ A medical evaluation   ☐ A mental health evaluation   ☐ Medication

☐ Other

☐ **I do not need any help for my parole hearing.**


Name: ▆▆▆▆▆                                              CDC Number: ▆▆▆▆▆
Proceeding: Lifer                         Type of Hearing:  Subsequent Hearing
Location: ▆▆▆▆▆

BPH 1073, NOTICE AND REQUEST FOR ASSISTANCE AT A PAROLE PROCEEDING

NOTICE AND REQUEST FOR ASSISTANCE AT A PAROLE PROCEEDING       **STATE OF CALIFORNIA**
BPH 1073

---

### III. INITIAL SERVICE OF RIGHTS (STAFF ONLY)

I have informed inmate/parolee of his/her rights and charges, if any, and have determined that he/she:

[X] Appears to understand     [ ] Appears to have difficulty understanding

Effective Communication Method Used:   " **Repeat/Rephrase as Necessary**"   " **Sign Language Interpreter**"

▮▮▮▮▮ Correctional Counselor

| Staff Name and Title (please print) | Staff Signature | Date |

---

### IV. ACCOMMODATIONS PLANNED

Accommodation(s)/Assistance to be provided at hearing(s): "**Assistive Hearing Devices**"   "**Attorney**"   "**Magnifying Device**"
"**Personal Durable Medical Equipment**"
"**Sign Language Interpreter**"   "**Staff Assistance**"

Summary:     Accommodations Planned

Comment:     2 RL/DPH/DPS-hearing aids, hearing vest, knee braces, orthotics, pocket talker, glasses

▮▮▮▮▮ / BPH Staff

| Staff Name and Title (please print) | Staff Signature | Date |

---

### V. SUMMARY OF ACCOMMODATIONS

Accommodation(s)/Assistance provided at hearing(s): "**Assistive Hearing Devices**" "**Attorney**" "**Magnifying Device**"
"**Personal Durable Medical Equipment**" "**Sign Language Interpreter**"
"**Staff A**" "**Glasses**"

Private Durable Medical Equipment(Inmate/Parolee Provided):

Comment: Hearing aids, hearing vest, knee braces, orthotics, pocket talker, glasses. Hearing aids not feasible for his impairment. Knee brace/orthotics not needed for hearing. ASL Interpreters via TEAMS video.

▮▮▮▮▮ / Deputy Commissioner

| Staff Name and Title (please print) | Staff Signature | Date |

---

Name: ▮▮▮▮▮                       CDC Number: ▮▮▮▮▮
Proceeding: Lifer                      Type of Hearing: Subsequent Hearing
Location: ▮▮▮▮▮

# EXHIBIT N

**EXHIBIT FILED UNDER SEAL**

# EXHIBIT O

NOTICE AND REQUEST FOR ASSISTANCE AT A PAROLE PROCEEDING                    **STATE OF CALIFORNIA**
BPH 1073

| I.  PRE-INTERVIEW FILE/DEC REVIEW (STAFF ONLY) |
|---|

I acknowledge that I have reviewed all relevant and reasonably available central file and/or field file and Disability and Effective Communication System (DECS) information prior to first contact with the inmate/parolee involved in this parole proceeding.

Print Name: ▮▮▮▮▮▮                    Sign Name: ▮▮▮▮▮▮                    Date: ▮▮▮▮▮▮

| **Mental Health Concerns** | | **Source** | **Dated** |
|---|---|---|---|

| **Identified Disabilities** | **Note:** | **Source** | **Dated** |
|---|---|---|---|
| DPH    Deaf or Hearing Impaired | | CDC 1845 | ▮▮▮▮ |
| DPS    Mute or Speech Impaired | | CDC 1845 | ▮▮▮▮ |

**Other Potential Assistance Needs**

**Reading Level:** N/A          Total GPL:  5

**Speaks English**  [ ] Yes  [X] No

**Languages Spoken**

| II.  INMATE/PAROLEE RIGHTS & SELF IDENTIFICATION |
|---|

You have a right to receive help for your hearing. If you need help talking, reading, hearing, seeing, understanding, or getting to your hearing, you have a right to that help. You have a right to receive help in meeting with your attorney. If you do not speak English, you have a right to an interpreter. If you are deaf and use sign language, you have a right to a sign language interpreter. If you cannot read, the BPH or CDCR must provide you with help to read the forms and papers. If you need special transportation, the BPH or CDCR must provide it for you. If you do not get help, or you do not think you got the kind of help you need, ask for a BPH 1074 Grievance Form.

Check all that apply:

[ ] I need help reading my documents.                [ ] I need the following help to hear
[ ] I need help understanding the procedures and forms.    [ ] I need the following help to see
[X] I need a sign language interpreter.              [ ] I need to communicate in writing.
[ ] I need a wheelchair and I  [ ] do have one.  [ ] do not have one.
[ ] I need a Durable Medical Equipment to get around :

Have Durable Medical Equipment : _____

Do not have Durable Medical Equipment : _____

[ ] I do not speak English and need an interpreter in

[ ] I need a housing accommodation :

[ ] I have a health problem, I need  [ ] A medical evaluation  [ ] A mental health evaluation  [ ] Medication

[ ] Other

[ ] **I do not need any help for my parole hearing.**

Name: ▮▮▮▮▮▮                                        CDC Number: ▮▮▮▮
Proceeding: Lifer                    Type of Hearing:  Initial Hearing
Location: ▮▮▮▮▮▮▮▮

BPH 1073, NOTICE AND REQUEST FOR ASSISTANCE AT A PAROLE PROCEEDING

| III.   INITIAL SERVICE OF RIGHTS (STAFF ONLY) |
|---|

I have informed inmate/parolee of his/her rights and charges, if any, and have determined that he/she:

[X]   Appears to understand        [ ]   Appears to have difficulty understanding

Effective Communication Method Used:    " **Sign Language Interpreter**"

Comment:  'S' UNDERSTOOD USING HIS ALTERNATE METHOD WHICH IS WRITTEN NOTES PER DECS.

_____ / Correctional Counselor          _____          _____
Staff Name and Title (please print)                              Staff Signature                              Date

| IV.   ACCOMMODATIONS PLANNED |
|---|

Accommodation(s)/Assistance to be provided at hearing(s):  "**Sign Language Interpreter**"

Summary:          Accommodations Planned

Comment:          hearing and speech disabilities verified. 5 GPL

_____ / BPH Staff          _____          _____
Staff Name and Title (please print)                              Staff Signature                              Date

| V.   SUMMARY OF ACCOMMODATIONS |
|---|

Accommodation(s)/Assistance provided at hearing(s):       "**Sign Language Interpreter**"

Private Durable Medical Equipment(Inmate/Parolee Provided):

Comment: Per 1073 dated 4-4-18, sign language interpreter required, but no other accommodations necessary for the hearing.
          Sign language interpreter was present and utilized durng the hearing.

_____ Commissioner          _____          _____
Staff Name and Title (please print)                              Staff Signature                              Date

Name: _____          CDC Number: _____

Proceeding: Lifer                              Type of Hearing:  Initial Hearing

Location: _____

# EXHIBIT P

**EXHIBIT FILED UNDER SEAL**

# EXHIBIT Q

# EXHIBIT FILED UNDER SEAL

# EXHIBIT R

**EXHIBIT FILED UNDER SEAL**

# CERTIFICATE OF SERVICE

Case Name: **J. Armstrong, et al. v. Gavin Newsom, et al.**     No.   **C 94-2307 CW**

I hereby certify that on December 12, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1.      DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

2.      DECLARATION OF PRINCIPAL LIBRARIAN BRANDY BUENAFE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

3.      DECLARATION OF HEIDI L. RUMMEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

4.      DECLARATION OF DEPUTY DIRECTOR JARED LOZANO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

5.      DECLARATION OF DANIEL MOELLER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

6.      DECLARATION OF SERENA SUKHIJA, O.D., IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

7.      DECLARATION OF I. STREAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

8.      DECLARATION OF TARA DOETSCH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

I certify that participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on December 12, 2023, at Los Angeles, California.

| L. Smith | /s/ L. Smith |
|----------|--------------|
| Declarant | Signature |