ROB BONTA
Attorney General of California
SHARON A. GARSKE
Supervising Deputy Attorney General
SEAN LODHOLZ
OLENA LIKHACHOVA
ANNE KAMMER
GURPREET SANDHU
TRACE O. MAIORINO
Deputy Attorney General
State Bar No. 179749
   455 Golden Gate Avenue, Suite 11000
   San Francisco, CA  94102-7004
   Telephone:  (415) 510-3594
   Fax:  (415) 703-5843
   E-mail:  Trace.Maiorino@doj.ca.gov
*Attorneys for Defendants*
*Gavin Newsom, Board of Parole Hearings,*
*and CDCR*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **JOHN ARMSTRONG, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GAVIN NEWSOM, et al.,**<br><br>Defendants. | 4:94-cv-02307-CW<br><br>**DECLARATION OF DEPUTY DIRECTOR JARED LOZANO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]** |

I, Jared Lozano, declare:

1.    I have been employed by the California Department of Corrections and Rehabilitation (CDCR) since 1997.  I am currently the Deputy Director for Facility Support in the Division of Adult Institutions (DAI).  I have reviewed the Plaintiffs' motion to enforce the revised permanent injunction (ECF No. 3525) and supporting materials (ECF Nos. 3525-1 to 3525-8).  I have also reviewed the declarations of Brandy Buenafe, Daniel Moeller, and Dr. Serena Sukhija filed in

1

support of this opposition, and the Declaration of Michael Parker filed by Plaintiffs.  I submit this declaration in support of Defendants' opposition to Plaintiffs' enforcement motion.  I am competent to testify to the matters set forth in this declaration and, if called upon by this Court, would do so.

2.     During my CDCR employment, I have served in a variety of positions.  From 2020 to 2022, I served as the Associate Director for the high security male mission.  I served as Warden at the California Medical Facility from 2018 to 2020 and served as the Chief Deputy Warden at Folsom State Prison from 2015 to 2018.  I served as a Correctional Administrator at CDCR in 2015 and from 2012 to 2013.  I served as the Acting Chief Deputy Warden at the California Health Care Facility from 2013 to 2015 and served as the Facility Captain at Deuel Vocational Institution from 2008 to 2012.  I served as a Lieutenant and Captain at CDCR Headquarters from 2006 to 2008.  Before that assignment, I was a Lieutenant at California State Prison, Solano from 2004 to 2006, a Sergeant at Deuel Vocational Institution from 2000 to 2004, and a Correctional Officer at California State Prison, Solano, from 1997 to 2000.

3.     As the Deputy Director for Facility Support, I am responsible for assisting the Director of the Division of Adult Institutions (DAI), in managing state institutions, conservation camps, and community-based facilities.  My duties include formulating and implementing department policies, rules, regulations, and guidelines as they relate to the administration and operations of the institutions.  I work with the Secretary's Office, the Director of DAI, and the Division Rehabilitative Programs on issues related to the transition of incarcerated persons to parole status and reentry programs.  As Deputy Director, I may act on behalf of the Director in his or her absence and may be asked to testify before the Legislature and Executive Branches of government on policy and budgetary matters that affect adult institutions' operations.  My job duties include planning, organizing, and evaluating the work and performance of staff, ensuring compliance with state and federal laws, regulations, bargaining unit contracts, and policies in all personnel practices.  I am also responsible for recruiting, hiring, training, and providing leadership to staff.  In my role as Deputy Director, I am familiar with the Americans with Disabilities Act (ADA), the remedial plans and Court orders in this case, and their application to

the incarcerated population.

**CDCR Identifies and Tracks Accommodations and Accessible Formats.**

4.     I have read Plaintiffs' motion and understand that Plaintiffs request, in part, that this Court order Defendants to "identify the accommodations necessary for blind and low-vision class members to adequately prepare for their hearings and complete parole preparation tasks and grievances and decision review." (Plaintiffs' Proposed Order (ECF No. 3525-8) at 16.) These processes already exist.

5.     CDCR identifies and tracks blind and low-vision class members through disability placement program designations of "DPV" and "DNV". DPV class members include individuals who are either permanently blind or who have a vision impairment not correctable to central visual acuity of 20/200 or better, even with corrective lenses. (*See Armstrong* Remedial Plan (2001) at 3.) Individuals who have vision impairment correctable to central vision acuity better than 20/200, and no better than 20/70, with corrective lenses are designated as DNV. (*Id.* at 4; and *see* CCHCS memorandum dated December 4, 2023, titled "Clarification on the Definition of Vision-Impaired Non-Impacting Placement (DNV)", a true and correct copy of which is attached to this declaration as **Exhibit A**.)

6.     CDCR has created a process to track DPV class members' preferred form of visual accommodation for written materials, including large print, Braille, magnifier, and audio[1], in its Strategic Offender Management System (SOMS). This information is copied daily into the Disability and Effective Communication System (DECS), accessible to authorized CDCR and Board staff in SOMS, and is accessible to CDCR correctional counselors, Board staff, and the Board-appointed panel attorneys in DECS. Board-appointed panel attorneys can review DECS, and authorized CDCR and Board staff can review DECS or SOMS to determine if the DPV class member needs visual accommodations such as large print, audio, or Braille formats, or a magnifier to prepare for a parole suitability hearing or complete post-hearing tasks.

7.     CDCR currently accommodates the writing needs of the blind class members by providing them access to scribes such as ADA workers, prison library staff, and CDCR custody

---

[1] Audio format is tracked in SOMS as "Read Documents Aloud".

3

staff.  CDCR acknowledges that some class members may not be comfortable discussing potentially sensitive matters (e.g., the details of their criminal history) with another incarcerated person, and thus may not want the assistance of an ADA worker to scribe documents in preparation for a parole suitability hearing.  CDCR further acknowledges that policy prohibits ADA workers from accessing CDCR and legal correspondence unless staff approve and verify the class member's consent.  CDCR also notes policy dictates that CDCR custody staff may only assist incarcerated persons with writing CDCR forms and documents.  However, law library staff are able to assist with writing non-CDCR documents, as more fully described in the declaration of CDCR's Principal Librarian Brandy Buenafe, filed concurrently.

8.      The parties have engaged in extensive negotiations through the blind and low-vision (BLV) workgroup and—before Plaintiffs sought court intervention—CDCR agreed to supplement and refine its identification and tracking system to better accommodate blind and low-vision class members as they prepare for parole hearings and complete post-hearing tasks.

9.      Following these negotiations, CDCR drafted a memorandum titled "Accommodations for Impacting Vision Impaired Incarcerated Person Regarding Due Process Related Events and Documents."  This draft memorandum directs the identification and tracking of DPV class members' visual accommodations, such as large print, magnifier, Braille, and audio for printed materials, and provides direction to produce printed materials in large print and Braille.  The memorandum documents CDCR's agreement to further supplement and refine CDCR's existing long history of identifying and tracking DPV class members to ensure appropriate accommodations are provided, as partially detailed below.

10.      The "Accommodations for Impacting Vision Impaired Incarcerated Person Regarding Due Process Related Events and Documents" memorandum outlines CDCR's commitment to: (a) individually assess each DPV class member to identify the appropriate visual accommodation (including large print, magnifier, Braille, and audio) they may need for printed materials; and (b) document and track those visual accommodations in SOMS.  This draft memorandum was provided to Plaintiffs' counsel on October 9, 2023, for comment, and has been pending with Plaintiffs' counsel since that date.  CDCR intends to make some revisions to this memorandum

4

and issue the updated memorandum to the field in January 2024.

11.    CDCR also agreed to make all regular printed materials offered to incarcerated individuals in connection with the programs, services, and activities available in CDCR institutions accessible to DPV class members through independent and private use of auxiliary devices capable of variable magnification, converting printed text into Braille, and converting printed text into audio.

12.    To facilitate identification and tracking of DPV class members' reading and writing accommodations without using the existing Request for a Reasonable Accommodation process (CDCR form 1824), California Correctional Health Care Services (CCHCS) retained the Western University of Health Sciences Eye Care Institute (Eye Care Institute) as vision consultants.  I have reviewed the Declaration of Dr. Sukhija prepared in support of Defendants' opposition to Plaintiffs' motion.  As more fully detailed in Dr. Sukhija's declaration, the Eye Care Institute vision consultants will individually assess each DPV class member to identify the specific visual accommodation (e.g., auxiliary devices, alternative formats) each DPV class member needs to accommodate their unique reading and writing needs.

13.    DPV class members housed at Substance Abuse Treatment Facility (SATF) and those scheduled for a parole suitability hearing in 2024 will be prioritized for individualized assessment by the Eye Care Institute.  DPV class members' individualized assessments began on December 7, 2023, and the Eye Care Institute vision consultants have already assessed four DPV class members housed at SATF and one DPV class member housed at California Institution for Women (CIW).  One DPV class member at SATF was offered and refused individualized assessment.

14.    If a DPV class member refuses to be assessed by the Eye Care Institute team, the CCHCS provider will document the refusal in CERNER Electronic Health Record System.  The local ADA Coordinator or designee will then interview that class member to determine what accommodations are needed, if any, and document that in SOMS, which is accessible to authorized CDCR and Board staff.

15.    If, during their individualized assessment by the Eye Care Institute, a DPV class

5

member is determined to require an auxiliary device or an alternative reading format such as large print, Braille or audio, this information will be documented in SOMS (accessible to authorized CDCR and Board staff) following the issuance of the visual accommodations memorandum. CDCR correctional counselors and Board staff will be able to review SOMS and DECS to determine if a DPV class member with a scheduled parole suitability hearing needs to view documents in an alternative format (e.g., magnifier, large print, Braille, or audio) to prepare for the hearing or complete post-hearing tasks. Depending on the individual needs of the class member, the individual may be able to use auxiliary devices to review printed documents and forms related to the parole suitability hearing. If auxiliary devices are insufficient to address the class member's needs, Defendants will arrange to provide alternate formats in a timely manner.

16. If the Eye Care Institute vision consultants recommend an auxiliary device to accommodate a DPV class member's reading and writing needs, CDCR will issue the auxiliary devices recommended for the class member's private use as soon as reasonably possible following CDCR's receipt of the vision consultants' recommendation. This includes in-cell use of the auxiliary device, and use in other areas of the institution, such as programming areas and education, unless it is determined to be an undue burden or threat to the safety and security of the institution. These devices will allow class members to read and review printed materials in alternative formats such as enlarged text, Braille, or audio (text-to-speech), and independently and privately complete writing tasks in preparation for parole suitability hearings and post-hearing tasks.

17. To ensure that following the vision consultants' assessment and recommendation, recommended assistive devices are provided in a timely manner to the assessed DPV class members, CDCR has initiated procurement of the following assistive devices: five LyriQ Text-to-Speech Readers; 20 Ruby XL HD video magnifiers; five Ruby 5 video magnifiers; 20 Mattingly hand-held illuminated magnifiers with six-time magnification; and 20 Mattingly stand illuminated magnifiers with six-time magnification. The supply of assistive devices will be held at CDCR Headquarters. It is CDCR's intent for Headquarters staff to overnight the device to the institution within two business days of CDCR's receipt of the vision consultants'

6

recommendation following a DPV class member's individualized assessment. CDCR will purchase additional devices to replenish this supply upon the recommendation of and in consultation with the vision consultants. If a device recommended by the Eye Care Institute vision consultants is not present in the Headquarters' supply, upon receipt of the visual consultants' recommendation, CDCR will initiate procurement of the device within five business days.

18.    In the meantime, CDCR will accommodate DPV class members' reading and writing needs by providing in-cell check-out access to Zoomax Snow 12, a portable vision aid for independent and private reading, re-reading, and writing, as shown here:



The Zoomax Snow 12 device weighs 2.12 pounds without the stand and 2.82 pounds with the stand and has the following dimensions: 11.4″ × 8.7″ × 0.94″ (unit), 13.8″ × 9″ × 1.6″ (stand). Its standard features include a 12-inch full-HD display, magnification up to 19 times, full-page content scanning with Optical Character Recognition (OCR) text-to-speech, and an optional foldable stand that enables real-time magnification for hand-writing tasks. The OCR feature enables the user to convert printed text into an audio format. The device is equipped with a headphones port, providing more privacy when audio format is used. DPV class members have access to headphones compatible with Zoomax Snow 12. This device will allow DPV class members who require enlarged font or audio formats to independently and privately review printed materials related to preparation for parole suitability hearings inside their cells. DPV class members who require magnification to hand-write documents to complete their writing

7

tasks can utilize this device to do so privately and independently if desired.

19. CDCR has initiated procurement of 100 Zoomax Snow 12 assistive devices for distribution at all DPV-designated CDCR institutions for in-cell use of DPV class members on a check-out basis. As of December 6, 2023, 20 Zoomax Snow 12 devices were delivered for DPV class members' use at SATF, which currently houses the largest number of DPV class members. The Zoomax Snow 12 assistive devices will be available at the remaining DPV-designated institutions approximately within the next 90 days.

20. The Zoomax Snow 12 assistive devices will allow DPV class members to complete their parole suitability hearing-related reading independently and privately. Low-vision DPV class members can complete hand-writing tasks with the device pending their assessment by the Eye Care Institute vision consultants to determine the class member's specific accommodations needs.

21. Pending deployment of the Zoomax Snow 12 assistive devices at all DPV-designated institutions, CDCR will accommodate the reading and writing needs of the DPV class members who are scheduled for a parole suitability hearing through the assistive devices already available to these class members at their assigned institutions and through assistance from library staff, and CDCR custody staff, as described above and below.

22. DPV class members whose writing needs cannot be accommodated with auxiliary devices and who require a scribe to complete their writing tasks related to preparation for a parole suitability hearing will be accommodated by library staff as described in the declaration of CDCR's Principal Librarian Brandy Buenafe, filed concurrently.

23. I have reviewed the declaration of Michael Parker submitted in support of Plaintiffs' motion. He acknowledges that DNV class members can read and write with moderate enlargement of text and that CDCR already provides magnifiers suitable to meet the needs of this population. (*See* Parker Decl. (ECF No. 3525-5) at ¶¶ 5-6.) DNV class members have access to non-electronic magnifiers, such as LED-lighted magnifiers with 2.5-time, 4-time, and 10-time magnification; and headband magnifiers with 8-time, 15-time, and 23-time magnification. CCHCS medical providers distribute these magnifiers to DNV class members upon request.

24.    DNV class members requesting accommodations beyond the non-electronic magnifiers can make their request through the existing Reasonable Accommodation Request process (CDCR 1824 form).  The DNV class member will be referred to a CCHCS medical provider for an evaluation.  The provider may refer the class member to a specialist for further assessment.

25.    Since DNV class members' reading and writing needs are reasonably accommodated through corrective lenses and non-electronic auxiliary devices, CDCR does not track alternative formats for printed materials (e.g., large print, Braille, or audio) for these class members.

**CDCR Provides Adequate Support for Parole Suitability Hearing Preparation and Post Hearing Tasks.**

26.    DAI's Classification Services Unit (CSU) is responsible for the classification and housing of incarcerated people within CDCR institutions.  CSU Correctional Counselors and Correctional Counselor Supervisors are required to perform multiple activities associated with Board of Parole Hearings (BPH) consultations and hearings.  Correctional Counselors are required to provide reasonable accommodations and effective communication to incarcerated persons with disabilities during Board proceedings.  This includes assisting incarcerated persons with disabilities with understanding the Board's parole hearing suitability process.

27.    CDCR mandates that staff provide effective communication to qualifying incarcerated persons with disabilities and document that effective communication was achieved during interactions concerning due process events, confidential interviews with incarcerated persons about grievances, and other similar events.  Qualifying disabilities include incarcerated persons with a Disability Placement Program code of DPV (vision) and DNH and DPH (hearing).  Recently, following input from Plaintiffs, CDCR issued the August 30, 2023, Revised Equally Effective Communication Policy memorandum to provide direction to custody staff.  A true and correct copy of the memorandum is attached as **Exhibit B**.

28.    Correctional Counselors have a significant role in CDCR's objective to provide increased rehabilitative services to successfully reintegrate incarcerated people into the community.  Correctional Counselors are responsible for recommending specific self-help and

9

other programs provided by the Division of Rehabilitative Programs (DRP), based on the incarcerated person's criminogenic needs.[2]

29.    As part of their duties when assisting incarcerated persons with disabilities with Board processes, Correctional Counselors offer and conduct the *Olson* review; serve documents including, Notice of Rights (BPH 1002/1003, Notice of Hearing Rights/Hearing Rights Form), post-conviction report, Comprehensive Risk Assessment, Notice of Date, Time, and Place (BPH 1080); complete the Notice and Request for Assistance at Parole Proceeding (BPH 1073); assist after the parole-suitability hearing; and other duties.  Correctional Counselors achieve effective communication by using tools like additional explanations, extra time for review, larger print on a computer screen, use of a magnifier, reading documents aloud, or use of a language interpreter (including SLI), depending on the unique disabilities of the incarcerated person and the foregoing task the Correctional Counselor is completing.  For a deaf-signer, an SLI will be present at the time of service to translate the Correctional Counselor's conversation with the class member. Additionally, if the deaf-signer has a reading level score of 4.0 or lower (equivalent to a fourth-grade reading level or lower), the Correctional Counselor will offer to read and have the SLI translate the Board-related documents at the time of service, with exceptions noted below.  A deaf signer, whose unique disabilities and needed accommodations require it, may also request to meet with staff to have an SLI translate a Board-related document again, except for parole suitability hearing transcripts and the Comprehensive Risk Assessments (CRA) prepared by a Board Forensic Assessment Division clinician.  As for the hearing transcript and the CRA, after coordination between CDCR and the Board, I understand that the Board will utilize its contracted SLIs to translate these documents from English into ASL and to videotape the translation upon the person's request.  This accommodation will be based on an individualized assessment of the deaf signer's unique disabilities and individualized needs, as detailed in the declaration of Daniel Moeller, filed concurrently.

---

[2] DRP is a branch of CDCR with the mission to provide rehabilitative programming and skills to incarcerated individuals to reduce their likelihood of reoffending by the time they return to their homes and communities.  *See* https://www.cdcr.ca.gov/rehabilitation/ (last reviewed 12/01/2023.)

**Adequate Personnel Is Available to Complete the *Olson* review for Class Members Who Need Assistance.**

30.     CDCR has created a questionnaire for use by headquarters-assigned Correctional Counselor IIs who assist the institutional ADA Coordinators.  On December 6, 2023, the Correctional Counselor IIs were directed to use the questionnaire to interview each DPV class member with an upcoming parole-suitability hearing in the next 10 months for the specific purpose of identifying the individual needs of the class members for assistance with reading and writing in preparation for their hearings, including during an *Olson* review.  Moving forward, this scheduling report will be generated, and updated monthly, using information obtained from the Board.  This report will include both class members who have a scheduled hearing date in the next 12 months and those who are scheduled for a hearing in the next 12 months but have not yet received a specific date for a hearing.  The questionnaire will further inform class members of the resources available to them to assist in preparing for their hearing to include all accommodations available.  Staff have been directed to complete the interviews by no later than December 13, 2023.  (Attached as **Exhibit C** is a true and correct copy of the questionnaire.)  Headquarters staff will identify additional DPV class members with whom Correctional Counselor IIs will conduct the questionnaire as the report is updated each month and additional class members are scheduled for hearings.  The questionnaire is an interim tool during the roll-out of Zoomax Snow 12 devices identified above, and the completion of the individualized assessments described in Dr. Sukhija's declaration.  CDCR will use the results of the questionnaires to identify and address each class members' specific accommodation needs.

31.     CDCR's Enterprise Information Services has drafted reference guides to be used by staff members to ensure class-member access during *Olson* reviews.  These reference guides were drafted for Microsoft Ease of Access and Adobe Acrobat Read-out-loud features.  Microsoft Ease of Access enables the use of assistive technologies for people with disabilities.  This operating system includes a screen-reader application to read aloud text on the screen, a screen magnifier to magnify text on a screen, and other accessibility features.  The Adobe Acrobat Read-out-loud

features read text in a PDF and allows the user to choose the pace of the reading, and other features, to best suit the person's needs. The Adobe Acrobat Read-out-loud features are installed on CDCR staff devices and laptops for incarcerated persons. On December 23, 2022, the Board issued laptops and encrypted flash drives statewide for the purpose of *Olson* reviews to be completed by incarcerated people in anticipation of their parole suitability hearing. Microsoft Ease of Access and Adobe Acrobat Read-out-loud features are available on these devices. To disseminate these reference guides to custody staff, CDCR will have to provide labor notice to the California Correctional Peace Officers Association's (CCPOA) Union. CDCR is currently working on a plan to incorporate these reference guides in the ongoing efforts to negotiate a Correctional Counselor I policy memorandum as described further below.

32.     On an interim basis, CDCR has identified staff members to assist DPV class members who are unable to independently complete their *Olson* review even with the assistance of an available auxiliary device and if reading aloud is needed. These staff members will be available to offer the use of Microsoft Ease of Access and Adobe Acrobat Read-out-loud features to class members during their *Olson* review. These staff members will also be available to read handwritten or other documents not accessible with Microsoft Ease of Access technology, scribe notes for the class member during the *Olson* review, arrange for the printing of documents identified by the class member for later use, and navigate the *Olson* review. CDCR is researching which staff to designate for this task in the long-term and will use the knowledge gained about accommodation needs and auxiliary devices from the DPV assessments being conducted by the Eye Care Institute to better inform how to accommodate DPV class members during *Olson* Reviews into the future.

**Adequate Personnel Will Be Available to Assist with Release Plans for Class Members Who Need Assistance.**

33.     I understand that Plaintiffs refer to the January 18, 2022, memorandum, titled, "Correctional Counselor Role in Board of Parole Hearing Processes for Inmates with Disabilities," in support of their motion. (ECF No. 3525-1.) As written, the memorandum required a Correctional Counselor I to meet with the class member well before the parole

suitability hearing to discuss the class member's plans for housing and financial support in the event they were found suitable for parole. If the class member did not have specific plans or did not have verification of their plans, the Correctional Counselor I was required to offer the class member assistance completing one or more template letters to potential support persons in the community, using address information provided by the class member or readily available in the person's central file. The Correctional Counselor I was also to document this discussion with the class member in an informational chrono. CDCR has returned to the negotiation table with the CCPOA concerning this memorandum and is developing an alternative process. CDCR is currently working on significantly rewriting the memorandum to include the remedial plan's requirement to assist class members with release planning. As the memorandum is being rewritten, CDCR will issue direction to the institutions to have staff provide assistance with release. An updated memorandum is being drafted and will be shared with CCPOA within the next 90 days from the date of this declaration. After negotiations with CCPOA, the updated memorandum will be presented to Plaintiffs' counsel for additional input. CDCR anticipates needing further negotiations with CCPOA after the parties' input.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on December 11, 2023, at Sacramento, California.

J. D. Lozano
Deputy Director, Facility Support
Division of Adult Institutions
California Department of Corrections and
Rehabilitation

13

# EXHIBIT A



**CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES**

# MEMORANDUM

| | |
|---|---|
| **Date:** | December 4, 2023 |
| **To:** | Regional Health Care Executives<br>Chief Executive Officers<br>Chief Medical Executives |
| **From:** | |

JOSEPH (JASON) WILLIAMS
Director (A)
Corrections Services

JOSEPH BICK, M.D.
Director
Health Care Services

**Subject:** **CLARIFICATION ON THE DEFINITION OF VISION-IMPAIRED NON-IMPACTING PLACEMENT (DNV)**

The purpose of this memorandum is to clarify the definition for vision-impaired patients in the Disability Placement Program (DPP), Vision Impaired Non-Impacting Placement (DNV) for the California Correctional Health Care Services and Division of Adult Institutions. This memorandum supersedes the July 17, 2018, memorandum entitled, "Expansion of Vision-Impaired Patient Definition".

The DPP DNV definition is clarified to reflect the following language:

The DNV code shall be applied to individuals whose vision can be corrected to central visual acuity of better than 20/200, and no better than 20/70 with the use of corrective lenses.

Note:

- A Vision Impaired Vest shall be ordered and provided to all DNV patients.
- The issuance of Prescription and/or Reading Glasses alone does not meet DNV criteria.
- The absence of vision in one eye does not automatically place the patient in a DPP class.

A Learning Management System (LMS) training pertaining to this memorandum has been developed and the Chief Executive Officer (CEO), or their designee, shall ensure all CEOs, Chief Medical Executives, and Primary Care Providers receive On-The-Job Training via LMS within 90 days of release of this memorandum.

If you have any questions or concerns regarding this memorandum, please contact Captain Joshua Leon Guerrero, Healthcare Policy and Litigation Support, Corrections Services, via email at Joshua.LeonGuerrero@cdcr.ca.gov.

cc:     Americans with Disabilities Act Coordinators          Chief Physicians & Surgeons
        Health Care Compliance Analysts                       Regional Deputy Medical Executives
        Primary Care Providers                                Deputy Medical Executives

# EXHIBIT B

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date:    August 30, 2023

To:      Associate Directors, Division of Adult Institutions
         Wardens
         Americans with Disabilities Act Coordinators

Subject:   **REVISED EQUALLY EFFECTIVE COMMUNICATION POLICY**

The purpose of this memorandum is to provide direction to custody staff regarding the provision of Effective Communication (EC) to incarcerated persons with disabilities or communication needs. The California Department of Corrections and Rehabilitation (CDCR) amended the definition of EC and implemented automated versions of the following forms: Notice of Classification, Classification Committee Chrono, and Administrative Segregation Unit (ASU) Placement Notice.  Classification Committee Chrono in California Code of Regulations (CCR), Title 15, subsections 3335(a)(1)(D)2 and 3340(d)(2), CDCR Form 128-G (10/89), Classification Chrono, has been repealed.  In its place, a new automated Classification Committee Chrono (05/19) has been adopted.  The CDCR Form 114D is now referred to as ASU Placement Notice and is located in the Strategic Offender Management System (SOMS)/Electronic Offender Management Information System (eOMIS). The CDCR Form 114D is no longer in use. The Office of Administrative Law (OAL) approved this regulatory action pursuant to Section 11349.3 of the Government Code effective on October 1, 2020.

The CDCR has an obligation to provide all incarcerated persons and parolees equal access to programs, services, and activities, as required by state and federal law, including the Americans with Disabilities Act (ADA), and the *Armstrong* and *Clark* Remedial Plans.  The ADA guarantees equal opportunity and provides basic civil rights protections for individuals with disabilities in public and private sector services and employment.  The Disability Placement Program (DPP) and the Developmental Disability Program (DDP) were established to provide incarcerated persons and parolees equal access to programs, services, and activities offered by the Department.

**DEFINITION OF EFFECTIVE COMMUNICATION**

Per the recently adopted CCR, Title 15, amended Section 3000, EC is defined as, providing incarcerated persons the communication assistance necessary to allow them to understand and participate in programs, services, and activities.  For incarcerated persons with disabilities or communication needs, staff may provide assistive devices or other methods of accommodation.

**REQUIREMENTS FOR PROVIDING AND DOCUMENTING EC DURING INTERACTIONS AND DELIVERY OF DOCUMENTS**

Staff interacting with the incarcerated person shall provide and document EC during the following interactions when an incarcerated person has one or more qualifying disabilities or communication needs:

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Page 2

- Due process events (e.g., Rules Violation Reports; ASU Placement Notice; including the delivery of responses or written communications
- Delivery of Classification Committee Chronos, regardless of the incarcerated person's attendance or outcome of the committee
- Delivery of Reasonable Accommodation Panel (RAP) responses
- Confidential interviews with incarcerated persons about safety concerns
- Confidential interviews with incarcerated persons about grievances

Qualifying Disabilities and Communication Needs Requiring Documented EC:

- 4.0 or lower reading level (Based on reading level exam)
- Learning Disability (LD), Verified and Unverified
- Limited English Proficiency (LEP)
- Developmental Disability Program (DDP)
- Vision Impaired – Impacting Placement (DPV)
- Hearing Impaired – Not Impacting Placement (DNH)
- Hearing Impaired – Impacting Placement (DPH)
- Speech Impaired – Impacting Placement (DPS)
- Enhanced Outpatient Program (EOP)
- Psychiatric Inpatient Program (PIP)
- Mental Health Crisis Bed (MHCB)

When incarcerated persons with a qualifying disability require documented EC, staff shall complete and document a three step EC process in the SOMS/eOMIS electronic record.

1. Accurately identify the communication need.
2. Document what method(s) of communication assistance/accommodation was provided; the method must be consistent with the incarcerated person's communication need and may involve multiple methods of assistance or communication.
3. Document the method staff used to determine whether, and confirm that, the incarcerated person understood.

Documentation of all three steps of this EC process shall take place during or immediately after staff's interaction with the incarcerated person. In instances where a staff member cannot achieve EC despite the provision of relevant accommodations or assistance, staff shall document their efforts and their inability to achieve EC and shall notify the facility's ADA Coordinator or LEP Coordinator, as appropriate.

Staff are not required to duplicate EC documentation in multiple systems for any interaction. This applies to all interactions requiring documented EC to include but not limited to:

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Page 3

- Classification Committee
- ASU Placement

When an incarcerated person requires a foreign language interpreter and one is provided, staff should keep in mind that any disability-based accommodations still must be provided and documented.

For incarcerated persons in the DDP, staff shall review the most recent Adaptive Support form (CDC 128C-2) and provide assistance consistent with the incarcerated person's disability.

**DOCUMENT PRODUCTION FOR AUDITS**

All EC documentation completed by custody staff, including records completed in SOMS/eOMIS, shall be provided for document production. Staff providing documents for audits of the RAP process or ASU Placement Notice, shall ensure EC documentation added via the "effective communication history" in SOMS/eOMIS is printed, attached to the corresponding documents, and included in the document production packet.

**COMPLETING THE EC CHRONO AND DOCUMENTING PRIMARY OR ALTERNATE METHODS OF EC FOR DNH, DPH AND DPS INCARCERATED PERSONS**

The Warden or designee shall ensure all incarcerated persons designated DNH, DPH, and DPS are interviewed to determine their primary and alternate method of communication. This interview shall be conducted within 14 days of DNH, DPH, or DPS designation, or upon arrival to the institution if not previously done. Unless staff has verified that the incarcerated person does not use sign language, this interview will be conducted using a qualified state Sign Language Interpreter (SLI) (on site or remotely through Video Remote Interpreting [VRI]), or contract SLI (on site or remotely through VRI). For incarcerated persons with a hearing disability and/or speech disability, the ADA Coordinator or designee is responsible for completing the EC Chrono in the SOMS/eOMIS. Incarcerated persons who are DPH and DNH may require the entry of multiple primary methods of communication. If an incarcerated person requires multiple primary methods of communication, but only in certain settings, the ADA Coordinator or designee shall enter the specific accommodations in the comments/Non-Formulary section. If the ADA Coordinator or designee has access to SOMS/eOMIS at the time of the interview, they should update the DPP Disability/Accommodation screen CHSS035B (Effective Communication [EC] Chrono), the paper EC chrono is not required.

Examples of primary methods of effective communication for incarcerated persons requiring SLI include American Sign Language, Signing Exact English (SEE), and Other Sign Language.

Examples of alternate methods of EC for incarcerated persons with a primary method of sign language are written notes, speak loudly and clearly, read lips, hearing aids, and assistive listening devices.

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Page 4

An incarcerated person's primary method of communication shall be utilized during the qualifying events described in this directive, when the primary method is SLI. When using SLI services, refer to the following tiered approach:

1. Use of on-site SLI services support assistant. If not available due to unusual or unforeseen circumstances, then proceed to next method.
2. Use of CDCR statewide SLI staff through VRI. If not available due to unusual or unforeseen circumstances, then proceed to next method.
3. Use local contractors who provide SLI services in person. If not available due to unusual or unforeseen circumstances, then proceed to next method.
4. VRI services, per contract.

Examples of primary methods of communication for incarcerated persons with a hearing and/or speech disability that do not rely on a SLI to communicate are written notes, speak loudly and clearly, read lips, hearing aids, and other assistive listening devices. The interviewer shall document the incarcerated person's preferred method of communication as their primary, and the incarcerated person's secondary choice shall be listed as the alternate. In some cases, someone's alternate method of communication will be "none."

Some individuals may require a combination of primary methods. When multiple primary methods of communication are required, staff can obtain the information by viewing the CHSS035C - DPP Disability/Accommodation Summary screen in SOMS/eOMIS. In addition, an incarcerated person's primary and alternate methods of communication will auto-populate to the Effective Communication record (CHSS033C – Effective Communication screen). If the individual only requires multiple primaries in certain settings, the information can be obtained by viewing the "Non-Formulary Accommodations/Comments" section of the SOMS/eOMIS screens listed above.

**Documentation of EC When Primary Method Cannot Be Provided or Is Waived by the Incarcerated Person**

If it is determined a DNH, DPH, or DPS incarcerated person does not utilize or is not fluent in sign language, SOMS/eOMIS shall reflect forms of communication consistent with the incarcerated person's disability for primary and alternate methods. Staff shall utilize and document the use of the incarcerated person's primary method of communication unless the primary method of communication is not available or not effective at the time of the interaction. If an alternate method of communication is required to achieve EC, the provider shall document the method used (which must still be consistent with the incarcerated person's disability) and their reasoning. All EC documentation shall be entered in the SOMS/eOMIS EC record.

DocuSign Envelope ID: 809256FE-4A15-4D25-A032-9A902F66D42B

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Page 5


In some instances, the method of EC used for DNH, DPS, and DPH individuals who do not use sign language may be different from the incarcerated person's documented primary method, depending on several factors, including but not limited to: the incarcerated person choosing not to use hearing aids; background noise level in the area; staff use of masks; staff facial gestures; or others. If the incarcerated person's primary method of communication is not utilized for the events referenced in this directive, staff shall document their reasoning for utilizing an alternate method of communication.

The procedure in the preceding paragraph for using an alternative to someone's primary method is not available for individuals whose primary method is sign language – they must be provided with their primary method of EC, except when there is an emergency or exigent circumstances, and even in such circumstances an SLI must be provided as soon as possible and no later than the next business day. Further, it is not permissible to use lip-reading as the sole means of achieving EC in a due process or medical encounter, unless the individual has no other means of communication.

If it appears, or if the incarcerated person asserts that a documented primary or alternate method of communication is no longer effective or that another method is more effective, staff shall notify the institution ADA Coordinator. The ADA Coordinator or designee shall enter a new, EC Chrono in SOMS/eOMIS, if appropriate.

*Example #1*

> *Incarcerated person Jones is attending a RVR hearing and has a disability code of DNH. After reviewing SOMS/eOMIS, the hearing official determined Jones' primary method of communication is "hearing aids." However, Jones' hearing aids were not functioning properly at the time. The hearing official asked Jones if he can hear him if he speaks loudly. Jones informed the hearing official that he understands him. The hearing official spoke loudly to Jones throughout the hearing. Jones repeated the information back to the hearing official in his own words and asked appropriate questions. EC was established, despite the primary method of "hearing aids" not being utilized. This is acceptable so long as the hearing official documents the reason the primary method of communication was not utilized and how EC was achieved.*

*Example #2*

> *Incarcerated person Smith is attending a classification committee and has a disability code of DNH. After reviewing SOMS/eOMIS, the classification chairperson determined Smith's primary method of communication is "speak loudly." The classification chairperson asked Smith if he can understand him if he speaks loudly. Smith explained that he is experiencing high levels of stress and prefers to use written notes during the committee. The classification committee*

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Page 6

> *queried Smith to determine if his current primary method of communication is still his preference. Smith explained that it is, except when he's under unusually high levels of stress. The committee utilized written notes throughout the committee, and Smith provided appropriate, substantive responses. EC was established, despite the primary method of "speak loudly" not being utilized. The recorder documented the reason they did not utilize the primary method of communication.*

Wardens shall ensure all custodial staff are trained on this memorandum by utilizing the Learning Management System Course Code 11063252 within 90 days of the release date of this memorandum.

If you have any questions, please contact Timothy Fleshman, Captain, Class Action Management Unit, at (916) 214-6578 or Timothy.Fleshman@cdcr.ca.gov.

DocuSigned by:

*Ronald Broomfield*

499F547FE65C411...

RONALD BROOMFIELD
Director
Division of Adult Institutions

cc:     Jared D. Lozano
        Mona D. Houston
        Lourdes White
        Timothy Fleshman
        Jillian Hernandez
        Darnell Mebane
        Tamiya Davis
        Dave Leclerc
        Megan Roberts
        In-Service Training Managers

# EXHIBIT C

**STATE OF CALIFORNIA**  **DEPARTMENT OF CORRECTIONS & REHABILITATION**

**CDCR 128-B**

**NAME AND NUMBER:**

The California Department of Corrections and Rehabilitation (CDCR) has an obligation to provide all incarcerated persons equal access to programs, services, and activities, as required by state and federal law, including the Americans with Disabilities Act (ADA).

You are identified as having a vision disability which impacts your placement, and your code is DPV. Below is a series of questions to determine which services you may benefit from to prepare for your upcoming Board of Parole Hearings (BPH).

| | QUESTIONS | YES | NO |
|---|---|---|---|
| 1. | Would you like to participate in this questionnaire regarding your upcoming BPH hearing and how you will prepare for it? *If yes continue with the interview. If no this concludes the interview* | ◯ | ◯ |
| 2. | Are you aware of your upcoming BPH hearing? Hearing Date: | ◯ | ◯ |
| 3. | Would you like an Olson Review before your BPH hearing? *Staff shall explain what an Olson Review is for incarcerated persons who (1) have never been before the BPH or (2) have not gone in the last 5 years.* | ◯ | ◯ |
| 4. | Given your disability, can you read documents on your own? | ◯ | ◯ |
| | On paper? | ◯ | ◯ |
| | On a computer screen? | ◯ | ◯ |
| | Reading Score | | |
| 5. | What assistance will you benefit from in preparation for your BPH hearing to include the Olson Review? *Staff, please check appropriate boxes.* | | |
| | • Reading | ◯ | ◯ |
| | • Writing (e.g., scribing) | ◯ | ◯ |
| | • Staff Assistance | ◯ | ◯ |
| | • ADA Worker assistance | ◯ | ◯ |
| | • Magnifier | ◯ | ◯ |
| | • Documents in large print | ◯ | ◯ |
| | • Documents in Braille | ◯ | ◯ |
| | • Zoomax Snow 12 (portable electronic video magnifier that enlarges font so you can read, write, and has text to speech) | ◯ | ◯ |
| | • JAWS (screen reading software) | ◯ | ◯ |
| | • Merlin (desktop video magnifier located in the library) | ◯ | ◯ |

**STATE OF CALIFORNIA**                    **DEPARTMENT OF CORRECTIONS & REHABILITATION**
                                                              **CDCR 128-B**

| QUESTIONS | YES | NO |
|---|:---:|:---:|
| • Davinci (desktop video magnifier located in the library) | ○ | ○ |
| • Additional time in the library | ○ | ○ |
| • Other accommodations not listed<br>*If yes, staff shall document requests in Comment section.* | ○ | ○ |
| 6. Do you know how to request additional time in the library to prepare for your BPH hearing? *If no, staff shall explain to the incarcerated person how to request additional time. Inform the incarcerated person they can ask law library staff for assistance with reading and writing, including writing any documents they may want to prepare for the BPH hearing.* | ○ | ○ |

*The following forms are now available in large print, braille, and audio at the law library: Notice and Request for Assistance at a Parole Proceeding (BPH Form 1073), Request for Reasonable Accommodations (BPH Form 1074), Petition to Advance Hearing Date (BPH Form 1045-A), Hearing Rights Form (BPH Form 1003), and Notice of Hearing Rights (BPH Form 1002)*

Additional Comments:

_____        _____        _____
INCARCERATED PERSON           CDCR NUMBER                    INCARCERATED PERSON
NAME                                                         SIGNATURE

_____        _____        _____
STAFF NAME (PRINTED)          DATE                           STAFF SIGNATURE

Orig:   ERMS

cc:     Facility Captain, Correctional Counselor, Writer, Incarcerated Person

**DATE:**                              **INFORMATIONAL CHRONO**

# CERTIFICATE OF SERVICE

Case Name:  **J. Armstrong, et al. v. Gavin Newsom, et al.**          No.   **C 94-2307 CW**

I hereby certify that on December 12, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

2. DECLARATION OF PRINCIPAL LIBRARIAN BRANDY BUENAFE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

3. DECLARATION OF HEIDI L. RUMMEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

4. DECLARATION OF DEPUTY DIRECTOR JARED LOZANO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

5. DECLARATION OF DANIEL MOELLER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

6. DECLARATION OF SERENA SUKHIJA, O.D., IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

7. DECLARATION OF I. STREAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

8. DECLARATION OF TARA DOETSCH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NO. 3525]

I certify that participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on December 12, 2023, at Los Angeles, California.

| L. Smith | /s/ L. Smith |
|----------|--------------|
| Declarant | Signature |