ROB BONTA
Attorney General of California
SHARON A. GARSKE
Supervising Deputy Attorney General
SEAN LODHOLZ
OLENA LIKHACHOVA
ANNE KAMMER
GURPREET SANDHU
TRACE O. MAIORINO
Deputy Attorney General
State Bar No. 179749
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3594
  Fax:  (415) 703-5843
  E-mail:  Trace.Maiorino@doj.ca.gov
*Attorneys for Defendants Gavin Newsom, Board of
Parole Hearings, and CDCR*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **JOHN ARMSTRONG, et al.,** | 4:94-cv-02307-CW |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION [ECF NOS. 3525, 3554, 3557]** |
| v. | |
| **GAVIN NEWSOM, et al.,** | |
| Defendants. | |

## INTRODUCTION

Nothing in Plaintiffs' reply justifies straying from the requirement that injunctive relief be used sparingly and only in clear and plain cases.  Plaintiffs' evidence, even as supplemented with their reply, fails to demonstrate that modification of the remedial plans is warranted, and the relief Plaintiffs seek would impermissibly intrude on widespread institutional operations in violation of the Prison Litigation Reform Act.  Further, although Plaintiffs implicitly conceded that their moving evidence was insufficient to support their motion, thus supplementing it with their reply,

1

their submission of three additional class-member declarations still fails to establish the substantial, systemic deficiency necessary to grant relief.  Thus, their motion should be denied.

## ARGUMENT

### I.    PLAINTIFFS' LATE-FILED EVIDENCE SHOULD BE STRICKEN FROM THE RECORD.

Civil Local Rule 7-3(c) permits a moving party to reply to an opposition.  But the scope of a reply is limited to matters raised in the opposition; the moving party should not introduce new facts or arguments, and Courts can and should disregard late-filed factual matters.  (*See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894–95 (1990); Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("district court need not consider arguments raised for the first time in a reply brief").)  Under Civil Local Rule 7-3(d), "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," except for objections to reply evidence or a reference to relevant judicial opinion published after the filing.  Nevertheless, Plaintiffs improperly submitted three new class-member declarations and related material in support of their reply, raising a myriad of new factual issues.  (*See* ECF No. 3554-4 (Jackson Reply Decl. Exs. M, O, and P).)

The basic rules of civil procedure require Plaintiffs to submit all evidence with their motion—not after Defendants' opposition deadline.  (Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be *served with the motion*.") (emphasis added); *see also* N.D. Civil L.R. 7-3; *Lujan*, 497 U.S. at 894–95.)  This rule is not arbitrary: it puts the parties on equal footing by ensuring that all parties have a fair and full opportunity to develop the evidence and address the legal issue before the court.  (*See, e.g.*, *Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP (VBKx), 2016 U.S. Dist. LEXIS 9749, at *43 (C.D. Cal. Jan. 27, 2016) ("[A]rguments and evidence must be presented in moving papers to give the opposing party notice and opportunity to respond.")  Plaintiffs' practice of supplementing their moving evidence after the opposition has been filed violates Federal and Local Rules, sandbags Defendants, and prejudices their ability to present a defense.  Relevant here is whether the evidence as a whole establishes a widespread constitutional violation.  Restricting Defendants' response to the newly

2

Defs.' Resp. to Pl.'s Reply ISO Motion for Order to Enforce the RPI (4:94-cv-02307-CW)

submitted evidence precludes them from evaluating the moving evidence in the context that the Court will consider it—cumulatively with all of the evidence—to determine whether intervention is necessary, narrowly crafted, and not unduly intrusive. No such restriction was imposed on Plaintiffs, and they should not be permitted to bolster their moving evidence and arguments after the opposition has been filed, much less to do so without any explanation for their failure to submit such materials with their moving papers.

Merely granting Defendants leave to respond to the new matters addressed in Plaintiffs' December 27, 2023 reply brief[1] (ECF Nos. 3556, 3557) is insufficient. The Court should follow the established procedural rules, and strike Plaintiffs' late-submitted evidence and arguments. (*Zamani*, 491 F.3d at 997; *see Ready Transportation, Inc. v. AAR Manufacturing, Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (citing *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 586-87, 588 (9th Cir. 2008) (discussing the ability of a district court to strike documents)).)

## II.   PLAINTIFFS' LATE-FILED EVIDENCE FAILS TO DEMONSTRATE THAT FURTHER COURT INTERVENTION IS WARRANTED.

As substantial evidence demonstrates, Defendants reasonably accommodate blind, low-vision, and deaf class members (whose primary method of communication is American Sign Language (ASL)) throughout the parole suitability process, including preparing for, participating in, and following up from hearings. Plaintiffs' late-filed class member declarations fail to show otherwise.

**DPH class member 7.** The declaration of DPH class member 7[2] is flawed because it contains inaccuracies and lacks reliability, and, moreover, it does not support Plaintiffs' contention that further Court intervention is warranted. (*See* Jackson Reply Decl. Ex. O.) As detailed below, the record shows that additional accommodations were provided to DPH class

---

[1] Defendants' response is limited to the new evidence submitted by Plaintiffs including the three class member declarations. (Jackson Reply Decl. Exs. M, O, P, ECF No. 3554-4.) Defendants will object to Plaintiffs' response, due on January 18, 2024 (ECF No. 3557), if it improperly exceeds the scope of Defendants' limited response.

[2] Plaintiffs initially submitted declarations of six DPH class members that Defendants refer to as DPH class members 1 through 6, to maintain confidentiality. (*See* Jackson Decl. ¶ 61, ECF No. 3525-2; *see also* Moeller Decl. ¶ 31, ECF No. 3543-1.) Plaintiffs' reply includes one additional declaration from a DPH class member, who Defendants identify as DPH class member 7.

member 7, without court intervention, when he objected to the accommodations originally provided to him during a psychological evaluation.  He then chose to forgo those additional accommodations and an opportunity for a second, or replacement evaluation, so that he could focus on self-introspection to improve his overall parole suitability.

DPH class member 7, whose primary means of communication is sign language, waived his initial suitability hearing to complete additional programming and develop parole plans.  (Suppl. Moeller Decl. ¶14.)  After submitting this waiver, and before it was granted, he participated in a Comprehensive Risk Assessment (CRA) with the assistance of a sign-language interpreter (SLI).  (*Id.*)  When Plaintiffs requested a new CRA and report on DPH class member 7's behalf nearly two years later, asserting that the interpretation services were inadequate and the interpreter was unqualified to provide interpretation services at parole-related proceedings, the Board granted that request and scheduled a new assessment with both an ASL interpreter and a certified deaf interpreter present.  (*Id.* at ¶ 15.)  However, DPH class member 7 refused to participate in the rescheduled interview—even after being advised a new report would be drafted without his participation and would be in effect for three years.  (*Id.* at ¶ 16.)  He also indicated his intent to waive his next scheduled suitability hearing (*Id.* at ¶ 17; Jackson Reply Decl. Ex. O, ¶ 5), so that he could take additional classes and be better prepared to "open up" during parole proceedings.  (Suppl. Moeller Decl. Ex. O; Jackson Reply Decl. Ex. O, ¶ 21.)  Yet DPH class member 7 nonetheless submitted a declaration in support of Plaintiffs' reply brief.  (Jackson Reply Decl. Ex. O.)

DPH class member 7's declaration fails to show that the sign-language interpretation services offered by Defendants are insufficient.  While DPH class member 7 asserts the interpreter was "terrible," his declaration shows that he understood the proceedings.  (*Id.* at ¶¶ 16, 19.)  He acknowledges that the 2022 CRA faulted him for "not opening up more or explaining more about [his] crime."  (*Id.* at ¶ 19.)  He concedes that it is "very difficult [for him] to talk about" his crime because he feels "horrible" about it.  (*Id.*)  Further, he understood the psychologist—attesting that the questions posed made him "quite nervous" because the psychologist "kept asking" questions about his crime and thinking about his crime made him

"sick." (*Id.* at ¶ 19.)  DPH class member 7 also chose to postpone an upcoming parole suitability hearing so that he could focus on opening up about his crime.  (Suppl. Moeller Decl. Ex. O.)  These statements refute or undercut his claim that he and the psychologist did not understand each other because of "how bad the interpreter was"—indeed, they demonstrate his ability to understand and respond to the psychologist's concerns.

DPH class member 7's recollection of the timeline also is deficient.  He contends he waived his 2022 suitability hearing "very soon after the interview," (*id.* at ¶ 21), but the CRA interview occurred nine days before he submitted his waiver of the suitability hearing.  (Suppl. Moeller Decl. ¶ 15, Ex. N; Jackson Decl. Ex. O, ¶¶ 16, 21); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for the purposes of ruling on a motion. . .").)  Finally, DPH class member 7 has a 12.9 TABE (Test of Adult Basic Education) score that indicates a reading level equivalent to that of a high school graduate.  (*Id.* at ¶¶ 3-4.)  Although Plaintiffs besmirch the reliability of such scores, DPH class member 7's hand-written corrections to his declaration demonstrate proficiency in reading comprehension, sentence structure, and word choice.  (*See* Jackson Reply Decl. Ex. O, ¶¶ 9, 11-13, 17, 21, 24.)  Plaintiffs' attempt to bolster the record with unpersuasive assertions, undermined by undisputed evidence, further undercuts their demand for court intervention.

**DPV class member 8.**  Similarly, DPV class member 8's declaration[3] fails to demonstrate a lack of access to the necessary auxiliary aids for reading and writing tasks.  (Jackson Reply Decl. Ex. M, ¶¶ 4-5.)  DPV class member 8 was assigned a vision disability code because he has macular degeneration.  (*Id.*)  He speculates that his purported inability to participate in academic, vocational, or job programming due to his vision impairment may negatively affect his parole suitability assessment at his upcoming hearing.  (*Id.* at ¶¶ 19-24.)  However, participation in

---

[3] Plaintiffs submitted seven declarations of DPV class members that Defendants identified in their opposition as DPV class members 1 through 7, to maintain confidentiality.  (*See* Jackson Decl. ¶ 34, ECF No. 3525-2; Moeller Decl. ¶ 14, ECF No. 3543-1.)  Defendants identify the two additional DPV class members who submitted declarations in support of Plaintiffs' reply as DPV class members 8 and 9.

Defs.' Resp. to Pl.'s Reply ISO Motion for Order to Enforce the RPI (4:94-cv-02307-CW)

structured programming is not required for determination of suitability for parole and there is group programming that does not require reading and writing.  (Suppl. Moeller Decl. ¶ 9.)  Further, DPV class member 8 prevented CDCR from determining the appropriate accommodations to provide.  (Lorey Decl. ¶ 5.)  DPV class member 8's assertion that his disability limits his ability to read or write was to be addressed through an individualized assessment completed by the Eye Care Institute vision consultants, who would have provided appropriate reading and writing accommodations for his unique needs.  (*See* Sukhija Decl. ¶¶ 6 and 15, ECF No. 3543-6.)  This class member was scheduled to meet with Dr. Sukhija for his assessment on January 9, 2024, but he refused to be transported to the site where the assessment was to take place.  (Lorey Decl. ¶ 5.)  (When a class member refuses to be assessed by the Eye Care Institute team, the refusal is documented in CERNER Electronic Health Record System and the local ADA Coordinator will then interview the class member to determine what accommodations are needed, if any, and document those accommodations in SOMS, which is accessible to authorized CDCR and Board staff.  (Lozano Decl. ¶ 14, ECF No. 3543-5 at 5.)[4]

In any event, Zoomax Snow 12 assistive devices (which are capable of variable real-time magnification of printed text up to 19 times and converting printed text into audio) have been delivered for deployment at the institution where DPV class member 8 is housed.  (*Id.* at ¶ 6.)  As such, DPV class member 8 can review printed materials related to his parole suitability hearing in both magnified print and audio through in-cell checkout use of this device pending his individualized assessment, if he chooses to do so.  Further, as is available for all DPV class members pending deployment of Zoomax Snow 12 assistive devices and the completion of the individualized assessments, DPV class member 8 may obtain their hearing transcript and CRA in

[4] In his declaration in support of Plaintiffs' reply, Mr. Parker for the first time opines, "it would be best to permanently issue each class member their own computer with JAWS."  (See Parker Reply Decl. ¶ 8, ECF No. 3554-2.)  However, as Dr. Sukhija opined, instead of adopting a one-size-fits-all approach, the best way to accommodate DPV class members' unique reading and writing needs is through an individualized assessment that considers multiple factors, including a class member's age, education, work history, professional needs, desire to learn, computer literacy, and physical or mental limitations.  (*See* Sukhija Decl. ¶¶ 6, 15.)  Accordingly, if, during DPV class members' individualized assessments, the Eye Care Institute vision consultants determine that a class member needs a laptop with JAWS (or a digital recorder) to read or write independently, they will recommend that accommodation.

Defs.' Resp. to Pl.'s Reply ISO Motion for Order to Enforce the RPI (4:94-cv-02307-CW)

their preferred accessible format (*e.g.*, large print or audio), upon written request within 10 days of the request.  (*See* Moeller Decl. ¶¶ 9 and 13; Lozano Decl. ¶ 18.)

DPV class member 8 is scheduled for an upcoming parole suitability hearing, and the Board has provided him with documents in his preferred format.  The Board received a written request to provide DPV class member 8's CRA in large print and audio formats, and his prior parole suitability hearing transcript in audio format, through an advocacy from Plaintiffs' counsel.  (*See* Jackson Reply Decl. ¶ 18 and Ex. N.)  This request was documented in a Special Accommodation Source Document the next day.  (Suppl. Moeller Decl. ¶ 6, Ex. A.)  The Board issued DPV class member 8 a copy of his CRA in large-print font within three days of the initial written request (and 33 days before his scheduled hearing).  (*Id.* Exs. B, C.)  The Board also issued a copy of his CRA and parole suitability hearing transcript in audio format the following day—within four days of his written request (and 32 days prior to his scheduled hearing).  (*Id.*)  Hence, the allegations set forth in DPV class member 8's declaration fail to warrant any further court intervention.

**DPV class member 9.**  Likewise, the declaration of DPV class member 9 fails to demonstrate a lack of access to the necessary auxiliary aids for reading and writing tasks.  (Jackson Reply Decl. Ex. P.)  Although DPV class member 9 speculates that his purported inability to complete reading and writing tasks may negatively affect his ability to be released on parole, his assumption is not supported by the evidence.  DPV class member 9 was denied parole more than once not because of a disability-based barrier or lack of reasonable accommodations, but because of various factors, including his institutional disciplinary history, lack of insight into current and historical criminal behavior, lack of insight into the consequences of substance abuse, ongoing criminal mindset, and other reasons.  (*See* Suppl. Moeller Decl. ¶¶ 11-12, Exs. G, H.)

Moreover, while DPV class member 9 expressed a preference to have an audio version of his CRA provided to him, he already was provided an audio version of the assessment in anticipation of his upcoming suitability hearing.  (Suppl. Moeller Decl. ¶ 13; Jackson Reply Decl. Ex. P, ¶¶ 11, 22.)  He also contends that he requires staff assistance to complete writing tasks including letters or plans.  (Jackson Reply Decl. Ex. P, ¶¶ 13, 15, 21, 26-27.)  However, the record shows that scribing assistance is available to class members who need it from correctional

library staff and correctional staff members in accordance with a recent directive.  (Lozano Decl. ¶ 22; Buenafe Decl., ECF No. 3543-2 at ¶¶ 6-8, 10; Lorey Decl. ¶ 20.)  In fact, a recent directive authorizes voluntary overtime for Correctional Counselors (I) to assist DPV, DPH, and DDP class members with pre-release planning, extra time for the completion of *Olson* reviews, and other effective communication accommodations for parole suitability hearing preparations.  (Lorey Decl. ¶ 20.)  DPV class member 9 is also scheduled to have a second *Olson* review on January 17, 2024.  (*Id.* at ¶ 18.)

DPV class member 9's complaint about a lack of accommodations for his sight disability to help with reading and writing tasks is also unpersuasive.  (Jackson Reply Decl. Ex. P, ¶¶ 6-8, 11, 15, 20, 23-24, 26.)  Like other DPV class members, he will have an opportunity to participate in the Eye Care Institute vision consultants' individual assessment to determine the appropriate reading and writing accommodations for his unique needs.  (*See* Sukhija Decl. ¶¶ 6, 15.)  DPV class member 9's assessment is scheduled for January 17, 2024.  (Lorey Decl. ¶ 16.)  Pending this individualized assessment, he can access printed materials in magnified print and in audio format by using Zoomax Snow 12 assistive device that was delivered for deployment at the institution where he is housed on January 2, 2024.  (*Id.* at ¶ 17.)  It should also be noted that DPV class member 9 was scheduled to meet an ADA Supervisor on January 11, 2024, to receive education on how to use the Zoomax Snow 12 as well as the accessibility features on his tablet.  (*Id.*)  Hence, the declaration of DPV class member 9 also fails to establish a need for further court intervention.

III.   **PANEL ATTORNEYS REASONABLY ACCOMMODATE AND COMPETENTLY REPRESENT DEAF SIGNER CLASS MEMBERS.**

Plaintiffs once again attempt to impugn the ability of panel attorneys to act as a reasonable accommodation for deaf class members whose primary method of communication is ASL by pointing to discrete instances where an active panel attorney with expertise in sign language interpretation has not been assigned during their parole proceedings.  (Jackson Reply Decl. ¶¶ 3-8.)  However, Plaintiffs fail to demonstrate any widespread deficiency, and, as detailed in the

Supplemental Declaration of Tara Doetsch, this attorney's assignments may be limited by geographic and availability concerns.

The Board has grouped the 32 active adult prisons located throughout California into 16 attorney panels based on their geographic proximity (*i.e.*, the prisons in each panel are generally within a one-hour drive of each other). (Supp. Doetsch Decl. ¶ 3.) Attorneys are approved to serve on one active panel at a time, and therefore cannot represent clients outside of the geographic proximity of the assigned panel without prior approval. (*Id.*) This system limits the burden of travel incurred by panel attorneys to represent their clients during parole proceedings, as the Board does not reimburse these costs. (*Id.*)

Even considering their new allegations, Plaintiffs' assertion regarding a need for a blanket increase in pay fails. The ASL-certified panel attorney identified by Plaintiffs is assigned to Panel 7, and generally represents clients housed at Valley State Prison (VSP) and Central California Women's Facility (CCWF) in Chowchilla, California. (*Id.* at ¶ 4.) The Board must receive the attorney's approval before assigning them to represent deaf signers at other institutions. (*Id.* at ¶ 6.) The Board provided the ASL attorney with notice of the Board's intent to assign him as the panel attorney for several deaf signers, housed at institutions outside of Panel 7's geographic area, who have parole suitability hearings scheduled in early 2024. (*Id.* at ¶ 6.) The attorney first reported that he was unavailable. (*Id.*) Thereafter, the attorney requested additional compensation from the Board to cover the costs associated with the extensive travel involved in representing these clients during their in-person parole proceedings. (*Id.*) To facilitate the ASL attorney's representation as an accommodation for these class members, the Board granted the request for additional compensation solely to defray the associated average travel costs. (*Id.* at ¶ 7.) Thus, Plaintiffs' request for a blanket increase in compensation for panel attorneys who represent class members is unnecessary, overbroad, and unduly intrusive.

For these reasons, further court intervention is unjustified.

/ / /

/ / /

/ / /

## CONCLUSION

For the reasons detailed above, as well as those detailed in the previously filed opposition, the Court should grant Defendants' motion to strike Plaintiffs' late filed evidence and deny Plaintiffs' motion for an order enforcing the revised permanent injunction.

Dated:  January 11, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
SHARON A. GARSKE
Supervising Deputy Attorney General


/s/ *Trace O. Maiorino*
TRACE O. MAIORINO
Deputy Attorney General
*Attorneys for Defendants Gavin Newsom,*
*Board of Parole Hearings, and CDCR*

CF1997CS0005
44015822.docx

Defs.' Resp. to Pl.'s Reply ISO Motion for Order to Enforce the RPI (4:94-cv-02307-CW)