DONALD SPECTER – 083925
RITA K. LOMIO – 254501
MARGOT MENDELSON – 268583
JACOB J. HUTT – 804428 (MJP)
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621
Facsimile:    (510) 280-2704

MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
THOMAS NOLAN – 169692
PENNY GODBOLD – 226925
CAROLINE JACKSON – 329980
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104

LINDA D. KILB – 136101
DISABILITY RIGHTS EDUCATION &
DEFENSE FUND, INC.
3075 Adeline Street, Suite 201
Berkeley, California  94703
Telephone:    (510) 644-2555
Facsimile:    (510) 841-8645

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　　Defendants. | Case No. C94 2307 CW<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN SUPPORT OF MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION AND EVIDENTIARY OBJECTIONS [ECF NOS. 3525, 3554, 3556, 3562]**<br><br>Judge:  Hon. Claudia Wilken |

[4419034.11]

Case No. C94 2307 CW

**TABLE OF CONTENTS**

Page

I.    DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED BECAUSE PLAINTIFFS' REPLY EVIDENCE RESPONDED TO DEFENDANTS' OPPOSITION AND DEFENDANTS HAVE NOW HAD AN OPPORTUNITY TO RESPOND TO THE EVIDENCE ................................... 1

II.   DEFENDANTS' EVIDENCE SHOWS THAT PANEL ATTORNEYS REQUIRE ADDITIONAL PAY AND TRAINING TO ADEQUATELY ACCOMMODATE CLASS MEMBERS ................................ 3

III.  DEFENDANTS ONLY ACCOMMODATED DPH CLASS MEMBER 7 AND DPV CLASS MEMBERS 8 AND 9 IN RESPONSE TO PLAINTIFFS' ENFORCEMENT MOTION OR OTHER ADVOCACY ................ 4

      A.    Defendants' Evidence Confirms that Defendants Only Accommodated DPV Class Member 8 and DPV Class Member 9 After Plaintiffs' Counsel Advocated for Them ............................... 5

      B.    Defendants' Attacks on DPH Class Member 7 Miss the Mark ...................... 8

IV.   DEFENDANTS' EVIDENTIARY OBJECTIONS, DKT. 3556, SHOULD BE OVERRULED ................................................................. 9

CONCLUSION ................................................................. 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Armstrong v. Newsom*,
484 F.Supp.3d 808 (N.D. Cal. 2020) ........................................................................ 9

*Armstrong v. Newsom*,
58 F.4th 1283 (9th Cir. 2023) .................................................................................. 8

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) ................................................................................................ 2

*Nomadix, Inc. v. Hospitality Core Services LLC*,
2016 WL 344461 (C.D. Cal., Jan. 27, 2016) ........................................................... 2

*Ready Transportation, Inc. v. AAR Manufacturing, Inc.*,
627 F.3d 402 (9th Cir. 2010) ................................................................................... 2

*Sweet v. Cardona*,
657 F. Supp. 3d 1260 (N.D. Cal. 2023) ................................................................... 1

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ................................................................................... 2

## OTHER AUTHORITIES

Boston Univ., Arts & Sciences Magazine, "Revolutionizing American Sign
Language Tools," *available at* https://www.bu.edu/cas/arts-
sciences/article/revolutionizing-american-sign-language-tools/ ............................. 10

## RULES

Fed. R. Evid. 1006 .......................................................................................................... 9

Fed. R. Evid. 803 ............................................................................................................ 9

PLS.' REPLY TO DEFENDANTS' RESPONSE IN SUPPORT OF MOTION FOR ORDER TO ENFORCE THE
REVISED PERMANENT INJUNCTION AND EVIDENTIARY OBJECTIONS [ECF NOS. 3525, 3554, 3556, 3562]

Defendants' supplemental Response ("Response"), Dkt. 3562, confirms they are violating prior Court orders, their remedial plan, and the ADA, requiring further and more specific injunctive relief.  Defendants' Response and accompanying evidence show that Defendants do not, as required by the Revised Permanent Injunction, provide "additional time" or "adequate training" to panel attorneys to accommodate people with disabilities; do not have a system to reliably identify and provide timely reading and writing accommodations to blind and low-vision class members; and do not believe deaf signers' representations regarding the assistance they need with reading and writing.  Though Defendants have made some changes in response to Plaintiffs' Motion, these recent, litigation-motivated efforts are not sufficient to moot the need for the relief set forth in Plaintiffs' Proposed Order.  In addition, Defendants' motion to strike Plaintiffs' reply evidence should be denied and Defendants' evidentiary objections should be overruled.

**I.    DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED BECAUSE PLAINTIFFS' REPLY EVIDENCE RESPONDED TO DEFENDANTS' OPPOSITION AND DEFENDANTS HAVE NOW HAD AN OPPORTUNITY TO RESPOND TO THE EVIDENCE**

Defendants' motion to strike Plaintiffs' reply evidence, Dkt. 3556, should be denied.  Courts can consider reply evidence "when the new evidence appears to be a reasonable response to the opposition or upon giving the non-movant the opportunity to respond." *Sweet v. Cardona*, 657 F. Supp. 3d 1260, 1275 (N.D. Cal. 2023) (quotation marks omitted).

Plaintiffs' reply evidence responded to Defendants' opposition arguments and evidence.  Defendants argued Plaintiffs had not established systemic violations.  Opp., Dkt. 3543, at 5, 16, 19, 21.[1]  Plaintiffs' reply evidence showed the opposite.  Reply Decl. of Gay Grunfeld ("Grunfeld Reply Decl."), Dkt. 3554-1, ¶ 25.  Defendants argued they have an adequate system for identifying and providing accommodations to blind and low-vision class members.  Opp. at 21-26.  Plaintiffs' reply evidence showed that Defendants

---

[1] Pincites for briefs refer to the ECF page numbers, not internal pagination.

[4419034.11]

1

Case No. C94 2307 CW

PLS.' REPLY TO DEFENDANTS' RESPONSE IN SUPPORT OF MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION AND EVIDENTIARY OBJECTIONS [ECF NOS. 3525, 3554, 3556, 3562]

have not yet implemented a functioning system.  Reply Decl. of Caroline Jackson ("Jackson Reply Decl."), Dkt. 3554-4, Exs. M, N, P; Reply Decl. of Michael Parker ("Parker Reply Decl.").  Defendants argued they provide deaf signers video-based accommodations following an individualized assessment of need.  Opp. 19-21.  Plaintiffs' reply evidence showed flaws in this process.  Jackson Reply Decl., Ex. O; Reply Decl. of Roger Williams ("Williams Reply Decl."), Dkt. 3554-3.  Defendants argued their contractor provides adequate training to panel attorneys.  Opp. at 14.  Plaintiffs' reply evidence showed Defendants have no knowledge of the content of that training.  Grunfeld Reply Decl. ¶¶ 15-19.  Defendants claimed they intended to use a specially-trained attorney to represent deaf signers.  Opp. at 14.  Plaintiffs' reply evidence showed that is not happening.  Jackson Reply Decl. ¶¶ 3-8.  Indeed, Defendants failed to identify a single piece of Plaintiffs' reply evidence that did not respond to Defendants' opposition arguments and evidence.

In addition, Defendants, with their Response, have had the opportunity to respond to the reply evidence.  Defendants complain that they were unable to "evaluat[e] the moving evidence in the context that the Court will consider it—cumulatively with all of the evidence."  *See* Resp. at 3.  But the Court permitted Defendants to "respond to any new matters that were addressed in Plaintiffs' reply brief," Dkt. 3557, without placing any restrictions on Defendants' ability to contextualize those matters.

Defendants' cited cases also do not support their position that the Court should strike the reply evidence.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894–95 (1990) (striking evidence filed after hearing and nearly two years after briefing); *Nomadix, Inc. v. Hospitality Core Services LLC*, 2016 WL 344461, at *12, 15 (C.D. Cal., Jan. 27, 2016) (striking reply arguments and evidence when opposing party had no opportunity to respond); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (upholding decision not to consider argument raised for the first time on reply); *Ready Transportation, Inc. v. AAR Manufacturing, Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that court has power to strike from public docket a confidential settlement agreement).

## II.   DEFENDANTS' EVIDENCE SHOWS THAT PANEL ATTORNEYS REQUIRE ADDITIONAL PAY AND TRAINING TO ADEQUATELY ACCOMMODATE CLASS MEMBERS

Defendants' Response confirms (1) that they do not, as required by the Revised Permanent Injunction, provide panel attorneys with "adequate additional time" or training to accommodate class members and (2) that attorneys will only take the time to accommodate class members if Defendants pay them extra to do so.  As set forth in Plaintiffs' Proposed Order, Dkt. 3525-8, at 24-25, Defendants should be required to pay panel attorneys more to represent deaf signers and blind and low vision class members and to provide the attorneys additional and adequate ADA training.

Defendants' new evidence shows that a single panel attorney who knows sign language is no solution to Defendants' systematic failures to adequately train panel attorneys to represent deaf signers.  In their Opposition, Defendants asserted that they can accommodate deaf signers because one panel "attorney with sign language expertise is generally appointed to represent deaf class members in all relevant parole proceedings." Opp. at 14 (citing Decl. of Heidi Rummel, Dkt. 3543-3, ¶ 13).  On reply, Plaintiffs submitted evidence that this attorney "has yet to represent a single deaf signer" and "has been appointed to represent just one of the five deaf signers with hearings in the next few months."  Reply, Dkt. 3554, at 17 (citing Jackson Reply Decl., ¶¶ 3, 5-8 & Ex. B).  In their Response, Defendants do not contest these facts.  In fact, Defendants have now backtracked, claiming only that the Board "endeavors" to have this attorney represent deaf signers.  Suppl. Decl. of Tara Doetsch ("Suppl. Doetsch Decl."), Dkt. 3564-3, ¶ 4.

Defendants' attempts to explain why this attorney has not represented deaf signers only prove that a further order requiring additional pay and training is needed for attorneys to accommodate class members.  Defendants state that they needed the attorney's approval to assign him to represent deaf signers at institutions other than his assigned institutions. *See* Resp. at 9.  They then explain that, to convince the attorney to represent "several deaf signers" in the future, Defendants agreed to pay him twice the standard fee ($1890 v. $945 per case) to compensate him for travel.  *Id.*; Doetsch Suppl. Decl., ¶ 7.  Defendants did not

identify the number of deaf signers whom this attorney will represent or state that they intend to maintain this practice into the future. Resp. at 9; Doetsch Suppl. Decl., ¶ 7.

Defendants argue that this evidence somehow establishes that "a blanket increase in compensation for panel attorneys who represent class members is unnecessary, overbroad, and unduly intrusive." Resp. at 9. To the contrary, Defendants' evidence shows that Defendants are violating the Revised Permanent Injunction and that increased pay for panel attorneys is necessary to bring them into compliance. The Revised Permanent Injunction mandates that Defendants "must" provide attorneys with "adequate additional time for providing ... [accommodation] services." Rev. Perm. Inj. ¶ 30. Defendants' supplemental evidence confirms that, to accommodate certain people with disabilities, it is necessary to pay attorneys additional money. This particular panel attorney only agreed to take on the added time and expense necessary to accommodate deaf signers once Defendants agreed to pay him more. Doetsch Suppl. Decl., ¶ 7. Panel attorneys simply will not commit "additional time" to accommodating class members—whether by reading documents to and scribing for people, communicating through sign language interpreters, or traveling—unless they receive compensation for that time.

Defendants' reliance on this one attorney also exposes the need for additional and improved training for panel attorneys to represent deaf signers and blind and low vision class members.[2] Given Defendants' difficulty in persuading this attorney to represent the very few deaf signers with upcoming suitability hearings, Defendants must ensure that all of their panel attorneys are trained to accommodate class members.

**III.    DEFENDANTS ONLY ACCOMMODATED DPH CLASS MEMBER 7 AND DPV CLASS MEMBERS 8 AND 9 IN RESPONSE TO PLAINTIFFS' ENFORCEMENT MOTION OR OTHER ADVOCACY**

In their Response, Defendants attempt to pick apart reply declarations from three class members submitted to rebut Defendants' opposition evidence and to show continued

---

[2] As of the submission of this brief, Defendants still have not provided Plaintiffs' counsel with access to the ADA training materials provided to panel attorneys by Defendants' contractors, Parole Justice Works.

[4419034.11]

4

Case No. C94 2307 CW

violations of this Court's prior orders.  Most of Defendants' arguments regarding these class members are irrelevant because they do not address the central dispute—whether Defendants accommodate class members in preparing for and following up from parole proceedings.[3]  Moreover, Defendants' evidence shows that violations of the Revised Permanent Injunction persist and that Court intervention remains necessary.

### A.    Defendants' Evidence Confirms that Defendants Only Accommodated DPV Class Member 8 and DPV Class Member 9 After Plaintiffs' Counsel Advocated for Them

Plaintiffs submitted declarations from DPV Class Members 8 and 9 to show that they had not received needed accommodations—including accessible versions of their Comprehensive Risk Assessments ("Risk Assessments") and help scribing documents—to prepare for their parole suitability hearings occurring in the next few months.  *See* Reply at 7; Jackson Reply Decl., Exs. M & P.  In their Response, Defendants assert that they have now provided these accommodations and that they have systems in place to ensure future accommodations.  *See* Resp. at 5-8.  But Defendants still have not presented evidence that their system works without Plaintiff counsel's intervention.

Defendants concede that DPV Class Member 8 only received his audio copy of his Risk Assessment following "an advocacy from Plaintiffs' counsel."  Resp. at 7.  And Defendants' evidence further shows that Defendants' other attempts to identify and provide him accommodations failed.  His supposedly "ADA trained" attorney did not identify his need for large print or audio format.  *See* Moeller Suppl. Decl., Ex. F.  And a correctional counselor who, on December 7, 2023, did document his need for large print, *see* Decl. of Dawn Lorey ("Lorey Decl."), Dkt. 3560, Ex. A, did not act on that information to provide him with related accommodations.  *See* Moeller Suppl. Decl. ¶ 6

---

[3] The irrelevant issues include whether the class member's appointed attorney objected to the class member's ADA accommodations, Suppl. Decl. of Daniel Moeller ("Moeller Suppl. Decl."), Dkt. 3562-2, ¶¶ 7, 11; whether accommodations provided *during* hearings were adequate, *id.*; whether sign language interpretation during a Comprehensive Risk Assessment was qualified, Resp. at 4-5; the reasons why the Board denied parole, *id.* at 7; or whether group programming requires reading and writing and is necessary to success at the Board, *see* Moeller Suppl. Decl. ¶ 9.

(request for large print "first received" from Plaintiffs' counsel on December 18, 2023). As a result, DPV Class Member 8 did not receive an accessible copy of his Risk Assessment for seven weeks after he was served with an inaccessible copy. *See* Lorey Decl. ¶ 9 (served with inaccessible Risk Assessment on Oct. 30); Moeller Suppl. Decl., Ex. B (served large-print Risk Assessment on Dec. 21) & Ex. C (audio version of Risk Assessment on Dec. 22).

The record also confirms that Defendants made no efforts to provide DPV Class Member 9 with an audio Risk Assessment until Plaintiffs' counsel requested it. *See* Jackson Reply Decl., Ex. P, ¶¶ 22, 28. Defendants did not proactively provide the accessible Risk Assessment despite numerous contacts between this class member and BPH personnel, including attorney meetings, *see* Moeller Suppl. Decl., Exs. J-L, and completion of a BPH Form 1073, Lorey Decl. Ex. I. And, though Associate Chief Deputy Commissioner Moeller avers, likely without personal knowledge, that DPV Class Member 9 has received the audio Risk Assessment, *see* Moeller Suppl. Decl. ¶ 13, Defendants have not submitted any documentation to support that assertion.[4]

The evidence therefore shows that Defendants did not satisfy their affirmative obligation to identify and provide accommodations for the class members' well-known disabilities. *See* Reply at 8 (collecting cases). A system that works only when Plaintiffs' counsel requests an accommodation is no system at all. As the Court Expert explained in his report regarding disability accommodations at the Substance Abuse Treatment Facility:

> It was not [Defendants] that identified these problems; it was Plaintiffs' counsel …. [T]he result is that [Defendants have] not demonstrated that [they are] able to self-correct in the manner that would justify a lesser level of scrutiny by the Court and other outside monitors. Self-correction has to be the goal, and … it is a long way off.

Ct. Expert's Rep. Re: Treatment of People with Disabilities at Substance Abuse Treatment

---

[4] DPV Class Member 9 stated that staff informed him on December 12 that the institution had received the audio Risk Assessment, but that, as of December 26, he had not yet received it. Jackson Reply Decl., Ex. P, ¶ 28. Defendants have not submitted any evidence to show he now has the audio Risk Assessment.

Facility (SATF), Dkt. 3446, at 2-3 (Dec. 20, 2022).

The other changes Defendants discuss are all insufficient to show they are complying with their obligations under the Revised Permanent Injunction and the remedial plans. Defendants submitted evidence that they have "delivered for deployment" the Zoomax Snow 12, a device to assist blind and low-vision class members in reading documents, to the prisons housing DPV Class Members 8 and 9. *See* Resp. at 6, 8. But Defendants presented no evidence that either class member has received the device or training regarding how to use it or that the device was effective as an accommodation for the class members. *See id.*

Defendants trumpet "a recent directive"[5] that "authorizes voluntary overtime" for correctional counselors to help class members with "effective communication accommodations for parole suitability hearing preparations." Resp. at 8 (citing Lorey Decl. ¶ 20). Though this too represents progress, it is insufficient on its face. Since the directive (which Defendants have not submitted) only authorizes "voluntary" overtime, it does not require that the counselors provide the help class members need. It is therefore a far cry from the parties' 2020 agreement memorialized in the CC1 Memorandum, which *required* correctional counselors to provide such assistance and which Defendants backed out of in response to pressure from the California Correctional Peace Officers Association. Decl. of Gay Grunfeld, Dkt. 3525-1, ¶¶ 3-6, 20, 22-23 & Exs. B, K, L.

Lastly, Defendants tout their rollout of the Eye Care Institute assessments, even though neither DPV Class Member 8 nor DPV Class Member 9 have been evaluated.[6] Resp. at 6, 8. Though these assessments are necessary for identifying accommodations,

---

[5] Defendants provide no date for the directive. Given that Defendants first submitted evidence of this directive with their Response, the Court can infer that Defendants only implemented the directive *after* Defendants submitted their opposition.

[6] Defendants contend that DPV Class Member 8 refused to be transported to a January 9, 2024 assessment at the Eye Care Institute. DPV Class Member 8's appointment was only two days before Defendants filed their Response, suggesting that Defendants scheduled him only after Plaintiffs submitted his declaration. Moreover, Defendants have an obligation to offer accommodations even if class members choose to accept them.

PLS.' REPLY TO DEFENDANTS' RESPONSE IN SUPPORT OF MOTION FOR ORDER TO ENFORCE THE REVISED PERMANENT INJUNCTION AND EVIDENTIARY OBJECTIONS [ECF NOS. 3525, 3554, 3556, 3562]

Defendants' promise to perform them does not obviate the need for relief. Moreover, the assessments, standing alone, do not ensure that class members receive the identified accommodations or the training needed for the accommodations to be effective.

Defendants' future plans are either inadequate on their face (the overtime directive) or have not yet been shown to be effective (the Zoomax and the Eye Care Institute assessments). As the Ninth Circuit has explained, because "voluntary plans may change," it is irrelevant whether a government has "already committed" to "voluntarily" remedy a violation of civil rights law. *Armstrong v. Newsom*, 58 F.4th 1283, 1295 (9th Cir. 2023).

**B.    Defendants' Attacks on DPH Class Member 7 Miss the Mark**

Plaintiffs cited DPH Class Member 7's declaration for the limited proposition that Defendants failed to identify that he needed assistance reading and writing documents. Reply at 5. Defendants dispute this point, stating that DPH Class Member 7 has a high TABE score (12.9) and that it appears that he can write because there are handwritten changes marked in his declaration. Resp. at 5. In so arguing, Defendants ignore the class member's sworn testimony that he struggles to understand written English, Jackson Reply Decl., Ex. O, ¶ 4, and speculate about the source of handwritten edits to his declaration.

Rather than address Plaintiffs' arguments, Defendants attack DPH Class Member 7's credibility. These efforts miss the mark. Their primary argument is that he did not, as he claims, waive his parole suitability hearing because of insufficient time with an attorney, but rather because he felt he needed more time to "open up" during his parole hearing. Resp. at 4-5. Defendants disregard, however, that DPH Class Member 7 stated that he waived his upcoming hearing because, to adequately prepare, he needed more than four months to work with an attorney. *See* Jackson Reply Decl., Ex. O, ¶¶ 8-10. Indeed, one of the central functions of a parole attorney is to help prepare parole candidates to open up during their parole hearings. *See* Decl. of Keith Wattley, Dkt. 3525-6, ¶¶ 24, 27.

Defendants also irrelevantly address the quality of the interpreter at DPH Class Member 7's Risk Assessment interview. Resp. at 4-5. Plaintiffs are not at this time seeking relief for interpreter quality at these interviews. What is relevant, however, is

Defendants' failure to credit the class member's account of translation errors during a BPH proceeding. *See id.* Defendants' position underscores the need to have video evidence of translation errors at suitability hearings to allow deaf signers to pursue related appeals and grievances.

## IV. DEFENDANTS' EVIDENTIARY OBJECTIONS, DKT. 3556, SHOULD BE OVERRULED

Defendants' objections to the entirety of the Grunfeld and Jackson reply declarations should be overruled because these declarations "contain only facts," as required by Civil Local Rule 7-5(b).

All of Defendants' objections under Rule 403 should be overruled, "because there is no danger of unfair prejudice as the Court, not a jury, is making factual determinations." *Armstrong v. Newsom*, 484 F.Supp.3d 808, 824 n.11 (N.D. Cal. 2020).

Defendants' foundation objections should be overruled. Paragraph 25 of the Grunfeld Reply Declaration and paragraphs 9 and 10 of the Jackson Reply Declaration are based on personal knowledge. Paragraphs 5 and 6 of the Jackson Reply Declaration are based on self-authenticating documents or on evidence Defendants submitted to the Court.

Defendants' hearsay objections should be overruled. Paragraphs 11, 14, 15 and 22-25 of the Grunfeld Reply Declaration, paragraphs 5 and 8 of the Jackson Reply Declaration, and paragraph 9 of the Parker Reply Declaration are admissible because the testimony (a) authenticates and/or summarizes the content of voluminous writings, which are attached as exhibits, *see* Fed. R. Evid. 1006; or (b) is based on personal knowledge, including impressions of other people's mental or emotional condition, Fed. R. Evid. 803(3). Defendants have not objected to the exhibits underlying this testimony and do not dispute the accuracy of the summaries provided.

Paragraphs 9 and 10 of the Jackson Reply Declaration—which are based upon Ms. Jackson's knowledge of American Sign Language, spoken by 500,000 Americans, *see* Boston Univ., Arts & Sciences Magazine, "Revolutionizing American Sign Language Tools," *available at* https://www.bu.edu/cas/arts-sciences/article/revolutionizing-american-

sign-language-tools/ (last visited Jan. 17, 2024)—are not improper expert testimony.

**CONCLUSION**

Defendants' Response confirms that the Court should grant Plaintiffs' motion and issue Plaintiffs' Proposed Order, Dkt. 3525-8.  The "marginal improvements" Defendants have made in response to Plaintiffs' motion do not obviate the need for an injunction.  *See Armstrong*, 58 F.4th at 1295.

Attorney Pay and Training (Rev. Perm. Inj. ¶ 30; Prop. Order at 24-25): Defendants concede additional pay is necessary when cases require additional time, but have no system in place to provide that extra pay.  Defendants' plan to rely on one panel attorney to represent all deaf signers has serious flaws, including that he has not been appointed to represent all of the deaf signers with upcoming, scheduled hearings.

Identifying and meeting the needs of blind and low-vision class members (Rev. Perm. Inj. ¶¶ 19, 20, 22, 32-34; Prop. Order at 17-21):  While Defendants have developed a plan to identify the needs of blind and low-vision class members, it has not yet been implemented.  Defendants have not established any policies or procedures for producing and serving documents in accessible formats.  And Defendants have not shown that any blind or low-vision class members have received accommodations pursuant to this system.

Video accommodations for deaf signers (Rev. Perm. Inj. ¶¶ 19, 32-34; Prop. Order at 21-23):  Defendants have not shown a single instance of providing or preparing to provide a video ASL translation of parole documents to deaf signers.  Defendants do not claim to provide deaf signers with any reliable method of appealing ADA violations during their hearings on the basis of the interpreter's failure to ensure effective communication.

Writing Accommodations (Rev. Perm. Inj. ¶¶ 19-20, 32-34; Prop. Order at 23-24): Defendants have not established a single instance of Defendants effectively providing timely assistance with writing to deaf, blind or low-vision parole candidates; and have not rebutted Plaintiffs' evidence showing that this does not occur.

For these reasons and those in Plaintiffs' other filings, Plaintiffs' Motion should be granted.

[4419034.11]

10

Case No. C94 2307 CW

DATED:  January 18, 2024

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By:  */s/ Gay Crosthwait Grunfeld*
     Gay Crosthwait Grunfeld

Attorneys for Plaintiffs

[4419034.11]

11

Case No. C94 2307 CW

PLS.' REPLY TO DEFENDANTS' RESPONSE IN SUPPORT OF MOTION FOR ORDER TO ENFORCE THE
REVISED PERMANENT INJUNCTION AND EVIDENTIARY OBJECTIONS [ECF NOS. 3525, 3554, 3556, 3562]