DONALD SPECTER – 083925
RITA K. LOMIO – 254501
MARGOT MENDELSON – 268583
PATRICK BOOTH – 328783
JACOB J. HUTT – 804428 (MJP)
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710-1916
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
THOMAS NOLAN – 169692
PENNY GODBOLD – 226925
MICHAEL FREEDMAN – 262850
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone: (415) 433-6830
Facsimile: (415) 433-7104

LINDA D. KILB – 136101
DISABILITY RIGHTS
EDUCATION & DEFENSE FUND, INC.
3075 Adeline Street, Suite 201
Berkeley, California 94703
Telephone: (510) 644-2555
Facsimile: (510) 841-8645

Attorneys for Plaintiffs

CALIFORNIA OFFICE OF THE
ATTORNEY GENERAL
ROB BONTA
Attorney General of the State of California
MONICA ANDERSON
Senior Assistant Attorney General
SHARON A. GARSKE
Supervising Deputy Attorney General
SEAN LODHOLZ
OLENA LIKHACHOVA
ANNE M. KAMMER
GURPREET SANDHU
TRACE O. MAIORINO
Deputy Attorneys General
State Bar No. 179749
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-7004
Telephone: (415) 510-3594
Fax: (415) 703-5843
E-mail: Trace.Maiorino@doj.ca.gov

Attorneys for Defendants Gavin Newsom and the California Department of Corrections and Rehabilitation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>  Defendants. | Case No. C94 2307 CW<br><br>**JOINT CASE STATUS STATEMENT**<br><br>Judge: Hon. Claudia Wilken |

The parties submit this Joint Case Status Statement pursuant to the Stipulation and Order entered March 28, 2011 (ECF No. 1868), which provides that "[t]he parties will file periodic joint statements describing the status of the litigation" every other month, beginning on May 16, 2011.

# CURRENT ISSUES[1]

A.  **Plaintiffs' Enforcement Motion Regarding Accommodations for Deaf, Blind, and Low-Vision Class Members in the BPH Process**

On November 14, 2023, Plaintiffs filed a Motion to Enforce the Court's prior orders in this case related to providing accommodations for deaf, blind and low-vision class members to prepare for parole-suitability hearings and complete post-hearing tasks. ECF Nos. 3525, 3525-1, 3525-2, 3525-3, 3525-4, 3525-5, 3525-6, 3525-7, 3525-8. Defendants filed their opposition on December 12, 2023. ECF Nos. 3543, 3543-1, 3543-2, 3243-3, 3543-4, 3543-5, 3543-6, 3543-7. Plaintiffs filed their reply, and supporting declarations and exhibits, on December 27, 2023. ECF Nos. 3554, 3554-1, 3554-2, 3554-3, and 3554-4. Defendants filed their objections to Plaintiffs' reply evidence on January 3, 2024. ECF No. 3556. Defendants filed a response to Plaintiffs' reply evidence on January 11, 2024, ECF No. 3562, and Plaintiffs filed a reply to Defendants' response seven days thereafter, ECF No. 3566. The motion is under submission.

B.  **Allegations of Abuse, Retaliation, and Violence by CDCR Staff Against Class Members**

   1.  **Plaintiffs' Statement**

      a.  **RJD and Five Prisons Orders**

Plaintiffs continue to monitor remedial efforts found necessary in order to prevent further violations of the ARP and class members' ADA rights at six prisons including changes to the staff misconduct investigation process and implementation of Audio Visual Surveillance Systems that include body-worn camera technology. *See* ECF Nos. 3059,

---

[1] Statements are joint unless otherwise delineated as either *Plaintiffs' Statement* or *Defendants' Statement*.

3060, 3217 and 3218.  Party agreements regarding Court ordered changes are found in Defendants' RJD and Five Prisons Remedial Plans ("Plans").  *See* ECF No. 3393, Exs. A, B.

Plaintiffs have produced multiple reports identifying ongoing failures to hold staff accountable for misconduct.  Plaintiffs' reports evidence incomplete and biased investigations that thwart the discovery of misconduct and, even when misconduct is apparent during the investigation, poor decision-making on the part of Hiring Authorities, preventing accountability.  Plaintiffs are seriously concerned that, at this point in the reform process, Defendants are still failing to hold staff accountability for disability-related misconduct.

Plaintiffs were very surprised to learn, through an Office of the Inspector General ("OIG") report, that Defendants had closed hundreds of staff misconduct complaints, reclassifying them as routine matters, in response to a shortage of staff to investigate such complaints.  *See* January 29, 2024 Special Report "*The Department Violated Its Regulations by Redirecting Backlogged Allegations of Staff Misconduct to Be Processed as Routine Grievances*" https://www.oig.ca.gov/wp-content/uploads/2024/01/OIG-Special-Review-No-SR-23-01.pdf.  Plaintiffs have, for over a year, raised concerns about staffing shortages in the Office of Internal Affairs ("OIA") and the impact of such shortages on the court-ordered remedies to improve staff misconduct investigations.  Despite multiple meetings to discuss OIA staffing levels, Defendants failed to disclose to Plaintiffs that, in an effort to reduce the backlog of cases, they were closing hundreds of staff misconduct complaints.  The parties and Court Expert met on February 22, 2024 about this failure.  Related, Plaintiffs also recently objected to unilateral changes Defendants have made screening of staff misconduct complaints as routine matters, an action also taken in an apparent effort to stem the flow of complaints.  *See* Dkt. 3564, Exhibit A.  If Defendants are understaffed to conduct complete and thorough investigations into allegations of staff misconduct the solution is to hire more staff, not to sweep complaints under the rug.

CDCR is a statewide system.  Plaintiffs assert that violations of the ADA and ARP

found thus far at six prisons exist system-wide and are committed to bringing such evidence before the Court until all class members are protected.

### b. False, Retaliatory and Discriminatory RVRs

Despite significant progress made towards court-ordered improvements to the staff misconduct investigation and disciplinary system, the endemic use of false and retaliatory RVRs by staff to cover up disability-related misconduct and/or to retaliate against class members who report misconduct remains a problem. *See* ECF No. 3296 at 9. The same biased review that plagues the staff inquiry and investigation processes also denies class members due process in disciplinary hearings, resulting in longer terms of imprisonment, denials of privileges, housing at higher classification levels, and an unwillingness to report future misconduct or request disability-related help.

Plaintiffs' counsel continues to identify class members who have received false, retaliatory, discriminatory or otherwise inappropriate RVRs. The use of RVRs to retaliate against and discourage the filing of staff misconduct complaints will persist unless Defendants take action to identify and root out problems through meaningful reforms to the RVR process.

Defendants have agreed to multiple changes, but Plaintiffs continue to raise outstanding problems. Given the high number of complaints regarding retaliation in the system, Defendants should take additional, proactive steps to discover whether individuals who have filed staff complaints subsequently receive RVRs. All effort should be made to root out this pervasive form of retaliation if CDCR is serious about ensuring the effectiveness of the staff complaint process.

Further, the issuance of RVRs to incarcerated people for filing staff complaints after the complaint is not confirmed remains a significant problem.

Plaintiffs are hopeful that the parties can agree to resolve problems and that additional court intervention will not be necessary.

2.  **Defendants' Statement**

    a.  **RJD and Five Prisons Orders**

Notwithstanding Plaintiffs' concerns and objections related to the recent revisions to the staff-misconduct processes, CDCR's staff-misconduct investigations and discipline processes are in compliance with this Court's orders applicable to the six prisons, as well as the comprehensive and effective remedial plans. ECF Nos. 3059, 3060, 3217, 3218, and 3393. CDCR has dramatically overhauled its processes to ensure unbiased and complete investigations and, although not required by the Court's orders, Defendants have deployed statewide the processes that restructure CDCR's staff misconduct allegation, screening, referral, investigative, and disciplinary processes. As the Court has noted, "[t]hese agreed-upon measures constitute substantial improvements that will go a long way to bringing Defendants into compliance with the ARP and ADA at the six prisons." ECF No. 3356 at 2. The Court found, the "implementation of these [] remedial measures is likely to have a positive impact on…the overall reliability of the outcomes of investigations." *Id.*, at 15. The parties met with the Court Expert on February 22, 2024, to discuss the recent OIG report and will meet again on March 19, 2024, to further discuss the Centralized Screening Team and other components of the staff misconduct process that may require coordinated modifications to ensure successful deployment of these statewide processes.

    b.  **Demands for RVR Reform**

Defendants have made significant progress and commitments to address Plaintiffs' demands that CDCR address the alleged practice of issuing false and retaliatory Rules Violations Reports (RVRs) to class members, as detailed in previously filed statements. *See* ECF Nos. 3412 at 14-16, 3526 at 7, 8. Defendants continue their discussions with Plaintiffs and the Court Expert, to further address Plaintiffs' concerns related to the RVR process noted above, and to further discuss CDCR's extensive proposed revisions to the extent such revisions are specifically related to class-member concerns. CDCR continues to address these issues during the parties' workgroups and to seek collaborative resolution of RVR issues specifically related to class-member accommodation or alleged

1 discrimination or retaliation to the extent it is required to do so under the remedial plans, the ADA, or prior court orders.  Plaintiffs' general complaints about the RVR process, unrelated to class-member accommodations, are not properly raised in this case.

**C.  Court Expert Investigation Into SATF, the State's Largest Prison**

**1.  Plaintiffs' Statement**

In November 2021, this Court ordered the Court Expert to investigate the treatment of people with disabilities at the California Substance Abuse Treatment Facility and State Prison, Corcoran (SATF). ECF No. 3338.  In December 2022, the Court Expert filed a 67-page report, finding that people with disabilities at SATF are "living diminished and needlessly difficult lives," and as a result "face harsher prison conditions, and thus greater punishment, than their peers."  ECF No. 3446 at 4.  People with disabilities were denied accommodations needed to safely and independently perform a wide array of activities, including to eat, perform bodily functions, write, and participate in rehabilitative programs.  The Court, through increasingly detailed orders, has required corrective action, including additional analysis and reporting by the Court Expert and the development of policies and procedures by CDCR. *See* ECF No. 3467; ECF No. 3538.

Plaintiffs are glad that there finally is a plan to draft policies on several important issues, develop meaningful auditing mechanisms, and procure needed disability accommodations.  Plaintiffs are discouraged that it required a Court order and that CDCR had steadfastly ignored these very issues **for years**, notwithstanding Plaintiffs' repeated reports and demands for action.  *See* ECF Nos. 3510-1, 3510-2, 3510-3.  It should not take a Court-ordered investigation, three reports by the Court Expert, multiple rounds of briefing by the parties, and multiple orders by the Court to compel the State to act in the face of undisputed violations of the ADA and ARP.

Since the Court Expert's first report, Plaintiffs have reported that many of the problems identified by the Court Expert at SATF can be found statewide and require statewide remedy.  Plaintiffs also have found that issues identified by the Court Expert in 2022 still persist at SATF, and Plaintiffs have identified other serious violations of the

ADA and ARP at SATF. CDCR's delayed and poor-quality responses to these concerns demonstrate that CDCR still "has not demonstrated that it is able to self-monitor and self-correct in the manner that would justify a lesser level of scrutiny by the Court and other outside monitors." ECF 3473 at 5-6.

### 2. Defendants' Statement

The Court Expert's second report concerning the treatment of people with disabilities at SATF recognized the numerous proactive measures implemented at SATF to further respond to the needs of incarcerated people with disabilities.  ECF No. 3500.  The report demonstrates that the coordinated efforts between CDCR and the California Correctional Health Care Services (CCHCS), with the Court Expert's guidance and with input from Plaintiffs, are working to effectively respond to the issues raised by the Court and addressed by the Court Expert following his initial investigation.  The Court Expert has since reported that SATF has made "significant improvements in the delivery of accommodations to class members" and that "the culture at SATF has improved," since his first report.  ECF No. 3500 at 4, 6.  As noted in the report, class members have reported to the Court Expert, through personal interviews and survey responses, "improvements in their ability to get the accommodations they needed and in the attitudes of staff."  ECF No. 3500 at 4.  The Court Expert reports that through these responsive collaborative efforts, SATF has significantly improved the process for receiving incarcerated people from other institutions and has reduced the likelihood that class members lose access to Durable Medical Equipment (DME) or medication necessary to accommodate their disabilities. *Id*. The Court Expert further reported that SATF has improved the process for collecting and handling patient requests for medical care (Form 7362s), has improved the processes for issuing, repairing, and replacing DME (including through the successful relaunch of its in-house wheelchair repair program), and has significantly improved the delivery of medical supplies, such as incontinence supplies, to class members. *Id*. Furthermore, the Court Expert states that "the current leaders and staff are to be given credit for the significant effort they made to address the problems" identified in the first report.  ECF No. 3500 at 5.

In response to this Court's order, the Court Expert issued a November 28, 2023 Addendum to Second Report Regarding the Treatment of People with Disabilities at SATF to which the parties entered into a stipulation addressing multiple issues. ECF Nos. 3529, 3538. Following the parties' stipulation, the Court issued its order setting deadlines for the further development, with Plaintiffs' input, of policies addressing various issues at SATF, including whiteboard captioning technology, accessible phones, and effective communication of announcements and, therefore, addressing Plaintiffs' concerns noted above. ECF No. 3538. On February 23, 2024, the parties and Court Expert met about several items addressed in the stipulation, and Defendants look forward to continued collaboration with Plaintiffs and the Court Expert to address and resolve these remaining issues at SATF.

### D. Accommodations for Deaf and Hard-of-Hearing Class Members

#### 1. Plaintiffs' Statement

Defendants for years have failed to provide adequate disability accommodations to people who are D/deaf and hard-of-hearing who, as a result of their disability have lived in significant isolation; they have not been able to meaningfully participate in prison programs, services, and activities and have not been able to maintain ties with loved ones. The few recent, halting steps forward in certain areas primarily are the result of this Court's order for an investigation of conditions at SATF and resulting orders to remedy ADA and ARP violations discovered during that investigation.

**CART.** Despite multiple representations to the Court that CART would be implemented statewide for a wide range of programs and activities, Defendants backtracked and have now indicated they intend to provide captioning through the "ViewSonic whiteboard," a device that relies on software to generate captions automatically, without correction from a human. In response to Plaintiffs' concerns about the reliability of this untested software, on December 7, 2023, this Court ordered Defendants to provide Plaintiffs with a demonstration of the ViewSonic whiteboard in "multiple institutional settings" and to have a subject matter expert present at the

demonstration to answer Plaintiffs' questions regarding the capabilities of the white boards' captioning technology.  *See* ECF No. 3528 at 8.

The parties began planning for a joint demonstration of CART and ViewSonic, scheduled to take place onsite at San Quentin on January 30, 2024, which would allow the parties to assess whether ViewSonic is "an alternative reasonable accommodation" when compared with CART.  *See* ECF No. 3466 at 3.  On January 16, 2024—fourteen days before the demo—Defendants informed Plaintiffs that they planned to demonstrate ViewSonic only and did not plan to provide CART as a comparison, contrary to their prior representations.  Defendants also informed Plaintiffs that they did not intend to demonstrate ViewSonic (or CART) during any live programming, where the captioning service will ultimately be used.  The parties have resolved these differences in favor of Defendants providing a demonstration that includes both CART and ViewSonic, and that includes at least one live program.  This dispute, however, caused the parties to postpone the January 30 demonstration.  The demonstration has been rescheduled for March 27, 2024.

It is the position of Plaintiffs, and their assistive technology expert, that ViewSonic's effectiveness in relation to CART cannot be adequately assessed unless it is demonstrated in relation to CART. Upon meeting and conferring, the Court Expert appeared to share that view, and with the assistance of the Court Expert, the parties determined that a meaningful demo required (1) demonstration of CART and ViewSonic's transcription services side-by-side, and (2) demonstration of CART and ViewSonic in real-life settings, such as programming, where its use is contemplated.  Because of these uncertainties regarding the content of the demo, the parties sought an extension of time, and hope to complete the demo by April 1, 2024.  Some outstanding concerns between the parties remain, primarily regarding the need for ViewSonic and CART to be demonstrated in more than a single live program.  Plaintiffs hope that the parties can again come to a compromise with the assistance of the Court Expert.

Plaintiffs' counsel has two additional concerns: First, Defendants recently

announced that, for medical and mental health encounters, they do not plan to provide captioning via ViewSonic or CART. Rather, they intend to use the automatic captioning software, which has not been tested for efficacy or reliability in medical settings, "or an alternative effective communication method such as written notes for the encounter," which is already theoretically being provided, and has already proved ineffective for communicating medical information of varying complexity.  Second, in the last Joint Status Statement, Defendants announced they had conducted a previously-undisclosed "internal demo" of CART and ViewSonic "with six class-member volunteers at San Quentin," and gained "insight" from the experience.  *See* ECF No. 3564 at 14.  Prior to drafting the Joint Status Statement, Plaintiffs' counsel had not been informed of this demo during either its planning or execution, or at any time thereafter.  Put differently, Defendants intentionally communicated directly with class members about the subject matter of active litigation, without the knowledge or consent of Plaintiffs' counsel. Plaintiffs have sent multiple written requests—including on January 9, 2024, and January 10, 2024—for further information about these demonstrations, including which class members participated.  Plaintiffs have received no response.  Plaintiffs will object to Defendants seeking to introduce, rely on, or otherwise use any information from their undisclosed demo to the Court or in negotiations.

**Hearing Aids.**  On March 1, 2024, Defendants informed Plaintiffs that they executed a new hearing aid contract(s) on February 1, 2024.  However, Defendants have refused to provide it to Plaintiffs' counsel because it is not available for "public inspection."  Plaintiffs' position is that the contract—or at minimum, the portions pertaining to the availability of new hearing aids and whether they meet the specifications the Parties negotiated with the assistance of the Court Expert, *see* ECF No. 3526 at 11–12—must be produced to them so that they may carry out their enforcement obligations. Plaintiffs will continue to seek information on the new hearing aids, their specifications, and their availability.

**Accessible Phones**.  D/deaf and hard-of-hearing people continue to be denied equal

access to phone services.  Access to captioned phones and TTY/TDDs continues to be an urgent issue due to placement of the phones in inaccessible locations, burdensome restrictions, equipment failures, and other logistical barriers.  Defendants informed Plaintiffs that they intend to replicate their current efforts at SATF—as governed by the SATF Order, ECF No. 3538—on a statewide basis.  As of now, Defendants have indefinitely postponed disclosure of any timelines or information about statewide rollout of accessible phone installation until after they have complied with the Court's requirements for SATF.

**Effective Communication of Announcements.**  There remains no robust and durable system to provide and audit effective communication of announcements, which continues to be a significant issue for D/deaf and hard of hearing individuals.  Defendants have shared a draft policy with Plaintiffs that would provide notification via tablet computers at SATF. Last Fall, Defendants also piloted the use of watches with vibrating alarms as way to provide notification, but have yet to announce the results.  While Plaintiffs support these approaches as partial solutions, they are still only partial solutions, and Defendants have yet to propose a comprehensive, auditable solution for effectively communicating announcements to deaf and hard of hearing class members.  Plaintiffs have significant concerns about Defendants' proposal for effective communication of announcements and are working to resolve those concerns through the process outlined in the SATF Order.

**2.    Defendants' Statement**

Plaintiffs' foregoing critique fails to capture the tremendous internal effort and attention being put forward to accommodate this population and, at this juncture, seems particularly sharp-elbowed in light of the significant overlap of these issues—CART, accessible phones, and effective communication of announcements—and the parties' recent stipulation following the Court Expert's November 28, 2023 Addendum to Second Report Regarding the Treatment of People with Disabilities at SATF that addressed these issues.  ECF Nos. 3529, 3538.  Following the parties' stipulation, the Court issued its order

setting deadlines for the further development, with Plaintiffs' input, of policies addressing various issues at SATF, including whiteboard captioning technology, accessible phones, and effective communication of announcements, therefore, addressing Plaintiffs' concerns noted above. ECF No. 3538. Defendants' further efforts to accommodate this population are detailed in previously filed statements. *See e.g.*, ECF No. 3526, at 16-18.

Plaintiffs' myopic attachment to CART as demonstrated above, fails to acknowledge the unprecedented implementation of policy that provides these class members with up-to-the-minute technology to enhance their day-to-day lives and further ensure access. Overall, there are approximately 81 DPH class members statewide and their preferred effective communication is sign language or other methods. As of February 29, 2024, there are 32 DPH class members, statewide, whose primary or alternate means of effective communication is written notes. Beginning the week of November 20, 2023, CDCR began deployment of iPhone and iPad devices equipped with the translate application and the live captioning accessibility feature to DPH class members whose primary or alternative method of communication is written notes, to include those who use sign language. Class members who received an iPhone or iPad are approved to have the device within their possession during program, services, activities, and housing unit settings, including restrictive housing and any off-site appointments (*e.g.*, medical, same-day court appearances). These devices use state-of-the-art speech-to-text technology that addresses the needs of the DPH class members during informal day-to-day interactions as well as programs, services and activities.

Moreover, in accordance with CDCR's independent obligation to identify and remedy issues as they develop and to further accommodate those in its custody, CDCR periodically conducts informal demonstrations, tests, or other events to, among other things, gain insight from incarcerated people, identify logistical or technical obstacles, gain differential data or information, and identify or resolve potential security concerns. Mindful that the Court ordered Defendants to "make CART *or an alternative reasonable accommodation* available at SATF," (emphasis added) CDCR has explored technological

alternatives to CART.  During a November 21, 2023 workgroup meeting with Plaintiffs, in an ongoing effort to promote collaboration and ensure transparency, CDCR reported on a then-recent test of the CART and ViewSonic technologies, the results of which favored ViewSonic over CART, for accuracy.  During the November 21, 2023 meeting, and before the parties entered into the SATF stipulation noted above, CDCR offered to provide a demonstration of this technology and such a demonstration is scheduled for March 27, 2024, at San Quentin.  On December 6, 2023, CDCR exhibited CART and ViewSonic to six class-member volunteers at San Quentin.  The class members were able to observe and compare the various features of these technologies.  Insight gained from the experience suggests that ViewSonic is an equally effective and preferred alternative to CART. Despite Plaintiffs' mischaracterization of this demonstration and incorrect insinuation that CDCR staff are somehow prohibited from interacting with class members, correctional staff have an obligation to test various forms of accommodations and, in fact, must do so to meet CDCR's obligation.  In the face of Plaintiffs' misleading characterization that Defendants intentionally communicated with class members about the subject matter of active litigation, it must be stressed that  CDCR staff were genuinely interested in obtaining honest input from participating class members about the demonstration and did nothing to influence their choice of device.  The surveys were collected as part of CDCR's ongoing commitment to consult and work with incarcerated persons to gather feedback on a new, alternative auxiliary aid and to evaluate its effectiveness.  To the extent that Plaintiffs have expressed concerns related to effective communication during medical or mental health encounters, as noted above, CCHCS is committed to meeting its obligations and will continue to provide timely updates to stakeholders.

As to accessible phone calls, Plaintiffs are conflating various sub-populations because hard-of-hearing class members (as opposed to Deaf, non-signers and Deaf signers when calling people who do not sign) are able to use their hearing aids and volume controls to use the regular telephones to make and complete calls outside of the institution.

With respect to effective communication of public announcements to DPH class

members, CDCR continues to work diligently to ensure DPH class members receive the information provided by these announcements through the implementation of multiple existing processes such as use of whiteboards, flickering of lights, face to face communication and the development of a new process that will take advantage of technology available to the incarcerated population.

CCHCS provided Plaintiffs' counsel with a link to the public website Cal eProcure on November 6, 2023, to review the hearing-aid contract bid information. The website contains the hearing-aid contract, exhibits and addendums needed for potential bidders to review, which was also accessible to Plaintiffs' counsel for their review. Defendants understand that Plaintiffs are aware of the information posted on the website because CCHCS received a request from Plaintiffs on November 27, 2023 alerting CCHCS to an agreed-upon hearing-aid specification that had been inadvertently omitted from the bid information. In response, and on that same day, CCHCS issued an addendum to the bid information for the contract to include the specification. Plaintiffs' counsel has been engaged and updated throughout the hearing aid bidding and contracting process. CCHCS has given no indication the specifications in the formal executed contract are contrary to what was agreed upon by all parties and posted on the public website.

Defendants remain committed to providing class members equal access to programs, services, and activities in accordance with the ADA and the ARP and will continue to confer with stakeholders to ensure the further accommodation of this population.

### E. Accommodations for Blind and Low Vision Class Members

#### 1. Plaintiffs' Statement

Plaintiffs sent a December 10, 2021, demand letter to Defendants regarding the need for a statewide system for identifying, documenting, and providing reading and writing accommodations for blind and low-vision class members. As Plaintiffs explained in the demand letter, Defendants must (1) identify, track, and produce the accessible formats of written materials (such as large print, braille, and audio) that blind and low-

vision class members need to read and write (a statewide request first made by letter on March 15, 2021) and (2) make auxiliary aids for reading and writing—such as electronic video magnifiers—available to these class members outside restricted locations and hours.

On September 22, 2022, Plaintiffs submitted a proposed stipulation to Defendants to resolve disputes around these two issues. The parties negotiated the terms of the stipulation from that point until November 2023. In November 2023, after Plaintiffs filed their motion challenging Defendants' failure to adequately accommodate blind and low-vision class members and deaf and hard of hearing class members preparing for their Parole Board Hearings, Defendants promptly ceased negotiations over the draft blind/low-vision reading and writing accommodations stipulation. Defendants also cancelled future meetings of the joint blind and low-vision work group, which the parties had previously formed to discuss issues relating to the accommodation of blind and low-vision class members in CDCR custody. At present, there are no scheduled meetings of the blind and low-vision workgroup, and there are no meetings scheduled to continue negotiations over the blind and low-vision reading and writing accommodations stipulation.

On March 6, 2024, in response to a court-ordered stipulation requiring CDCR to explain how when and how it would resolve "all issues" at SATF addressed in the current draft Blind/Low-Vision Stipulation, Defendants produced a memorandum dated January 31, 2024, regarding visual accommodations for certain blind and low-vision class members. Plaintiffs are currently reviewing Defendants' production.

**2.     Defendants' Statement**

The vast majority of the issues addressed in the blind and low-vision stipulation previously negotiated by the parties is addressed in the January 31, 2024 memorandum titled "Accommodations for Incarcerated Persons with a Vision Impairment, Impacting Placement." This memorandum outlines the process for identification, tracking, and provision of reading and writing accommodations, including electronic assistive devices (e.g., electronic magnifiers, electronic readers, laptops), to vision-impaired class members with a DPP designation of DPV. Pursuant to this memorandum, each DPV class member

who, following an individualized assessment by the Eye Care Institute vision consultants, is recommended an assistive device to accommodate their independent reading and writing needs, will be issued the recommended assistive device(s) for private and independent use, with minimal restrictions. These individually issued devices will allow DPV class members to privately and independently access printed materials related to CDCR programs, services and activities. Moreover, the January 31, 2024 memorandum and the attached template Local Operating Procedures: (a) direct provision of CDCR due process documents in Braille or large print format to DPV class members who, following individualized assessment, are determined to require large print or Braille print materials as primary visual accommodation; (b) outline the process for acquisition, issuance and replacement of the electronic assistive devices recommended as accommodations for DPV class members who cannot write by hand; (c) discuss DPV class members' individualized training on the use of the assistive devices recommended by the vision consultants; and (d) creates a timeframe for individualized assessments and the issuance of the recommended assistive devices.

## F.     Effect of the COVID-19 Pandemic on the *Armstrong* Class

On July 25, 2023, CCHCS issued a memorandum instructing institutions that they are no longer required to keep vacant the approximately 6,700 beds that had been identified for quarantine and medical isolation housing, and that this space will revert back to general population housing. This has served Defendants' efforts to reduce the number of class members on the expedited transfer list, notwithstanding remaining obstacles detailed in previously filed Joint Case Status Statements. ECF Nos. 3369, 3391, 3412, 3452, 3484. As of March 1, 2024, there were 35 non-reception center class members on the expedited transfer list awaiting expedited transfer, which is similar to pre-pandemic numbers. Plaintiffs applaud Defendants' efforts to return the number of inaccessibly housed class members to pre-pandemic levels, and are hopeful that the significant reduction will be sustainable.

### G. Problems Regarding Access to Assignments for Class Members

The program-access workgroup continues to meet to discuss credit earning, the assignment process, and disparities in the program-access assignment data in response to Plaintiffs' allegations of disability-related discrimination.  ECF No. 2680 at 13-14.  The parties met most recently with the Court Expert on December 6, 2023.

### H. Statewide Durable Medical Equipment Reconciliation

#### 1. Plaintiffs' Statement

Defendants have agreed to ensure that anyone who had not been seen by a health care provider in the last year would be seen for the purpose of reconciling their DME.  The only outstanding issue then is to ensure a process whereby health care providers actually undertake a reconciliation during at least one encounter annually.  Defendants maintain that this is already a requirement during visits with Primary Care Providers, yet thousands of class members without needed DME were identified by Defendants, despite this existing requirement.  A process for ensuring that staff actually reconcile DME during encounters is necessary.

Unfortunately, Defendants' disability tracking system still fails to identify and track class members with upper-extremity disabilities.  Plaintiffs are committed to resolving this ongoing problem.

#### 2. Defendants' Statement

Collaboration between the parties continues to develop a sustainable DME accountability process and progress has been made as noted above and as detailed in the March 15, 2023 and May 15, 2023 Joint Case Status Statements.  *See* ECF Nos. 3473 at 23-26; 3484 at 22-25.  CCHCS and CDCR agree that individuals with upper-extremity disabilities that limit a major life activity, require accommodation under the ADA, but disagree that CCHCS and CDCR must create a new Disability Placement Program (DPP) code for multiple reasons communicated to Plaintiffs as noted in the March 15, 2023 Joint Case Status Statement.  *See* ECF No. 3473 at 26.  Notwithstanding these disagreements, CDCR and CCHCS will continue to communicate with stakeholders about these issues.

I. **Joint Monitoring Tool**

The parties remain committed to developing a strong and effective joint monitoring tool. The parties continue to convene small work groups, confer with the Court Expert about informal briefing, and continue to meet to discuss and resolve the few remaining disputes between the parties such as a format for scoring and reporting compliance.

J. **ADA Structural Barriers, Emergency Evacuation Procedures, and Master Planning Process**

The parties continue to engage in the Master Planning Process aimed at ensuring that CDCR prisons are accessible to people with disabilities in compliance with the ADA. The parties met with the Court Expert about these issues on February 13, 2024, and held multiple meetings regarding specific institutions as recently as March 7, 2024. The parties have agreed upon a new Master Planning process to share information or plans related to Master Planning projects and to tour completed projects. This new process may continue to evolve as it is put into use by the parties. Defendants recently shared initial construction documents, including detailed plans for accessibility improvements, with Plaintiffs' expert who is reviewing them and will provide timely feedback. The parties agreed that, when necessary, they will conduct joint tours with their respective experts, before ADA accessibility construction projects begin and after

/ / /

they are completed, to identify and resolve any ADA-non-compliance issues.

Respectfully submitted,

DATED: March 15, 2024     ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Penny Godbold*
Penny Godbold

Attorneys for Plaintiffs

DATED: March 15, 2024     ROB BONTA
Attorney General of the State of California

By: */s/ Trace O. Maiorino*
Trace O. Maiorino
Deputy Attorney General

Attorneys for Defendants

**FILER'S ATTESTATION**

As required by Local Rule 5-1, I, Penny Godbold, attest that I obtained concurrence in the filing of this document from Deputy Attorney General Trace O. Maiorino, and that I have maintained records to support this concurrence.

DATED: March 15, 2024     */s/ Penny Godbold*
Penny Godbold