United States District Court
Northern District of California

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JOHN ARMSTRONG, et al.,

Plaintiffs,

v.

GAVIN C. NEWSOM, et al.,

Defendants.

Case No. 94-cv-02307 CW

**ORDER GRANTING IN PART MOTION TO ENFORCE REVISED PERMANENT INJUNCTION**

(Re: Dkt. No. 3525)

In this class action for violations of disabled prisoners' rights under the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act of 1973 (RA), which is in the remedial phase, Plaintiffs contend that Defendants' policies and procedures for accommodating class members with vision and hearing disabilities are not in compliance with a permanent injunction issued by this Court (Revised Permanent Injunction) or with the ADA, or that Defendants lack policies and procedures to ensure compliance with the Revised Permanent Injunction and the ADA.  Docket No. 3525.  Plaintiffs move to enforce the injunction and for an order requiring Defendants to develop a plan to ensure that their policies and procedures for accommodating class members with vision and hearing disabilities comply with the injunction and the ADA. Defendants oppose the motion.  Docket Nos. 3543, 3562.  Having carefully considered the parties' submissions, the Court GRANTS Plaintiffs' motion IN PART.[1]

---

[1] Defendants objected to the Court's consideration of matters that they contend were raised for the first time in Plaintiffs' reply.  *See* Objections, Docket No. 3556.  The Court finds that the allegedly "new" matters in Plaintiffs' reply responded to Defendants' opposition arguments and evidence and are, therefore, not improper.  Even if such matters were not responsive to Defendants' opposition arguments and evidence, the Court has discretion to consider (cont.)

United States District Court
Northern District of California

**FINDINGS OF FACT**

## I.  Procedural History

In 1994, Plaintiffs, a class of all present and future California state prison inmates and parolees with certain disabilities, including vision and hearing-related disabilities, sued California state officials with responsibility for the operation of the California Department of Corrections and Rehabilitation (CDCR)[2] and the Board of Parole Hearings (BPH), challenging the State's treatment of disabled prisoners and parolees.  Both BPH and CDCR are controlled by the governor of California, who is a Defendant in this action.  The claims relevant to the present motion are those that Plaintiffs asserted for violations of the ADA, Section 504 of the RA, and violations of the Due Process Clause of the Fourteenth Amendment, which pertain to parole proceedings conducted by BPH.

On December 22, 1999, following a bench trial, the Court found and concluded that Defendants BPH, CDCR, the governor of California, and various BPH and CDCR employees (hereinafter, Defendants) were in violation of the ADA, the Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment.  *See* Findings of Fact and Conclusions of Law, Docket No. 523.  The Court found that Plaintiffs had "presented overwhelming and uncontradicted evidence" that Defendants regularly, consistently, and as a matter of routine practice failed to make BPH's programs, services, and activities accessible to class members.  *Id.* at 3.  The Court found that (1) BPH policies and procedures were "insufficient to identify and provide

---

them, particularly given that the Court allowed Defendants additional time and an opportunity to respond.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (holding that a district court may consider new evidence presented in a reply if it gave the non-movant an opportunity to respond).  Defendants also objected to certain portions of Plaintiffs' reply declarations on the basis that they contain improper argument, impermissible hearsay, or are subject to exclusion under Federal Rules of Evidence 403, 602, 701, and 901.  *See* Docket No. 3556 at 2-3.  The Court overrules these objections as moot; the Court has not relied on any impermissible argument or inadmissible statements in the reply declarations at issue.

[2] Plaintiffs initially sued CDCR's predecessor, the California Youth and Adult Corrections Authority (YACA).  YACA oversaw the activities of its various boards and departments, including the California Department of Corrections and the Board of Prison Terms (BPT).  YACA was subsequently reorganized and superseded by CDCR, and BPT later became BPH.  The Court will use the term "CDCR" to refer to CDCR and its predecessor, YACA, and will use the term "BPH" to refer to BPH and its predecessor, BPT.

accommodations to members of the Plaintiff class when necessary and appropriate"; (2) BPH did not "know which modifications or auxiliary aids and services are appropriate to ensure access to their programs or to ensure that class members understand the proceedings"; and (3) that, although many class members could not read printed documents because of their disabilities, the BPH did "not provide any written material in alternative formats," including forms that prisoners must use to request accommodations or file ADA grievances.  *See id.* at 4-5, 36-37.  The Court found that prisoners who did not receive accommodations to review parole-related documents had to rely on their peers for assistance, which forced them to reveal personal information and put them at risk of harm.  *See id.* at 42-43.

On the same date, December 22, 1999, the Court entered a permanent injunction against Defendants, which was intended to remedy "ongoing, extensive, system-wide violations of the ADA," the RA, and the Due Process Clause.  *See* Docket No. 523 at 99.  The permanent injunction, among other things, required BPH to develop and implement "sufficiently specific policies and procedures that will ensure continuous compliance with all of the requirements of th[e] injunction" and that will "ensure that prisoners and parolees with disabilities are able to participate, to the best of their abilities, in any parole proceedings."  Docket No. 524 at 4.  The Court defined parole proceedings broadly to include events that occur prior to or after parole hearings, such as central file reviews and post-parole decision grievances or appeals.  *Id.* at 2.  The procedures that the Court ordered BPH to implement included "detailed procedures for accommodating and effectively communicating with prisoners and parolees with disabilities at all parole proceedings."  *Id.* at 4.  The Court also required BPH to give "primary consideration" to a prisoner's request for a particular type of accommodation unless the request is unreasonable "for specific, articulated reasons allowable under the ADA, or unless other effective communications are available."  *Id.* at 6.  It also ordered BPH to ensure that BPH forms were "readily available in alternative formats," *id.* at 7, and to provide auxiliary aids to class members who need them to communicate effectively in parole proceedings, *id.* at 8.  The Court further ordered that, if BPH appointed attorneys to represent and accommodate class members, those attorneys would "suffice as an accommodation" only if they were "adequately trained to provide accommodations to person

1   with disabilities" and "receive adequate additional time for providing those services." *Id.* at 9.

2   The Court further ordered BPH to provide effective assistance to class members in preparing a

3   BPH appeal to the extent that they could not do so by themselves by reason of their disability. *Id.*

4   at 11.  The Court ordered the parties to meet and confer in connection with the requirements of the

5   injunction as well as the ongoing monitoring of compliance with the same, and it retained

6   jurisdiction to enforce the terms of the injunction. *See id.* at 13.  The Court indicated that it would

7   not approve any procedures or remedial plan proposed by Defendants that failed to provide an

8   effective remedy "that fully vindicates Plaintiffs' rights under the ADA and the Constitution."

9   Docket No. 523 at 104.

10          On appeal, Defendants did not challenge the Court's findings and conclusions that

11  Defendants had engaged in system-wide violations of the ADA, the RA, and the Due Process

12  Clause. *See Armstrong v. Davis*, 275 F.3d 849, 854 (9th Cir. 2001).  Defendants appealed the

13  Court's injunction based on "procedural objections to the injunction[.]"  *See id.* at 873.

14  Defendants argued, among other things, that the injunction interfered with the BPH's activities by

15  dictating particular remedies and that the injunction was overbroad because it called for system-

16  wide relief. *See id.*  The Ninth Circuit affirmed the injunction in almost all respects.  It held, in

17  relevant part, that the Court's injunction did not attempt to micro-manage the BPH's activities but

18  instead "set clear objectives for it to attempt to attain, and, in most circumstances, general methods

19  whereby it would attain them." *See id.*  The Ninth Circuit also rejected Defendants' arguments

20  that the injunction would "impose unspecified financial and administrative burdens" on the ground

21  that "some such burdens are shared by all state agencies required to implement the ADA and

22  Rehabilitation Acts" and that BPH had not shown that it had experienced burdensome interference

23  with its parole proceedings. *See id.* at 873.  The aspects of the injunction that the Ninth Circuit

24  vacated pertained to some matters that implicated CDCR facilities or staff that had been addressed

25  in the settlement agreement that resolved Plaintiffs' claims against the CDCR Defendants. *See id.*

26  at 875-76.

27          On February 11, 2002, the Court issued a stipulated Revised Permanent Injunction to

28  conform with the Ninth Circuit's rulings.  Docket No. 788.  The Revised Permanent Injunction is

United States District Court
Northern District of California

materially the same as the initial permanent injunction in terms of the matters that are at issue in the present motion.

In April 2006, Plaintiffs moved to enforce paragraphs 15 through 17 of the Revised Permanent Injunction, which required Defendants to identify, track, and accommodate class-members prior to parole proceedings and provide them with accommodations at all parole proceedings. Docket No. 906. In May 2006, the Court granted the motion, finding that "some of the worst abuses proven at trial in April and May 1999 are continuing, almost seven years after this Court issued the Permanent Injunction." *See* Docket No. 933 at 5. The Court found that Defendants had failed to accommodate prisoners with disabilities, in violation of the ADA and the RA. *See id.* at 5-6. The Court found that the violations were directly caused by Defendants' failure to maintain a tracking system of disability identifications as required by the Court's Revised Permanent Injunction and by the ADA. *See id.* at 6. The Court ordered Defendants to implement, by a specific date, a computerized system to identify people with disabilities and track their needs for accommodation, including accommodations that BPH previously identified, and to check that system prior to the initiation of each parole proceeding, including "sufficiently in advance of any notice of rights or charges to allow for needed accommodations to be arranged before the notice of rights or charges, and sufficiently in advance of any clinical interview, file or documents review, or life prisoner planning process to allow for needed accommodations to be arranged *before* these scheduled processes." *See id.* at 8-10 (emphasis added).

In 2007, Plaintiffs filed a motion to enforce the Court's May 2006 Order, arguing that Defendants had failed to meet the Court's deadline for implementing the tracking system required in the May 2006 order. Docket No. 1123. The Court granted Plaintiffs' motion in part and ordered the parties to meet and confer to revise Defendants' plans and procedures to provide accommodations in parole proceedings. Docket No. 1199. Plaintiffs represent, and Defendants do not dispute, that their discussions in response to this order resulted in the 2010 Board of Parole Hearings Remedial Plan II (ARP II), which sets forth procedures aimed at ensuring that prisoners with disabilities are able to participate in parole proceedings as are non-disabled prisoners. *See* Caroline Jackson Decl., Ex. 5, Docket No. 3524-5 at ECF header page 112.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.     Background on Parole Proceedings

The following facts are derived from one of Defendants' documents, which contains general reference information about BPH processes.  *See* Grunfeld Decl., Ex. B at ECF header page 32-44.

The purpose of parole suitability hearings, which are conducted by a BPH panel, is to determine if a prisoner should be released from prison.  About four to six months before a parole suitability hearing, a prisoner is offered an opportunity to review his institutional records (*Olson* review) if he requests to do so.  During this time period, the prisoner is appointed an attorney and the prisoner may develop materials in support of his release, such as release plans, or he may obtain letters of support.  If the prisoner's last Comprehensive Risk Assessment (CRA) will be more than three years old at the time of the parole suitability hearing, or if the prisoner has never had a CRA, the prisoner will be interviewed by one of BPH's forensic clinical psychologists for the purpose of generating a CRA for the BPH panel to consider.  The CRA is the psychologist's professional opinion regarding the prisoner's potential risk for future violence, and it is based on the psychologist's interview with the prisoner, the prisoner's institutional record, and the psychologist's evaluation of the prisoner's offense, institutional programming, mental state, behaviors, and attitudes.  About two months before the parole hearing, the prisoner is served with his CRA.  The prisoner may object to errors in the CRA.

During a parole suitability hearing, the BPH panel will review relevant information and will ask the prisoner questions about matters that include his criminal history, programming, institutional behavior, parole plans, and relapse prevention plans.  The prisoner's attorney is given an opportunity to ask clarifying questions or to discuss any unaddressed requests for ADA accommodations.  The prisoner is given an opportunity to make a closing statement, as is his attorney.  The panel then deliberates to make a decision in a closed session.  The panel's decision, as well as the panel's supporting findings and reasons, are announced in an open session.  If the panel denies parole, the panel will announce the length of the prisoner's denial, which can range from three to fifteen years.  The panel's decision does not become final until 120 days after the

United States District Court
Northern District of California

hearing.  Parole suitability hearings are audio recorded and transcribed.  They are not video recorded.

After the hearing, the prisoner is served with a copy of the parole suitability hearing transcript.  Before a decision denying parole becomes final, a prisoner may request review of the decision by writing to the BPH (hereinafter, parole decision review).  In a request for parole decision review, the prisoner must identify factual or legal errors committed by the panel.

A prisoner may file an ADA-related grievance if at any time during the parole process the prisoner failed to receive reasonable accommodations for a disability.

A prisoner may waive his parole suitability hearing for one to five years and may petition to postpone a parole suitability hearing due to factors that include the need for accommodations for his disability at a parole suitability hearing.  Hearings that are postponed are usually rescheduled within four to six months.

### III.    Defendants' Policies and Procedures Do Not Comply With the Revised Permanent Injunction

Plaintiffs move to enforce the Revised Permanent Injunction and for an order requiring Defendants to develop a plan to ensure that their policies and procedures for accommodating class members with vision and hearing disabilities[3] comply with the Revised Permanent Injunction and the ADA.  Plaintiffs argue that Defendants' current policies and procedures do not comply with certain provisions of the Revised Permanent Injunction and their obligations under the ADA, because they do not ensure that class members with hearing and vision disabilities are able to prepare for parole proceedings (including parole suitability hearings) and prepare requests for parole decision review and parole-related grievances to the same extent as prisoners without disabilities.  Plaintiffs also argue that, with respect to attorneys appointed to represent and accommodate class members in parole proceedings, Defendants lack policies and procedures to

---

[3] In the present motion, Plaintiffs do not seek relief with respect to class members who suffer from other disabilities, such as learning, speech, or developmental disabilities.

ensure that those attorneys accommodate class members with vision and hearing disabilities as required under the Revised Permanent Injunction. Defendants oppose the motion.

The provisions of the Revised Permanent Injunction that are relevant to the resolution of the present motion are those that require that:

(1) BPH "develop and implement sufficiently specific policies and procedures that will ensure continuous compliance with all of the requirements of this injunction" and that "will ensure that prisoners and parolees with disabilities are able to participate, to the best of their abilities, in any parole proceedings." *See* Revised Permanent Injunction ¶ 10. The policies "shall include detailed procedures for accommodating and effectively communicating with prisoners and parolees with disabilities at all parole proceedings." *See id.* ¶ 12.

(2) BPH make accommodations for prisoners with disabilities to assist them in preparing for parole proceedings. *See id.* ¶ 32.

(3) BPH provide effective assistance to class members in preparing an appeal.[4] *See id.* ¶ 33.

(4) BPH employ a system for tracking prisoners with disabilities and that, prior to a parole hearing, the BPH take reasonable steps to identify prisoners with disabilities, wherein such steps shall include checking BPH's system for tracking prisoners and parolees with disabilities to determine whether the prisoner in question was previously identified as having a disability; reviewing all relevant information in the prisoner's central and medical files; and verifying the disability when BPH disputes the extent or existence of the disability. *See id.* ¶¶ 15-16.

(5) BPH provide accommodations to prisoners with disabilities at all parole proceedings and give "primary consideration" to, and grant, a prisoner's request for a particular type of accommodation "unless the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available." *See id.* ¶ 17.

(6) BPH forms provided to prisoners be readily available in alternative formats, including large print, Braille, and audio tape, and that BPH provide an accommodation to enable class members to understand the forms to the best of their abilities. *See id.* ¶¶ 19-20.

---

[4] As noted in the preceding section of this order, at present, there is a process that is equivalent to an administrative appeal whereby a prisoner may request review of any parole decision by a BPH panel before it becomes final. BPH decisions become final 120 days from the date of the parole suitability hearing. The Court used the term "appeal" in the Revised Permanent Injunction because, at the time said injunction was issued, the procedure for challenging a BPH parole decision was referred to as an administrative appeal. Paragraph 32 of the Revised Permanent Injunction governs what are now referred to as requests for decision review.

(7) BPH "ensure that appropriate equipment is available to prisoners and parolees who need such equipment to communicate effectively at parole proceedings," including assistive listening devices, computer readers, and magnification devices.  *See id.* ¶ 22.

(8) Attorneys appointed by BPH to represent class members in parole proceedings "suffice as an accommodation" only if they are "adequately trained to provide accommodations to persons with disabilities" and "receive adequate additional time for providing these services."  *See id.* ¶ 30.

**A.    Deaf Class Members Who Use Sign Language**

Paragraphs 32 and 33 of the Revised Permanent Injunction require BPH to make accommodations for prisoners with disabilities to assist them in preparing for parole proceedings and in preparing requests for parole decision review.  *See* Revised Permanent Injunction ¶¶ 32, 33. Paragraphs 10 and 12 of the Revised Permanent Injunction require Defendants to "develop and implement sufficiently specific policies and procedures that will ensure continuous compliance with all of the requirements of this injunction" and that "will ensure that prisoners and parolees with disabilities are able to participate, to the best of their abilities, in any parole proceedings," and are able to communicate effectively at all such proceedings.  *See id.*  ¶¶ 10, 12.  Paragraph 17 of the Revised Permanent Injunction provides that a "prisoner or parolee's request for a particular type of accommodation shall be given primary consideration and shall be granted unless the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available."  *See* Revised Permanent Injunction ¶ 17.

Plaintiffs contend that Defendants' current policies and procedures do not comply with those provisions of the Revised Permanent Injunction because, pursuant to those policies and procedures, Defendants do not provide deaf class members who "Defendants have already identified as using sign language as their primary method of communication and who have difficulty understanding written English" (hereinafter, deaf signer class members), *see* Docket No. 3554 at 6, with accommodations they need to effectively prepare for parole hearings and prepare requests for parole decision review.  Plaintiffs argue that, to be able to effectively prepare for their parole hearings and to prepare decision-review requests and related grievances, deaf signer class members require as an accommodation that sign language translations of certain parole-related documents and of their parole suitability hearings be video recorded.  Plaintiffs point to evidence

9

United States District Court
Northern District of California

showing that deaf signer class members have difficulty understanding communications and printed information and that their ability to understand it is maximized if they are able to review video recordings of sign language translations of the communications or printed information in question. *See* Roger Williams Decl. ¶¶ 9-29.[5]  Plaintiffs contend that video recordings of sign language translations facilitate deaf signer class members' comprehension of the information being conveyed because the recordings can be reviewed privately and independently on personal tablet computers[6] and can be replayed as many times as each class member needs to comprehend the information being conveyed to the best of his ability.  *See id.*  Plaintiffs also argue that video recordings of sign language interpretation provided during parole suitability hearings are essential to enable deaf signer class members to file requests for parole decision review and ADA grievances based on sign language translation errors that may have occurred during the hearings. *See* Williams Decl. ¶ 28.

Plaintiffs argue that, to comply with the Revised Permanent Injunction, Defendants must modify their policies and procedures to provide to deaf signer class members: (1) video recorded sign language translations of parole-related documents other than the CRA to the extent that deaf signer class members request them; (2) video recorded sign language translations of the CRA as a matter of course, regardless of whether deaf signer class members request them; and (3) video recordings of the sign language translation provided during deaf signer class members' parole suitability hearings, to be served as a matter of course at the time when deaf signer class members would be served with a copy of a written transcript of the hearing.  *See* Proposed Order at 20-21.  Plaintiffs argue that, because the video recordings at issue are necessary to accommodate deaf

---

[5] Defendants do not object to any aspect of the declaration of Roger Williams, Plaintiffs' expert on deafness and sign language communications.

[6] Plaintiffs represent, and Defendants do not dispute, that every prisoner in the state has received or will receive a personal tablet computer.  *See* Jackson Decl. ¶ 42.

1   signer class members and Plaintiffs' counsel have requested them as accommodations for those

2   class members, Defendants are required to provide them under Paragraph 17.

3          Defendants contend that they do not provide the video recorded translations at issue as a

4   matter of policy because they are not necessary, as other accommodations that Defendants provide

5   sufficiently enable deaf signer class members to prepare for parole proceedings and file requests

6   for parole decision review or grievances.[7]

7          The parties' dispute as to whether Defendants must adjust their policies and procedures to

8   provide the three types of video recordings that Plaintiffs have requested as accommodations turns

9   on whether Defendants have shown, pursuant to Paragraph 17 of the Revised Permanent

10  Injunction, that those accommodations are unreasonable under the ADA or that other effective

11  accommodations are available.

12         In response to Plaintiffs' request for an order requiring Defendants to adjust their policies

13  to provide video recordings of sign language translations of parole-related documents other than

14  the CRA, if deaf signer class members make a request, Defendants contend that the requested

15  accommodation is not necessary because, pursuant to their existing policies and procedures, sign

16  language interpreters who work at CDCR's institutions are available to translate those documents

17  live, upon request, and they can perform the translation multiple times if necessary.  *See* Moeller

18  Decl. ¶¶ 6, 8; Strean Decl ¶ 9; Lozano Decl. ¶ 29.

19         The Court finds that Defendants have not shown that the alternative accommodation to

20  which they point is as effective as the video recordings that Plaintiffs request in enabling deaf

21  signer class members to understand the contents of the documents in question to the best of their

22  ability and to review the documents in a manner similar to how non-disabled prisoners are able to

23  review written documents.  Plaintiffs have shown, and Defendants have offered no evidence to

24  dispute, that deaf signer class members have difficulty understanding new and complex

25

26  _____

27         [7] Defendants do not dispute that deaf signer class members require American Sign
    Language (ASL) as a necessary accommodation in the context of parole proceedings.  *See* Docket
28  No. 3453 at 15 ("For deaf class members who cannot read English, or read English at a low grade
    level, translation into ASL is a necessary accommodation[.]").

United States District Court
Northern District of California

United States District Court
Northern District of California

information and require more repetition of information to understand it to the best of their ability. *See* Williams Decl. ¶¶ 9-30.  Video recorded ASL translations permit deaf signer class members to understand information in printed documents to the best of their ability, and to review the information in a manner similar to how non-disabled prisoners are able to review printed documents, because the recordings can be accessed at a time that is most convenient to the class member, can be viewed at each class member's own pace, and can replayed as many times as desired.  *See id.*  Defendants have not shown that the same can be said with respect to the live sign language translations that they offer as an alternative accommodation.  Defendants have not identified any other reason recognized under the ADA that would justify their refusal to adjust their policies to provide the video recorded translations that Plaintiffs request.  Accordingly, the Court finds that Defendants have not shown that they can decline under Paragraph 17 of the Revised Permanent Injunction to adjust their policies to provide the video recorded translations of parole-related documents other than the CRA, if deaf signer class members request them.  The Court further finds that Defendants' refusal to adjust their policies to provide this accommodation has deprived deaf signer class members of accommodations they need to be able to effectively prepare for parole proceedings and prepare requests for parole decision review in violation of Paragraphs 32 and 33 of the Revised Preliminary Injunction.

In response to Plaintiffs' request for an order requiring Defendants to adjust their policies to video record sign language translations of CRAs for deaf signer class members without waiting for a request, Defendants respond that their existing policies already require that video recorded sign language translations of CRAs be provided if deaf class members request them.  The only argument that Defendants advance for not providing the accommodation in question as a matter of course, without waiting for a request as Plaintiffs propose, is that it is not possible to determine whether deaf class members require the accommodation unless and until an individual assessment of each class member's needs is conducted.  *See* Docket No. 3543 at 15 (arguing that "whether a class member requires such an accommodation requires an individualized assessment of the class member's unique disabilities and needs").

United States District Court
Northern District of California

This argument is not persuasive.  Plaintiffs' request for the accommodation in question is limited to deaf class members who Defendants *already identified* as using sign language translation as a primary form of communication and as having difficulty understanding written English.[8]  As noted above, it is undisputed that those class members require video recordings of ASL translations to be able to understand written materials to the best of their ability and to review the materials in a manner similar to how non-disabled prisoners can review written documents. Because Plaintiffs request the video recordings in question only for those deaf class members who have already been identified as having needs that require the accommodation, the need to conduct individualized assessments is not a valid reason for refusing to provide the video recordings at issue as a matter of course.[9]  Defendants have not advanced any other justification recognized under the ADA for their refusal to modify their policies to provide the video recorded ASL translations of CRAs without waiting for a request.  Accordingly, the Court finds that Defendants' refusal to modify their policies to provide the requested accommodation in question violates Paragraphs 17, 32, and 33 of the Revised Preliminary Injunction.

With respect to Plaintiffs' request for an order requiring Defendants to video record, as a matter of course and without waiting for a request, all parole suitability hearings that were

---

[8] Plaintiffs represent, and Defendants do not dispute, that Defendants are aware of, and track, which deaf class members require sign language as their primary method of communication and have difficulty understanding written English.  As required by the Revised Permanent Injunction and ARP II, Defendants identify and track each class member's disability using what is known as the "DPP roster"; the DPP roster employs codes for various types of disabilities, which include DPH for class members with severe hearing disabilities, DPV for class members with severe vision disabilities, and DNV for class members with less severe vision disabilities.  *See* Jackson Decl. ¶¶ 20-21.  The DPP roster identifies the primary and secondary method for communications for DPH class members and it also identifies the reading score that those class members received on their most recent reading-comprehension test.  *See id.*  Defendants produce the DPP roster to Plaintiffs monthly.  *See id.*

[9] Plaintiffs have shown that Defendants' current policies and procedures, which permit Defendants to wait to provide the video recorded translation of the CRA until a request is made, lead to significant delays in deaf signer class members' receipt of the accommodations they need.  As a representative example, Plaintiffs' counsel requested video recorded CRAs for three deaf class members with a reading score of 4.0 or lower in October 2023 and, as of December 2023, Defendants had not provided them.  *See* Jackson Decl. ¶ 134 & Ex. 76; Jackson Reply Decl. ¶ 2 & Ex. A.  These delays constitute a separate violation of the Revised Permanent Injunction and the ADA, because these delays impair deaf signer class members' ability to effectively prepare for parole proceedings and prepare requests for parole decision review to the same extent as non-disabled prisoners who do not need to wait to receive accommodations to access their CRAs.

United States District Court
Northern District of California

translated into sign language for deaf signer class members and to serve a copy of the video recording on deaf signer class members at the time when the written transcript of the hearings would be served, Defendants argue that they currently do not video record any parole suitability hearings and that the Court should not require them to modify their policies and procedures to do so as Plaintiffs request because (1) they provide video recorded translations of written transcripts of parole suitability hearings to deaf class members upon request, *see* Moeller Decl. ¶ 30, which they claim is an effective alternative accommodation; (2) BPH's decision to not video record parole hearings is "to promote security and protect the integrity of the Board's proceedings"; (3) the decision as to "how to preserve a record of parole hearings is a matter of policy and regulation" that must be left to the discretion of the responsible state officials; and (4) no "controlling legal authority requires an agency to video record" testimony provided during a parole suitability hearing as a necessary accommodation.  *See* Docket No. 3453 at 6, 16-17.

None of the reasons that Defendants advance permits them to decline to provide the requested accommodation at issue under Paragraph 17.  As to the first reason, Defendants have not established that providing deaf signer class members with video recorded translations of written transcripts of parole hearings is as effective as providing them with video recordings of the sign language translation that occurred during their hearings.  Plaintiffs have shown, and Defendants have offered no evidence to dispute, that video recordings of the sign language translation provided during parole hearings would enable deaf signer class members to understand what occurred during the hearings to the best of their ability and certainly better than if they were provided with video recorded sign language translations of the written transcripts of the hearings. *See* Williams Decl. ¶ 27; Williams Reply Decl. ¶¶ 8-12.  Plaintiffs have also shown, and Defendants have pointed to no evidence to dispute, that any sign language translation provided during a parole suitability hearing is not captured on the written transcript for the hearing, and that, unless there is a video recording of the sign language testimony and translation provided during the hearing, it is not possible to establish after the hearing whether there were any errors in the sign language translation provided during the hearing.  *See* Williams Decl. ¶ 28; Williams Reply Decl. ¶¶ 7-12.  The Court finds, based on this undisputed evidence, that a video recording of the

sign language translation that occurred during parole hearings is necessary to enable deaf signer class members to understand to the best of their ability what transpired during their parole hearings for the purpose of preparing for parole proceedings and preparing requests for decision review, as well to enable them to establish translation errors that may have occurred during the hearings for the purpose of requesting decision review or filing parole-related grievances. Defendants have not shown otherwise.

As to Defendants' second argument, namely that the BPH's "limitation on recording" is to promote security and protect the integrity of the proceedings, *see* Docket No. 3543 at 6 n.2, the Court finds that it is unavailing. Defendants cite no evidence to show that there is any relationship between promoting security and protecting the integrity of parole suitability proceedings and whether the parole suitability hearings are video recorded.[10] Accordingly, the Court cannot find that video recording the sign language translation provided during parole suitability hearings would undermine those interests.

As to Defendants' third argument, that the decision as to how to "preserve a record of parole hearings" is for state officials, the Court finds that it misses the mark. Plaintiffs do not request, and the Court will not order, that the video recordings at issue become the official record of parole suitability hearings. Rather, those video recordings are merely intended to memorialize the sign language translation that was provided to deaf signer class members during the hearing so that they may understand to the best of their ability what transpired during the hearings and so that they have the opportunity to establish errors in the translation when they file requests for parole decision review or parole-related grievances.

Finally, with respect to Defendants' contention that there is no "controlling authority" requiring them to video record parole suitability hearings as an accommodation, the Court finds

---

[10] Defendants cite only Federal Rule of Civil Procedure 53 and Northern District of California General Order 58, neither of which has any relevance to whether state parole proceedings can be recorded. Plaintiffs have shown, and Defendants do not dispute, that the statute that governs recordings of parole proceedings, namely California Penal Code § 3042(b), requires the BPH to "record" all parole suitability hearings, without limiting the manner in which the recording can be made. *See* Cal. Penal Code § 3042(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that it is unavailing.  What matters here is that Paragraph 17 of the Court's Revised Permanent

2    Injunction requires Defendants to provide an accommodation that Plaintiffs request unless

3    Defendants make the requisite showing under Paragraph 17.  Defendants have not done so for the

4    reasons above.  Notably, Defendants do not contend that it would be burdensome or difficult to

5    create the video recordings that Plaintiffs request.  Plaintiffs represent, and Defendants do not

6    dispute, that the hearing rooms where the parole suitability hearings take place already contain

7    computers with web cameras that BPH uses to conduct video conferences of the parole hearings,

8    and that this equipment could easily be used to record the sign language translations that occur

9    during the hearings.  *See* Jackson Decl. ¶¶ 11-14.

10         In light of the foregoing, the Court finds that Defendants have not shown that their refusal

11   to modify their policies and procedures to provide deaf signer class members with video

12   recordings of the sign language translations that took place during parole suitability hearings is

13   permissible under Paragraph 17 of the Revised Preliminary Injunction.  The Court further finds

14   that Defendants' refusal to modify their policies to provide this accommodation violates

15   Paragraphs 32 and 33 of the Revised Preliminary Injunction.

16         **B.    Blind and Low-Vision Class Members**

17         Plaintiffs contend that Defendants' policies and procedures fail to ensure that blind and

18   low-vision class members (hereinafter, vision-impaired class members) receive the

19   accommodations they need to be able to read and write parole-related documents to prepare for

20   parole proceedings and to prepare requests for parole decision review as required by Paragraphs

21   32 and 33 of the Revised Permanent Injunction and the ADA.  Vision-impaired class members are

22   tracked by CDCR with two codes: DPV for class members who are permanently blind or have a

23   vision impairment not correctable to central visual acuity of 20/200 or better, even with corrective

24   lenses; and DNV for class members who have vision impairment correctable with corrective

25   lenses to central vision acuity better than 20/200 and no better than 20/70.  *See* Jared Lozano Decl.

26   ¶ 5.  Plaintiffs argue that, to comply with the Revised Permanent Injunction and the ADA,

27   Defendants' policies and procedures must (1) identify the accessible formats and assistive devices

28   that vision-impaired class members require to read and write parole-related documents to prepare

United States District Court
Northern District of California

1    for parole proceedings; (2) streamline the production and timely delivery to vision-impaired class

2    members of printed materials related to parole proceedings in the accessible format that was

3    identified for each class member; and (3) timely provide vision-impaired class members with the

4    assistive devices they need to read and write parole-related documents privately and

5    independently.  Plaintiffs request that the Court order Defendants to craft a plan that requires them

6    to implement these procedures.

7         Defendants contend that the relief that Plaintiffs request is not necessary because they

8    already have processes in place to ensure that vision-impaired class members are accommodated.

9         With respect to DPV class members (who, as noted, have more severe vision impairments

10   than DNV class members), Defendants represent that CDCR recently "agreed to supplement and

11   refine" its identification and tracking system to accommodate DPV class members so that they can

12   read and write parole-related documents to prepare for parole proceedings.  *See* Lozano Decl. ¶¶

13   8-9.  This revised system will not rely on the "existing Request for a Reasonable Accommodation

14   process (CDCR form 1824)[.]"  *See* Docket No. 3543 at 17.  Through this revised system,

15   Defendants will identify and track accommodations that DPV class members need to be able to

16   read and write documents in preparation for parole proceedings and will make accessible all

17   printed materials to DPV class members either through auxiliary devices or by providing the

18   materials in alternative formats, such as Braille or audio.  *See* Lozano Decl. ¶¶ 9-11.  Defendants

19   retained a vision consultant to individually assess each DPV class member to identify the specific

20   visual accommodation that he needs to read and write.  *See id.* ¶ 12.  Those assessments began in

21   December 2023, but Defendants do not specify a date for completion.  *See id.* ¶ 13.  If a DPV class

22   member is deemed to require an auxiliary device or alternative reading format pursuant to the

23   individual assessments, that information will be documented in the Strategic Offender

24   Management System (SOMS).  *See id.* ¶¶ 15-16.  If an auxiliary device is recommended and is

25   sufficient to permit the class member to read printed documents, CDCR will issue the auxiliary

26   device for the class member's private use "as soon as reasonably possible[.]"[11]  *See id.* ¶¶ 15-16.

27   _____

28        [11] If an electronic auxiliary device is recommended, the DPV class member's (cont.)

If an auxiliary device is insufficient to permit the class member to read printed documents, Defendants will arrange to provide, in a timely manner, printed documents to the class member in the alternative format that was identified pursuant to the individual assessments. *See id.* For some DPV class members, an auxiliary device will be sufficient to enable them to write parole-related documents privately. *See id.* ¶ 16. DPV class members whose writing needs cannot be accommodated with auxiliary devices and who require a scribe to complete parole-related writing tasks will be accommodated by library staff. *See id.* ¶ 22.

In the meantime, pending the individual assessments, Defendants will accommodate DPV class members' reading and writing needs by requiring CDCR correctional counselors to use a questionnaire to interview all DPV class members with upcoming parole suitability hearings to identify the individual needs of the class members for assistance with reading and writing in preparation for their hearings, *see* Lozano Decl. ¶ 30, and by providing in-cell check-out access to Zoomax Snow 12, a portable aid that can be used for independent and private reading and writing, *see id.* ¶ 18. CDCR has already initiated the procurement of 100 Zoomax Snow 12 devices for distribution at DPV-designated CDCR institutions and all such devices will be delivered in or around March 2024. *See id.* ¶ 19. Until the Zoomax devices are fully deployed, Defendants will accommodate the reading and writing needs of DPV class members through assistive devices already available in libraries or through assistance from library and CDCR staff. *See id.* ¶¶ 21-22.

With respect to DNV class members, Defendants contend that their reading and writing needs can be reasonably accommodated through existing processes, pursuant to which Defendants provide them with corrective lenses or non-electronic auxiliary devices, such as magnifiers, upon request. *See* Lozano Decl. ¶¶ 23-25. If a request for an accommodation is made by a DNV class member, an assessment is then conducted. *See id.* Defendants represent that CDCR does not track alternative formats for printed materials for DNV class members because their needs are

---

assessment will include an individualized training plan for the device that best suits his needs. *See* Sukhija Decl. ¶ 6.

United States District Court
Northern District of California

1  reasonably accommodated through corrective lenses or non-electronic auxiliary devices. *See id.* ¶

2  25.

3      In their reply, Plaintiffs represent that Defendants adopted the procedures for DPV class

4  members described above only after Plaintiffs sent them a demand letter in April 2023. Plaintiffs

5  argue that the Court should interpret that as an implicit concession that Defendants' prior

6  procedures were not in compliance with the Revised Permanent Injunction. Plaintiffs further

7  argue that Defendants' new procedures for accommodating DPV class members do not obviate the

8  need to order the relief that Plaintiffs request, because the procedures do not apply to DNV class

9  members and because Defendants could later decide not to implement or enforce the new

10  procedures with respect to DPV class members. Plaintiffs contend that Defendants' current

11  procedures for accommodating DNV class members are insufficient because at least one DNV

12  class member was not able to read his CRA due to Defendants' failure to provide him the CRA in

13  the accessible format that he required and requested (large print). *See* Jackson Decl. ¶ 96 & Ex.

14  54; Jackson Reply Decl. ¶ 12, Ex. I.

15      As will be discussed in the Conclusions of Law, where a public entity is on notice of the

16  need for an accommodation, the public entity is required under the ADA to undertake an

17  investigation to determine what constitutes a reasonable accommodation while giving primary

18  consideration to the disabled person's preference, and it is also required to affirmatively provide

19  that accommodation without waiting for a request. To be effective as an accommodation, an

20  auxiliary aid, format, or service must be provided in a timely manner and in such a way as to

21  protect the privacy and independence of the disabled person. Here, Defendants were on notice

22  that DPV class members require vision accommodations to read and write parole-related

23  documents by virtue of having been assigned a DPV disability code by prison staff.[12] Thus,

24  Defendants have an affirmative obligation to investigate what accommodations are needed by each

25

26  _____

27      [12] Even if the DPV code were not sufficient on its own to put Defendants on notice that
    DPV class members require accommodations to be able to prepare for parole proceedings, the
    Court finds that Defendants had such notice by virtue of the advocacy of Plaintiffs' counsel
28  (which includes the present motion).

United States District Court
Northern District of California

DPV class member to be able to read and write parole-related documents, and to affirmatively

provide such accommodations in a timely manner and in such a way as to protect his privacy and

independence, while giving primary consideration to the class member's preferences.

Defendants do not point to evidence showing that, before they implemented their new

policies and procedures for accommodating DPV class members (discussed above), Defendants

affirmatively investigated and affirmatively provided accommodations that DPV class members

require, based on their individual needs[13], to read and write parole-related documents privately and

independently. Defendants do not claim that their former policies and procedures for

accommodating DPV class members required individualized assessments to be conducted

systematically and as a matter of course, as their new procedures for accommodating DPV class

members do.[14] The record indicates that Defendants' identification and provision of

accommodations relied instead, at least to some extent, on the submission of written requests for

accommodation by DPV class members or their counsel.[15] *See* Moeller Decl. ¶¶ 4-8.; *see also*

Docket No. 3543 at 17 (arguing that Defendants' new processes for accommodating DPV class

members will require them to identify the class members' reading and writing accommodations

---

[13] It is undisputed that the reading and writing needs of a blind or low-vision individual "can only be determined effectively by an individualized assessment of that person's needs." *See* Michael Parker Decl. ¶ 3. Michael Parker is Plaintiffs' vision accessibility expert. Defendants did not object to any portion of Parker's declaration, Docket No. 3525-3.

[14] Defendants represent that, under their prior policies and procedures for accommodating DPV class members, CDCR tracked DPV class members' "preferred form of visual accommodation for written materials" in SOMS. *See* Lozano Decl. ¶ 6. Defendants do not contend that, before they adopted their new procedures for accommodating DPV class members, the "visual accommodation" information that was tracked in SOMS for DPV class members was derived from individualized assessments that were conducted systematically and as matter of course. Instead, it appears that the "visual accommodation" information that was tracked in SOMS was based on accommodation preferences that were conveyed to staff by DPV class members or their counsel, either through formal requests for accommodations or otherwise.

[15] Plaintiffs have shown that, when requests for accommodations for DPV class members were submitted pursuant to Defendants' former policies and procedures, the requests were not acted upon on a timely basis. As a representative example, Plaintiffs' counsel wrote an advocacy letter on May 31, 2023, on behalf of a DPV class member, in which they requested audio versions of the transcript of his previous parole hearing in 2016 and his CRA. *See* Jackson Decl., Ex. 33. After receiving no response, Plaintiffs' counsel wrote a second letter on July 11, 2023, requesting the same materials on behalf of the same class member. *See* Jackson Decl., Ex. 35. Defendants did not respond until July 13, 2023. *See* Jackson Decl., Ex. 36.

*without* using the existing CDCR 1824 form for requesting accommodations).  Defendants do not point to evidence showing that their former policies and procedures required them to affirmatively provide DPV class members with auxiliary devices, alternative formats, or other necessary accommodations to enable them to read printed materials independently and privately based on their individual needs, as their new procedures for accommodating DPV class members do.  Defendants admit that, under their old policies and procedures, "[t]he reading and writing needs of the DPV population" were "accommodated through the use of electronic desktop magnifiers (e.g., Merlin and DaVinci), located within the law libraries at each DPV-designated institution."  *See* Docket No. 3543 at 8.  Those devices do not enable class members to read parole-related documents independently and privately because they can only be accessed in a public setting and during the libraries' limited hours.  *See* Buenafe Decl. ¶¶ 7, 9; Jackson Decl. ¶ 43; Dawn Lorey Dep. Tr. at 119, 123-25, Jackson Decl., Ex. 18.

The Court finds that Defendants' former policies and procedures for accommodating DPV class members were not consistent with their obligations under the ADA or with the Revised Permanent Injunction, which requires that Defendants' policies and procedures be designed to ensure that class members are able to effectively communicate and participate in parole proceedings, and to prepare for the same, to the best of their ability and on an equal basis to non-disabled prisoners.  *See* Revised Permanent Injunction ¶¶ 10, 12, 32, 33.  Based on the record now before the Court, Defendants' new procedures for accommodating DPV class members appear to be reasonably aimed at satisfying their obligations under the Revised Permanent Injunction and the ADA as to DPV class members.  However, the Court agrees with Plaintiffs that, in the absence of an order, Defendants could decide not to implement or to abandon such new procedures.  To ensure that Defendants come into compliance with the Revised Permanent Injunction and the ADA, the Court finds that it is necessary to order Defendants to develop a plan that requires them to formalize and implement their new procedures for identifying the accommodations that each DPV class member needs to read and write parole-related documents privately and independently, and that requires them to enact policies and procedures to ensure that DPV class members receive those accommodations on a timely basis.

United States District Court
Northern District of California

1        With respect to DNV class members, Defendants contend that their current policies and

2   procedures for accommodating those class members comply with the Revised Permanent

3   Injunction and the ADA.  As noted, Defendants' current policies and procedures require that DNV

4   class members make requests for accommodations; Defendant do not conduct individual

5   assessments, and do not provide accommodations, unless and until a class member submits an

6   accommodation request.  Defendants' current procedures do not require Defendants to track DNV

7   class members' need for alternative formats for printed materials.

8        The Court is not persuaded that those procedures comply with the Revised Permanent

9   Injunction and the ADA.  Defendants are on notice that DNV class members require

10  accommodations by virtue of their DNV code.[16]  Accordingly, Defendants are required to

11  affirmatively investigate and provide accommodations to DNV class members, based on their

12  individual needs, that enable them to read and write parole-related documents privately and

13  independently.  Defendants' current policies do not satisfy those obligations.  Defendants have not

14  explained why their current procedures do not require them to conduct individualized assessments

15  to determine the accommodations that DNV class members need to read and write parole-related

16  documents privately and independently.  The Court finds that such assessments are necessary

17  because it is undisputed that the visual accommodation needs of DNV class members can only be

18  determined based on an individualized assessment of their needs.  *See* Parker Decl. ¶¶ 3-6.

19  Defendants' current procedures are problematic for the additional reason that they do not require

20  Defendants to track DNV class members' need for alternative formats and to deliver parole-related

21  documents to DNV class members in alternative formats if needed.  The record shows that some

22  DNV class members may require an alternative format to be able to read parole-related

23  documents, either in addition, or as an alternative, to auxiliary devices such as corrective lenses or

24  magnifying devices.  *See* Parker Decl. ¶¶ 3-6 (opining that some DNV class members who can

25

26

27          [16] Even if the DNV code were not sufficient on its own to put Defendants on notice that
    DNV class members require accommodations to be able to prepare for parole proceedings, the
    Court finds that Defendants had such notice by virtue of the advocacy of Plaintiffs' counsel
28  (which includes the present motion).

read with moderate enlargement of text can be accommodated if they receive documents in large print (an alternative format) *or* magnification devices); *see also* Jackson Decl. ¶ 96 & Ex. 54; Jackson Reply Decl. ¶ 12, Ex. I (DNV class member required an alternative format (large print) to be able to read his CRA even though he already had a magnifier, but the alternative format was not provided to him although he made his correctional counselor aware of his need).

The Court finds, therefore, that Defendants' current policies and procedures for accommodating DNV class members are not consistent with their obligations under the ADA or with the Revised Permanent Injunction, which requires that Defendants' policies and procedures be designed to ensure that DNV class members are able to effectively communicate and participate in parole proceedings, and to prepare for the same, to the best of their ability and on an equal basis to non-disabled prisoners. *See* Revised Permanent Injunction ¶¶ 10, 12, 32, 33. To ensure that Defendants' policies and procedures for accommodating DNV class members comply with the Revised Permanent Injunction and the ADA, the Court finds that it is necessary to order Defendants to develop a plan that includes policies and procedures that require them to conduct individualized assessments to identify the accommodation(s) that each DNV class member needs to read and write parole-related documents and to provide each DNV class member with those accommodations on a timely basis.

### C.    Attorneys as Accommodations

Paragraph 30 of the Revised Permanent Injunction provides:

> At its discretion, [BPH] may appoint attorneys as an accommodation. In order to suffice as an accommodation, the attorneys must be adequately trained to provide accommodations to persons with disabilities and must receive adequate additional time for providing those services.

Revised Permanent Injunction ¶ 30.

Plaintiffs contend that the attorneys that Defendants appoint to assist and accommodate class members' disabilities in the context of parole proceedings (hereinafter, panel attorneys[17]) do

---

[17] Those attorneys participate in the BPH Panel Attorney Program. *See* Doetsch Decl. ¶¶ 4-5.

United States District Court
Northern District of California

1  not "suffice as an accommodation" under Paragraph 30 for two reasons: (1) because Defendants'

2  current policies and procedures do not ensure that those attorneys are "adequately trained to

3  provide accommodations" to class members as the Revised Permanent Injunction requires; and (2)

4  because Defendants' current policies and procedures do not ensure that those attorneys receive

5  "additional time" for providing accommodations to class members, as the Revised Permanent

6  Injunction requires.

7           **1.   "adequately trained to provide accommodations"**

8        Plaintiffs contend that Defendants have not demonstrated that their current policies and

9  procedures are in compliance with the Revised Permanent Injunction's requirement that panel

10  attorneys be "adequately trained to provide accommodations" to class members.  Plaintiffs argue

11  that it is not possible to verify whether the training that those attorneys are receiving pursuant to

12  Defendants' policies and procedures is adequate to enable them to provide accommodations to

13  class members because Defendants have refused to disclose to Plaintiffs the training materials that

14  are used to train panel attorneys on ADA matters.  Plaintiffs argue that Defendants' failure to

15  provide Plaintiffs with copies of the training materials violates their obligations under a stipulated

16  discovery order that this Court issued on March 19, 2001, which requires Defendants to provide

17  Plaintiffs' counsel with a copy of any training videos and documents distributed in connection

18  with any training session required by the Court's permanent injunction.  *See* Docket No. 688 at 4;

19  *see also* Grunfeld Reply Decl., Ex. L at 4.

20        Defendants do not dispute that they have not provided copies to Plaintiffs of the training

21  materials at issue, or that their failure to do so violates their obligations under the stipulated

22  discovery order of March 20, 2001.  Defendants did not attach to their opposition any copies of

23  any of the ADA-related training materials at issue.  Defendants rely on the declaration of Heidi

24  Rummel, who is the founder of Parole Justice Works (PJW), for the proposition that the ADA-

25  related training that panel attorneys receive pursuant to current policies and procedures is

26  sufficient to comply with Paragraph 30 of the Revised Permanent Injunction.[18]  PJW is a nonprofit

27  _____

28        [18] Defendants also cite the declaration of Tara Doetsch, who is the Chief (cont.)

United States District Court
Northern District of California

organization that contracted with BPH to train and educate panel attorneys and has done so since March 2020. *See* Rummel Decl. ¶ 4. According to Rummel, the training that PJW provides to panel attorneys generally involves video presentations, ongoing roundtable discussions during which panel attorneys can ask questions, access to a database containing training materials and resources, and regular MCLE trainings by Zoom. *Id.* ¶¶ 7-11. Rummel declared that some of those training materials relate to the ADA. *See id.* Rummel provided a general description of the contents of the ADA-related trainings in her declaration:

> With respect to deaf and hard-of-hearing clients, PJW's trainings inform attorneys how to identify, based on client records and client interaction, that the client may need an accommodation. PJW's trainings inform attorneys that not all hearing-impaired clients speak American Sign Language (ASL), and that interpretation is available for alternative forms of sign language (like alternative sign language dialects or sign-exact language). The trainings also discuss other accommodations and means of establishing communication available in addition to interpreters, including hearing devices, lip reading, and real-time captioning.
>
> [ . . . ]
>
> PJW is currently designing a written resource specific to representing blind and low-vision clients. PJW plans to cover: challenges that blind and low-vision clients face in preparing for and participating in the parole hearing; accommodations available to these clients and how to pursue them; how to best work with these clients; available resources; and how to advocate for these clients at the parole hearing.

---

Deputy of Program Operations for BPH, for the proposition that "[p]anel attorneys are trained to expect and understand the challenges their disabled clients face in preparing for and participating in parole hearings, and to competently assist these clients." *See* Doetsch Decl. ¶ 6. The Court gives no weight to the Doetsch declaration for the purpose of determining whether the training provided to panel attorneys complies with the Revised Permanent Injunction because Doetsch did not include facts in her declaration indicating that she has reviewed or is otherwise familiar with the training materials that are used to train panel attorneys. Rummel's declaration suggests that PJW has not shared its training materials for panel attorneys with BPH. *See* Rummel Decl. ¶ 8 n.1 (declaring that sharing PJW's training materials with BPH could prejudice clients represented by panel attorneys and that "PJW has offered to provide its ADA-related training materials and/or information about their contents to counsel for the parties in this matter, provided they agree to a protective order").

1    Rummel Decl. ¶¶ 12, 14.  Rummel declared that, as of November 2022, a panel attorney with sign

2    language expertise is being "appointed to represent parole clients who are deaf or hard of

3    hearing[.]"  *See* Rummel Decl. ¶ 13.

4           The Court finds that Rummel's declaration is insufficient to establish that the training that

5    panel attorneys receive pursuant to Defendants' policies and procedures is adequate to educate

6    them about how to provide accommodations to class members with vision and hearing disabilities,

7    as the Revised Permanent Injunction requires.  The Rummel declaration addresses trainings that

8    were provided to panel attorneys since March 2020 only.  Defendants have not filed any evidence

9    as to what ADA-related training was provided to panel attorneys before March 2020.  For the

10   period of March 2020 to the present, the Court cannot infer, based on Rummel's general

11   descriptions, that the trainings that PJW provides to panel attorneys are sufficient to educate panel

12   attorneys as to how to accommodate class members' disabilities to enable them to effectively

13   prepare for parole hearings or prepare requests for parole decision review.  Rummel's declaration

14   suggests that PJW's trainings are deficient.  Rummel declared that written resources that

15   specifically address how panel attorneys can accommodate blind and low-vision clients are

16   currently in development, which implies that no written materials that cover those topics are

17   currently available to panel attorneys.[19]  With respect to deaf and hard-of-hearing class members,

18   Rummel's description suggests that PJW's ADA-related trainings generally inform panel

19   attorneys of the fact that deaf and hard-of-hearing clients "may need an accommodation" and of

20   the existence of various types of accommodations that could be used to communicate with those

21   clients.  That is not enough to permit the Court to find that PJW's trainings adequately instruct

22   panel attorneys as to the specific steps that they must take to ensure that class members with

23   hearing impairments are accommodated to enable them to effectively prepare for parole hearings

24   or requests for parole decision review.  For example, the Rummel declaration says nothing about

25

26   _____

27          [19] BPH's Rule 30(b)(6) designee, Daniel Moeller, testified that he was not sure if the
     training provided to panel attorneys specifically addresses how attorneys could provide documents
28   in accessible formats for blind and low-vision class members.  *See* Daniel Moeller Decl. at 78-79,
     Jackson Decl., Ex. 11.

United States District Court
Northern District of California

whether and, if so, how panel attorneys are trained to assist class members in drafting documents in preparation for a parole hearing.[20]

Rummel's declaration that a panel attorney with sign language expertise has been appointed since November 2022 to represent parole clients with hearing impairments who require sign language interpretation is immaterial. Even if that attorney had adequate training to provide accommodations to class members who require sign language interpretation, the adequacy of the attorney's training would say nothing about whether other panel attorneys who may be appointed to represent class members with hearing impairments are receiving the training that the Revised Permanent Injunction requires. The record shows that panel attorneys besides the attorney in question will need to be appointed to represent deaf class members who require sign language interpretation because the attorney works in a specific geographic area and may not agree to work outside of that area unless BPH provides him with additional compensation to cover his travel expenses, which BPH may not do in every instance. *See* Doetsch Supp. Decl. ¶¶ 5-7 (declaring that BPH previously granted the attorney's requests for additional pay to cover his expenses for traveling outside of his geographic area and that BPH will consider the attorney's further requests for additional compensation to cover travel expenses to represent clients outside of his geographic area on a case-by-case basis).

To ensure that Defendants provide adequate ADA training to panel attorneys as the Revised Permanent Injunction requires, Plaintiffs must receive access to copies of ADA-related training materials used to train panel attorneys. Defendants provide no explanation for their failure to comply with the 2001 discovery order, which, as noted, requires them to provide copies to Plaintiffs of any training materials used to comply with the permanent injunction's training requirements.

---

[20] Defendants have represented in their correspondence with Plaintiffs that panel attorneys are supposed to assist class members with drafting documents in preparation for parole hearings. *See, e.g.*, Grunfeld Decl., Ex. J at 4 ("As for drafting documents in preparation for a Board hearing, class members can receive assistance from their Board-appointed attorneys[.]"). Defendants point to no evidence to establish that panel attorneys are receiving adequate training to assist class members with drafting those documents.

United States District Court
Northern District of California

In light of the foregoing, the Court finds that Defendants' policies and procedures for training panel attorneys are not in compliance with the training requirement of Paragraph 30 of the Revised Permanent Injunction, or with Paragraph 10, which requires Defendants to implement sufficiently specific policies and procedures that will ensure continuous compliance with all requirements of the injunction.  Because Defendants have not shown that they have complied with the training requirement of Paragraph 30, panel attorneys who are appointed by Defendants to represent and accommodate class members in parole proceedings do not "suffice as an accommodation" under Paragraph 30 of the Revised Permanent Injunction.

### 2.   "additional time to provide" accommodations

Plaintiffs contend that Defendants are violating Paragraph 30 of the Revised Permanent Injunction because they do not have policies and procedures to ensure that panel attorneys spend additional time with class members with vision and hearing impairments and to ensure that panel attorneys receive extra compensation to cover additional time spent on accommodating class members.[21]

In their opposition, Defendants do not acknowledge the "additional time" requirement of Paragraph 30 of the Revised Permanent Injunction.  Defendants also do not point to any policies or procedures that are aimed at ensuring that panel attorneys devote additional time to accommodating class members' disabilities.  Accordingly, the Court finds that Defendants are in violation of the "additional time" provision of Paragraph 30 of the Revised Permanent Injunction, as well as Paragraph 10, which requires Defendants to implement sufficiently specific policies and procedures that will ensure continuous compliance with all requirements of the injunction.

The arguments that Defendants advance in their opposition miss the point and are otherwise unpersuasive.  First, Defendants contend that Plaintiffs have not shown that panel attorneys must spend additional time when representing class members.  *See* Docket No. 3543 at

---

[21] The Revised Permanent Injunction does not require Defendants to pay panel attorneys additional compensation for accommodating class members.  Accordingly, the Court is not persuaded by Plaintiffs' argument that Defendants are in violation of Paragraph 30 to the extent that they fail to pay panel attorneys additional compensation when they are appointed to represent class members.

United States District Court
Northern District of California

11 (Defendants arguing that they are not aware of any evidence that "panel attorneys need additional time to competently represent their clients"). But Plaintiffs do not need to make that showing at this juncture.[22] The Court already found, after the bench trial in 1999, that "[w]ithout allotting more time to the attorneys, simply providing an attorney is . . . not a sufficient accommodation," because "it often takes longer to provide legal services to a disabled, as opposed to non-disabled, prisoner or parolee when the attorney is also responsible for accommodating the individual's disability."[23] *See* Findings of Fact and Conclusions of Law at 53-54, Docket No. 523. Based on that finding, the Court required in the Revised Preliminary Injunction that, to suffice as an accommodation, attorneys appointed to represent and accommodate class members "must receive adequate additional time for providing those [accommodation] services." Revised Permanent Injunction ¶ 30. The Court's intent was to require that attorneys who are appointed to represent and accommodate class members devote significantly more time to their representation of class members when compared to non-disabled prisoners because accommodating class members' disabilities takes additional time that the attorneys would not need to spend when representing non-disabled prisoners. As noted, Defendants have not pointed to any policies or procedures that are aimed at complying with that aspect of the Revised Permanent Injunction.

Defendants also argue that, because BPH does not impose a limit on the time that panel attorneys can spend on their representation of prisoners, panel attorneys will spend an adequate

---

[22] Even if Plaintiffs were required to make that showing at this point, the Court finds that they have done so. Plaintiffs' evidence reaffirms the Court's finding after the bench trial that communications with disabled people take longer than communications with non-disabled people. *See, e.g.*, Roger Williams Decl. ¶ 29 (declaring that communications with deaf signing individuals take approximately twice as much time when a sign language interpreter is used for communication). Defendants have not filed any evidence to show that it is not the case that communications with class members with vision and hearing impairments take longer when compared with communications with other prisoners.

[23] When the Court made those findings after the 1999 bench trial, BPH's then-current policy limited the amount of time that appointed attorneys could spend with each client to eight hours for each representation, including travel and hearing time. *See* Findings of Fact and Conclusions of Law at 53-54, Docket No. 523. Defendants no longer limit the time that panel attorneys can spend with each client to eight hours, but they continue to assume that a panel attorney will spend, on average, approximately eight hours representing each client. *See* Doetsch Decl. ¶¶ 12-14, 19-24. Defendants do not require panel attorneys to spend more than the average eight hours when they are appointed to represent and accommodate class members. The Court finds that this violates Paragraph 30 of the Revised Permanent Injunction.

United States District Court
Northern District of California

amount of time when they are appointed to represent and accommodate class members, even if BPH does not require them to do so.  Defendants point to the declaration of Tara Doetsch, who is the Chief Deputy of Program Operations for BPH and oversees the BPH's Panel Attorney Program.  Doetsch Decl. ¶¶ 1-2.  Doetsch declared that panel attorneys are required to meet the "minimum expectations for attorneys representing people in a parole hearing," which are set forth in the Panel Attorney Program Guide for the Parole Suitability Hearing Process (hereinafter, the Guide) attached to the Doetsch declaration.  *See* Doetsch Decl. ¶¶ 4-5 & Ex. A.  Those minimum expectations include conducting at least three legal visits with each prisoner.  Doetsch declared that the Guide does not impose a cap on the number of hours an attorney can spend on a particular case, and that the determination of how much time should be spent with each client is for each panel attorney to make, as BPH does not "micromanage[]" panel attorneys in that regard.  *See id.* ¶¶ 12-14, 19-24.  Doetsch declared that she is "aware that many attorneys go beyond the minimum requirements and expectations outlined in the Guide while representing their clients" but she does not say whether any of those attorneys were appointed to represent class members, nor does she specify how those attorneys exceeded the Guide's minimum requirements.  *See id.* ¶ 14.

The Court finds that neither the Doetsch declaration, nor the Guide, establishes that Defendants have policies and procedures to ensure that they comply with the Revised Permanent Injunction's "additional time" requirement.  The Guide does not contain any provision that requires panel attorneys to spend more time with class members to ensure that their disabilities are accommodated.[24]  The Guide contains suggestions as to how much time the panel attorneys should devote to each of the three legal visits they are required to conduct with each client.[25]  However,

---

[24] The Guide's only ADA-related requirements are that panel attorneys be "familiar" with each client's rights under the ADA and their needs for reasonable accommodations under that act; panel attorneys enter "Source Documents" into BPH's Disability and Effective Communication System (DECS) with detailed notes of each client's ADA-related needs for effective communication; and that panel attorneys use a sign language interpreter if their client is identified in DECS as needing one.  *See* Doetsch Decl., Ex. A at 3-4.  The Guide does not state that panel attorneys are expected to spend additional time on their representation of class members to ensure that their disabilities are accommodated.

[25] The Guide provides that the average length of the panel attorney's first and second legal visits with a client "shall be one to two hours" and that the duration of the third legal visit (cont.)

the Guide does not suggest that visits with class members take significantly more time than those with non-disabled prisoners in order to accommodate class members' disabilities, much less require that such time be spent.  While Doetsch declares that "many attorneys go beyond the minimum requirements and expectations" set forth in the Guide, she does not provide any factual basis that would permit the Court to infer that every attorney who has been appointed to represent and accommodate class members with vision or hearing disabilities to date has spent additional time to accommodate their disabilities or that every attorney who is appointed to represent class members in the future will do so in the absence of an express requirement.

Accordingly, the Court finds that Defendants' policies and procedures are not in compliance with the "additional time" requirement of Paragraph 30 of the Revised Permanent Injunction or with Paragraph 10, which requires Defendants to implement sufficiently specific policies and procedures that will ensure continuous compliance with all requirements of the injunction.  Therefore, the panel attorneys appointed to represent and accommodate class members with vision and hearing disabilities do not "suffice" as an accommodation under Paragraph 30 of the Revised Permanent Injunction.

### D.    Other Staff As Accommodations

As noted, Paragraphs 32 and 33 of the Revised Permanent Injunction require BPH to make accommodations for prisoners with disabilities to assist them in preparing for parole proceedings and in preparing requests for parole decision review.  *See* Revised Permanent Injunction ¶¶ 32, 33.

Plaintiffs contend that Defendants are not complying with those aspects of the Revised Permanent Injunction because their current policies and procedures do not ensure that class members with vision and hearing disabilities receive sufficient staff assistance to complete writing tasks for parole proceedings, such as drafting parole release plans and relapse prevention plans.  Plaintiffs argue that correctional counselors currently are not required to provide that assistance because Defendants abandoned a policy memorandum that the parties negotiated for over a year,

---

is at the panel attorney's discretion.  *See* Doetsch Decl., Ex. A at 3.  The Guide does not provide estimates for the length of legal visits with disabled prisoners who require accommodations.

United States District Court
Northern District of California

which required correctional counselors to assist class members with parole preparation, including drafting release plans. *See* Grunfeld Decl. ¶¶ 3-6, 16-24, Ex. B. Plaintiffs contend that library staff, who are required to provide prisoners with assistance with writing tasks, are available only during limited hours and, therefore, are not an adequate accommodation. Plaintiffs further contend that, because of insufficient staff assistance, class members with hearing and vision disabilities have been forced to request assistance from their fellow prisoners, which violates their right to privacy and puts them at risk of abuse. Plaintiffs request an order requiring Defendants to enact policies and procedures to ensure that there are sufficient staff at each prison who are required to provide parole-related writing assistance to class members with vision and hearing impairments, such as staff assistants or correctional counselors. *See* Proposed Order at 22. Such staff must be able to meet with those class members on a regular basis from the time they are served with notice of their scheduled parole suitability hearing date until 120 days after the parole suitability hearing. *See id.*

Defendants respond that Plaintiffs' request for an order requiring new policies and procedures regarding staffing is unnecessary because (1) DPV class members will receive assistive devices that will permit most of them to read and write in their cells after Defendants complete the individualized assessments to determine their accommodation needs, *see* Docket No. 3543 at 22; and (2) class members with vision and hearing disabilities who are not able to draft documents with the use of in-cell assistive devices can seek the assistance of either library staff, *see* Buenafe Decl. ¶¶ 6-10, or correctional counselors pursuant to a "recent directive," *see* Docket No. 3562 at 7-8. Defendants represent that the "recent directive" authorizes "voluntary overtime for Correctional Counselors (I) to assist DPV, DPH, and DDP class members with pre-release planning, extra time for the completion of *Olson* reviews, and other effective communication accommodations for parole suitability hearing preparations." Docket No. 3562 at 8. Defendants contend that Plaintiffs have not shown that these currently-available accommodations are not an effective alternative to the staffing directive they request.

Based on the current record, the Court cannot find that class members with vision and hearing disabilities do not have sufficient assistance to draft documents for parole proceedings

United States District Court
Northern District of California

because of Defendants' current policies and procedures regarding staffing.  Plaintiffs filed class member declarations to support the staffing-related directive they request, but the vast majority of them do not support a finding that class members were prevented from, or had difficulty completing, writing parole-related documents because there was not enough staff available to assist them or because available staff refused to assist them.  Class members declared, instead, that they were unable to write parole-related documents on their own and they did not feel comfortable asking staff (or other prisoners) for assistance.  *See* Jackson Decl., Ex. 52 ¶¶ 32-38; Ex. 55 ¶ 16; Ex. 66 ¶ 26; Ex. 37 ¶¶ 39-42.  Other class members declared that they were unable to draft parole-related documents but did not mention that staff-related issues played a role in their inability to do so.  *See* Jackson Decl., Ex. 50 ¶¶ 21-25; Ex. 63 ¶ 59; Ex. 32 ¶¶ 21-24.  Collectively, the declarations suggest that ordering Defendants to implement the staffing measures that Plaintiffs request would have no, or very little, impact on whether class members are able to perform parole-related writing tasks.[26]

Accordingly, the Court denies without prejudice Plaintiffs' request for an order requiring Defendants to enact new policies and procedures regarding staffing.

## IV.    Additional Remedial Measures Are Necessary

Plaintiffs request that the Court require Defendants to develop a plan within sixty days containing the measures described in more detail below and in the proposed order they filed.  *See* Docket No. 3525-8.  The plan would be implemented after the parties meet and confer.  *See id.* at 24.

The Court finds that requiring Defendants to design, and ultimately implement, a plan that requires them to adopt a combination of certain of the remedial measures that Plaintiffs propose, with modifications, as discussed below, is necessary to bring Defendants' policies and procedures

---

[26] Notably, most of the class member declarations that Plaintiffs rely upon were submitted by DPV class members.  At least some of those DPV class members are likely to receive auxiliary devices for their personal, in-cell use that will enable them to read and write independently after Defendants finish conducting the individualized assessments that are described in more detail in section III.B. of this order.

into compliance with the Revised Permanent Injunction and the ADA.[27]  These additional

remedial measures are intended and tailored to ensure that Defendants' policies and procedures

enable class members with vision and hearing disabilities to prepare for parole proceedings and

prepare requests for decision review and parole-related grievances to the same extent as non-

disabled prisoners.  These additional measures, when considered as a whole, constitute an

incremental expansion of the remedial measures that the Court previously ordered in the Revised

Permanent Injunction and are necessary to effectuate the Revised Permanent Injunction.

### A.    Deaf Class Members Who Use Sign Language

Plaintiffs request that Defendants' plan include policies and procedures to ensure that

Defendants provide deaf signer class members with: (1) video recorded sign language translations

of parole-related documents other than the CRA to the extent that deaf signer class members

request them; (2) video recorded sign language translations of the CRA as a matter of course,

regardless of whether deaf signer class members request them; and (3) video recordings of the sign

language translation provided during deaf signer class members' parole suitability hearings, which

are to be served as a matter of course at the time when the service of a written transcript of the

hearing would occur.  *See* Proposed Order at 20-21.  Plaintiffs also request that such policies and

procedures ensure that deaf signer class members have screens to access these video recordings in

their cells during evenings, weekends, and holidays, as well as training on how to view the video

recordings on such screens.  *See id.*  Plaintiffs ask that Defendants' policies and procedures

educate deaf signer class members on how to exercise their rights in connection with these video

recordings.  *See id.*

For the reasons discussed above, the Court has found that Defendants must modify their

policies and procedures to provide the video recorded ASL translations that Plaintiffs request as

accommodations for deaf signer class members, because they are necessary to ensure that deaf

signer class members are able to prepare for parole proceedings and prepare requests for parole

---

[27] As discussed above, the Court has found that Plaintiffs have not shown that an order requiring Defendants to modify their staffing policies and procedures to provide additional writing assistance to class members is necessary at this time.

United States District Court
Northern District of California

decision review to the best of their ability and to the same extent as non-disabled prisoners.  The Court finds that the policies and procedures regarding screens, training, and education that Plaintiffs request are necessary to ensure that those class members are able to access the video recorded translations at issue to the best of their ability and in a manner similar to how non-disabled prisoners are able to access written documents.  Defendants have not shown otherwise. Accordingly, the Court will order that Defendants implement these measures as part of their plan.

### B.       Blind and Low-Vision Class Members

Plaintiffs request that Defendants' plan include policies and procedures that require Defendants (1) to identify the accessible formats and assistive devices that blind and low-vision class members require to read and write parole-related documents to prepare for parole proceedings; (2) to streamline the production and timely delivery to blind and low-vision class members of accessible versions of printed materials related to parole proceedings; and (3) to timely provide blind and low-vision class members with the assistive devices they need to complete reading and writing tasks privately and independently.  *See* Proposed Order at 16-20. Plaintiffs also request that Defendants develop policies and procedures to ensure that vision-impaired class members are trained to use any assistive devices they are provided as accommodations, and that Defendants educate vision-impaired class members on how to exercise their rights to request accommodations for the purpose of preparing for or participating in parole proceedings.  *See id.*

For the reasons discussed above, the Court has found that it is necessary to require Defendants to develop policies and procedures that require them to conduct individualized assessments to determine the accommodation(s) that each DPV and DNV class member needs to read and write parole-related documents privately and independently and to ensure that each DPV and DNV class member receives those accommodations on a timely basis.  The Court will order Defendants to finalize and implement the new procedures they recently developed for accommodating DPV class members.  The Court will also require that Defendants develop and implement procedures with respect to DNV class members to ensure that the accommodation needs of DNV class members are individually assessed and met.  The Court finds that requiring

1   Defendants to develop policies and procedures to ensure that blind and low-vision class members

2   are educated on how to exercise their rights and trained to use assistive devices they need, as

3   Plaintiffs request, is necessary to ensure compliance with the Revised Permanent Injunction and

4   the ADA.

5         **C.**      **Attorney Assistance as an Accommodation**

6         Plaintiffs request that Defendants' plan include policies and procedures to ensure that panel

7   attorneys are provided with (1) adequate training to provide accommodations to class members

8   with vision and hearing disabilities; (2) additional time for providing accommodations to those

9   class members; and (3) additional compensation for providing accommodations to those class

10  members.

11        With respect to the issue of training, Plaintiffs request that the Court's order include

12  specific instructions as to the training that Defendants must provide to panel attorneys who are

13  appointed to represent class members with vision and hearing disabilities, and that the Court order

14  that Plaintiffs' counsel be permitted to monitor and object to the training. *See* Proposed Order at

15  23-24.  The Court finds that the training that Plaintiffs contend Defendants should provide to panel

16  attorneys, as well as the requirement that Plaintiffs' counsel be permitted to monitor the training

17  and object to the same, are necessary and reasonably tailored to ensure that Defendants' policies

18  and procedures comply with Paragraphs 30 and 10 of the Revised Permanent Injunction.

19        With respect to the issue of additional time for providing accommodations, Plaintiffs

20  request that the Court order that Defendants' plan include policies and procedures providing that

21  panel attorneys who are appointed to represent and accommodate class members with vision and

22  hearing impairments "shall be expected to spend significantly more time than the amount required

23  under" the Guide or Defendants' contract with PJW, and that the additional time include

24  additional meetings with class members with vision and hearing disabilities and twice as much

25  time for meetings with deaf signers because of the additional time needed for the translation

26  process. *See* Proposed Order at 24.

27        The Court agrees with Plaintiffs that ordering Defendants to develop policies and

28  procedures that require panel attorneys to spend additional time on their representation of class

United States District Court
Northern District of California

36

United States District Court
Northern District of California

1   members with hearing and vision disabilities than they would spend with non-disabled prisoners is

2   necessary to ensure that Defendants' policies and procedures comply with Paragraphs 30 and 10 of

3   the Revised Permanent Injunction and that panel attorneys sufficiently accommodate those class

4   members.

5     With respect to the issue of additional compensation, Plaintiffs request that the Court order

6   that Defendants' plan include policies requiring them to provide additional compensation to panel

7   attorneys beyond the $945 flat rate that panel attorneys currently receive for each completed

8   case.[28]  The Court finds that, on this record, this request is not well-taken.  Plaintiffs argue that the

9   "Revised Permanent Injunction ordered" that "Defendants must pay more to attorneys

10   representing deaf signers and blind and low-vision class members so they spend more time

11   providing the needed accommodations."  *See* Docket No. 3554 at 9.  Plaintiffs have not pointed to

12   any portion of the Revised Permanent Injunction that ordered additional attorney compensation or

13   to any findings of fact that the Court made after the bench trial in 1999 that pertain to attorney

14   compensation.  Plaintiffs also argue that "Panel attorneys simply will not commit 'additional time'

15   to accommodating class members—whether by reading documents to and scribing for people,

16   communicating through sign language interpreters, or traveling—unless they receive

17   compensation for that time."  Docket No. 3566 at 4.  Plaintiffs have cited no evidence that directly

18   supports that proposition, however.  The only evidence they cite is that Defendants paid additional

19   compensation to a single attorney who has sign language experience to cover *travel expenses* to

20   represent prisoners outside of his geographic area.  *See* Doetsch Decl. ¶ 7.  That evidence does not

21   bear on the question of whether additional compensation must be provided to ensure that panel

22   attorneys accommodate class members, where no additional travel expenses are incurred or

23   requested.  Accordingly, the Court denies without prejudice Plaintiffs' request for an order

24

25

26   _____

27     [28] The Guide provides that panel attorneys will be paid a flat rate of $945 for each
completed case that was assigned after July 1, 2023.  *See* Doetsch Decl., Ex. A at 7.  That fee is
based on the presumption that a panel attorney will spend, "on average, approximately eight hours
28   per client" and was set by the California legislature.  *See* Doetsch Decl. ¶¶ 13-14.

United States District Court
Northern District of California

requiring Defendants to enact policies and procedures to provide panel attorneys additional compensation.

As noted, the Court has found that it is necessary to order Defendants to ensure that their plan includes policies and procedures that require panel attorneys to spend additional time on their representation of class members with hearing and vision impairments to ensure that their disabilities are accommodated. The Court will permit Defendants to determine for themselves the means by which they will achieve compliance with that directive.

## LEGAL STANDARD

"[A] district court has broad discretion to fashion injunctive relief." *Armstrong v. Newsom*, 58 F.4th 1283, 1293 (9th Cir. 2023) (quoting *Melendres v. Maricopa County*, 897 F.3d 1217, 1221 (9th Cir. 2018)). A district court also has inherent power to modify a previously-issued injunction to order additional relief where a party has "failed to fulfill the . . . requirements mandated by" the previously-issued injunction. *See Armstrong v. Brown*, 768 F.3d 975, 985 (9th Cir. 2014). Where a "district court has previously tried to correct the deficiencies in California's prisons' compliance with the ADA and RA through less intrusive means, and those attempts have failed, relief prescribing more specific mechanisms of compliance is appropriate." *Id.* at 986; *see also Armstrong v. Newsom*, 58 F.4th at 1299 (same).

Any prospective injunctive relief granted or approved by the Court affecting prison conditions must comply with the Prison Litigation Reform Act (PLRA). 18 U.S.C. § 3626(a)(1)(A) (providing that courts "shall not grant or approve any prospective relief [with respect to prison conditions] unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right").

## CONCLUSIONS OF LAW

I.    **Plaintiffs Have Shown that Defendants' Policies and Procedures Do Not Comply With the Revised Permanent Injunction and the ADA**

The purpose of the permanent injunction that the Court issued after the bench trial in 1999 was to remedy "ongoing, extensive, system-wide violations of the ADA," the RA, and the Due

Process Clause, and to "vindicate[] Plaintiffs' rights under the ADA and the Constitution" across all of the state's prisons.  *See* Docket No. 523 at 99, 104.  The Revised Permanent Injunction that is at issue in the present motion was intended to achieve the same goals.

As noted, the Revised Permanent Injunction requires Defendants to "develop and implement sufficiently specific policies and procedures that will ensure continuous compliance with all of the requirements of this injunction" and that "will ensure that prisoners and parolees with disabilities are able to participate, to the best of their abilities, in any parole proceedings," and are able to communicate effectively at those proceedings.  *See* Revised Permanent Injunction ¶¶ 10, 12.  It further requires Defendants to accommodate class members while giving "primary consideration" to their "request for a particular type of accommodation" unless "the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available."  *See id.* ¶ 17.  It also requires Defendants to "make accommodations for prisoners and parolees with disabilities in order to assist them in preparing for parole proceedings" and to provide them with "effective assistance in preparing" requests for parole decision review.  *See id.* ¶¶ 32, 33.

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]"  *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017).  Title II of the ADA requires public entities, including state governmental entities, to ensure that people with disabilities are not excluded from participation or are denied the benefits of their programs, services, and activities by reason of their disability.  *See* 42 U.S.C. § 12132.  A public entity violates the ADA if it provides a person with a disability "an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," or "an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]"  *See* 28 C.F.R. § 35.130(b)(1) (ii) & (iii).

Title II "include[s] an *affirmative* obligation for public entities to make benefits, services, and programs accessible to people with disabilities."  *Updike*, 870 F.3d at 949 (emphasis added).

United States District Court
Northern District of California

A public entity is required to "'take appropriate steps to ensure that communications' with a person with a disability are 'as effective as communications with others.'" *See id.* at 958 (quoting 28 C.F.R. § 35.160(a)(1)). "Upon notice of the need for an accommodation, a public entity must investigate what constitutes a reasonable accommodation." *Id.* (citation omitted). "Regulations require that public entities give primary consideration to the requests of the [disabled person] with respect to auxiliary aid requests and give deference to such requests." *Id.* (citing 28 C.F.R. § 35.160(b)(2)). "And the type of auxiliary aid or service that will be appropriate should take into account the context in which the communication is taking place." *Id.* (citing 28 C.F.R. § 35.160(b)(2)). "If the public entity does not defer to the [disabled] individual's request, then the burden is on the entity to demonstrate that another effective means of communication exists or that the requested auxiliary aid would otherwise not be required." *Id.* "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *See* 28 C.F.R. § 35.160(b)(2).

As discussed in the Findings of Fact, Plaintiffs have shown that Defendants' policies and procedures, which are applicable system-wide[29], are not in compliance with the Revised Permanent Injunction and the ADA, or that Defendants lack policies and procedures to ensure compliance with the Revised Permanent Injunction and the ADA.

### A.   Deaf Class Members Who Use Sign Language

On behalf of all deaf class members who Defendants have already identified as using sign language as their primary method of communication and who have difficulty understanding written English (deaf signer class members), Plaintiffs have requested an order requiring Defendants to modify their policies and procedures to provide those class members, as an accommodation: (1) video recorded sign language translations of parole-related documents other than the CRA to the extent that deaf signer class members request them; (2) video recorded sign

---

[29] Defendants do not argue that the policies and procedures at issue in the present motion do not apply statewide.

United States District Court
Northern District of California

language translations of the CRA as a matter of course, regardless of whether deaf signer class members request them; and (3) video recordings of the sign language translation provided during deaf signer class members' parole suitability hearings, to be served as a matter of course at the time when deaf signer class members would be served with a copy of a written transcript of the hearing.  The Court has found that Plaintiffs have shown that the video recorded sign language translations that they request as accommodations are necessary for deaf signer class members to be able to prepare for parole proceedings and prepare requests for parole decision review to the best of their ability and on an equal basis to non-disabled class members.

Defendants are required to provide those requested accommodations under Paragraph 17 of the Revised Permanent Injunction unless they can show that "the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available."  *See* Revised Permanent Injunction ¶ 17.  The ADA allows a public entity to decline to provide a requested accommodation if it can show that the requested accommodation would impose an undue administrative or financial burden, or would fundamentally alter its program, service, or activity.  *See* 28 C.F.R. §§ 35.130(b)(7) & 35.164.

Defendants do not provide the accommodations at issue to deaf signer class members at any prison as a matter of policy.  The Court has found that Defendants have not met their burden to show that they can decline to provide Plaintiffs' requested accommodations under Paragraph 17.  The Court has found that Defendants have not shown that the alternative accommodations that they offer to deaf signer class members are as effective as the accommodations that Plaintiffs request in enabling those class members to understand and review the contents of written documents, to understand what transpired during parole suitability hearings, and to identify sign language translation errors that occurred during parole suitability hearings.  *See* 28 C.F.R. § 35.130(b)(1) (ii) & (iii).  Further, Defendants have not shown that they cannot provide the accommodations that Plaintiffs request because of an undue burden or because doing so would fundamentally alter their programs or services.  *See* 28 C.F.R. §§ 35.130(b)(7) & 35.164.  Accordingly, the Court has found that Defendants are required under Paragraph 17 of the Revised

1    Permanent Injunction to provide deaf signer class members with the accommodations at issue and

2    that it is necessary to order Defendants to modify their policies and procedures accordingly.

3          **B.    Blind and Low-Vision Class Members**

4          Plaintiffs move for an order requiring Defendants to implement policies and procedures to

5    ensure that blind and low-vision class members (those designed as DPV and DNV) receive the

6    auxiliary aids and alternative formats they need to be able to read and write parole-related

7    documents to prepare for parole hearings and to prepare requests for parole decision review, as

8    required by the Revised Permanent Injunction and the ADA.  The procedures that Plaintiffs

9    request would require Defendants to: (1) identify the accessible formats and assistive devices that

10   vision-impaired class members need to read and write parole-related documents; (2) streamline the

11   production and timely delivery to vision-impaired class members of printed materials related to

12   parole proceedings in the accessible format that was identified for each class member; and (3)

13   provide vision-impaired class members with the assistive devices they need to read and write

14   parole-related documents privately and independently, as non-disabled prisoners can.

15         As noted, under the ADA, a public entity has "an *affirmative* obligation" to make benefits,

16   services, and programs accessible to people with disabilities.  *See Updike*, 870 F.3d at 949

17   (emphasis added).  When a public entity has "notice of the need for an accommodation, [it] must

18   investigate what constitutes a reasonable accommodation."  *See id.*  Further, a public entity's duty

19   to provide a reasonable accommodation to a disabled person is triggered if the public entity is on

20   notice that an accommodation is needed; in that event, the public entity must provide a reasonable

21   accommodation even if the disabled person has not requested one.  *See id.* at 954 n.6. (citation

22   omitted); *see also Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 272 (D.D.C. 2015) (Brown

23   Jackson, J.) (holding that "prison officials have an affirmative duty to assess the potential

24   accommodation needs of inmates with known disabilities who are taken into custody and to

25   provide the accommodations that are necessary for those inmates to access the prison's programs

26   and services, without regard to whether or not the disabled individual has made a specific request

27   for accommodation").  A public entity's policies and procedures do not comply with the ADA if

28   they require people who the public entity knows are disabled to request accommodations as a

condition to providing the accommodations.  *See Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F.

Supp. 2d 1045, 1062 (C.D. Cal. 2008) (holding that a public entity failed to operate its services in

a non-discriminatory manner as required by the ADA in part because its policies and procedures

placed the burden of requesting accommodations on disabled people); *see also Pierce*, 128 F.

Supp. 3d at 272 (holding that "there is neither legal nor logical support" for the proposition that "a

public entity's duty to provide accommodations arises only by request").  As noted, "[i]n order to

be effective, auxiliary aids and services must be provided in accessible formats, in a timely

manner, and in such a way as to protect the privacy and independence of the individual with a

disability." *See* 28 C.F.R. § 35.160(b)(2).

The Court has found that Defendants are on notice, by virtue of their DPV and DNV

disability codes, that blind and low-vision class members need accommodations to be able to read

and write parole-related documents to prepare for parole proceedings and prepare requests for

parole decision review.  Defendants, therefore, have an affirmative duty to conduct an

investigation into what constitutes a reasonable accommodation for each DPV and DNV class

member based on his individual needs, and to provide, without waiting for a request, reasonable

accommodations to each of them while taking into account his individual preferences and

protecting his privacy and independence.

The Court has found that Defendants' new, but yet-to-be-fully-implemented, policies and

procedures for accommodating DPV class members appear, on this record, to be reasonably aimed

at satisfying their affirmative obligation to investigate reasonable accommodations and provide

such accommodations to DPV class members so that they are able to read and write parole-related

documents privately and independently like non-disabled prisoners, as the Revised Permanent

Injunction requires.  However, Defendants have not shown that the same is true with respect to

their previous policies and procedures.  The Court has found that, to ensure that Defendants'

policies and procedures for accommodating DPV class members comply with the Revised

Permanent Injunction and the ADA, it is necessary to order Defendants to develop a plan that

requires them to formalize and implement their new procedures for identifying the

accommodations that each DPV class member needs, and that requires them to enact policies and

procedures to ensure that DPV class members receive the accommodations they need on a timely basis.  It is possible that Defendants may not fully implement their new procedures for accommodating DPV class members, or may abandon those procedures, in the absence of an order.  *See Armstrong v. Newsom*, 58 F.4th at 1298 (holding that "it was reasonable for the district court to include measures in its orders that Defendants may have adopted voluntarily" because "voluntary plans may change").

The Court has also found that Defendants' current policies and procedures for accommodating DNV class members do not comply with the ADA or the Revised Permanent Injunction.  Such policies and procedures do not require Defendants to affirmatively conduct individualized assessments to determine the accommodations needed by each DNV class member to read and write parole-related documents, do not track DNV class members' need for documents in alternative formats, and do not require the delivery of documents in alternative formats to DNV class members even if they need such formats to be able to read parole-related documents to the same extent as non-disabled prisoners.  Accordingly, the Court has found that, to ensure that Defendants' policies and procedures for accommodating DNV class members comply with the Revised Permanent Injunction and the ADA, it is necessary to order Defendants to develop policies and procedures that require them to conduct individualized assessments to identify the accommodation(s) that each DNV class member needs to read and write parole-related documents privately and independently and to ensure that each DNV class member receives necessary accommodations on a timely basis.

## C.    Attorneys as Accommodations

Plaintiffs have shown, and the Court has found, that Defendants do not have policies and procedures in place (1) to ensure that panel attorneys appointed to represent and accommodate class members with vision and hearing disabilities receive adequate training to enable them to provide accommodations to those class members; and (2) to ensure that panel attorneys devote additional time to accommodate those class members' disabilities.  Accordingly, the Court has found that Defendants are in violation of Paragraphs 30 and 10 of the Revised Permanent Injunction and that it is necessary to order Defendants to include in their plan policies and

United States District Court
Northern District of California

1    procedures to ensure compliance with the training and "additional time" requirements of

2    Paragraph 30 of the Revised Permanent Injunction.

3    **II.    Additional Remedial Measures Are Necessary**

4        The Court retained jurisdiction to enforce the Revised Permanent Injunction.  *See* Revised

5    Permanent Injunction ¶ 40.  The Court has found that the additional remedial measures discussed

6    above are necessary to bring Defendants' policies and procedures into compliance with the

7    Revised Permanent Injunction and the ADA.  Those additional remedial measures are tailored to

8    ensure that class members with hearing and vision disabilities timely receive the accommodations

9    they need to read and write parole-related documents, to communicate effectively, and to prepare

10   for parole proceedings and prepare requests for parole decision review to the same extent as non-

11   disabled prisoners can, as the Revised Permanent Injunction requires.

12   **III.    The Additional Remedial Measures Ordered Herein Are Consistent with the PLRA**

13       As noted, the PLRA provides that courts "shall not grant or approve any prospective relief

14   [with respect to prison conditions] unless the court finds that such relief is narrowly drawn,

15   extends no further than necessary to correct the violation of the Federal right, and is the least

16   intrusive means necessary to correct the violation of the Federal right."  18 U.S.C.

17   § 3626(a)(1)(A).  The Court is required to give substantial weight to "any adverse impact on

18   public safety or the operation of a criminal justice system caused by" the prospective relief.  *Id.*

19   Whether prospective relief is appropriate in light of the PLRA depends on whether the Court

20   finds, in light of the "order as a whole," "that the set of reforms being ordered—the 'relief'—

21   corrects the violations of prisoners' rights with the minimal impact possible on defendants'

22   discretion over their policies and procedures."[30]  *Armstrong v. Schwarzenegger*, 622 F.3d 1058,

23   1071 (9th Cir. 2010).

24       **A.    Narrowly Tailored**

25       As noted, the Revised Permanent Injunction requires Defendants to develop and

26   implement sufficiently specific policies and procedures that "will ensure continuous compliance

27   _____

28       [30] The PLRA, 18 U.S.C. § 3626(a)(1)(B), also requires that the Court make certain (cont.)

United States District Court
Northern District of California

with all of the requirements" of the injunction.  *See* Revised Permanent Injunction ¶ 10.  The additional remedial measures that the Court has found are necessary are narrowly tailored as required by the PLRA because they are designed to remedy Defendants' failure to adopt policies and procedures to ensure that class members with hearing and vision disabilities receive the reasonable accommodations they need to be able to read and write parole-related documents privately and independently, communicate effectively, prepare for parole proceedings, and prepare requests for parole decision review to the best of their ability and to the same extent as non-disabled prisoners, as required by the Revised Permanent Injunction and the ADA.  The Court has found that Defendants either lack policies and procedures that are required to ensure continuous compliance with the Revised Permanent Injunction, or that Defendants' policies and procedures do not, on their face, comply with the Revised Permanent Injunction and ADA.

It is appropriate for the additional remedial measures at issue to apply system-wide because they are intended to cure deficiencies in Defendants' system-wide policies and procedures (or lack thereof).  *See Armstrong v. Brown*, 768 F.3d at 985 (affirming modification to permanent injunction that ordered system-wide relief because that relief was intended to address deficiency in procedures that affected all of California's prison institutions).

### B.    Least Intrusive

The additional remedial measures that the Court has found are necessary are not impermissibly intrusive.  The Court will permit Defendants to draft a plan containing measures aimed at achieving compliance with the Revised Permanent Injunction and the ADA.  The Court will leave to Defendants' discretion as many of the particulars as possible.  The Court will provide some specific instructions to Defendants in terms of how to craft their plan, but that is permissible because of the "ongoing, intractable nature of this litigation," *see Armstrong v. Brown*, 768 F.3d at 986, and because the Court has attempted less intrusive directives in the past and they have failed,

---

findings to the extent that any prospective relief requires a government official to exceed his or her authority under state or local law.  Defendants have not identified any state or local law that they must violate to implement the additional remedial measures ordered herein.  Accordingly, the Court need not make any findings under 18 U.S.C. § 3626(a)(1)(B).

*see Armstrong v. Newsom*, 58 F.4th at 1297 ("In particular, when a district court 'has previously tried to correct the deficiencies' in prison operations 'through less intrusive means, and those attempts have failed, relief prescribing more specific mechanisms of compliance is appropriate.'") (citation omitted).

The Court's conclusion is not altered by Defendants' argument that "the relief [Plaintiffs] request would effect a broad intrusion into institutional operations," *see* Docket No. 3543 at 1, 17, because they point to no evidence to support it.

Defendants also have not pointed to any evidence showing that the additional remedial measures would be burdensome. Even if they had, the outcome would not change, because "[a] demonstration that an order is burdensome does nothing to prove that it was overly intrusive" or otherwise inconsistent with the requirements of the PLRA. *See Armstrong v. Schwarzenegger*, 622 F.3d at 1071 ("With Congress having made the decision to recognize the rights of disabled persons, the question is not whether the relief the court ordered to vindicate those rights is expensive, or difficult to achieve, but whether the same vindication of federal rights could have been achieved with less involvement by the court in directing the details of defendants' operations.").

In light of the foregoing, the Court finds that the additional remedial measures at issue are consistent with the PLRA.

## CONCLUSION

The Court GRANTS IN PART Plaintiffs' motion to enforce the Revised Permanent Injunction and to order Defendants to design, and then implement, a plan that requires additional remedial measures. The Court will issue a separate order describing the additional remedial measures that Defendants' plan must include.

IT IS SO ORDERED.

Dated: March 20, 2024

CLAUDIA WILKEN
United States District Judge