1  ROB BONTA
   Attorney General of California
2  SHARON A. GARSKE
   Supervising Deputy Attorney General
3  SEAN LODHOLZ
   OLENA LIKHACHOVA
4  ANNE KAMMER
   GURPREET SANDHU
5  TRACE O. MAIORINO
   Deputy Attorney General
6  State Bar No. 179749
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3594
8    Fax:  (415) 703-5843
     E-mail:  Trace.Maiorino@doj.ca.gov
9  *Attorneys for Defendants*
   *Gavin Newsom, Board of Parole Hearings,*
10 *and California Department of Corrections and*
   *Rehabilitation*

11

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                      OAKLAND DIVISION

15

16
   **JOHN ARMSTRONG, et al.,**                 | 4:94-cv-02307-CW
17
                              Plaintiffs,        **DEFENDANTS' NOTICE OF**
18                                               **COMPLIANCE WITH ORDER FOR**
                                                 **ADDITIONAL REMEDIAL MEASURES**
19        v.                                     **[ECF NOS. 3583, 3584]**

20 **GAVIN NEWSOM, et al.,**

21                              Defendants.

22

23

24      TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25      On March 20, 2024, the Court ordered Defendants to develop additional remedial measures

26 to ensure compliance with the revised permanent injunction (ECF No. 788) and the Americans

27 with Disabilities Act (ADA).  (ECF No. 3584.)  The additional remedial measures include

28 accommodations for blind and low-vision class members, video-taped materials for deaf-signers,

                                        1

and panel attorney assistance and training.  Following the required meet-and-confer communications with Plaintiffs' counsel and the Court's expert, Defendants issued and implemented the additional remedial measures on June 3, 2024.  These additional remedial measures are noted below and attached to this notice of compliance.  Defendants provide this notice in accordance with the Court's March 20, 2024 order.  (ECF No. 3584 at 8.)

## DEFENDANTS' NOTICE OF COMPLIANCE

### 1.  Accommodations for Blind and Low-Vision Class Members

On June 3, 2024, Defendants implemented policies and procedures that address the identification, documentation, and provision of reading and writing accommodations for blind and low-vision class members; the production and service of documents related to blind and low-vision class members' parole suitability hearings, including Board of Parole Hearings (BPH) forms and notices, in alternate formats; access to assistive equipment; staff training; and class member education.  (ECF No. 3584 at 2-5.)  The policies and procedures implemented are, collectively, attached as Appendix A.

### 2.  Video-Taped Materials for Deaf-Signers

On June 3, 2024, Defendants implemented policies and procedures that address video recording parole suitability hearings; the provision of video-recorded sign language translations of documents; the viewing of the video recordings; staff training; and class member education.  (ECF No. 3584 at 5-6.)  The policies and procedures implemented are, collectively, attached as Appendix B.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

### 3.    Panel Attorney Assistance and Training

2       On June 3, 2024, Defendants implemented policies and procedures addressing assistance by

3  BPH panel attorneys and additional training for panel attorneys, to the extent their appointment

4  serves as an accommodation for class members with certain disabilities.  (ECF No. 3584 at 6-8.)

5  The policies and procedures implemented are, collectively, attached as Appendix C.

6

7  Dated:  June 3, 2024                                Respectfully submitted,

8                                                      ROB BONTA
                                                       Attorney General of California
9                                                      SHARON A. GARSKE
                                                       Supervising Deputy Attorney General
10

11

12                                                     */s/ Trace O. Maiorino*
                                                       TRACE O. MAIORINO
13                                                     Deputy Attorney General
                                                       *Attorneys for Defendants*
14                                                     *Gavin Newsom, Board of Parole Hearings,*
                                                       *and California Department of Corrections*
15                                                     *and Rehabilitation*

16  CF1997CS0005
    44188573.docx

17

18

19

20

21

22

23

24

25

26

27

28

# Appendix A

| A.1.1 | Memorandum | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |
|---|---|---|
| A.1.2 | Operational Procedure | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |

| A.2.1 | Memorandum | CORRECTIONAL COUNSELOR ROLE IN BOARD OF PAROLE HEARINGS PROCEEDINGS FOR INCARCERATED PERSONS WITH DISABILITIES |
|---|---|---|
| A.2.2 | Chrono 128B | BPH Accommodations Questionnaire Chrono |
| A.2.3 | Chrono 128B | BPH Accommodations Questionnaire Chrono – Large Print |
| A.2.4 | Notification to Class Member | Notice of DPV/DNV Rights for BPH Proceedings |
| A.2.5 | Notification to Class Member | Notice of DPV/DNV Rights for BPH Proceedings – Large Print |
| A.2.6 | Notification to Class Member | Notice of Deaf-Signer Rights for BPH Proceedings |
| A.2.7 | Job Aid | Microsoft Ease of Access Features |
| A.2.8 | Job Aid | 6.0 Adobe Reader, Read Out Loud Job Aid |

| A.3.1 | Memorandum | ACCOMMODATIONS FOR INCARCERATED PERSONS WITH A VISION CODE |
|---|---|---|
| A.3.2 | Operational Procedure | ACCOMMODATIONS FOR INCARCERATED PERSONS WITH A VISION CODE |
| A.3.3 | Informational sheet | FAQ Sheet |
| A.3.4 | Chrono 128B | Visual Accommodations Issuance Chrono |
| A.3.5 | Guideline | Large Print Document Guidelines |
| A.3.6 | Informational sheet | Printing SOMS Documents in Large Print |

| A.4.1 | Policies and Procedures | Providing Documents to Persons with Vision Disabilities (with attachment) |
|---|---|---|

| A.1.1 | Memorandum | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |
|-------|------------|-------------------------------------------------|

State of California                                                                 Department of Corrections and Rehabilitation

# Memorandum

Date:

To:        See Distribution List

Subject:   **IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS**

On March 20, 2024, the *Armstrong* Court issued the "Order for Further Parole-Related Remedial Plan" regarding the accommodation of incarcerated persons designated as DPV (vision impaired, impacting placement) or DNV (vision impaired, not impacting placement), and incarcerated persons designated as DPH (hearing impaired, impacting placement) whose primary method of communication is sign language and who have difficulty understanding written English, identified as a Reading level of 4.0 or lower (deaf signers). The court order requires specific accommodations for DPV, DNV, and deaf signers before and after Board of Parole Hearings (BPH) proceedings. This policy describes the roles of a California Department of Corrections and Rehabilitation (CDCR) Americans with Disabilities Act (ADA) Coordinator, a CDCR Sign Language Interpreter (SLI), and CDCR Law Library staff in implementation of the court order specific to deaf signers.

**TRANSLATION OF BPH RELATED DOCUMENTS**

Prior to an incarcerated person's BPH hearing, the Correctional Counselor (CC) I will serve a Comprehensive Risk Assessment (CRA). For incarcerated persons identified as deaf signers, a CDCR SLI will accompany the CC I to serve the paper version of the CRA. At the time of service of the CRA by the CC I, deaf signers shall meet with the SLI to have the CRA translated. The CC I will be required to assist in the full translation of the CRA, which may include reading the document aloud so that the translation can be completed by the SLI. The SLI shall use Microsoft (MS) Teams during the meeting to video record the translation (see Attachment A for additional instructions). The incarcerated person may ask the SLI clarifying questions specific to the translation to ensure they understand the translation. If the incarcerated person has concerns or questions regarding content of the CRA (e.g., disagreements about the findings or factual errors, legal questions or advise, etc.), the CC I shall direct the incarcerated person to reach out to their attorney.

Additionally, a deaf signer or their counsel may request that documents in the incarcerated person's central file or any other documents needed to prepare for a BPH proceeding be translated by a SLI that is video-recorded and placed onto a DVD. Documents include, but are not limited to, documents identified from the central file during the *Olson* Review, such as a Probation Officer's Report, Rules Violation Reports, laudatory chronos, etc. If a deaf signer makes such a request, a CDCR SLI shall video-record themselves via MS Teams translating the requested document(s). The incarcerated person does not need to be present during the SLI's translation. The CC I will be required to assist in the translation of the requested document(s), which may include reading the document(s) aloud so that the translation can be completed by the SLI.

See Distribution List
Implementation of Parole Related Accommodations
Page 2

**ISSUANCE OF DVD PLAYERS**

The ADA Office shall ensure the video recorded SLI translations that are transferred onto DVDs are provided to the incarcerated person. The ADA Office staff shall document the delivery of DVD(s) on a CDCR Form 128B, General Chrono. The DVD of the translated CRA shall be provided to the incarcerated person no later than 60 days prior to the BPH hearing.

At institutions designated to house DPH incarcerated persons that require SLI, the ADA Office will maintain a sufficient inventory of portable DVD players for temporary issuance to deaf signers to view the DVD(s) privately and independently. Specific information regarding the procedure for issuance and tracking of the DVD players can be found in the attached LOP template.

**ASSISTANCE WITH READING AND WRITING**

Incarcerated persons with a disability impacting their ability to read and write independently (e.g., DPV, DNV, DPH, DDP, etc.) may request assistance from Law Library staff or ADA Workers to scribe documents related to a BPH proceeding.

The incarcerated persons will be provided with accommodations that allow them to read and write privately and independently using assistive devices or other technology. When more assistance is needed, a Semi-Skilled ADA Worker may assist the incarcerated person so long as the incarcerated person agrees to assistance from the ADA Worker. The ADA Worker or Law Library staff shall scribe what the incarcerated person wants to write, and Law Library staff shall provide three copies of the scribed document (one for the incarcerated person, one for their attorney, and one for BPH) at no cost to the incarcerated person.

**PROOF OF IMPLEMENTATION**

All institutions shall update their Disability Placement Program (DPP) LOP to reflect the direction included in this memorandum and provide a copy of the DPP LOP to their respective Mission Associate Director within 90 days of the release date of this memorandum. The revision may be incorporated as an addendum to be included in the next scheduled revision of the LOP.

All ADA Coordinators, SLIs, and Law Library staff shall be trained on the expectations of this memorandum by utilizing the Learning Management System, Course Code XXXXXXX within 90 calendar days of the date of this memorandum. Institutions shall provide a proof of practice to their respective Mission Associate Director.

See Distribution List
Implementation of Parole Related Accommodations
Page 3

If you have any custody related questions, please contact Lourdes White, Chief, Class Action Management Unit, at (916) 835-5679 or Lourdes.White@cdcr.ca.gov.

If you have any library related questions, please contact Brandy Buenafe, Principal Librarian, Office of Correctional Education, at (916) 431-4443 or Brandy.Buenafe@cdcr.ca.gov.

RON BROOMFIELD
Director
Division of Adult Institutions

AMY CASIAS
Director
Division of Rehabilitative Programs

Attachments

DISTRIBUTION LIST:

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Supervisors of Correctional Education Programs
Classification and Parole Representatives
Correctional Counselors
Sign Language Interpreters
Law Library staff

cc:    Jared D. Lozano
       Jennifer Benavidez
       Raquel Buckel
       Dawn Lorey
       Edina Thomas
       Lourdes White
       Christopher Hees
       Timothy Fleshman
       Darnell Mebane
       Margo Wilkerson
       Jennifer Shaffer
       Jessica Blonien
       Shannon Swain
       Rebecca Silbert
       Brandy Buenafe
       Katie Riley
       Megan Roberts

| A.1.2 | Operational Procedure | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |
|-------|----------------------|--------------------------------------------------|

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

I.    **OPERATIONAL PROCEDURE NO. XXX – IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS**

II.   **PURPOSE AND OBJECTIVE**

This procedure is written to provide clear guidelines for the provision of specific accommodations for DPV (vision impaired, impacting placement), DNV (vision impaired, not impacting placement), and Deaf-Signer (hearing impaired, impacting placement (DPH) who requires a Sign Language Interpreter (SLI) for communication and who has difficulty understanding written English, based on a reading score of 4.0 or below) incarcerated persons before and after Board of Parole Hearings (BPH) proceedings. This policy describes the roles of a California Department of Corrections and Rehabilitation (CDCR) Americans with Disabilities Act (ADA) Coordinator, a CDCR Sign Language Interpreter (SLI), and CDCR Law Library staff in implementation of the court order, specific to deaf signers.

III.  **REFERENCES**

- California Code of Regulations (CCR), Title 15, Section 3190, General Policy
- *Armstrong* Order for Further Parole-Related Remedial Plan (ECF No. 3584)
- *Armstrong* Court Ordered Remedial Plan, Amended January 3, 2001
- CDCR Department Operations Manual (DOM), Section 54030.8(c)(1), Personal Property Package Criteria
- Authorized Personal Property Schedule (APPS)
- CDCR memorandum titled, *Implementation of Parole Related Accommodations*, dated XXXXX, 2024.
- CDCR memorandum titled, *Accommodations for Incarcerated Persons with a Vision Code*, dated XXXXX, 2024.

IV.   **APPROVAL AND REVIEW**

A. This operational procedure and any modifications or inclusions must have the approval of the Warden annually in the month of XXXX.

B. This procedure will be reviewed each XXXX by the ADA Coordinator and Classification and Parole Representative (C&PR) and submitted to the Warden for final approval.

V.    **IDENTIFICATION OF UPCOMING BPH HEARINGS FOR DEAF SIGNERS**

On a weekly basis, the institutional BPH Case Records Desk shall notify the institution's ADA Office of all scheduled upcoming BPH hearings (within the next 15 months) for deaf signers.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

Following a deaf signer's BPH hearing, BPH will send a video recording of the hearing on DVD to the ADA Office. An ADA Office staff member will provide the DVD of the BPH hearing to the incarcerated person. Notably, providing deaf signers with videos of the BPH hearing and CRA supplements and does not replace the existing processes for providing paper copies of these documents. The paper copies of documents shall be served to the incarcerated person under existing processes.

VI.    **TRANSLATION OF BPH RELATED DOCUMENTS**

A.    **Comprehensive Risk Assessment (CRA)**

The assigned correctional counselor (CC) will coordinate with the CDCR SLI to arrange for the initial delivery of the paper copy of the CRA and the subsequent in-person translation and recording of the CRA for the deaf signer. This translation is a court ordered requirement and must be produced in video format (i.e., DVD), to allow the incarcerated person to view the translation of the document. The SLI shall utilize Microsoft (MS) Teams during the meeting to video record the translation (see Attachment A for additional instructions). The CC shall document an incarcerated person's refusal of any aspect of these accommodations (i.e., refusal to be present during translation, refusal to have translation video recorded, etc.) on a CDC Form 128B, General Chrono.

Once the recording is completed, the SLI shall provide the DVD to the ADA Office, who will ensure that the recording is issued to the incarcerated person no later than 60 calendar days prior to the BPH hearing.

B.    **Other BPH Related Translations**

Additionally, deaf signers may request to have other documents related to preparing for their parole hearings translated into sign language and video recorded. This may include, but is not limited to, documents identified from the central file during the *Olson* Review, such as a Probation Officer's Report, Rules Violation Reports, laudatory chronos, etc. Should the deaf signer or their attorney request additional documents to be translated into sign language (*see* Section XI for examples), the request shall be sent to the CC and then referred to the SLI, who will complete the video-recorded translation.

VII.    **ISSUANCE OF PORTABLE DVD PLAYERS**

When a deaf signer has an upcoming BPH proceeding, the ADA Office shall ensure issuance of the DVD player to the incarcerated person within five business days of notice of the upcoming

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

BPH proceeding. Prior to the issuance of the DVD Player, the ADA Office will enter the device, including any serial number, on the *Registerable Property* screen via the SOMS Module (listed under *Accommodation Property*). The ADA Office will ensure the device is functional upon issuance.

**A.  Duration of Accommodation**

Deaf signers shall have access to the DVD player for one year prior to a scheduled BPH hearing or within five business days of notice of a scheduled hearing within the next twelve months. Deaf signers shall be permitted to retain the DVD player for six months after the BPH hearing or until post-hearing tasks are completed.

**B.  Training**

At the time of issuance of the DVD player, the incarcerated person shall be trained by an ADA Office staff member on how to use the device, including use of the fast-forward, pause, and reverse functions.

**C.  Record of Issuance**

The ADA Office staff member shall have the incarcerated person sign a CDC Form 128B, DVD Player Issuance Chrono, (Attachment B) upon issuance of the device, and a copy of the DVD Player Issuance Chrono will be forwarded to Case Records for scanning into the Electronic Records Management System (ERMS), Miscellaneous tab, with the incarcerated person retaining a copy of the DVD Player Issuance Chrono. The DVD Player Issuance Chrono is not required to be kept in the incarcerated person's possession as proof of approval, as the DVD player will be tracked in SOMS. The incarcerated person shall be allowed to refuse acceptance of the DVD player, and that will be documented on the DVD Player Issuance Chrono.

The DVD players are considered state property. The incarcerated person will be financially responsible for the intentional damage, alteration, or destruction of the DVD player. As such the incarcerated person shall sign a conditional CDC Form 193, Inmate Trust Account Withdrawal, which stipulates the cost the incarcerated person must pay if the DVD player is intentionally damaged, altered, or destroyed and needs to be replaced.

**D.  Request for Replacement DVD Player or DVD**

The incarcerated person may request a replacement DVD player if reasonable wear and tear occurs to the device. The incarcerated person will receive another device as a one-for-one exchange via submission of a Form GA 22 to the ADA office. In addition, the DVD player shall

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

be replaced if it has been determined the DVD player was lost, damaged, or destroyed due to staff neglect, or due to no fault of the incarcerated person. The ADA Coordinator shall replace the non-functional device within five business days of notification of non-functionality. The ADA Coordinator will also arrange for the repair or replacement of any nonfunctional DVDs upon notification that they are defective and no longer working.

**E.   Property Requirements**

The requirements listed in the CCR, Title 15, and APPS, wherein the incarcerated persons receive equipment in clear color, shall *not* be applied to the DVD player approved under this process. As such, the DVD player provided will not count against the incarcerated person's total square footage of property nor be restricted by the three-appliance limit, as outlined in the DOM, Section 54030.8(c)(1). These DVD players will not be considered the incarcerated person's personal property nor be considered a healthcare appliance, as outlined in CCR, Title 15, Section 3190.

Incarcerated persons, who have received a DVD player, are approved to have the device within their possession in housing unit settings (including Restrictive Housing) in addition to Law Libraries.

During institutional transfers, the DVD player and associated DVDs shall be inventoried and packed with the incarcerated person's property for transfer. Upon parole or discharge, the DVD player shall be collected by the ADA Office staff for appropriate tracking, however the DVDs will remain the property of the incarcerated person.

**VIII.   TRACKING**

**A.   Confiscation, Damage, and Destruction**

These DVD players and associated DVDs shall not be confiscated without cause during routine cell searches or when an incarcerated person is disciplined. Should a DVD player become an immediate security threat (e.g., altered or used as a weapon, etc.) the device shall be confiscated. In addition, the device will be confiscated if necessary to be collected as evidence in a crime or investigation (must be supported by documentation). If the device is confiscated, the ADA Coordinator shall ensure an appropriate interim accommodation is provided to the incarcerated person.

If the device or any of the components (e.g., cords, chargers, etc.) are damaged, altered, or destroyed, the custody supervisor shall determine if it was intentional or unintentional based on the circumstances (to include an interview with the incarcerated person, documented on

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

a CDC Form 128B) and provide all available information to the ADA Coordinator. The ADA Coordinator will determine the best course of action (i.e., replace the device, provide an alternate assistive device). If the ADA Coordinator determines the best course of action is to remove the device, the ADA Coordinator shall also ensure it is removed from the incarcerated person's *Registerable Property* screen via the SOMS Module. Pending replacement of the device, the incarcerated person will be provided an alternative device if possible. As these devices are considered state property, the incarcerated person will be financially responsible for intentional damage, alteration, or destruction of the device, and may be subject to disciplinary action pursuant to CCR Title 15, Section 3011.

IX.    **PROCUREMENT OF DVD PLAYERS**

At institutions designated to house DPH incarcerated persons that require SLI, the ADA Coordinator will maintain an inventory of portable DVD players for temporary issuance to deaf signers to view the DVD(s) privately and independently. The ADA Coordinator shall assess current inventory of presently issued DVD players and maintain sufficient number of DVD players to facilitate prompt issuance or replacement, if warranted, as outlined in this LOP. These devices will be purchased through the existing procurement processes and the purchase orders shall be made within Functional Area 2710030, utilizing the commitment line item *Not-Otherwise Classified Non-IT Good* 9031123900.

X.    **ASSISTANCE WITH READING AND WRITING**

Incarcerated persons with a disability impacting their ability to read and write independently (e.g., DPV, DNV, DPH, DDP, etc.) may request assistance from Law Library staff or ADA Workers to scribe documents related to a BPH proceeding.

The incarcerated persons will be provided with accommodations that allow them to read and write privately and independently using assistive devices or other technology. When more assistance is needed, a Semi-Skilled ADA Worker may assist the incarcerated person so long as the incarcerated person agrees to assistance from the ADA Worker. The ADA Worker or Law Library staff shall scribe what the incarcerated person wants to write, and Law Library staff shall provide three copies of the scribed document (one for the incarcerated person, one for their attorney, and one for BPH) at no cost to the incarcerated person.

At least one year before the incarcerated person's tentative parole hearing date and until incarcerated person's post-hearing tasks have been completed, if an incarcerated person needs access to a printer to accommodate their reading and writing needs related to their BPH proceedings, the ADA Office staff shall print the requested documents related to incarcerated person's BPH proceeding as soon as reasonably possible at no cost to the incarcerated person.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

XI.    **PROVIDING BPH DOCUMENTS IN ACCESSIBLE FORMAT**

Forms produced for BPH proceedings may include but are not limited to:

- BPH 1001 Proposed Parole Consideration Decision
- BPH 1002 Notice of Rights (Consultations)
- BPH 1002 Notice of Rights (Initial/Subsequent/Rescission Hearings)
- BPH 1003 Hearing Rights Form
- Notice of Rights of Expanded Medical Parole (EMP)
- BPH 1004 Post-Conviction Report
- BPH 1045-A Petition to Advance Hearing Date
- BPH 1048(A) Nonviolent Eligibility
- BPH 1048(B) Nonviolent Referral
- BPH 1048(C) Nonviolent Decision
- BPH 1048(D) Nonviolent Decision Review
- BPH 1073 Notice and Request for Assistance at Parole Proceeding
- BPH 1073(a) Reasonable Accommodation Notice and Request
- BPH 1074 Request for Reasonable Accommodation – Grievance Process
- BPH 1080 Notice of Date/Time/Place
- BPH 1135 Miscellaneous Decision
- BPH 1415 Summary of Offenders with a Mental Health Disorder Hearing and Decision
- Comprehensive Risk Assessment
- Hearing Transcript
- Notice of Confidential Information Disclosure in Advance of Parole Hearing Memorandum (NCID)
- Notice of DPV/DNV Rights for BPH Proceedings
- Notice of Deaf-Signer Rights for BPH Proceedings
- Offer and Documentation of *Olson* Review

XII.    **RESOURCE SUPPLEMENTS**

Attachment A – MS Teams Job Aid
Attachment B – CDC Form 128-B DVD Player Issuance Chrono
Attachment C – Portable DVD Specifications Sheet
Attachment D – Portable DVD Player Tracking Sheet

XIII.    **APPROVALS**

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

NAME
Warden
Institution
Division of Adult Institutions

| A.2.1 | Memorandum | CORRECTIONAL COUNSELOR ROLE IN BOARD OF PAROLE HEARINGS PROCEEDINGS FOR INCARCERATED PERSONS WITH DISABILITIES |
|-------|-----------|---------------------------------------------------------------------------------------------------------------|

DocuSign Envelope ID: 0547130F-E83B-4CF9-9289-AB2BDB67368B

State of California                                                                                    Department of Corrections and Rehabilitation

# Memorandum

Date:

To:     Associate Directors, Division of Adult Institutions
        Wardens
        Americans with Disabilities Act Coordinators
        Classification and Parole Representatives
        Correctional Counselors

Subject:  **CORRECTIONAL COUNSELOR ROLE IN BOARD OF PAROLE HEARINGS PROCEEDINGS FOR INCARCERATED PERSONS WITH DISABILITIES**

This memorandum delineates the roles and duties of Correctional Counselors (CC) in Board of Parole Hearings (BPH) proceedings, specifically as it pertains to those incarcerated persons in the Developmental Disability Program (DDP) and the Disability Placement Program (DPP). Pursuant to the memorandum titled, *Revised Correctional Counselor I Ratio Allocation Distribution Methodology and Process*, dated October 8, 2018, CCs shall "provide additional accommodation for disabled inmates to ensure equal access to programs, services, and activities, to include preparation for [BPH] Suitability hearings." The purpose of this memorandum is to detail these additional accommodations and assist CCs in fulfilling this role. This policy replaces the memorandum titled, *Correctional Counselor Role in Board of Parole Hearing Processes for Inmates with Disabilities*, dated January 18, 2022. The CCs shall issue all forms generated by Board Information Technology System (BITS). The CCs shall use effective communication during BPH encounters.

CCs are responsible for assisting incarcerated persons with disabilities in understanding, preparing for, and participating in the BPH suitability hearing process, as needed. CCs shall utilize the Strategic Offender Management System (SOMS) DPP Disability/Accommodation screen, and the Disability and Effective Communication System (DECs) via the BITS, to identify the incarcerated person's required accommodations. The CC shall review SOMS and DECS/BITS to identify the incarcerated person's need for assistance, primary and secondary method of effective communication, adaptive support needs, assistive device(s) or software (e.g., electronic magnifier, personal sound amplification device, Microsoft Ease of Access, etc.) that are required to accommodate the incarcerated person for BPH proceedings. Accommodations shall be provided in a manner to allow the incarcerated person privacy and independence in preparation for a BPH hearing or post-hearing tasks.

## BPH ACCOMMODATIONS QUESTIONNAIRE

CCs shall review BITS at least weekly for any assignments associated with a BPH proceeding. When assigned to do so by BITS, the CC shall meet with the incarcerated person and complete a CDCR Form 128-B, BPH Accommodations Questionnaire (Attachment A). The BPH Accommodations Questionnaire includes documentation that the incarcerated person has been informed of their accommodations recorded in SOMS and DECS/BITS, and that the incarcerated person has indicated that these accommodations are sufficient to proceed with preparation for

DocuSign Envelope ID: 0547130F-E23B-4CF9-9289-AB2BDB67368B

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Classification and Parole Representatives
Correctional Counselors
Page 2

their BPH hearing. If the incarcerated person indicates the accommodations, as recorded in SOMS and DECS/BITS, are insufficient, the CC shall ask the incarcerated person what accommodations, if any, the CC may reasonably provide to proceed with the incarcerated person's preparation for their BPH hearing. If sufficient accommodations cannot be provided, the CC shall notify the ADA Coordinator. The ADA Coordinator shall route this concern through the Reasonable Accommodation Process to determine appropriate action. The CC I shall ensure the BPH Accommodations Questionnaire is forwarded to Case Records, who will scan it into ERMS, in the General Chronos section.

**NOTICE OF RIGHTS DOCUMENTS**

When prompted to do so by BITS, the CC shall serve the incarcerated person with a Notice of DPV/DNV Rights for BPH Proceedings or a Notice of Deaf-Signer (as identified as a Reading level of 4.0 or lower) Rights for BPH Proceedings, as applicable. See Attachments B and C.

**ACCESSIBLE FORMATS OF DOCUMENTS FOR INCARCERATED PERSONS WITH A VISION CODE**

When preparing for BPH proceedings and completing post-hearing tasks, incarcerated persons with a DPP vision code impacting placement (DPV) or non-impacting placement (DNV) may require documents in accessible formats such as large print, Braille, audio, etc., or may require the use of assistive devices to assist with their review of documents. CCs shall review DECS/BITS and SOMS, and the information gathered from the incarcerated person in the BPH Accommodations Questionnaire, to determine the form of accommodation that best ensures effective communication for reading and writing. This may include printing out documents from the central file at no cost to the incarcerated person to enable them to review the documents with an assistive device if large print is their accommodation. If DECS/BITS or SOMS identifies the need for Braille or audio format, the CC shall coordinate with the ADA Coordinator to provide documents in an alternate format.

***OLSON* REVIEWS**

In preparation for BPH hearings, incarcerated persons are afforded the opportunity to review their central file via an *Olson* review. The CC is to ensure the incarcerated persons with disabilities are afforded this opportunity and, if needed, provide extra assistance to include reading handwritten or other documents not accessible with assistive software technology (e.g., Microsoft Ease of Access technology, Adobe Acrobat Read-out-loud, etc.), scribing notes for the incarcerated person during the *Olson* review, and arranging for accessible formats of documents identified by the incarcerated person for later use. See attached instructions for using Microsoft Ease of Access (Attachment D) and Adobe Acrobat Read-out-loud features (Attachment E). Any extra assistance provided shall be documented via CDCR Form 128B, General

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Classification and Parole Representatives
Correctional Counselors
Page 3

Chrono. For additional printing requests outside of accessible formatting, California Code of Regulations, Title 15, Section 3162 and Department Operations Manual, Section 101120.15 will be followed.

**VIDEO RECORDINGS OF SIGN LANGUAGE TRANSLATION OF DOCUMENTS FOR DEAF SIGNERS**

Incarcerated persons designated as DPH (hearing impaired, impacting placement) whose primary method of communication is sign language and who have difficulty understanding written English, identified as a Reading level of 4.0 or lower, (deaf signers) shall receive video recordings of specific documents translated by a Sign Language Interpreter (SLI). At the time of service of the Comprehensive Risk Assessment (CRA), deaf signers shall meet with an SLI to have the CRA translated. The CC will be required to assist in the full translation of the CRA, which may include reading the document aloud so that the interpretation can be completed by the SLI. The incarcerated person may ask the SLI clarifying questions specific to the translation to ensure they understand the translation. If the incarcerated person has concerns or questions regarding content of the CRA (e.g., disagreements about the findings or factual errors, legal questions or advise, etc.), the CC shall direct the incarcerated person to reach out to their attorney. The translation will be video recorded, and a copy of the video shall be provided to the incarcerated person via the ADA Office no later than 60 calendar days prior to the date of the hearing.

Additionally, deaf signers or their counsel may request to have any documents needed to prepare for their parole hearings translated into sign language and video recorded. This may include, but is not limited to, documents identified from the central file during the *Olson* Review, such as a Probation Officer's Report, Rules Violation Reports, laudatory chronos, etc. If a deaf signer makes such a request, a SLI shall videorecord themselves via MS Teams translating the requested documents. A copy of the video shall be provided to the incarcerated person via the ADA Office. The incarcerated person does not need to be present during the SLI's translation. The CC will be required to assist in the full translation of the requested documents, which may include reading the document(s) aloud so that the interpretation can be completed by the SLI.

**PROOF OF IMPLEMENTATION**

All institutions shall ensure CC duty statements are revised to include the noted clarifications and provide proof of practice to their respective Mission Associate Director within 90 calendar days from the date of issuance of this memorandum.

All CCs shall be trained on the expectations of this memorandum by utilizing the Learning Management System, Course Code 11063804 within 90 calendar days of the date of this memorandum. Institutions shall provide a proof of practice to their respective Misson Associate Director.

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Classification and Parole Representatives
Correctional Counselors
Page 4


This memorandum and the included attachments will be available on the Classification Services Unit (CSU) webpage, within the Mini Manual at https://cdcr.sharepoint.com/sites/CDCR_OPS_AO_INS_CSU/SitePages/CSU-Mini-Manual.aspx, under the topics BPH and Correctional Counselor Role in Board of Parole Hearing Processes for Incarcerated Persons with Disabilities.

If you have any questions, please contact Edina Thomas, Chief, CSU at (916) 323-3660 or Edina.Thomas@cdcr.ca.gov, and Lourdes White, Chief, Class Action Management Unit, at (916) 835-5679 or Lourdes.White@cdcr.ca.gov.

*Ronald Broomfield*
499F547FE65C411...

RON BROOMFIELD
Director
Division of Adult Institutions

Attachments

cc:    Jared D. Lozano
       Jennifer Benavidez
       Raquel Buckel
       Dawn Lorey
       Edina Thomas
       Lourdes White
       Christopher Hees
       Timothy Fleshman
       Darnell Mebane
       Margo Wilkerson
       Jennifer Shaffer
       Jessica Blonien
       Katie Riley
       Megan Roberts

| A.2.2 | Chrono 128B | BPH Accommodations Questionnaire Chrono |

DocuSign Envelope ID: 0547130F-E93B-4CF9-9289-AB2BDB67368B

STATE OF CALIFORNIA                                                                  DEPARTMENT OF CORRECTIONS

**BPH ACCOMMODATION QUESTIONNAIRE CHRONO**
CDC 128B (Revised 06/2024)                                                           Page 1 of 2

| INCARCERATED PERSON NAME | CDCR NO. | HOUSING | READING SCORE |
|---|---|---|---|

The California Department of Corrections and Rehabilitation (CDCR) has an obligation to provide all incarcerated persons equal access to programs, services, and activities, as required by state and federal law, including the Americans with Disabilities Act (ADA).

You are identified as having a disability, and your Disability Placement Program code is DPV, DNV, or DPH who communicates with sign language and has a reading score of 4.0 or below. Below is a series of questions to determine which accommodations you may need to prepare for your upcoming Board of Parole Hearings (BPH) proceedings.

| QUESTIONS | YES | NO | N/A |
|---|:---:|:---:|:---:|
| 1. Would you like to participate in this questionnaire regarding your upcoming BPH hearing and how you will prepare for it? <br> *If yes continue with the interview. If no this concludes the interview* | ◯ | ◯ | ◯ |
| 2. Are you aware of your upcoming BPH hearing? <br> Hearing Date or No Later Than Date: | ◯ | ◯ | ◯ |
| 3. Would you like an *Olson* Review before your BPH hearing or tentative hearing date? <br> *Staff shall explain what an Olson Review is for incarcerated persons who (1) have never been before the BPH or (2) have not had a BPH hearing in the last 5 years. Staff shall inform the incarcerated person they will be officially offered the Olson Review closer to their hearing.* | ◯ | ◯ | ◯ |
| 4. What assistance do you need to prepare for your BPH hearing to include the *Olson* Review? *Staff, please check appropriate boxes.* <br> <u>*Accommodations for Incarcerated Persons with a Vision Code (if applicable)*</u> | | | |
| • Reading | ◯ | ◯ | ◯ |
| • Writing (i.e., scribing) | ◯ | ◯ | ◯ |
| • Staff Assistance | ◯ | ◯ | ◯ |
| • ADA Worker assistance (specify in *Comments* section) | ◯ | ◯ | ◯ |
| • Magnifier (e.g., full sheet, handheld, electronic, etc.) | ◯ | ◯ | ◯ |
| • Documents in an alternate format (e.g., large print, etc.) | ◯ | ◯ | ◯ |
| • Other magnifying machines available in law library (e.g., Merlin, Davinci, JAWS software, etc.) | ◯ | ◯ | ◯ |
| <u>*Accommodations for Deaf Signers (if applicable)*</u> | | | |
| • Sign Language Interpreter (DPH, Primary SLI Only) | ◯ | ◯ | ◯ |

DocuSign Envelope ID: 0547130F-EB3B-4CF9-9289-AB2BDB67368B

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS
**BPH ACCOMMODATION QUESTIONNAIRE CHRONO**
**CDC 128B (Revised 06/2024)**                                                                              **Page 2 of 2**

| QUESTIONS | YES | NO | N/A |
|---|:---:|:---:|:---:|
| • Assistive Device(s) (e.g., Personal Sound Amplification Product [PSAP], iPad, etc.,) | ◯ | ◯ | ◯ |
| • Writing (i.e., scribing) | ◯ | ◯ | ◯ |
| *Other Accommodations* | | | |
| • Additional time in the library | ◯ | ◯ | ◯ |
| • Other accommodation(s) not listed <br> *If yes, staff shall document requests in the Comment section.* | ◯ | ◯ | ◯ |
| 5. Do you know how to request additional time in the library to prepare for your BPH hearing? *If no, staff shall explain to the incarcerated person how to request additional time. Inform the incarcerated person they can ask law library staff for assistance with reading and writing, including writing any documents they may want to prepare for the BPH hearing.* | ◯ | ◯ | ◯ |

*The following forms are now available in large print, Braille, and audio at the law library: Notice and Request for Assistance at a Parole Proceeding (BPH Form 1073), Request for Reasonable Accommodations (BPH Form 1074), Petition to Advance Hearing Date (BPH Form 1045-A), Hearing Rights Form (BPH Form 1003), Notice of Hearing Rights (BPH Form 1002), Notice of DPV-DNV Rights, and Notice of Deaf-Signer Rights.*

**Additional Comments:**




_____          _____          _____
INCARCERATED PERSON NAME                  CDCR NUMBER              INCARCERATED PERSON SIGNATURE


_____          _____          _____
STAFF NAME AND TITLE (PRINTED)            DATE ISSUED              STAFF SIGNATURE

If the incarcerated person refuses to participate in the interview, check this box ◯

If the incarcerated person refuses to sign, check this box ◯


**DISTRIBUTION**        **Original:** ERMS            **Copies:**    ADA Office, Incarcerated Person

| A.2.3 | Chrono 128B | BPH Accommodations Questionnaire Chrono – Large Print |

**STATE OF CALIFORNIA**                                    **DEPARTMENT OF CORRECTIONS**

# BPH ACCOMMODATION QUESTIONNAIRE CHRONO – LARGE PRINT

**CDC 128B (Revised 06/2024)**                                    **Page 1 of 5**

| INCARCERATED PERSON NAME | CDCR NO. | HOUSING | READING SCORE |
|---|---|---|---|

The California Department of Corrections and Rehabilitation (CDCR) has an obligation to provide all incarcerated persons equal access to programs, services, and activities, as required by state and federal law, including the Americans with Disabilities Act (ADA).

You are identified as having a disability, and your Disability Placement Program code is DPV, DNV, or DPH who communicates with sign language and has a reading score of 4.0 or below. Below is a series of questions to determine which accommodations you may need to prepare for your upcoming Board of Parole Hearings (BPH) proceedings.

| QUESTIONS | YES | NO | N/A |
|---|---|---|---|
| 1. Would you like to participate in this questionnaire regarding your upcoming BPH hearing and how you will prepare for it? <br> *If yes continue with the interview. If no this concludes the interview* | ◯ | ◯ | ◯ |
| 2. Are you aware of your upcoming BPH hearing or tentative hearing date? <br> Hearing Date or No Later Than Date: | ◯ | ◯ | ◯ |

**DISTRIBUTION**    **Original**: ERMS    **Copies**:    ADA Office, Incarcerated Person

**STATE OF CALIFORNIA**                          **DEPARTMENT OF CORRECTIONS**

# BPH ACCOMMODATION QUESTIONNAIRE CHRONO – LARGE PRINT

**CDC 128B (Revised 06/2024)**                                   **Page 2 of 5**

| QUESTIONS | YES | NO | N/A |
|---|---|---|---|
| 3. Would you like an *Olson* Review before your BPH hearing? *Staff shall explain what an Olson Review is for incarcerated persons who (1) have never been before the BPH or (2) have not had a BPH hearing in the last 5 years. Staff shall inform the incarcerated person they will be officially offered the Olson Review closer to their hearing.* | ◯ | ◯ | ◯ |
| 4. What assistance do you need to prepare for your BPH hearing, to include the *Olson* Review? *Staff, please check appropriate boxes.* <u>*Accommodations for Incarcerated Persons with a Vision Code (if applicable)*</u> | | | |
| • Reading | ◯ | ◯ | ◯ |
| • Writing (i.e., scribing) | ◯ | ◯ | ◯ |
| • Staff Assistance | ◯ | ◯ | ◯ |
| • ADA Worker assistance *(specify in comments section)* | ◯ | ◯ | ◯ |
| • Magnifier (e.g., full sheet, handheld, electronic, etc.) | ◯ | ◯ | ◯ |
| • Documents in an alternate format (e.g., large print, etc.) | ◯ | ◯ | ◯ |

**DISTRIBUTION**    **Original**: ERMS    **Copies**:    ADA Office, Incarcerated Person

**STATE OF CALIFORNIA**                        **DEPARTMENT OF CORRECTIONS**

## BPH ACCOMMODATION QUESTIONNAIRE CHRONO – LARGE PRINT

**CDC 128B (Revised 06/2024)**                          **Page 3 of 5**

| QUESTIONS | YES | NO | N/A |
|---|:---:|:---:|:---:|
| • Other magnifying machines available in law library (e.g., Merlin, Davinci, JAWS software, etc.) | ◯ | ◯ | ◯ |
| _Accommodations for Deaf Signers (if applicable)_ | | | |
| • Sign Language Interpreter (DPH, Primary SLI Only) | ◯ | ◯ | ◯ |
| • Assistive Device(s) (e.g., Personal Sound Amplification Product [PSAP], iPad, etc.,) | ◯ | ◯ | ◯ |
| • Writing (i.e., scribing) | ◯ | ◯ | ◯ |
| _Other Accommodations_ | | | |
| • Additional time in the library | ◯ | ◯ | ◯ |
| • Other accommodation(s) not listed | ◯ | ◯ | ◯ |
| _If yes, staff shall document requests in the Comment section._ | | | |

**DISTRIBUTION**    **Original**: ERMS    **Copies**:    ADA Office, Incarcerated Person

**STATE OF CALIFORNIA**                                    **DEPARTMENT OF CORRECTIONS**

# BPH ACCOMMODATION QUESTIONNAIRE CHRONO – LARGE PRINT

**CDC 128B (Revised 06/2024)**                              **Page 4 of 5**

| | QUESTIONS | YES | NO | N/A |
|---|---|---|---|---|
| 5. | Do you know how to request additional time in the library to prepare for your BPH hearing? *If no, staff shall explain to the incarcerated person how to request additional time. Inform the incarcerated person they can ask law library staff for assistance with reading and writing, including writing any documents they may want to prepare for the BPH hearing.* | ◯ | ◯ | ◯ |

*The following forms are now available in large print, braille, and audio at the law library: Notice and Request for Assistance at a Parole Proceeding (BPH Form 1073), Request for Reasonable Accommodations (BPH Form 1074), Petition to Advance Hearing Date (BPH Form 1045-A), Hearing Rights Form (BPH Form 1003), Notice of Hearing Rights (BPH Form 1002), Notice of DPV-DNV Rights, and Notice of Deaf-Signer Rights.*

**DISTRIBUTION**    **Original**: ERMS    **Copies**:    ADA Office, Incarcerated Person

**STATE OF CALIFORNIA**                    **DEPARTMENT OF CORRECTIONS**

## BPH ACCOMMODATION QUESTIONNAIRE CHRONO – LARGE PRINT

**CDC 128B (Revised 06/2024)**                    **Page 5 of 5**

**Additional Comments:**

---

INCARCERATED PERSON NAME       CDCR NO.       INCARCERATED PERSON SIGNATURE

---

STAFF NAME AND TITLE (PRINTED)       DATE ISSUED       STAFF SIGNATURE

If the incarcerated person refuses to participate in the interview, check this box ◯

If the incarcerated person refuses to sign, check this box ◯

**DISTRIBUTION    Original**: ERMS    **Copies**:    ADA Office, Incarcerated Person

| A.2.4 | Notification to Class Member | Notice of DPV/DNV Rights for BPH Proceedings |

DocuSign Envelope ID: 0547130F-E23B-4CF9-9289-AB2BDB67368B

# NOTICE OF DPV/DNV RIGHTS FOR BPH PROCEEDINGS

You have been identified as DPV (vision impaired, impacting placement) or DNV (vision impaired, not impacting placement.) During your upcoming BPH proceedings, you have the following rights:

- You have a right to personalized test to figure out your primary and secondary methods of visual accommodation, and to assess which, if any devices will help you with completing reading and writing tasks privately and independently.
- If your vision changes or you need a different accommodation, you or your attorney have a right to request a new test or accommodation. This can be done by submitting a CDCR Form 1824 or CDCR Form 7362.
- You have a right to receive devices, to be trained on how to use a device, and to request repairs to a device in a timely manner.
- If your primary method of reading written communication is large print, audio (i.e., read documents aloud), or braille, you have a right to request documents related to a BPH proceeding in large print, audio, or braille. You have a right to receive documents in these accessible formats, and you have a right to keep the accessible formats in your property for you to review independently and privately in a timely manner.
- If during your *Olson* Review you need any documents from your central file printed out so that you can view them with the device(s) given to you, you have a right to request that they be printed at no cost to you.
- If, due to your disability, you have difficulty reading or writing and need help with reading or writing documents related to a BPH proceeding, you have a right to ADA Worker or Law Library staff help. A computer with visual accommodation technology is available for use in the Law Library, which you can use to type anything related to a BPH proceeding, and you have a right to print out three copies of what you type (one for you, one for your attorney, and one for BPH) at no cost to you.

| A.2.5 | Notification to Class Member | Notice of DPV/DNV Rights for BPH Proceedings – Large Print |

DocuSign Envelope ID: 0547130F-E83B-4CF9-9289-AB2BDB67368B

# NOTICE OF DPV/DNV RIGHTS FOR BPH PROCEEDINGS

You have been identified as DPV (vision impaired, impacting placement) or DNV (vision impaired, not impacting placement.) During your upcoming BPH proceedings, you have the following rights:

- You have a right to personalized test to figure out your primary and secondary methods of visual accommodation, and to assess which, if any devices will help you with completing reading and writing tasks privately and independently.

- If your vision changes or you need a different accommodation, you or your attorney have a right to request a new test or accommodation. This can be done by submitting a CDCR Form 1824 or CDCR Form 7362.

- You have a right to receive devices, to be trained on how to use a device, and to request repairs to a device in a timely manner.

- If your primary method of reading written communication is large print, audio (i.e., read documents aloud), or braille, you have a right to request documents related to a BPH proceeding in large print, audio, or braille. You have a right to receive documents in these accessible formats, and you have a right to keep the accessible formats in your property for you to review independently and privately in a timely manner.

- If during your *Olson* Review you need any documents from your central file printed out so that you can view them with the device(s) given to you, you have a right to request that they be printed at no cost to you.

- If, due to your disability, you have difficulty reading or writing and need help with reading or writing documents related to a BPH proceeding, you have a right to ADA Worker or Law Library staff help. A computer with visual accommodation technology is available for use in the Law Library, which you can use to type anything related to a BPH proceeding, and you

DocuSign Envelope ID: 05471306-E83B-4CF9-9389-A82BDB67368B

have a right to print out three copies of what you type (one for you, one for your attorney, and one for BPH) at no cost to you.

| A.2.6 | Job Aid | Microsoft Ease of Access Features |

12/4/2023

# Microsoft Ease of Access Features



**Table of Contents**

**I.**    **Purpose**.................................................................................2

**II.**   **Pre-Requisites**.........................................................................2

**III.**  **Procedures**.............................................................................2-5

**IV.**   **Frequently Asked Questions (FAQs)** .........................................5

**I.    Purpose**

This guide provides procedures on how to use the Microsoft *Ease of Access* features on devices for incarcerated persons. Users will be able to access functions that can enhance the user experience and ensure the device is as accessible as possible.

**II.    Pre-Requisites**

A. A device with Windows OS installed that is connected to the inmate network.
B. The device has a built-in microphone.
C. Eye tracking hardware or an audio device like a headset depending on the needs of the incarcerated person.

**III.    Procedures**

There are two ways to open *Ease of Access* features:

A. Windows Settings Menu
   1. Click the Windows icon at the bottom left corner of the screen and click the gear icon to access the Settings Menu.



Note: For the incarcerated population, the *Ease of Access* menu should be the only available option. Click on it to navigate to the *Narrator* options.



B.  Start Menu
1.  Alternatively, incarcerated users can open other *Ease of Access* functions via the *Ease of Access* folder on the Start menu.
    - Click the Windows icon, click the *Windows Ease of Access* folder and the features will show below.



- o *Magnifier* – allows users to enlarge the screen for easier reading.
- o *Narrator* - reads pages out loud.
- o *On-Screen Keyboard* - provides a keyboard on the screen.
- o *Windows Speech Recognition* – this function only works when an audio device is connected to computer.

## IV.    Frequently Asked Questions

**Q: Who will use the *Ease of Access* features?**

A: Incarcerated persons and CDCR staff. CDCR staff can access the same features and more via the settings menu such as closed captioning, audio features, etc.

**Q: What can the *Ease of Access* features be used for?**

A: The *Ease of Access* features provide a variety the ADA population assistive technologies.

**Q: Are the *Ease of Access* features installed on the student and staff laptops?**

A: Yes, it comes with the operating system included on staff and incarcerated devices.

**Q: Do the *Ease of Access* features need to be configured in any way to access them?**

A: No, the incarcerated devices have been preconfigured to allow users to see the *Magnifier*, *Narrator*, *On-Screen Keyboard*, and *Windows Speech Recognition*.

**Q: Is it possible to get more *Ease of Access* features for an incarcerated person's device?**

A: The *Ease of Access* features identified by the department were made available to the incarcerated population. If more tools are needed, the specific options within *Ease of*

*Access* need to be justified at the business level and then a ticket needs to be submitted to EIS. The EIS teams will work with the business areas to determine the need for the specific *Ease of Access* feature that is not currently available on the incarcerated network and modify the general policies as needed. For full list of features, see next question.

**Q: What features do staff have that incarcerated persons do not?**

A: In the Ease of Access Settings menu, Staff have access to features and options categorized into three groups: vision, hearing, and interaction.





| A.2.7 | Job Aid | 6.0 Adobe Reader, Read Out Loud Job Aid |

12/4/2023

# Adobe Reader – Read Out Loud function



## Table of Contents

**I.**     **Purpose**.................................................................................................2

**II.**    **Pre-Requisites**.......................................................................................... 2

**III.**   **Procedures**...........................................................................................2-4

**IV.**    **Frequently Asked Questions (FAQs)** .........................................................4-5

I.      **Purpose**

This guide provides procedures for the incarcerated population and CDCR staff to use the *Read Out Loud* function in Adobe Reader.

II.     **Pre-Requisites**

A.  A device with Adobe Reader installed.
B.  Volume is turned on.

III.    **Procedures**

The *Read Out Loud* function only works if the PDF contains text. It cannot read words on images. For example, if a Word document with primarily text was converted to a PDF, then the *Read Out Loud* function will work. If the PDF is primarily images with words within the images, the *Read Out Loud* function will not pick up those words as those words were from an image.

A.  Launch *Read Out Loud* (this is after the user opens the PDF)
    I.  On the top menu of the page, click *View,* select *Read Out Loud,* click *Activate Read Out Loud*.



B.  *Read Out Loud* Options
    I.  Once *Activate Read Out Loud* is activated, go to the top of the page, click *View,* select *Read Out Loud* and select one of the following options:
        • *Deactivate Read Out Loud* – turns off the function.
        • *Read This Page Only* – prompts Adobe to only read the current page.
        • *Read To End of Document*– prompts Adobe to read the entire document.

- *Pause* (works when *Read Out Loud* is active) – pauses the narration. User can resume the narration by clicking *Resume*.
- *Stop* (works when *Read Out Loud* is active) - stops narration.



C. Changing Narrator Settings
   I. You can change the narrator voice and reading speed.
      - Click *Edit*, navigate to *Preferences*, and click on *Reading*.



- Select *Reading*, go to *Read Out Loud Options*, and change the volume, voice, or speech attributes.



## IV.  Frequently Asked Questions

**Q: Who will use the *Read Out Loud* function?**

A: Incarcerated persons and CDCR staff.

**Q: What will the *Read Out Loud* function be used for?**

A: The *Read Out Loud* function is used to read PDFs out loud for the blind and low vision incarcerated population.

**Q: Is Adobe Reader installed on both staff and student laptops?**

A: Yes, it is installed on CDCR staff devices and laptops for incarcerated students.

**Q: Does Adobe Reader need to be configured in any way for the *Read Out Loud* function to work?**

A: Yes. Protected view must be turned off. Go to the top menu, select *Edit* and click *Preferences*. In the *Preferences* window, click *Security (Enhanced)*. In the *Sandbox Protections* section, under *Protected View* click *Off*. Then close the window.

**Q: How do I turn on the volume?**

A: Click on the volume button on the bottom of your screen. Once it is open, you can adjust the volume.



**Q: Why won't the Read Out Loud feature read text in images?**

A: Adobe Reader was designed to read text only. It cannot read what is shown on an image as it only recognizes the image as a cluster of pixels. Adobe Reader cannot read pixels, so it will not be able to read the text in images.

**Q: Will the *Read Out Loud* function work if you have Adobe DC?**

A: Yes. This feature will work with both Adobe Reader and Adobe DC.

**Q: Will this *Read Out Loud* function work with the Microsoft Ease of Access Narrator?**

A: No, the narrator function in Microsoft Ease of Access must be turned off for the *Read Out Loud* function to work.

| A.3.1 | Memorandum | ACCOMMODATIONS FOR INCARCERATED PERSONS WITH A VISION CODE |
|-------|------------|-----------------------------------------------------------|
| A.3.2 | Operational Procedure | ACCOMMODATIONS FOR INCARCERATED PERSONS WITH A VISION CODE |
| A.3.3 | Informational sheet | FAQ Sheet |
| A.3.4 | Chrono 128B | Visual Accommodations Issuance Chrono |
| A.3.5 | Guideline | Large Print Document Guidelines |
| A.3.6 | Informational sheet | Printing SOMS Documents in Large Print |

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date:

To:        See Distribution List

Subject:   **ACCOMMODATIONS FOR INCARCERATED PERSONS WITH A VISION CODE**

The California Department of Corrections and Rehabilitation (CDCR) and the California Correctional Health Care Services (CCHCS) have an obligation to provide incarcerated persons equal access to programs, services, and activities as required by Federal Law, including the Americans with Disabilities Act (ADA), and the *Armstrong* and *Clark* Court Ordered Remedial Plans. It is important an incarcerated person with a vision code impacting placement (DPV) or non-impacting placement (DNV) has access to reading and writing accommodations in a format that accommodates their disability.

The purpose of this memorandum is to provide direction regarding staff responsibility to identify, document, track, and provide visual accommodations to ensure incarcerated persons identified with a Disability Placement Program (DPP) code of DPV or DNV can equally participate in their programs, services, and activities. Additional information regarding identification, documentation, tracking, and providing visual accommodations is included in the attached Local Operating Procedure (LOP) template. This policy supersedes the memorandum titled *Accommodations for Incarcerated Persons with a Vision Impairment, Impacting Placement*, dated January 31, 2024.

**IDENTIFYING VISUAL ACCOMMODATIONS**

All DPV and DNV incarcerated persons will be scheduled for an evaluation by a vision specialist. Prioritization in scheduling will be given to DPV and DNV incarcerated persons that have upcoming Board of Parole Hearings (BPH) parole suitability hearings within the next 15 months. The Offsite Scheduler shall contact their designated Utilization Management (UM) Nurse Consultant Program Review (NCPR), who will schedule an evaluation with a vision specialist. The incarcerated person's need for visual accommodations, which may include alternative formats (e.g., large print, braille, audio, etc.), non-medical assistive devices, and Durable Medical Equipment (DME), shall be determined during the evaluation and documented in the vision specialist's recommendations. Primary consideration shall be given to each incarcerated person's preferred form of accommodation.

**DOCUMENTING VISUAL ACCOMMODATIONS IN THE STRATEGIC OFFENDER MANAGEMENT SYSTEM/ELECTRONIC OFFENDER MANAGEMENT INFORMATION SYSTEM**

Within seven calendar days of the ADA Coordinator's receipt of the vision specialist's recommendation, they shall ensure data entry of the visual accommodation into the Strategic Offender Management System (SOMS)/Electronic Offender Management Information System (eOMIS). Please refer to the attached Frequently Asked Questions (FAQ) sheet (Attachment A) for adding the visual accommodations into SOMS/eOMIS.

See Distribution List
Page 2

The incarcerated person's primary (and alternate, if applicable) visual accommodation method(s), entered on the Effective Communication (EC) Chrono, will be viewable from the ADA Summary Screen in the SOMS/eOMIS. Visual accommodations include:

- Braille
- Large print material
- Electronic text-to-speech reader
- Magnifier
- Read documents aloud
- Writing accommodations
- None

If the accommodation is not identified in the EC Module, staff shall document the accommodation in the *Non-Formulary Accommodations/Comments* section.

Refer to the attached FAQ sheet for a list of possible devices that may be provided.

In the event an incarcerated person has additional disabilities (e.g., hearing impaired, speech impaired, Developmental Disability Program, etc.) that require multiple EC methods and/or accommodations, staff updating an EC Chrono in SOMS/eOMIS shall document EC methods for each disability. Please refer to the attached FAQ sheet for examples on how this would be documented.

**PROVIDING DOCUMENTS IN LARGE PRINT AND BRAILLE**

When an incarcerated person's primary visual accommodation is large print or braille, then CDCR shall provide the following documents in the documented primary format consistent with existing timeframes:

- All CDCR Form 602-1/1824, Grievance/Reasonable Accommodation Request responses
- All documents related to a Rules Violation Report
- All documents related to a Classification Committee Hearing
- All documents related to a Restricted Housing Unit Placement Notice
- ADA Orientation manual
- Healthcare Orientation manual
- Institution's Orientation manual
- Specific Board of Parole Hearings (BPH) issued documents identified in the LOP template
- Blank CDCR Form 602-1/1824-LP, Grievance/Reasonable Accommodation Request
- Blank CDCR Form 7362-LP, Health Care Services Request

When an incarcerated person's primary visual accommodation is unavailable and an incarcerated person's alternate visual accommodation is large print or braille, the CDCR shall provide the

See Distribution List
Page 3

foregoing documents to the incarcerated person in large print or braille. Please refer to the attached LOP template on how to provide large print and braille materials.

**PROCUREMENT AND ISSUANCE OF ASSISTIVE DEVICES**

When an assistive device is recommended as a visual accommodation through the vision specialist, the vision specialist shall provide documentation identifying the recommended assistive device(s) to CCHCS and CDCR. Assistive devices available in the ADA Coordinator's inventory shall be issued to the incarcerated person within five business days following the ADA Coordinator's receipt of the vision specialist's recommendation. The ADA Coordinator shall initiate procurement of an assistive device(s) not available in their inventory within five business days of receipt of the documentation from the vision specialist and shall ensure the assistive device is issued to the incarcerated person within five business days of receipt in the ADA Office. If procurement of a recommended assistive device(s) is needed, the ADA Coordinator shall ensure that the incarcerated person's reading and writing needs are reasonably accommodated pending procurement of the assistive device(s). Specific details regarding procurement are listed in the attached LOP.

**TRACKING**

Prior to the issuance of the assistive device(s), the ADA Office will enter the assistive device(s) as a reasonable accommodation, including any serial number(s) or any property number(s), on the *Registerable Property* screen via the SOMS Module (listed under *Accommodation Property*).

All institutions shall update their DPP LOP using the attached template and submit copies to their respective Associate Director within 90 days of the date of this memorandum. The revision may be incorporated as an addendum to be included in the next scheduled revision of the LOP.

Wardens and Chief Executive Officers, or their designees, at all institutions shall ensure all staff are provided access to the updated LOP (e.g., an institutional share folder) to ensure awareness of this new process. The ADA Office staff shall conduct in-person training with all ADA staff that includes a review of the policy and the updated LOP.

In addition, incarcerated persons will be informed of this process via the Inmate Advisory Council and other local means of communication, which may include, but is not limited to, town halls, bulletins, etc.

If you have any local institution questions, please contact your local ADA Office.

See Distribution List
Accommodations for Incarcerated Persons with a Vision Code
Page 4


If you have any headquarters level questions, please contact Darnell Mebane, Captain, CAMU, at (916) 202-5130 or Darnell.Mebane@cdcr.ca.gov.



RON BROOMFIELD                           Dr. JOSEPH BICK, M.D.
Director                                 Director
Division of Adult Institutions           Health Care Services



JOSEPH (JASON) WILLIAMS
Director
Correction Services


Attachments

DISTRIBUTION LIST:

Associate Directors, Division of Adult Institutions
Regional Health Care Executives
Wardens
Chief Executive Officers
Americans with Disabilities Act Coordinators
Associate Wardens, Business Services
Procurement Services Officers

cc:    Jennifer Benavidez
       Jared D. Lozano
       Antronne Scotland
       Raquel Buckel
       Dawn Lorey
       Lourdes White
       Darnell Mebane
       Margo Wilkerson
       Kristina Davis
       Megan Roberts
       Katie Riley
       Chor Thao
       Correctional Counselor IIs, CAMU

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

I.    **OPERATIONAL PROCEDURE NO. XXX – VISUAL ACCOMMODATIONS FOR INCARCERATED PERSONS WITH A VISION CODE**

II.   **PURPOSE AND OBJECTIVE**

This procedure is written to provide clear guidelines for the identification, documentation, and tracking of visual accommodations to incarcerated persons identified with a Disability Placement Program (DPP) code of DPV (vision impairment impacting placement) or DNV (vision impairment non-impacting placement).

III.  **REFERENCES**

- California Department of Corrections and Rehabilitation (CDCR) Memorandum titled, *Accommodations for Incarcerated Persons with a Vision Code*, dated XXXXX, 2024.
- CDCR Memorandum titled, *Portable Compact Disc Player Loaner Program for Vision Impaired Inmates to Listen to Audio Board of Parole Hearings Transcripts*, dated April 10, 2020.
- *Armstrong* Court Ordered Remedial Plan, January 3, 2001
- *Armstrong* Order for Further Parole-Related Remedial Plan (ECF No. 3584)
- California Code of Regulations (CCR), Title 15, Section 3190, General Policy
- Department Operations Manual (DOM), Section 54030.8(c)(1) Personal Property Package Criteria
- Authorized Personal Property Schedule (APPS)

IV.   **APPROVAL AND REVIEW**

A.   This operational procedure and any modifications or inclusions must have the approval of the Warden and Chief Executive Officer (CEO) annually in the month of XXXX.

B.   This procedure will be reviewed each XXXX by the Americans with Disabilities Act (ADA) Coordinator and submitted to the Warden and CEO for final approval.

V.    **IDENTIFYING VISUAL ACCOMMODATIONS**

All DPV and DNV incarcerated persons will be scheduled for an evaluation by a vision specialist. Prioritization in scheduling will be given to incarcerated persons (DPV or DNV) that have upcoming Board of Parole Hearings (BPH) parole suitability hearings within the next 15 months. The California Correctional Health Care Services (CCHCS) Offsite Scheduler shall contact their designated Utilization Management (UM) Nurse Consultant Program Review (NCPR), who will schedule an evaluation with a vision specialist. The incarcerated person's need for visual accommodations, which may include alternative formats (e.g., large print, braille, audio),

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

non-medical assistive devices, and Durable Medical Equipment (DME), shall be determined during the evaluation and documented in the vision specialist's recommendations. Primary consideration shall be given to each DPV or DNV incarcerated person's preferred form of accommodation.

If the incarcerated person refuses to participate in the evaluation by the vision specialist, the ADA Coordinator shall interview them within 14 calendar days of the refusal to determine if the incarcerated person requires any reading or writing accommodations and ensure the incarcerated person understands the process and the benefits of being evaluated by the vision specialist. If, after the interview, an incarcerated person requests a visual accommodation, the ADA Coordinator shall notify the UM NCPR to refer the incarcerated person to the vision specialist. The incarcerated person shall participate in the evaluation. If the incarcerated person still refuses to participate in the evaluation, the ADA Coordinator shall offer to assist them in completing a CDCR Form 1824, Request for Reasonable Accommodation, and remind the incarcerated person of the accommodations available for use in their housing unit and libraries and offer the incarcerated person training on the use of the assistive devices available in their housing unit. However, if the incarcerated person wishes to have a device personally issued to them and used in programming areas, the incarcerated person must participate in the evaluation process.

A.    **Requests for Visual Accommodations from Incarcerated Persons Who Do Not Have a Vision Code**

If an incarcerated person not designated DPV or DNV requests a visual accommodation, the incarcerated person shall submit a CDCR Form 1824. The Reasonable Accommodation Panel will consider all requests on a case-by-case basis.

VI.    **TRACKING AND ASSESSMENT OF DPV/DNV CLASS MEMBERS WITH UPCOMING BPH HEARINGS**

The institutional BPH Case Records Desk shall notify health care scheduling staff and the ADA Coordinator of all upcoming BPH hearings (within the next 15 months) for DPV and DNV incarcerated persons weekly. If the DPV or DNV incarcerated person has not previously been scheduled for an individualized vision assessment, the health care scheduler will ensure that the incarcerated person is scheduled for an evaluation through coordination with the UM NCPR.

VII.    **DOCUMENTING VISUAL ACCOMMODATIONS IN THE STRATEGIC OFFENDER MANAGEMENT SYSTEM/ELECTRONIC OFFENDER MANAGEMENT INFORMATION SYSTEM**

Upon receipt of the vision specialist's recommendation for the incarcerated person's visual accommodation, the CCHCS Health Care Scheduler shall send the recommendation to the ADA Coordinator within three business days.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

Within seven calendar days of the ADA Coordinator's receipt of the vision specialist's recommendation, they shall ensure data entry of the visual accommodation into the Strategic Offender Management System (SOMS)/Electronic Offender Management Information System (eOMIS). Please refer to the attached Frequently Asked Questions (FAQ) sheet (Attachment A) for how to add the visual accommodations into SOMS/eOMIS.

The incarcerated person's primary (and alternate, if applicable) visual accommodation method(s), entered on the Effective Communication (EC) Chrono, will be viewable from the ADA Summary Screen in the SOMS/eOMIS. The incarcerated person's primary visual accommodation will be utilized for written communications implicating due process in accordance with existing policy. If the incarcerated person's primary visual accommodation method is not available due to an emergency or exigent circumstances (to include a non-functional assistive device), the incarcerated person's alternate method of visual accommodation will be used. If both the primary and alternate visual accommodations are not available, staff should accommodate the incarcerated person with a method consistent with the incarcerated person's disability. Visual accommodations include:

- Braille
- Large print material
- Electronic text-to-speech reader
- Magnifier
- Read documents aloud
- Writing accommodations
- None

If the accommodation is not identified in the EC Module, staff shall ensure that they document the accommodation in the *Non-Formulary Accommodations/Comments* section.

Refer to attached FAQ sheet for a list of possible devices that may be provided.

In the event a DPV or DNV incarcerated person has additional disabilities (e.g., hearing impaired, speech impaired, Developmental Disability Program, etc.) that require multiple EC methods and/or accommodations, staff updating an EC Chrono in SOMS/eOMIS shall document EC methods for each disability. Please refer to the FAQ sheet for examples on how this would be documented.

**VIII.    ISSUANCE OF ASSISTIVE DEVICES**

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

When an assistive device is recommended as a visual accommodation through the vision specialist, the vision specialist shall provide documentation identifying the recommended visual accommodation to CCHCS and CDCR. Assistive devices available in the ADA Coordinator's inventory shall be issued to the incarcerated person within five business days following ADA Coordinator's receipt of the vision specialist's recommendation. The ADA Coordinator shall initiate procurement of the assistive device(s) not available in their inventory within five business days of receipt of the documentation from the vision specialist and shall ensure the assistive device is issued to the incarcerated person within five business days of receipt in the ADA Office. If procurement of a recommended assistive device(s) is needed, the ADA Coordinator shall ensure that the incarcerated person's reading and writing needs are reasonably accommodated pending procurement of the assistive device(s). Prior to the issuance of the devices, the ADA Coordinator, or designee, will enter the assistive devices used as a reading or writing accommodation, including any serial number(s) or any property number(s), on the *Registerable Property* screen via the SOMS Module (listed under *Accommodation Property*).

A.     **Training**

The training (if any) needed by incarcerated person to use the device(s) recommended as visual accommodation(s) will be determined during the incarcerated person's individualized assessment by the vision specialist. If an incarcerated person requires training on the use of the device(s) issued as a visual accommodation, the incarcerated person will be provided training in accordance with the training plan prepared by the vision specialist. Additionally, training on any assistive devices can be provided by institutional staff familiar with the equipment. Incarcerated persons will be trained with the necessary materials, including instruction manuals and videos, as appropriate. If the incarcerated person requires more training, they shall submit a Form GA 22 to the ADA office requesting more training. Any additional training provided to the incarcerated person will be documented on a CDC Form 128B.

B.     **Record of Issuance**

The ADA Coordinator shall have the incarcerated person sign a CDC Form 128B, Visual Accommodation Chrono, (Attachment B) upon issuance of the device, and a copy of the CDC Form 128B will be forwarded to Case Records for scanning into the Electronic Records Management System (ERMS), Miscellaneous tab, with the incarcerated person retaining a copy of the CDC Form 128B. The CDC Form 128B is not required to be kept in the incarcerated person's possession as proof of approval, since accommodations will be tracked in SOMS.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

These devices are considered state property. The incarcerated person will be financially responsible for the alteration, intentional damage, or destruction of the device. As such, if the cost of the device is $400 or less, the incarcerated person shall sign a conditional CDC Form 193, Inmate Trust Account Withdrawal, which stipulates the cost the incarcerated person must pay if the device is altered, intentionally damaged, or destroyed, and needs to be replaced. Please refer to the FAQ Sheet for pricing structure on the devices.

C.      **Request for Alternative or Replacement Device**

The incarcerated person may request a replacement of their assistive device if reasonable wear and tear occurs. The incarcerated person will receive a device as a one-for-one exchange via submission of a Form GA 22 to the ADA office. In addition, the assistive device shall be replaced if it has been determined the assistive device was lost or destroyed due to staff neglect, or due to no fault of the incarcerated person. The ADA Coordinator shall replace the non-functional device within five business days of notification to the ADA Office of non-functionality.

If staff are notified that an assistive device is not working properly, staff shall contact the ADA Coordinator and return the device and any applicable components to the ADA Coordinator. The ADA Coordinator will subsequently issue a replacement device. Staff shall not dispose of any inoperable or damaged device.

If at any point the incarcerated person reports that the assistive device(s) issued to them are insufficient to address their needs, the ADA Coordinator will arrange to provide an alternate accommodation in a timely manner. Examples of alternate accommodations can be found in Attachment A.

D.      **Property Requirements**

The requirements listed in the CCR, Title 15, and APPS, wherein the incarcerated persons receive equipment in clear color, shall *not* be applied to devices approved as an assistive device. As such, any assistive device provided will not count against the incarcerated person's total square footage of property nor be restricted by the three-appliance limit, as outlined in the DOM, Section 54030.8(c)(1). These assistive devices will not be considered the incarcerated person's personal property nor be considered a healthcare appliance, as outlined in CCR, Title 15, Section 3190.

Incarcerated persons, who have received an assistive device, are approved to have the device within their possession during programs, services, and activities, and in housing

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

unit settings, including Restrictive Housing, off-site medical appointments, and same-day court appearances.

These assistive devices shall not be confiscated when an incarcerated person is disciplined. During institutional transfers, the assistive device(s) shall be inventoried and packed with the incarcerated person's property for transfer, unless needed by the incarcerated person to safely and independently transfer. Upon parole or discharge, the device(s) shall be collected by the ADA Coordinator's Office for appropriate tracking.

## IX.    TRACKING

### A.    Confiscation, Damage, and Destruction

These assistive devices shall not be confiscated without cause during routine cell searches or when an incarcerated person is disciplined. Should a visual assistive device or writing accommodation become an immediate security threat (e.g., altered or used as a weapon, etc.) the assistive device shall be confiscated. In addition, the assistive device will be confiscated if necessary to be collected as evidence in a crime or investigation (must be supported by documentation). If the assistive device is confiscated, the ADA Coordinator shall ensure that incarcerated person's reading and writing needs are reasonably accommodated through alternative means consistent with their specific disability needs.

If the assistive device or any of the components (e.g., chargers, etc.) are altered, damaged, or destroyed, the custody supervisor shall determine if it was intentional or unintentional based on the circumstances (to include an interview with the incarcerated person, documented on a CDC Form 128B) and provide all available information to the ADA Coordinator. The ADA Coordinator will determine the best course of action (i.e., replace the assistive device or provide an alternate assistive device). If the ADA Coordinator determines the best course of action is to remove the assistive device, the ADA Coordinator shall also ensure it is removed from the incarcerated person's *Registerable Property* screen via the SOMS Module. Pending replacement of the device, the incarcerated person will be provided an alternative accommodation consistent with their specific disability needs (*see* examples of alternate accommodations in Attachment A). As these assistive devices are considered state property, the incarcerated person will be financially responsible for intentional damage, destruction, or alteration for assistive devices under $400 and may be subject to disciplinary action pursuant to CCR, Title 15, Section 3011.

### B.    Transfer and Parole

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

During institutional transfers, the assistive device(s) shall be inventoried and packed with the incarcerated person's property for transfer, unless needed by the incarcerated person to safely and independently transfer. For incarcerated persons transferring out of the institution to another institutions, assistive devices approved as reading or writing accommodations shall be accepted and authorized at the receiving institution. Upon the incarcerated person's parole or discharge from CDCR, assistive device(s) for reading and writing shall be collected from the incarcerated person. The ADA Office will maintain a listing of the assistive device(s) provided and will retrieve the device(s) prior to incarcerated person's parole or discharge, ensuring the devices are removed from the SOMS *Registerable Property* screen.

X.    **INCARCERATED PERSONS REQUESTING TO CHANGE THEIR PRIMARY VISUAL ACCOMMODATION**

If the incarcerated person's vision or accommodation needs have changed after their individual assessment by the vision specialist, the incarcerated person may request a new individual assessment or accommodation. A CDCR Form 1824 or CDCR Form 7362, Health Care Services Request Form, will need to be completed to initiate the request. The incarcerated person's attorney may request a new assessment on behalf of the incarcerated person by submitting a CDCR Form 1824 or via the existing advocacy letter process. The incarcerated person will be referred to the vision specialist for reevaluation and determination if the incarcerated person's visual accommodation(s) need to be changed, including any additional recommendations.

XI.    **INCARCERATED PERSONS WITH MULTIPLE DISABILITIES**

If an incarcerated person has additional disabilities (e.g., hearing impaired, speech impaired, Developmental Disability Program, etc.) that require multiple EC methods or accommodations, staff updating an EC Chrono in SOMS/eOMIS shall document EC methods for each disability. Please refer to the FAQ sheet for examples on how this would be documented.

XII.    **PROVIDING EC METHODS AND VISUAL ACCOMMODATIONS**

Staff must be cognizant of all of the incarcerated person's disabilities to ensure EC is achieved. Staff shall ensure all primary EC methods and visual accommodations are provided and documented appropriately during due process events. For specified types of documents (listed below), staff shall also take measures, in collaboration with the ADA Coordinator to ensure the incarcerated person is issued a copy of their documents in the format of large print or braille when that is their identified accommodation. If the staff cannot provide an incarcerated person their primary EC methods or visual accommodation(s) due to an emergency or exigent circumstances, staff shall document the reasoning for utilizing alternatives within the

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

SOMS/eOMIS EC record. Following the emergency or exigent circumstance, staff shall provide the incarcerated person their primary visual accommodation as soon as reasonably possible.

When an incarcerated person's primary visual accommodation is large print or braille, the CDCR shall provide the following documents to the incarcerated person in their documented primary format:

**A.      Forms Generated Through SOMS or BITS May Include, but not limited to:**

- CDCR Form 1824, Reasonable Accommodation Panel (RAP) responses
- Documents related to a Rules Violation Report
- Documents related to a Classification Committee Hearing
- Documents related to a Restricted Housing Placement Notice
- BPH Form 1001 Proposed Parole Consideration Decision
- BPH Form 1002 Notice of Rights (Consultations)
- BPH Form 1002 Notice of Rights (Initial/Subsequent/Rescission Hearings)
- BPH Form 1003 Hearing Rights
- BPH Form 1004 Post-Conviction Report
- BPH Form 1048(A) Nonviolent Eligibility
- BPH Form 1048(B) Nonviolent Referral
- BPH Form 1048(C) Nonviolent Decision
- BPH Form 1048(D) Nonviolent Decision Review
- BPH Form 1073 Reasonable Accommodation Notice and Request
- BPH Form 1080 Notice of Date/Time/Place
- BPH Form 1135 Miscellaneous Decision
- BPH Form 1415 Summary of Offenders with a Mental Health Disorder Hearing and Decision
- Notice of Rights of Expanded Medical Parole (EMP)
- Comprehensive Risk Assessment
- Hearing Transcript
- Notice of Confidential Information Disclosure in Advance of Parole Hearing Memorandum (NCID)
- Inmate Notice of Attorney
- Offer and Documentation of *Olson* Review
- Notice of DPV/DNV Rights for BPH Proceedings
- Notice of Deaf-Signer Rights for BPH Proceedings

**B.      Forms Available in Receiving and Release or Law Library**

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

- ADA Orientation manual
- Healthcare Orientation manual
- Institution's Orientation manual
- Blank CDCR Form 602-1/1824-LP, Grievance/Reasonable Accommodation Request form
- Blank BPH Form 1045-A Petition to Advance Hearing Date
- Blank BPH Form 1073 Notice and Request for Assistance at Parole Proceeding
- Blank BPH Form 1074 Request for Reasonable Accommodation – Grievance Process
- BPH Form 1002 Notice of Rights (Initial/Subsequent/Rescission Hearings)
- BPH Form 1003 Hearing Rights
- Notice of DPV/DNV Rights for BPH Proceedings
- Notice of Deaf-Signer Rights for BPH Proceedings

When an incarcerated person's primary visual accommodation is unavailable and an incarcerated person's alternate visual accommodation is large print or braille, the CDCR shall provide the foregoing documents to the incarcerated person in large print or braille. Institutions shall include in their LOP the locations of all documents and forms already available in alternative formats, such as large print and braille.

When large print is the incarcerated person's identified visual accommodation, the ADA Coordinator shall ensure the CDCR Form 602-1/1824-LP and CDCR Form 7362 LP are available in the incarcerated person's housing unit.

**C.     Providing Large Print Documents**

When the above documents are required to be produced in large print, staff shall determine if the document is editable or not. For editable documents, staff shall refer to the attached CDCR Large Print Guidelines as the best practice for producing printed materials in large print (Attachment B). For documents that are not editable (e.g., items printed out of the SOMS/eOMIS), staff shall utilize instructions for how to print the document (Attachment C).

**D.     Providing Braille Documents**

When the above documents are required to be produced in braille, staff shall notify the ADA Coordinator. The ADA Coordinator, or designee, will email the requested material in PDF format (*do not scan in documents*) that needs braille transcription to brailletranscriptionrequest@cdcr.ca.gov. The documents will then be uploaded to the vendor portal. Once braille transcription has been completed, the transcribed documents

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

will be mailed directly to the ADA Coordinator. The ADA Coordinator, or designee, will deliver the documents to the incarcerated person as soon as reasonably possible. Processing times will vary depending on the content and number of pages, in order to maintain due process timelines, incarcerated persons that require braille will receive notification of document(s) and information contained in said document(s) via an alternate method of EC, in lieu of receiving the braille documents. Once the braille documents are received, staff shall provide them to the incarcerated person within five business days and document this in the SOMS EC module.

XIII.    **ACCESS TO PRINTING**

In order to facilitate ready access to printing for the incarcerated persons recommended a laptop as a writing accommodation by the vision specialist, the institution will ensure that appropriate software is available on specified laptops. The incarcerated person will be able to select documents to print from the laptop and the printing will be facilitated by the local the ADA Office.

XIV.    **PROCUREMENT AND SUPPLY OF VISUAL ASSISTIVE DEVICES**

In order to provide prompt access to the recommended visual accommodations, the ADA Coordinator shall maintain a reasonable inventory of assistive devices. The ADA Coordinator shall assess current inventory of presently recommended or issued assistive devices and maintain sufficient numbers of assistive devices to facilitate prompt issuance or replacement, if warranted, as outlined in this LOP.  When the vision specialist recommends an assistive device that is not already in inventory, the ADA Coordinator shall initiate the procurement of the device(s) within five business days of receipt of the vision specialist's recommendation. Additionally, if the recommended device is designed to be used with headphones to allow for privacy and independence of the user, the ADA Coordinator will provide (or procure) a set of headphones to issue with the device, unless the incarcerated person already has compatible headphones in their property.  These assistive devices will be purchased through the existing procurement processes and shall be made within Program Area 2710030, utilizing the commitment line item as listed below:

- Non-data processing (e.g., Mattingly SMARTMag LED Handheld Magnifier 6x, Mattingly SMARTMag Stand Magnifier 6x or sheet magnifiers, etc.) – 9031122601
- IT devices (e.g., LyriQ, ADA laptop, etc.) – 9032944600
- Not-otherwise classified (e.g., Ruby 10, Ruby XL, etc.) – 9031123900

Upon receipt of the assistive device in the ADA Office, the assistive device will be issued to the incarcerated person within five business days.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

**XV.     RESOURCE SUPPLEMENTS**

Attachment A – FAQ Sheet
Attachment B – CDC 128B, Visual Accommodations Issuance Chrono
Attachment C – Large Print Document Guidelines
Attachment D – Printing SOMS Documents in Large Print

**XVI.     APPROVALS**

NAME                                        NAME
Warden                                      Chief Executive Officer
Institution                                 Health Care Services
Division of Adult Institutions              Institution

ATTACHMENT A – FAQ Sheet

**DOCUMENTING VISUAL ACCOMMODATION IN SOMS/EOMIS**

- Go to the Offender Tab > Offender Assessments > DPP Disabilities/Accommodations screen (CHSS035A).

- The ADA Coordinator, or designee, will then "Prepare to Add" which will direct them to the DPP Disability/Accommodation screen (CHSS035B) where an EC Chrono can be created.

In the future, the SOMS Registerable Property screen will include a *Reasonable Accommodation* section where the ADA Coordinator will be able to add the items issued to the incarcerated person. In the interim, please refer to the completed CDC Form 128B, located in ERMS, to view what visual accommodations (which may include assistive devices) which have been provided to the incarcerated person.

**LIST OF POSSIBLE VISUAL ACCOMMODATION ASSISTIVE DEVICES**

This list is not exhaustive but does include all assistive devices being recommended by the vision specialist as of the date of this memorandum, including pricing for CDC Form 193. Some devices fall under multiple categories.

<u>**Braille**</u>
- Braille reader/display
- Braille keyboard

<u>**Magnifiers**</u>
- Zoomax Snow 12 ($975.00)
- Ruby 10, with Speech Mode ($1742.00)
- Ruby XL HD ($869.00)
- Mattingly SMARTMag LED Hand-Held Magnifier ($48.00)
- Mattingly SMARTMag LED Stand Magnifier ($49.00)

<u>**Electronic text to speech reader**</u>
- LyriQ Assistive Text-to-Speech Reader ($1976.00)
- Zoomax Snow 12 ($975.00)
- Ruby 10, with Speech Mode ($1742.00)

<u>**Writing Accommodations**</u>
- ADA Laptop (approximately $800)
- Braille typewriter
- Zoomax Snow 12 ($975.00)

ATTACHMENT A – FAQ Sheet

**EXAMPLES OF DOCUMENTING MULTIPLE PRIMARY EC METHODS**

1. An incarcerated person with a hearing disability not impacting placement (DNH) and a visual disability impacting placement (DPV) may require staff to speak loudly and provide written materials in large print. In this example, the staff member completing the EC chrono shall select "Need Staff to Speak Loudly and Clearly" as the primary method of communication for the hearing disability and select "Large Print Material" as the primary method of accommodation for the vision disability.

2. An incarcerated person who is DPV and DD2 may require staff to provide written materials in large print and has adaptive supports for communication. In this case, the staff member completing the EC chrono shall select "Large Print Material" as the primary method of accommodation for the vision disability and refer to the incarcerated person's adaptive supports included on their CDC 128C-2.

**EXAMPLES OF ALTERNATE ACCOMMODATIONS**

<u>**Incarcerated Persons with Electronic Magnifiers:**</u>

- Zoomax Snow 12
- Ruby 10, with Speech Mode
- Ruby XL HD
- Large print materials

<u>**Incarcerated Persons with Text-to-Speech Assistive Devices:**</u>

- LyriQ Assistive Text-to-Speech Reader
- Zoomax Snow 12
- Ruby 10, with Speech Mode
- Read Documents Aloud

<u>**Incarcerated Persons with Braille Reader/Display:**</u>

- Braille materials
- Text-to-speech devices

<u>**Incarcerated Persons with ADA Laptop:**</u>

- Zoomax Snow 12 (if able to hand-write with magnification)
- Scribe

<u>**Incarcerated Persons with Braille Typewriter:**</u>

- Scribe

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS

**VISUAL ACCOMMODATION CHRONO**
CDC 128B (Revised (06/2024)                                                                           Page 1 of 2

_____    _____    _____
INCARCERATED PERSON NAME                             CDCR NO.            HOUSING

The incarcerated person, listed above, has been provided the assistive device(s) listed below in *Specific Description of Accommodations Issued*, as a reasonable accommodation, approved by the Department's vision specialist on _____. In accordance with Department Operations Manual, Section 54030.8(c)(1), the assistive device(s) will not count against the incarcerated person's total square footage of property nor be restricted by the three-appliance limit

You were granted approval to use of the assistive device(s) listed in the "*Specific Description of Accommodations Issued*" section below as a reasonable accommodation by the vision specialist. You will be able to maintain the possession of your assistive device(s) during programs, services, activities, and in housing unit settings, including Restrictive Housing, off-site medical appointments, and same-day court appearances. During institutional transfers, the assistive device(s) shall be inventoried and packed with your property for transfer, unless you need the assistive device(s) to transfer safely and independently. Upon parole or discharge, the assistive device(s) shall be collected by the ADA Office staff for appropriate tracking.

If the assistive device(s) or any of the components (e.g., chargers, etc.) are altered, damaged, or destroyed, staff shall notify the ADA Coordinator. The ADA Coordinator will determine the best course of action (i.e., replace the assistive device(s) or item(s) or provide an alternate visual accommodation). Staff shall immediately notify the ADA office if an assistive device is confiscated for any reason (e.g., intentionally altered, damaged, or destroyed, etc.). If the ADA Coordinator determines the best course of action is to remove the device(s) or item(s), the ADA Coordinator shall also ensure it is removed from your Registerable Property.

These assistive devices are considered state property. You will be financially responsible for the alteration, intentional damage, or destruction of assistive device(s) issued to you. As such, if the cost of the device(s) or item(s) is $400 or less, you shall sign a conditional CDC Form 193, Inmate Trust Account Withdrawal, which stipulates the cost you must pay if an assistive device(s) or item(s) is altered, intentionally damaged, or destroyed, and needs to be replaced.

Additionally, if an assistive device is intentionally altered, damaged, or destroyed, you may be subject to disciplinary action pursuant to California Code of Regulations (CCR), Title 15, Section 3011. You will not be responsible for the cost of the replacement of an assistive device if the ADA Coordinator determines the assistive device was damaged or lost due to staff neglect or due to no fault of your own.

If an assistive device issued to you no longer meets your needs for independent reading or writing, you may request a new evaluation by a vision specialist by submitting your request for new assessment on a CDCR Form 1824 or CDCR Form 7362. ADA workers and custody staff are available to assist you with completing your request form. Your attorney may also request a new assessment on your behalf by submitting a CDCR Form 1824 or via the existing advocacy letter process.

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS

**VISUAL ACCOMMODATION CHRONO**
CDC 128B (Revised (06/2024)                                                                            Page 2 of 2

Please sign and date below indicating you understand why the visual accommodations are being offered to you, when the assistive device(s) may be used, and that you have been trained and understand how to operate the assistive device(s) issued to you. You understand that you can submit a Form GA 22 to request replacement of the assistive device(s). Furthermore, by signing this form, you acknowledge your responsibility for maintaining possession of the assistive device(s) issued to you and acknowledge that you are not allowed to have anyone else use this assistive device(s).

Do you wish to accept these devices as a visual accommodation?

**YES** ○     **NO** ○

*Specific Description of Accommodation(s) Issued*

|  |
|--|
|  |

_____          _____          _____
INCARCERATED PERSON NAME                CDCR NUMBER               INCARCERATED PERSON SIGNATURE

_____          _____          _____
STAFF NAME AND TITLE (PRINTED)         DATE ISSUED               STAFF SIGNATURE

If the incarcerated person refuses to participate in the interview, check this box ○

If the incarcerated person refuses to sign, check this box ○

**DISTRIBUTION**     **Original:** ADA Office     **Copies:**     ERMS, Incarcerated Person

ATTACHMENT C – Large Print Document Guidelines

# CDCR GUIDELINES FOR PREPARATION OF LARGE PRINT DOCUMENTS

## <u>Purpose and Directive</u>

The Department prepares large print documents for visually impaired incarcerated persons who require enlarged print as a reasonable accommodation under the Americans with Disabilities Act. The following guidelines outline the best practices for preparing large print documents and should be followed whenever preparing a large print document.

## <u>Font Size</u>

The DAI will use the following font sizes in large print documents.

- 18 points for the body of the text,
- 20 points for subheadings, and
- 22 points for headings.

ATTACHMENT C – Large Print Document Guidelines

## **Font Style**

The following fonts are the only styles that should be used to prepare large print documents: Verdana, Tahoma, Helvetica, Arial, and Comic Sans (if a contrasting font is needed.)

## **Formatting**

For a single-spaced document, use line spacing of 1.25. Double spacing should be applied between paragraphs. Do not indent paragraphs. A tutorial on how to change spacing is available at https://support.microsoft.com/en-us/office/change-the-line-spacing-in-word-04ada056-b8ef-4b84-87dd-5d7c28a85712

Do not format text into more than one column per page. Dotted lines should be avoided. If you are modifying a document (such as a hearing transcript) that uses an index with dotted lines, you should instead use pastel blue color contrast for every other line. A how-to guide is available at https://support.microsoft.com/en-us/office/change-the-color-of-fills-lines-and-borders-a29e3fa1-d19a-419a-babb-3f030343484b.

ATTACHMENT C – Large Print Document Guidelines

If you need to add color to a document, please ensure that the institution receives or prints the document in color so the accommodation is meaningful.

## Styles

Use of italicized text should be avoided.

## Color of text

A color contrast ratio of at least 4.5:1 should be used. The color contrast ratio can be determined using online tools such as the Webaim Color Contrast Checker, which is available at the following link: https://webaim.org/resources/contrastchecker/.

## Titles, Headings, and Footers

Make titles and headings larger than the text of the document when possible. Do not italicize titles or headings; instead, bold and/or underline them. Justify the title or heading on the left. Align titles and headings to the left and use both upper and lowercase letters like in this memo.

Page numbers should be in the same font style and size as the main document. When possible, the page number

ATTACHMENT C – Large Print Document Guidelines

should be included in both the upper right-hand corner of a document and as well as the center of the footer.

## **Resources**

If you have any questions about large print documents, please contact CDCRCAMU@cdcr.ca.gov. You can also learn more about best practices from the American Council of the Blind (https://www.acb.org/large-print-guidelines) and American Printing House for the Blind (https://www.aph.org/resources/large-print-guidelines/).

Attachment D – Printing SOMS Documents in Large Print

Currently, SOMS does not have the option to format automatically generated documents into Large Print. The Class Action Management Unit has created the following User Guide that includes steps to provide incarcerated persons with a larger print format until SOMS can be updated.

**STEP 1 – SAVING THE DOCUMENT AS A PDF DOCUMENT**

1. Follow the steps you normally would to open a Classification Committee Chrono, RVR Hearing Results, Grievance Response, etc. and get to the page you will be providing in large print. In the example below, I will be opening some Disciplinary Hearing Results.

2. From your "Print" window, instead of sending the document to your defaulted printer (as you would normally do, you will select "Microsoft Print to PDF" and then click "Print."



Attachment D – Printing SOMS Documents in Large Print

3. A "Save Print Output As" window should popup.  If it does not, look for a printer icon on your toolbar.  You will need to select a location to save your file, and then "Save."



## STEP 2 – PRINTING IN POSTER STYLE

1. Open the document from wherever you saved it, and either (a) select the print icon or (b) press Ctrl+P.



2. Under Page Sizing and Handling section, click on the 'Poster' button.



Attachment D – Printing SOMS Documents in Large Print

3. Select the Tile Scale box and adjust the size to 125%.



Attachment D – Printing SOMS Documents in Large Print

4. Then select 'Print'. *Note: 11"x8.5" paper will still be used, and multiple pages will be produced.



| A.4.1 | Policies and Procedures | Providing Documents to Persons with Vision Disabilities (with attachment) |

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**

P.O. Box 4036
Sacramento, CA 95812-4036



# BPH Policies and Procedures
## Compliance with March 20, 2024 *Armstrong* Court Order

### Providing Documents to Persons with Vision Disabilities

These policies and procedures address the *Armstrong* court's March 20, 2024 order requiring Defendants to provide class members identified with a Disability Placement Program (DPP) code of DPV (vision disability impacting placement) or DNV (vision disability not impacting placement) with documents in accessible formats in a timely manner.

The California Department of Corrections and Rehabilitation and the Board of Parole Hearings will work collaboratively to ensure the following documents are available or provided to incarcerated persons identified as DPV or DNV in accordance with the person's primary visual accommodation method, as determined by a vision specialist, in a timely manner:

- BPH 1001 Proposed Parole Consideration Decision
- BPH 1002 Notice of Rights (Consultations)
- BPH 1002 Notice of Rights (Initial/Subsequent/Rescission Hearings)
- BPH 1003 Hearing Rights Form
- Notice of Rights of Expanded Medical Parole (EMP)
- BPH 1004 Post-Conviction Report
- BPH 1048(A) Nonviolent Eligibility
- BPH 1048(B) Nonviolent Referral
- BPH 1048(C) Nonviolent Decision
- BPH 1048(D) Nonviolent Decision Review
- BPH 1073 Notice and Request for Assistance at Parole Proceeding
- BPH 1080 Notice of Date/Time/Place
- BPH 1135 Miscellaneous Decision
- BPH 1415 Summary of Offenders with a Mental Health Disorder Hearing and Decision
- Comprehensive Risk Assessment
- Hearing Transcript
- Notice of Confidential Information Disclosure in Advance of Parole Hearing Memorandum (NCID)
- Inmate Notice of Attorney
- Notice of DPV/DNV Rights for BPH Proceedings
- Notice of Deaf-Signer Rights for BPH Proceedings

- Offer and Documentation of *Olson* Review
- BPH 1045-A Petition to Advance Hearing Date
- BPH 1074 Request for Reasonable Accommodation – Grievance Process

The Board and CDCR will work together to track and ensure the documents are provided in accordance with the person's primary visual accommodation method, as determined by the vision specialist.[1]

Potential vision accommodations include braille, large print material, electronic text-to-speech reader, magnifier, and read documents aloud. For persons whose primary visual accommodation is "magnifier" or "electronic text-to-speech reader," documents will be provided in regular print and the person will use their assistive device to review the documents. For persons whose primary visual accommodation is "read documents aloud," the documents will be provided in an audio format, such as on a CD. For persons whose primary visual accommodation is "large print material," the documents will be provided in large print format in accordance with the BPH Guidelines for Preparation of Large Print Documents (attached). For persons whose primary visual accommodation is "braille," the documents will be provided in braille.

The Board's ADA Compliance Unit (ADACU) will identify all persons scheduled for a parole hearing who are identified as DPV or DNV. For these persons, ADACU will review SOMS to identify each person's primary method of visual accommodation, as determined by a vision specialist, and monitor that all documents listed above are timely provided to the person in a manner consistent with their primary method of visual accommodation.

When an alternative format (i.e. large print, braille, or audio) is consistent with the primary method of visual accommodation, the document will be provided in the alternative format as close in time as possible to when it would be provided in its usual format. Documents will be provided in alternative formats within seven business days of when it would otherwise have been provided in its usual format, when possible. Some alternative formats, such as braille, will require the assistance of a vendor to create the document in the alternative format, which will take time to translate.

**Attachment**

1.    BPH Guidelines for Preparation of Large Print Documents

---

[1] However, documents may not be so provided if the person is otherwise incapacitated such that providing the documents in the primary visual accommodation method would not assist in establishing effective communication.

 **Board of Parole Hearings Guidelines for Preparation of Large Print Documents**

## Purpose and Directive

The board prepares and provides large print documents for visually impaired individuals who require enlarged print as a reasonable accommodation under the Americans with Disabilities Act. The following guidelines outline the best practices for preparing large print documents and should be followed whenever you need to prepare a large print document.

## Font Size

The Board will use the following font sizes in large print documents unless a low-vision individual requests differently as specified below:

- 18 points is used for the body of text,
- 20 points for subheadings, and
- 22 points for headings.

The Board will accommodate requests from low-vision individuals for large print documents with font sizes that differ from those listed above.  As such, when a request is made for a document in large print font, the board's ADA Compliance Unit should reach out to the institution to determine whether the individual needs large print documents with font sizes that differ from those listed above.

## Font Style

The following fonts are the only styles that should be used to prepare large print documents: Verdana, Tahoma, Helvetica, Antique Olive, and Comic Sans (if a

contrasting font is needed). If the visually impaired individual request a different font style, you should use the requested font style when reasonably possible.

## Formatting

For a single-spaced document, use line spacing of 1.25. Double spacing should be applied between paragraphs. Do not indent paragraphs. A tutorial on how to change spacing is available here: Change the Line Spacing in Word.

Do not format text into more than one column per page.  Dotted lines should be avoided. If you are modifying a document (such as a hearing transcript) that uses an index with dotted lines, you should instead use pastel blue color contrast for every other line. A how-to guide is available here: Change the Color of Fills, Lines, and Borders.

If you need to add color to a document, please ensure that the institution receives or prints the document in color so the accommodation is meaningful.

Example:

| INDEX | Page |
|---|---|
| Proceedings | 3 |
| Case Factors | 9 |

## Styles

Use of italicized text should be avoided.

## Color of text

A color contrast ratio of at least 4.5:1 should be used.  The color contrast ratio can be determined using online tools such as the Webaim Color Contrast Checker, which is available at the following link: https://webaim.org/resources/contrastchecker/.

## Titles, Headings, and Footers

Make titles and headings larger than the text of the document when possible. Do not italicize titles or headings; instead, bold and/or underline them. Justify the

title or heading on the left. Align titles and headings to the left, and use both upper and lowercase letters like in this memo.

Page numbers should be in the same font style and size as the main document. When possible, the page number should be included in both the upper right hand corner of a document and as well as the center of the footer.

## Resources

If you have any questions about large print documents, please contact BPHADALegalTeam@cdcr.ca.gov. You can also learn more about best practices from the American Council of the Blind and American Printing House for the Blind (APH).

# Appendix B

| B.1 | Policies and Procedures | Recording Sign Language Interpretations at Hearings |
|---|---|---|

| B.2.1 | Memorandum | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |
|---|---|---|
| B.2.2 | Operational Procedure | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |
| B.2.3 | Chrono 128B | DVD Player Issuance Chrono |
| B.2.4 | Tracking Sheet | Portable DVD Player Tracking Sheet |
| B.2.5 | Job Aid | Teams Recording Job Aid |
| B.2.6 | Job Aid | Portable DVD Player with Swivel Screen, Black, NS-P10DVD20 |

| B.3.1 | Memorandum | CORRECTIONAL COUNSELOR ROLE IN BOARD OF PAROLE HEARINGS PROCEEDINGS FOR INCARCERATED PERSONS WITH DISABILITIES |
|---|---|---|
| B.3.2 | Chrono 128B | BPH Accommodations Questionnaire Chrono |
| B.3.3 | Notification to Class Member | Notice of Deaf-Signer Rights for BPH Proceedings |

| B.1 | Policies and Procedures | Recording Sign Language Interpretations at Hearings |
|-----|-------------------------|-----------------------------------------------------|

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**

P.O. Box 4036
Sacramento, CA 95812-4036



# BPH Policies and Procedures
## Compliance with March 20, 2024 *Armstrong* Court Order

### Recording Sign Language Interpretations at Hearings

The following policies and procedures are for parole hearings conducted for "deaf signers," who are *Armstrong* class members identified as using sign language as their primary method of communication and who have difficulty understanding written English. Specifically, these persons will be identified as anyone who 1) is DPH (hearing disability impacting placement), 2) uses sign language as their primary method of communication, and 3) has a reading score of 4.0 or less. Under the *Armstrong* court's March 20, 2024 order, the Board of Parole Hearings (Board) is required to provide deaf signers with a video recording of their parole hearing that includes the sign language interpreter used during the hearing to communicate directly with the deaf signer.

Whenever a deaf signer is scheduled for a parole hearing, the Board's Americans with Disabilities Act Compliance Unit (ADACU) will notify the Board's Scheduling Unit that a video recording of the parole hearing will be a necessary accommodation. The Board's Scheduling Unit will ensure the hearing is video recorded and captures the sign language interpreter. The Board will store the video recording until the deaf signer is discharged from parole.

Due to current technological requirements for playback within the institutions, the Board will burn the video recording onto a DVD. The DVD will be sent to the institution's ADA coordinator for service on the deaf signer. The hearing transcript will also still be served on the deaf signer. The DVD will be provided to the incarcerated person within 30 days following the parole hearing.

At this time, the Board's Scheduling Unit will record the parole hearings using Microsoft Teams. The Board's Scheduling Unit will ensure the recording captures 1) the sign language interpreter used during a parole hearing who communicates directly with the deaf signer and 2) the deaf signer. The Board's Scheduling Unit will use available functionality to enlarge the image of the interpreter who communicates directly with the deaf signer during the hearing to make it clearer for the deaf signer to view all signed utterances by that interpreter during video playback. The video recording of the hearing must capture the audio of the hearing. To the extent possible, the Board will ensure the intelligibility of all signed utterances.

Relevant staff within the Board's Scheduling Unit, ADACU, and Legal Division will be trained on how to access or request video-recorded sign language translations.

| B.2.1 | Memorandum | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date:

To:     See Distribution List

Subject:    **IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS**

On March 20, 2024, the *Armstrong* Court issued the "Order for Further Parole-Related Remedial Plan" regarding the accommodation of incarcerated persons designated as DPV (vision impaired, impacting placement) or DNV (vision impaired, not impacting placement), and incarcerated persons designated as DPH (hearing impaired, impacting placement) whose primary method of communication is sign language and who have difficulty understanding written English, identified as a Reading level of 4.0 or lower (deaf signers). The court order requires specific accommodations for DPV, DNV, and deaf signers before and after Board of Parole Hearings (BPH) proceedings. This policy describes the roles of a California Department of Corrections and Rehabilitation (CDCR) Americans with Disabilities Act (ADA) Coordinator, a CDCR Sign Language Interpreter (SLI), and CDCR Law Library staff in implementation of the court order specific to deaf signers.

**TRANSLATION OF BPH RELATED DOCUMENTS**

Prior to an incarcerated person's BPH hearing, the Correctional Counselor (CC) I will serve a Comprehensive Risk Assessment (CRA). For incarcerated persons identified as deaf signers, a CDCR SLI will accompany the CC I to serve the paper version of the CRA. At the time of service of the CRA by the CC I, deaf signers shall meet with the SLI to have the CRA translated. The CC I will be required to assist in the full translation of the CRA, which may include reading the document aloud so that the translation can be completed by the SLI. The SLI shall use Microsoft (MS) Teams during the meeting to video record the translation (see Attachment A for additional instructions). The incarcerated person may ask the SLI clarifying questions specific to the translation to ensure they understand the translation. If the incarcerated person has concerns or questions regarding content of the CRA (e.g., disagreements about the findings or factual errors, legal questions or advise, etc.), the CC I shall direct the incarcerated person to reach out to their attorney.

Additionally, a deaf signer or their counsel may request that documents in the incarcerated person's central file or any other documents needed to prepare for a BPH proceeding be translated by a SLI that is video-recorded and placed onto a DVD. Documents include, but are not limited to, documents identified from the central file during the *Olson* Review, such as a Probation Officer's Report, Rules Violation Reports, laudatory chronos, etc. If a deaf signer makes such a request, a CDCR SLI shall video-record themselves via MS Teams translating the requested document(s). The incarcerated person does not need to be present during the SLI's translation. The CC I will be required to assist in the translation of the requested document(s), which may include reading the document(s) aloud so that the translation can be completed by the SLI.

See Distribution List
Implementation of Parole Related Accommodations
Page 2

**ISSUANCE OF DVD PLAYERS**

The ADA Office shall ensure the video recorded SLI translations that are transferred onto DVDs are provided to the incarcerated person. The ADA Office staff shall document the delivery of DVD(s) on a CDCR Form 128B, General Chrono. The DVD of the translated CRA shall be provided to the incarcerated person no later than 60 days prior to the BPH hearing.

At institutions designated to house DPH incarcerated persons that require SLI, the ADA Office will maintain a sufficient inventory of portable DVD players for temporary issuance to deaf signers to view the DVD(s) privately and independently. Specific information regarding the procedure for issuance and tracking of the DVD players can be found in the attached LOP template.

**ASSISTANCE WITH READING AND WRITING**

Incarcerated persons with a disability impacting their ability to read and write independently (e.g., DPV, DNV, DPH, DDP, etc.) may request assistance from Law Library staff or ADA Workers to scribe documents related to a BPH proceeding.

The incarcerated persons will be provided with accommodations that allow them to read and write privately and independently using assistive devices or other technology. When more assistance is needed, a Semi-Skilled ADA Worker may assist the incarcerated person so long as the incarcerated person agrees to assistance from the ADA Worker. The ADA Worker or Law Library staff shall scribe what the incarcerated person wants to write, and Law Library staff shall provide three copies of the scribed document (one for the incarcerated person, one for their attorney, and one for BPH) at no cost to the incarcerated person.

**PROOF OF IMPLEMENTATION**

All institutions shall update their Disability Placement Program (DPP) LOP to reflect the direction included in this memorandum and provide a copy of the DPP LOP to their respective Mission Associate Director within 90 days of the release date of this memorandum. The revision may be incorporated as an addendum to be included in the next scheduled revision of the LOP.

All ADA Coordinators, SLIs, and Law Library staff shall be trained on the expectations of this memorandum by utilizing the Learning Management System, Course Code XXXXXXX within 90 calendar days of the date of this memorandum. Institutions shall provide a proof of practice to their respective Mission Associate Director.

DocuSign Envelope ID: E7AEF272-34D4-4A0A-8FB7-B96BFF24D994

See Distribution List
Implementation of Parole Related Accommodations
Page 3


If you have any custody related questions, please contact Lourdes White, Chief, Class Action Management Unit, at (916) 835-5679 or Lourdes.White@cdcr.ca.gov.

If you have any library related questions, please contact Brandy Buenafe, Principal Librarian, Office of Correctional Education, at (916) 431-4443 or Brandy.Buenafe@cdcr.ca.gov.

RON BROOMFIELD
Director
Division of Adult Institutions

AMY CASIAS
Director
Division of Rehabilitative Programs


Attachments

DISTRIBUTION LIST:

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Supervisors of Correctional Education Programs
Classification and Parole Representatives
Correctional Counselors
Sign Language Interpreters
Law Library staff

cc:    Jared D. Lozano
       Jennifer Benavidez
       Raquel Buckel
       Dawn Lorey
       Edina Thomas
       Lourdes White
       Christopher Hees
       Timothy Fleshman
       Darnell Mebane
       Margo Wilkerson
       Jennifer Shaffer
       Jessica Blonien
       Shannon Swain
       Rebecca Silbert
       Brandy Buenafe
       Katie Riley
       Megan Roberts

| B.2.2 | Operational Procedure | IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS |

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

I.    **OPERATIONAL PROCEDURE NO. XXX – IMPLEMENTATION OF PAROLE-RELATED ACCOMMODATIONS**

II.   **PURPOSE AND OBJECTIVE**

This procedure is written to provide clear guidelines for the provision of specific accommodations for DPV (vision impaired, impacting placement), DNV (vision impaired, not impacting placement), and Deaf-Signer (hearing impaired, impacting placement (DPH) who requires a Sign Language Interpreter (SLI) for communication and who has difficulty understanding written English, based on a reading score of 4.0 or below) incarcerated persons before and after Board of Parole Hearings (BPH) proceedings. This policy describes the roles of a California Department of Corrections and Rehabilitation (CDCR) Americans with Disabilities Act (ADA) Coordinator, a CDCR Sign Language Interpreter (SLI), and CDCR Law Library staff in implementation of the court order, specific to deaf signers.

III.  **REFERENCES**

- California Code of Regulations (CCR), Title 15, Section 3190, General Policy
- *Armstrong* Order for Further Parole-Related Remedial Plan (ECF No. 3584)
- *Armstrong* Court Ordered Remedial Plan, Amended January 3, 2001
- CDCR Department Operations Manual (DOM), Section 54030.8(c)(1), Personal Property Package Criteria
- Authorized Personal Property Schedule (APPS)
- CDCR memorandum titled, *Implementation of Parole Related Accommodations*, dated XXXXX, 2024.
- CDCR memorandum titled, *Accommodations for Incarcerated Persons with a Vision Code*, dated XXXXX, 2024.

IV.   **APPROVAL AND REVIEW**

A.   This operational procedure and any modifications or inclusions must have the approval of the Warden annually in the month of XXXX.

B.   This procedure will be reviewed each XXXX by the ADA Coordinator and Classification and Parole Representative (C&PR) and submitted to the Warden for final approval.

V.    **IDENTIFICATION OF UPCOMING BPH HEARINGS FOR DEAF SIGNERS**

On a weekly basis, the institutional BPH Case Records Desk shall notify the institution's ADA Office of all scheduled upcoming BPH hearings (within the next 15 months) for deaf signers.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
INSTITUTION NAME
City, California

Month, Year

Following a deaf signer's BPH hearing, BPH will send a video recording of the hearing on DVD to the ADA Office. An ADA Office staff member will provide the DVD of the BPH hearing to the incarcerated person. Notably, providing deaf signers with videos of the BPH hearing and CRA supplements and does not replace the existing processes for providing paper copies of these documents. The paper copies of documents shall be served to the incarcerated person under existing processes.

## VI.    TRANSLATION OF BPH RELATED DOCUMENTS

### A.  Comprehensive Risk Assessment (CRA)

The assigned correctional counselor (CC) will coordinate with the CDCR SLI to arrange for the initial delivery of the paper copy of the CRA and the subsequent in-person translation and recording of the CRA for the deaf signer. This translation is a court ordered requirement and must be produced in video format (i.e., DVD), to allow the incarcerated person to view the translation of the document. The SLI shall utilize Microsoft (MS) Teams during the meeting to video record the translation (see Attachment A for additional instructions). The CC shall document an incarcerated person's refusal of any aspect of these accommodations (i.e., refusal to be present during translation, refusal to have translation video recorded, etc.) on a CDC Form 128B, General Chrono.

Once the recording is completed, the SLI shall provide the DVD to the ADA Office, who will ensure that the recording is issued to the incarcerated person no later than 60 calendar days prior to the BPH hearing.

### B.  Other BPH Related Translations

Additionally, deaf signers may request to have other documents related to preparing for their parole hearings translated into sign language and video recorded. This may include, but is not limited to, documents identified from the central file during the *Olson* Review, such as a Probation Officer's Report, Rules Violation Reports, laudatory chronos, etc. Should the deaf signer or their attorney request additional documents to be translated into sign language (*see* Section XI for examples), the request shall be sent to the CC and then referred to the SLI, who will complete the video-recorded translation.

## VII.   ISSUANCE OF PORTABLE DVD PLAYERS

When a deaf signer has an upcoming BPH proceeding, the ADA Office shall ensure issuance of the DVD player to the incarcerated person within five business days of notice of the upcoming

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

BPH proceeding. Prior to the issuance of the DVD Player, the ADA Office will enter the device, including any serial number, on the *Registerable Property* screen via the SOMS Module (listed under *Accommodation Property*). The ADA Office will ensure the device is functional upon issuance.

**A.  Duration of Accommodation**

Deaf signers shall have access to the DVD player for one year prior to a scheduled BPH hearing or within five business days of notice of a scheduled hearing within the next twelve months. Deaf signers shall be permitted to retain the DVD player for six months after the BPH hearing or until post-hearing tasks are completed.

**B.  Training**

At the time of issuance of the DVD player, the incarcerated person shall be trained by an ADA Office staff member on how to use the device, including use of the fast-forward, pause, and reverse functions.

**C.  Record of Issuance**

The ADA Office staff member shall have the incarcerated person sign a CDC Form 128B, DVD Player Issuance Chrono, (Attachment B) upon issuance of the device, and a copy of the DVD Player Issuance Chrono will be forwarded to Case Records for scanning into the Electronic Records Management System (ERMS), Miscellaneous tab, with the incarcerated person retaining a copy of the DVD Player Issuance Chrono. The DVD Player Issuance Chrono is not required to be kept in the incarcerated person's possession as proof of approval, as the DVD player will be tracked in SOMS. The incarcerated person shall be allowed to refuse acceptance of the DVD player, and that will be documented on the DVD Player Issuance Chrono.

The DVD players are considered state property. The incarcerated person will be financially responsible for the intentional damage, alteration, or destruction of the DVD player. As such the incarcerated person shall sign a conditional CDC Form 193, Inmate Trust Account Withdrawal, which stipulates the cost the incarcerated person must pay if the DVD player is intentionally damaged, altered, or destroyed and needs to be replaced.

**D.  Request for Replacement DVD Player or DVD**

The incarcerated person may request a replacement DVD player if reasonable wear and tear occurs to the device. The incarcerated person will receive another device as a one-for-one exchange via submission of a Form GA 22 to the ADA office. In addition, the DVD player shall

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

be replaced if it has been determined the DVD player was lost, damaged, or destroyed due to staff neglect, or due to no fault of the incarcerated person. The ADA Coordinator shall replace the non-functional device within five business days of notification of non-functionality. The ADA Coordinator will also arrange for the repair or replacement of any nonfunctional DVDs upon notification that they are defective and no longer working.

**E. Property Requirements**

The requirements listed in the CCR, Title 15, and APPS, wherein the incarcerated persons receive equipment in clear color, shall *not* be applied to the DVD player approved under this process. As such, the DVD player provided will not count against the incarcerated person's total square footage of property nor be restricted by the three-appliance limit, as outlined in the DOM, Section 54030.8(c)(1). These DVD players will not be considered the incarcerated person's personal property nor be considered a healthcare appliance, as outlined in CCR, Title 15, Section 3190.

Incarcerated persons, who have received a DVD player, are approved to have the device within their possession in housing unit settings (including Restrictive Housing) in addition to Law Libraries.

During institutional transfers, the DVD player and associated DVDs shall be inventoried and packed with the incarcerated person's property for transfer. Upon parole or discharge, the DVD player shall be collected by the ADA Office staff for appropriate tracking, however the DVDs will remain the property of the incarcerated person.

**VIII.    TRACKING**

**A.  Confiscation, Damage, and Destruction**

These DVD players and associated DVDs shall not be confiscated without cause during routine cell searches or when an incarcerated person is disciplined. Should a DVD player become an immediate security threat (e.g., altered or used as a weapon, etc.) the device shall be confiscated. In addition, the device will be confiscated if necessary to be collected as evidence in a crime or investigation (must be supported by documentation). If the device is confiscated, the ADA Coordinator shall ensure an appropriate interim accommodation is provided to the incarcerated person.

If the device or any of the components (e.g., cords, chargers, etc.) are damaged, altered, or destroyed, the custody supervisor shall determine if it was intentional or unintentional based on the circumstances (to include an interview with the incarcerated person, documented on

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

a CDC Form 128B) and provide all available information to the ADA Coordinator. The ADA Coordinator will determine the best course of action (i.e., replace the device, provide an alternate assistive device). If the ADA Coordinator determines the best course of action is to remove the device, the ADA Coordinator shall also ensure it is removed from the incarcerated person's *Registerable Property* screen via the SOMS Module. Pending replacement of the device, the incarcerated person will be provided an alternative device if possible. As these devices are considered state property, the incarcerated person will be financially responsible for intentional damage, alteration, or destruction of the device, and may be subject to disciplinary action pursuant to CCR Title 15, Section 3011.

IX.     **PROCUREMENT OF DVD PLAYERS**

At institutions designated to house DPH incarcerated persons that require SLI, the ADA Coordinator will maintain an inventory of portable DVD players for temporary issuance to deaf signers to view the DVD(s) privately and independently. The ADA Coordinator shall assess current inventory of presently issued DVD players and maintain sufficient number of DVD players to facilitate prompt issuance or replacement, if warranted, as outlined in this LOP. These devices will be purchased through the existing procurement processes and the purchase orders shall be made within Functional Area 2710030, utilizing the commitment line item *Not-Otherwise Classified Non-IT Good* 9031123900.

X.     **ASSISTANCE WITH READING AND WRITING**

Incarcerated persons with a disability impacting their ability to read and write independently (e.g., DPV, DNV, DPH, DDP, etc.) may request assistance from Law Library staff or ADA Workers to scribe documents related to a BPH proceeding.

The incarcerated persons will be provided with accommodations that allow them to read and write privately and independently using assistive devices or other technology. When more assistance is needed, a Semi-Skilled ADA Worker may assist the incarcerated person so long as the incarcerated person agrees to assistance from the ADA Worker. The ADA Worker or Law Library staff shall scribe what the incarcerated person wants to write, and Law Library staff shall provide three copies of the scribed document (one for the incarcerated person, one for their attorney, and one for BPH) at no cost to the incarcerated person.

At least one year before the incarcerated person's tentative parole hearing date and until incarcerated person's post-hearing tasks have been completed, if an incarcerated person needs access to a printer to accommodate their reading and writing needs related to their BPH proceedings, the ADA Office staff shall print the requested documents related to incarcerated person's BPH proceeding as soon as reasonably possible at no cost to the incarcerated person.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**INSTITUTION NAME**
**City, California**

**Month, Year**

XI.    **PROVIDING BPH DOCUMENTS IN ACCESSIBLE FORMAT**

Forms produced for BPH proceedings may include but are not limited to:

- BPH 1001 Proposed Parole Consideration Decision
- BPH 1002 Notice of Rights (Consultations)
- BPH 1002 Notice of Rights (Initial/Subsequent/Rescission Hearings)
- BPH 1003 Hearing Rights Form
- Notice of Rights of Expanded Medical Parole (EMP)
- BPH 1004 Post-Conviction Report
- BPH 1045-A Petition to Advance Hearing Date
- BPH 1048(A) Nonviolent Eligibility
- BPH 1048(B) Nonviolent Referral
- BPH 1048(C) Nonviolent Decision
- BPH 1048(D) Nonviolent Decision Review
- BPH 1073 Notice and Request for Assistance at Parole Proceeding
- BPH 1073(a) Reasonable Accommodation Notice and Request
- BPH 1074 Request for Reasonable Accommodation – Grievance Process
- BPH 1080 Notice of Date/Time/Place
- BPH 1135 Miscellaneous Decision
- BPH 1415 Summary of Offenders with a Mental Health Disorder Hearing and Decision
- Comprehensive Risk Assessment
- Hearing Transcript
- Notice of Confidential Information Disclosure in Advance of Parole Hearing Memorandum (NCID)
- Notice of DPV/DNV Rights for BPH Proceedings
- Notice of Deaf-Signer Rights for BPH Proceedings
- Offer and Documentation of *Olson* Review

XII.    **RESOURCE SUPPLEMENTS**

Attachment A – MS Teams Job Aid
Attachment B – CDC Form 128-B DVD Player Issuance Chrono
Attachment C – Portable DVD Specifications Sheet
Attachment D – Portable DVD Player Tracking Sheet

XIII.    **APPROVALS**

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**

**INSTITUTION NAME**

**City, California**

**Month, Year**

NAME
Warden
Institution
Division of Adult Institutions

| B.2.3 | Chrono 128B | DVD Player Issuance Chrono |
|-------|-------------|---------------------------|

DocuSign Envelope ID: E7AFE379-34D4-419A-8EB7-B96BFF24D994

STATE OF CALIFORNIA                                                                              DEPARTMENT OF CORRECTIONS

**DVD PLAYER ISSUANCE CHRONO**
**CDC 128B (Revised 06/2024)**                                                                   **Page 1 of 1**

_____        _____        _____
INCARCERATED PERSON NAME                        CDCR NO.                HOUSING

On _____, you were temporarily issued a Portable DVD Player as an accommodation for review of your video-recorded sign language translations). You will be allowed to maintain possession of this device while watching the DVD(s) and may use the device in your housing unit and the law library. Upon completion of your BPH proceedings, the DVD player shall be returned to and collected by the ADA office.

If the DVD player or any of the parts/pieces (e.g., chargers, etc.) are damaged, altered, or destroyed, staff will tell the ADA Coordinator. The ADA Coordinator will decide the best course of action (i.e., replace the DVD player or provide an alternate accommodation). Staff will immediately tell the ADA office if the DVD player is taken for any reason (e.g., intentionally damaged, altered, or destroyed).

The DVD player is considered state property. You will be financially responsible for any intentional damage, alteration, or destruction of the device. As such, so shall sign a conditional CDCR Form 193, Inmate Trust Account Withdrawal, which stipulates the cost you must pay if you intentionally damage, destroy, or alter the device, and it needs to be replaced.

Please sign and date below, showing you understand why the DVD player is being given to you, understand when and where the DVD player may be used, have been provided instructions on how to operate the DVD player, and have no more questions on how to operate the DVD Player. Also, you also recognize that you are financially responsible for the intentional damage, alteration, or destruction of the DVD player. You may also be subject to disciplinary action according to CCR, Title 15, Section 3011 if you intentionally damage, alter, or destroy the DVD player.

**Do you understand these conditions and accept the issuance of this DVD player?** ◯ Yes        ◯ No

_____        _____        _____
INCARCERATED PERSON NAME                        CDCR NUMBER             INCARCERATED PERSON SIGNATURE

_____        _____        _____
STAFF NAME (PRINTED)                            DATE                    STAFF SIGNATURE

If the incarcerated person refuses to participate in the interview, check this box ◯

If the incarcerated person refuses to sign, check this box ◯

**DISTRIBUTION**     **Original**: ERMS          **Copies:**     ADA Coordinator, Incarcerated Person

| B.2.4 | Tracking Sheet | Portable DVD Player Tracking Sheet |
|-------|----------------|-------------------------------------|

# Tracking Sheet

## Portable DVD Player Issued to Incarcerated Person to Review Video-Recorded Materials Related to Parole Proceedings

| Name | CDCR# | Housing | Property Control Number | Date and Time Checked out | Date and Time Returned | Inspected by (staff initials) |
|------|-------|---------|-------------------------|---------------------------|------------------------|-------------------------------|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| B.2.5 | Job Aid | Teams Recording Job Aid |

## Join a Scheduled Teams Meeting

## Start Recording

When you start recording a meeting, you also turn on live transcriptions.

1) Start or join the meeting.
2) In your meeting controls, select **More actions** ⋯ > **Record and transcribe** ◉ > Start recording ◉.



3) Everyone in the meeting will be notified that recording and transcription have started.

**Notes:** You can't make multiple recordings of the same meeting at the same time. If one person starts recording a meeting, that recording will be stored on the cloud and available to all participants.

## Stop Recording

1) In the meeting controls, select **More actions** ⋯ > **Record and transcribe** ◉.
2) Choose: **Stop recording** to stop the recording.



3)

## Share a link to a meeting recording with others

If you recorded or organized the meeting, you can share the recording with people who weren't invited to the meeting by sharing it like you would share any other file.

To share a link to a meeting recording, first find the meeting recording. The recording will be available either in the meeting chat or the meeting's Recap tab.

1) In the meeting chat, you will see the recording posted once the meeting is over. Select 'View Recap'

   
   a.

2) After leaving the meeting, you can go to your Teams calendar, open the meeting by double-clicking, and select the 'Recap' tab

   
   a.

3) Whether you did option #1 or #2 to get to the Recording, it will take you to the same screen.

4) From the Recap screen, select 'Open in Stream' which will open the recording in your browser

5) From the browser, you have the option to Share or Download.

   
   a.

6) For your purposes, you will want to Share.

   a. Select Share ⬆️.

   b. Choose how you want to share the recording.

| B.2.6 | Job Aid | Portable DVD Player with Swivel Screen, Black, NS-P10DVD20 |

DocuSign Envelope ID: E7AFF373-34D4-419A-8EB7-B96BFF24D994

Yardbird    Best Buy Outlet    Best Buy Business    Shop with an Expert

Menu          What can we help you find today?          Elk Grove          **Cart**

Top Deals    Deal of the Day    Yes, Best Buy Sells That          Account    Recently Viewed    Order Status    Saved Items

Best Buy › TV & Home Theater › Blu-ray & DVD Players › Portable DVD Players



## Insignia™ - 10" Portable DVD Player with Swivel Screen - Black

Model: NS-P10DVD20    SKU: 6332164

**4.5** (753 Reviews) | 208 Answered Questions

**$129.99**                    4 payments starting at
                               **$32.50**
                               with
                               **Learn more >**

**Open-Box:** from $77.99

🛡 **Protect your portable DVD player**
   (236)

Accidental Geek Squad Protection  |  What's Included
| Terms & Conditions

| No Plan | 2-Year $34.99 About $1.46/mo. | 3-Year $44.99 About $1.25/mo. |
|---|---|---|
| | Most Popular | |

**Availability**

| 📦 Pickup Ready Today | 📦 Shipping Unavailable to 95757 |
|---|---|

**Pickup at** Elk Grove

Act Fast – Only 2 left at your store!

🛒 Add to Cart          🔖

### About this item

Enjoy your favorite movies on the go with this Insignia 10-inch portable DVD player. The swivel design lets you adjust the screen for a better viewing angle, while a built-in rechargeable battery delivers up to two hours of watch time. Th...

**Features** ›

**Specifications** ›

**Questions & Answers** (218) ›

### Review Summary

**4.5**
753 reviews

| 5 | 532 |
| 4 | 130 |
| 3 | 36 |
| 2 | 21 |
| 1 | 34 |

**4.4** Value

**4.4** Quality

**4.6**

89% would recommend to a friend



## Specifications                                    ✕

 **Insignia™ - 10" Portable DVD Player with Swivel Screen - Black**

### Key Specs

| | |
|---|---|
| Resolution ⓘ | 1024 x 600 |
| Number of Screens | 1 |
| Power Source | Plug in/Battery-powered |
| Number Of Headphone Jacks | 1 |

### General

| | |
|---|---|
| Product Name | 10" Portable DVD Player with Swivel Screen |
| Brand | Insignia™ |
| Number Of USB Port(s) ⓘ | 0 |
| Number Of Auxiliary Inputs | 0 |
| Model Number | NS-P10DVD20 |
| Color | Black |

## Specifications





**Insignia™ - 10" Portable DVD Player with Swivel Screen - Black**

| | |
|---|---|
| Color Category | Black |

**Dimension**

| | |
|---|---|
| Product Height ⓘ | 1.7 inches |
| Product Width ⓘ | 9.7 inches |
| Product Depth ⓘ | 7.5 inches |
| Product Weight ⓘ | 1.9 pounds |

**Feature**

| | |
|---|---|
| Playable Formats | MP3, JPEG, CD-R, CD-RW, DVD-R, DVD+RW, DVD-RW, DVD+R, DVD, CD |
| Output(s) | Composite video |
| Mount Type | None |

**Power**

| | |
|---|---|
| Battery Size ⓘ | Other |
| Batteries Included ⓘ | Yes |

# Specifications





**Insignia™ - 10" Portable DVD Player with Swivel Screen - Black**

| | |
|---|---|
| Output(s) | Composite video |
| Mount Type | None |

**Power**

| | |
|---|---|
| Battery Size ⓘ | Other |
| Batteries Included ⓘ | Yes |

**Display**

| | |
|---|---|
| Screen Size ⓘ | 10 inches |

**Warranty**

| | |
|---|---|
| Manufacturer's Warranty - Parts | 1 year |
| Manufacturer's Warranty - Labor | 1 year |

**Other**

| | |
|---|---|
| UPC | 600603250026 |

| B.3.1 | Memorandum | CORRECTIONAL COUNSELOR ROLE IN BOARD OF PAROLE HEARINGS PROCEEDINGS FOR INCARCERATED PERSONS WITH DISABILITIES |

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date:

To:    Associate Directors, Division of Adult Institutions
       Wardens
       Americans with Disabilities Act Coordinators
       Classification and Parole Representatives
       Correctional Counselors

Subject:    **CORRECTIONAL COUNSELOR ROLE IN BOARD OF PAROLE HEARINGS PROCEEDINGS FOR INCARCERATED PERSONS WITH DISABILITIES**

This memorandum delineates the roles and duties of Correctional Counselors (CC) in Board of Parole Hearings (BPH) proceedings, specifically as it pertains to those incarcerated persons in the Developmental Disability Program (DDP) and the Disability Placement Program (DPP). Pursuant to the memorandum titled, *Revised Correctional Counselor I Ratio Allocation Distribution Methodology and Process*, dated October 8, 2018, CCs shall "provide additional accommodation for disabled inmates to ensure equal access to programs, services, and activities, to include preparation for [BPH] Suitability hearings." The purpose of this memorandum is to detail these additional accommodations and assist CCs in fulfilling this role. This policy replaces the memorandum titled, *Correctional Counselor Role in Board of Parole Hearing Processes for Inmates with Disabilities*, dated January 18, 2022. The CCs shall issue all forms generated by Board Information Technology System (BITS). The CCs shall use effective communication during BPH encounters.

CCs are responsible for assisting incarcerated persons with disabilities in understanding, preparing for, and participating in the BPH suitability hearing process, as needed. CCs shall utilize the Strategic Offender Management System (SOMS) DPP Disability/Accommodation screen, and the Disability and Effective Communication System (DECs) via the BITS, to identify the incarcerated person's required accommodations. The CC shall review SOMS and DECS/BITS to identify the incarcerated person's need for assistance, primary and secondary method of effective communication, adaptive support needs, assistive device(s) or software (e.g., electronic magnifier, personal sound amplification device, Microsoft Ease of Access, etc.) that are required to accommodate the incarcerated person for BPH proceedings. Accommodations shall be provided in a manner to allow the incarcerated person privacy and independence in preparation for a BPH hearing or post-hearing tasks.

## BPH ACCOMMODATIONS QUESTIONNAIRE

CCs shall review BITS at least weekly for any assignments associated with a BPH proceeding. When assigned to do so by BITS, the CC shall meet with the incarcerated person and complete a CDCR Form 128-B, BPH Accommodations Questionnaire (Attachment A). The BPH Accommodations Questionnaire includes documentation that the incarcerated person has been informed of their accommodations recorded in SOMS and DECS/BITS, and that the incarcerated person has indicated that these accommodations are sufficient to proceed with preparation for

DocuSign Envelope ID: 05471206-E93B-4659-9398-AB2BDB67368B

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Classification and Parole Representatives
Correctional Counselors
Page 2

their BPH hearing. If the incarcerated person indicates the accommodations, as recorded in SOMS and DECS/BITS, are insufficient, the CC shall ask the incarcerated person what accommodations, if any, the CC may reasonably provide to proceed with the incarcerated person's preparation for their BPH hearing. If sufficient accommodations cannot be provided, the CC shall notify the ADA Coordinator. The ADA Coordinator shall route this concern through the Reasonable Accommodation Process to determine appropriate action. The CC I shall ensure the BPH Accommodations Questionnaire is forwarded to Case Records, who will scan it into ERMS, in the General Chronos section.

**NOTICE OF RIGHTS DOCUMENTS**

When prompted to do so by BITS, the CC shall serve the incarcerated person with a Notice of DPV/DNV Rights for BPH Proceedings or a Notice of Deaf-Signer (as identified as a Reading level of 4.0 or lower) Rights for BPH Proceedings, as applicable. See Attachments B and C.

**ACCESSIBLE FORMATS OF DOCUMENTS FOR INCARCERATED PERSONS WITH A VISION CODE**

When preparing for BPH proceedings and completing post-hearing tasks, incarcerated persons with a DPP vision code impacting placement (DPV) or non-impacting placement (DNV) may require documents in accessible formats such as large print, Braille, audio, etc., or may require the use of assistive devices to assist with their review of documents. CCs shall review DECS/BITS and SOMS, and the information gathered from the incarcerated person in the BPH Accommodations Questionnaire, to determine the form of accommodation that best ensures effective communication for reading and writing. This may include printing out documents from the central file at no cost to the incarcerated person to enable them to review the documents with an assistive device if large print is their accommodation. If DECS/BITS or SOMS identifies the need for Braille or audio format, the CC shall coordinate with the ADA Coordinator to provide documents in an alternate format.

***OLSON* REVIEWS**

In preparation for BPH hearings, incarcerated persons are afforded the opportunity to review their central file via an *Olson* review. The CC is to ensure the incarcerated persons with disabilities are afforded this opportunity and, if needed, provide extra assistance to include reading handwritten or other documents not accessible with assistive software technology (e.g., Microsoft Ease of Access technology, Adobe Acrobat Read-out-loud, etc.), scribing notes for the incarcerated person during the *Olson* review, and arranging for accessible formats of documents identified by the incarcerated person for later use. See attached instructions for using Microsoft Ease of Access (Attachment D) and Adobe Acrobat Read-out-loud features (Attachment E). Any extra assistance provided shall be documented via CDCR Form 128B, General

DocuSign Envelope ID: 05471306-E93B-4659-9398-AB2BDB67368B

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Classification and Parole Representatives
Correctional Counselors
Page 3

Chrono. For additional printing requests outside of accessible formatting, California Code of Regulations, Title 15, Section 3162 and Department Operations Manual, Section 101120.15 will be followed.

**VIDEO RECORDINGS OF SIGN LANGUAGE TRANSLATION OF DOCUMENTS FOR DEAF SIGNERS**

Incarcerated persons designated as DPH (hearing impaired, impacting placement) whose primary method of communication is sign language and who have difficulty understanding written English, identified as a Reading level of 4.0 or lower, (deaf signers) shall receive video recordings of specific documents translated by a Sign Language Interpreter (SLI). At the time of service of the Comprehensive Risk Assessment (CRA), deaf signers shall meet with an SLI to have the CRA translated. The CC will be required to assist in the full translation of the CRA, which may include reading the document aloud so that the interpretation can be completed by the SLI. The incarcerated person may ask the SLI clarifying questions specific to the translation to ensure they understand the translation. If the incarcerated person has concerns or questions regarding content of the CRA (e.g., disagreements about the findings or factual errors, legal questions or advise, etc.), the CC shall direct the incarcerated person to reach out to their attorney. The translation will be video recorded, and a copy of the video shall be provided to the incarcerated person via the ADA Office no later than 60 calendar days prior to the date of the hearing.

Additionally, deaf signers or their counsel may request to have any documents needed to prepare for their parole hearings translated into sign language and video recorded. This may include, but is not limited to, documents identified from the central file during the *Olson* Review, such as a Probation Officer's Report, Rules Violation Reports, laudatory chronos, etc. If a deaf signer makes such a request, a SLI shall videorecord themselves via MS Teams translating the requested documents. A copy of the video shall be provided to the incarcerated person via the ADA Office. The incarcerated person does not need to be present during the SLI's translation. The CC will be required to assist in the full translation of the requested documents, which may include reading the document(s) aloud so that the interpretation can be completed by the SLI.

**PROOF OF IMPLEMENTATION**

All institutions shall ensure CC duty statements are revised to include the noted clarifications and provide proof of practice to their respective Mission Associate Director within 90 calendar days from the date of issuance of this memorandum.

All CCs shall be trained on the expectations of this memorandum by utilizing the Learning Management System, Course Code 11063804 within 90 calendar days of the date of this memorandum. Institutions shall provide a proof of practice to their respective Misson Associate Director.

DocuSign Envelope ID: 05471206-E93B-4659-9398-AB2BDB67368B

Associate Directors, Division of Adult Institutions
Wardens
Americans with Disabilities Act Coordinators
Classification and Parole Representatives
Correctional Counselors
Page 4

This memorandum and the included attachments will be available on the Classification Services Unit (CSU) webpage, within the Mini Manual at https://cdcr.sharepoint.com/sites/CDCR_OPS_AO_INS_CSU/SitePages/CSU-Mini-Manual.aspx, under the topics BPH and Correctional Counselor Role in Board of Parole Hearing Processes for Incarcerated Persons with Disabilities.

If you have any questions, please contact Edina Thomas, Chief, CSU at (916) 323-3660 or Edina.Thomas@cdcr.ca.gov, and Lourdes White, Chief, Class Action Management Unit, at (916) 835-5679 or Lourdes.White@cdcr.ca.gov.

*Ronald Broomfield*
—499F547FE65C411...

RON BROOMFIELD
Director
Division of Adult Institutions

Attachments

cc:    Jared D. Lozano
       Jennifer Benavidez
       Raquel Buckel
       Dawn Lorey
       Edina Thomas
       Lourdes White
       Christopher Hees
       Timothy Fleshman
       Darnell Mebane
       Margo Wilkerson
       Jennifer Shaffer
       Jessica Blonien
       Katie Riley
       Megan Roberts

| B.3.2 | Chrono 128B | BPH Accommodations Questionnaire Chrono |

DocuSign Envelope ID: 05471306-E93B-4659-9398-AB2BDB67368B

STATE OF CALIFORNIA                                                                         DEPARTMENT OF CORRECTIONS
**BPH ACCOMMODATION QUESTIONNAIRE CHRONO**
CDC 128B (Revised 06/2024)                                                                              Page 1 of 2

| INCARCERATED PERSON NAME | CDCR NO. | HOUSING | READING SCORE |
|---|---|---|---|

The California Department of Corrections and Rehabilitation (CDCR) has an obligation to provide all incarcerated persons equal access to programs, services, and activities, as required by state and federal law, including the Americans with Disabilities Act (ADA).

You are identified as having a disability, and your Disability Placement Program code is DPV, DNV, or DPH who communicates with sign language and has a reading score of 4.0 or below. Below is a series of questions to determine which accommodations you may need to prepare for your upcoming Board of Parole Hearings (BPH) proceedings.

| QUESTIONS | YES | NO | N/A |
|---|---|---|---|
| 1. Would you like to participate in this questionnaire regarding your upcoming BPH hearing and how you will prepare for it? *If yes continue with the interview. If no this concludes the interview* | ◯ | ◯ | ◯ |
| 2. Are you aware of your upcoming BPH hearing? Hearing Date or No Later Than Date: | ◯ | ◯ | ◯ |
| 3. Would you like an *Olson* Review before your BPH hearing or tentative hearing date? *Staff shall explain what an Olson Review is for incarcerated persons who (1) have never been before the BPH or (2) have not had a BPH hearing in the last 5 years. Staff shall inform the incarcerated person they will be officially offered the Olson Review closer to their hearing.* | ◯ | ◯ | ◯ |
| 4. What assistance do you need to prepare for your BPH hearing to include the *Olson* Review? *Staff, please check appropriate boxes.* <u>*Accommodations for Incarcerated Persons with a Vision Code (if applicable)*</u> | | | |
| • Reading | ◯ | ◯ | ◯ |
| • Writing (i.e., scribing) | ◯ | ◯ | ◯ |
| • Staff Assistance | ◯ | ◯ | ◯ |
| • ADA Worker assistance (specify in *Comments* section) | ◯ | ◯ | ◯ |
| • Magnifier (e.g., full sheet, handheld, electronic, etc.) | ◯ | ◯ | ◯ |
| • Documents in an alternate format (e.g., large print, etc.) | ◯ | ◯ | ◯ |
| • Other magnifying machines available in law library (e.g., Merlin, Davinci, JAWS software, etc.) | ◯ | ◯ | ◯ |
| <u>*Accommodations for Deaf Signers (if applicable)*</u> | | | |
| • Sign Language Interpreter (DPH, Primary SLI Only) | ◯ | ◯ | ◯ |

**DISTRIBUTION**      **Original:** ERMS          **Copies:**   ADA Office, Incarcerated Person

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS
**BPH ACCOMMODATION QUESTIONNAIRE CHRONO**
**CDC 128B (Revised 06/2024)**                                                                **Page 2 of 2**

| QUESTIONS | YES | NO | N/A |
|---|:---:|:---:|:---:|
| • Assistive Device(s) (e.g., Personal Sound Amplification Product [PSAP], iPad, etc.,) | ◯ | ◯ | ◯ |
| • Writing (i.e., scribing) | ◯ | ◯ | ◯ |
| *Other Accommodations* | | | |
| • Additional time in the library | ◯ | ◯ | ◯ |
| • Other accommodation(s) not listed <br> *If yes, staff shall document requests in the Comment section.* | ◯ | ◯ | ◯ |
| 5. Do you know how to request additional time in the library to prepare for your BPH hearing? *If no, staff shall explain to the incarcerated person how to request additional time. Inform the incarcerated person they can ask law library staff for assistance with reading and writing, including writing any documents they may want to prepare for the BPH hearing.* | ◯ | ◯ | ◯ |

*The following forms are now available in large print, Braille, and audio at the law library: Notice and Request for Assistance at a Parole Proceeding (BPH Form 1073), Request for Reasonable Accommodations (BPH Form 1074), Petition to Advance Hearing Date (BPH Form 1045-A), Hearing Rights Form (BPH Form 1003), Notice of Hearing Rights (BPH Form 1002), Notice of DPV-DNV Rights, and Notice of Deaf-Signer Rights.*

**Additional Comments:**

_____      _____      _____
INCARCERATED PERSON NAME                CDCR NUMBER        INCARCERATED PERSON SIGNATURE

_____      _____      _____
STAFF NAME AND TITLE (PRINTED)          DATE ISSUED        STAFF SIGNATURE

If the incarcerated person refuses to participate in the interview, check this box ◯

If the incarcerated person refuses to sign, check this box ◯

**DISTRIBUTION**      **Original:** ERMS          **Copies:**     ADA Office, Incarcerated Person

| B.3.3 | Notification to Class Member | Notice of Deaf-Signer Rights for BPH Proceedings |
|-------|------------------------------|--------------------------------------------------|

## NOTICE OF DEAF-SIGNER RIGHTS FOR BPH PROCEEDINGS

You have been identified as DPH (hearing impaired, impacting placement) with a primary method of communication of sign language and difficulty understanding written English (based on a reading score of 4.0 or below.) During your upcoming BPH proceedings, you have the following rights:

- If sign language is your primary method of communication and you have difficulty understanding written English, you have a right to have BPH-related documents translated into sign language.

- BPH hearings are video recorded. After a BPH hearing, you have a right to receive a copy of the video recording so that you can view the sign language interpretation of the hearing. The video will be given to you about 30 days after the hearing. You will also receive a written transcript of the hearing. The official record of the hearing is the written transcript.

- Before a BPH hearing, you have a right to meet with a Sign Language Interpreter (SLI) to have them translate the Comprehensive Risk Assessment (CRA). You have a right to ask the SLI for clarification during the translation. You have a right to a video recording of the translation.

- At any time before or after a BPH hearing, you or your attorney have a right to request that a document related to a BPH proceeding, or a document you may need to prepare for a BPH proceeding, be translated into sign language and video recorded. This includes any documents in your central file, such as a Probation Officer's Report, Rules Violation Reports, or laudatory chronos. You will receive the video recording of the translated document.

- You have a right to receive a video-player device to watch videos of sign language-translated documents privately and independently, as many times as you need. You have a right to be trained on how to use the device, including the fast-forward, pause, and reverse functions. If CDCR loans you a video-player, you have a right to keep the video-player for up to one year before to the BPH hearing and for six months after the hearing or until after-hearing tasks are completed. You have a right to request repairs to the video-player device.

- If you have difficulty viewing the video, or if you find problems with the quality of the playback of the video, you have a right to request help from the ADA Office, or if the video cannot be repaired, to get a new video.

- If your disability affects your ability to read and write, you have a right to request help from ADA Workers, Law Library staff, or your attorney to write documents to prepare for your BPH hearing, or to deal with issues after your hearing.

# Appendix C

| C.1 | Policies and Procedures | Panel Attorney Representation and Training Requirements and Attachments |
|-----|------------------------|------------------------------------------------------------------------|

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**

P.O. Box 4036
Sacramento, CA 95812-4036



# BPH Policies and Procedures
## Compliance with March 20, 2024 *Armstrong* Court Order

### Panel Attorney Representation and Training Requirements

These policies and procedures address the *Armstrong* court's March 20, 2024 order requiring the Board of Parole Hearings (Board) to include additional information in training to panel attorneys who are intended to serve as an accommodation for class members with certain disabilities. Additionally, the order requires the Board to develop policies and procedures that specify additional expectations and requirements for panel attorneys intended to serve as an accommodation for class members identified in the Disability and Effective Communication System (DECS) as DPV (vision impaired, impacting placement), DNV (vision impaired, not impacting placement), and DPH (hearing impaired, impacting placement) requiring a Sign Language Interpreter (SLI) for communication and having difficulty understanding written English based on a reading score of 4.0 or below ("deaf signer").

The Board will conduct new ADA training for panel attorneys that will include all information required under the court order, including:
1. How to ensure class members with vision and hearing disabilities have the accommodations necessary to adequately prepare for and follow up from parole proceedings;
2. A list of all accessible formats and assistive devices available to DPV and DNV class members for reading and writing parole-related documents;
3. Clear instructions for how panel attorneys can obtain assistive devices or documents in accessible formats for DPV and DNV class members, and escalate requests for those devices or formats if a request made by a DPV or DNV client is denied;
4. Emphasis on the importance of allowing additional time to explain and repeat explanations of documents for DPV and deaf signer class members;
5. How to provide DPV, DNV, and deaf signer class members assistance with transcribing documents necessary to prepare for a parole hearing;
6. Instructions for panel attorneys on how to provide DPV, DNV, and deaf signer class members assistance with drafting documents necessary to prepare for a parole hearing and to engage in release planning, including transcribing relapse prevention plans and letters of remorse, gathering contact information or potential sources of support in the community, and reaching out to potential sources of support in the community with a client's permission;
7. The need to allow additional time for meetings with DPH class members who use sign language due to the use of a sign language interpreter;

8.  The need to use sign language interpreters to ensure effective communication of written materials with DPH class members who use sign language, including translation of hearing transcripts and CRAs.

The Board will conduct panel attorney ADA training on June 10, 2024, and June 24, 2024, with additional trainings to be scheduled as necessary. The Board will invite Plaintiffs' counsel to attend all ADA-related trainings conducted by the Board for panel attorneys. The Board will consider all written objections submitted by Plaintiffs' counsel to the Board regarding the training not satisfying the requirements of the court order. If the Board finds the objections to be consistent with the court order, the Board will provide additional training.

Further, the Board is revising the 2023-24 Panel Attorney Program Guide (Guide), a draft of which is attached,[1] to state that attorneys are expected to spend additional time on their representation of clients with disabilities affecting communication, including vision and hearing disabilities, than they spend on clients without such disabilities. (Proposed "D6" in draft Guide.) The Board will also revise the Guide to require attorneys to assist a client with submitting written documents for a parole hearing and developing release plans if, because of a disability, the client is unable to do these tasks on their own or would have difficulty doing so. (Proposed "D13" in draft Guide.) These tasks will include, but not be limited to, soliciting family and friends for offers of support on behalf of a client and transcribing an apology or victim impact letter, transcribing a relapse prevention plan developed by the client, and putting into writing internal and external triggers for relevant factors identified by the client, coping skills and coping mechanisms identified by the client, sources and offers of support in the community identified by the client, and plans for housing and employment or financial support identified by the client. Additionally, the Guide will be revised to require panel attorneys to submit a timely grievance to the Board if the attorney believes the client did not receive reasonable accommodation as required under the ADA during the client's hearing. (Proposed "D14" in draft Guide.) The revised Guide is anticipated to apply to cases accepted by panel attorneys on or after July 1, 2024[2].

The Board will also add an addendum to the Guide specifically for the representation of DPH and DPV clients (Addendum). A draft of the addendum is attached. The addendum will explicitly include a requirement that a panel attorney serving as an accommodation for a DPH or DPV client must hold additional meetings with the client than currently required under the Guide. (Proposed "2" in draft Addendum.) The addendum will also explicitly include a requirement that a panel attorney serving as an accommodation for a DPH or DPV client must spend significantly more time on their representation of the client than currently required under the Guide for a client without a disability affecting communication. (Proposed "1" in draft Addendum.) The addendum to the Guide will also

---

[1] The attached draft of the revised Guide highlights relevant revisions yellow.
[2] A Budget Change Proposal regarding panel attorney pay is pending and was submitted to, if approved, change the flat rate for panel attorneys from $945 to $1005 per case. This updated fee would go into place for cases accepted by panel attorneys after July 1, 2024.

explicitly include a requirement that a panel attorney must allow twice as much time for meetings with a DPH client who uses sign language as their primary means of communication, due to the time needed for the translation process. (Proposed "3" in draft Addendum.) The addendum clarifies this only applies to cases where a sign language interpreter is necessary for effective communication between the attorney and the client.

All of the attorney requirements identified above will be included in the upcoming ADA trainings conducted by the Board.

Furthermore, the addendum will specify that panel attorneys will receive a flat rate for representing DPV and DPH clients that is twice the amount paid for representing other clients. This additional pay will help ensure panel attorneys comply with the additional expectations that apply when representing a DPV or DPH client.

The Board will implement the following measures to supervise panel attorney compliance with all of the additional requirements identified above:

1. Additional information required of the attorney on the invoice applicable to representation of a client who is not DPV or DPH:

   a. The current invoice includes boxes for panel attorneys to confirm they held three attorney visits with their client prior to a scheduled parole hearing, as well as the length of each visit. The invoice will be revised to include additional boxes for the panel attorney to indicate whether they held more than three meetings with their client prior to a scheduled parole hearing, as well as the length of each additional meeting.
   b. For a client with a disability affecting communication, the invoice will include a box requiring the attorney to explicitly indicate they were aware of their client's disability and accommodated the disability as required under the Guide.

2. Additional information required of the attorney on the invoice applicable to representation of a client who is DPV or DPH:

   a. The invoice will include boxes for the panel attorney to indicate at least four attorney meetings were held with their client prior to a scheduled parole hearing, as well as a fifth or sixth meeting if the attorney or client found those meetings necessary, and the length of each meeting.
   b. The invoice will include a box requiring the attorney to explicitly indicate they spent significantly more time on their representation of the DPV or DPH client than currently required under the Guide for representation of a client without a disability affecting communication.
   c. In the case of a DPH client who uses sign language as their primary means of communication and for whom a sign language interpreter was needed to achieve effective communication between the attorney and the client, the invoice will include a box requiring the attorney to explicitly indicate they

allowed twice as much time for meetings with the client due to the time needed for the translation process.

3. Under current processes, the Board reviews attorney source document entries two weeks prior to a hearing to seek timely completion of source document entries by attorneys. Once the proposed addendum for panel attorney representation of DPV and DPH clients takes effect, the Board will also check that at least a fourth attorney meeting has taken place with these clients as part of this process, and conduct attorney outreach as necessary to seek compliance with this attorney expectation.

4. The Board will establish a process to check, within 60 days of an attorney's appointment to represent a client who is DPV, DNV, or DPH, that the attorney had at least met with the client once, and the Board will conduct outreach as necessary to seek compliance with attorney expectations.

**Attachments**

1. DRAFT Panel Attorney Program Guide (Rev. 6/3/24), with significant or relevant revisions to current Guide highlighted yellow.
2. DRAFT Panel Attorney Program Guide Addendum (Rev. 6/3/24).

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

| Purpose | The purpose of this program is to comply with California Code of Regulations Title 15, section 2256, which requires the Board of Parole Hearings (Board) to provide incarcerated individuals with attorney representation at state expense if they cannot afford to retain a private attorney for a hearing before the Board.<br><br>Panel attorneys serve at the discretion of the Board; they are not employees of the Board.<br><br>Upon approval as an active attorney by the Board, panel attorneys shall provide competent and professional legal services to their client. The Panel Attorney Program is designed to provide, on average, up to 13 clients who will be scheduled for a parole hearing during a one-week period. |
|---|---|
| Attorney Panels | The Board has grouped the 33 existing adult prisons located throughout California including incarcerated individuals assigned to the Sacramento Control Office (SACCO) into 16 attorney panels based on their geographic proximity (i.e., the prisons in each panel are generally within a one-hour drive of each other). The 16 attorney panels are identified on pages 9 and 10.<br><br>Within each panel, two lists of attorneys will be maintained by the Board – a list of "active" attorneys and a list of "standby" attorneys. The active attorney list is for attorneys who are currently being assigned clients. The standby list is for attorneys who have applied to be on the active attorney list and who meet the minimum qualifications of a standby panel attorney, but who are not currently being assigned clients because the panel is full. There may be instances where a standby attorney is offered an assignment on that panel.<br><br>The Board shall periodically re-calculate the number of active attorneys needed for the panels based on the average number of hearings scheduled for each panel. The Board will adjust the number of active attorneys for each panel accordingly. If the average number of scheduled hearings decreases such that fewer active attorneys are needed for a particular panel, an active attorney will be moved to the standby list. If additional panel attorneys are needed, an attorney from the standby list will be moved to the active list.<br><br>Attorneys may apply for as many panels as they choose, but will only be approved to serve on one active panel at a time; with some limited exceptions at the discretion of the Board. An attorney may at any time request to be removed or added to another panel by writing the Board. An attorney on a standby list may at any time be moved to the active list. |

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

| | |
|---|---|
| **Active Panel Attorney Minimum Qualifications** | Active attorneys must meet the following minimum qualifications at all times:<br><br>A1. Maintain a current and active license to practice law in California;<br>A2. Be in good standing with the California State Bar, including compliance with Rule 9.9.5 of the California Rules of Court;<br>A3. Maintain malpractice insurance;<br>A4. Have documentation of a symptom-free tuberculin skin test and evaluation within the past year;<br>A5. Be able to pass the security screening necessary for entrance into each of the prisons on the attorney's panel;<br>A6. Meet the dress code requirements for entrance into each prison during every visit;<br>A7. Sign and submit the Panel Attorney Information and Certification Form annually (*see* page 11);<br>A8. Open and maintain an account with the Board's Disability and Effective Communication System (DECS). DECS is a comprehensive repository of information related to each incarcerated individual's disabilities and effective communication needs;<br>A9. Acquire and maintain (at the attorney's expense) all hardware/software necessary to access DECS;<br>A10. Acquire and maintain (at the attorney's expense) webcam capabilities for video visits/hearings;<br>A11. Open and maintain a Blackberry Workspaces (previously known as "WatchDox") account (or equivalent secure, file-sharing software used by the Board) by registering an email address for access to electronic hearing files; panel attorneys are to provide (at their own expense) all hardware/software necessary to maintain access to the secure, file-sharing software used by the Board, and<br>A12. Have recent experience representing incarcerated individuals in the parole suitability hearing process or have observed at least three (3) parole hearings before accepting an assignment to represent clients as an active panel attorney. |
| **Standby Panel Attorney Minimum Qualifications** | Standby attorneys must meet the following minimum qualifications at all times:<br><br>B1.  Maintain a current and active license to practice law in California; and<br>B2.  Be in good standing with the California State Bar, including compliance with Rule 9.9.5 of the California Rules of Court.<br><br>Standby attorneys who are approved to move to an active panel attorney list will have one month to demonstrate compliance with the active panel attorney minimum qualifications listed above and complete the required training. |
| **Panel Attorney** | C1. In addition to the minimum qualifications for active attorneys listed above, |

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

| | |
|---|---|
| **Training Requirements** | active panel attorneys must complete all required training session(s) conducted by the Board or the Board's designee. |
| **Panel Attorney Expectations** | The following are minimum expectations for adequately representing a client as an active panel attorney:<br><br>D1. The panel attorney is required to conduct a minimum of three (3) legal visits with their client prior to their scheduled parole hearing date,[1] and comply with the timing requirements listed below. The panel attorney should make every effort to conduct the first or second legal visit in person, and any other visit(s) may be conducted in person, via confidential legal telephone call, or via confidential videoconference. The Board will make a client's central file available to the panel attorney at the time of case assignment, so the panel attorney has access prior to any and all client meetings;<br><br>D2. The panel attorney shall review their client's central file and have an initial legal visit with their client within 30 calendar days of accepting the case; the average length of the initial legal visit shall be one to two hours. If the client is expected to receive a Comprehensive Risk Assessment (CRA) prior to their scheduled hearing, the attorney shall prepare their client for the CRA interview by explaining what a CRA is, its purpose, its importance, and how it is used in the parole hearing process; explaining the process, how the interview will be conducted, and topics that will likely be covered; discussing any prior risk assessments or psychological evaluations; and preparing the client to address potential topics of discussion during the interview;<br><br>D3. The panel attorney shall conduct a second legal visit with each client either (1) at least 60 days prior to the client's scheduled hearing date, or (2) within two weeks of the Comprehensive Risk Assessment (CRA) being finalized under section 2240 of title 15 of the California Code of Regulations, whichever date is later; the average length of the second legal visit shall be one to two hours; in the unusual event a panel attorney is assigned a case less than 60 days before the hearing, the panel attorney shall conduct this second legal visit before the hearing;<br><br>D4. The panel attorney shall have a third legal visit with their client prior to the scheduled hearing date; the length of this legal visit and the timing of the visit shall be at the panel attorney's discretion; in the unusual event that a panel attorney is assigned a case less than 60 days before the hearing, the panel attorney shall review the client's central file and conduct a legal visit before the hearing;<br><br>D5. If the client/attorney submit a pre-hearing action to the BPH, the panel attorney is required to meet with their client at least once prior to the pre-hearing action submission and review their client's central file;<br><br>D6. Panel attorneys must accommodate a client with a disability affecting communication to ensure the client is able to participate in any parole proceeding to the best of their abilities. Relevant disabilities include physical |

---

[1] As indicated in D.7 below and the accompanying Addendum to this Guide, panel attorneys representing clients with certain disabilities are required to conduct a minimum of four (4) legal visits with their client prior to their scheduled parole hearing date.

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

Case 4:94-cv-02307-CW    Document 3596    Filed 06/03/24    Page 130 of 142
**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

disabilities (such as vision and hearing disabilities), developmental disabilities, learning disabilities, and mental health needs. Time spent accommodating a client's disability shall not replace, but shall be in addition to, time the attorney would have otherwise spent on their representation of the client. Consistent with the panel attorney's professional and ethical responsibilities to their client, and depending on the nature and severity of the client's disability, the attorney may need to conduct additional legal visits with the client, longer legal visits with the client, spend time reading and rereading parole-related documents with or to the client, and spend time putting into writing parole-related material for the client. More information on expectations for putting parole-related material into writing for a client can be found in D12. The panel attorney shall attest on the Panel Attorney Invoice this provision was satisfied for applicable cases;

D7. Additional expectations and requirements apply for clients identified in DECS as DPV (vision disability, impacting placement) or DPH (hearing disability, impacting placement);

D8. The panel attorney must be familiar with each client's rights under the Americans with Disabilities Act (ADA) and their needs for reasonable accommodations under the ADA by reviewing DECS in advance of each legal visit;

D9. Panel attorneys shall timely enter Source Documents with detailed notes of the client's ADA accommodation needs and use of accommodations to achieve effective communication. These documents are required to be uploaded into the Disability and Effective Communication System, or DECS, no later than one week following any meeting with the client.

D10. If the panel attorney's client is identified in DECS as needing a sign language interpreter, the panel attorney shall use a sign language interpreter when communicating with the client during all legal visits and at the hearing; the panel attorney shall notify the Scheduling Unit at BPHLiferAnalyst@cdcr.ca.gov to make arrangements to secure a sign language interpreter if their client is in need of a sign language interpreter as soon possible to arrange for an interpreter at all legal visits;

D11. The panel attorney shall use the Board's telephonic foreign language interpreter service to communicate with a client during all legal visits when needed to establish effective communication;

D12. The panel attorney shall not rely on written communications with a client (a) who is under CDCR's Developmental Disability Program with a designation in DECS as DD1, DD2, or DD3, (b) under CDCR's Mental Health Services Delivery System at the Enhanced Outpatient Program, Mental Health Crisis Bed, or Intermediate Care Facility level of care; (c) in a licensed Psychiatric Inpatient Program under the care of CDCR or the Department of State Hospitals; (d) designated as having a learning disability or vision impairment in DECS, or (e) has a reading score of 4.0 or lower;

D13. Consistent with the panel attorney's professional and ethical responsibilities to their client, the panel attorney shall assist their client in submitting written documents for a parole hearing and developing release plans if, as a result

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

Case 4:94-cv-02307-CW    Document 3596    Filed 06/03/24    Page 131 of 142
**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

of a disability, the client is unable to do these tasks on their own or would have difficulty doing so. Depending on the client's disability, and with the client's approval, this may include, but is not necessarily limited to, soliciting family and friends for offers of support on behalf of the client and transcribing an apology or victim impact letter. This may also involve transcribing a relapse prevention plan developed by the client, which may include putting into writing internal and external triggers for relevant risk factors identified by the client and coping skills and coping mechanisms identified by the client. Further, this may include putting into writing sources and offers of support in the community identified by the client and plans for housing and employment or financial support identified by the client. Relevant disabilities may include physical disabilities, developmental disabilities, learning disabilities, and mental health needs.

D14. The panel attorney shall raise appropriate and timely objections through the BPH ADA Compliance Unit prior to a hearing or to the hearing panel at the time of the hearing regarding the client's need for reasonable accommodation under the ADA; the panel attorney shall submit a timely grievance to the Board if the attorney believes the client did not receive reasonable accommodation as required under the ADA during the client's hearing;

D15. If the panel attorney encounters logistical problems meeting and communicating with a client or obtaining access to relevant documents, including the CRA, the panel attorney shall immediately notify Board staff at BPHLiferAnalyst@cdcr.ca.gov and shall make all reasonable efforts to resolve the problem in advance of the hearing;

D16. The panel attorney shall physically appear in person with their client for all scheduled hearings unless any of the exceptions in D17 apply, and arrive a minimum of thirty minutes to one hour prior to the hearing, allow sufficient time for parking, entry into the institution, walking to the hearing room; and, making prearrangements with the institution to meet with your client prior to the start time of the hearing, this provision does not apply if the panel attorney's client knowingly, intelligently and voluntarily waives the physical appearance of the panel attorney;

D17. For all hearings, the panel attorney is required to be physically present with the incarcerated individual at the institution unless any of the following apply: (1) the incarcerated individual waives physical presence of the attorney, (2) the incarcerated individual waives their own right to attend the hearing, (3) the incarcerated individual refuses to attend the hearing, or (4) circumstances beyond the control of the incarcerated individual's attorney. Panel attorneys must be physically present with their client for in-person hearings. Per the *Armstrong* Remedial Plan II, the following incarcerated individuals are not allowed to waive the physical presence of their attorney:

- All incarcerated individuals presently receiving treatment at CDCR's Mental Health Services Delivery System at the Enhanced Outpatient Program, Mental Health Crisis Bed, Intermediate Care Facility, or

Case 4:94-cv-02307-CW    Document 3596    Filed 06/03/24    Page 132 of 142
**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

Acute Care Facility levels of care;

- All incarcerated individuals identified by CDCR as part of the department's Developmental Disability Program; and
- All incarcerated individuals with a learning disability, including incarcerated individuals with a reading score of 4.0 or below.

D18. Per BPH RN 21-05E Proceedings Conducted in Person and by Videoconference Emergency Regulations, the Board shall determine whether a proceeding is conducted in person or by video conference. (Cal. Code of Regs, tit. 15, §§ 2050-2063.) For hearings that the board has pre-determined to require an in-person hearing under section 2054, the panel attorney, acting on behalf of the incarcerated individual, may submit a written request for a videoconference hearing at least 100 days prior to the hearing. The request shall explain why an in-person hearing is not necessary and affirm that, to the best knowledge of the panel attorney, an in-person proceeding is not necessary for the hearing officers to establish effective communication with the incarcerated individual. (Cal. Code of Regs, tit. 15, § 2055.) If the Board approves the request, the hearing will be conducted by videoconference, and no participants will attend the hearing in person with the hearing panel. The panel attorney is still required to be physically present with the incarcerated individual at the institution for the hearing unless any of the exceptions in D17 apply;

D19. The panel attorney shall remain available for the entire hearing day;

D20. If there is an emergency that delays or prevents a panel attorney from appearing timely for a hearing, the panel attorney shall immediately notify Board staff via email at BPHLiferAnalyst@cdcr.ca.gov or by phone at (916) 445-4072;

D21. The panel attorney shall have valid state or federal government-issued identification and a current California State Bar card upon arrival to the institution; if the panel attorney experiences problems entering an institution on the day of a hearing, the attorney shall immediately notify Board staff via email at BPHLiferAnalyst@cdcr.ca.gov or by phone at (916) 445-4072;

D22. The panel attorney may be assigned a client currently housed outside a CDCR institution, (example: county jail, medical or out-of-state facility, etc.) but scheduled for a parole hearing.  The panel attorney is required to contact the client and provide the client information regarding the parole hearing process and options for moving forward with the scheduled hearing. The Board may ask the panel attorney for an attestation of such communication for invoicing confirmation.

D23. If, after the client's scheduled hearing, the client's case is referred for en banc review by the full Board at a monthly executive Board meeting, the panel attorney shall provide a written or oral statement on behalf of their client at such proceedings, including appearance at those proceedings, whether in person or via telephone or videoconference.

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

| Additional Panel Attorney Expectations | The following are additional expectations for panel attorneys:<br><br>E1. The panel attorney shall behave in a competent and professional manner at all times with Board staff, institution staff, and all hearing participants;<br>E2. The panel attorney shall wear professional attire at parole hearings;<br>E3. The email address listed on the Panel Attorney Information and Certification Form (page 11) is the email of record for the attorney that will be used for all written communications from the Board, including panel and client assignments. It is the panel attorney's responsibility to notify the Board of a change in the panel attorney's email address;<br>E4. The panel attorney shall respond to an offer of a panel assignment from the Board within three (3) business days; if the panel attorney declines the assignment or fails to respond within three (3) business days, the Board will consider it a request for a voluntary suspension (*see* below).<br>E5. The panel attorney shall cooperate with the Board or its designee to verify compliance with panel attorney minimum qualifications, expectations, and training requirements;<br>E6. The panel attorney shall not permit another attorney, including other panel attorneys, to represent a client assigned by the Board to the panel attorney;<br>E7. The panel attorney shall promptly notify the Board if the panel attorney is arrested, charged, or convicted of a misdemeanor or felony in any jurisdiction, or a change in active status with California State Bar occurs;<br>E8. The panel attorney shall submit invoices as required for all clients assigned by the Board. |
|---|---|
| Confidentiality Agreement | A panel attorney is legally and ethically bound to use the information contained in any documents provided by the Board for the sole purpose of representing their client through the parole suitability hearing process. A panel attorney is prohibited from distributing the documents or disclosing their contents to anyone who is not directly involved in representing the panel attorney's client in the parole suitability hearing process. Failure to protect the confidentiality of documents received from the Board will result in the panel attorney being referred to the Executive Officer to determine whether the panel attorney will continue to be assigned cases as an active panel attorney. |
| Referrals to the Executive Officer | Failure to meet any of the minimum panel attorney qualifications, expectations, or training requirements shall result in referral to the Executive Officer to determine whether the panel attorney will continue to be assigned cases.<br><br>The Board and/or its designee may collect data concerning the outcome of scheduled hearings, use surveys, interview incarcerated individuals and others, observe hearings, and review hearing transcripts to determine the level and quality of representation provided by a panel attorney.<br><br>A panel attorney who is (a) referred to the California State Bar for alleged |

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

| | |
|---|---|
| | misconduct by any state or federal judge or the Board's Chief Counsel, or (b) arrested, charged or convicted of a misdemeanor or felony shall be referred to the Executive Officer to determine whether the panel attorney will continue to be assigned cases. |
| **Voluntary Suspension** | A voluntary suspension is a request by an active panel attorney to not be assigned cases for a period of one (1) to four (4) weeks. A panel attorney may request a voluntary suspension no more than three (3) times during a calendar year (January 1 through December 31). Requests for a voluntary suspension from a panel attorney must be submitted in writing, and include a specific start and end date. In addition, if a panel attorney declines the assignment of a panel or fails to respond within three (3) business days to a panel assignment, the Board will consider it a request for a one-week voluntary suspension (*see* E4 above). |
| **Payment** | All panel attorney payments must be requested using the Board's Panel Attorney Invoice, available on the Board's website at https://www.cdcr.ca.gov/bph/attorney-overview/ (*see* BPH form 1076). Panel attorneys shall scan and submit one invoice per assigned client via email to BPHAccountingLiaison@cdcr.ca.gov.<br><br>Incomplete or disputed invoices will prompt communication from Accounting to resolve the invoice issue and may delay payment processing.<br><br>Panel attorneys shall certify the services they rendered to each assigned client by placing their initials next to the appropriate "Description of Services Performed." Panel attorneys shall also identify dates of completion and duration of interviews.<br><br>Panel attorneys will be paid a flat rate of $XXXX for each client assigned by the Board and accepted by the panel attorney on or after July 1, 2024 whose case they complete. For all hearings assigned by the Board and accepted by the panel attorney prior to or on June 30, 2024, panel attorneys will be paid a flat rate of $945 for each client assigned to them whose case they complete.<br><br>A case is completed when a scheduled hearing results in a waiver, stipulation, postponement, continuance, grant of parole, or denial of parole, and, when necessary, the full Board reviews the case en banc at a monthly executive Board meeting, if applicable.<br><br>If the client submits a pre-hearing action and the Board approves it, in order for the panel attorney to receive full payment, they must attest they met with their client at least once prior to the pre-hearing action and reviewed their client's central file.<br><br>Panel attorneys who are unable to represent their assigned client through completion of the case may receive a pro-rated fee for services at the discretion of the Executive Officer or designee.  The pro-rated amounts are as such: |

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

|  | <ul><li>$25 for Assignment</li><li>$175 for Central-File Review</li></ul>Invoices shall not be submitted until the client's case is completed.<br><br>In order to ensure timely payment, invoices shall be submitted within 30 days of completing all hearing-related work for a client.  Invoices are processed for payment by the State within 45 days from the date the invoice is received provided the invoice is undisputed. |
|---|---|

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

## Panel Listing with Cities

**Panel #1**

- Pelican Bay State Prison (PBSP): Crescent City, CA

**Panel #2**

- High Desert State Prison (HDSP): Susanville, CA

**Panel #3**

- California Medical Facility (CMF): Vacaville, CA
- California State Prison, Solano (SOL): Vacaville, CA

**Panel #4**

- San Quentin State Prison (SQ): San Quentin, CA

**Panel #5**

- Folsom State Prison (FSP): Represa, CA
- California State Prison, Sacramento (SAC): Represa, CA
- Mule Creek State Prison (MCSP): Ione, CA
- Sacramento Central Office (SACCO): Rancho Cordova, CA

**Panel #6**

- California Health Care Facility (CHCF): Stockton, CA
- Sierra Conservation Center (SCC): Jamestown, CA

**Panel #7**

- Valley State Prison (VSP): Chowchilla, CA
- Central California Women's Facility (CCWF): Chowchilla, CA

**Panel #8**

- Correctional Training Facility (CTF): Soledad, CA
- Salinas Valley State Prison (SVSP): Soledad, CA

**Panel #9**
- Avenal State Prison (ASP): Avenal, CA
- California Substance Abuse Treatment Facility (SATF): Corcoran, CA
- California State Prison, Corcoran (COR): Corcoran, CA
- Pleasant Valley State Prison (PVSP): Coalinga, CA

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

**Panel #10**

- North Kern State Prison (NKSP): Delano, CA
- Kern Valley State Prison (KVSP): Delano, CA
- Wasco State Prison (WSP): Wasco, CA
- California Correctional Institution (CCI): Tehachapi, CA

**Panel #11**

- California Men's Colony (CMC): San Luis Obispo, CA

**Panel #12**

- California State Prison, Los Angeles County (LAC): Lancaster, CA

**Panel #13**

- California Institution for Men (CIM): Chino, CA
- California Institution for Women (CIW): Corona, CA
- California Rehabilitation Center (CRC): Norco, CA

**Panel #14**

- Ironwood State Prison (ISP): Blythe, CA
- Chuckawalla Valley State Prison (CVSP): Blythe, CA

**Panel #15**

- Calipatria State Prison (CAL): Calipatria, CA
- California State Prison, Centinela (CEN): Imperial, CA

**Panel #16**

- Richard J. Donovan Correctional Facility (RJD): San Diego, CA

**This is a draft document that is being shared with stakeholders and may be edited and updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**

**Panel Attorney Information and Certification Form**

PLEASE TYPE OR PRINT LEGIBLY

I agree to all of the terms described in the Panel Attorney Appointment Program Guide (consisting of 9 pages) and the Addendum on Representing DPV and DPH Clients (consisting of 2 pages), as well as the reimbursement rates described therein. I acknowledge the Board of Parole Hearings has not made an offer of employment or a guarantee of appointment and failure to meet or maintain the terms described in the Program may result in removal from one or all panels.

_____                    _____

Printed Name                                                          CA State Bar Number

_____                    _____

Signature                                                               Date

Driver's License Number                                          Date of Birth

_____                    _____

Office Telephone Number                                        Cellular Number

_____

E-mail Address

Business Address (available to clients and the Board of Parole Hearings):

_____

_____

_____

Please indicate below which panel groupings you are interested in applying:

| Panel # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
| *Check all that apply* | | | | | | | | | | | | | | | | |

*Note: If currently active on a panel and do not wish to make any changes, please leave above blank.*

12

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**
**Addendum on Representing DPV and DPH Clients**

| | |
|---|---|
| **Additional Panel Attorney Expectations** | On March 20, 2024, as part of the *Armstrong v. Newsom* class action lawsuit, the United States District Court, Northern District of California issued an Order for Further Parole-Related Remedial Plan, which is attached to the Panel Attorney Program Guide for the Parole Suitability Hearing Process (Guide). (*Armstrong v. Newsom* (N.D. Cal. March 20, 2024) No. 94-cv-02307-CW, Doc. 3584.) The order included the following additional expectations for adequately representing a client with a vision disability who is identified in DECS as DPV (vision disability, impacting placement) or a hearing disability who is identified in DECS as DPH (hearing disability, impacting placement) (*see* the list of DECS codes and meanings attached to the Guide): <br><br> 1. The panel attorney must spend significantly more time on their representation of a client identified in DECS as DPV or DPH than is required under the 2023-24 Guide for a client without a disability affecting communication, consistent with their professional and ethical duties; the panel attorney shall attest on the Panel Attorney Invoice for DPV or DPH clients this provision was satisfied; <br> 2. The panel attorney must conduct additional legal visits with a client identified in DECS as DPV or DPH prior to their scheduled parole hearing date than is required under the 2023-24 Guide for a client not so identified; the Panel Attorney Invoice for DPV or DPH clients must indicate that the panel attorney conducted, or made reasonable attempts to so conduct, at least four (4) legal visits with their client who was DPV or DPH; <br> 3. The panel attorney must allow twice as much time for legal visits, compared to legal visits with other clients, with a client identified in DECS as DPH if they use sign language as a primary method of communication, and a sign language interpreter is necessary for effective communication between the attorney and the client; this allows extra time for the translation process; the panel attorney shall attest on the Panel Attorney Invoice this provision was satisfied for applicable cases; <br> 4. The panel attorney must use a sign language interpreter to ensure effective communication of written material, such as hearing transcripts and Comprehensive Risk Assessments, to a client identified in DECS as DPH and who uses sign language as a primary method of communication, if a sign language interpreter is necessary for effective communication between the attorney and the client; <br> 5. The panel attorney must allow additional time to explain and repeat explanations of documents for a client 1) identified in DECS as DPV; or 2) identified in DECS as DPH who uses sign language as a primary method of communication and has a reading score of 4.0 or below (sometimes referred to as a "deaf signer"); |
| **Payment** | All panel attorney payments for representation of DPV or DPH clients must be |

1

**This is a draft document that is being shared with stakeholder and may be edited an updated.  This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**
**Addendum on Representing DPV and DPH Clients**

requested using the Board's Panel Attorney Invoice for DPV or DPH clients, available on the Board's website at https://www.cdcr.ca.gov/bph/attorney-overview/ (*see* BPH form 1076). Panel attorneys shall scan and submit one invoice per assigned client via email to BPHAccountingLiaison@cdcr.ca.gov.

Incomplete or disputed invoices will prompt communication from Accounting to resolve the invoice issue and may delay payment processing.

Panel attorneys shall certify the services they rendered to each assigned client by placing their initials next to the appropriate "Description of Services Performed." Panel attorneys shall also identify dates of completion and duration of interviews.

Panel attorneys will be paid a flat rate of $XXXX for each client identified in DECS as DPV or DPH who is assigned by the Board and accepted by panel attorney on or after July 1, 2024, whose case they complete.

For all hearings assigned by the Board and accepted by the panel attorney prior to or on June 30, 2024, panel attorneys will be paid a flat rate of $ 945 for each client assigned to them whose case they complete.

A case is completed when a scheduled hearing results in a waiver, stipulation, postponement, continuance, grant of parole, or denial of parole, and, when necessary, the full Board reviews the case en banc at a monthly executive board meeting, if applicable.

If the client submits a pre-hearing action and the BPH approves, in order for the panel attorney to receive full payment, they must attest they met with their client at least once prior to the pre-hearing action and reviewed their client's central file.

Panel attorneys who are unable to represent their assigned client through completion of the case may receive a pro-rated fee for services at the discretion of the Executive Officer or designee. The pro-rated amounts are as such:
- $25 for Assignment
- $175 for Central-File Review

On occasion the original assigned attorney is no longer available to represent their client at a monthly executive board for en banc consideration. In these cases, the Board will hire another attorney and the maximum payment for representation is $300 per case.

Invoices shall not be submitted until the client's case is completed.

Rev. 6/3/24
**This is a draft document that is being shared with stakeholder and may be edited an updated. This document is not to be released to the public.**

**Board of Parole Hearings**
**Panel Attorney Program Guide for the Parole Suitability Hearing Process**
**Addendum on Representing DPV and DPH Clients**

| | In order to ensure timely payment, invoices shall be submitted within 30 days of completing all hearing-related work for a client. Invoices are processed for payment by the State within 45 days from the date the invoice is received provided the invoice is undisputed. |
|---|---|

Rev. 6/3/24
**This is a draft document that is being shared with stakeholder and may be edited an updated.  This document is not to be released to the public.**

# CERTIFICATE OF SERVICE

Case Name:    **ARMSTRONG, JOHN v. NEWSOM, et al.,**    No.    **4:94-cv-02307-CW**

I hereby certify that on <u>June 3, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' NOTICE OF COMPLIANCE WITH ORDER FOR ADDITIONAL REMEDIAL MEASURES [ECF NOS. 3583, 3584], APPENDIX A, APPENDIX B, APPENDIX C**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>June 3, 2024</u>, at Los Angeles, California.

|  |  |
|---|---|
| J. Sissov | */s/ J. Sissov* |
| Declarant | Signature |

CF1997CS0003