1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

JOHN ARMSTRONG, et al.,

Plaintiffs,

v.

GAVIN C. NEWSOM, et al.,

Defendants.

Case No. 94-cv-02307 CW

**ORDER SUSTAINING IN PART OBJECTIONS TO FURTHER PAROLE-RELATED REMEDIAL PLAN**

(Re: Dkt. No. 3600)

17
18
19
20
21
22
23
24
25
26
27

On March 20, 2024, the Court granted in part and denied in part Plaintiffs' motion to enforce the Revised Permanent Injunction. Docket No. 3583. On the same date, the Court ordered Defendants to develop a plan containing specific further remedial measures designed to ensure that they come into compliance with the Revised Permanent Injunction and the Americans with Disabilities Act (ADA) in the context of parole proceedings and to implement the plan within seventy-five days, after meeting and conferring with Plaintiffs. *See* Docket No. 3584. The Court permitted Plaintiffs to file objections to any disputed aspect of the plan if the parties were not able to resolve their disagreements during the meet-and-confer process. On June 3, 2024, Defendants filed a notice stating that they developed and implemented a plan that they claim contains the remedial measures required by the Court's order of March 20, 2024 (hereinafter, further remedial plan). Docket No. 3596.

28

Now before the Court are Plaintiffs' objections to the further remedial plan. Docket No. 3600. Defendants filed a response to the objections, Docket No. 3607, and Plaintiffs filed a reply, Docket No. 3608. For the reasons set forth below, the Court sustains Plaintiffs' objections in part and overrules them in part.

## I. Assistance with Writing Tasks

In its order of March 20, 2024, the Court denied without prejudice Plaintiffs' request for an order "requiring Defendants to enact policies and procedures to ensure that there are sufficient staff at each prison who are required to provide parole-related writing assistance to class members with vision and hearing impairments, such as staff assistants or correctional counselors." *See* Docket No. 3583 at 32-33. The Court did so because, based on the evidence that Plaintiffs presented, the Court could not "find that class members with vision and hearing disabilities do not have sufficient assistance to draft documents for parole proceedings because of Defendants' current policies and procedures regarding staffing." *See id.* at 33. Specifically, the Court found that:

> Plaintiffs filed class member declarations to support the staffing-related directive they request, but the vast majority of them do not support a finding that class members were prevented from, or had difficulty completing, writing parole-related documents because there was not enough staff available to assist them or because available staff refused to assist them. Class members declared, instead, that they were unable to write parole-related documents on their own and they did not feel comfortable asking staff (or other prisoners) for assistance. *See* Jackson Decl., Ex. 52 ¶¶ 32-38; Ex. 55 ¶ 16; Ex. 66 ¶ 26; Ex. 37 ¶¶ 39-42. Other class members declared that they were unable to draft parole-related documents but did not mention that staff-related issues played a role in their inability to do so. *See* Jackson Decl., Ex. 50 ¶¶ 21-25; Ex. 63 ¶ 59; Ex. 32 ¶¶ 21-24.

*See id.* Because the declarations that Plaintiffs submitted collectively did not show that class members were unable to complete or had difficulty completing writing tasks due to the lack of sufficient staff that could assist them with those tasks, the Court concluded that ordering Defendants to change their staffing policies and procedures was not warranted.

Plaintiffs object to the further remedial plan on the ground that it reduces the writing assistance that is available for class members with hearing and vision disabilities. Plaintiffs

contend that, prior to the Court's March 20, 2024, order, Defendants had authorized voluntary overtime for correctional counselors to assist class members with preparations for parole hearings. The further remedial plan does not include that voluntary overtime. Plaintiffs argue that the remaining sources of writing assistance that are currently available to class members with hearing and vision disabilities are insufficient because, for example, libraries are open during limited hours and panel attorneys assigned to assist class members with parole tasks are not appointed to represent class members until approximately four months before the scheduled parole suitability hearing. Docket No. 3600 at 3. Plaintiffs request that the Court order Defendants to amend the further remedial plan "to direct Correctional Counselors, or other similar personnel such as social workers and TCMP benefits workers, to provide writing assistance to parole candidates as needed." Docket No. 3608 at 3.

The Court finds that Plaintiffs' objection is not well-taken. It is undisputed that Defendants will no longer provide voluntary overtime for correctional counselors to assist class members with writing tasks related to parole preparation. But that action by Defendants is not inconsistent with the Court's orders of March 20, 2024, because those orders did not require Defendants to take (or to not take) any action with respect to their staffing policies in the context of providing writing assistance to class members. Plaintiffs have not shown that the removal of voluntary overtime for correctional counselors automatically renders the remaining writing resources (librarians, ADA workers, panel attorneys, and assistive devices) insufficient to permit class members with hearing and vision disabilities to complete parole-related writing tasks.

The arguments that Plaintiffs make in support of the staffing directive they request are not supported by evidence or are unpersuasive. Plaintiffs argue, for example, that library assistance is insufficient because library hours are limited, but they do not point to any evidence indicating that class members with hearing and vision disabilities were prevented from or have had difficulty completing writing tasks because library hours are limited. Plaintiffs also argue that ADA workers are not an adequate source of writing assistance for class members with hearing and vision disabilities because ADA workers are prisoners, and relying on other prisoners for writing assistance violates class members' privacy. However, Defendants point to evidence showing

ADA workers can assist a class member only if the class member consents to receiving assistance from an ADA worker. *See* Dawn Lorey Decl. ¶ 16. Plaintiffs' only response to that evidence is that, despite their privacy concerns, class members with hearing and vision disabilities are effectively required to rely on ADA workers for assistance to complete writing tasks because other sources of writing assistance are inadequate. Docket No. 3608 at 2. But Plaintiffs point to no evidence showing that class members with vision and hearing disabilities rely on ADA workers for writing assistance because other sources of writing assistance are not adequate. Plaintiffs point to the same declarations that the Court reviewed in March 2024, but those declarations do not indicate that class members relied or rely on other prisoners for writing assistance because other sources of writing assistance are insufficient.

Plaintiffs also contend that deaf class members who rely on sign language to communicate cannot complete writing tasks with the assistance of library staff or ADA workers because Defendants do not provide them with a sign language interpreter to facilitate the communications between those class members and library staff and ADA workers. However, Plaintiffs do not explain how the order they request, which would require Defendants "to direct Correctional Counselors, or other similar personnel such as social workers and TCMP benefits workers, to provide writing assistance to parole candidates as needed," Docket No. 3608 at 3, would solve that problem, assuming that it exists. Plaintiffs do not request an order requiring Defendants to provide sign language interpreters whenever a deaf class member who relies on sign language requires writing assistance. *See generally* Proposed Order, Docket No. 3600-2 at 6-7.

Finally, Plaintiffs argue that the writing assistance that panel attorneys provide is insufficient because panel attorneys are not available to class members with hearing and vision disabilities at least one year before their parole suitability hearings and at least six months thereafter; instead, panel attorneys are appointed approximately four months before each class member's parole suitability hearing and the appointment ends when parole is granted or denied or when the parole hearing is postponed or waived. The Court is not persuaded that the current appointment time period for panel attorneys warrants the staffing directive that Plaintiffs request, because Plaintiffs have not shown that other writing assistance resources available to class

members with hearing and vision disabilities (librarians, ADA workers, assistive devices) are not sufficient to enable them to complete writing tasks during time periods when panel attorneys are not assigned to assist them to complete those tasks.

In light of the foregoing, the Court overrules this objection. Plaintiffs may renew their request for an order directing Defendants to change their staffing policies and procedures to require correctional counselors or other suitable staff to provide parole-related writing assistance to class members with hearing and vision disabilities, but any such renewed request must be supported by evidence showing that writing assistance resources currently available to class members with vision and hearing disabilities are not sufficient to permit them (or certain subsets of them, given their specific disabilities) to complete parole-related writing tasks, and that an order requiring correctional counselors or other suitable staff to provide those class members with parole-related writing assistance is necessary to ensure that class members are able to complete those tasks and prepare adequately for parole proceedings.

## II. Video-Recorded Sign Language Translations for Deaf Signer Class Members

In its order of March 20, 2024, the Court granted Plaintiffs' request for an order requiring Defendants to provide video-recorded sign-language translations of parole suitability hearings and certain parole-related documents, including the Comprehensive Risk Assessment (CRA)[1], to deaf class members who "Defendants have already identified as using sign language as their primary method of communication and who have difficulty understanding written English[.]" *See* Docket No. 3583 at 9, 13; Docket No. 3584 at 5. Specifically, the Court ordered Defendants to develop policies and procedures that, with respect to deaf class members whom they have identified as using sign language as their primary method of communication and who have difficulty understanding written English, require Defendants (1) to record sign-language-interpreted parole suitability hearings by video and to provide the video recording to each class member at the time

---

[1] The CRA is the opinion of the Board of Parole Hearing's forensic clinical psychologist regarding a prisoner's potential risk for future violence. *See* Docket No. 3583 at 6. It is based on the psychologist's interview with the prisoner, the prisoner's institutional record, and the psychologist's evaluation of the prisoner's offense, institutional programming, mental state, behaviors, and attitudes. *See id.* It is served to the prisoner about two months before a parole suitability hearing. *See id.* The prisoner may object to errors in the CRA. *See id.*

1  the printed hearing transcript would be served to him; (2) translate the CRA into sign language at

2  the time class members are served with a copy of the document, record the translations by video,

3  and provide the video recordings to class members in a timely manner; and (3) create upon request

4  video-recorded sign-language translations of other parole-related documents, such as Rules

5  Violation Reports and the Probation Officer's Report, and serve the video recordings to class

6  members in a timely manner. *Id.* at 5-6.

7        Plaintiffs object to the further remedial plan because it relies on a standardized reading test

8  score of 4.0 or below, which indicates a fourth-grade reading level or below, to identify the deaf

9  signer class members who have difficulty understanding written English and who may receive the

10  video-recorded translations that the Court ordered on March 20, 2024. Plaintiffs request that the

11  Court order Defendants to revise the further remedial plan to provide that *all* deaf class members

12  who use sign language as their primary method of communication shall receive the video-recorded

13  translations required by the Court's order of March 20, 2024, Docket No. 3584.

14        Plaintiffs contend that Defendants' decision to limit the video-recorded translations that the

15  Court ordered to deaf signer class members who read at a fourth-grade level or below arbitrarily

16  excludes deaf signer class members who have difficulty reading parole-related documents even

17  though their reading level is 4.0 or higher. Plaintiffs argue that parole-related documents such as

18  the CRA contain technical language that deaf prisoners who use sign language are unlikely to

19  understand regardless of their reading level. Plaintiffs' expert on deafness and sign language

20  communications, Roger C. Williams, opined that the CRA, which Plaintiffs represent is the most

21  crucial document for parole candidates to study in preparation for a parole suitability hearing, is

22  written at a tenth-grade reading level or higher. *See* Williams Decl. ¶¶ 15-19, Docket No. 3524-7.

23  Plaintiffs' expert further opined that he did not expect even "very strong readers who are deaf to

24  know many of the terms that appear in their CRA" because of challenges that deaf individuals who

25  use sign language face, regardless of their reading level, in comprehending technical terminology,

26  such as the terminology used in the CRA. *See id.* ¶ 15. Plaintiffs' expert concluded that sign

27  language translations of the CRA should be provided in a video-recorded format to individuals

28  who use sign language as a primary language, in light of the foregoing, and because video-

recorded translations permit those individuals to understand information in printed documents to the best of their ability and to review the information in a manner similar to how non-disabled prisoners are able to review printed documents, as the recordings can be accessed at a time that is most convenient to the class member, can be viewed at each class member's own pace, and can be replayed as many times as desired. *See id.* ¶¶ 6-30.

With respect to video recordings of sign language translations that occurred during parole suitability hearings, Plaintiffs argue that all deaf class members whose primary method of communication is sign language, regardless of reading test score, must receive them to be able to effectively request parole decision review or prepare parole-related grievances. Plaintiffs point to the Court's March 20, 2024, findings that any sign language translation provided during a parole suitability hearing is not captured on the written transcript for the hearing and that, unless there is a video recording of the sign language testimony and translation provided during a parole suitability hearing, it would not be possible to establish that there were errors in the sign language translation provided during the hearing. *See* Docket No. 3583 at 14.

Plaintiffs also argue that Defendants would be minimally burdened by having to provide the video-recorded sign language translations ordered on March 20, 2024, to all deaf class members who use sign language as their primary method of communication, regardless of their reading test score, because there are only forty-eight such individuals across the state.

Defendants respond that reading test scores are a reliable method for evaluating deaf class members' ability to understand written English and argue that Plaintiffs have not pointed to any "contrary evidence." Docket No. 3607 at 10. Defendants do not dispute, however, that Plaintiffs' evidence shows that CRAs are written at a tenth-grade reading level or higher and thus require a reading level that is much higher than 4.0 to comprehend; that Plaintiffs' expert opined that even strong readers who are deaf signers would be unlikely to understand the technical terminology in CRAs; and that Plaintiffs' expert opined that video-recorded translations of the CRA should be provided to individuals who use sign language as a primary language because of the difficulty that even deaf signers who are strong readers would face in understanding many terms in the CRA and because the video-recorded translations permit those individuals to understand information in

printed documents to the best of their ability and to review the information in a manner similar to how non-disabled prisoners are able to review printed documents. Defendants argue that "Plaintiffs' request for all deaf signers to receive the same accommodation [video-recorded sign language translations] regardless of their individualized need ignores Defendants' 'well-settled' duty 'to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation' for each class member," and that deaf signer class members who need additional assistance with reading the CRA or other parole-related documents can be adequately accommodated by requesting staff assistance or by requesting a new reading test. *See* Docket No. 3607 at 10-11. Defendants do not respond to Plaintiffs' argument that every deaf class member who uses sign language as a primary method of communication requires a video recording of the sign language translation provided during his parole suitability hearing to be able to effectively request parole decision review or prepare parole-related grievances based on translation errors. Defendants also do not dispute Plaintiffs' argument that providing video-recorded translations of the CRA and parole suitability hearing to all deaf signer class members, regardless of reading score, would not be burdensome.

The Court sustains Plaintiffs' objection in part and overrules it in part. The Court finds that providing video recordings of the sign language translation that occurred during parole suitability hearings to deaf class members who use sign language as their primary method of communication, regardless of reading test score, is a reasonable accommodation that is necessary to enable them to effectively prepare decision review requests and related grievances. *See* Revised Permanent Injunction ¶¶ 32, 33 (providing that Defendants are required to make accommodations for prisoners with disabilities to assist them in preparing for parole proceedings and in preparing requests for parole decision review). Defendants do not dispute that, without the video-recorded translations at issue, deaf class members who use sign language as their primary form of communication cannot establish translation errors that may have occurred during their parole suitability hearings for the purpose of requesting decision review or filing parole-related grievances. Defendants are required under the Revised Permanent Injunction to grant Plaintiffs' request for the video-recorded translations at issue as an accommodation for deaf class members

who use sign language as their primary method of communication, because Defendants have failed to show that providing them would be unreasonable for specific, articulated reasons allowable under the ADA, or that another effective accommodation is available that would permit those class members to challenge sign language translation errors that may have occurred during their parole hearings in requests for parole decision review or parole-related grievances. *See* Revised Permanent Injunction ¶ 17 (providing that a prisoner or parolee's request for a particular type of accommodation shall be given primary consideration and shall be granted unless the request is unreasonable for specific, articulated reasons allowable under the ADA, or unless other effective accommodations are available). Accordingly, to bring Defendants into compliance with Paragraphs 32, 33, and 17 of the Revised Permanent Injunction, the Court orders Defendants to amend the further remedial plan within fourteen days of the date of this order to provide that all deaf class members who use sign language as their primary method of communication shall receive video recordings of the sign language translations that occurred during their parole suitability hearings, as set forth in the Court's order of March 20, 2024, Docket No. 3684.

The Court also finds that providing video recordings of sign language translations of the CRA to deaf class members who use sign language as their primary method of communication, regardless of reading test score, is a reasonable accommodation that is necessary to enable them to prepare adequately for parole proceedings as required under Paragraphs 32 and 33 of the Revised Permanent Injunction. Defendants do not dispute that the CRA is one of the most critical documents for a prisoner to review to prepare for a parole suitability hearing; that the CRA is written at least at a tenth-grade level; that the CRA contains many terms that even deaf signer class members who are strong readers would be unlikely to understand; and that Plaintiffs' expert opined that video-recorded translations of the CRA should be provided to individuals who use sign language as a primary language because of the difficulty that even deaf signers who are strong readers would face in understanding many terms in the CRA and because video-recorded translations permit those individuals to understand information in printed documents to the best of their ability and to review the information in a manner similar to how non-disabled prisoners are able to review printed documents. Given those undisputed facts, the Court is persuaded that,

1    without receiving the video recordings at issue as an accommodation pursuant to the terms of the

2    Court's March 20, 2024, order, deaf class members who use sign language as their primary

3    method of communication will not be capable of preparing effectively for their parole suitability

4    hearings to the best of their ability and to a similar degree as non-disabled prisoners can.

5            Defendants have not shown otherwise.  They argue that they are justified in using the 4.0

6    reading test score to determine whether a deaf class member who uses sign language requires the

7    video-recorded translations at issue because public entities are entitled to require reasonable

8    evidence of a disability before providing accommodations.[2]  The Court is not persuaded.  It is

9    undisputed that all class members for whom Plaintiffs request the video-recorded translations at

10   issue are deaf and primarily use sign language to communicate; thus, Defendants cannot refuse to

11   provide the video recordings at issue due to a lack evidence that deaf signer class members are

12   disabled.  When it comes to determining what constitutes a reasonable accommodation for deaf

13   signer class members, Defendants are required by the Revised Permanent Injunction to give

14   primary consideration to Plaintiffs' request for a particular type of accommodation unless

15   Defendants can show that the request is unreasonable for specific, articulated reasons allowable

16   under the ADA, or unless other effective accommodations are available.  *See* Revised Permanent

17   Injunction ¶ 17.  Defendants have not done so here.  Defendants have not shown that Plaintiffs'

18   request for the video-recorded translations at issue for all deaf signer class members is

19   unreasonable, nor could they, given the undisputed evidence discussed above, which, among other

20   things, indicates that the CRA is written at a reading level much higher than 4.0 and that,

21   regardless of reading level, it is unlikely that a deaf person who relies on sign language to

22   communicate would fully comprehend a CRA by reading it because of the many technical terms it

23

24           [2] Defendants also argue that their reliance on the 4.0 reading test score as a cut-off is
     permissible because the Armstrong Remedial Plan II (ARP II) specifically relies on a standardized
25   reading test and sets a threshold reading level score of 4.0 or less to identify class members who
     may require assignment of a panel attorney as a reasonable accommodation for parole-related
26   proceedings or to ensure effective communication with staff.  *See* Docket No. 3607 at 8-9.  The
     provisions of the ARP II to which Defendants point are irrelevant to the resolution of the present
27   motion because they pertain to class members who have learning disabilities.  Defendants point to
     no provision in the ARP II that indicates that reading scores can be used to determine reasonable
28   accommodations for class members who are deaf and primarily use sign language to
     communicate.

1    contains. *See* Williams Decl. ¶¶ 15-19. Defendants also have not shown that an effective

2    alternative accommodation exists. Defendants contend that, as an alternative to receiving the

3    video-recorded translations at issue, deaf signer class members who have a reading test score of

4    4.0 or higher can request staff assistance to read the CRA or can request a new reading test.

5    However, the Court is not persuaded that staff assistance would be as effective as the video-

6    recorded translations at issue in enabling deaf signer class members to understand the contents of

7    the CRA to the best of their ability and to review the CRA in a manner similar to how non-

8    disabled prisoners are able to review written documents. *See* Williams Decl. ¶¶ 6-30. Further, a

9    new reading score would not solve the problem identified by Plaintiffs' expert, which is that,

10   regardless of reading score, deaf individuals who use sign language are unlikely to understand

11   many of the terms in a CRA.

12        Accordingly, to bring Defendants into compliance with Paragraphs 32, 33, and 17 of the

13   Revised Permanent Injunction, the Court orders Defendants to amend the further remedial plan

14   within fourteen days of the date of this order to provide that all deaf class members who use sign

15   language as their primary method of communication shall receive video recordings of sign

16   language translations of their CRA, as set forth in the Court's order of March 20, 2024, Docket

17   No. 3684.

18        The Court declines, at this time, to require Defendants to modify the further remedial plan

19   to provide that all deaf class members who use sign language as their primary method of

20   communication, regardless of reading score, shall receive video recordings of sign language

21   translations of parole-related documents other than the CRA pursuant to the Court's March 20,

22   2024, order. Plaintiffs have not pointed to evidence that would permit the Court to find that, to be

23   able to prepare effectively for parole proceedings, all deaf signer class members with a reading test

24   score higher than 4.0 require video-recorded sign language translations of parole-related

25   documents other than the CRA. For example, Plaintiffs do not point to evidence regarding the

26   reading level required to understand parole-related documents other than the CRA, or to evidence

27   showing that non-CRA documents contain a significant amount of technical terminology that even

28   deaf signer class members who have a high reading test score would not understand. The parties

shall meet and confer to attempt to agree on a method or process for determining whether deaf signer class members who have a reading score higher than 4.0 should be provided with video-recorded translations of parole-related documents other than the CRA if they request such an accommodation.

### III. Accommodations for Class Members Who Refuse Vision Assessments

In its order of March 20, 2024, the Court granted Plaintiffs' request for an order requiring Defendants to conduct individualized assessments of blind and low-vision class members and to identify, document, and track the accessible format or auxiliary device that best ensures effective communication of printed material to those class members in the context of parole proceedings. Docket No. 3584 at 2.

Plaintiffs object to the further remedial plan because it contains policies and procedures that require Defendants to perform individual assessments of blind and low-vision class members by a vision specialist, but it does not contain a provision requiring them to document and track the primary method of accommodation for blind and low-vision class members who refuse to participate in the individual assessments by a vision specialist. Plaintiffs contend that, for the further remedial plan to comply with the Court's order of March 20, 2024, it must contain provisions that require Defendants to document and track the primary visual accommodation of blind and low-vision class members who refuse individual vision assessments so that those class members are not forced to make individual requests for accommodations each time they need documents in an accessible format.

Defendants do not dispute that the further remedial plan, as currently drafted, does not require them to document and track the primary visual accommodation for class members who refuse individual vision assessments by a vision specialist, nor do they dispute that class members who refuse individual assessments by a vision specialist are required under the further remedial plan to make individual requests for accommodations each time they need documents in an accessible format. *See* Lorey Decl. ¶ 11 n.1, Docket No. 3607-3. However, Defendants represent in the declaration of Dawn Lorey, who is CDCR's Assistant Deputy Director of the Program Operations in the Division of Adult Institutions, that they have "reconsidered their position" on

documenting and tracking the primary visual accommodation for class members who refuse individual assessments by a vision specialist. *See id.* As described in the Lorey Declaration, Defendants have agreed to do the following: when a class member refuses an individual assessment by a vision specialist, the class member's request for a visual accommodation will be rerouted through the Reasonable Accommodation Process (RAP) and any visual accommodations approved will be documented in CDCR's Strategic Offender Management System (SOMS), thus obviating the need for the class member to make individual accommodation requests for documents in an accessible format going forward. *See* Lorey Decl. ¶ 11.

In their reply, Plaintiffs state that Defendants' proposal in the Lorey Declaration "addresses their concerns," and they request that the Court sustain their objection "and order Defendants to comply with the procedures set forth in the Lorey Declaration with respect to documenting the accommodation needs of class members with vision disabilities who refuse the vision specialist evaluation." Docket No. 3608 at 5.

The Court sustains Plaintiffs' objection to the further remedial plan's lack of provisions requiring Defendants to document and track a primary accommodation for blind and low-vision class members who refuse individual vision assessments by a vision specialist. To comply with the Court's order of March 20, 2024, the further remedial plan must contain such provisions. Accordingly, within fourteen days of the date of this order, Defendants shall modify the further remedial plan to include the procedures set forth in the Lorey Declaration, Docket No. 3607-3, for documenting and tracking accommodations for class members who refuse individual vision assessments by a vision specialist.

## IV. Panel Attorney Assistance for DNV Class Members

In its March 20, 2024, order, the Court granted Plaintiffs' request for an order requiring Defendants to develop policies and procedures "to ensure that those panel attorneys hold additional meetings and spend significantly more time on their representation of class members *with hearing and vision disabilities* than currently required under the Panel Attorney Program Guide for the Parole Suitability Hearing Process (Guide)." Docket No. 3584 at 7 (emphasis added). That directive applies to all "class members with hearing and vision disabilities,"

regardless of their disability code.  *See id.*  In response to the Court's order, Defendants included in the further remedial plan an Addendum to the Guide, which requires panel attorneys to spend "significantly more time" on their representation of a class member who has a DPV or DPH disability code, to conduct additional legal visits with class members with a DPV or DPH disability code, and to attest that they have complied with those requirements with respect to class members identified as DPV or DPH.  *See* Docket No. 3596 at 13.  These requirements do not apply to class members with a DNV disability code.  DPV class members have severe vision disabilities; DNV class members have less severe vision disabilities than DPV class members; and DPH class members have severe hearing disabilities.

Plaintiffs object to the further remedial plan because the Addendum's provisions that require panel attorneys to spend "significantly more time" on their representation of class members do not apply to all class members with "hearing and vision disabilities," as required by the Court's order of March 20, 2024.  Plaintiffs argue that the Addendum, as currently drafted, applies only to class members with the DPV and DPH disability codes but should apply to class members with a DNV disability code as well, because the Court's order applies to all class members with "hearing and vision disabilities," regardless of disability code.  Plaintiffs request that the Court order Defendants to include DNV class members in the Addendum's provisions.

Defendants do not dispute that the Addendum, as currently drafted, does not apply to class members with a DNV code.  Defendants argue that the Court should overrule Plaintiffs' objection because "the accommodation [Plaintiffs] seek to establish is met by other policies proposed in response to the Court's order," which include provisions that require panel attorneys to accommodate all clients with disabilities so that each class member is able to participate in parole proceedings to the best of his abilities.  Docket No. 3607 at 17.

The Court finds that Plaintiffs' objection is well-taken.  The "significantly more time" provisions of the Court's order of March 20, 2024, apply to all class members with hearing and vision disabilities, including class members with a DNV code.  The Addendum's "significantly more time" provisions apply only to class members with DPV and DPH codes but not to class members with a DNV code.  To comply with the Court's order of March 20, 2024, Defendants

shall, within fourteen days of the date of this order, modify the Addendum's provisions to also apply to class members with a DNV code. The Court finds that the other policies to which Defendants point in their opposition are not sufficient to "ensure" that panel attorneys "hold additional meetings and spend significantly more time on their representation of class members" with vision disabilities who have a DNV code, as required by the order of March 20, 2024.

IT IS SO ORDERED.

Dated: July 31, 2024

CLAUDIA WILKEN
United States District Judge