Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. CV 94-2307 CW |
| Plaintiffs, | **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Pursuant to the Court's orders for remedial measures at the *Armstrong* Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**Revisions to the investigations and discipline system**

The Court Expert's previous reports have noted issues with the quality of CDCR's investigations and discipline system. Plaintiffs have repeatedly raised concerns, which the Court Expert has shared, with the ever-increasing workload of AIU investigators. And in his most recent report, the Court Expert described two investigations, one conducted by Plaintiffs and one by the Office of the Inspector General, that came to similar conclusions about shortcomings in investigating misconduct and in holding staff accountable where misconduct was found. In that

report, the Court Expert wrote that, while Defendants had not responded to those findings, they "recognize[d] the need for change." Dkt. 3602, 3.

The Court Expert is pleased to report that Defendants have taken the need for change seriously, and the parties have been engaged in extensive negotiations aimed at fundamentally reshaping aspects of the investigations and discipline system. The Court Expert commends both parties for their hard work, practicality, and good faith efforts and here updates the Court on the most significant points of discussion so far.

**Centralized Screening Team.** The role of the CST is to review complaints and determine whether they allege staff misconduct of a form that is described on the Allegation Decision Index (ADI); if so, complaints are investigated by the AIU rather than at local institutions. In past reports, the Court Expert explained that in some instances, CST had exceeded its mandate and had been reviewing the merits of complaints and determining that they did not warrant investigation by the AIU. At the time of the Court Expert's last report, CST had ceased reviewing the merits of complaints from the *Armstrong* Six prisons; CDCR now reports that it is screening allegations from two further institutions (LAC and Folsom) based only on the face of the complaint. As described in the prior report, the reversion to the process required by the Remedial Plan for the *Armstrong* Six prisons resulted in a marked increase in the number of cases routed to AIU, which further strained the system. The agreed-upon modifications are designed to help alleviate those strains.

**Allegation Decision Index.** As noted above, CST uses the ADI to determine whether AIU or local institutions investigate complaints. In light of the volume of cases flowing to AIU, CDCR proposed, and Plaintiffs agreed, that the parties modify the ADI to send more of certain classes of allegations to the institutions for inquiry. The principal goal of the screening system is to send the most serious complaints to the most experienced investigators, and an overbroad ADI threatens to burden investigators with a caseload of less serious matters that could be handled more efficiently at local institutions. On October 3, the parties reached agreement on revisions

that narrow certain categories of ADI misconduct and clarify others.[1] Timeline for implementation of the ADI has not been determined.

**Elimination of Locally Designated Investigators.** Under the system as it has operated to date, CST can make one of three routing decisions: complaints alleging staff misconduct listed on the ADI are sent to the AIU for investigation; complaints alleging a form of staff misconduct not listed on the ADI are sent to Locally Designated Investigators (LDIs) for inquiry; and complaints that do not allege any form of staff misconduct are designated "routine" and sent to local Offices of Grievance for processing and resolution. In order to streamline the process, CDCR proposed eliminating LDIs altogether. Instead, local supervisory staff will investigate and resolve all allegations of lesser forms of misconduct, subject to review by managerial staff. This change, to which Plaintiffs have agreed in principle, would have the effect of streamlining the process for CST and reducing the workload for wardens (who under the current system must review LDI inquiries and make disciplinary decisions), and, in CDCR's view, will improve local supervisors' ability to supervise staff and take timely corrective action where merited.

The reliance on local supervisors to investigate certain forms of misconduct requires the parties to review and possibly change the investigation process at the institutions. That includes ensuring that local investigations are thorough, subject to meaningful managerial oversight, and generate documentation sufficient for monitoring and review. In addition, the parties are discussing the circumstances under which supervisors would suspend their investigations and elevate matters to AIU, for example in instances where the evidence suggests more serious misconduct may have occurred or where the accused staff member has a history of sustained allegations of similar misconduct.

**Centralized Hiring Authority.** After completion of an AIU investigation, the hiring authority reviews the investigative file and determines whether to sustain an allegation and what, if any, discipline to impose. Under the current system, that task is performed by the warden of the institution where the complaint originated. Plaintiffs believe wardens have at times failed to

---

[1] The Court Expert delayed filing the current report to allow the parties to finalize their discussions on the ADI.

ensure investigations were comprehensive and unbiased, have not sustained allegations despite clear evidence of misconduct, and have imposed inappropriate discipline where allegations were sustained. In addition, plaintiffs allege wardens have unduly delayed accountability by failing to act quickly on closed investigations. To address these issues, Plaintiffs suggested creation of a centralized hiring authority to take over review of investigations and imposition of discipline. The parties are discussing this proposal with the goal of reaching agreement and implementing the new process by the end of the year.

While the foregoing topics have been the primary subject of discussion in the last quarter, the parties are also considering other reforms, including revisions to investigator training, the creation of a more streamlined AIU investigatory process for less complex allegations, timelines for hiring authority disciplinary decisions, and other matters. The Court Expert will continue to update the Court on these discussions.

**Case volume and investigation and discipline timelines**

As noted above, CDCR believes changes to the ADI are necessary to reduce the workload of AIU investigators; while Plaintiffs do not necessarily believe that reducing investigator workload will on its own improve the quality of investigations, they agree that the AIU is understaffed. The number of cases routed into AIU from the *Armstrong* Six prisons remains fairly constant, with 5,200 complaints received in June 2024 (the most recent month for which the Court Expert has data). However, AIU also investigates cases from all the other prisons in the system as well. While the Court Expert does not have data on those institutions, CDCR has represented that the reversion to screening complaints without consideration to their merits has increased the flow of cases from those institutions, thereby of course increasing investigator workloads.

Perhaps as result, the number of investigations closed within the Remedial Plan's required timeframes has dropped slightly.[2] The AIU closed 70% of cases received between November 2023 and March 2024 on time, down from 74% of cases received for the five months

---

[2] AIU must close investigations within 120 day (for cases assigned to a sergeant or lieutenant) or 180 days (for cases assigned to special agents).

before that. The average number of hours worked per case has decreased, again perhaps reflecting investigator workload. Investigators spent an average of 29.5 hours on cases closed between May 2022 and June 2023; that figure has dropped to 26.2 hours for cases closed between May 2023 and June 2024.

Finally, the Court Expert has previously reported on the delays between AIU closing investigations and wardens imposing discipline. As noted above, this is a core reason for Plaintiffs' suggestion that disciplinary decisions be delegated to a centralized institution. The delays persist: As of June 2024, wardens had yet to act on 11% of cases received by the AIU in May 2023—over a year before. Overall, a quarter of cases received by the AIU between May 2023 and January 2024 were awaiting hiring authority review as of June 30, 2024.[3]

**Review of closed cases**

As explained in prior reports, the parties and the Court Expert have been engaging in confidential discussions about the specifics of certain closed cases. Those discussions were suspended over the last two quarters while the parties focused on the reforms described above. The Court Expert anticipates re-engaging in that process in future quarters.

Dated: October 4, 2024              Respectfully submitted,

                                    /s/
                                    Edward W. Swanson
                                    SWANSON & McNAMARA LLP

---

[3] In reviewing his most recent report, the Court Expert noted a scrivener's error. The report stated that "as of April [2024], wardens had yet to review 416 cases (16% of all cases) that closed in March 2023." Dkt. 3602, 6. The total number of cases received during the relevant time period was 416, and 16% of those (67 cases) were pending as of April 2024.