# Exhibit 51

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 1/17/2024     **Date IAC Received 1824:** 1/10/2024     **1824 Log Number:** 503894

**Inmate's Name:**     **CDCR #:**     **Housing:** D1:

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Executive Officer A. Banerjee, Chief Medical Executive G. Ugweze, Psychologist Dr. , Health Care Grievance Representative , Custody Appeals Representative , Associate Governmental Program Analyst , Registered Nurse , Staff Services Analyst , Field Training Lieutenant , Principle (A)

**Summary of Inmate's 1824 Request:** Inmate requests an iPad to assist with effective communication.

### Interim Accommodation:

☒ No interim accommodation required: You do not report difficulty accessing Programs, Services, or Activities (PSA)s or performing Activities of Daily Living (ADL)s.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate requests an iPad to assist with effective communication.

**Response:** On 1/17/2024, the RAP met and discussed your 1824, Reasonable Accommodation Request.

You are DNH and are currently accommodated with hearing aids and a Personal Sound Amplification Device (PSAD). Your primary method of effective communication is hearing aids with an alternate of need staff to speak loudly and clearly. You do not require an Ipad or iPhone with live captioning to access PSAs.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife        **Date sent to inmate:** FEB 0 9 2024

**ADA Coordinator/Designee**     **Signature**

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| CSATF | 50389 4 | CSATF OFFICE |

***********TALK TO STAFF IF YOU HAVE AN EMERGENCY***********
**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

JAN 1 0 2024
GRIEVANCES

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | OF | HOUSING |
|---|---|---|---|---|
| | | PM | | DI - |

INSTRUCTIONS:
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity.  You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request.  Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process.  All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

WHAT CAN'T YOU DO / WHAT IS THE PROBLEM? / was told by the Nurses to ask the ADA officer for an I pad translator, ADA officer stated to put in a medical slip so I Need an I pad translator to properly communicate in certain setting so I can properly communicate as some times people say thay diat tell me that

WHY CAN'T YOU DO IT? properly communicate

WHAT DO YOU NEED? / pad translator to properly communicate without barriers or miss translation of what was said

_(Use the back of this form if more space is needed)_

DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?     Yes ☑   No ☐   Not Sure ☐
List and attach documents, if available. N/H

I understand that staff ~~have a right to interview or examine me, and my failure to coop~~erate may cause this request to be disapproved.

_____
**INMATE'S SIGNATURE**

1·9·24
**DATE SIGNED**

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|

**DRAFT**

## Interim Accommodation Procedure (IAP) / Interview Worksheet

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day</u>.
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate: ▮▮▮▮▮▮   CDCR #: ▮▮▮▮   CDCR 1824 Log #: 503894

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**   Date CDCR 1824 received by IAC: 1 / 10 / 2024

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)   [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▮▮▮▮ | SSA | ▮▮▮▮ | 1 / 10 / 2024 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2   CDCR 1824 INTERVIEWS**   *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: ____ / ____ / ____   Due back to IAC: ____ / ____ / ____   Returned to IAC: ____ / ____ / ____

Assigned to: _____   Title: _____

Information needed: _____
_____
_____

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

**Inmate Interview Date/Time:** _____   **Location:** _____

Interviewer notes: _____
_____
_____

**Staff Interviewed:** _____   Title: _____   Interview date: ____ / ____ / ____

Interviewer Notes: _____
_____
_____

**Staff Interviewed:** _____   Title: _____   Interview date: ____ / ____ / ____

Interviewer Notes: _____
_____
_____

***Notes:*** I/M is DNH and is currently accommodated hearing aids and a personal sound amplification device. Inmates primary method of EC is hearing aids with an alternate of need staff to speak loudly and clearly. You do not require an iPad or ~~iPhone with live captioning to access PSAs.~~

| _____ | _____ | _____ | ____ / ____ / ____ |
|---|---|---|---|
| **Interviewer (Print Name)** | **Title** | **Signature** | **Date Completed** |

**IAP / Interview Worksheet**

DRAFT

Inmate: ▮▮▮▮▮▮▮▮ CDCR #: ▮▮▮▮▮ CDCR 1824 Log #: 503894

---

**Step 3:  DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required**.

Reason: _____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason: _____

_____

_____

| **Accommodation(s) provided:** | **Date provided:** |
|---|---|
| _____ | ___ / ___ / ___ |
| _____ | ___ / ___ / ___ |
| _____ | ___ / ___ / ___ |

Comments: _____

_____

_____

| _____ | _____ | _____ | ___ / ___ / ___ |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note:  When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3.  The interviews conducted in Step 2 will help with the decision in Step 3.  Step 3 documents the decision.  When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter.  Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2.  If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing.  Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder.  Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name:                                               CDC #:       PID #:

CHSS035C **DPP Disability/Accommodation Summary** Wednesday January 10, 2024 02:13:41 PM

As of: 01/10/2024 ➡

## OFFENDER/PLACEMENT

CDC#:
Name:
Facility: SATF-Facility D
Housing Area/Bed: D 001
Placement Score: 63
Custody: Medium (A)
Designation:
Housing Program: Sensitive Needs Yard
Housing
Restrictions:
Physical Limitations
to Job/Other:

## DISABILITY ASSISTANCE

Current DDP Status: NCF
DDP Adaptive None
Support Needs:
Current DDP Status Date: 01/27/2018
DPP Codes: DNH
DPP Determination Date: 05/30/2019
Current MH LOC: CCCMS
Current MH LOC Date: 03/06/2018
SLI Required: No
Interview Date: 10/04/2017
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly and
Clearly
Non-Formulary Refer to CDCR 128B dated 10/4/17
Accommodations/Comments: authored by CCI      located in
ERMS.
TimeStamp: 5 October 2017
15:44:50 --- User:

Learning Disability:
Initial Reading Level: 08.2
Initial Reading Level Date: 07/29/2016
Durable Medical Equipment: Hearing Aid
Hearing Impaired Disability Vest
Knee Braces
Night Guard
Therapeutic Shoes/Orthotics

Languages Spoken:

## IMPORTANT DATES

Date Received: 01/07/2009
Last Returned
Date:
Release Date: 10/28/2036
Release Type: Minimum Eligible Parole Date

## WORK/VOCATION/PIA

Privilege Group: A
Work Group: A1
AM Job Start 10/29/2021
Date:
Status: Full Time
Position #: PFO.501.005
Position Title: FOOD & BEVERAGE PACKAGER
Regular Days On: Monday through Friday (07:00:00 -
11:30:00)
Monday through Friday (12:00:00 -
15:00:00)

# Exhibit 52

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 1/10/2024     **Date IAC Received 1824:** 1/8/2024     **1824 Log Number:** 502652

**Inmate's Name:** ▓▓▓▓     **CDCR #:** ▓▓▓     **Housing:** CHCF

**RAP Staff Present:** ADA Coordinator N. Scaife, Physician and Surgeon ▓▓▓, Psychologist Dr. ▓▓ Health Care Grievance Representative ▓▓, Custody Appeals Representative ▓▓, Staff Services Analyst ▓▓, Registered Nurse ▓▓, Staff Services Analyst ▓▓, Field Training Lieutenant ▓▓.

**Summary of Inmate's 1824 Request:** The inmate reports being hearing impaired and requests a pocket talker, vibrating watch, and iPad or iPhone. The inmate alleges the food he is being provided in the Corrections Treatment Center (CTC) is spoiled and rotten. The inmate requests a regular infirmary diet.

### Interim Accommodation:

☒ No interim accommodation required:   You were issued a pocket talker on 01/08/2024.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** The inmate reports being hearing impaired and requests a pocket talker, vibrating watch, and iPad or iPhone. The inmate alleges the food he is being provided in the Corrections Treatment Center (CTC) is spoiled and rotten. The inmate requests a regular infirmary diet.

**Response:** On 01/10/2024, the RAP met and discussed your 1824, Reasonable Accommodation Request.
Per the Interim Accommodation Procedure (IAP) worksheet, dated 01/08/2024, notes you were issued a pocket talker on 01/08/2024. Issuance of the iPhone technology is intended for individuals with profound hearing loss. You are currently designated as DNH and are being accommodated with hearing aids and pocket talker. Your primary method of disability assistance is use of hearing aids. Your alternate method of disability assistance requires staff to speak loudly and clearly. You do not require live captioning to achieve effective communication.

Due to its nature, your request was forwarded to Health Care Services for input. Health Care Services provided the RAP with a Disability Verification Process (DVP) Worksheet indicating the Flame 250 Digital Hearing Aid is the only type of hearing aid available at this time. It is recommended by the Hearing Aid Specialist to replace #13 battery every 7-10 days or as needed. You are on a 2000 calorie consistent carbohydrates diabetic diet with prescribed diabetic snacks. A regular diet is not indicated for you at this time due to your current medical condition. Per CTC senior registered nurse (SRN), spoiled milk or rotten food are not distributed to CTC patients.

You are encouraged to utilize the appropriate avenues to address issues, such as submitting a 7362 to Health Care Services for any medical related requests. If you are dissatisfied or disagree with the treatment being provided by Health Care Services, you may submit a 602HC and your concerns will be addressed through the Health Care Grievance Process. If you disagree with this determination, you may submit a CDCR 602-2, and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife _____     _A. Scaife_ (signature)     **Date sent to inmate:**     **FEB 0 7 2024**
**ADA Coordinator/Designee**     **Signature**

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) SATF | LOG NUMBER (Staff Use Only) 562652 | DATE RECEIVED BY STAFF: CSATF OFFICE JAN 0 8 2024 OF GRIEVANCES |
|---|---|---|

**\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\***
**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT Infirmary | HOUSING Infirmary |
|---|---|---|---|

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
I need a Pocket talker - Super Ear Plus - SE7500 "PSAP, I need a vibrating watch and alarm; and iPad speech To text. I am hearing impaired, do not read sign language & I also need a Rexton arena HP3 Hearing aids.
I would also like to be given a Better food Diet my Milk is usually spoiled and the Diabetic food is rotten, I want the regular Infirmary Diet, or? I

**WHY CAN'T YOU DO IT?**
Nobody ever told me a new Policy went into effect on "october 5 2023" and armstrong Court order 12/7/23 Docket # 3538. Under the Court order hearing impaired must be educated and given products above

**WHAT DO YOU NEED?**
Pocket Talker - Super Ear Plus - SE7500 - PSAP, vibrating watch and alarm; iPad speech To text; Rexton arena HP3 Hearing aids; regular Infirmary food because the Diabetic meals are rotten and milk is spoiled. They leave my snack outside my Door for 2 hours to spoil. also; the room Temperature is very cold im unable To get out of bed it's to cold in infirmary #23. also, mental Health patients are housed near me and they Bang on walls and yell it very stressful
sent out on 12/6/24 /
*(Use the back of this form if more space is needed)*

| DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY? | Yes ☒ | No ☐ | Not Sure ☐ |
|---|---|---|---|

List and attach documents, if available:
see (medical file)

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| INMATE'S SIGNATURE | 12/5/24 DATE SIGNED |
|---|---|

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|

**DRAFT**

## Interim Accommodation Procedure (IAP) / Interview Worksheet

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) shall complete Step 1 below within 1 working day. Step 2 should be completed whenever the inmate's request is unclear or when additional input from the inmate and/or staff will help the RAP better understand the request.

Inmate: ▓▓▓▓▓▓    CDCR #: ▓▓▓▓▓    CDCR 1824 Log #: **502652**

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**    Date CDCR 1824 received by IAC: 01 / 08 / 24

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? Base your assessment solely on the inmate's claim, assuming the claim is true.

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)    [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Inability to perform essential manual tasks (e.g., access ▓▓▓▓▓▓ food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care ap▓▓▓▓▓▓ ve safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.

| ▓▓▓▓ ▓▓▓ | AGPA | ▓▓▓▓▓▓ | 01 / 08 / 24 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 01 / 08 / 24    Due back to IAC: 01 / 09 / 24    Returned to IAC: 01 / 09 / 24
Assigned to: CTC    Title: FTS

Information needed: PLEASE ISSUE I/M A POCKET TALKER.

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time: 1/8/24 @ 1700 hrs    Location: CTC ▓▓▓▓
Interviewer notes: Issued I/M ▓▓▓▓ a Pocket Talker. Trust & 128 chrono completed

Staff Interviewed: _____    Title: _____    Interview date: __ / __ / __
Interviewer Notes: _____

Staff Interviewed: _____    Title: _____    Interview date: __ / __ / __
Interviewer Notes: _____

FORWARD TO HC FOR INPUT REGARDING CTC HOUSING.

***Notes:*** ADAC APPROVES ISSUANCE OF POCKET TALKER. ISSUANCE OF THE IPHONE TECHNOLOGY IS INTENDED FOR INDIVIDUALS WITH PROFOUND HEARING LOSS. I/M IS CURRENLTY DESIGNATED DNH AND IS BEING ACCOMMODATED WITH HEARING AIDS AND WILL BE ISSUED POCKET TALKER. I/M'S CURRENT METHODS OF EC ARE HEARINGS AND WRITTEN NOTES. SPEAK LOUDLY & CLEARLY.

| ▓▓▓▓▓▓ | ✓ | ▓▓▓▓▓▓ | 1 / 8 / 24 |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: _____    CDCR #: _____    CDCR 1824 Log #: 502652

| | |
|---|---|
| **Step 3:** | **DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below) |

☐ An Interim Accommodation **IS NOT required**.

Reason: _____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason: _____

_____

_____

**Accommodation(s) provided:**                          **Date provided:**

_____          ___/___/___

_____          ___/___/___

_____          ___/___/___

Comments: _____

_____

_____

| ██████████ | AGPA | | 01 / 09 / 24 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note: When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3. The interviews conducted in Step 2 will help with the decision in Step 3. Step 3 documents the decision. When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2. If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing. Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder. Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▮▮▮▮▮▮▮                                                    CDC #: ▮▮▮▮    PID #: ▮▮▮▮

**CHSS035C DPP Disability/Accommodation Summary** Monday January 08, 2024 03:47:35 PM

As of: 01/08/2024  ➡

## OFFENDER/PLACEMENT

CDC#: ▮▮▮
Name: ▮▮▮
Facility: SATF-Central Service
Housing S INF ▮▮▮▮
Area/Bed:
Placement 25
Score:
Custody Medium (A)
Designation:
Housing Correctional Treatment Center
Program:
Housing Barrier Free/Wheelchair Accessible
Restrictions: Grab Bar Required
Ground Floor-No Stairs
Lower/Bottom Bunk Only
Physical Inmate Attendant/Assistant
Limitations to Full Time Wheelchair User
Job/Other: Limited Wheelchair User
Transport Vehicle with Lift
Special Cuffing Needed
No Rooftop Work
Permanent - 12/31/9999

## DISABILITY ASSISTANCE

Current DDP Status: NCF
DDP Adaptive None
Support Needs:
Current DDP Status Date: 02/04/2000
DPP Codes: DPW, DNH
DPP Determination Date: 07/31/2023
Current MH LOC: CCCMS
Current MH LOC Date: 03/16/2015
SLI Required: No
Interview Date: 07/25/2017
Primary Method(s) - Hearing: Hearing Aids
Primary Method - Speech: Written Notes
Non-Formulary walker w/front wheels
Accommodations/Comments: orthotic boots, adult briefs,
hearing aids

Learning Disability: Unverified
Initial Reading Level: 01.0
Initial Reading Level Date: 12/05/2019
Durable Medical Equipment: Hearing Aid
Non-Invasive Airway
Assistive Devices - C-Pap
Machine
Diabetic Supplies/Monitors
Electrical Access
Eyeglass Frames
Incontinence Supplies
Truss Hernia Support
Walkers
Wheelchair
Languages Spoken:

## IMPORTANT DATES

Date Received: 12/14/1994
Last Returned
Date:
Release Date: 01/19/2055
Release Type: Earliest Possible Release Date

## WORK/VOCATION/PIA

Privilege Group: A
Work Group: A1
AM Job Start 05/12/2020
Date:
Status: Half-Time
Position #: PTR.010.006
Position Title: BLDG E-5 2/W PORTER
Regular Days Tue,Wed,Thu,Fri,Sat (07:30:00 -
On: 11:00:00)

**Disability Verification Process (DVP) Worksheet**
SIDE 1

| INMATE'S NAME (Print) | CDCR 1824 LOG NUMBER |
|---|---|
| ▇▇▇▇▇▇ | 502652 |
| CDCR NUMBER | |
| ▇▇▇▇▇ | |

## INSTRUCTIONS

- **A SME Shall COMPLETE SECTION 1 prior to or during the INITIAL RAP.**

- **When the RAP needs more information, the ADA Coordinator shall complete Section 2 during the RAP and assign the DVP for Section 3 to be completed (See back of form).**

---

**SECTION 1 – SME FINDINGS**

Person completing worksheet: G. Ugwueze, MD          Title: CME

Type of Review:  ☑ Health care review      ☐ Mental Health review      ☐ Education / learning disability review

☐ Other review: _____

☑ File Review conducted. Documents obtained:

☐ CDCR 1845    dated: __/__/__       ☐ CDCR 7410 dated: __/__/__       ☐ CDCR 128-C2: dated: __/__/__
☐ CDCR 7536    dated: __/__/__       ☐ CDC 7221-DME dated: __/__/__
☐ CDCR 128-C3: dated: __/__/__       ☐ CDCR 7388: dated: __/__/__       ☐ CDCR 7388:    dated: __/__/__
☐ Other: _____ dated: __/__/__       ☐ Other: _____ dated: __/__/__

☐ Recently evaluated for this issue.      Date seen: __/__/__

☐ Evaluation (exam/interview) scheduled.  Anticipated date to be seen: __/__/__

........................................................................................................................

Disability indicated: ☑ Yes      ☐ No      ☐ Unable to Determine

Summary of findings: DPP: DPW, DNH
~~DME: diabetic supplies/monitor, eyeglass, hearing aid, incontinence supplies,~~
CPAP, truss hernia support, walker, wheelchair

Summary of limitations: No Rooftop Work/Hazardous Restriction, Special Cuffing, Transport Vehicle With Lift, limited w/c user, FT w/c user, inmate attendant/assistant, bottom bunk, ground ~~floor- no stairs, barrier free w/c access, grab bars~~

Comments: Flame 250 digital hearing aid is the only type of hearing aid available at this time. It is recommended by the Hearing Aid Specialist to replace #13 battery every 7-10 days or as ~~needed. Patient is on 2000 Calorie Consistent Carbohydrates diabetic diet with prescribed diabetic snacks. Regular diet is not indicated for pt at this time due to pt's current medical condition.~~ Per CTC SRN, spoiled milk or rotten food are not distributed to CTC patients.

_____          1/10/24
Signature of Subject Matter Expert                   Date Signed

# Exhibit 53

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 1/3/2024        **Date IAC Received 1824:** 1/2/2024        **1824 Log Number:** 499284

**Inmate's Name:** ▮▮▮▮▮        **CDCR #:** ▮▮▮▮        **Housing:** E5▮▮▮

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Executive Officer A. Banerjee, Chief Medical Executive G. Ugweze, Chief Psychologist Dr. J. Howard, Health Care Grievance Representative ▮▮▮, Custody Appeals Representative ▮▮▮, Associate Governmental Program Analyst ▮▮▮, Health Program Manager III ▮▮▮, Registered Nurse ▮▮▮, Field Training Lieutenant ▮▮▮▮, Vice Principal ▮▮▮

**Summary of Inmate's 1824 Request:** Inmate reports they struggle to hear people; Inmate requests Communication Access Realtime Translation (CART).

### Interim Accommodation:

☒ No interim accommodation required:  You do not report difficulty accessing Programs, Services, or Activities (PSA)s or performing Activities of Daily Living (ADL)s.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports they struggle to hear people; Inmate requests Communication Access Realtime Translation (CART).

**Response:** On 1/3/2024, the RAP met and discussed your 1824, Reasonable Accommodation Request.

Your request to receive CART services during due process events was reviewed by the RAP committee. A review of SOMS indicates you are designated DNH and are accommodated with hearing aids and a Personal Sound Amplification Device (PSAD). A review of your communication methods shows that you do not require written notes to establish EC. Your request to use CART services has been denied. Your current Durable Medical Equipment (DME) and assistive devices provide equally effective means of achieving effective communication. Staff will continue to establish EC with you by ensuring you are wearing your hearing aids and speaking loudly and clearly if your hearing aids are not available or not working.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:**  If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife                          _(signature)_                          Date sent to inmate:

**ADA Coordinator/Designee**        **Signature**                                **JAN 3 1 2024**

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 491284 | CSATF OFFICE |

**TALK TO STAFF IF YOU HAVE AN EMERGENCY**

<u>DO NOT</u> use a CDCR 1824 to request health care or to request a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC.

JAN 02 2023

OF GRIEVANCES

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| | | | E5 – |

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
I need to have the CART Services BC of my hard of hearing.

**WHY CAN'T YOU DO IT?**
Sometime it hard to hear People when they are Speaking to me, even when I hear with my Hearing Aib.

**WHAT DO YOU NEED?**
I would like to get the [CART] Services Since I'm at hard of hearing.

(Use the back of this form if more space is needed)

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**    Yes ☑    No ☐    Not Sure ☐
List and attach documents, if available: Health services

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

INMATE'S SIGNATURE

12/29/23
DATE SIGNED

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|
| | | |

DRAFT

## Interim Accommodation Procedure (IAP) / Interview Worksheet

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) shall complete Step 1 below within 1 working day.
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

| Inmate: ▮▮▮▮▮ | CDCR #: ▮▮▮▮ | CDCR 1824 Log #: 499284 |
| --- | --- | --- |

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**          Date CDCR 1824 received by IAC: 1 / 2 / 2024

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

☐ **Yes / Unsure** (Complete Steps 2 &/or 3)          ☑ **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely navigate stairs.
- Cannot safely access upper bunk.
- Seizure disorder and is assigned an upper bunk.
- Workplace safety concerns.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▮▮▮▮▮ | SSA | ▮▮▮▮▮ | 1 / 2 / 2024 |
| --- | --- | --- | --- |
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**          *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: ____ / ____ / ____          Due back to IAC: ____ / ____ / ____          Returned to IAC: ____ / ____ / ____

Assigned to: _____          Title: _____

Information needed: _____
_____
_____

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

**Inmate Interview Date/Time:** _____    **Location:** _____

Interviewer notes: _____
_____
_____

**Staff Interviewed:** _____    Title: _____    Interview date: ____ / ____ / ____

Interviewer Notes: _____
_____

**Staff Interviewed:** _____    Title: _____    Interview date: ____ / ____ / ____

Interviewer Notes: _____
_____

*Notes:* I/M is DNH with a primary communication method of hearing aids and a secondary communication method of need to speak loudly and clearly. I/M is DD2 with a 4.0 reading level. Eligibility for CART services will be evaluated in RAP on the basis of reasonable accommodation.

| _____ | _____ | _____ | ___ / ___ / ___ |
| --- | --- | --- | --- |
| Interviewer (Print Name) | Title | Signature | Date Completed |

DRAFT

## IAP / Interview Worksheet

Inmate: ▮▮▮▮▮▮▮▮ _____     CDCR #: ▮▮▮▮ _____     CDCR 1824 Log #: ▮▮▮▮ _____

---

**Step 3:   DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐  An Interim Accommodation **IS NOT required**.

   Reason: _____

   _____

☐  An Interim Accommodation **IS required**.

   Reason: _____

   _____

| **Accommodation(s) provided:** | **Date provided:** |
|---|---|
| _____ | ____ / ____ / ____ |
| _____ | ____ / ____ / ____ |
| _____ | ____ / ____ / ____ |

   Comments: _____

   _____

   _____

| _____ | _____ | _____ | ____ / ____ / ____ |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note: When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

### IAP processing instructions for the Appeals Coordinator

- Step 1 must always be completed prior to the initial RAP
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3.  The interviews conducted in Step 2 will help with the decision in Step 3.  Step 3 documents the decision.  When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

### Step 2 Interviewer Instructions

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2.  If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing.  Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder.  Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▮▮▮▮▮▮▮                                                    CDC #: ▮▮▮▮    PID #: ▮▮▮▮

CHSS035C **DPP Disability/Accommodation Summary** Tuesday January 02, 2024 10:24:09 AM

As of: 01/02/2024 ➡

## OFFENDER/PLACEMENT

CDC#:
Name: ▮▮▮▮▮▮▮▮▮▮
Facility: SATF-Facility E
Housing Area/Bed: E 005 ▮▮▮▮
Placement Score: 25
Custody Medium (A)
Designation:
Housing Program: Sensitive Needs Yard
Housing
Restrictions:
Physical Limitations
to Job/Other:

## DISABILITY ASSISTANCE

Current DDP Status: DD2
DDP Adaptive 1. Communication - Slow simple
Support Needs: language/repeat as needed
2. Communication - Requires frequent reminders
3. Activities of Daily Living - Prompt for ducats/med line
4. Activities of Daily Living - Prompt for laundry exchange
5. Activities of Daily Living - Prompt & extra time: showers
6. Rules and Procedures - Assist to understand Rules/Procedures
7. Victimization - Vulnerable to pressuring/teasing
Current DDP Status Date: 05/05/2022
DPP Codes: DNH
DPP Determination Date: 05/08/2023
Current MH LOC: CCCMS
Current MH LOC Date: 07/01/2019
SLI Required: No
Interview Date: 05/10/2023
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly and Clearly
Non-Formulary
Accommodations/Comments:
Learning Disability:
Initial Reading Level: 04.0
Initial Reading Level Date: 12/20/2021
Durable Medical Equipment: Hearing Aid
Eyeglass Frames
Therapeutic Shoes/Orthotics
Languages Spoken:

## IMPORTANT DATES

Date Received: 08/20/2021
Last Returned
Date:
Release Date: 06/15/2041
Release Type: Earliest Possible Release Date

## WORK/VOCATION/PIA

Privilege Group: A
Work Group: A1
AM Job Start 12/29/2023
Date:
Status: Reentry
Position #: CB2.002.002
Position Title: E DRP CB2-2 VOC RM 102
Regular Days Monday, Wed, Friday (10:45:00 -
On: 12:45:00)

Exhibit 54

# REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date: 12/20/2023**          **Date IAC Received 1824: 12/13/2023**

**1824 Log Number:** ▮

**Inmate's Name:** ▮          **CDCR #:** ▮          **Housing: F2**▮

**RAP Staff Present: ADA Coordinator N. Scaife, Chief Physician and Surgeon Dr. N. Ndu, Psychologist Dr.** ▮**, Health Care Grievance Representative** ▮ ▮ **Custody Appeals Representative** ▮ ▮**, Associate Governmental Program Analyst** ▮**, Staff Services Analyst** ▮**, Field Training Lieutenant** ▮

**Summary of Inmate's 1824 Request: Inmate requests an iPad.**

## Interim Accommodation:

☒ **No interim accommodation required: You are not alleging a disability or requesting an accommodation to access Programs, Services, or Activities (PSA)s.**

## RAP RESPONSE:

**RAP is able to render a final decision on the following: Inmate requests an iPad.**

**Response: On 12/20/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.**

**You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, and access to the caption phone. Your current Effective Communication (EC) methods of hearing aids and need staff to speak loudly and clearly are sufficient to maintain EC during due process and all general communication. You do not require an iPad or iPhone with live captioning to access PSAs.**

**You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2, and your concerns will be addressed through the Inmate Appeal Process.**

# REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date: 12/20/2023**          **Date IAC Received 1824: 12/13/2023**

**1824 Log Number:** ▮▮▮▮▮

**Inmate's Name:** ▮▮▮▮▮          **CDCR #:** ▮▮▮▮▮          **Housing: F2-**▮▮▮▮▮

**Direction if dissatisfied:   If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.**

**N. Scaife_____**                    _____

**ADA Coordinator/Designee**                    **Signature**

**Date sent to inmate:**          JAN 1 2 2024

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 491830 | CSATF OFFICE  DEC 13 2023 |

**\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\***

<u>DO NOT</u> use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | OF GRIEVANCES |
|---|---|---|---|
| ▮▮▮▮▮▮▮ | ▮▮▮▮▮ | | F2 |

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**

I'm requesting the IPad tablet for communication

**WHY CAN'T YOU DO IT?**  It's better for communication

**WHAT DO YOU NEED?**  IPad Tablet

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**  Yes ☑  No ☐  Not Sure ☐

List and attach documents, if available:

I understand that s▮▮▮▮▮▮▮▮▮amine me, and my failure to cooperate may cause this request to be disapproved.

**INMATE'S SIGNATURE**     12/11/23  **DATE SIGNED**

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|

DRAFT

## Interim Accommodation Procedure (IAP) / Interview Worksheet

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day</u>.
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate ▮▮▮▮▮▮▮▮▮        CDCR #: ▮▮▮▮▮        CDCR 1824 Log #: 491830

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**            Date CDCR 1824 received by IAC: 12 / 13 / 2023

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

☐ **Yes / Unsure** (Complete Steps 2 &/or 3)        ☑ **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▮▮▮▮▮▮ | SSA | ▮▮▮▮▮▮▮ | 12 / 13 / 2023 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: ____ / ____ / ____        Due back to IAC: ____ / ____ / ____        Returned to IAC: ____ / ____ / ____

Assigned to: _____        Title: _____

Information needed: _____

_____

_____

_____

Note 1:  Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2:  IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time:_____        Location:_____

Interviewer notes: _____

_____

_____

**Staff Interviewed:** _____  Title: _____  Interview date: ____ / ____ / ____

Interviewer Notes: _____

_____

_____

**Staff Interviewed:** _____  Title: _____  Interview date: ____ / ____ / ____

Interviewer Notes: _____

_____

_____

***Notes:*** I/M is DNH and is currently accommodated with hearing aids and a pocket talker to use if they are not working correctly. I/M's communication methods include Primary: Hearing aids and Secondary: need staff to speak loudly and clearly. I/M may utilize their currently issued DME and assistive devices to effectively communicate with staff. I/M does not have a severe hearing impairment that would require the use of an ipad with caption software.

| _____ | _____ | _____ | ____ / ____ / ____ |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**                                          DRAFT

Inmate: ▮▮▮▮▮▮▮▮▮▮▮        CDCR #: ▮▮▮▮▮▮        CDCR 1824 Log #: 491830

---

**Step 3:   DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required.**

   Reason: _____

   _____

   _____

☐ An Interim Accommodation **IS required.**

   Reason: _____

   _____

   _____

**Accommodation(s) provided:**                                    **Date provided:**

_____       ____/____/____

_____       ____/____/____

_____       ____/____/____

Comments: _____

_____

_____

| _____ | _____ | _____ | ____/____/____ |
| Person Completing Step 3 | Title | Signature | Date Completed |

Note:  When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

### IAP processing Instructions for the Appeals Coordinator

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3.  The interviews conducted in Step 2 will help with the decision in Step 3.  Step 3 documents the decision.  When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

### Step 2 Interviewer Instructions

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2.  If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing.  Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder.  Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ███████████

**CHSS035C** **DPP Disability/Accommodation Summary** Wednesday December 13, 2023 10:14:32 AM

CDC #: ███████   PID #: ███████

As of: 12/13/2023 ➡

---

## OFFENDER/PLACEMENT

CDC#: ███████
Name: ███████
Facility: SATF-Facility F
Housing F 002 ███████
Area/Bed:
Placement Score: 19
Custody Medium (A)
Designation:
Housing Non-Designated Program Facility
Program:
Housing Grab Bar Required
Restrictions: Ground Floor-Limited Stairs
Lower/Bottom Bunk Only
Physical Inmate Attendant/Assistant
Limitations to No Rooftop Work
Job/Other: Permanent - 12/31/9999

## DISABILITY ASSISTANCE

Current DDP Status: NCF
DDP Adaptive None
Support Needs:
Current DDP Status Date: 08/10/2005
DPP Codes: DNH, DPV
DPP Determination Date: 10/26/2021
Current MH LOC: CCCMS
Current MH LOC Date: 11/05/2020
SLI Required: No
Interview Date: 07/08/2019
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly
and Clearly
Non-Formulary 128B EC dated 7/8/19
Accommodations/Comments: generated by ███████,
CCI

Primary: Hearing Aids
Alternate: Needs Staff to
Speak Loudly and Clearly
Learning Disability: Unverified
Initial Reading Level: 03.0
Initial Reading Level Date: 12/13/2021
Durable Medical Equipment: Hearing Aid
Canes
Vision Impaired Disability
Vest
Eyeglass Frames
Hearing Impaired Disability
Vest
Magnifying Device Needed
Languages Spoken:

---

## IMPORTANT DATES

Date Received: 07/11/2005
Last Returned
Date:
Release Date: 07/31/2063
Release Type: Minimum Eligible Parole Date

## WORK/VOCATION/PIA

Privilege Group: A
Work Group: A1
AM Job Start 04/20/2023
Date:
Status: Full Time
Position #: PTR.011.003
Position Title: F BLDG 2 PORTER 3/W
Regular Days On: Sunday through Thursday (14:30:00 -
16:30:00)
Sunday through Thursday (17:30:00 -
22:00:00)

# Exhibit 55

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023          **Date IAC Received 1824:** 12/11/2023          **1824 Log Number:** 490909

**Inmate's Name:** ▮▮▮          **CDCR #:** ▮▮▮          **Housing:** B1▮▮▮

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ▮▮ Health Care Grievance Representative ▮▮▮, Custody Appeals Representative ▮▮▮, Associate Governmental Program Analyst ▮▮▮, Staff Services Analyst ▮▮▮, Staff Services Analyst ▮▮▮, Education Representative ▮▮▮, Field Training Lieutenant ▮▮ ▮▮

**Summary of Inmate's 1824 Request:** Inmate reports being hearing impaired and having poor vision; Inmate requests a Personal Sound Amplification device, iPad, and a lighted magnifier.

### Interim Accommodation:

☒ Interim Accommodation Provided: You were issued a card magnifier and were informed of the full-page magnifier which is available for checkout in your building.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports being hearing impaired and having poor vision; Inmate requests a Personal Sound Amplification device, iPad, and a lighted magnifier.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

On 12/11/2023, you were issued a PSAD by a Field Training Sergeant (FTS). Please be advised, you may request battery exchange on a one for one basis by contacting the FTS on your Facility. Additionally, the FTS provided you with a card magnifier and informed you of the full-page magnifier which is available for checking in your building.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, and access to the caption phone. Your current Effective Communication (EC) method of need staff to speak loudly and clearly is sufficient to maintain EC during due process and all general communication. You do not require an iPad or iPhone with live captioning to access PSAs.

Due to its nature, your request was forwarded to Health Care Services for input. Health Care Services provided the RAP with a Disability Verification Process (DVP) Worksheet indicating your last vision exam with Ophthalmology was on 8/2/2023. Your vision in both eyes with corrective glasses is 20/20. You do not have a designated vision impairment; you do not qualify for an LED magnifier at this time.

You are encouraged to utilize the appropriate avenues to address issues, such as submitting a 7362 to Health Care Services for any medical related requests. If you are dissatisfied or disagree with the treatment being provided by Health Care Services, you may submit a 602HC and your concerns will be addressed through the Health Care Grievance Process. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife                                    _signature_                    Date sent to Inmate:      JAN 0 9 2024

**ADA Coordinator/Designee**          **Signature**

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 490909 | CSATF OFFICE |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***

<u>DO NOT</u> use a CDCR 1824 to request health care or to appeal a health care decision. This
may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

DEC 11 2023

OF GRIEVANCES

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| ▮▮▮▮▮▮▮▮▮ | ▮▮▮▮▮ | Canteen | B-1-▮▮ |

**INSTRUCTIONS**

- You may use this form if you have a physical or mental disability or if you believe you may have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**

Poor hearing
Poor Sight (Vision)

**WHY CAN'T YOU DO IT?**

~~the~~ Hard of Hearing
Bad Vision

**WHAT DO YOU NEED?**

Pocket Talker
Talk to Text Ipad
MagniPros magnifier

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**   Yes ☒   No ☐   Not Sure ☐

List and attach documents, if available:

I understand th▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ me, and my failure to cooperate may cause this request to be disapproved.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮                    12-8-23
**INMATE'S SIGNATURE**                **DATE SIGNED**

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|

## Interim Accommodation Procedure (IAP) / Interview Worksheet

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) **shall complete Step 1 below within 1 working day.**
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate: ▮▮▮▮▮▮    CDCR #: ▮▮▮▮▮    CDCR 1824 Log #: 490909

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**    Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is
being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)    [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

**Issues that may cause the inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely navigate stairs.
- Cannot safely access upper bunk.
- Seizure disorder and is assigned an upper bunk.
- Workplace safety concerns.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▮▮▮▮▮▮ | AGPA | ▮▮▮▮▮▮ | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 12 / 11 / 23    Due back to IAC: 12 / 12 / 23    Returned to IAC: 12 / 12 / 23

Assigned to: FACILITY B    Title: FTS

Information needed: PLEASE ISSUE I/M A POCKET TALKER. PLEASE OFFER I/M A CARD SIZED MAGNIFIER
AND ADVISE OF THE AVAILABILITY OF THE FULL PAGE MAGNIFIER FOR CHECK OUT.

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time: 12/11/23  16 20    Location: B-1

Interviewer notes: I/m WAS ISSUED A POCKET TALKER & A CARD MAGNIFER. I/M WAS INFORMED OF THE FULL PAGE MAGNIFER

Staff Interviewed: _____    Title: _____    Interview date: ___ / ___ / ___

Interviewer Notes: _____

Staff Interviewed: _____    Title: _____    Interview date: ___ / ___ / ___

Interviewer Notes: _____

**Notes:** FORWARD TO HC FOR INPUT REGARDING REQUEST FOR LED MAGNIFIER. A REVIEW OF SOMS
INDICATES I/M DOES NOT HAVE A DESIGNATED VISION IMPAIRMENT. ADAC APPROVES ISSUANCE OF
POCKET TALKER.

| ▮▮▮▮▮▮ | SGT | ▮▮▮▮▮▮ | 12 / 11 / 23 |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: ▬▬▬▬▬▬▬    CDCR #: ▬▬▬▬▬    CDCR 1824 Log #: <u>490909</u>

---

**Step 3:** **DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required**.

Reason:_____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason:_____

_____

_____

Accommodation(s) provided:                                    Date provided:

_____    ____/____/____

_____    ____/____/____

_____    ____/____/____

Comments:_____

_____

_____

| ▬▬▬▬▬▬▬ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note: When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing Instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3. The interviews conducted in Step 2 will help with the decision in Step 3. Step 3 documents the decision. When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2. If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing. Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder. Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▮▮▮▮▮▮▮▮▮                                                 CDC #: ▮▮▮▮  PID #: ▮▮▮▮

CHSS035C **DPP Disability/Accommodation Summary** Monday December 11, 2023 04:03:53 PM

As of: 12/11/2023  ➡

| OFFENDER/PLACEMENT | DISABILITY ASSISTANCE |
|---|---|
| CDC#: ▮▮▮ | Current DDP Status: NCF |
| Name: ▮▮▮▮▮▮▮ | DDP Adaptive None |
| Facility: SATF-Facility B | Support Needs: |
| Housing Area/Bed: B 001 ▮▮▮▮ | Current DDP Status Date: 02/21/2003 |
| Placement Score: 19 | DPP Codes: DNM, DNH |
| Custody Designation: Medium (A) | DPP Determination Date: 11/21/2022 |
| Housing Program: General Population | Current MH LOC: GP |
| Housing Restrictions: Ground Floor-Limited Stairs | Current MH LOC Date: 11/19/2010 |
| Lower/Bottom Bunk Only | SLI Required: No |
| Physical Limitations to | Interview Date: 11/24/2021 |
| Job/Other: | Primary Method(s) - Hearing: Need Staff to Speak Loudly and Clearly |
| | Alternate Method - Hearing: None |
| | Non-Formulary |
| | Accommodations/Comments: |
| | Learning Disability: |
| | Initial Reading Level: 07.9 |
| | Initial Reading Level Date: 10/27/2021 |
| | Durable Medical Equipment: Hearing Aid |
| | Ankle Foot Orthoses/Knee Ankle Foot Orthoses (AFO/KAFO) |
| | Eyeglass Frames |
| | Knee Braces |
| | Therapeutic Shoes/Orthotics |
| | Languages Spoken: |

| IMPORTANT DATES | WORK/VOCATION/PIA |
|---|---|
| Date Received: 03/18/2019 | Privilege Group: A |
| Last Returned | Work Group: A1 |
| Date: | AM Job Start 06/05/2021 |
| Release Date: 05/11/2036 | Date: |
| Release Type: Earliest Possible Release Date | Status: Full Time |
| | Position #: CAN.002.002 |
| | Position Title: B FAC CANTEEN WRKR |
| | Regular Days Monday through Friday (08:30:00 - On: 11:30:00) |
| | Monday through Friday (12:00:00 - 15:30:00) |

**Disability Verification Process (DVP)**
**Worksheet**
SIDE 1

| INMATE'S NAME (Print) | CDCR 1824 LOG NUMBER |
|---|---|
| ▮▮▮▮▮ | 490909 |
| CDCR NUMBER ▮▮▮▮▮ | |

## INSTRUCTIONS

- **A SME Shall COMPLETE SECTION 1 prior to or during the INITIAL RAP.**
- **When the RAP needs more information, the ADA Coordinator shall complete Section 2 during the RAP and assign the DVP for Section 3 to be completed (See back of form).**

---

**SECTION 1 – SME FINDINGS**

Person completing worksheet: G. Ugwueze, MD          Title: CME

Type of Review: [✓] Health care review   [ ] Mental Health review   [✓] Education / learning disability review
[ ] Other review: _____

[✓] File Review conducted.  Documents obtained:

| | | |
|---|---|---|
| [ ] CDCR 1845  dated: __/__/__ | [ ] CDCR 7410 dated: __/__/__ | [ ] CDCR 128-C2: dated: __/__/__ |
| [ ] CDCR 7536  dated: __/__/__ | [ ] CDC 7221-DME dated: __/__/__ | |
| [ ] CDCR 128-C3: dated: __/__/__ | [ ] CDCR 7386: dated: __/__/__ | [ ] CDCR 7388: dated: __/__/__ |
| [ ] Other: _____ dated: __/__/__ | [ ] Other: _____ dated: __/__/__ | |

[ ] Recently evaluated for this issue.     Date seen: __/__/__

[ ] Evaluation (exam/interview) scheduled.  Anticipated date to be seen: __/__/__

Disability indicated: [✓] Yes   [ ] No   [ ] Unable to Determine

DPP: DNM, DNH

Summary of findings: DME: Permanent: AFO/Knee AFO, eyeglasses, hearing aid, knee braces, therapeutic shoes

Summary of limitations: Bottom Bunk, Ground Floor- Limited Stairs

Comments: Patient's last vision exam with Ophthalmology was on 8/2/23. Patient's vision in both eyes with corrective glasses is 20/20. Patient does not have a designated vision impairment; patient does not qualify for an LED magnifier at this time.

Signature of Subject Matter Expert          Date Signed 12/15/2023

Exhibit 56

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023 **Date IAC Received 1824:** 12/11/2023 **1824 Log Number:** 490979

**Inmate's Name:** ▮▮▮ **CDCR #:** ▮▮▮ **Housing:** B3▮▮▮

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ▮▮▮, Health Care Grievance Representative ▮▮▮, Custody Appeals Representative ▮▮▮, Associate Governmental Program Analyst▮▮▮, Staff Services Analyst▮▮▮, Staff Services Analyst▮▮▮ Education Representative ▮▮▮ Field Training Lieutenant ▮▮▮

**Summary of Inmate's 1824 Request:** Inmate reports they are hearing impaired; Inmate requests a Personal Sound Amplification Device (PSAD) and an iPad.

### Interim Accommodation:

☒ No interim accommodation required: You were issued a PSAD on 12/11/2023.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports they are hearing impaired; Inmate requests a Personal Sound Amplification Device (PSAD) and an iPad.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

On 12/11/2023, you were issued a PSAD by a Field Training Sergeant (FTS). Please be advised, you may request battery exchange on a one for one basis from the FTS on your Facility.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, access to the caption phone, and Communication Access Real-time Translation (CART) during due process events. Your current Effective Communication (EC) methods of need staff to speak loudly and clearly and written notes are sufficient to maintain EC during due process and all general communication. You do not require an iPad or iPhone with live captioning to access PSAs.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife

**ADA Coordinator/Designee**    **Signature**    Date sent to inmate:

JAN 0 9 2024

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 490979 | SATF OFFICE DEC 11 2023 |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***

**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| | | | B3- |

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**

I am severly hearing impaired.

**WHY CAN'T YOU DO IT?**

I am partially deaf.

**WHAT DO YOU NEED?**

Super ear SE.5000, i-Pad and Iphone for hearing impairment I am diagnosed with.

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**   Yes ☑   No ☐   Not Sure ☐

List and attach documents, if available:

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

**INMATE'S SIGNATURE**          12/8/23   **DATE SIGNED**

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|
| | | |

**Interim Accommodation Procedure (IAP) / Interview Worksheet**

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day.</u>
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate: [redacted]          CDCR #: [redacted]          CDCR 1824 Log #: 490979

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**          Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)     [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.

| [redacted] | AGPA | [redacted] | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2   CDCR 1824 INTERVIEWS**     *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 12 / 11 / 23          Due back to IAC: 12 / 12 / 23          Returned to IAC: ___ / ___ / ___
Assigned to: FACILITY B                                                    Title: FTS

Information needed: PLEASE ISSUE I/M A POCKET TALKKER.

_____

_____

_____

Note 1:  Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2:  IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time:_____     Location:_____

Interviewer notes: _____

_____

**Staff Interviewed:** [redacted]          Title: FTS          Interview date: 12 / 11 / 23
Interviewer Notes: I/m was issued a pocket talker

_____

**Staff Interviewed:** _____          Title: _____          Interview date: ___ / ___ / ___
Interviewer Notes: _____

_____

*Notes:*  ADAC APPROVES ISSUANCE OF POCKET TALKER. ADAC WILL REVIEW REQUEST FOR I-PAD.

_____

| [redacted] | AGPA | [redacted] | 12 / 11 / 23 |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: ███████    CDCR #: ███████    CDCR 1824 Log #: 490979

---

**Step 3:** **DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required**.

Reason: _____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason: _____

_____

_____

**Accommodation(s) provided:**                                   **Date provided:**

_____    ___/___/_____

_____    ___/___/_____

_____    ___/___/_____

Comments: _____

_____

| ███████████ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

**Note:** When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3. The interviews conducted in Step 2 will help with the decision in Step 3. Step 3 documents the decision. When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2. If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing. Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder. Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ████████

CDC #: ████    PID #: ████

**CHSS035C** **DPP Disability/Accommodation Summary** Tuesday December 12, 2023 08:21:33 AM

As of: 12/12/2023 ➡️

| OFFENDER/PLACEMENT | DISABILITY ASSISTANCE |
|---|---|
| | |

### OFFENDER/PLACEMENT

CDC#: ████
Name: ████
Facility: SATF-Facility B
Housing Area/Bed: B 003 ████
Placement Score: 32
Custody Designation: Medium (A)
Housing Program: General Population
Housing Restrictions: Ground Floor-Limited Stairs
Lower/Bottom Bunk Only
Physical Limitations to
Job/Other:

### DISABILITY ASSISTANCE

Current DDP Status: NCF
DDP Adaptive None
Support Needs:
Current DDP Status Date: 01/11/2007
DPP Codes: DNM, DNH
DPP Determination Date: 06/22/2023
Current MH LOC: GP
Current MH LOC Date: 12/19/2016
SLI Required: No
Interview Date: 08/21/2023
Primary Method(s) - Hearing: Need Staff to Speak Loudly and Clearly
Primary Method - Speech: Written Notes
Non-Formulary CART service shall be provided
Accommodations/Comments: during due process events.
Learning Disability:
Initial Reading Level: 12.9
Initial Reading Level Date: 09/15/2009
Durable Medical Equipment: Hearing Aid
Eyeglass Frames
Hearing Impaired Disability Vest
Knee Braces
Languages Spoken:

### IMPORTANT DATES

Date Received: 01/10/2007
Last Returned
Date:
Release Date: 05/19/2022
Release Type: Minimum Eligible Parole Date

### WORK/VOCATION/PIA

Privilege Group: A
Work Group: A1
AM Job Start 05/22/2023
Date:
Status: Reentry
Position #: CB2.007.002
Position Title: B DRP CB2-3 VOC RM 109
Regular Days On: Monday, Wed, Friday (13:15:00 - 15:15:00)

# Exhibit 57

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023        **Date IAC Received 1824:** 12/11/2023        **1824 Log Number:** 490984

**Inmate's Name:** ▮▮▮▮▮        **CDCR #:** ▮▮▮▮        **Housing:** B3▮▮▮

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ▮▮▮ Health Care Grievance Representative ▮▮▮ Custody Appeals Representative ▮▮▮ Associate Governmental Program Analyst ▮▮▮ Staff Services Analyst ▮▮▮ Staff Services Analyst ▮▮▮ Education Representative ▮▮▮ Field Training Lieutenant ▮

**Summary of Inmate's 1824 Request:** Inmate reports being hearing impaired; Inmate requests a Personal Sound Amplification Device (PSAD) and iPad.

---

<u>Interim Accommodation:</u>

☒ No interim accommodation required: You were issued a PSAD on 12/11/2023.

---

## RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports being hearing impaired; Inmate requests a Personal Sound Amplification Device (PSAD) and iPad.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

On 12/11/2023, you were issued a PSAD by a Field Training Sergeant (FTS). Please be advised, you may request battery exchanges on a one for one basis by contacting the FTS on your Facility.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, and access to the caption phone. Your current Effective Communication (EC) methods of hearing aids and need staff to speak loudly and clearly are sufficient to maintain EC during due process and all general communication. You do not require an iPad or iPhone with live captioning to access PSAs.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

JAN 0 9 2024

N. Scaife _____        _____        **Date sent to inmate:**

**ADA Coordinator/Designee**        **Signature**

RAP Response - rev 08-17-17.docx

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 490984 | ___ TH OFFICE |
| | | DEC 11 2023 |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***
<u>DO NOT</u> use a CDCR 1824 to request health care or to appeal a health care decision. This
may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| | | B3 - Dining | B3 |

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**

Can't hear using hearing aids
need Pocket talker.          DPH

**WHY CAN'T YOU DO IT?**

Hearing aids not efficient
for my hearing needs.

**WHAT DO YOU NEED?**

Pocket talker
Super EAR ee/5000
Ipad/Iphone

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**     Yes ☐   No ☐   Not Sure ☐

List and attach documents, if available:

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

_____                    12/8/23
            **INMATE'S SIGNATURE**                         **DATE SIGNED**

Assistance in completing this form was provided by:

_____        _____        _____
        Last Name                        First Name                        Signature

**Interim Accommodation Procedure (IAP) / Interview Worksheet**

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day.</u>
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate: ▓▓▓▓▓▓                    CDCR #: ▓▓▓▓▓        CDCR 1824 Log #: __490984__

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**          Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is
being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

☐ **Yes / Unsure** (Complete Steps 2 &/or 3)      ☑ **No** (None of the issues below are present) [Note: IAC may still
                                              obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.

| ▓▓▓▓▓▓ | AGPA | ▓▓▓▓▓▓ | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 12 / 11 / 23        Due back to IAC: 12 / 12 / 23        Returned to IAC: ___ / ___ / ___

Assigned to: FACILITY B _____        Title: FTS _____

Information needed: <u>PLEASE ISSUE I/M A POCKET TALKKER.</u>

_____

_____

_____

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time:_____    Location:_____

Interviewer notes: _____

_____

Staff Interviewed: ▓▓▓▓▓▓____    Title: FTS    Interview date: 12 / 11 / 23

Interviewer Notes: I/m was issued a pocket talker _____

_____

Staff Interviewed: _____    Title: _____    Interview date: ___ / ___ / ___

Interviewer Notes: _____

_____

**Notes:** ADAC APPROVES ISSUANCE OF POCKET TALKER. ADAC WILL REVIEW REQUEST FOR I-PAD

_____

| ▓▓▓▓▓▓ | AGPA | ▓▓▓▓▓▓ | 12 / 11 / 23 |
|---|---|---|---|
| **Interviewer (Print Name)** | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: ▮▮▮▮▮▮▮    CDCR #: ▮▮▮▮▮    CDCR 1824 Log #: 490984

---

**Step 3:  DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY (See Note below)**

☐ An Interim Accommodation **IS NOT required**

Reason:_____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason:_____

_____

_____

**Accommodation(s) provided:**                                      **Date provided:**

_____    ___/___/___

_____    ___/___/___

_____    ___/___/___

Comments: _____

_____

| ▮▮▮▮▮▮▮▮ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note:  When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing Instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3.  The interviews conducted in Step 2 will help with the decision in Step 3.  Step 3 documents the decision.  When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2.  If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing.  Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder.  Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▮▮▮▮▮▮▮▮▮▮                                      CDC #: ▮▮▮▮    PID #: ▮▮▮▮

CHSS035C **DPP Disability/Accommodation Summary** Tuesday December 12, 2023 08:24:55 AM

As of: 12/12/2023 ➡

---

### OFFENDER/PLACEMENT
CDC#: ▮▮▮▮
Name: ▮▮▮▮▮▮▮▮▮▮
Facility: SATF-Facility B
Housing Area/Bed: B 003 ▮▮▮▮
Placement Score: 19
Custody: Medium (A)
Designation:
Housing Program: General Population
Housing: Lower/Bottom Bunk Only
Restrictions:
  Physical Special Cuffing Needed
Limitations to Lifting: Restriction- Unable to Lift more
Job/Other: than 19 Pounds
  Permanent - 12/31/9999

### DISABILITY ASSISTANCE
Current DDP Status: NCF
DDP Adaptive: None
Support Needs:
Current DDP Status Date: 05/13/2003
DPP Codes: DNH
DPP Determination Date: 08/31/2020
Current MH LOC: CCCMS
Current MH LOC Date: 07/11/2003
SLI Required: No
Interview Date: 08/31/2020
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly and
  Clearly
Non-Formulary: EEC 128B completed 8-31-20 by
Accommodations/Comments: SLI
  TimeStamp: 31 August 2020
  12:00:24 --- User: ▮▮▮▮
  ▮▮▮▮▮▮
Learning Disability:
Initial Reading Level: 06.6
Initial Reading Level Date: 09/25/2018
Durable Medical Equipment: Hearing Aid
  Back Braces
  Canes
  Mobility Impaired Disability Vest
  Eyeglass Frames
  Walkers
Languages Spoken:

---

### IMPORTANT DATES
Date Received: 08/21/1981
Last Returned
Date:
Release Date: LWOP
Release Type: Minimum Eligible Parole Date

### WORK/VOCATION/PIA
Privilege Group: A
Work Group: A1
AM Job Start: 07/22/2023
Date:
Status: Full Time
Position #: DRW.002.003
Position Title: B DINING ROOM WKR
Regular Days On: Sun, Wed, Thu, Fri, Sat (12:30:00 -
  16:30:00)
  Sun, Wed, Thu, Fri, Sat (17:00:00 -
  20:00:00)

# Exhibit 58

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023      **Date IAC Received 1824:** 12/11/2023      **1824 Log Number:** 490952

**Inmate's Name:** ▇▇▇▇      **CDCR #:** ▇▇▇▇      **Housing:** F2-▇▇▇▇

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ▇▇▇▇ Health Care Grievance Representative ▇▇▇▇, Custody Appeals Representative ▇▇▇▇, Associate Governmental Program Analyst ▇▇▇▇, Staff Services Analyst ▇▇▇▇, Staff Services Analyst ▇▇▇▇, Education Representative ▇▇▇▇, Field Training Lieutenant ▇▇▇▇

**Summary of Inmate's 1824 Request:** Inmate reports being hearing impaired; Inmate requests Over The Ear Headphones (OTEH) and an IPad.

---

### Interim Accommodation:

☒ No interim accommodation required: You do not report difficulty accessing Programs, Services, or Activities (PSA)s or performing Activities of Daily Living (ADL)s.

---

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports being hearing impaired; Inmate requests Over The Ear Headphones and an iPad.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

You are eligible for Over The Ear Headphones (OTEH); However, SATF is currently out of stock. You have been placed on the waiting list to receive OTEH. Once stock arrives and your name is reached on the list, you will be provided OTEH.

You were issued a Personal Sound Amplification Device (PSAD) on 12/13/2023. You may request one for one exchange of the battery by contacting your facility FTS.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, access to the caption phone, and Communication Access Real-time Translation (CART) during due process events. Your current Effective Communication (EC) methods of hearing aids and written notes are sufficient to maintain EC during due process and all general communication. You do not require an iPad with live captioning to access PSAs.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife
_____
**ADA Coordinator/Designee**

_signature_
_____
**Signature**

**Date sent to Inmate:**  JAN 0 9 2024

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) 490952 | DATE RECEIVED BY STAFF: DEC 11 2023 ~STAFF~ VANCES |
|---|---|---|

**\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\***
DO NOT use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT PTR./3W | HOUSING F3- |
|---|---|---|---|

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
HAVING DIFFICULTY HEARING T.V. + TABLET. ATTENDED
ADA MEETING ON: 12-09-23 WITH ADA SERGEANT
INSTRUCTED ME TO SUBMIT THIS REQUEST
IN ORDER TO OBTAIN TWO (2) ASSISTANCE ITEMS.

**WHY CAN'T YOU DO IT?**
DO NOT HAVE APPROPRIATE HEARING ASSISTANCE
MATERIALS, OTHER THAN BILATERAL HEARING
AIDS WHICH CANNOT BE USED FOR TELEVISION
VIEWING.

**WHAT DO YOU NEED?** I RESPECTFULLY REQUEST ISSUANCE OF ONE
1) PAIR OF ACOUSTIC (OVER EARS) HEADPHONES TO
BE USED WITH TABLET & TELEVISION.

2) I-TABLET TO IMPROVE ABILITY TO COMMUNICATE
& RECEIVE INFORMATION.

*(Use the back of this form if more space is needed)*

| DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY? | Yes ☑ | No ☐ | Not Sure ☐ |
|---|---|---|---|

List and attach documents, if available: PLEASE SEE MEDICAL FILE WHICH
REFLECTS MY HEARING-IMPAIRMENT. THANK YOU!

I under... ...perate may cause this request to be disapproved.

| INMATE'S SIGNATURE | DATE SIGNED 12-10-2023 |
|---|---|

Assistance in completing this form was provided by:

N/A

| Last Name | First Name | Signature |
|---|---|---|

**Interim Accommodation Procedure (IAP) / Interview Worksheet**

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) shall complete Step 1 below within 1 working day.
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

| Inmate: ▓▓▓▓ | CDCR #: ▓▓▓▓ | CDCR 1824 Log #: 490952 |
|---|---|---|

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**          Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? Base your assessment solely on the inmate's claim, assuming the claim is true.

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)          [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely navigate stairs.
- Cannot safely access upper bunk.
- Seizure disorder and is assigned an upper bunk.
- Workplace safety concerns.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▓▓▓▓▓ | AGPA | ▓▓▓▓▓ | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**          *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: ____ / ____ / ____          Due back to IAC: ____ / ____ / ____          Returned to IAC: ____ / ____ / ____

Assigned to: _____          Title: _____

Information needed: _____

_____

_____

_____

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time: _____ Location: _____

Interviewer notes: _____

_____

_____

Staff Interviewed: _____ Title: _____ Interview date: ____ / ____ / ____

Interviewer Notes: _____

_____

_____

Staff Interviewed: _____ Title: _____ Interview date: ____ / ____ / ____

Interviewer Notes: _____

_____

_____

*Notes:*  I/M IS ELIGIBLE FOR OTEH; HOWEVER, SATF IS CURRENTLY OUT OF STOCK. I/M HAS BEEN PLACED ON WAITING LIST TO RECEIVE OTEH. ONCE STOCK ARRIVES AND NAME IS REACHED ON LIST, I/M WILL BE PROVIDED OTEH. ADAC WILL REVIEW REQUEST FOR I-PAD. I/M was issued a PSAP on 12/18/23

| _____ | _____ | _____ | ____ / ____ / ____ |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: _____    CDCR #: _____    CDCR 1824 Log #: 490952 _____

| | |
|---|---|
| **Step 3:** | **DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below) |

☐ An Interim Accommodation **IS NOT required**.

Reason: _____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason: _____

_____

_____

**Accommodation(s) provided:**                                                    **Date provided:**

_____      ____ / ____ / ____

_____      ____ / ____ / ____

_____      ____ / ____ / ____

Comments: _____

_____

_____

| ▮▮▮▮▮▮▮▮ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note: When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing Instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3. The interviews conducted in Step 2 will help with the decision in Step 3. Step 3 documents the decision. When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2. If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing. Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder. Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▮▮▮▮▮                                                    CDC #: ▮▮▮    PID #: ▮▮▮▮

**CHSS035C DPP Disability/Accommodation Summary** Monday December 11, 2023 04:17:43 PM

As of: 12/11/2023 ➡

---

**OFFENDER/PLACEMENT**

- CDC#:
- Name:
- Facility: SATF-Facility F
- Housing F 002 ▮▮▮▮
- Area/Bed:
- Placement 19
- Score:
- Custody Medium (A)
- Designation:
  - Housing Non-Designated Program Facility
- Program:
  - Housing Ground Floor-No Stairs
- Restrictions: Lower/Bottom Bunk Only
  - Physical Special Cuffing Needed
- Limitations to Permanent - 12/31/9999
- Job/Other:

**DISABILITY ASSISTANCE**

- Current DDP Status: NCF
- DDP Adaptive None
- Support Needs:
- Current DDP Status Date: 05/23/2003
- DPP Codes: DPM, DNH
- DPP Determination Date: 10/19/2023
- Current MH LOC: GP
- Current MH LOC Date: 08/12/2008
- SLI Required: No
- Interview Date: 08/21/2023
- Primary Method(s) - Hearing: Hearing Aids
- Primary Method - Speech: Written Notes
- Non-Formulary CART service shall be
- Accommodations/Comments: provided during due
  - process events.
- Learning Disability:
- Initial Reading Level: 10.0
- Initial Reading Level Date: 11/05/1986
- Durable Medical Equipment: Hearing Aid
  - Back Braces
  - Canes
  - Mobility Impaired
  - Disability Vest
  - Eyeglass Frames
  - Hearing Impaired
  - Disability Vest
  - Incontinence Supplies
  - Therapeutic
  - Shoes/Orthotics
  - Walkers
- Languages Spoken:

---

**IMPORTANT DATES**

- Date Received: 09/18/1984
- Last Returned 04/10/1986
- Date:
- Release Date: 11/25/1994
- Release Type: Minimum Eligible Parole Date

**WORK/VOCATION/PIA**

- Privilege Group: A
- Work Group: A1
- AM Job Start 07/07/2023
- Date:
- Status: Full Time
- Position #: PTR.011.004
- Position Title: F BLDG 2 PORTER 3/W
- Regular Days On: Tue,Wed,Thu,Fri,Sat (14:30:00 - 16:30:00)
  - Tue,Wed,Thu,Fri,Sat (17:30:00 - 22:00:00)

Exhibit 59

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023    **Date IAC Received 1824:** 12/11/2023    **1824 Log Number:** 490970

**Inmate's Name:** ▮▮▮▮    **CDCR #:** ▮▮▮▮    **Housing:** B3-▮▮▮

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ▮▮▮, Health Care Grievance Representative ▮▮▮ Custody Appeals Representative ▮▮▮, Associate Governmental Program Analyst ▮▮▮, Staff Services Analyst ▮▮▮, Staff Services Analyst ▮▮▮, Education Representative ▮▮▮, Field Training Lieutenant ▮▮▮

**Summary of Inmate's 1824 Request:** Inmate requests a Personal Sound Amplification Device (PSAD) and an iPad with live captioning technology.

### Interim Accommodation:

☒ No interim accommodation required: You were issued a PSAD on 12/11/2023.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate requests a Personal Sound Amplification Device (PSAD) and an iPad with live captioning technology.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

On 12/11/2023, you were issued a PSAD by your Facility Field Training Sergeant (FTS). Please be advised, you may request battery exchange on a one for one basis by contacting your Facility FTS.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, and access to the caption phone. Your current Effective Communication (EC) methods of need staff to speak loudly and clearly and hearing aids are sufficient to maintain EC during due process and all general communication. You do not require an iPad with live captioning to access PSAs.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife _____    _____~.~_____    **Date sent to inmate:**    **JAN 0 9 2024**

**ADA Coordinator/Designee**    **Signature**

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| *SATF* | *490970* | *SATF OFFICE* *DEC 11 2023* *OF GRIEVANCES* |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\***
**DO NOT** use a CDCR 1324 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT *ADA* | HOUSING *B-3* |
|---|---|---|---|

INSTRUCTIONS:
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**
*Can't hear using hearing Aids
need pocket talker DPH*

**WHY CAN'T YOU DO IT?**
*Hearing Aids not efficent for my
hearing needs*

**WHAT DO YOU NEED?**
*Pocket talker
I pad / I phone
Super EAR se/5000*

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**  Yes ☐  No ☐  Not Sure ☐

List and attach documents, if available:

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| INMATE'S SIGNATURE | DATE SIGNED *12-8-23* |
|---|---|

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|

**Interim Accommodation Procedure (IAP) / Interview Worksheet**

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day.</u>
Step 2 should be completed whenever the inmate's request is unclear or when additional input from the inmate and/or staff will help the RAP better understand the request.

Inmate: █████████    CDCR #: ████████    CDCR 1824 Log #: 490970

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**    Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)    [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.

| ████████████ | AGPA | ████████████ | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2    CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 12 / 11 / 23    Due back to IAC: 12 / 12 / 23    Returned to IAC: ___ / ___ / ___

Assigned to: FACILITY B    Title: FTS

Information needed: PLEASE ISSUE I/M A POCKET TALKKER.

Note 1:  Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2:  IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time: _____    Location: _____

Interviewer notes: _____

**Staff Interviewed:** ███████████    Title: FTS    Interview date: 12 / 11 / 23
Interviewer Notes: I/m was issued a pocket Talker

**Staff Interviewed:** _____    Title: _____    Interview date: ___ / ___ / ___
Interviewer Notes: _____

*Notes:*  ADAC APPROVES ISSUANCE OF POCKET TALKER. ADAC WILL REVIEW REQUEST FOR I-PAD.

| ████████████ | AGPA | ████████████ | 12 / 11 / 23 |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: ▮▮▮▮▮▮▮        CDCR #: ▮▮▮▮▮        CDCR 1824 Log #: 490970

---

**Step 3:    DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐    An Interim Accommodation **IS NOT required**.

    Reason: _____

    _____

☐    An Interim Accommodation **IS required**.

    Reason: _____

    _____

    _____

    **Accommodation(s) provided:**                                        **Date provided:**

    _____        ____ / ____ / _____

    _____        ____ / ____ / _____

    _____        ____ / ____ / _____

    Comments: _____

    _____

    _____

| ▮▮▮▮▮▮▮ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note:  When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3.  The interviews conducted in Step 2 will help with the decision in Step 3.  Step 3 documents the decision.  When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2.  If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing.  Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder.  Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ██████████████                                    CDC #: ████████  PID #: ██████████

**CHSS035C DPP Disability/Accommodation Summary** Tuesday December 12, 2023 08:18:02 AM

As of: | 12/12/2023 |  ➡

---

| **OFFENDER/PLACEMENT** | **DISABILITY ASSISTANCE** |
|---|---|

**OFFENDER/PLACEMENT**
CDC#: ████████
Name: ████████████
Facility: SATF-Facility B
Housing Area/Bed: B 003 ████
Placement Score: 19
Custody: Medium (A)
Designation:
Housing Program: General Population
Housing: Ground Floor-No Stairs
Restrictions: Lower/Bottom Bunk Only
Physical Lifting Restriction- Unable to Lift
Limitations to more than 19 Pounds
Job/Other: No Rooftop Work
Permanent - 12/31/9999

**DISABILITY ASSISTANCE**
Current DDP Status: NCF
DDP Adaptive: None
Support Needs:
Current DDP Status Date: 09/13/2002
DPP Codes: DPM, DNH
DPP Determination Date: 05/01/2023
Current MH LOC: GP
Current MH LOC Date: 06/08/2006
SLI Required: No
Interview Date: 05/03/2023
Primary Method(s) - Hearing: Need Staff to Speak Loudly and Clearly
Alternate Method - Hearing: Hearing Aids
Non-Formulary: Enter late into SOMS by CCII ████
Accommodations/Comments: ████████  Interview completed by SLI on 5-3-23
Learning Disability:
Initial Reading Level: 04.0
Initial Reading Level Date: 06/03/2021
Durable Medical Equipment: Hearing Aid
Back Braces
Canes
Mobility Impaired Disability Vest
Eyeglass Frames
Hearing Impaired Disability Vest
Incontinence Supplies
Knee Braces
Therapeutic Shoes/Orthotics
Languages Spoken:

---

| **IMPORTANT DATES** | **WORK/VOCATION/PIA** |
|---|---|

**IMPORTANT DATES**
Date Received: 04/07/1993
Last Returned Date:
Release Date: LWOP
Release Type: Minimum Eligible Parole Date

**WORK/VOCATION/PIA**
Privilege Group: A
Work Group: A1
AM Job Start: 03/12/2020
Date:
Status: Full Time
Position #: AD1.002.006
Position Title: B B-2 ADA WORKER GROUP A
Regular Days On: Sun,Mon,Tue, Fri,Sat (14:30:00 - 17:00:00)
Sun,Mon,Tue, Fri,Sat (17:30:00 - 21:30:00)

Exhibit 60

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023   **Date IAC Received 1824:** 12/11/2023   **1824 Log Number:** 490976

**Inmate's Name:** ███████   **CDCR #:** ██████   **Housing:** B3-████

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ████ Health Care Grievance Representative █████ Custody Appeals Representative █████ Associate Governmental Program Analyst █████ Staff Services Analyst █████ Staff Services Analyst █████ Education Representative █████ Field Training Lieutenant █████

**Summary of Inmate's 1824 Request:** Inmate reports being hearing impaired; Inmate requests a pocket talker and iPad.

<u>Interim Accommodation:</u>

☒ Interim Accommodation provided: You were issued a pocket talker.

## RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports being hearing impaired; Inmate requests a pocket talker and iPad.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

Per the Interim Accommodation Procedure (IAP) worksheet, dated 12/11/2023, you were issued a pocket talker.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids and pocket talker during due process events and access to the caption phone. Your current Effective Communication (EC) method of hearing aids and staff speaking loudly and clearly is sufficient to maintain EC during due process and all general communication. You do not require an iPad with live captioning to access PSA's.

You are encouraged to utilize the appropriate avenues to address requests or concerns. If you disagree with this determination, you may submit a CDCR 602-2, and your concerns will be addressed through the Inmate Grievance Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife _____   _N. Scaife (signature)_   **Date sent to inmate:**   JAN 0 9 2024

**ADA Coordinator/Designee**   **Signature**

RAP Response - rev 08-17-17.docx

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 490976 | CSATF OFFICE DEC 11 2023 OF GRIEVANCES |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***

**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
|  |  | B-DINNING | B-3- |

**INSTRUCTIONS:**

- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**

I can't hear and my hearing aid does not help.

**WHY CAN'T YOU DO IT?**

My Hearing aid is insufficient

**WHAT DO YOU NEED?**

Pocket Talker Super ear SE5000 and a Ipod/phone

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**     Yes ☐     No ☐     Not Sure ☑

List and attach documents, if available:

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

**INMATE'S SIGNATURE**          12-8-23
                                **DATE SIGNED**

Assistance in completing this form was provided by:

_____        _____        _____
    Last Name                  First Name                  Signature

**Interim Accommodation Procedure (IAP) / Interview Worksheet**

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day.</u>
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate: ▮▮▮▮▮▮ CDCR #: ▮▮▮▮ CDCR 1824 Log #: 490976

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**    Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

☐ **Yes / Unsure** (Complete Steps 2 &/or 3)    ☑ **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely navigate stairs.
- Cannot safely access upper bunk.
- Seizure disorder and is assigned an upper bunk.
- Workplace safety concerns.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▮▮▮▮▮▮ | AGPA | ▮▮▮▮▮▮ | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

---

**STEP 2   CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 12 / 11 / 23    Due back to IAC: 12 / 12 / 23    Returned to IAC: ___ / ___ / ___

Assigned to: FACILITY B    Title: FTS

Information needed: <u>PLEASE ISSUE I/M A POCKET TALKKER.</u>

Note 1:  Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2:  IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time: _____    Location: _____

Interviewer notes: _____

Staff Interviewed: ▮▮▮▮▮▮    Title: FTS    Interview date: 12 / 11 / 23

Interviewer Notes: I/m was issued a pocket talker

Staff Interviewed: _____    Title: _____    Interview date: ___ / ___ / ___

Interviewer Notes: _____

*Notes:*  ADAC APPROVES ISSUANCE OF POCKET TALKER. ADAC WILL REVIEW REQUEST FOR I-PAD.

| ▮▮▮▮▮▮ | ADPN | ▮▮▮▮▮▮ | 12 / 11 / 23 |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

## IAP / Interview Worksheet

Inmate: ███████    CDCR #: ██████    CDCR 1824 Log #: 490976

---

**Step 3:** **DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required**.

Reason:_____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason:_____

_____

_____

Accommodation(s) provided:                                    Date provided:

_____    ___ / ___ / ___

_____    ___ / ___ / ___

_____    ___ / ___ / ___

Comments:_____

_____

| ███████████ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note: When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

### IAP processing instructions for the Appeals Coordinator

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3. The interviews conducted in Step 2 will help with the decision in Step 3. Step 3 documents the decision. When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

### Step 2 Interviewer Instructions

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2. If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing. Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder. Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▉▉▉▉▉▉▉▉▉    CDC #: ▉▉▉▉    PID #: ▉▉▉▉

CHSS035C **DPP Disability/Accommodation Summary** Tuesday December 12, 2023 08:20:01 AM

As of: 12/12/2023 ➡

## OFFENDER/PLACEMENT
CDC#: ▉▉▉▉
Name: ▉▉▉▉▉▉▉▉▉
Facility: SATF-Facility B
Housing Area/Bed: B 003 ▉▉▉▉
Placement Score: 19
Custody Medium (A)
Designation:
Housing Program: General Population
Housing Ground Floor-Limited Stairs
Restrictions: Lower/Bottom Bunk Only
Physical Limitations Special Cuffing Needed
to Job/Other: Extra Time for Meals
Lifting Restriction- Unable to Lift more
than 19 Pounds
No Rooftop Work
Permanent - 12/31/9999

## DISABILITY ASSISTANCE
Current DDP Status: NCF
DDP Adaptive None
Support Needs:
Current DDP Status Date: 03/12/2003
DPP Codes: DLT, DNH
DPP Determination Date: 05/10/2019
Current MH LOC: CCCMS
Current MH LOC Date: 07/27/2022
SLI Required: No
Interview Date: 02/28/2017
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly
and Clearly
Non-Formulary has hearing vest
Accommodations/Comments:
Learning Disability:
Initial Reading Level: 12.9
Initial Reading Level Date: 05/02/2014
Durable Medical Equipment: Hearing Aid
Back Braces
Compression Stocking
Non-invasive Airway Assistive
Devices - C-Pap Machine
Electrical Access
Eyeglass Frames
Hearing Impaired Disability
Vest
Therapeutic Shoes/Orthotics
Languages Spoken:

## IMPORTANT DATES
Date Received: 02/21/1995
Last Returned
Date:
Release Date: 06/27/2014
Release Type: Minimum Eligible Parole Date

## WORK/VOCATION/PIA
Privilege Group: A
Work Group: A1
AM Job Start 01/25/2023
Date:
Status: Full Time
Position #: CLK.010.001
Position Title: B DINING CLERK
Regular Days On: Monday through Friday (12:30:00 -
16:30:00)
Monday through Friday (17:00:00 -
20:00:00)

# Exhibit 61

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 12/13/2023    **Date IAC Received 1824:** 12/11/2023    **1824 Log Number:** 490660

**Inmate's Name:** ▇▇▇▇    **CDCR #:** ▇▇▇▇    **Housing:** B2-▇▇▇

**RAP Staff Present:** ADA Coordinator N. Scaife, Chief Medical Executive G. Ugwueze, Psychologist Dr. ▇▇▇, Health Care Grievance Representative ▇▇▇, Custody Appeals Representative ▇▇▇, Associate Governmental Program Analyst ▇▇▇, Staff Services Analyst ▇▇▇, Staff Services Analyst ▇▇▇, Education Representative ▇▇▇, Field Training Lieutenant ▇▇▇

**Summary of Inmate's 1824 Request:** Inmate reports being hearing and vision impaired; Inmate requests a pocket talker, iPad, and access to the caption phone.

### Interim Accommodation:

☒ No interim accommodation required: You do not report difficulty accessing Programs, Services, or Activities (PSA)s or performing Activities of Daily Living (ADL)s.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** Inmate reports being hearing and vision impaired; Inmate requests a pocket talker, iPad, and access to the caption phone.

**Response:** On 12/13/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.

On 12/11/2023, you were issued a Personal Sound Amplification Device (PSAD) by your facility Field Training Sergeant (FTS). You may request battery exchange on a one for one basis from your FTS. The FTS also advised you on the process for signing up to use the caption phone.

You do not have a severe hearing impairment impacting placement. You are accommodated with hearing aids, pocket talker, and access to the caption phone. Your current Effective Communication (EC) methods of hearing aids and need staff to speak loudly and clearly are sufficient to maintain EC during due process and all general communication. You do not require an iPad with live captioning to access PSAs.

Due to its nature, your request was forwarded to Health Care Services for input. Health Care Services provided the RAP with a Disability Verification Process (DVP) Worksheet indicating you do not have a designated vision impairment. Your last Optometry evaluation was on 4/21/2021. You were scheduled for Optometry follow-up on 12/21/2023.

You are encouraged to utilize the appropriate avenues to address issues, such as submitting a 7362 to Health Care Services for any medical related requests. If you are dissatisfied or disagree with the treatment being provided by Health Care Services, you may submit a 602HC and your concerns will be addressed through the Health Care Grievance Process. If you disagree with this determination, you may submit a CDCR 602-2, and your concerns will be addressed through the Inmate Appeal Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife
**ADA Coordinator/Designee**

_signature_
**Signature**

**Date sent to Inmate:**    JAN 0 9 2024

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 4 90060 | CSATF OFFICE  DEC 11 2023  OF GRIEVANCES |

**\*\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\*\***
<u>DO NOT</u> use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| ▮▮▮▮ | ▮▮▮▮ | Visit Porter | B-2-▮ |

INSTRUCTIONS:
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?**

It's very Difficult For me to Hear when I'm Talking on The Phone, And It's difficult To See and Read The words on my Tablet

**WHY CAN'T YOU DO IT?**

I am ADA Hearing And ~~Visto~~ Vision InPaired.

**WHAT DO YOU NEED?** The New iPad Caption Phone And Pocket Talker

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**   Yes ☒   No ☐   Not Sure ☐

List and attach documents, if available: Hearing And Vision InPaired

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| ▮▮▮▮ | 12-9-23 |
|---|---|
| **INMATE'S SIGNATURE** | **DATE SIGNED** |

Assistance in completing this form was provided by:

| ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |
|---|---|---|
| Last Name | First Name | Signature |

## Interim Accommodation Procedure (IAP) / Interview Worksheet

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) shall complete Step 1 below within 1 working day.
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

Inmate: ▬▬▬▬▬▬▬▬ CDCR #: ▬▬▬▬▬ CDCR 1824 Log #: 490660

---

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**  Date CDCR 1824 received by IAC: 12 / 11 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)     [✓] **No** (None of the issues below are present) [Note: IAC may still obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:

- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.

| ▬▬▬▬▬▬ | AGPA | ▬▬▬▬▬▬▬▬ | 12 / 11 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | | Date Completed |

---

**STEP 2   CDCR 1824 INTERVIEWS**     *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: 12 / 11 / 23     Due back to IAC: 12 / 12 / 23     Returned to IAC: 12 / 12 / 23

Assigned to: FACILITY A     Title: FTS

Information needed: PLEASE ISSUE I/M A POCKET TALKER. ADVISE I/M HE MAY SIGN UP TO USE THE CAPTION PHONE.

Note 1: Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2: IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time: 12/11/23  1630     Location: 132

Interviewer notes: I/m WAS ISSUED A POCKET TALKER. I/m WAS INFORMED OF THE CAPTION PHONE PROCESS.

Staff Interviewed: _____ Title: _____ Interview date: ___ / ___ /
Interviewer Notes: _____

Staff Interviewed: _____ Title: _____ Interview date: ___ / ___ /
Interviewer Notes: _____

***Notes:*** FORWARD TO HC FOR INPUT REGARDING ALLEGED VISION IMPAIRMENT, A REVIEW OF SOMS INDICATES I/M DOES NOT HAVE A DOCUMENTED VISION IMPAIRMENT. ADAC APPROVES ISSUANCE OF POCKET TALKER. I/M MAY USE SIGN UP PROCESS AND ACCESS CAPTION PHONES PER POLICY.

| ▬▬▬▬▬▬ | SGT | ▬▬▬▬▬▬ | 12 / 11 / 23 |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: _____    CDCR #: _____    CDCR 1824 Log #: 490660

---

**Step 3:    DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required**.

Reason: _____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason: _____

_____

_____

Accommodation(s) provided:                                    Date provided:

_____        ___/___/___

_____        ___/___/___

_____        ___/___/___

Comments: _____

_____

_____

| ▮▮▮▮▮▮▮ | AGPA | | 12 / 12 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note:  When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing Instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3.  The interviews conducted in Step 2 will help with the decision in Step 3.  Step 3 documents the decision.  When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter.  Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2.  If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing.  Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder.  Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: ▓▓▓▓▓▓▓▓▓    CDC #: ▓▓▓    PID #: ▓▓▓

CHSS035C **DPP Disability/Accommodation Summary** Monday December 11, 2023 02:34:01 PM

As of: 12/11/2023 ➡

| OFFENDER/PLACEMENT | DISABILITY ASSISTANCE |
|---|---|

**OFFENDER/PLACEMENT**

CDC#:
Name: ▓▓▓▓▓▓
Facility: SATF-Facility B
Housing B 002 / ▓▓▓▓
Area/Bed:
Placement Score: 19
Custody: Medium (A)
Designation:
Housing Program: General Population
Housing Ground Floor-No Stairs
Restrictions: Lower/Bottom Bunk Only
Physical Lifting Restriction- Unable to Lift
Limitations to more than 19 Pounds
Job/Other: No Rooftop Work
Permanent - 12/31/9999

**DISABILITY ASSISTANCE**

Current DDP Status: NCF
DDP Adaptive: None
Support Needs:
Current DDP Status Date: 04/26/2001
DPP Codes: DPM, DNH
DPP Determination Date: 05/01/2023
Current MH LOC: GP
Current MH LOC Date: 03/13/2006
SLI Required: No
Interview Date: 05/03/2023
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly and Clearly
Non-Formulary: Entered into SOMS late by CCII▓
Accommodations/Comments: ▓▓▓▓▓ Interview completed 5-3-23 by SLI staff

Learning Disability:
Initial Reading Level: 11.2
Initial Reading Level Date: 12/19/2012
Durable Medical Equipment: Hearing Aid
Back Braces
Ankle Foot Orthoses/Knee Ankle Foot Orthoses (AFO/KAFO)
Canes
Mobility Impaired Disability Vest
Eyeglass Frames
Hearing Impaired Disability Vest
Partial Lower Denture - Acrylic
Partial Upper Denture - Acrylic
Therapeutic Shoes/Orthotics
Walkers
Languages Spoken:

| IMPORTANT DATES | WORK/VOCATION/PIA |
|---|---|

**IMPORTANT DATES**

Date Received: 04/24/2001
Last Returned Date:
Release Date: 05/15/2034
Release Type: Minimum Eligible Parole Date

**WORK/VOCATION/PIA**

Privilege Group: A
Work Group: A1
AM Job Start: 01/28/2020
Date:
Status: Full Time
Position #: PHO.001.001
Position Title: B FAC VISIT PHOTO/YARD CREW
Regular Days On: Sun,Mon,Thu,Fri,Sat (08:00:00 - 11:00:00)
Sun,Mon,Thu,Fri,Sat (11:30:00 - 15:30:00)

**Disability Verification Process (DVP) Worksheet**
SIDE 1

| INMATE'S NAME (Print) | | CDCR 1824 LOG NUMBER |
|---|---|---|
| ███████ | | 490660 |
| | CDCR NUMBER ███████ | |

## INSTRUCTIONS

- **A SME Shall COMPLETE SECTION 1 prior to or during the <u>INITIAL</u> RAP.**
- **When the RAP needs more information,  the ADA Coordinator shall complete Section 2 during the RAP and assign the DVP for Section 3 to be completed (See back of form).**

---

### SECTION 1 – SME FINDINGS

Person completing worksheet: G. Ugwueze, MD    Title: CME

Type of Review:  [✓] Health care review    [ ] Mental Health review    [✓] Education / learning disability review

[ ] Other review: _____

[✓] File Review conducted.  Documents obtained:

[ ] CDCR 1845    dated: ___/___/___    [ ] CDCR 7410 dated: ___/___/___    [ ] CDCR 128-C2: dated: ___/___/___
[ ] CDCR 7536    dated: ___/___/___    [ ] CDC 7221-DME dated: ___/___/___
[ ] CDCR 128-C3: dated: ___/___/___    [ ] CDCR 7386: dated: ___/___/___    [ ] CDCR 7388   dated: ___/___/___
[ ] Other: _____ dated: ___/___/___    [ ] Other: _____    dated: ___/___/___

[ ] Recently evaluated for this issue.    Date seen: ___/___/___

[ ] Evaluation (exam/interview) scheduled.  Anticipated date to be seen: ___/___/___

Disability indicated:  [✓] Yes    [ ] No    [ ] Unable to Determine

Summary of findings: DPP: DNH, DPM
DME: Permanent: AFO/Knee AFO, back braces, cane, eyeglasses, hearing aid, HID vest, MID vest, therapeutic shoes, walker

Summary of limitations: No Rooftop Work/Hazardous Restriction, Lifting Restriction, Bottom Bunk, Ground Floor- No Stairs

Comments: Patient does not have a designated vision impairment. Last Optometry evaluation was 04/21/2021.  Patient is scheduled for Optometry follow-up on 12/21/23.

_____    12/15/2023.
Signature of Subject Matter Expert    Date Signed

# Exhibit 62

## REASONABLE ACCOMMODATION PANEL (RAP) RESPONSE

**RAP Meeting Date:** 11/1/2023    **Date IAC Received 1824:** 10/31/2023    **1824 Log Number:** 471979

**Inmate's Name:** ▮▮▮▮▮▮    **CDCR #:** ▮▮▮▮    **Housing:** E3-▮▮▮

**RAP Staff Present:** ADA Coordinator N. Scaife, Health Program Manager III ▮▮▮▮ Physician and Surgeon ▮▮▮ Registered Nurse ▮▮▮ Psychologist Dr. ▮▮▮ Health Care Grievance Representative ▮▮▮ , Custody Appeals Representative ▮ ▮▮ Associate Governmental Program Analyst ▮▮▮ Staff Services Analyst ▮▮▮ Staff Services Analyst ▮▮▮

**Summary of Inmate's 1824 Request:** The inmate reports being hearing impaired and having difficulty hearing his tablet. The inmate requests to have Communication Access Realtime Translation (CART) services on tablet to read audio content.

### Interim Accommodation:

☒ No interim accommodation required: You are safely accessing programs, services, and activities.

### RAP RESPONSE:

**RAP is able to render a final decision on the following:** The inmate reports being hearing impaired and having difficulty hearing his tablet. The inmate requests to have Communication Access Realtime Translation (CART) services on tablet to read audio content.

**Response:** On 11/01/2023, the RAP met and discussed your 1824, Reasonable Accommodation Request.
Per the Interim Accommodation Procedure (IAP) worksheet, dated 10/31/2023, notes, per Operations Procedure (OP) 526, GTL will provide all equipment, infrastructure, hardware, and software. GTL will provide all maintenance and operational support for the entire term of the contract. Some features on the tablet come with accessibility including captioning.

Your request to receive CART services on your tablet was reviewed by the RAP committee. A review of the Strategic Offender Management System (SOMS) indicates you are designated DNH and are accommodated with hearing aids and require staff to speak loudly and clearly. A review of your communication methods shows that you do not require written notes to establish effective communication (EC). Your request to use CART services has been denied. Staff will continue to establish EC with you by ensuring you are wearing your hearing aids and speaking loudly and clearly if your hearing aids are not available or not working.

You are encouraged to utilize the appropriate avenues to address requests or concerns, such as submitting a remedy ticket through the GTL tablet or the kiosk for all requests or concerns regarding your GTL tablet. If you disagree with this determination, you may submit a CDCR 602-2 and your concerns will be addressed through the Inmate Grievance Process.

**Direction if dissatisfied:** If you disagree with this decision and want to file an appeal/grievance, be sure to attach a copy of this response along with your CDCR 1824 as supporting documents.

N. Scaife _____    _1. _____    Date sent to inmate:
**ADA Coordinator/Designee**    **Signature**

NOV 2 9 2023

STATE OF CALIFORNIA
**REASONABLE ACCOMMODATION REQUEST**
CDCR 1824 (Rev. 09/17)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INSTITUTION (Staff use only) | LOG NUMBER (Staff Use Only) | DATE RECEIVED BY STAFF: |
|---|---|---|
| SATF | 471979 | CSATF OFFICE<br>OCT 3, 2023 |

**\*\*\*\*\*\*\*\*\*\*\*TALK TO STAFF IF YOU HAVE AN EMERGENCY\*\*\*\*\*\*\*\*\*\***

**DO NOT** use a CDCR 1824 to request health care or to appeal a health care decision. This may delay your access to health care. Instead, submit a CDC 7362 or a CDCR 602-HC

| INMATE'S NAME (Print) | CDCR NUMBER | ASSIGNMENT | HOUSING |
|---|---|---|---|
| ████████ | ████████ | N/A | E-3- |

**INSTRUCTIONS:**
- You may use this form if you have a physical or mental disability or if you believe you have a physical or mental disability.
- You may use this form to request a specific reasonable accommodation which, if approved, will enable you to access and/or participate in a program, service or activity. You may also use this form to submit an allegation of disability-based discrimination.
- Submit this form to the Custody Appeals Office.
- The 1824 process is intended for an individual's accommodation request. Each individual's request requires a case-by-case review.
- The CDCR 1824 is a request process, not an appeal process. All CDCR 1824 requests will receive a response.
- If you have received an 1824 decision that you disagree with, you may submit an appeal (CDCR 602, or CDCR 602-HC if you are disagreeing with a medical diagnosis/treatment decision).

**WHAT CAN'T YOU DO / WHAT IS THE PROBLEM?** It's hard for me to Hear everything available on the tablet.

**WHY CAN'T YOU DO IT?** Im DNH, and am IDa. and require more help.

**WHAT DO YOU NEED?** I Need CART Services through my tablet please. To be able to read content rather than rely on hearing everything please.

*(Use the back of this form if more space is needed)*

**DO YOU HAVE DOCUMENTS THAT DESCRIBE YOUR DISABILITY?**    Yes ☒    No ☐    Not Sure ☐

List and attach documents, if available: I have verifiable medical paperwork concerning my disabilities

I understand that staff have a right to interview or examine me, and my failure to cooperate may cause this request to be disapproved.

| ████████ | 10-30-23 |
|---|---|
| **INMATE'S SIGNATURE** | **DATE SIGNED** |

Assistance in completing this form was provided by:

| Last Name | First Name | Signature |
|---|---|---|
| | | |

**Interim Accommodation Procedure (IAP) / Interview Worksheet**

Upon receipt of a CDCR 1824, the Institution Appeals Coordinator (IAC) <u>shall complete Step 1 below within 1 working day.</u>
Step 2 should be completed whenever the inmate's request is unclear or when additional input from
the inmate and/or staff will help the RAP better understand the request.

| Inmate: ▓▓▓▓▓ | CDCR #: ▓▓▓▓ | CDCR 1824 Log #: 471979 |
|---|---|---|

**STEP 1 INTERIM ACCOMMODATION ASSESSMENT**      Date CDCR 1824 received by IAC: 10 / 31 / 23

Does the inmate raise issues on the CDCR 1824 that may cause the **inmate injury or other serious harm** while it is
being processed? **Base your assessment solely on the inmate's claim, assuming the claim is true.**

[ ] **Yes / Unsure** (Complete Steps 2 &/or 3)     [✓] **No** (None of the issues below are present) [Note: IAC may still
obtain information for RAP by completing Step 2]

Issues that may cause the **inmate injury or other serious harm** include, but are not limited to:
- Falling or the potential for falling.
- Cannot safely access upper bunk.
- Workplace safety concerns.
- Cannot safely navigate stairs.
- Seizure disorder and is assigned an upper bunk.
- Hearing or vision claims that may jeopardize safety.
- Inability to perform essential manual tasks (e.g., access dining hall, carry food tray, shower, use toilet).
- Maintenance, repair, or replacement of health care appliances which involve safety concerns.

| ▓▓▓▓▓ | AGPA | Uw̶Signature | 10 / 31 / 23 |
|---|---|---|---|
| Person Completing Step 1 | Title | Signature | Date Completed |

**STEP 2    CDCR 1824 INTERVIEWS**    *Note: Be sure to complete Step 3 when Step 1 was "Yes/Unsure"*

Date assigned: ____ / ____ / ____     Due back to IAC: ____ / ____ / ____     Returned to IAC: ____ / ____ / ____

Assigned to: _____    Title: _____

Information needed: _____
_____
_____
_____

Note 1:  Attach a DECS printout listing inmate's current status (including DPP codes, DDP codes, TABE score, etc.)
Note 2:  IAC and/or RAP may assign to self and obtain information either telephonically or in person.

Inmate Interview Date/Time:_____    Location:_____

Interviewer notes: _____
_____
_____

Staff Interviewed: _____    Title: _____    Interview date: ____ / ____ / ____

Interviewer Notes: _____
_____
_____

Staff Interviewed: _____    Title: _____    Interview date: ____ / ____ / ____

Interviewer Notes: _____
_____
_____

*Notes:*  PER OP 526, GTL WILL PROVIDE ALL EQUIPMENT, INFRASTRUCTURE, HARDWARE, AND SOFTWARE. GTL
~~WILL PROVIDE ALL MAINTENANCE AND OPERATIONAL SUPPORT FOR THE ENTIRE TERM OF THE~~
~~CONTRACT. SOME FEATURES ON THE TABLET COME WITH ACCESSIBILITY INCLUDING CAPTIONING.~~

| | | | ____ / ____ / ____ |
|---|---|---|---|
| Interviewer (Print Name) | Title | Signature | Date Completed |

**IAP / Interview Worksheet**

Inmate: ▇▇▇▇▇▇ _____    CDCR #: ▇▇▇▇ _____    CDCR 1824 Log #: 471979 _____

---

**Step 3:** **DECISION REGARDING WHETHER AN INTERIM ACCOMMODATION IS NECESSARY** (See Note below)

☐ An Interim Accommodation **IS NOT required**.

Reason: _____

_____

_____

☐ An Interim Accommodation **IS required**.

Reason: _____

_____

_____

**Accommodation(s) provided:**                                  **Date provided:**

_____    ___ / ___ / _____

_____    ___ / ___ / _____

_____    ___ / ___ / _____

Comments: _____

_____

_____

| ▇▇▇▇▇▇ | AGPA | | 10 / 31 / 23 |
|---|---|---|---|
| Person Completing Step 3 | Title | Signature | Date Completed |

Note: When information is unable to prove or disprove a claim, consider an interim accommodation as a precautionary measure.

---

**IAP processing Instructions for the Appeals Coordinator**

- Step 1 must always be completed prior to the initial RAP.
- Step 2 should be completed whenever the inmate's request is unclear, or when additional input from the inmate and/or staff will help the RAP better understand the request.
- If Step 1 is "Yes/Unsure," proceed to Steps 2 and/or 3. The interviews conducted in Step 2 will help with the decision in Step 3. Step 3 documents the decision. When the IAC is not able to complete steps 2 & 3 prior to the RAP (e.g, the request was received the day before the RAP) steps 2 and 3 may be completed during the RAP or shortly thereafter. Under no circumstances shall a decision regarding the need for an IAP exceed 5 working days.
- Consult with the ADA Coordinator when unsure which box to check in Step 1.
- Maintain ongoing communication with the ADA Coordinator regarding the interim accommodation process.

---

**Step 2 Interviewer Instructions**

- Your task is to obtain additional information that will assist the Reasonable Accommodation Panel (RAP) better understand issues raised by an inmate on a CDCR 1824, Reasonable Accommodation Request Form.
- Take a moment to read the CDCR 1824 and then review the information being requested in Step 2. If you need clarification, contact the Appeals Office or the ADA Coordinator.
- Interview the inmate who filed the CDCR 1824 and/or staff who may have knowledge about the inmate's request.
- Inmates often have difficulty expressing themselves in writing. Your interview notes should try to clarify what the problem is, and what the inmate wants (e.g., cane, lower bunk, shower chair, job modification, etc.).
- Reminder. Be sure to return this form to the Inmate Appeals Coordinator by the due date listed in Step 2.

Name: █████████

CDC #: ████     PID #: ████

CHSS035C **DPP Disability/Accommodation Summary** Tuesday October 31, 2023 12:06:55 PM

As of: [10/31/2023] ➡️

## OFFENDER/PLACEMENT

CDC#: ████
Name: █████████
Facility: SATF-Facility E
Housing Area/Bed: E 003 ████
Placement Score: 58
Custody Designation: Medium (A)
Housing Program: Sensitive Needs Yard
Housing Restrictions: Ground Floor-No Stairs
Lower/Bottom Bunk Only
Physical Limitations No Rooftop Work
to Job/Other: Permanent - 12/31/9999

## DISABILITY ASSISTANCE

Current DDP Status: NCF
DDP Adaptive None
Support Needs:
Current DDP Status Date: 12/05/2000
DPP Codes: DPM, DNH
DPP Determination Date: 02/22/2023
Current MH LOC: CCCMS
Current MH LOC Date: 12/27/2018
SLI Required: No
Interview Date: 03/28/2022
Primary Method(s) - Hearing: Hearing Aids
Alternate Method - Hearing: Need Staff to Speak Loudly and Clearly
Non-Formulary
Accommodations/Comments:
Learning Disability:
Initial Reading Level: 12.9
Initial Reading Level Date: 07/05/2005
Durable Medical Equipment: Hearing Aid
Canes
Non-Invasive Airway Assistive Devices - C-Pap Machine
Mobility Impaired Disability Vest
Electrical Access
Eyeglass Frames
Full Lower Denture
Full Upper Denture
Hearing Impaired Disability Vest
Incontinence Supplies
Other (Include in Comments)
Therapeutic Shoes/Orthotics
Walkers
Languages Spoken:

## IMPORTANT DATES

Date Received: 12/01/2000
Last Returned Date: 08/06/2010
Release Date: 08/29/2031
Release Type: Minimum Eligible Parole Date

## WORK/VOCATION/PIA

Privilege Group: A
Work Group: A1
AM Job Start Date:
Status:
Position #:
Position Title:
Regular Days On:

# Exhibit 63

# (Intentionally left blank)

# Exhibit 64

# (Intentionally left blank)

# Exhibit 65

# (Intentionally left blank)

# Exhibit 66

# (Intentionally left blank)

# Exhibit 67

# (Intentionally left blank)

# Exhibit 68

# (Intentionally left blank)

Exhibit 69

**Rita Lomio**

| | |
|---|---|
| **From:** | Tania Amarillas <tania@prisonlaw.com> on behalf of Tania Amarillas |
| **Sent:** | Monday, August 5, 2024 9:12 AM |
| **To:** | Thao, Chor@CDCR |
| **Cc:** | Ed Swanson; Burkart, Brianne@CDCR; Armstrong Team; armstrongteam@rbgg.com; MNunez@rbgg.com; Audrey Barron; Davis, Tamiya@CDCR; Ruiz, Ramon@CDCR; Ferguson, Patricia@CDCR; Meyer, Nicholas@CDCR; Lopez, Amber@CDCR; Welch, Lois@CDCR; Faris, Steven@CDCR; Chuidian, Saundra; White, Lourdes@CDCR; Lo, Cory@CDCR; CDCR CAMU Advocacy Mailbox; Toche, Diana@CDCR; Bick, Dr. Joseph@CDCR; Dovey, John@CDCR; Hart, Robin@CDCR; CCHCS Accountability Log@CDCR; Williams, Joseph@CDCR; Jefferson, Cathy@cdcr; Anderson, Jason@CDCR; Lorey, Dawn@CDCR; Moses, Jane@CDCR; Leon Guerrero, Joshua@CDCR; Perez, Aaron@CDCR; Trace Maiorino; Sean Lodholz; Olena Likhachova; Anne Kammer; Gurpreet Sandhu; Johnson, Marcus; Mebane, Darnell@CDCR; Stevens, Dawn@CDCR; Sharma, Dharmendra@CDCR; CDCR OLA Armstrong CAT Mailbox; Audrey Lim; Edwards, Joseph.K@CDCR; Sharon Garske |
| **Subject:** | ARM \| Blind and Low Vision Individualized Vision Assessments List |
| **Attachments:** | Attachment 3 - 24.06.07 Defendants Subsequent Response to Plaintiffs Request for Information.pdf |

Dear Chor:

You previously sent us a list of DPV class members at SATF who had, as of June 7, 2024, been offered an individualized vision assessment (attached for ease of reference). Our understanding is that this list contains information for all DPV class members who had been housed at SATF on February 26, 2024, who have been offered an assessment.

We cross-referenced this list with the DPP roster and class members' medical records and found that a handful of class members were not included on the list. Would you please provide an explanation as to why the class members below were not listed and whether and when they received their assessment? If they have not received their assessment, please explain why.

- ███████████████ housed at SATF since May 2022 and DPV since October 2020
- ███████████████ housed at SATF since August 2018 and DPV since March 2022
- ███████████████ housed at SATF since June 2022 and DPV since January 2024
- ███████████████ housed at SATF since July 2023 and DPV from January 2024 to July 2024

Thank you,
Tania

--
Tania Amarillas
Investigator
Prison Law Office
tania@prisonlaw.com
Preferred pronouns: she/her

*This email may contain material that is confidential, privileged, and/or attorney work product for the sole use of the intended recipient. Any review, reliance, or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.*

# Exhibit 70



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Executive Director:*
Margot Mendelson

*Attorneys:*
Rana Anabtawi
Patrick Booth
Tess Borden
Steven Fama
Daniel Greenfield
Mackenzie Halter
Alison Hardy
Sophie Hart
Lily Harvey
Marissa Hatton
Jacob Hutt
A.D. Lewis
Rita Lomio
Heather MacKay
Donald Specter
Jerrod Thompson

VIA EMAIL ONLY

August 7, 2024

Ms. Tamiya Davis
CDCR Office of Legal Affairs

Ms. Brianne Burkart
CCHCS Office of Legal Affairs

   RE: *Armstrong v. Newsom*
      Individualized Vision Assessments at SATF (SATF Stipulation #5)

Dear Ms. Davis and Ms. Burkart:

   Plaintiffs' counsel met with blind and low vision class members at SATF during the July 2024 monitoring tour to discuss the individualized vision assessments conducted by WesternU Health. Class members who attended their assessment reported generally positive experiences with the staff at WesternU and satisfaction with the Zoomax Snow 12 and LyriQ devices issued to them as reading accommodations following the assessment. However, a number of class members reported issues with the individualized vision assessments process.

   In this letter, we discuss four areas of particular concern:

I.   false "refusals" of vision assessments,

II.   writing needs not being thoroughly evaluated during the assessments and class members being forced to rely on others to write,

III.   delays in the issuance or denial of a recommended device and/or training, including delays of over 244 days with no clear procurement plan, and

IV.   long wait times for assessments of class members who arrived to SATF after February 26, 2024.

**Board of Directors**
Jason Bell • Chesa Boudin • Vanita Gaonkar • Nick Gregoratos • Christianne Hipps
Jean Lu • Claire McDonnell • Seth Morris • Keramet Reiter • Vishal Shah • Adrienne Yandell

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 2

We ask that Defendants explain how they will address these concerns to avoid similar issues as vision assessments are rolled out statewide. We also make a number of specific requests throughout this letter related to SATF.

## I.    FALSE AND UNINFORMED "REFUSALS" OF VISION ASSESSMENTS

On June 7, 2024, Defendants produced a list of blind and low vision class members at SATF who had been offered and reportedly refused a vision assessment with Western U.[1] Plaintiffs' counsel spoke with eight of the 14 class members on Defendants' list and received concerning reports regarding the refusal process.

Issues with informed refusals at SATF are not new. Last year, CCHCS conducted a survey of the 16 institutions with the highest offsite specialty care refusal rates, which included SATF. One of the main themes identified was communication about appointments. As seen below, the survey listed reasons of, "We believe patient refused, but patient says did not intend to refuse," and, "Patients do not know why they are being seen."[2]



| # | THEMES | REASONS | INITIAL RECOMMENDATIONS |
|---|--------|---------|--------------------------|
| 1 | Communication | • We believe patient refused, but patient says did not intend to refuse<br>• Patients do not know why they are being seen<br>• Patients know in advance they don't want to go / don't feel appt is necessary | • CA Model Peer Support Specialist Program – check-ins prior to appt date<br>• L6S improvement projects – improvements in the way we talk about specialty referrals<br>• Explore notification; advocate for notification functions in tablet RFP development |

As explained in more detail below, we saw these same issues arise at SATF this year related to vision assessments.

//
//

_____

[1] *See* Letter from Chor Thao, CDCR Office of Legal Affairs, to Jacob Hutt, Prison Law Office, *Armstrong v. Newsom*: Second Response Re: Request for Information Re: Individualized Assessments of Blind and Low Vision Class Members (June 7, 2024).
[2] *See* Attachment A: Specialty Refusals Survey Findings (Oct. 2023).

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 3

███████████████████████, DPV, F3, was scheduled to have a vision assessment on April 18, 2024. According to ████████████'s medical records, medical staff noted he refused his vision assessment on April 16, 2024.[3] When we spoke with ██████████ he reported he was not called for a vision assessment nor had he refused the assessment. In the handwritten refusal scanned in the medical records, which is not signed by ████████████ medical staff wrote, "Patient stated he will take care of his eyes when he paroles at appt."[4] That does not make any sense; ███████████ is sentenced to life without the possibility of parole. ███████████ expressed interest in having an assessment and reported he would have gone had he been given the opportunity. He is currently trying to make do with a card magnifier to read and write, but the card magnifier does not properly accommodate his needs.



---

[3] *See* Refusal of Examination/Treatment (Apr. 16, 2024).

[4] *Id.*

███████████ DNM, DPV, D3, was scheduled to have a vision assessment on February 15, 2024. ████████ told us that he refused the appointment because the nurse who told him about it said it was for a routine eye exam, which he had already recently completed. The nurse reportedly told ███████ that it was "no big deal" if he did not want to go to the appointment. ██████ stated he asked the nurse if this appointment was to get devices, but the nurse told him it was not. The nurse documented something differently on the refusal form; namely, that ███████ had been informed the appointment was for the low vision specialist. We are concerned about the accuracy of this documentation, including the failure to correctly document ████████'s disability code and effective communication. Two months later, ████ ██████ found out that people were going out to WesternU for vision assessments and asked medical staff about it. During this conversation, ██████████ found out he had actually refused his WesternU vision assessment and asked to be rescheduled. At the time of our visit, he still had not been seen and had not been told if or when he would be.

███████████ DPM, DPV, A3, was scheduled to have a vision assessment on February 15, 2024. However, ██████████ was unable to go to the appointment because transportation staff did not accommodate his need for an accessible vehicle as he was unable to walk up and down stairs and had a "Ground Floor – No Stairs" restriction. ████████ refusal paperwork confirms this as well: "Patient states he didn't go because the van didn't have a lift."[5] He was informed by ADA staff that he would be placed back on the referral list, but he had no information about when his rescheduled appointment would take place.

> **REQUESTS**:  Please ensure that the class members named above are promptly rescheduled to see Defendants' vision specialists.
>
> In addition, we ask that medical staff at the institution be trained to ensure that patients are properly educated regarding their vision assessment before a refusal form is completed.
>
> We also ask that the "refusals" reported in this section for ████████ and ██████████ be investigated through the accountability process, that Defendants' provide us with a report of their findings, and that Defendants develop and produce a plan to avoid this problem in the future.
>
> Finally, please investigate whether the other blind and low vision patients who reportedly refused their assessment in fact did so.

---

[5] *See* Refusal of Examination/Treatment (Feb. 15, 2024)

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 5

## II.    WRITING NEEDS ARE NOT BEING MEANINGFULLY EVALUATED DURING VISION ASSESSMENTS

Nearly all of the class members we interviewed who attended their individualized vision assessment reported that the vision specialists at WesternU failed to meaningfully discuss their need for writing accommodations.[6] Only one class member, ███████████ DPV, G3, received a meaningful writing accommodation recommendation for a personal laptop and typing classes. However, as discussed in section III, ███████ has yet to receive the laptop or start typing classes. More commonly, class members reported that the vision specialists asked them about their ability to type and use a computer but failed to discuss their need for writing accommodations any further. Many blind and low vision class members continue to be without the ability to independently write. Class members reported relying on other people, such as friends or ADA workers, in order to complete writing tasks.

For example, ███████████ DPV, F1, had an individualized vision assessment on February 29, 2024. ██████ reported that the assessment primarily focused on his ability to read independently. ██████ was not asked about his need for writing accommodations during the assessment. According to the report from February 29, the specialist asked, "How do you currently write letters/from/notes when you're with your lawyer?" The specialist's report then states, "Someone writes for him."[7] It is also noted in the specialist's report that ███████ knows how to type and use a computer. (██████ reported taking an 18-month typing class and feeling confident in his ability to use a laptop.) However, the specialist's only recommendation is for a Zoomax Snow 12 Portable CCTV with headphones and one to two hours of training. Although the Zoomax has been working well as a reading accommodation, ███████ explained that it does not help him write. Instead, he has to ask other people to write for him and wait to "catch someone in a good mood." According to ██████, it can sometimes take two to three days to get assistance writing.

███████████, DNH, DPV, D2, had an individualized vision assessment on February 29, 2024. The vision specialist recommended a LyriQ Assistive Text-to-Speech Reader with headphones and 30-60 minutes of training and a scribe (that is, another person to write for

---

[6] Plaintiffs' counsel reported similar issues earlier this year in an advocacy letter sent on behalf of ███████████ a DPV class member at SATF. *See* Letter from Jacob Hutt, Prison Law Office, to Chor Thao, CDCR Office of Legal Affairs, Electronic Writing Accommodation for ██████ ███████████, DNH, DPV (Jan. 18, 2024). In response, Defendants said that Zoomax devices would provide writing accommodations but, as noted above, class members reported that Zoomax devices do not adequately accommodate them for writing.

[7] *See* Optometry Consultation (Feb. 29, 2024).

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 6

him).[8] ████████ reported that the vision specialist did not discuss possible writing accommodations beyond a scribe. The report from WesternU notes that ████████ is able to type and knows how to work a computer. ████████ explained that he would be very interested in getting a personal laptop because "it is not great to rely on people because they leave or you can't find someone you can trust." Currently, ████████ relies on friends or ADA workers to help him write, which works fine for short writing tasks, but he does not feel comfortable using a scribe for longer writing tasks, such as legal pleadings.

████████████████, DPM, DNH, DPV, D1, had an individualized vision assessment on March 7, 2024. The vision specialist recommended new prescription eyeglasses, a white cane with a rolling ball tip, and personal Zoomax.[9] According to the specialist's report, the Zoomax was recommended for "reading documents and writing." However, ████████ stated it is "very awkward" to use the Zoomax as a writing accommodation and that he lacks the resources (e.g., extra paper) to try and practice writing with it. ████████ instead is interested in getting a writing guide and bold lined paper to be able to handwrite.[10] However, these kinds of accommodations were not presented or discussed during his individualized assessment.

In addition, four other class members raised similar concerns:

- ████████████████ DLT, DPV, G3, stated that he was not asked about devices that would allow him to write independently during his vision assessment. ████████ explained he has some experience using a laptop and expressed interest in getting one for his writing needs. ████████ reported it can be difficult to get to writing devices, like the ADA computer in the law library, because it is not open very often. Currently, ████ ████ asks a friend to help him write, but he would prefer to write independently and on his own time.

- ████████████████ DNH, DPV, E4, reported that she was not asked about devices that would allow her to write independently during her vision assessment. She stated that she would prefer to have a writing device instead of having to rely on others to write: "If I don't have to ask someone for writing, it's better for me. If I can do my own writing with a machine, I'll take that any day of the week. I love to write."

---

[8] *See* Optometry Consultation (Feb. 29, 2024).
[9] *See* Optometry Consultation (Mar. 7, 2024).
[10] *See* sample writing guide (https://www.maxiaids.com/product/writing-guide-set) and bold lined paper (https://www.maxiaids.com/product/low-vision-paper-with-binder-holes-100-page-pad) from MaxiAids.

- ████████████ DPO, DPV, INF, reported that other than asking him about his ability to type and use a computer, he was not asked about his need for writing accommodations in prison by the vision specialist at WesternU. ████████ expressed an interest in some sort of writing device that could help him write on his own and be easy to use. (████████ is 73 years old and does not have much experience with technology.) Currently, ████████ has to rely on the assistance of staff in the CTC to help him write. He explained that he has not been able to write independently in a long time, and while he appreciates when staff are able to help, he would prefer to be able to write independently.

- ████████████ DNH, DPV, F2, reported that he was instructed to use his Ruby 10 magnifier as a writing accommodation during his vision assessment. However, ████████ finds it cumbersome to use the magnifier when writing because he has to constantly move the page and position his hand in an awkward way in order to not be in the way of the magnifier. ████████ expressed interest in having a laptop, which would make it much easier for him to write effectively. However, this option was not discussed during his vision assessment.

  **REQUEST**:  Please ensure that the class members named above are promptly reevaluated by Defendants' vision specialists in order to determine what types of writing accommodations will allow them to write independently and promptly issue the recommended writing device(s).

### III.   DELAYS IN ISSUANCE OR DENIAL OF A RECOMMENDED DEVICE AND/OR TRAINING

Most blind and low vision class members received similar device recommendations (Zoomax Snow 12 and LyriQ) following their vision assessment. However, a small number of class members were recommended other devices and/or training. According to policy, ADA staff should initiate procurement of assistive devices recommended by the vision specialists within five business days.[11] Unfortunately, it appears that Defendants have failed to provide these less common recommendations—including special eyeglasses, laptops, and orientation and mobility training—to class members, and some have been waiting over 244 days for these accommodations.

//
//
//
//

---

[11] *See* Dkt. 3596 at 54.

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 8

████████████ DPW, DNH, DPV, C8, had an individualized vision assessment on February 29, 2024. The specialist recommended a Zoomax device with headphones (with one to two hours of training) and "[g]lasses with frosted lens OD."[12] The specialist at WesternU wrote, "We recommend that the patient receives a pair of glasses with a frosted right lens and a filled in prescription in the left eye of +1.00 -0.25 x 060. This will eliminate the patient's constant diplopia secondary to cranial nerve palsy OD."[13] On March 26, 2024, ████████ saw the onsite optometrist, who placed an order for the glasses with a frosted lens. However, the order was changed because "frosted lens not available per PIA."[14] ████████ received the glasses without the frosted lens on April 11, 2024. ADA staff should have initiated procurement of the correct glasses within five business days per policy.

> **REQUEST**: Please explain (1) all efforts by SATF, CDCR, and CCHCS staff to obtain the recommended glasses, along with when and how procurement orders were placed and the results of those orders, (2) why ████████ has not received the frosted glasses 160 days after they were recommended by the specialist, and (3) what will be done to ensure this does not happen in the future, including what oversight CDCR headquarters will provide.
>
> In addition, please ensure that ████████ immediately receives prescription eyeglasses with a frosted lens as recommended by Defendants' vision specialists and let us know when he received the glasses, what the procurement process was, and what vendor supplied the glasses. Please also explain why the onsite optometrist changed the order for glasses based on availability, rather than initiating a request for non-formulary glasses.[15]

████████████ DPV, G3, had an individualized vision assessment on December 7, 2023. The specialist recommended a personal Dell laptop with Windows Narrator and Typing Tutor software and 30 or more hours of training in order to learn to use this equipment.[16] Unfortunately, ████████ has yet to be issued a laptop. In the meantime, ████████ is having to rely on others to write. ████████ explained that he is actively preparing for his parole suitability hearing currently scheduled for 2027 but has been unable to do any writing on his own.

---

[12] *See* Optometry Consultation (Feb. 29, 2024).

[13] *Id.*

[14] *See* Optometry Consultation (Mar. 26, 2024).

[15] *See* Dkt. 3446 at 34 (Court Expert finding that "[d]enying a class member a needed accommodation because that item is not kept at the medical supply warehouse is never acceptable."); *id.* at 62 ("Providers should be trained that there is never a situation in which they can deny a request for DME because the DME is 'not available.'").

[16] *See* Optometry Consultation (Dec. 7, 2023).

He is also enrolled in self-help groups such as CGA, NA, AA, and Anger Management, but he cannot participate fully because he cannot complete any of the written assignments and cannot take notes during group meetings. ███████ stated that sometimes others in the group will help him read and write, but he cannot always rely on their assistance. He added that he also needs help filling out his canteen slips and package list and writing emails on his tablets. While he has been able to get assistance from others, it can take several days to find someone who can help. However, many of these concerns would be resolved if ███████ had the ability to independently write on a laptop. Additionally, as the vision specialist recommended, ███████ needs typing lessons before he can effectively use the laptop. These lessons have also not yet been offered but could have been started even if his laptop was not yet ready for deployment. When we interviewed the ADA Coordinator at SATF on July 12, 2024, 218 days after typing classes were recommended, he stated, "I don't know how we'll teach him to type." (Plaintiffs' counsel recommended that ADA staff reach out to outside independent living centers.)

> **REQUEST**: Please explain (1) all efforts by SATF, CDCR, and CCHCS staff to obtain the recommended laptop and typing classes, along with when and how procurement orders were placed and the results of those orders, (2) ███████ has not received the laptop or typing classes 244 days after they were recommended by the specialist, and (3) what will be done to ensure this does not happen in the future, including what oversight CDCR headquarters will provide.
>
> Please ensure that ███████ receives a laptop and typing classes as recommended by Defendants' vision specialists and let us know when he received both and what the procurement process was and what vendor(s) supplied the laptop and typing classes.

███████ DNH, DPV, F2, had an individualized vision assessment on January 17, 2024. ███████ was recommended an aid/ADA worker to help him, a Ruby 10 magnifier, and orientation and mobility training.[17] ███████ stated he received the Ruby 10 magnifier in a timely manner but has not received the recommended orientation and mobility training. ███████ reported having trouble using a white cane and has previously injured his foot and head as a result of bumping into things.

> **REQUEST**: Please explain (1) all efforts by SATF, CDCR, and CCHCS staff to obtain the recommended orientation and mobility training, along with when and how procurement orders were placed and the results of those orders, (2) why ███████ has not received the training 203 days after they were

---

[17] *See* Ophthalmology Consultation (Jan. 17, 2024).



recommended by the specialist, and (3) what will be done to ensure this does not happen in the future, including what oversight CDCR headquarters will provide.

Please ensure that ██████ receives orientation and mobility training as recommended by Defendants' vision specialists and let us know when he received the training.

## IV.    NEW ARRIVALS EXPERIENCE LONG WAIT TIMES FOR VISION ASSESSMENTS AND HAVE INADEQUATE INFORMATION ABOUT HOW TO ACCESS INTERIM ACCOMMODATIONS

Lastly, we are concerned that class members who are new to SATF or who have recently been identified as DPV are not being seen promptly by Defendants' vision specialists. We are also concerned that these class members are not being provided adequate interim accommodations while they await their appointment.

██████████████ DPO, DPV, D3, arrived to SATF on April 17, 2024. ███ has yet to see the vision specialists at WesternU. According to the medical records, ██████ has no light perception in either eye.[18] Currently, ██████████ has to rely on others in order to read and write and tries to limit their requests to not "bug" other people. Mr. Coleman previously used a Zoomax while housed at CMF, but they had not been informed that SATF also had a Zoomax available for check-out. ██████████ stated, "I have a lot of stuff that I want to read but haven't been able to." ██████████ expressed their eagerness to go to WesternU for their assessment because they want to be able to enroll and participate in a GED program. They also reported that they do not currently own a TV or radio and do not have a talking book player. Additionally, the tablet is difficult for them to operate without assistance. Because of this, ███ ██████ described their experience at SATF so far as "miserable."

Similarly, ████████████ DPV, E2, arrived to SATF on June 12, 2024, and has yet to see the vision specialists at WesternU. ██████ has optic atrophy and a visual acuity of 20/400.[19] ██████ explained that he is new to CDCR and has only been in custody a few months. At the time of our interview on July 9, 2024, ██████ was without a tablet, TV, or radio, and like ██████████ had very little access to any recreational materials. ██████ cannot read on his own, and although he was issued a handheld magnifier, it is not strong enough to help him read independently. Moreover, ██████ was not informed of how he could access a Zoomax in order to read. (Plaintiffs' counsel helped ██████ file an 1824 requesting help

---

[18] *See* Ophthalmology Consultation (Oct. 17, 2023).
[19] See Ophthalmology Consultation (Apr. 28, 2024).

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 11

accessing a Zoomax and understand that as a result, Sergeant ███████ has helped ███████ check out the Zoomax and will renew it for him regularly unless another person on the yard needs it.)

According to Defendants, class members awaiting vision assessments will have access to the Zoomax as an interim accommodation.[20] At SATF, these devices are not kept in the housing units and there are only a few devices available on each yard. Plaintiffs' counsel spoke with housing unit officers regarding the Zoomax and found that some officers were unaware of the process. For example, a regular housing unit officer in E1 reported that he had never heard of the Zoomax, did not know what it was, who it was for, where it was, or the process for checking it out. Similarly, the housing officers in E4 had never heard of the Zoomax.

**REQUESTS**:  Please ensure that ███████ and ███████ are seen by Defendants' vision specialists as soon as possible. We also ask that all custody staff at SATF and blind and low vision class members be educated on the Zoomax check-out process to ensure that class members awaiting their vision assessment have access to the loaner Zoomax as an interim accommodation.

Thank you for your attention to this matter.

Sincerely yours,

Tania Amarillas
Investigator

Rita Lomio
Senior Staff Attorney

cc:    Ed Swanson, Audrey Barron
       Co-counsel
       Patricia Ferguson, Nicholas (Nick) Meyer, Chor Thao, Ramon Ruiz, Ava Lau-Silviera,
       Ursula Stuter, OLA Armstrong (OLA)
       Sharon Garske, Trace Maiorino, Sean Lodholz, Olena Likhachova, Anne Kammer,
       Gurpreet Sandhu (OAG)

---

[20] *See* Letter from Olena Likhachova, Attorney General's Office, to Rita Lomio, Prison Law Office, and Ed Swanson, Court Expert, SATF Stipulation No. 6 (July 25, 2024).

Ms. Tamiya Davis
Re: Individualized Vision Assessments at SATF (SATF Stipulation #5)
August 7, 2024
Page 12

Dawn Lorey, Lourdes White, Darnell Mebane, Cory Lo (DAI)
Brianne Burkart (CCHCS Legal)
Diana Toche, Joseph Bick, John Dovey, Robin Hart, Joseph (Jason) Williams, Jason
Anderson, Jane Moses, Joshua (Jay) Leon Guerrero, Aaron Perez, Dawn Stevens,
Dharmendra Sharma, Antronne Scotland, Joseph Edwards, CCHCS Accountability
(CCHCS)
Lois Welch, Steven Faris (OACC)

# Attachment A



# SPECIALTY REFUSALS SURVEY

## QUALITY MANAGEMENT COMMITTEE MEETING

## OCTOBER 2023



# Background
## Off-Site Specialty Refusals in California Prisons

- When patients refuse, they may miss services critical to their care

- Area of significant waste

- Poses risk to network availability

**PROJECT GOAL:**
Identify **most common reasons for refusals** at a statewide level
to **inform potential interventions**

# Background
Off-Site Specialty Refusals in California Prisons

| TIMEFRAME: 10/1/2022 – 9/30/2023 *Specialty Services Registry* | % Off-Site Specialty Appointments Refused | % Overdue Off-Site Specialty Appts Refused After Compliance Date |
|---|---|---|
| STATEWIDE | 13% | 15% |
| Institutions at or lower than 6% | ○ *PVSP 0%*<br>○ *SQ 4%*<br>○ *CVSP 6%*<br>○ *CTF 6%* | ○ *PVSP 0%*<br>○ *CVSP 5%*<br>○ *CCWF 6%* |
| Institutions Above 20%: | ○ *SVSP 22%*<br>○ *MCSP 21%* | ○ *HDSP 21%*<br>○ *COR 21%*<br>○ *SVSP 24%*<br>○ *MCSP 24%* |

# About The Survey

- Off-site specialty services only, patients who refused appointments in past 6 months
- 16 institutions with highest refusal rates

| R1 | R2 | R3 | R4 |
|---|---|---|---|
| CMF, HDSP, SAC | VSP, SVSP, CMC, CHCF, CCWF | KVSP, SATF, CCI, COR, LAC | CIW, CIM, RJD |

- 537 total survey responses
- Survey structure:
  - Main reason for refusal
  - 3 "did any of these apply"
  - 4 category questions to learn more about factors influencing refusals

| To: | First Name Last Name | CDCR#: | CDCR Number |
|---|---|---|---|
| Facility: | Facility | Bed: | Cell bed |

**MAILROOM: Please return to Medical Mailbox**

CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

*Sent on behalf of the Deputy Director of CCHCS Health Care Quality Management, in association with institution leadership.*

### Outside Health Care Appointments

People in prison and outside of prison sometimes don't go to their health care appointments. CCHCS would like to make changes so it is more likely that patients will go to their health care appointments, especially the ones outside the prison, because these appointments are some of the more important ones to keep our patients healthy. Please complete the survey. Thank you!

1. What was **the main reason** you did not go to your appointment?
   (Please mark all the boxes that apply.)

   ☐ Didn't know I had an appointment / what appointment was for

   ☐ Didn't need the appointment anymore / felt better

   ☐ Was not picked up for the appointment

   *Need help filling out the survey? Please see health care staff for help.*

2. Was **appointment preparation**, such as not being able to eat or having to drink something, part of why you didn't go? What kind of preparation was a problem?

3. Was **transportation** part of why you didn't go? If so, what about transportation was a problem?

4. Was **missing events** at the institution, like canteen or visitation, part of why you didn't go? Which events did you not want to miss?

5. Were **COVID rules** part of why you didn't go? What about COVID rules made you not want to go?

6. Were there **other reasons** you didn't want to go? What were those reasons?

# Top 5 Main Reasons For Refusal

*"What is the main reason you did not go to your appointment?"*

| | | Reason | Number of Responses | Comments from Participants |
|---|---|---|---|---|
| #1 | | **Didn't Know About The Appointment** | **127** ♦ 15% of Responses | *"Didn't know when or why I had an appointment"* |
| #2 | | **Didn't Need The Appointment Or Didn't Want To Go** | **85** ♦ 10% of Responses | *"No reason, just would like to hold off until next year. No need at the moment."* |
| #3 | | **Didn't Want To Miss Canteen** | **70** ♦ 8% of Responses | *"Missing the appointment can happen due to canteen because if I miss it, I also don't eat, so it's one or the other."* |
| #4 | | **Don't Like The Restraints** | **69** ♦ 8% of Responses | *"Leg shackles, not adjusted to older patients."* |
| #5 | | **Not Feeling Well** | **59** ♦ 7% of Responses | *"I was going through a rough mental episode."* |

# Factors Influencing Refusals - Transportation

*"Was transportation part of why you didn't want to go? If so, what about transportation was a problem?"*

**21%** of all factors influencing refusals were in the **transportation category**



| *What about transportation was a problem* | *Responses* |
|---|---|
| Don't like the restraints | 69 |
| The drive is uncomfortable | 40 |
| The drive is too long | 27 |
| No access to drinking water or dietary food | 25 |
| No wheelchair or right medical equipment to get there | 12 |
| The drive too hot/cold | 8 |



### *This question had the highest number of responses*

 = Top 5 reason for refusal

# Factors Influencing Refusals – Missing Out
*"Was missing events at the institution, like canteen or visitation, part of why you didn't go?"*

**16%** of all factors influencing refusals had to do with **missing out**


| Which events did you not want to miss? | Responses |
|---|---|
| ★ Didn't want to miss canteen | 70 |
| Didn't want to miss another appointment / group | 16 |
| Had appointment with attorney or law library visit | 16 |
| Didn't want to miss visit with family or a friend | 14 |
| Packages | 14 |
| Didn't want to miss school | 9 |
| Didn't want to miss work | 3 |

★ = Top 5 reason for refusal

# Factors Influencing Refusals – COVID Rules/Health Status

*"Were COVID rules part of why you didn't go?"*

**13%** of all factors influencing refusal were about **current health status or COVID**



| What about COVID rules made you not want to go? | Responses |
|---|---|
| ★ Not feeling well | 59 |
| Didn't want to test for COVID or risk quarantine | 18 |
| Had other medical issues that need attention first | 15 |
| Panic attack / worried about having a panic attack/phobias | 10 |
| Rejected by Doctor's office because they had not tested for Covid or Unit on Quarantine | 4 |
| Had COVID | 3 |

★ = Top 5 reason for refusal

# Factors Influencing Refusals – Appointment Prep

*"Was appointment preparation, such as not being able to eat or drink something part of why you didn't go?"*

**4%** of all factors influencing refusals related to **appointment prep** 

| What kind of preparation was a problem? | Responses |
|---|---|
| Didn't want to stop eating before the appointment | 20 |
| Didn't want to do a colon preparation / other prep type | 9 |
| Was not given Colonoscopy prep on time | 8 |

# Factors Influencing Refusals - Other

*"Were there other reasons you didn't go?"*



| Appointment Time / Length | Responses |
|---|---|
| Appointment would take too much time | 30 |
| Appointment was too early / was tired | 24 |



| Staff Issues | Responses |
|---|---|
| ★ Disrespectful CDCR staff / Don't trust staff | 47 |
| Don't like the doctor/Medical staff | 13 |

★ = Top 5 reason for refusal

# Did Not Refuse

Patients who responded that they did not refuse the appointment

**45 out of 537 survey respondents (8%) said they did not refuse the appointment**



### Reasons patient was not able to attend their appointment

| | |
|---|---|
| Did not know about it | 25 |
| Was not picked up | 16 |
| "Did not refuse" | 2 |
| Clinic was closed | 1 |
| Appointment was cancelled | 1 |

# Main Themes & Initial Recommendations

| # | THEMES | REASONS | INITIAL RECOMMENDATIONS |
|---|---|---|---|
| 1 | Communication | • We believe patient refused, but patient says did not intend to refuse<br>• Patients do not know why they are being seen<br>• Patients know in advance they don't want to go / don't feel appt is necessary | • CA Model Peer Support Specialist Program – check-ins prior to appt date<br>• L6S improvement projects – improvements in the way we talk about specialty referrals<br>• Explore notification; advocate for notification functions in tablet RFP development |
| 2 | Transportation | • Black box restraints<br>• Long and uncomfortable drive | • Continue efforts to find other means of securing patients beyond black box (DAI)<br>• Continue to optimize use of telehealth and on-site services<br>• Consider local initiatives to make drive more comfortable (e.g., have water available) |

# Main Themes & Initial Recommendations

| # | THEMES | REASONS | INITIAL RECOMMENDATIONS |
|---|--------|---------|-------------------------|
| 3 | Missing Out | • Patients don't want to miss canteen and appointments/groups | • CA Model – switch to a canteen model that allows for on-demand ordering and delivery (Amazon canteen partnership)<br>• Continue to implement universal scheduling approach (SPI Phase 4) |
| 4 | Not Feeling Well | • Patients said they weren't feeling well enough to go on the day of the appointment | • CA Model Peer Support Specialist Program – check-ins prior to appt<br>• Notification, so patients can elevate when they are too sick to go in advance |
| 5 | Rapport with Staff | • Patients say they don't trust CDCR staff, consider staff disrespectful<br>• Includes providers issuing specialty referrals | • CA Model initiative 2024 – Professional Interaction (dynamic security), Active Bystander (intervention when communication approaches are not working) |



Questions?

Exhibit 71

**Rita Lomio**

| | |
|---|---|
| **From:** | arm-plo@prisonlaw.com on behalf of CDCR OLA Armstrong CAT Mailbox |
| **Sent:** | Thursday, August 8, 2024 9:50 AM |
| **To:** | Audrey Lim |
| **Cc:** | Armstrong Team; armstrongteam@rbgg.com; ed@smllp.law; audrey@smllp.law; Ruiz, Ramon@CDCR; Thao, Chor@CDCR; Ferguson, Patricia@CDCR; Meyer, Nicholas@CDCR; CDCR OLA Armstrong CAT Mailbox; Welch, Lois@CDCR; Faris, Steven@CDCR; Chuidian, Saundra; Hernandez, Jillian@CDCR; Lorey, Dawn@CDCR; White, Lourdes@CDCR; Lo, Cory@CDCR; Mebane, Darnell@CDCR; CDCR CAMU Advocacy Mailbox; Toche, Diana@CDCR; Bick, Dr. Joseph@CDCR; Dovey, John@CDCR; Hart, Robin@CDCR; Williams, Joseph@CDCR; Anderson, Jason@CDCR; Moses, Jane@CDCR; Leon Guerrero, Joshua@CDCR; Perez, Aaron@CDCR; CDCR CCHCS Advocacy Correction Services; Stevens, Dawn@CDCR; Sharma, Dharmendra@CDCR; Scotland, Antronne@CDCR; Joseph.Edwards@cdcr.ca.gov; sharon.garske@doj.ca.gov; trace.maiorino@doj.ca.gov; sean.lodholz@doj.ca.gov; olena.likhachova@doj.ca.gov; anne.kammer@doj.ca.gov; gurpreet.sandhu@doj.ca.gov; Burkart, Brianne@CDCR; Davis, Tamiya@CDCR; Stuter, Ursula@CDCR; Lau-Silveira, Ava |
| **Subject:** | RE: Armstrong Advocacy \| Individualized Vision Assessments |

Good Morning,

CDCR is in receipt of your 27 letter dated August 7, 2024. Your letter contains multiple issues that will require additional time for proper review and response. Based on this assessment, our response will be returned to you as soon as is practicable, considering the complexity of the issues you raise.

## Laura Canela

**Staff Services Analyst**
**Class Actions Litigation, Administrative Support Team**
**Office of Legal Affairs – HQ, CDCR**
**1515 S St. Suite 314-S Sacramento, CA 95811**
**Phone: (916) 917-4079**

**CONFIDENTIALITY NOTICE**: **This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.**

**From:** Audrey Lim <audrey@prisonlaw.com>
**Sent:** Wednesday, August 7, 2024 4:47 PM
**To:** Davis, Tamiya@CDCR <Tamiya.Davis@cdcr.ca.gov>; Burkart, Brianne@CDCR <Brianne.Burkart@cdcr.ca.gov>
**Cc:** Armstrong Team <arm-plo@prisonlaw.com>; armstrongteam@rbgg.com; ed@smllp.law; audrey@smllp.law; Ruiz, Ramon@CDCR <ramon.ruiz@cdcr.ca.gov>; Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>; Ferguson, Patricia@CDCR <Patricia.Ferguson@cdcr.ca.gov>; Meyer, Nicholas@CDCR <Nicholas.Meyer@cdcr.ca.gov>; Lopez, Amber@CDCR <amber.lopez@cdcr.ca.gov>; CDCR OLA Armstrong CAT Mailbox <OLAArmstrongCAT@cdcr.ca.gov>; Welch, Lois@CDCR

<Lois.Welch@cdcr.ca.gov>; Faris, Steven@CDCR <Steven.Faris@cdcr.ca.gov>; Chuidian, Saundra
<Saundra.Chuidian@cdcr.ca.gov>; Hernandez, Jillian@CDCR <Jillian.Hernandez@cdcr.ca.gov>; Lo, Cory@CDCR
<cory.lo@cdcr.ca.gov>; CDCR CAMU Advocacy Mailbox <m_CAMUAdvocacy@cdcr.ca.gov>; Toche, Diana@CDCR
<Diana.Toche@cdcr.ca.gov>; Bick, Dr. Joseph@CDCR <Joseph.Bick@cdcr.ca.gov>; Dovey, John@CDCR
<John.Dovey@cdcr.ca.gov>; Hart, Robin@CDCR <Robin.Hart@cdcr.ca.gov>; CCHCS Accountability Log@CDCR
<m_CCHCSAccntLog@cdcr.ca.gov>; Williams, Joseph@CDCR <Joseph.Williams@cdcr.ca.gov>; Jefferson, Cathy@cdcr
<Cathy.Jefferson@cdcr.ca.gov>; Anderson, Jason@CDCR <Jason.Anderson@cdcr.ca.gov>; Lorey, Dawn@CDCR
<Dawn.Lorey@cdcr.ca.gov>; Moses, Jane@CDCR <Jane.Moses@cdcr.ca.gov>; Leon Guerrero, Joshua@CDCR
<Joshua.LeonGuerrero@cdcr.ca.gov>; Perez, Aaron@CDCR <Aaron.Perez@cdcr.ca.gov>; sharon.garske@doj.ca.gov;
trace.maiorino@doj.ca.gov; sean.lodholz@doj.ca.gov; olena.likhachova@doj.ca.gov; anne.kammer@doj.ca.gov;
gurpreet.sandhu@doj.ca.gov
**Subject:** Armstrong Advocacy | Individualized Vision Assessments

**CAUTION:** This email originated from outside of CDCR/CCHCS. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Tamiya and Brianne,

Attached, please find a letter regarding individualized vision assessments for blind and low vision class members at SATF (SATF Stipulation Item #5). We ask that Defendants explain how they will address these concerns to avoid similar issues as vision assessments are rolled out statewide. We also make a number of specific requests throughout the letter related to SATF.

Thank you for your attention to this matter.

Best,
Audrey

----

**Audrey Lim**
She/her
Litigation Assistant
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710

2

# Exhibit 72

**Rita Lomio**

| | |
|---|---|
| **From:** | Sharon Garske <Sharon.Garske@doj.ca.gov> on behalf of Sharon Garske |
| **Sent:** | Friday, September 20, 2024 2:16 PM |
| **To:** | Rita Lomio |
| **Cc:** | Ed Swanson; Audrey Barron; Olena Likhachova; Armstrong Team; Armstrong Team - RBG only; Stuter, Ursula@CDCR; Davis, Tamiya@CDCR; Thao, Chor@CDCR; Trace Maiorino; Ruiz, Ramon@CDCR; Anne Kammer; Ferguson, Patricia@CDCR; Burkart, Brianne@CDCR; dawn.lorey@cdcr.ca.gov |
| **Subject:** | RE: SATF Stipulation 5 |

Hi Rita,

CDCR and CCHCS have provided the below responses to your inquiries.

Thank you,
Sharon

---

**From:** Rita Lomio <rlomio@prisonlaw.com>
**Sent:** Wednesday, September 11, 2024 4:59 PM
**To:** Sharon Garske <Sharon.Garske@doj.ca.gov>; Olena Likhachova <Olena.Likhachova@doj.ca.gov>; Davis, Tamiya@CDCR <Tamiya.Davis@cdcr.ca.gov>; Stuter, Ursula@CDCR <Ursula.Stuter@cdcr.ca.gov>; Ruiz, Ramon@CDCR <ramon.ruiz@cdcr.ca.gov>; Trace Maiorino <Trace.Maiorino@cdcr.ca.gov>; Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>
**Cc:** Ed Swanson <ed@smllp.law>; Audrey Barron <audrey@smllp.law>; Armstrong Team <arm-plo@prisonlaw.com>; Armstrong Team - RBG only <ArmstrongTeam@rbgg.com>
**Subject:** SATF Stipulation 5

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi Sharon,

I am writing to follow up on our discussion today regarding SATF stipulation 5. We'd like to understand:

1. The reason for the delay in providing glasses with a frosted lens to ████████. See page 8 of the attached letter, which explains that, as of the date of the letter, it appeared he had not received the glasses **160 days** after they were recommended by the specialist. When, if at all, was he provided the accommodation?

   **CCHCS response:** SATF healthcare staff were unaware of the institutions' responsibility to procure special glasses recommended by Western University. It was the understanding of healthcare and custody staff locally, that DAI was to procure and issue these items. In this case, the primary provider did not know that DAI was procuring the items and therefore simply saw the recommendation from Western University and acted upon it by referring to local Optometry to order the glasses. As noted by the Plaintiffs, Optometry was unable to obtain the recommended glasses with the contracted vendor, CalPIA, and is processing the request through the non-formulary procurement process. It has been clarified that CCHCS is responsible for ordering prescription eye glasses if recommended by the Vision Specialist.

2. The reason for the delay in providing a laptop and typing classes to ████████. See pages 8-9 of the attached letter, which explain that, as of the date of the letter, it appeared he had not received those

accommodations **244 days** after they were recommended by the specialist. When, if at all, was he provided the laptop and typing classes?

**CDCR response:** The vendor shipped the laptop out to SATF on September 18, 2024. When received, the ADA office will work with Local IT to add the device to the Student Network. Staff will work with the Librarian to get ██████████ s AD account enabled and Canvas ADA access. ADA Staff will train ██████████ on the computer login and access, Student Loan (Terms of Use) Agreement, have ██████ complete the attestation, and then issue the device. We anticipate that will be completed approximately one week after receiving the laptop. Staff will ensure he has access to a typing course on the laptop or work with education to enroll him in an education typing course. ADA staff and ADA workers will be available to assist in training on the use of his laptop.

3. The reason for the delay in providing orientation and mobility training to ██████████ See pages 9-10 of the attached letter, which explain that, as of the date of the letter, it appeared he had not received the training **203 days** after it was recommended by the specialist. When, if at all, was he provided the training?

    **CDCR response:** On August 26, 2024, healthcare staff placed a routine order for Certified Orientation and Mobility Specialist. ██████ began his COMS training on September 18, 2024.

Olena very helpfully responded to Audrey's request for information about the process for implementing recommendations from the vision specialist (see below), and we'd like to understand what happened in the cases above.

Rita

---

**From:** Olena Likhachova <Olena.Likhachova@doj.ca.gov>
**Date:** Tuesday, September 3, 2024 at 8:57 AM
**To:** Audrey Barron <audrey@smllp.law>
**Cc:** Ed Swanson <ed@smllp.law>, Davis, Tamiya@CDCR <Tamiya.Davis@cdcr.ca.gov>, Stuter, Ursula@CDCR <Ursula.Stuter@cdcr.ca.gov>, Ruiz, Ramon@CDCR <ramon.ruiz@cdcr.ca.gov>, Trace Maiorino <Trace.Maiorino@doj.ca.gov>, Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>, Sharon Garske <Sharon.Garske@doj.ca.gov>, Penny Godbold <PGodbold@rbgg.com>, Rita Lomio <rlomio@prisonlaw.com>
**Subject:** RE: Armstrong Advocacy | Urgent requests for ██████████████, CCWF

Hi Audrey,

Pursuant to the "Accommodations for Incarcerated Persons with a Vision Code" policy, upon receipt of the vision specialist's recommendation for the incarcerated person's visual accommodation (i.e., assistive device like LyriQ), the CCHCS staff will send the recommendation to the ADA Coordinator (ADAC) within three business days. (*See* ECF No. 3615 at 38.) The ADAC would be responsible for procurement and issuance of the recommended device(s). (*Id.* at 39.) Assistive devices available in the ADAC's inventory would be issued to the incarcerated person within five business days of the ADAC's receipt of the vision specialist's recommendation. (*Id.*) Procurement of the assistive device(s) not available in the ADAC's inventory would be initiated within two business days of receipt of the documentation from the vision specialist and the assistive device would be issued by the ADAC within five business days of receipt in the ADA Office. (*Id.*)

Currently (pending distribution of the above-referenced policy, the update of each institution's LOP, and completion of the staff training at each institution), the procurement of assistive devices recommended by the vision specialist is handled by CAMU, who sends those devices to the ADACs for distribution to the class members.

If a person is recommended an orientation and mobility assessment (i.e., COMS), implementation of that recommendation would be facilitated by the person's primary care provider (PCP), who will order COMS training for the person following receipt of the vision specialist's recommendation, which is uploaded to the CERNER system that alerts the PCP that they have a specialist note to review.

Please let me know if you have any other questions or need any additional information regarding this request.

Thank you,

Olena

**Olena Likhachova** | Deputy Attorney General IV| California Department of Justice
1300 I St., Sacramento, CA 95814
Phone:  (916) 591-9805 | Email:  olena.likhachova@doj.ca.gov

**From:** Audrey Barron <audrey@smllp.law>
**Sent:** Monday, September 2, 2024 10:11 PM
**To:** Olena Likhachova <ed@smllp.law>
**Cc:** Ed Swanson <ed@smllp.law>; Davis, Tamiya@CDCR <Tamiya.Davis@cdcr.ca.gov>; Stuter, Ursula@CDCR <Ursula.Stuter@cdcr.ca.gov>; Ruiz, Ramon@CDCR <ramon.ruiz@cdcr.ca.gov>; Trace Maiorino <Trace.Maiorino@doj.ca.gov>; Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>; Sharon Garske <Sharon.Garske@doj.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Rita Lomio <rlomio@prisonlaw.com>
**Subject:** Re: Armstrong Advocacy | Urgent requests for ███████████████, CCWF

> **EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Thanks, Olena.

**From:** Olena Likhachova <Olena.Likhachova@doj.ca.gov>
**Date:** Thursday, August 29, 2024 at 1:12 PM
**To:** Audrey Barron <audrey@smllp.law>
**Cc:** Ed Swanson <ed@smllp.law>, Davis, Tamiya@CDCR <Tamiya.Davis@cdcr.ca.gov>, Stuter, Ursula@CDCR <Ursula.Stuter@cdcr.ca.gov>, Ruiz, Ramon@CDCR <ramon.ruiz@cdcr.ca.gov>, Trace Maiorino <Trace.Maiorino@doj.ca.gov>, Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>, Sharon Garske <Sharon.Garske@doj.ca.gov>, Penny Godbold <PGodbold@rbgg.com>, Rita Lomio <rlomio@prisonlaw.com>
**Subject:** RE: Armstrong Advocacy | Urgent requests for ████████████████, CCWF

Hi Audrey,

Please accept my apologies for not responding sooner.  We are working on a substantive written response to your email below.  Thank you for your continued patience and understanding.  We will provide a response soon.

Sincerely,

Olena

**Olena Likhachova** | Deputy Attorney General IV| California Department of Justice
1300 I St., Sacramento, CA 95814
Phone:  (916) 591-9805 | Email:  olena.likhachova@doj.ca.gov

**From:** Audrey Barron <audrey@smllp.law>
**Sent:** Tuesday, August 27, 2024 1:25 PM
**To:** Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>; Olena Likhachova <Olena.Likhachova@doj.ca.gov>; Sharon Garske <Sharon.Garske@doj.ca.gov>; Penny Godbold <PGodbold@rbgg.com>; Rita Lomio <rlomio@prisonlaw.com>

**Cc:** Ed Swanson <ed@smllp.law>
**Subject:** FW: Armstrong Advocacy | Urgent requests for ███████████ CCWF

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Hi all,

This advocacy raised a question for Ed and me regarding stipulation 5 (and possibly 6), so we've included the people we believe to be working on those issues. We want to be sure we understand who is responsible (the PCP? The RAP?) for receiving and implementing recommendations from the vision specialist, and what the process is for that. We are not looking for a response to this specific advocacy outside the normal process, but we want to be sure we understand the general process for who receives the specialist's recommendation, and how and by when they must accept/reject/implement the recommendations.

We're happy to receive a response by email, or if it's easier, schedule a call.

Thanks,

Audrey Barron

---

**From:** Tess Borden <tess@prisonlaw.com>
**Date:** Monday, August 26, 2024 at 4:36 PM
**To:** Davis, Tamiya@CDCR <Tamiya.Davis@cdcr.ca.gov>
**Cc:** Armstrong Team <arm-plo@prisonlaw.com>, armstrongteam@rbgg.com <armstrongteam@rbgg.com>, Ed Swanson <ed@smllp.law>, Audrey Barron <audrey@smllp.law>, Ruiz, Ramon@CDCR <ramon.ruiz@cdcr.ca.gov>, Thao, Chor@CDCR <Chor.Thao@cdcr.ca.gov>, Ferguson, Patricia@CDCR <Patricia.Ferguson@cdcr.ca.gov>, Meyer, Nicholas@CDCR <Nicholas.Meyer@cdcr.ca.gov>, Lopez, Amber@CDCR <amber.lopez@cdcr.ca.gov>, CDCR OLA Armstrong CAT Mailbox <OLAArmstrongCAT@cdcr.ca.gov>, Welch, Lois@CDCR <Lois.Welch@cdcr.ca.gov>, Faris, Steven@CDCR <Steven.Faris@cdcr.ca.gov>, saundra.alvarez@cdcr.ca.gov <saundra.alvarez@cdcr.ca.gov>, Hernandez, Jillian@CDCR <Jillian.Hernandez@cdcr.ca.gov>, cory.lo@cdcr.ca.gov <cory.lo@cdcr.ca.gov>, m_CAMUAdvocacy@cdcr.ca.gov <m_CAMUAdvocacy@cdcr.ca.gov>, diana.toche@cdcr.ca.gov <diana.toche@cdcr.ca.gov>, Bick, Dr. Joseph@CDCR <Joseph.Bick@cdcr.ca.gov>, Dovey, John@CDCR <John.Dovey@cdcr.ca.gov>, Hart, Robin@CDCR <Robin.Hart@cdcr.ca.gov>, CCHCS Accountability Log@CDCR <m_CCHCSAccntLog@cdcr.ca.gov>, Williams, Joseph@CDCR <Joseph.Williams@cdcr.ca.gov>, Jefferson, Cathy@cdcr <Cathy.Jefferson@cdcr.ca.gov>, Anderson, Jason@CDCR <Jason.Anderson@cdcr.ca.gov>, Lorey, Dawn@CDCR <Dawn.Lorey@cdcr.ca.gov>, Moses, Jane@CDCR <Jane.Moses@cdcr.ca.gov>, Leon Guerrero, Joshua@CDCR <Joshua.LeonGuerrero@cdcr.ca.gov>, Perez, Aaron@CDCR <Aaron.Perez@cdcr.ca.gov>, sharon.garske@doj.ca.gov <sharon.garske@doj.ca.gov>, trace.maiorino@doj.ca.gov <trace.maiorino@doj.ca.gov>, sean.lodholz@doj.ca.gov <sean.lodholz@doj.ca.gov>, olena.likhachova@doj.ca.gov <olena.likhachova@doj.ca.gov>, anne.kammer@doj.ca.gov <anne.kammer@doj.ca.gov>, gurpreet.sandhu@doj.ca.gov <gurpreet.sandhu@doj.ca.gov>, Brianne.Burkart@cdcr.ca.gov <Brianne.Burkart@cdcr.ca.gov>
**Subject:** Armstrong Advocacy | Urgent requests for ███████████, CCWF

Dear Tamiya,

I'm writing to follow up on advocacy PLO previously sent on March 22 and May 29, 2024 on behalf of ███████████ ██████, at CCWF. **We have not received a response to either advocacy letter, despite the urgent nature of the May 29 letter**. As outlined in that letter (reattached here), ████████ DPV code and vision disability vest were removed on

May 21, 2024, resulting in significant and continuing harm to ██████. In our previous advocacy, PLO also expressed concerns that ██████ had lost her place in the honor dorm due to a disability-related RVR.

Since PLO wrote on May 29, ██████ has remained without a vision code, vest, or any accommodations for her vision disability, despite repeatedly requesting that these be provided to her. On July 26, ██████ was evaluated at the Western University Low Vision Rehabilitation Clinic. I attach the vision report here. The report finds that ██████ is "legally blind."

Dr. ██████, the Attending Optometrist at **Western University, found that** ██████' **best corrected visual acuity was "no light perception" in either eye. A "no light perception" finding means that** ██████ **is blind and should have a DPV code.** Due to ██████ "significant visual impairment and goals," Dr. ██████ recommended a Lyric reader and a PC Laptop with JAWS software. Dr. ██████ also recommended an orientation and mobility assessment, noting that "██████ is legally blind and has severely reduced vision and would benefit from a full orientation and mobility evaluation to help her navigate her surroundings safely."

Now a full month after the Western University evaluation, ██████ **remains without any vision code or accommodations. She is housed on B Yard in Building 507, bed** ██████**, which is not DPV-accessible** according to the most recent DPP bed-level matrix. Although ██████ was seen at SATF's Low Vision Clinic on August 18 for a cane training, she has been provided no cane or other assistive device since that time. And although CCWF was required to issue and/or order the Western University-recommended devices within five days, **she has still received neither the Lyric reader nor the PC Laptop with JAWS software**. *See* Memorandum, Accommodations for Incarcerated Persons with a Vision Code, Dkt. 3596 at 54.

Because ██████ does not currently have a DPP code or any vision-related DME, she has been unable to successfully and safely participate in programs, services and activities at CCWF or complete activities of daily living independently. She reports to us that **ADA workers and staff refuse to assist her** because she does not have a DPP code. She says that on August 14, she had a ducat for committee and asked for an ADA worker to escort her but the officer told her to "figure it out on your own." She reports that the lack of ADA worker assistance means she has **repeatedly missed picking up her mental health medications**, which are prescribed for PTSD and anxiety following staff misconduct incidents earlier this year. She also reports that she is **often unable to go to the dining hall** because she does not have an ADA worker to assist her and so she misses meals. She says that she has **difficulty navigating beyond her own room without assistance and that her room itself is inaccessible**; she has to reach out and feel for walls and objects and over-rely on her roommates just to get to the bathroom, sink and bed. In brief, she describes a daily life of isolation and helplessness, compounded by fears of retaliation due to the ongoing staff misconduct investigation.

On August 16, ██████ received a new job assignment as an ADA worker. She is scheduled to work five days a week from 6am to 10am. She is **unable to complete those job duties because the job is not DPV-accessible.** She says that on August 18, an officer told her she would receive a 115 if she did not show up for work. However, she reports that she continues not to receive ADA worker assistance herself and so has repeatedly been unable to appear for work, let alone perform the job duties. She is fearful of receiving RVRs as a result.

**I urgently request the following from CCWF:**

1. Immediately provide ██████ with a DPP code and vision disability vest in light of Western University's exam finding that she is "legally blind" and has "no light perception" in either eye.
2. Ensure ██████ is provided ADA workers and that housing officers are instructed that she is entitled to their assistance.
3. Immediately provide ██████ a white cane and orientation and mobility training as recommended by Western University.
4. Immediately provide ██████ with a PC laptop with JAWS software and the appropriate training for this software, and provide the Lyric reader as soon as possible. If not immediately provided, please confirm whether CCWF ordered the Lyric reader following the July 26 Western University recommendation, the date that the Lyric reader was ordered, the current status of the order, and when it is expected to be produced to ██████.

5. Immediately unassign ███████ from the ADA worker program and provide a new job assignment that is DPV-accessible as soon as possible.

6. Confirm that no RVRs have been issued since August 16 for ███████' failure to appear for the ADA worker job, or, if they have, immediately void these RVRs.

7. Produce all paperwork for any RVR received by ███████ in May 2024, investigate the appropriateness of any such RVR, and void the RVR if it is determined to be related to ███████ vision disability.

8. Assign ███████ to a DPV-accessible room and provide her a DPV orientation to her new housing unit. Specifically, consider assigning ███████ to the honor dorm in Building 506 in light of request #7, or explain in detail the reason for her removal from an honor dorm in May 2024. We request that ███████ not be reassigned to the honor dorm in Building 516 due to the pending investigation into staff misconduct that is alleged to have occurred there.

**I also request the following from Headquarters:**

9. Produce the investigation file for staff misconduct allegation(s) involving ███████ which arose from incidents in Building 516 between January and May 2024. We have reason to believe these incidents included disability discrimination or are otherwise disability-related.

I ask that you treat this advocacy as urgent given the daily harm ███████ is experiencing. I met with AW Dunn on site at CCWF last week about other matters; I would welcome the opportunity to discuss ███████ disability and accommodation needs with him and OLA if that would expedite the institution's response or otherwise be of assistance.

Thank you,
Tess

**Tess Borden**
Supervising Staff Attorney*
Prison Law Office
1917 Fifth Street
Berkeley, CA 94710
(510) 280-2623
tess@prisonlaw.com
*Pronouns: she/her*
*Registered Legal Aid Attorney; MJP No. 805022

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

Exhibit 73

Docusign Envelope ID: DED0ACED-12BB-4DA7-8FD8-2F72B134D402



# CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES

# MEMORANDUM

| | |
|---|---|
| **Date:** | August 15, 2024 |
| **To:** | JOSEPH (JASON) WILLIAMS<br>Director<br>Corrections Services |
| **From:** | *Joseph K. Edwards*<br>DocuSigned by:<br>B0833E8108E94ED...<br>JOSEPH EDWARDS<br>Associate Warden<br>Field Operations, Corrections Services |
| **Subject:** | **SUBSTANCE ABUSE TREATMENT FACILITY - SPECIAL REVIEW** |

On July 10 and 11, 2024, staff from California Correctional Health Care Services (CCHCS), Field Operations, Corrections Services conducted an onsite Special Review at Substance Abuse Treatment Facility (SATF). The Special Review consisted of identifying key issues regarding Health Care and the Americans with Disabilities Act (ADA) patients during the Prison Law Office (PLO), Armstrong Monitoring Tour (AMT). The review team consisted of the following personnel:

> Joseph Edwards, Associate Warden
> Adam Fouch, Associate Warden, Retired Annuitant
> Dharmendra Sharma, Captain
> Amelia Esquivel, Captain

The following narrative represents a summary of the information provided through interviews, and observations.

### Reasonable Accommodation Panel

SATF averaged approximately 80 RAP cases per week, which could last up to four hours per session. Between June 2024 to present, SATF received 227 cases in June and 443 in July. The increase in July was due to an AMT by the PLO, in which the PLO filed the CDCR 1824, Reasonable Accommodation Request, for the Incarcerated Persons (IPs). Per the ADA Analyst, the number of cases as of August 14, 2024, are approaching their average number of cases (147).

During Fall of 2022 through Spring of 2023, the Reasonable Accommodation Panel (RAP) Subject Matter Experts (SMEs) made numerous tours to SATF, the RAP process was observed to be correcting previously identified issues and moving in the right direction. Staff were engaged in the process and medical and custody were working together to utilize their tools to solve the incarcerated population concerns in a timely and efficient manner. There were multiple in-person RAP observations and trainings provided by both CCHCS and DAI Subject Matter Experts (SMEs). The ADA Compliance Sergeants were conducting the

# MEMORANDUM

Interim Accommodation Procedure (IAP) during this time. The ADA Compliance Sergeants would conduct thorough IAPs to determine if an interim accommodation was needed pending the RAP decision. The Sergeants conducted interviews of IPs, housing unit staff, and in some cases work supervisors during the IAP process. The SMEs observed some areas of concern, but overall, the RAP process was efficient.

However, on July 10, 2024, Corrections Services staff participated in SATF's RAP. During this review, it was identified there are serious concerns regarding SATF's RAP process. SATF discontinued practices that were effective which they had been utilizing during prior RAPS.

- SATF does not utilize their Compliance Sergeants to complete the IAP.
    - Instead, they rely on the one ADA Analyst assigned to the ADA Coordinator's (ADAC) office. During this review it was identified the analyst did not interview the IPs.
- It was also determined during the review, the Compliance Sergeants are in 60/40 bid positions. SATF has made a significant change in its hiring practices for the ADA Compliance Sergeants.
    - Of the nine ADA Compliance Sergeants, two are now management-assigned, and the remaining seven are filled through a post and bid process, based on seniority.
    - When the positions were created, they were all management positions. This does not give the administration any control of who is in the position and leaves them for bid by the highest seniority number.
- The ADA analyst only interviews the housing staff to see if they notice any issues with the IP. However, IPs are not interviewed to ensure they can access Programs, Services, and Activities (PSAs).
- During this RAP observation, SATF did not interview the IP even if more detail was needed to discern the issue. This practice does not address concerns the IP may potentially have such as safety concerns, accessing PSAs, or mental health needs, etc.
    - During prior observations the IPs were being interviewed to determine if they have any additional or underlining issues related to safety concerns, accessing PSAs, or mental health needs, etc.
- If medical deems a requested item is not medically necessary, the RAP now automatically denies the request, without considering the reasonable accommodation criteria.
    - During prior observations, the RAP would consider providing requested items as a reasonable accommodation even when medical determined the request was not medically necessary.

There have been instances where SATF has refused to provide a lighted magnifier, to the extent Corrections Services staff had to intervene to ensure the accommodation was provided. In this particular instance Corrections Services staff made attempts to encourage SATF staff to accommodate an IP and issue the magnifier and SATF staff refused. Corrections Services went as far as speaking with DAI management, Class Action Management Unit (CAMU), and direction was provided to SATF, to which they still did not comply. This practice highlights the failure of SATF's current approach and the need for a more comprehensive review process. While onsite to confirm the IP received the magnifier as a reasonable accommodation, Corrections Services ensured the ADAC issued the magnifier to the IP and documented it in the property section in SOMS.

# MEMORANDUM

**Heat Related Concerns**

During the July 2024 tour, SATF was hitting record temperatures of 116 degrees outside.  While on the tour, each housing unit was humid and very warm.  The housing area and officer areas had fans running to circulate the air.  When  walking into the housing unit, it was much cooler in the officer stations than the sections in the IP housing areas.

On July 19, 2024, Division of Adult Institutions assigned Raul Morales as acting Warden at SATF.  Subsequently, on August 12, 2024, Corrections Services took part in a follow-up tour regarding heat related concerns.  The following adjustments were made at SATF to alleviate some of the heat factors for staff and the incarcerated population:

- 70 pedestal fans and distributed them throughout the institution.
- 7 Port-o-Cools and sent them to the units registering the hottest temperatures.
- 80 Igloo coolers for staff and incarcerated persons and are filling them with iced water daily. They are making sure IP's and staff could utilize them.
- All their broken ice makers were repaired.
- Canopies were installed on the lower-level yards for shade, they are currently building canopies on the Level III and IV yards, and also installing misters.
- Doors are being left open for air flow and dayrooms are rotated depending on existing heat temperatures.
- Some heat sensitive items in the medical warehouse have been moved to a temperature-controlled location in education.

Corrections Services still found some issues with C Yard's heat medication list not being printed.  The Captain onsite was conducting training and reminders were being sent out daily to check the heat logs and to log their times.

**Conclusion**

All identified concerns were shared with SATF staff during the tour.

If you should have any questions or concerns, please feel free to contact Associate Warden Joseph Edwards via email at Joseph.K.Edwards@cdcr.ca.gov.

Exhibit 74

State of California
Department of Corrections and Rehabilitation

# Memorandum

Date      :      June 19, 2023

To        :      All Staff

Subject:      **OPERATIONAL PROCEDURE 403, DISABILITY PLACEMENT PROGRAM**

The purpose of this memorandum is to announce there were numerous changes made to Operational Procedure 403, *Disability Placement Program*, during this annual revision and should be read in its entirety. Additions are noted in **red bold font** within the procedure.

Ensure this information is disseminated to all institutional staff. Should you have any questions regarding this matter, please contact the ADA Coordinator at extension 7516.

BRYAN D. PHILLIPS
Warden (A)
California Substance Abuse
Treatment Facility and State Prison

A. BANERJEE
Chief Executive Officer
California Substance Abuse
Treatment Facility and State Prison

**PPIM**

| | |
|---|---|
| New: | |
| Reviewed: | June 2023 |
| Annual Revision Month: | August |

**CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND STATE PRISON**
Corcoran, California

Operational Procedure (OP)

**I.    PLAN TITLE AND NUMBER**

    A.    Disability Placement Program (DPP)

    B.    OP – 403

**II.    PURPOSE AND OBJECTIVES**

The purpose of this OP is to outline responsibilities as required by the Americans with Disabilities Act (ADA) and the DPP as follows:

    A.    To implement a plan for reasonable accommodation for inmates at the California Substance Abuse Treatment Facility and State Prison (CSATF/SP) who are identified as having a disability, which may or may not impact placement.

    B.    To establish verification criteria, placement, due process, and tracking for DPP inmates while providing them with appropriate housing and programming opportunities similar to those provided to non-disabled inmates.

    C.    To familiarize staff and inmates with special equipment and services that is available for inmates with disabilities.

**III.    REFERENCES**

    A.    ADA

    B.    Title 42 of the United States Code, Section 12102

    C.    Armstrong v. Schwarzenegger Court Ordered Remedial Plan, Amended January 3, 2001

    D.    Armstrong v. Schwarzenegger Court Ordered Injunction, dated January 22, 2007

    E.    Equally Effective Communication (Revised) Memorandum, dated October 22, 2003 and Effective Communication for Hearing and Speech Impaired, dated January 22, 2007.

    F.    DPP Compliance Evaluation and Hiring Authority Accountability Memorandum, dated November 21, 2008.

    G.    Expectations for Staff Accountability and Non-compliance of the DPP Memorandum, dated November 21, 2008.

    H.    Monthly State of Repair Report for ADA Housing Features Memorandum, dated May 5, 2008.

I.      ADA Monthly State of Repair Report Memorandum, dated March 20, 2009.

J.      ADA Assets State of Repair Reports for Plant Operations Memorandum, dated March 18, 2009.

K.      California Code of Regulations (CCR), Title 15

L       Departmental Operations Manual (DOM)

M.      Public Law 85-905

N.      Title VI of the Civil Rights Act of 1964

O.      Public Law 89-522

P.      National Library Service for the Blind and Physically Handicapped

Q.      Operational Procedure 467, Durable Medical Equipment and Medical Supply

R.      Implementation of Video Relay Service Units Memorandum dated July 27, 2017.

S.      Operational Procedure 418, Video Relay Service Units

T.      1824 Desk Reference Manual

U.      Portable Compact Disc Player Loaner Program for Vision Impaired Inmates to Listen to Audio Board of Parole Hearings Transcripts Memorandum, dated April 10, 2020.

V.      Armstrong vs. Brown Court Order Regarding the Housing of Armstrong Inmates in Administrative Segregation Memorandum dated April 20, 2015.

W.      Revised Americans with Disabilities Act Inmate Assistance Program Memorandum, dated June 25, 2020

X.      Purchasing and Issuance of Wheelchair and Walker Bags Memorandum, dated April 15, 2021.

Y.      Confidential Attorney Calls Process for Americans with Disabilities Act Memorandum, dated August 24, 2021.

Z.      Replacement of Hiring Authority Binders for Disability Placement Program and Developmental Disability Program Accountability Memorandum, dated May 31, 2017.

AA.     Situating Blind and Low-Vision Individuals to New Living Environments during the COVID-19 pandemic Memorandum, dated January 14, 2021.

BB.     Memorandum titled, "Updated Talking Book Program Guidelines" dated April 25, 2022.

CC.    Memorandum titled, "Providing Incontinence Related Services and Supplies" dated August 16, 2022.

DD.    **Memorandum titled, "Americans with Disabilities Act Caption Phone Purchase and Implementation at the Viapath Institutions" dated March 6, 2023.**

EE.    **Memorandum titled, "Revised Reasonable Accommodations for Inmates with Disabilities during Application of Mechanical Restraints" dated May 24, 2023.**

## IV.    APPROVALS AND REVIEW

The ADA Coordinator, Associate Warden, shall review and update this OP annually during the month of August and forward to the Warden for final approval.

## V.    RESPONSIBILITY

A.    The ADA Coordinator shall be responsible for the implementation, as well as, administrative oversight of the facility's response to the requirements of the ADA and DPP. The Chief Executive Officer (CEO)/Chief Medical Executive (CME) has the responsibility for ensuring that each inmate's disability is verified and properly documented, and ensuring Health Care Services is in compliance with this OP.

B.    A copy of this OP shall be maintained in the OP Manual in the Warden's Office and the ADA Coordinator's Office. A copy of this OP shall also be kept electronically on the Warden's computer and in the ADA Shortcut folder, titled, "Warden Binder". The Hiring Authority or their designee(s) can also utilize the Class Action Management Unit (CAMU) Shared Site. The Compliance Analyst is responsible for supplying the division heads with a copy of this OP for reproduction and distribution within their areas, as needed.

C.    The Classification and Parole Representative (C&PR) has the responsibility to monitor and track inmates with disabilities based on the California Department of Corrections and Rehabilitation electronic (CDCR) form 1845, Disability Placement Program Verification and to ensure appropriate housing and transfers in a timely manner.

D.    All Captains are responsible for compliance in their area of responsibility.

E.    Correctional Counselor (CC) II Supervisors are the designated Assistant ADA Coordinators and shall be responsible for assisting the ADA Coordinator with ADA compliance issues within their respective facility.

F.    Correctional Lieutenants, Sergeants, and Health Care supervisors are directly responsible for the daily implementation of this OP, and to ensure that subordinate staff is trained in this OP, and Post Orders are updated and reviewed by staff.

G.    The ADA Coordinator will be responsible for the coordination of all sign language services.

H.    The Principal of Education will be responsible for the implementation of the policy in the libraries and classrooms.

I.    The Academic Vice-Principal overseeing the libraries and classrooms and the Vocational Vice-Principal overseeing classrooms and shops will institute the procedure in their respective areas along with the DPP Teachers.

J.    The ADA Coordinator is administratively responsible for maintaining compliance with inmate assignment procedures.

K.    The Inmate Assignment Lieutenant (IAL) is responsible for establishing and maintaining institutional waiting lists for inmate assignments, vocational trades, and academics.

L.    It is the responsibility of all staff to familiarize themselves with and comply with this OP and the General Post Order/Duty Statement Addendum        (Attachment A).

## VI.    METHODS

A.    POLICY

1.    It is the policy of the CDCR to provide access to programs and services to inmates and parolees with disabilities, with or without reasonable accommodation, consistent with legitimate penological interests.    No qualified inmate or parolee with a disability, as defined in Title 42 of the United States Code, Section 12102; shall, because of that disability, be excluded from participation in or denied the benefits of services, programs, or activities of the Department or be subjected to discrimination.    All institutions/facilities housing inmates with disabilities will ensure that housing and programming are reasonable and appropriate in a manner consistent with their mission and Departmental policy.

2.    SCOPE

The DPP is the Department's set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities.   The DPP applies to all of the Department's institution/facilities, all programs that the Department provides or operates, and all inmates who have disabilities that affect a major life function whether or not the disabilities impact placement.

Although the program covers all inmate/parolees with disabilities, whether or not they require special placement or other accommodation, it is facilitated in part through "clustering" or designating accessible sites (designated facilities) for qualified inmates requiring special placement. Inmates with permanent mobility, hearing, vision, and speech impairments, and other disabilities or compound conditions severe enough to require special housing and programming will be assigned to special placement in designated DPP facilities.   Inmates with a permanent impairment of lesser severity, learning disability, or a kidney disability, may be assigned to any of

the Department's institutions/facilities (designated/non-designated DPP institutions) consistent with case factors.

B.    STANDARDS

1.    QUALIFIED INMATE

A "qualified inmate" is one with a permanent physical or mental impairment, which substantially limits the inmate's ability to perform a major life activity. Major life activities are functions such as caring for one's self, performing essential manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

2.    PERMANENT DISABILITY

A "permanent disability or impairment" is one which is not expected to improve within six months.  Temporary impairments, (e.g., broken leg or hernia operation) do not constitute a permanent disability.

3.    CATEGORIES AND CRITERIA FOR DISABILITY DESIGNATION

The following categories and criteria apply to inmates with Disabilities as identified via the electronic CDCR 1845.

a.    Full Time Wheelchair User

**DPW** — Inmates who have severe mobility restrictions and require a full time wheelchair accommodation to ambulate in and out of cell/bed area.  DPW inmates require wheelchair accessible housing (DPW designated bed) and a wheelchair accessible path of travel.

b.    Intermittent Wheelchair User

**DPO** — Inmates who have severe mobility restrictions but only use a wheelchair intermittently as an accommodation outside of cell/bed area.   DPO designated inmates <u>do not</u> require housing in a wheelchair designated bed.  Wheelchair can be kept outside of cell.

c.    Mobility Impairment – with or without assistive device (wheelchairs shall not be prescribed)

**DPM** — Inmates who have severe mobility restrictions and use an assistive device other than a wheelchair to ambulate, and cannot walk up or down stairs because of the disability.  Does not use a wheelchair, but uses other assistive devices.  Generally requires no steps/stairs in regular path of travel.

d.    Mobility Impairment – with or without assistive devices requiring relatively level terrain

OP 403 - Disability Placement Program (DPP)
Page 6 of 79

**DLT** — Inmates who require a relatively level terrain/path of travel accommodation to ambulate due to mobility or health concerns. May or may not use a walking device for assistance. Can walk up/down at least 6 steps/stairs, but not an entire flight of stairs.

e.    Permanent Mobility Impairments

**DNM** — Inmates who may or may not require an assistive device accommodation to ambulate due to a disability, but the disability is not severe enough to require special housing or level terrain. Assistive devices may be prescribed for ambulation needs. An impairment of major life activity must exist. May have special needs outside housing placement. Can walk up or down steps/stairs.

f.    Permanent Hearing Impairments

**DPH** — Inmates who are permanently deaf or severely hearing impaired and require written notes, sign language, or lip reading accommodation to achieve effective communication. Hearing impairment vests are required while outside of cell/bed area.

g.    Permanent Hearing Impairments

**DNH** — Inmates who have a hearing impairment and use an assistive hearing device to achieve effective communication. An assistive device is prescribed. Hearing impaired vest is required while outside of cell/bed area when hearing device(s) is not in use.

h.    Permanent Vision Impairments

**DPV** — Inmates who have severe vision impairments which are not correctable to better than central vision acuity of 20/200 in with corrective lenses in at least one eye. Vision vest is required while outside of cell/bed area. CSATF/SP inmates require lower bunk, no stairs, no triple bunk housing.

**DNV** — Inmates whose vision is between 20/70 and 20/200 and is determined by the Primary Care Provider to be substantially impaired in a major life activity. A vision impaired vest is required while outside the cell or bed area.

Note: The issuance of reading glasses alone does not meet DNV criteria.

i.    Permanent Speech Impairments

**DPS** — Inmates who cannot communicate effectively when speaking due to permanent speech impairment.

j.    **DKD** — Inmate who has a kidney disease or other chronic illness which requires dialysis.

4.     EFFECTIVE COMMUNICATION

a.     General

Reasonable accommodation shall be afforded to inmates with disabilities (e.g., vision, speech, hearing, and learning), to ensure equally effective communication with staff, other inmates, and the public, when applicable.  Auxiliary aids, which are reasonable, effective, and appropriate to the needs of the inmate, shall be provided when simple written or oral communication is not effective.  Such aids may include bilingual aides, qualified interpreters, readers, sound amplification devices, captioned television/video text displays, Telecommunication Devices for the Deaf/Teletype (TDD/TTY), **caption phones, live captioning technology,** audio taped texts, Braille materials, large print materials, qualified Sign Language Interpreter (SLI), Video Relay Interpreting (VRI), **other-the-ear headphones (OTEH), pocket talkers and LED Magnifiers.**

b.     Equally Effective Communication for Hearing and Speech Impaired

In cases where primary method of communication has not been previously determined, the CSATF/SP SLI shall interview inmates designated as DPH, DNH, or DPS to determine their primary method of communication.  If the inmate uses sign language, the SLI shall ask whether it is his primary or sole method of communication.  The interviewer shall also determine the type of sign language the inmate uses e.g., American Sign Language (ASL), Sign Exact English (SEE), and what, if any, alternative form of communication should be used in an emergency where a SLI is not readily available.  The results of the interview shall be documented on the CDCR Form 128-B, Equally Effective Communication for Hearing/Speech Impaired (Attachment B).

The interviews shall be conducted within fourteen (14) days of arrival, if not previously done; or within fourteen (14) days of being verified with a hearing or speech impairment.  The CSATF/SP SLI shall monitor the Strategic Offender Management System (SOMS) each working day; to ensure hearing and speech impaired inmates are interviewed in a timely manner.

The CSATF/SP SLI shall forward the original CDCR Form 128-B to the C&PR, and a copy to the CEO.  The original 128-B shall be scanned in the general chrono section of the inmate's Electronic Records Management System (ERMS), with the most current electronic CDCR Form 1845.  Medical records staff shall scan the copy of the CDCR 128-B to the most current electronic CDCR Form 1845 in the Electronic Unit Health Record (e-UHR).

The C&PR shall ensure that the Transfers Case Records Technician (CRT) enters the information from the CDCR Form 128-B into the

SOMS, within one working day of receipt. The Transfers CRT shall enter the inmate's primary and, if applicable, alternative method of communication in the "Interpreter Type" field of the SOMS. The Transfers CRT shall type in one of the following codes to identify effective communication information:

- ASL
- SEE
- OTH-Other
- WN-Written notes
- RL-Reads lips
- HA-Hearing aids
- ALD-Alternative listening device
- Needs Staff to Speak Loudly and Clearly

A copy of the CDCR Form 128-B shall be attached to the CDCR Form 611, Release Program Study, and forwarded to the parole region for inclusion in the parolee field file as an ADA source document. If a CDCR Form 128-B is completed after the CDCR Form 611 has been sent to the parole region, the C&PR or designee shall generate a CDCR Form 128-B, ADA Documents for Transition to Parole, and forward these documents to the parole region ADA Coordinator for inclusion in the aforementioned file. This will ensure effective communication information is available to staff during parole supervision and/or parole revocation procedures.

c.    Communication During Due Process Proceedings

Because of the critical importance of communication involving due process proceedings, including but limited to Rules Violation

Reports (RVR); Administrative Placement Notices (APN), Notice of Reason for Short Term Restricted Housing (STRH) Placement; Unit Classification Committee (UCC) hearings; CDCR Form 128-B1, Notice of Classification Hearings; Institutional Classification Committee (ICC) hearings; and Board of Parole Hearings (BPH), the standard for equally effective communication is higher when these interests are involved. CSATF/SP staff is obligated to provide effective communication under all circumstances, but the degree of accommodation that is required under these special circumstances shall be determined on a case-by-case basis, and is subject to the following requirements:

(1)    Prior to engaging in due process proceedings, staff shall review the SOMS (and/or current SOMS roster), to determine if the inmate has any effective communication issues. It is the responsibility of supervisors to train staff to be aware of, and utilize, resources that are necessary to establish effective communication.

(2)     If the inmate has effective communication issues, staff shall utilize necessary resources (e.g., telephone interpreter for foreign language, qualified SLI, real time captioning when written notes are necessary, visual materials), in order to effectively communicate with him.

(3)     An inmate's ability to lip-read shall not be the sole source used by staff as a means of effective communication involving due process proceedings, unless the inmate has no other means of communication.

(4)     Qualified SLIs will be provided for all due process functions that fall within the scope of those when sign language is the inmate's primary or sole means of effective communication, unless reasonable attempts to obtain one are not successful (i.e., staff SLI, contract SLI, VRI, and/or delay would pose a safety or security risk. In these events, staff shall employ the inmate's alternative means of communication, as noted in SOMS, and document the reason the primary means was not used.

(5)     Staff shall document the method of communication used, whether the communication was effective, and the basis for how the determination was made.   For example, "the responsive written notes generated by a hearing impaired inmate indicated that he understood the process"; or "the sign language interpreter appeared to communicate effectively with the hearing impaired inmate as indicated by the inmate's substantive response via sign language".

Templates have been created to assist staff in this process.

(a)     Effective Communication for all RVRs must be documented in SOMS via the new disciplinary process.    It is the responsibility of the Chief Disciplinary Officer (CDO) to ensure that effective communication has been appropriately documented on the RVR.

(b)     When preparing APN using the SOMS, fields for EC documentation are available on the form.   When preparing the document, staff shall ensure the fields are present in the initial service and Administrative Review sections. Utilizing the EC fields, staff shall identify the inmate's disability which requires EC, the method used to determine EC was effective, and the assistance provided to establish EC, at both the initial service of the STRH Placement Notice and during the Administrative Review process.

OP 403 - Disability Placement Program (DPP)
Page 10 of 79

(c)   Upon completion of the Administrative Review process, a copy of the completed APN shall be faxed to the ADA Coordinator. The ADA Coordinator or designee will conduct a review of the Initial Service and Administrative Review portion to ensure EC was appropriately documented.

- If EC is appropriately documented, the faxed APN shall be initialed by the reviewer and filed in the ADA Unit.
- If EC was not documented at the initial service of the APN, or during the Administrative Review, the ADA Coordinator or designee shall contact the respective Facility Captain immediately. The Facility Captain will be responsible for taking immediate action to ensure EC is provided and documented. A new APN shall be generated and a copy of the original APN will be reissued to the inmate noting appropriate EC. Both the original and corrected APN shall remain permanent attachments for placement in the central file. This must be done prior to the inmate's initial Institutional Classification Committee hearing in accordance with California Code of Regulations, Title 15, Section 3337, and Review of Segregation Order.
- In addition, the Facility Captain and / or respective Associate Warden will be required to document the violation (EC Error) of the Armstrong and / or Clark Remedial Plan via memorandum addressed to the Hiring Authority. Upon completion of the memorandum it will be forwarded to the ADA Coordinator for review. The ADA Coordinator will place the violation on the Allegation of Non-Compliance Log, and will forward the memorandum to the Warden further disposition.

d.   Communication During Health Care Appointment

Refer to OP 473 – Effective Communication – Medical

e.   Qualified Interpreters

Refer to OP 497 – Sign Language Interpretation.

f.   Learning Disabilities (LD)

Inmates with LDs are members of the class in Armstrong v. Newsom. Pursuant to a 2000 Ninth Circuit Court of Appeals decision, the CDCR is not required to test for LDs. However, it is the responsibility of staff to try to ensure effective communication when the inmate requests a reasonable accommodation, especially when it involves due process or clinical encounters.

If the CDCR receives educational records or other legitimate source documents that verify a specific LD, the CDCR will review those documents and provide reasonable accommodation, as needed, to ensure effective communication. CDCR staff who receive documents that appear to verify an LD shall forward them to the Principal of Education for review. The Principal shall establish and maintain a list of all inmates with verified LDs according to the criteria specified below.

The CDCR will recognize as legitimate LD verification from any of the following:

- A licensed psychologist
- A credentialed psychologist
- A licensed educational psychologist
- A probation officer's report where the probation officer verified a specific LD with the school district.
- A school transcript from a California public school or a non-California school, with special education requirements equivalent to California Education Code, Sections 56333-56347, that reflect an Individual Education Plan (IEP) denoting a specific LD, or enrollment in Special Education and/or Section 504 classes/services denoting specific LDs.

Because some special education assignments are based on disorders other than LDs, it is important that the transcript or IEP denote a specific LD. Students who have received special education services for reasons unrelated to a LD will be accommodated on a case-by-case basis, but will not be placed on the LD list. For every inmate placed on the LD list, the Principal or designee shall issue a CDCR form 128-B, General Chrono, Learning Disabled list (Attachment C). The SOMS OT shall ensure the information from the chrono is recorded on the SOMS.

The Principal or designee shall distribute the LD list to all division heads on a weekly basis. The division heads shall disseminate the list to notify staff, including, but not limited to, Facility Captains, CCIs and CCII Specialists and Supervisors, Senior Hearing Officers (SHO), Hearing Officers (HO), and licensed health care providers. Staff shall provide assistance to an inmate with a LD on a case-by-case basis based upon any specific limitation the inmate claims and any reasonable accommodation the inmate requests.

(1)    Test of Adult Basic Education (TABE) reading scores of 4.0 or lower

The Principal or designee shall maintain a tracking system of TABE scores for all inmates at the institution. The Principal shall publish a list of inmates with TABE reading scores of 4.0 or lower to all division heads on a weekly basis. The division heads shall disseminate the list as identified above.

Prior to engaging in due process or clinical encounters with an inmate, staff shall check the SOMS, ERMS and/or TABE list. If the inmate's name appears on the list, staff shall query the inmate at the beginning of the contact to determine whether or not the inmate needs assistance in understanding the encounter. The intent of TABE reading score of 4.0 or lower is to serve as a trigger that the inmate may have a LD and/or effective communication concern.

(2)    Documenting effective communication for due process and clinical encounters.
If it appears that effective communication would not be achieved through standard means of communication, the employee shall use one or more of the following techniques to assist the inmate: reading documents, speaking slowly, rephrasing sentences, using simple English, etc. Staff shall document the assistance provided; and indicate if the communication was effective and how this was determined. This documentation shall be recorded on the document generated from the due process or clinical encounter. For due process proceedings, a Staff Assistant may be assigned at the discretion of the Classification Committee Chairperson or SHO/HO.

(3)    Disciplinary process

Staff shall ensure the SHO/HO's summary of the disciplinary hearing is effectively communicated to inmates who require assistance in understanding written materials. For example, if an employee serves the initial or final copy of a RVR, and the inmate's name is on the TABE or LD list, the employee shall do the following:

(a)    Query the inmate to determine whether special assistance is required to achieve effective communication.

(b)    Provide the necessary assistance, if needed.

(c)    Document the assistance provided and how it was determined it was effective.

(4)    Grievances

If an appeal issue concerns a liberty interest, e.g., Classification Committee action, serious RVR, placement in segregation, the Grievance Coordinator shall arrange for the appeal decision to be delivered and read to inmates on the TABE and LD list.    CCII Supervisors, Case Records Supervisors, or managers may be required to perform this task.

g.    Talking Books/Magazines for the Blind

(1)    Application forms:

Inmates requesting participation in the Talking Book Program (TBP) may obtain an application packet located in the library and other designated locations within the institution (Attachment **U**). The catalog of books available from the NLS is accessible to library staff at https://www.loc.gov/nls/braille-audio-reading-materials/online-catalog-search/.The application packet will consist of the inmates TBP application, which includes a disability verification document to be utilized by a certifying authority, along with a book request form.

The inmate will fill out the application completely except for the section that requires verification of the disability.

Inmates can obtain assistance completing the application from the facility librarian or inmate ADA Library Clerk.

Inmates requesting participation in the TBP will be required to complete a CDCR form 7362, Health Care Services Request Form, noting the disability which meets the eligibility requirement.    The inmate is required to attach all TBP documents to the CDCR 7362 prior to submitting the documents to the medical department for review.  Once the medical department receives the CDCR Form 7362, appropriate medical processing will be conducted to determine if the inmate meets the eligibility requirements of the NLS.

(a)    Braille for the Blind

To requests a Braille account, new applicants can check the Braille books and/or Braille magazines box on the application under the types of services you want to receive.  Existing users can send the Fresno Talking Book Library a letter requesting to be enrolled in the service. The Fresno Talking Book Library will send a copy of the inmate's application to Braille and Talking Book Library, Sacramento, CA. Once approved, inmates can request a Braille Magazine

from the Talking Book Library. Each inmate will be assigned to a Reader Advisor who they can contact with Braille book questions or requests.

(b)    High Volume Player and Headphones

The high-volume player (HPV) and headphones are designed for use only by inmates of the NLS who are hearing impaired. This (HVP) and headphone combination will produce a sound level of up to 120 dB in adults. If an inmate requires greater amplification to hear the recordings, this high-volume player and headphone combination is not suitable for them.

The (HPV) application forms will be available in all of the libraries throughout the institution. The inmate will fill out the application completely except for the section that requires the physician to certify they are hearing impaired and understand the warnings related to use of (HPV) and headphones. An Audiology referral will be requested by the signing physician.

(2)    Verification of Eligibility:

(a)    Eligibility status will be based on:

1)    Visual acuity, as determined by competent authority, is 20/200 or less in both eyes with correcting lenses, or widest diameter of visual field subtends an angular distance no greater than 20 degrees.

2)    Other physically handicapped persons as follows:

- Visual disability, with correction and regardless of optical measurement, is certified by competent authority as preventing the reading of standard printed material.
- Certified by competent authority as unable to read or unable to use standard printed material as a result of physical limitations.
- Persons who cannot hold a book or handle standard printed materials because of physical limitations.
- Persons who are unable to read standard printed materials without special aids or devices other than regular glasses.

- Inability to read or use standard printed materials because of a stroke, paralysis, palsy, missing arms or hands, extreme weakness.
- Certified by competent authority as having a reading disability resulting from organic dysfunction and of sufficient severity to prevent reading printed material in a normal manner.

    (Only Doctors of Medicine are defined as competent authorities in cases of reading/learning disabilities.)

3)    Learning disabilities as follows:

- Certified by competent authority as having a perceptual or reading disability of sufficient severity to prevent their reading printed material in a normal manner. (Teachers, Librarians, Registered Nurses, Psychologists, and Social Workers are defined as competent authorities in cases of reading/learning disabilities.)

- Perceptual disabilities (also called "learning disabilities") involve difficulty processing sensory information such as auditory, tactile, and visual. This includes impairments in reading or dyslexia, writing or dysgraphia, managing mathematic concepts or dyscalculia.

4)    Individuals who have had a qualifying disability from birth, individuals who are disabled because of medical condition or trauma, and individuals who become disabled as they age. Individuals who have a temporary disability may qualify for service on a temporary basis. Illiteracy or English-as-a-Second-Language alone are not qualifying criteria for service.

5)    No correctional custody/counseling staff can certify a reading disability.

(b)    Once signed by a competent authority, applications shall be routed to the ADA office for processing and tracking purposes. The ADA Coordinator, or designee, shall forward the approved application to the Fresno

Talking Book Library. The ADA Coordinator or designee will be responsible for generating a list of inmates who have been approved for the TBP. The list shall be sent to Receiving and Release and the institutional mailroom each time the list is updated.

(c) The ADA Coordinator shall contact the Fresno Talking Book Library and request copies of the bi-monthly catalog that contains a list of available books/equipment. A copy of the bi-monthly catalog shall be placed at each library. Once an inmate becomes a participant, the Fresno Talking Book Library will provide notification, by mail, to the inmate when new book titles become available.

(3) Training on Equipment and use of Materials:

Inmates who are having difficulty utilizing the equipment and materials can contact the facility library staff to request training.

(4) Possession of Equipment:

(a) Upon receipt of the NLS application, eligibility verification and book request form, the Fresno Talking Book Library will forward the Talking Book Machines and headphones to the eligible inmates via institutional mail. The mailroom will deliver the Talking Book Machines to the ADA Office. The ADA Office will ensure the Talking Book Player and accessories are appropriately added to the inmates Electronic Property File (Property e-File). The ADA Coordinator will notify Facility staff to pick up the machine in the ADA Office and deliver the machine to the inmate. A 128B General Chrono will be generated and signed by the issuing staff and receiving inmate.

(b) If an inmate decides to terminate participation in the TBP, the inmate will be required to return the Talking Book Machine(s) to ADA Office. Once the ADA Office receives the machine, it will be removed from the Property e-File. The ADA Office will then return the machine to the Talking Book Library and remove the inmate's name from the list of eligible participants.

(c) The Talking Book cartridge that contains the actual downloaded books will be delivered via standard mail to the inmates in their respective housing units, the same as regular mail. Inmates authorized to participate in the TBP will have the Digital Talking Book Machine listed on their property card, as the

inmate will have the option of corresponding directly with the Fresno Talking Book Library on an as-needed basis to update/replace the Talking Book Cartridge. Each inmate will be responsible for the Talking Book Machine(s) and the book cartridges. The inmate may correspond directly with the Fresno Talking Book Library by placing the Talking Book cartridge inside the postage-paid container, along with a new request for books into the outgoing mail.

(e)     Inmates verified as eligible may also use Talking Book materials and equipment in an Educational assignment. The Academic Teacher or Vocational Instructor will determine whether or not the equipment may be utilized during class hours.

(f)     Inmates in the Correctional Treatment Center (CTC) who are verified eligible participants will have access to the Talking Book program if it is not contraindicated by safety and security needs while in the CTC.

(g)     Inmates in STRH who are verified eligible participants shall have access to the program if the length of stay is more than ten days; however, the STRH policy regarding issuance and the number of books allowed will be followed.

(h)     Inmates will be allowed to have ten talking books/magazines at any given time. One talking book may be compromised of numerous tapes/CDs, unless otherwise noted in the STRH policy.

(i)     If staff are notified that a Talking Book player is not working properly, staff shall contact the ADA Coordinator. The ADA Coordinator will make arrangements for the inoperable Talking Book player to be picked up and returned to the State Library. Players will only be exchanged on a one-for-one basis. Borrowers may be responsible for replacing or paying for lost or damaged players. The ADA Office shall be made aware of lost players and will relay the information to the Talking Book Library. The Talking Book Library will determine if a replacement will be issued. Continual lost or damaged players reported to the Talking Book Library may result in an inmate's suspension from the program.

(j)     Talking Book Players are not considered Durable Medical Equipment.

(k)    For institutional transfers, the TBP equipment shall be inventoried and packed with the inmate's property for transfer. When an inmate paroles, the equipment shall be surrendered to R&R staff, and sent to the ADA office or designee for appropriate tracking and return to the Talking Book Library

h.    Braille Equipment

Each facility library has a Perkins Brailler (Braille typewriter) available for use to DPV inmates. Each facility library also has a Swell-form machine, which raises the print off the page, so inmates can read by touching raised letters and numbers. (Note: not all documents can be used with this machine. Only copies that are clear and have large print can be used.)

The Perkins Brailler and a Braille reading program are available for DPV inmates in Education. A Braille correspondence course program (through the Hadley School for the Blind) is also available for all DPV inmates. The Education Principal or designee shall be responsible for ensuring enrollment forms are correctly completed and mailed to the Hadley School for the Blind. Forms shall be available in the facility Library, where the Library Technical Assistant (LTA) can assist the inmates with the forms. The form shall then be sent to the ADA Coordinator who shall ensure the medical verification portion of the form is completed. After medical verification is obtained, the ADA Coordinator Office Technician shall forward the completed forms back to the Principal, for mailing to Hadley School for the Blind. The Principal or designee shall be responsible for tracking all educational correspondence material, in accordance with established procedure.

Only DPV inmates qualify to use the aforementioned equipment and materials. Staff may contact the ADA Coordinator should any questions arise about whether an inmate qualifies for the programs and materials. Any malfunctions or repairs to the equipment must be reported to the ADA Coordinator.

i.    Full Page Magnifiers (FPM)

The large number of inmates at CSATF/SP with vision impairments necessitates that the FPM shall be accessible for their usage.

Facilities have one (1) FPM assigned in each housing unit. Second and Third Watch correctional officers assigned to the housing units shall be responsible for issuing the FPMs to the inmates. The FPMs shall be issued to the inmates in half hour increments, seven (7) days a week. Staff shall be responsible for conducting an inventory of the FPM and securing the FPMs on each watch. It is the responsibility of the housing unit officer to ensure the FPM log

(Attachment D) is thoroughly completed when an inmate is requesting the use of the FPM. At the end of the month, the housing unit officers shall submit the FPM log to their respective Facility Captain for review.

It is the responsibility of each Facility Captain to ensure the log is submitted by the fifth of the following month to the office of the ADA Coordinator. The FPM should be afforded to any inmate requesting to use it, regardless of whether the inmate's name appears on the SOMS list. There are occasions when the FPM would provide an interim accommodation to an inmate until his eyeglasses are returned; such as, an inmate who is waiting for eyeglasses from the Specialty Clinic (which can take up to 90 days) or has sent eyeglasses out for repair. In these circumstances, the inmate's name would not appear on the SOMS list. If an inmate is denied access to a FPM, the reason for denial must be clearly documented on the FPM log, as well as a CDCR 128-B, Information Chrono, shall be written for placement in the inmate's ERMS.

j.    Large Print Material in the Library

(1)    Facility libraries shall have materials in large print posted in the libraries for informational purposes. All forms required in large print, such as an electronic CDCR 1845; Reasonable Accommodation or Modification Request (CDCR 1824); and Inmate Parolee Grievance Form (CDCR 602-1), will be posted for easy visual reading in the libraries. Libraries shall have large print versions of the Armstrong Remedial Plan (ARP), and some large print recreational reading books. In addition, a set of library rules regarding conduct, accessibility, and assistance shall be posted.

(2)    Supervising staff shall make sure that all information is up to date and in good form for informational purposes.

Supervising staff shall post all information regarding the DPP.

(3)    The Academic Vice-Principal shall ensure that all libraries are kept up-to-date with current information, and large print forms are utilized.

(4)    Supervising staff shall inform the Academic Vice-Principal when they are in need of replacement materials.

k.    Portable Compact Disk (CD) Loaner Program

Vision impaired inmates whose disability impacts placement (DPV), or inmates determined to require accommodation per the Reasonable Accommodation Panel (RAP), will be afforded the opportunity to request the temporary issuance of a portable CD

player with headphones to listen to the audio transcript of their BPH inside their assigned cell.

Upon request to the inmates assigned Correctional Counselor or ADA staff, eligible inmates shall be given the opportunity to be issued a portable CD Player (if needed) and set of headphones (if needed) to listen to the audio transcript of their BPH hearing.  Upon receipt of the BPH audio transcript CD, the inmate shall request the use of the portable CD player and headphones via a CDCR-22 form or when the need of such use is determined by the RAP.

The ADA CCI shall ensure the attached CDCR-128B "Portable CD Player Loaner Agreement" (Attachment V) is completed with the inmate prior to issuance.  The ADA CCI shall ensure the CD player and headphones are labeled and in proper working order prior to issuance and upon return from the inmate.

Upon completion of the inmate's participation in the program not to exceed 7 calendar days, the inmate will relinquish the CD player and headphones to the ADA CCI. Extensions exceeding 7 calendar days will be approved on a case-by-case basis by the ADA Coordinator.

If an eligible inmate is housed in Short Term Restricted Housing (STRH), at the conclusion of the 7 day program, the CD player & headphones will be collected. The BPH audio transcript CD will be collected from the inmate, and be placed in inmate's property in compliance with Departmental/Institutional policy.

The ADA CCI will ensure a monthly Portable CD Player inventory is completed.  The monthly logs will be reviewed by the ADA Coordinator.

If damage or alteration to the headphones or CD player is discovered to be intentional, the damaged items will be confiscated and the inmate shall be charged the full replacement cost. Staff shall utilize the progressive discipline process pursuant to California Code of Regulations, Title 15, Section 3312, Disciplinary Methods.

5.    REASONABLE ACCOMMODATION/MODIFICATION

CSATF/SP shall provide reasonable accommodations or modifications for known physical or mental disabilities of qualified inmates.  CSATF/SP shall consider, on a case-by-case basis, accommodations for inmates with impairments that are temporary in nature.   Examples of reasonable accommodations include: providing special equipment (such as readers, or Braille materials), providing inmate or staff assistance, bilingual or qualified sign language interpreters, modifying work or program schedules, or grab bars installed for mobility impaired inmates who require such (including mobility impaired inmates whose disability does not impact placement).

a.    Americans with Disabilities Act Inmate Assistance Program

The Americans with Disabilities Act (ADA) Inmate Assistance Program provides assistance to identified inmates who require assistance with their daily living needs.  The ADA Worker Program consists of "Assistance Receivers", inmates who receive the assistance; and "Assistance Givers", inmates who provide the assistance.

ADA Worker Assignment

Prior to assignment, the institution shall ensure:

- Classification Committee shall screen potential ADA workers (see "ADA Worker Requirements" and "ADA Worker Exclusionary Factors" sections below) and document these considerations on the CDCR 128G, Classification Committee Chrono.
- Inmates with disabilities shall be considered for assignment as an ADA worker.
- ADA worker positions are available at each facility, seven days a week, hours where there are programs, services, and activities.
- Vacancies shall be filled utilizing the institution's current inmate assignment practice and specific Semi Skilled or Non-Skilled worker groups assigned by the committee.
- The Warden may designate ADA worker positions as "critical", per DOM 51120.1 (Article 12 – Inmate Pay, Policy).
- Staff should utilize the approved ADA worker as the primary resource to perform requested assistance.
- Appropriate reference material is available in ADA worker supervisor post orders.
- All ADA workers shall wear a departmentally-approved gold ADA worker shirt with "ADA Worker" printed on the back during their assigned work hours.  These shirts shall not be worn during non-working hours.  The mesh ADA worker vest shall be replaced by the gold ADA worker shirt through attrition.

ADA Worker Requirements

All ADA workers shall display mature attitude towards the disabled population, and a willingness to assist any inmate as directed regardless of ethnicity, race, religious belief, or Security Threat Group affiliation.

There shall be two levels of ADA worker assignments determined by a classification committee (Unit Classification Committee, or Institution Classification Committee):

- ADA worker positions shall be designated as Semi-Skilled (Technical) Skill Level 5-6, Pay Grade 3 and Non-Skilled (Laborer/Porter) Skill Level 1-2, Pay Grade 5.
- ADA worker positions shall be assigned by a classification committee and given a Strategic Offender Management System tracking code of Semi-Skilled (Technical) or Non-Skilled (Laborer/Porter).
- Semi-Skilled (Technical) workers with a higher skill set require a 9.0 reading grade level. These workers can assist with reading and writing and, if their work restriction/limitations permit, can perform physical duties, such as pushing wheelchairs and guiding inmates.
- Non-Skilled (Laborer/Porter) workers who do not meet the ninth grade education equivalency requirement can perform only required physical tasks (no reading or writing).
- Full COVID-19 vaccination, including booster(s) unless with an approved religious or reasonable medical accommodation, if assigned to assist ADA inmates in, to or from one of the following areas:

  - All Correctional Treatment Centers (CTC) and similar locations, including:
    - Medical CTC beds
    - Licensed and Unlicensed Psychiatric In-Patient Program housing
    - Licensed and Unlicensed Mental Health Crisis Housing
  - All Out-Patient Housing Unit (OHUs)
  - Medical, Specialty, Mental Health, and Dental clinic treatment areas
  - Hospice beds
  - Dialysis units
  - Triage and Treatment Areas (TTAs)
  - All ADA workers at California Health Care Facility, and California Medical Facility, no matter the assigned area.

Institutions shall have ADA workers available at all times during hours when there are programs, services, and activities. Institutions shall ensure there is an adequate number of ADA workers available based on the current disabled inmate population.

ADA Worker Exclusionary Factors

The following case factors shall preclude assignment to an ADA worker position:

- Any Security Housing Unit (SHU Term) – Within past six months
- Any sexual misconduct  - Within past 12 months
- Battery against any person* - Within past 12 months
- Participation in a riot* - Within past 12 months
- Threats against anyone – Within past 12 months
- Possession, use, or distribution of a controlled substance – Within past 12 months
- Extortion – Permanent Exclusion
- Documented history of predatory behavior -  Permanent Exclusion

This case factor is generally exclusionary, but shall be reviewed on a case-by-case basis to determine whether the inmate is otherwise appropriate for placement as an ADA worker.

Inmates undergoing Reception Center processing may be preliminarily screened using above criteria and temporarily volunteer, or be placed in a recognized inmate assignment as an ADA worker pending committee action.  The guidelines for ADA Worker training and duties (outlined below) apply to these workers.

ADA Worker Training

Inmates assigned as ADA worker shall be provided training on expectations, how to assist with specific disabilities, and how to assist during an emergency within 30 days of assignment.  A custody supervisor not below the rank of Correctional Sergeant shall be assigned to provide the training on the modules.  The ADA worker training packets (attached) shall be signed by the ADA worker and the assigned trainer.  The completed training packet shall be retained with the ADAC, and a copy will be maintained with the ADA worker's timecards.

Volunteers will receive an overview of the required training by a supervisor.  This required training instructs volunteer ADA workers on how to appropriately assist inmates to or from programs, services, and activities, including the sighted guide technique, the proper way to help someone in a wheelchair navigate the prison environment, and what type of assistance they are, and are not, allowed to provide.  Additionally, volunteer ADA workers will be trained on how to assist with

conveying staff announcements, including ducat lists and other activity lists, made via the public address system.

ADA Worker Duties

ADA workers shall be permitted to assist inmates in all locations in which programs, services, and activities are offered, except in Restricted Housing Units (e.g, Administrative Segregation or Security Housing Units). ADA worker duties include, but are not limited to, the following:

Non-skilled ADA workers can assist ADA inmates with the following:

- Assist ADA inmates to and from education and work assignments
- Assist ADA inmates with carrying food trays and beverages and finding seating in the dining hall
- Assist with recreational activities
- Assist ADA inmates to and from health care appointments and visiting
- Guide vision impaired inmates
- Assist with linen exchange

Semi-Skilled ADA workers may perform all above duties as well as assist with reading and writing.

Under the direct supervision of staff, ADA workers may perform the following duties:

- Assist with canteen and quarterly packages (i.e., guiding to canteen, filling out forms, and carrying items)
- Assist with the cleaning of cells or living areas
- Assist with bed moves (i.e., physically moving the property from one cell to another)
- Notify inmate of staff accouchements and ducats

ADA workers SHALL NOT perform the following duties:
- Provide service without the consent of the ADA inmate.
- Arrange trade, payment, or pressure an inmate for worker services
- Attend committees, disciplinary hearing, health care consults, or medical treatments
- Assist with personal hygiene such as grooming or dressing another inmate
- Perform interpreting services or translating for due-process events
- Perform maintenance or durable medical equipment

- Handle canteen or personal property without owner's consent
- Access another inmate's assigned locker
- Access the inmate's assigned cell without staff present
- Provide assistance to inmates housed in an isolation or quarantine space (e.g., pre/post transfer quarantine, designated quarantine, precautionary quarantine, quarantine in place)

### Unassignment of ADA Worker

Inmates in violation of any of the above ADA worker guidelines are subject to progressive discipline and possible removal from the assignment.

### ADA Worker Supervision

All inmates assigned as an ADA worker will report to a designated area or work supervisor to receive daily instructions. ADA worker supervisors will provide training, maintain a CDCR Form 1697, Inmate Supervisor Time Log, and retain the ADA worker duty statements and training packets. Supervisory and/or management staff not below the rank of Correctional Sergeant shall refer to the inmate training guide and reference material in their post orders for direction and training of new ADA workers.

Requests for Assistance

For assistance with accessing programs, services, activities, and other accommodation needs, inmates may make a verbal request to staff or an ADA worker. Inmates may also request assistance verbally or in writing by submitting a GA Form 22 Inmate Request for Interview, or CDCR Form 1824 Request for Reasonable Accommodation. Staff may utilize assigned ADA workers to provide the assistance or may provide the assistance themselves. If no ADA worker is available, staff are responsible for providing the required assistance to the inmate.

### Supervising Workers

Once an inmate is identified as requiring assistance, the ADA worker supervisor or other staff member shall direct an ADA worker to provide assistance.

### Safety and Security

(1) ADA worker supervisors shall monitor the ADA worker program to ensure inmates receiving services are not being subjected to predatory behavior or victimization. Staff shall

take immediate action and report any information of suspected misconduct by any ADA worker to their supervisor, and ADA Coordinator.  ADA workers are only permitted to go beyond security sally port gates or work change area in accordance with institutional and departmental policy.  Staff shall assess any needs beyond these areas and arrange other accommodations as deemed appropriate, including arrangements for property and canteen distribution.

(2)     ADA Workers will report to the Housing Unit Officer/Yard Officer/Program Sergeant or his/her designee.  The direct inmate supervisor for the unit/yard shall schedule, dispatch, and direct ADA Workers in their duties and maintain a CDCR Form 1697, Inmate work Supervisor's Time Log.  It is the responsibility of the ADA Supervisors to ensure that all qualified inmates requesting assistance are in fact being provided the requested assistance and that they are not being victimized or subjected to predatory behavior.  ADA Workers shall provide assistance seven days per week, between the hours of 0600-2200.

(3)     During lockdown or modified program, ADA Workers on each facility will be considered Critical Workers, unless they have been specifically identified as being involved in the activity resulting in the lockdown or modified program.

(4)     On Facility C, ADA Workers will be released from their cells at the beginning of their work shift to "make rounds" within their housing unit, inquiring if any of the Assistance Receivers are in need of their services.  Once all needed services have been rendered, the ADA Workers may be returned to their assigned cells, depending on the status of the program on the yard.  During the remainder of their work shift, on duty ADA Workers may be released from their cells and directed to Assistance Receivers requiring additional services, when on modified program status.

(5)     The ADA is operational on all facilities at CSATF/SP.  However, it is incumbent upon all staff to assist disabled inmates by directing/guiding them to locations on the facilities, such as, the dining hall, Program Office, chapel, etc.  Additionally, all staff are responsible for ensuring disabled inmates are able to enter and exit doorways by either opening doors for them (e.g., program, library, chapel) or propping doors open (dining), as needed.  All staff is expected to guide/escort disabled inmates to restroom facilities within the Program Offices, chapel, dining rooms, and other areas as needed.  Staff will ensure that inmates assigned to the CTC are escorted at all times and assisted as needed for mobility, hearing, and visual impairments. In addition, staff may assist vision impaired, LD, and inmates with TABE score of 4.0 or

less with scribing needs, to ensure equal access to program and services.

b.    Inmate ADA Library Clerks

Inmate ADA Library Clerks will be assigned to each Facility Library to provide assistance to identified inmates who require help with correspondence, completing forms or reading materials (e.g., legal forms, appeals, application for Talking Books).  The

ADA Library Clerk is required to read and explain text for the disabled or visually impaired inmates as needed; and to provide orientation to inmates on the use of all ADA library equipment.

Inmates wanting to be assigned to an ADA Library Clerk position should complete a GA-22 or attend open line to speak with their counselor regarding assignment. The Classification Committee shall determine if the inmate is eligible for placement on the positions waiting list.

c.    Inmate Sign Language Aides

Refer to OP 497 – Sign Language Interpretation.

d.    Laundry Exchange for Wheelchair Inmates

Inmates receive their clothing from staff at the laundry exchange exterior counter.  However, it may be impractical for a DPP inmate to receive his clothing from the counter without the assistance from staff. Therefore, staff will ensure assistance is provided as needed in these situations.

e.    Providing Incontinence Related Services and Supplies

Each housing unit shall designate and stock one or more secured supply sites with incontinence related supplies that IPs and custody staff can expeditiously access when needed.  The housing unit Officer will ensure an ample supply of incontinence supplies are maintained within their area of responsibility.   The required incontinence supplies that must be maintained are:

- Hygiene Supplies (e.g. soap, toilet paper)
- Clean state-issued clothing (3 sets of various sizes)
- Clean state-issued linen (3 sets)
- **Clear water soluble bag (1 box for soiled clothing/linens)**
- Yellow bag (1 box for soiled clothing/linens)
- Disposable underpads (chux / chucks pads, at least 10)
- Disposable underwear / briefs (10 of each size)
- Disposable diapers (10 of each size)
- Gloves

Prescriptions for incontinence supplies will no longer include the amount of supplies per week or month. Issuance of these supplies to IPs should be on an as needed basis.

While incontinence related supplies should be ample, they should not be hoarded or kept in spaces outside of designated site locations. If stock of any particular item is low or unavailable, the housing unit officer will contact the area supervisor, who will contact the appropriate personnel (e.g. medical supply/laundry/warehouse/healthcare) to replenish needed supplies. **Field Training Sergeants (FTS) and area supervisors will conduct regular tours of the housing units in order to maintain par levels of the incontinence supplies. Every effort should be made to replenish stock of incontinence supplies to par levels at designated sites during business hours. When reordering of incontinence supplies is necessary, the FTS or area supervisor will submit a routine medical supply order to the medical warehouse staff via e-mail on a complete and legible Storeroom Supplies Order Form (STD 115) no later than Monday, for deliveries the same week. The e-mail to be used for this purpose is CDCRCCHCSSATFWarehouse@cdcr.ca.gov. The supplies will be delivered to the Medical Clinics, for distribution to the housing units by facility custody staff. Upon notification that additional under pads, briefs, or diapers are needed, medical staff is responsible for ordering and delivery to each respective housing unit.**

Upon request, an IP who experiences an unforeseen incontinence accident shall be offered a shower, and an appropriate amount of incontinence related supplies (i.e., clean linen and clothing) as soon as possible.

The documentation and issuance process in which inmates receive ongoing medically prescribed incontinence supplies remains unchanged. The custody issuance of incontinence supplies is intended to be on an emergency basis, to ensure adequate access to needed supplies. This procedure does not replace the inmate's normal supply from medical. Inmates who experience an unforeseen incontinence accident but do not have medically prescribed incontinence supplies should be referred for medical evaluation via the CDCR Form 7362, Health Care Services Request Form.

Soiled clothing and linens will be placed in a water soluble bag then placed in a yellow bag. The staff making the exchange will ensure the yellow bag is placed in the rear of the clothing room clearly marked as soiled. Housing unit Officers shall report any problems with obtaining any incontinence supplies to their immediate supervisor.

Additional showers (including during lockdowns) may be necessary for some inmates due to a medical necessity or hygienic needs. Inmates will no longer possess a CDCR 128C, authorizing extra showers; therefore, accommodations may be required in the event the inmate may require an additional shower. The specific time of showering will be conducted at the earliest opportunity available, at the discretion of custody staff, when safety and security concerns permit. Inmates are required to indicate to custody staff the reason for needing an extra shower (i.e. incontinence, accidents).

Additional in-lines may also be required for some inmates due to medical necessity or hygienic need. Housing unit officers shall afford three (3) extra in-lines for inmates, in the event they require showering or clothing changes due to bowel or bladder problems. **Inmates are required to indicate to custody staff the reason for needing an additional in-line (i.e. incontinence, accidents).**

f.    ADA Accessible Showers

Although all inmates are allowed to use the ADA showers, the ADA inmates shall be given priority use. If there is an ADA inmate waiting to use a shower, that inmate shall be allowed to use the ADA accessible shower before a non-ADA inmate. If there are no ADA inmates waiting, any inmate may use the ADA accessible shower.

g.    Dry Erase Boards

Each housing unit has been issued, and shall maintain, at least one dry erase board to utilize as a means for communication with hearing impaired inmates.

h.    Sightless Operation Locks/Key Operation Locks

Inmates verified as DPV may require use of a sightless operation lock or key operation lock. All requests for sightless operation locks or key operation locks shall be addressed to the Custody Captain and approved by the ADA Coordinator (Attachment F).

In cases where an inmate requests a key operating lock as a reasonable accommodation due to their disability, the request shall be assessed by the Primary Care Provider prior to approval by the Custody Captain and ADA Coordinator.

Covid-19 Requirements

General Requirements and Restrictions

In effort to minimize the spread of COVID-19, for housing units and areas designated for isolation or quarantine services will be provided by staff within the housing unit. Each isolation or quarantine housing unit will be evaluated daily by the unit supervisor to ensure adequate staffing is available to provide necessary assistance to inmates with disabilities. ADA

workers and volunteers are prohibited from assisting inmates in isolation/quarantine housing, including inmates located in pre/post transfer quarantine, designated quarantine, precautionary quarantine, or quarantined in place.

ADA workers and volunteers shall also be screened to determine if the inmate has symptoms of Influenza-Like Illness (ILI) in accordance with the memorandum titled, *Screening of Critical Inmate Workers,* dated April 10, 2020. Under no circumstances shall an ADA worker or volunteer who is not positive for COVID-19, or showing no symptoms of an ILI, assist an inmate who has a positive and unresolved case of COVID-19; nor shall an ADA worker or volunteer who is currently positive for COVID-19, or showing symptoms of ILI, assist any inmate who has not tested positive for COVID-19 or symptoms of ILI. Due to these restrictions, inmates exhibiting symptoms of ILI, or who have an active case of COVID-19, shall be provided assistance by staff to ensure their access to programs, services and activities.

Each building or unit housing disabled inmates must have at least one ADA worker or volunteer and sufficient ADA workers or volunteers to assist disabled inmates with accessing programs, services, and activities, including during peak times such as yard and meal time. Additionally, for facilities in the Outbreak Phase, per the memorandum titled, *Roadmap to Reopening* – July 2022 *Update,* dated July 7, 2022, ADA workers and volunteers are prohibited from providing services to inmates outside their assigned building or unit.

PPE, Cleaning, and Social Distancing
All ADA workers and volunteers who provide assistance to inmates with disabilities are required to wear a mask that complies with current masking directives, and to wear non-sterile disposable gloves at all times while assisting inmates with disabilities. Staff members providing assistance to inmates with disabilities are required to follow CDCR guidelines outlined in the memorandum titled, *COVID-19 Personal Protective Equipment Guidance and Information*, dated April 6, 2020. Gloves must be disposed of immediately after each inmate interaction, and new gloves must be worn before each new inmate interaction.

All ADA workers are required to wash and sanitize their hands before and after coming into contact with each inmate who they are assisting. All ADA workers are also required to thoroughly clean the area of any appliance (e.g., wheelchair, walker, etc.) they touch while assisting ADA inmates before and after each contact. Areas shall be designated for ADA workers to access cleaning supplies and hand sanitizer as needed to complete their assigned duties. The ADAC must ensure that ADA workers and volunteers have access to sufficient cleaning supplies in each building/unit to clean areas and appliances they have come into contact with.

To maintain compliance with social distancing guidelines, areas will be designated to allow ADA workers to conduct tasks, such as completing forms and reading documents, while maintaining a distance of six feet

whenever possible. When an ADA worker must come into close contact with a disabled inmate to provide assistance, such as when an ADA worker serves as a sighted guide, the disabled inmate shall also be provided with gloves and a mask, in accordance with current masking directives.

6.   EQUAL ACCESS

Accommodations shall be made to afford equal access to the court, to legal representation, and to health care services, for inmates with disabilities, (e.g., vision, speech, hearing, and learning disabled).

Accommodations may include, but are not limited to, access to magnifiers and electronic readers.

To assist in accommodating an inmate's equal access to the court, the institution shall provide a letter to the court identifying the nature and severity of the inmate's disability and limitation(s), including a brief description of the inmate's request for accommodation by the court.

7.   JUSTIFICATION FOR DENIAL OF REQUESTS FOR REASONABLE ACCOMMODATION

a.   Legitimate Penological Interest

A request for accommodation may be denied when it is based on legitimate penological interests. The factors to be considered in determining whether the accommodation can be denied on this basis, are those four factors articulated by the Supreme Court in Turner v. Safley (1987) 482 U.S. 78. They are:

(1)   Whether there is a valid, rational connection between the denial and a legitimate governmental interest

(2)   Whether there are alternate means for the inmate to exercise his rights

(3)   The impact of accommodating the request on security, staff, other inmates, and the allocation of prison resources generally

(4)   Whether the denial represents an exaggerated response to prison concerns.

In all evaluations of reasonable accommodation, public safety and the health, safety and security of all inmates and staff shall remain the overriding consideration.

b.   Undue Burden and Fundamental Alteration Defenses

CSATF/SP may deny a request for accommodation if it would impose an undue financial or administrative burden on the agency, or would fundamentally alter the nature of the service, program, or

activity.  An accommodation is an undue financial burden when, in a cost-benefit analysis, its cost would be an unjustifiable waste of public funds.  The Warden, or in the case of some medical accommodations, the CEO/CME or Health Care Regional Administrator, or designee, will make the determination that an accommodation would result in an undue burden or fundamental alteration.

c.    Direct Threat

A request for accommodation may be denied when it poses a direct threat of substantial harm to the health or safety of the inmate or anyone else, including the public.

d.    Equally Effective Means

A request for accommodation may be denied if equally effective access to a program, service, or activity may be afforded through an alternate method, which is less costly or intrusive.  Alternative methods, those that may be less costly or intrusive to the existing operation/program, may be utilized to provide reasonable access in lieu of modifications requested by the inmate, so long as they are effective.

8.    EQUIVALENT PROGRAMMING

CSATF/SP shall offer disabled inmates a range of programming equivalent to that available to non-disabled inmates.

C.    FIELD OPERATIONS

CSATF/SP is a designated DPP Facility.

1.    VERIFICATION PROCESS

a.    It is the mutual responsibility of the inmate and CDCR to verify disabilities that might affect their placement in the prison system, and to verify credible claims of disability in response to requests for accommodation or complaints about disability-based discrimination. The CDCR is not required to automatically screen all inmates to identify disabilities.  Inmates must cooperate with staff in the staff's efforts to obtain documents or other information necessary to verify a disability.  Verification may be triggered by any of the following:

- The inmate self-identifies or claims to have a disability.
- Staff observes what appears to be a disability severe enough to impact placement, affect program access, or present a safety or security concern.
- The inmate's e-UHR or ERMS contains documentation of a disability.

- A third party (such as a family member) requests an evaluation of the inmate for an alleged disability.

b. The purpose of the electronic CDCR 1845 is to document verified permanent disabilities that may impact an inmate's placement in the CDCR prison system. The electronic CDCR 1845 also documents the results of a claimed disability that may impact placement, where the disability was not confirmed. Additionally, the electronic CDCR 1845 is used to document changes in an inmate's disability status, including removing an inmate from a disability category or from the DPP altogether.

c. Health care staff shall verify whether a disability exists or not, utilizing the electronic CDCR 1845 and a corresponding medical chrono (documenting associated limitations, assistance needed, appliances prescribed, etc.). Responsibility for completion of the electronic CDCR 1845 rests with the institution's health care services licensed clinical staff (physician, physician's assistant, or nurse practitioner). Health care staff shall follow CDCR protocols for verifying disabilities.

d. The electronic CDCR 1845 shall not be completed if the clinician requires additional information to determine an inmate's disability status. If the clinician requires outside expert consultation, the electronic CDCR 1845 shall not be completed until the expert consultant's report is received and evaluated. Once completed and approved, the electronic CDCR 1845 shall become part of the inmate's files (ERMS and e-UHR) and shall be effective until a change in the inmate's condition causes it to be cancelled or superseded.

e. Identification of disabilities affecting placement shall usually occur during reception center processing. However, if an inmate appears to have a disability that might affect placement, a staff member should refer the inmate for verification of the disability. The referral is made by directing a CDCR 128B to the ADA RN.

f. Additionally, when staff observes an inmate engaging in activities that appear to be inconsistent with his disability (as documented on an electronic CDCR 1845 or medical chrono), staff shall document the activity on a CDCR 128B and forward it to the ADA RN.

g. If physical examination or other testing does not support the claimed disability, the clinician shall check the appropriate box under Section A on the electronic CDCR 1845 as follows:

(1) If a physical examination or other testing does not support the claimed disability in Section A, the clinician shall check the box "No Disability".

(2)    If the clinician finds that the inmate no longer qualifies for a previously verified disability, the clinician shall check the box "Removal from a DPP Code: Previous code(s)" in Section A or "Change in Disability: Previous Code(s)", as appropriate.

h.    The Clinician's Comments Section is to be used to document explanations regarding exclusions or other information that he/she believes to be helpful in making placement decisions. The clinician shall not document specific diagnoses or other confidential medical information on the electronic CDCR 1845 or medical chrono. The clinician also shall not document appliances, unless relevant in the explanation of the change or removal from a DPP designation.

i.    Once the electronic CDCR 1845 is completed as referenced above, the physician shall sign in the e-signature block and submit the completed e-form through the e-form Portal. Electronic email notifications will automatically be transmitted to the institution's ADA Coordinator, C&PR and Reception Center Correctional Counselor III, as required by the ARP. The email notification will provide a link to the updated Disability Placement Program Verification form and Comprehensive Accommodation Chrono.

j.    Verification of a disability may also be required for resolving requests for reasonable accommodations. Verification of a disability for this purpose may be documented on the electronic CDCR 1845 or CDCR 128C; for disabilities not covered by the electronic CDCR 1845 (mental illness, dialysis, etc.); or CDCR 128B for learning disabilities.

k.    If an inmate files a request for accommodation or a disability based discrimination complaint on a CDCR 1824, but does not provide documentation of the disability, the Appeals Coordinator shall forward all appeals requiring medical verification of the claimed disability to health care services staff as outlined in Section VI (C)(8)(u).

2.    PLACEMENT

All inmates verified to have a disability as noted on the electronic CDCR 1845 shall be reviewed for appropriate housing.

a.    The inmate's health care needs shall take precedence in determining placement. Overriding medical needs may dictate placement in a health care setting. When an inmate requires placement in a licensed health care facility, policies and procedures for the specific facility as noted in the CCR, Title 22, will be followed.

b.    To initiate the transfer process for inmates who have overriding health care treatment needs and require special placement, the referring clinician shall prepare a CDCR 128C, identifying the health

care need(s) and related conditions necessitating the transfer, including the urgency of any required treatment.

c.    Designated DPP placement of an inmate verified to have a disability on the electronic CDCR 1845 requires endorsement by a CSR.

d.    Once the inmate is endorsed for special placement, any verified change in DPP status requires subsequent CSR review and endorsement.

e.    Case management for all DPP inmates shall comply with all established classification procedures.

f.    Efforts shall be made to house inmates identified with disabilities in DPP designated institutions while on Out-to-Court status, consistent with legitimate safety and security concerns.

g.    SOMS shall be checked by R&R Staff to ensure HCAs are in the possession of the inmate when he arrives at the institution, and these HCAs are to be moved with the inmate to his appropriate housing. If an inmate arrives at CSATF/SP without the HCAs, which are identified in SOMS, the ADA Coordinator's office will be notified via e-mail immediately, and the R&R RN will ensure that interim accommodations are provided to the inmate immediately.

When processing inmates off the bus at CSATF/SP, R&R staff will identify disabled inmates, as well as those with seizure disorders or other medical housing restrictions. The R&R Sergeant or designee will check off the inmate on the Transfer Record (CDCR 135), and annotate the DPP code or housing restrictions. The R&R Sergeant or designee shall check the SOMS or consult with the R&R RN, who will verify all disabilities, prior to housing the inmate through Central Control. Those inmates with verified disabilities will be housed in appropriate DPP housing.

All housing unit staff will also ensure the DPP inmates are housed appropriately. Any discrepancies will immediately be brought to the attention of the facility supervisor.

On weekends and holidays, the Second Watch Central Control Sergeant shall review the Strategic Offenders Management System (SOMS) to ensure DPP Inmates are assigned to appropriate housing. The Central Control Sergeant shall log into SOMS and utilize the *Reports* function to review the *Housing Restrictions* under the *Medical/ADA* tab. All DPP codes are to be sorted by housing in SOMS. Each DPP inmate shall be reviewed to ensure they are housed pursuant to their housing restrictions.

In the event a DPP inmate is inappropriately housed, the Central Control Sergeant shall ensure the inmate is moved to appropriate housing pursuant to their housing restrictions. In addition, the Central Control Sergeant shall generate and send an email, which summarizes the findings and action

taken, to the ADA Coordinator. The ADA Coordinator shall review the findings for possible placement on the Armstrong Non-Compliance Log.

3.    TRACKING

    a.    Inmates assigned to DPP categories shall be tracked in the Classification Tracking System database by utilizing the CDCR Classification Score Sheet (CDCR 839), CDCR Reclassification Score Sheet (CDCR 840) and CDCR Readmission Score Sheet (CDCR 841) consistent with current policy.

    b.    The CSATF/SP C&PR is responsible for maintaining institutional procedures for tracking inmates with disabilities based on the electronic CDCR 1845. These procedures shall include annotating the disability and the section of the electronic CDCR 1845 in which it was verified on the CDCR 128G and CDCR 840.

    c.    It is the responsibility of the C&PR to maintain a census of all inmates with disabilities based on the electronic CDCR 1845.

    d.    Once the electronic CDCR 1845 has been emailed to the C&PR, the Transfers CRT will be required to enter the information into the SOMS within one working day of receipt.

4.    DME AND ADA PERSONAL PROPERTY

    a.    Definition

        (1)    Health Care Appliances (HCA) are assistive devices or medical support equipment, which have been prescribed for the inmate and approved by the CME or their respective designee.  HCAs include, but are not limited to Durable Medical Equipment (DME), prosthetic and orthotic appliances, eyeglasses, prosthetic eyes, and other eye appliances as defined in CCR, Title 22, Sections 51160 through 51162.

        (2)    ADA personal property (talking watches, vibrating alarm clocks, etc.) are assistive devices approved by the ADA Coordinator for utilization by inmates with disabilities in their activities of daily living.

    b.    Prescription and/or approval

        (1)    DME shall be prescribed and approved for eligible inmates by licensed CDCR health care providers, subject to medical necessity, safety, and security.  No inmate shall be deprived of a health care appliance that was in the inmate's possession upon entry into the CDCR system or was properly obtained while in CDCR custody, unless for documented safety or security reasons or a department physician or

dentist determines that the appliance is no longer medically necessary or appropriate. Inmate HCAs, including those belonging to an inmate, prior to entry into CDCR's system, must be approved by custody staff for conformance with safety and security standards.

(2)     Once a departmental physician or dentist prescribes and/or approves a DME, custody staff will inspect it and make every effort to approve it. If custody staff, upon inspecting the appliance, determines there is a safety or security concern, the CME or Medical Officer of the Day (MOD) shall be immediately consulted to determine what action should be taken. Alternative reasonable accommodations may include modifying the appliance or substituting a different appliance at state expense. All circumstances shall be appropriately documented in the inmate's ERMS and e-UHR.

(3)     When an inmate arrives at R&R with an assistive device and a security concern arises pertaining to his device, R&R staff will follow the above procedure regarding medical referrals.

(4)     Requests for approval of ADA personal property shall be submitted to the ADA Coordinator, utilizing the Special Purchase Order Form (Attachment G). If medical verification is required to assist the ADA Coordinator in the approval process the medical department shall be asked to provide a medical chrono, verifying the necessity of the requested item.

(5)     Approved ADA personal property shall normally be purchased by the inmate through Department approved vendors. However, in the event the requested item is unavailable through a Department approved vendor, the ADA Coordinator shall approve the requested vendor. The ADA Coordinator shall approve or disapprove the request, by signing the appropriate area of the form. The form will then be returned to the inmate, who will follow established CSATF/SP special purchase procedures.

(6)     The ADA Coordinator will inspect the ADA personal property upon receipt to the institution. If legitimate safety and security concerns are evident, the ADA Coordinator will consult with the Custody Captain. Only under exceptional circumstances will the ADA personal property be rejected and an alternate means provided. Any circumstances, where property is disallowed, shall be appropriately documented in the inmate's ERMS.

(7)     The Division of Adult Institutions (DAI) shall provide all inmates, prescribed a permanent or 6 month temporary wheelchair or walker by a licensed Primary Care Provider, with an attachable bag to transport needed supplies to

programs, services and activities. **The bags shall be maintained in the medical clinics to be issued by healthcare staff along with the wheelchair or walker. Upon receipt of the bag, the inmate will sign a CDCR Form 128B – General Chrono, acknowledging the issuance of the new bag and accepting responsibility for the item.** The bag shall not be confiscated from the inmate unless the wheelchair or walker is discontinued by the medical provider, the bag has been altered, or the bag is being processed as evidence.

The ADA Coordinator or designee shall be responsible for **tracking issuance of bags, purchasing bag stock, and processing requests for replacements. Upon replacement of the bag,** the inmate will sign a CDCR Form 128B – General Chrono, acknowledging the issuance of the new bag and sign a CDC Form 193 – Inmate Trust Account Withdraw Order.

The inmate will be financially responsible for damage caused by personal neglect, loss, misuse or intentional destruction/alteration and is subject for progressive discipline. The ADA Coordinator or designee shall forward the CDC Form 193 to the Inmate Trust office for processing in accordance with current policy. The ADA office shall notify R&R if there is ever the need to remove the bag from the CDCR Form 160-H.

c.    Possession of DME and ADA personal property/ documentation

(1)    **DME shall be documented as property of the inmate and appropriately identified as such in accordance with departmental and institutional policy.** DME shall not be included in the volume limit for personal property established in CCR, Title 15, Section 3190. DME shall be retained and maintained by inmates upon release to parole.

(2)    ADA personal property shall be documented on the inmate's property e-File by the ADA Office. ADA property <u>may be</u> included in the volume limit for personal property established in CCR, Title 15, Section 3190. ADA personal property shall be retained by inmates upon release to parole.

d.    Removal of DME

(1)    Unless an inmate misuses a prescribed DME in a manner that threatens safety and security, there is no legally defensible reason for custody staff to take it away.

(2)    A DME may be taken away under the following circumstances:

(a)     When it poses an <u>immediate</u> threat to safety and security, e.g., altered, used as a weapon, threats made by the inmate to use it as a weapon.

(b)     When collecting the appliance as evidence in a crime or investigation (must be supported by documentation).

(b)     If the senior custody officer on duty, e.g., Facility Captain, Administrative Officer of the Day, temporarily authorizes removal for reasons listed above.

(3)     The following protocols shall be followed at CSATF/SP when an inmate's DME/HCA is taken away:

(a)     As soon as possible (no later than the next business day), the ADA Coordinator shall be telephonically notified at extension 7516.  In addition, a copy of any associated written reports, e.g., Rules Violation Report; Incident Report, shall be faxed to the ADA Coordinator at extension 7297.

(b)     The ADA Coordinator shall consult with the CME, or designee about the inmate's physical need for the appliance, and any reasonable alternative in-cell accommodation(s).

(c)     The ADA Coordinator shall inform the Warden or designee of the incident and the alternative means to accommodate the inmate (as decided by the CME).

(d)     If the Warden or designee approves retention of the HCA, it must be stored in a designated location in the unit (STRH) and provided to the inmate, if needed, when released for yard, escorts, visits, etc. Alternatively, the ADA Coordinator may authorize a wheelchair as an interim accommodation for all out-of-cell activities.  In this event, the confiscated HCA will continue to be stored until the inmate is authorized to possess it again.

(e)     The inmate shall be scheduled for the next scheduled ICC hearing for confirmation of removal of the appliance, pending adjudication of disciplinary charges.

(f)     The ICC shall review the necessity to continue the removal at least every ninety (90) days.

(g)    The inmate shall be deprived of the appliance for only so long as the appliance continues to pose a direct threat to safety and security.

When a new alternative in-cell accommodation has been issued to the inmate (if any), STRH and assigned medical staff shall observe the inmate on an on-going basis.  The CME or designee shall notify medical STRH nursing staff regarding removal of the appliances, to ensure the inmate's condition is being monitored.  If staff observes the inmate's physical condition appearing to deteriorate, or the inmate is having difficulty adapting to the alternate accommodation, staff must document their observations and immediately notify the CME or MOD.

e.    **Inter-Facility Transfers to CSATF/SP**

**The prefix 'inter' means between two things.  For the purpose of this procedure, an inter-facility transfer to CSATF/SP is a transfer into this institution from outside the institution. Inter-facility transfers include all intake into CTC and R&R.**

**(1) Upon the arrival of new intake at CTC/R&R, assigned custody staff shall review the ADA tab in SOMS to confirm which DME are prescribed to the inmate, and compare that to which DME are actually in the inmate's possession. Custody staff shall inventory the inmate's DME and complete the CDCR 128B, Durable Medical Equipment Transfer Inventory (Attachment H).  If the review of SOMS confirms that the inmate does not have DME, staff will not complete the CDCR 128B.**

**(2) If there is a discrepancy between the DME listed on SOMS and the DME actually in the inmate's possession, custody staff shall document the discrepancy on the CDCR 128B. Furthermore, custody staff shall attempt to resolve the issue by querying the inmate as to why the missing DME is not present, and also notify the TTA/R&R RN about the discrepancy.**

**(3) The TTA/R&R RN shall be responsible for ensuring patients are provided with prescribed DME and/or medical supplies upon arrival.**

**(4) Patients transferred from another CDCR institution to CSATF/SP shall be allowed to maintain possession of prescribed DME and/or medical supplies as long as it does not pose a threat to safety and security, as determined by custody staff and as supported by documented evidence.**

**(5) All previously prescribed DME and medical supplies shall continue to be provided unless a doctor re-evaluates the**

patient and determined that DME or medical supplies are no longer medically necessary for the patient to have equal access to programs, services, or activities.

(6) The TTA/R&R RN shall review the patient's current CDCR 7536 to ensure accuracy and update if necessary to reflect all DME in the patient's possession. A new 7536 shall be generated if the DME is not documented in the health record.

(7) If the patient is missing any DME items upon arriving to CSATF/SP, the TTA/R&R RN shall:

    a. Issue the missing DME, if available.

    b. If the DME is not available, document missing DME in Admin Initial Health Screening Power Form.

    c. Notify the Care Team via message pool of missing DME for follow up.

    d. Complete an electronic Health Care Incident Report (eHCIR).

(8) TTA/R&R RN shall make every reasonable effort to supply verified and prescribed DME to a patient if he is not in possession of the DME. If the DME is unavailable, the TTA/R&R nursing staff shall notify the appropriate Care Team, HCCA, and TTA/R&R custody staff.

(9) Any CDCR 128B that includes any DME/HCAs being transferred will be faxed to the ADA Coordinator, at fax number 7297, and to the Case Records department at extension 7267, or hand deliver for scanning into ERMS.

f.    Inter-Facility Transfers from CSATF/SP

(1)    Prior to the intra-facility transfer, custody staff shall query the inmate to confirm the inmate has all prescribed DME/HCAs.

(2)    If the review confirms the patient has DME, the Facility Sergeant shall ensure custody staff inventories the inmate's DME and completes a CDCR 128B, DME Transfer Inventory (Attachment H).

(3)    If there is a discrepancy between the DME listed on SOMS and the DME/HCA actually in the inmate's possession, the sending facility staff shall document the discrepancy on the CDCR 128B. Furthermore, the sending facility staff shall attempt to resolve the issue by

querying the inmate and notifying the facility clinic of the discrepancy.

(4) If the inmate is missing any DME items upon departing CSATF/SP, the TTA/R&R RN shall:

    a.  Issue the missing DME, if available.

    b.  If the DME is not available, document missing DME in the Trans Inter-Facility Power Form.

    c.  Notify the Care Team via message pool of missing DME for follow up.

(5)  Under non-emergency situations, if staff discover an inmate is without his prescribed DME, prior to movement custody staff shall coordinate with medical and immediately provide an interim accommodation (loaner cane, walker, wheelchair, etc.).  If an interim accommodation is or is not provided, custody staff will continue to adhere to Institutional policy regarding the packaging, transferring and temporary retention of DME in R&R.

(6)  The sending facility staff shall ensure the DME are transferred along with the inmate to the receiving facility.

(7)  The receiving facility staff shall sign the CDCR 128B, acknowledging the receipt of the DME.

(8)  The inmate shall sign the CDCR 128B, acknowledging his DME/HCAs have been transferred with him to the receiving facility.

(9)  Any CDCR 128B that includes any DME being transferred will be faxed to the ADA Coordinator, at fax number 7297, and to the Case Records department at extension 7267, or hand deliver for scanning into ERMS.

g.  Intra-Facility Transfers within CSATF/SP

The prefix 'intra' means within a single thing.  For the purpose of this procedure, an intra-facility transfer within CSATF/SP is movement within the institution, from one yard to another.  It does not mean a housing change from one housing unit to another, on the same yard.

During an intra-facility transfer, the sending facility staff shall ensure that all medically prescribed DME are transferred along with the inmate to the receiving facility.

(1)     Prior to the intra-facility transfer, custody staff shall query the inmate to confirm the inmate has all prescribed DME.

(2)     If the review confirms the patient has DME, the Facility Sergeant shall ensure custody staff inventories the inmate's DME and completes a CDCR 128B, DME Transfer Inventory (Attachment H).

(3)     If there is a discrepancy between the DME listed on SOMS and the DME actually in the inmate's possession, the sending facility staff shall document the discrepancy on the CDCR 128B. Furthermore, the sending facility staff shall attempt to resolve the issue by querying the inmate and notifying the facility clinic of the discrepancy.

(4) If the inmate is missing any DME items upon departing CSATF/SP, the TTA/R&R RN shall:

    a.  Issue the missing DME, if available.

    b.  If the DME is not available, document missing DME in the Trans Inter-Facility Power Form.

    c.  Notify the Care Team via message pool of missing DME for follow up.

(5)     Under non-emergency situations, if staff discover an inmate is without his prescribed DME, prior to movement custody staff shall coordinate with medical and immediately provide an interim accommodation (loaner cane, walker, wheelchair, etc.). If an interim accommodation is or is not provided, custody staff will continue to adhere to Institutional policy regarding the packaging, transferring and temporary retention of DME in R&R.

(6)     The sending facility staff shall ensure the DME are transferred along with the inmate to the receiving facility.

(7)     The receiving facility staff shall sign the CDCR 128B, acknowledging the receipt of the HCAs.

(8)     The inmate shall sign the CDCR 128B, acknowledging his DME have been transferred with him to the receiving facility.

(10)    Any CDCR 128B that includes any DME being transferred will be faxed to the ADA Coordinator, at fax number 7297, and to the Case Records department at extension 7267, or hand deliver for scanning into ERMS.

f.    DME in STRHs

Inmates may be prescribed more than one DME.  When an inmate is rehoused in STRH, the sending facility staff shall ensure *all* medically prescribed DME are delivered to STRH staff, for immediate issuance (unless the appliance was removed due to safety and security issues, as stipulated above).

The following protocols shall be followed at CSATF/SP when an inmate is placed into STRH:

(1)    The sending facility shall inventory all property in the inmate's cell and complete a CDCR 128B, DME Transfer Inventory (Attachment H).

(2)    When DME/HCAs are inventoried, they shall be personally delivered to STRH staff.

(3)    STRH staff shall sign the aforementioned CDCR 128B, indicating receipt of the appliance.

(4)    STRH staff shall immediately issue the HCA to the inmate.

(5)    If any discrepancies are noted, sending facility staff shall be immediately notified.

g.    Maintenance and repair of **DME**

It is the joint responsibility of CSATF/SP and the inmate to maintain all **DME** in good repair and operation.  Whenever an appliance, other than a wheelchair, is in need of repair or replacement, the inmate shall utilize approved CDCR procedures for notifying health care staff of the need.  Health care staff shall ducat the inmate for an appointment and evaluate the condition of the appliance.  Once the need for repair or replacement is verified, the inmate shall be issued an appropriate appliance or accommodation.  This procedure applies to replacement of batteries for hearing aids and other appliances.

**Hearing aid batteries are issued two pairs at a time by medical staff.  This allows one working pair and one to be exchanged when battery replacement is required.  Exchange can be made during regularly scheduled inspections by medical staff.  If exchange is needed prior to the regularly scheduled inspection, the inmate shall submit a CDCR 7362.**

Custody staff shall conduct and log periodic safety and security inspections on all health care appliances on at least a monthly basis.  The inspections shall include:

1.      A review of the SOMS for information regarding inmates with appliances.

2.      Ensuring the inmate currently maintains possession of the appliance(s).

3.      Inspecting the appliance(s) to ensure it has not been altered by the inmate/patient.

**Note:**   If custody staff conducting the inspection should require assistance in determining if the appliance has been altered, or if the parts have been removed by the inmate/patient, the Facility LVN or RN shall be immediately be notified, and the inmate/patient shall be escorted, with the appliance(s), to the facility medical clinic so the LVN/RN can assist in the inspection.

4.      If during the inspection process it is determined the inmate/patient has altered the health care appliance and the alteration has resulted in a threat to the safety and security of the institution, or if a weapon stock is found and it is determined the weapon making material is consistent with the materials contained within the health care appliance, the appliance shall be immediately confiscated.   Immediately upon confiscation of the health care appliance, the Chief Medical Executive (CME) shall be notified to evaluate if the inmate/patient shall be issued an alternate appliance, from medical staff, for the inmate's medical needs. Custody staff shall take the appropriate action to ensure the safety and security of the institution.  All additional measures in Section VI (D)(5)(d), removal of health care appliances must be followed.  In addition, the Custody Captain shall be notified to determine if Investigative Services Unit involvement is necessary.

5.      The monthly inspections shall be clearly documented on the Health Care Appliance Inspection Log (Attachment I).  The program Sergeants shall be responsible for ensuring the logs are maintained accurately, and turned in to the Facility Captain for review and submission to the ADA Coordinator. All issues related to missing or altered appliances shall be immediately evaluated by the facility on the basis of safety and security, as well issuance of a new appliance if medically required.  By the 5th of each **new** month, the completed logs for the previous month shall be forwarded to the ADA Coordinator for review and disposition. All wheelchair inspections shall be logged on Attachment **K** only.

h.      Maintenance and repair of wheelchairs

It is the joint responsibility of CSATF/SP and the disabled inmate to maintain an assigned wheelchair in proper working condition.  A

logbook will be maintained in each facility medical clinic for tracking repairs and/or replacement of wheelchairs. The Facility RN or LVN will review all inmate requests for repair or replacement of wheelchairs. The clinic wheelchair logbook will document repairs requested and completed. All wheelchairs in need of repair will be routed to the Wheelchair Repair Shop in the
Facility "E" Vocational area. Any wheelchair routed for repair will be clearly labeled with the following information on the **SATF Wheelchair/Walker Repair Form** (Attachment **J**): inmate name, CDCR Number, housing, requested services or repair needed.

Custody staff shall conduct and log periodic safety and security inspections on all wheelchairs on at least a monthly basis. Custody staff shall complete the Wheelchair Safety and Security Inspection Checklist (Attachment **K**) when conducting their monthly wheelchair inspections. By the 5th of each month, the completed logs for the previous month shall be forwarded to the ADA Coordinator for review and disposition.

If a wheelchair is in need of repair along with notifying the Facility RN/LVN, this information shall be noted on the Wheelchair Safety and Security Repair Log (Attachment **L**). A copy of the log shall be forwarded the same day to the Health Care Material and Stores Supervisor, via the Facility RN/LVN, to initiate necessary repairs.

Each month's logs should be compared to the previous month's log (by facility custody staff), so any discrepancies can be noted and reported. Copies of completed Wheelchair Safety and Security and Inspection Checklists and Wheelchair Inspection Repair Logs will be forwarded to the ADA Coordinator by the 5th day of the following month.

Each facility medical clinic will maintain at least two loaner wheelchairs for exchange purposes. The facility RN/LVN will ensure a loaner wheelchair is provided to an inmate whose wheelchair is in need of repair. Exchanges will take place in the Facility Medical Clinic under the supervision of health care services staff. All loaner wheelchairs shall be monitored for necessary repairs by facility medical staff, and referred to the Wheelchair Repair Shop when needed.

Each yard shall designate an officer to be available on a daily basis for transporting wheelchairs to and from the Facility E Wheelchair Repair Shop. An accumulation of broken wheelchairs at facility medical clinics will not be allowed.

An outside contractor (REMI Group/MultiMedical Systems) will pick up and return wheelchairs on a rotating two (2) week basis to perform preventative maintenance and repairs on all wheelchairs, including loaners.

(1) If a personal wheelchair is evaluated and found to be in need of significant repair by **REMI Group/**MultiMedical Systems, wherein repair costs exceed the cost of a comparable state issues wheelchair, the inmate will be notified by the ADA staff. Should the inmate choose to continue with the repair, his account will be verified and a hold placed on it for the required amount. In the event the inmate is indigent, or has insufficient funds to cover the cost of the repair, CSATF/SP will assume responsibility for the repair (not to exceed the cost of a comparable wheelchair), in accordance with inmate trust accounting procedures.

(2) In the event an inmate has insufficient funds to repair a personal wheelchair, where the repairs exceed the cost of a comparable state issued wheelchair, CSATF/SP will not assume responsibility for the repair (in accordance with the ARP). The inmate will be advised that he may send the wheelchair home, at his own expense; or donate it, pursuant to CCR, Title 15, Section 3191. CSATF/SP medical staff shall provide the inmate a suitable replacement wheelchair, in accordance with inmate trust accounting procedures.

5. MAINTENANCE OF ACCESSIBLE FEATURES AND EQUIPMENT

The CSATF/SP has a duty to maintain structural features and equipment necessary to make the prison system's services, programs, and activities accessible to disabled inmates. Isolated or temporary interruptions in service or access due to maintenance or repairs are not prohibited.

The Correctional Plant Manager II at CSATF/SP is responsible for maintaining the structural features and equipment.

It is the general duty and responsibility of all staff (custodial and non-custodial) to conduct visual and/or physical inspections of their respective work areas during their normal daily duties. These inspections shall include an observation of accessible features/assets located in DPW cell/bed areas; other cell/bed areas with structural modifications, such as: cell/bed areas housing inmates designated at DPO; and common areas within the housing units, including all paths of travel. The term "accessible features" refers to fixed objects which, include but are not limited to: shower benches, shower heads, shower water controls, shower hoses, grab bars, water fountains, raised toilets, and sinks. When a housing unit officer or employee notes a discrepancy during their normal daily duties, they shall report the information to the unit/area supervisor as soon as feasible. In addition, they shall also submit a work order request prior to the end of their work shift.

When monitoring institutional accessibility features/assets, all employees (custody and non-custody) who work in areas where inmates have access to, must visually and physically inspect that the feature/asset is operational. For example, the employee shall physically unfold the permanent shower bench and pull on the grab bars to ensure the bars are securely attached

and operational. Other examples include, but are not limited to: examining the wheels; brakes and seat on a shower chair; checking the shower hose for serviceability, proper length, and a fixed hook; checking for obvious discrepancies to water pressure and temperature for showers and sinks; flushing toilets; visually checking toilets for possible leaks; checking toilet area grab bars and toilet seat stability. In cases where staff discover and/or an inmate reports a malfunctioning toilet, sink or other accessible feature/asset, which directly affects (or may effect) a DPW/DPO/DPM inmate and the feature cannot be repaired or replaced in a timely fashion, the officer/staff member shall immediately notify the unit supervisor. Within 24 hours of being notified, the unit supervisor shall make a determination as to the necessity to move the inmate or provide an alternative accommodation until the discrepancy is remedied. The ADA Coordinator shall provide appropriate oversight and follow-up on these cases on a daily basis.

When completing the work order request, the staff member shall indicate that the discrepancy pertains to an ADA accessible feature/asset by marking the upper portion of the work order request as ADA. The staff member shall forward the completed work order request to his/her immediate supervisor for review and required signature(s). The unit supervisor shall verify that the work order request pertains to an ADA feature/asset and ensure it has been marked as ADA. The unit supervisor shall forward the original work order request to the designated Work Order Coordinator, who shall maintain a log (Attachment **M**).

In cases where the maintenance work order requests are determined to be an emergency, the Plant Operations Department shall be notified telephonically prior to faxing or routing the request through the institutional mail.

The ADA Coordinator is responsible for ensuring staff is trained on how to identify, document, and report ADA features/assets in need of repair or replacement.

The ADA Coordinator (or designee) will tour each facility/unit/building/wing and other areas of their respective institution where ADA inmate's living/work/attend school, etc. at least once per month to interview staff and inmates, and provide visual checks as warranted to ascertain whether staff are appropriately checking assets/features that may be in need of repair or replacement. The ADA Coordinator will personally maintain a logbook or other acceptable logging system to confirm checking of the specific areas. If during the unit tours, or by other means, the ADA Coordinator or designee confirms there is a need for repair or replacement of an asset/feature that was not appropriately reported and staff should have been able to identify and report the discrepancy, the ADA Coordinator shall initiate appropriate action following with the DPP Accountability Plan.

As ADA assets/features are identified for repair, Plant Operations at each institution are responsible for following policies and procedures as stated in

the OP FMD-0100, Work Requests, Work Orders, and Project Requests, only; there are no exceptions.

If conditions exist that prevent timely resolution or where work requests require clarification before action can be undertaken, Plant Operations management is responsible for keeping the ADA Coordinator adequately informed as to conditions and progress.

It is the ADA Coordinator's or the designee's responsibility to monitor and follow up with institution's Plant Operations staff on outstanding issues to ensure timely repair of ADA assets and features. Additional information regarding ADA work orders can be found in CSATF/SP OP 162 and OP FMD-0100.

6.    LIBRARY EQUIPMENT

Electronic equipment is intended for use in the recreational library, education areas, and the Law Library. Each facility LTA will be responsible for training staff and inmates in the proper use of the equipment to provide access for inmates with disabilities. Disabled inmates will not normally be restricted to using the equipment for only legal text; however, legal users will be given priority access.

Each facility LTA will conduct weekly inspections of the electronic equipment to ensure they are working properly. The weekly inspections shall be documented on the Weekly Operational Check Form (attachment **Z**) and maintained in a binder in each library. The Weekly Operational Check Forms will also be forwarded to the Vice Principal, Special Services for Proof of Practice and archiving. Each facility LTA will maintain a Merlin/DaVinci Instructional Sheet in large print (attachment **AA**). The Merlin/DaVinci instructional sheet will be placed next to each machine in the libraries, in a plastic page protector. It will contain instructions on how to use the machines and directions on what to do if the machines are inoperable.

All disabled inmates are oriented to the availability of library services via the Inmate Orientation Manual/video. Disabled inmates may request access to library equipment by submitting a request to the LTA. Disabled inmates who are unable to write, may verbally request such access. Access to the equipment will be provided as soon as possible, but no later than seven working days of the request. The LTA will train inmate ADA Library Clerks in the set-up and operation of the equipment, in order to provide assistance to disabled inmates.

Examples of available equipment include:

- Merlin Elite – Desktop video magnifier with HD and text-to-speech features.
- DaVinci Pro – Desktop video magnifier with HD and text-to-speech features.
- Magnapages – plastic magnifying glasses the size of a page.

- DPP/Developmental Disability Program Computer – Inmates are allowed to use text-to-speech and conduct legal research using the Law Library Electronic Delivery System (LLEDS) and personal parole research using ARCAID, as well as to type documents using a word processing program and to fill out select CDCR forms using CANVAS. The Library staff member prints the documents for the inmate.

The ADA computers are available for use during normal library hours. The computers may be used for a minimum of one (1) hour and a maximum of two (2) hours by each inmate. Inmates must request an account for the ADA computer from library staff. Once the account is created, library staff and/or inmate clerks will assist the inmate to log into both the DRP network and the Library section of CANVAS.

Vision impaired inmates should be given priority access to the ADA computers. An inmate assistance giver may be utilized by the ADA inmates during their usage. It is up to the LTA's discretion as to who receives priority usage in all other cases. This shall be decided on a case by case basis.

Inmates may request printouts of documents saved to their document folder by uploading them to CANVAS and submitting a Legal Document Processing Request form. Each document, either printed or copied, should be charged to the inmate at a rate of ten (10) cents per page. This includes initial print-out.

In the event an inmate is transferred to another facility, the inmate's access to the DRP network will remain the same. If the inmate is transferred to another institution, the information should remain in the network folder for the inmate to access at the new institution, however the inmate can also request that their documents be printed prior to transfer. If the inmate is paroling, the information on the inmate's account can be printed for the inmate to take with him.

7.  INSTITUTION PROCEDURES

    a.  Inmate Orientation Process

        Comprehensive information, as outlined below, shall be provided to all disabled inmates in accessible format during the inmate orientation process. Vision/hearing impaired and learning disabled inmates shall be accommodated with alternative formats, e.g., verbal communication, video presentation, or written material (large print), in order to ensure effective communication.

        The following information is effectively communicated in the CSATF/SP orientation manual (regular/large print) and video.

        (1)  The purpose of the DPP.

(2)     Availability of CCRs, ARP, and similar printed materials in accessible formats.

(3)     CDCR 1824 process and the location of the forms.

(4)     Reasonable accommodations/modifications available to qualified inmates, e.g., sign language interpreters for due process, and medical appointments.

(5)     Access to readers or scribes (staff, Inmate Assistance Givers, Inmate ADA Library Clerks); and availability of specialized library equipment (text magnifiers, large print material, audiocassette tapes, etc.).

(6)     The process of personal notification by staff and use of a dry erase/chalk board for notification of announcements, visits, ducats, messages, etc., in the housing unit.

(7)     Access to TDD/TTY or volume control telephone, Video Relay Service (VRS).

(8)     Close captioned television.

(9)     ADA Workers.

(10)    Verified case-by-case medical exceptions to institutional count procedures.

(11)    Information regarding emergency alarms/evacuations, announcements and notices.

All inmates on orientation status will be afforded the opportunity to view the CSATF/SP Inmate Orientation Video, which utilizes an ASL Interpreter, as well as written and oral text for effective communication. The video is aired on institutional Television Channel 11, every Saturday and Sunday at 0900 hours, and every Tuesday at 1500 hours. The video is approximately one hour and forty-five minutes in length.

Housing unit officers will be required to safely release orientation status inmates to afford them an opportunity to view the video on the dayroom television(s). Housing unit officers should allow additional time for any questions once the video is finished. Orientation status inmates will be afforded the opportunity to view the video within 14 days of arrival. Housing unit officers will document on a CDCR Form 128-B, CSATF/SP Inmate Orientation Chrono whether the inmate elected to view the video, or declined.

b.    Notices, Announcements, and Alarms

(1)     Written Material

CSATF/SP shall ensure the CCR, notices, orientation packages, announcements and similar printed materials distributed to inmates, are accessible to inmates with disabilities. Accommodations such as magnifiers, photocopy enlarging, inmate or staff assistance, computer assisted devices, and audiotapes shall be given when necessary. Institution staff shall provide the assistance and equipment necessary to all inmates with disabilities on a case-by-case basis to ensure that inmates who have difficulty reading and/or communicating in writing will be provided reasonable access to forms, regulations and procedures.

The ADA Coordinator has overall responsibility to ensure all written materials provided to inmates with disabilities are provided in accessible formats such as large print, audiotape, or are provided the assistance or equipment necessary to ensure access. The CCR, Title 15 on audiocassette/CD may be obtained via the LTA.

The LTA will ensure disabled inmates are provided access to equipment, or written materials, as soon as possible, but at least within seven working days upon request.

R&R Officers responsible for disseminating written orientation materials will ensure large print Orientation Manuals are provided to visually impaired inmates, who require large print.

(2)    Verbal Announcements and Alarms

CSATF/SP shall ensure that effective communication is made with inmates who have hearing impairments, impacting placement, regarding public address announcements and reporting instructions, including those regarding visiting, yard release and recall, count, lock-up, unlock, etc.

All verbal announcements in units where inmates with hearing impairments impacting placement are housed, will be done on the building's public address system and by turning the unit lights on and off several times (where possible), alerting hearing impaired inmates that an announcement is imminent. Custody staff shall also ensure, through personal notification (via dry erase board or other means such as **ADA Workers**), that the announcement has been communicated to the inmate. Notification requirements for specific inmates should be noted on the **picture board/binder** as described below (Special Identification).

c.    Special Identification

Custody staff for each housing unit, where an inmate who is a participant in the DPP resides, shall maintain a copy of their picture with the exception of DLT inmates: (Disability – Inmates with trouble walking on un-level terrain due to mobility/health concerns).   A current SOMS roster (updated weekly), shall be maintained in each housing unit to alert unit staff to provide for the special needs of the inmate during count, emergency evacuation, verbal announcements, etc.  Special needs may include personal notification for hearing impaired inmates, or assistance provided to vision impaired inmates in responding to ducats, etc.  The SOMS roster shall be reviewed each week to ensure DPP codes are correctly listed on the picture board/binder.

d.    Yard Identification

(1)    Each inmate identified on the electronic CDCR 1845 as having a hearing (DPH) or vision (DPV and DNV) impairment sufficiently severe as to affect placement shall be issued an identifying yellow vest.  The vest shall indicate that the person wearing it has a vision or hearing impairment.

(2)    Identifying vests shall be issued to the inmate from the Department, without a CDCR 193.  However, the inmate shall be financially responsible, except for normal wear, for damage, repair, and replacement of identifying vests and shall be charged for the cost thereof through a CDCR 193 in accordance with Departmental policy and procedure.

(3)    All hearing or vision impaired inmates who are pending electronic CDCR 1845 verification shall wear the vest at all times outside the inmate's assigned bed area or cell.  The vest shall be worn over the inmate's outer clothing. If the disability is subsequently not verified, the vest shall be returned to medical staff.

(4)    All hearing impaired inmates who are able to function in a non-designated facility with hearing aids (DNH) shall be temporarily issued an identifying vest whenever their prescribed HCA is not available or working.  Those inmates shall wear the vest outside the inmate's housing area or cell at all times.  These inmates shall not be required to wear the identifying vest when their HCA becomes available and working properly.

(5)    At CSATF/SP inmates with mobility impairments, who are not able to prone out during alarms (verified by a physician), shall be issued a yellow mobility impaired identifying vest.

(6)    DPO/DPW designated No Prone Out Policy

a. During an alarm/emergency, when inmates are ordered to assume a seated position on the ground, inmates designated as DPW or DPO seated in their assigned wheelchairs are expected to remain seated and halt any movement.  If an inmate designated as DPO is not seated in their assigned wheelchair, and is approximately six feet or more from the wheelchair, they shall be expected to assume a seated position on the ground.  If the inmate is less than six feet away from their assigned wheelchair, and not directly involved with the incident, staff shall allow the inmate to assume a seated position in the wheelchair. Inmates that violate this policy and/or refuse staff orders shall be subject to disciplinary action.

e.    Evacuation Procedures

(1)    CSATF/SP shall ensure the safe and effective evacuation of inmates with disabilities.

(2)    All inmates with disabilities are provided evacuation/emergency procedures during orientation.

CSATF/SP shall ensure the safe and effective evacuation of all inmates.  In the event of a fire or other emergency, which requires evacuation from any or all portions of a housing unit, each inmate shall be required to fully cooperate with staff instructions.    Inmates will exit the housing unit via the evacuation route designated by staff.

In the event of a fire or other emergency, serious enough to warrant evacuation of the building, the following procedures will be implemented:

(a)    In the event of a cell fire, the first cells to be evacuated shall be in the following order:

1)    The cell in which the fire occurs

2)    The adjacent cells

3)    The cells above the cell in which the fire occurs

4)    The second tier

5)    The first tier

(b)    In the event of a fire, other than a cell or related emergencies, requiring evacuation of the building, inmates will be released beginning with the second tier.

(c)     Should a major evacuation be required in the buildings, due to an emergency situation, inmates will be directed to proceed to the yard. They will be instructed to sit in the grass areas, and not be in the way of staff responding to the area of the emergency.

**Note: Please refer to OP 313, Fire and Disaster Plan for the CTC, for direction on evacuations of inmates from CTC.**

Per DOM 52090.19 Evacuations, staff will assist inmates with disabilities. All hearing impaired inmates will be personally notified of the emergency evacuation. All mobility impaired inmates will be assisted from the building as necessary (e.g., inmates with wheelchairs will be pushed in their wheelchairs by staff or Inmate Assistance Givers, as directed by staff). All vision impaired inmates will be verbally instructed on the appropriate route to take, and be guided out of the building as needed. Developmental Disability Program inmates will be personally notified by staff to ensure their understanding of the need to evacuate.

f.     Power Outages

In order to prevent potential health hazards associated with inmates currently using Continuous Positive Airway Pressure (CPAP) machines during the loss of power, the following procedure shall be followed.

1. Should a power outage occur within a housing unit, Custody staff shall conduct a welfare check and awaken inmates who have CPAP devices until normal power is restored.

2. Housing Unit staff shall document in the housing unit log book "CPAP Welfare Checks" were conducted.

3. The ADA Coordinator shall provide a copy of the SOMS Health Care Appliance Report identifying those inmates who have a CPAP device on a weekly basis to the Facility Captains and the Correctional Plant Manager. The Facility Captains will ensure distribution to the facility supervisors and all housing units.

4. Custody staff for each housing unit shall maintain a copy of the current SOMS roster (updated weekly), identifying those inmates who have CPAP devices.

5. Upon being made aware of an individual power outage in a cell or dorm bed electrical outlet (of which an inmate resides who has a CPAP device), custody staff shall request a priority 1 (emergency) work order request be submitted via the Work Order

Coordinator of the facility. Work order requests shall be documented in the housing unit log book. On weekends, holidays, or non-business hours, facility staff shall make every effort to temporarily rehouse the inmate in another cell or bed until power is restored.

6. Upon being issued a CPAP device, the ADA RN shall inform the inmate/patient of potential health risks associated with a power outage, if the mask or device is not properly used, modified or tampered with.

g.    Count

Inmates who have a verified disability which prevents them from standing during count shall be reasonably accommodated to provide for effective performance of count.

At CSATF/SP the following procedures will be adhered to when conducting the 1700 hour standing count. Each inmate in his assigned cell is required to stand at his assigned cell door, until counted by the officer taking count. Inmates designated as DPW shall be allowed to sit on their bunk, or in their assigned wheelchair next to the bed. In dorm settings, inmates will sit on their assigned bed/bunk or wheelchair next to the bed.

All standing counts shall be announced on the building Public Address (PA) system. Messages communicated over the PA systems in units where inmates with hearing impairments are housed are to be communicated via written message or by personal notification. Inmates shall be alerted that an announcement is imminent by flicking the unit lights on and off several times.

h.    Restraints

Inmates who have a disability that prevents application of restraint equipment in the ordinarily prescribed manner shall be afforded reasonable accommodation, under the direction of the supervisor in charge. Mechanical restraints shall be applied to ensure effective application while reasonably accommodating the inmate's disability.

The custody level, behavior, safety of staff or other inmates and transportation of inmates will generally determine the need for mechanical restraints to prevent injury to themselves, others or to prevent escapes. CDCR staff are required to provide reasonable accommodation when an inmate's disability prevents the application of mechanical restraint equipment in an ordinary manner. Staff are required to provide reasonable accommodations for inmate's disabilities without relying on an order from health care. Except during emergency and exigent circumstances, staff shall refer to the "Physical Limitations to Job/Other" section of the "Disability Summary Screen" in Strategic Offender Management System

(SOMS/eOMIS) to determine whether "special cuffing" has been documented. **When providing reasonable accommodations during the application of mechanical restraints, staff shall consult with the inmate to determine how to reasonably accommodate their disability. Staff shall use discretion and sound correctional judgement when determining if reasonable accommodation is appropriate.**

Examples of disabilities/tasks inmates with disabilities may perform that may require a special cuffing accommodation perform include, but are not limited to:

- Mobility disabilities requiring the inmate to utilize Durable Medical Equipment (DME) to ambulate. Examples of DME required to ambulate, include but is not limited to, walkers, canes, etc.

- Hearing and speech disabilities resulting in ASL being an inmate's primary method of communication. Consideration should be given to the type and method of mechanical restraint application that allows the inmate to use their fingers/hands/arms to effectively communicate utilizing ASL without compromising the institutional safety and security.

- Hearing and speech disabilities which require inmates to use written notes to communicate. Consideration should be given to the type and method of mechanical restraint application that allows the inmate to write and to receive and read written material without compromising the institutional safety and security. **STRH will provide longer waist restraints for use on inmates whose primary method communication is American Sign Language.**

- Reviewing Braille documents (vision disabilities). Considerations should be given to the type of mechanical restraint application that allows the inmate to move their hands across all points on the surface of a sheet of Braille paper without compromising the institutional safety and security.

- Dialysis patients. Consideration should be given to the type and method of mechanical restraint application so as to not damage or interfere with a patient's dialysis port.

i. Searches

Inmates who have disability that prevents standard search methods shall be afforded reasonable accommodation under direction of the Facility Lieutenant. Such searches shall be thorough and professional, with safety and security being the paramount concern.

No inmate shall be required to lie or sit on an extremely hot or cold surface to perform strip search maneuvers.

(1)    DME attached to the inmate's body (i.e., prosthetic appliances) will be removed for inspection only during an unclothed body search. If a search requires removal of the appliance, the inmate shall be allowed to remove it and give it to staff. If forcible removal of an appliance is necessary, health care staff shall be available for consultation regarding the safe removal of the appliance. Removal or disassembly of a HCA shall be conducted in a clean setting.

(2)    Inmates who use wheelchairs and who have severe mobility impairments, where they are unable to perform standard unclothed body search maneuvers, shall be afforded reasonable accommodation to ensure a thorough search, including body cavities. While processing inmates through Work Change, inmates confined to wheelchairs will move to a contraband free area. The inmate will submit to an unclothed body search and the wheelchair will be searched to ensure it is free of contraband.

(3)    The Facility Lieutenant shall ensure all inmates' prosthetic appliances are routinely inspected on a quarterly basis. Staff conducting these searches will provide reasonable accommodations to the inmate to comply with the inspection of the HCA. Routine inspection of prosthetic appliances will be conducted in the CTC or facility medical clinic.

(4)    Complex devices (e.g., electronic medical devices) shall be disassembled for inspection only where there is reasonable cause to believe the inmate has concealed contraband inside the device. Inspection of such devices shall require approval from a Captain or above, after consultation with appropriate medical staff. Only a trained professional shall disassemble such devices.

j.    Transportation

(1)    The special needs of inmates with disabilities shall be considered in transporting them. An inmate's special health care aids and appliances shall be transported with the inmate upon transfer.

(2)    Accessible vehicles shall be used to transport inmates in wheelchairs and those whose disability necessitates specialized transported in standard vehicles.

(3)    When any DPW inmate requires non emergent treatment or evaluation in the CTC or TTA; the facility Sergeant shall contact the CTC Sergeant and request assistance. The CTC Sergeant shall assign Specialty Clinic transport staff, to

transport the DPW inmate in either a wheelchair cart or ADA vehicle with a wheelchair lift. Should Specialty Clinic transport staff be unavailable; facility staff shall escort the inmate to the TTA, via the inmate's assigned wheelchair. At no time shall a DPW inmate be transferred from a wheelchair to a non wheelchair accessible cart for the purpose of transport.

k.  Storage and Issuance of DME during Routine/Emergency Medical Appointments/Transports

Inmates not returning to their assigned housing on the same day as their routine medical appointment/evaluation, or in cases where they are transported to an outside medical facility, shall have their personal property and HCA inventoried and delivered to Receiving and Release (R&R) by escorting custody staff from the respective facility. The personal property and HCA shall be stored in R&R until the inmate's return to the institution. **At no time shall inmate personal property or DME be retained/stored in the CTC Out-Patient or TTA area unless authorized by medical staff.** Upon the inmate's return to the institution, the respective facility escorting staff shall be responsible for locating and issuing the inmate's personal property or DME in an expeditious manner.  The escorting staff is also responsible for obtaining the inmate's signature on the Personal Property Receipt (CDCR 1083) as proof he has received his personal property or HCA. If an inmate's DME cannot to be located, facility staff is responsible for immediately contacting the appropriate medical staff to issue a HCA in order to accommodate the inmate's needs.

l.  Caption Phones and TDD/TTY Telephones

Each facility has a TDD/TTY device.  Use of a TDD/TTY and telephones for inmates with disabilities shall be consistent with CCR, Title 15, Section 3282(h).  Verification of an inmate's need for TDD/TTY may be confirmed with local health care staff, the assigned CCI, or by reviewing a copy of the electronic CDCR 1845.  An inmate who has been approved by the institution to use the TDD/TTY and who wishes to call a party who does not have use of a TDD/TTY shall be permitted to use the California Relay Service.  If the inmate does not have severe hearing/speech impairment, but desires to call a party who requires the use of a TDD/TTY, the outside party shall forward a physician's statement of TDD/TTY verification to the inmate's CCI.  Upon meeting verification requirements, the inmate may sign up for telephone calls according to his privilege group designation.

There is a TDD/TTY Sign Up Log (Attachment **N**) and TDD/TTY Tracking Log (Attachment **O**) available on each facility.  Each log shall include the name of the inmate signing up for the phone call.  If access to the scheduled call is denied for any reason, or if the inmate cancels or fails to report for the call, the reason shall be

noted next to the inmate's signature in the "reason if no call" column. TDD/TTY calls shall have extended time increments due to the time delay associated with the TDD/TTY relay process.

Sign-ups are divided into 40-minute increments. TDD/TTY access for the hearing impaired shall be consistent and similar to telephone access provided for nondisabled inmates (e.g., work group A1/A TDD/TTY users shall receive one 40 minutes call per day). Inmate shall be supervised by custody staff at all times when utilizing the TDD/TTY machine. It is the responsibility of the supervising officer to ensure a sufficient amount of tape is available in the machine to record the entire call. At no time shall an inmate utilize a TDD/TTY machine if tape is not available to record the phone call. In cases where TDD/TTY machine tape is not available, a supervisor shall be notified immediately and all efforts shall be made to obtain tape from an alternate facility. The facility Office Assistant/Office Technician is responsible for the ordering of the TDD/TTY machine tape, as needed, each month.

At the completion of the phone call, the supervising officer shall remove the tape from the TDD/TTY machine and review it for safety/security concerns. The inmate's name, CDCR number, housing assignment, and the date and time shall be written on the backside of the tape, and placed in a manila envelope labeled "TDD/TTY Machine Tape". The manila envelope shall be stored in a secure area at all times. The envelope containing an entire month's tape, along with all logs, which must be reviewed and signed by the Facility Captain, will be forwarded to the ADA Coordinator by the fifth day of the following month.

An inmate's request for use of a TDD/TTY for confidential purposes, (e.g., attorney/client privilege) shall be in accordance with CCR, Title 15, Section 3282(g)(1) and (h). All requests for a confidential telephone call will be processed by the Litigation Coordinator. Any printer paper containing the text of the verbal exchange shall be relinquished to the inmate, if requested. Should the inmate not wish to retain the written text, staff shall dispose of the unread text in accordance with institutional policy and procedure regarding the disposal of confidential documents.

Each TTY System shall be tested on a quarterly basis. The ADA Coordinator shall be responsible to ensure the testing is completed by ADA Staff during the months of March, June, September, and December. Staff conducting the testing shall document the results of the test on each facility TTY Tracking Log. If at any time the TTY System is found to be inoperable, the ADA Coordinator shall be notified immediately. Staff will utilize two sets of instructions (Attachment **P**) when testing the TTY System.

In addition to TTY phones, SATF has purchased caption phones for use by the deaf or hard of hearing inmate population or any other

inmate who demonstrates a need. The caption phones are available on each facility.  The new caption phones do not replace the TTY/TDD hearing impaired telephone, but provide another available accommodation to the inmate population and the TTY/TDD shall remain accessible for inmate use, if requested.  The request process for using the caption phones will be the same as the request process for the TTY/TDD.  SATF's Sign Language Interpreters and/or ADAC designee will train the deaf and hearing impaired population on the usage of the caption phones.  Inmates will continue to be allowed 40 minutes per phone call.  This time frame can be extended for legal calls or at the direction of a staff member.

m.    Video Telephone

Refer to OP 418 – Video Relay System

n.    Closed Captioned Television

CSATF/SP has a direct feed closed captioning system to all televisions throughout the institution, which remains on at all times.

All dayroom televisions must be a minimum of 40" and have the capacity to enlarge the font size of closed captioning. If televisions do not have the capacity to enlarge the font for closed captioning, the minimum television size should be 50".

All dayroom televisions shall be programmed to display closed captioning for hearing impaired inmates.  Each dayroom television shall be programmed to display closed captioning in white font with a black background (bar).  Closed captioning is programmed by utilizing the television's remote control.  It is the responsibility of all housing unit officers to ensure that all dayroom televisions display closed captioning at all times.

o.    Visiting

(1)    Reasonable accommodations shall be afforded inmates with disabilities to facilitate their full participation in visiting whether contact, noncontact, or family visiting.

(2)    Non-contact visiting booths will be accessible for inmates with disabilities.  Auxiliary aids and assistive devices for effective communication will be provided for non-contact visits, (e.g., volume control telephones or pencil and paper for writing messages).

(3)    Inmates with disabilities shall be provided the modifications necessary for them to participate in the contact visiting program.  The modifications shall be provided as appropriate to enable inmates to participate in the contact visiting

program and also to ensure the safety and security of staff, inmates, or the public.

(4)     Visitors shall not be permitted to bring in outside equipment for effective communication when it is available at the institution.  Any equipment visitors are permitted to bring into the institution will be subject to search.

(5)     Inmates with disabilities requiring accommodation for family visits shall give 72 hours notice of any request for accommodation to the Facility Visiting Officer.

p.    Recreation

Reasonable accommodation for inmates with disabilities at designated facilities may include the provision of accessible recreation areas and specifically fitted equipment.

q.    Inmate Programs and Work Assignments

(1)     It is the policy of CSATF/SP to ensure that inmates with disabilities are afforded the opportunity to participate in educational (including vocational) and work programs, including Prison Industries Authority.

(2)     Inmates shall be evaluated to participate in an educational or work program on a case-by-case basis.  Eligibility to participate in any program depends upon the inmate's ability to perform the essential functions of the program with or without reasonable accommodations.  Participation in these programs may be considered regardless of reading level if the inmate has the capacity to benefit from a program based on individual need and assessment.  Inmates with disabilities shall be evaluated by health care services staff who will document the inmate's physical limitations and/or restrictions on a CDCR 128C or CDCR 7410.  A copy of the chrono will be forwarded to the inmate's CCI who will schedule the inmate for classification committee review.  The classification committee will determine if the inmate is able to participate in an academic/vocational, or work program based on the information provided by the health care services staff and a recommendation from the Inmate Assignment Lieutenant.

(3)     Reasonable accommodations for all other disabled inmates to access program assignments, as determined via classification committee review, may include, but are not limited to, a modified work or school schedule, early release to/from meals, or assignments for mobility/vision impaired inmates, etc.

(4)  Classification Committee actions shall be periodically monitored by the ADA Coordinator to ensure that assignments of inmates with disabilities are nondiscriminatory.

(5)  Only when an inmate's disability, even with reasonable accommodation, renders the inmate ineligible to participate in any available work, educational or other such program for which the inmate is otherwise qualified, will the inmate be deemed "Medical/Psychiatric Unassigned" or "Medically Disabled" by UCC.  It will only be on rare occasions that UCC will place an inmate on medical/psychiatric unassigned or medically disabled status.

(6)  Removal of an inmate from an academic/vocational or work program shall only be done by a Classification Committee, in accordance with CCR, Title 15, Section 3375(c).  When the work supervisor has determined that the inmate cannot perform the essential functions of the assignment, he/she must document the specific essential functions that the inmate cannot perform on a CDCR 128B.  The CDCR 128B will be forwarded to the inmate's CCI.

The CCI will schedule the inmate for a program review at the next UCC to be unassigned/reassigned.  The inmate will remain on "S" time pending the results of the program review. If an inmate's physical limitations and/or restrictions on his medical chrono need clarification/modification, the inmate shall be referred to health care services staff for evaluation.

r.  Vocational Assignments

Reasonable modifications/accommodations shall be provided to ensure access when appropriate for qualified inmates with disabilities to participate in all programs, services, or activities including vocational assignments, unless affected by one of the exclusions as set forth in the ARP.  Participation in these programs may be considered regardless of reading level, if the inmate has the capacity of benefit from a program based on individual need and assessment.  The inmate, with or without reasonable accommodation, must meet the eligibility criteria of the vocational assignment as defined in the course description and be able to perform the essential functions of the assignment.  All inmates shall be assigned on a case-by-case basis to appropriate work/academic/vocational programs by classification committee action.

s.  Academic Assignments

Reasonable modifications/accommodations shall be provided to ensure access to academic programs.  The individualized, self-

paced learning format inherent in competency based instruction is available to inmates with disabilities who can perform the essential functions necessary for achieving the goals of the academic class. The competency based education model adopted for academic classes and vocational programs fosters individualized, self-paced instruction for assigned students. Open entry and exit into and from the education program is provided to allow inmates at all levels to progress at their own speed and to begin or complete classes or programs within their own time frames.

The DPP Teacher will research the needs of visually impaired inmates to identify necessary equipment and materials needed to accommodate them within the classroom environment. The equipment used in the education classroom may include: Magna Pages, Swell-forms, Talking Book materials, Hadley School for the Blind correspondence courses, Perkins Brailler, and the Braille Connection. The DPP Teacher sends this equipment to the inmate's classroom teacher. The teacher will supervise the use of the equipment.

t.     Conservation Camps

Inmates with disabilities shall not be precluded from assignment to a conservation camp based solely upon their disability. The CSATF/SP shall evaluate inmate disabilities in consideration of camp assignment on a case-by-case basis and shall determine if they are capable of performing essential functions of that assignment.

u.     Health Care Status Determination

(1)     When an inmate's disability limits his ability to participate in work, educational or other programs, health care staff shall document the nature, severity and expected duration of the inmate's limitations on a medical chrono and forward it to the his assigned CCI. The CCI will then schedule the inmate for UCC. The medical/psychiatric staff shall not make program assignment recommendations or decisions on the chrono. The classification committee has the sole responsibility for making program assignment decisions based on the information provided and evaluation of the inmate's ability to perform the essential functions of the assignment with/without any necessary reasonable accommodation. The Classification Committee, in conjunction with staff representation from the affected work area, academic/vocational program and IAL shall evaluate the inmate's ability to participate in work, educational and other programs. Based on that evaluation, a determination shall be made as to the inmate's program assignment and work group status.

(2)    Only when the inmate's documented limitations are such that the inmate, even with reasonable accommodation, is unable to perform the essential functions of any work, educational or other such program, will the inmate be placed in one of the two following categories:

(a)    Temporary Medical/Psychiatric Unassigned: Unable to participate in any assigned work, educational or other such program activity, even with reasonable accommodation, because of a medically determinable physical or mental impairment that is expected to last for less than six months. Inmates on temporary Medical/Psychiatric Unassignment status shall be scheduled for classification review anytime there are changes in his physical/mental impairment or no less often than every six months for revaluation of status. The inmate's credit earning status shall be in accordance with CCR, Title 15, Section 3044 (b)(2), Work Group A2.  If the inmate's condition lasts six months and the classification committee still cannot assign the inmate due to the impairment, his credit earning status shall be changed to be in accordance with CCR, Title 15, Section 3044 (b)(1), Work Group A1 and appropriate Privilege Group retroactive to the first day of the unassignment.

Note:  The medical/psychiatric staff still has the authority to authorize short-term medical/psychiatric lay-ins for illnesses as described in CCR, Title 15, Section 3043.5(2)(A).

(b)    Medically Disabled:  Unable to participate in any assigned work, educational or other such program activity, even with reasonable accommodation, because of a medically determinable physical or mental impairment that is expected to result in death or lasts for six months or more.  The inmate credit earning status shall be in accordance with CCR, Title 15, Section 2044(b)(1) Work Group A1 and Privilege Group A until their condition changes.

v.    Disciplinary Process

(1)    Reasonable accommodations shall be afforded to inmates with disabilities in the disciplinary process. **Staff shall consider if inmates disability or need for reasonable accommodation contributed to the inmates behavior which resulted in the Rules Violation Report (RVR).**

(2)    To assure a fair and just proceeding, the assistance of a Staff Assistant and/or an Investigative Employee as provided in

CCR, Title 15, Section 3315(d)(1) and (2), may be required for the inmate, and those persons may need to be assisted by a bilingual aide or qualified interpreter to ensure effective communication.  Other additional accommodations may be appropriate.  All written notes utilized and exchanged for effective communication shall be attached and included with the disciplinary documents for placement in the inmate's ERMS.

(3)     Staff shall ensure effective communication is achieved during the disciplinary process, as stipulated in Section VI (B)(c) of this OP.

w.    Special Housing Placement

The Department shall provide accessible special placement housing for inmates with disabilities as follows:

(1)     Short Term Restricted Housing (STRH):  Designated DPP facilities shall provide accessible STRH housing to accommodate inmates' disabilities that impact placement. Where accessible STRH housing is unavailable, alternate placement may be made temporarily in another appropriate location consistent with CCR, Title 15, Section 3335, such as the highest security level accessible cell available.  In the event there are no available DPW beds within STRH, the ADA Coordinator and the CME shall be contacted to determine appropriate housing options.

If an STRH DPW inmate is being considered for placement in a non-accessible cell he may be temporarily admitted by a physician to a medical bed when there is a medical judgment that the inmate requires nursing care consistent with that setting and/or there is a risk of possible injury to self.  In the event there are no accessible DPW beds available at the institution, the C&PR shall contact nearby institutions to determine if temporary accessible housing is available.

In all such cases, where STRH DPW inmates are temporarily housed in other locations, staff shall ensure the inmate's disability and program (such as shower and yard) is being appropriately accommodated.

(2)     Medical Placement: Inmates with disabilities may be admitted by a physician to a medical bed when there is a medical judgment that the inmate requires nursing care consistent with that setting and/or there is a risk of injury to self if the inmate is not so housed because no accessible cell is available.  Such inmates shall have access to equivalent programs and privileges for which they are otherwise eligible

unless the individual condition, need, or limitations of the inmate make access unreasonable. Such programs shall be provided in a manner that does not adversely impact health care operations. A program may be disallowed on a case-by-case basis if the physician determines it would endanger the health or safety of the inmate. When an inmate with a disability is housed in the CTC for long term care, the inmate shall be afforded equivalent program and privileges provided to non-disabled inmates (e.g., CTC yard, canteen).

(3)     <u>Hearing Impairment (DPH) Clustering:</u> In order to increase efficiencies and further enhance effective communication with inmates identified with permanent hearing impairments, inmates designated as DPH will be clustered in specific housing locations.

Staff shall ensure reporting instructions and verbal announcements in designated housing units are made by using public address system, flicking unit lights on and off, utilizing dry erase boards, and making personal notifications.

The following Housing Units have been designated:
- Facility A, A-2
- Facility B, B-2
- Facility C, C-8
- Facility D, D-2.
- Facility E, E-3
- Facility F, F-1
- Facility G, G-3

(3)     <u>Roof Leaks:</u> As soon as custody staff becomes aware of any water leaks in the housing units, to include Short Term Restricted Housing (STRH), Administrative Segregation (E-1), and the Correctional Treatment Center affecting ARP class members, they shall immediately notify their immediate supervisor to initiate a bed move and submit a work order for repair. All efforts shall be made to relocate ARP inmates into dry dorms/pods/cells. If all relocation efforts are exhausted and the ARP inmates cannot be rehoused in another dry dorm/pod/cell, the respective Facility Captain shall be notified.

It shall be the responsibility of the respective Facility Captain to ensure the ARP class members are rehoused in dry dorms/pod/cells as soon as practical. All efforts to relocate ARP class members into dry dorms/pods/cells shall be reported to the ADA Coordinator on a weekly basis by noon, each Friday, until relocation has been achieved or the water leak has been repaired.

In cases where the ARP class member refuses to be relocated to a dry dorm/pod/cell, a CDCR 128B, Refusal To Be Relocated (Attachment **Q**), shall be completed by the respective Facility Sergeant and signed by the inmate. A copy of the CDCR 128B shall be faxed to the ADA Office at 7297, and the original shall be placed in the inmate's Central File.

(5)  Housing of Armstrong Inmates in Administrative Segregation

CDCR is prohibited from housing *Armstrong* class members in STRH due solely to a lack of accessible General Population (GP) housing (including Sensitive Needs GP).

a.  First, staff determine whether an appropriate accessible bed can be made available through bed compaction.

If that fails, staff must determine whether the *Armstrong* class member can be housed in an accessible bed in another unit, even if that unit is out of level.

If that fails, staff must determine whether the inmate can be housed in an accessible medical bed.

1)  Prior to the use of a medical bed, approval is required from the Health Care Chief Executive Officer (CEO).

2)  If CEO approval is obtained, contact with the Health Care Placement Oversight Program (HCPOP) is required to determine if the bed is available or if it has been reserved for a medical patient.

3)  If reserved for a medical patient, the bed shall not be used.

4)  HCPOP will attempt to find alternate housing for the medical patient and, if found, will release the bed.

If that fails, staff must determine whether the inmate can be appropriately housed at an alternate institution via expedited transfer.

These alternatives will require appropriate notifications (Warden or designee, CEO or designee, Associate Director or Departmental Administrative Officer of the Day [AOD], etc.) and authorization prior to utilization.

This policy shall also apply to *Armstrong* class members who were placed in STRH for security reasons and who are subsequently reviewed by the Institutional Classification Committee and determined to be eligible for release to GP housing.

x.    CDCR 1824 – Reasonable Accommodation Request Process

(1)    General

The CDCR 1824 can be used by any inmate to allege a disability and request an accommodation to access a program, service, or activity.  The CDCR 1824 may also be used by an inmate who believes he/she has been discriminated against based upon a disability.  Any inmate who has, who believes he or she has, or who is regarded by staff as having, a physical or mental impairment, may submit a CDCR 1824.

The ADA Coordinator oversees the process at their respective institution, with the appeal/grievance offices, health care staff, mental health staff, and education staff also playing an active role in reviewing requests.  All CDCR 1824s will be reviewed by a panel comprised of assigned staff and other subject matter experts (SME).

This panel is called a Reasonable Accommodation Panel (RAP).

Revised yellow CDCR 1824s shall be made readily available in housing units and the inmate law library.  The Post Order of the Yard Sergeant shall contain the overall responsibility to ensure that the housing unit officers maintain an adequate supply of CDCR 1824 forms in the housing units to provide to inmates with disabilities upon request.  Post Orders for housing officers shall contain the responsibility to ensure that an adequate supply of CDCR 1824 forms are available in the housing units to provide to the disabled inmates upon request.  LTAs shall ensure adequate supplies of CDCR 1824 forms are available in the libraries.

Staff, ADA Workers, or Inmate ADA Library Clerks may assist inmates with completion of the CDCR 1824, if needed.

To submit a CDCR 1824, inmates will deposit the CDCR 1824 into a collection box, send it through the inmate mail, or give it to staff.  If an inmate elects to hand their CDCR 1824 to staff for collection, the staff member will not read the substance of the CDCR 1824.

Inmate interviews may need to be conducted in order to understand and respond to requests for a reasonable accommodation. Staff interviews, while not mandatory in all cases, may also be necessary to understand the inmate's issues and what he or she is requesting.

If an inmate is dissatisfied with a CDCR 1824 decision, the RAP will advise the inmate he/she may either file a CDCR Form 602-1, Inmate/Parolee Appeal, or 602 HC, Health Care Grievance. Health care determinations made during the RAP will be grieved on a CDCR 602-1 HC. Other aspects of a RAP decision will be appealed on a CDCR 602-1. Regardless of which form is used, all appeals/grievances of a CDCR 1824 disability access or disability discrimination issue shall be reviewed by the hiring authority.

(2)    Time Frames

The RAP must review all CDCR 1824s within five (5) working days of receipt. The RAP must ensure that the issues presented can be clearly understood. For individuals with low Test of Adult Basic Education (TABE) scores, individuals who struggle to communicate in written English, and individuals with a learning disability, an initial interview to clarify the nature of the request may be required if the RAP determines that a request indicates the inmate has difficulty describing the problem in writing or has a primary language other than English. The RAP shall review and either affirm or modify actions previously taken regarding the need for an interim accommodation.

The CDCR 1824 non-emergency requests shall be completed and returned to the inmate within thirty (30) calendar days of receipt. Emergency requests that cannot be mitigated with an interim accommodation shall be completed and returned to the inmate within five (5) working days of receipt. All inmates who submit CDCR

1824s will receive a substantive response that either renders a decision or directs the inmate to where they may obtain remedy for the issue raised.

(3)    Interim Accommodation Procedure

Interim accommodations must be provided within five (5) working days of receipt when an inmate raises issues that, if true, would subject the inmate to a substantial risk of injury or other serious harm while the CDCR 1824 is being processed. This does not preclude providing other interim accommodations at any time during the processing of a

request. "Of receipt" means when a CDCR 1824 is date stamped as received by the institution.

(4)     Responses

The CDCR 1824 process is not an appeal/grievance; rather, it is a process to request reasonable accommodations or report discrimination based on a disability. All new requests will receive a substantive response.

y.     County Jail Plan for Out-to-Court Inmates

When an inmate is summoned Out-to-Court (OTC) who has an identified disability and is a participant of the Disability Placement Program (DPP) or has a Learning Disability (LD) code in the Strategic Offenders Management System (SOMS), the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) shall provide notification to the county jail advising that the inmate may require reasonable accommodations while housed at their facility.

Upon receiving notification an inmate is summoned to out-to-court, the OTC Case Records Technician (CRT) shall prepare a Notice of Detainer in SOMS. The Notice of Detainer shall be prepared in accordance with the DOM, Section 72040.11, *Department Detainers.*

Once the Notice of Detainer is reviewed by the Classification and Parole Representative (C&PR), the C&PR or Assistance C&PR shall review SOMS to verify if the inmate has a disability and is designated as DPP or LD. If the inmate has one of the aforementioned codes, the C&PR or Assistant C&PR will email the ADA Coordinator, including a carbon copy to the DAPO Parole Litigation Management Unit (PLMU) at PLMU@cdcr.ca.gov, of the inmate's pending out-to-court status. The email shall contain the following:

- Inmate's Name
- CDCR Number
- Anticipated Duration of time the inmate is scheduled to be out-to-court (if known)
- Court Location

The SOMS portion maintained by DAPO generates an output file that contains applicable information for inmate who are out-to-court and who have the aforementioned codes. The appropriate county jail staff and ADA Coordinator will be informed of the inmate's relevant disability information via email.

The ADA Coordinator will track the DPP Inmates who are on out-to-court status. The tracking will be completed on the "DPP County Jail Tracking Log" (Attachment **R**). The inmate shall be tracked on the

log each month until their return from the county. All correspondence, written, faxed, or telephonic, pertaining to the inmate while on out-to-court status, must be tracked and retained by the ADA Coordinator. The tracking log shall be submitted to the Class Action Management Unit (CAMU) at CDCR.CAMU@cdcr.ca.gov by the 5th of each month.

z.    Substance Abuse Program

Substance Abuse Treatment (SAT) - CDCR is required to provide accessible long-term intensive substance abuse treatment programs for male inmates with disabilities comparable to those programs provided to non-disabled inmates.

Currently the SAT Program at the CSATF/SP is designated to provide substance abuse treatment for male inmates with disabilities.

aa.    Confidential Attorney Calls

Plaintiffs' counsel will email the ADA Coordinator for Armstrong or Clark class actions with a courtesy copy (cc) to the Office of Legal Affairs (OLA) attorney, at OLAArmstronCAT@chdr.ca.gov or OLAClarkCAT@cdcr.ca.gov.

All plaintiffs' counsel's email shall be acknowledged within one business day. If the call cannot proceed on the day requested, plaintiffs' will be informed as soon as possible. The ADA Coordinator office will confirm the appointment time, number to call, and contact person in an email to the requester including a cc to the OLA attorney mailbox listed above. The ADA Coordinator will remain the point of contact if the call does not happen at the scheduled time.

If the request is too burdensome to accommodate in the timeframe given or problems or concerns arise, contact the OLA email listed above. This change only applies to scheduling confidential calls. The ADA Coordinator may not discuss with plaintiffs' counsel topics such as advocacies, or anything outside the scope of scheduling. If plaintiffs' make any inquiries, please direct them to the assigned attorney in OLA.

8.    BOARD OF PAROLE HEARINGS (BPH) ACCOMMODATION PLAN AND PAROLE PROCEDURES

(1)    The CSATF/SP staff shall facilitate reasonable accommodations in BPH hearings by serving the Reasonable Accommodation Notice and Request (BPH 1073), with other prehearing documents. This will ensure effective communication with inmates to assist them in completing the form, and by providing to the BPH documentation pertaining to inmate's verified disabilities.

It is the responsibility of the inmate to request a reasonable accommodation in order to ensure effective communication and/or

equal access by correctly completing the BPH 1073. When an inmate's disability impedes his ability to request an accommodation, it is the responsibility of CDCR and/or BPH staff that is aware of the disability, or should be reasonably aware of the disability, to request reasonable accommodation of his behalf.

In such cases where an inmate is unable to complete the form due to his disability, it is the responsibility of the BPH and/or CDCR staff that is aware or should be reasonably aware of such disability to assist/complete the BPH 1073 for the inmate.

The Parole Service Associate (PSA) shall review the ERMS and SOMS for documentation (e.g., electronic CDCR 1845; Release Program Study [CDCR 611]; or CDCR 128C), to determine whether or not the inmate has been verified with a disability and if there have been any prior reasonable accommodations provided. The BPH 1073, with all supporting documents on the issues of the disability, shall be forwarded to the BPH-ADA Coordinator at least 21 calendar days prior to the scheduled hearing. Note: the BPH 1073 may be sent as early as 90 days in advance of the hearing.

The original copy of the BPH 1073 shall be filed in the BPH section of the ERMS along with the other prehearing documents.

Inmates may elect to file a grievance based on the denial of their request for accommodation submitted on a BPH 1073. All complaints related to denials of requests for accommodations shall be handled by the Review of Reasonable Accommodation Request and Grievance Process (BPH 1074) or a letter. The grievance shall include the name, department (CDCR) number, and location of the prisoner or parolee; it shall be brief, pertinent, legible, and clearly written; it shall state the specific grounds and have attached all necessary documents and information. The grounds, decision desired and all arguments must not exceed the front and back sides of three pages of 8 ½" X 11" paper. Assistance in preparing the grievance may be sought from staff or others. Attorneys assigned to revocation cases under Valdivia V. Schwarzenegger must assist in filing any non-frivolous grievances. The grievance shall be submitted to the Appeals Coordinator, the C&PR, the Parole Appeals Coordinator, or the board's ADA Compliance Unit.

Grievances received by the Board at least 48 hours before a hearing/parole proceeding shall receive a response or accommodation no later than the date of the hearing or parole proceeding. "Parole proceedings" include any event related to a hearing that occurs before or after the hearing. The Board will make best efforts to provide accommodations requested less than 48 hours before the hearing/parole proceeding. Late grievances should be brought up again by the prisoner, parolee, or his or her attorney at the hearing/parole proceeding if no accommodation or insufficient accommodation is provided.

Any post hearing/parole proceeding grievances may be filed within 10 days after a probable cause or revocation hearing/parole proceeding, or 30 days after other types of hearings/parole proceedings. Those post hearing/parole proceeding grievances are limited to areas either:

(a) Grieved before the hearing or parole proceeding and that remained unresolved

(b) Resulted from something that occurred at the hearing/parole proceeding which made the accommodation ineffective and such could not have been reasonably known or anticipated in time to previously resolve it

The Board shall respond to post hearing/parole proceeding grievances no later than 30 days after receipt.

The BPH subpoenas to witnesses and notification to victims and/or their families will include instructions to contact the BPH ADA Coordinator 10 days prior to the hearing for any disability related accommodation request.

(2) Information gathered from completion of the BPH 1073, Notice and Request for Assistance at Parole Proceedings, shall be entered into SOMS by the assigned CCI. CSATF/SP staff shall then facilitate reasonable accommodations in parole proceedings by review of the SOMS prior to interviews and file reviews with inmates. Staff shall consult the "summary" and "view ADA/EC history" screens in the SOMS, to ensure appropriate accommodations are afforded disabled inmates during parole proceedings. Accommodations and timely access to parole proceedings shall be accomplished by pre-arranging for needed accommodations such as SLI, magnifying devices, large print materials, etc.

(3) Parole proceedings include, but are not limited to, service of notice of conditions of parole, mental health clinician interviews with life prisoners for the purpose of providing an evaluation for BPH, review of a life prisoner psychiatric report with the inmate, mental health clinician interviews with alleged Mentally Disordered Offenders (MDO) and alleged Sexually Violent Predators (SVP), attorney consultations in MDO or SVP cases and ERMS reviews for parole proceedings, etc.

Any staff assisting in "parole proceedings and file reviews" shall ensure the proceeding occurs in structurally accessible locations at the CSATF/SP, such as classification rooms, visiting rooms, and BPH room, etc.

The CSATF/SP BPH room has been provided with a wheelchair to accommodate inmate if needed. An Assistive Listening Device

(ALD) has also been provided to the institution, and shall be used at BPH proceedings.  The ALD is kept in the Records Department.

9.     PAROLE FIELD OPERATIONS

a.     Policy:

It is the policy of the Department to provide reasonable accommodations to parolees with disabilities consistent with established departmental policies and procedures. Parole planning and supervision is conducted on a case-by-case basis to meet the unique needs of the parolee while protecting legitimate parole interests of CDCR.

b.     Release Program Study:

Prior to a parolee's release from custody, a CDR 611 shall be used to provide documentation and notice to field staff of special needs related to the parolee's disability (need for qualified interpreters, or need for TDD/VRS access).  The C&PR is responsible for notifying parole field staff, via the CDCR 611 process, if the inmate has a verified disability and what the inmate's specific needs are.  The CDCR 611 shall be forwarded to the appropriate parole region at least 210 days prior to the inmate's release date in order to ensure sufficient time for reentry processing.

The PSA must complete a CDCR Form 128-B, ADA Documents for Transition to Parole (Attachment **S**), on all Parole Violators-Return to Custody (PVRTC) when there is a change in the inmate's disability status, and for all new commitments or Parole Violators With New Term (PVWNT) whose disability status changed after the CDCR Form 611 was completed and mailed to the Regional Re-entry Coordinator.

The PSA shall not be required to randomly review ERMSs to determine if there is a change in the inmate's disability status. However, through routine reviews of the ERMS, such as initial and program reviews, or notification via verification documents such as the CDCR 128-C, Mental Health Placement Chrono, electronic CDCR 1845, and CDCR 128-C2, Recommendation for Adaptive Support, counseling staff shall review the ERMS to determine if there is a change in the inmate's disability status requiring him or her to initiate the CDCR 128-B.

The PSA shall review the ERMS and document the change in the inmate's disability status on the CDCR 128-B. For PVRTCs whose disability status changes or PVWNTs and new commitments whose disability status changed and the CDCR 611 has been mailed to the Regional Re-Entry Coordinator, counseling staff shall complete the CDCR 128-B and submit the ERMS to the C&PR or designee.  The C&PR shall ensure that the CDCR Form 128-B and related

verification documents (e.g., CDCR 128-C for Mental Health) are copied and sent to the appropriate parole unit. The staff that copy and mail the documents shall check the highlighted section on the CDCR Form 128-B identifying the parole unit and date the documents are mailed.

The C&PR has the overall responsibility to ensure the electronic CDCR 1845 is attached to the CDCR 611.  However, the CCI's are responsible to review the inmate's ERMS and to interview the inmate to provide an evaluation of the inmate's needs upon release to parole.  A copy of the electronic CDCR 1845, CDCR 128-B, Equally Effective Communication for Hearing/Speech Impaired, any CDCR 128C for disabilities not covered by the electronic CDCR 1845 (mental illness, dialysis, etc.) or any CDCR 128B for learning disabilities shall be attached to the CDCR 611, when applicable.

10.    TRAINING

The ADA Coordinator, Assistant ADA Coordinator, and IST Manager at CSATF/SP shall ensure DPP training is provided to institutional staff on ADA regulations and DPP requirements.  This training shall include, but not be limited to, evacuation and emergency procedures, reasonable accommodations and effective communication.

D.    ALLEGATIONS AND VIOLATIONS OF THE ARMSTRONG REMEDIAL PLAN

Upon discovery of a possible violation and/or allegation of a violation of the DPP, or if a staff member, by any means, becomes aware of an allegation of non-compliance relative to the DPP, the staff member shall report it to a supervisor/manager.   The supervisor/manager shall report the alleged non-compliance to the ADA Coordinator.

Once informed of an allegation of non-compliance, the ADA Coordinator shall create an inquiry case in the Allegation Log Tracking System (ALTS), recording all required information, and then assign a supervisor/manager to initiate an inquiry to determine if the alleged non-compliance is true.   The inquiry must be initiated within 10 business days of the date of discovery of the allegation.  The respective supervisor/manager must complete the "Inquiry" summary report format (Attachment T), within 30 days, summarizing which (if any) of the alleged employee(s) action have been confirmed or not confirmed.  The report must also detail the source(s) of information relied upon in deciding whether employee non-compliance occurred.   The supervisor/manager will then submit the Inquiry summary report format to the ADA Coordinator. The ADA Coordinator shall input the information provided in the Inquiry Summary Report into the ALTS inquiry case and provide a recommended outcome (confirmed or not confirmed) and action (if any) to the Hiring Authority. The Summary Report and supporting documents will be scanned and digitally attached to the ALTS inquiry case. The ALTS inquiry case will be submitted to the Hiring Authority by the ADA Coordinator. The Hiring Authority will make a determination consistent with existing departmental guidelines, and shall document if the allegation is confirmed or not confirmed and

any action required. After the decision by the Hiring Authority, the documents will be maintained by the ADA Coordinator and kept available for review and auditing.

If at any point during the inquiry process the supervisor/manager determines adverse action is likely to occur, the inquiry will cease immediately and the circumstances shall be report to the Hiring Authority for possible referral to the Office of Internal Affairs for investigation. If the alleged violation is clearly a health care matter, the ADA Coordinator will forward the allegation to the appropriate Health Care Chief Executive Officer, and note that action on the Allegation of Non-compliance Log.

E.    ARMSTRONG MONITORING TOUR REPORT RESPONSE PROCESS

Institution staff within the California Department of Corrections and Rehabilitation and the California Correctional Health Care Services shall prepare a written response to every report that is issued as a result of the Armstrong Monitoring Tour (AMT) conducted by the Plaintiff's counsel. Responses shall be distributed in their final form by the Office of Legal Affairs (OLA) no later than 75 days after the AMT is received from Plaintiff's counsel.
The following process must be completed within the time frame specified, in order to produce a timely and thorough response to an AMT Report.

1.    No later than five (5) calendar days after an AMT report is issued, the Class Action Management Unit (CAMU) shall e-mail the report to the Warden, ADA Coordinator, and CAMU CCII. Health Care Class Action Liaison (HCCAL) will lead a conference call with institution staff (including medical and Warden or designee), CAMU, and OLA to discuss the Report and plan the substantive response, including which entity (medical, custody or both) will be responsible for addressing which allegations.

2.    No later than 35 calendar days after the AMT Report is issued, the combined institution response shall be sent to the HCCAL and CAMU for review and comment.

3.    No later than 45 calendar days after the AMT Report is issued, HCCAL and CAMU shall review and edit the combined AMT Report response.

4.    No later than 50 calendar days after the AMT Report is issued, the Correctional Health Care Services Office of Legal Affairs (COLA) and OLA shall review the final, combined AMT Report response.

5.    COLA and OLA shall make and send any comments or edits back to the institution to incorporate. No later than 60 calendar days after the AMT Report is issued, the final AMT Report response shall be issued to the Plaintiff's counsel and necessary stakeholders by OLA.

F.    SPECIAL HOUSING PLACEMENT DURING COVID

For the duration of the COVID-19 pandemic, Armstrong Class Members designated as DPW, who have been identified by medical as being exposed to

COVID-19 and require single cell, solid-door quarantine space, shall be housed in designated set aside isolation cells. If no designated isolation cell is available, housing unit pods on Facility F & G will be vacated to provide single cell DPW housing. Each building (F1, F2, F3, G1, G2, G3) have (4) 8 man pods with a solid door which contain (4) DPW beds. Each cell may be utilized as single cell. There are (4) cells per building. All inmates currently living in these spaces will be rehoused in alternate locations. A, B, and F & G Gym may be utilize and can house 1 DPW class member each as needed. As a last resort approval may be obtained by the DOC to utilize (18) swing spaces in SATF's education classrooms and chapels on Facility E Level III SNY, Facilities F & G Level II-NDPF/EOP. ADA metal bunks with trapeze bars along with ADA restrooms and showers will be brought on grounds for utilization in these areas. Additional staff will be assigned to provide 24 hour coverage of these locations if utilized.

For the duration of the COVID-19 pandemic, Armstrong Class Members designated as DPV, who have been moved to a new housing unit, shall have bed placement and be provided orientation to new environment. This applies regardless of whether the individual arrived from a different institution or from a different unit within the same institution, yard, or building. The ADA Coordinator, or designee, shall offer an initial orientation session to each DPV individual who is transferred to a new housing unit as soon as possible after the individual arrives at the new housing location, and no later than 24 hours after the individual arrives. The same day that a DPV individual is moved to the new housing unit, the ADA Coordinator or designee shall interview the DPV individual using the CDCR Form 128-O to determine if they may need assistance locating critical areas of their living environment such as their bed, dayroom area, toilet, shower, water fountains, doors, recreational areas, law library, and dining hall. Upon completion, the 128-O is to be submitted to the ADA Coordinator's Office for review and approval.

## VII.    ATTACHMENTS

Attachment A: General Post Order
Attachment B: Equally Effective Communication Chrono
Attachment C: Learning Disabled Chrono
Attachment D: Full Page Magnifier Log
Attachment E: ADA Workers Training Module
Attachment F: Request for Sightless Operation Lock
Attachment G: Special Purchase Order Form
Attachment H: CDCR 128B Durable Medical Equipment Transfer Inventory
Attachment **I**: Health Care Appliance Monthly Log
Attachment **J**: **SATF Wheelchair/ Walker Repair Form**
Attachment **K**: Wheelchair Inspection Log
Attachment **L**: Wheelchair Repair Log
Attachment **M**: Work Order Coordinator Log
Attachment **N**: **Caption Phone** / TDD Telephone Sign-Up Log
Attachment **O**: **Caption Phone** / TDD/TTY Tracking Log
Attachment **P**: TDD Instructions
Attachment **Q**: Refusal to Relocate
Attachment **R**: Out to Court Log
Attachment **S**: Transition to Parole
Attachment **T**: Non-Compliance Memo

OP 403 - Disability Placement Program (DPP)
Page 79 of 79

Attachment U: Talking Book Program Application
Attachment V: Portable CD Player Loaner Agreement
**Attachment W: Weekly Operational Check of Assistive Devices**
**Attachment X: Merlin DaVinci Instructions**

_____     6-21-23
BRYAN D. PHILLIPS                     _____
Warden (A)                            DATE

_____     6/21/2023
A. BANERJEE                           _____
Chief Executive Officer               DATE

Attachment A

# GENERAL POST ORDER/DUTY STATEMENT ADDENDUM____.

**Reasonable Modification/Accommodation:** Reasonable modification or accommodation is the process of modifying policy, procedure, physical plant, etc. to facilitate access to programs, services, and activities for inmates with disabilities. Under the Americans with Disabilities Act (ADA), inmates with disabilities have a right to request reasonable modification or accommodation to access programs, services, and activities of the Department. The ARP provides that such requests may be denied only if one or more of the following four defenses apply:

1.    Legitimate Penological Interest,
2.    Undue Burden and Fundamental Alteration,
3.    Direct Threat,
4.    Equally Effective Means;

These defenses are derived from the ADA and from the 1987 United States Supreme Court decision in *Turner v. Safley*. Staff should consult ARP II.H, Justification for Denial of Requests for Reasonable Accommodation for detail on the applicability of these defenses. If CDCR staff denies requests for reasonable modification or accommodation where these defenses do not apply, the denial may not be legally defensible and the CDCR will continue to be deficient with respect to compliance with federal law and federal court order.

**Equally Effective Communication:** The ARP and the Americans with Disabilities Act (ADA) require public agencies to ensure equally effective communication with inmates, in particular where important interests such as due process, health care delivery, legal, etc. are at stake. In these instances, the ADA requires public agencies to give primary consideration to the preferred method of communication of the individual with a disability. Staff is required to dedicate additional time and/or resources as needed to ensure equally effective communication with inmates who have communication barriers such as hearing, vision, speech, learning, or developmental disabilities. Inmates with severe hearing impairments who rely on sign language for effective communication have been most underserved in this area. It is my expectation that DAI staff will take necessary steps to obtain the services of a qualified sign language interpreter for communications that involve due process, appeals, notice of conditions of parole, classification committee hearings, etc; attempting to use written communication for these contacts violates the ARP and the ADA. The ARP and CDCR policy require staff to document their determination that the inmate understood the communication, the basis for the determination, and how the determination was made. A good technique is asking the inmate to explain what was communicated in his or her own words.

**Tracking:** The ARP requires Classification and Parole Representatives (C&PR) and Reception Center Correctional Counselors-III (RC CC-III) to develop local procedures for tracking inmates with disabilities based upon the CDC Form 1845. Deputy Director Memorandum 159/03, dated November 25, 2003, implemented the *Armstrong Clark* Tracking System (ACTS) and requires all institutions to use this system for tracking all inmates with DPP and DDP codes. The ACTS was designed to work in conjunction with the CDC 1845, rev. 01/04, and includes fields dedicated for entering and reporting housing restrictions such as lower bed/lower tier housing, accommodations for effective communication, and prescribed health care appliances. C&PRs and RC CC-IIIs are required to distribute updated ACTS housing rosters to division heads bi-weekly and division heads are required to distribute the rosters to housing units, custody supervisors, correctional counselors, etc. It is my expectation that custody supervisors will ensure ACTS rosters are used to identify inmates with housing restrictions and ensure they are housed appropriately. Staff shall also use ACTS rosters to identify effective communication needs, in particular the need for a sign language interpreter.

**Inmates with Housing Restrictions:** the ARP requires doctors to generate chronos with physical limitations for inmates verified with certain CDC 1845 disabilities. These limitations often involve housing restrictions. It is custody staff's responsibility to ensure inmates are housed consistent with housing restrictions; therefore, institutions shall establish local procedures to ensure chronos with housing restrictions are forwarded to the C&PR/RC CC-III and to the custody supervisor responsible for inmate housing. If the inmate has a DPP code, the C&PR/RC CC-III or designee shall update the housing restriction information in the ACTS. The custody supervisor shall conduct bed moves if necessary to accommodate the inmate expeditiously according to the documented housing restrictions. Also, custody supervisors shall train housing officers to report all cases where inmates are not housed consistent with documented housing restrictions.

**Prescribed Health Care Appliances:** ARP IV.F.3 provides that inmates shall not be deprived of appliances that were properly obtained while in CDCR custody unless for documented safety or security reasons or a physician determines it is no longer necessary or appropriate. Unless an inmate misuses a prescribed appliance in a manner that threatens safety or security, there is no legally defensible reason for custody staff to take it away after the custody captain or designee has reviewed it for safety and security concerns and approved it.

**GENERAL POST ORDER/DUTY STATEMENT ADDENDUM (ARMSTRONG REMEDIAL PLAN)**

Employee_____, Classification_____

Date:_____

Has read and received a copy of the General Post Order/Duty Statement Addendum related to Armstrong v Newsom Remedial Plan.

Cc: Supervisory File
　　 Training File

2

Attachment B

*STAPLE THIS FORM TO MOST CURRENT CDC 1845 AND ENTER INFORMATION INTO ACTS*

State of California                                                                 DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                                                    CDC 128-B

**NAME and NUMBER**

This inmate has been identified as:  ☐ DPH  ☐ DNH  ☐ DPS  ☐ DNS and was interviewed as indicated below:
☐ The inmate **was/was not** interviewed with the assistance of a qualified sign language interpreter.
        Name of sign language interpreter _____

Primary method:  **(Check one) (This method shall be used for due process, delivery of health care, inmate appeals and CDC 1515)**
☐ American Sign Language  ☐ Sign Exact English  ☐ Other sign language: _____☐ Written notes
☐ Reads Lips  ☐ Hearing aide(s)  ☐ Assistive listening device

Alternative method(s):  (Check all that apply)
☐ American Sign Language  ☐ Sign Exact English  ☐ Other sign language: _____☐ Written notes
☐ Reads Lips  ☐ Hearing aide(s)  ☐ Assistive listening device ☐ None

_____          _____          _____
Interviewer's Name                          Interviewer's Signature                          Inmate's Signature

**DATE:**                                                                                          **INST: _____**
              **EQUALLY EFFECTIVE COMMUNICATION FOR HEARING/SPEECH IMPAIRED**
******************************************************************************************

*STAPLE THIS FORM TO MOST CURRENT CDC 1845 AND ENTER INFORMATION INTO ACTS*

State of California                                                                 DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                                                    CDC 128-B

**NAME and NUMBER**

This inmate has been identified as:  ☐ DPH  ☐ DNH  ☐ DPS  ☐ DNS and was interviewed as indicated below:
☐ The inmate **was/was not** interviewed with the assistance of a qualified sign language interpreter.
        Name of sign language interpreter _____

Primary method:  **(Check one) (This method shall be used for due process, delivery of health care, inmate appeals and CDC 1515)**
☐ American Sign Language  ☐ Sign Exact English  ☐ Other sign language: _____☐ Written notes
☐ Reads Lips  ☐ Hearing aide(s)  ☐ Assistive listening device

Alternative method(s):  (Check all that apply)
☐ American Sign Language  ☐ Sign Exact English  ☐ Other sign language: _____☐ Written notes
☐ Reads Lips  ☐ Hearing aide(s)  ☐ Assistive listening device ☐ None

_____          _____          _____
Interviewer's Name                          Interviewer's Signature                          Inmate's Signature

**DATE:**                                                                                          **INST: _____**
              **EQUALLY EFFECTIVE COMMUNICATION FOR HEARING/SPEECH IMPAIRED**
******************************************************************************************

*STAPLE THIS FORM TO MOST CURRENT CDC 1845 AND ENTER INFORMATION INTO ACTS*

State of California                                                                 DEPARTMENT OF CORRECTIONS AND REHABILITATION
                                                                                                                    CDC 128-B

**NAME and NUMBER**

This inmate has been identified as:  ☐ DPH  ☐ DNH  ☐ DPS  ☐ DNS and was interviewed as indicated below:
☐ The inmate **was/was not** interviewed with the assistance of a qualified sign language interpreter.
        Name of sign language interpreter _____

Primary method:  **(Check one) (This method shall be used for due process, delivery of health care, inmate appeals and CDC 1515)**
☐ American Sign Language  ☐ Sign Exact English  ☐ Other sign language: _____☐ Written notes
☐ Reads Lips  ☐ Hearing aide(s)  ☐ Assistive listening device

Alternative method(s):  (Check all that apply)
☐ American Sign Language  ☐ Sign Exact English  ☐ Other sign language: _____☐ Written notes
☐ Reads Lips  ☐ Hearing aide(s)  ☐ Assistive listening device ☐ None

_____          _____          _____
Interviewer's Name                          Interviewer's Signature                          Inmate's Signature

**DATE:**                                                                                          **INST: _____**
              **EQUALLY EFFECTIVE COMMUNICATION FOR HEARING/SPEECH IMPAIRED**

Attachment C

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B

**NAME and NUMBER**

This inmate has been placed on the institution's Learning Disabled list based upon the following:

Diagnosis from: _____     ☐ A licensed psychologist
                                                    ☐ A credentialed school psychologist
                                                    ☐ A licensed educational psychologist

Educational Records Reflecting:    ☐ Participation in Special Education classes services (denoting specific learning disability)
                                   ☐ Participation in Section 504 classes services (denoting specific learning disabilities)

Comments: _____
_____

_____
Principal of Education's Signature

**DATE:**                                                                 **INST:** _____

**GENERAL CHORNO**
**LEARNING DISABLED LIST**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B

**NAME and NUMBER**

This inmate has been placed on the institution's Learning Disabled list based upon the following:

Diagnosis from: _____     ☐ A licensed psychologist
                                                    ☐ A credentialed school psychologist
                                                    ☐ A licensed educational psychologist

Educational Records Reflecting:    ☐ Participation in Special Education classes services (denoting specific learning disability)
                                   ☐ Participation in Section 504 classes services (denoting specific learning disabilities)

Comments: _____
_____

_____
Principal of Education's Signature

**DATE:**                                                                 **INST:** _____

**GENERAL CHORNO**
**LEARNING DISABLED LIST**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B

**NAME and NUMBER**

This inmate has been placed on the institution's Learning Disabled list based upon the following:

Diagnosis from: _____     ☐ A licensed psychologist
                                                    ☐ A credentialed school psychologist
                                                    ☐ A licensed educational psychologist

Educational Records Reflecting:    ☐ Participation in Special Education classes services (denoting specific learning disability)
                                   ☐ Participation in Section 504 classes services (denoting specific learning disabilities)

Comments: _____
_____

_____
Principal of Education's Signature

**DATE:**                                                                 **INST:** _____

**GENERAL CHORNO**
**LEARNING DISABLED LIST**

Attachment D

# FULL PAGE MAGNIFIER
## CHECK IN/OUT LOG

HOUSING UNIT _____

**Attn:  Housing Unit Officers please ensure that all sections are completed.  Ensure you inspect Full Page Magnifier when it is checked in/out.**

| DATE | CDC NUMBER | INMATE NAME | TIME CHECKED OUT | STAFF'S SIGNATURE Write Legibly | | TIME MANGIFIER RETURNED | STAFF'S SIGNATURE Write Legibly | COMMENTS |
|------|------------|-------------|------------------|------------------------------|--|-------------------------|------------------------------|----------|
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |
|  |  |  |  |  | |  |  |  |



## Americans with Disabilities Act Workers

| Inmate Name | CDCR # |
|---|---|

### PURPOSE

The California Department of Corrections and Rehabilitation (CDCR) is committed to providing assistance to inmates with disabilities. Inmates assigned to the Americans with Disabilities Act (ADA) Inmate Assistance Program shall be provided the following accountability statement, expectations, restrictions, and all associated training modules.

### ACCOUNTABILITY STATEMENT

As an ADA worker, you shall review this information, initial that you have reviewed it, and sign and date the bottom of each page. The ADA worker assigned trainer will review this information with you and will also sign and date the bottom of each page. This training packet will be retained with the ADA Coordinator and a copy will be kept with your time cards.

### EXPECTATIONS

You shall provide assistance regardless of race, religious beliefs, or gang affiliation. Assistance shall be directed by staff for any inmate identified as requiring assistance, including those with mobility, hearing, learning, speech, reading, writing and vision impairments. You shall be sensitive and mature while conducting your duties. If your duties entail reading and writing, you are required to have at least a 9th grade education. You must maintain a custody status which will not restrict your duties as an ADA worker. Rule violations involving violence, threats of violence, sexual misconduct, extortion, or illegal substances will result in removal from the assignment.

### RESTRICTIONS

| | |
|---|---|
| I/M Initials | ADA worker **shall not** provide services to those inmates who have not consented. |
| I/M Initials | ADA worker **shall not** arrange trade, payment, or pressure inmates for ADA worker services. |
| I/M Initials | ADA workers are prohibited from attending any setting where an inmate's confidential information may be discussed, including but not limited to: Classification Committee Hearing, Disciplinary Hearing, or Health Care/Mental Health Consults/Treatment. |
| I/M Initials | ADA worker **shall not:**<br>1. Assist with personal hygiene such as grooming or dressing another inmate<br>2. Perform interpreting services or translating for due-process events<br>3. Perform maintenance on durable medical equipment<br>4. Handle canteen or personal property without owner's consent<br>5. Access another inmate's assigned locker<br>6. Access the inmate's assigned cell without staff present<br>7. Provide assistance to inmates housed in an isolation or quarantine space |
| I/M Initials | ADA worker **shall not** access CDCR and legal correspondence unless the inmate consents and staff approves. |

| Inmate Signature | Date | Trainer Name (Printed) | Trainer Signature | Date |
|---|---|---|---|---|



**TRAINING MODULE I – General Duties**

**OVERVIEW**
You are expected to provide reasonable assistance to inmates housed in the facility who are identified by staff as requiring assistance.

**REQUESTS**
Inmates needing assistance may request assistance verbally to staff or an ADA worker, or via written (CDCR Forms 1824 or 22) request.  If an inmate asks for assistance that is outside the basic forms of assistance listed below, request permission from your supervisor or another custody staff member before assisting the inmate.

**FORMS OF ASSISTANCE**
You may be directed by staff to perform any of the following:

| I/M Initials | Assist or guide inmates with impairments to and from: |
|---|---|
| | ▪ Education/Vocation Programs/Work Assignments (ADA worker shall not pass through security gates unless authorized)<br>▪ Classification or Disciplinary Hearings (ADA worker shall not attend hearings).<br>▪ Dining Rooms (ADA worker may help with food trays, beverages, and seating).<br>▪ Recreational Activities.<br>▪ Self-Help or Other Support Groups.<br>▪ Law and Regular Libraries (ADA worker with a 9th grade or higher education may remain and assist with reading and writing).<br>▪ Facility Captain and/or where inmates receive their quarterly packages.<br>▪ Health care appointments.<br>▪ Visiting. |
| I/M Initials | Assist with linen exchanges and provide limited help to clean bed/cell area.  Specifically, assist to procure cleaning supplies and assist the inmate to clean their individual bed/cell area under the supervision of staff and with the consent of the inmate. |
| I/M Initials | Assist with bed moves under escort of staff. |
| I/M Initials | Assist with reading or writing: Correspondence including submitting letters, requests, forms, etc. (See *Reading and Writing Training Module* for specifics) |
| I/M Initials | Provide instruction on how to use grooming tools without actually using the tools on the inmate, or arrange for barber services by others. |
| I/M Initials | Relay staff announcements, including ducat lists and other activity lists, made via the public address system. |

**SECURITY/CONFLICTS**
If at any time a conflict or other security concern arises with an inmate, you shall act within the rules set forth in the California Code of Regulations, Title 15, Section 3005 (Conduct).

_____    _____    _____    _____    _____
Inmate Signature              Date              Trainer Name (Printed)           Trainer Signature              Date



**TRAINING MODULE II – Safe Practices**

<u>**OVERVIEW**</u>
You will be working with inmates who are disabled and who may have other health related issues. Preventing exposure, illness, and injury to you and the inmate who is disabled is paramount.

<u>**SAFE WORK PLACE CONDITIONS**</u>
- Report all unsafe/hazardous conditions to your supervisor.
- Report all accidents, injuries, and illnesses to your supervisor.
- Fire Extinguishers shall be kept clear at all times.
- Keep floor surfaces clean and dry.
- Exits, aisles, stairways, and hallways shall be kept clear and well lit.

<u>**SAFE WORK PRACTICES**</u>
1. Attend safety training as required by your work supervisor.
2. Keep floor surfaces in the work area clean and dry.
3. Adequate aisle space shall be maintained.
4. File cabinet doors/drawers shall be opened one at a time, and carefully closed when not in use.
5. Keep hands and clothes clear of paper paths when using shredder, paper cutter, and copier.
6. Be aware of proper storage, disposal, and usage of hazardous/toxic materials within your work area.
7. Do not stack material/supplies above shoulder height.
8. Work place shall be kept free of debris, floor storage, and electrical cords.
9. Exercise caution while moving above the work area.
10. When carrying heavy loads, exercise appropriate lifting/carrying techniques to avoid overexertion and strain.
11. Inspect electrical cords and outlets before using.
12. Workers shall familiarize themselves with emergency evacuation procedures.
13. NO HORSEPLAY AT ANY TIME.

<u>**UNIVERSAL PRACTICES**</u>
Universal precautions are steps taken to prevent blood borne pathogens/infectious disease exposure including personal protective equipment, coupled with treating all bodily fluids as infectious. Key components for you as an inmate worker to practice include:

- Hand washing and covering injuries such as cuts and scrapes with barriers such as band aids.
- Use of personal protective equipment such as routine use of latex gloves and when necessary, masks, gowns, etc.

Staff or inmate workers properly trained in dealing with hazardous materials and sanitizing areas must properly decontaminate any exposed equipment, dispose of all infectious waste, and ensure safe environmental practices are followed.

| _____ | _____ | _____ | _____ | _____ |
| Inmate Signature | Date | Trainer Name (Printed) | Trainer Signature | Date |



## TRAINING MODULE III – Effective Communication

**When talking with a person with a disability**, speak directly to that person rather than through a companion or sign language interpreter who may be present.

**When meeting a person with a visual impairment**, always identify yourself and others who may be with you.  When conversing in a group, remember to identify the person to whom you are speaking.

**If you offer assistance,** wait until the offer is accepted.  Then listen to or ask for instructions.

**Treat adults as adults.**  Address people who have disabilities with their proper names when extending the same familiarity to all others present.  (Never patronize people who use wheelchairs by patting them on the head or shoulder.)

**Leaning or hanging on a person's wheelchair** is similar to leaning or hanging on a person and is generally considered annoying.   The chair is part of the personal body space of the person who uses it.

**Listen attentively when you're talking with a person who has difficulty speaking.**  Be patient and wait for the person to finish, rather than correcting or speaking for the person.   If necessary, ask short questions that require short answers, a nod, or a shake of the head.  Never pretend to understand if you are having difficulty doing so.  Instead, repeat what you have understood and allow the person to respond.  The response will clue you in and guide your understanding.

**When speaking with a person in a wheelchair or a person who uses crutches,** place yourself at eye level in front of the person to facilitate the conversation.

**To get the attention of a person who is hearing impaired, tap the person on the shoulder or wave your hand.**  Look directly at the person and speak clearly, slowly, and expressively to establish if the person can read your lips.  Not all people with a hearing impairment can lip read.  For those who do lip-read, be sensitive to their needs by placing yourself facing the light source and keeping hands and food away from your mouth when speaking.

**Relax.**  Don't be embarrassed if you happen to use accepted, common expressions that seem to relate to the persons disability, such as "see you later" or "did you hear about this."

*-Adapted from "The Ten Commandments of Communicating with People with Disabilities," originally developed by United Cerebral Palsy Associations, Washington D.C.*

### Other Disabilities:

Inmates with Developmental and Learning Disabilities may also require assistance. Communication with these inmates may require:

- ✓ Patience
- ✓ Additional time to respond
- ✓ Different communication methods
- ✓ Repeating your instructions using slow, simple English, and having them repeat back your instructions in their own words.

---

| Inmate Signature | Date | Trainer Name (Printed) | Trainer Signature | Date |



## TRAINING MODULE IV – Reading and Writing Assistance

### OVERVIEW
Staff may identify and assign you as a skilled worker who can assist with reading or writing. These workers require an education equivalency to the 9th grade. These inmates may also perform physical duties such as pushing wheelchairs and guiding inmates.

### GUIDELINES
You will only assist with reading and writing correspondence, request slips, and other CDCR forms outlined below, as provided by the inmate and the forms that are approved by staff. **(You shall NOT access CDCR and legal correspondence unless the inmate consents and staff approves)**

### COMMON CDCR FORMS

| | |
|---|---|
| Form 22 | Used to request an item, interview, or service. Inmates are encouraged to utilize these for requesting assistance. |
| Form 1824 | Used to request a reasonable accommodation for access to programs, services, and activities. |
| Form 602-1 | Used to file a grievance regarding any condition an inmate feels is adversely affecting their welfare while in the custody of CDCR. |
| Form 602HC | Used to file a complaint or grievance regarding health care decisions, actions or policies. |
| Form 7362 | Used to request Medical, Dental, and/or Mental Health services. |
| Institution Request Slips | Various Request slips are used by institutions for laundry, supplies, etc. |

_____    _____    _____    _____    _____
Inmate Signature                 Date                Trainer Name (Printed)            Trainer Signature                 Date



## TRAINING MODULE V – Escorting and Guiding

**OVERVIEW**

As identified in general duties, you may be assigned to provide assistance to an inmate by way of pushing a wheelchair and/or guiding them from one location to another.

**GUIDELINES**

Escorting or guiding entails providing assistance to facilitate a change of location. You are not required to lift an inmate into a wheelchair.  Below are specific steps to follow for escorting.

**WHEELCHAIRS**

- Always make sure the brake is set when the wheelchair is in a stationary position. When applying or releasing the brake, brace your opposite hand onto something for stability.
- Always push rather than pull the wheelchair, whenever possible.
- When going over small bumps on a floor transition, a threshold or into/out of an elevator, use downward force on the back of the chair to ease pressure on the front.
- Make sure the inmate's feet are on the foot rests to prevent dragging and possible injury, as well as allow the caregiver to easily move the wheelchair.
- Be careful not to hang heavy bags or other objects on the back of the chair as this can cause the chair to become unbalanced (or tilt backwards), especially on wheelchairs for smaller adults and children.
- Always back down slowly when descending slopes and ramps.  Never hold the wheelchair from the front.
- Always make sure there is a clear pathway.
- In the event of an emergency, you may have to utilize stairs to evacuate the client.

Up/Backward:
1. Assistant pulls backwards and upwards.
2. Wheelchair user can assist by pulling the push rims backwards.



Down/Forward:
1. Tilt the wheelchair on back wheels.
2. Assistant lets the back wheels slowly roll down one step at a time.
3. Wheelchair user can assist by controlling the push rims.
4. An extra person can hold the front.

**GUIDING VISION IMPAIRED INMATES**

- Do not take hold of a guide cane if used.  Breaking their concentration is dangerous.
- Be precise in directions, *"Go straight ahead about 100 steps,"* instead of *"Go over there."*
- Ask which side they'd like to be guided on or stand on the opposite side of their cane.
- Let them take your arm above the elbow (straight or bent); have them walk a half pace behind you following your movements up or down steps and around obstacles.
- Keep your arm close to your body so they can follow your movements.
- Before stepping off or onto a curb or stairs, pause and tell them it's about to happen.
- When leaving them, let them know you are leaving.

_____     _____     _____     _____     _____
Inmate Signature              Date               Trainer Name (Printed)              Trainer Signature                    Date



## TRAINING MODULE VI – Emergency Evacuation

**OVERVIEW**
Inmates with disabilities may require special assistance during an evacuation.

**SPECIFICS**
Should staff assess that it is safe to do so, you may be asked to assist with evacuating an inmate during various emergencies.  Individuals with disabilities are the most familiar with their need for assistance during an evacuation.  The following procedure is to be adhered to by inmate workers:

1.  If staff requests your assistance, and for any reason you are unable to assist, notify the staff requesting your assistance.
2.  If able to assist, follow specific instructions given by staff as to what assistance is needed for which inmate, and where they are.
3.  Perform your duties as instructed as to not risk your own personal safety.
4.  Inform staff if you are unable to perform what is asked; follow all future instructions; and report to where you are told to go, where all other inmates were directed, or where the posted evacuation plan or exit signs are.

_____     _____     _____     _____     _____
Inmate Signature          Date          Trainer Name (Printed)          Trainer Signature          Date

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date      :

To        :    Custody Captain

Subject :    **REQUEST FOR SIGHTLESS OPERATION LOCK**

The purpose of this memorandum is to request a sightless operation lock.   Due to the inmate's Disability Placement Program (DPP) status, it is necessary for him to have a sightless operation lock. Below is the inmate's information:

Inmate's Name _____

Inmate's CDC# _____

DPP  Code _____

Housing _____

Requestor's Name _____ Extension _____

If there are any questions regarding the use of these locks, please contact J. Prud'homme, AW-ADA Coordinator, at extension 7516.


(Requestor's Name)
(Requestor's Work Unit)

APPROVED/DISAPPROVED


Associate Warden ADA Coordinator


APPROVED/DISAPPROVED


Custody Captain
California Substance Abuse Treatment Facility and State Prison at Corcoran

ATTACHEMNT G

## CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY
### DIRECT FROM VENDOR-
### SPECIAL PURCHASE ORDER FORM
## MEDICAL/ADA ORDERS

THE BELOW LISTED ITEMS ARE TO BE SHIPPED TO:

NAME _____

CDCR NUMBER _____

HOUSING _____

CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY
900 QUEBEC AVE
CORCORAN, CA 93212

APPROVAL DATE: _____

NOTE:  THE BELOW LISTED ITEMS MUST BE
SHIPPED WITHIN 90 DAYS OF APPROVAL DATE:
ITEMS SHIPPED AFTER 90 DAYS OF APPROVAL
DATE WILL BE RETURNED TO THE SENDER AT
THE INMATE'S EXPENSE, DESTROYED OR DONATED.

| PAGE # | CATALOG # | QUANTITY | NAME OF ITEM | COLOR | SIZE | ITEM PRICE |
|--------|-----------|----------|--------------|-------|------|------------|
|        |           |          |              |       |      |            |
|        |           |          |              |       |      |            |
|        |           |          |              |       |      |            |
|        |           |          |              |       |      |            |
|        |           |          | SUBTOTAL     |       |      |            |
|        |           |          | TAX 8%       |       |      |            |
|        |           |          | SHIPPING & HANDLING |  |      |            |
|        |           |          | TOTAL TO VENDOR |   |      |            |

APPROVED / DISAPPROVED _____

(PRINT AND SIGN NAME)
CUSTODY CAPTAIN OR ADA COORDINATOR
*MUST HAVE SIGNATURE TO VERIFY THIS IS A MEDICAL ISSUE

NAME OF SENDING VENDOR

_____

_____

_____

WEBSITE: _____    _____

NAME OF PARTY PURCHASING FOR INMATE

PHONE #_____

BY SIGNING BELOW, I UNDERSTAND THAT THE ABOVE LISTED ITEMS MUST BE SHIPPED DIRECTLY FROM THE ABOVE LISTED VENDOR *ONLY.*  THAT IT IS MY RESPONSIBILITY TO INFORM THE PARTY MAKING THE PURCHASE FOR ME OF THE CORRECT PROCEDURES FOR PURCHASING THE ABOVE ITEMS.  I UNDERSTAND THAT IF MY PRIVILEGE GROUP CHANGES PRIOR TO RECEIVING THIS ORDER, THE ITEMS WILL BE RETURNED TO SENDER.  I FURTHER UNDERSTAND THAT ALL ITEMS SENT FROM THE VENDOR MUST FALL UNDER THE GUIDELINES OF DOM 54030.  ALL ITEMS NOT IN COMPLIANCE WILL EITHER BE SHIPPED BACK TO THE SENDER AT THE INMATE'S EXPENSE, DESTROYED OR DONATED.

_____    _____

INMATE'S SIGNATURE                              DATE

*PLACE ORDER BY:  SENDING THIS FORM AND SOURCE OF PAYMENT TO VENDOR, PHONE ORDER TO VENDOR OR USE VENDOR'S INTERNET WEB-SITE.*

Attachment H

**STATE OF CALIFORNIA**                                    **DEPARTMENT OF CORRECTIONS AND REHABILITATION**
                                                           **CDC-128B (Rev. 4/74)**

# CDCR 128B GENERAL CHRONO
# DURABLE MEDICAL EQUIPMENT TRANSFER INVENTORY

On this date, inmate _____ CDCR # _____, was moved from Facility _____ to _____. After verification through Strategic Offender Management System (SOMS), SOMS Oracle Reporting, and an inventory of the Durable Medical Equipment (DME) in the inmate's possession, the following DME were transferred with the inmate to the receiving facility:

☐ **NO APPLIANCES**          ☐ Brace _____        ☐ Cane __Wooden__Blind
☐ Bi-Pap Machine             ☐ Crutches                    ☐ Vision Vest
☐ Dressing/Catheter/Colostomy Supplies   ☐ Oxygen Concentrator    ☐ Wheelchair
☐ Hearing Aid                ☐ Hearing Vest                ☐ Wheelchair Gloves
☐ Eyeglasses (Prescription)  ☐ Shoes/Boots (Orthotic)      ☐ Limb/Prosthesis/Orthotics
☐ Mobility Vest              ☐ Walker                      ☐ Pocket Talker
☐ Burn Garments              ☐ C-PAP Machine & Supplies     ☐ Diabetic Supplies
☐ Helmet                     ☐ Wheelchair cushion          ☐ Batteries for hearing aids

☐ Other – specify _____

Discrepancies/Missing/Comments: _____

_____

_____          _____
Sending Facility  Print/Sign                Date

_____          _____
Receiving Facility  Print/Sign              Date

**I ACKNOWLEDGE THAT THE ABOVE INFORMATION IS ACCURATE**

_____          _____
Inmate Name CDCR# Print/Sign                Date

**Distribution:**  Case Records
                   Sending Facility
                   Receiving Facility
                   Health Information Management
                   Inmate

**Attachment I**

### HEALTH CARE APPLIANCE MONTHLY INSPECTION LOG
Month of Inspection_____ Year _____ Facility _____ Building _____

| Date | Name | CDC# | Housing | Type of Appliance(s) | In Inmate's Possession? Y/N | Condition of Appliance (Comments) | Replacement Necessary? Disposition (Comments) | Wheelchair/Walker Bag in Possession? Y/N |
|------|------|------|---------|---------------------|-----------------------------|-----------------------------------|----------------------------------------------|------------------------------------------|
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |
|      |      |      |         |                     |                             |                                   |                                              |                                          |

_____    _____    _____    _____    _____    _____
Print Name                              Sign Name                                   Date                    Supervisor's Name                        Supervisor's Signature            Date
(Person Performing Inspection)                                                                              (Print)


This form shall be forwarded to the ADA Associate Warden (Complex II) for review and disposition by the 5th and **20th** of each month per OP 403.

# SATF WHEELCHAIR REPAIR FORM

**ALL FIELDS BELOW MUST BE COMPLETED BY NURSING STAFF**

| Date Repair Requested: _____ | Date Custody was Notified: _____ |
|---|---|

*Once Custody is notified, this request and wheelchair is expected in the WC Shop within 2 days.*

Facility/Yard: _____    Name and Title of Medical Staff*:* _____

Inmate's Name: _____ CDCR #: _____

Control # *(Five –Digit Number)* _____

Serial #: _____ Model & Size: _____

---

**REPAIRS BEING REQUESTED**

**Wheels** *(FRONT)*:  Replace/Fix/Adjustment          **Wheels** *(BACK)*:  Replace/Fix /Adjustment
Comments: _____

**Brakes** *(RIGHT SIDE)*:  Replace/Fix/Adjustment        **Brakes** *(LEFT SIDE)*: Replace/Fix/Adjustment
Comments: _____

**Upholstery**:  Replace-Arm Cover/Seat Cover/Back Side Cover
Comments: _____

**Miscellaneous**: _____

---

**LOANER ROLLATOR INFORMATION**

Control#: _____

Loaner Serial #: _____ Model & Size: _____

Date Issued to Inmate: _____ Signature of Inmate: _____

Nurse/Officer Issuing Wheelchair (print name): _____

Staff Signature: _____ Date: _____

---

**TO BE COMPLETED BY WHEELCHAIR SHOP**

| Date Wheelchair Shop Received: _____ | Date Delivered to Clinic: _____ |
|---|---|
| Initials: _____ | Initials: _____ |

*Revised Date: 06/2023*

# SATF ROLLATOR REPAIR FORM

**ALL FIELDS BELOW MUST BE COMPLETED BY NURSING STAFF**

| Date Repair Requested: _____ | Date Custody was Notified: _____ |
|---|---|

*Once Custody is notified, this request and rollator is expected in the WC Shop within 2 days.*

Facility/Yard: _____    Name and Title of Medical Staff: _____

Inmate's Name: _____ CDCR #: _____

Control # *(Five –Digit Number)* _____

Serial #: _____ Manufacturer: _____ Regular or Bariatric *(circle one)*

---

### REPAIRS BEING REQUESTED

**Wheels** *(FRONT)*:  Replace/Fix/Adjustment          **Wheels** *(BACK)*:  Replace/Fix /Adjustment
Comments: _____

**Brakes** *(RIGHT SIDE)*:  Replace/Fix/Adjustment      **Brakes** *(LEFT SIDE)*: Replace/Fix/Adjustment
Comments: _____

**Upholstery**:  Replace/Seat/Other: _____
Comments: _____

**Miscellaneous**: _____

---

### LOANER ROLLATOR INFORMATION
Control#: _____

Loaner Serial #: _____ Manufacturer & Model: _____

Date Issued to Inmate: _____ Signature of Inmate: _____

Nurse/Officer Issuing Rollator (print name): _____

Staff Signature: _____ Date: _____

---

**TO BE COMPLETED BY WHEELCHAIR SHOP**

| Date Wheelchair Shop Received: _____ | Date Delivered to Clinic: _____ |
|---|---|
| Initials: _____ | Initials: _____ |

*Revised Date: 06/2023*

Attachment K
Page _____ of Page _____

# WHEELCHAIR INSPECTION LOG

**MONTH:** _____     **YEAR** _____

**FACILITY:  A  B  C  D  E  F  G  STRH  CTC** (Circle Appropriate Facility)

| Name | CDC # | Housing | Date | Removable Foot Rests Yes/No | Removable Arm Rests Yes/No | Is Wheelchair Functioning Properly? Yes/No | If No, Please Explain | Wheelchair Bag in Possession? Yes/No | Disposition |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

_____     _____     _____
Name of Staff Conducting Audit                    Signature                                        Captain's Signature

Revised April 2021

| Delivering Staff Name | Staff Signature | Inmate Name CDCR Number | Wheelchair Model/Serial # | Description of Problem | Service*/Repairs/Parts Used | Date of Arrival | Date of Repair | Date of Return | Cost and Hours |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |

**\*Complete service and safety inspection are completed any time a wheelchair is brought to repair shop. This includes:  check for cracked frame, torn seats, torn back, torn armrest, cracked rims, worn tires, lube bearings, inspect footrests, adjust brakes, replace all worn/broken parts, replace broken/cracked frames, weld all tube openings for security purposes.**

WORK ORDER COORDINATOR LOG                          Attachment M

Facility _____Work Order Coordinator _____

| DATE | LOG NUMBER Fac-Yr-Mo-Number | LOCATION OF WORK | WORK REQUESTED | REQUESTED BY |
|------|------------------------------|------------------|----------------|--------------|
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |
|      |                              |                  |                |              |

Attachment N

# CAPTION PHONE/TDD TELEPHONE SIGN-UP LOG
### FACILITY _____
## Month _____    Year _____

| Date | Last Name (Printed) | CDC # | Housing | Start Time | Stop Time | Staff Name and Title (Printed) | Reason For No Call |
|------|---------------------|-------|---------|------------|-----------|-------------------------------|--------------------|
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |
|      |                     |       |         |            |           |                               |                    |

_____
Captain's Signature

_____
Captain's Signature

# CAPTION PHONE - TDD/TTY SIGN UP LOG

ATTACHMENT O

**Housing Unit:**_____    **Month/Year:**_____

| | Inmate Name | CDCR # | Requested Date | Requested Start Time |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |

Submit completed log to ADA Coordinator

State of California                                                    Department of Corrections and Rehabilitation

# Memorandum

Date:     **December 6, 2018**

To:       Associate Directors, Division of Adult Institutions
          Wardens
          Americans with Disabilities Act Coordinators

Subject:  **TELETYPEWRITER TELEPHONE CALL TESTING PROCESS**

The California Department of Corrections and Rehabilitation (CDCR) has an obligation to provide access to its programs, services, and activities for all inmates with disabilities, as required by the Americans with Disabilities Act (ADA), and the *Armstrong* and *Clark* Remedial Plans.

All CDCR institutions are required to have an operable Teletypewriter (TTY) telephone system for use by inmates with hearing and speech impairments, enabling him/her to type text messages. Attached are two options for staff to consider when developing a Local Operational Procedure (LOP) for testing the TTY calling system to ensure it is operational.

Wardens are to ensure their institution's LOP is updated to include the testing instructions, including the need to test the TTY telephone system at least quarterly, and email a proof of practice memorandum to the Class Action Management Unit (CAMU) mailbox, at "CDCR CAMU Mailbox" within 30 days of the date of this memorandum. A copy shall be submitted to your respective mission Associate Director.

If you have any questions, please contact Teauna Miranda, Captain, CAMU, at (916) 322-7599, or Georgia Johas-Darnell, Chief, CAMU, at (916) 322-6562.

JEFF MACOMBER
Director (A)
Division of Adult Institutions

Attachment

cc:  Connie Gipson
     Sandra Alfaro
     Kelly Mitchell
     Georgia Johas-Darnell
     Teauna Miranda
     Russa Boyd

## TELETYPEWRITER (TTY) TEST CALL Instructions

All institutions are required to have an operable Teletypewriter (TTY) telephone system for use by inmates with hearing and speech impairments, enabling him/her to type text messages.

Attached are two sets of instructions for staff to follow when testing the TTY calling system to ensure it is operational: **Option #1** and **Option #2**.

**Option #1** is for institutions with designated TTY/TDD telephones.  These institutions have been identified as:

- CCWF
- CHCF
- CIM
- CIW
- CMF
- COR
- DVI
- HDSP
- LAC
- MCSP
- NKSP
- RJD
- SATF
- SVSP

**Option #2** is for any institutions **not** listed in **Option #1** above.  These institutions will need to identify analog port extension numbers that may be used by the TTY/TDD machine.  These port extension numbers must be identified and submitted to Bruce Beltram, IT Specialist I, Offender Communications (Bruce.Beltram@cdcr.ca.gov) and Vaso Karras, IT Specialist I, Offender Communications (Vaso.Karras@cdcr.ca.gov) in order to ensure they are configured to work properly with the TTY/TDD machine.

Additionally, the steps listed may require modification due to the variance in TTY calling systems. Institutions that require alternative steps to test their TTY system shall ensure those steps are documented and available in their LOP, and shall include the designated analog ports.

## TELETYPEWRITER (TTY) TEST CALL Instructions

**OPTION #1:**

The following instructions shall be used when **testing** the TTY calling system to ensure it is operational.

Step 1:  **Prior to making a call to test the TTY calling system**, contact a Global Tel*Link (GTL) Representative, at **(844) 652-9202** or **cdcrsupportuser@gtl.net,** to inform GTL of the date and approximate time you intend to test the TTY system.

(Note: The test line is used for testing purposes only and is not regularly monitored.  If a quick turnaround time to conduct the test is desired, contact GTL by telephone.)

Step 2:  Power on the TTY device.

Step 3:  Press Ctrl-Shift-B to set the TTY device to "Baudot Only" mode.

Step 4:  Remove the handset from the inmate telephone and place the handset on the acoustic coupler on the TTY device.

Step 5:  Press "4" on the inmate telephone keypad to take the telephone into TTY mode.

Step 6:  When prompted on the TTY display, press "1" for English or "2" for Spanish on the inmate telephone keypad.

Step 7:  From the inmate telephone keypad, press Area Code + Telephone Number when prompted on the TTY display.  For purposes of this test, **call (916) 922-4846**.

**(Note: Be sure to complete Step 1 before placing the call to the test telephone number.)**

Step 8:  The TTY device display will say "Thank you for using Global Tel*Link, your call is being processed."

Step 9:  When the **TEST** called party answers.  The following prompt will be displayed to the caller and the called party text to text.  **THIS CALL WILL BE RECORDED AND MONITORED.  THIS CALL IS FROM AN INMATE AT** *(FACILITY NAME)*. **TO ACCEPT AND PAY FOR THIS CALL, DIAL "5" NOW**.  After the call is connected, you will be able to communicate to the called party using the TTY keypad.

Step 10:  When your call is completed, turn off the TTY device and return the telephone handset to the inmate/ward telephone.

**If you have trouble establishing a connection, call the telephone number in Step 1 and advise the GTL staff of the specific issue.  Note:  GTL's test TTY line serves multiple uses and may need to be reset to receive a TTY call.**

## TELETYPEWRITER (TTY) TEST CALL Instructions

**OPTION #2:**

The following instructions may be used when developing an LOP to **test** the TTY calling system to ensure it is operational.

Step 1:   Locate the designated **analog** telephone port extension to conduct the test.

Step 2:   Notify control that you will be conducting a test of the telephone line (for awareness in the event the telephone is temporarily unplugged, which could set off an alarm).

Step 3A:  Unplug the telephone line from the non-TTY analog telephone and plug the line into the TTY telephone.  Use the extra telephone line in the TTY bag to connect the TTY telephone to the non-TTY telephone.  (Note: Some TTY systems include a telephone handset; therefore, Step 4A can be skipped.)

Step 3B:  Use the AC adapter to plug in the TTY telephone and then turn the power on.  Ensure the TTY device is set to "Baudot Only" mode (Ctrl+Shift+B – Display will read "Baudot Only").

Step 4:   Place a call to the Hamilton Relay Service at (800) 855-7100 (English), or (800) 855-7200 (Spanish).  Remove the handset from the telephone.  Dial "9" to obtain an outside dial tone, then dial "1" followed by one of the above numbers.  Once you hear an audible tone, place the handset on the acoustic coupler on the TTY device and press the "space bar" on the TTY telephone.

Step 5:   Once you receive a response from Hamilton Relay Service, you can communicate using the TTY Typewriter.  For example, you can type: "This is a test to ensure our TTY telephone is working properly.  Can you read this text?"

Step 6:   Once you have established a connection and verified the TTY device is working properly, you may end the call.

Step 7:   When your call is completed, turn off the TTY device and return the telephone handset to the telephone.  Reconnect the telephone line to the non-TTY analog telephone.

**If you have trouble establishing a connection, notify the ADA Coordinator.  Note: Follow institution procedures for placing a TTY telephone call that involves an inmate.**

Attachment Q

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC 128-B

**NAME and NUMBER** _____     _____     **HOUSING**:

At approximately _____ hours on _____, Inmate _____, CDC #_____, Cell _____, refused to be relocated to a different housing assignment as his current dorm/pod/cell has a water leak. This inmate is an Armstrong Remedial Plan class member and acknowledges custody staff has afforded him the opportunity to relocate to a dry dorm/pod/cell however; he is refusing to be moved.

_____                    _____
Inmate Signature and CDCR number                    Facility Sergeant

ORIG  :  C-File
cc    :  UHR
         ADA Office

**DATE:**                              **REFUSAL TO BE RELOCATED**                    **CSATF-SP**

**REV 4/05**

ATTACHMENT R

| California Department of Corrections and Rehabilitation | | | | | |
|---|---|---|---|---|---|
| **DPP County Jail Tracking Log** | | | | | |
| **Institution Name:** _____ | | | **For The Month of:** _____ | | |
| Inmate Name | CDCR # | Out-to-Court Date | Jail/County | Out-to-Court Return Date | Comments |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Completed By** _____        **Title** _____

TRACKING LOG IS DUE BY THE 5TH OF EACH MONTH.  EACH COLUMN IS TO BE COMPLETED BEFORE SUBMITTAL.
INMATES MUST BE TRACKED EACH MONTH UNTIL RETURN FROM THE COUNTY.
ORIGINAL: ADA COORDINATOR | COPY: Email to CDCR.CAMU@cdcr.ca.gov

REV. 02/2019

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B

## NAME and NUMBER

I reviewed inmate_____(CDC#_____) C-File in accordance with the Armstrong v. Newsom Remedial Plan to identify the most recent change in the inmate's disability status for transition to parole. The C-File review revealed the following:

☐ CDC 1845     ☐ CDC 128C-1/CDC 128C-1A
☐ CDC 128C (Medical)     ☐ CDC 128C-2
☐ CDC 128C (MHSDS)     ☐ Other:
☐ CDC 128B (TABE Reading Score of 4.0 or Lower)     ☐ No Disability Related Documents

*Comments:* _____

_____

_____

*Print Name*        *Signature*        *Date*

**DATE:**        **INST:** _____

**GENERAL CHRONO**

### ADA DOCUMENTS FOR
### TRANSITION TO PAROLE

*Records Staff Only:  Mailed to_____ Parole Unit on:_____(date)*

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B

## NAME and NUMBER

I reviewed inmate_____(CDC#_____) C-File in accordance with the Armstrong v. Newsom Remedial Plan to identify the most recent change in the inmate's disability status for transition to parole. The C-File review revealed the following:

☐ CDC 1845     ☐ CDC 128C-1/CDC 128C-1A
☐ CDC 128C (Medical)     ☐ CDC 128C-2
☐ CDC 128C (MHSDS)     ☐ Other:
☐ CDC 128B (TABE Reading Score of 4.0 or Lower)     ☐ No Disability Related Documents

*Comments:* _____

_____

_____

*Print Name*        *Signature*        *Date*

**DATE:**        **INST:** _____

**GENERAL CHRONO**

### ADA DOCUMENTS FOR
### TRANSITION TO PAROLE

*Records Staff Only:  Mailed to_____ Parole Unit on:_____(date)*

State of California

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC 128-B

## NAME and NUMBER

I reviewed inmate_____(CDC#_____) C-File in accordance with the Armstrong v. Newsom Remedial Plan to identify the most recent change in the inmate's disability status for transition to parole. The C-File review revealed the following:

☐ CDC 1845     ☐ CDC 128C-1/CDC 128C-1A
☐ CDC 128C (Medical)     ☐ CDC 128C-2
☐ CDC 128C (MHSDS)     ☐ Other:
☐ CDC 128B (TABE Reading Score of 4.0 or Lower)     ☐ No Disability Related Documents

*Comments:* _____

_____

_____

*Print Name*        *Signature*        *Date*

**DATE:**        **INST:** _____

**GENERAL CHRONO**

### ADA DOCUMENTS FOR
### TRANSITION TO PAROLE

*Records Staff Only:  Mailed to_____ Parole Unit on:_____(date)*

Attachment T

State of California

Department of Corrections and Rehabilitation
Class Action Management Unit

# Memorandum

Date  :  (DATE)

To: (NAME)
ADA Coordinator

Subject:  **INQUIRY OF ALLEGED NON-COMPLIANCE REGARDING THE DISABILITY PLACEMENT PROGRAM/DEVELOPMENTAL DISABILITY PROGRAM POLICY (LOG#   )**

SUMMARIZE ALLEGED VIOLATION

Provide a summary of the allegation to include: the date and source of discovery, Inmate's name, CDCR number, DPP/DDP code, and the name and title of staff member(s), if known.

INQUIRY SUMMARY

Provide the date the inquiry was assigned.  Describe in detail what steps were taken during the inquiry in order to thoroughly investigate the allegation(s) and what source(s) of information were used (i.e., interview with the inmate, interviews with staff, documents that were reviewed, etc.).  Attach any supporting documentation.

Note 1:  An interview with the inmate who is the subject of the allegation is mandatory.

Note 2: Document how it was determined that effective communication (EC) was required (i.e., disability code requiring EC), what accommodation was provided and the determination of whether EC was achieved or not achieved.

FINDINGS

Provide a thorough and detailed written summary of the findings and the basis for findings.  Based on the findings of the inquiry, state whether the allegation is confirmed or not confirmed, and the specific information or evidence that supports your findings.

NOTE:  If an "unknown" staff member committed the alleged violation, the complete inquiry process should be followed, as the staff member(s) may be revealed through the inquiry process.  Should the staff member(s) remain "unknown," the findings may still be "confirmed" and appropriate action taken.  <u>DO NOT</u> take any employee corrective action prior to Hiring Authority review.

(NAME)
(Title of supervisor/manager conducting inquiry)



**Talking Book Library for the Blind**
**Fresno County Public Library**
**770 North San Pablo Avenue**
**Fresno CA 93728-3640**
**(559) 600-3217**
**Toll Free: 1-800-742-1011, Ext. 03217**
**tblb@fresnolibrary.org**

The Talking Book Library for the Blind (TBLB) is a branch of Fresno County Public Library which cooperates with the Library of Congress, National Library Service for the Blind and Print Disabled (NLS). The books and equipment are provided by NLS. Fresno's TBLB is a sub-regional library. It serves only these central California counties: Fresno, Kings, Madera, and Tulare. TBLB services are provided without charge to all eligible readers.

| Applicant's First Name | Initial | Last Name | | |
|---|---|---|---|---|
| Inmate's CDC #: | | | Date of Birth | Sex |
| Mailing Address | | | Bed # | |
| City | County | | State CA | Zip Code |
| Contact person: Name | | Telephone (    ) | | |

☐ Please check here if you have been honorably discharged from the Armed Forces of the United States. By law, preference in the lending of books and equipment is given to veterans.



## CONFIDENTIALITY

Records relating to recipients of NLS reading materials are confidential except for those portions defined by California State Law as public information. To find out the extent to which the information provided on this application form may be released to other individuals, institutions or agencies please consult TBLB. However, please keep in mind the fact that if you are in an institution at present, generally it is <u>necessary</u> for TBLB to share some information with representatives of that institution.

## ELIGIBILITY

The following people are eligible for service: residents of the United States, including territories, insular possessions, and the District of Columbia, and American citizens living abroad, provided they meet one of the following criteria:

1. An individual who is blind or has a visual impairment that makes them unable to comfortably read print books.
2. An individual who has a perceptual or reading disability.
3. An individual who has a physical disability that makes it hard to hold or manipulate a book or to focus or move the eyes as needed to read a print book.

Please see www.loc.gov/nls/about/eligibility-for-nls-services for the full eligibility terminology.

**2**



## Indicate the disability preventing you from reading standard printed material:

☐ Blindness           ☐ Deaf and Blindness

☐ Visual Disability      ☐ Physical Disability

☐ Reading Disability

| TO BE COMPLETED BY CERTIFYING AUTHORITY (See Page 2 for eligibility and certifying requirements) | | | |
|---|---|---|---|
| Name | | Title | |
| Email | | Phone Number ( ) | |
| Name of CDCR Facility | | | |
| Street Address | City | State CA | Zip Code |
| ☐ I certify that this applicant is eligible for NLS services. | | | |
| Signature | | Date | |
| **TO BE COMPLETED BY ADA COORDINATOR'S OFFICE** | | | |
| Name | | Title | |
| Signature | | Date | |

3



FRESNO COUNTY PUBLIC
LIBRARY

## BOOK, MAGAZINE, AND NEWSPAPER SERVICES

Check the types of services you want to receive:

☐ Books recorded on digital cartridges via mail (Includes the loan of a special digital player)

☐ Magazines on digital cartridges

☐ Braille books (Provided by California State Library, Braille and Talking Book Library, Sacramento California)

☐ Braille magazines

## RETURN OF TALKING BOOK PLAYERS

Talking book players and accessories are supplied to individuals on extended loan. If this equipment is not being used in conjunction with recorded reading material provided by the NLS and its cooperating libraries, it must be returned to the TBLB. An individual must borrow at least one book or magazine per year to maintain the service and retain the use of the player.

4



## READING PREFERENCES: CHECK A OR B

☐ A. Do not select books for me. send only specific titles that I request.

☐ B. I wish to have books selected for me.

**NOTE:** If you want books selected for you, the library needs information about your reading interests. Please check all the types of books or subjects you prefer.

## AGE RANGE:

☐ Adult Titles
☐ Young Adult Titles
☐ Children's Titles, Grade: ___

## SUBJECT CATEGORY:

☐ Adventure
☐ Bestsellers/ Fiction
☐ Bestsellers/ Nonfiction
☐ Biography
☐ Classics

☐ Cooking
☐ Gardening
☐ Historical Fiction
☐ History
☐ Mystery
☐ Politics
☐ Romance

☐ Science
☐ Science Fiction
☐ War/ Military
☐ Westerns
☐ Other:
_____

**5**


**LIBRARY**

## LANGUAGES:

I am interested in receiving books in languages other than English. Please specify other languages: _____

## DO NOT select the following for me: (check as many as apply)

- ☐ Books containing any descriptions of violence
- ☐ Books containing any explicit descriptions of sex
- ☐ Books containing any strong language
- ☐ Long books
- ☐ Adult reading level books
- ☐ Young adult books
- ☐ Juvenile books

**6**




## APPLICANT AGREEMENT

Talking book players and accessories are federal property and are supplied to individuals on extended loan. If equipment is not being used in conjunction with recorded reading material provided by NLS, it must be returned to TBLB. Additionally, when an inmate paroles, the talking book player should be returned to TBLB.

As part of TBLB service, it is the responsibility of the library user to:

1. Take reasonable care of books and players.

2. Not loan books or players to other individuals or institutions.

3. Notify TBLB of address changes or players needing repair.

4. Return talking book players to TBLB when needing repair or recalled by the library.

5. Return books within the established 5-week loan period.

I understand that to retain the use of the player provided, I must borrow at least one book or magazine a year from TBLB.

I understand that failure to return books in a timely manner may result in suspension and/or cancellation of service.

| Signature of Applicant |
| --- |
|  |

**Revised 6/21**

**7**



(Fold application in half, staple once/lightly tape, and mail; no postage due)

**Talking Book Library for the Blind**
**770 North San Pablo Avenue**
**Fresno CA 93728-3640**

**Free Matter for the**
**Blind Or Handicapped**

**Talking Book Library for the Blind**
**770 North San Pablo Avenue**
**Fresno CA 93728-3640**

**8**

State of California

Department of Corrections and Rehabilitation
CDC-128-B

**No:**                                    **Name:**

On _____, The SATF ADAC Office provided Inmate _____, _____ with temporary use of the following items to assist him in listening to his BPH transcripts:

1 – Verbatim CD-R disk, Part 1,
1 – Verbatim CD-R disk, Part 2,
1 – Set of KOSS CL5 ADA Headphones,
1 – Urban Outfitters Clear ADA CD Player # 0736
2 – AA batteries

By signing below, Inmate _____ acknowledges the following:

   Upon receipt of each of the above items,

- All of the above items received by the inmate are functioning and in working order.
- All of the above items are on a LOAN ONLY BASIS to the inmate, and will be collected by the ADAC Office within 5 calendar days upon date of receipt.
- All of the above items must be returned to the ADAC Office in the same condition as received by the inmate.
- The inmate assumes full responsibility for any damage, misuse or loss of any of the above listed items.


_____          _____
 Inmate Signature/CDCR Number

                                              Correctional Counselor I

cc:    Inmate                                                          SATF
       C-File                                                          Date:

**(INFORMATION – USE OF ADA HEADPHONES FOR BPH AUDIO TRANSCRIPTS)**

Attachment W

## SATF Library – Facility _____ for the months of _____
### Weekly operational check of Assistive Devices

| Week Of: | Checked by: | Date of check: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| Week Of: | Checked by: | Date of check: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| Week Of: | Checked by: | Date of check: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| Week Of: | Checked by: | Date of check: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

*If the device is not working, contact the AP over libraries

ATTACHMENT X

# If you need help using the assistive equipment, please speak to the library clerks.

# If assistive equipment is not working properly, please inform library staff.

# DaVinci Pro Quick Start Guide



## *Quick Start*

## DaVinci Pro



**Swivel camera head to change viewing target**

**Tap: Power on/standby Press & hold: Power off**

**Changes color contrast**

**Push to toggle between OCR & CCTV modes. This is the _only_ way to toggle between OCR & CCTV modes.**

**Turn knob to change magnification +/-**

# DaVinci Pro Quick Start Guide

## Basic Mode

### Easy to Use

CCTV mode: Press to find/locate
OCR mode: Press to scan/capture

CCTV & OCR modes:
Rotate for
magnification +/-

CCTV mode:
Brightness
OCR mode:
Pause/play

CCTV & OCR
modes: Change
color mode

CCTV & OCR
modes:
Volume

CCTV mode:
Lines & windows
OCR mode:
Reading speed



# DaVinci Pro Quick Start Guide

## Advanced Mode

### Feature Rich



CCTV mode:
Find/locate

CCTV & OCR modes:
Magnification +/-

CCTV mode:
Brightness
OCR mode:
Pause/Play

CCTV & OCR modes:
Change color mode

CCTV mode:
Markers
OCR mode:
Reading speed

CCTV & OCR modes:
Volume

OCR mode:
Pause/Play

OCR mode:
Press for OCR
scan/capture

OCR mode:
Save an image

CCTV & OCR
modes: Enter
library

OCR mode:
Next/previous zone or
Next/previous line

# DaVinci Pro Quick Start Guide

## Tips and Tricks

### Quick Tips

Toggle between CCTV & OCR mode by pressing the center button on the front panel of DaVinci Pro.



Remove console cover to switch between Basic and Advanced mode.



Configure menu options by pressing Mode Up & Find (center console button).



The figure to the right shows the display and camera adjustments you can make to Davinci Pro for optimal viewing.









ATTACHMENT X



# If you need help using the assistive equipment, please speak to the library clerks.

# If assistive equipment is not working properly, please inform library staff.

# DaVinci Pro Quick Start Guide



## *Quick Start*
# DaVinci Pro



Swivel camera head to change viewing target

Tap: Power on/standby
Press & hold: Power off

Changes color contrast

Push to toggle between OCR & CCTV modes. This is the <u>only</u> way to toggle between OCR & CCTV modes.

Turn knob to change magnification +/-

# DaVinci Pro Quick Start Guide

## Basic Mode

### Easy to Use

CCTV mode: Press to find/locate
OCR mode: Press to scan/capture

CCTV & OCR modes:
Rotate for
magnification +/-

CCTV mode:
Brightness
OCR mode:
Pause/play

CCTV & OCR
modes: Change
color mode

CCTV & OCR
modes:
Volume

CCTV mode:
Lines & windows
OCR mode:
Reading speed



# DaVinci Pro Quick Start Guide

## Advanced Mode

### Feature Rich



CCTV mode:
Find/locate

CCTV & OCR modes:
Magnification +/-

CCTV mode:
Brightness
OCR mode:
Pause/Play

CCTV & OCR modes:
Change color mode

CCTV & OCR modes:
Volume

CCTV mode:
Markers
OCR mode:
Reading speed

OCR mode:
Pause/Play

OCR mode:
Press for OCR
scan/capture

OCR mode:
Save an image

CCTV & OCR
modes: Enter
library

OCR mode:
Next/previous zone or
Next/previous line

# DaVinci Pro Quick Start Guide

## Tips and Tricks

### Quick Tips

Toggle between CCTV & OCR mode by pressing the center button on the front panel of DaVinci Pro.



Remove console cover to switch between Basic and Advanced mode.



Configure menu options by pressing Mode Up & Find (center console button).



The figure to the right shows the display and camera adjustments you can make to Davinci Pro for optimal viewing.







enhanced vision®

QSG-1500-00 X3    July 2020

**enhanced vision**

LIGHT    MODE    SIZE    POWER

**Brightness**

BRIGHTNESS

**Light**

**Power**

## Mode
**Black & White Mode**

**Color Select** 28 programmable color combinations

**Magnification Dial**

**Merlin Control Console**

Zoom

(2)

−    +

(1) Brightness

(3) Mode

☀    ◑

(4) Find

(5) OCR / Capture

(6) Volume

(7) OCR Speed Markers

Merlin elite provides crystal clear pictures and text-to-speech. Read any printed text aloud with the push of a button.

# Using the Merlin

(8) Previous Sentence

(9) Next Sentence

(10) Save

(11) Play /Pause

(12) Library (Recall)

Exhibit 75

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

**Policy 22/028**

Date  :  August 22, 2022

Operational Procedure 526,
Statewide Kiosk and Tablet Program

To  :  All Staff

Subject:  **OPERATIONAL PROCEDURE 526 - STATEWIDE KIOSK AND TABLET PROGRAM**

The purpose of this memorandum is to announce the following amendments to Operations Procedure (OP) 526, Statewide Kiosk and Tablet Program. This policy shall remain in effect until incorporated into the next annual revision.

## Deletions/Additions

### V. Security Protocols.

Tablets are to be utilized within the inmate's respective housing unit only. Tablets shall not be allowed outside of the inmate's assigned housing unit (i.e. yard/work/education/clinic/etc.).

Should you have any questions, please contact Associate Warden of Central Services and Complex II at extension 7251.

T. CISNEROS
Warden
California Substance Abuse Treatment Facility and State Prison at Corcoran

* CDC 1617 (3/89)

State of California                                              Department of Corrections and Rehabilitation

# **Memorandum**

Date    :    June 8, 2022

To      :    All Staff

Subject :    **OPERATIONAL PROCEDURE 526 – STATEWIDE KIOSK TABLET PROGRAM**

The purpose of this memorandum is to announce Operational Procedure 526, Statewide Kiosk Tablet Program is a new procedure and shall be read in its entirety.

Ensure this information is disseminated to all institutional staff. Should you have any questions, please contact the Associate Warden of Central Services at extension 7251.

T. CISNEROS
Warden
California Substance Abuse Treatment Facility and State Prison at Corcoran

New: _____May 2022_____
Reviewed: _____
Annual Revision Month: __May__

## CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND STATE PRISON
Corcoran, California

Operational Procedure (OP)

### I.    PLAN TITLE AND NUMBER

A.    Statewide Kiosk Tablet Program

B.    OP – 526

### II.    PURPOSE AND OBJECTIVES

The purpose of this OP is to enhance communications, technology access, and family connections for the incarcerated population in state prisons, the California Department of Technology (CDT), in partnership with the California Department of Corrections and Rehabilitation (CDCR) has entered into a contract with Global Tel*Link Corporation (GTL). The contract aims to increase access to new and existing services to innovative rehabilitative opportunities. This six-year contract covers many aspects of communications technology, including expanding access to tablets and kiosks for the entire incarcerated population.

The procedure is written to provide clear direction and guidelines for the scheduling, use, and monitoring of the inmate kiosk and tablet systems.

### III.    REFERENCES

A. California Code of Regulations, Title 15, Sections 3006, 3135, 3282.

### IV.    APPROVALS AND REVIEW

1. This operations procedure, and any modifications or inclusions, must have the approval of the Warden annually in the month of May.

2. This operations procedure will be reviewed each May by the Associate Warden, Central Services, and submitted to the Warden for final approval.

### V.    SECURITY PROTOCOLS

The Investigative Services Unit (ISU) and/or Custody Captain and above will have full access to the Vendor-Hosted Secured Network Portal to perform a variety of tasks associated with administering, monitoring, and/or overseeing the kiosk and tablet systems, including, but not limited to:

Granting and/or denying inmates and/or their family/friends access to any kiosk and tablet systems services based on California Code of Regulations (CCR), Title 15, Sections 3006 Contraband or 3135 Disturbing or Offensive Correspondence.

Prior to implementation, the institution will provide the vendor with the names and email addresses of staff authorized to access the GTL Command Center. Authorized staff will be provided with the appropriate permissions and login information, sent via email, and will be able to access the GTL Command Center through Housing Unit Computers.

Subsequent to implementation, authorized staff requiring permissions to access the GTL Command Center will be required to submit a remedy ticket to EIS. EIS will create the account and send one email with the login information and a second unrelated email (not replied/forwarded) with the temporary password.

## VI.    INFRASTRUCTURE

GTL will provide all equipment, infrastructure, hardware, and software. GTL will provide all maintenance and operational support for the entire term of the contract.

GTL is responsible for the maintenance, service, and repairs of the inmate kiosks and docking stations. If intentional damage occurs to a kiosk or docking station by an inmate, CDCR will make every effort to identify the inmate(s) responsible and seek compensation for damages under provisions outlined in CCR, Title 15, Section 3011, Property. In the event CDCR is unable to identify the person(s) and/or obtain compensation, GTL will be responsible for the repair or replacement of the damaged item at no cost to CDCR.

## VII.   STATEWIDE KIOSK AND TABLET DEFINITION

The tablets are owned by GTL and are loaned to the inmate. The tablets are offered in one size, 8 inches. Designed to work over a secure wireless network, hardened tablets provide the CDCR with a high degree of control over content and use. The clear-bodied devices, which allow staff to ensure contraband has not been concealed within the device, are also temperature and impact resistant, and designed to withstand heavy usage in a correctional environment. Administrators can select individual or total functionality of the system to be turned on and off at any time, providing staff with control of inmates' tablet use and content.

Kiosks will be placed in all housing units, where incarcerated people can access approved applications, entertainment, and educational materials.

The kiosk and tablet systems include the following services:

1. Inmate Secured Message Communications (Inbound and/or Outbound)

   a. The contractor's secured message service provides an unprecedented degree of control over outbound and inbound correspondence. Every outbound and inbound secured message and photo attachment can be closely monitored to prevent contraband images and communications that violate CDCR rules and regulations from reaching an inmate. The emails provide CDCR with marked reduction in traditional mail and contraband introduction.

2. Inmate Electronic Correspondence (Inbound)

   a. The contractor will provide CDCR a printer and paper at no cost. The printer will be placed in the mailroom and will only be used for incoming communication. When an electronic correspondence is received, mailroom staff shall be responsible for forwarding the correspondence to the inmate using already established mail procedures.

3. Media and Media Distribution

   a. Video Clips – Inbound only (30-second video clip)

   b. Prepackaged E-cards (e.g., birthday, holiday, etc.) (Inbound/Outbound)

   c. Pre-Approved Movies - per Department Operations Manual (DOM), Section 54100.28, states in part, "*Movies/videos that have been given a rating of other than "G," "PG," or "PG-13" by the Motion Picture Association of America are not approved for either general inmate viewing or for viewing within institutional classrooms…*"

   d. Pre-Approved Reading Materials – The eBook library includes books from large and independent publishers in genres including, classics, educational material, history, and religious study. Only vendor eBooks may be viewed on the tablet.

   e. Pre-approved games – Games will automatically be screened out for content that may promote violence or is offensive in nature.

   f. Music Purchases where inmates can select from a catalog of more than 10 million tracks entirely free of explicit lyrics.

   g. A library of free eBooks and games is available, as well as materials for purchase. For a monthly subscription fee ($1.99-$7.99), users can stream movies and music, and FM radio is available at no cost. Podcasts, audio books, sports, streaming media, and internet radio are also available for subscriptions ranging from 75 cents to $5.49 monthly.

4. Inmate Printing Services

   Standardized and Braille printing options shall be available.

5. Telephone Services

6. Video Calling

GTL Offender Tablet Services

1. Content Upload (Information Content)

   a. Provide the capability for CDCR to download and update CDCR Policies, Rules, Regulations, Operating Procedures, Manuals, and Information for the offenders to access electronically via the offender kiosk and tablet.

   b. Support a variety of formats, such as PDFs, videos, sound clips, slide shows, etc.

   c. Storage and distribution for the offender information documents will be provided by the contractor.

2. Grievance Submission and Management (Optional feature)

   a. Appeals/Grievance services shall allow the offender to submit the Appeals/Grievances electronically via the kiosk and tablet.

   b. Interface with CDCR's Appeals/Grievance solutions at no cost.

   c. CDCR staff to screen, review, and accept or reject the Appeal/Grievance without having the print the Appeals/Grievances form.

   d. CDCR staff to electronically notify the offenders if the Appeal/Grievance is accepted or rejected.

   e. Offender to receive an electronic confirmation immediately upon successful submission of the Appeal/Grievance via the kiosk and tablet.

   f. Offender to receive an electronic confirmation immediately upon successful submission of the Appeal/Grievance via the kiosk and tablet.

   g. Offender will have the ability to view the response from the CDCR staff on the kiosk and tablet and submit the Appeals/Grievance for second or third level review without having to recreate the request.

3. Health Care Services Request (Optional feature)

a. Allow the offender to complete and submit requests for health care services using an electronic form on the kiosk and tablet.

b. Pre-populate field on the form based on the offender's login account.

c. Ensure that all required field are filled out prior to offender submitting form.

d. Send form electronically to appropriate health care staff for review and processing.

e. Communications between offender patients and health care staff through electronic correspondence and notifications.

f. Ability to record and transmit e-signatures.

4. Legal Transcripts and/or Court Case File Reviews

a. Offender ability to have read access to Law Library content via the kiosk and tablet.

b. Allow the legal research provider to place its legal research resources on a contractor repository where offenders can access through the kiosk and tablet at no additional cost to the CDCR, and at no cost to offenders, or the legal research provider.

c. Ability to record and track each offender's access to the Law Library to verify access for legal purposes and appeal issues.

d. Capability to request printed copies of legal documents as done today or via a request sent from the offender's kiosk and tablet.

5. Other Additional Features

a. Incarcerated individuals will receive five free message credits per week, and will receive 75 minutes of free calling every two weeks.

## VIII. PROCEDURE

1. Distributing tablets

a. EIS will work with GTL to ensure the inmate population is provided a tablet. GTL is responsible for the issuance of all tablets, and will provide the inmate with the Tablet User Agreement Form. The Tablet User Agreement Form will be attached to the inmates' Property Card, and the GTL Master List (on date of issuance) will be stored in the Custody Captain's Office.

Statewide Kiosk and Tablet Program OP – 526
Page 6 of 10

    b. If an inmate arrives to an institution after the initial deployment of tablets, the inmate is to make a request for a tablet via Kiosk.  Once GTL's technician receives the request, the technician will notify the inmate of receipt of request, and be responsible for the issuance of the tablet.

          i. Inmates in the General Population will create an account through GTL, and access their tablet via a Personal Identification Number (PIN).

          ii. Inmates in the Reception Center will receive a loaner tablet with limited content.  Tablets will be distributed and collected at the discretion of the Warden to inmates in the Reception Center.  Tablets will be charged on a charging cart each day.

          iii. Inmates in Privilege Group C will be restricted to specific content on their tablet, and will not be permitted to purchase additional content, receive or send electronic mail, place phone calls from their tablet, or make video calls.  Allowable content is limited to pre-approved books, pre-approved games, and CDCR Policies, Rules, Regulations, Operating Procedures, Manuals, and other approved Departmental content.

          iv. Inmates in Restrictive Housing (e.g. Administrative Segregation Unit (ASU), Security Housing Unit (SHU), Psychiatric Services Unit (PSU), Long Term Restricted Housing (LTRH), (Short Term Restricted Housing (STRH), and Restricted Custody General Population (RCGP)) will be restricted to specific content on their tablet, and will not be permitted to purchase additional content, receive or send electronic mail, place phone calls from their tablet, or make video calls.  Allowable content is limited to pre-approved books, pre-approved games, and CDCR Policies, Rules, Regulations, Operating Procedures, Manuals, and other approved Departmental content.

    c. Upon transfer to another prison, the tablet will be returned to Receiving and Release.  If the inmate is transferred to a prison where the Kiosk and Tablet Program is approved, the inmate will be provided a GTL tablet at the receiving institution.

    d. Inmates who are temporarily out-to-court or at an outside health care facility shall retain their tablet in their personal property at the prison.  Once the inmate returns to the facility where the tablet is approved, the tablet may be returned to the inmate.

    e. When inmates are placed in Privilege Group C or rehoused in Restrictive Housing (e.g. ASU, SHU, PSU, LTRH, STRH, and RCGP), the Facility

Statewide Kiosk and Tablet Program OP – 526
Page 7 of 10

Lieutenant shall ensure the inmate's tablet is restricted to permissible content.

f. Intentional damage to a tablet owned by GTL shall result in the issuance of a Rules Violation Report. In addition, the inmate may be required to reimburse GTL for the cost of replacing the tablet.

2. Censoring of electronic communications

a. When receiving electronic communications there is a possibility it may not be delivered due to security purposes or other reasons. If this occurs, user will receive a response from GTL stating the mail was not delivered. The reasons for emails to be screened and/or disapproved are referenced in CCR, Title 15, Section 3135, which includes:

i. Section 3135 (c) (8), "*Describes the making of any weapon, explosive, poison, or destructive device.*"

ii. Section 3135(d), "*Inmates shall not possess or have under their control obscene material and/or mail containing information concerning where, how, or from whom obscene material may be obtained.*"

iii. Section 3135 (c) (14), "*Contains written materials or photographs that indicate an association with validated STG members or associates…*"

iv. Section (c) (7), "*Contains coded messages.*"

3. Process for reviewing and/or censoring electronic communications

a. The review, approval or recommended for disapproval of inbound photographs sent to the GTL Inbound "Review Queue" folders shall be reviewed by Investigative Services Unit (ISU) staff and Correctional Officers assigned to First Watch.

b. Authorized personnel shall be provided with a user name and password by GTL allowing them specific levels of access to the GTL website with the ability to review emails and photographs depending on their level of provisions. The authorized reviewer shall log onto the GTL review website and click on the "Work Queues" tab which will display Message and Photo Review hyperlinks. Authorized staff shall review the inbound photographs in the "Photo Review" folder and either approve, send to censored, or send to security by clicking in the associated hyperlink. Inbound text-only emails are not typically reviewed and may be printed immediately; nevertheless, ISU staff do have the ability to identify and flag specific inmates and customers for additional review of all electronic communications. When inmates or customers are flagged by ISU, any electronic communication will automatically be diverted to the "Pending Review" folder where it will need to be reviewed and approved prior to distribution.

Statewide Kiosk and Tablet Program OP – 526
Page 8 of 10

c. All disapproved electronic communication shall be processed in accordance with CCR, Title 15, Section 3006 (c) Contraband and/or CCR, Title 15, Section 3135 Disturbing or Offensive Correspondence and will be documented via the Notification of Disapproval for Mail/Package/Publications (CDCR Form 1819). The GTL Letter Identification number and GTL Customer Identification number shall be printed in the "list of items" section of the CDCR Form 1819. Additionally, an explanation shall be provided in the description section of the CDCR Form 1819. The CDCR Form 1819 shall be forwarded to a captain or above for determination and appropriate action.

d. Following the determination to disallow the email or photograph, the CDCR Form 1819 will be sent to the inmate where they can request we hold the correspondence or attachment pending appeal.

e. An inmate may file an appeal as it relates to the CCR, Title 15, Section 3137 (b), which states, *"Inmates shall use the established inmate appeal procedures as provided in section 3084, et seq. An inmate's submittal of an appeal within 30 calendar days of a notice that mail is being designated as undelivered will postpone any disposition of the mail until an appeal decision is made at the third level of appeal review."*

f. Family and friends who receive a notice that their email was disapproved/disallowed fall under CCR, Title 15, Section 3137 (c), which states, "Persons other than inmates should address any appeal relating to department policy and regulations to the Director of the Division of Adult Institutions (DAI). Appeals relating to a specific facility procedure or practice should be addressed in writing to the Warden, or Associate Director of the facility where the appeal issue arises. A written response shall be provided within15 working days. Appeals that are not satisfactorily resolved at this level may be forwarded in writing to the Director of the DAI who shall provide a written response within 20 working days."

g. Should the inmate or family appeal be granted, designated staff shall locate the correspondence in the censored folder and subsequently approve the correspondence. If the appeal remains denied, the correspondence will remain in the censored folder indefinitely.

4. Delivery of Electronic communication Service

a. A vendor provided printer will be placed in each prison mailroom.

b. When electronic correspondence is received and approved, mailroom staff shall be responsible to print and forward the correspondence to the inmate using established mail procedures. In order to print the electronic communication from the GTL site, mailroom staff must access the GTL site with their user name, login and password. The user must navigate to the "Print Queue" hyperlink through the "Work Queue" tab. From the "Print

Queue" hyperlink, all electronic communications can be printed in bulk or individually as needed.

5. Telephone calls made on the tablet or kiosk

    a. Kiosk weekly sign-up sheets will be maintained and logged weekly by staff in the unit.

    b. Sign-up sheets will only be accepted during program hours on Second and Third Watch.

    c. Inmates must present their identification card to sign up.

    d. Inmates may not sign up for a time slot during their work/training hours.

    e. Inmates may not place calls to victims, peace officers, or other persons who have made an official written request not to receive telephone calls. ISU can utilize the Command Center to block inmates from making phone calls to identified phone numbers.

6. Video Calling

    a. Video calling sign-up sheets will be maintained and logged weekly by staff in the unit.

    b. Sign-up sheets will only be accepted during program hours on Second and Third Watch.

    c. Inmates must present their identification card to sign up.

    d. Inmates may not sign up for a time slot during their work/training hours.

    e. Video calling may only be completed at the designated docking stations.

7. Termination of Kiosk and Tablet Sessions

    a. In the event of policy violations and/or prison emergencies, Correctional Officers can request a custody supervisor to temporarily terminate an inmate's use of the kiosk and tablet.

    b. The reason for the termination shall be documented using established disciplinary process rules and regulations.

    c. Staff who may need to have a kiosk or tablet disabled for reasons noted above will contact the Program Lieutenant or Watch Commander, who will then disable the kiosk or tablet via the GTL website.

    d. Staff with permissions to the Video Calling Services may live view and disconnect video calls to preserve the safety and security of the institution, and/or avoid the misuse of or damage to the tablet or kiosk.

8. Loss of Privileges

    a. Inmates shall not use another inmate's tablet, as possession of non-authorized property is considered possession of contraband under Title 15, Section 3006, Contraband. If the inmate is found to have

> violated this rule, disciplinary action will be initiated according to CCR, Title 15, Section 3312, Disciplinary Methods. Kiosk and tablet loss of privilege procedures shall be implemented using established disciplinary process guidelines.

b. The kiosk and tablet is to be added to the Strategic Offender Management System, Rules Violation Report (RVR) section, for a Senior Hearing Officer/Hearing Officer to be considered as a loss of privilege. The loss of privileges shall not preclude the inmate from possessing and utilizing the tablet for Education and other approved services as determined by the Warden.

c. Once the adjudicated RVR has been approved by the Chief Disciplinary Officer, either the Captain or Lieutenant (of the Facility) will sign on to GTL and suspend the inmate's account for the Loss of Privilege days given during the hearing. If suspension of the account results in the inability to access Education or other approved services as determined by the Warden, the SHO shall instead contact GTL to assist in the suspension of specific services.

## IX.  ATTACHMENTS

Attachment A – Revised Flagged Words List

## X.  APPROVAL

T. CISNEROS
Warden

6/23/22
DATE

State of California                                    Department of Corrections and Rehabilitation

# Memorandum

Date:      **JUN − 8 2022**

To:     Associate Directors, Division of Adult Institutions
        Jennifer Core, Warden (A), California Institution for Women
        Mike Pallares, Warden (A), Central California Women's Facility
        Rob St. Andre, Warden (A), High Desert State Prison
        Christian Pfeiffer, Warden, Kern Valley State Prison
  :     Theresa Cisneros, Warden, California Substance Abuse Treatment Facility

Subject: **TEMPORARY PROCEDURE FOR THE DISTRIBUTION OF VIAPATH TECHNOLOGY TABLETS AND THE COLLECTION OF JPAY TABLETS**

Beginning July 1, 2022, ViaPath Technology (VPT), formerly known as Global Tel-Link (GTL), will begin their deployment of inmate tablets at the California Institution for Women (CIW), Central California Women's Facility (CCWF), High Desert State Prison (HDSP), Kern Valley State Prison (KVSP), and California Substance Abuse Treatment Facility and State Prison, Corcoran (SATF).

The JPay contract is set to expire at midnight on June 30, 2022, and the Division of Enterprise Information Services (EIS) will be coordinating efforts with JPay on the collection of their tablets, kiosks, and other equipment.

The distribution of VPT tablets and collection of JPay tablets is anticipated to extend over several weeks, and the incarcerated population at the aforementioned institutions may be in possession of two inmate tablets temporarily until the JPay tablets can be collected.  As such, this memorandum serves to provide a 30-day grace period, between July 1–31, 2022, to the direction given in the Authorized Personal Property Schedule which states incarcerated persons are permitted one network capable or one non-network capable tablet.

If you have any questions, please contact Melanie Bruns, Captain, General Population Males Mission, at (916) 324-2758 or via email at Melanie.Bruns@cdcr.ca.gov.

ᒐm. E.

**M. E. SPEARMAN**
Associate Director
General Population Males Mission
Division of Adult Institutions

cc:  Connie Gipson          Melanie Bruns
     Kimberly Seibel        Erin Case
     Bryan Donahoo

Attachment A

| Revised Flagged Words List | | |
|---|---|---|
| 1x | señora | clavo |
| abuelo | shooting | digit |
| assault | skunk | feria |
| black | smack | Hadith |
| candy | snitch | hard candy |
| coke | tape | jale |
| crack | tar | la mano |
| crank | tax | mota |
| CVS | TD | Mujahid |
| drop off | tip | pedaso |
| eme | tobacco | Special K |
| escape | touchdown | Venmo |
| GD | toys | walmart |
| glass | transport | Western Union |
| goon | trees | zip |
| graduated | wax | |
| grass | weapon | |
| gun | weed | |
| heroin | señor | |
| horn | | |
| joint | | |
| marijuana | | |
| medicina | | |
| meth | | |
| mule | | |
| ounce | | |
| paypal | | |
| pickup | | |
| piece | | |
| primo | | |
| racks | | |
| rocks | | |