Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. CV 94-2307 CW |
| Plaintiffs, | **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Pursuant to the Court's orders for remedial measures at the Armstrong Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**Revisions to the investigations and discipline process**

As the Court Expert reported last quarter, the parties have been engaged in negotiations to make significant changes to CDCR's investigations and discipline system. The parties agree on the need for change. Plaintiffs believe that, in too many instances, the current system fails to produce comprehensive and unbiased investigations, and even when investigations produce solid evidence of misconduct, the discipline imposed is often inadequate. While CDCR does not dispute that the investigations need improvement, its primary focus has been on the volume of

cases, as having too many cases hampers the ability of the Allegation Inquiry Unit of the Office of Internal Affairs (AIU) to conduct thorough and timely investigations. The Court Expert shares the concerns voiced by both sides and is encouraged by the parties' negotiations, which have been characterized by a shared understanding of the urgency of the situation and mutual willingness to be creative in finding practical solutions to the system's current problems.

In his last report, the Court Expert described that the parties had reached agreement on certain modifications to the Allegation Decision Index, the tool used by the Centralized Screening Team (CST) to determine which complaints are routed to the AIU for investigation. These changes should result in the AIU receiving fewer cases to investigate, thereby reducing investigator workload. The Court Expert also described the parties' agreement to eliminate the position of Locally Designated Investigator (LDI). Under the system as it has operated to date, complaints are reviewed either by the AIU (for the most serious allegations of misconduct), LDIs (for less serious allegations of staff misconduct), or by the Offices of Grievance at the local institutions (for complaints about matters not including staff misconduct). The elimination of LDIs will, the parties anticipate, streamline CST's screening processes and decrease the workload on wardens who review investigations from the AIU and from LDIs.

The parties are now in the process of implementing further modifications. While the details are still under negotiation, in broad strokes the following changes are contemplated:

**Establishment of a Centralized Allegation Resolution Unit.** After an AIU investigator (or an LDI, under the current system) closes a case, her report is reviewed by the warden at the institution from which the complaint originated, and the warden decides whether to impose discipline. Plaintiffs believe wardens have too often failed to act timely on closed cases, failed to find misconduct despite clear evidence, and failed to impose meaningful discipline where misconduct was found. Defendants report that wardens are overburdened by the number of cases they need to review. In an effort to address these concerns, the parties have agreed to establish a Centralized Allegation Resolution Unit (CARU) that would take over disciplinary decisions. Although negotiations are ongoing, the Court Expert understands that the parties hope to have the CARU operational in 2025, such that it will review all investigations closed on or after

January 1, 2025 that originated from the *Armstrong* Six prisons. Initially the CARU will operate for a defined period of time, with plans to review its efficacy in order to determine whether changes to its processes are required and whether to extend its operation beyond that time.

**CST screening process.** Several of the Court Expert's prior reports have addressed the CST screening process. Under the remedial plan, CST is to review only the face of a complaint to determine whether it alleges staff misconduct. If it does, the complaint is routed to the AIU (or LDIs); if not, the complaint is sent back to the institution. Per the remedial plan, CST is not to evaluate the merits of any complaint. However, CDCR has long been concerned that this "facial" screening process allows too many frivolous allegations to reach the AIU, siphoning resources from more important cases. As a result, it has experimented with various alternative forms of screening in an effort to redirect cases that it believes do not require the AIU's expertise. Plaintiffs and the Court Expert have disagreed with those efforts, as set forth in prior reports, citing the requirements of the remedial plans and the inherent difficulties of an investigations system that treats cases differently depending on the institution. However, in an effort to afford the AIU relief from what everyone agrees is a crushing caseload, Plaintiffs have agreed in principle to allow CST to use these modified screening procedures, including on cases from the *Armstrong* Six, for a limited period of time. As with the CARU, the parties are still working out the details of this compromise.

**Staffing.** CDCR has also agreed to work with Plaintiffs to thoroughly analyze its staffing needs and to work to increase staffing where possible to meet those needs.

**Improvements to investigations**

The proposed process modifications described above are aimed at reducing the workload of AIU investigators and wardens by rerouting certain complaints and by increasing staffing where possible. The parties are hopeful that investigators with more time to spend on each case will produce more comprehensive and unbiased reports and that the CARU will make better and more consistent disciplinary decisions than overworked wardens at the institutions. However, the changes described above do not directly address the ways in which CDCR conducts its

**Quarterly Report on Investigations and Discipline**
*Armstrong, et al., v. Newsom, et al.*, CV 94-2307 CW

investigations. The parties are negotiating additional measures that they hope will have that effect.

**Use-of-force expert.** A central focus of Plaintiffs' concerns is whether CDCR is able to effectively investigate and resolve complaints of improper use of force, which are among the most serious staff misconduct complaints. The parties have agreed in principle to retain an independent use-of-force expert to examine CDCR's policies, practices, and training around use of force and investigations of complaints regarding use of force.

**Measures implemented by CDCR.** In addition to the matters under negotiation with Plaintiffs, CDCR has also implemented a number of measures to improve investigations. In October 2024, EAPT (the Employment Advocacy and Prosecution Team) and OIA provided training to investigators that was attended by the Office of the Inspector General. CDCR is also working with regional law enforcement to develop additional training, anticipated to be provided to investigators in the first and second quarters of 2025. CDCR has also temporarily reduced the number of cases assigned to AIU captains and tasked associate wardens with conducting random assessments of case files in order to provide feedback to investigators. CDCR is also compiling existing AIU memoranda and workflows into a consolidated investigative field guide, which it hopes to issue to investigators in January 2025.

**Case volume and investigation and discipline timelines**

The caseload data supports the parties' understanding of the need for changes in the system. In October (the most recent month for which data is available), there were 6,300 complaints screened by CST from the *Armstrong* Six prisons, compared to an average of around 5,600 per month over the last year. Of those, CST has sent an average of 325 cases to the AIU each month. But, as the Court Expert has noted before, the AIU investigates cases from all the institutions, not just the *Armstrong* Six. While the Court Expert does not have CST routing data for the other institutions, CDCR has represented that the AIU receives a total of around 1,000 cases each month. Perhaps reflecting this increased workload, the number of cases closed on time has dropped over the last year. While 70% of cases were completed within the remedial

plan's required timelines[1] during the five months ending in January 2024, only 55% were timely during the five months ending in June 2024. And wardens continue to lag in imposing discipline. As of October 31, 2024, 9% of cases received by the AIU in October 2023 were still awaiting a decision from the wardens. There has been no disciplinary decision on 25% of cases received by the AIU between September 2023 and April 2024.

**Review of closed cases**

As explained in prior reports, the Court Expert has implemented a process for confidential discussion of individual cases. Those discussions were paused over the last two quarters while the parties focused on the negotiations described above. The parties met again in December to discuss several investigations. The Court Expert continues to find this process useful.

Dated: December 30, 2024                    Respectfully submitted,

_____/s/_____
Edward W. Swanson
SWANSON & McNAMARA LLP

---

[1] The AIU must close investigations within 120 day (for cases assigned to a sergeant or lieutenant) or 180 days (for cases assigned to special agents).