Edward W. Swanson, SBN 159859
Audrey Barron, SBN 286688
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477 3800
Facsimile: (415) 477-9010
Email: ed@smllp.law
          audrey@smllp.law

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No.  C 94-2307 CW |
| Plaintiffs, | **COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION** |
| v. | Re: Dkt. No. 3639 |
| GAVIN C. NEWSOM, et al., | |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   Background ................................................................................................................. 1

II.   Items Resolved or Requiring No Court Action ...................................................... 2

III.   Individual Assessments of DPV Class Members (Item 5) .................................... 5

  A.   DPV Class Members who Originally did not Receive an Assessment .............................. 7

  B.   DPV Class Members Who Plaintiffs Assert did not Refuse or Provided an
       Uninformed Refusal ...................................................................................................... 8

  C.   Requested Relief ........................................................................................................... 8

IV.   Announcements (Item 7) ......................................................................................... 9

  A.   Introduction .................................................................................................................. 9

  B.   Court's Orders and Background ................................................................................. 10

    i.   ARP ........................................................................................................................... 10

    ii.   Notice to Defendants of failures to effectively communicate announcements ............... 10

  C.   Evidentiary Issues ...................................................................................................... 12

    i.   Defendants' objections ............................................................................................... 12

    ii.    Plaintiffs' objections ................................................................................................ 13

  D.   Legal Standard ........................................................................................................... 13

  E.   Analysis ....................................................................................................................... 14

    i.   Introduction .............................................................................................................. 14

    ii.   CDCR has not developed an adequate plan to ensure DNH class members receive
         announcements .......................................................................................................... 15

    iii.   CDCR's plan to accommodate DPH class members is insufficient ................................ 17

      1.   Group announcements ............................................................................................ 18

        a.   Schedules on ViaPath tablets .............................................................................. 18

        b.   Vibrating watches .............................................................................................. 19

      2.   Individual announcements ...................................................................................... 19

  F.   Plaintiffs' Requested Relief ........................................................................................ 21

i

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

| | | |
|---|---|---|
| i. | Paging devices | 21 |
| ii. | Visual display boards | 28 |
| iii. | "Evaluate and upgrade" existing visual alarm and PA systems | 29 |

**V.** Class Member Training Regarding Captioned Phones (Item 9) ............ 29

   **A.** Captioning for DNH Class Members During Training ............ 30

   **B.** Monitoring of Efficacy of Training ............ 34

**VI.** Staff Training Regarding Captioned Phones (Item 10) ............ 35

   **A.** Training ............ 35

   **B.** Monitoring ............ 37

**VII.** CART (Item 13) ............ 38

   **A.** Introduction ............ 38

   **B.** The Court's Orders and Background ............ 39

     i. Negotiations about CART prior to SATF investigation ............ 39

     ii. The Court Expert's SATF investigation ............ 41

   **A.** Evidentiary Issues ............ 42

     i. Defendants' objections ............ 42

       1. Legal Standard ............ 43

       2. Analysis ............ 44

         a. Plaintiffs' objections ............ 45

       3. Legal Standard ............ 46

       4. Analysis ............ 46

         a. Missing captions ............ 47

         b. Inaccurate captions ............ 48

         c. No indication of new speaker ............ 49

         d. Words leave the screen too fast, appear on only two lines of text, and rapidly self-correct ............ 50

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

e.      Greater "availability" or convenience of ViewSonic does not warrant providing an ineffective accommodation. ........................................ 52

f.      Conclusion .................................................................................... 52

g.      Remote or On-site CART ............................................................... 53

VIII.   Conclusion ................................................................................................ 58

iii

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1    **I.      Background**

2          On November 8, 2021, following reports from Plaintiffs' counsel regarding alleged

3    mistreatment of *Armstrong* class members at the Substance Abuse Treatment Facility and State

4    Prison – Corcoran (SATF), the Court ordered the Court Expert to investigate whether class

5    members were being denied accommodations for their disabilities or discriminated against on the

6    basis of their disabilities.  Dkt. No. 3338 at 2-3[1].  Following a year-long investigation, on

7    December 20, 2022 we reported our findings and made recommendations regarding how SATF

8    could remedy several areas of non-compliance with the Americans with Disabilities Act (ADA)

9    and the Armstrong Remedial Plan (ARP).  Dkt. No. 3446.  In response to our report, on February

10   24, 2023 the Court adopted our undisputed findings and ordered the Court Expert to monitor

11   Defendants' efforts to remedy non-compliance and to file an additional written report to the

12   Court six months later.  Dkt. No. 3467 at 2.[2]

13         On August 24, 2023, we filed our second report regarding treatment of people with

14   disabilities at SATF.  Dkt. No. 3500.  We reported on improvements at SATF as well as areas of

15   ongoing concern, and we made several additional recommendations to help SATF improve its

16   efforts to comply with the ADA and ARP.  *Id*. at 19.

17         The parties filed responses to our second report in which they disagreed about the status

18   of progress towards compliance at SATF and about whether Court intervention was necessary.

19   *See* Dkt. Nos. 3504, 3510, 3515.  In response, the Court ordered the Court Expert to file an

20   addendum to his second SATF report and make recommendations regarding any Court action

21

22   [1] All page citations refer to ECF page numbers.

23   [2] The Court also ordered the Court Expert to analyze the adequacy of Defendants' staffing with
24   respect to positions intended to assist with compliance with the ADA and ARP, as well as to
     develop systems for "Defendants to identify and correct, without the assistance of Plaintiffs'
25   counsel or other external monitors, systemic problems that prevent them from delivering
     reasonable accommodations to class members in a reasonable prompt and effective manner."
26   Dkt. No. 3467 at 3.  The Court Expert's work regarding staffing and self-monitoring is ongoing,
27   and this report does not address those aspects of the order.

28
                                                       1
     **COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH**
     **SATF STIPULATION**
     *John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

necessary to ensure CDCR's timely compliance with the ADA and ARP at SATF.  Dkt. No. 3521 at 3.

On November 28, 2023, we filed an addendum to our second report, making 15 recommendations for Court action to improve compliance at SATF.  Dkt. No. 3529.  In response to the addendum, the parties entered into a stipulation regarding the Court Expert's 15 recommendations.  Dkt. No. 3533.  The Court adopted the parties' stipulation and on December 7, 2023 ordered the parties to proceed with their stipulated plan of action.  Dkt. No. 3538.  The parties engaged in an extensive meet and confer process for approximately 10 months to resolve as many items as possible.  On October 16, 2024, the parties filed a joint statement informing the Court of resolved stipulation items and providing the parties' positions on unresolved stipulation items.  Dkt. No. 3630.

On November 8, 2024, the Court ordered the Court Expert to file recommendations regarding the unresolved stipulation items.  Dkt. No. 3639 at 4-5.

## II.    Items Resolved or Requiring No Court Action

As noted, the parties resolved several stipulation items that require no further action from the Court.

Stipulation items 1, 2, and 3 required CDCR to draft a policy for the provision of non-medical assistive devices as reasonable accommodations at SATF and to update SATF's local operating procedure within 60 days of issuance of the policy.  Dkt. No. 3538 at 3-4.  The parties reached agreement on a policy and local operating procedure regarding provision of these devices, and the Court approved both and ordered their issuance on November 8, 2024.  Dkt. No. 3639 at 2.  CDCR has issued the policy and updated the local operating procedure, and therefore stipulation items 1, 2, and 3 are resolved and require no further Court action.

Stipulation item 4 required CDCR to confirm in writing that SATF has sufficient assistive reading devices on hand that they can immediately replace a broken device with an

2

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

extra device.  CDCR did so, and the parties agree that this stipulation item is resolved.  Dkt. No. 3630 at 9-10.  No further Court action is required.

Stipulation item 6 required CDCR to explain in writing when and how it would resolve all issues at SATF addressed in the then-current draft of the Blind/Low-Vision stipulation.  The parties agree that this stipulation item has been resolved.  *Id.* at 13.  No further Court action is necessary.

Stipulation item 8 required CDCR to confirm in writing that SATF has a sufficient stock of TTY/TDD phones and captioned phones to replace any non-functional phone within 48 hours of the phone being reported by an incarcerated person or discovered by staff to be broken.  The stipulation also required SATF to log certain information regarding non-functional TTY/TDD and captioned phones and to provide that log to Plaintiffs and the Court Expert on a monthly basis.  CDCR has so confirmed and has agreed to provide the required log.  The parties agree that this stipulation item is resolved.  *Id.* at 60.  No further Court action is necessary.

Stipulation item 11 required CDCR to provide a timeframe for installing captioned phones in the housing units at SATF and to make a good faith effort to complete installation by the date specified.  Defendants reported on March 6, 2024 that they intended to install captioned phones in the housing units at SATF by July 1, 2024.  *Id.* at 92.  Defendants completed installation of captioned phones in ten locations, with one phone per yard (A through G) plus captioned phones in the Correctional Treatment Center, the Restricted Housing Unit, and the Board of Parole Hearings (BPH) room.  *Id.*  Plaintiffs point out that because there are 32 total housing units at SATF (multiple units per yard), and CDCR installed captioned phones in only nine of the 32, "two-thirds of people with a documented hearing disability were not housed in a unit where Defendants installed a captioned phone."  *Id.* at 90.  Plaintiffs express concerns that "people who require use of a captioned phone will not have equal access to phone services when there is no captioned phone in their building, particularly during modified programming, or when multiple people on their yard want to use the phone at the same time."  *Id.* at 91.  They cite the

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

declaration of a class member at SATF who reported having difficulty accessing the TTY phone located in a different section of his yard. *Id.* However, Plaintiffs state they will continue to monitor this issue, and they do not ask for relief from the Court at this time. *Id*. at 92. We find no Court action is necessary.

Stipulation item 12 required Defendants to ensure that Plaintiffs and the Court Expert had an opportunity to offer input regarding accessibility features that should be required in the next statewide contract for tablets. The stipulation also required that if Plaintiffs' counsel believed that the proposed statewide contract for tablets did not comply with the ADA and remedial plan, the parties would meet and confer. If the parties could not reach agreement on disputes regarding the proposed statewide contract, the stipulation required the parties to submit a joint statement to the Court discussing those disputes. The parties reported to the Court a disagreement regarding in-cell videophone access on tablets to class members who use sign language. However, the parties agreed to continue to meet and confer with the assistance of the Court Expert regarding the issue, which the Court approved. Dkt. No. 3639 at 2. The parties also disagreed about the process for resolving disputes with the statewide tablet contract, but the Court resolved this issue in its November 8, 2024 order. The Court ruled that if, after the statewide tablet contract is awarded, "Plaintiffs have concerns that the tablets that Defendants will procure pursuant to the contract will not comply with the ADA or the remedial plans, they may raise the issue to the Court Expert and the parties shall meet and confer promptly with the Court Expert to discuss the issue." *Id.* at 4. Therefore, no further Court action is necessary regarding stipulation item 12 at this time.

Stipulation item 14 required the parties to meet and confer regarding the adequacy of CCHCS's final policy on RVRs. The parties agreed that CCHCS will issue its final policy to the field and train its staff. Dkt. No. 3630 at 152. The parties also agreed that "CCHCS will then work with the Armstrong Court Expert to identify information sufficient to allow Armstrong Plaintiffs' Counsel to review the adequacy of CCHCS's policy as to Armstrong class members at

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1   SATF. The identified information will then be produced to the Armstrong Court Expert who

2   may, at his discretion, provide the information to the Armstrong Plaintiffs' counsel." *Id.*

3   Plaintiffs request that the Court order the agreed-upon process outlined above.  Dkt. No. 3630-20

4   at 22-23.  Because CCHCS and Defendants have agreed to the process outlined above, the Court

5   Expert recommends that the Court take no further action on this item at this time.

6          Stipulation item 15 required Defendants to "request that CCHCS inform the Court Expert

7   and Plaintiffs . . . whether an electronic system for submitting 7362s has been implemented or

8   when it expects to implement such a system, as well as whether CCHCS will implement any

9   interim measures to communicate with patients regarding their requests for medical care."  Dkt.

10  No. 3538 at 8.  Defendants have provided updates from CCHCS regarding the implementation of

11  the system for submitting electronic 7362s (*see* Dkt. No. 3630 at 155-157), and Defendants

12  report CCHCS will continue to update the parties as they finalize the system.

13         Plaintiffs contend that the electronic system for submitting 7362s will not resolve

14  concerns that patients who submit 7362s requesting provision or repair of durable medical

15  equipment (DME) are not seen promptly in response to their requests.  The parties have agreed

16  to meet and confer to address Plaintiffs' concerns with the statewide policy for responding to

17  7362s related to DME.  Dkt. No. 3630 at 155, 157.  Plaintiffs request that the Court order the

18  parties to engage in this agreed-upon meet and confer.  Because CCHCS and Defendants have

19  agreed to the process outlined above, the Court Expert recommends that the Court take no further

20  action on this item at this time.

21         Stipulation items 5, 7, 9, 10, and 13 remain unresolved, and Plaintiffs seek relief.  We

22  turn to those now.

23  **III.    Individual Assessments of DPV Class Members (Item 5)**

24         Stipulation item 5 required CDCR, within 90 days of the Court's order approving the

25  stipulation, to "provide the Court Expert and Plaintiffs a date by which all individualized

26  assessments of DPV class members at SATF will be complete."  Dkt. No. 3538 at 4.  The

27

28

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

stipulation also required CDCR to "make a good faith effort to complete this task by the date specified," and that if Defendants were not able to complete the individualized assessments "due to matters beyond their control (e.g., patient refusals to participate in the individualized assessment, COVID-19 status, out-to-court status, etc.)," Defendants would "provide Plaintiffs and the Court Expert a written explanation for the delay" and meet and confer to resolve the issue if necessary. *Id.*

On March 6, 2024, Defendants notified Plaintiffs' counsel and the Court Expert that they anticipated all DPV-designated class members at SATF would receive an individualized assessment from a vision expert by April 25, 2024. Dkt. No. 3630 at 11. On June 4, 2024, CDCR notified Plaintiffs' counsel and the Court Expert that "as of April 25, 2024, all DPV-designated class members on the SATF roster as of February 26, 2024, had been offered an assessment and were either seen by the vision specialist" or had refused an assessment. *Id.* at 12. On June 7, 2024, Defendants provided to Plaintiffs' counsel a list of DPV class members who had been evaluated by the vision specialist and those who had refused the assessment. *Id.*

On August 5, 2024, Plaintiffs' counsel informed Defendants that they had identified four DPV individuals who were not included on the list provided to Plaintiffs on June 7, 2024 but who they believed should have been. Dkt. No. 3630-10 at 84. Additionally, on August 7, 2024, Plaintiffs sent CDCR an advocacy letter identifying two class members who they claimed did not refuse vision specialist assessment as Defendants had indicated (Dkt. No. 3630-10 at 88, 89), as well as one who had refused because he was not informed of the purpose of the appointment (*Id.* at 89). In the advocacy letter, Plaintiffs also claimed there had been substantial delays in issuing the assistive devices recommended by the vision specialist, including for one class member a delay of over 244 days. *Id.* at 92-95. The advocacy letter also raised concerns that the vision specialist was assessing DPV class members' need for assistive devices for reading but not writing (*Id.* at 90-92), that class members who were new to SATF or newly designated as DPV were not being seen promptly by the vision specialist and were not being informed about interim

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

accommodations, and that housing staff were not aware of available interim accommodations (*Id.* at 95-96).

## A. DPV Class Members who Originally did not Receive an Assessment

Plaintiffs identified four DPV class members who, contrary to Defendants' assertions, had not received or been offered an assessment as of April 25, 2024. One individual was apparently properly excluded because he had received corrective eye surgery in 2023 which improved his corrected visual acuity to 20/20, and therefore he no longer had a DPV vision code. Dkt. No. 3631-8 at ¶ 7. However, three other individuals had a DPV code and were not assessed.

Defendants provided an explanation through the declaration of Dr. Grace Song, Deputy Medical Executive of Utilization Management and Telemedicine for CCHCS. Dr. Song attests that the three class members identified by Plaintiffs as being DPV yet not having received an individualized vision assessment were not originally seen by the vision specialist because for each of them, "it was unclear if this individual was properly designated as DPV and his DPP vision code required additional assessment and confirmation." Dkt. No. 3631-8 at ¶¶ 4-6. Dr. Song does not state which department or staff determined that these class members' DPP codes needed "confirmation" or what steps that staff took to achieve confirmation. Ultimately, all three of these class members' DPV codes were confirmed. *Id.* Following Plaintiffs' advocacy, two of these DPV class members were seen by the vision specialist in August 2024, and one of the DPV class members was scheduled to be seen in November 2024, after the parties filed the joint statement. *Id.*

Therefore, Defendants' statement to the Court Expert and Plaintiffs' counsel on June 4, 2024 that all DPV class members at SATF had been seen by the vision specialist or refused an assessment was incorrect. At the time of Defendants' statement, three DPV class members had not been offered an individualized assessment.

7

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  DPV Class Members Who Plaintiffs Assert did not Refuse or Provided an Uninformed Refusal**

Plaintiffs identified two class members who they assert did not refuse their vision assessment appointment and one who, according to Plaintiffs' counsel, refused only because he was misinformed of the purpose of the appointment.  Defendants, through the declaration of Dr. Song, informed the Court that the two individuals who allegedly refused the initial appointment with the vision specialist also refused a second appointment in August 2024, but that they will be scheduled for an assessment by the next time the vision specialist is on-site at SATF.  Dkt. No. 3631-8 at ¶¶ 9, 10.  The third individual, who Plaintiffs claim was not informed of the purpose of his appointment, was seen by the vision specialist on August 16, 2024.  *Id.* at ¶ 11.

**C.  Requested Relief**

Plaintiffs assert that "Defendants provided incomplete information regarding DPV class members who were evaluated by a vision specialist or who refused" and that Defendants "have not explained why Defendants did not notify Plaintiffs' counsel that they would not meet the deadline" to assess all DPV class members at SATF.  Dkt. No. 3630-20 at 3-4.  As discussed above, the Court Expert agrees that Defendants did not provide accurate information to Plaintiffs or the Court Expert when Defendants reported in June 2024 that all DPV class members at SATF had been offered a vision assessment.  This sequence of events raises questions about (1) whether CDCR is appropriately tracking vision assessments (since Defendants told Plaintiffs that all DPV class members had been seen as of April 25, 2024, when in fact they had not), (2) the circumstances that will trigger a DPV class member to have their DPP status "confirmed" (since Defendants did not explain in their pleadings what staff selected these individuals for "confirmation" and whether it was appropriate to do so), and (3) whether the confirmation process is delaying or denying DPV class members their individual assessments (since the confirmation process caused these individuals to have their assessments later than other class

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

members, and since it is not clear from the record whether they would have received the assessment without the intervention of Plaintiffs).

In response to these and other concerns, Plaintiffs request that the Court order Defendants to respond to Plaintiffs' August 7, 2024 advocacy letter which requested not only information regarding the vision assessments but also staff training on interim accommodations, information regarding delays in issuance of recommended assistive devices, an investigation into alleged refusals, and other information.  Dkt. No. 3630-10 at 85-97.  While the Court Expert encourages Defendants to respond to all of Plaintiffs' advocacy letters, not all the issues raised in the August 7, 2024 letter are within the scope of the stipulation.

With regards to the matters that are within scope, the Court Expert recommends that the Court order Defendants to provide a written response to the Court Expert and Plaintiffs, within 30 days of the Court's order, explaining: (1) which CCHCS or CDCR department questioned the validity of the DPP codes of DPV class members who were to be scheduled for a vision assessment, why they did so, and whether it was appropriate for them to do so; (2) what actions staff took to confirm the DPP code of the DPV class members and when; and (3) how, going forward, Defendants will ensure through policy or staff training that the individualized assessments of newly arriving DPV class members at SATF or people newly given a DPV code will not be delayed on the grounds that their DPP codes need to be "confirmed."  Within seven days of Plaintiffs receiving the written response, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the adequacy of Defendants' written response.  If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

## IV.    Announcements (Item 7)

### A.  Introduction

The parties agree that announcements are an essential form of communication between prison staff and incarcerated people.  General announcements can convey information to an

9

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

entire housing unit that it is time for recreation on the yard, for example, or that canteen is running.  Individual announcements inform a particular person that they are being called to an appointment, such as to be seen in medical clinic or for an attorney visit.  The parties generally agree on the importance of equal access to announcements, and they agree that Defendants are obligated to ensure effective communication of announcements for deaf and hard of hearing class members.  The parties disagree on how to accomplish that effective communication.

## B.  Court's Orders and Background

### i.  ARP

The Amended Remedial Plan (ARP) requires "reasonable accommodation . . . to ensure equally effective communication with staff, other inmates, and, where applicable, the public.  Auxiliary aids which are reasonable, effective, and appropriate to the needs of the inmate/parolee shall be provided when simple written or oral communication is not effective."  Dkt. No. 681 at 10.  The ARP also requires each institution to "ensure that effective communication is made with inmates who have hearing impairments impacting placement regarding public address announcements and reporting instructions, including those regarding visiting, yard release and recall, count, lock-up, unlock, etc."  Dkt. No. 681 at 29.  The ARP states that "verbal announcements may be effectively communicated via written messages on a chalkboard or by personal notification, etc."  *Id.*

The ARP also specifies the criteria required for denying a requested reasonable accommodation based on legitimate penological interests, undue burden and fundamental alteration, or the existence of an equally effective means.  Dkt. No. 681 at 14.

### ii.  Notice to Defendants of failures to effectively communicate announcements

Plaintiffs have been reporting to Defendants their concerns about the failure to convey announcements to DPH and DNH class members at SATF through monitoring tour reports since at least 2016.  Dkt. No. 3459-1 at 380.  Plaintiffs continued to report their concerns regarding

10

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

announcements following monitoring tours in March 2017, June 2018, September 2018, and December 2018. *Id.* at 388-390, 401-403, 413-417. In 2019, CDCR's Office of Audits and Court Compliance (OACC) required SATF to complete a Corrective Action Plan (CAP) to address a failure to convey announcements to deaf and hard of hearing class members. Dkt. No. 3459-6 at 79. Through workgroup meetings, Plaintiffs began asking for a paging system to address the reported failure to convey announcements to deaf and hard of hearing class members in July 2021. Dkt. No. 3459-5 at 16.

In December 2022, we found that deaf and hard of hearing people were not consistently receiving announcements at SATF. Dkt. No. 3446 at 42. Specifically, we found "that custody staff at SATF are not complying with the requirement to ensure deaf and hard of hearing people receive announcements. It is not clear if this is because staff do not understand their obligation in this regard or are simply not doing what is required." *Id.* We also found that "SATF leadership cannot continue to respond to complaints by deaf and hard of hearing people about not receiving announcements by stating that staff will ensure they receive announcements," and we recommended that "SATF leadership should audit staff compliance with the requirement to make individualized announcements to people who cannot hear the intercom. Custody staff who do not comply with this requirement should receive training followed by progressive discipline." *Id.* The Court adopted our undisputed findings and ordered us to report on Defendants' progress in curing these violations. Dkt. No. 3467 at 2.

In our second report, filed in August 2023, we found that it "remains the case that deaf and hard-of-hearing class members at SATF do not reliably receive announcements," and as a result we recommended that "CDCR should develop methods to reliably communicate announcements to deaf and hard-of-hearing people." Dkt. No. 3500 at 12-13, 19. The Court ordered us to file an addendum to our second SATF report to make recommendations regarding any Court action necessary to ensure CDCR's timely compliance with the ADA and ARP at SATF. Dkt. No. 3521.

11

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.,* C 94-2307 CW

1    In the addendum to our second report, we found that, "[d]espite our recommendation that

2   Defendants develop a system at SATF to audit whether officers ensure deaf and hard-of-hearing

3   people receive announcements, to date they have not done so." Dkt. No. 3529 at 7.  As a result,

4   we recommended the Court make the following order:

5        Within 60 days of the Court's order, Defendants must provide to Plaintiffs and the
         Court Expert either: 1) a draft proposal regarding how it will audit whether

6        officers at SATF effectively communicate announcements to deaf and hard-of-
         hearing people, and how it will take corrective action when officers are found to

7        fail to communicate such announcements; or 2) a draft proposal regarding an
         alternative, auditable method of ensuring effective communication of

8        announcements that does not rely on correctional staff or ADA workers to
         communicate announcements to deaf and hard-of-hearing people. Within 14 days

9        of receipt of the draft proposal, Plaintiffs must provide written feedback to
         CDCR. Within 30 days of receipt of CDCR's proposal, the parties and the Court

10       Expert shall meet to discuss the proposal. If the parties reach agreement regarding
         the proposal, then CDCR shall implement the auditing system or alternate

11       auditable method of ensuring effective communication of announcements within
         60 days of the meeting. If the Court Expert determines the parties are not able to

12       reach agreement regarding the proposal, the parties shall, within 30 days of the
         Court Expert's determination that an agreement cannot be reached, submit a joint

13       statement to the Court discussing the disputes regarding the proposal.

14
15

16  *Id.* at 8.

17    Following our addendum, the parties met and conferred and stipulated to our

18  recommended course of action.  The Court ordered the stipulated agreement on December 7,

19  2023. Dkt. No. 3538 at 5.

20      **C.  Evidentiary Issues**

21          **i.   Defendants' objections**

22    Defendants object to specific statements in various class member declarations that they

23  argue are hearsay.  Dkt. No. 3630 at 45-47.  We reach our conclusions and recommendations

24  without relying on any of the objected-to statements, and therefore we recommend the Court find

25  it not necessary to rule on these objections.

26
27
28

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1

### ii.   Plaintiffs' objections

Plaintiffs object to portions of Captain Mebane's declaration as hearsay.  *Id.* at 34.  We reach our conclusions and recommendations even assuming that the hearsay statements in Captain Mebane's declaration are true, and therefore we recommend that the Court find it is not necessary to rule on these objections.

### D.  Legal Standard

Deaf and hard of hearing people are entitled to effective communication within public entities.  "As to persons with a hearing disability, implementing regulations for Title II provide that a public entity must 'take appropriate steps to ensure that communications' with disabled persons 'are as effective as communication with others.'"  *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017) (quoting 28 C.F.R. § 35.160(a)(1)).  When determining what form of accommodation a disabled person requires to achieve effective communication, the Ninth Circuit has held that "[i]f the public entity does not defer to the deaf individual's request, then the burden is on the entity to demonstrate that another effective means of communication exists or that the requested auxiliary aid would otherwise not be required."  *Id.* at 958.

Even when a deaf or hard of hearing incarcerated person has not requested an accommodation, "a public entity's duty to look into and provide a reasonable accommodation may be triggered when 'the need for accommodation is obvious,' and the public entity is on notice about a need for accommodation."  *Id.* at 954 (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).  To "permit facilities to fail to provide accommodations to a person with a disability unless she 'specifically requests such aid,' would be 'untenable and cannot be countenanced.'"  *Id.* (quoting *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) (Jackson, J.) (finding the "suggestion that a prison facility need not act to accommodate an obviously disabled inmate if the inmate does not ask for accommodations" was "truly baffling as a matter of law and logic").  To determine what accommodations are appropriate, a Title II entity must "gather sufficient information from the

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

[disabled individual] and qualified experts as needed to determine what accommodations are necessary.'  Thus, a public entity 'must consider the particular individual's need when conducting its investigation into what accommodations are reasonable.'"  *Updike*, 870 F.3d at 954 (quoting *Duvall*, 260 F.3d at 1139).

Consistent with these principles, this Court has held that "[a] public entity's policies and procedures do not comply with the ADA if they require people who the public entity knows are disabled to request accommodations as a condition to providing the accommodations." *Armstrong v. Newsom*, 724 F. Supp. 3d 886, 917 (N.D. Cal. 2024) (Dkt. No. 3583).  In the context of accommodations for parole proceedings, this Court has also held that Defendants in this case were "on notice, by virtue of their DPV and DNV disability codes, that blind and low-vision class members need accommodations" and that Defendants therefore had "an affirmative duty to conduct an investigation into what constitutes a reasonable accommodation for each DPV and DNV class member based on his individual needs, and to provide, without waiting for a request, reasonable accommodations to each of them while taking into account his individual preferences and protecting his privacy and independence." *Id.*

### E.  Analysis

#### i.  Introduction

Defendants argue that CDCR already offers adequate accommodations for deaf and hard of hearing people to receive announcements at SATF.  They point to CDCR's ducating system (Dkt. No. 3630 at 53), the use of the public address (PA) system, white boards, and flashing lights (*Id.* at 48), as well as "sign language interpreters, written communication, state-of-the-art hearing aids, Personal Sound Amplification Devices (*i.e.*, pocket talkers), vibrating watches, and personal iPads and iPhones equipped with speech-to-text software."  *Id.* at 40.  But all these systems or accommodations existed at the time of our addendum and the Court's order, and while it is positive that CDCR offers those accommodations, none of them singly or together solved the problem of ensuring that deaf and hard of hearing class members at SATF were

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

receiving announcements.  Some class members are able to understand close conversation with hearing aids or pocket talkers but not PA announcements.  Sign language interpreters are not standing by in housing units to interpret announcements as they occur.  Vibrating watches do not convey announcements.  iPads cannot transcribe announcements made over the PA system.

Defendants' statement that existing "low-tech" methods of conveying announcements via flickering lights and whiteboards "have been in place for more than two decades, and are effective with substantial staff compliance" is unsupported and contrary to our undisputed findings.  *See* Dkt. No. 3467.  The Court has already found that the system in place is not effective, and CDCR was tasked with coming up with a system that is.  *See* Dkt. No. 3467, 3538.

### ii.  CDCR has not developed an adequate plan to ensure DNH class members receive announcements

The Court ordered Defendants to come up with a proposal to "audit whether officers at SATF effectively communicate announcements to deaf **and** hard-of-hearing people, and how it will take corrective action when officers are found to fail to communicate such announcements." Dkt. No. 3538 at 5 (emphasis added).  Alternatively, Defendants could have proposed an auditable method of conveying announcements "that does not rely on correctional staff or ADA workers to communicate announcements to deaf **and** hard-of-hearing people." *Id.* (emphasis added).  But Defendants have not proposed any plan to audit whether announcements are conveyed to DNH class members; they propose logging and auditing the delivery of announcements only for DPH class members.  Nor have they proposed an alternative method of conveying announcements to DNH class members that does not rely on staff or ADA workers.[3]

Instead, Defendants appear to argue that the ARP and our prior findings provide them with a "legal and factual basis to differentiate between deaf and hard-of-hearing class members."

---

[3] To the extent Defendants argue that DNH class members will receive some announcements via the ViaPath tablets, we find that that accommodation will not satisfy Defendants' obligations to effectively communicate announcements.  The tablets provide only a schedule of planned events, which is not the same thing as conveying a real-time announcement.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

Dkt. No. 3630 at 41.  Defendants claim that the ARP only requires effective communication of announcements for people with a disability impacting placement, except that they may have to offer "auxiliary aids" to others to ensure effective communication in general.  *Id.* at 42-43, 49. While Defendants are correct that the ARP only explicitly requires effective communication of announcements for "inmates who have hearing impairments impacting placement," (Dkt. No. 681 at 29) the ARP also requires CDCR to "ensure equally effective communication with staff" for all class members (*Id*. at 10), which clearly encompasses effective communication of announcements made by staff.

Nor do our prior findings provide a basis to not ensure effective communication of announcements to DNH class members.  Our findings were that deaf **and** hard of hearing people were not receiving announcements, and those findings were undisputed.  *See* Dkt. Nos. 3446 at 42 (first SATF report finding "we believe that custody staff at SATF are not complying with the requirement to ensure deaf and hard of hearing people receive announcements"); Dkt. No. 3467 at 2 (accepting undisputed findings); Dkt. No. 3500 at 12-13 (second report finding deaf and hard of hearing people continued to not receive announcements consistently).

To dispel any doubt, we again find that the evidence shows that some DNH class members are not able to hear announcements at SATF, and that SATF has failed to accommodate them.  *See* Dkt. No. 3630-7 at 8-10 (DNH class member reported inability to hear announcements, but the SATF RAP denied requested accommodations because the class member was "observed . . . being notifies [sic] of every announcement that pertains to the facility or personal notifications;" in reality, IAP worksheet reflects that a Compliance Sergeant did not observe the class member receiving "every announcement" but instead interviewed housing unit staff who reported that the class member was "notified of every announcement"); Dkt. No. 3630-8 at 2 (DNH class member reported missing pill call due to inability to hear PA system announcements; RAP confirmed several instances of class member as a "no show" for pill call but did not have class member assessed by a specialist or offer any accommodation); Dkt. No.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

3630-8 at 22 (DNH class member reported they could not hear the PA system and requested banner reader to convey announcements; RAP responded that the Central Screening Team (CST) determined the request did "not fit within the scope of a request for reasonable accommodation" and would be forwarded to "the appropriate department" to be handled as a grievance); Dkt. No. 3630-9 at 9-10 (recently hospitalized class member without a documented hearing disability reported being winded from wheeling to the podium to request information about announcements and requested personal notification of announcements instead; RAP provided no accommodation and informed class member he could "ask for assistance from ADA workers"); Dkt. No. 3630-9 at 14-15 (second request from class member stating he was not hearing announcements and asking for "some kind of remedy . . . whether lights on/off, or a porter, or gold coat[4]"; RAP referred class member to have his hearing evaluated but provided no accommodation for receiving announcements and told class member, "It is your responsibility to listen for announcements"); Dkt. No. 3630-11 at 10 (after reviewing a sample of audiology records from DNH class members at SATF, Plaintiffs' expert found that approximately 50% had "severe" hearing loss and that "the population of people assigned a DNH code contains a substantial percentage of people whose hearing loss is significant enough that they need nonauditory accommodations for announcements").

Perhaps most importantly, Defendants already stipulated, and the Court already ordered, that Defendants come up with a plan to effectively communicate announcements to deaf **and** hard of hearing people at SATF. Dkt. No. 3538 at 5. Defendants have failed to do so, and we recommend the Court order immediate relief as discussed below to ensure that DNH class members at SATF receive effective communication of announcements.

### iii.    CDCR's plan to accommodate DPH class members is insufficient

Although CDCR failed to come up with a plan to ensure the delivery of announcements

---

[4] "Gold coat" is a colloquial term at SATF and some other institutions used to refer to an ADA worker.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

to DNH class members, they do offer a proposal designed to audit the delivery of announcements to DPH class members at SATF.  However, we find Defendants' proposal fails to ensure that DPH class members receive equally effective communication of both group and individual announcements.

### 1.  Group announcements

Many announcements are made throughout the day at SATF that affect more than one person, for example, an announcement that it is time to leave the housing unit for a meal or that canteen is now running.  The parties refer to these announcements as "group announcements."  Defendants propose two new accommodations to help DPH class members receive group announcements: (1) sending a schedule of the planned activities for the day and auditing that the schedule was sent; (2) issuing vibrating watches to DPH class members.  For the reasons discussed below, this plan is inadequate to ensure that DPH class members receive real-time notification of group announcements like their hearing peers, thus ensuring that DPH class members receive communication that is "as effective as communication with others.'" *Updike*, 870 F.3d at 949.

### a.    Schedules on ViaPath tablets

Defendants plan to share each day's anticipated schedule of events on the ViaPath tablets that all SATF residents can receive.  Dkt. No. 3630 at 50.  Notices will also be sent about any changes to the day's schedule.[5]  *Id.*  While this is a positive development, it is not a replacement for real-time notification of announcements that hearing people receive via the PA system.  The schedule of events is notification of an expected schedule, not a contemporaneous alert that an event is taking place, which is what hearing people receive over the PA system.

Additionally, tablets are not allowed on the yard, where group announcements are often made over the PA system.  Defendants argue that they need not provide equally effective

---

[5] CDCR proposes auditing whether staff sent the day's planned schedule of events, but not whether staff sent modifications to the schedule, an additional reason why CDCR's plan for group announcements is inadequate.  Dkt. No. 3630-11 at 186.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

communication of announcements on the yard because our findings in our prior reports were limited to announcements in the housing unit. They were not. *See* Dkt. No. 3446 at 42. Regardless, Defendants have put forward no logical explanation for why DPH and DNH people would be entitled to effective communication of announcements in the housing units but not the yards, and the Court's order was not limited to announcements in the housing units. *See* Dkt. No. 3538 at 5. In addition, the ARP specifically requires announcements about "yard release *and recall*" which would necessarily have to take place on the yard. Dkt. No. 681 at 29 (emphasis added).

There is no evidence that the forthcoming new tablet contract will solve the issue of connectivity on the yards or make tablets function to give real-time announcements. Dkt. No. 3630-16 at ¶¶ 15-19. Therefore, the lack of a plan to convey real-time announcements to DPH class members, or to convey announcements while they are on the yard, renders CDCR's proposal for announcements inadequate.

### b.  Vibrating watches

Defendants state they are issuing vibrating watches "[t]o address the need for a means of tactile notification." Dkt. No. 3630 at 52. But vibrating watches do not convey announcements to users. Vibrating watches can be used by class members to set reminders to themselves, such as that certain events like meals or yard time are anticipated to occur at a particular hour, but they do not transmit real time information that an event is taking place. For this reason, they do not ensure equally effective communication of announcements.

### 2.  Individual announcements

CDCR's plan to ensure DPH class members receive individual announcements (such as notification that the person is being called to clinic or for an attorney visit) still relies on staff or ADA workers providing delivery of announcement face-to-face. That would have been an acceptable solution if CDCR accompanied the plan with a robust auditing system and a plan for

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

corrective action for officers who fail to deliver announcements. *See* Dkt. No. 3538 at 5:7-10. Unfortunately, CDCR has failed to propose such a system.

CDCR's proposed auditing system is inadequate because it will not track instances where announcements should have been given but were not. Defendants propose that housing unit officers manually log every time they or an ADA worker personally deliver an individual announcement to DPH class members. Dkt. No. 3630-11 at 182. During their daily tours, facility sergeants "shall ensure these personal notifications are being logged," and facility managers will review the logs monthly "to ensure documentation is present reflecting personal notifications are occurring in accordance with policy." *Id.* at 182-183.[6] The problem is that facility sergeants and managers will not know how many or what announcements should have been given each day. Therefore, a facility sergeant or manager reviewing the manual log has no way to know how many announcements should have been logged on a particular day, what time the announcements should have been made and whether they were given in a timely manner, and what information should have been conveyed and if the information actually conveyed was complete and accurate. All they will know is what announcements were logged, and while that is important information, it is only half of the picture.

Dr. Nathan Swett, Defendants' assistive technology expert, states that CDCR's plan constitutes "a robust system to log and audit the provision of individual announcements via face-to-face communication." Dkt. No. 3631-9 at ¶ 26. However, he offers no support for this conclusory statement and no explanation of why a system that cannot track every instance where staff fails to communicate a message is "robust."

---

[6] In addition, Defendants propose that DPH class members "will review the logs weekly and confirm receipt and understanding of the announcement(s)." Dkt. No. 3630-11 at 182. While it is appropriate for Compliance Sergeants to check in with DPH class members to see if they are getting announcements, an auditing system cannot rely on DPH class members pointing out missing log entries; they may not know that an announcement should have been made and was not logged.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

CDCR's plan for corrective action for officers who fail to convey announcements is also inadequate. CDCR proposes that, after reviewing the logs, "[i]f personal notifications are not documented, the sergeant shall provide remedial training and document it on a CDCR Form 844, Training Participation Sign-In Sheet." Dkt. No. 3630-11 at 186. But as discussed above, facility sergeants will not necessarily know how many announcements should have been provided each day, when they should have been provided, and what information should have been provided. As a result, misconduct may go undetected during the log review.

### B. Plaintiffs' Requested Relief

#### i. Paging devices

Plaintiffs request that CDCR be ordered to take the steps necessary to operate a paging system for deaf and hard of hearing people to receive "real-time visual and tactile notifications whenever an individual or group announcement is made."[7] Dkt. No. 3630 at 32. Plaintiffs request that the paging system facilitate "real-time, non-auditory notification of an announcement and the content of that announcement sent to a wearable and portable device, which can be worn throughout the institution (including on the yard) and which stores a record of all transmitted messages for auditing later." *Id.*

To support this request, Plaintiffs provide the expert report of Dr. Andrea Borne, a licensed audiologist who attests that "[w]earable paging devices are standard accommodations for deaf and hard-of-hearing people to receive real-time notifications of other people communicating with them." Dkt. No. 3630-11 at 16. In addition, Plaintiffs note that at least nine states have either agreed to or been ordered to provide paging systems for announcements. Dkt.

---

[7] Contrary to Defendants' argument, Plaintiffs' request for a paging system to convey announcements to deaf and hard of hearing class members is not new nor is it "contrary to their prior advocacy." Dkt. No. 3630 at 40. As outlined above, Plaintiffs informed Defendants of the problem with deaf and hard of hearing class members' lack of access to announcements in SATF tour reports since 2016, and they asked for paging devices since 2021. The Court Expert is not aware of Plaintiffs ever claiming that pocket talkers or vibrating watches would solve the issue of deaf and hard of hearing people not receiving announcements.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

No. 3630 at 33-34.  Plaintiffs have provided the user manual of one paging system used in other states' carceral systems, and Dr. Borne attests that this paging system "contains the necessary features of a real-time, accessible paging system for a deaf and hard-of-hearing incarcerated population."  Dkt. No. 3630-11 at 16.

Defendants do not dispute that several states already use a paging system to convey announcements to deaf and hard of hearing incarcerated people.  Instead, they call into question whether pagers would function on yards.  Defendants claim that in Massachusetts, pagers only work in housing units and not yards, and that the deaf or hard of hearing person may still need to approach staff to get additional information about the page.  Dkt. No. 3631-7 at 8-9, 45.  However, Plaintiffs cite evidence that "the vast majority of jurisdictions cited above . . . do not limit pagers to functioning only within housing units."  Dkt. No. 3630 at 36 (citing evidence from seven states utilizing paging devices) (emphasis in original).

Defendants also question the functionality of paging systems.  In his declaration, Captain Mebane states that unnamed Minnesota correctional officials told him their pager system has "failed multiple audits due to factors such as staff shortages or prison incidents . . . . " *Id.* at 9.  Even assuming the truth of these hearsay statements, Defendants provide no detail about the type of audits the system failed, how often, and what constituted a failure (e.g., whether people were successfully receiving announcements through the paging system 5% or 95% of the time, or somewhere in between). Without more information from Defendants, we find this objection unpersuasive.

Defendants also suggest a paging system is not necessary because of the existence of the ducating system, which Defendants argue "is extremely effective and provides class members with notice a day in advance of an appointment."  Dkt. No. 3630 at 53.  The same ducating system was in place at the time of our previous reports and did not prevent us from finding that deaf and hard of hearing people at SATF were not consistently receiving effective communication of announcements.  Defendants nonetheless expend significant effort arguing

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

that the ducating system "ensures class members receive individualized notice of important appointments and that class members attend those appointments." Dkt. No. 3630 at 54. As discussed above, our findings about the failures of the existing system were undisputed, and the Court ordered changes. Simply pointing to the existing system and describing it as adequate does not comply with the Court's direction.

It is true that the ducating system can be effective in providing advanced notice of certain events, but it does not ensure real-time notification of announcements. Real-time notification of announcements, including that a person is being called to the medical clinic, is still necessary for several reasons. First, many medical appointments happen with no ducat at all. *See* Dkt. No. 3630-17 at 4-5. For example, when an incarcerated person puts in a sick call slip that describes urgent medical symptoms, they must be seen in the clinic the same day, and a ducat would not be issued because there is not enough time to issue one in advance. *Id.* (noting that a review of records at SATF for a one-week period revealed "several hundred patients who were seen by nursing staff on the same day their sick call slip was received"). Additionally, medical appointments that are ducated frequently occur at times other than the time that was ducated. *Id.* at 5 (noting a recent healthcare audit of SATF found that "more than half of all appointments took place at a significantly different time than what was written on the ducat."). Medical staff often call for a patient earlier than the ducated time, and housing unit officers have to make an announcement for the patient to report to medical at that time. *See id.* (noting healthcare audit found 28.5% of the time, patients arrived an hour or more before the scheduled appointment time due to "medical providers requesting patients to arrive early"); Dkt. No. 3630-3 at 9 (class member providing examples of appointments that he was called for earlier or later than ducated time).

Contrary to Defendants' claim, a paging system would not "simply be a digital version of the [ducating] system." Dkt. No. 3630 at 53. Ducating gives advance notice of a scheduled future appointment. A paging system would let incarcerated people know when the appointment

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1   is actually happening.  And ducating does nothing to ensure that class members know of other,

2   non-ducated events, such as that laundry is running (as scheduled or not), or that the medication

3   line is open.  A paging device, unlike a ducat, would provide deaf and hard of hearing people

4   who cannot hear the PA system with the same level of contemporaneous information that hearing

5   people receive through the PA system, therefore ensuring communication for deaf and hard of

6   hearing class members that is "as effective as communication with others." *Updike*, 870 F.3d at

7   949 (quoting 28 C.F.R. § 35.160(a)(1)).

8        In arguing against the implementation of a paging system, Defendants also point to "the

9   unique restrictions of the carceral environment."  Dkt. No. 3630 at 58.  Specifically, they rely on

10  Dr. Swett, who references "stringent security and operational requirements of correctional

11  facilities" but does not explain the connection between those requirements and the deployment of

12  a pager system.  Dkt. No. 3631-9 at ¶¶ 17-18.  Dr. Swett also mentions "infrastructure" concerns

13  such as "adequate electrical wiring, sufficient network capacity, and dedicated spaces for

14  installing and maintaining these technologies."  *Id.* at ¶ 18.  It is unclear what information Dr.

15  Swett, who is not a correctional expert and apparently has no experience working in a prison

16  environment (*see* Dkt. No. 3631-9 at 26-27 (Dr. Swett's resume)), is drawing on for his

17  statement about infrastructure concerns.  Nor does he explain why those challenges would be

18  insurmountable, particularly in light of the fact that several other prison systems have apparently

19  surmounted them.  Finally, Dr. Swett also references "[f]inancial constraints and protracted

20  approval processes . . . . "  *Id.*  Again, not only do these statements lack factual detail or support,

21  but it is unclear what relevant expertise Dr. Swett has to offer about the state's financial situation

22  and approval process.  Defendants also cite to the declaration of S. Dumalig, the Chief of

23  CDCR's Enterprise Information Services (EIS), but this declaration also does not provide

24  reasons why pagers cannot be implemented; it only sets out the steps CDCR would need to take

25  to implement a paging system.  Dkt. No. 3631-3 at 2-3.  Defendants' generalized assertions

26  about the challenges of implementing a pager system in a prison environment are simply too

27

28

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

vague and lacking in factual support to justify denying the requested accommodation based on
penological interest, undue burden, or a direct threat to safety (*See* Dkt. No. 681 at 14),
particularly when Plaintiffs have proffered evidence that other carceral environments have
implemented a paging system.

Finally, Dr. Swett and Defendants criticize Dr. Borne and Plaintiffs for recommending a
paging system, which Defendants characterize as "their preferred method for the effective
communication of announcements," without "conducting a direct assessment of their clients'
individualized needs." Dkt. No. 3630 at 58. This criticism is misplaced. It is not Plaintiffs'
responsibility to assess and meet the individual accommodation needs of every deaf and hard of
hearing person in CDCR; that is Defendants' responsibility. *See Updike*, 870 F.3d at 954 (noting
"Title II and § 504 create a duty to gather sufficient information from the [disabled individual]
and qualified experts as needed to determine what accommodations are necessary.") (internal
quotation omitted). Defendants' and Plaintiffs' experts agree that individualized assessments of
class members with hearing disabilities are crucial to ensuring they are properly accommodated
and receive equally effective communication. *See* Dkt. No. 3631-9 at ¶ 20 (Dr. Swett attesting,
"I cannot emphasize strongly enough that conducting individualized assessments is crucial to
determine the specific needs, preferred communication modes, and required Assistive
Technology for an individual with disabilities . . . . Individual assessments involve identifying
and confirming preferred forms of communication, determining effective accessibility systems
for the individual, and evaluating the environment to ensure the selected communication
methods are accessible and usable."); Dkt. No. 3630-11 at 11 (Dr. Borne attesting that
understanding a person's hearing disability and communication needs requires "an in-depth
interview of the person to understand their environments, their communicative needs in those
environments, and the challenges they are experiencing.").[8] Yet Defendants have not arranged

---

[8] It appears that several other jurisdictions require individualized assessment of deaf and hard of
hearing incarcerated people's accommodation needs. *See* Dkt. No. 3630-12 at 213 (Kentucky

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

for all hearing disabled class members to be individually assessed for their accommodation and communication needs.[9]

As discussed above, Defendants have been on notice for years that many deaf and hard of hearing people at SATF are not receiving announcements because of their disability, yet Defendants have not fulfilled their "affirmative duty to conduct an investigation into what constitutes a reasonable accommodation" for these class members to receive equally effective communication of announcements.  *See Armstrong*, 724 F. Supp. 3d at 917.  Nor have Defendants proposed either a solution that does not rely on staff or ADA workers to deliver announcements to deaf and hard of hearing people, or a well-audited system that does rely on that personal delivery of announcements, as the Court ordered them to do.  *See* Dkt. No. 3538 at 5.

The Court has given Defendants nearly two years to correct CDCR's failure to effectively communicate announcements to deaf and hard of hearing people at SATF, and Defendants have

---

settlement monitor recommending "auxiliary aid evaluation" and education about available accommodations within two weeks of a deaf or hard of hearing person's arrival to prison, or upon identification of a person as deaf or hard of hearing); *Id.* at 43-44 (Colorado settlement agreement requiring everyone with a hearing disability to be "assessed by a qualified professional to determine the auxiliary aids and services reasonably necessary to ensure equally effective communication and access to services"); Dkt. No. 3630-13 at 393 (Wisconsin settlement agreement requiring Wisconsin Department of Corrections to develop a communication plan for every deaf or hard of hearing incarcerated person and, at incarcerated person's request or if there is a disagreement regarding accommodations, seek an evaluation from an outside professional regarding recommendations for hearing aids and auxiliary aids).

[9] Defendants have had their assistive device expert conduct individualized assessments of the four DPH class members then residing at SATF.  Unfortunately, Defendants' expert provides no information regarding whether he believed those DPH class members were receiving equally effective communication of announcements, or what accommodations he recommended for these DPH class members to begin receiving equal access to announcements.  Dkt. No. 3631-9 at ¶ 14.  Nor do Defendants discuss whether Dr. Swett was permitted to consider recommending a paging device to convey announcements, or whether he thought a paging device would assist DPH class members if it were available to them.  Therefore, the record is not clear that these individualized assessments were sufficient, and in any event, DNH class members have not been assessed at all.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

failed to do so.  Because the Court's repeated attempts to correct noncompliance with the ADA and ARP through "less intrusive means" have failed, we recommend that the Court now order "more specific mechanisms of compliance."  *See Armstrong v. Newsom*, 58 F.4th 1283, 1297 (9th Cir. 2023) ("Under the PLRA, [t]he overarching inquiry is whether the same vindication of federal rights could have been achieved with less involvement by the court in directing the details of prison operations. A district court may, however, provide specific instructions to the State without running afoul of the PLRA. In particular, when a district court has previously tried to correct the deficiencies in prison operations through less intrusive means, and those attempts have failed, relief prescribing more specific mechanisms of compliance is appropriate.") (internal citations and quotation marks omitted)).

We therefore recommend that the Court order 1) that Defendants implement a paging system at SATF to convey real-time visual and tactile notification of announcements to deaf and hard of hearing people who require a paging device in order to receive equally effective communication of announcements made over the PA system.  The system should convey announcements to a wearable and portable device, which can be worn throughout the institution (including on the yard) and which stores a record of all transmitted messages for auditing later; 2) that Defendants develop policies and procedures that require them to utilize a qualified expert to conduct individualized assessments of every current and future DPH and DNH class member at SATF to determine what auxiliary aids, including a paging device, or other accommodations, including real-time captioning, are necessary to ensure that they receive equal access to programs, service, and activities[10], and equally effective communication, including communication of real-time announcements made over the PA system.  The qualified expert could be a CDCR/CCHCS employee or an outside consultant, but they must be a hearing healthcare professional with assistive technology experience or an assistive technology

---

[10] The need to evaluate DPH and DNH class members at SATF for not only their accommodation needs with respect to announcements, but also with respect to access to all programs, services, and activities, will be discussed below.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

professional who has knowledge regarding hearing loss, experience evaluating people who are deaf and hard of hearing, and expertise with accommodations available to deaf and hard of hearing people. We recommend the Court order that these policies and procedures ensure that CDCR gives primary consideration to each DPH and DNH class member's preferred form of accommodation unless Defendants can show that other equally effective means of communication are available, or the class member's choice presents an undue burden or fundamentally alters Defendants' programs or activities.

We further recommend that the Court order Defendants to implement the paging system at SATF within 120 days of the Court's order, and that Defendants must seek relief from the Court if they are unable to meet this deadline. We also recommend that the Court order Defendants to share with Plaintiffs and the Court Expert draft policies and procedures for conducting individual assessments of DPH and DNH class members at SATF within 60 days of the Court's order. Within seven days of Defendants producing the draft policies and procedures, Plaintiffs shall provide comments to Defendants on the drafts. Defendants, after considering the comments of Plaintiffs, shall issue the policies and procedures within 75 days of the Court's order. Within seven days of the issuance of the policies and procedures, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to their adequacy. CDCR shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions. If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

### ii.    Visual display boards

Plaintiffs claim visual display boards "would be useful" for deaf and hard of hearing people because they would communicate the content of longer group announcements. They would also serve as a backup method of communicating announcements were the paging system to experience an outage.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1    Plaintiffs have not provided sufficient support that updated visual display boards are
2    required for staff to communicate with DPH and DNH class members at SATF if class members
3    who are unable to hear announcements are receiving announcements via paging devices.
4    Therefore, the Court Expert recommends the Court deny this request without prejudice to
5    Plaintiffs' raising it in the future if they believe visual display boards are needed even with the
6    implementation of a paging system.

7               **iii.  "Evaluate and upgrade" existing visual alarm and PA systems**

8    Plaintiffs claim that the PA system at SATF is difficult to hear, and therefore Defendants
9    should be ordered to evaluate and potentially upgrade the PA system.  But deaf and hard of
10   hearing class members at SATF who receive paging devices will not need to rely on the PA
11   system to receive announcements.  Defendants have also provided evidence that the PA system
12   at SATF was recently tested by Plant Operations and is operational.  Dkt. No. 3631-7 at ¶ 9.

13   Plaintiffs also claim that visual alarms at SATF are hard to see.  The record is not clear if
14   paging devices would also be used to notify class members of emergencies and alarms, in which
15   case upgraded visual alarms may be unnecessary.  Class members are certainly entitled to
16   equally effective communication of alarms or emergencies, but the record is not clear whether
17   this can be accomplished with paging devices.  Therefore, the Court Expert recommends the
18   Court deny this request without prejudice to Plaintiffs to raising it in the future if they believe
19   upgraded visual alarms are needed even with the implementation of a paging system.

20   **V.  Class Member Training Regarding Captioned Phones[11] (Item 9)**

21   Stipulation item 9 required Defendants to provide the Court Expert and Plaintiffs with "a
22   draft proposal regarding how and by when CDCR will provide training directly to deaf and hard
23   of hearing class members at SATF regarding how to sign up for captioned phones and how to
24   operate captioned phones."  Dkt. No. 3538 at 6.  The Court also ordered the parties to meet and

25

26   [11] We use the term "captioned phones" throughout to encompass TTY/TDD and captioned
27   phones.

28

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

confer to discuss the proposal and, if the parties could not agree, to brief remaining disputes in the joint statement. *Id.*

Following extensive discussions, the parties reached agreement on class member training materials regarding captioned phones. However, the parties disagree as to whether and how class member training should be made accessible for class members designated DNH, and how Defendants will monitor the efficacy of class member training. Dkt. No. 3630 at 61, 67, 75-76.

### A. Captioning for DNH Class Members During Training

Defendants outline a plan for identifying all DPH, DNH, and DPS class members at SATF and offering them in-person training on captioned phones. Dkt. No. 3630 at 69; Dkt. No. 3631-6 at ¶¶ 8-9. For DPH class members, Compliance Sergeants will provide one-on-one training in "a quiet setting" and use the class members' iPad or iPhone, which provides automated captioning, during the training. Dkt. No. 3630 at 69. Compliance Sergeants will monitor the iPad/iPhone as it captions for accuracy, correct errors, and check for understanding during the training session. *Id.* Although Plaintiffs' counsel has concerns about the accuracy of transcription on iPads/iPhones and originally requested CART for all trainings, they do not object to Defendants' proposal for training DPH class members. *Id.* at 62.

For DNH and DPS class members at SATF, Compliance Sergeants will provide training "in small groups of no more than six people with similar disabilities and communication needs." *Id.* at 69. The Compliance Sergeants will be responsible for ensuring that during the training these class members have access to any of their already documented accommodations, such as "iPads for captions if they choose to, sign language interpreters, hearing aids, pocket talkers, written notes, and foreign language interpreters, if required," and that "Compliance Sergeants must ensure the accommodation has achieved effective communication." Dkt. No. 3631-6 at ¶ 10. In addition to the in-person training on how to use captioned phones, CDCR has agreed to put up informational posters and upload to all SATF tablets a detailed information booklet about

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1   the use of captioned phones, and CDCR will stream a video on the Division of Rehabilitative

2   Programs's TV channel describing captioned phones. *Id*. at ¶ 12.

3       Defendants' policy for training DNH class members at SATF relies on an assumption

4   that the DNH class members' existing accommodations (for example, use of hearing aids or

5   written notes) will suffice to make the training accessible.  Current CDCR policy requires DNH,

6   DPH, or DPS class members to be interviewed within 14 days of their code designation or upon

7   their arrival at the institution to document their primary and secondary forms of effective

8   communication.  Dkt. No. 3631-6 at 346-347.  The policy memo is unclear as to who conducts

9   the interview, but the ADA Coordinator or their designee is responsible for documenting the

10  primary and secondary methods of communication in SOMS.  *Id.*  This existing process for

11  determining the effective communication methods for DPH and DNH class members is

12  inadequate for two reasons: class members are not offered real-time captioning, and an expert is

13  not consulted.

14      First, it appears that class members are not given an opportunity to select real-time

15  captioning or transcription as their preferred accommodation to ensure effective communication.

16  *See id.* (for DPH, DNH, or DPS class members who do not use sign language, "[e]xamples of

17  primary methods of communication . . . are written notes, speak loudly and clearly, read lips,

18  hearing aids, and other assistive listening devices.").  But Plaintiffs present evidence that many

19  DNH class members at SATF may need real-time captioning for effective communication

20  because they cannot hear speech well in a group setting or loud environment, even with the

21  assistance of their existing accommodations like hearing aids or other amplification.  Dkt. No.

22  3630-11 at 10-12 (Plaintiffs' expert noting 50% of DNH people at SATF whose records she

23  reviewed experienced severe hearing loss, meaning "even with hearing aids, speech may be

24  difficult to understand," and 13% experienced profound hearing loss, meaning "[i]t is difficult to

25  hear and understand sounds, even when amplified").  And it does not appear that using written

26  notes is an adequate accommodation in many settings for class members who need real-time

27

28

31

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

captioning.  *See* Dkt. No. 3446 at 39-40 (DPH class member with written notes as his primary method of communication was denied access to education and programming due to lack of captioning).  For example, Defendants do not explain how a Compliance Sergeant, conducting a training for six people, will simultaneously provide written notes conveying all spoken information to a class member who requires that accommodation.

Second, it does not appear that an expert is consulted during the process of interviewing the incarcerated person to determine the accommodations they need for effective communication.  Defendants have "an affirmative duty to conduct an investigation into what constitutes a reasonable accommodation" for DNH class members at SATF and determine their "actual needs" to meaningfully participate in the training.  *Armstrong*, 724 F. Supp. 3d at 917. But Defendants have not discussed with individual DNH class members, in consultation with experts (*see Updike*, 870 F.3d at 954), whether they need captioning or other accommodations to effectively communicate in this training or in other programs, services and activities.  Instead, Defendants assert that if a class member believes they need captioning, "they can make that request through the reasonable accommodation process" and that only then will an "individualized assessment" take place "[i]n consultation with [CDCR's contracted] ADA Assistive Technology Professional."  Dkt. No. 3631-6 at ¶ 18.  However, a policy that relies on class members to request an accommodation, particularly an accommodation they may not know is available,[12] is not in compliance with the ADA or ARP.  This is particularly true given that Defendants are on notice of the potential need for the captioning accommodation through Plaintiffs' advocacy letters.  *See Armstrong*, 724 F. Supp. 3d at 917 (finding Defendants were "on notice, by virtue of their DPV and DNV disability codes, that blind and low-vision class members need accommodations" and that therefore Defendants had "an affirmative duty to

_____

[12] For those DNH class member who discovered (via other incarcerated people or Plaintiffs' counsel) that they could ask for an iPad that provided transcription, many DNH class members at SATF have repeatedly been denied that requested accommodation and have not been given an individualized assessment to determine whether they need it. Dkt. No. 3630-12 at 9-18.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

conduct an investigation into what constitutes a reasonable accommodation for each DPV and DNV class member based on his individual needs, and to provide, without waiting for a request, reasonable accommodations to each of them while taking into account his individual preferences and protecting his privacy and independence").

Had deaf and hard of hearing class members at SATF received an individualized assessment by an expert to determine what types of accommodations they needed to participate in the training, it would not be necessary to offer captioning to all deaf and hard of hearing class members, but only to those who have previously been found to need captioning. As discussed above in section IV, we recommend the Court order Defendants to work with a qualified expert to individually assess all current and future DPH and DNH class members at SATF to determine what accommodations they need, including captioning, to meaningfully participate in prison programs, services, and activities including trainings. Once Defendants have individually assessed the needs of all deaf and hard of hearing class members in consultation with an expert, CDCR can offer only the accommodations that each individual needs at future class member trainings or other prison activities.

However, recognizing that it will take time to individually assess all DPH and DNH class members at SATF, and because the parties are understandably eager to conduct this training for class members quickly, the Court Expert recommends that the Court order Defendants to take affirmative steps immediately to ensure that the trainings for captioned phones are accessible for all DPH and DNH class members at SATF. Therefore, we recommend that within 30 days of the date of the Court's order, Defendants shall produce to Plaintiffs' counsel and the Court Expert its plan to make class member captioned phone training at SATF accessible by either: 1) providing CART[13] at all the class member captioned phone trainings at SATF; or 2) informing all DNH and DPH class members at SATF about the upcoming captioned phone training and offering

---

[13] As discussed below, CART should be provided by an in-person transcriptionist until Defendants are able to show they have resolved audio quality and connectivity issues sufficiently to ensure the functionality of remote CART.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

them the option to attend in a group setting with their existing accommodations or to attend a one-on-one training with the assistance of an iPad with transcription.  Within seven days of producing the plan, Plaintiffs shall provide comments to Defendants regarding the plan.  Defendants, after considering the comments of Plaintiffs, shall issue the plan and begin class member training within 45 days of the Court's order.  Within seven days of the implementation of the plan, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the plan's adequacy.  CDCR shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions.  If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

Plaintiffs request that any class member who finds the iPad "helpful" during captioned phone training be allowed to take the iPad as an interim accommodation pending review by a specialist.  We recommend that the Court deny this request by Plaintiffs as being outside the scope of the stipulation and not necessary to accomplish the objective of the stipulation.

**B. Monitoring of Efficacy of Training**

The parties disagree about CDCR's plan to monitor the effectiveness of the captioned phone training for class members.  The parties agreed that Compliance Sergeants will survey class members after they have been trained to use the captioned phones "to monitor the efficacy of the training and determine if follow-up training is needed."  Dkt. No. 3631-6 at 57.  The parties disagree about how they will be surveyed, including the questions Compliance Sergeants will ask class members.

Although monitoring of a new training is undoubtedly important (*see Clark v. California*, 739 F. Supp. 2d 1168, 1210 (N.D. Cal. 2010) (training staff without "evaluat[ing] the effectiveness of their training" was not compliant with *Clark* Remedial Plan)), the details of what types of monitoring questions Defendants will ask is outside the scope of the stipulation, which called for Defendants to propose how and by when they would train class members.  Defendants should roll out the training and their plan to monitor the effectiveness of training through

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

Compliance Sergeant surveys, and Plaintiffs can monitor Defendants' efforts. We therefore recommend that the Court deny Plaintiffs' request regarding the monitoring of class member training on captioned phones, without prejudice to their raising this request in the future.

**VI.    Staff Training Regarding Captioned Phones (Item 10)**

Stipulation item 10 required Defendants to provide the Court Expert and Plaintiffs with "a draft proposal regarding how and by when CDCR will provide training to ADA and correctional housing staff at SATF regarding how class members may sign up for captioned phones and how to operate captioned phones." Dkt. No. 3538 at 6-7. The Court also ordered the parties to meet and confer following the issuance of the draft proposal and to brief any remaining disputes in the joint statement. *Id.*

**A.  Training**

The parties have largely agreed on the training that will be provided to both ADA and housing unit staff at SATF regarding class member access to captioned phones. The parties disagree about how staff should be trained to handle access to captioned phones during lockdowns or modified programming, including those that occur due to security concerns. Defendants propose that SATF staff be trained to allow access to phones as a reasonable accommodation "when security concerns would not otherwise prohibit access." Dkt. No. 3631-6 at 88-89. In addition, the updated policy regarding captioned phones instructs staff that "[i]f dayroom program is modified class members shall still be able to access the TTY/TDD and CapTel captioned phones in their own or other designated housing units and chapels by requesting access from housing unit staff." *Id.*

Plaintiffs argue that the directive to staff to allow access to captioned phones "when security concerns would not otherwise prohibit access" is too vague and that staff need to be trained to distinguish between situations in which "a security concern constitutes a legitimate penological interest or direct threat that justifies denying a requested accommodation" and those that do not justify denial of an accommodation. Dkt. No. 3630 at 80. Plaintiffs distinguish

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

between situations that would clearly prevent staff from providing a requested accommodation, such as staff providing emergency medical assistance or preserving a crime scene, and situations that would not appear to justify denial of accommodations, such as a housing unit being on lockdown for five days due to an incident that occurred at a different facility. *Id.* at 80-81. Plaintiffs request that Defendants "provide clear direction to staff regarding how to decide when a security concern may prohibit access to a captioned phone, including based on the most common scenarios at SATF that lead to modified programming or lockdowns." Dkt. No. 3630 at 83.

Defendants argue that Plaintiffs' request for clear training regarding accommodating phone access during lockdowns or modified programming is outside the scope of the stipulation. We disagree. How staff should be trained to accommodate phone access during modified programming or lockdowns is within the scope of item 10, which requires Defendants to draft a proposal addressing how "CDCR will provide training to ADA and correctional housing staff at SATF regarding how class members may sign up for captioned phones and how to operate captioned phones." Dkt. No. 3538 at 6-7. The issue is how staff will be trained to provide access to and operate these phones, and it is appropriate to consider as part of that training the times class members are able to access the phones. The parties disagree on an aspect of that training, and Plaintiffs have properly brought that disagreement to the Court.

Defendants also argue that "situations may arise in which temporary denial of an accommodation is warranted because of a legitimate penological interest" and that "CDCR staff are sufficiently trained on how to access [sic] security threats." Dkt. No. 3630 at 88-89; Dkt. No. 3631-6 at 14-15. But CDCR has not cited any existing training that helps staff distinguish between security threats that require temporary denial of accommodations and those that do not. The Court Expert agrees that a single sentence instructing staff to allow access to phones "when security concerns would not otherwise prohibit access" is inadequate to inform staff how to

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

distinguish between scenarios that, due to security concerns, allow staff to temporarily deny an accommodation and those that do not.

The Court Expert recommends that the Court order Defendants to provide updated proposed training to SATF staff that includes detailed guidance on when a security concern may prohibit access to a captioned phone, in conformity with ARP Section H.1. The training must include guidance on whether captioned phone access is required during the most common scenarios at SATF that lead to modified programming or lockdowns.

We recommend that the Court order Defendants to share with Plaintiffs and the Court Expert the draft staff training materials within 30 days of the Court's order. Within seven days of Defendants producing the training materials, Plaintiffs shall provide comments to Defendants regarding the training materials. Defendants, after considering the comments of Plaintiffs, shall implement the training materials and begin training staff within 45 days of the Court's order. Within seven days of the implementation of the training materials, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the adequacy of the training materials. CDCR shall ensure that staff with sufficient authority to amend and approve training materials attend all meet-and-confer sessions. If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

**B. Monitoring**

Plaintiffs also request that correctional staff be required to "document their reasoning, determination, and manner of providing the person with a disability with access to the captioned phone at the first available opportunity" so that Defendants can monitor staff decisions and the efficacy of their training. Dkt. No. 3630 at 83. As discussed above regarding class member training, while it is certainly important for Defendants to monitor that staff are providing appropriate access to captioned phones, we find it is outside the scope of the stipulation to order Defendants to engage in a particular type of monitoring regarding captioned phones. We

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

therefore recommend that the Court deny Plaintiffs' request regarding the monitoring of staff training on captioned phones, without prejudice to their raising this request in the future.

## VII.    CART (Item 13)

### A.  Introduction

In our first report regarding SATF, we described Person E, a class member who was deafened later in life and who did not know sign language.  We found that Person E was unable to meaningfully participate in education and programming because he was unable to hear or sign and had been denied requests for CART[14] in classes and programs.  Dkt. No. 3446 at 39-40.  As a result, we recommended that SATF "provide CART or another reasonable accommodation that would allow deaf people who cannot sign to meaningfully participate in hearings, education, and programs, including religious services, substance abuse treatment programs, and self-help groups."  *Id.* at 41.

As discussed below, CDCR has been on notice for years about the need for CART or another reasonable accommodation to allow deaf and hard of hearing people at SATF who require real-time captioning to meaningfully participate in programs, services, and activities. The Court has given Defendants approximately two years to implement a real-time captioning solution, but Defendants have failed to come up with a system that will ensure that deaf and hard of hearing people at SATF receive communication in group settings, like religious services, 12-step classes, or education, that is "as effective as communication with others.'" *Updike*, 870 F.3d at 949 (quoting 28 C.F.R. § 35.160(a)(1)).  As a result, we recommend the Court order more specific measures to achieve compliance.

---

[14] Communication Access Realtime Translation (CART), a form of real-time captioning, is the instant translation of spoken language into text, transcribed by a human reporter who may appear remotely or in person.  The transcribed text is displayed on a computer monitor or projected on a screen for the deaf or hard of hearing person to read.  *See* National Association of the Deaf, *Communication Access Realtime Translation (CART)* (2024), *available at* https://www.nad.org/resources/technology/captioning-for-access/communication-access-realtime-translation/

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    The Court's Orders and Background**

**i.    Negotiations about CART prior to SATF investigation**

Plaintiffs have been requesting CART for deaf non-signers, including those at SATF, since at least July 2019.  Dkt. No. 2936 at 12, 65-73.  In letters between July 2019 and February 2020, Plaintiffs' counsel wrote to CDCR Office of Legal Affairs to request that CDCR implement CART at SATF.  *Id.*  Plaintiffs explained in detail the struggles of a deaf class member at SATF who did not know sign language and who had been unable to fully participate in programs, services, and activities without real-time captioning of what was being said.  *Id.*  Plaintiffs also provided the result of a survey they conducted with deaf people who did not know sign language throughout the state, which found that those class members "expressed feelings of isolation in prison due to their disabilities, an inability to fully participate in rehabilitative programs, and an unawareness of accommodations that may be able to help them."  Dkt. No. 3631-4 at 20-26.  We are not aware of CDCR responding to Plaintiffs' 2019 and 2020 advocacy letters requesting CART.

In the fall of 2020, the parties met to discuss accommodations, including CART, for deaf and hard of hearing class members.  Dkt. No. 3153 at 19.

On March 15, 2021, Defendants informed the Court and Plaintiffs that they had "explored the option of amending the current contract with the current vendor for Video Remote Interpreting … but this is not possible due to rules related to the contracting and bidding-process.  Once, however, the contract expires on June 30, 2022, Defendants will seek to add this service to the next contract in accordance with the applicable process."  Dkt. No. 3227 at 24.  Defendants did not explain why they could not enter into a new and separate contract for CART services immediately.  However, a few months later in May 2021, Defendants told the Court that CDCR had "request[ed] quotes" to obtain CART services "for the next fiscal year beginning July 1, 2021."  Dkt. No. 3266 at 26.  Plaintiffs confirmed that Defendants had assured them that CDCR

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

"had begun the bidding process for CART services and, if they are able to get all the information together, CART should be available in the prisons starting July 2021." *Id.*

On July 15, 2021, Defendants told the Court that "funding has been approved" for CART and that the Office of Correctional Education (OCE) was requesting quotes to add CART for the current fiscal year. Dkt. No. 3296 at 19. Defendants also stated that OCE would seek to add CART to the contract with its vendor for Video Remote Interpreting of sign language once the contract expired in June 2022. *Id.*

On September 15, 2021, Defendants informed the Court that, contrary to their prior statement that OCE would seek to add CART as a service in its statewide Video Remote Interpreting contract, CDCR was actually seeking to launch CART at only one institution – CMF – as a "proof-of-concept." Dkt. No. 3322 at 18. Defendants stated they would test CART at CMF, Microsoft Ease of Access features at CCWF, and Microsoft Teams real-time captioning at San Quentin. Dkt. No. 3322 at 18-19. Nonetheless, as of March 2022, the testing of CART at CMF still had not occurred due to "modified programming caused by the COVID-19 pandemic." Dkt. No. 3391 at 20. During this time, Plaintiffs continued to ask that CART be implemented at SATF urgently, given that there was at least one deaf class member there who could not access programming without it. *Id.* at 19.

By May 2022, the pilot of Microsoft Teams captioning at San Quentin was completed (Dkt. No. 3412 at 18), but as of November 2022, the "proof-of-concept" of CART and alternative software that automatically generated captions had still not been accomplished. Dkt. No. 3440 at 14.

Thus, despite being on notice since at least July 2019 that deaf non-signers could not fully access programs, services, and activities, by the time we issued our initial report on SATF in December 2022, CDCR had still not implemented CART or any other effective accommodation for deaf non-signers at SATF to be able to communicate in classes.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1

ii.    **The Court Expert's SATF investigation**

2

Following our findings that deaf and hard of hearing people who cannot sign were being

3

denied access to programs and education, we recommended that SATF "provide CART or

4

another reasonable accommodation that would allow deaf people who cannot sign to

5

meaningfully participate in hearings, education, and programs, including religious services,

6

substance abuse treatment programs, and self-help groups." Dkt. No. 3446 at 14, 37-42. The

7

Court adopted our undisputed findings and ordered Defendants to implement CART or an

8

alternative reasonable accommodation at SATF "as soon as possible." Dkt. No. 3467 at 3.

9

In our second report, we found that CART was only available at SATF for due process

10

events, but CDCR was "working to bring CART to SATF and other institutions for all programs,

11

services, and activities, and not just due process events." Dkt. No. 3500 at 14. We noted that to

12

accomplish this rollout to all programs, services, and activities, "the Department must survey

13

connectivity at each institution to determine where programs utilizing CART can be hosted.

14

They will also need to procure necessary additional equipment for operating CART in those

15

locations." *Id.*

16

In October 2023, CDCR informed the Court that EIS had conducted connectivity testing

17

at SATF and would soon be rolling out remote CART for all programming areas at SATF:

18

19

> Phase Two will expand CART to all programming areas at SATF and at the ten
> other institutions. Defendants completed the process of identifying these
> programming areas and testing them for internet and Wi-Fi access, which are

20

> required for CART service and which are, anticipated, to be available. Defendants
> are testing two new devices to deploy in these areas at SATF. Testing in the

21

> correctional setting was completed by October 4, 2023 by Enterprise Information

22

> Services (EIS) and EIS will conduct further security testing on the actual devices

23

> to be used, with CART service available in those areas two weeks later.

24

Dkt. No. 3515-1 at ¶ 19.

25

However, in November 2023, Defendants decided to rely on ViewSonic, an artificial

26

intelligence (AI) generated captioning technology, instead of CART for non-due process events,

27

28

---

41

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

despite Plaintiffs' concerns about whether this technology could effectively accommodate deaf and hard of hearing class members.[15]  In light of this change, the Court Expert recommended that CDCR demonstrate ViewSonic in various institutional settings, and that the parties then meet and confer to determine if ViewSonic is "an adequate accommodation."  Dkt. No. 3529 at 9-10. The parties then stipulated, and the Court ordered, as follows:

> Within 60 days of the Court's order on this stipulation, Defendants must provide Plaintiffs with a demonstration of the whiteboard captioning technology in various institutional settings. Defendants must have a subject matter expert present at the demonstration to answer Plaintiffs' questions regarding the capabilities of the whiteboards' captioning technology. The parties shall then meet and confer with the Court Expert to attempt to resolve any outstanding disputes regarding whether the whiteboard captioning technology is an adequate accommodation, and the Court Expert will report to the Court on the resolution of these issues.

Dkt. No. 3538 at 8.

On March 27, 2024, the Court Expert and his staff, Plaintiffs' counsel, and representatives from CDCR attended a demonstration of both ViewSonic and remote CART at the San Quentin Rehabilitation Center.  Defendants later produced videos showing demonstrations of ViewSonic and remote CART at San Quentin in March 2024 and at the California Institution for Men on June 21, 2024.  Dkt. No. 3631-6 at ¶ 70.

### A.    Evidentiary Issues

#### i.    Defendants' objections

Defendants ask the Court to exclude the opinions of two deaf individuals presented by Plaintiffs, Etienne Harvey and Tremmel Watson, on the grounds that they are not experts in the assistive technologies at issue.

---

[15] In December 2022, Plaintiffs objected to the use of automatically generated captions, as they argued that automatically generating caption software was not an effective accommodation given that, among other problems, it does not "indicate who is speaking." *Id.* at n. 4; Dkt. No. 3631-6 at 404.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

Defendants ask to exclude paragraphs 35 through 60 of Mr. Watson's declaration, the conclusion and summary sections, as well as Plaintiffs' reliance on these sections, because "Watson has not established that he is qualified to opine on the critical specifications of the captioning technologies at issue" and because he "has not shown that he has any specialized knowledge in assistive technology, and he fails to provide any facts that would demonstrate that his status as an end-user of captioning technology qualifies him as an expert in the purported efficiencies of that technology." Dkt. No. 3630 at 133.

Defendants ask to exclude paragraphs 18 through 48 of Mr. Harvey's declaration, the conclusion section, and Plaintiffs' reliance on these sections as improper expert opinion, "as Harvey has not established that he has the requisite expertise to opine on the captioning technologies at issue" and because Harvey acknowledged he does not have previous experience with Microsoft AI.  Dkt. No. 3630 at 133.

Plaintiffs argue that Watson and Harvey are experts based on their personal experience, and even if they are not experts, their declarations may be admitted as lay opinion testimony under Federal Rule of Evidence 701.   Plaintiffs describe Mr. Watson as "a deaf, formerly incarcerated technology entrepreneur who has used CART, ViewSonic, and other captioning technologies in a variety of personal and professional contexts.  He is an 'every day' user of captioning and relies on captions and written notes as his primary means of communication." Dkt. No. 3630 at 108.  Plaintiffs describe Harvey as "a retired, deaf professor of ASL and certified sign language interpreter who has worked for over four decades in the D/deaf and hard-of-hearing community and uses captioning technologies extensively with his students and clients and in his personal life."  *Id.* at 108.

### 1. Legal Standard

Rule 702 requires that "an expert be qualified either by 'knowledge, skill, experience, training, or education.'" *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (quoting Fed. R. Evid. 702).  Personal experience is relevant to a witness's expertise.  *Millay v.*

43

1    *Surry Sch. Dep't*, No. 1:07-CV-00178-JAW, 2011 WL 1122132, at *7 (D. Me. Mar. 24, 2011)

2    ("The Federal Rules are not blind to the fact that expertise is often gained by practical

3    experience."); *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (quoting

4    *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) ("[w]hen evaluating specialized or

5    technical expert opinion testimony, 'the relevant reliability concerns may focus upon personal

6    knowledge or experience.'").

7           Rule 701 allows for lay opinion testimony so long as it is "(a) rationally based on the

8    witness's perception; (b) helpful to clearly understanding the witness's testimony or to

9    determining a fact in issue; and (c) not based on scientific, technical, or other specialized

10   knowledge within the scope of Rule 702." Fed. R. Evid. 701.

                                          **2.   Analysis**

12          We find that Watson and Harvey are not attesting to technical matters beyond their

13   expertise (such as the code language ViewSonic uses or the type of AI algorithm it uses) but

14   to features of ViewSonic that they could observe by viewing the demonstrations.  They are

15   offering their opinions on how a deaf or hard of hearing person experiences captioning,

16   something they are certainly qualified to do.  Mr. Harvey has both professional and personal

17   experience with CART and captioning technology in general, though not specifically with

18   ViewSonic.  He was previously hired to assess the accuracy of on-site CART, and he has used

19   captioning technology in his classrooms when teaching. Dkt. No. 3630-13 at 155, ¶¶ 8-10.  Mr.

20   Watson uses captioning "every day" to communicate. *Id*. at 154, ¶ 4.  He has personal

21   experience using CART and has professional experience using ViewSonic in his workplace. *Id.*

22   at 154, ¶ 4, 158, ¶ 22-23.  Watson is formerly incarcerated in CDCR and was deaf in CDCR, and

23   as the Court has found, "inmates' personal experiences . . . are relevant to the Court's findings."

24   Dkt. No. 1700 at 6.

25          We therefore recommend the Court find that Watson and Harvey have sufficient

26   qualifications, including experience as deaf persons using captioning technology, to render a

                                              44

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

reliable expert opinion on how deaf and hard of hearing people use and experience captioning technology.  In the alternative, the Court could find that Watson's and Harvey's opinions are admissible as lay opinions under Rule 701 because they are based on their own observations of the CART and ViewSonic demonstrations, and they are relevant to determining facts at issue, such as how deaf people (like themselves) use captioning technology.

### a.  Plaintiffs' objections

Plaintiffs object to the methodology employed by Dr. Swett, Defendants' assistive technology expert, in reaching his conclusions that ViewSonic is a reasonable accommodation that provides equally effective communication to deaf and hard of hearing people.  As a result, Plaintiffs argue that Dr. Swett's opinion is entitled to "no weight."  Dkt. No. 3630 at 107.

Plaintiffs argue that Dr. Swett's methodology is faulty because, while he acknowledges the importance of considering the input of the deaf end user when assessing assistive technology, he did not show ViewSonic to a deaf person or otherwise solicit their input.[16]  Indeed, Dr. Swett states that "any trial which does not include observation by and input from the individuals the services are meant to accommodate **cannot produce valid or comprehensive results regarding effectiveness . . . ."** Dkt. No. 3631-9 at ¶ 45 (emphasis added).  Yet he opines that ViewSonic is "an equally effective accommodation for the deaf incarcerated population at SATF and will 'ensure that communications with' these individuals 'are as effective as communications with others.'" *Id.* at ¶ 49.

We recommend the Court not exclude Dr. Swett's opinion but take into consideration that his opinion that ViewSonic is an effective accommodation contradicts his statement that the demonstrations were inadequate to "produce valid or comprehensive results" as they did not include observation by and input from individuals who would use the services.

---

[16] By contrast, Plaintiffs' assistive technology expert did consult with a deaf end-user in arriving at her conclusions. Dkt. No. 3630-13 at 137.

45

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1

### 3. Legal Standard

"[W]here a public entity is on notice of the need for an accommodation, the public entity is required under the ADA to undertake an investigation to determine what constitutes a reasonable accommodation while giving primary consideration to the disabled person's preference, and it is also required to affirmatively provide that accommodation without waiting for a request."  *Armstrong*, 724 F. Supp. 3d at 901; *see also Updike*, 870 F.3d at 958 ("If the public entity does not defer to the deaf individual's request, then the burden is on the entity to demonstrate that another effective means of communication exists or that the requested auxiliary aid would otherwise not be required.").

"As to persons with a hearing disability, implementing regulations for Title II provide that a public entity must 'take appropriate steps to ensure that communications' with disabled persons 'are as effective as communication with others.'" *Updike*, 870 F.3d at 949 (quoting 28 C.F.R. § 35.160(a)(1)).  The parties agree that the relevant standard is whether an assistive technology ensures communication for the deaf or heard of hearing user that is as effective as communications for people without hearing disabilities.  Dkt. No. 3630 at 110 (Plaintiffs), 149 (Defendants); Dkt. No. 3631-9 at para 33 (declaration of Dr. Swett stating purpose was to assess whether ViewSonic is sufficient to "ensure that communications with" deaf incarcerated persons at SATF "are as effective as communication with others") (citing 28 C.F.R. § 35160(a)(1)).

### 4. Analysis

The relevant question for the Court is not whether ViewSonic is more or less effective than remote CART, but whether ViewSonic would ensure communication with deaf and hard of hearing people that is as effective as communication with others.

ViewSonic as presented in the 2024 demonstrations led by CDCR is not a reasonable accommodation that would provide equally effective communication for group programming.  One need only view the videos (with audio turned off) of the demonstrations during group programming at the San Quentin chapel or the San Quentin gym to understand that ViewSonic

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

does not currently ensure communication for deaf and hard of hearing people that is "as effective as communication with others" and that allows them to meaningfully participate in group classes. Dkt. No. 3633 (notice of manual filing of video demonstrations).  As discussed below, due to ViewSonic's inability to capture words, its inaccuracy, its inability to differentiate between speakers, the quick speed at which text leaves the screen, and the presentation of only two lines of text that are frequently self-editing, it is extremely difficult to understand what is going on in a group setting using ViewSonic.  ViewSonic, as it performed in the demonstrations, would not ensure equally effective communication or meaningful participation in programs, services, or activities for deaf and hard of hearing people who cannot sign.

### a.  Missing captions

First, ViewSonic did not ensure equally effective communication because at times ViewSonic could not pick up audio in larger rooms such as the San Quentin chapel or gym. Defendants point out several instances when ViewSonic was able to transcribe audio when CART could not.  Dkt. No. 3630 at 141-145.  This is correct, and as discussed below, remote CART as presented in the demonstrations also does not ensure equally effective communication for deaf and hard of hearing people.  But there were also times ViewSonic could not transcribe audio at all.  Defendants claim ViewSonic had "no issue capturing and transcribing regardless of the quality of the microphone" (Dkt. No. 3630 at 132), but that is inaccurate.  For example, in a substance abuse class at San Quentin during the June 2024 demonstration, ViewSonic captured nearly no words while various participants introduced themselves and discussed what they liked to cook.  Dkt. No. 3631-6, Lodgment A, June 5, 2024 video at 4:53-7:30.  Similarly during the demonstration at San Quentin in March 2024, ViewSonic failed to transcribe several times when the instructor and other students were speaking.  *Id.* at March 27, 2024 video at 1:10:00-1:10:13, 1:15:08-1:15:29.

1

### b. Inaccurate captions

2    When ViewSonic did caption audio, the transcription was often unintelligible, and there

3    was no indication to the reader of the transcription that an error was occurring.  Dr. Swett attests

4    that ViewSonic's transcription in a classroom setting was more accurate than remote CART.

5    Dkt. No. 3631-9 at ¶ 46.  However, Dr. Swett's account of the ViewSonic text did not include

6    several rapid self-corrections that the software made to its captions, and he included punctuation

7    and capitalization that was not there.  *See* Dkt. No. 3630-18 (Pelsinger Declaration outlining

8    inaccuracies in Swett's presentation of ViewSonic transcription).  And regardless of these

9    inaccuracies, the transcription from the classroom setting as a whole was extremely confusing.

10   Dkt. No. 3631-9 ¶ 46 (2:08-3:17); Dkt. No. 3630 at 111:10-14.

11   Reviewing the ViewSonic transcription in the San Quentin gym and the San Quentin

12   chapel shows that ViewSonic did not transcribe audio with nearly the accuracy needed for a deaf

13   or hard of hearing person to understand what was going on in the group and to effectively

14   communicate in the class.  For example, during a substance abuse class, instead of captioning "so

15   today guys we're going over planning sobriety," ViewSonic captioned "we're going over chinese

16   to buy," which then quickly self-corrected to "Chinese to fight."  Dkt. No. 3631-6, Lodgment A,

17   June 5, 2024 video at 10:38-10:45.  At another point in the class, a speaker read the following

18   quote: "Sobriety is a process.  It is not one big decision like I'm never going to use again. Rather

19   sobriety is learning to make small decisions that lead away from alcohol, drugs, and [inaudible]

20   addictive behaviors."  ViewSonic captioned, "like I'm never going to change gather so friday is

21   30 [later adjusted to 32] maybe small positions that legal rate for alcohol drugs and personal

22   issues." *Id.* at 13:15-13:30.  Similarly, during a self-help class at San Quentin, ViewSonic's

23   transcription was often unintelligible as students introduced themselves.  Dkt. No. 3631-6,

24   Lodgment A, March 27, 2024 video at 1:10:50-1:11:06.

25   When ViewSonic struggled to transcribe accurately, whether because of sound quality or

26   because a person was speaking in a foreign language or for some other reason, it gave the reader

27

28

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH
SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

no indication that the transcription might be inaccurate. Instead, ViewSonic proceeded to transcribe inaccurate or unintelligible captions as though it were hearing and accurately transcribing what was being said. *See id.* at 1:17:52 (participant speaking Spanish but ViewSonic attempts to transcribe in English).

Defendants acknowledge ViewSonic's transcription suffered from errors but argue that it "at least conveyed substantive information" at times that remote CART could not. Dkt. No. 3630 at 134. That is not sufficient under the ADA. Defendants are required to provide communication for deaf and hard of hearing people in programs, services, and activities that is as effective as communication with hearing people. *Updike*, 870 F.3d at 949; 28 C.F.R. § 35.160(a)(1)); s*ee also Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824, 829, 835 (11th Cir. 2017) (holding that it is not "a sufficient defense for a defendant merely to show that a plaintiff could participate in the most basic elements of" the exchange.) The fact that ViewSonic is sometimes better than another ineffective transcription system does not render it effective.

Defendants argue that when the transcription is not intelligible, the deaf or hard of hearing class member can interrupt class to ask for clarification. That is not the standard required by the ADA and is also impracticable – based on the demonstrations we observed, deaf and hard of hearing would have needed to interrupt class frequently to seek clarification. Deaf or hard of hearing people also may not know that something was incorrectly communicated and therefore would not know to interrupt class to seek clarification in the first place. *See also* Dkt. No. 3630-3 at 66-67 (hard of hearing class member discussing problems with being made to interrupt classes because he was not able to hear).

### c. No indication of new speaker

Even if ViewSonic's problems with audio and accuracy could be corrected, the remaining transcription would still not effectively communicate to deaf or hard of hearing people because ViewSonic has no way of indicating when a new speaker is talking. This is a significant

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

problem, and one that would not be solved for ViewSonic with the use of better microphones or enhanced accuracy.

During a self-help group class in the San Quentin chapel, for example, there was frequent dialogue back and forth between incarcerated people and the instructor, but there was no indication that a new person was speaking. Instead, ViewSonic presented the entire conversation as though only one person was speaking, uninterrupted. The result is that "[f]rom a D/deaf person's point of view, [] heartfelt, sensitive, and collaborative conversations appear to be one single person giving a long and incoherent speech." Dkt. No. 3630-13 at 164, ¶ 47 (declaration of Watson).

Defendants' suggestions to solve this problem are that the deaf person could "visually identify the speaker," or that CDCR staff or a moderator could identify each speaker before they speak. Dkt. No. 3630 at 146. These solutions will not work because, as discussed below, ViewSonic moves words off the screen too fast to allow a deaf or hard of hearing person to both maintain eye contact with the board and constantly scan the room to determine who is speaking. We also note the impracticality of requiring every speaker in every setting in which someone is using ViewSonic to identify themselves by name every time they speak.

> **d.    Words leave the screen too fast, appear on only two lines of text, and rapidly self-correct**

ViewSonic sometimes presents captions more quickly than CART, meaning with less lag time between the voicing of the words and the presentation of the words on screen, which Dr. Swett attests is advantageous because it "allow[s] users to follow conversations as they happen." Dkt. No. 3631-9 at 17, ¶ 42. Although it is true that ViewSonic often captured words with less lag time than CART, those words also left the screen more quickly than CART, which is problematic. Readers will sometimes need to look away from the screen to look at the teacher or other speakers, and ViewSonic often moves words off the screen too quickly to allow this. *See* Dkt. No. 3630-13 at 166-167 (noting "D/deaf people in prison frequently have to take their eyes

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1  of the screen" and that ViewSonic's speed means "a reader can easily miss important context if

2  they have only two lines of quickly-disappearing text provided at a time."); Dkt. No. 3630-3 at

3  57, ¶ 46 (deaf non-signer who participated in a demonstration of automated captioning stating it

4  "showed captions way too quickly for me to read."); Dkt. No. 3630-13 at 146 (Plaintiffs'

5  assistive technology expert citing research showing that students who viewed captions at a

6  slower rate of speed retained significantly more information than students who viewed captions

7  at a faster rate).  Words only appear on two lines on the screen, and given the speed at which

8  they leave the screen, a reader cannot revisit text to gather context.  *Id*. (deaf non-signer attesting

9  that "Without multiple lines of text to orient myself to the conversation, I was worried that I

10  missed important information."); Dkt. No. 3630-13 at 130 (Harvey declaration stating that

11  ViewSonic's "two lines of frequently-changing text do not provide enough context"); *Id.* at 141

12  (Plaintiffs' assistive technology expert attesting, "This challenge is exacerbated by the short

13  duration that the words are displayed; instead of scrolling its text, the ViewBoard flashes one-to-

14  two lines of text at a time. The length of the lines affects visual access, impacting both the ability

15  to decode sentences (because it is difficult to see all parts of the sentence at the same time) as

16  well as decoding of individual words which might be missed by the reader due to text line

17  length.").

18       Defendants argue that two lines of captions is "industry standard and approved by the

19  Federal Communications Commission for use in televised programming."  Dkt. No. 3631-9 at

20  17, ¶ 42.  However, Defendants have not explained how the standard for captioning television

21  programs, which display captions on the same screen that the viewer is looking at, is relevant to

22  whether two lines of quickly moving text is sufficient in the context of a classroom or other

23  group programming, where a reader would also need to look away from the screen.

24       In addition, the constant self-editing of ViewSonic, when combined with how quickly the

25  words leave the screen, makes the transcription difficult to follow.  *See* Dkt. No. 3630-13 at 129,

26  ¶ 29 (Harvey explaining that, "[t]he sheer number of 'false starts' and movement of words in

27

28

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

ViewSonic's transcription is mind-boggling for a deaf person to try to follow along with."); *see also* Dkt. No. 3630-18 at ¶¶ 22-23 (during a 25 second period also reviewed by Defendants' expert, ViewSonic made six different word changes to "correct" its initial transcriptions).

### e.  Greater availability or convenience of ViewSonic does not warrant providing an ineffective accommodation.

Defendants do not argue that providing CART, rather than ViewSonic, presents an undue burden. However, Defendants do reference ViewSonic's "scheduling availability, and versatility" as a reason it is superior to CART. Dkt. No. 3630 at 129. Defendants argue that "[t]he broader availability of AI-generated captioning technology is a critical feature, as broad availability allows a technology to be used in a variety of settings and situations." *Id.* (citing Dkt. No. 3631-9 at ¶ 39). They also argue that ViewSonic is superior to CART because CART suffers from drawbacks like a shortage of professional transcriptionists and a requirement to schedule CART services in advance. *Id.*

There are certainly ways in which ViewSonic is logistically more convenient than CART. But that is not the test. No matter how simple it is to deploy, ViewSonic did not perform at an acceptable level in the "variety of settings" in which Defendants tested it. The logistical advantages cited by Defendants do not change the fact that ViewSonic did not transcribe in a way that would allow a deaf or hard of hearing person to understand what was going on or to meaningfully participate in programs, services, and activities. The question is not whether it is easier than CART or even better than CART. The question is whether ViewSonic provides equally effective communication for deaf and hard of hearing persons, and it does not.

### f.  Conclusion

Plaintiffs have requested CART services for deaf and hard of hearing people to receive equally effective communication in programs, services, and activities at SATF. If Defendants wished to propose an alternative reasonable accommodation, it was their burden to demonstrate that alternative is effective. *See Updike*, 870 F.3d at 958 ("[i]f the public entity does not defer to

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

the deaf individual's request, then the burden is on the entity to demonstrate that another effective means of communication exists or that the requested auxiliary aid would otherwise not be required."). Defendants have not met their burden. While their assistive technology expert, Dr. Swett, claims that ViewSonic "will provide class members at SATF an equal opportunity to participate in and enjoy the benefits of group programming" (Dkt. No. 3631-9 at ¶ 49), he does not explain how he could reach that conclusion in light of the missing captions, inaccurate captions, rapidly changing and disappearing captions, and lack of speaker identification that ViewSonic provided, particularly as we observed those problems in the San Quentin chapel and gym demonstrations. Simply put, a deaf or hard of hearing person relying on ViewSonic would not have been able to meaningfully participate in those classes and would not have received communication that was in any way comparable to communication with their hearing peers.

### g. Remote or On-site CART

Having determined that ViewSonic will not provide deaf and hard of hearing people equally effective communication in programs, services, and activities, we ask whether remote CART, as demonstrated in 2024, would do the same. The answer is no.

Plaintiffs acknowledge that, in demonstrations, remote CART did not provide effective communication in programs and education. Plaintiffs' assistive technology expert found that remote CART did not meet effectiveness standards "due to what seemed to be connectivity issues and microphone issues." Dkt. No. 3630-13 at 139. Problems with microphones and connectivity are potentially fixable, but in the demonstration of remote CART that we attended in 2024, the problems were significant enough that a person relying on remote CART during programming would not have been able to meaningfully participate and would not have received equally effective communication.

If microphone and connectivity problems were resolved, remote CART could provide equally effective communication. When audio feeds and connectivity were functioning, remote CART did not generally evidence the display problems that ViewSonic has (i.e., unintelligible

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

captions, captions that leave the page too quickly, rapidly self-correcting text, and lack of identification of a new speaker). *See* Dkt. No. 3630-13 at 144 (Plaintiffs' assistive technology expert finding CART's "more consistent reading pattern and slower rate of display change" make it easier for the viewer to read.); Dkt. No. 3630-13 at 158 (Mr. Watson stating he has personally used CART successfully in court proceedings).[17]

But Defendants have not proposed fixes to the audio and connectivity problems that plagued the 2024 demonstrations of remote CART.[18]  Instead, they suggest that they may not have adequate bandwidth speed to provide remote CART in all programming.  *See* Dkt. No. 3631-5 at 4 (CDCR's Chief Information Security Officer attesting that expanding CART to "all group programming" would "have a significant negative impact on network speed (frequently referred to as 'bandwidth'), which in turn will impede CART's capability of providing real time captioning.").[19]  Defendants do not say that implementing remote CART would be an undue

---

[17] Defendants claim that "many users of CART have consistently found it to be inaccurate and often fail to capture much of what was said." Dkt. No. 3630 at 139.  To support this assertion, they cite only to a BPH hearing involving a deaf signer also receiving remote sign language interpretation, who eventually asked that the remote CART transcription be turned off.  Dkt. No. 3631-2 at 28-29.  The record of the hearing was not clear as to whether there were audio or connection problems.  Regardless, we find that one incident does not demonstrate that CART when used with a good connection or an on-site transcriptionist is ineffective.

[18] Following the March 2024 demonstration of CART and ViewSonic at San Quentin, Plaintiffs' counsel raised concerns about the quality of microphones used in the demonstration, noting that "it is not possible to get a definitive assessment of *either* technology without improvements to the microphone system." Dkt. No. 3630-19 at 2 (emphasis in original).  Plaintiffs' counsel requested that the parties and their experts meet to discuss concerns with microphones, capturing audio when there are numerous speakers who may be spread out, and connection issues.  *Id.* at 3. Defendants declined to meet to discuss these issues.  *Id.*

[19] It is not clear how this position squares with Defendants' prior representations to the Court that, at least at SATF, CDCR had tested the areas that would need CART for programming and that once EIS conducted further security testing of equipment, CART would be available for "all programming areas at SATF and at the ten other institutions" in two weeks. Dkt. No. 3515-1 ¶ 19 (October 2023 declaration of former Assistant Deputy Director of Program Operations for the Division of Adult Institutions).

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

burden.  Instead, they argue that remote CART cannot work well without changes to CDCR's existing infrastructure.  That falls well short of the showing needed to demonstrate that Defendants do not have to provide a necessary reasonable accommodation due to a legitimate penological interest or an undue burden.  *See* Dkt. No. 681 at 14 (ARP).

Defendants have had two years to implement a technology at SATF to provide effective communications for incarcerated persons who require real-time captioning.  *See* Dkt. No. 3467 at 3 (Court's February 2023 order directing CDCR to implement CART or an alternative reasonable accommodation at SATF "as soon as possible.").  CDCR was given an opportunity to test and demonstrate alternative assistive technology, but it has proposed a solution that will not provide equally effective communication.  Because the Court's repeated attempts to correct noncompliance with the ADA and ARP through "less intrusive means" have failed, we recommend that the Court now order "more specific mechanisms of compliance."  *See Armstrong*, 58 F.4th at 1297.

CART technology has the capability of being deployed either remotely, as Defendants have attempted to date, or with an on-site transcriptionist.  Although Defendants have not provided a demonstration of on-site CART, that is not required for us to find that an on-site transcriptionist would solve the two main problems with remote CART: audio quality and connectivity.  An on-site transcriptionist, sitting in the room and transcribing group programming, would be able to hear and transcribe what is happening without microphones and regardless of internet connectivity.  And like remote CART, on-site CART would not suffer from the same display problems that ViewSonic has, such as rapidly disappearing text and a lack of new speaker identification.  Based on the evidence presented, the Court Expert believes that on-site CART would serve as an effective accommodation to ensure people with hearing disabilities who need real-time captioning receive equally effective communication in programs, services, and activities.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1    Defendants do not argue that on-site CART would not be effective. Instead, they argue

2 that Plaintiffs did not previously demand on-site CART and that, as a result, Defendants' expert

3 "did not have the opportunity to consider or opine upon" the effectiveness of on-site CART.

4 Dkt. No. 3630 at 148.[20] As discussed in the background section above, Plaintiffs have been

5 asking for CART, which they noted could be provided "on-site or remotely," since at least July

6 2019, approximately five and a half years ago. Dkt. No. 2936 at 12, 71. Rather than provide on-

7 site CART, Defendants chose to demonstrate remote CART and ViewSonic, two technologies

8 that failed to provide effective communication. It was Defendants' burden to provide an

9 effective communication technology, and they failed to do so.

10    Plaintiffs have proposed a solution that will work – on-site CART – and Defendants have

11 not presented an alternative solution that will ensure effective communication in group

12 programming for deaf and hard of hearing people who cannot sign. Defendants were given years

13 to come up with a solution to this problem, a problem that is causing a denial of meaningful

14 access to programming for deaf non-signers like Person E from our original report. *See* Dkt. No.

15 3446 at 14, 39-40 (2022 report finding Person E had been unable to participate in programming

16 at SATF due to his disability for approximately a decade); Dkt. No. 3630-3 at 55 (2024

17 declaration from Person E describing continued inability to participate in group programming,

18 such as veterans' groups and religious services, because of lack of CART). The Court should

19 order the only effective accommodation that has been proposed, which is on-site CART.

20    In the future, if Defendants can show that they have improved audio quality and

21 connectivity to ensure remote transcriptionists are able to hear the programming they are

22 transcribing, remote CART may be an alternative solution. Similarly, Defendants may

23 eventually be able to rely on an AI solution if the deficiencies described above are corrected.

---

[20] Defendants also argue that CART creates privacy concerns for program participants because a transcriptionist listens to the program. This argument is unpersuasive. Sign language and foreign language interpreters are present in many programs at the prison, and there is no evidence their presence has created concerns for other incarcerated persons.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

But for now, neither remote CART nor an AI solution has been shown to provide effective communication to persons needing real-time captioning.

As a result, the Court Expert recommends that the Court order that within 60 days of the date of the Court's order, Defendants shall produce to Plaintiffs' counsel and the Court Expert its plan to employ, through civil service positions or through contracted positions, sufficient qualified transcriptionists to serve the programming and education needs of people with hearing disabilities at SATF who require real-time captioning through on-site CART. Within seven days of Defendants producing the plan, Plaintiffs shall provide comments to Defendants regarding the plan. Defendants, after considering the comments of Plaintiffs, shall issue the plan and implement its provisions within 75 days of the Court's order. Within seven days of the implementation of the plan, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the plan's adequacy. CDCR shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions. If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

As discussed above in section IV, we also recommend that the Court order that within 60 days of the Court's order, Defendants shall share with Plaintiffs and the Court Expert draft policies and procedures to utilize a qualified expert to conduct individualized assessments of every current and future DPH and DNH class member at SATF. The individualized assessments should consider whether a DPH or DNH class member requires CART as an accommodation.

We recommend the Court find that Defendants may seek relief from this order when they can demonstrate that they have remedied problems with audio quality and connectivity such that remote CART will provide equally effective communication in programs, services, and activities. They may also seek relief from this order if they identify an AI solution that they can demonstrate provides communication for hearing disabled incarcerated people in programs, services, and activities that is as effective as communication with their hearing peers.

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VIII.   Conclusion

In summary, we recommend that the Court order the following:

### Item 5 – DPV Assessments

Defendants shall, within 30 days of the Court's order, provide a written response to the Court Expert and Plaintiffs explaining: (1) which CCHCS or CDCR department questioned the validity of the DPP codes of DPV class members who were to be scheduled for a vision assessment, why they did so, and whether it was appropriate for them to do so; (2) what actions staff took to confirm the DPP code of the DPV class members and when; and (3) how, going forward, Defendants will ensure through policy or staff training that the individual vision assessments of newly arriving DPV class members at SATF or people newly given a DPV code will not be delayed on the grounds that their DPP codes need to be "confirmed."  Within seven days of Plaintiffs receiving the written response, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the adequacy of Defendants' written response.  If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

### Item 7 - Announcements

Defendants shall, within 120 days of the Court's order, implement a paging system at SATF to convey real-time visual and tactile notification of announcements to deaf and hard of hearing people who require a paging device in order to receive equally effective communication of announcements made over the PA system.  The system should convey announcements to a wearable and portable device, which can be worn throughout the institution (including on the yard) and which stores a record of all transmitted messages for auditing later.  Defendants must seek relief from the Court if they are unable to meet this deadline.

Defendants shall, within 60 days of this order, share with Plaintiffs and the Court Expert draft policies and procedures that require them to utilize a qualified expert to conduct individualized assessments of every current and future DPH and DNH class member at SATF to

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**

*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

determine what auxiliary aids, including a paging device, or other accommodations, including real-time captioning, are necessary to ensure that they receive equal access to programs, services, and activities, and equally effective communication, including communication of real-time announcements made over the PA system.  The qualified expert could be a CDCR/CCHCS employee or an outside consultant, but they must be a hearing healthcare professional with assistive technology experience or an assistive technology professional who has knowledge regarding hearing loss, experience evaluating people who are deaf and hard of hearing, and expertise with accommodations available to deaf and hard of hearing people.  These policies and procedures must ensure that CDCR gives primary consideration to each DPH and DNH class member's preferred form of accommodation unless Defendants can show that other equally effective means of communication are available, or the class member's choice presents an undue burden or fundamentally alters Defendants' programs or activities.  Within seven days of Defendants producing the draft policies and procedures, Plaintiffs shall provide comments to Defendants on the drafts.  Defendants, after considering the comments of Plaintiffs, shall issue the policies and procedures within 75 days of the Court's order.  Within seven days of the issuance of the policies and procedures, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to their adequacy.  CDCR shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions.  If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

### Item 9 – Class Member Training Regarding Captioned Phones

Defendants shall, within 30 days of the date of the Court's order, produce to Plaintiffs' counsel and the Court Expert their plan to make class member captioned phone training at SATF accessible for DNH and DPH class members by either: 1) providing CART at all the captioned phone trainings at SATF; or 2) informing all DNH and DPH class members at SATF about the upcoming captioned phone training and offering them the option to attend in a group setting with

their existing accommodations or to attend a one-on-one training with the assistance of an iPad with transcription.  Within seven days of Defendants producing the plan, Plaintiffs shall provide comments to Defendants regarding the plan.  Defendants, after considering the comments of Plaintiffs, shall issue the plan and begin class member training within 45 days of the Court's order.  Within seven days of the implementation of the plan, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the plan's adequacy. CDCR shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions.  If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

**Item 10 – Staff Training Regarding Captioned Phones**

Defendants shall, within 30 days of the Court's order, share with Plaintiffs and the Court Expert updated draft SATF staff training materials that include detailed guidance on when a security concern may prohibit access to a captioned phone, in conformity with ARP Section H.1. The training must include guidance on whether captioned phone access is required during the most common scenarios at SATF that lead to modified programming or lockdowns.  Within seven days of Defendants producing the training materials, Plaintiffs shall provide comments to Defendants regarding the training materials.  Defendants, after considering the comments of Plaintiffs, shall implement the training materials and begin training staff within 45 days of the Court's order.  Within seven days of the implementation of the training materials, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the adequacy of the training materials.  CDCR shall ensure that staff with sufficient authority to amend and approve training materials attend all meet-and-confer sessions.  If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.

**Item 13 – CART**

Defendants shall, within 60 days of the date of the Court's order, produce to Plaintiffs' counsel and the Court Expert its plan to employ, through civil service positions or through

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW

contracted positions, sufficient qualified transcriptionists to serve the programming and education needs of DPH and DNH class members at SATF who require real-time captioning through on-site CART. Within seven days of Defendants producing the plan, Plaintiffs shall provide comments to Defendants regarding the plan. Defendants, after considering the comments of Plaintiffs, shall issue the plan and implement its provisions within 75 days of the Court's order. Within seven days of the implementation of the plan, the parties shall meet and confer, with the Court Expert's assistance, to resolve any disagreements as to the plan's adequacy. CDCR shall ensure that staff with sufficient authority to amend and approve procedures attend all meet-and-confer sessions. If a disagreement cannot be resolved, Plaintiffs' counsel shall file objections with the Court.


Dated: January 10, 2025                                      Respectfully submitted,


                                                        _____/s/_____.

                                                        EDWARD W. SWANSON
                                                        Court Expert

**COURT EXPERT'S RECOMMENDATIONS REGARDING COMPLIANCE WITH SATF STIPULATION**
*John Armstrong, et al., v. Gavin C. Newsom, et al.*, C 94-2307 CW