Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | Case No. CV 94-2307 CW <br><br> **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |

Pursuant to the Court's orders for remedial measures at the Armstrong Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**Revisions to the investigations and discipline process**

The Court Expert's last report described negotiations between the parties to make substantial changes to the investigations and discipline process. As described in that report, the parties agree on an urgent need for change. For CDCR, the most pressing issue is the volume of cases, which threatens to overwhelm investigative staff. As discussed below, this is a matter of substantial concern to the Court Expert as well.

The parties' negotiations continue, and the Court Expert again wishes to commend both Plaintiffs' counsel and CDCR for their hard work and good faith efforts to find common ground and reach compromise where necessary.

**CST screening.** As described in the Court Expert's last report, the parties have agreed to certain modifications to the Allegation Decision Index, the tool used by the Central Screening Team (CST) to determine whether complaints raise allegations of staff misconduct that require investigation by the AIU. The parties previously contemplated implementing those changes at the same time as the other modifications currently under negotiation. However, given the urgent need to reduce investigator caseload, the parties agreed to immediately implement those changes for a limited period while negotiations continue on other matters. Briefly stated, these changes allow CST to assess the merits of a complaint in determining whether to route the matter to AIU or to the institutions for investigation. The parties anticipate that this revised screening protocol will alleviate the burden on AIU investigators.

**Centralized Allegation Resolution Unit.** Under the current system, wardens are responsible for reviewing the investigation file, deciding whether the subject violated policy, and imposing discipline. Both parties have raised concerns about this system. Plaintiffs cite the time it takes wardens to act on investigations and the inconsistency in disciplinary decisions, and CDCR notes the burden on wardens from the volume of cases. The parties have agreed to the creation of a Centralized Allegation Resolution Unit (CARU), a unit within CDCR headquarters, staffed with CDCR employees, that will review investigation reports related to allegations of staff misconduct and impose discipline where appropriate. To begin, CARU will act on closed investigations of complaints from the *Armstrong* Six prisons, and the parties will monitor its efficacy to determine whether to expand it to other institutions.

**Staffing.** As noted in prior reports, CDCR has agreed to work with Plaintiffs to analyze its staffing needs and to work to increase staffing where possible to meet those needs.

**Regulations.** The parties have engaged in extensive negotiations regarding the language of upcoming regulations on the discipline and investigations process. A draft of CDCR's

proposed regulations will be made public in April, and the parties anticipate further negotiations during the public comment period.

The reforms described above relate primarily to process, although the parties hope they will also result in improvements to investigations and disciplinary decision making. In particular, the hope is that reducing the number of cases routed to AIU will reduce investigator workload and improve the quality of their work, and transferring decision-making to CARU will result in more consistent and timely imposition of discipline. The parties are also working to improve the quality of investigations. In particular, the parties have agreed to engage an independent expert to review CDCR's policies, practices, and training on use of force. The scope of the review remains under negotiation, but the parties are proceeding with efforts to locate a qualified expert.

The Court Expert agrees with Plaintiffs that there is urgent need to improve investigations. Plaintiffs' quarterly reviews of closed cases continue to identify shortcomings in investigations and in disciplinary actions, and Plaintiffs' concerns were corroborated by the findings in a March 2025 report by the Office of the Inspector General. The OIG reviewed 162 cases handled by CDCR in 2024, and it concluded that CDCR's overall performance in investigations and discipline was "poor" in 73% of cases and "satisfactory" in only 27%; it did not rate any investigations or disciplinary decisions as "superior." OIG, *2024 Annual Report* (Mar. 10, 2025).[1] Of particular relevance, the OIG found that, in more than 60% of the investigations it reviewed, investigators "delayed performing … investigative activities" such as collection of video evidence and conducting interviews, and that investigators additionally allowed "significant delays" to develop in the course of investigations. *Id.* at 3. In addition, the OIG found that OIA "routinely" opened duplicative investigations of the same matter, for example when an incarcerated person made both a verbal and a written complaint about the same conduct (*id.* at 7), further straining investigator resources. Finally, OIG rated hiring authority performance as "poor" in 64% of cases reviewed. *Id.* at 15 (noting that "a great deal of 'poor' ratings … resulted from hiring authority delays in conducting the investigative and disciplinary

---

[1] https://www.oig.ca.gov/wp-content/uploads/2025/03/2024-Staff-Misconduct-Investigation-Monitoring-Report.pdf

findings conferences"). As part of our continuing efforts to improve the quality of the investigations and discipline process, the Court Expert intends to review these findings with the parties during the second quarter.

**Case volume and investigation and discipline timelines**

The caseload data underscores the urgent need for improvement. While caseloads from the *Armstrong* Six prisons have remained fairly constant, the rate at which investigations are completed on time has plummeted.

In January (the most recent month for which data is available), there were roughly 5,800 complaints screened by CST from the *Armstrong* Six prisons, compared to an average of around 5,600 per month over the last year. Of those, an average of 360 cases were routed each month to the AIU. The average time spent on a case (again, limited to *Armstrong* Six) continues to be roughly 27 hours per case. But the rate at which investigations are completed on time has dropped dramatically. This suggests that AIU is experiencing an influx of cases from institutions other than the *Armstrong* Six, although the Court Expert does not have case data from those institutions. For cases received from the *Armstrong* Six in the first quarter of 2024, AIU completed 66.4% of its investigations within the remedial plan's required timeframes. For cases received in the second quarter of 2024, the on-time closure rate dropped to 50.5%, and for cases received in the third quarter, it fell to 25.6%.[2] The parties' recent agreement to reduce case flow by modifying CST's screening criteria, described above, took effect on March 7, 2025 and will presumably improve these closure rates. However, any improvement will not be apparent in the data until at least four months after the changes took effect. This is because the remedial plan allows 120 days for cases assigned to a sergeant or lieutenant and 180 days for cases assigned to special agents; thus, it will take at least 120 days to determine whether cases are indeed being resolved within the required time frames.

---

[2] The data provided to the Court Expert is current as of January 31, 2025. Thus, for cases received in August or September 2024, the 180-day deadline for investigations being conducted by special agents (the more serious matters) had not run. However, only around 1% of cases received by AIU in those months were assigned to special agents, so timely completion of those investigations would not meaningfully affect the overall figure.

As noted above, the parties have agreed to implement the CARU in an effort to improve both outcomes and the timeline for decisions on closed investigations. The data underscore the need for improvement on timing. As of January 31, 2025, wardens had yet to act on 11% of cases (32 cases in total) received by the AIU in January 2024, a year before.

**Review of closed cases**

As explained in previous reports, the Court Expert has implemented a process for confidential discussion on a quarterly basis of individual cases. That process was paused for several quarters while the parties focused on other aspects of the investigations and discipline system, but the parties and the Court Expert are scheduled to resume meetings on individual cases this quarter.

Dated: March 31, 2025

Respectfully submitted,

/s/
Edward W. Swanson
SWANSON & McNAMARA LLP