Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. CV 94-2307 CW<br><br>**COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |

  Pursuant to the Court's orders for remedial measures at the *Armstrong* Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP) (the Remedial Plans), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**Revisions to the investigations and discipline process**

  As discussed in prior reports, the parties continue to negotiate significant changes to the investigation and discipline process. These changes are necessitated by the volume of cases being routed to the Allegation Inquiry Unit (AIU) of the Office of Internal Affairs, which under the current system handles the more serious allegations of staff misconduct. The number of allegations the AIU is currently tasked with investigating threatens to exceed its capacity to act on those cases, resulting in longer timelines for investigations, jeopardizing investigators' ability

to conduct comprehensive and unbiased reviews, and raising the risk that the statute of limitations for imposing discipline may lapse before some investigations are completed.

Because the negotiations are ongoing, the Court Expert provides here only a high-level summary of the areas in which the parties are anticipating changes. The Court Expert wishes again to commend the parties for their hard work and good faith discussions as they strive to resolve these difficult issues.

**CST screening.** Under the Remedial Plans, the Central Screening Team (CST) reviews complaints to determine whether they raise allegations of staff misconduct described on the Allegation Decision Index (ADI); allegations on the ADI are then sent to AIU for investigation. As described in the Court Expert's last report, the parties have agreed that, for the time being, CST will conduct a limited review of the merits of a claim before making a routing decision, rather than sending all ADI claims, regardless of their potential merit, to the AIU. This modification will redirect a number of cases away from the AIU and instead send them to the institutions for review. In addition to this change, the parties previously agreed on certain modifications to the ADI itself that will limit, to some extent, the types of claims that CST sends to AIU rather than to the local institutions. Over the last quarter, the parties debated various additional proposals to narrow the ADI categories. The parties are also negotiating further changes to the screening protocol, including devising a system to handle claims from individuals who repeatedly file large numbers of claims, in some instances dozens per month. The Court Expert will continue to work with the parties to make the necessary adjustments to ensure that cases involving potentially serious misconduct are addressed by the AIU, and that the AIU is able, in a timely and effective manner, to investigate the cases before it.

**AIU investigations.** As described in prior reports, CDCR makes quarterly productions of files related to closed staff misconduct investigations, which Plaintiffs review and report on. In many cases, footage from body-worn or stationary cameras is the key evidence to support or refute an allegation of staff misconduct. CDCR retains such footage for 90 days. Plaintiffs have repeatedly noted that, in far too many instances, investigators fail to obtain videos before the 90-day deadline, making it all but impossible to conduct a complete investigation. In response,

CDCR has instituted new procedures and tasked specific personnel with promptly securing video footage. The results of these changes have not yet appeared in the cases available for review by the Court Expert, but we are optimistic these changes will improve CDCR's ability to obtain the relevant video footage and, in the process, improve the quality of investigations.

In an effort to reduce AIU investigator workload, the parties have discussed implementing more robust procedures to allow investigators either to close cases with less intensive investigations or to return complaints to the local institutions for further review where preliminary investigation (such as review of video footage) indicates that the claims likely lack merit. Those discussions are ongoing.

**Hiring authority review of investigations.** After AIU completes its investigations, the hiring authority reviews the report and determines whether to sustain the allegation and, if so, what discipline to impose. Historically, that task has fallen to the warden of the institution where the alleged misconduct took place, or his or her designee. As described in prior reports, CDCR has created a new Centralized Allegation Resolution Unit (CARU) to review investigative reports for complaints arising out of the *Armstrong* Six prisons.[1] CARU began receiving cases in January 2025, and CDCR reports that its initial impressions are that CARU has been able process cases faster and with more consistent results than under the previous system, and that the CARU has helped alleviate the burdens on wardens at the *Armstrong* Six. Plaintiffs and the Court Expert have not yet reviewed case files from investigations handled by CARU.

**Regulations.** CDCR has published proposed regulations that include new provisions related to investigations and discipline.[2] The parties continue to engage in extensive discussions about the regulations, including about language to effectuate certain of the changes to the investigations and discipline process described above.

---

[1] Depending on the parties' assessment of CARU's efficacy, CDCR may expand it to handle cases from institutions other than the *Armstrong* Six.

[2] *See* https://www.cdcr.ca.gov/regulations/cdcr-regulations/pending-changes-to-department-rules-2/.

**Case volume and investigation and discipline timelines**

Data from CDCR shows that caseloads in AIU remain high, although there does not appear to have been a significant increase in the most recent numbers. In March (the most recent month for which data is available), there were roughly 5,800 complaints screened by CST from the *Armstrong* Six prisons, compared to an average of around 5,600 per month over the 12 preceding months. These figures have not changed since the Court Expert's last report (which discussed data as of January 2025). Over the past year, an average of 390 cases were routed each month to the AIU, up from an average of around 360 cases in the Court Expert's last report, and the average time spent on a case has remained constant at around 27 hours per case. But, as in the Court Expert's prior reports, the rate at which investigations are completed on time continues to drop alarmingly. For cases received by the AIU in February 2024, investigators closed nearly 70% on time; for cases received in November 2024, the on-time closure rate had dropped to just over 10%.[3] (The data does not yet reflect any effect of the parties' recent agreements to reduce case flow by modifying CST's screening criteria.) There has been improvement in the timing of warden decision-making, however. Wardens received 202 cases in March 2024, and 6 (or 3%) were still awaiting a disciplinary decision in March 2025. By comparison, at the time of the last report, wardens had yet to act on 11% of cases that had been on their desks for a year. The Court Expert hopes that there will be continued improvement as data from cases processed by the CARU becomes available.

**Review of closed cases**

The Court Expert has implemented a process for confidential discussions on closed cases to allow the parties to candidly assess errors and lessons learned from individual matters. That process was paused for several quarters while the parties focused on other aspects of the

---

[3] The data provided to the Court Expert is current as of March 31, 2025. Thus, for cases received in November 2024, the 180-day deadline for investigations conducted by special agents (the more serious matters) had not run. Because no cases received in November were assigned to special agents, this does not affect the figures here. As of March 31, 2025, the 120-day deadline for cases assigned to sergeants or lieutenants had lapsed for all cases sent to the AIU in November 2024.

investigations and discipline system, but the parties and the Court Expert have resumed those reviews this quarter. The Court Expert continues to find the confidential case review meetings productive.

Dated: June 30, 2025                                   Respectfully submitted,

                                                                          /s/
                                                          Edward W. Swanson
                                                          SWANSON & McNAMARA LLP