MARGOT MENDELSON – 268583
PATRICK BOOTH – 328783
JACOB J. HUTT*
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California  94710-1916
Telephone:    (510) 280-2621
Facsimile:     (510) 280-2704

MICHAEL W. BIEN – 096891
GAY C. GRUNFELD – 121944
THOMAS NOLAN – 169692
PENNY GODBOLD – 226925
MICHAEL FREEDMAN – 262850
ROSEN BIEN
GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:     (415) 433-7104

CLAUDIA CENTER – 158255
DISABILITY RIGHTS
EDUCATION & DEFENSE FUND, INC.
3075 Adeline Street, Suite 201
Berkeley, California  94703
Telephone:    (510) 644-2555
Facsimile:     (510) 841-8645

* Admitted *pro hac vice*

Attorneys for Plaintiffs

CALIFORNIA OFFICE OF THE
ATTORNEY GENERAL
ROB BONTA
Attorney General of the State of California
MONICA ANDERSON
Senior Assistant Attorney General
SEAN LODHOLZ
Supervising Deputy Attorney General
ANNE M. KAMMER
GURPREET SANDHU
TRACE O. MAIORINO
OLENA LIKHACHOVA
Deputy Attorneys General
State Bar No. 285574
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 210-6332
Fax:  (916) 324-5205
E-mail:  Olena.Likhachova@doj.ca.gov

Attorneys for Defendants Gavin Newsom
and the California Department of
Corrections and Rehabilitation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　　Defendants. | Case No. C94 2307 CW<br><br>**JOINT CASE STATUS STATEMENT**<br><br>Judge:  Hon. Claudia Wilken |

1    The parties submit this Joint Case Status Statement pursuant to the Stipulation and
2    Order entered March 28, 2011 (ECF No. 1868), which provides that "[t]he parties will file
3    periodic joint statements describing the status of the litigation" every other month,
4    beginning on May 16, 2011.

### CURRENT ISSUES[1]

**A.    Allegations of Abuse, Retaliation, and Violence by CDCR Staff Against Class Members**

    **1.    Plaintiffs' Statement**

        **a.    RJD and Five Prisons Orders**

Plaintiffs continue to monitor remedial efforts the Court found to be necessary in order to prevent further violations of the ARP and class members' ADA rights at six prisons, including changes to the staff misconduct investigation process and implementation of Audio Visual Surveillance Systems that include body-worn camera technology. *See* ECF Nos. 3059, 3060, 3217 and 3218. Party agreements regarding Court ordered changes are found in Defendants' RJD and Five Prisons Remedial Plans ("Plans"). *See* ECF No. 3393, Exs. A and B.

Plaintiffs have issued multiple quarterly reports and have identified scores of cases that show failures by Defendants to conduct complete and unbiased investigations and impose appropriate and consistent discipline. Plaintiffs' findings are corroborated by the Office of the Inspector General (OIG). *See* OIG 2024 Annual Report Re: CDCR's Staff Misconduct Complaint Investigations and the Employee Disciplinary Process, https://www.oig.ca.gov/wp-content/uploads/2025/03/2024-Staff-Misconduct-Investigation-Monitoring-Report.pdf.

The parties are actively engaged in negotiations to reach agreement regarding changes that are necessary to the system to bring it into compliance with Court Ordered Remedial Plans. Most recently, Defendants have claimed that, due to the high number of

---

[1] Statements are joint unless otherwise delineated as either *Plaintiffs' Statement* or *Defendants' Statement.*

complaints in the system, the statute of limitations for imposing discipline is at risk of expiring in hundreds of cases. Defendants assert this is occurring because many cases that do not warrant the time and resources of the Office of Internal Affairs ("OIA") are bogging down the system. In response, Defendants have proposed additional changes to the Allegation Decision Index ("ADI") to attempt to divert hundreds of cases from OIA and route them back to the routine grievance process. Plaintiffs' counsel have objected, and continue to object, to all attempts to further revise the ADI such that complaints alleging serious staff misconduct will be categorically excluded from OIA investigation. Plaintiffs continue to negotiate in good faith regarding changes to the system that would enable OIA to exercise discretion in identifying cases that warrant the time and attention of OIA, while sending other complaints through the routine grievance process.

Defendants passed emergency regulations regarding the staff misconduct complaint process and routine grievance process, which will have an impact on how CDCR handles staff misconduct complaints. Plaintiffs provided comments on problems with the emergency regulations, including that it remains unclear—based on the text of the regulations—how Defendants will process allegations of staff misconduct. Plaintiffs remain optimistic that the parties will resolve any disputes regarding the regulations before they become final.

CDCR is a statewide system. Violations of the ADA and ARP found thus far at six prisons exist system-wide and Plaintiffs are committed to bringing such evidence before the Court until all class members are protected. *See* ECF No. 3592, Ex. A at 7-8.

### b. False, Retaliatory and Discriminatory RVRs

The use of RVRs to retaliate against and discourage the filing of staff misconduct complaints will persist unless Defendants take action to identify and root out problems through meaningful reforms to the RVR process. Plaintiffs are hopeful that the parties can agree to resolve problems and that additional court intervention will not be necessary.

**2.    Defendants' Statement**

   **a.    RJD and Five Prisons Orders**

  CDCR has dramatically overhauled its staff misconduct investigation process to ensure unbiased and complete investigations. And, although not required by the Court's orders, Defendants have restructured CDCR's statewide staff misconduct allegation, screening, referral, investigative, and disciplinary processes. As the Court has noted, "[t]hese agreed-upon measures constitute substantial improvements that will go a long way to bringing Defendants into compliance with the ARP and ADA at the six prisons." ECF No. 3356 at 2. The Court found, the "implementation of these [] remedial measures is likely to have a positive impact on…the overall reliability of the outcomes of investigations." *Id.* at 15.

  Despite the tremendous efforts and resources directed towards improving the staff misconduct investigation and discipline processes, modifications are necessary to ensure sustainability. CDCR contends that many of the issues raised in the recent OIG report are attributable to the operational realities of the large number of complaints that stretch the capacity of the OIA to timely complete these cases. *See* CDCR response to OIG March 2025 report at https://www.oig.ca.gov/wp-content/uploads/2025/03/2024-Staff-Misconduct-Investigation-Monitoring-Report.pdf. CDCR further contends that a disproportionately large number of these complaints are submitted by an extremely small number of incarcerated people who, for some, submit repetitive claims on a daily or weekly basis. With stakeholder input, CDCR is developing a process to address these frequent filings that incorporates all available resources and draws upon mental, medical, or correctional expertise to reduce the number of repetitive claims, while at the same time ensuring that all allegations of staff misconduct are properly reviewed and routed for OIA investigation, when warranted, in compliance with the orders of this Court. Over the last year, with input from Plaintiffs, the Court Expert, and other stakeholders, CDCR has identified and implemented necessary modifications to the investigative and disciplinary processes. These efforts include, but are not limited to, updating the applicable staff

misconduct regulations, simplifying the staff misconduct process, revising the Allegation Decision Index to provide greater clarity, consolidating Information Technology systems to improve case tracking and management, and developing certified training to enhance investigator preparedness. *Id*. CDCR recently completed a series of trainings for designated staff hired into the newly established Centralized Allegation Resolution Unit located at department headquarters, who will serve as the hiring authority and review completed investigations which involved or originated from incarcerated persons residing within the six institutions identified in the Court's staff misconduct orders. *Id*. CDCR has implemented prioritization strategies to focus on meeting statutory deadlines, addressing cases based on their age or complexity, and ensuring compliance with legal obligations. *Id*. To further address timeframe related challenges, CDCR continues to actively recruit all vacant investigator positions within Office of Internal Affairs and has repositioned several internal vacancies to hire additional investigative staff. *Id*. CDCR also continues to refine its intake process to reduce redundant investigative efforts and conserve limited investigative resources while maintaining a complete review of all allegations. *Id*. CDCR, in collaboration with Plaintiffs and other stakeholders, continues to identify and implement additional improvements to ensure compliance with policies and regulations. Throughout this process, CDCR has regularly provided substantive updates to the OIG and will continue to do so.

        **b.    Demands for RVR Reform**

Defendants have made significant progress in addressing Plaintiffs' allegation that CDCR staff issue false and retaliatory Rules Violations Reports (RVRs) to class members, as detailed in previously filed statements. *See* ECF Nos. 3412 at 14-16, 3526 at 7-8. Plaintiffs may disagree with the investigation or discipline imposed, but that does not mean that the RVR was false or retaliatory. Nevertheless, CDCR continues to address these issues to the extent they are specifically related to class-member accommodations, alleged discrimination, or retaliation and to the extent it is required to do so under the remedial plans, the ADA, or prior court orders. Defendants maintain that Plaintiffs' general

complaints about the RVR process, unrelated to class-member accommodations, are not properly raised in this case.

B.     **Court Expert Investigation Into SATF**

    1.     **Plaintiffs' Statement**

Background of the Court Expert's investigation into the treatment of people with disabilities at the Substance Abuse Treatment Facility (SATF) is set forth in Plaintiffs' previous joint case status statement.  *See* ECF No. 3670 at 6-8.  On May 1, 2025, the Court adopted, with some modifications, the Court Expert's Recommendations Regarding Compliance With SATF Stipulation, which laid out steps that Defendants must take to remedy longstanding violations of the ADA and ARP at SATF.  ECF No. 3651 (Court Expert's recommendations); ECF No. 3679 (Court's order).  Specifically, the Court's order addressed stipulation items 5 (individualized assessments for DPV class members at SATF), 7 (accommodations for people with hearing disabilities), 9 (class member training for use of captioned phones), 10 (SATF staff training on class members' access to captioned phones), and 13 (class members' access to CART).  *See* ECF No. 3679.  The parties have resolved stipulation items 9 and 10, and the Court has deferred ruling on item 13 in light of the Court Expert's April 18, 2025, status update and the planned demonstration of an alternative technology.  ECF No. 3675; 3679 at 21.  On July 7, 2025, Defendants produced draft policies to Plaintiffs regarding stipulation item 7.  Plaintiffs will review the draft policies and provide comments to Defendants, consistent with the process set forth in the Court's May 1 order.  ECF No. 3679 at 12-13.

Plaintiffs continue to eagerly await the Court Expert's forthcoming report and recommendations on staffing and sustainability and hope it will result in the allocation of sufficient expertise and resources, and development of robust systems, necessary to comply with the ARP and ADA.

    2.     **Defendants' Statement**

The Court Expert's second report concerning the treatment of people with disabilities at SATF recognized the numerous proactive measures implemented at SATF to

further respond to the needs of incarcerated people with disabilities.  ECF No. 3500.  The report demonstrates that the coordinated efforts between CDCR and California Correctional Health Care Services (CCHCS), with the Court Expert's guidance and with input from Plaintiffs, are working to effectively respond to the issues raised by the Court and addressed by the Court Expert following his initial investigation.  On May 1, 2025, the Court issued its order on the issues not resolved by the Court's November 8, 2024 order, and addressed in the Court Expert's January 10, 2025 recommendations, which included items 5, 7, 9, 10, and 13.  ECF Nos. 3639, 3651, 3655, 3656, 3660, 3661, 3665, and 3679.  The parties, with input from the Court Expert, have resolved items 5, 9, and 10.  The parties are to meet and confer to resolve any remaining disagreements and, if a disagreement cannot be resolved, Plaintiffs may file objections with the Court.  ECF No. 3679 at 7.  Regarding item 7, Defendants will share with Plaintiffs and the Court Expert, on or before July 7, 2025 (ECF No. 3702 (Stipulation Modifying Deadlines for SATF 7)), draft policies and procedures that require the use of a qualified expert to conduct individualized assessments of all current and future DPH- and DNH-designated class members at SATF to determine the appropriate auxiliary aids to ensure they receive equal access to programs, services, and activities, and equally effective communication, including communication of real-time announcements made over the public-address system.  *Id*. at 12-13.  In compliance with the Court's order, the draft policies and procedures include a paging device among the auxiliary aid options presented to these class members during the individualized assessments.  *Id.* at 13.  Plaintiffs will have an opportunity to comment on the policies and procedures and, after considering Plaintiffs' comments, Defendants must issue the policies and procedures.  Once issued, the parties must meet and confer to resolve any disagreements about the policies and procedures and, if a disagreement cannot be resolved, Plaintiffs may file objections with the Court.  *Id.*  With respect to item 13, the Court deferred ruling on the Court Expert's recommendation for the implementation of on-site CART transcriptionists at SATF, in light of the Court Expert's April 18, 2025, status update and the planned demonstration of an alternative technology.  ECF No. 3675; 3679

at 21.  On May 7, 2025, the parties and the Court Expert attended a preliminary demonstration at the main office of California Correctional Health Care Services.  An on-site demonstration of the technology at SATF is scheduled for August 19, 2025.  After the parties complete the demonstration and meet-and-confer process, the Court Expert will file a further status update with a report and recommendation for next steps.  ECF No. 3679 at 21-22.

C. **Accommodations for Deaf and Hard of Hearing Class Members**

   1. **Plaintiffs' Statement**

Little progress has been made to resolve the critical issues that Plaintiffs have outlined in Joint Case Status Statements since September 2024: access to sufficient on-site staff sign language interpreters, access to on-site contract sign language interpreters, and meaningful and effective access to video remote interpreting services (VRI).  *See* ECF Nos. 3695 at 7-8; 3670 at 9-10; 3641 at 7; 3622 at 18-19 (Plaintiffs' Statements).  In September 2024, Defendants reported they had initiated the process to increase the salary range for staff interpreters.  *See* ECF No. 3622 at 23 (Defendants' Statement).  But Defendants report below that the requested salary increases remain pending.

In the meantime, the CCWF staff sign language interpreter position remains vacant, as it has been for over a year.  *See* ECF No. 3622 at 18-19, 58-59.  Defendants have now designated the state's other women's prison to house deaf class members, but offer no estimate of how long it will take to secure an on-site staff interpreter or to transfer the female deaf population to this prison.  Three vacant staff SLI positions at SATF have reportedly been filled, but only one of these interpreters has begun, and Defendants do not report a start date for the others.  And Defendants do not report progress in the other two areas.  Regarding on-site contract interpreters, Defendants have stated that they cannot begin to renegotiate the contract to improve interpreter access until 2027.  Regarding VRI, Defendants provided no updates regarding the concerns that Plaintiffs expressed, including issues related to connectivity and staff training.  Plaintiffs remain concerned that class members forced to rely on VRI due to insufficient staff and contract interpreters are less

able to participate in education, rehabilitative groups, and other programming as a result of faulty and unreliable video-conferencing equipment.

Plaintiffs have raised multiple other concerns regarding accommodations for deaf and hard of hearing people that remain unaddressed, including ongoing failures statewide to ensure the effective communication of announcements and to provide accessible phone services. For now, Plaintiffs will continue to raise such issues through the all-parties meet and confer, advocacy letters, and other written correspondence to Defendants. Plaintiffs continue to believe that meeting separately to collaboratively discuss issues impacting the deaf and hard of hearing population could result in more effective resolution of outstanding concerns.

**2.     Defendants' Statement**

Defendants remain committed to providing deaf and hard-of-hearing class members equal access to programs, services, and activities in accordance with the ADA, the remedial plans, and this Court's orders. During the March 21, 2025, and May 21, 2025, All-Party meetings, Defendants confirmed CDCR has requested salary increases for staff SLIs and the request remains pending with the California Department of Human Resources, a separate state agency responsible for issues related to employee salaries and benefits. Defendants advised that CDCR is continuing to evaluate the workload for staff SLIs statewide. CDCR remains bound by its existing contracts for additional SLI services but the terms of those contracts are under review. In terms of video remote interpreting (VRI), CDCR's Compliance Sergeants and Class Action Management Unit (CAMU) Correctional Counselor IIs continue to train staff, check the functionality of equipment, and work with the vendor when necessary to resolve technical issues. The lines of communication on these and other important deaf and hard-of-hearing issues remain open for discussion and resolution where appropriate. Defendants will continue to provide written responses to Plaintiffs' inquiries when appropriate and to address key issues during future All-Party meetings. Defendants believe the ongoing exchange of written correspondence, combined with discussion of certain items at the All-Party meeting, is a

1 reasonable and efficient approach to resolving deaf and hard-of-hearing issues.

2       Defendants continue to be mindful of their obligation to provide sign-language interpretation services for deaf class members whose primary method of communication is American Sign Language (ASL).  As Defendants advised Plaintiffs on May 21, 2025, CMF is now fully staffed and vacancies at SATF have been filled.  One newly hired SLI at SATF began providing in-person services on June 23, 2025, and the other selected applicants only need to complete the final requirements of the state hiring process before they can start.  The vacancy at CCWF is being addressed by coordinating efforts between CCWF and a nearby institution to provide temporary coverage at CCWF, without disrupting services at either institution or denying access to class members.  The position remains advertised and will be filled as expeditiously as possible once applications are received and a qualified candidate is identified.  Compliance Sergeants at CCWF check in weekly with deaf signer class members to ensure these individuals are aware of VRI as a reasonable alternative accommodation and able to access those services.  Despite the industry wide shortage of interpreters, all other DPH-designated institutions are staffed.  And as of June 3, 2025, CIW is now a DPH-designated institution and will be staffed with at least one SLI as soon as possible, thus expanding access to SLI services.  Defendants continue to closely monitor statewide hiring efforts and to ensure that any vacancies are posted until filled.

### D. Accommodations for Blind and Low-Vision Class Members

#### 1. Plaintiffs' Statement

Plaintiffs continue to monitor Defendants' failure to provide accurate information regarding the status of individualized assessments of blind and low-vision class members for needed accommodations.  *See* ECF No. 3679 at 5 (discussing "Defendants' undisputed failure to provide accurate information to the Court Expert and Plaintiffs about whether individualized assessments of DPV class members at SATF had been completed").  On May 5, 2025, Plaintiffs submitted a letter to Defendants identifying yet another instance of Defendants providing inaccurate information to the Court Expert and Plaintiffs.  In this

1 letter, Plaintiffs identified six DPV class members whom Defendants had inaccurately
2 stated were "re-evaluated" for their writing accommodation needs after Plaintiffs had
3 requested that they be evaluated.  Defendants, by letter response, acknowledged this error.

4      Plaintiffs also continue to receive reports from blind and low-vision class members
5 that they need standalone writing accommodations—such as laptops with screen-reading
6 software—but that the low-vision specialist did not discuss or evaluate their writing needs
7 or preferred writing accommodations.  Thus, even after their low-vision specialist
8 appointments, these class members remain without accommodations to write privately and
9 independently.  Plaintiffs have reported this problem to Defendants at length.  *See, e.g.*,
10 Multiple Advocacy Letters Re: class member at SATF (Jan. 18, 2024; Aug. 15, 2024; and
11 Feb. 21, 2025); class member at CHCF (Jan. 15, 2025).  Particularly for class members
12 who wish to write privately and independently and who are blind or severely low-vision,
13 and thus cannot handwrite even with a high-powered magnifier, writing accommodations
14 are vital.  For reasons discussed in the Court's March 20, 2024, Order Granting in Part the
15 Motion to Enforce the Revised Permanent Injunction, it is also vital that class members be
16 issued these accommodations for personal use, and not be forced to go to the law library to
17 use them.  *See* ECF No. 3583 at 21 (discussing how auxiliary aids in the law library "can
18 only be accessed in a public setting and during the libraries' limited hours").  To Plaintiffs'
19 counsel's knowledge, fewer than ten blind and low-vision class members statewide have
20 been recommended an accessible laptop by the low-vision specialist, despite extensive
21 reports from class members that they are committed to learning how to use this
22 accommodation, that they cannot write privately or independently without it (or an equally
23 effective accommodation), and that the low-vision specialists did not discuss the
24 possibility of receiving this accommodation with them.  Defendants state below that it is
25 "Plaintiffs' lay opinion that anything short of a laptop is insufficient as a writing
26 accommodation." This is inaccurate.  Plaintiffs have never taken this position.  Plaintiffs'
27 counsel will continue to raise this important issue and hope to work collaboratively with
28 Defendants to resolve it.

1   Defendants state that "none of individuals identified in Section II of Plaintiffs'
2   [August 7, 2024] letter expressed a desire for a laptop."  But it is Defendants' own
3   longstanding refusal to make electronic writing accommodations available to blind and
4   low-vision class members that has left these class members unaware that such
5   accommodations are now potentially available to them, if recommended by the vision
6   specialist.  As Plaintiffs' counsel have educated blind and low-vision class members that,
7   under this Court's orders, accessible laptops with ready access to a printer are now an
8   available accommodation if recommended by the specialist, numerous class members—
9   including several class members identified in Section II of Plaintiffs' letter—have reported
10  a need for this accommodation.  And blind and low-vision class members—including
11  several identified in Section II of Plaintiffs' letter—have reported that the vision specialist
12  failed to meaningfully inquire into their writing needs and failed to explore the suitability
13  of available writing accommodations, including but not limited to accessible laptops, with
14  them.

**2.    Defendants' Statement**

Plaintiffs' August 7, 2024, letter included a section requesting reevaluation of seven individuals who have already undergone individualized vision assessments and have been provided appropriate accommodations to meet their writing needs.  For each of these individuals, the low-vision specialist recommended either a Zoomax Snow 12 portable magnifier, a Ruby 10 HD portable magnifier, or a scribe to assist with their writing needs. Defendants responded to this letter on January 2, 2025, stating that "[t]hose class members were re-evaluated by the vision specialist."  In their May 5, 2025, letter, Plaintiffs noted that Defendants' response appeared to contain inaccurate information for the section regarding their request for reevaluation of the seven individuals' writing needs. Defendants acknowledged in a June 6, 2025, response that information provided for this section was incorrect because Defendants thought the request for reevaluation pertained to the individuals in a different section of Plaintiffs' letter.  Defendants also provided Plaintiffs and the Court Expert the correct information and explained the steps they will

take to avoid this error in the future, which resolved this matter.

Regarding complaints by some class members that they were not recommended laptops by the vision specialist, a follow-up interview conducted by staff at SATF indicated that none of individuals identified in Section II of Plaintiffs' letter expressed a desire for a laptop. In fact, two individuals received their own personal Zoomax devices and were successfully paroled.

The low-vision specialist has specialized knowledge and clinical expertise, makes recommendations based on an individualized assessment of the class member, and applies the same standards and best practices used in the community. The low-vision specialist is also aware of their obligation under the ADA, remedial plans, and Court orders, to give primary consideration to the class member's preferred accommodation, unless other equally effective accommodations are available. Plaintiffs' claim that the low-vision specialist did not discuss or evaluate the class members' writing needs or preferred writing accommodations and that class members remain without writing accommodations is incorrect and premised on Plaintiffs' lay opinion that anything short of a laptop is insufficient as a writing accommodation. Plaintiffs' apparent assumption that a class member not being recommended a laptop means the low-vision specialist did not conduct a meaningful evaluation of that class member is likewise incorrect. Laptops with screen-reading software are not suitable for every blind or low vision class member and may not align with every individual's writing needs. In some cases, class members have preferred the assistance of a scribe or an aid over all other assistive technology. Additionally, this issue is effectively moot because a class member is free to request a different accommodation than the one recommended by the low-vision specialist if the recommended accommodation is insufficient to meet their needs, by submitting a CDCR Form 1824 to their institution's Reasonable Accommodation Panel.

E.     **Problems Regarding Access to Assignments for Class Members**

The program-access workgroup continues to meet periodically to discuss credit earning, the assignment process, and disparities in the program-access assignment data in

response to Plaintiffs' allegations of disability-related discrimination.  *See* ECF No. 2680 at 13-14.  Plaintiffs' counsel seeks to move forward with agreement on a standard for evaluating program assignment discrimination and continues to report on disparities in assignments that are identified in monitoring work on individual institutions and programs.  For example, Plaintiffs continue to report on disparities in assignment rates for higher paying and higher status jobs, like Prison Industry Authority jobs, which class members are assigned to at lower rates.  The parties will continue to work on issues related to program access.

**F.     Joint Monitoring Tool**

The parties remain committed to developing a strong and effective joint monitoring tool.  The parties continue to convene small work groups, confer with the Court Expert, and continue to meet to discuss and resolve the few remaining disputes between the parties such as a format for scoring and reporting compliance or non-compliance.  The parties continue to work towards a collaborative solution for scoring and reporting.

**G.     ADA Structural Barriers, Emergency Evacuation Procedures, and Master Planning Process**

The parties continue to engage in the Master Planning Process aimed at ensuring that CDCR prisons are accessible to people with disabilities in compliance with the ADA.  Over the last several months, the parties have exchanged position statements on disputed issues and are working with the Court Expert to try to narrow and resolve the disputes.  These meetings are ongoing.  The parties met with the Court Expert on May 7, 2025, to discuss the status of outstanding items, and when the parties will provide their respective responses on those items.  As noted in prior statements, the parties have agreed on a new process for sharing information and plans related to Master Planning projects, for having Plaintiffs' expert provide comments on plans, and for touring completed projects.  Defendants recently shared maps for several institutions showing areas planned for accessibility improvements, and Plaintiffs responded on June 27, 2025.  Plaintiffs also recently shared a letter regarding interim accommodations required at CIM during the

Master Planning process.  Plaintiffs continue to await Defendants' responses to Plaintiffs' expert's review of the detailed site plans for accessibility improvements at LAC, PVSP, CIW, and SOL, as well as responses to several other outstanding information requests regarding the Master Planning process.  Defendants provided a response to Plaintiffs' comments on the RJD site plans and have proposed to meet in July for further discussions. The parties continue to work through those requests with assistance from the Court Expert. Plaintiffs also requested to tour LAC with their emergency evacuation expert, and on June 13, 2025, Defendants responded that they could accommodate this one-time tour for inspection only and are awaiting Plaintiffs' response.

Respectfully submitted,

DATED: July 15, 2025     ROSEN BIEN GALVAN & GRUNFELD LLP

By: /s/ Penny Godbold
Penny Godbold

Attorneys for Plaintiffs

DATED: July 15, 2025     ROB BONTA
Attorney General of the State of California

By: /s/ Olena Likhachova
Olena Likhachova
Deputy Attorney General

Attorneys for Defendants

**FILER'S ATTESTATION**

As required by Local Rule 5-1, I, Penny Godbold, attest that I obtained concurrence in the filing of this document from Deputy Attorney General Olena Likhachova, and that I have maintained records to support this concurrence.

DATED: July 15, 2025     /s/ Penny Godbold
Penny Godbold