Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | Case No. CV 94-2307 CW <br><br> **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |

  Pursuant to the Court's orders for remedial measures at the *Armstrong* Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP) (the Remedial Plan), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

  As set forth below, the parties have engaged in extensive negotiations that have resulted in significant changes to various elements of the investigations and discipline system. Principally, recent efforts have focused on reducing caseload at the Allegation Inquiry Unit (AIU) of the Office of Internal Affairs (OIA). The Court Expert commends both parties for their hard work, good faith in negotiations, and willingness to reach sensible compromises in their efforts to improve the system.

The situation continues to be dire: the data on on-time completion rates shows 94% of cases received by AIU in the second quarter of 2025 were not investigated within the Remedial Plan timelines, indicating the caseloads continue to be too high for the available investigative staff. Lack of compliance with the Remedial Plan is not the only problem created by high caseloads. Overworked investigators may not conduct comprehensive and unbiased investigations, and the statute of limitations may lapse before an investigation is complete or before a hiring authority imposes discipline.[1]

**Stipulated order on investigations and discipline**

Negotiations were finalized this quarter and memorialized in a stipulated order entered by the Court on September 26 (Docket 3721) that addresses three aspects of the investigations and discipline process. First, as the Court Expert has previously reported, CDCR created a new hiring authority, the CARU (Centralized Allegation Resolution Unit), to review investigations and make disciplinary decisions regarding staff misconduct allegations from the *Armstrong* Six prisons. CDCR's intent in creating the CARU was to improve and make more consistent hiring authority disciplinary decisions as well as to relieve wardens of the workload of investigation review. The order lays out the minimum time frame that CARU will operate (through December 2026), identifies its responsibilities, and creates a framework for the parties to evaluate its effectiveness in improving disciplinary decisions.

Second, the order memorializes the parties' agreement for CDCR's retention of an expert to review CDCR's policies and practices concerning staff uses of force. The consultant will make recommendations on possible reforms and improvements to the use of force policies and practices. In addition, the consultant will evaluate the possibility of an entity other than OIA conducting reviews of staff misconduct complaints alleging use of force. Currently, incidents involving use of force are reviewed by both the Institutional Executive Review Committee (IERC) at each institution and by OIA. The consultant will evaluate whether and under what

---

[1] CDCR has explained that, even if the statute of limitations lapses, it completes investigations and documents whether the allegation is sustained. However, adverse action is not possible when the statute of limitations has passed, although training or other corrective action may still be imposed.

circumstances the IERC, or some entity other than OIA, could conduct comprehensive and unbiased investigations of staff misconduct complaints involving uses of force. If feasible, moving use of force investigations out of OIA and to another body would significantly ease the workload on OIA staff.

Third, the stipulation memorializes the parties' agreement on certain modifications to the process by which the Centralized Screening Team (CST) reviews complaints to determine whether they will be reviewed by OIA (for complaints alleging more serious forms of staff misconduct) or by the local institutions (for complaints that either do not allege staff misconduct or allege less serious forms of it). As the Court Expert has previously reported, CDCR has implemented a process for cases arising out of non-*Armstrong* Six prisons that allows CST to review the merits of certain complaints before determining whether they will be routed to OIA or local institutions. The stipulated order allows CST to employ those same procedures for complaints from the *Armstrong* Six prisons through March 6, 2026. The purpose of this modification is to reduce the flow of cases into OIA and ease the workload on its investigators.

**Amendments to regulations**

The parties have conducted extensive negotiations concerning changes to the regulations that govern the staff misconduct process, and CDCR has promulgated draft amendments.[2] The proposed regulations address a number of areas that have been the subject of discussions between the parties.

As the Court is aware, CST reviews complaints to determine if they allege a form of staff misconduct that merits investigation by AIU rather than by local institutions. The principal tool for that review is the Allegation Decision Index (ADI), which sets forth the categories of misconduct that CST must route to AIU. The parties agree, however, that just because a complaint satisfies the ADI criteria does not necessarily mean it merits a full AIU investigation, and a large caseload of minor or frivolous claims overburdens the investigators and affects their

---

[2] *Staff Misconduct, Employee Discipline, and Administrative Remedies of Grievances and Appeals (NCR 25-06)*, available at https://www.cdcr.ca.gov/regulations/cdcr-regulations/pending-changes-to-department-rules-2/.

ability to conduct comprehensive and unbiased reviews of more serious allegations.[3] Conversely, evidence developed during local institution review of allegations that do not meet ADI criteria may indicate that the complaint is more serious than it initially appeared and should be handled by AIU. Several proposed regulatory changes are intended to ensure that investigations take place at the appropriate level.

*Frequent filers*. A CDCR analysis of misconduct allegations revealed that a large number of complaints are filed by a handful of incarcerated individuals, and frequently those complaints raise the same allegations over and over. The parties have developed a separate process for these "frequent filer" complaints. Broadly speaking, complaints from the most frequent filers will be reviewed to determine whether they should be investigated by AIU or whether they should be sent to a new Grievance Resolution Team (GRT) consisting of representatives from CST, the Office of Grievances, and the Office of Appeals, who will meet on a monthly basis with the filers to address any matters not investigated by AIU. Should the GRT's review of the complaints reveal that AIU investigation is merited, those claims will be routed back to OIA. (Although the parties are in broad agreement about this process, plaintiffs have raised questions about how it interacts with reasonable accommodation requests.)

*Rapid closure of certain investigations*. The parties also agree that as AIU investigators review the evidence, it may become appropriate to end certain investigations without further work. The proposed regulations provide a mechanism for rapid closure of cases where, for instance, the allegation lacks sufficient detail for investigation, or where video and documentary evidence proves conclusively that alleged misconduct did not occur. While plaintiffs agree with these proposed processes, their review of closed case files continues to reveal instances where investigators have failed to timely request video footage, resulting in it being deleted before the investigators can review it, or have requested footage but failed to obtain the relevant footage. These problems, which have persisted for years, call into question AIU's ability to accurately identify instances where rapid closure would be appropriate. As noted in the Court Expert's last

---

[3] The parties are discussing a protocol for reviewing a sample of AIU cases to assess whether and to what extent AIU's caseload includes complaints that do not merit full investigation despite satisfying the ADI.

report, CDCR has responded to these concerns by making changes in AIU's procedures for obtaining video evidence. The parties and the Court Expert will be monitoring cases to assess the effectiveness of these changes.

*Elevation of local investigations to AIU.* As the Court Expert has reported, CDCR has eliminated the position of Locally Designator Investigators (LDIs), who previously reviewed less serious staff misconduct allegations that were not routed to AIU. Such complaints are now handled by local Offices of Grievances. The new draft regulations, which the parties are still discussing, outline circumstances under which OOG staff will suspend their review and elevate complaints to AIU.

**Case volume and investigation and discipline timelines**

Data from CDCR suggests that the changes made by the parties have started to have an effect on AIU caseload. An average of 6,000 complaints were filed each month at the *Armstrong* Six prisons during the most recent three months for which data is available (May-July 2025), compared with 5,700 per month for the preceding nine months. But while the total number of complaints has risen, the number of cases routed to OIA has dropped. On average, OIA received 314 cases per month from May-July, compared to an average of 400 per month for the preceding nine months. This is consistent with changes to the ADI and screening procedures that have resulted in more cases being sent to local Offices of Grievance. Investigators are still spending the same amount of time (around 27 hours on average) on each case, but the rate at which investigations are closed on time has dropped even further. The most recent data available concern cases received by AIU in March 2025. Under the Remedial Plan, those investigations should be complete: cases assigned to lieutenants and sergeants should have been completed by July 2025 (120 days from receipt), and those assigned to special agents were due to close by September 2025 (180 days).[4] But of 369 cases received by AIU in March 2025, only 23 (6%) closed within those timeframes.

---

[4] Only 18 cases (out of 4,700 total received by AIU) have been assigned to special agents in the past year, and only two of those were assigned in the last nine months.

There continues to be improvement in the timing of hiring authority decisions, however. Of cases received by hiring authorities over a 12-month period ending June 2025 (rough 1,750 cases total), under 19% are awaiting disciplinary decisions. By comparison, at the time of the Court Expert's last report, over 28% of cases received over the 12-month period ending March 2025 (2,130 cases total) were still pending.

**Review of closed cases**

The parties continue to meet on a quarterly basis for confidential discussion of closed cases. The Court Expert continues to find the confidential case review meetings productive.

Dated: September 30, 2025                           Respectfully submitted,

                                                    /s/
                                                    Edward W. Swanson
                                                    SWANSON & McNAMARA LLP