Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, et al., <br><br> Defendants. | Case No. CV 94-2307 CW <br><br> **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |

Pursuant to the Court's orders for remedial measures at the *Armstrong* Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP) (the Remedial Plans), the Court Expert provides the following report on implementation of CDCR's new investigations and discipline system.

**AIU staffing analysis**

As the Court Expert has reported, Plaintiffs have long raised concerns that AIU is understaffed for the number of misconduct allegations it receives. This quarter, the parties agreed that CDCR will examine AIU's staffing needs, based on an analysis of case volume and investigator caseloads, and formulate a plan to meet those staffing needs. *See* Dkt. 3737 (stipulation and order). That review is underway, and the parties have agreed that it will be complete by July 31, 2026.

**Regulatory changes**

The Court Expert's last report described a number of pending revisions to the regulations governing CDCR's investigation and discipline process. As set forth in more detail there, those regulations address three areas that have been the focus of negotiations between the parties. First, they establish a process for identifying individuals who file the largest number of complaints, determining which of their complaints do not require AIU investigation (for example because they are duplicative of earlier claims or allege impossible or highly implausible misconduct), and routing those complaints to a new Grievance Response Team (GRT). Second, they establish a process that will allow AIU to rapidly close investigations into certain claims (for example where the allegation is definitively proved or disproved by video evidence). Third, the regulations establish circumstances under which complaints that were classified as "routine" grievances and routed for review at the institutions can be elevated to AIU for a full investigation[1] (for example where the claim closely resembles a recent, sustained complaint against the same staff member). The public comment period for the third renotice of those regulations closed earlier this month.[2]

**OIG reports and related revisions to investigations and discipline**

In its most recent semiannual report, released this month, the OIG continues to be critical of the Department.[3] OIG monitors investigations and rates the Department's performance as "adequate," "improvement needed," or "inadequate." In its most recent report, it found CDCR's overall performance adequate in only 11% of 89 staff misconduct cases it reviewed; a further 35% needed improvement, and the majority of them (54%) were deemed inadequate. However, OIG's assessment of each of the individual components of the discipline and investigations

---

[1] All complaints are reviewed by the Centralized Screening Team (CST) to determine whether they raise serious claims of staff misconduct, which must be investigated by AIU. Where CST determines that a complaint does not allege staff misconduct or alleges a less serious form of staff misconduct, the complaint is deemed "routine" and routed to the appropriate local Office of Grievance for review.

[2] The renoticed regulations are available at https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2025/11/NCR-25-06-Third-Notice-of-Change-to-Text-as-Originally-Proposed_Final.pdf.

[3] https://www.oig.ca.gov/wp-content/uploads/2025/12/Staff-Misconduct-Monitoring-Report-January-June-2025.pdf

system was somewhat better. OIG assesses the performance of three groups involved in the investigations and discipline process: OIA, hiring authorities (HAs), and department attorneys (EAPT, the Employment Advocacy and Prosecution Team). While CDCR overall performed adequately in only 11% of cases, OIA performed adequately in 30% of cases, and hiring authorities performed adequately in 36% percent of cases.[4] With respect to hiring authorities, OIG specifically noted that there was "marked improvement" in performance compared to its prior reporting period. OIG's assessment of the Department's performance in staff misconduct cases is summarized below:

|         | Adequate | Improvement needed | Inadequate | Cases reviewed |
|---------|----------|--------------------|------------|----------------|
| OIA     | 30%      | 33%                | 37%        | 89 cases       |
| HAs     | 36%      | 27%                | 36%        | 88 cases       |
| EAPT    | 32%      | 16%                | 52%        | 56 cases       |
| Overall | 11%      | 35%                | 54%        | 89 cases       |

In addition to noting improvement with hiring authority decision-making, the OIG report also suggests that the creation of the Centralized Allegation Resolution Unit (CARU) is having a positive effect on the investigations and discipline process. As the Court is aware, once OIA completes an investigation, it forwards its report to the subject officer's hiring authority to determine whether discipline is warranted. In January 2025, CDCR created CARU to act as the hiring authority and make this determination in lieu of the warden. *See* Dkt. 3721 (stipulation and order regarding CARU). CARU began reviewing cases arising from the *Armstrong* Six prisons in January 2025 and has since expanded to cover a total of 18 institutions. The OIG report includes encouraging updates on CARU's performance. One important aspect of the hiring authority's task is to assess whether OIA's investigation is complete. The OIG reported that CARU finds insufficiencies in investigations at a significantly higher rate than other hiring authorities, with 20.9% of cases sent back to OIA for further investigation, compared to 8.4% for

---

[4] The discrepancy between the CDCR's overall performance (54% inadequate) and the performances of OIA (30% inadequate) and hiring authorities (37% inadequate) is the result of aggregation. Thus, CDCR's overall performance with respect to a given case is deemed inadequate if any of the monitored groups performs inadequately on that case. The Court Expert has not conducted an independent review of the cases monitored by OIG and is not able to offer an opinion on the accuracy of OIG's classifications.

all hiring authorities (including CARU). The OIG also found that CARU has sustained misconduct claims at a higher rate than other hiring authorities, with 12.5% of allegations sustained (compared to 6.6% for all hiring authorities), and that it has far fewer instances of delayed decision making (with timing deficiencies in 6.5% of cases compared to 47.6% for all hiring authorities). While OIA has not yet monitored enough CARU cases to make substantive findings about disciplinary decisions, these preliminary indications of improvements compared to the average hiring authority are encouraging. Pursuant to the stipulation and order regarding CARU (Dkt. 3721), the parties have begun discussing a methodology "to measure whether having CARU staff members serving as the Hiring Authority has resulted in improvements regarding unbiased and comprehensive investigations and appropriate and consistent discipline." Dkt. 3721, ¶ 3. The Court Expert anticipates that the parties' evaluation of CARU's performance will proceed in the next quarter.

The OIG also recently released a report on its review of 24 use of force cases investigated between July and September 2025.[5] The OIG found the Department's performance "inadequate" in 15 of those cases, chiefly due to OIA's failure to conduct thorough investigations and the hiring authorities' failure to order further investigation. In several cases, the OIG noted that investigators failed to secure video footage before it was erased or failed to review the relevant footage. The OIG rated five cases as "improvement needed," chiefly due to issues with timing of investigatory steps, and found the Department's performance "adequate" in four cases. As the Court is aware, CDCR recently engaged an expert to review and assess its policies and practices concerning staff uses of force. *See* Dkt. 3721, ¶¶ 5-9 (stipulation and order). The expert has started his review and has met with Plaintiffs and the Court Expert, with another meeting scheduled for January.

**Case volume and investigation and discipline timelines**

Case volumes continue to rise, and AIU's on-time closure rates continued to decline as of the end of October (the most recent data available from CDCR). An average of 6,200 complaints

---

[5] https://www.oig.ca.gov/wp-content/uploads/2025/11/Force-Investigation-Review-Team-Case-Summaries-July-September-2025.pdf

1  were filed each month at the *Armstrong* Six prisons during the most recent three months for
2  which data is available (August-October 2025), compared with around 5,700 per month for the
3  preceding nine months. Of those, around 370 were routed to OIA per month over the last quarter
4  (for an average of 377/month for 2025).[6] The average amount of time that investigators are
5  spending on their cases remains consistent at around 27 hours per case, and AIU is currently
6  assigning about 3.5% of cases to non-sworn investigative staff in an effort to ease caseloads. But
7  the on-time closure rate continues to drop. As of October 31, the on-time closure rate was only
8  4% for cases received by OIA in April 2025, 3% for cases received in May, and 4% for cases
9  received in June.[7]

**Quarterly case review**

The parties and the Court Expert suspended their quarterly confidential review of closed investigations in order to focus on negotiations regarding the staffing analysis and modifications to the investigations and discipline process. The parties will resume that review next quarter.

Dated: December 26, 2025            Respectfully submitted,

                                    /s/
                                    Edward W. Swanson
                                    SWANSON & McNAMARA LLP

---

[6] These figures are for the *Armstrong* Six prisons only; according to the OIG's most recent report, AIU receives an average of over 1,000 cases per month from all prisons combined.

[7] Under the Remedial Plan, cases assigned to lieutenants and sergeants must be completed within 120 days from receipt and those assigned to special agents within 180 days. As the Court Expert has noted in recent reports, CDCR data shows almost no cases being assigned to special agents. CDCR has since clarified that this is a reporting error which the Department anticipates will be remedied in future reports.