Edward W. Swanson, SBN 159859
August Gugelmann, SBN 240544
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010

Court Expert

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ARMSTRONG, et al., | Case No. CV 94-2307 CW |
| Plaintiffs, | **COURT EXPERT'S QUARTERLY REPORT ON INVESTIGATIONS AND DISCIPLINE** |
| v. | |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Pursuant to the Court's orders for remedial measures at the *Armstrong* Six prisons (RJD, LAC, COR, SATF, CIW, and KVSP) (the Remedial Plans), the Court Expert provides the following report on implementation of CDCR's investigations and discipline system.

**AIU staffing analysis and expert on use of force**

Pursuant to stipulation, the Court in 2025 ordered that CDCR would engage an expert to evaluate its policies related to use of force and would conduct an analysis of AIU's staffing needs and formulate a plan to meet those needs. Dkt. 3721, 3737. Both of those processes are underway. Along with the Court Expert, Plaintiffs have met with the use of force expert and have provided information they deem necessary to his review (*see* Dkt. 3721, ¶ 6, 7); a further meeting with the expert is anticipated in the coming quarter. This month, CDCR produced its

proposed methodology for conducting its analysis of AIU's staffing needs, and the parties will be discussing that further in the coming quarter. The deadline for completion of the staff analysis and plan is July 2026.

**Regulatory changes**

In January, CDCR adopted final regulations relevant to several matters that have been the subject of the parties' negotiations and of previous reports to the Court.[1] As discussed in more detail in previous reports, the regulations establish a process for rapid closure of investigations under certain circumstances, for example where an allegation is definitively proved or disproved by video evidence. The regulations also establish circumstances under which complaints that were classified as "routine" and routed for review at the institutions can be elevated to AIU for a full investigation (for example where the claim closely resembles a recent, sustained complaint against the same staff member).[2] And the new regulations set forth procedures to identify individuals who file disproportionately large numbers of complaints, determine which of those complaints merit investigation by the AIU, and route those which do not to the Grievance Response Team (GRT). Plaintiffs have raised concerns about aspects of GRT process as laid out in the regulations, and the parties will be addressing those concerns in the coming quarter.

**OIG monitoring of the investigations and discipline system**

The Office of the Inspector General released two reports this quarter on CDCR's staff misconduct investigations and discipline process. In its annual review of the Centralized Screening Team (CST), OIG found that CST made correct screening decisions in 70% of cases, that improvement was needed in 6.5% of cases, and that the screening decision was inadequate

---

[1] https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2026/01/NCR-25-06-Staff-Misconduct-Employee-Discipline-and-Administrative-Remedies-of-Grievances-and-Appeals-.pdf

[2] The Centralized Screening Team (CST) reviews complaints to determine whether they raise serious claims of staff misconduct that must be investigated by the Allegation Inquiry Unit (AIU) of the Office of Internal Affairs. Where CST determines that a complaint does not allege staff misconduct or alleges a less serious form of staff misconduct, the complaint is deemed "routine" and is routed for review to the Office of Grievance at the institution where the complaint originated.

**Quarterly Report on Investigations and Discipline**
*Armstrong, et al., v. Newsom, et al.*, CV 94-2307 CW

in 23.5%.[3] By comparison, in its 2024 review (which used a slightly different rating system), OIG found CST made "satisfactory" or "superior" screening decisions in 89% of cases and "poor" decisions in only 11% of cases.[4]

OIG also conducted a review of investigations and discipline in 57 use of force cases that closed in 2025. For each, it evaluated the performance of both the Office of Internal Affairs (which conducts the investigations) and the wardens (who make the disciplinary decisions).[5] In its assessment, OIA performed adequately in 14 cases (25%), needed improvement in 10 (18%), and performed inadequately in 33 (58%). OIG's principal concern was that OIA frequently failed to conduct all "necessary and relevant" interviews. Wardens performed adequately in 9 cases (16%), needed improvement in 12 (21%), and performed inadequately in 36 (63%). Here, OIG found fault with the wardens' failure to recognize instances where more investigation was required and found that they delayed in making their findings. While the Court Expert has not independently assessed the cases examined by the OIG, these findings underscore the need for continuing review of CDCR's practices and improvement in its handling of use of force cases.

**Case volume and investigation and discipline timelines**

Data as of January (the most recent available) continues to show problematic trends. The total volume of cases arising from the *Armstrong* Six prisons has dropped slightly, to an average of around 5,900 cases/month over the past year (from 6,200 at the time of the Court Expert's last report). Fewer cases are being routed to AIU; the average over the past 12 months was around 340 cases/month, compared to 370/month last quarter.[6] The average time spent by investigators per case has also dropped slightly, from 27 to around 24 hours. The on-time closure rate, while still very low, has improved slightly. Looking at cases received in the most recent three months

---

[3] https://www.oig.ca.gov/wp-content/uploads/2026/03/2025-Centralized-Screening-Monitoring-Report.pdf

[4] https://www.oig.ca.gov/wp-content/uploads/2025/03/2024-Centralized-Screening-Monitoring-Report.pdf

[5] https://www.oig.ca.gov/wp-content/uploads/2026/03/2025-Retrospective-Use-of-Force-Monitoring-Report.pdf

[6] These figures are only for the *Armstrong* Six prisons. According to the OIG, CDCR received over 215,000 total complaints in 2025 and routed around 23,000 of them to the AIU, for an average of about 1,900 total cases per month.

**Quarterly Report on Investigations and Discipline**
*Armstrong, et al., v. Newsom, et al.*, CV 94-2307 CW

for which the deadlines in the Remedial Plan have run (July, August, and September 2025),[7] OIA has completed investigations on time in about 6-7% of cases, up from just 3-4% at the time of the last report.

There is some reason to expect that AIU caseloads will soon increase again, which may jeopardize even the small improvement in case closure rates. As the Court is aware, the Remedial Plan requires CST to make its screening decisions based on the Allegation Decision Index (ADI), which designates categories of misconduct allegations that require investigation by AIU. In 2025, CDCR began employing a "quick reference guide" to aid CST personnel in making screening decisions. Despite concerns that this resulted in claims that should have been investigated by AIU being instead routed elsewhere, Plaintiffs agreed (and the Court ordered) that CST could temporarily use the guide to screen complaints from the Armstrong Six prisons. Dkt. 3721, ¶ 10. Under the Court's order, CST was required to discontinue use of the quick reference guide this month. This will likely result in an increase in complaints routed to AIU.

**Quarterly case review**

As the Court is aware, each quarter CDCR produces files on completed staff misconduct investigations. Plaintiffs issue a report on their concerns or questions about those investigations, and the parties meet for a confidential discussion of their views of closed investigations. That practice continued in this quarter.

/ / /

---

[7] Under the Remedial Plan, cases assigned to lieutenants and sergeants must be completed within 120 days from receipt and those assigned to special agents within 180 days. The data continues to show almost no cases being assigned to special agents. As the Court Expert noted in his prior report, CDCR has ascribed this low figure to a reporting error.

**Quarterly Report on Investigations and Discipline**
*Armstrong, et al., v. Newsom, et al.*, CV 94-2307 CW

In addition, Defendants have begun producing files for a selection of completed "routine" matters. These are allegations that allege no staff misconduct or allege less serious forms of misconduct and are handled by the Office of Grievances at the institution. As with the staff misconduct allegations, Plaintiffs are reviewing and reporting on those cases as well. The Court Expert anticipates providing an update on the parties' discussion of routine reviews in the next quarterly report.

Dated: March 31, 2026                          Respectfully submitted,

                                               _____/s/_____
                                               Edward W. Swanson
                                               SWANSON & McNAMARA LLP

**Quarterly Report on Investigations and Discipline**
*Armstrong, et al., v. Newsom, et al.*, CV 94-2307 CW